**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
ANWAR, et al.,                                      :          Consolidated Action
                                                    :          Civil Action No. 09-CV-0118 (VM)
                    Plaintiffs,                      :
                                                    :
                                                    :
                                                    :
          - against -                               :
                                                    :
FAIRFIELD GREENWICH LIMITED,                        :
et al.,                                             :
                                                    :
                    Defendants.                     :
                                                    :
-------------------------------------------------------------x


# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR CONSOLIDATION OF ALL ACTIONS AND APPOINTMENT OF
# <u>INTERIM CO-LEAD COUNSEL</u>

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 2

I.    BACKGROUND ............................................................................................ 2

II.   IT IS IN THE BEST INTERESTS OF THE CLASS TO APPOINT LOVELL STEWART HALEBIAN, WOLF POPPER AND BOIES, SCHILLER & FLEXNER AS INTERIM CLASS COUNSEL ........................................................................... 4

   A.   The Proposed Leadership Structure Promotes Efficiency. ............................. 5

   B.   The Proposed Leadership Structure Has Been Developed and Approved By Plaintiffs' Counsel. ................................................................................................ 6

III.   EACH OF THE PROPOSED FIRMS IS QUALIFIED TO SERVE AS CO-LEAD COUNSEL ........................................................................................................ 7

   A.   The Work Counsel Has Done In Identifying Or Investigating Potential Claims In The Action ..................................................................................................... 7

      1.   Lovell Stewart Halebian ...................................................................... 7

      2.   Wolf Popper ..................................................................**Error! Bookmark not defined.**

      3.   Boies, Schiller & Flexner ..................................................................... 9

   B.   Counsel's Experience In Handling Class Actions, Other Complex Litigation, And Claims Of The Type Asserted In The Action ...................................................... 10

      1.   Lovell Stewart Halebian .................................................................... 10

      2.   Wolf Popper ...................................................................................... 12

      3.   Boies, Schiller & Flexner ................................................................... 16

   C.   Counsel's Knowledge Of The Applicable Law ........................................... 19

   D.   The Resources Counsel Will Commit To Representing The Class ................ 19

IV.   CONCLUSION ............................................................................................. 19

# **TABLE OF AUTHORITIES**

**Federal Cases**

*In re Alcatel Alsthom Securities Litigation*, MDL No. 1263, No. 4:98-CV-320 (E.D.Tex)......... 16

*In re Air Cargo Shipping Serv. Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y. 2006) ......................... 7

*Am. Express Travel Related Servs. Co., Inc. v. Visa U.S.A. Inc.*, No. 04-08967 (S.D.N.Y.) ....... 18

*Archdiocese of Milwaukee Supporting Fund. v. Halliburton*, No. 02-1152 (N.D.Tex.) .............. 17

*In re Auction Houses Antitrust Litigation*, No. 00 Civ. 0648(LAK) (S.D.N.Y.).......................... 18

*In re Bear Stearns Co., Inc., Sec., Derivative, and Employee Ret. Income Sec. Act (ERISA) Litig.*, 2009 WL 50132 (S.D.N.Y January 5, 2009) ............................................................................. 7

*In re Bendectin Litig.*, 857 F.2d 290 (6th Cir. 1988). ...................................................................... 5

*Blatt v. Merrill Lynch Fenner & Smith Inc.*, 94 Civ. 2348 (JAG) (D.N.J.) ............................ 10, 11

*In re Buspirone Antitrust Litig.,* MDL No. 1413 (S.D.N.Y.) ........................................................ 18

*In re Cardizem CD Antitrust Litig.*, MDL No. 1278, No. 99-MD-1278 (E.D.Mich.) ................. 18

*Dusek v. Mattel, Inc.*, CV-99-10864-MRP (C.D.Cal.) ................................................................. 14

*In re First Databank Antitrust Litig.,* No. 0:01CV00870 (D.D.C.) .............................................. 18

*FTM Sports Corp. v. Taxten Co., Inc.*, No. 672642 (Sup. Ct. Cal.).............................................. 17

*FTM Sports Corporation v. Miller*, No. 91-cv-02086-WDF (S.D.Fla.) ....................................... 17

*Kaplan v. E.F. Hutton Group, Inc., et al.*, Civ. Action No. 88-00889 (N.Y. Sup. Ct.) ............... 10

*Lalor et al. v. Omtool, Ltd. et al.*, C.A. No. 1:99-cv-469-M (D.N.H.) ........................................ 17

*MacAlister v. Guterma*, 263 F.2d 65 (2d Cir. 1958)....................................................................... 5

*In re Motorola Securities Litigation*, No. 03 C 287 (RRP) (N.D.Ill.) .......................................... 13

*In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184 (S.D.N.Y. 2008) (VM); ..................... 5, 7

*Middlesex Retirement System v. Quest Software, Inc.*, Case No. 06-06863-DOC(RNBx) (C.D.Cal.)...................................................................................................................................... 13

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998)............... 10, 11

*In re Natural Gas Commodity Litigation*, Index No. 03 CV 6186 (VM) (AJP) (S.D.N.Y.) ........ 12

*Pokorny v. Quixtar, Inc.*, No. 07-0201 (N.D.Cal. filed Jan. 10, 2007) ......................................... 17

