USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/13/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
PASHA ANWAR, et al.,           :
                               :
                  Plaintiffs,  :          09 Civ. 0118 (VM)(THK)
                               :
                               :
       -against-               :
                               :          **REPORT AND RECOMMENDATION**
                               :
FAIRFIELD GREENWICH LIMITED,   :
et al.,                        :
                               :
                  Defendants.  :
                               :
-------------------------------X

**TO: HON. VICTOR MARRERO, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

This consolidated case arises out of several actions filed against Defendants Fairfield Greenwich Group, Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Ltd., and Fairfield Greenwich Advisors LLC (together, "Defendants"),[1] following Defendants' financial losses in connection with the widely-publicized fraudulent scheme perpetrated by Bernard L. Madoff. The four actions at the core of the instant motion, <u>Ferber v. Fairfield Greenwich Group, et al.</u>, No. 09 Civ. 2366 ("<u>Ferber</u>"), <u>Pierce et al. v. Fairfield Greenwich Group et al.</u>, No. 09 Civ. 2588 ("<u>Pierce</u>"), <u>Morning Mist Holdings Ltd. et al. v. Fairfield Greenwich Group, et al.</u>, No. 09 Civ. 5012 ("<u>Morning Mist</u>"), and <u>Fairfield Sentry Limited v. Fairfield Greenwich Group et al.</u>, No. 09 Civ. 5650 ("<u>Sentry</u>"), were originally filed in New York State Supreme Court, three as derivative actions. Defendants removed these cases to

---

[1] The various Plaintiffs also assert claims against certain individual partners and principals of Defendants, their auditors, and administrators.

this Court pursuant to 28 U.S.C. §§ 1332 and 1441, as amended by the Class Action Fairness Act of 2005 ("CAFA" or the "Act"). The District Judge to whom the cases were assigned (Hon. Victor Marrero) consolidated them, along with other actions filed in this Court against Defendants, and referred the action to this Court for general pretrial supervision.

Presently before the Court are motions by the Plaintiffs in Ferber, Pierce, Morning Mist, and Sentry (together, "Plaintiffs," without Sentry, "Derivative Plaintiffs") to remand those actions to state court for lack of subject matter jurisdiction. Plaintiffs also request attorneys' fees and costs in connection with these motions.[2] For the reasons that follow, the Court recommends that Plaintiffs' motions be granted and each of the four cases be remanded to state court, but that the requests for attorneys' fees and costs be denied.[3]

## BACKGROUND

On December 10, 2008, Bernard L. Madoff ("Madoff") shocked the global financial community when he confessed to running a multi-

---

[2] By Memorandum Opinion and Order, dated May 1, 2009, this Court granted Defendants' request for limited discovery on the issue of subject matter jurisdiction with respect to Ferber and Pierce. See Anwar v. Fairfield Greenwich Ltd., No. 09 Civ. 118 (VM) (THK), 2009 WL 1181278, at *5 (S.D.N.Y. May 1, 2009).

[3] In light of the Second Circuit's decision in Williams v. Beemiller, Inc., 527 F.3d 259 (2d Cir. 2008), this Court cannot issue a final order remanding the actions to state court. See Williams, 527 F.3d at 266 (holding that "[a] motion to remand is not a 'pretrial matter' under § 636(b)(1)(A), and a magistrate judge presented with such a motion should provide a report and recommendation to the district court that is subject to de novo review under Rule 72").

billion dollar Ponzi scheme through his investment firm Bernard L. Madoff Investment Securities, LLC ("BLMIS"). Since as early as the 1990s, Madoff systematically reported fictional assets and profits to investors in BLMIS; when earlier investors sought to collect their "profits," Madoff simply paid them out of the capital received from newer investors. In essence, BLMIS was worth nothing more than the paper on which Madoff prepared his monthly statements to investors. On March 12, 2009, Madoff pled guilty to 11 counts of securities fraud.

Among Madoff's largest victims were Greenwich Sentry, L.P. ("GS"), its successor, Greenwich Sentry Partners, L.P. ("GSP"), and Fairfield Sentry Limited ("FSL," together with GS and GSP, the "Funds"), investment funds within the penumbra of Defendant Fairfield Greenwich Group. The Fairfield Greenwich Group is a self-described "global family of companies" that offers a variety of single manager funds, multi-strategy funds, and fund-of-funds to investors. (See Pierce Complaint ¶ 16; Ferber Complaint ¶ 15; Morning Mist Complaint ¶ 22; Sentry Complaint ¶ 13.) Simply put, GS, GSP, and FSL are corporate entities set up by Defendants as pooled investment vehicles, and Defendants are corporate entities that advised, managed and maintained them.

Defendants, in their role as, inter alia, investment manager of the Funds, directed all or almost all of the capital invested in the Funds – some billions of dollars – to BLMIS for investment. When BLMIS was exposed as a Ponzi scheme, the Funds, and, in turn, the investors in the Funds, lost virtually all of their

investments.[4]   Defendants, however, had for years received management and performance fees in connection with these investments which, among other things, Plaintiffs now seek to recover under various tort and contract theories.

