**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────x
:
ANWAR, et al. v. FAIRFIELD GREENWICH     : Master File No. 09 CV 0118 (VM)
LIMITED, et al.                          : 09 CV 5012 (VM) (<u>Morning Mist</u> Action)
                                         : 09 CV 2366 (VM) (<u>Ferber</u> Action)
                                         : 09 CV 2588 (VM) (<u>Pierce</u> Action)
─────────────────────────────────────x


### DERIVATIVE PLAINTIFFS' RESPONSE TO DEFENDANT FAIRFIELD GREENWICH ADVISORS' OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON REMAND MOTIONS


**MILBERG LLP**
One Pennsylvania Plaza
New York, New York 10119
Tel.: (212) 594-5300
Fax: (212) 868-1229

**SEEGER WEISS LLP**
One William Street
New York, New York 10004
Tel.: (212) 584-0700
Fax: (212) 584-0799

*Attorneys for Derivative Plaintiffs*

December 17, 2009

Plaintiffs in the *Ferber*, *Pierce* and *Morning Mist* derivative actions, pursuant to Fed. R. Civ. P. 72(b)(2), respectfully submit this response to Defendant Fairfield Greenwich Advisors' (FGA's) Objection to the Magistrate Judge's Report and Recommendation on Remand Motions. The Report demonstrates that FGA has not met its burden of establishing CAFA jurisdiction to a "reasonable probability." *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006). Accordingly, the actions should be remanded.[1]

### A. CAFA's Language Defeats FGA's "Mass Action" Theory

As Magistrate Judge Katz found, "Defendants' position on removal is *directly contradicted by the plain language of CAFA*." Report at 26 (emphasis supplied). FGA claims these actions are "mass actions" and thus removable under CAFA. But "derivative actions are not 'mass actions' subject to federal court jurisdiction under CAFA," *id.* at 23, even if they have national impact and importance. *See Greenwich Fin. Servs. Distressed Mortgage Fund 3, LLC v. Countrywide Fin. Corp.*, 08 Civ. 11343, 2009 U.S. Dist. LEXIS 72885, at *17, 33 (S.D.N.Y. Aug. 18, 2009).

Under CAFA, a "mass action" involves "monetary relief claims of 100 or more persons [that] are proposed to be tried jointly …." 28 U.S.C. § 1332(d)(11)(B). *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1188 n.7 (11th Cir. 2007) ("mass action" is action "brought by 100 or more plaintiffs"). In each of the derivative cases, however, the monetary relief claims are of just one person -- the fund. Thus, any recovery here "would go to the corporate entities"; *i.e.*, the funds. Report at 18. FGA likewise conceded that in the *Anwar* class action,

---

[1] Exhibit A to FGA's Objection purports to attach the parties' "substantive submissions" concerning the remand motions, *see* Obj. at 4 n.1, but omits a copy of Derivative Plaintiffs' Sur-Sur Reply Brief. We attach a copy as Exhibit A hereto. Derivative Plaintiffs incorporate by reference all arguments made in support of remand, as set forth in prior submissions.

> [The Class Plaintiffs] improperly have brought their claims directly rather than
> derivatively, despite the fact that the alleged injuries were sustained by the
> [Funds] and only indirectly, if at all, by Plaintiffs as a result of the equity
> holdings.

Report at 20 (first brackets added) (quoting Letter to the Court from FGA's counsel, dated Oct. 9, 2009, at 7 n.7).[2] Accordingly, the CAFA count is 99 persons short of the required 100.

FGA mischaracterizes these derivative actions as "mass actions," claiming they seek recovery of fees "incurred by individual investors based on their individual account balances in the investment funds." Obj. at 3. But FGA submitted no evidence supporting its accounting theory. And, any such internal fund accounting would not convert these derivative actions into actions seeking a joint trial of 100 persons' claims. *See Billings v. Bridgepoint Partners, LLC*, 21 Misc. 3d 535, 539 (N.Y. Sup. Ct. 2008); *Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12, 15-16 (Del. Ch. 1992). Moreover, even without regard to individual investor losses hypothesized by FGA, FGA concedes that the derivative actions seek recovery of losses "suffered by … the funds themselves," Obj. at 5, further undermining its argument.

### B. CAFA's Legislative History Undermines FGA's Argument

FGA's reliance on CAFA's legislative history is self-defeating. As Judge Katz found, "Defendants selectively quote" from legislative history, *see* Report at 15, and the history "does not support Defendants' argument." *Id.* at 14. Rather, the history confirms that the derivative actions are *not* mass actions, because they were not brought by 100 plaintiffs. *See* S. Rep. No. 109-14 at 46 (2005) (for "mass action," there must be 100 "named plaintiffs"). Additionally, the

---

[2] A copy of the letter ("Cunha Letter"), without exhibits, is attached as Exhibit B hereto. *See also* Obj. at 10 n.6 ("the alleged injury to the [*Anwar*] class members is derivative to the injury to the Funds."). FGA's concession is fatal, given its statement that the *Anwar* class action and the derivative actions seek "the same relief." Obj. at 4, *id*. at 11, 14.

2

flood of federal litigation that would ensue under FGA's approach would undermine CAFA's goal to provide a "narrowly-tailored expansion of federal diversity jurisdiction." *See id.* at 27.

