# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────x
:
ANWAR, et al. v. FAIRFIELD GREENWICH  : Master File No. 09 CV 0118 (VM)
LIMITED, et al.                       : 09 CV 5012 (VM) (Morning Mist Action)
                                      : 09 CV 2366 (VM) (Ferber Action)
                                      : 09 CV 2588 (VM) (Pierce Action)
───────────────────────────────────x


# DERIVATIVE PLAINTIFFS' SUR-SUR-REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTIONS TO REMAND


MILBERG LLP
One Pennsylvania Plaza
New York, New York 10119
Tel.: (212) 594-5300
Fax: (212) 868-1229

SEEGER WEISS LLP
One William Street
New York, New York 10004
Tel.: (212) 584-0700
Fax: (212) 584-0799

*Attorneys for Derivative Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT................................................................................................................................1

    A.    FGA Does Not Satisfy CAFA's 100-Person Requirement......................................1

    B.    FGA Mischaracterizes GSP's Subscription Agreements.........................................4

    C.    FGA Misconstrues CAFA's Internal Affairs Provision...........................................4

    D.    FGA Misconstrues the 100-Person Monetary Relief Claim Requirement ..............5

CONCLUSION............................................................................................................................5

# TABLE OF AUTHORITIES

## CASES

Page

*In re Am. Int'l Group, Inc.*,
   965 A.2d 763 (Del. Ch. 2009) ..........................................................................4

*Anwar v. Fairfield Greenwich Ltd.*,
   2009 U.S. Dist. LEXIS 37077 (S.D.N.Y. May 1, 2009) ..................................1

*Furtado v. Bishop*,
   604 F.2d 80 (1st Cir. 1979) ..............................................................................2

*La. ex rel. Caldwell v. Allstate Insurance Co.*,
   536 F.3d 418 (5th Cir. 2008) ...........................................................................2

*LaSala v. Bank of Cyprus Public Co. Ltd.*,
   510 F. Supp. 2d 246 (S.D.N.Y. 2007) ..............................................................3

*LaSala v. Bordier et Cie*,
   519 F.3d 121 (3d Cir.), *cert. denied*, 129 S. Ct. 593 (2008) ............................3

*Liman v. Midland Bank Ltd.*,
   309 F. Supp. 163 (S.D.N.Y. 1970) ...................................................................5

*Puglisi v. Citigroup Alternatives Invs. LLC*,
   08 CV 09774, 2009 WL 1515071 (S.D.N.Y. May 29, 2009) ..........................4

*Ross v. Bernhard*,
   396 U.S. 531 (1970) .........................................................................................5

*State of Oregon v. Oppenheimerfunds, Inc.*,
   09 CV 6135, 2009 WL 2517086 (D. Or. Aug. 14, 2009) ................................2

## STATUTES AND RULES

15 U.S.C. § 77p(f)(2)(A) .........................................................................................3

15 U.S.C. § 78bb(f)(5)(d) ........................................................................................3

28 U.S.C. § 1332(d) ............................................................................................4, 5

Fed. R. Evid. 803 .....................................................................................................1

Fed. R. Evid. 804 ...................................................................................................................1

Fed. R. Evid. 807 ...................................................................................................................1

## PRELIMINARY STATEMENT

Derivative Plaintiffs reply to FGA's 9/8/09 Sur-Reply Brief ("S-R Brf."). Rather than support removal, the brief confirms that the Derivative Actions should be remanded.

## ARGUMENT

### A. FGA Does Not Satisfy CAFA's 100-Person Requirement

FGA admits that, in the *Pierce* case, it improperly counted, even under its own (erroneous) theory, non-current investors in the fund's limited partners. It has now reduced its count to 109. S-R Brf. at 2; 9/8/09 Further Supplemental Declaration of Paul J. Sirkis ("Sirkis Further Decl.") ¶ 5. But that number -- purportedly of "current" beneficial owners of the fund's investors -- includes deceased persons, *see* 8/21/09 Plaintiffs' Reply Brief ("Reply") at 7, thus undermining the integrity of FGA's revised count.

Moreover, despite plaintiffs' earlier objection to FGA's reliance on hearsay, and the fact that the Court permitted FGA to take discovery to cure the objection,[1] FGA still relies on inadmissible hearsay. *See, e.g.*, Sirkis Further Decl. at Exhs. 1, 2 (attaching unsworn letters of non-parties); 7/31/09 Amended Declaration of Paul J. Sirkis ("Sirkis Am. Decl.").

