# EXHIBIT B

SIMPSON THACHER & BARTLETT LLP
425 LEXINGTON AVENUE
NEW YORK, N.Y. 10017-3954
(212) 455-2000

FACSIMILE: (212) 455-2502

DIRECT DIAL NUMBER

E-MAIL ADDRESS

(212) 455-3475

mcunha@stblaw.com

BY HAND

October 9, 2009

Re: PSLRA Stay in *Anwar et al. v. Fairfield Greenwich Limited, et al.*, Docket No. 09 CV 0118 (VM)

Hon. Theodore H. Katz
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Dear Judge Katz:

Pursuant to the Joint Rule 26(f) Discovery Plan filed on May 29, 2009, we write on behalf of Fairfield Greenwich Advisors LLC ("FGA") and certain other defendants regarding the application of the PSLRA stay of discovery in the above-captioned consolidated action.

Class Plaintiffs ("Plaintiffs") have asserted federal securities claims in their Second Consolidated Amended Complaint ("SCAC") and therefore their case is subject to the Private Securities Litigation Reform Act ("PSLRA" or "the Act") and the automatic discovery stay mandated by the Act. Accordingly, unless Plaintiffs can meet their "heavy burden" of showing that "exceptional circumstances" are present, they are not entitled to discovery until after this Court has resolved Defendants' forthcoming motions to dismiss. There are no exceptional circumstances warranting immediate discovery in this case.

The mandatory stay applies to all of the claims asserted by Plaintiffs in the SCAC. The PSLRA plainly states that in a securities fraud action "*all* discovery...shall be stayed during the pendency of any motion to dismiss, unless... particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. 78u-4(b)(3)(B) (emphasis added). "There is simply nothing in either the text or the legislative history of the PSLRA that suggests that Congress intended to except federal securities actions in which there happens to be...pendent state law claims." *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006) (*quoting In re Trump Hotel Shareholder Litig.*, No. 96 Civ. 7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997)).

Moreover, the crux of the litigation is Plaintiffs' allegation that they relied on Defendants' alleged misstatements and omissions concerning due diligence and monitoring of Bernard L. Madoff and Bernard L. Madoff Investment Securities, Inc. (BMIS) in connection with the purchase of shares and/or equity in Fairfield funds. Virtually all of the discovery Plaintiffs are expected to seek will concern whether actionable misstatements or omissions occurred – the very essence of federal securities liability.

Even if the PSLRA permitted lifting the stay on a claim-by-claim basis, such an arrangement would be entirely unworkable here. Since all the causes of action arise out of the same nucleus of operative facts, discovery on Plaintiffs' state law claims necessarily will be identical to discovery on their federal securities claims. The facts of this case make it impossible to parse discovery claim by claim. As required by the PSLRA, Defendants' forthcoming motions to dismiss must be resolved before any discovery is commenced.[1]

## FACTS

On September 29, 2009, Plaintiffs filed their Second Consolidated Amended Complaint. The SCAC alleges violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, as well as violations of Section 20(a) of the Exchange Act. These federal securities claims are directed against a subset of each of the three main groups of defendants named in the SCAC: the Fairfield defendants, the PricewaterhouseCoopers ("PwC") Defendants, and the Citco Defendants. The SCAC also contains a host of common law tort and contract claims.

Although the SCAC is in excess of 200 pages and contains 33 counts, the core factual allegations make it clear that federal securities claims are at the heart of the case. The central issue of fact raised by the SCAC is whether Defendants made material misstatements or omissions of fact in connection with Plaintiffs' purchase of shares and/or equity interests in one of the Fairfield funds. *See, e.g.*, SCAC ¶181 (alleging documents published by Fairfield defendants "contained uniform misrepresentations and material omissions that induced Plaintiffs to invest in the Funds and retain their investments in the Funds"); ¶353(n) (alleging questions of law and fact common to the proposed Class including "[w]hether PwC Canada and PwC Netherlands made false representations and omissions in connection with Plaintiffs' purchase of their interests in the Funds"); ¶353(t) (alleging same question of fact exists with respect to the Citco Defendants other than Citco Group). This factual question is central to both Plaintiffs' federal securities claims and their state law counterparts. *See, e.g.*, SCAC ¶355, ¶365, ¶373, ¶383 (fraud claim, 10(b) and 10b-5 claim, and negligent misrepresentation claim against certain Fairfield defendants all

