**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANWAR, *et al.*,

                       Plaintiff,

        v.

FAIRFIELD GREENWICH LIMITED, *et al.*,

                       Defendants.

This Document Relates To: All Actions

No. 09 CV 118 (VM)

Judge Victor Marrero

ORAL ARGUMENT REQUESTED

# MEMORANDUM OF LAW OF DEFENDANT PRICEWATERHOUSECOOPERS ACCOUNTANTS N.V. IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT

William R. Maguire
Sarah L. Cave
Savvas A. Foukas
Gabrielle S. Marshall
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Attorneys for Defendant*
*PricewaterhouseCoopers Accountants N.V.*

# TABLE OF CONTENTS

Page

Preliminary Statement ..................................................................................................1

Statement Of Facts ......................................................................................................2

Argument .....................................................................................................................4

I.  THE COMPLAINT FAILS TO PLEAD A SECURITIES FRAUD CLAIM
    AGAINST PwC NETHERLANDS. ..................................................................4

    A.  The Allegations Are Insufficient As A Matter of Law To Support A
        Strong Inference Of Scienter As To PwC Netherlands. .........................4

        1.  The standard for pleading scienter against an outside auditor. ...................4

        2.  The allegations that PwC Netherlands should have discovered
            Madoff's fraud are insufficient. ...................................................6

            (a)  Allegations that PwC Netherlands failed to follow certain
                 procedures are insufficient as a matter of law. ..............................7

            (b)  The alleged "red flags" do not support a strong inference of
                 scienter. ........................................................................11

        3.  The more compelling inference is that PwC Netherlands did not act
            with fraudulent intent. ................................................................14

    B.  The State Law Claims Should Be Dismissed Under Rule 9(b). ...........................16

II. THE STATE LAW CLAIMS SHOULD BE DISMISSED ON ADDITIONAL
    GROUNDS. ..................................................................................................17

    A.  SLUSA Precludes The State Law Claims. ...........................................17

    B.  The Martin Act Preempts The Non Fraud State Law Claims. ...............................18

    C.  The State Law Claims Fail As A Matter Of Law. ...............................19

        1.  The negligence claims must be dismissed for lack of privity. ...................19

        2.  The aiding and abetting claims fail. ...........................................22

        3.  The claim for third party beneficiary breach of contract fails. .................22

        4.  The claim for unjust enrichment fails. ........................................23

i

## Table of Contents
### (Continued)

**Page**

III.     MANY CLAIMS ARE TIME-BARRED. ........................................................................... 23

Conclusion .................................................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, 2009
WL 2828018 (S.D.N.Y. Sept. 2, 2009)..............................................................................19, 22

*In re Bayou Fund Litig.*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007).......................................14, 15, 18

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001)............................................19

*In re CBI Holdings Co., Inc.*, No. 01 Cv 0131, 2009 WL 4642005 (S.D.N.Y. Dec. 4,
2009) .............................................................................................................................................8

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ..............................................................4, 7

*Cinicolo v. Morgan Stanley Dean Witter & Co.*, No. 01 Civ. 6940, 2004 WL 2848542
(S.D.N.Y. Dec. 9, 2004)..............................................................................................................17

*Common Fund for Non-Profit Orgs. v. KPMG Peat Marwick LLP*, 951 F. Supp. 498
(S.D.N.Y. 1997) ..........................................................................................................................22

*CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268 (1987).........................................................18

*Credit Alliance Corp. v. Arthur Anderson & Co.*, 65 N.Y.2d 536 (1985)..............................20, 21

*Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir. 1982) ................................................5

*In re Dell Sec. Litig.*, 591 F. Supp. 2d 877 (W.D. Tex. 2008).................................................10, 13

*DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242 (2d Cir. 1987)................................6

*In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461 (S.D.N.Y. 2008) ...................................15

*ECA v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) .........................................................5

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)........................................................................5

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275 (S.D.N.Y.
1998) ...........................................................................................................................................23

*Harris v. Kahn, Hoffman, Nonenmacher & Hochman, LLP*, 59 A.D.3d 390 (2d Dep't
2009) ...........................................................................................................................................23

*Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340 (11th Cir. 2008).........................18

*Johnston v. Norton*, No. 92 Civ. 6844, 1993 WL 465333 (S.D.N.Y. Nov. 10, 1993)..................16

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ...............................................................5

*Kassover v. UBS AG*, 619 F. Supp. 2d 28 (S.D.N.Y. 2008) ....................................18, 19

*Katz v. Image Innovations Holdings, Inc.,* No. 06 Civ. 3707, 2008 WL 4840880
    (S.D.N.Y. Nov. 5, 2008) ..........................................................................................21

*Kirschner v. Bennett*, No. 07 Civ. 8165, 2009 WL 2601375 (S.D.N.Y. Aug. 25, 2009) .............22

*La Salle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101 (1st Dep't 2001) ...........................22

*Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2d Cir. 2001)....................................17

*Levin v. PricewaterhouseCoopers, LLP*, 302 A.D.2d 287 (1st Dep't 2003) ................................23

*In re Marsh & McLennan Co. Inc. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...........12, 13

*Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783 (2006)......................................................22

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 Civ. 8472, 2008
    WL 2594819 (S.D.N.Y. June 26, 2008) .................................................................16

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) ...........................17, 18

*Nappier v. PricewaterhouseCoopers LLP*, 227 F. Supp. 2d 263 (D.N.J. 2002)............................12

*O'Brien v. Nat'1 Prop. Analysts Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989) ........................6, 8

*Parrott v. Coopers & Lybrand, LLP*, 263 A.D.2d 316 (1st Dep't 2000)......................................21

*Parrott v. Coopers & Lybrand, LLP*, 95 N.Y.2d 479 (2000) ...........................................19, 20, 21

*In re Priceline.com Inc. Sec. Litig.*, 342 F. Supp. 2d 33 (D. Conn. 2004)....................................12

*Pro Bono Invs., Inc. v. Gerry*, No. 03 Civ. 4347, 2005 WL 2429787 (S.D.N.Y. Sep.
    30, 2005) ..................................................................................................................19

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ..................................................................5, 16

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)..............................................................7, 9, 12

*Rotterdam Ventures, Inc. v. Ernst & Young*, 300 A.D.2d 963 (3d Dep't 2002) ...........................19

*Sable v. Southmark/Envicon Cap. Corp.*, 819 F. Supp. 324 (S.D.N.Y. 1993) ...............................5

*Schick v. Ernst & Young*, 808 F. Supp. 1097 (S.D.N.Y. 1992) .................................................5, 11

*Schnorr v. Schubert*, No. Civ-05-303-M, 2005 WL 2019878 (W.D. Okla. Aug. 18,
    2005) ........................................................................................................................18

