UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
ANWAR, *et al*.                      )
                                     )
                                     )
                 Plaintiffs,         )   Case No: 09-CV-118 (VM)
                                     )
     v.                              )
                                     )
FAIRFIELD GREENWICH LIMITED, *et al.*,)
                                     )
                 Defendants.         )
_____)


**<u>DECLARATION OF GUY PHILIPPS QC AS TO ENGLISH AND BVI LAW</u>**

Guy Philipps QC, pursuant to 28 U.S.C. §1746, declares as follows:-

1.  I am a member of the Bar of England and Wales and have been in full-time practice since 1987. I was appointed Queen's Counsel in 2002. I practice in the field of commercial litigation and arbitration, with particular specialities in the areas (*inter alia*) of accountants' negligence and conflicts of laws, in which areas I am recognised as a leading practitioner. I am a member of Fountain Court Chambers, which is acknowledged to be one of the four leading commercial sets of chambers at the English Bar.

2.  I appear regularly in the English courts at all levels, including the House of Lords (now the Supreme Court) and Privy Council. I have also been admitted to appear before the courts of a number of jurisdictions whose law is based upon English common law principles, including the Supreme Court of the Eastern Caribbean (including the High Court of the British Virgin Islands), the Supreme Court of the Bahamas, and the High Court of the Isle of Man.

3.  I was admitted to the High Court of the British Virgin Islands in 1995. I have appeared in that Court on numerous occasions, having been engaged as lead

counsel in approximately ten very substantial actions proceeding in that jurisdiction. I have appeared in the Court of Appeal of the Eastern Caribbean on some five occasions on appeals from the High Court of the British Virgin Islands (as well as on appeals from courts of first instance in other Eastern Caribbean territories).

4.  I have been asked to provide an independent expert opinion as to certain matters of British Virgin Islands ("BVI") law on behalf of Pricewaterhouse Coopers LLC ("PwC Canada") in connection with proceedings brought against PwC Canada in the United States District Court for the Southern District of New York under the title *Anwar et al. v Fairfield Greenwich Limited et al.* ("the Proceedings").

5.  The British Virgin Islands is a British Overseas Territory. Its courts apply the principles of English common law to the resolution of disputes before them save and to the extent that a particular issue is the subject of a local statute. Decisions of the High Court of England and Wales, of the Court of Appeal and the House of Lords, although strictly of persuasive authority, are in my experience invariably followed and applied by the High Court of the British Virgin Islands and the Court of Appeal of the Eastern Caribbean when sitting on appeals from the High Court of the British Virgin Islands.[1] Decisions of the Privy Council are binding upon the High Court of the British Virgin Islands.

6.  By virtue both of my experience and standing in English law and my experience before the first instance and appellate courts of the British Virgin Islands, I consider that I am fully qualified to give this expert opinion as to BVI law.

---

[1] It is to be noted that the commercial judge of the High Court of the British Virgin Islands, Mr Justice Edward Bannister QC, is himself a Queen's Counsel practising in England and Wales.

**The Proceedings**

7. I have been provided with the Second Consolidated Amended Complaint in the Proceedings. For present purposes, it is appropriate to proceed on the basis that the facts alleged in that pleading are true. The background to the claims against PwC Canada, so far as relevant, is alleged to be as follows:

   7.1. The relevant Plaintiffs (that is, those Plaintiffs referred to in the Second Consolidated Amended Complaint as the Fairfield Sentry Limited Investors and the Fairfield Sigma Limited Investors) are shareholders in two International Business Companies, incorporated in the BVI pursuant to the provisions of the International Business Companies Act (Cap. 291), called Fairfield Sentry Limited and Fairfield Sigma Limited (together "the Funds").

   7.2. Each of the Funds carried on business as a mutual fund. The assets of each company comprised money subscribed by shareholders for shares in the Funds. Those assets were remitted to the investment manager appointed by the Funds, Bernard L. Madoff Investment Securities, Inc. ("Madoff").

