UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
──────────────────────────────── x
                                  :
ANWAR, et al.,                    :
                                  :      ECF CASE
                  Plaintiffs      :
                                  :      Electronically Filed
        v.                        :
                                  :
FAIRFIELD GREENWICH LIMITED, et al., :
                                  :      Master File No.:
                  Defendants.     :      08 CV 00118 (VM, THK)
                                  :
                                  :
This Document Relates To:  All Actions :
──────────────────────────────── x
```

### MEMORANDUM OF LAW IN SUPPORT OF
### GLOBEOP FINANCIAL SERVICES LLC'S MOTION TO DISMISS
### THE SECOND CONSOLIDATED AMENDED COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF RELEVANT ALLEGATIONS........................................................................3

   The Relationship Between the Funds, Their Managing Entities and GlobeOp.........................3

   Plaintiffs' Allegations Against GlobeOp ..................................................................................4

   Bernard Madoff's Massive and Unprecedented Criminal Fraud...............................................5

   The New York Supreme Court Holds That Derivative Plaintiffs Are Required To Arbitrate
      Their Claims Against GlobeOp ...........................................................................................5

ARGUMENT ...............................................................................................................................6

   I.   PLAINTIFFS DO NOT HAVE STANDING TO ASSERT CLAIMS BELONGING TO
       GREENWICH SENTRY ................................................................................................7

     A.  Applicable Law.........................................................................................................7

     B.  Plaintiffs' Claims Against GlobeOp Are Derivative Of Greenwich Sentry ....................9

   II.  PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED
       TO MAKE A DEMAND OR TO ADEQUATELY PLEAD DEMAND EXCUSAL ......11

   III.  ALL OF PLAINTIFFS' CAUSES OF ACTION AGAINST GLOBEOP MUST BE
       DISMISSED DUE TO NUMEROUS DEFICIENCIES IN THE WAY THEY ARE
       PLED...............................................................................................................................14

     A.  All Of Plaintiffs' Claims Against GlobeOp Are Preempted By New York State's
        Martin Act..............................................................................................................14

     B.  Plaintiffs' Breach Of Fiduciary Duty, Negligence And Gross Negligence Claims Fail
        To Adequately Allege That GlobeOp Owed Plaintiffs A Duty (Fiduciary Or Otherwise)
        .................................................................................................................................17

     C.  Plaintiffs Fail To Allege Facts Sufficient To Support A Claim For Gross Negligence .20

     D.  The Economic Loss Rule Prevents Plaintiffs From Asserting State Law Tort Claims
        Against GlobeOp ....................................................................................................21

     E.  Plaintiffs' State Law Tort Claims Should Be Dismissed Because Madoff And BLMIS'
        Intentional Criminal Acts Were A Supervening Cause Of Plaintiffs' Alleged Injuries.22

   IV.  PLAINTIFFS CANNOT SUSTAIN THEIR UNJUST ENRICHMENT CLAIMS..........23

     A.  Plaintiffs Do Not Allege That They Suffered Any Direct Harm From The Alleged
        Unjust Enrichment .................................................................................................23

     B.  An Unjust Enrichment Claim Is Unavailable Where, As Here, A Contract Governs The
        Subject Matter At Issue...........................................................................................24

CONCLUSION............................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*ABF Capital Mgmt. v. Askin Capital Mgmt. L.P.*, 957 F. Supp. 1308 (S.D.N.Y. 1997) .. 11, 23, 24

*Aboushanab v. Janay*, No. 06 Civ. 13472 (AKH), 2007 WL 2789511 (S.D.N.Y. Sept. 25, 2007) ................................................................................................................................. 8

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., et al.*, No 08 Civ. 7508 (SAS), 2009 WL 2828018 (S.D.N.Y. Sept. 2, 2009) .................................................................. 16

*Agostino v. Hicks*, 845 A.2d 1110 (Del. Ch. 2004) ........................................................... 9

*Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111 (2d Cir. 2000) ....................................... 17

*Am. Tel. & Tel. Co. v. City of New York, et al.*, 83 F.3d 549 (2d Cir. 1996) ................. 21

*American Tissue, Inc. v. Arthur Andersen, LLP*, 275 F. Supp. 2d 398 (S.D.N.Y. 2003) .............. 7

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ................................................................. 12

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ....................................................... 6, 7, 19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................... 6

*Baker v. Andover Assocs. Mgmt. Corp.*, No. 6179/2009, slip op, (N.Y. Sup. Ct. Nov. 30, 2009) ................................................................................................................................. 21

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 96 (Del. Ch. 2003) 12

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007) ...................................................... 6, 7

*Berk v. Moore, Clayton & Co.*, No. 06 Civ. 2716 (LLS), 2006 WL 3616961 (S.D.N.Y. Dec. 11, 2006) ............................................................................................................... 15

*Black Radio Network, Inc. v. NYNEX Corp. et al.*, No. 96 Civ. 4138 (DC), 2000 WL 64874 (S.D.N.Y. Jan. 25, 2000) ..................................................................................... 22

*Bona v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) ........ 7

*Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006) ............................................ 12, 13

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .................................................................. 12

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) .............. 23

*Campbell v. DiSabatino*, 947 A.2d 1116 (Del. 2008) ..................................................... 22

*Carfagno ex rel. Centerline Holding Co. v. Schnitzer*, 591 F. Supp. 2d 630 (S.D.N.Y. 2008) ...... 9

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001) .............................. 15

*Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984) ......................................................... 11

*Cromer Fin. Ltd. v. Berger*, No. 00 Civ. 2498 (DLC), 2001 WL 1112548 (S.D.N.Y. Sept. 19, 2001) ............................................................................................................... 15

*David E. Ferber SEP IRA v. GlobeOp Financial Services LLC*, No. 601251/2009, slip op., (N.Y. Sup. Ct. filed November 9, 2009) .................................................................................... 6

*David I. Ferber SEP IRA v. Fairfield Greenwich Group et al.*, No. 600469/2009 (N.Y. Sup. Ct. complaint filed Feb. 13, 2009) ........................................................................... 6, 14

*Dean v. Dick*, No. 16566, 1999 WL 413400 (Del. Ch. June 10, 1999) ....................................... 13

*Fandy Corp. v. Chang*, 707 N.Y.S.2d 361 (2d Dep't 2000) ........................................................ 24

*Feldman v. Cutaia*, 956 A.2d 644 (Del. Ch. 2007) ....................................................................... 9

*First Energy Leasing Corp. v. Attorney-General*, 496 N.E.2d 875 (N.Y. 1986) ......................... 15

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 443 (S.D.N.Y. 2005) .. 20

*Furst v. Feinberg*, 54 F. App'x 94 (3d Cir. 2002) ......................................................................... 9

*Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613 (10th Cir. 1998) ........................... 22, 23

*Goldstein v. S.E.C.*, 451 F.3d 873 (D.C. Cir. 2006) ..................................................................... 17

*Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275 (S.D.N.Y. 1998) .................. 15

*Graystone Materials Inc. v. Pyramid Champlain Co.,* 604 N.Y.S.2d 295 (App. Div. 1993) ....... 24

*Greater N.Y. Auto. Dealers Ass'n et al. v. Envtl. Sys. Testing, Inc.*, 211 F.R.D. 71 (E.D.N.Y. 2002) ......................................................................................................................................... 22

*Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS), 2003 WL 660844 (S.D.N.Y. Feb. 27, 2003) ........................................................................................................ 22

*Haber v. Bell*, 465 A.2d 353 (Del. Ch. 1983) .............................................................................. 12

*Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603 (S.D.N.Y. 2008) ..................... 15

*Henry v. Merck & Co.*, 877 F.2d 1489 (10th Cir. 1989) .............................................................. 23

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885 (SWK), 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) ........................................................................................... 8