*In re Sonus Networks, Inc. Securities Litigation*, No. 1:06-cv-10040-MLW (D.Mass.) .............. 14

*In re Soybeans Futures Litigation*, 89 Civ. 7009 (CRN) (N.D.Ill.) ............................................. 10

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ...................... 10, 11, 12

*In re Sumitomo Copper Litig.*, Master File No. 96 CV 4854 (S.D.N.Y.) ..................................... 12

*In re Sunbeam Sec. Litig.*, 98-8258-Civ.-Middlebrooks (S.D.Fla) ............................................. 15

*In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317-SEITZ, (S.D.Fla.) ............. 18

*In re Terra-Drill Partnerships Securities Litig.*, MDL No. 791, CIV A H-86-3808 (S.D.Tex.).. 17

*Thurber v. Mattel, Inc.*, CV-99-10368-MRP (C.D.Cal.) ............................................................. 14

*van Roden, et al. v. Henri Termeer, Genzyme Corp., et al.*, Case No. 03 Civ. 4014 (S.D.N.Y.) . 16

*In re Vitamins Antitrust Litigation*, No. 99-197 TFH (D.D.C.) ................................................... 18

*Walco v. Thenen*, No. 93-2534-Civ (S.D.Fla.) ............................................................................. 17

## **Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) §10.22 (2007 Ed.) ................................................ 6

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.22 (2004) ..................................................... 6

MANUAL FOR COMPLEX LITIGATION (FOURTH), §10.123 (2004) .................................................. 4

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004) .................................................... 5

*Newberg on Class Actions* (4th) § 9 (2002) ................................................................................ 6

## **Federal Statutes**

28 U.S.C. §§ 1332 and 1441 .......................................................................................................... 3

15 U.S.C. § 1 *et seq* ..................................................................................................................... 11

Commodity Exchange Act, 7 U.S.C. § 1, *et seq* ........................................................... 11

Investment Advisers Act, 15 U.S.C. § 80b-1 *et seq* ................................................ 3, 10

Investment Company Act, 15 U.S.C. § 80a-1 *et seq* ................................................... 11

Securities Exchange Act of 1934 ................................................................................ 17

**<u>Federal Rules</u>**

Fed. R. Civ. P. 23 *et seq* ..................................................................................... *passim*

Fed. R. Civ. P. 42 *et seq* ......................................................................................... 2. 4

## INTRODUCTION

Plaintiffs in the above captioned Consolidated Action, 09 CV 00118 (VM), respectfully submit this Memorandum in support of their Motion, pursuant to Federal Rules of Civil Procedure 42(a), 23 and 23(g)(3), for an Order:

(1) consolidating the *Anwar* action filed against Defendants and previously consolidated pursuant to the Court's orders dated January 14, 2009 and January 23, 2009 with all related actions that are subsequently filed in or transferred to this Court;[1]

(2) appointing Lovell Stewart Halebian LLP ("Lovell Stewart Halebian"), Wolf Popper LLP ("Wolf Popper") and Boies, Schiller & Flexner LLP ("Boies, Schiller & Flexner") as Interim Co-Lead Counsel for Plaintiffs and the putative class; and

(3) providing such other relief as the Court deems just and proper.

A copy of a Proposed Order is submitted with these motion papers.

## I.     BACKGROUND

On December 19, 2008, Plaintiffs Pasha S. Anwar and Julia Anwar (the "Anwars") commenced a class action in New York State Court for breach of fiduciary duty, negligence and unjust enrichment arising out of certain of the Defendants' mismanagement of Plaintiffs' investments and those of the plaintiff class (the "Anwar Class Action").  On January 7, 2009,

---

[1] "Defendants" refers to defendants in each of the consolidated actions: Fairfield Greenwich Group, Fairfield Greenwich Limited, a Cayman Islands corporation, Fairfield Greenwich (Bermuda) Ltd., Fairfield Greenwich Advisors LLC, Fairfield Greenwich Risk Services LTD., Citco Bank Nederland N.V. Dublin Branch, Citco Fund Services (Europe) B.V.,Walter M. Noel, Jr., Andres Piedrahita, Jeffrey Tucker, Brian Francouer, Amit Vijvergiya, Yanko Dellaw Schiava, Philip Toub, Lourdes Barreneche, Cornelis Boele, Matthew C. Brown, Vianney D'Hendecourt, Harold Greisman, Jacqueline Harary, David Horn, Richard Landsberger, David Lipton, Julia Luongo, Mark McKeefry, Maria Teresa Pulido Mendozo, Charles Murphy, Santiago Reyes and Andrew Smith (collectively, "Defendants").

defendants Fairfield Greenwich Group, Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Ltd. and Fairfield Greenwich Advisors LLC removed the Anwar Class Action from the Supreme Court of the State of New York, New York County, to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1332 and 1441.