Plaintiffs in _Ferber_ are two limited partners of GS, who commenced a derivative action in state court on February 13, 2009. The _Ferber_ action was brought "in the name of and for the benefit of Greenwich Sentry and its Limited Partners." (_Ferber_ Complaint ¶ 1.)   Plaintiff in _Pierce_ is a limited partner of GSP, who commenced a derivative action in state court several days later, on February 17, 2009.  The _Pierce_ action was similarly brought "in the name of and for the benefit of Greenwich Sentry Partners and its Limited Partners." (_Pierce_ Complaint ¶ 1.)  Plaintiffs in _Morning Mist_ are two shareholders of FSL, a British Virgin Islands Company, who commenced a derivative action in state court on May 15, 2009. The _Morning Mist_ action was brought "in the name of and for the benefit of Fairfield Sentry."   (_Morning Mist_ Complaint ¶ 1.) Finally, Plaintiff in _Sentry_ is FSL,[5] who commenced a direct action

---

[4] GS and GSP are limited partnerships, and thus, their investors are limited partners who purchased limited partnership interests.  FSL is a British Virgin Islands Company, and thus, its investors are shareholders, who purchased shares in FSL.

[5] On July 21, 2009, the British Virgin Islands High Court entered an order granting an application for the liquidation of FSL and appointing Christopher Stride and Kenneth Krys, of Krys Associates, as the joint liquidators of FSL ("Liquidators"). (See Letter from Jack Yoskowitz, Esq., dated Aug. 14, 2009.)  On October 2, 2009, the Liquidators requested to be substituted as plaintiffs in _Sentry_.  (See Letter from David J. Molton, Esq., dated Oct. 2, 2009.)  On October 14, 2009, this Court granted the Liquidators' request.  See Order, dated Oct. 14, 2009.  This

4

on May 29, 2009, "to recover, among other things, in excess of $919 million in investment management and performance fees that [FSL] paid Defendants based on inflated net asset value reports derived from [FSL]'s investments with BLMIS and C&M Trading." (Sentry Complaint ¶ 1.)

Defendants removed each of these actions to this Court, pursuant to CAFA. Plaintiffs subsequently moved to remand the actions to state court, arguing that these actions do not meet the requirements of CAFA. (See Ferber's Memorandum of Law, dated Apr. 8, 2009 ("Ferber Mem."), at 1; Pierce's Memorandum of Law, dated Apr. 14, 2009 ("Pierce Mem."), at 1; Morning Mist's Memorandum of Law, dated June 8, 2009 ("Morning Mist Mem."), at 1; Fairfield Sentry Limited's Memorandum of Law, dated July 10, 2009 ("FSL Mem."), at 2.) In opposition, Defendants argue that "[c]laims brought by or for the benefit of hundreds of investors in funds associated with the Fairfield Greenwich Group to recover losses arising from the Madoff Ponzi scheme are 'mass actions' under CAFA and therefore were properly removed to this Court." (Defendant FGA's Opposition to the Motions to Remand By the Ferber, Pierce, Morning Mist and Sentry Plaintiffs, dated July 27, 2009 ("Opp. Mem."), at 1.)

**DISCUSSION**

**I.   Legal Standards for Removal and Remand**

---

substitution has no effect on the outcome of the instant motion. Thus, in this Opinion, the Court will continue, for simplicity's sake, to refer to the plaintiff in Sentry as FSL.

A defendant who seeks to remove a civil action to federal court must timely file a notice of removal in the district court. 28 U.S.C. § 1446(b). In addition, a defendant may only remove an action from state court if the case could have been originally filed in federal court. See 28 U.S.C. § 1441(a); Vera v. Saks & Co., 335 F.3d 109, 113 (2d Cir. 2003). Thus, removal is prohibited unless there is federal subject matter jurisdiction. See Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987); see also Vera, 335 F.3d at 113 ("A district court must remand a case to state court 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'") (quoting 28 U.S.C. § 1447(c)).

On a motion to remand, the party seeking removal bears the burden of establishing to a "reasonable probability" that removal is proper. See Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006); DiTolla v. Doral Dental IPA of New York, 469 F.3d 271, 275 (2d Cir. 2006); see also Wilds v. UPS, Inc., 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (noting that "the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise") (quoting Bellido-Sullivan v. AIG, Inc., 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000)). Any doubts regarding the propriety of removal are resolved in favor of remand, and "federal courts construe the removal statute narrowly." Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994) (quoting Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991)); see also Fernandez v. Hale Trailer Brake & Wheel, 332 F.

6

Supp. 2d 621, 623 (S.D.N.Y. 2004).

Here, none of the parties disputes that Defendants timely removed all four actions. Rather, Plaintiffs argue that this Court lacks subject matter jurisdiction under CAFA.