### C. FGA Does Not Satisfy CAFA's 100-Person Requirement

CAFA does not permit FGA to count investors in a fund (for purposes of *Ferber* and *Morning Mist*), much less, as shown below, the beneficial holders of interests *in* investors in a fund (for purposes of *Pierce*). As FGA conceded, CAFA counts *only* the real parties in interest. *See* Dkt. No. 195, at 11-12.[3] In each derivative action, the only real party in interest is the fund. *Davenport v. Dows*, 85 U.S. 626, 627 (1873); *Mottolese v. Kaufman*, 176 F.2d 301, 302 (2d Cir. 1949) ("The real plaintiff in interest … is not the shareholder, but, as in all shareholders' derivative suits, the [company]"). With just one real party in interest in each derivative case, FGA fails the count test by 99.[4]

FGA's reliance on *Oregon ex rel. Oregon 529 Coll. Savings Bd. v. Oppenheimerfunds, Inc.*, 09 CV 6135, 2009 WL 2517086 (D. Or. Aug. 14, 2009) (Obj. at 12), is misplaced. To determine whether that case involved a class action on behalf of over 50 persons (and thus would be subject to SLUSA), the court counted a trust (with thousands of beneficiaries) as *one person*. SLUSA explicitly permits a single entity to be counted as multiple persons under a specified condition;[5] however, the condition was not met. *See id.* at *4-5.

---

[3] "Dkt. No." references are to 09 CV 0118.

[4] FGA wrongly relies on *Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857 (2d Cir. 1995) (Obj. at 4). That case involved neither CAFA nor a derivative suit. Indeed, the plaintiff (an agency) "d[id] not suggest that it suffered *any* corporate damage or pecuniary loss itself …" *Id.* at 862 (emphasis supplied). Here, the derivative complaints allege the funds were damaged, and FGA has effectively conceded that alleged damages were sustained *by the funds*. *See* Report at 20 (quoting Cunha Letter at 7 n.7).

[5] SLUSA treats an entity "as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action." 15 U.S.C. § 78bb(f)(5)(d).

Unlike SLUSA, CAFA contains *no provision* permitting the counting of multiple investors in an entity (or their beneficial owners). *See* Obj. at 13 ("In stark contrast with SLUSA, CAFA does not have a similar counting provision."). Thus, in each derivative case, the fund counts as just one person, making the final count 99 persons short.[6]

### D. FGA's Count in *Pierce* is Non-Probative and Based on Hearsay

Conceding there are only 29 current investors in GSP (the fund at issue in *Pierce*), FGA seeks to satisfy the 100-person requirement by claiming there are over 100 direct or indirect beneficial owners *of* those 29 investors. Obj. at 9 n.4. But CAFA does not permit the counting of investors in a fund, much less the "beneficial owners" or indirect owners *of* those investors. Had Congress wanted them to count for the 100-person requirement, it would have said so. *Compare with* 15 U.S.C. § 80a-3(c)(7)(B)(i) (referencing issuers whose securities "are beneficially owned by not more than 100 persons"); 15 U.S.C. § 78p(a)(1).

Even accepting FGA's radical position that investors *in* investors *in* a fund may be counted under CAFA, FGA's analysis fails. Almost all of FGA's supporting materials are unsworn letters and emails of non-parties, and thus rank hearsay. *See* Dkt. No. 202 (Amended Decl. of P. Sirkis, dated 7/31/09), at Exhs. 53-55, 57-62; Dkt. No. 235 (Further Supp. Decl. of P. Sirkis, dated 9/8/09), at Exhs. 1-2. For that reason alone, FGA cannot meet its burden. *See Cunningham Charter Corp. v. Learjet, Inc.*, No. 07 CV 233, 2008 U.S. Dist. LEXIS 61709, at *12 n.3, 14-15 (S.D. Ill. Aug. 13, 2008) (CAFA case).

---

[6] FGA speculates that Congress "did not intend to exclude derivative claims from coverage under CAFA." Obj. at 12. Even if true (*but see* Report at 21-22), for CAFA jurisdiction to exist, plaintiffs would have had to file a mass derivative action on behalf of 100 funds.

## CONCLUSION

FGA's proposed expansion of CAFA would destroy state court jurisdiction over virtually every $5 million claim by a public company. It would also flood the federal courts, undermining CAFA's goal to "modestly" expand diversity jurisdiction. The Court should reject FGA's approach and remand the actions.

Dated: December 17, 2009

Respectfully submitted,

/s/ Robert A. Wallner
Robert A. Wallner
Kent A. Bronson
**MILBERG LLP**
One Pennsylvania Plaza
New York, New York 10119
Tel.: (212) 594-5300
Fax: (212) 868-1229
rwallner@milberg.com
kbronson@milberg.com

Stephen A. Weiss
James E. O'Brien III
Christopher M. Van de Kieft
**SEEGER WEISS LLP**
One William Street
New York, New York 10004
Tel.: (212) 584-0700
Fax: (212) 584-0799
sweiss@seegerweiss.com
jobrien@seegerweiss.com
cvandekieft@seegerweiss.com

*Attorneys for Derivative Plaintiffs*