Claiming that Federal Rule of Evidence 807 converts inadmissible documents into admissible documents simply because they were produced in response to a subpoena, FGA misstates the law. Rule 807 -- the so-called "residual exception" to the hearsay rule -- permits admission of statements having "equivalent circumstantial guarantees of trustworthiness" to the statements covered by Rules 803 and 804. For a statement to be admissible under Rule 807, however, the Court must additionally determine that "the statement is more probative on the

---

[1] *See Anwar v. Fairfield Greenwich Ltd.*, 2009 U.S. Dist. LEXIS 37077, at *16-17 (S.D.N.Y. May 1, 2009) (Katz, J.).

point for which it is offered *than any other evidence which the proponent can procure through reasonable efforts.*" Fed. R. Evid. 807 (emphasis supplied). FGA's reliance on letters and emails from non-parties fails to satisfy the "circumstantial guarantees" requirement. And, at a minimum, FGA needed to submit *sworn affidavits* from the non-parties.[2] *See Furtado v. Bishop*, 604 F.2d 80, 91 (1st Cir. 1979) (cited in S-R Brf. at 4) (admitting affidavit of "'eminent attorney'" and noting its "many indicia of ... trustworthiness").

Additionally, CAFA does not permit the counting of investors in a fund (for purposes of the *Ferber* and *Morning Mist* derivative cases), or the number of purported beneficial holders with interests in the investors in a fund (for purposes of the *Pierce* derivative case). As shown in our Reply Brief (at 2-3) -- and as FGA *conceded* in its 7/27/09 Opposition Brief ("Opp. Brf.") at 11-12 (quoting *La. ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 428, 430 (5th Cir. 2008)), CAFA counts *only* the real parties in interest. FGA does not dispute that, in a derivative case, the only real party in interest is the entity (*i.e.*, the fund).[3] For that reason, the CAFA count in each case is one.[4]

Unable to cite any CAFA case adopting its improper counting method, FGA now relies on a SLUSA case, *State of Oregon v. Oppenheimerfunds, Inc.*, 09 CV 6135, 2009 WL 2517086 (D. Or. Aug. 14, 2009). To determine whether that case involved a class action on behalf of

---

[2] FGA proffered an affidavit of *just one non-party*, *see* Sirkis Am. Decl. at Exh. 56, even though it had more than four months to pursue its jurisdictional discovery and obtain affidavits.

[3] FGA misrepresents that "Derivative Plaintiffs claim that the 'real party in interest' in a derivative suit is the named plaintiff." S-R Brf. at 2 (citing Reply Brf. at 2-3). As plaintiffs actually noted, the real party in interest is the fund, *not* the plaintiffs. *See* Reply Brf. at 2-3.

[4] The notion that a fund's investors (or their beneficial holders) may incidentally benefit by a monetary recovery to the fund does not make those persons the real parties in interest (much less ones pursuing their own monetary relief claims) for purposes of CAFA.

2

more than 50 persons (and thus would be subject to SLUSA), the court counted a trust -- which had thousands of beneficiaries -- as *one person*. SLUSA, as FGA notes, contains a provision permitting a single entity to be counted as multiple persons under a limited condition;[5] however, the condition was not met in that case. *See* 2009 WL 2517086, at *4-5.

Accepting, for argument sake, FGA's contention that SLUSA and CAFA cover "similar subject matter and passed in a similar time period," and that Congress employed different counting methods in the two statutes, *see* S-R Brf. at 3-4, FGA's reliance on SLUSA backfires. As shown by SLUSA, when Congress wanted to count multiple persons associated with a single entity (rather than just the entity itself), it drafted the statute accordingly. *See LaSala v. Bordier et Cie*, 519 F.3d 121, 132-33 (3d Cir.), *cert. denied*, 129 S. Ct. 593 (2008) (for SLUSA counting, "the court is to follow the *usual rule of not looking through an entity to its constituents <u>unless the entity was established for the purposes of bringing the action</u>*") (emphasis supplied); *LaSala v. Bank of Cyprus Public Co. Ltd.*, 510 F. Supp. 2d 246, 268 (S.D.N.Y. 2007) ("the beneficiaries of damages that would accrue to an entity will only be counted towards the 50-person limit under circumstances where the entity was established to participate in the action").