---

[1] Pursuant to the Stipulation Adjourning Deadline to Respond to the Complaint, Defendants have 45 days from the filing of the SCAC to file their motions to dismiss. *See Anwar, et al. v. Fairfield Greenwich Limited, et al.*, No. 09 Civ. 0118 (Docket No. 168).

predicated on allegation that Plaintiffs relied on Defendants' allegedly false representations and material omissions in making and retaining their investments in the Funds); SCAC ¶442, ¶468 (same allegation used to support negligent misrepresentation claim and 10(b) and 10b-5 claim against certain PwC defendants); SCAC ¶526, ¶539 (same allegation used to support 10(b) and 10b-5 claim and negligent misrepresentation claim against certain Citco defendants).

The overlapping nature of Plaintiffs' federal securities claims and their state law counterparts is striking. For example, the fraud claims and the Section 10(b) and Rule 10b-5 claims against certain Fairfield defendants are premised on the identical allegation that those defendants "knew facts or had access to information suggesting that their public statements were not accurate or failed to check information they had a duty to monitor and which would have demonstrated the falsity of their statements." See SCAC ¶363; ¶371. Similarly, the negligent misrepresentation claim and the Section 10(b) and Rule 10b-5 claim against certain PwC defendants are based on the exact same allegation that PwC falsely represented to Plaintiffs that it had "conducted the audits in accordance with GAAS or ISA" and that the "Funds' financial statements 'present[ed] fairly, in all material respects, the financial position of [the Funds]...'" See SCAC ¶440; ¶463.[2] Moreover, the negligent misrepresentation claim and the Section 10(b) and Rule 10b-5 claim against certain Citco Defendants overlap in that each is based on the allegation that those defendants acted recklessly because "they knew or had access to information suggesting that their statements were not accurate" and by failing to "verify the information received from BMIS despite a duty to scrutinize and verify independently the information related to the NAV and account balances." See SCAC ¶523-524; ¶536-537.[3]

Plaintiffs cannot escape the fact that this is a federal securities case that includes closely related state law claims. The PSLRA controls and discovery must be stayed while Defendants' motions to dismiss are being resolved.

---

[2] The negligent misrepresentation claim is asserted against all PwC Defendants whereas the Section 10(b) and Rule 10b-5 claims are asserted against only PwC Canada and PwC Netherlands.

[3] The negligent misrepresentation claim is asserted against Citco Fund Services, Citco Canada, and Citco Group whereas the Section 10(b) and Rule 10b-5 claims are asserted against only Citco Fund Services and Citco Canada.

# ARGUMENT

## I. The PSLRA Bars Discovery Until The Motions To Dismiss Are Resolved

The PSLRA provides, in relevant part, that:

> In any private action arising under this chapter, *all discovery* and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B)(emphasis added).

The PSLRA thus reflects Congress' determination that courts should "make an initial assessment of the legal sufficiency of any claims" before discovery begins. *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 122 (2d Cir. 2003). Accordingly, "unless *exceptional circumstances* are present, discovery in securities actions is permitted only after the court has sustained the legal sufficiency of the complaint." *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003) (emphasis added) (citation and internal quotation marks omitted); *accord In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575, 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003). Moreover, "[t]he plaintiffs bear the burden of establishing that lifting of the mandatory stay is necessary" and the burden "is a heavy one." *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005). Here, there are no exceptional circumstances warranting a lift of the PSLRA's automatic discovery stay and therefore all discovery must wait until the motions to dismiss are decided.[4]

### A. The PSLRA Discovery Stay Applies to the Entire Action

Staying all discovery is consistent with the PSLRA's plain language, furthers the policy goals of the PSLRA, and is particularly appropriate here because discovery on the state law claims cannot be taken separately from discovery on the federal securities claims.