*In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007) ...................................11

*Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 79 N.Y.2d 695 (1992) ........................21

*Shields v. Citytrust Bancorp*, 25 F.3d 1124 (2d Cir. 1994) .........................................7, 9

*SIPC v. BDO Seidman, LLP*, 222 F.3d 63 (2d Cir. 2000) ...................................20, 21

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*, 941 F. Supp. 1369 (S.D.N.Y. 1996).............10

*South Cherry St., LLC v. Hennessee Group LLC,* 573 F.3d 98 (2d Cir. 2009) .................... *passim*

*Spain v. Deutsche Bank*, No. 08 Civ 10809, 2009 WL 3073349 (S.D.N.Y. Sept. 18, 2009) ...............................................................................................................19

*Spinale v. Tenzer Greenblatt, LLP*, 309 A.D.2d 632 (1st Dep't 2003) ........................................23

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...........................................6, 14

*Thomas H. Lee Equity Fund V. L.P. v. Grant Thornton*, 586 F. Supp. 2d 119 (S.D.N.Y. 2008) ...........................................................................................................19

*Ultramares Corp. v. Touche*, 255 N.Y. 170 (1931) ........................................................................21

*VTech Holdings, Ltd. v. PricewaterhouseCoopers LLP*, 348 F. Supp. 2d 255 (S.D.N.Y. 2004) ...........................................................................................................22

*W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, No. 08-3867-cv, 2009 WL 2779119 (2d Cir. Sept. 3, 2009)............................................................................................7, 9, 11

*Westpac Banking Corp. v. Deschamps*, 66 N.Y.2d 16 (1985).......................................................21

*Williamson v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1 (2007)................................................24

*Zucker v. Sasaki*, 963 F. Supp. 301 (S.D.N.Y. 1997) .............................................................5, 15

STATUTES

15 U.S.C. § 77p(b) .......................................................................................................................17

15 U.S.C. § 78j(b) ..................................................................................................................... *passim*

15 U.S.C. § 78bb(f)(1) .................................................................................................................17

15 U.S.C. § 78bb(f)(1)(A) ...........................................................................................................17

15 U.S.C. § 78bb(f)(5)(E) ...........................................................................................................17

15 U.S.C. § 78u-4 ..........................................................................................................................4

15 U.S.C. § 78u-4(b)(2) ...................................................................................5

28 U.S.C. § 1658(b)(2) ...................................................................................23

N.Y. C.P.L.R. § 214 ........................................................................................23

N.Y. Gen. Bus. Law, Art. 23-A, § 352 ...........................................................18

RULES

Rule 10b-5, 17 C.F.R. § 240.10b-5 ...............................................................3, 4

Fed. R. Civ. P. 8 .................................................................................................1

Fed. R. Civ. P. 9(b) ..........................................................................1, 4, 5, 6, 16

Fed. R. Civ. P. 12(b)(6) .....................................................................................1

OTHER AUTHORITIES

AU § 110.02 ..................................................................................................9, 10

AU § 316.10 ....................................................................................................10

AU § 326.01 ......................................................................................................9

AU § 332.19 ....................................................................................................11

AU § 332.21 ....................................................................................................10

76 N.Y. Jur. 2d Malpractice § 10 ...................................................................19

Defendant PricewaterhouseCoopers Accountants N.V. ("PwC Netherlands") submits this memorandum of law in support of its motion, pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), to dismiss the Second Consolidated Amended Complaint (the "Complaint") with prejudice.

## Preliminary Statement

The Complaint alleges that plaintiffs lost money in Bernard Madoff's Ponzi scheme by investing in various feeder funds "marketed and operated by the Fairfield Greenwich Group."[1] (Compl. ¶¶ 1-2.) The 42 defendants do not include Madoff or his firm but do include PwC Netherlands, which never audited Madoff or his business and which is not alleged to have known of or to have participated in Madoff's scheme. The only allegations against PwC Netherlands are that it audited three of the Fairfield Greenwich funds more than three years ago.

The claims against PwC Netherlands should be dismissed for multiple reasons. First, the Complaint fails to plead a Section 10(b) claim, (Section I.A), and likewise fails to plead the state law claims, which are premised on the same theory of fraudulent conduct, under the applicable heightened pleading standard of Rule 9(b). (Section I.B.) The Complaint pleads no facts indicating that PwC Netherlands was aware of Madoff's fraud. Instead, the Complaint relies solely on the assertion that PwC Netherlands "would have" or "should have" discovered the fraud had it performed its audits in a particular way — allegations that are insufficient as a matter of law. PwC Netherlands did not audit Madoff or his firm and, therefore, cannot be faulted for failing to discover a fraud that went undetected by numerous sophisticated investment

---

1. The funds at issue are Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma"), and Greenwich Sentry, L.P. ("Greenwich Sentry"). While plaintiffs also purport to bring this action on behalf of investors in Greenwich Sentry Partners L.P. ("GS Partners"), PwC Netherlands was never auditor to GS Partners.

managers, international banks, and other professionals, as well as the Divisions of Markets and

Enforcement of the Securities and Exchange Commission ("SEC"), each of which investigated

Madoff.  The more cogent and compelling inference to be drawn from the Complaint is that PwC

Netherlands, like countless others, was deceived by Madoff.

Second, the state law claims should be dismissed on the following three additional

grounds.  The claims are barred by the Securities Litigation Uniform Standards Act ("SLUSA")

(Section II.A); the non-fraud claims are preempted by New York's Martin Act (Section II.B);

and they are defective because the Complaint fails to plead one or more elements of each claim

(Section II.C.)

Finally, to the extent any claims remain against PwC Netherlands, the five-year statute of

repose precludes any Section 10(b) claim premised on PwC Netherlands' 2002 reports, and the

three-year statute of limitations for malpractice claims precludes all state law claims based on the

firm's 2002, 2003 and 2004 reports.  (Section III.)

<u>**Statement Of Facts**</u>

<u>**Madoff's Fraud**</u>

The claims "arise out of the largest and longest running 'Ponzi scheme' in history."  (¶ 1.)

In 1960, Madoff founded BMIS and registered it with the SEC as a broker-dealer, (¶ 166), and

more recently, as an investment advisor.  Madoff served as Chairman of the New York Region

Board of Governors of the National Association of Securities Dealers.  At the invitation of the

SEC, Madoff also served on the Commission Advisory Committee on Market Information and

participated at several public hearings at the Commission.