   7.3. As is now notorious, Madoff did not invest the assets of the Funds, but misappropriated them.

   7.4. PwC Canada were engaged by the Funds to act as their auditors for each of the years 2006 and 2007.

   7.5. It is alleged that PwC Canada owed a direct duty of care to the Plaintiffs as shareholders in the Funds, which duty they breached by conducting their audits of the Funds grossly negligently, alternatively negligently. Specifically, it is alleged that PwC Canada failed to take adequate steps to verify that the assets of the Funds reported in the

financial statements the subject of the audit existed and were appropriately valued.

7.6. Alternatively, it is alleged that by issuing their audit opinions in respect of the Funds, PwC Canada negligently misrepresented to the Plaintiffs that the assets of the Funds reported in the financial statements the subject of the audit existed and were appropriately valued.

7.7. Further or alternatively, it is alleged that the contracts made between PwC Canada and the Funds evince a clear intent to benefit the Plaintiffs, who are by reason thereof entitled to recover damages for PwC Canada's alleged breach of contract in conducting their audits negligently.

7.8. Further or alternatively, it is alleged that by conducting their audits as they did, PwC Canada provided substantial assistance to those Defendants referred to as the 'Fairfield Defendants' in committing breaches of fiduciary duty owed by the Fairfield Defendants to the Plaintiffs as shareholders in the Funds, and thereby aided and abetted those breaches of fiduciary duty.

7.9. Further or alternatively, it is alleged that by conducting their audits as they did, PwC Canada provided substantial assistance to those Defendants referred to as the 'Fairfield Fraud Claim Defendants' in committing a fraud against the Plaintiffs as shareholders in the Funds, and thereby aided and abetted that fraud.

8. Regardless of the cause of action asserted, the loss sustained by the Plaintiffs is in each case said to be "all, or substantially all, of their investments in the Funds".

9. Against that background, I have been asked to provide an expert opinion as to

two matters of BVI law:

9.1. First, whether the Plaintiffs could as a matter of BVI law bring proceedings in their own name against PwC Canada to recover damages assessed by reference to the loss in value of their shareholdings in the Funds ("the reflective loss issue").[2]

9.2. Second, whether the Plaintiffs could as a matter of BVI law claim damages against PwC Canada for the tort of aiding and abetting either breaches of fiduciary duty or a fraud ("the tort issue").

10. In summary, my conclusions on those issues are as follows:

10.1. As regards the reflective loss issue, the Plaintiffs could not under BVI law bring proceedings in their own name to recover damages assessed by reference to the loss in value of their shareholdings in the Funds, or any loss occasioned by acts or defaults on the part of PwC Canada in respect of which the Funds themselves have a cause of action against PwC Canada.

10.2. As regards the tort issue, there is in BVI law no tort (or other ground of civil liability) of aiding and abetting a tort committed by another person, so that the Plaintiffs could not under BVI law claim damages against PwC Canada in respect of the alleged tort of aiding and abetting either breaches of fiduciary duty or fraud.

---

[2] Whether BVI law is the law governing the issue whether the Plaintiffs are entitled to recover such damages is a matter to be determined by the application of New York rules of conflicts of laws. However, it is appropriate to note that if the Proceedings were pending in the English courts, those courts would almost certainly apply BVI law to the issue as being the law of the place of incorporation of the Funds: *Konamaneni v Rolls Royce Industrial Power (India) Ltd* [2002] 1 WLR 1269 at [50]; *Base Metal Trading v Shamurin* [2004] EWCA Civ 1316, particularly at [67]f.