*In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) ........................... 15, 16, 21

*In re Cencom Cable Income Partners*, No. 14634, 2000 WL 130629 (Del. Ch. Jan. 27, 2000) .. 13

*In re Enron Corp.*, 292 B.R. 752 (Bankr. S.D.N.Y. 2003) .......................................................... 21

*In re First Cent. Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004) ........................................................... 24

*In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005) ................................... 8

*In re Goldman Sachs Mut. Funds*, No. 04 Civ. 2567 (NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ......................................................................................................................................... 9

*In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165 (D. Del. 2009) ..................................... 13

*In re Ionosphere Clubs v. Am. Nat'l Bank & Trust Co. of Chicago*, 17 F.3d 600 (2d Cir. 1994) 10

*In re Merrill Lynch & Co., Inc.,* 273 F. Supp. 2d 351 (S.D.N.Y. 2003) ........................................ 3

*In re Triarc Co.*, 791 A.2d 872, 878 (Del. Ch. 2001) ................................................................... 9

*Indep. Order of Foresters v. Donaldson Lufkin & Jenrette Inc.*, 919 F. Supp. 149 (S.D.N.Y. 1996) ............................................................................................................................ 15

*Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90 (1991) .................................................. 8

*Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726 (Del. 1988) ........................ 13

*Kramer v. W. Pac. Indus. Inc.*, 546 A.2d 348 (Del. 1988) ......................................... 10

*Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999) 7

*Landon v. County of Orange*, No. 08 Civ. 8048 (CS) (LMS), 2009 WL 2191335 (S.D.N.Y. July 23, 2009) .............................................................................................................. 14

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ............................... 3

*Lewis v. Casey*, 518 U.S. 343 (1996) ............................................................................ 8

*Litman v. Prudential-Bache Props. Inc.*, 611 A.2d 12 (Del. Ch. 1992) ................... 8, 12

*Long Island Lighting Co. v. Stone & Webster Eng'g Corp.*, 839 F. Supp. 183 (E.D.N.Y. 1993) 22

*Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003) .......................................................................................................... 17

*Manson v. Stacescu*, 11 F.3d 1127 (2d Cir. 1993) ....................................................... 8

*Metro. Elec. Mfg. Co. v. Herbert Const. Co. Inc.,* 583 N.Y.S.2d 497 (App. Div. 1992) ............ 24

*Mfrs. Life Ins. Co. v. Donaldon, Lufkin & Jenrette Sec. Co.*, No. 99 Civ. 1944 (NRB), 2000 WL 709006 (S.D.N.Y. June 1, 2000) ................................................................. 15

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) .......................................... 7

*Nairobi Holdings, Ltd. v. Brown Bros. Harriman & Co.*, No. 02 Civ. 1230 (LMM), 2002 WL 31027550 (S.D.N.Y. Sept. 10, 2002) .......................................................... 15

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), 2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003) ........................................................... 15

*Nathel v. Siegal*, 592 F. Supp. 2d 452 (S.D.N.Y. 2008) ............................................ 15

*Norberg v. Lord, Day & Lord*, 107 F.R.D. 692 (S.D.N.Y. 1985) ............................... 10

*Owens v. Gaffken & Barringer Fund, LLC, et al.*, No,. 08 Civ. 8414 (PKC), 2009 WL 3073338 (S.D.N.Y. 2009) ............................................................................................... 16

*Paris Partners, L.P., v. Russo*, No. 94 Civ. 5684 (PKL), 1995 WL 746585 (S.D.N.Y. Dec. 14, 1995) ................................................................................................................. 8

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc. Of America Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) .................................................................................. 18

*Petrello v. White*, 412 F. Supp. 2d 215 (E.D.N.Y. 2006) ........................................... 24

*Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 319 (3d Cir. 1999) ............. 22, 23

*Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL 494904 (S.D.N.Y. Aug. 30, 1996) ....................................................................................... 9, 10, 11

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ....................................................... 12, 13

*S.E.C. v. Northshore Asset Mgmt.*, No. 05 Civ. 2192 (WHP), 2008 WL 1968299 (S.D.N.Y. May 5, 2008) .................................................................................................................... 17

*Scalp & Blade, Inc. v. Advest*, 722 N.Y.S.2d 639 (4th Dep't 2001) ................................................. 15

*Scionti, et al., v. First Trust Corp., et al.*, No. 95 Civ. 5493 (MH), 1999 U.S. Dist. LEXIS 23253, (S.D. Tex. June 23, 1999) ......................................................................................... 20

*Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120 (LTS), 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) .................................................................................................. 15

*Shlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978) ........................................................................ 12

*Suthers v. Amgen Inc.,* 441 F. Supp. 2d 478 (S.D.N.Y. 2006) ...................................................... 19

*Thorpe by Castleman v. CERBCO*, Inc., 676 A.2d 436 (Del. 1996) ............................................. 22

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) ................................... 9

*Tower Int'l., Inc. v. Caledonian Airways, Ltd.*, 969 F. Supp. 135 (E.D.N.Y. 1997) .................... 24

*VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP*, 348 F. Supp. 2d 255 (S.D.N.Y. 2004) 17

*Ward v. State*, 366 N.Y.S.2d 800 (Cl. Ct. 1975) ......................................................................... 23

*Wiley v. J.P. Morgan Chase*, *N.A.*, No. 09 Civ. 1397 (CM), 2009 WL 1938987 (S.D.N.Y. July 7, 2009) .......................................................................................................................... 7

## STATUTES

Del. Code Ann. tit. 6, § 17-1001 ................................................................................................ 12

Del. Code Ann. tit. 6, § 17-1003 ................................................................................................ 12

N.Y. Gen. Bus. Law, Art. 23-A, §§ 352 et. seq. ........................................................................ 14

## RULES

Federal Rule of Civil Procedure 8 ............................................................................................... 6

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 1, 6

Defendant GlobeOp Financial Services LLC ("GlobeOp") respectfully submits this memorandum of law and the accompanying declaration of Jonathan D. Cogan in support of its motion for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Second Consolidated Amended Complaint in this action (the "Complaint" or "Compl.") as against GlobeOp.

## PRELIMINARY STATEMENT

This is a putative class action brought by certain investors in Fairfield Sentry Limited, Fairfield Sigma Limited, Greenwich Sentry, L.P., and Greenwich Sentry Partners, L.P. (the "FGG Funds" or the "Funds"). The Funds were marketed and operated by the various Fairfield Greenwich Group ("FGG") entities. GlobeOp is a company that, pursuant to an administrative services agreement, provided certain administrative services for a two-year period between 2004 and 2006 to the Greenwich Sentry, L.P. fund (the "Fund" or "Greenwich Sentry" or the "Greenwich Sentry Fund"), one of the FGG Funds at issue in this litigation. Greenwich Sentry was a "fund of funds," meaning that it did not itself trade and invest in marketable securities but rather invested solely in funds managed by others or in accounts managed by others. Bernard L. Madoff Investment Securities ("BLMIS") was the Greenwich Sentry Fund's investment advisor until it was learned that Bernard L. Madoff's ("Madoff") business was in fact a massive Ponzi scheme. The purported class plaintiffs ("Plaintiffs") assert federal securities law claims and pendent state law claims against the FGG entities, the FGG Funds' auditors, and certain of the FGG Funds' administrators, but only assert non-fraud, state law claims against GlobeOp.

The thrust of Plaintiffs' claims against GlobeOp is that GlobeOp allegedly failed to perform administrative services adequately to the Greenwich Sentry Fund and that GlobeOp,

therefore, is responsible for the losses Plaintiffs suffered as a result of Madoff's fraud. Plaintiffs assert the following four causes of action against GlobeOp: breach of fiduciary duty, negligence, gross negligence and unjust enrichment. All four of these causes of action, however, are fatally deficient in numerous ways.

*First*, Plaintiffs do not have standing to bring the claims asserted against GlobeOp because those claims are derivative in nature, and belong, if at all, to Greenwich Sentry (*infra* Part I).