On January 8, 2009, Plaintiff Pacific West Health Medical Center Inc. Employees Retirement Trust ("Pacific West") commenced a class action against certain of the Defendants for breach of fiduciary duty, gross negligence, unjust enrichment, breach of contract, mutual mistake and promissory estoppel (the "Pacific West Class Action"). Pacific West also sought the imposition of a constructive trust and an order of conveyance, and asserted a third party beneficiary claim for breach of contract. Pacific West sought the recovery of placement fees, management fees and performance fees paid to Defendants under an alleged mutual mistake of fact that moneys invested with Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities LLC ("MIS") were actually maintained in accounts for the benefit of the Fairfield Sentry Limited investment fund.

On January 12 , 2009, Inter-American Trust, Elvira 1950 Trust, Carlos Gauch and Bonaire Limited ("Inter-American") commenced a class action against certain of the Defendants for breach of fiduciary duty, gross negligence, negligent misrepresentation, rescission, and unjust enrichment from fees taken by defendants based upon non-existent profits (the "Inter-American Class Action"). Inter-American also asserted a claim under Section 15 U.S.C. § 80b-1 *et seq.* of the Investment Advisors Act. Inter-American also seeks preliminary and permanent injunctive relief to secure alleged recovery, and asks the court to impose a constructive trust over fees collected by Defendants.

On January 14, 2009 the Court signed an order consolidating the Anwar and Pacific West

actions under the caption *Anwar et al. v. Fairfield Greenwich Limited et al*, *09 CV 00118 (VM)*. On January 23, 2009, the Court further consolidated the Anwar Class Action with the Inter-American Class Action under the caption *Anwar et al. v. Fairfield Greenwich Limited et al*, *09 CV 00118 (VM)* (hereinafter the "Consolidated Action").

Plaintiffs now request consolidation of the Consolidated Action with all subsequently filed related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. *See, e.g.*, MANUAL FOR COMPLEX LITIGATION (FOURTH), §10.123, at 13-14 (2004). In addition, Plaintiffs seek appointment of Interim Co-Lead Counsel for Plaintiffs and the putative class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and the Court's directive in the January 15, 2009 hearing that the three Plaintiffs' firms "prepare a leadership structure that is suitable and mutually agreed upon." *See* January 15, 2009 Hearing Transcript at p. 32. (Excerpt attached as Exhibit A hereto)

## II. IT IS IN THE BEST INTERESTS OF THE CLASS TO APPOINT LOVELL STEWART HALEBIAN, WOLF POPPER AND BOIES, SCHILLER & FLEXNER AS INTERIM CLASS COUNSEL

Appointment of Interim Co-Lead Counsel is appropriate and necessary at this juncture to protect the interests of the putative class. Rule 23 of the Federal Rules of Civil Procedure provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The Advisory Committee notes to Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class."

Appointment of interim lead counsel is especially important to protect the interests of the class where, as here, class action suits with overlapping claims have been filed, and the risk of

redundant work and motion practice is great. The *Manual for Complex Litigation* (the "*Manual*") explains:

> If … there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as responding to motions, conducting any necessary discovery, moving for class certification and negotiating settlement.

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004); *see also In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 185-86 (S.D.N.Y. 2008) (VM); *In re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988). Similarly, the Second Circuit has observed: "The benefits achieved by consolidation and the appointment of general counsel, i.e., elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation." *MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958).

The interim leadership structure proposed herein should be approved because it will promote efficient prosecution of this action pending the determination of class certification and has been developed and approved by Plaintiffs' counsel.

### A. The Proposed Leadership Structure Promotes Efficiency.

Proposed Interim Co-Lead Counsel have included provisions in the Proposed Order to promote efficiency. For instance, the Proposed Order provides that "Interim Co-Lead Counsel shall," among other things, "ensure that schedules are met and unnecessary expenditures of time and funds are avoided, including the avoidance of unnecessary or duplicative communications among plaintiffs' counsel." Proposed Order, Section VII, ¶ 18.

Further, proposed Interim Co-Lead Counsel have agreed to share the substantial costs that will be incurred in effectively prosecuting this litigation, and to cooperate to avoid

duplication of efforts by delegating among themselves duties pertaining to class certification, briefing, discovery and trial preparation.  Proposed Interim Co-Lead Counsel have also agreed to keep and periodically exchange time records so that a meaningful contemporaneous review of time and expenditures will take place, and have agreed that no counsel will be given work assignments unless they are in compliance with the time record submission requirements.

This leadership structure will promote the vigorous and fair prosecution of this litigation, while at the same time ensuring efficiency and non-duplication of work by counsel.

### B.   The Proposed Leadership Structure Has Been Developed and Approved By Plaintiffs' Counsel.

Another advantage of the proposed leadership structure is that it has been developed and approved by Plaintiffs' counsel rather than imposed by the Court.  The *Manual* recommends "private ordering" of leadership in class actions, and advises that efforts by "attorneys to coordinate their activities without the court's assistance . . . should be encouraged."  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.22 (2004).  It is widely recognized that it is desirable for plaintiffs' counsel to reach consensus among themselves about which firm or firms should be proposed for appointment as Interim Class Counsel.  *See Manual* at §10.22 (2007 Ed.); *Newberg on Class Actions* (4th) § 9:35 (2002).