## II. Subject Matter Jurisdiction Under CAFA

### A. Legal Standard

CAFA establishes federal subject matter jurisdiction for certain matters filed as "class actions" under Rule 23 of the Federal Rules of Civil Procedure, or an equivalent state provision. See 28 U.S.C. § 1332(d)(1)(B). Jurisdiction only extends to cases that include a plaintiff class of at least 100 members, who satisfy minimum diversity and an amount in controversy requirement of $5,000,000, as set forth in §§ 1332(d)(2)-(10). In addition, even if not styled as a "class action," a lawsuit filed in state court may still be "deemed to be a class action removable" to federal court under CAFA if it qualifies as a "mass action," and otherwise meets the criteria in §§ 1332(d)(2)-(10). See id. § 1332(d)(11). CAFA defines a "mass action" as a suit "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." Id. § 1332(d)(11)(B)(i).

To meet the minimum diversity requirement of CAFA, it is sufficient that "any member of a class of plaintiffs is a citizen of a State different from any defendant." Id. § 1332(d)(2)(A). Alternatively, minimum diversity may be satisfied if either (1) "any member of a class of plaintiffs is a foreign state or a

7

citizen or subject of a foreign state and any defendant is a citizen of a State," or (2) "any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." Id. § 1332(d)(2)(B)-(C).

To meet the amount in controversy requirement of $5,000,000, CAFA permits an aggregation of the claims of all class members. See id. § 1332(d)(6). In the case of a "mass action," however, "jurisdiction shall exist only over those plaintiffs whose claims" exceed $75,000. Id. § 1332(d)(11)(B)(i). Thus, CAFA envisions a scenario under which a federal court has jurisdiction over the "mass action," but the claims of those individual plaintiffs whose amount in controversy falls below $75,000 may be remanded to state court. See id.; see also S. Rep. No. 109-14, at 42 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 40.

If a defendant has successfully met his burden of demonstrating the propriety of removal, see Blockbuster, Inc., 472 F.3d at 58, a plaintiff may still prevail on a motion to remand upon a showing that one of CAFA's enumerated exceptions applies. See New Jersey Carpenters Vacation Fund v. Harborview Mortgage Loan Trust, 581 F. Supp. 2d 581, 588 (S.D.N.Y. 2008). CAFA's exceptions preclude federal subject matter jurisdiction over "any class action that solely involves a claim . . . (A) concerning a covered security . . . ; (B) that relates to the internal affairs or governance of a corporation or other form of business enterprise . . . ; or (C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or

8

pursuant to any security . . . ."  28 U.S.C. § 1332(d)(9)(A)-(C)
(emphasis added).  If a complaint contains a claim implicating one
of CAFA's exceptions, but also involves other non-excepted claims,
the case should remain in federal court.  See, e.g., Puglisi v.
Citigroup Alternative Invs., No. 08 Civ. 9774 (NRB), 2009 WL
1515071, at *2-3 (S.D.N.Y. May 29, 2009) (holding that no CAFA
exception applied when, despite the fact that the case involved the
internal affairs of a business enterprise, the complaint also
alleged "improper marketing and promotion of the fund at issue").

B.    The Parties' Claims

Plaintiffs here do not dispute that the minimal diversity
requirement of CAFA is met.  Nor do they claim that the aggregate
amount in controversy is less than $5,000,000.[6]  Rather, Derivative
Plaintiffs argue that CAFA "manifestly does not confer . . .
jurisdiction over derivative actions" brought on behalf of a
corporate entity by one, or in the case of Pierce and Morning Mist,
two, limited partners or shareholders of a nominal defendant.  (See
Ferber Mem. at 1; Pierce Mem. at 1; Morning Mist Mem. at 1.)
Similarly, in Sentry, FSL argues that CAFA does not confer
jurisdiction over "direct state law claims against the . . .
Defendants" brought by the corporate entity itself (FSL).  (See FSL
Mem. at 2.)  In Plaintiffs' view, any recovery would go to the

_____

[6] Plaintiffs in Ferber, Pierce, and Morning Mist do,
however, argue that the individual limited partners or
shareholders in GS, GSP, and FSL may have suffered losses less
than $75,000.  Given this Court's lack of subject matter
jurisdiction over the entire action, see infra, the Court need
not address this argument.

Funds, and, thus, there is only one plaintiff in each action. (See Ferber Mem. at 5; Pierce Mem. at 6; Morning Mist Mem. at 6; FSL Mem. at 6.)

In response, Defendants contend that these four cases are "mass actions" under CAFA, since they were brought "for the benefit of [over 100] investors in a non-operating hedge fund." (Opp. Mem. at 1.) According to Defendants, GSP (and by implication GS) is made up of over 100 beneficial owners,[7] and FSL has over 700 shareholders. (See id. at 10-11.) Thus, Defendants propose an interpretation of CAFA that would require this Court to infer the existence of multiple plaintiffs when, in fact, there are, at most, only two.