When it subsequently drafted CAFA, however, Congress included *no provision* permitting the counting of multiple investors in an entity (or any beneficial holders of interests in such investors). Thus, in each derivative case, only one entity (the fund) may be counted, making the final CAFA count 99 persons short.

---

[5] Specifically, SLUSA provides that

> a corporation, investment company, pension plan, partnership, or other entity, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action.

15 U.S.C. § 78bb(f)(5)(d); 15 U.S.C. § 77p(f)(2)(A).

3

### B.    FGA Mischaracterizes GSP's Subscription Agreements

As shown in the Reply Brief, GSP subscription agreements require the general partner's consent to the creation of *any* beneficial interests. FGA's response -- *i.e.*, that consent is required only in cases involving transfers of limited partner interests -- mischaracterizes the agreements. Because FGA has failed to show the required consent, FGA has not established beneficial interests, and thus may not rely upon such purported interests for counting purposes.

### C.    FGA Misconstrues CAFA's Internal Affairs Provision

CAFA's internal affairs provision applies where the claim "relates to the internal affairs of ... the corporation." 28 U.S.C. § 1332(d)(9)(B). FGA argues that the PwC claims "do not relate to internal affairs" (S-R Brf. at 6), but its own authority rejects the argument. *In re Am. Int'l Group, Inc.*, 965 A.2d 763, 817 (Del. Ch. 2009) (cited in S-R Brf. at 6; Opp. Brf. at 17) ("PwC's role as an auditor relates to the internal affairs of the corporation ...."). Thus, the PwC claims are covered by the plain language of CAFA's internal affairs provision.

FGA's reliance on *Puglisi v. Citigroup Alternatives Invs. LLC*, 08 CV 09774, 2009 WL 1515071 (S.D.N.Y. May 29, 2009), is misplaced. There, the court held that the internal affairs provision did not apply where the complaint challenged representations that the fund was a "*'safe,' 'secure,'* and *'low-risk'* investment" that "would provide *guaranteed income.*" *Id.* at *2 (emphasis in original). In contrast, the *Pierce* allegations quoted by FGA  (S-R Brf. at 7) relate to the fund's due diligence -- *i.e.*, a classic internal affairs function. The *Puglisi* complaint also alleged that class members "suffered damages" that they could have avoided by "withdrawing their funds from the Fund."[6] In contrast, plaintiffs here assert derivative claims and allege damages to the *funds*, thus placing these cases within the "internal affairs" provision.

---

[6] *Puglisi* Complaint ¶ 70 (Exh. A to Dkt. 1, 08 CV 9774 (S.D.N.Y.)).

4

### D.   FGA Misconstrues the 100-Person Monetary Relief Claim Requirement

To address CAFA's "monetary relief" requirement, FGA seems to argue that plaintiffs are seeking monetary relief on behalf of the derivative entity, *i.e.*, the fund. But such a claim still would be a monetary relief claim *of the fund*, not the plaintiffs. *Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (cited in S-R Brf. at 8) (derivative case, in which the "corporation's claim" was for money damages); *see also Liman v. Midland Bank Ltd.*, 309 F. Supp. 163, 168 (S.D.N.Y. 1970) (cited in S-R Brf. at 8) ("A derivative suit is an equitable action and the relief granted in it must be in favor of the corporation whose primary right is enforced derivatively."). To qualify as a "mass action," the case must involve "monetary relief claims *of 100 or more persons* [that] are proposed to be tried jointly ...." 28 U.S.C. § 1332(d)(11)(B) (emphasis supplied). Here, FGA points to claims for relief (monetary or otherwise) of just one person (the fund), not 100 or more persons. That fact defeats CAFA jurisdiction.

### CONCLUSION

The remand motions should be granted.

Dated: September 14, 2009                    Respectfully submitted,

/s/ Robert A. Wallner
Robert A. Wallner
Kent A. Bronson
Jean Lee
**MILBERG LLP**
One Pennsylvania Plaza
New York, New York 10119
Tel.: (212) 594-5300
Fax: (212) 868-1229
rwallner@milberg.com
kbronson@milberg.com
jlee@milberg.com

Stephen A. Weiss
James E. O'Brien III
Christopher M. Van de Kieft
**SEEGER WEISS LLP**
One William Street
New York, New York 10004
Tel.: (212) 584-0700
Fax: (212) 584-0799
sweiss@seegerweiss.com
jobrien@seegerweiss.com
cvandekieft@seegerweiss.com

*Attorneys for Plaintiffs*

DOCS\486157v1