---

[4] Initial disclosures under Fed. R. Civ. P. 26(a)(1) are a subset of discovery, and as such, they are subject to the PSLRA's automatic stay provision. *See Medhekar v. United States Dist. Court*, 99 F.3d 325, 328 (9th Cir. 1996) ("We hold that the initial disclosure requirements of Fed. R. Civ. P. 26(a) and related local rules are 'discovery' or 'other proceedings' for purposes of the Act's stay provision, and that such disclosures must be stayed pending the disposition of a motion to dismiss in an action covered by the Act."); *see also In re Initial Pub. Offering Sec. Litig.*, 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002) (citing *Medhekar* with approval).

1. *The Plain Language of the PSLRA Requires that No Discovery Take Place Before the Motions to Dismiss are Resolved*

"There is simply nothing in either the text or the legislative history of the PSLRA that suggests that Congress intended to except federal securities actions in which there happens to be...pendent state law claims." *In re Smith Barney*, 2006 WL 1738078, at *3 (*quoting In re Trump Hotel*, 1997 WL 442135, at *2). As several courts in this District have noted, the plain language of the PSLRA – "all discovery ... shall be stayed" – leaves no room for debate as to whether non-securities claims can be excepted from the mandatory discovery stay. *See id.*; *see also Riggs v. Termeer*, No. 03 Civ. 4014, 2003 WL 21345183, at *1 (S.D.N.Y. June 9, 2003) (PLSRA stay "applies equally to related state law claims"); *cf Winer Family Trust v. Queen*, No. 03 Civ. 4318, 2004 WL 350181, at *4 (E.D. Pa. Feb. 6, 2004) ("the PSLRA stay of 'all discovery' encompasses the breach of fiduciary duty claims set forth in the Amended Complaint").[5] Consistent with the PSLRA's plain language, this Court should stay all discovery until the motions to dismiss are resolved.

2. *Permitting Discovery on the State Law Claims Would Undermine the PSLRA's Legislative Purpose and Eviscerate the Stay Provision*

By enacting the PSLRA discovery stay provision, Congress created a "strong presumption that no discovery should take place until a court has affirmatively decided that a complaint does state a claim under the securities laws, by denying a motion to dismiss." *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (*citing* S. Rep. 104-98, at 14 (1995)). "[I]f plaintiffs could circumvent the stay by including non-securities claims in a complaint, the PSLRA's requirements would essentially be vitiated." *Smith Barney*, 2006 WL 1738078, at *3; *see also SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of Cal.*, 189 F.3d 909, 913 n.1 (9th Cir. 1999) (Congress' attempt to address premature discovery would be "rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims."); *Winer Family Trust*, 2004 WL 350181, at *3

---

[5] *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162 (S.D.N.Y. 2001) (Scheindlin, J.) is in tension with the prevailing view in this District that the mandatory stay applies to non-securities claims included in a securities complaint. Even so, as discussed *infra*, *Tobias Holdings* is distinguishable from the case at bar because it involved "separate and distinct" state law claims and was brought by a single plaintiff rather than as a class action, which the court noted was "the main focus of the PSLRA." *Id.* at 166 n. 4. *Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 Civ. 6942, 2005 WL 388561 (S.D.N.Y. Feb. 17, 2005) (Scheindlin, J.) is inapposite because the court in that case had already ruled on the sufficiency of the plaintiff's state law claims and therefore a stay would not have furthered the policies of the Act. *Id.* at *3.

SIMPSON THACHER & BARTLETT LLP

Hon. Theodore H. Katz -6- October 9, 2009

(same). Plaintiffs should not be able to thwart Congress' intent in enacting the PSLRA through litigation tactics designed to evade the stay requirement. All discovery should be stayed until the motions to dismiss are decided.