Madoff reported consistent gains by purporting to use a split-strike conversion strategy

involving the purchase of securities corresponding to the Standard & Poor's ("S&P") 100 Index

along with the purchase and sale of put and call options on the S&P 100 Index.  (¶ 169.)  After

Madoff confessed in December 2008, it was disclosed that Madoff had made no investments for years, instead falsifying statements and trading documents to conceal his fraud, all ingeniously contrived. (*See* ¶ 166.)[2] Madoff was able to perpetuate the fraud notwithstanding the regular monitoring and oversight by regulators, including the SEC's Division of Enforcement and its Division of Market Regulation, each of which conducted on-site investigations of Madoff and his firm. (¶ 234.)

## PwC Netherlands

PwC Netherlands is a limited liability company organized and licensed to carry out accountancy services under the laws of the Netherlands. (¶ 155.) PwC Netherlands is a separate and distinct legal entity from defendants PwC Canada and PwC International. (*See* ¶¶ 153, 154.) PwC Netherlands issued audit reports on certain of the funds' financial statements as follows: Fairfield Sentry's financial statements for the years ended December 31, 2002, 2003, 2004, and 2005; Greenwich Sentry's financial statements for the year ended December 31, 2005; and Fairfield Sigma's financial statements for years ended December 31, 2003, 2004, and 2005. (*See* ¶¶ 155, 261, 263, 265.)

## The Complaint

Rather than allege particularized facts about what PwC Netherlands purportedly did or did not do, the Complaint impermissibly lumps all PricewaterhouseCoopers entities together as "PwC." (*See* ¶ 268; "Definitions," at xii.) Sifting through this group pleading, eight claims appear to be asserted against PwC Netherlands: (1) violation of Section 10(b) and Rule 10b-5

---

2. As disclosed in the indictment of Jerome O'Hara and George Perez, two former BMIS computer programmers, the lengths to which Madoff went to deceive included the creation of special computer programs that generated false records. *See* Complaint at 3, *United States v. O'Hara and Perez*, No. 09 MAG 2484 (S.D.N.Y. filed Nov. 12, 2009) ("At the direction of Bernard L. Madoff [and other BMIS employees] developed and maintained computer programs that were used to generate false and fraudulent books and records. . . . ").

(Count XVIII); (2) gross negligence (Count XII); (3) negligence (Count XIII); (4) negligent misrepresentation (Count XIV); (5) third party beneficiary breach of contract (Count XV); (6) aiding and abetting breach of fiduciary duty (Count XVI); (7) aiding and abetting fraud (Count XVII); and (8) unjust enrichment (XXXIII).

<u>**Argument**</u>

## I. THE COMPLAINT FAILS TO PLEAD A SECURITIES FRAUD CLAIM AGAINST PwC NETHERLANDS.

To state a claim under Section 10(b) and Rule 10b-5, plaintiffs must plead that, in connection with the purchase or sale of securities, the defendant (1) made a misstatement or omission, (2) of a material fact, (3) with scienter, (4) on which the plaintiffs relied, and (5) that proximately caused plaintiffs' injury. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 266 (2d Cir. 1996). As explained below, the Section 10(b) claim against PwC Netherlands fails because the Complaint does not adequately plead scienter. (Section I.A.) In addition, because all of plaintiffs' state law claims against PwC Netherlands are premised on the same theory of fraudulent conduct, those claims must also be dismissed for lack of particularity. (Section I.B.)[3]

### A. The Allegations Are Insufficient As A Matter of Law To Support A Strong Inference Of Scienter As To PwC Netherlands.

#### 1. The standard for pleading scienter against an outside auditor.

The element of scienter is subject to the rigorous pleading requirements of both Rule 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("Reform Act").[4] The

---

3. For the reasons set forth in sections I.B and I.C of the Memorandum In Support of PricewaterhouseCoopers LLP's Motion to Dismiss ("PwC Canada's Brief"), plaintiffs' claims are subject to dismissal on the additional grounds of failure to plead reliance and loss causation.

4. The policy justification for these pleading requirements are of particular importance in actions against professionals. Because "[a]n accusation of fraud is a serious charge and can cause substantial harm to the

(Footnote continued on next page)

Reform Act requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *see Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001). The requisite state of mind for a Section 10(b) claim is an "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Allegations of negligence are insufficient. *See id.* at 193.

A plaintiff can meet the "strong inference" requirement either by alleging facts that: (1) "defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). The Complaint does not attempt to allege that PwC Netherlands had any motive to commit fraud and so, to plead scienter, plaintiffs must "identify[] circumstances indicating conscious behavior by the defendant though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (internal quotations and citation omitted); *see Zucker v. Sasaki*, 963 F. Supp. 301, 309 (S.D.N.Y. 1997). While conscious recklessness may suffice to plead scienter, the requisite showing must be of "'a state of mind approximating actual intent, and not merely a heightened form of negligence.'" *South Cherry St.*, *LLC v. Hennessee Group LLC,* 573 F.3d 98, 109 (2d Cir. 2009) (emphasis in original; citation omitted). As against an outside auditor, the facts alleged must "approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Id.* at 110 (quoting *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir. 1982).

---

(Footnote continued from previous page)

reputation of a professional organization," courts in this Circuit recognize that one purpose of Rule 9(b) is to protect the reputations of accountants and other professionals from baseless allegations of fraud. *Sable v. Southmark/Envicon Cap. Corp.*, 819 F. Supp. 324, 337 (S.D.N.Y. 1993); *see Schick v. Ernst & Young*, 808 F. Supp. 1097, 1101 (S.D.N.Y. 1992) ; *see also Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

In determining whether a complaint gives rise to the required "strong inference" of scienter, courts "must take into account plausible opposing inferences," including "plausible nonculpable explanations for the defendant's conduct." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007). The inference of scienter "must be more than merely 'reasonable' or 'permissible' — it must be cogent and compelling, thus strong in light of other explanations." *Id.* at 324. "[O]nly if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged" can a complaint survive a motion to dismiss. *Id.*

### 2. The allegations that PwC Netherlands should have discovered Madoff's fraud are insufficient.

Despite its length, the Complaint fails to plead any particularized facts against PwC Netherlands. All the allegations are addressed to "PwC," which is defined to include three defendants, PwC Netherlands, PwC Canada and PwC International Limited.[5] Such group pleading against separate firms is impermissible under Rule 9(b). *See DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).[6]

Even apart from the group pleading problem, the allegations against "PwC" are fatally deficient. The Complaint provides no facts to support a strong inference that PwC Netherlands acted with the requisite fraudulent intent. In the more than 35 paragraphs devoted to pleading scienter against "PwC," the Complaint alleges nothing more than (a) a recitation of generally

---

5.   On this point, PwC Netherlands joins in Section I.B of PwC International Limited's Motion To Dismiss, which demonstrates that group pleading against members of an accounting firm network is impermissible.