**The Reflective Loss Issue**

11. In *Prudential Assurance Co. Ltd v Newman Industries Ltd (No. 2)* [1982] Ch 204, 210D the plaintiffs, shareholders in a company, sought to sue the defendants, who were directors of the company, for damages for conspiracy and breach of duty. The plaintiffs claimed both by way of derivative action, as representatives of all shareholders in the company ("the derivative claim"), and in their personal capacity ("the personal claim"). The Court of Appeal considered first whether the derivative claim came within the "fraud on the minority" exception to the rule in *Foss v Harbottle*.[3] That part of the judgment is not of relevance here, where the Plaintiffs do not purport to sue on behalf of the Funds. The Court of Appeal then went on to consider the personal claim. At 222G the court said as follows:

> "In our judgment the personal claim is misconceived. It is of course correct, as the judge found and Mr. Bartlett did not dispute, that he and Mr. Laughton, in advising the shareholders to support the resolution approving the agreement, owed the shareholders a duty to give such advice in good faith and not fraudulently. It is also correct that if directors convene a meeting on the basis of a fraudulent circular, a shareholder will have a right of action to recover any loss which he has been personally caused in consequence of the fraudulent circular; this might include the expense of attending the meeting. But what he cannot do is to recover damages merely because the company in which he is interested has suffered damage. He cannot recover a sum equal to the diminution in the market value of his shares, or equal to the likely diminution in dividend, because such a 'loss' is merely a reflection of the loss suffered by the company. The shareholder does not suffer any personal loss. His only 'loss' is through the company, in the diminution in the value of the net assets of the company, in which he has (say) a 3 per cent. shareholding. The plaintiff's shares are merely a right of participation in the company on the

---

[3] The rule in *Foss v Harbottle* (1843) 2 Hare 461 is (in summary) that a company must sue in its own name for an injury done to it, and the majority shareholders may in accordance with the company's constitution ratify the injury or waive the company's right to seek redress; minority shareholders have no right to compel the company to sue save in exceptional circumstances, of which the most frequently invoked is that the majority, under whose control the company is, are those who have themselves perpetrated the injury upon the company.

> terms of the articles of association. The shares themselves, his right of participation, are not directly affected by the wrongdoing. The plaintiff still holds all the shares as his own absolutely unencumbered property. The deceit practised upon the plaintiff does not affect the shares; it merely enables the defendant to rob the company. A simple illustration will prove the logic of this approach. Suppose that the sole asset of a company is a cash box containing £100,000. The company has an issued share capital of 100 shares, of which 99 are held by the plaintiff. The plaintiff holds the key of the cash box. The defendant by a fraudulent misrepresentation persuades the plaintiff to part with the key. The defendant then robs the company of all its money. The effect of the fraud and the subsequent robbery, assuming that the defendant successfully flees with his plunder, is (i) to denude the company of all its assets; and (ii) to reduce the sale value of the plaintiff's shares from a figure approaching £100,000 to nil. There are two wrongs, the deceit practised on the plaintiff and the robbery of the company. But the deceit on the plaintiff causes the plaintiff no loss which is separate and distinct from the loss to the company. The deceit was merely a step in the robbery. The plaintiff obviously cannot recover personally some £100,000 damages in addition to the £100,000 damages recoverable by the company."

12. That classic statement of the rule precluding the recovery by a shareholder of reflective loss was endorsed by the House of Lords in *Johnson v Gore Wood & Co* [2002] 2 AC 1. So far as relevant, the issue in that case was whether and to what extent to which the plaintiff, Mr Johnson, a shareholder in a company ("WWH"), could recover damages said to have been sustained by him personally by reason of negligence on the part of the defendant ("GW"), a firm of solicitors engaged by WWH. It was accepted that (as is alleged in the present case against PwC Canada) GW owed a duty of care to Mr Johnson personally as well as to WWH.

13. At 35D, Lord Bingham of Cornhill (with whose summary of the relevant principles of English law all the other Law Lords agreed) said as follows:

> "GW's first argument before the House, applicable to all save two of the pleaded heads of damage, was in principle very simple. It was that this damage, if suffered at all, had been

suffered by WWH and Mr Johnson, being for this purpose no more than a shareholder in the company, could not sue to recover its loss. As the Court of Appeal pointed out in *Prudential Assurance Co Ltd v Newman Industries Ltd* (*No 2*) [1982] 1 All ER 354 at 357, [1982] Ch 204 at 210:

> 'A derivative action is an exception to the elementary principle that A cannot, as a general rule, bring an action against B to recover damages or secure other relief on behalf of C for an injury done by B to C. C is the proper plaintiff because C is the party injured, and therefore the person in whom the cause of action is vested.'