*Second*, Plaintiffs' claims against GlobeOp must be dismissed because, as derivative claims, Plaintiffs were required to either make a demand on Greenwich Sentry to assert the claims against GlobeOp or plead facts demonstrating that such demand would be futile. Plaintiffs have done neither. Regardless, even if Plaintiffs had made such a demand or pled facts sufficient to allege demand futility, such derivative claims would need to be mediated and arbitrated, not litigated, due to an arbitration clause contained in the administrative services agreement between GlobeOp and the Fund (*infra* Part II). Indeed, another Court has already examined the relevant administrative services agreement in connection with certain derivative actions that were commenced in New York State Supreme Court and found that those claims must be arbitrated.

*Third*, Plaintiffs' claims must be dismissed because: (1) they are preempted by New York's Martin Act, which does not permit a private right of action for such claims (*infra* Part III.A); (2) Plaintiffs fail to adequately allege that GlobeOp owed them a duty (fiduciary or otherwise), which is an essential element for the breach of fiduciary duty, negligence and gross negligence claims (*infra* Part III.B); (3) Plaintiffs fail to allege facts sufficient to support a claim of gross negligence (*infra* Part III.C); (4) the economic loss rule prevents Plaintiffs from

asserting state law tort claims against GlobeOp (*infra* Part III.D); and (5) Madoff's intentional criminal acts were a supervening cause of any losses Plaintiffs may have sustained that preclude a finding of liability against GlobeOp (*infra* Part III.E).

*Fourth*, Plaintiffs' unjust enrichment cause of action is barred because no such cause of action exists as a matter of law where Plaintiffs can allege no ***direct*** harm to themselves (as opposed to a direct harm to the Fund that affected the Plaintiffs only indirectly) and where, as here, a contract exists that governs the subject matter at issue (*infra* Part IV).

## STATEMENT OF RELEVANT ALLEGATIONS

### The Relationship Between the Funds, Their Managing Entities and GlobeOp

Plaintiffs are shareholders and equity holders in the Funds. (Compl. ¶ 2.) The Funds were marketed and operated by the various FGG entities. (Compl. ¶ 1.) GlobeOp's ***only*** involvement in the subject matter of the Complaint stems from its role as the administrative services provider to one of the Funds (Greenwich Sentry) from January 2004 to August 2006. (Compl. ¶¶ 165, 344-47.) Greenwich Sentry is a limited partnership organized under the laws of Delaware. (Compl. ¶ 172; *see also* Greenwich Sentry L.P. Confidential Offering Memorandum dated May 2006 (the "GS Offering Memo") at iv, Cogan Decl. ¶ 2, Ex. A.) [1]

---

[1] Copies of all documents cited in this memorandum are submitted herewith as exhibits to the Declaration of Jonathan D. Cogan, dated December 22, 2009 ("Cogan Decl."). The Court may consider all of these documents on this motion without converting it into a motion for summary judgment. *In re Merrill Lynch & Co., Inc.,* 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) ("In deciding a Rule 12(b)(6) motion, the Court may consider the following materials: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint"), *aff'd sub nom. Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005).

GlobeOp was hired to provide administrative services to Greenwich Sentry pursuant to an Administrative Services Agreement, dated October 21, 2003 (the "ASA").[2] (Cogan Decl., ¶ 3, Ex. B.) The ASA was entered into by GlobeOp, Greenwich Sentry, and the Greenwich Sentry general partner, Fairfield Greenwich (Bermuda) Ltd. ("FGBL") and sets forth all of the obligations of the respective parties to each other. Importantly, because no limited partner investors in Greenwich Sentry were a party to the ASA, Plaintiffs do not allege (because they cannot allege) that there was any contractual privity between Plaintiffs and GlobeOp with respect to the ASA (or any other contract for that matter). Further, Plaintiffs do not allege (because they cannot allege) that they paid GlobeOp's administrative services fees or any other money.[3]

**Plaintiffs' Allegations Against GlobeOp**

Plaintiffs' Complaint is 204 pages long, but contains only a handful of allegations against GlobeOp. Indeed, of the thirty-three claims contained in the Complaint, only four are directed at GlobeOp. (Compl. ¶¶ 541-557, 566-572.) Specifically, Plaintiffs allege against GlobeOp as follows:

- that GlobeOp held itself out as occupying "a superior position over Plaintiffs with respect to its discretionary responsibilities, and had superior access to confidential information about the investments;" (Compl. ¶ 543.)

- that GlobeOp did not take reasonable, industry-standard steps to calculate the fund's Net Asset Value ("NAV") in its role as administrator to Greenwich Sentry; (Compl. ¶ 347.)

---

[2] GlobeOp is unable to include as an exhibit an unredacted version of the ASA because the ASA contains a confidentiality provision that implies that GlobeOp needs permission from the other parties to the ASA to produce copies of the ASA absent a court order or subpoena. The Fund and the general partner, Fairfield Greenwich (Bermuda), Ltd. consented only to the production of a redacted version of the ASA, which is attached to the accompanying Cogan Declaration. *If the Court believes that it would be useful in assessing any of GlobeOp's arguments to review an unredacted version of the ASA, we respectfully request that the Court order us to provide it in camera or subject to an appropriate confidentiality order.*

[3] Indeed, the GS Offering Memo provides that "Pursuant to the Administration Agreement [the ASA], *the Partnership* pays fees to the Administrator [GlobeOp] and reimburses the Administrator for certain out-of-pocket expenses incurred by the Administrator on behalf of the Partnership." (GS Offering Memo at 11, Cogan Decl. ¶ 2, Ex. A.) (emphasis added)

- that GlobeOp did not independently verify the information provided to it, and that GlobeOp relied blindly on information provided to it by Greenwich Sentry and BLMIS; (Compl. ¶ 347, 552.)

- that GlobeOp was not entitled to rely on information provided to it by Greenwich Sentry and BLMIS because of the "red flags" surrounding BLMIS' role as investment manager, custodian and execution agent to the Funds, and because such information was "manifestly incorrect;" (Compl. ¶ 552.)

- that Plaintiffs invested and retained their investments in the Greenwich Sentry Fund because of the trust and confidence they reposed in GlobeOp to fulfill its duties. (Compl. ¶ 544.)

**Bernard Madoff's Massive and Unprecedented Criminal Fraud**

The Complaint alleges that shortly after FGG began its relationship with Madoff in approximately 1990, FGG launched Greenwich Sentry and used Madoff as Greenwich Sentry's investment advisor, broker, and custodian. (Compl. ¶ 169.) It is alleged that the Funds invested over approximately $4.5 billion with Madoff from December 1, 1995 to December 2008. (Compl. ¶ 175.) A portion of this $4.5 billion represents investments by Greenwich Sentry. As the world now knows, Madoff never invested this $4.5 billion into legitimate securities but instead funneled it into his massive and unprecedented Ponzi scheme. (Compl. ¶ 185.) For his criminal conduct, Madoff pled guilty on March 12, 2009 and is serving a sentence of 150 years in prison. (Compl. ¶ 167.)

**The New York Supreme Court Holds That Derivative Plaintiffs Are Required To Arbitrate Their Claims Against GlobeOp**

GlobeOp was named as a defendant in *David I. Ferber SEP IRA v. Fairfield Greenwich Group et al.*, a derivative action filed in the New York State Supreme Court by limited partner investors in the Greenwich Sentry Fund—purportedly on behalf of the Fund (the "*Ferber*

Action").[4]  Plaintiffs in the *Ferber* Action made allegations against GlobeOp similar to the allegations made in the instant Complaint.[5]

Because the ASA contains a broad arbitration clause that requires the parties to mediate and arbitrate disputes that arise out of or relate to the ASA, GlobeOp moved to compel arbitration of the claims alleged in the *Ferber* Action in special proceedings before the Honorable Richard B. Lowe III of the New York State Supreme Court.  On November 5, 2009, Judge Lowe granted GlobeOp's motion to compel arbitration, thereby requiring all derivative claims against GlobeOp to be arbitrated.[6]

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 8 and 12(b)(6), Plaintiffs must allege sufficient facts "to raise a right to relief above the speculative level."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  Stated otherwise, to survive a motion to dismiss (and to satisfy Fed. R. Civ. P. 8), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 570).