The efficiency of private ordering is in the best interests of the putative Class in that it: (1) avoids the delays and briefing of a counsel leadership fight; (2) ensures that the Class will have the counsel representation it will need in the context of any subclasses or division of representation for purposes of adequate representation in reaching (or allocating) any settlement; and (3) allows Plaintiffs to act on behalf of the putative Class in discussions with Defendants and non-parties, including the applicable regulatory agencies.

6

The need for approval of the agreed proposed leadership structure is particularly urgent here because the Court has directed the parties to submit a Case Management Order by January 29, 2008, and discovery is to be initiated shortly. Defendants will undoubtedly require assurance that any agreements reached between the parties on the matters addressed in the Case Management Order and in the discovery process will be binding, and that counsel for the Plaintiffs with whom they are dealing in pre-trial matters have the necessary authority to enter into binding agreements, as set forth in the Proposed Order, Section VII.

## III. EACH OF THE PROPOSED FIRMS IS QUALIFIED TO SERVE AS CO-LEAD COUNSEL

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A). *See In re Bear Stearns Co., Inc., Sec., Derivative, and Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 08-Civ-8l94, 08 M.D.L. No. 1963 (RWS), 2009 WL 50132, at *11 (S.D.N.Y January 5, 2009); *In re Mun. Derivatives Litig*, 252 F.R.D. at 186; *In re Air Cargo Shipping Serv. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006). Rule 23(g)(1)(A) provides that in appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action,
> (ii) counsel's experience in handling class actions, other complex litigation, and the claims of the type asserted in the action,
> (iii) counsel's knowledge of the applicable law, and
> (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

### A. The Work Counsel Has Done In Identifying Or Investigating Potential Claims In The Action

#### 1. Lovell Stewart Halebian

Lovell Stewart Halebian was the first firm to file a class action complaint against the corporate defendants and the principal individual defendants named herein.  Before filing the complaint, Lovell Stewart Halebian conducted extensive research into the operations of the corporate Defendants and the individual Defendants named by the firm, as well as Madoff and MIS, and had extensive dialogues with plaintiff Pasha Anwar regarding the operations of the corporate Defendants and the various documents that plaintiff Anwar had received from the corporate Defendants and other related parties during the years in which he had invested in both the Fairfield Sentry and Greenwich Sentry funds.

Nearly all of the defendants were served with a copy of the summons and complaint by a process server on the same day the action was filed on December 19, 2008.  On December 24, 2008 and again on December 30, 2008, Lovell Stewart Halebian wrote to Defendants' general counsel requesting that documents and data be preserved and that Defendants enter into a stipulation to preserve evidence.  On January 1, Lovell Stewart Halebian served Plaintiffs' First Request For Production Of Documents and again requested that documents and data be retained in good faith prior to the execution of a formal stipulation and order.  On January 5, 2009, Lovell Stewart Halebian subpoenaed Robert Blum, the former Chief Operating Officer of defendant Fairfield Greenwich Group, and on January 6, 2009, the firm subpoenaed Goldman Sachs & Co. regarding its relationship with Madoff and MIS.

After tolling the statute of limitations and taking the foregoing steps to preserve documents, Lovell Stewart Halebian tried to stipulate with Defendants' counsel that transfers of assets (other than in the ordinary course of business) above a minimum amount would not be made without prior notice to the Court and parties.  The *Anwar* Plaintiffs received notice on

January 8, 2009 that the corporate Defendants had filed a Notice of Removal to the Southern District of New York on January 7, 2009.

### 2.   Wolf Popper

Shortly after being retained by its client in this action, Wolf Popper LLP launched an investigation of the factual and legal bases for claims against Fairfield Greenwich Group and affiliated person and entities.  Among other things, Wolf Popper recognized that hundreds of millions of dollars of fees had been paid to potential defendants under a mutual mistake of the value and profitability of assets under management, and that those moneys were required to be returned to the Fairfield Sentry Fund under equitable principles for the benefit of the class of investors in that Fund.  Wolf Popper believed moreover that the claims for recovery of fees could be prosecuted without proving fault by the Defendants and that there was a need for expedition to identify the location of those fees and to restrain disposition of the transfer of those fees.  To the extent those fees had already been converted to other assets, Wolf Popper recognized the need to identify those assets as well and  sought to obtain a freeze on those assets at a court hearing on January 15, 2009.

### 3.   Boies, Schiller & Flexner

Boies, Schiller & Flexner has been contacted by numerous investors who lost money in connection with the Madoff frauds through investments in funds offered by defendant Fairfield Greenwich Group and related entities.  Boies, Schiller & Flexner commenced an extensive investigation into the factual circumstances of those investments, including the representations made by Defendants and the corporate structure and legal and business relationships among Defendants.  The firm exhaustively researched and analyzed potential legal theories and causes of action, and filed a complaint against Defendants on January 12, 2009.  Boies, Schiller &

Flexner determined that its clients and the putative Class had claims against Defendants for

breach of fiduciary duty, gross negligence, negligence, negligent misrepresentation, unjust

enrichment and breach of contract (as third party beneficiaries), as well as for accounting,

constructive trust, common law rescission, and rescission under the Investment Advisers Act, 15

U.S.C. § 80b-1 *et seq.*  Boies, Schiller & Flexner further determined that Plaintiffs are entitled to

recover both the investments they entrusted to Defendants and the investment advisory fees

improperly paid to Defendants.  Since filing the complaint, Boies Schiller & Flexner has been

contacted by numerous other Fairfield investors who are prepared to engage the Firm to take an

active and leading role in the Fairfield-Madoff litigation.