1.  The Derivative Actions - Ferber, Pierce, and Morning Mist

The question of whether a derivative action brought on behalf of a corporation or partnership in which there are over 100 investors qualifies as a "mass action" under CAFA is a matter of first impression in this Court. Derivative Plaintiffs argue that the obvious answer to this question is that it does not, because "[t]o qualify as a 'mass action,' a case must involve 'monetary relief claims of 100 or more persons [that] are proposed to be tried jointly.'" (See Derivative Plaintiffs' Reply Memorandum of

---

[7] Defendants offer little in the way of the number of limited partners in GS. For purposes of this Opinion, the Court will assume that the counting for GS mirrors that of GSP, since GSP is GS's successor fund. In any event, the Court rejects Defendants' counting method, and thus, this omission is of little consequence.

Law, dated Aug. 21, 2009 ("Deriv. Pl.'s Reply Mem."), at 2 (quoting 28 U.S.C. § 1332(d)(11)(B)).) On its face, Ferber is a derivative action brought by two limited partners of GS to recover losses on behalf of GS. (See Ferber Complaint ¶ 1.) Similarly, Pierce is a derivative action brought by one limited partner of GSP, GS's successor fund, to recover losses on behalf of GSP. (See Pierce Complaint ¶ 1.) Finally, Morning Mist is a derivative action brought by two shareholders of FSL to recover losses on behalf of FSL. (See Morning Mist Complaint ¶ 1.) Therefore, the named plaintiffs in Ferber, Pierce, and Morning Mist fall woefully short of the 100-person requirement of CAFA.

Defendants, however, ask the Court to look beyond the derivative nature of Ferber, Pierce, and Morning Mist, and count each of the "beneficial equity holders" in the Funds as individual plaintiffs in a larger "mass action." (See Opp. Mem. at 9.) The Court rejects Defendants' approach and holds that derivative actions are not "mass actions" subject to federal court jurisdiction under CAFA.

To reach CAFA's requirement of 100 plaintiffs, Defendants focus on the 700 shareholders of FSL in the Morning Mist action.[8] For GSP, Defendants first look to the limited partners and then go further, since GSP currently has only 29 limited partners. (See Declaration of Paul J. Sirkis, dated July 27, 2009 ("Sirkis

_____

[8] Defendants appear to make similar arguments with respect to Sentry. As Sentry is a direct claim brought by FSL itself, that action is discussed in further detail, infra.

Decl."), ¶ 2.)

To overcome this hurdle, Defendants ask the Court to disregard the investors of record in GSP, and instead count the underlying "beneficial equity holders" of those 29 limited partners. Because some of the investors of record in GSP are other corporate entities, as opposed to individuals, Defendants argue that, for purposes of CAFA counting, the Court should include this second tier of investors (i.e., the investors in the investors). For example, eight limited partners of GSP are themselves other partnerships and trusts. Defendants count both the beneficiaries of those trusts and the partners of those partnerships as alleged "class members." (See id. ¶¶ 5-6.) Thus, eight limited partners become upwards of sixty "class members" through Defendants' two-tiered approach. (See id. ¶ 7.) Nevertheless, Defendants still find themselves short of CAFA's 100-person threshold.

In continuing their ascent up the CAFA ladder, Defendants propose counting yet a *third* tier of investors. In other words, Defendants count the investors in investors in investors in GSP, stopping only - as far as the Court can tell - because they eventually reached their target of 100. As a clarifying example, Defendants generously count each of the individual members of an LLC, that serves as the general partner of a partnership, that, in turn, is a limited partner in GSP. (See Amended Declaration of Paul J. Sirkis, dated July 31, 2009 ("Sirkis Am. Decl."), Exhibit ("Ex.") 54.) Defendants, through this triple-tiered counting method, conclude that there are a total of 109 current "beneficial

equity holders" in GSP. (See Further Supplemental Declaration of Paul J. Sirkis, dated September 8, 2009 ("Sirkis Further Supp. Decl."), ¶ 5.)

The reach of CAFA simply does not extend this far, and the Court declines to adopt Defendants' astoundingly expansive approach. Cf. Lupo, 28 F.3d at 274 (noting that "federal courts construe the removal statute narrowly").[9]

      a.   CAFA, Its Legislative History, and the Relevant Case Law

Notwithstanding their counting flaws, Defendants insist CAFA permits removal of derivative actions that could indirectly benefit

---

[9] Although the Court does not accept Defendants' premise, it is questionable whether Defendants' counting method is at all accurate. For example, Defendants list one particular limited partner as two individuals who allegedly invested "as joint tenants," despite the fact that the corresponding subscription agreement was executed by an individual limited partner, with the designated space for any "joint tenant" left blank. (See Sirkis Decl. ¶¶ 2(xv), 7; Sirkis Am. Decl. Ex. 15; see also Supplemental Declaration of Paul J. Sirkis, dated Aug. 17, 2009 ("Sirkis Supp. Decl."), Ex. 15, at 8 ("Individual Ownership" box checked off).) Defendants denote another limited partner as three individuals, who also invested "as joint tenants." (See Sirkis Decl. ¶¶ 2(xii), 7.) Derivative Plaintiffs, however, have since pointed out that two of those three individuals are now deceased. (See Affidavit of Frank E. Pierce III in Support of Motion to Remand, dated Aug. 21, 2009.) When a joint tenant dies, the surviving tenants own the entirety of the property. See In re Covert, 97 N.Y.2d 68, 75, 735 N.Y.S.2d 879, 884 (2001). Finally, the two plaintiffs in Pierce, limited partner Frank E. Pierce, and limited partner Frank E. Pierce IRA, are counted by Defendants as two separate "class members." (See Sirkis Decl. ¶¶ 2(x)-(xi), 7.) But should this Court look to the "beneficial equity holders," as Defendants suggest, Mr. Pierce is clearly the only "beneficial equity holder" for both limited partners. The Court also notes that Defendants themselves have already amended their original count from 111 to 109, further calling into question their counting method and its underlying support. (See Sirkis Further Supp. Decl. ¶ 5.)