### 3. *Discovery Cannot be Divided Based on Plaintiffs' Claims*

Attempting to separate discovery based on Plaintiffs' claims would prove unworkable because all of their legal theories rest on the same factual allegations. In analogous situations, federal district courts around the country have concluded that discovery on both the federal securities and state law claims should be stayed. *See, e.g. Winer Family Trust*, 2004 WL 350181, at *3 (holding discovery stay applies to breach of fiduciary duty claims because "any discovery sought on the breach of fiduciary duty claims will very likely be relevant to the federal securities claims, as each set of claims is necessarily based on a 'common nucleus of operative fact.'"); *see also Rampersad v. Deutsche Bank Securities Inc.*, 381 F. Supp. 2d 131, 134 (S.D.N.Y. 2003) (staying all discovery because, *inter alia*, all claims arose from the same allegations of fact); *Benbow v. Aspen Tech. Inc.*, No. 02 Civ. 2881, 2003 WL 1873910, at *5 (E.D. La. Apr. 11, 2003) ("It is clear that plaintiffs' claims, state and federal, arise from precisely the same factual circumstances, and therefore require the same discovery generally. Thus, lifting the mandatory stay as to the closely related if not substantially similar State claims would be tantamount to lifting the stay as to the federal securities claim."); *Angell Invs., L.L.C. v. Purizer Corp.*, No. 01 Civ. 6359, 2001 WL 1345996, at *2 (N.D. Ill. Oct. 31, 2001) (staying discovery on plaintiff's negligent misrepresentation claim where discovery sought "would be precisely the same as what plaintiffs would seek on the securities violations claims absent the discovery stay.").

It is therefore not surprising that merits discovery has yet to occur in other so-called Madoff feeder fund cases where state law claims are pled alongside federal securities claims. *See, e.g., In re Tremont Sec. Law, State Law, and Ins. Litig.*, No. 08 Civ. 11117 (S.D.N.Y.); *In re Banco Santander Sec.-Optimal Litig.*, No. 09 Civ. 20215 (S.D. Fla.); *In re Beacon Associates Litig.*, No. 09 Civ. 0777 (S.D.N.Y.); *Newman et al. v. Family Management Corp. et al.*, No. 08 Civ. 11215 (S.D.N.Y.); *In re J. Ezra Merkin and Gabriel Capital Corp.*, No. 08 Civ. 10922 (S.D.N.Y.).

The similarity between Plaintiffs' federal securities claims and their state law claims distinguishes this case from those in which some courts have – incorrectly in the Fairfield defendants' view – held that the discovery stay applies only to the plaintiffs' federal securities claims. *See, e.g., Tobias Holdings*, 177 F. Supp. 2d at 169. In *Tobias Holdings*, for example, the state law claims were "separate and distinct" from and did not "mirror the federal securities claims." 177 F. Supp. 2d at 166, 168. Courts have explicitly declined to follow *Tobias Holdings* where, as here, the plaintiffs' state law claims parallel their federal securities claims. *See, e.g., Benbow*, 2003 WL 1873910, at *5 ("Assuming *arguendo* that the rationale underpinning the holding of the *Tobias Holdings* case stands on firm ground,

the decision does not support plaintiffs' argument under the circumstances of this particular case...It is apparent that, in large part, the court's decision turned upon the fact that the plaintiff's state law claims were distinct from and not merely state analogs to the plaintiff's alleged federal securities violations."); *see also In re Altera Corp. Deriv. Litig.*, No. 06 Civ. 03447 JW, 2006 WL 2917578, at *1 (N.D. Cal. Oct. 11, 2006) ("Here, Plaintiff's state law claims are not wholly distinct, and *Tobias Holdings* is inapposite."); *Rampersad*, 381 F. Supp. 2d at 134 (distinguishing *Tobias Holdings* on similar grounds); *Sarantakis v. Gruttadauria*, No. 02 Civ. 1609, 2002 WL 1803750, at *3 (N.D. Ill. Aug. 5, 2002) (*Tobias Holdings* conflict[s] with the majority of federal courts").[6]

*Tobias Holdings* is further distinguishable from this case because it involved a single plaintiff rather than putative class claims. The *Tobias Holdings* court itself recognized the importance of this distinction, observing that "as this is not a class action, there is little, if any, coercive aspect to plaintiff's discovery demands." 177 F. Supp. 2d at 166; *see also id.* at 166 n. 4 ("Although the discovery stay provisions are not limited to federal securities *class* actions, the PSLRA's legislative history indicates that class actions were the main focus of the PSLRA.") (emphasis in original).[7]