6.   All allegations concerning the "Audit Plan" and the "PwC Guide" cannot refer to statements made by PwC Netherlands. Both documents were allegedly authored *after* PwC Netherlands performed its last audit for the Funds in 2006. (*See* ¶ 276 (Audit Plan was a report for the 2008 fiscal year), ¶ 292 (2007 PwC Guide).)

accepted auditing standards ("GAAS") and a list of procedures that "PwC" was allegedly required to perform accompanied by the conclusory allegations that "PwC" would have discovered Madoff's fraud if it had followed the allegedly prescribed procedures (¶¶ 280-311); and (b) that "PwC" ignored alleged "red flags." (¶¶ 312-15.)  These allegations amount to nothing more than a claim that "PwC" *should have* discovered, or *would have* discovered Madoff's fraud if "PwC" had properly performed certain audit procedures.  As demonstrated below, allegations that a defendant failed to follow prescribed procedures are insufficient.  *See South Cherry*, 573 F.3d at 112-13.

### (a)    Allegations that PwC Netherlands failed to follow certain procedures are insufficient as a matter of law.

Several pages allege various professional auditing standards that allegedly required "PwC" to, among other things, independently verify the existence of the funds' assets and to consider the internal controls at BMIS.  (¶¶ 280-303.)  The allegations that had "PwC" performed these procedures (¶¶ 308, 310-11, 313-14, 317), it would have learned of Madoff's fraud are insufficient.  Indeed, it is settled that allegations of violations of professional and accounting standards without more are insufficient as a matter of law.  *See Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (allegations that an auditor violated generally accepted accounting principles or GAAP, "'without corresponding fraudulent intent,' do not suffice 'to state a securities fraud claim'") (quoting *Chill*, 101 F.3d at 270).

Further, allegations that "strongly suggest[] that the defendants should have been more alert and more skeptical" are insufficient.  *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir. 1994); *see W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, No. 08-3867-cv, 2009 WL 2779119, at *2 (2d Cir. Sept. 3, 2009) ( "numerous allegations of carelessness" did not create a strong inference of scienter).  Where "[t]he gist of the Complaint against the [auditor] is an

alleged failure to investigate," that "[does] not rise above the level of negligence, which is legally insufficient." *O'Brien*, 719 F. Supp. at 228 (citation omitted); *see also In re CBI Holdings Co., Inc.*, No. 01 Cv 0131, 2009 WL 4642005, at *9-10 (S.D.N.Y. Dec. 4, 2009) (fraud claim against auditor rejected because, absent allegations that an auditor "knew or had reason to know" of improprieties, allegations of a failure to investigate are insufficient).

Under the standard set forth in these cases, allegations that PwC Netherlands "would have" discovered Madoff's fraud if it performed prescribed procedures are insufficient. (*See*, *e.g.*, ¶ 308 ("Had PwC undertaken the proper analysis and testing of the strategy purportedly employed by Madoff, it would have determined . . . ."); ¶ 310 ("If PwC had made any such efforts, it would have discovered that the securities did not exist.").)

The Complaint's allegations are strikingly similar to those that the Second Circuit recently found insufficient in *South Cherry*, where a hedge fund investment advisor represented that it would conduct an in-depth investigation before recommending an investment and that it would monitor each recommended investment. 573 F.3d at 101. Based on the advisor's recommendation, South Cherry invested and lost its money in what was revealed to be a long running Ponzi scheme. *Id.* at 101-02. South Cherry alleged that the advisor could not possibly have conducted the promised in-depth investigation or monitoring, because if it had done so, it would have discovered the Ponzi scheme. *Id.* at 103.

Affirming dismissal of the complaint, the Second Circuit found that South Cherry had failed to allege any facts showing that the defendant "had knowledge that any representation it made as to the records or circumstances [of the hedge fund] was untrue." *Id.* at 112. Instead, the court found that the complaint was "replete with allegations" that the defendant "would have learned the truth [of the fraud] if [it] had performed the 'due diligence' it promised" —

allegations that the court described as "wanting for lack of plausible and cogent allegations of scienter." *Id*. at 112, 114. Allegations that the defendant "would have discovered the fraud" supported at most an inference of negligence which falls short of pleading scienter for securities fraud. *Id.* at 113-14. The *South Cherry* opinion joins a line of authorities in this Circuit, including *Shields*, *Rothman*, and *Doral*, which held that an alleged failure to comply with professional standards is insufficient as a matter of law.

The allegations against PwC Netherlands are even more deficient than those in *South Cherry*. There, the pleading alleged that the advisor failed to perform a five-phase due diligence process, which it had specifically represented to include assessing the fund's experience, credibility and transparency and verifying the fund's auditor, and performing ongoing due diligence. 573 F.3d at 100-01. The pleading alleged that the defendant could not have performed any of this specifically represented due diligence without discovering the Ponzi scheme. *Id.* at 103, 112. Here, the Complaint fails to plead any such specific representations on the part of PwC Netherlands. The Complaint even recognizes that an auditor is required to provide a "reasonable basis" for its opinions and that "PwC" acknowledged this obligation to provide only reasonable, not absolute, assurance on the funds' financials. (*See* ¶ 283-84.) These statements were more general than the specific representations that were at issue in *South Cherry*.

Moreover, the auditing standards on which the Complaint relies recognize the critical principles that (i) even a proper audit might not have uncovered Madoff's fraud, (ii) an auditor obtains only "reasonable assurance," AU § 110.02, and (iii) an audit is expected to provide only "a reasonable basis" for an auditor's opinion. AU § 326.01. These limitations on an audit mean that a professional audit may not detect a concealed fraud: "Because of the nature of audit

evidence and the characteristics of fraud, the auditor is able to obtain reasonable, but not absolute, assurance that material misstatements are detected." AU § 110.02. Thus, "a violation of an Accounting Principle by the preparer of financials may not be detected by a properly conducted audit." *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*, 941 F. Supp. 1369, 1381 (S.D.N.Y. 1996); *In re Dell Sec. Litig.*, 591 F. Supp. 2d 877, 903 (W.D. Tex. 2008) (same).

These limitations have special relevance here for two reasons. First, Madoff concealed a fraudulent scheme from regulators, auditors, and sophisticated investors for many years. (*See* p. 3, *supra*.) Second, Madoff and BMIS were not PwC Netherlands' clients; the funds were, and the Complaint alleges that the funds and their management were so complicit in Madoff's fraud that they even aided him in obstructing an SEC investigation. (*See* ¶ 234.) The auditing standards recognize that, in circumstances such as those alleged here, management fraud "may cause the auditor who has properly performed the audit to conclude that evidence provided is persuasive when it is, in fact, false." AU § 316.10. Thus, the failure to discover a fraud such as that alleged here may not rise to the level of negligence, much less scienter.