Here, it was argued, Mr Johnson was seeking to recover damage which had been suffered by WWH.

Mr Johnson's response was equally simple. It was accepted, for purposes of the application to strike out the damages claim, that GW owed a duty to him personally and was in breach of that duty. Therefore, subject to showing that the damage complained of was caused by GW's breach of duty and was not too remote, which depended on the facts established at trial and could not be determined on the pleadings, he was entitled in principle to recover any damage which he had himself suffered as a personal loss separate and distinct from any loss suffered by the company.

On this issue we were referred to a number of authorities which included *Lee v Sheard* [1956] 1 QB 192; *Prudential Assurance Co Ltd v Newman Industries Ltd* (*No 2*) [1982] Ch 204; *Heron International Ltd v Lord Grade* [1983] BCLC 244; *Howard* (*RP*) *Ltd & Richard Alan Witchell v Woodman Matthews and Co* (*a firm*) [1983] BCLC 117; *Fischer* (*George*) (*GB*) *Ltd v Multi-Construction Ltd* [1995] 1 BCLC 260; *Christensen v Scott* [1996] 1 NZLR 273; *Barings plc* (*in administration*) *v Coopers & Lybrand* (*a firm*) [1997] 1 BCLC 427; *Gerber Garment Technology Inc v Lectra Systems Ltd* [1997] RPC 443; *Stein v Blake* [1998] 1 BCLC 578; and *Watson v Dutton Forshaw Motor Group Ltd* [1998] CA Transcript 1284.

These authorities support the following propositions.

(1) Where a company suffers loss caused by a breach of duty owed to it, only the company may sue in respect of that loss. No action lies at the suit of a shareholder suing in that capacity and no other to make good a diminution in the value of the shareholder's shareholding where that merely reflects the loss suffered by the company. A claim will not lie by a shareholder to make good a loss which would be made good if the

company's assets were replenished through action against the party responsible for the loss, even if the company, acting through its constitutional organs, has declined or failed to make good that loss. So much is clear from *Prudential Assurance Co Ltd v Newman Industries Ltd* (*No 2*) [1982] Ch 204 esp. at 222–223, *Heron International Ltd v Lord Grade* [1983] BCLC 244 esp. at 261–262, *Fischer* (*George*) (*GB*) *Ltd v Multi-Construction Ltd* [1995] 1 BCLC 260 esp. at 266 and 270–271, the *Gerber* case and *Stein v Blake* [1998] 1 All ER 724 esp. at 726–729.

(2) Where a company suffers loss but has no cause of action to sue to recover that loss, the shareholder in the company may sue in respect of it (if the shareholder has a cause of action to do so), even though the loss is a diminution in the value of the shareholding. This is supported by *Lee v Sheard* [1956] 1 QB 192 at 195–196, the *Fischer* case and the *Gerber* case.

(3) Where a company suffers loss caused by a breach of duty to it, and a shareholder suffers a loss separate and distinct from that suffered by the company caused by breach of a duty independently owed to the shareholder, each may sue to recover the loss caused to it by breach of the duty owed to it but neither may recover loss caused to the other by breach of the duty owed to that other. I take this to be the effect of *Lee v Sheard* [1956] 1 QB 192 at 195–196, *Heron International Ltd v Lord Grade* [1983] BCLC 244 esp. at 262, *Howard* (*RP*) *Ltd & Richard Alan Witchell v Woodman Matthews and Co* (*a firm*) [1983] BCLC 117 esp. at 123, the *Gerber* case and *Stein v Blake* [1998] 1 All ER 724 esp. at 726. I do not think the observations of Leggatt LJ in *Barings plc* (*in administration*) *v Coopers & Lybrand* (*a firm*) [1997] 1 BCLC 427 at 435 and of the Court of Appeal of New Zealand in *Christensen v Scott* [1996] 1 NZLR 273 at 280, lines 25–35, can be reconciled with this statement of principle."