The Court in *Iqbal* established a two-step process for determining whether a complaint satisfies Fed. R. Civ. P. 8.  First, the court should identify and eliminate any "allegations that, because they are mere conclusions, are not entitled to the assumption of truth."  *Id.* at 1940.  "[L]abels and conclusions, and … formulaic recitation[s] of the elements of a cause of action"

---

[4] *See* Limited Partner's Derivative Complaint, *David I. Ferber SEP IRA v. Fairfield Greenwich Group et al.*, No. 600469/2009 (N.Y. Sup. Ct. filed Feb. 13, 2009).  (Cogan Decl. ¶ 4, Ex. C.)

[5] *See Id.* at ¶¶ 165-70, 176-181.

[6] *See David E. Ferber SEP IRA v. GlobeOp Financial Services LLC,*No. 601251/2009, slip op. at 6-7 (N.Y. Sup. Ct. filed November 9, 2009) (Cogan Decl. ¶ 5, Ex. D.)

are not entitled to the assumption of truth.  *Wiley v. J.P. Morgan Chase, N.A.*, No. 09 Civ. 1397 (CM), 2009 WL 1938987, at *2 (S.D.N.Y. July 7, 2009) (citing *Twombly*, 550 U.S. at 545). Second, the court should evaluate the remaining specific, well-pled factual allegations to determine if they are plausible.  *See Iqbal*, 129 S. Ct. at 1950.

## I.  PLAINTIFFS DO NOT HAVE STANDING TO ASSERT CLAIMS BELONGING TO GREENWICH SENTRY

All of Plaintiffs' claims against GlobeOp are, at their core, contract claims recast as tort claims that relate to GlobeOp's provision of administrative services to Greenwich Sentry pursuant to the ASA, and the financial losses incurred by Greenwich Sentry as the result of GlobeOp's alleged failure to perform those services adequately.  Each of the claims against GlobeOp is premised on an injury to Greenwich Sentry and Greenwich Sentry's partners as a group, rather than a unique injury suffered directly by individual Plaintiffs.  Such claims may be pursued, if at all, solely by or on behalf of Greenwich Sentry.  As set forth below, Plaintiffs do not have standing to assert the claims brought against GlobeOp in the Complaint.

### A.  Applicable Law

Issues of standing are appropriately resolved on a motion to dismiss because "the question of standing implicates the court's subject-matter jurisdiction."  *Bona v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932, at *9 (S.D.N.Y. Mar. 20, 2003) (citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999)); *see also American Tissue, Inc. v. Arthur Andersen, LLP*, 275 F. Supp. 2d 398, 403-404 (S.D.N.Y. 2003).  A plaintiff lacks standing to sue for "injuries that are wholly derivative of harm to a third party."  *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999).  The same rules of standing apply to all plaintiffs, even when claims are brought on behalf of a purported

class.  *See In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005) ("the standing inquiry does not change in the context of a putative class action") (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Where, as here, the question of standing focuses on whether Plaintiffs' injuries are derivative of an injury to a corporation or limited partnership, that issue of standing is governed by the law of the state of incorporation.  *See In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885 (SWK), 2005 WL 2677753, at *3 (S.D.N.Y. Oct. 19, 2005) ("When deciding issues of 'shareholder standing,' that is, whether claims should be brought directly or derivatively, courts must look to the law of the fund's state of incorporation.") (vacated on other grounds, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006).[7]  Here, Greenwich Sentry is a limited partnership organized under Delaware law.  (Compl. ¶ 172; *see also* GS Offering Memo at iv, Cogan Decl. ¶ 2, Ex. A.)  Thus, Delaware law governs whether Plaintiffs have standing to assert their claims.[8]

Whether Plaintiffs have standing to sue turns on whether Plaintiffs' claims are direct or derivative.[9]  In answering that question, Delaware courts ask (1) who suffered the harm and (2) who would receive the benefit of any recovery or other remedy.  *See Tooley v. Donaldson,*

---

[7] *See also Aboushanab v. Janay*, No. 06 Civ. 13472 (AKH), 2007 WL 2789511, at *6 (S.D.N.Y. Sept. 25, 2007) (same); *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 108-09 (1991) (holding that issues of demand futility are governed by law of the state of incorporation).

[8] In any event, the result is the same under either New York or Delaware law.  *See Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993) (holding that plaintiff "does not have standing in his capacity as a creditor, shareholder, or employee of a corporation to assert a RICO claim for injuries that are derivative of those sustained by that corporation"), *cert. denied*, 513 U.S. 915 (1994); *see also Paris Partners, L.P., v. Russo*, No. 94 Civ. 5684 (PKL), 1995 WL 746585, at *2-3 (S.D.N.Y. Dec. 14, 1995) (holding plaintiff partnership which advanced money to its subsidiary to do business with third-party corporation that became insolvent due to defendants' fraud had suffered only a derivative injury and thus did not have standing to sue under RICO).

[9] Under Delaware law, the direct versus derivative analysis is the same whether the entity at issue is a corporation or a limited partnership.  *See Litman v. Prudential Bache Properties, Inc.*, 611 A.2d 12, 15 (Del. Ch. 1992) ("the determination of whether a … lawsuit is derivative or direct in nature is substantially the same for corporate cases as it is for limited partnership cases").

*Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004); *see also Carfagno ex rel. Centerline Holding Co. v. Schnitzer*, 591 F. Supp. 2d 630, 634 n.26 (S.D.N.Y. 2008) (applying *Tooley* test). A claim is derivative in nature where, as here, "all of a [partnership's members] are harmed and would recover pro rata in proportion with their [partnership interests] solely because they are [partners]." *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008). By contrast, a claim is direct only where plaintiffs "suffered some individualized harm not suffered by all" of Greenwich Sentry's limited partners. *See id.*; *see also Agostino v. Hicks*, 845 A.2d 1110, 1122 (Del. Ch. 2004) (a direct claim exists only when plaintiffs have "demonstrated that [they] can prevail without showing an injury" to the partnership).[10]

### B. Plaintiffs' Claims Against GlobeOp Are Derivative Of Greenwich Sentry

All of Plaintiffs' claims against GlobeOp are derivative of Greenwich Sentry's claims because the only injuries Plaintiffs allege in the Complaint were suffered, if at all, by Greenwich Sentry itself and all of Greenwich Sentry's limited partners in proportion to their partnership interest, not by the individual Plaintiffs alone. *See Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL 494904, at *12 (S.D.N.Y. Aug. 30, 1996) (holding that claims by shareholders against third-party broker are derivative unless plaintiffs have suffered loss independent of loss suffered by company).[11]

---

[10] In analyzing whether claims are derivative, the court looks to the nature of the alleged wrong, rather than the designation used by plaintiffs. *Furst v. Feinberg*, 54 F. App'x 94, 98-99 (3d Cir. 2002) (applying Delaware law). Attempts by plaintiffs to "creatively . . . recast [their] derivative claim[s]" as direct claims by asserting a wide range of causes of action are "disfavored by Delaware courts". *Feldman v. Cutaia*, 956 A.2d 644, 659-660 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008).

[11] *See also In re Goldman Sachs Mut. Funds*, No. 04 Civ. 2567 (NRB), 2006 WL 126772, at *5 (S.D.N.Y. Jan. 17, 2006) ("[W]here the substantive nature of the alleged injury is such that it falls directly on the corporation as a whole … but only secondarily, upon its stockholders as a function of and in proportion to their … investment in the corporation, the claim is derivative and may be maintained only on behalf of the corporation") (quoting *In re Triarc Co.*, 791 A.2d 872, 878 (Del. Ch. 2001)).