### B.   Counsel's Experience In Handling Class Actions, Other Complex Litigation, And Claims Of The Type Asserted In The Action

#### 1.   Lovell Stewart Halebian

Lovell Stewart Halebian LLP and its predecessors (collectively "Lovell Stewart") have

been prosecuting complex class actions since 1980.

However, Lovell Stewart believes that the result obtained for the class is the best

indicator of "experience in handling class actions" as used in FRCP Rule 23(g)(1)(A)(ii).  Lovell

Stewart has achieved class action settlements that recovered, after deduction for all costs and

attorneys fees, 100 cents on each dollar of losses[2] of each claiming class member in **each** of five

separate class actions.  *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 471

(S.D.N.Y.  1998) ("*NASDAQ*") ($1,027,000,000); *In re Sumitomo Copper Litigation*, 74

F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("*Sumitomo*") ($149,600,000); *Blatt v. Merrill Lynch

Fenner & Smith Inc.*, 94 Civ. 2348 (JAG) (D.N.J.) ("*Blatt*") ($70,000,000); *In re Soybeans

---

[2] "Losses" means single, actual damages, exclusive of trebling and also exclusive of any prejudgment interest.

*Futures Litigation*, 89 Civ. 7009 (CRN) (N.D. Ill.) ($21,500,000); and *Kaplan v. E.F. Hutton Group, Inc., et al.*, Civ. Action No. 88-00889 (N.Y. Sup. Ct.) ($8,180,000); *see* Lovell Stewart Halebian firm resume, attached as hereto as Exhibit B, at p. 1.

Lovell Stewart Halebian believes that a lesser indication of "counsel's experience in handling class actions" under Rule 23(g)(1)(A)(ii) involves the results obtained under the relevant statutory scheme.  As co-lead counsel[3] or Lead Counsel,[4] the firm has achieved what were the then largest class action recoveries under three separate federal statutes: the Sherman Act, 15 U.S.C. § 1 *et seq.*, the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.*, and the Investment Company Act, 15 U.S.C. § 80a-1 *et seq.  See* Firm Resume, pp. 1-2.

With regard to "experience in handling … other complex litigation, and the types of claims asserted in the action", as used in Rule 23(g)(1)(A)(ii), attorneys at Lovell Stewart and its Bellevue Washington affiliate, Lovell Mitchell & Barth have tried more than two hundred cases (counting arbitrations and administrative hearings as trials).  For example, Christopher Lovell has tried more than sixty cases, more than one-half of which have been financial advisor or broker cases including or exclusively involving common law claims for breach of fiduciary duty or contract.

---

[3] *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 471 (S.D.N.Y. 1998)(a class action resulting in an "all-cash [$1.027 billion] settlement, achieved through 'four years of hard-fought litigation,' apparently is [at that time] the largest recovery (class action or otherwise) in the hundred year history of the state and federal antitrust laws"); *Blatt v. Merrill Lynch Fenner & Smith Inc.*, 94 Civ. 2348 (JAG) (D.N.J.), a $76.5 million settlement in 1997 of impermissible investment and related claims under the Investment Company Act, 15 U.S.C. §80a-1 *et seq*., providing one hundred cents on the dollar exclusive of interest on plaintiffs' purchase-sale differential losses constituted "by far the largest settlement" of class claims under the Investment Company Act according to Securities Class Action Alert letter dated August 17, 2000).

[4] *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999), a class action that led to a $134.6 million recovery which provided each claiming class member with more than 100¢ on the dollar of each investor's losses on a purchase-sale differential basis "is the largest class action recovery in the 75 plus year history of the Commodity Exchange Act").

Lovell Stewart has served as court-appointed class counsel in many other notable actions including before this Court.  For example, in *In re Natural Gas Commodity Litigation*, Index No. 03 CV 6186 (VM) (AJP) (S.D.N.Y.) ("*Natural Gas*"), Lovell Stewart was appointed by this Court as co-lead counsel in which the second largest class action recovery in the history of the CEA ($100,800,000) was obtained.  In the decision granting class certification dated September 29, 2005, this Court found at p. 23 that: "It is undisputed that the attorneys for the Plaintiffs have adequately represented classes in antitrust, securities, and in other commodity futures class actions.  Therefore, counsel for the Plaintiffs are qualified for the purposes of Rule 23(a)(4)."

Finally, in *In re Sumitomo Copper Litigation (*"Sumitomo"*)*, Master File No. 96 CV 4854 (S.D.N.Y.)(Pollack, J.), Lovell Stewart was appointed as Lead Counsel and Chairman of the Executive Committee.  Stipulation and Pretrial Order No. 1, dated October 28, 1996 at ¶ 13.  One of the most able and experienced United States District Court judges in the history of the federal judiciary, the Honorable Milton Pollack, took the trouble to comment on counsel's efforts in *Sumitomo* in various respects, including the following:

> The unprecedented effort of Counsel exhibited in this case led to their successful settlement efforts and its vast results.  Settlement posed a saga in and of itself and required enormous time, skill and persistence.  Much of that phase of the case came within the direct knowledge and appreciation of the Court itself.  Suffice it to say, the Plaintiffs' counsel did not have an easy path and their services in this regard are best measured in the enormous recoveries that were achieved under trying circumstances in the face of virtually overwhelming resistance.