over 100 investors, because recovery by GS, GSP, or FSL might ultimately trickle down to the limited partners or shareholders. (See Opp. Mem. at 9.) In order to adopt the expansive reading of CAFA proposed by Defendants, the Court must be persuaded, at the very least, that there is some language in the statute, legislative history, or relevant case law that supports such an interpretation. Indeed, there is none.

The first step in statutory interpretation is to "look to the statute's plain meaning; if the language is unambiguous, we will not look farther." See Estate of Pew v. Cardarelli, 527 F.3d 25, 30 (2d Cir. 2008) (citing Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149 (1992)). CAFA defines a "mass action" as a case in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . . ." See 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). On this basis alone, Defendants' argument is unavailing. The claims in each of these actions are brought by no more than two partners or shareholders on behalf of one entity, not "100 or more persons" as the statute clearly requires.

Although the statute is clear and unambiguous, the legislative history also does not support Defendants' argument. The Senate Report on CAFA delineates the Act's three purposes: (1) "to assure fair and prompt recoveries for class members with legitimate claims;" (2) "to restore the intent of the Framers by expanding federal jurisdiction over interstate class actions;" and (3) "to

14

benefit society by encouraging innovation and lowering consumer prices." S. Rep. No. 109-14, at 30, as reprinted in 2005 U.S.C.C.A.N. at 29. Removing derivative actions to federal court simply because the corporate entity on whose behalf recovery is sought is made up of more than 100 shareholders or limited partners would further none of these causes.

But despite the clear and unambiguous statutory language and the intent of the Act's drafters, Defendants selectively quote from CAFA's legislative history in an effort to support their bid for removal. Defendants argue that the "100 or more persons" need not be named plaintiffs, because CAFA was designed to "strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." (See Opp. Mem. at 6 n.6 (quoting S. Rep. No. 109-14, at 35, as reprinted in 2005 U.S.C.C.A.N. at 34).) Defendants' argument misses the point and effectively puts the cart before the horse. While Congress intended to put "interstate cases of national importance" before the federal courts, a removing defendant must still establish to a "reasonable probability" that the express requirements of CAFA are met. See Blockbuster, Inc., 472 F.3d at 58. In other words, Defendants must first show that the action consists of claims of "100 or more persons [that] are proposed to be tried jointly." See 28 U.S.C. § 1332(d); see also Greenwich Fin. Servs. Distressed Mortgage Fund 3, LLC v. Countrywide Fin. Corp., No. 08 Civ. 11343 (RJH), 2009 WL 2499149, at *6 (S.D.N.Y. Aug. 14, 2009) (stating that "Congress did not grant this Court jurisdiction over all class actions having a

'national impact'"); 151 Cong. Rec. S1081 (daily ed. Feb. 8, 2005) (statement of Sen. Lott) ("Let's be clear. We are only talking about those cases . . . in which there are <u>at least 100 plaintiffs</u> . . . .") (emphasis added). Defendants have not met their burden here.

Derivative Plaintiffs - as well as plaintiffs in any action - are the "master[s] of the complaint," free to "preclude removal by electing to disregard an available federal dimension of a claim." <u>Segal v. Varonis Sys., Inc.</u>, 601 F. Supp. 2d 551, 552 (S.D.N.Y. 2009) (quoting <u>Caterpillar</u>, 482 U.S. at 392, 107 S. Ct. at 2425). Defendants maintain that the Court should disregard Plaintiffs' election to file derivative claims. As support, Defendants contend that Congress included "mass actions" in CAFA to "prevent plaintiffs from circumventing federal subject matter jurisdiction through artful pleading."[10] (<u>See</u> Opp. Mem. at 7.) Although Congress noted that "mass actions are simply class actions in disguise," this comment was targeted at plaintiffs who "propos[e] a class that appears to be gerrymandered solely to avoid Federal jurisdiction." <u>See</u> S. Rep. No. 109-14, at 36, 47, <u>as</u> <u>reprinted</u> <u>in</u> 2005 U.S.C.C.A.N. at 36, 44.

---

[10] "Artful pleading" is a legal doctrine, recognized by the Second Circuit as a "drafting technique that may also be characterized as creative concealment, a 'corollary to the well-pleaded complaint rule, [which] prevents a plaintiff from avoiding removal by framing in terms of state law a complaint the real nature of which is federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint.'" <u>Sung v. Wasserstein</u>, 415 F. Supp. 2d 393, 397 (S.D.N.Y. 2006) (quoting <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 55 (2d Cir. 1998)).