### B. There Are No Exceptional Circumstances Warranting the Lifting of the Discovery Stay

The PSLRA's automatic discovery stay is absolute unless plaintiffs can establish that particularized discovery is necessary to (1) preserve evidence or (2) prevent undue prejudice. *Smith Barney*, 2006 WL 1738078, at *1. "The plaintiffs bear the burden of establishing that lifting of the mandatory stay is necessary" and "[t]he burden . . . is a heavy one." *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d at 38. As demonstrated below,

---

[6] Several other courts have declined to follow *Tobias Holdings* on the grounds that the plaintiffs' state law claims were not distinct from their federal securities claims. *See, e.g., Spears v. Metropolitan Life Ins.*, No. 2:07 Civ. 00088-RL-PRC, 2007 WL 1468697, at *4 (N.D. Ind. May 17, 2007); *see also Angell*, 2001 WL 1345996, at *2.

[7] Discovery on Plaintiffs' state law claims is also unwarranted given the likelihood of their dismissal. First, Plaintiffs improperly have brought their claims directly rather than derivatively, despite the fact that the alleged injuries were sustained by the Fairfield funds and only indirectly, if at all, by Plaintiffs as a result of their equity holdings. Second, several of Plaintiffs' claims, including breach of fiduciary duty, negligent misrepresentation, and gross negligence are preempted by the Martin Act. Finally, with respect to the common law fraud claims, Plaintiffs have failed to show, as they must, that the Fairfield defendants acted with scienter or that each putative class member relied on the misrepresentations alleged in the complaint. These and other grounds requiring dismissal will, of course, be fully briefed in Defendants' motions to dismiss.

Plaintiffs fail to carry their heavy burden here because lifting the discovery stay is not required to preserve evidence and they will not be unduly prejudiced if discovery is stayed until the motions to dismiss are resolved.

### 1. Lifting the Discovery Stay is Not Required to Preserve Evidence

"A party alleging that discovery is 'necessary to preserve evidence' must ... make a specific showing that the 'loss of evidence is imminent as opposed to merely speculative'." *In re Vivendi*, 381 F. Supp. 2d at 130 (citation and internal quotation marks omitted). Here, Plaintiffs cannot legitimately claim that any evidence is in immediate peril. The Fairfield defendants are obligated to preserve evidence that they "know, or should know, may be relevant to actual or foreseeable litigation." *Taft v. Ackermans*, No. 02 Civ. 7951, 2005 WL 850916, at *5 (S.D.N.Y. Apr. 13, 2005) (citation and internal quotation marks omitted). The PSLRA similarly obligates the Fairfield defendants to treat discoverable materials "as if they were the subject of a continuing request for production of documents" while discovery is stayed. 15 U.S.C.A. § 78u-4(b)(3)(C)(i). The Fairfield defendants, through their counsel, have acknowledged their document preservation obligations from the incipiency of this litigation. *See* Transcript of January 15, 2009 Hearing in *Pacific West Health Medical Center Inc. Employees Retirement Trust, et al. v. Fairfield Greenwich Group, et al.*, 09 Civ. 134, 21:3-5, attached as Exhibit A ("[D]efendants are prepared to say in court today that they are aware of their obligations to maintain and not destroy documents."). Accordingly, Plaintiffs cannot proceed on a "preservation of evidence" argument.