Furthermore, while the Complaint alleges that PwC Netherlands failed to perform appropriate procedures to test for the existence of the funds' assets, the pleading acknowledges that there are several ways that an auditor can test existence, including by obtaining confirmations or by performing analytical procedures. (*See* ¶ 291 (citing AU § 332.21).) The pleading fails, however, to allege that PwC Netherlands did not perform any of these recognized procedures or, for that matter, any of the other substantive procedures that the audit literature contemplates. Instead of specific facts, the Complaint relies on nothing more than the assertion that the procedures performed must have been improper because the assets did not exist. Under *South Cherry*, such flawed assertions are insufficient as a matter of law. 573 F.3d at 113.

Similarly insufficient are the allegations that PwC Netherlands did not adequately "consider the controls" put in place at BMIS. (¶ 299; *see* ¶¶ 271-73, 298, 301-02.) *See Doral*, 2009 WL 2779119, at *3 ("[W]e have specifically held that failing to identify problems with internal controls does not establish reckless behavior under Section 10(b)"); *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 398 (S.D.N.Y. 2007) (allegations that "a reasonable auditor would have discovered problems with the Company's . . . internal controls" were insufficient to plead scienter). This conclusion applies with even greater force here, where the pleading focuses on alleged internal control problems *at BMIS*, which was not a client of PwC Netherlands and which PwC Netherlands was never engaged to audit.[7]

### (b) The alleged "red flags" do not support a strong inference of scienter.

Also insufficient are allegations that "the limited audit work that PwC must have conducted would have" provided it with knowledge of facts that it "willfully ignored," including that: (1) BMIS was not audited by a "qualified and reputable independent audit firm;" (2) the funds "performed no meaningful due diligence" on BMIS; (3) the "funds did not test the validity of Madoff's performance or strategy;" (4) the "Funds had no process in place to verify the fair value of the investments purportedly made by BMIS;" and (5) the funds did not verify the supposed trades made by Madoff with counterparties or other third parties. (¶ 314; *cf.* ¶ 315.)

The Complaint fails to provide any facts to show that PwC Netherlands was actually aware of any of these alleged "red flags." This is fatal because "plaintiffs must plead facts which

---

7. In any event, it is well-settled that GAAS, on which the Complaint purports to rely, leaves to the judgment of the auditor the nature and extent of the audit procedures performed. *See* AU § 332.19 ("Whether one or a combination of substantive procedures should be used to address an assertion depends on the auditor's assessment of the inherent and control risk associated with it as well as the auditor's judgment about a procedure's effectiveness."); *see also Schick*, 808 F. Supp. at 1102 (allegations failed to show that audit procedures and methods of investigation were "not made in good faith").

come to a defendant's attention that would place a reasonable party in defendant's position on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *In re Marsh & McLennan Co. Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 487-89 (S.D.N.Y. 2006) (citation omitted). Accordingly, "[s]imply stating that a defendant had a duty to monitor is insufficient to raise a strong inference of scienter without allegations of what information was reasonably available to them or how they were reckless in their duties." *Id*. at 488.

Alleging that PwC Netherlands was the funds' auditor does not bridge this divide. To "expect the same degree of knowledge from an independent auditor" as from a client and its management "would defy logic." *In re Priceline.com Inc. Sec. Litig.*, 342 F. Supp. 2d 33, 58 (D. Conn. 2004); *see Rothman*, 220 F.3d at 98 ("[K]nowledge cannot be reasonably inferred from the allegation that [an auditor] has been [a company's] outside auditor."). Further, to plead adequately an auditor's knowledge of "alleged improprieties," a complaint must allege facts known to the auditor that are "closer to 'smoking guns' than mere warning signs." *Nappier v. PricewaterhouseCoopers LLP*, 227 F. Supp. 2d 263, 278 (D.N.J. 2002) (citation omitted). The Complaint fails to allege any "smoking gun" against PwC Netherlands nor are plaintiffs' purported red flags "so egregious to render [the] audit a farce." *In re Priceline.com*, 342 F. Supp. 2d. at 57.

For example, that Friehling & Horowitz ("F&H") turned out not to have been a "reputable independent audit firm" (¶ 314), is meaningless without facts to show that PwC Netherlands was aware of that fact. Indeed, the Complaint suggests the opposite: F&H was "a member of the American Institute of Certified Public Accountants" (*see* ¶ 222), and it was regulated by the SEC. The Complaint similarly fails to allege any facts to show that PwC Netherlands was aware of the funds' failure to perform their due diligence and verification

procedures on Madoff. (*See* ¶ 314.) On the contrary, the pleading alleges that the Fairfield defendants and the funds represented that they were, in fact, conducting the appropriate due diligence and verification. (*See* ¶¶ 182, 193-204.)

The pleading also recites a familiar list of supposed "red flags" that appear in nearly every complaint filed in relation to losses suffered as a result of Madoff's scheme: (1) the lack of transparency into Madoff's operations; (2) that key positions were held by Madoff family members; (3) the lack of segregation of important functions, such as investment management, brokerage, and custodianship; (4) Madoff's use of F&H as its auditor; (5) Madoff's use of paper trading records; and (6) allegedly implausible returns for a fund pursuing a market-based strategy. (*See* ¶¶ 217-224, 315.) Again, the Complaint fails to plead any particularized facts to indicate that PwC Netherlands — which did not audit Madoff or BMIS — was aware of any of these facts. *See Marsh & McLennan*, 501 F. Supp. 2d at 489; *In re Dell*, 591 F. Supp. 2d at 905 (complaint failed to link "risk factors" to "any particularized facts concerning what [the auditor] knew and disregarded").

Nor would any of these supposed "red flags" have placed a reasonable auditor "on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *Marsh & McLennan*, 501 F. Supp. 2d at 487 (internal quotations and citation omitted). Indeed, plaintiffs and other sophisticated investors who invested with Madoff, not to mention regulators, were in a better position than PwC Netherlands to know about these supposed "red flags." It is particularly ironic that investors now cite as a "red flag" the consistent returns that Madoff reported to those investors, a fact that plaintiffs were certainly aware of and which was surely the basis for their decision to invest. There is, moreover, nothing inherently fraudulent about a family business, an investment advisor's lack of transparency into its proprietary trading strategy

or a successful investment record. These allegations fall far short of providing the facts to show that PwC Netherlands was aware that Madoff was engaged in wrongdoing.

### 3. The more compelling inference is that PwC Netherlands did not act with fraudulent intent.

Even if the facts alleged in the Complaint could support a rational inference of scienter, the Section 10(b) claim would still be subject to dismissal because any inference of scienter is not cogent or as compelling as the plausible nonculpable explanations for PwC Netherlands' conduct. *Tellabs*, 551 U.S. at 323.