14. At 61G, Lord Millett said as follows:

"A company is a legal entity separate and distinct from its shareholders. It has its own assets and liabilities and its own creditors. The company's property belongs to the company and not to its shareholders. If the company has a cause of action, this is a legal chose in action which represents part of its assets. Accordingly, where a company suffers loss as a result of an actionable wrong done to it, the cause of action is vested in the company and the company alone can sue. No action lies at the suit of a shareholder suing as such, though exceptionally he

may be permitted to bring a derivative action in right of the company and recover damages on its behalf: see *Prudential Assurance Co Ltd v Newman Industries Ltd (No 2)* [1982] Ch 204, 210. Correspondingly, of course, a company's shares are the property of the shareholder and not of the company, and if he suffers loss as a result of an actionable wrong done to him, then prima facie he alone can sue and the company cannot. On the other hand, although a share is an identifiable piece of property which belongs to the shareholder and has an ascertainable value, it also represents a proportionate part of the company's net assets, and if these are depleted the diminution in its assets will be reflected in the diminution in the value of the shares. The correspondence may not be exact, especially in the case of a company whose shares are publicly traded, since their value depends on market sentiment. But in the case of a small private company like this company, the correspondence is exact.

This causes no difficulty where the company has a cause of action and the shareholder has none; or where the shareholder has a cause of action and the company has none, as in *Lee v Sheard* [1956] 1 QB 192, *George Fischer (Great Britain) Ltd v Multi Construction Ltd* [1995] 1 BCLC 260, and *Gerber Garment Technology Inc v Lectra Systems Ltd* [1997] RPC 443. Where the company suffers loss as a result of a wrong to the shareholder but has no cause of action in respect of its loss, the shareholder can sue and recover damages for his own loss, whether of a capital or income nature, measured by the diminution in the value of his shareholding. He must, of course, show that he has an independent cause of action of his own and that he has suffered personal loss caused by the defendant's actionable wrong. Since the company itself has no cause of action in respect of its loss, its assets are not depleted by the recovery of damages by the shareholder.

The position is, however, different where the company suffers loss caused by the breach of a duty owed both to the company and to the shareholder. In such a case the shareholder's loss, in so far as this is measured by the diminution in value of his shareholding or the loss of dividends, merely reflects the loss suffered by the company in respect of which the company has its own cause of action. If the shareholder is allowed to recover in respect of such loss, then either there will be double recovery at the expense of the defendant or the shareholder will recover at the expense of the company and its creditors and other shareholders. Neither course can be permitted. This is a matter of principle; there is no discretion involved. Justice to the defendant requires the exclusion of one claim or the other;

protection of the interests of the company's creditors requires that it is the company which is allowed to recover to the exclusion of the shareholder. These principles have been established in a number of cases, though they have not always been faithfully observed. The position was explained in a well known passage in *Prudential Assurance Co Ltd v Newman Industries Ltd (No 2)* [1982] Ch 204, 222-223 [quoted in paragraph 11 above].

It is indeed obvious that (on the given facts, where no consequential losses are stated to have arisen) the defendant cannot be made liable for more than £100,000 in total. It is equally obvious, however, that if the damages were recoverable by the shareholder instead of by the company, this would achieve the same extraction of the company's capital to the prejudice of the creditors of the company as the defendant's misappropriation had done."

15. The rule against recovery of reflective loss stated in *Prudential Assurance v Newman* and affirmed in *Johnson v Gore Wood* has been applied in a number of subsequent decisions by the Court of Appeal, most recently *Webster v Sanderson* [2009] EWCA Civ 830.