Specifically, Plaintiffs' allegations against GlobeOp focus on an alleged failure by GlobeOp to perform administrative services adequately *for the Fund* (i.e., this is not the type of situation in which an investor plaintiff is claiming an injury unique to him). Thus, all of the tortious conduct that Plaintiffs allege GlobeOp committed and that they claim entitle them to recovery in this suit would necessarily have been committed against Greenwich Sentry directly as it is the entity with which GlobeOp contracted to perform administrative services. Any injury Plaintiffs could claim would be "shared collectively by all of [Greenwich Sentry's limited partners], rather than independently by [Plaintiffs] or any other individual shareholder." *Kramer v. W. Pac. Indus. Inc.*, 546 A.2d 348, 353 (Del. 1988); *see also Primavera*, 1996 WL 494904 at *15 ("It is only where the injury sustained to one's stock is peculiar to him alone, and does not fall alike upon other stockholders, that one can recover as an individual.") (quoting *Norberg v. Lord, Day & Lord*, 107 F.R.D. 692, 698 (S.D.N.Y. 1985) (internal citations omitted)). As such, even assuming, *arguendo*, that GlobeOp did every bad thing that Plaintiffs allege, it is Greenwich Sentry—not Plaintiffs—that has potentially viable causes of action against GlobeOp (though, as noted, those claims must be mediated and arbitrated, not litigated).

Indeed, the types of claims brought by Plaintiffs are classically derivative. As discussed *infra* Part III, Plaintiffs seek to hold GlobeOp accountable for alleged acts of breach of fiduciary duty, gross negligence, negligence and unjust enrichment. Under New York and Delaware law, claims by investors alleging common law torts against third-parties such as the ones at issue here are typically derivative and can be brought directly only when a plaintiff alleges an injury that is independent of any injuries incurred by the corporation. *See, e.g., In re Ionosphere Clubs v. Am. Nat'l Bank & Trust Co. of Chicago*, 17 F.3d 600, 606 (2d Cir. 1994) (holding that under Delaware law, shareholders may bring breach of fiduciary duty claims directly against third

parties only when the alleged injury is independent of injury to the corporation and affects individual shareholders' rights).[12]  Here, Plaintiffs can make no claim to have suffered independent injuries because those alleged injuries are entirely dependent on their partnership interest in the Fund and on alleged injuries incurred by the Fund itself.

Plaintiffs' unjust enrichment claim against GlobeOp is similarly derivative.  In their unjust enrichment cause of action, Plaintiffs seek to have GlobeOp return administrative services fees that it collected while serving as administrator of the Fund.  The problem for Plaintiffs, however, is that **the Fund** paid those fees.  (GS Offering Memo at 11, Cogan Decl. ¶ 2, Ex. A.) Thus, even assuming, *arguendo,* that GlobeOp was unjustly enriched, it is the Fund (and not the Plaintiffs in this case) that would be owed repayment of the administrative services fees.  Under these circumstances, the law is clear that Plaintiffs may not seek to collect repayment of those fees directly.  *See ABF Capital Mgmt. v. Askin Capital Mgmt. L.P.*, 957 F. Supp. 1308, 1333-1334 (S.D.N.Y. 1997) (holding that unjust enrichment claims against third parties belong to the Funds, not the individual investors, where the fees that plaintiffs seek to have returned were paid pursuant to investment advisory contracts between the Funds and those third parties).

## II.  PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO MAKE A DEMAND OR TO ADEQUATELY PLEAD DEMAND EXCUSAL

As explained *supra* Part I, Plaintiffs claims against GlobeOp cannot be pursued directly and would have to be pursued, if at all, as derivative claims.  But to assert derivative claims on behalf of a limited partnership, Plaintiffs must "comply with the requirements of bringing a valid

---

[12] *See also Primavera*, 1996 WL 494904, at *16 (requiring that shareholder claim against third party "who transacts business with a corporation … must allege either that the wrongful conduct violates a duty to him 'independent of the fiduciary duties owed that party along with all other shareholders,' or that the conduct caused an injury to the shareholders distinct from any injury to the corporation itself") (quoting *Cowin v. Bresler*, 741 F.2d 410, 415 (D.C. Cir. 1984).

derivative claim." *Litman v. Prudential-Bache Props. Inc.*, 611 A.2d 12, 17 (Del. Ch. 1992); Del. Code Ann. tit. 6, §§ 17-1001, 1003. If Plaintiffs fail to comply with those requirements, "they lack standing … [and] plaintiffs fail to state a claim for which [the court] can grant relief." *Litman,* 611 A.2d at 17.

It is fundamental under Delaware law that "the general partners . . . have control over derivative suits." *Litman v. Prudential-Bache Props. Inc.,* No. 12137, 1993 WL 5922, at *3 (Del. Ch. Jan. 4, 1993); *see also* Del. Code Ann. tit. 6 § 17-1001. In order to deprive the general partner of its control over derivative suits, a plaintiff must set forth in the complaint "with particularity the effort, if any, of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort." Del. Code Ann. tit. 6 § 17-1003. "The rule is one of substantive right—not simply a technical rule of pleading." *Haber v. Bell*, 465 A.2d 353, 357 (Del. Ch. 1983). Allegations of demand futility "must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings." *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).[13]

Delaware law provides two separate tests to determine whether demand futility has been appropriately pled.[14] The nature of the action at issue dictates which of Delaware's two demand futility tests is applicable. *See Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006) (*Aronson* test applies when the derivative action challenges a business decision made by the

---

[13] Demand futility is analyzed "claim-by-claim." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003). By its very nature, demand futility can vary defendant by defendant, depending on the relationships between the general partner and each defendant. *See Shlensky v. Dorsey*, 574 F.2d 131, 140-42 (3d Cir. 1978).

[14] *See Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984) (The Court must decide whether "a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment"); *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993) ("A court must determine" whether there is "a reasonable doubt that … the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand").

board of directors that would be considering the demand); *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993) (*Rales* test applies when the subject of the derivative action is not a business decision of the board that would be considering the demand). The same tests for demand futility are applied in the context of a demand on the general partner of a limited partnership as in the corporate context.[15]

Plaintiffs' claims against GlobeOp do not implicate business decisions made by the Fund's own management, but rather involve a set of actions and inactions by GlobeOp, an outside company that contracted to provide services to the Greenwich Sentry Fund. As a result, demand futility is determined under the *Rales* test. *See Rales*, 634 A.2d at 934. Under the *Rales* test, Plaintiffs' particularized allegations must "create a reasonable doubt that, as of the time the complaint was filed, the [general partner] could have properly exercised its independent and disinterested business judgment in responding to a demand" with respect to its claims against GlobeOp. *Rales*, 634 A.2d at 934; *Braddock*, 906 A.2d at 785.[16]

Plaintiffs fail to satisfy their burden of establishing demand futility as to GlobeOp. In fact, they do not make a single allegation suggesting that the Greenwich Sentry general partner would not be independent or disinterested with respect to GlobeOp (a third party who simply contracted to provide services to the Fund).[17] Further, even if Plaintiffs had made a legally

---

[15] *See In re Cencom Cable Income Partners, L.P.*, No. 14634 (Steele), 2000 WL 130629, at *4 (Del. Ch. Jan. 27, 2000) (applying the *Aronson* test in a partnership context); *Dean v. Dick*, No. 16566 (Chandler), 1999 WL 413400, at *2 (Del. Ch. June 10, 1999) (the "rule regarding demand futility in the corporate context is nearly the same as that in the limited partnership context" and the "corporate case law concerning demand futility is applicable in the limited partner setting").

[16] Under Delaware law, third parties (such as GlobeOp) have standing to challenge a derivative plaintiff's capacity to act on behalf of the corporation. *See Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988); *Rales*, 634 A.2d at 934 n.9.

[17] Incidentally, no demand was made in the *Ferber* Action either, nor were facts alleged to support a claim of demand futility. *See* Limited Partner's Derivative Complaint, *David I. Ferber SEP IRA v. Fairfield Greenwich Group et al.*, No. 600469/2009 (N.Y. Sup. Ct. filed Feb. 13, 2009). (Cogan Decl. ¶ 4, Ex. C.)