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999).  What Judge Pollack found to be "the skill and persistence" of Lovell Stewart in *Sumitomo* will be brought to bear to represent the Class here as well.

## 2.    <u>Wolf Popper</u>

Wolf Popper has served in leadership positions in many complex litigation actions. Below is a representative selection of several leadership appointments. A more complete list of Wolf Popper's experience can be found in the firm's resume attached hereto as Exhibit C.

Wolf Popper served as lead counsel representing the State of New Jersey (on behalf of the State's Division of Investment), as lead plaintiff, and the class in *In re Motorola Securities Litigation*, No. 03 C 287 (RRP) (N.D. Ill.), a securities fraud class action against Motorola, Inc., and three of Motorola's former senior officers. After extensive motion practice, merits and expert discovery, and trial preparation, the action was settled for $190 million three business days before the start of trial in April 2007. In approving the $190 million recovery for the Class, the Court stated as follows "You did a great very professional job here. This was a hard fought, but extremely professionally fought battle and I appreciate it. Thank you."

Wolf Popper currently represents the Middlesex County Retirement System (Massachusetts), in *Middlesex Retirement System v. Quest Software, Inc.*, Case No. 06-06863-DOC(RNBx) (C.D. Cal.), as lead counsel in a federal securities class action against Quest Software, Inc. ("Quest"), a company that designs, develops, distributes and supports software products, in connection with the company's backdating of stock options. Plaintiffs have already twice defeated defendants' motions to dismiss in this action.

Wolf Popper was appointed Lead Counsel in cases filed against the Franklin/Templeton, PIMCO (n/k/a Allianz Dresdner), and American Funds mutual fund families involving a scheme in which they allegedly permitted unlawful late trading and market timing by hedge funds and other preferred clients, negatively impacting long-term investors in the funds. Our clients include the Deferred Compensation Fund 457 Plan of Nassau County, New York; a Taft-Hartley Fund; and four Illinois Police & Fire Public Pension Funds. In addition to being appointed as

Lead Counsel in the Franklin/Templeton, PIMCO and American Funds vertical tracks of the mutual fund litigation, Wolf Popper was named as one of several law firms on the plaintiffs' horizontal steering committee, coordinating actions among 20 or more mutual fund litigations, all pending before a multidistrict litigation panel in the U.S. District Court, District of Maryland. Discovery has been actively ongoing in this litigation.

In two separate cases brought against Mattel, *Dusek v. Mattel, Inc.*, CV-99-10864-MRP (C.D. Cal.) (brought under §14(a) of the 1934 Act) and *Thurber v. Mattel, Inc.*, CV-99-10368-MRP (C.D. Cal.) (brought under §10(b)), Wolf Popper served as a member of the Executive Committee of Plaintiffs' counsel and was appointed by the Court to have primary responsibility for the prosecution of the Dusek §14(a) claims. Wolf Popper's clients, wealthy individuals who lost more than many institutions, served as lead plaintiffs with The Birmingham Retirement & Relief Fund. After more than three years of extremely hard-fought litigation, both cases settled for the aggregate sum of $122 million, approved in late 2003. The $61 million allocated for the Dusek §14(a) claims is believed to be the then largest settlement of a §14(a) case. In *Dusek v. Mattel*, in approving the settlement of the action along with a companion action, for $122 million, the Judge, in her Findings of Fact and Conclusions of Law entered on November 6, 2003, complimented counsel saying that "Wolf Popper LLP vigorously prosecuted the Dusek action and zealously represented the interests of the Dusek Class members," and that Wolf Popper performed in a "very capable and professional manner."

Wolf Popper represents Mississippi PERS as lead counsel in *In re Sonus Networks, Inc. Securities Litigation*, No. 1:06-cv-10040-MLW (D. Mass.), a securities class action brought under the PSLRA against Sonus Networks, Inc. ("Sonus"), a telecommunications company. Wolf Popper filed an amended complaint on behalf of Mississippi PERS after an intensive

investigation which uncovered substantial non-public information supporting plaintiff's allegations. A tentative agreement has been reached, subject to court approval, to settle the action.

In *In re Sunbeam Sec. Litig.*, 98-8258-Civ.-Middlebrooks (S.D. Fl.), Wolf Popper was appointed co-lead counsel. The case was brought against Sunbeam, its auditors, and former officers and directors of the company, including "Chainsaw" Al Dunlap. Plaintiffs reached a partial settlement with Sunbeam's auditors, Arthur Andersen, for $110 million - one of the largest settlements ever with an accounting firm in a securities class action - and reached a separate settlement with the individual defendants that included more than $18 million in cash plus a separate $13 million recovery from the company's excess insurance policies.