Here, Derivative Plaintiffs have not crafted an evasive complaint or concealed the true nature of their claims. Derivative Plaintiffs have simply opted to file derivative claims, as they are free to do. See S. Rep. No. 109-14, at 37, as reprinted in 2005 U.S.C.C.A.N. at 36 (noting that "if the class definition and claims appear to follow a 'natural' pattern, that consideration would favor allowing the matter to be handled by a state court").

CAFA's legislative history makes clear that Congress envisioned "mass actions" as claims by multiple plaintiffs "consolidated by State court rules," but not otherwise pled as class actions. See 151 Cong. Rec. S1151 (daily ed. Feb. 9, 2005) (statement of Sen. Reid). More specifically, Congress drafted the "mass action" provision of CAFA primarily to cover actions brought by multiple plaintiffs in states such as Mississippi that "do not provide a class action device." See 151 Cong. Rec. S1081 (daily ed. Feb. 8, 2005) (statement of Sen. Lott); see also 151 Cong. Rec. S1235-36 (daily ed. Feb. 10, 2005) (statement of Sen. Durbin) ("And I understand . . . that these so-called mass actions are currently filed only in Mississippi and West Virginia. . . . I agree with the proponents that the scope of th[e] [mass action provision] is limited."). As the Senate Report on the statute noted, "lawsuits that resemble a purported class action should be considered class actions . . . ." S. Rep. No. 109-14, at 35, as reprinted in 2005 U.S.C.C.A.N. at 34. Recent case law further supports the intent of the Act's drafters. See Bullard v. Burlington N. Santa Fe Ry. Co., 535 F.3d 759, 762 (7th Cir. 2008) ("Think of 15 suits, with (say)

10 plaintiffs each, that are proposed to be tried jointly. The prospect of a single trial with 150 plaintiffs would convert all 15 suits into one 'mass action' under § 1332(d)(11)(B) . . . .").

A derivative suit is neither a claim by multiple plaintiffs "consolidated by State court rules," nor a "class action in disguise." A derivative suit is a separate and distinct type of suit, long-established under New York law, as a vehicle for recovery by a corporation or other business enterprise:

> Suing as a stockholder the plaintiff's right of action is a derivative one. He sues, not primarily in his own rights, but in right of the corporation. The wrongs of which he complains are wrongs to the corporation. They were not aimed at him and did not involve his personal, individual rights. He suffers as a member of the corporation, and it is the party to sue for and recover damages for the wrongs, or equitable relief against the frauds alleged.

Alexander v. Donohoe, 143 N.Y. 203, 211 (1894). In fact, "[a]n individual shareholder has no right to bring an action in his own name and in his own behalf for a wrong committed against the corporation, even though the particular wrong may have resulted in a deprecation or destruction of the value of his corporate stock." Solutia Inc. v. FMC Corp., 385 F. Supp. 2d 324, 331 (S.D.N.Y. 2005) (citations omitted); accord Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005). The fact that any recovery here would go to the corporate entities undermines Defendants' argument that the derivative actions are "really" class actions. See Primavera Familienstiftung v. Askin, No. 95 Civ. 8905 (RWS), 1996 WL 494904, at *15 (S.D.N.Y. Aug. 30, 1996) ("Claims based on corporate mismanagement or third-party action that resulted in

diminution of share value belong to the corporation and can only be brought by it."); see also Arlia v. Blankenship, 234 F. Supp. 2d 606, 612 n.2 (S.D. W. Va. 2002) ("[I]n a state derivative suit for misappropriation of information, as with all other derivative claims, any recovery goes to the corporation, not the shareholders. . . . This is another example of why the derivative claim here is not, contrary to the defendants' arguments, 'really' a shareholder class action . . . .") (citing Diamond v. Oreamuno, 24 N.Y.2d 494, 301 N.Y.S.2d 78 (1969)).

Given the dearth of case law on the treatment of a derivative action under CAFA, Defendants cite La. ex rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418 (5th Cir. 2008), in support of their position. (See Opp. Mem. at 11.) Caldwell, however, supports remand, rather than removal, of the derivative actions. In Caldwell, the Attorney General of Louisiana filed an antitrust action in state court parens patriae, for the benefit of individual insurance policyholders. See Caldwell, 536 F.3d at 422-23. After the defendants removed the action to federal court under CAFA, the plaintiff moved to remand, arguing that the state of Louisiana was the only plaintiff. See id. at 423. In denying the plaintiff's motion, the court held that, although styled as an action brought by one plaintiff, the Attorney General was "only a nominal party" and the numerous policyholders were the "real parties in interest." See id. at 428. The Fifth Circuit based its decision on a state statute denoting the policyholders as the "real parties in interest" for the treble damages sought in the antitrust action.

See id. at 429 (citing La. Rev. Stat. Ann. § 51:137).