### 2. Plaintiffs Will Not be Unduly Prejudiced if Discovery is Stayed Until the Motions to Dismiss are Resolved

"Undue prejudice" has been construed to mean "improper or unfair treatment rising to a level somewhat less than irreparable harm." *Faulkner v. Verizon Communications, Inc.*, 156 F. Supp. 2d 384, 402 (S.D.N.Y. 2001) (citation and internal quotation marks omitted). A delay in discovery cannot itself be grounds for a claim of prejudice because "delay is an inherent part of every stay of discovery required by the PSLRA." *In re Initial Pub. Offering Sec. Litig.*, 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002); *Gervis v. Berg*, No. 00 Civ. 3362, 2005 WL 3299436, at *3 (E.D.N.Y. Oct. 20, 2005) ("[P]laintiffs have not shown anything more prejudicial than a delay – albeit a lengthy one – and therefore have failed to establish undue prejudice as a ground for granting limited discovery of documents submitted to [a third party]."). In addition, "the mere fact that the discovery stay will prevent Plaintiffs from collecting evidence to assist in potential settlement negotiations or plan their litigation strategy does not constitute undue prejudice." *380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07 Civ. 1204, 2007 WL 2049738, at *4 (S.D.N.Y. July 18, 2007) (*citing In re Refco, Inc. Sec. Litig.*, 05 Civ. 8626, 2006 WL 2337212, at *1 (S.D.N.Y. Aug. 8, 2006)); *see also Smith Barney*, 2006 WL 1738078, at *2 ("'Undue prejudice' does not arise from a delay in the gathering of evidence or the development of settlement postures"). As discussed below,

Plaintiffs have failed to demonstrate any undue prejudice would result from staying discovery while the motions to dismiss are being resolved.

      (a)    *Plaintiffs Will Not Suffer Undue Prejudice Merely because Fairfield Has Already Produced Documents to Regulators*

The PSLRA does not provide an exception to the mandatory discovery stay when the information sought by private plaintiffs has already been provided to a government agency, and there is no justification here to read such an exception into the statute. In fact, numerous courts in this District have denied similar requests by plaintiffs to access documents previously supplied by defendants to government investigators. *See, e.g., 380544 Canada*, 2007 WL 2049738, at *5 ("The mere fact that the SEC and USAO have access to the documents that Plaintiffs seek to obtain does not constitute undue prejudice within the meaning of the PSLRA."); *see also Refco*, 2006 WL 2337212, at *2; *Smith Barney*, 2006 WL 1738078, at *3; *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865, 2004 WL 1303638, at *1 (S.D.N.Y. May 18, 2004); *Rampersad*, 381 F. Supp. 2d at 133; *In re AOL Time Warner*, 2003 WL 21729842, at *2; *In re Vivendi*, 381 F. Supp. 2d at 130.[8]

Moreover, the issue of whether it would be burdensome for the Fairfield defendants to produce the documents they provided to certain regulators is simply not relevant. *See, e.g., Smith Barney*, 2006 WL 1738078, at *3 ("Plaintiffs also claim that because Defendants

---

[8] The cases in which plaintiffs have been permitted access to documents previously produced to regulators have either rested on "unique circumstances" or were decided on grounds that subsequent courts in this District have found insufficient to lift the mandatory stay. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305-306 (S.D.N.Y. 2002); *In re LaBranche Sec. Litig.* 333 F. Supp. 2d 178, 184 (S.D.N.Y. 2004). In *Worldcom*, the stay was lifted because the court had ordered both the ERISA plaintiffs and the PSLRA plaintiffs to participate in global settlement discussions with the insolvent defendant and if the discovery stay remained in place, the PSLRA plaintiffs would have been the "only major interested party" without access to the documents, which would have put them at a "severe[] disadvantage[ ]" in settlement negotiations. *WorldCom*, 234 F. Supp. 2d at 305-306. *Id.* Several courts in this District have distinguished *Worldcom* as turning on its unique set of facts. *See, e.g., 380544 Canada*, 2007 WL 2049738, at *3; *see also Smith Barney*, 2006 WL 1738078, at *2; *Refco*, 2006 WL 2337212, at *2-3. In *In re LaBranche Sec. Litig.* 333 F. Supp. 2d 178, 184 (S.D.N.Y. 2004), the court permitted plaintiffs to obtain documents produced to regulators in order to "determine their litigation strategy" and settlement position. However, as discussed *supra*, more recent cases have concluded that "the mere fact that the discovery stay will prevent Plaintiffs from collecting evidence to assist in potential settlement negotiations or plan their litigation strategy does not constitute undue prejudice." *380544 Canada*, 2007 WL 2049738, at *4 (*citing Refco*, 2006 WL 2337212, at *2).