The competing inference that PwC Netherlands, in its audits of the Funds, did not discover or participate in Madoff's fraud is far more compelling:

- Madoff was well-respected, serving as chairman of the New York region board of NASD and appointed by the SEC to serve on an advisory committee, and BMIS was founded in 1960 and was registered with and regulated by the SEC.

- Madoff's fraud was well-hidden, lasting for at least 18 years. Madoff concealed his fraud from regulators, his clients, the public, and possibly even family members. The fraud was revealed only following his confession in December 2008.

- The SEC, despite all its investigative powers, failed to uncover Madoff's fraud, both in its regular oversight of BMIS and in specific investigations.

- PwC Netherlands was not engaged to audit Madoff or BMIS. It had significantly less information than the SEC and the numerous institutions and investors that were also duped by Madoff.

- The Complaint does not and cannot allege that PwC Netherlands had a motive to cover up or engage in fraudulent activity.

In the case of *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007), which the Second Circuit affirmed in *South Cherry* (*see* pp. 9-10, *supra*), the court concluded that any potential inference of scienter against the defendant investment advisor was not as compelling as the competing nonculpable inference that the advisor was, like many others, deceived by the operators of the Ponzi scheme. Judge McMahon held:

> the inference of recklessness alleged by plaintiff - that the
> [investment advisor's] failure to uncover the fraud evidences a
> reckless lack of due diligence — to be less compelling than an
> opposing inference — that the [investment advisor's] failure to
> discover the fraud merely places it alongside the SEC, the IRS, and
> every other interested party that reviewed [the hedge fund's]
> finances.

534 F. Supp. 2d at 418.  Similarly, in *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466

(S.D.N.Y. 2008), recently affirmed by the Second Circuit, Judge Rakoff held that "in view of . . .

the secretive and manipulative manner in which [the company] accomplished its fraud, it is

impossible to draw a strong inference of [the auditor's] scienter from either the length or extent

of the fraud, or both, because the competing inference that [the auditor] was also tricked . . . is

far more compelling."  The same conclusion mandates dismissal of the Section 10(b) claim

against PwC Netherlands.

Weighing heavily in favor of PwC Netherlands is its obvious self-interest.  It would be

professional suicide for an auditor to collude with or to condone a client's fraud, let alone that of

a non-client such as Madoff.  *See Zucker*, 963 F. Supp. at 308 (noting that it would be

"economically irrational" for an auditor to condone a client's fraud "at the risk of jeopardizing its

reputation and license as well as the possibility of damages in an amount much greater than its

fee."); *see also South Cherry*, 573 F.3d at 113 (finding it "far less plausible" that advisor that

"prides itself on having expertise" and "values and advertises its credibility in the industry ...

would deliberately jeopardize its standing and reliability, and the viability of its business").  The

notion that an accounting firm would expose itself to criminal, and virtually unlimited civil

liability and professional ruin to aid a fraud from which the firm would gain nothing and lose

everything is not rational and certainly not as compelling as the obvious inference that the

auditors, like everyone else, were duped.  *Doral*, 563 F. Supp. 2d at 465 ("Taken as a whole,

these allegations themselves suggest that [the auditor] did not discover the fraud, not because of

recklessness, but because [the company] hid the fraud from [the auditor] just as it did from the public at large."). Accordingly, the Section 10(b) claim against PwC Netherlands must be dismissed for failure to plead scienter.

B.       **The State Law Claims Should Be Dismissed Under Rule 9(b).**

Rule 9(b)'s heightened pleading standard applies to all claims (including negligence) based on allegations of fraud, regardless of their denomination. *See Rombach*, 355 F.3d at 171 (2d Cir. 2004) (noting that Rule 9(b) "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 Civ. 8472, 2008 WL 2594819, at *8 (S.D.N.Y. June 26, 2008) (applying Rule 9(b) to non-fraud claims that "indisputably [were] based on plaintiffs' allegations of Defendant's fraudulent conduct"); *Johnston v. Norton*, No. 92 Civ. 6844, 1993 WL 465333, *20 (S.D.N.Y. Nov. 10, 1993) (dismissing negligent misrepresentation claim based on same allegations as deficient Section 10(b) fraud claim). Here, the state law claims against "PwC" clearly sound in fraud or incorporate allegations that PwC Netherlands "acted recklessly and with willful blindness." (¶ 431; *see, e.g.*, ¶ 260 ("PwC . . . fraudulently concealed its misconduct. . . "); *see also* ¶¶ 317-18, 430, 433, 438, 440, 446, 451, 452, 455, 457.) Accordingly, because the Complaint fails to state a claim for securities fraud against PwC Netherlands under the applicable pleading standards, the state law claims must also be dismissed under Rule 9(b).

## II. THE STATE LAW CLAIMS SHOULD BE DISMISSED ON ADDITIONAL GROUNDS.[8]

### A. SLUSA Precludes The State Law Claims.

Each of plaintiffs' state law claims against PwC Netherlands should be dismissed under SLUSA, which provides that "'[n]o covered class action' based on state law and alleging 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security' 'may be maintained in any State or Federal court by any private party.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 74 (2006) (quoting 15 U.S.C. § 78bb(f)(1)(A) (2009)); *see Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107-08 (2d Cir. 2001). Accordingly, any such class action claims brought under state law, however labeled, must be dismissed. *Dabit*, 547 U.S. at 86-87, 89 (dismissing breach of fiduciary duty and contract claims); *see also Cinicolo v. Morgan Stanley Dean Witter & Co.*, No. 01 Civ. 6940, 2004 WL 2848542, at *5-6 (S.D.N.Y. Dec. 9, 2004) (dismissing breach of fiduciary duty and unjust enrichment claims).

The state law class claims are based on the same alleged misrepresentations and omissions as the Section 10(b) claims. The alleged misrepresentations or omissions were made in connection with the purchase or sale of "covered" securities because plaintiffs' alleged loss resulted from their investment with Madoff, who was purportedly carrying out a "split strike conversion" strategy which involved the purported "purchase of a group or basket of equity securities that [were] intended to highly correlate to the S&P 100 index." (¶ 184.)[9] *See* 15 U.S.C. §§ 77p(b), 78bb(f)(1) (2009).

---

8. In addition to the arguments set forth herein, PwC Netherlands joins in Section II of PwC Canada's Brief, which demonstrates that plaintiffs do not have standing to pursue their state law claims.

9. "Covered securities" include those listed on the New York Stock Exchange or other national exchanges. *See* 15 U.S.C. § 78bb(f)(5)(E) (2009) (incorporating definition from Section 18(b) of the Securities Act of 1933).