16. I have no doubt that the High Court of the British Virgin Islands would apply the rule in precisely the same way as does the High Court of England and Wales. Indeed, in a very recent decision (*Citco Global Custody NV v Y2K Finance Inc.*, 19 October 2009), the Eastern Caribbean Court of Appeal, on an appeal from the High Court of the British Virgin Islands, acknowledged the existence and applicability of the rule as a bar to claims such as those made by the Plaintiffs against PwC Canada in the present proceedings.[4]

---

[4] The *Citco* case concerned a petition to wind up the company on the ground that the affairs of the company were being conducted in a manner prejudicial to the petitioning shareholder (s.184I of the BVI Business Companies Act, 2004); the issue was whether the petition was liable to be summarily dismissed on the ground that loss said to have been sustained by the petitioner in consequence of the allegedly prejudicial conduct was reflective of loss suffered by the company sought to be wound up, and so could not be relied upon in support of the allegation of prejudice that founded the petition. The Court of Appeal held that in light of the wording of s.184I and the breadth of the powers conferred upon the court by that section, whether the loss alleged to have been sustained by the petitioner could be relied upon in support of the petition was a matter that required to be determined at trial, so that the judge at first instance had acted prematurely in summarily dismissing the petition prior to trial.

17. In the present case, the High Court of the British Virgin Islands would in my opinion unquestionably hold that the Plaintiffs' claims against PwC Canada fell squarely within the first principle identified by Lord Bingham in *Johnson v Gore Wood* (see paragraph 13 above) and thus infringed the rule against reflective loss. Although the Plaintiffs assert that PwC breached duties owed to the Plaintiffs personally, the court would inevitably take the view that PwC also owed duties (in contract as well as in tort) to the Funds; that the loss of the assets of the Funds which has resulted in the loss of value of the Plaintiffs' shareholdings in the Funds is (on the basis of the facts alleged) a loss occasioned by the alleged breaches by PwC Canada of the duties owed by them to the Fund, and hence a loss that the Funds could themselves recover from PwC Canada; that recovery of that loss by the Funds would restore the value of the Plaintiff's shareholdings in the Funds; and hence that the Plaintiffs are not themselves entitled to seek to recover the loss of value of their shareholdings in the Funds by way of action against PwC Canada.[5]

**The Tort Issue**

18. Even if the Plaintiffs' alleged losses were in principle recoverable as a matter of BVI law, which for the reasons given above they would not be, they would in my opinion not be recoverable as damages for PwC Canada's having allegedly aided and abetted either breaches of fiduciary duty or fraud on the part of certain other Defendants.[6]

19. The reason is that there is no cause of action known to English, and hence to BVI, law of aiding and abetting another's tort. In English law, A will be liable in respect of a tort committed by B only if:

---

[5] For the sake of completeness, I should say that I have reviewed both the International Business Companies Act and its successor, the BVI Business Companies Act, 2004 (as amended); there is nothing in either statute that affects what is stated above with regard to the rule against reflective loss.

[6] Again, whether BVI law is the law governing the issue is a matter to be determined by the application of New York rules of conflicts of laws.

19.1. B's tort was committed in the course of his employment by A or agency for A (in which case A will be vicariously liable for B's tort); or

19.2. A procured or incited B to commit the tort (in which case A and B will be liable as joint tortfeasors); or

19.3. A and B conspired to commit the tort (in which case A and B will be jointly liable in the tort of conspiracy).

20. The law is most clearly stated in the decisions of the Court of Appeal and the House of Lords in *Credit Lyonnais Bank Nederland v Export Credit Guarantee Department* [1998] 1 Lloyd's Rep. 19 (CA); [2000] 1 AC 486 (HL). The issue in that case was whether the defendant, ECGD, was vicariously liable to the plaintiff bank, CL, in respect of certain acts committed by its employee, P, in the course of his employment, which acts had facilitated the fraud of a third party, X, against CL. P had not conspired with X, nor had he incited or procured X to commit his fraud. In order to render ECGD liable, therefore, it was necessary for CL to establish that P's facilitation or assistance of X's fraud was itself an actionable tort, for which ECGD could be held vicariously liable. CL's claim failed at trial, in the Court of Appeal, and in the House of Lords.