sufficient demand on the Greenwich Sentry Fund or adequately pled demand futility (which they have not even attempted to do here), Plaintiffs may not bring derivative claims on behalf of the Fund in this or any other Court. Rather, as another court has already ruled, derivative claims brought against GlobeOp related to the work it did for the Fund must be mediated or arbitrated, but not litigated, due to an arbitration clause contained in the ASA between GlobeOp and the Fund. (ASA ¶ 23, Cogan Decl. ¶ 3, Ex. B.) As such, dismissal of Plaintiffs' claims for lack of standing should be with prejudice because any amendment to the Complaint would be futile. *See, e.g., Landon v. County of Orange*, No. 08 Civ. 8048 (CS) (LMS), 2009 WL 2191335, at *12 (S.D.N.Y. July 23, 2009) ("Granting Plaintiff leave to file a second amended complaint against [defendant] would be futile because the deficiency in Plaintiff's First Amended Complaint … is substantive; better pleading will not cure it").

### III. ALL OF PLAINTIFFS' CAUSES OF ACTION AGAINST GLOBEOP MUST BE DISMISSED DUE TO NUMEROUS DEFICIENCIES IN THE WAY THEY ARE PLED

In addition to Plaintiffs' lack of standing to pursue their claims against GlobeOp, there are numerous other problems with their causes of action that require dismissal as a matter of law.

#### A. All Of Plaintiffs' Claims Against GlobeOp Are Preempted By New York State's Martin Act

Because Plaintiffs' claims against GlobeOp (1) do not allege fraud, (2) involve New York conduct, and (3) arise in the securities context, they are preempted by New York's Martin Act. *See* N.Y. Gen. Bus. Law, Art. 23-A, §§ 352 et. seq.

The Martin Act, New York's "blue sky" law, gives the State sole authority to investigate and prosecute securities claims in New York and preempts non-fraud state law-based claims by

private litigants. *See Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001). "Allowing private litigants to press common law claims covered by the Martin Act would upset the Attorney General's exclusive enforcement power in exactly the same way that it would upset the exclusive enforcement power to allow private claims pleaded under the Martin Act itself." *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), 2003 WL 22052894, at *2 (S.D.N.Y. Sept. 2, 2003) (collecting and discussing New York State cases).[18]

The Martin Act is liberally construed to cover all acts short of fraud that "arise … in the securities context," *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 422 (S.D.N.Y. 2007); s*ee also First Energy Leasing Corp. v. Attorney-General*, 496 N.E.2d 875, 878 (N.Y. 1986) ("Martin Act should be liberally construed to give effect to its remedial purpose"). In broadly construing the Martin Act, the courts do not require the factual allegations supporting a non-fraud state law claim to occur simultaneously with the sale or purchase of securities. *See Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 610-12 (S.D.N.Y. 2008). All that is required is that the non-fraud claim, such as breach of fiduciary duty, "arise[] … from the alleged securities fraud." *Id.* at 612. Given that Plaintiffs have alleged securities fraud in this case against all of the other defendants, there can be little dispute that the claims against GlobeOp (which all focus on the failure of GlobeOp to protect Plaintiffs from the fraud) arise "in the securities context."

---

[18] The decisions in this District are nearly unanimous that the Martin Act preempts all common law claims within its purview. *See Berk v. Moore, Clayton & Co. Inc.*, No. 06 Civ. 2716 (LLS), 2006 WL 3616961, at *6 (S.D.N.Y. Dec. 11, 2006); *Sedona Corp. v. Ladenburg Thalmann & Co. Inc.*, No. 03 Civ. 3120 (LTS)(THK), 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005); *Nairobi Holdings, Ltd. v. Brown Bros. Harriman & Co.*, No. 02 Civ. 1230 (LMM), 2002 WL 31027550, at *10 (S.D.N.Y. Sept. 10, 2002); *Mfrs. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 99 Civ. 1944 (NRB), 2000 WL 709006, at *5 (S.D.N.Y. June 1, 2000); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 291-92 (S.D.N.Y. 1998); *Indep. Order of Foresters v. Donaldson Lufkin & Jenrette Inc.*, 919 F. Supp. 149, 153-54 (S.D.N.Y. 1996). Only a small handful of decisions (state or federal) have found to the contrary, and those decisions have been accurately described as "solitary islands in a stream of contrary opinion". *See Nanopierce Techs.*, 2003 WL 22052894, at *4 (discussing *Cromer Fin. Ltd. v. Berger*, No. 00 Civ. 2498 (DLC), 2001 WL 1112548 (S.D.N.Y. Sept. 19, 2001) and *Scalp & Blade, Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639 (4th Dep't 2001)).

Further, the Martin Act's requirement that the underlying transaction be "within or from" New York is satisfied when a "substantial portion of the events giving rise to a claim occurred in New York." *See, e.g., Bayou Hedge Fund*, 534 F. Supp. 2d at 422. It is clear that, here, a "substantial portion" of the events giving rise to this lawsuit occurred in New York. Indeed, at its core, this case is about a massive Ponzi scheme perpetrated in New York by Madoff and how various defendants (including GlobeOp) are supposedly liable to Plaintiffs for causing Plaintiffs to invest in that New York-based scheme. (Compl. ¶¶ 166-167; *see also* Plea Allocution of Bernard L. Madoff at p. 1, Cogan Decl. ¶ 6, Ex. E.)

Accordingly, all of Plaintiffs' claims against GlobeOp should be dismissed. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co., et al.*, No 08 Civ. 7508 (SAS), 2009 WL 2828018, at *14 (S.D.N.Y. Sept. 2, 2009) (dismissing, *inter alia*, state law negligence, breach of fiduciary duty and unjust enrichment claims brought by institutional investors against financial services corporation and administrator on Martin Act preemption grounds); *see also Owens v. Gaffken & Barringer Fund, LLC, et al.*, No,. 08 Civ. 8414 (PKC), 2009 WL 3073338, at *14 (S.D.N.Y. 2009) (dismissing, *inter alia*, state law unjust enrichment claims brought by investor against investment fund, financial services provider, and investment manager on Martin Act preemption grounds); *Bayou Hedge Fund*, 534 F. Supp. 2d at 420-22 (dismissing hedge fund manager's alleged failure to detect a Ponzi scheme, finding that such claims were preempted by the Martin Act).

**B. Plaintiffs' Breach Of Fiduciary Duty, Negligence And Gross Negligence Claims Fail To Adequately Allege That GlobeOp Owed Plaintiffs A Duty (Fiduciary Or Otherwise)**

Plaintiffs' claims of breach of fiduciary duty, gross negligence, and negligence should be dismissed because Plaintiffs fail to adequately allege that GlobeOp owed them a duty (fiduciary or otherwise). *See Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (an action for negligence in New York requires a plaintiff to prove the existence of a duty on defendant's part as to plaintiff); *Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003) ("dismissal [of breach of fiduciary duty claim] is … appropriate where a plaintiff has not, and cannot as a matter of law, plead a fiduciary relationship").

A duty of care may arise where the parties are in contractual privity or have a relationship "so close as to approach that of privity." *VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP*, 348 F. Supp. 2d 255, 262 (S.D.N.Y. 2004). Here, Plaintiffs make no allegation that they were in contractual privity with GlobeOp.[19]

Further, Plaintiffs do not adequately allege that GlobeOp, as the Fund's administrator, owed any implied, non-contractual fiduciary duties to Plaintiffs, the Fund's limited investors. Plaintiffs claim that GlobeOp owed them an implied fiduciary duty because GlobeOp "occupied a superior position over Plaintiffs" and "held itself out as providing superior administrative

---

[19] The Complaint does not allege, for example, that Plaintiffs were a party to the ASA, which governed GlobeOp's provision of administrative services to Greenwich Sentry. In fact, the only parties to the ASA were GlobeOp, Greenwich Sentry, and the general partner, FGBL. (ASA at p. 1, Cogan Decl. ¶ 3, Ex. B.) Moreover, the GS Offering Memo provides that GlobeOp is responsible for providing administrative services to **Greenwich Sentry**, not to the Fund's limited partners. (GS Offering Memo at 10, Cogan Decl. ¶ 2, Ex. A.) Mere privity between GlobeOp and the Fund does not create privity between the Fund's limited partners and GlobeOp. *Goldstein v. S.E.C.*, 451 F.3d 873, 880 (D.C. Cir. 2006) (fund advisor's duty to fund does not flow to investors of the fund); *see also S.E.C. v. Northshore Asset Mgmt.*, No. 05 Civ. 2192 (WHP), 2008 WL 1968299, at *6 (S.D.N.Y. May 5, 2008) (advisor to fund owes fiduciary duties only to the fund, not to fund investors).