Wolf Popper has achieved notable and significant successes over the years, some of which are detailed above. More recently, the Wolf Popper was appointed by the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York as Co-Lead Counsel in an ERISA action brought on behalf of participants and beneficiaries who acquired interests in Citigroup common stock through certain Citigroup 401(k) employee benefit plans. The action alleges that defendants breached their fiduciary duties under ERISA by imprudently investing participants' assets in Citigroup common stock despite the fact that such investment posed an undue risk due to, inter alia, (i) Citigroup's underwriting of subprime and "low documentation" loans, (ii) undisclosed losses owing to such subprime loans and (iii) Citigroup's involvement in issuing commercial paper through off-balance-sheet structured investment vehicles (SIVs).

Wolf Popper is a nationally recognized law firm with decades of experience in the field of securities class actions and securities derivative actions. Since the firm was founded in 1945,

Wolf Popper has been a leader in efforts to protect the interests of defrauded investors, consumers, and employees, prosecuting hundreds of actions under federal and state laws throughout the United States.  The Firm's efforts have resulted in the recovery of billions for aggrieved parties.

### 3.   Boies, Schiller & Flexner

Boies Schiller & Flexner is a firm of approximately 250 lawyers, most of whom are litigators, working from offices throughout the United States, including New York City and Armonk, New York.  Boies Schiller & Flexner attorneys have tried more than 300 cases, participated in over 200 arbitrations, and handled numerous high-profile internal and government investigations for public and private companies.  Boies Schiller & Flexner has been described by the *Wall Street Journal* as a "litigation powerhouse," and by the *National Law Journal* as "unafraid to venture into controversial" and "high risk" matters.  Boies Schiller & Flexner has been involved in many of the most significant cases in recent years, including serving as lead counsel in many class actions.  A brief summary follows, and more information is contained in a statement attached hereto as Exhibit D.

Boies, Schiller & Flexner served as lead counsel for a class of former holders of Genzyme Corp. tracking stock in *van Roden et ano. v. Henri Termeer, Genzyme Corp., et al.*, Case No. 03 Civ. 4014 (S.D.N.Y.), which the firm settled after the defendants agreed to pay $64 million in damages to the class.

Boies, Schiller & Flexner served as co-lead counsel in *In re Alcatel Alsthom Securities Litigation*, MDL No. 1263, No. 4:98-CV-320 (E.D. Texas), which resulted in a $75 million settlement for the Plaintiff Class in 2001.

Boies, Schiller & Flexner is currently serving as lead class counsel in *Archdiocese of Milwaukee Supporting Fund. v. Halliburton,* No. 02-1152 (N.D. Tex.), a complex securities class action brought pursuant to the Securities Exchange Act of 1934 that asserts sections 10(b) and 20(a) claims on behalf of purchasers of Halliburton Company stock.

In *In re: Terra-Drill Partnerships Securities Litigation*, MDL No. 791, CIV A H-86-3808 (S.D. Tex.), Boies Schiller & Flexner partner Richard Drubel tried a securities fraud class action to jury verdict and a $72 million judgment, which was described as "one of the most significant verdicts of the year" in 1989 by the *National Law Journal*.

In addition, in a case where it served as co-lead counsel, the Firm concluded a $6 million settlement on behalf of shareholders in *Lalor et al. v. Omtool, Ltd. et al.*, C.A. No. 1:99-cv-469-M (D. N.H.).

Boies, Schiller & Flexner attorneys also have substantial experience in complex fraud cases.  One of Boies, Schiller & Flexner's lead partners on this case (Stuart Singer) was actively involved in litigation over one of the largest Ponzi scheme frauds (prior to the Madoff fraud), the Premium Sales scheme.  *Walco v. Thenen*, No. 93-2534-Civ (S.D. Fla.)  He also has represented a Fortune 500 company in investigations and litigations, including a successful 5 week jury trial, *FTM Sports Corp. v. Taxten Co., Inc.,* No. 672642 (Sup. Ct. Cal.), arising from an intracorporate fraud, *FTM Sports Corporation v. Miller*, No. 91-cv-02086-WDF (S.D. Fla.), and is currently co-lead counsel in a putative class suit on behalf of over 700,000 distributors alleging Quixtar (Amway) is a fraudulent pyramid scheme, *Pokorny v. Quixtar, Inc.*, No. 07-0201 (N.D. Cal. filed Jan. 10, 2007).

Boies Schiller & Flexner has obtained outstanding results in extraordinarily complex plaintiffs' litigation.  The firm represented American Express against Visa and Mastercard in

17

antitrust litigation, obtaining a record-setting $4 billion settlement- more than three times the size of the largest previous recovery for a single plaintiff in the history of United States private antitrust litigation.  *Am. Express Travel Related Servs. Co., Inc. v. Visa U.S.A. Inc.*, No. 04-08967 (S.D.N.Y.).

In *In re Auction Houses Antitrust Litigation*, No. 00 Civ. 0648(LAK) (S.D.N.Y.), as lead counsel for the plaintiff class, Boies Schiller & Flexner obtained a $512 million settlement of antitrust claims against the world's major auction houses, Christie's and Sotheby's, which was nearly twice the amount of the out of pocket damages; in the settlement approval process, no one could point to an antitrust case that had previously settled for more than out of pocket damages, and another plaintiffs' counsel described it as "the most outstanding result I have ever heard of in the history of the antitrust laws."