Here, as in Caldwell, the state statutes giving a shareholder or limited partner authority to bring a derivative action designate the corporate entity as the "real party in interest." See, e.g., N.Y. Bus. Corp. Law § 626(a) (A shareholder's derivative action "may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor."); N.Y. P'ship Law § 121-1002(a) (A limited partner's derivative action "may be brought in the right of a limited partnership to recover a judgment in its favor."). Notwithstanding the statutory language, Defendants have, in fact, argued - and, in effect, conceded - that individual investors in the Funds have no right to bring a direct action. (See Letter to the Court from Mark G. Cunha, dated Oct. 9, 2009, at 7 n.7 (arguing that Plaintiffs in a related, but separate, class action proceeding against Defendants "improperly have brought their claims directly rather than derivatively, despite the fact that the alleged injuries were sustained by the [Funds] and only indirectly, if at all, by Plaintiffs as a result of their equity holdings").)[11]

> b. The Securities Litigation Uniform Standards Act

Defendants note that the Securities Litigation Uniform

---

[11] Further, one cannot overlook the Fifth Circuit's discussion of CAFA's legislative history, in which Congress "considered and rejected an amendment that would have exempted class actions filed by state attorneys general from removal under CAFA." See Caldwell, 536 F.3d at 424 (citing 151 Cong. Rec. S1163-64 (daily ed. Feb. 9, 2005) (statement of Sen. Hatch)). By way of analogy, Congress never "considered and rejected" the exclusion of derivative actions from the grasp of CAFA. Nor did it need to since derivative actions are separate and distinct from class actions. See supra.

Standards Act ("SLUSA"), which provides for removal to federal court of certain securities fraud class actions, expressly excludes derivative actions. See 15 U.S.C. §§ 77p, 78bb. Defendants seize upon CAFA's absence of an enumerated exclusion for derivative actions as alleged proof that Congress intended such actions to fall into the jurisdictional arms of the Act. (See Opp. Mem. at 10-11.) In essence, Defendants argue that the Court should infer meaning from Congress's silence in CAFA, in light of the express language in SLUSA, enacted seven years earlier. Leaving aside the obvious question of why a different statute's language is relevant to construing CAFA, it is not surprising that Congress found it necessary to address derivative actions in SLUSA, a statute targeting cases involving securities fraud. Moreover, a comparison of SLUSA and CAFA further underscores why Congress may have included a carve-out for derivative actions in SLUSA, but not CAFA.

SLUSA defines a class action, in part, as "any single lawsuit in which . . . damages are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. §§ 77p, 78bb (emphasis added). SLUSA, had it not expressly carved out derivative actions, would have undoubtedly left room for interpretation with its vague "on behalf of" language.[12] CAFA, on the other hand,

_____

[12] Judge Marrero, in Sung v. Wasserstein, 415 F. Supp. 2d 393 (S.D.N.Y. 2006), recognized this potential problem in considering whether SLUSA required remand of a derivative claim. See Sung, 415 F. Supp. 2d at 407. Judge Marrero agreed that, in light of SLUSA's definition of a class action, "the Court might be tempted to ignore" the derivative nature of the claim. Id. at 408. Yet, due to the statute's enumerated exclusion of derivative actions, the case was remanded to state court. See id.

defines a "mass action," in part, as a suit "in which monetary relief claims of 100 or more persons are proposed to be tried jointly." 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). CAFA's drafters made clear that the mass action provisions only cover "those cases . . . in which there are at least 100 plaintiffs." 151 Cong. Rec. S1081 (emphasis added). Therefore, it is of limited significance that Congress did not draft an exclusion for derivative claims in CAFA.

In a sur-reply brief, Defendants also argue that, in the absence of an express "counting provision" in CAFA (as in SLUSA), the Court may effectively ignore the derivative nature of the claims and consider the underlying investors in GS, GSP, and FSL as the "real parties in interest." (See Defendant FGA's Sur-Reply to Derivative Plaintiffs' Reply in Support of Their Motions to Remand, dated Sept. 8, 2009 ("Sur-Reply Mem."), at 3.) Under SLUSA, "a corporation, investment company, pension plan, partnership, or other entity, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action." 15 U.S.C. § 78bb(f)(5)(D). CAFA has no comparable provision. Thus, Defendants claim that CAFA's silence on the issue of counting can be inferred to mean that a corporation need not be treated as one person.

In this Court's view, the failure of Congress to say what is obvious in black letter law - that a corporate party to a lawsuit is considered one entity or person - does not mandate an interpretation of CAFA that views a corporate entity as the sum of

its investors. Moreover, securities fraud class actions typically involve corporate entities, making Congress's decision to address their counting an obvious one. In any event, and as noted above, SLUSA defines a "covered class action" as a single lawsuit in which "damages are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. §§ 77p, 78bb (emphasis added). CAFA contains no such "on behalf of" language, and therefore, it was unnecessary for Congress to spell out an enumerated counting provision.[13]

Accordingly, based on the plain language of the statute and the legislative history, the Court rejects Defendants' position and holds that derivative actions are not "mass actions" subject to federal court jurisdiction under CAFA.[14]

    2.   The Direct Action - Sentry

[13] In support of their argument, Defendants cite State of Oregon v. Oppenheimerfunds, Inc., No. 09-cv-6135, 2009 WL 2517086 (D. Or. Aug. 14, 2009). (See Sur-Reply Mem. at 3.) As that case was decided under SLUSA, it is not relevant to the instant motions.