have previously produced much of the requested material to the SEC, Defendants could easily produce the same material to Plaintiffs. This consideration is irrelevant."); *see also Ross v. Abercrombie & Fitch Co.*, No. 2:05 Civ. 0819, 2006 WL 2869588, at *2 (S.D. Ohio Oct. 5, 2006) ("Congress did not decree that discovery would be permitted in private securities cases if certain circumstances arose which would make the discovery either less burdensome to the defendants than ordinary discovery or, perhaps, not burdensome at all."); *Elan Corp.*, 2004 WL 1303638, at *1 ("Plaintiffs' assertion that the stay should be lifted because the Defendants will not suffer an undue burden...even if true, does not justify overriding the existing statutory stay.").[9]

> (b) *Fairfield's Settlement with the Massachusetts Securities Division Does Not Warrant Lifting the Mandatory Stay*

The decision by certain Fairfield defendants to settle an administrative complaint filed by the Massachusetts Securities Division does not affect the mandatory discovery stay. Courts in this District have declined to lift the stay following a defendant's settlement with a regulator. *See, e.g., Brigham v. Royal Bank of Canada, et al.*, No. 08 Civ. 4431, 2009 WL 935684, at *1 (S.D.N.Y. April 7, 2009) (denying motion to lift stay after defendant reached a settlement with the SEC and state regulators); *Smith Barney*, 2006 WL 1738078, at *1 (holding discovery stay continued to apply after defendants settled with SEC for $208 million).

Only where there is a "very real risk that [plaintiff] will be left to pursue its action against defendants who no longer have anything or at least as much to offer" have certain courts in this District concluded that the stay should be lifted. *See WorldCom*, 234 F. Supp. 2d at 305 (S.D.N.Y.); *cf In re Vivendi*, 381 F. Supp. 2d at 130-131 ("I find no evidence that plaintiffs face the same prospect, as in *Worldcom or Global Intellicom*, that [plaintiffs] would be left without remedy in light of settlement discussions or other intervening events, such as bankruptcy or attempt to take control over plaintiff by acquisition.").

Here, Plaintiffs have failed to demonstrate why two Fairfield defendants' $8 million dollar settlement with the Massachusetts Securities Division necessitates the need for immediate discovery. No undue prejudice would result if discovery begins after

---

[9] Courts also have held that a request for all documents supplied to government investigators is overly broad, even when exceptional circumstances warrant a partial lift of the discovery stay. *See, e.g., In re Vivendi*, 381 F. Supp. 2d at 130 (request for documents already produced to the DOJ, SEC, and foreign bodies was far from the "particularized degree of discovery" that previous courts had permitted under an exception to the PSLRA discovery stay); *see also In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d at 39 (denying request for documents produced to government because such documents were "voluminous and possibly irrelevant to the claims likely to be raised.").

Defendants' motions to dismiss are resolved.[10] The Fairfield defendants have not settled with any private litigant or any other regulator and no additional Massachusetts type settlements are on the horizon. Moreover, mere settlement discussions with third parties do not justify lifting the stay. *See, e.g., Refco*, 2006 WL 2337212, at *3 ("If the stay of discovery mandated by the PSLRA were lifted every time a third party, not subject to the stay, was engaged in settlement discussions with the defendant, then the 'undue prejudice' provision would essentially eviscerate the stay requirement. That is not what Congress intended.").

## II. Derivative Plaintiffs' Request for Discovery is Premature

Derivative Plaintiffs' contention that their claims are exempt from the PSLRA stay, even if the stay applies to the claims asserted by Class Plaintiffs, is premature and should be denied. This Court has directed that the issue of discovery in the derivative cases be considered only after Derivative Plaintiffs' remand motions are decided, which has not yet occurred. *See* September 16, 2009 Order (Docket No. 238), attached as Exhibit C.