Because "it is enough that the fraud alleged 'coincide' with a securities transaction —

whether by the plaintiff or by someone else," *Dabit*, 547 U.S. at 85 (citation omitted), it does not

matter that the funds themselves did not purchase or sell any covered securities. Nor does it

matter whether Madoff was, in fact, trading securities; it is sufficient that he purported to do so.

*See*, *e.g.*, *Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1349-50 (11th Cir.

2008) (SLUSA applied where defendant failed to prevent money manager from stealing rather

than investing plaintiff's money); *Schnorr v. Schubert*, No. Civ-05-303-M, 2005 WL 2019878, at

*6 (W.D. Okla. Aug. 18, 2005) (SLUSA applied where Ponzi scheme perpetrator "never

consummated any [securities] purchases").

## B.    The Martin Act Preempts The Non Fraud State Law Claims.

All state law claims against PwC Netherlands (other than the claim for aiding and

abetting fraud and the third party beneficiary claim) are premised on alleged deceitful practices

in connection with the distribution, exchange, sale and purchase of securities within or from New

York and therefore are preempted by New York's Martin Act, N.Y. Gen. Bus. Law, Art. 23-A,

§ 352 *et seq.* (2009). The Martin Act vests exclusive enforcement authority in the New York

Attorney General.[10] *See CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 275-77 (1987);

*Kassover v. UBS AG*, 619 F. Supp. 2d 28, 36 (S.D.N.Y. 2008).

State and federal courts are nearly uniform in the position that "causes of action related to

a plaintiff's securities fraud claim that do not include scienter as an essential element are

typically preempted by the Martin Act." *Bayou*, 534 F. Supp. 2d at 421 (internal quotations and

---

10.  A transaction is "within or from" New York for purposes of the Martin Act where the "Complaint 'alleges that
a substantial part of the events giving rise to a claim occurred' in New York." *Bayou*, 534 F. Supp. 2d at 422
(citations omitted). The Complaint alleges losses resulting from the Madoff fraud, all of which occurred from
his investment firm, BMIS, located in New York.

citations omitted). Accordingly, the Second Circuit and district courts within it have routinely concluded that the Martin Act preempts claims such as those asserted here. *See, e.g.*, *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001); *see also Spain v. Deutsche Bank*, No. 08 Civ 10809, 2009 WL 3073349, at *3 (S.D.N.Y. Sept. 18, 2009) (breach of fiduciary duty); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, 2009 WL 2828018, at *7, 14 (S.D.N.Y. Sept. 2, 2009) (breach of fiduciary duty, negligence, negligent misrepresentation, unjust enrichment, and aiding and abetting); *Kassover*, 619 F. Supp. 2d at 37 (negligence, negligent misrepresentation, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty); *Pro Bono Invs., Inc. v. Gerry*, No. 03 Civ. 4347, 2005 WL 2429787, at *16 (S.D.N.Y. Sep. 30, 2005) (gross negligence).

### C. The State Law Claims Fail As A Matter Of Law.[11]

#### 1. The negligence claims must be dismissed for lack of privity.

The negligence claims (Counts XII,[12] XIII and XIV) against PwC Netherlands should be dismissed because PwC Netherlands did not owe plaintiffs a duty of care.

In the absence of a contractual relationship, an auditor is not liable to a third party in negligence absent "a relationship so close as to approach that of privity." *Parrott v. Coopers &*

---

11. PwC Netherlands does not raise any choice of law issue concerning Dutch law because the claims pleaded here are without merit under New York as well as Dutch law. As demonstrated below, all the state claims fail to state a claim against PwC Netherlands.

12. Count XII is a claim for gross negligence. New York courts have noted that there is no independent cause of action for gross negligence against an accountant unless it rises to the level of fraud. *See* 76 N.Y. Jur. 2d Malpractice § 10. The claim for gross negligence must be dismissed for failure to sufficiently plead scienter. (*See* Section II, *supra*); *see also Rotterdam Ventures, Inc. v. Ernst & Young*, 300 A.D.2d 963, 964-65 (3d Dep't 2002) (gross negligence claim dismissed for failure to plead with particularity "facts suggesting that defendant was aware of the alleged problems associated with the forgoing transactions"). Alternatively, the claim must be dismissed for failure to establish privity, as discussed herein. *See Thomas H. Lee Equity Fund V. L.P. v. Grant Thornton*, 586 F. Supp. 2d 119, 130 n. 7 (S.D.N.Y. 2008) (dismissing negligence claims, and noting that failure to establish privity "'prevents recovery under *any* negligence theory,' including gross negligence") (emphasis in original; citing 76 N.Y. Jur. 2d Malpractice § 10).

*Lybrand, LLP*, 95 N.Y.2d 479, 484 (2000); *see also Credit Alliance Corp. v. Arthur Anderson & Co.*, 65 N.Y.2d 536, 551 (1985).[13]  The Complaint does not and cannot allege any such relationship between PwC Netherlands and plaintiffs.

To be liable in negligence to a third party, the auditor must know that "a primary, if not the exclusive, *end and aim* of auditing [the client] was to provide [the third party] with the financial information it required," *Credit Alliance*, 65 N.Y.2d at 554 (emphasis in original), and "must have known when preparing the [audit reports] that the *particular plaintiffs* bringing the action would rely on its representations," *SIPC v. BDO Seidman, LLP*, 222 F.3d 63, 75 (2d Cir. 2000) (emphasis in original).  While the Complaint includes conclusory assertions that "PwC" knew that its audit reports would be distributed to investors, (¶¶ 275, 277, 279, 428, 435), this does not suffice to satisfy the strict *Credit Alliance* test.  The Complaint does not allege that PwC Netherlands issued any report specifically to any of the particular plaintiffs or even knew of the existence of any particular plaintiff.

The Complaint merely describes a "relationship" between PwC Netherlands and the funds' investors that is no different than the relationship between any company's shareholders and a company's auditor.  Mere membership in a class of persons, any one of whom might rely on an auditor's report, is insufficient as a matter of law.  *See BDO Seidman*, 222 F.3d at 75 (holding that alleging an audit client's customers constituted a class of investors "each of whom potentially would rely on [the auditor's] representations" was insufficient where the plaintiff was unable to show that the auditor knew a particular and identifiable party would rely on its report);

---

13. To establish a special relationship, plaintiffs must establish that:  "(1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evince the accountants' understanding of that party or parties' reliance."  *Credit Alliance*, 65 N.Y.2d at 551; *see also Parrott*, 95 N.Y.2d at 484.