21. In the Court of Appeal, Stuart-Smith LJ said at 35:

> "[I]t seems to me to be well established that a person who acts with another to commit a tort in furtherance of a common design will be liable as a joint tortfeasor. It is not enough that he merely facilitates the commission of the tort unless his assistance is given in pursuance and furtherance of the common design."

At 46, following an exhaustive review of the law, Hobhouse LJ (later Lord Hobhouse of Woodburgh) concluded:

> "Mere assistance, even knowing assistance, does not suffice to make the 'secondary' party jointly liable as a joint tortfeasor with the primary party. What he does must go further. He must have conspired with the primary party or procured or induced his commission of the tort (my first category); or he must have joined in the common design pursuant to which the tort was committed (my third category)."

22. In the House of Lords, Lord Woolf, the Master of the Rolls, who gave the only judgment, identified the proposition advanced by counsel for CL as follows (at 496):

> "Why Mr Sumption's approach is novel is because it does not require the act to be in itself an actionable wrong. He submits that acts of assistance in connection with another's wrong become themselves tortious if carried out with *the intention of bringing about the violation of a third party's rights* [emphasis in original]. I emphasise here that although the bank had initially relied upon an allegation of conspiracy, Mr Sumption is not basing his argument on conspiracy. He is relying on [P]'s act alone of facilitating the issue of the guarantee, an act which would not in itself be an actionable wrong, and says it should be actionable because it was done knowingly and with the intention of assisting the actionable wrong of deceit which caused the bank's loss."

Having reviewed the authorities and academic writings relied upon, Lord Woolf MR concluded (at 500):

> "The tort upon which [counsel] seeks to rely is unsupported by authority. The authority which does exist strongly suggests that there is no such tort. The only purpose for establishing its existence is to make ECGD vicariously liable for [P]'s conduct. This is not a justification for the recognition of the new tort. Direct liability for conduct which would be caught by the new tort exists independently of that tort on the well established grounds for making a secondary tortfeasor jointly and severally liable with a principal tortfeasor.
>
> The fact that ECGD in this situation is not vicariously liable for [P]'s actions for which he is personally liable does not justify the development of a new foundation for tortious liability. While it can be difficult to determine whether a particular set of circumstances arise in the course of an employee's employment this well recognised limit on an employer's liability for the acts

of his employee is generally accepted as being appropriate. It is clearly enunciated in many statements of long-standing authority, such as that of Scrutton LJ in *The Koursk* [1924] P 140, 155. I do not consider it desirable to develop new principles of primary tortious liability purely in order to extend the vicarious liability of an employer and to make ECGD liable in this case."

23. I have no doubt that the High Court of the British Virgin Islands would follow that authority, and would hold that the Plaintiffs' pleaded case that PwC Canada was liable for aiding and abetting either fraud or breaches of fiduciary duty disclosed no cause of action under BVI law, and was therefore liable to be summarily dismissed.[7]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 22nd day of December 2009



................................................

GUY PHILIPPS QC

---

[7] Parenthetically, it is relevant to note that even if the allegation of "aiding and abetting" breaches of fiduciary duty were to be upgraded to an allegation of inciting or procuring breaches of fiduciary duty, it would still be liable to be struck out, on the ground that as a matter of English, and hence of BVI, law there is no tort of inciting or procuring a breach of trust or fiduciary duty. That was established by the decision of the Court of Appeal in *Metall und Rohstoff AG v Donaldson, Lufkin & Jenrette, Inc.* [1990] 1 QB 391, 481. The Court of Appeal held that liability in such circumstances was imposed in equity, not tort, the equitable liability being that imposed upon one who dishonestly assists in a breach of trust or fiduciary duty. The ingredients of such liability are authoritatively identified in the decision of the Privy Council in *Royal Brunei Airlines Sdn Bhd v Tan* [1995] 2 AC 378. For present purposes, it is enough to note that it is necessary to establish dishonesty on the part of the alleged assister.