services to financial firms." (Compl. ¶ 543.) In support of these general allegations that GlobeOp owed Plaintiffs an implied fiduciary duty, Plaintiffs make only two specific factual allegations. First, Plaintiffs allege that GlobeOp's website (on September 29, 2009) contained a statement that GlobeOp "provide[s] truly independently derived net-asset-value (NAV) reports and best practice administration support for domestics and offshore funds." (Compl. ¶ 344.) Second, Plaintiffs allege that GlobeOp undertook "discretionary responsibilities" pursuant to the GS Offering Memo.[20] (Compl. ¶ 345.) Based on those allegations, Plaintiffs allege that they "reasonably and foreseeably reposed their trust and confidence in GlobeOp to fulfill its duties," and "[t]herefore, GlobeOp was a fiduciary to Plaintiffs and owed Plaintiffs a duty of care in the performance of its duties." (Compl. ¶ 346.)

The general rule is that "[f]iduciary duties do not arise solely because one party has expertise that is superior to another." *See generally Suthers v. Amgen Inc.,* 441 F. Supp. 2d 478, 487 (S.D.N.Y. 2006). In making such allegations, Plaintiffs appear to be attempting to rely on a line of cases holding that investors in a hedge fund may, in limited circumstances, be owed a fiduciary duty by the fund's administrators where (1) the administrators held themselves out to investors as having certain specialized policies and procedures to protect investors; (2) the investors reasonably relied on those representations; and (3) the administrator had discretionary responsibilities such as to independently value the fund's portfolio. *See, e.g., Pension Comm. of Univ. of Montreal Pension Plan v. Banc. Of America Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) (denying administrator's motion to dismiss breach of fiduciary duty claim brought by fund investors where administrator "held itself out to investors as having policies and procedures to

---

[20] Plaintiffs quote from page 10 of the GS Offering Memo, which states: "The Administrator [GlobeOp] is responsible for performing certain day-to-day administrative services for the Partnership. The Administrator will prepare and distribute monthly reports that will contain the amount of the Partnership's net assets, the amount of any distributions from the Partnership and Incentive Allocation (as defined below), accounting and legal fees and all other fees and expenses of the Partnership." (Cogan Decl. ¶ 2, Ex. A.)

ensure that the Funds' valuations would be accurate and fair, and [the investors] relied on these representations" and where the fund's offering memorandum reflected that the administrator was required to "independently value the fund's portfolio").

Here, Plaintiffs' allegations are deficient in multiple respects. As an initial matter, Plaintiffs make absolutely no allegation to support an inference that GlobeOp held itself out to investors as having specialized expertise *at the time they invested* (or that Plaintiffs relied on such representations at that time). To the contrary, the Complaint states only that GlobeOp's website *as of September 2009* contained certain representations about its expertise and the services it provides to customers. The Complaint is silent regarding what representations, if any, Plaintiffs claim GlobeOp made (and what representations Plaintiffs claim they relied upon) during the 2004-2006 time period that GlobeOp is alleged to have acted as administrator to the Fund. Further, the notion that Plaintiffs actually "relied" on anything GlobeOp said about its expertise in making their decision to invest in the Fund is not "plausible on its face" given the facts that (1) Plaintiffs invested in the Fund long before GlobeOp became administrator in 2004; and (2) Plaintiffs stayed invested in the Fund long after GlobeOp was replaced as administrator by Citco in 2006. (Compl. ¶¶ 157-158, 167, 172.) *See Iqbal,* 129 S.Ct. at 1949.

Moreover, notwithstanding Plaintiffs' conclusory allegations to the contrary, there is no basis to conclude that GlobeOp had *discretionary* duties such as the duty to independently calculate the value of the fund's portfolio or somehow independently confirm that the securities existed (as opposed to fulfilling the administrative tasks of putting together and distributing statements containing the value of the fund's portfolio based on information provided to GlobeOp). Plaintiffs rely on the GS Offering Memo as support for their allegation that GlobeOp carried out "discretionary" duties on behalf of the Fund, but a review of the GS Offering Memo

plainly reveals that GlobeOp's responsibilities did not extend beyond providing "day-to-day administrative services" to the Fund, and that the General Partner—not GlobeOp—was responsible for performing any discretionary activities, such as valuing the Fund's assets. (GS Offering Memo at 33, Cogan Decl. at ¶ 2, Ex. A.) ("All matters concerning valuation of assets, as well as allocation among the Partners and accounting procedures not expressly provided by the Partnership Agreement, may be determined by the General Partner, whose determination will be final and conclusive as to all Partners.")

As such, Plaintiffs' claim that GlobeOp owed them a fiduciary duty must fail. *See, e.g., Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 443, 447-48 (S.D.N.Y. 2005) (holding that fund investors' claim that fund administrator owed them fiduciary duty was not adequately pled where plaintiffs alleged only that administrator "was responsible for calculating the NAV of the Funds" but not for "independently calculat[ing] or verify[ing] the [fund's] prices" used to calculate the fund's NAV); *see also Scionti, et al., v. First Trust Corp., et al.*, No. 95 Civ. 5493 (MH), 1999 U.S. Dist. LEXIS 23253, at *131-32 (S.D. Tex. June 23, 1999) (Defendant has no fiduciary relationship with plaintiff where "[t]here is no competent evidence that [defendant] participated in any investment decisions or discretionary matters regarding the investment of [plaintiff's] funds").

### C. Plaintiffs Fail To Allege Facts Sufficient To Support A Claim For Gross Negligence

A claim for gross negligence must be supported by factual allegations that a defendant's conduct "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *In re Enron Corp.*, 292 B.R. 752, 767 (Bankr. S.D.N.Y. 2003) (quoting *Am. Tel. & Tel. Co. v. City of New York, et al.*, 83 F.3d 549, 556 (2d Cir. 1996)). Plaintiffs allegations do not support an inference that GlobeOp acted recklessly. Indeed, the only allegation that

Plaintiffs make that even attempts to do so is the conclusory allegation that GlobeOp "relied" on information provided by the Fund and BLMIS, even though "GlobeOp was not entitled to rely on such information because of the red flags surrounding BLMIS." (Compl. ¶ 552.)  The problem for Plaintiffs is that the Complaint does not so much as begin to explain why it is reasonable to conclude that GlobeOp would have been aware of such alleged red flags.  Indeed, GlobeOp is not alleged to have conducted due diligence on Madoff or otherwise monitored his business nor is it alleged that GlobeOp was required to do so.  Rather, GlobeOp was a service provider that was hired to provide administrative services to an entity that happened to invest through Madoff.  Simply put, there is nothing about the role GlobeOp was alleged to have played that suggests that it would have had any reason to know about the supposed red flags surrounding Madoff or otherwise doubt that BLMIS was a legitimate business.[21]

### D.  The Economic Loss Rule Prevents Plaintiffs From Asserting State Law Tort Claims Against GlobeOp

Plaintiffs' tort claims are also barred by the economic loss rule.  Under New York law, Plaintiffs may not press tort claims when they only seek a remedy for economic loss.  *See Long Island Lighting Co. v. Stone & Webster Eng'g Corp.*, 839 F. Supp. 183, 187 (E.D.N.Y. 1993).[22]

---

[21] The New York State Supreme Court recently dismissed similar allegations of gross negligence by investors.  *See Baker v. Andover Assocs. Mgmt. Corp.*, No. 6179/2009, slip op. at 27 (N.Y. Sup. Ct. Nov. 30, 2009) (holding that conclusory allegations that defendants "missed red flags", were "reckless" in performing their duties, and failed to exercise "due care" with respect to plaintiffs' investments were insufficient to satisfy the pleading requirements for a claim of gross negligence). Further, even if one were to assume, *arguendo,* that GlobeOp had some sort of obligation to conduct diligence on, or monitoring of, Madoff (which it most certainly did not), there is no basis to infer that it was "reckless" that GlobeOp did not perceive red flags, particularly given the fact that the SEC, which was charged with overseeing Madoff's operations, did not.  *See, e.g., Bayou Hedge Fund*, 534 F. Supp. 2d at 407, 517-18 ("I . . . find the inference of recklessness alleged by plaintiff—that the [defendant's] failure to uncover the fraud evidences a reckless lack of due diligence—to be less compelling than an opposing inference—that [defendant's] failure to discover the fraud merely places it alongside the SEC, the IRS and every other interested party that reviewed [the asset manager's] finances").