In *In re Vitamins Antitrust Litigation*, No. 99-197 TFH (D.D.C.), a massive price fixing case against the major manufacturers of bulk vitamins, Boies Schiller & Flexner served as co-lead counsel for the plaintiff class; the Court approved in 2000 a $1.1 billion settlement for the class from certain of the defendants, followed by additional settlements of over $200 million.  In addition, Boies Schiller & Flexner successfully tried a case against a non-settling defendant, obtaining a judgment, with trebling of over $100 million.

Boies, Schiller & Flexner also served as co-lead counsel in *In re Cardizem CD Antitrust Litigation*, MDL No. 1278, No. 99-MD-1278 (E.D. Mich.) (E.D. Michigan) ($110 million settlement); *In re Buspirone Antitrust Litigation,* MDL No. 1413 (S.D.N.Y.) ($220 million settlement); *In re Terazozin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317-SEITZ, (S.D. Fla.) ($72.5 million settlement); and *In re First Databank Antitrust Litigation,* No. 0:01CV00870 (D.D.C.) ($24 million settlement).

### C. __Counsel's Knowledge Of The Applicable Law__

Lovell Stewart Halebian,Wolf Popper and Boies, Schiller & Flexner believe that the cases cited in Section III.B, as further supplemented by the firms' respective resumes attached as Exhibits B, C and D hereto, demonstrate that the firms have the requisite knowledge of the appropriate law necessary to litigate successfully the claims pled in this action.

### D. __The Resources Counsel Will Commit To Representing The Class__

Lovell Stewart Halebian ,Wolf Popper and Boies, Schiller & Flexner believe that the cases cited in Section III.B, as further supplemented by the firms' respective resumes attached as Exhibits B, C and D hereto, demonstrate that the firms have sufficient resources to litigate successfully the claims pled in this action.

## IV. __CONCLUSION__

For the foregoing reasons, Plaintiffs respectfully request that, in light of the papers submitted in support of the motion and the lack of opposition thereto, the Court enter the Proposed Order, consolidate the Anwar Consolidated Class Action with all subsequently filed related actions, and appoint Lovell Stewart Halebian LLP, Wolf Popper LLP and Boies, Schiller & Flexner LLP as Interim Co-Lead Counsel for Plaintiffs and the putative Class.

Dated: January 27, 2009

Respectfully submitted,

**LOVELL STEWART HALEBIAN LLP**

_/s/ Christopher Lovell_
By:   Christopher Lovell, Esq. (CL-2595)
Victor E. Stewart (VS-4309)
Jody R. Krisiloff (JK-1453)
500 Fifth Avenue, 58th Floor
New York, New York 10110
Telephone: 212-608-1900
Facsimile: 212-719-4677


**WOLF POPPER LLP**

_/s/ Robert C. Finkel_
By:   Robert C. Finkel (RF-2373)
Chet B. Waldman (CW-1133)
Carl L. Stine (CS -3000)
James A. Harrod (JH-4400)
845 Third Avenue
New York, New York 10022
Telephone: 212-759-4600
Facsimile: 212-486-2093

**BOIES, SCHILLER & FLEXNER LLP**

_____/s/ *David Boies*_____
By:   David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

_____/s/ *David Barrett*_____
By:   David A. Barrett
Dawn L. Smalls
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

_____/s/ *Stuart H. Singer*_____
By:   Stuart H. Singer
Sashi Bach Boruchow
Boies, Schiller & Flexner LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Proposed Interim Co-Lead Counsel*

TO:
Mark Goodman
Helen Cantwell
**DEBEVOISE & PIMPTON LLP**
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
mao-ecf@debevoise.com
mpgoodman@debevoise.com
hvcantwell@debevoise.com

*Attorneys for Defendant Amit Vijayvergiya*

Mark Kasowitz
Daniel R. Benson

Dan J. Fetterman
Adam K. Grant
**KASOWITZ BENSON TORRES & FRIEDMAN LLP**
1633 Broadway
New York, NY 10019
Tel:  (212) 506-1700
agrant@kasowitz.com
dbenson@kasowitz.com
dfetterman@kasowitz.com
mkasowitz@kasowitz.com

*Attorneys for Defendant Jeffrey Tucker*

Mark G. Cunha
Michael Joseph Chepiga
Peter Eric Kazanoff
Paul Jacob Sirkis
**SIMPSON THATCHER & BARTELL LLP**
425 Lexington Avenue
New York, NY 10017
Tel:  (212) 455-2502
managingclerk@stblaw.com
mcunha@stblaw.com
mchepiga@stblaw.com
pkazanoff@stblaw.com
psirkis@stblaw.com

*Attorneys for Defendants Fairfield Greenwich Group, Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Ltd., and Fairfield Greenwich Advisors L.L.C.*

Steven Wolowitz
Michael Simes
Joseph De Simone
**MAYER BROWN LLP**
1675 Braodway
New York, NY 10019
jdesimone@mayerbrown.com
jmarsala@mayerbrown.com
msimes@mayerbrown.com
swolowitz@mayerbrown.com

*Attorneys for Defendant Andrew Smith*