[14] Derivative Plaintiffs also argue that these cases fall under an enumerated exception to CAFA jurisdiction, namely that the actions "solely involve a claim . . . that relates to the internal affairs or governance of a corporation or other form of business enterprise." See 28 U.S.C. § 1332(d)(9)(B). Because Defendants have failed to meet their burden to show to a "reasonable probability" that these cases are "mass actions" under CAFA, the Court need not address the exceptions to CAFA. The Court notes, however, that it is likely the exception would not apply, since (1) Derivative Plaintiffs make allegations of improper marketing in addition to their claims regarding the internal affairs of Defendants, see Puglisi, 2009 WL 1515071; and (2) Derivative Plaintiffs also filed claims against third-party auditors and administrators, and thus, cannot show that these actions "solely involve a claim" regarding the internal affairs of the Funds. See 28 U.S.C. § 1332(d)(9)(B).

23

Sentry, a direct claim brought by FSL itself, can be disposed of rather easily. Defendants claim that Sentry is "essentially an action to recover losses on behalf of the shareholders of the Fund." (Opp. Mem. at 6.) However, the sole plaintiff in Sentry is FSL, a British Virgin Islands Company. FSL filed a direct claim to recover losses that accrued directly to FSL. There are no allegations in the Sentry complaint that the action is brought "on behalf of" FSL's shareholders. Even under the most liberal interpretation of CAFA, this case simply does not fall within the statutory definition of a "mass action."

As FSL correctly argues, "[t]he number of individuals holding shares in [FSL] is irrelevant because none of them are plaintiffs in this action." (Sentry Mem. at 2.) If the Court adopts Defendants' position, "literally any company, public or private, with more than 100 shareholders could be deprived of its chosen forum and haled into federal court." (Id.)

A direct action by a plaintiff corporation or other business enterprise, alleging harm to it by a defendant, is an action that belongs exclusively to the corporation. See Lemgruber, 385 F. Supp. 2d at 224 (noting that "any breach of fiduciary duty claims arising out of injuries to the corporation in most cases may only be brought by the corporation itself or derivatively on its behalf") (citation omitted); accord Abrams v. Donati, 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 783 (1985) (same). And it is for this reason that any shareholder seeking to bring a claim on behalf of a corporation must first make a demand of the board to initiate the

24

suit.  See N.Y. Bus. Corp. § 626(c).  This Court will not transform an otherwise direct claim by a single plaintiff into a "mass action," simply because the company's shareholders may ultimately derive some benefit from the litigation.

FSL correctly notes that Defendants bear the burden of proof in opposing remand, and Defendants' "unremarkable averment" that FSL has more than 700 shareholders is insufficient to support removal of the direct claims in Sentry.  (See Reply Memorandum of Law in Further Support of Fairfield Sentry Limited's Motion for Remand to State Court, dated Nov. 6, 2009 ("Sentry Reply Mem."), at 8.)  This is not a case in which the claims of 100 or more persons are proposed to be tried jointly.

For these reasons, and those enumerated in Section II.B.1, supra, the Court agrees with FSL that direct claims brought by a single corporation are not subject to CAFA.[15]

## III. Attorneys' Fees

Plaintiffs in all four actions request an award of attorneys' fees and costs.  (See Ferber Mem. at 8-9; Pierce Mem. at 9; Morning Mist Mem. at 9; Sentry Mem. at 8-9.)  Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The Supreme Court has held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis

---

[15] Given this conclusion, the Court need not address FSL's arguments regarding CAFA's exceptions to federal subject matter jurisdiction.

for removal." <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141, 126 S. Ct. 704, 708 (2005).

Plaintiff's motion gives the Court pause. Defendants' position on removal is directly contradicted by the plain language of CAFA. In their bid for removal, however, Defendants raised novel issues of law that required this Court to interpret a recently enacted federal statute. Defendants directed the Court's attention to both SLUSA's express exclusion of derivative actions and its counting provision, and noted the absence of such language in CAFA. Without any clear authority in this Circuit addressing the issues raised in the remand motions, the Court is reluctant to characterize Defendants' arguments as objectively unreasonable. Accordingly, the Court recommends that Plaintiffs' requests for attorneys' fees and costs be denied.

### CONCLUSION

For the reasons stated above, this Court recommends that Plaintiffs' motions be granted and that each of the four actions be remanded to state court. The Court further recommends that Plaintiffs' requests for attorneys' fees be denied. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. <u>See also</u> Fed. R. Civ. P. 6(a), (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Victor Marrero, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of

time for filing objections must be directed to Judge Marrero. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 155, 106 S. Ct. 466, 475 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully Submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:     November 13, 2009
           New York, New York

27