Defendants will brief the applicability of the PSLRA stay to the Derivative Plaintiffs' claims at the time directed by the Court. It should be noted, however, that courts have stayed discovery in related derivative actions in order to further the policy goals of the PSLRA. *See, e.g., In re Dot Hill Systems Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1167

---

[10] The Massachusetts settlement has no bearing on the merits of any claim made by any plaintiff. Courts have repeatedly held that Fed. R. Evid. 408 precludes a plaintiff from introducing a consent decree as evidence of a defendant's liability in the instant litigation. *See, e.g., United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (holding that under Rule 408, a SEC consent decree signed by the defendant may not be introduced to prove underlying facts of liability); *see also Marshall Field & Co. v. Icahn*, No. 82 Civ. 0755, 1982 WL 1292, at *4 (S.D.N.Y. Mar. 22, 1982) ("[Settlements with the SEC] admit no violations and are not themselves admissible as evidence of securities violations."). Moreover, a stipulation to facts in a complaint that expressly states it should not be construed as an admission cannot be introduced under Fed. R. Evid. 801(d)(2) as an admission by a party opponent. Rather, the stipulation is inadmissible hearsay. *See, e.g., United States v. Wheeler*, No. 95 Civ. 15852, 81 F.3d 171, 1996 WL 155139, at *3 (9th Cir. Apr. 2, 1996) (unpublished opinion) (SEC's findings of fact were inadmissible hearsay because the defendant neither admitted nor denied the allegations in the SEC's complaint but rather just consented to them). Here, the two Fairfield defendants who were respondents in the Massachusetts proceeding explicitly stated in their Prehearing Memorandum that they "do not admit the allegations in the Complaint and consent to these findings of fact solely for the purpose of this proceeding." Respondents' Prehearing Memorandum at 5, attached hereto as Exhibit B (emphasis in original). This statement plainly is not an evidentiary admission.

(S.D. Cal. 2008) (staying discovery in state court derivative action because of the "very real possibility that the factual overlap will force [the defendant] to provide discovery to the derivative plaintiffs on matters relating directly to the claims of the plaintiffs in this case while the PSLRA discovery stay is in effect.") (internal quotation marks and citation omitted); *see also In re Crompton Corp. Sec. Litig.*, No. 3:03-1293, 2005 WL 3797695, at *3 (D. Conn. Jul. 22, 2005); *In re Cardinal Health, Inc. Sec. Litig.*, 365 F. Supp. 2d 866, 875 (S.D. Ohio 2005) (staying state derivative claim despite plaintiff's contention that the PSLRA stay would not be circumvented because securities plaintiffs had separate attorneys and derivative plaintiffs had signed a confidentiality agreement); *In re DPL Inc. Sec. Litig.*, 247 F. Supp. 2d 946, 947 (S.D. Ohio 2003); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL No. 1500, No. 02 Civ. 8853, 2003 WL 22227945, at *1 (S.D.N.Y. Sept. 26, 2003) (staying all non-ERISA specific discovery over the objections of ERISA plaintiffs where a "significant portion of [the requested discovery] concerns issues common to the Securities Action.").

The likelihood that the derivative claims will be dismissed also makes discovery unwarranted in those cases. None of the Derivative Plaintiffs have made a demand on the funds they are purporting to represent. For example, the Derivative Plaintiffs who purportedly represent the Sentry fund (by far the largest of the Fairfield funds) in the *Morning Mist* action failed to make a demand on the disinterested and independent Sentry liquidators who are now in control of that fund and who are prosecuting Sentry's claims independently. The Sentry liquidators are contesting the Derivative Plaintiffs' ability to prosecute Sentry's claims in a related *Morning Mist* action presently being litigated in the Commercial Division of the Supreme Court of the State of New York. Similar litigation ultimately is likely with respect to all of the derivative claims.

## CONCLUSION

Class Plaintiffs have asserted federal securities claims in their new complaint and therefore their case is subject to the PSLRA-mandated stay of "all discovery." Derivative Plaintiffs' contention that the PSLRA does not apply to their claims is premature and must be denied. All discovery in this consolidated action should continue to be stayed.

SIMPSON THACHER & BARTLETT LLP

Hon. Theodore H. Katz        -13-                    October 9, 2009

                                    Respectfully submitted,

                                    */s/ Mark D. Cunha*
                                    Mark G. Cunha


cc:     The Honorable Victor Marrero (by hand)
        All Counsel in *Anwar* (by email)