*see also Westpac Banking Corp. v. Deschamps*, 66 N.Y.2d 16, 19 (1985) (bank failed to establish the required near-privity relationship with an accountant where the bank alleged that it was "one of a class of" potential lenders); *Parrott*, 95 N.Y.2d at 484-85 (plaintiff employee failed to establish the required relationship despite accountant's acknowledgement of the employee stock transactions in a transmittal letter). Further, courts have repeatedly found no "near privity" relationship where audits were conducted "pursuant to an ongoing engagement with their client" and these "routine responsibilities" were unrelated to a plaintiff's purchase of securities. *Parrott v. Coopers & Lybrand, LLP*, 263 A.D.2d 316, 324 (1st Dep't 2000); *see also Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 79 N.Y.2d 695, 708 (1992) (no liability because auditor's work was for its client's benefit "and only incidentally or collaterally for the use of those to whom [the client] might exhibit it thereafter") (citation omitted); *Ultramares Corp. v. Touche*, 255 N.Y. 170, 173-74 (1931) (insufficient relationship despite third party's receipt of audit reports where auditor knew "that in the usual course of business the balance sheet when certified would be exhibited by [the audited company] to banks, creditors, stockholders, purchasers").

Nor does the Complaint allege the requisite conduct linking PwC Netherlands to plaintiffs. *See Credit Alliance*, 65 N.Y.2d at 551. Courts require affirmative "direct contact, such as face-to-face conversation, the sharing of documents or other 'substantive' communication between the parties." *BDO Seidman*, 222 F.3d at 75-76 (citation omitted); *see Credit Alliance*, 65 N.Y.2d at 554. No such conduct is alleged on the part of PwC Netherlands, and the mere issuance of reports is plainly insufficient. *See Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707, 2008 WL 4840880, *3, 9-10 (S.D.N.Y. Nov. 5, 2008) (circulating draft clean audit reports to plaintiff insufficient to establish privity ).

## 2. The aiding and abetting claims fail.

To state a claim for aiding and abetting fraud or breach of fiduciary duty (Counts XVI and XVII), the Complaint must support a "strong inference" that the defendant had actual knowledge of the fraud or breach of fiduciary duty or "conscious avoidance" of the same. *Kirschner v. Bennett*, No. 07 Civ. 8165, 2009 WL 2601375, at *13 (S.D.N.Y. Aug. 25, 2009). The Complaint fails to allege "actual knowledge" by PwC Netherlands and merely alleges that it "must have known or willfully ignored" the existence of the funds' fraud and breaches of fiduciary duty. (*See* ¶¶ 317-18, Section I.B, *supra*.) Such allegations have repeatedly been held to be insufficient to state a claim for aiding and abetting. *See VTech Holdings, Ltd. v. PricewaterhouseCoopers LLP*, 348 F. Supp. 2d 255, 269 (S.D.N.Y. 2004) (allegations of constructive knowledge, including that the defendant "should have known," are insufficient to establish knowledge); *Kirschner*, 2009 WL 2601375, at *13 (aiding and abetting requires alleging that defendant "had actual knowledge of wrongful conduct" that harmed plaintiffs).

## 3. The claim for third party beneficiary breach of contract fails.

The claim for third party beneficiary breach of contract (Count XV) should be dismissed as duplicative of the negligence claim. *See La Salle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 109 (1st Dep't 2001). The claim should also be dismissed for failure to plead that the contract was intended for plaintiffs' benefit. *Id.*; *see also Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786 (2006); *Common Fund for Non-Profit Orgs. v. KPMG Peat Marwick LLP*, 951 F. Supp. 498, 500 (S.D.N.Y. 1997). Plaintiffs do not and cannot allege that an "intent to benefit the third party [is] apparent from the face of the contract." *La Salle Nat'l Bank*, 285 A.D.2d 101 at 108; *Abu Dhabi*, 2009 WL 2828018, at *17 (dismissing third party beneficiary claims in the absence of "express provisions").

4. **The claim for unjust enrichment fails.**

The claim for unjust enrichment (Count XXXIII) fails on two grounds. First, a plaintiff cannot maintain a claim for unjust enrichment unless the plaintiff provided the benefits to the defendant. *Bayou*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (dismissing investors' claim of unjust enrichment because Plaintiffs provided the defendant law firm no benefits). Here, plaintiffs do not allege they paid PwC Netherlands anything. Second, where, as here, a written contract (*i.e.*, the engagement letters) governs the payments at issue, a non-party to that contract cannot bring an unjust enrichment claim. *See Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998).

## III.   MANY CLAIMS ARE TIME-BARRED.

The Complaint purports to assert claims against PwC Netherlands based upon reports issued from 2003 onward, many of which are barred by the applicable statute of limitations.

The five-year statute of repose precludes a Section 10(b) claim against PwC Netherlands based on the year-end 2002 audit reports. *See* 28 U.S.C. § 1658(b)(2) (2009).

New York's three-year statute of limitations for claims of negligence and accounting malpractice, N.Y. C.P.L.R. §§ 214(4)-(6) (2009), applies to all of Plaintiffs' state law claims notwithstanding their various labels, because each claim seeks monetary relief based upon PwC Netherlands' alleged failure to perform auditing services under the applicable professional standards. *See*, *e.g.*, *Harris v. Kahn, Hoffman, Nonenmacher & Hochman, LLP*, 59 A.D.3d 390, 391 (2d Dep't 2009) (breach of fiduciary duty claim subject to three-year statute of limitations); *Spinale v. Tenzer Greenblatt, LLP*, 309 A.D.2d 632, 632 (1st Dep't 2003) (unjust enrichment claim subject to three-year statute of limitations because it was "based on the same allegations as [plaintiffs'] causes for legal malpractice"); *Levin v. PricewaterhouseCoopers, LLP*, 302 A.D.2d

287, 287 (1st Dep't 2003) (aiding and abetting claim dismissed under the three-year statute of limitations).

The three-year limitations period accrues when an auditor issues its report.  *See Williamson v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 8 (2007).  Since PwC Netherlands was not named until April 23, 2009 as a defendant in any of the actions that were subsequently consolidated into this Complaint,[14] any report that PwC Netherlands issued before April 23, 2006 — all reports other than the 2005 report — fall outside the three-year limitations period, and therefore the state law claims based on the 2002, 2003 and 2004 reports are time-barred.

## Conclusion

For the reasons set forth above, the Complaint against PwC Netherlands should be dismissed in its entirety with prejudice.

Dated: New York, New York
       December 22, 2009

                              Respectfully submitted,


                                  /s/ William R. Maguire
                              HUGHES HUBBARD & REED LLP
                                William R. Maguire
                                Sarah L. Cave
                                Savvas A. Foukas
                                Gabrielle S. Marshall
                              One Battery Park Plaza
                              New York, New York 10004
                              (212) 837-6000

                              *Attorneys for PricewaterhouseCoopers Accountants N.V.*

---

14.  Complaint, *Zohar v. Fairfield Greenwich, et al.*, No 09 CV 493 (S.D.N.Y. filed April 23, 2009).