[22] *See also Greater N.Y. Auto. Dealers Ass'n et al. v. Envtl. Sys. Testing, Inc.*, 211 F.R.D. 71, 82  (E.D.N.Y. 2002) ("[T]he Second Circuit has determined that New York does not recognize a tort cause of action when only economic

Plaintiffs here assert tort claims but do not allege personal injury or property damage. As a result, Plaintiffs' tort claims are barred by the economic loss rule and should be dismissed.

### E. Plaintiffs' State Law Tort Claims Should Be Dismissed Because Madoff And BLMIS' Intentional Criminal Acts Were A Supervening Cause Of Plaintiffs' Alleged Injuries

Plaintiffs must adequately allege that GlobeOp's conduct was the direct and proximate cause of Plaintiffs' purported losses.[23] As a matter of law, the courts will not hold defendants liable for acts by third parties, such as Bernard Madoff and BLMIS, that are "unforeseeable, independent of the acts of defendants, and adequate by [themselves] to bring about plaintiff's injuries." *Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 319 (3d Cir. 1999) (applying New York law) (quoting *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 621 (10th Cir. 1998)). In particular, defendants have no duty to anticipate and prevent intentional or criminal acts of a third-party. *Henry v. Merck & Co.*, 877 F.2d 1489, 1492 (10th Cir. 1989); *accord Ward v. State*, 366 N.Y.S.2d 800, 807 (Cl. Ct. 1975).

Bernard Madoff's unprecedented criminal activities were the immediate cause of Plaintiffs' alleged losses. (Compl. ¶¶ 167-68). Without an allegation that GlobeOp had a duty to anticipate and prevent Madoff's criminal activities, Plaintiffs fail to allege a "proximate, causal nexus between the [allegedly] careless act and the resulting injuries." *Arcadian Corp.*, 189 F.3d

---

loss sought."); *Black Radio Network, Inc. v. NYNEX Corp. et al.*, No. 96 Civ. 4138 (DC), 2000 WL 64874, at *3 (S.D.N.Y. Jan. 25, 2000) ("[P]laintiffs' negligence and gross negligence claims must be dismissed because plaintiffs seek only damages for 'economic' losses and New York law does not permit a plaintiff to recover for economic loss from a defendant's alleged negligence…").

[23] *See e.g. Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS), 2003 WL 660844, at *2 (S.D.N.Y. Feb. 27, 2003) (dismissal of unjust enrichment claim warranted where plaintiff failed to allege proximate cause); *see also Campbell v. DiSabatino*, 947 A.2d 1116, 1117 (Del. 2008) ("To prevail in a claim for negligence, a plaintiff must establish that … the defendant's breach was the proximate cause of the plaintiff's injury"); *Thorpe by Castleman v. CERBCO*, Inc., 676 A.2d 436, 444 (Del. 1996) (declining to award damages to derivative plaintiffs who failed to establish that breach of fiduciary duty was proximate cause of plaintiffs' alleged damages).

at 319 (quoting *Gaines-Tabb*, 160 F.3d at 620). Plaintiffs' claims against GlobeOp should therefore be dismissed for failing to adequately allege proximate causation.[24]

## IV. PLAINTIFFS CANNOT SUSTAIN THEIR UNJUST ENRICHMENT CLAIMS

### A. Plaintiffs Do Not Allege That They Suffered Any Direct Harm From The Alleged Unjust Enrichment

Plaintiff's unjust enrichment claim fails because the Complaint lacks any allegation that the Fund's limited partners—as opposed to the Fund itself—paid for GlobeOp's administrative services. The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *see also ABF Capital*, 957 F. Supp. at 1333.

The Complaint alleges only that "GlobeOp collected fees in return for the services it was ostensibly providing." (Compl. ¶ 548.) Plaintiffs never allege that they—the Fund's limited partners—directly paid for GlobeOp's administrative services. Further, the GS Offering Memo states that the "Partnership" (defined as the Greenwich Sentry Fund) was responsible for paying GlobeOp's fees. (GS Offering Memo at 11, Cogan Decl. ¶ 2, Ex. A.) Thus, even assuming that GlobeOp was unjustly enriched, Plaintiffs fail to allege that this unjust enrichment was at their expense. For this reason, Plaintiffs' unjust enrichment claim should be dismissed for failing to adequately state a claim upon which relief can be granted.[25]

---

[24] The lack of proximate causation is all the more striking considering GlobeOp's role as administrator ended in 2006, **more than two years** before Madoff's fraud was discovered.

[25] *See ABF Capital*, 957 F. Supp. at 1334 (dismissing unjust enrichment claims by shareholders against third party

**B. An Unjust Enrichment Claim Is Unavailable Where, As Here, A Contract Governs The Subject Matter At Issue**

Unjust enrichment is an equitable remedy that is available to a litigant only where there is no contract and where none was intended.  *See Tower Int'l., Inc. v. Caledonian Airways, Ltd.*, 969 F. Supp. 135, 138 (E.D.N.Y. 1997) (applying New York law); *see also Fandy Corp. v. Chang*, 707 N.Y.S.2d 361 (2d Dep't 2000); *Petrello v. White*, 412 F. Supp. 2d 215, 233 (E.D.N.Y. 2006) ("New York Courts and the Second Circuit have consistently held 'that the existence of a written agreement precludes a finding of unjust enrichment'") (quoting *In re First Cent. Fin. Corp.*, 377 F.3d 209, 213 (2d Cir. 2004)).  Here, a contract exists that precludes an unjust enrichment claim.  Specifically, GlobeOp provided the administrative services that are the subject of Plaintiffs' claims against GlobeOp pursuant to the ASA.[26]   (ASA, Cogan Decl. ¶ 3, Ex. B.)  As such, the Court should dismiss this claim as a matter of law.

---

investment advisor because "Plaintiffs do not cite any authority holding that shareholders may bring unjust enrichment claims against third parties … that transacted business with the corporate entity where … the claims are based on the transactions between the corporation and the third party").

[26] The fact that Plaintiffs are not themselves signatories to the ASA is not relevant. *ABF Capital Mgmt* 957 F. Supp. at 1334 ("Plaintiffs' own lack of a contract with the Defendants does not provide the basis for creating a quasi-contractual cause of action, when the Funds have a contractual cause of action to pursue"); *see also Graystone Materials Inc. v. Pyramid Champlain Co.,* 604 N.Y.S.2d 295, 296 (App. Div. 1993); *Metro. Elec. Mfg. Co. v. Herbert Const. Co. Inc.,* 583 N.Y.S.2d 497, 498 (App. Div. 1992) (plaintiff manufacturer's contract with subcontractor precluded manufacturer from equitably recovering from owner or contractor).

**CONCLUSION**

For the foregoing reasons, Plaintiffs' claims against GlobeOp should be dismissed, with prejudice.

Dated: New York, New York
      December 22, 2009

Respectfully submitted,

KOBRE & KIM LLP

s/ Jonathan D. Cogan
Jonathan D. Cogan
jonathan.cogan@kobrekim.com
Michael S. Kim
michael.kim@kobrekim.com
800 Third Avenue
New York, New York 10022
Tel: + 1 212 488 1200
Fax: + 1 212 488 1220

Of Counsel:
Grant B. Rabenn
grant.rabenn@kobrekim.com
1919 M Street, N.W.
Washington, D.C. 20036
Tel: + 1 202 664 1900
Fax: + 1 202 664 1920

*Attorneys for GlobeOp Financial Services LLC*