UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ANWAR, et al.,                                      MASTER FILE NO.
                                                    09-CV-0118 (VM)
Plaintiffs,

                        -against-

FAIRFIELD GREENWICH LIMITED, et al.,

Defendants.

This Document Relates To:    All Actions
-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITCO FUND
SERVICES (EUROPE) B.V. AND CITCO (CANADA) INC.'S MOTION
TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT**

**GILBRIDE, HELLER & BROWN, P.A.**
Lewis N. Brown
Amanda M. McGovern
One Biscayne Tower, 15th Floor
2 South Biscayne Boulevard
Miami, FL 33131
T: 305.358.3580
F: 305.374.1756
lbrown@ghblaw.com
amcgovern@ghblaw.com

**CURTIS, MALLET-PREVOST, COLT &
MOSLE, LLP**
Eliot Lauer (EL 5590)
Michael Moscato (MM 6321)
101 Park Avenue
New York, NY 10178
T: 212.696.6000
F: 212.697.1559
elauer@curtis.com
mmoscato@curtis.com

*Attorneys for Citco Fund Services (Europe)
B.V. and Citco (Canada) Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 5

ARGUMENT ............................................................................................................................ 7

I.    Plaintiffs Fail to State a Claim Under Section 10(b) and Rule 10b-5 ................................ 7

    A.    Plaintiffs Fail to Plead Scienter With Particularity ................................................ 7

        1.    Plaintiffs Fail to Establish a Motive to Commit Fraud ................................. 8

        2.    Plaintiffs Fail to Establish Conscious Misbehavior or Recklessness ............ 9

    B.    Plaintiffs Fail to Adequately Plead Reliance ...................................................... 11

II.    Plaintiffs' State Law Claims Against CFSE and CCI Are Barred By SLUSA ............... 12

III.    CFSE and CCI Are Not Liable for the Alleged Acts of Separate Corporate Entities ...... 12

IV.    Plaintiffs' State Common Law Claims Are Otherwise Legally Deficient ....................... 13

    A.    Plaintiffs' Third-Party Beneficiary Claim Is Contradicted by the Plain Language of the Administration Agreements ...................................................... 13

    B.    Plaintiffs' Tort Claims (Other than Aiding and Abetting Fraud) Are Barred by the Economic Loss Rule ................................................................................ 17

    C.    Plaintiffs Lack Standing to Assert Derivative Claims ......................................... 17

    D.    Plaintiffs' Tort Claims (Other than Aiding and Abetting Fraud) Are Barred by the Martin Act ................................................................................................ 17

    E.    Plaintiffs Fail to State Claims for Gross Negligence and Negligence ................. 17

    F.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ............................. 18

    G.    Plaintiffs Fail to State a Claim for Negligent Misrepresentation ......................... 20

    H.    All Purported Common Law "Holder" Claims Should Be Dismissed ................. 22

I.     Plaintiffs Fail to State Claims for Aiding and Abetting Breach of Fiduciary Duty and Fraud ................................................................................................ 23

J.     Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law ........................... 24

K.    CFSE and CCI Are Not Liable for the Alleged Acts of Other Companies or Individuals............................................................................................................. 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Case(s)**                                                                                                          **Page(s)**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,*
   404 F.3d 566 (2d Cir. 2005)............................................................................................... 21

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner LLC,*
   637 F. Supp. 2d 185 (S.D.N.Y. 2009)............................................................................. 13

*Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.,*
   No. CV-05-5155 (SJF), 2007 WL 674691 (E.D.N.Y. Feb. 28, 2007)..................................... 21

*Am. Tel. & Tel. Co. v. City of New York,*
   83 F.3d 549 (2d Cir. 1996).............................................................................................. 17

*Banco Espirito Santo de Investimento, S.A. v. Citibank N.A.,*
   No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003),
     *aff'd,* 110 F. App'x 191 (2d Cir. 2004)...................................................................... 15

*Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano,*
   No. 03 Civ. 0015 (RWS), 2006 WL 1997628 (S.D.N.Y. July 18, 2006) ............................... 20

*Barron Partners, LP v. Lab123, Inc.,*
   593 F. Supp. 2d 667 (S.D.N.Y. 2009).............................................................................. 19

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723 (1975)......................................................................................................... 12

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
   70 N.Y.2d 382 (1987) ..................................................................................................... 24

*Consol. Edison, Inc. v. Northeast Utils.,*
   426 F.3d 524 (2d Cir. 2005)............................................................................................ 13

*Credit Alliance Corp. v. Arthur Andersen & Co.,*
   483 N.E.2d 110 (N.Y. 1985)........................................................................................... 20

*DeBlasio v. Merrill Lynch & Co., Inc.,*
   No. 07 Civ. 318 (RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) .................................... 19

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase,*
   553 F.3d 187 (2d Cir. 2009)............................................................................................. 9

*Eurycleia Partners, LP v. Seward & Kissel, LLP,*
   46 A.D.3d 400 (1st Dep't 2007) ..................................................................................... 17

*Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*,
    769 N.Y.S.2d 487 (1st Dep't 2003) ...................................................................... 13

*Hunt v. Enzo Biochem, Inc.*,
    471 F. Supp. 2d 390 (S.D.N.Y. 2006) .................................................................. 23

*Hunt v. Enzo Biochem, Inc.*,
    530 F. Supp. 2d 580 (S.D.N.Y. 2008) .................................................................. 23

*In re Bayou Hedge Fund Litig.*,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007) .................................................................. 10

*In re Citigroup Auction Rate Sec. Litig.*,
    No. 09 Civ. 3095 (LTS) (FM), 2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009) ...................... 11

*In re Elan Corp. Sec. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008) ............................................................. 2, 14

*In re Enron Corp.*,
    292 B.R. 752 (Bankr. S.D.N.Y. 2003) ................................................................. 17

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ..................................................................................... 2

*Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. LLC*,
    No. 00 Civ. 9214 (RWS), 2007 WL 2948115 (S.D.N.Y. Oct. 3, 2007) ...................... 19, 20

*Long Island Lighting Co. v. Stone & Webster Eng'g Corp.*,
    839 F. Supp. 183 (E.D.N.Y. 1993) ...................................................................... 15

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank*,
    No. 1:08-CV-01720 (LAP), 2009 WL 860635 (S.D.N.Y. Mar. 31, 2009) ...................... 19

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    592 F. Supp. 2d 608 (S.D.N.Y. 2009) ........................................................ 12, 20, 22

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
    19 F. Supp. 2d 157 (S.D.N.Y. 1998) .................................................................... 15

*Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*,
    684 F. Supp. 27 (S.D.N.Y. 1988),
    *aff'd*, 865 F.2d 492 (2d Cir. 1989) ...................................................................... 23

*Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*,
    597 N.E.2d 1080 (N.Y. 1992) ............................................................................. 21

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)...................................................................... 7, 10

*South Cherry St., LLC v. Hennessee Group LLC*,
    573 F.3d 98 (2d Cir. 2009).................................................................. 7, 9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................... 3, 7, 10

*Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*,
    158 F. Supp. 2d 335 (S.D.N.Y. 2001)........................................................ 18

*Vill. on Canon v. Bankers Trust Co.*,
    920 F. Supp. 520 (S.D.N.Y. 1996)............................................................ 20

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007)........................................................ 19

**Statute and Rules**                                                          **Page(s)**

Fed. R. Civ. P. 12(b)(6)............................................................................... 1

Fed. R. Civ. P. 12(b)(1)............................................................................... 1

Local Civil Rule 37.2................................................................................. 1

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78(j) .................................. 1, 7

Rule 10b-5, 17 CFR §240.10b-5 ................................................................. 1, 7

Martin Act ................................................................................................ 4, 17

Securities Litigation Uniform Standards Act of 1998 ("SLUSA")........................................ 3, 12

Defendants, Citco Fund Services (Europe) B.V. ("CFSE") and Citco (Canada) Inc. ("CCI"), move to dismiss with prejudice the claims asserted against them in the Second Consolidated Amended Complaint ("SCAC"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Civil Rule 37.2 of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York.

## PRELIMINARY STATEMENT

In this putative class action, Plaintiffs claim to be shareholders in two offshore funds and limited partners in two domestic funds (collectively, the "Fairfield Funds"), which either directly or indirectly invested nearly all of their assets with Bernard L. Madoff ("Madoff") and his securities firm, Bernard L. Madoff Investment Securities LLC ("BLMIS").[1]

Plaintiffs seek to recover their purported net principal investments in the Fairfield Funds, which they allege were wiped out as a result of a "'Ponzi scheme' . . . orchestrated by Bernard Madoff." (SCAC ¶ 1.) Plaintiffs assert ten claims against CFSE and CCI, the administrator and sub-administrator, respectively, of the Fairfield Funds – a claim for violation of section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, and nine common law claims. None of those claims is sustainable as a matter of law.

Each of Plaintiffs' claims is based upon, or arises out of, CFSE's alleged contractual relationships with the Fairfield Funds pursuant to Administration Agreements between CFSE and the Fairfield Funds (the "Administration Agreements").[2] Consistent with the representations

---

[1]  The two offshore funds at issue in this case are Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma"). The two domestic funds are Greenwich Sentry, L.P. ("Greenwich Sentry") and Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners").

[2]  The 2003 Sentry and Sigma Agreements, which are identical, and the 2006 Greenwich Sentry and Greenwich Sentry Partners Agreements are the operative agreements between the

made in the Fairfield Funds' offering documents, CFSE and CCI had no role in the management of the Fairfield Funds' assets, or in the selection of BLMIS as the Fairfield Funds' prime broker and investment advisor. Rather, under the Administration Agreements, CFSE and its sub-administrator, CCI, provided purely administrative services, which included the preparation of the Fairfield Funds' monthly Net Asset Value ("NAV") statements based on the account statements provided by the Fairfield Funds' prime broker's, *i.e.,* BLMIS. The Administration Agreements underscore the right of CFSE and CCI to rely on the authenticity of the prime broker's statements. Indeed, CFSE and CCI had no obligation under the Administration Agreements to verify the existence of the securities listed on the prime broker's statements. Further, the Administration Agreements contravene any argument that the parties to those agreements intended to confer third party beneficiary status upon Plaintiffs.[3]

Significantly, nothing in the SCAC can obscure two indisputable facts that are fatal to Plaintiffs' claims. First, before investing in the Fairfield Funds, Plaintiffs never (i) received any information from, (ii) had any direct communications with, or (iii) relied on any statement made by CFSE or CCI regarding the Fairfield Funds. Because the SCAC does not sufficiently allege that Plaintiffs relied on the NAV statements prior to making their initial (or subsequent)

---

parties, are incorporated by reference in the SCAC, and are central to Plaintiffs' claims. Copies of the Administration Agreements are attached as Exhibits A, B, C, and D, respectively, to the Declaration of Amanda McGovern in Support of this Memorandum, and are cited as (Decl., Ex. __¶ __). Materials incorporated by reference and integral to the SCAC may be, and should be, considered in deciding CFSE and CCI's Motion to Dismiss. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

[3]   The allegations in the SCAC relating to the contractual duties under the Administration Agreements are contradicted by the plain language of the Administration Agreements themselves, and thus should be disregarded. *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 206 (S.D.N.Y. 2008).

investments, Plaintiffs fail to state a claim, under any theory pled, that Plaintiffs were induced by CFSE or CCI to invest in the Fairfield Funds.

Second, once their investments were made, there was nothing CFSE or CCI could do to prevent their loss. Plaintiffs acknowledge that Madoff operated a Ponzi scheme in which he "made no securities trades" and "fraudulently distributed new investors' assets to prior investors to create the illusion of profits." (SCAC ¶ 166.) Thus, Plaintiffs' principal investments were lost in Madoff's fraudulent scheme from the moment they were made. Because Plaintiffs cannot show that they would have been in any better a situation, *i.e.*, that they would not have lost their investments, had Madoff's fraud been disclosed earlier, or that CFSE and CCI could have prevented their post-investment losses, Plaintiffs fail to allege loss causation as to their "holder" claims and those claims should be dismissed.

As to the specific claims against CFSE and CCI, they should be dismissed because:

Plaintiffs' federal securities claims fail under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), because the SCAC does not plead, with any degree of particularity, that CFSE and CCI acted with scienter. The SCAC does not allege ***any facts*** that would support an inference that CFSE and CCI were aware that any of the information they disseminated was false, nor does the SCAC point to any facts tending to create strong circumstantial evidence that CFSE and CCI acted recklessly. In addition, Plaintiffs do not plead with sufficient particularity that they received and relied on any alleged misrepresentations by CFSE or CCI.

Plaintiffs' nine common law claims cannot withstand scrutiny because:

*First*, Plaintiffs' claims brought directly on behalf of a putative class of fund investors are barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

*Second*, all of Plaintiffs' common law claims (other than negligent misrepresentation) are pled against "Citco," a term used in the SCAC that has no legal identity, and thus these claims are confusing and unanswerable.

*Third*, Plaintiffs' claim for third-party beneficiary breach of contract fails because nothing in the Administration Agreements demonstrated an intention by the contracting parties to permit enforcement of the contracts by third parties such as Plaintiffs.

*Fourth*, all of Plaintiffs' tort claims (other than aiding and abetting fraud) are precluded by the economic loss rule.

*Fifth*, all of Plaintiffs' common law claims fail because they are derivative.

*Sixth*, all of Plaintiffs' tort claims (other than aiding and abetting fraud) fail as a matter of law because they are preempted by the Martin Act.

*Seventh*, Plaintiffs' claims for gross negligence and negligence fail because they are based on the contractual relationships between CFSE and CCI and the Fairfield Funds, which do not create a duty to Plaintiffs.

*Eighth*, Plaintiffs' claim for breach of fiduciary duty fails because Plaintiffs cannot allege the existence of a fiduciary relationship.

*Ninth,* Plaintiffs' negligent misrepresentation claim fails because Plaintiffs do not allege a relationship of either privity or "near privity" with CFSE or CCI.

*Tenth,* all of Plaintiffs' claims for any post-investment losses (*i.e.,* their "holder" claims) fail because, as noted above, Plaintiffs cannot establish loss causation with respect to such claims. Moreover, the SCAC does not come close to pleading the details required to state a holder claim.

*Eleventh,* Plaintiffs' claims for aiding and abetting breach of fiduciary duty and fraud are unsustainable because Plaintiffs assert no facts indicating that CFSE and CCI had actual knowledge of the wrongful conduct allegedly committed by the seven entities and nine individuals defined in the SCAC as the "Fairfield Defendants."

*Twelfth,* Plaintiffs' claim for unjust enrichment fails because the SCAC does not and cannot allege that Plaintiffs paid any fees to CFSE or CCI and because the existence of the Administration Agreements governing the fees at issue forecloses an unjust enrichment claim based on those fees. Nor can a constructive trust be awarded because Plaintiffs merely seek to recover monetary damages and no *res* has been identified on which a constructive trust could be imposed.

*Finally*, the SCAC fails to allege any basis for holding CFSE and CCI vicariously liable for the alleged acts of four separate companies or the acts of Brian Francoeur or Ian Pilgrim (employees of one of those companies) under either a veil-piercing or agency theory of liability.

For these reasons, and as demonstrated in more detail below, all of the claims against CFSE and CCI fail as a matter of law and should be dismissed with prejudice.

## STATEMENT OF FACTS

According to the SCAC, Fairfield Sentry and Fairfield Sigma are hedge funds incorporated under the law of the British Virgin Islands ("BVI"). (SCAC ¶¶ 170, 171.) Greenwich Sentry and Greenwich Sentry Partners are Delaware limited partnerships. (*Id*. ¶¶ 172, 173.) The Fairfield Funds were managed by their general partners, Defendants Fairfield Greenwich Limited ("FGL") and Fairfield Greenwich (Bermuda) Ltd. ("FGB"). (*Id*. ¶¶ 118, 119.) FGL and FGB, with or through their partner, Defendant Fairfield Greenwich Group ("FGG"), selected Madoff as the Fairfield Funds' investment advisor, broker and custodian/sub-

custodian, which was disclosed to all investors in the Fairfield Funds. (*Id*. ¶¶ 169-173.) Since at least 1990, Madoff perpetrated a "massive Ponzi scheme" through BLMIS. (*Id*. ¶ 166.)

CFSE, a Netherlands company, became the administrator for Fairfield Sentry and Fairfield Sigma in 2003, and for Greenwich Sentry and Greenwich Sentry Partners in 2006. (*Id.* ¶ 157.) As permitted under the Administration Agreements, CFSE delegated certain duties to CCI, a Canadian company, to act as sub-administrator. (*Id.* ¶ 158.) The Administration Agreements between CFSE and the Fairfield Funds set forth the services that CFSE agreed to perform as administrator. Such responsibilities included maintaining the register of the Fairfield Funds, calculating the NAV statements as of the end of each month, and reporting the NAV in statements requested by the Fairfield Funds. (*See, e.g.,* Decl., Ex. A, at Sch. 2, Part 2, pp. 18-19.) ***The Administration Agreements underscore CFSE's and CCI's right, in performing their duties to the Fairfield Funds, to rely on the authenticity of the account statements provided by the prime broker, i.e., BLMIS.*** (*See id*., 6.2.)

The Fairfield Funds' Private Placement Memoranda and Confidential Offering Memoranda (collectively, the "PPMs") disclosed the material risks of the investment with the Fairfield Funds and their single, flagship investment strategy – the so-called split strike conversion strategy.[4] (*See id*.; s*ee also* SCAC ¶ 184.) The PPMs make clear that neither CFSE nor CCI was responsible for directing the Fairfield Funds' investment and trading activities. (*See id*.; *see also* SCAC ¶ 184.) Specifically, the PPMs disclosed to all investors that: "The Split Strike Conversion strategy is implemented by [BLMIS], a broker dealer registered with the [SEC] through accounts maintained by the [Fairfield Funds] at that firm." (*See id*.; *see also* SCAC ¶ 184.) The PPMs also disclosed to investors that FGL and FGB were solely responsible

---

[4] The PPMs, which contain these disclosures, are attached to the Declaration of Amanda M. McGovern as Composite Exhibit E.

for the selection of BLMIS as the sub-custodian of Fairfield Sentry. (*See id.*; *see also* SCAC ¶¶ 169-173.)

## ARGUMENT

### I.     Plaintiffs Fail to State a Claim Under Section 10(b) and Rule 10b-5

Plaintiffs' section 10(b) and Rule 10b-5 claims should be dismissed because Plaintiffs have failed to plead either scienter or reliance with the required particularity.[5]

#### A.     Plaintiffs Fail to Plead Scienter With Particularity

The Supreme Court has defined scienter as a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs,* 551 U.S. at 319. Under the PSLRA, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *South Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir. 2009). Plaintiffs can only establish an inference of scienter if they allege specific facts that show either (1) defendants had the motive and opportunity to commit fraud; or (2) strong circumstantial evidence of conscious misbehavior or recklessness. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128-30 (2d Cir. 1994). To qualify as a "strong inference" under the PSLRA, "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. Accordingly, the Second Circuit has instructed that, on a motion to dismiss, a court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, but also

---

[5]     Many of Plaintiffs' securities fraud claims are time-barred. In addition, many of Plaintiffs' negligence-based state law claims are time-barred under New York's three-year statute of limitations, and these claims may be subject to shorter limitations periods depending on the law of each Plaintiff's individual domicile. As this argument is fully set forth in section V of The Citco Group Limited's ("CGL's") Memorandum of Law in Support of Its Motion to Dismiss, CFSE and CCI incorporate that argument herein.

competing inferences rationally drawn from the facts alleged." *South Cherry St.*, 573 F.3d at 111

(quoting *Tellabs*, 551 U.S. at 314).

In support of their securities claims, Plaintiffs allege: "The Citco Defendants issued false statements containing inflated NAV calculations and account balance information." (SCAC ¶ 523.) Plaintiffs further allege that the "Citco Defendants acted recklessly because they knew or had access to information suggesting that their public statements were not accurate," and because they "were aware of the red flags surrounding B[L]MIS, including the consolidation of the roles of investment manager, custodian and execution agent in Madoff and B[L]MIS." (*Id.* ¶¶ 523, 524.) These conclusory statements are insufficient. First, these so-called "red flags" are nothing of the sort, as the PPMs disclosed the role of BLMIS to Plaintiffs, who were aware of this aspect of the investment before they invested in the Fairfield Funds. (Decl., Ex. E.) In addition, the Administration Agreements are clear that CFSE and CCI had the right to rely on the authenticity of the prime broker's (*i.e.,* BLMIS's) statements and had no obligation under the Administration Agreements to verify the existence of the securities contained in the prime broker's statements. (*See id*.) Plaintiffs have not alleged with particularity ***any facts*** that would support an inference that CFSE and CCI were aware that any of the information they allegedly disseminated was false, nor have they pointed to any facts tending to create strong circumstantial evidence that CFSE and CCI acted recklessly.

### 1. Plaintiffs Fail to Establish a Motive to Commit Fraud

The SCAC fails to satisfy either of the accepted methods of pleading scienter. First, Plaintiffs fail to establish that CFSE or CCI possessed a motive to commit fraud. Plaintiffs would have this Court believe that CFSE and CCI, as part of the "global industry leader in financial services, including hedge fund administration, custody and fund trading" (SCAC ¶

319), which administers "more than 2,000 funds with more assets than any other hedge fund administrator" (*id.* ¶ 323), willingly assisted Madoff (who was arrested and sentenced to 150 years in prison) in defrauding Plaintiffs in order to collect "millions of dollars in fees – fees that were calculated on the basis of fictitious profits reported by Madoff." (*Id.* ¶ 343.)  This wildly implausible scenario is the sum total of Plaintiffs' explanation of CFSE's and CCI's motive to commit fraud, and it falls far short of establishing the "strong inference" required by law.  *See, e.g., South Cherry St.*, 573 F.3d at 113-14.  Indeed, the Second Circuit has rejected the notion that a desire for fees constitutes "a cogent or compelling" motivation to commit securities fraud:

> It is far less plausible to infer that an industry leader that prides itself on having expertise . . . that values and advertises its credibility in the industry – and that evaluates 550 funds – would deliberately jeopardize its standing and reliability, and the viability of its business, by recommending [investment in a Ponzi scheme], to a large segment of its clientele. . . .

*Id.* at 113.

## 2. Plaintiffs Fail to Establish Conscious Misbehavior or Recklessness

Plaintiffs similarly fail to establish conscious misbehavior or recklessness.  In order to allege recklessness, Plaintiffs must show that CFSE and CCI either knew the truth, or that the truth was "so obvious that the defendant must have been aware of it."  *ECA Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase*, 553 F.3d 187, 198 (2d Cir. 2009).  Plaintiffs' allegations must create a strong inference that CFSE and CCI acted with a state of mind approximating an actual intent either to relay false or misleading information or "to aid the fraud being perpetrated" by Madoff.  *South Cherry St.*, 573 F.3d at 110.

Plaintiffs have not alleged sufficient facts to establish a strong showing that CFSE and CCI acted either consciously or with reckless disregard for the truth.  *Id.* at 109.  First, Plaintiffs have not alleged that CFSE and CCI ***knowingly*** transmitted false information.  Second, beyond

the bare assertion that CFSE and CCI "acted recklessly because they knew or had access to information suggesting that their public statements were not accurate" as to "values and profits reported to Plaintiffs," the SCAC is silent as to what "information" Plaintiffs believe CFSE and CCI knew or had access to that suggested that their public statements were not accurate. (SCAC ¶ 523.) If by term "information" Plaintiffs are referring to the "red flags" listed in the SCAC, such an allegation is insufficient to demonstrate either actual knowledge or recklessness. Plaintiffs themselves characterize these "red flags," not as evidence of fraud, but as indications that CFSE and CCI should have conducted further investigation. (*Id.* ¶ 338.) But alleging that CFSE and CCI should have been more vigilant does not establish recklessness amounting to scienter. "The failure to conduct due diligence is not the same thing as knowing of, or closing one's eyes to, a known danger or participating in the fraud." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 417 (S.D.N.Y. 2007), *aff'd sub nom South Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009); *Shields*, 25 F.3d at 1129 (allegations strongly suggesting that "defendants should have been more alert and more skeptical" but stopping short of indicating "that management was promoting a fraud," are insufficient to establish scienter).

Plaintiffs do not allege facts demonstrating that CFSE and CCI **actually knew** or recklessly disregarded that BLMIS's statements were false and, indeed, the Administration Agreements expressly recognize that CFSE and CCI could rely on the authenticity of those statements. Given these facts, it can hardly be said that CFSE's and CCI's acts "represent[ed] an extreme departure from the standards of ordinary care to the extent that the danger known to the defendant or was so obvious that the defendant must have been aware of it." *South Cherry St.*, 573 F.3d at 109. Indeed, such an inference is far less compelling than the more natural competing inference that CFSE and CCI did not know that a well-respected, established

10

brokerage house such as BLMIS was orchestrating a Ponzi scheme. *Id.* at 113-14; *see also Tellabs*, 551 U.S. at 314 (in determining defendant's state of mind, courts must consider "not only inferences urged by the plaintiff, but also competing inferences rationally drawn from the facts alleged").

**B.     Plaintiffs Fail to Adequately Plead Reliance**

Given that the SCAC does not claim that there is an efficient market for shares in the Fairfield Funds, in order to plead a section 10(b) claim each Plaintiff must allege, in a non-conclusory manner, actual reliance on CFSE's and CCI's putative misrepresentation. *See In re Citigroup Auction Rate Sec. Litig.*, No. 09 Civ. 3095 (LTS) (FM), 2009 WL 2914370, at *7 (S.D.N.Y. Sept. 11, 2009) (where "fraud on the market" is not pled, plaintiffs must plead non-conclusory facts sufficient to demonstrate the basis for reliance).

Here, the SCAC claims, in wholly conclusory fashion, that Plaintiffs relied on "inflated NAV calculations and account balance information" allegedly disseminated by CFSE and CCI in making their investments in the Fairfield Funds. (SCAC ¶ 523.) Yet Plaintiffs have not alleged that the putative "inflated NAV calculations and account balance information" were communicated to any of the Plaintiff investors prior to their investments in the Fairfield Funds.

In fact, under the Administration Agreements, CFSE and CCI could issue fund documents to investors ***"only upon receipt of"*** (i) all required documentation from the shareholders or limited partners, ***and*** (ii) the full amount of the subscription monies made payable to the Fairfield Funds. (*See, e.g.,* Decl., Ex. A, at 3.3i; emphasis added.)   At no time could or would CFSE or CCI communicate with a prospective investor before these requirements were satisfied.   Moreover, in order to receive any statements reporting NAVs or account balances, Plaintiffs would already have to be an investor with one of the Fairfield Funds. *Id.*

Thus, any allegedly false statements made by CSFE and CCI as the administrators of the Fairfield Funds could not possibly have been relied upon by investors in their decisions to invest in the Fairfield Funds because they would not receive any communication from CFSE or CCI until *after* they became shareholders or limited partners. (*See id.* at 3.3, 3.6, Sch. 2(i).)

Because Plaintiffs fail to specifically allege that they relied on the NAV statements prior (or subsequent) to investing in the Fairfield Funds, they cannot demonstrate reliance. *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 592 F. Supp. 2d 608, 629 (S.D.N.Y. 2009) (dismissing plaintiffs' reliance-based claims with respect to hedge fund investments for which plaintiffs failed to show that they *received* the NAV statements prior to making such investments).[6]

## II.  Plaintiffs' State Law Claims Against CFSE and CCI Are Barred By SLUSA

The nine state law claims against "Citco" (Counts 20-25, 28, 32, and 33) are precluded as a matter of law by SLUSA. The legal argument that compels this result is fully set forth in the FG Defendants' Memorandum of Law in Support of Their Motion to Dismiss, which CFSE and CCI incorporate herein by reference.

## III.  CFSE and CCI Are Not Liable for the Alleged Acts of Separate Corporate Entities

Except for their federal securities and negligent misrepresentation claims in Counts 26 and 28, respectively, Plaintiffs purport to assert eight state common law claims against CFSE and CCI through the use of a defined term – "Citco." For the same reasons set forth in sections II and III of CGL's Memorandum, which are incorporated herein by reference, Counts 20-25, 32 and 33 should be dismissed as to CFSE and CCI.

---

[6]  Further, Plaintiffs' attempt to base their 10(b) claim on the retention, rather than purchase, of shares in the Fairfield Funds (*see* SCAC ¶ 526), should be rejected. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731-32 (1975).

## IV.    Plaintiffs' State Common Law Claims Are Otherwise Legally Deficient

In addition to the reasons stated above, Plaintiffs' common law claims are also substantively deficient as a matter of law.

### A.    Plaintiffs' Third-Party Beneficiary Claim Is Contradicted by the Plain Language of the Administration Agreements

Plaintiffs are not third-party beneficiaries of any of the Administration Agreements between the Fairfield Funds and CFSE.[7]  Contrary to Plaintiffs' conclusory allegation in the SCAC, the Administration Agreements are devoid of any intent to benefit anyone but the parties to the agreements.  "In determining whether there is an intended third-party beneficiary, courts should look first at the contractual language itself . . . ."  *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner LLC*, 637 F. Supp. 2d 185, 190 (S.D.N.Y. 2009).  If the language of the agreement does not "*clearly* evidence[] an intent to permit enforcement by the third party," no such third-party right exists.  *Consol. Edison, Inc. v. Northeast Utils.*, 426 F.3d 524, 528 (2d Cir. 2005) (emphasis in original).

Rather than cite to or quote from the Administration Agreements, Count 20 of the SCAC simply asserts, in conclusory fashion, that the Administration Agreements "evince a clear intent to benefit [Plaintiffs] by affirmatively recognizing [Citco's] obligation to keep [Plaintiffs] informed of the status and performance of their investments . . . ."  (SCAC ¶¶ 475, 478.)  Yet the Administration Agreements do not "*clearly* evidence an intent to permit enforcement" by

---

[7]    The Greenwich Sentry and Greenwich Sentry Partners Administration Agreements provide that they are to be governed by New York law.  The Fairfield Sentry and Fairfield Sigma Administration Agreements are governed by the laws of BVI.  *See* Decl., Ex. A., 12.2; Ex. B, 12.2.  Because the application of either BVI or New York law compels the same result – the claim should be dismissed – the Court may apply New York law to Plaintiffs' claim.  *See Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*, 769 N.Y.S.2d 487, 489 (1st Dep't 2003) (if no conflict exists between laws of competing jurisdictions, the court should apply the law of the forum state).

Plaintiffs.[8]  In fact, the plain language of the Administration Agreements rules out any intent to

benefit Plaintiffs:

> Nothing contained in this Agreement shall be construed to require the Administrator to perform any service that could cause the Administrator to be deemed an investment manager or advisor. (Decl., Ex. A, ¶ 3.1.)

> The Administrator shall, **on behalf of the Fund**, issue Shares in accordance with the applicable Fund Documents.  (*Id.* ¶ 3.3; emphasis added.)

> The Administrator shall, **on behalf of the Fund**, redeem Shares in accordance with the provisions and procedures set out in the applicable Fund Documents.  (*Id.* ¶ 3.4; emphasis added.)

> The Administrator shall, **on behalf of the Fund**, register transfers of Shares in accordance with the provisions and procedures set out in the applicable Fund Documents.  (*Id.* ¶ 3.5; emphasis added.)

> The Administrator shall, **on behalf of the Fund**, issue to Shareholders trade confirmations with respect to subscriptions, redemptions and transfers in accordance with the applicable Fund Documents.  (*Id.* ¶ 3.6; emphasis added.)

> No provisions of this Agreement may be waived, amended or modified in any manner except by a written agreement properly authorized and executed by both parties hereto.  (*Id.* ¶ 12.1.)

Significantly, the inurement clause in the Administration Agreements leaves no doubt

that the parties to those Agreements never intended to confer rights to third party beneficiaries:

> This Agreement shall be binding on and inure for the benefit of the parties and their respective successors and permitted assigns. Neither party may assign its rights under this Agreement without the prior written consent of the other.  (*Id.* ¶ 12.7.)

---

[8]    Contrary to Plaintiffs' conclusory allegations, the Administration Agreements do not obligate CFSE or CCI to inform Plaintiffs of their individual status.   Rather, the Administration Agreements are clear that CFSE and CCI "publish[ed] the Net Asset Value per Share (or each class if appropriate) ***as requested by the Fund***."   (Decl., Ex. A, Sch. 2(i) at p. 19; emphasis added.)  The language of the Administration Agreements controls.  *In re Elan Corp. Sec. Litig.*, 543 F. Supp. at 209.

Courts have consistently interpreted this provision as "mak[ing] plain the parties' intention to preclude third-party enforcement." *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 163 (S.D.N.Y. 1998). In *Piccoli A/S,* the court rejected a third-party beneficiary claim on the basis of virtually identical contractual language, holding: "The prohibition on assignments and the specification that the contract inures to the benefit of and binds the parties … makes plain the parties' intention to preclude third-party enforcement." *Id.* at 163. This reasoning applies equally here. *See also Banco Espirito Santo de Investimento, S.A. v. Citibank N.A.,* No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *10 (S.D.N.Y. Dec. 22, 2003) (dismissing claim for third party beneficiary of administrative contract based on near-identical contractual language), *aff'd,* 110 F. App'x 191 (2d Cir. 2004). Count 20 should be dismissed.

**B.      Plaintiffs' Tort Claims (Other than Aiding and
              Abetting Fraud) Are Barred by the Economic Loss Rule**

All of Plaintiffs' tort-based claims, other than aiding and abetting fraud, are barred by New York's economic loss rule because Plaintiffs have failed to establish any tort independent from the alleged breach of the Administration Agreements. Plaintiffs cannot avoid the economic loss rule "simply by casting [their] contract claims in tort garb." *Long Island Lighting Co. v. Stone & Webster Eng'g Corp.*, 839 F. Supp. 183, 187 (E.D.N.Y. 1993).

The economic loss rule and its application are discussed at length in section II D. of Citco Bank Nederland N.V. ("CBN") and Citco Global Custody N.V.'s ("CGC") Memorandum of Law in Support of Their Motion to Dismiss, which is incorporated herein by reference. As to the claims asserted against CFSE and CCI, the SCAC makes clear that Plaintiffs' tort and contractual claims are identical. In their third-party beneficiary breach of contract claim (Count 20), Plaintiffs quote language from the Administration Agreements, and allege that under the Administration Agreements, the contractual duties of "Citco" included the following:

- Calculation of the Net Asset Value and the Net Asset Value per Share on a monthly basis in accordance with the Fund documents[,]" and "Provision of accounting or accounting related reports . . . ." (SCAC ¶ 476.)

- [P]ublishing [directly to shareholders in Fairfield Sentry and Fairfield Sigma] the Net Asset Value per Share . . . as requested by the Fund[,]" and "dealing with and replying to all correspondence and other communications addressed to the Fund in relation to the subscription, redemption, transfer (and where relevant, conversion) of Shares . . . ." (*Id.* ¶ 477.)

- [C]ommunicating with [Greenwich Sentry and Greenwich Sentry] Limited Partners; maintaining the record of accounts; processing subscriptions and withdrawals; preparing and maintaining the Partnership's financial and accounting records and statements; calculating each Limited Partner's capital account balance . . . . (*Id.* ¶ 479.)

- Citco Canada was delegated all or some of Citco Fund Services' responsibilities as administrator for Greenwich Sentry and Greenwich Sentry Partners, including the accounting, registrar, and transfer services . . . . (*Id.* ¶ 489.)

As grounds for their tort claims, Plaintiffs allege the breach of these same obligations:

- CFSE and CCI "breached their fiduciary duties to Plaintiffs by, among other omissions, failing to discharge properly their responsibilities as Administrators and Sub-Administrators, including in calculating the Funds' NAV and communicating fictitious Fund valuations to Plaintiffs." (Count 21, Breach of Fiduciary Duty, SCAC ¶ 495.)

- 'Citco' was grossly negligent in exercising its duties "as the [Fairfield] Funds' financial services provider" (Count 22, Gross Negligence, SCAC ¶ 502.)

- 'Citco' failed "to exercise reasonable care in providing financial services to the [Fairfield] Funds." (Count 23, Negligence, SCAC ¶ 506.)

The absence of any allegation that CFSE or CCI owed any duty that was not specified in the Administration Agreements is fatal to the tort claims against CFSE and CCI in Counts 21-24, 28, and 32 of the SCAC.

      **C.**      **Plaintiffs Lack Standing to Assert Derivative Claims**

As set forth above, all of Plaintiffs' common law claims derive from the alleged contractual duties that CFSE and CCI are alleged to have owed to the Fairfield Funds. Further, all of Plaintiffs' claims are premised on allegations of injury suffered ***directly by the Fairfield Funds*** – *i.e.,* the theft of the Fairfield Fund assets by Madoff. For these reasons, as well as those discussed in the FG Defendants' Memorandum, which argument is incorporated herein by reference, Plaintiffs' claims are properly derivative. Counts 20-25, 28, and 32-33 should be dismissed.

      **D.**      **Plaintiffs' Tort Claims (Other than Aiding**
                  **and Abetting Fraud) Are Barred by the Martin Act**

For the reasons set forth in section II.C. of CBN and CGC's Memorandum, which is incorporated herein by reference, Plaintiffs' tort claims (other than aiding and abetting fraud) against CFSE and CCI are preempted under the Martin Act. Counts 21-25, 28, and 32-33 should therefore be dismissed.

      **E.**      **Plaintiffs Fail to State Claims for Gross Negligence and Negligence**

Under New York law, a prima facie case of negligence requires a plaintiff to show a duty to the plaintiff and a breach of that duty. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 46 A.D.3d 400, 402 (1st Dep't 2007) (dismissing gross negligence claim for failure to establish that the defendants owed the plaintiffs any duty). To constitute gross negligence, the breach of duty "must be of an aggravated character, as distinguished from the failure to exercise ordinary care." Thus, gross negligence "is conduct that evinces a reckless disregard for the rights of others or

smacks of intentional wrongdoing." *Am. Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996); *In re Enron Corp.*, 292 B.R. 752, 767 (Bankr. S.D.N.Y. 2003).

As distinguished from Plaintiffs' negligent misrepresentation claim, Plaintiffs' claims for gross negligence (Count 22) and negligence (Count 23) against "Citco" are not based on any allegation of misrepresentation. Instead, in the SCAC, Plaintiffs allege simply that "***Citco knew or should have known that Plaintiffs were relying on Citco to exercise reasonable care in providing financial services to the Funds, and Plaintiffs did reasonably and foreseeably rely on Citco to exercise such care*** . . . ." (SCAC ¶ 502; emphasis added.) Yet the duty to exercise reasonable care in providing financial services to the Fairfield Funds by CFSE and CCI arises solely from the contractual obligations owed to the Fairfield Funds under the Administration Agreements. As demonstrated *supra*, Plaintiffs are not third-party beneficiaries of those agreements, and no such duty was owed to Plaintiffs. In addition, for the reasons that Plaintiffs fail to plead scienter as stated in section I.A., *supra*, the gross negligence claim fails because the SCAC does not allege either recklessness or intentional wrongdoing.

### F.      Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

In determining whether a fiduciary duty exists, courts "focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." *Thermal Imaging, Inc. v. Sandgrain Sec., Inc.,* 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001). Even then, a fiduciary duty will arise only if the purported fiduciary voluntarily accepts the entrustment of confidence. *Id.* No such duty is pled here, where the SCAC does not even allege that Plaintiffs had any relationship with CFSE or CCI prior to their investments in the Fairfield Funds. Instead, the conclusory allegations contained in the SCAC at most suggest that Plaintiffs may have been aware of CFSE's and CCI's reputation, but in no way allege that CFSE

or CCI accepted Plaintiffs' purported entrustment of confidence with CFSE and CCI. (SCAC ¶¶ 332-334, 492-493.) Such allegations of unilateral trust are insufficient to establish a fiduciary relationship. *See DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ. 318 (RJS), 2009 WL 2242605, at *28 (S.D.N.Y. July 27, 2009); *Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank,* No. 1:08-CV-01720 (LAP), 2009 WL 860635, at *13 (S.D.N.Y. Mar. 31, 2009).

Similarly, Plaintiffs' allegation that "Citco" holds itself out as the preeminent provider of hedge fund administrators (SCAC ¶ 324), fails to establish a fiduciary relationship between Plaintiffs and CFSE and CCI. *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007) (allegations that a plaintiff relied on a defendant's expertise are insufficient by themselves to survive dismissal). And, Plaintiffs' allegation that "Citco" stated on its website that "[b]y providing fully independent services, ["Citco"] act[s] as a reliable fiduciary to safeguard the interests of investors" (SCAC ¶ 325), also fails to establish a fiduciary duty between Plaintiffs and CFSE and CCI. *DeBlasio*, 2009 WL 2242605, at *30 (marketing materials, by themselves, are insufficient to establish a fiduciary relationship because such relationships are personal in nature and context-specific); *see also Barron Partners, LP v. Lab123, Inc.*, 593 F. Supp. 2d 667, 671 (S.D.N.Y. 2009) (widely disseminated statements made on a website were not insufficient to give rise to a fiduciary relationship between sellers and buyers of corporate stock).

Further, the allegations of the SCAC show that any relationship between Plaintiffs and CFSE and CCI was far too attenuated to give rise to a fiduciary duty. *See Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. LLC*, No. 00 Civ. 9214 (RWS), 2007 WL 2948115, at *22-23 (S.D.N.Y. Oct. 3, 2007) (dismissing breach of fiduciary duty claim against hedge fund administrator brought by hedge fund investor because the administrator did not owe the investor

any fiduciary duty). Plaintiffs do not allege they had any relationship with CFSE or CCI, or even communicated with CFSE and CCI prior to investing in the Fairfield Funds. Instead, CFSE and CCI's sole relationship was with the Fairfield Funds pursuant to the Administration Agreements. (SCAC ¶¶ 327-329, 475-479.) To CFSE and CCI, Plaintiffs were, at most, "a client of a client." *Jordan (Bermuda) Inv. Co., LLC*, 2007 WL 2948115, at *23. Thus, as a matter of law, the breach of fiduciary duty claim against CFSE and CCI should be dismissed. *Id*.[9]

### G. Plaintiffs Fail to State a Claim for Negligent Misrepresentation

Plaintiffs' negligent misrepresentation claim requires Plaintiffs to allege facts that support a duty at law which CFSE and CCI owed to Plaintiffs prior to their investments in the Fairfield Funds. As courts in this district have previously held, liability for information negligently furnished requires privity of contract or "a relationship closely approaching it." *See, e.g.*, *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, No. 03 Civ. 0015 (RWS), 2006 WL 1997628, at *10 (S.D.N.Y. July 18, 2006). "Unless a prior relationship existed between the defendant and plaintiff, the defendant is not liable for negligent misrepresentation." *Id.* (citing *Vill. on Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 531 (S.D.N.Y. 1996)).

In *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110 (N.Y. 1985), the New York Court of Appeals established a three-prong test for determining whether the functional equivalent of privity exists in a particular case: (1) the defendant must have been aware that the information was to be used for a particular purpose; (2) in furtherance of which a known party was intended to rely; and (3) there must have been some conduct on the part of the defendant linking them to the plaintiff, which evinces the defendant's understanding of the

---

[9] *But see Pension Comm. of the Univ. of Montreal Pension Plan*, 592 F. Supp. 2d at 640-41 (denying motion for summary judgment as to breach of fiduciary duty claim because the court found that plaintiffs sufficiently established existence of duty and reliance).

plaintiff's reliance. *Id.* at 118. Plaintiffs' allegations, which must be pled in accordance with the specificity requirement of Rule 9(b), meet none of these requirements. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583-84 (2d Cir. 2005).

First, Plaintiffs allege no facts to support the conclusory allegations that the "'Citco Defendants induced Plaintiffs to make their initial investments in the Funds . . . by issuing false NAV and account balance statements for the Funds that they then disseminated to Plaintiffs, or knew would be disseminated to Plaintiffs." (SCAC ¶ 534.) These allegations are insufficient to establish that CFSE and CCI actually knew that the information would be used by prospective investors, including Plaintiffs, for the particular purpose of deciding whether to invest in the Fairfield Funds. In fact, as explained in section I.B., *supra*, CFSE and CCI would not have expected prospective investors to receive, much less rely, on the NAVs in making their investment decisions. *See, e.g., Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, No. CV-05-5155 (SJF), 2007 WL 674691, at *6 (E.D.N.Y. Feb. 28, 2007) ("mere foreseeability" that plaintiffs might use the defendants' work product for some reason "even if such information was directly provided to [plaintiffs] by [defendant], cannot support a claim for negligent misrepresentation as a matter of law").

Second, Plaintiffs' allegations do not meet the "known party" prong of the *Credit Alliance* test because Plaintiffs, as prospective pre-investors, can only allege that they were part of a faceless or general class of persons. *See Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 597 N.E.2d 1080, 1085-86 (N.Y. 1992). There is no allegation that CFSE and CCI knew that these particular Plaintiffs would rely on the NAVs in making their initial (or subsequent) investments in the Fairfield Funds.

Third, Plaintiffs have not alleged the required linking conduct between CFSE and CCI and Plaintiffs. As noted in section I.B., *supra*, the SCAC does not sufficiently allege that Plaintiffs actually relied on the NAV statements or the undefined "account balance statements" when making their initial (or subsequent) investments, or that CFSE and CCI had any direct communication with Plaintiffs prior to their investments. (SCAC ¶¶ 335, 523.) Rather, Plaintiffs merely claim that they "***necessarily*** relied on Citco's NAV calculations" because "[t]he number of shares that Plaintiffs received in exchange for their investment amounts depended on Citco's NAV calculations." (*Id*. at ¶ 335; emphasis added.) Because Plaintiffs' allegations fail to establish any reliance on CFSE and CCI by Plaintiffs prior to making their investments in the Fairfield Funds, this claim should be dismissed.

### H. All Purported Common Law "Holder" Claims Should Be Dismissed

Plaintiffs' attempt to plead holder claims based on the assertion that they would have redeemed their investments if CFSE and CCI had disclosed the Madoff fraud is legally untenable for two reasons. (*See, e.g.*, SCAC ¶ 340.) First, the loss of Plaintiffs' investments occurred at the time the investments were made. Plaintiffs acknowledge that Madoff operated a Ponzi scheme in which he "made no securities trades" and "fraudulently distributed new investors' assets to prior investors to create the illusion of profits." (*Id.* ¶ 166.) Thus, Plaintiffs' principal investments were lost in Madoff's fraudulent scheme from the moment they were made. Second, as the allegations in the SCAC make clear, had CFSE and CCI discovered and disclosed the Madoff fraud after Plaintiffs invested in the Fairfield Funds, such disclosure would have caused the same run on the Funds that occurred when the fraud was revealed in December 2008. Thus, Plaintiffs cannot demonstrate, under any theory pled, that holders of the Fairfield Funds' shares would have been in a better position, *i.e.*, that they would not have lost their investments, had

Madoff's fraud been discovered and disclosed earlier. *See Pension Comm.*, 592 F. Supp. 2d at 638; *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 684 F. Supp. 27, 29, 35 (S.D.N.Y. 1988), *aff'd*, 865 F.2d 492 (2d Cir. 1989). Because Plaintiffs fail to allege loss causation as to any common law "holder" claims, they should be dismissed.

Plaintiffs' holder claims also fail under New York's "heightened pleading standard that requires plaintiffs to plead specific reliance on defendants' representations." *Hunt v. Enzo Biochem, Inc.,* 530 F. Supp. 2d 580, 600 (S.D.N.Y. 2008) ("*Hunt II*"). To avoid dismissal of such claims, plaintiffs must plead when they would have sold the investment at issue, how much of the investment they would have sold, and what specific misrepresentation from the defendant induced them to refrain from selling that investment. *Id.; accord Hunt v. Enzo Biochem, Inc.,* 471 F. Supp. 2d 390, 411 (S.D.N.Y. 2006) (*Hunt I*) (discussing authority from other jurisdictions that impose this heightened pleading standard as to holder claims).

Plaintiffs' claims that they retained their investments in the Fairfield Funds based on alleged conduct of CFSE and CCI do not contain any of the details required of "holder" claims. The SCAC does not plead when any particular plaintiff would have redeemed the investment, how much of the investment that plaintiff would have redeemed, or how any alleged conduct of CFSE or CCI induced that particular plaintiff to refrain from redeeming the investment. The failure to allege any one of these details requires dismissal of Plaintiffs' purported holder claims. *Hunt II*, 530 F. Supp. 2d at 600; *accord Hunt I*, 471 F. Supp. 2d at 411-412 (dismissing purported holder claims for failure to allege these details).

## I. Plaintiffs Fail to State Claims for Aiding and Abetting Breach of Fiduciary Duty and Fraud

Plaintiffs' claims against CFSE and CCI for aiding and abetting breach of fiduciary duty (Count 24) and fraud (Count 25) fail for the reasons set forth in section II. F. of CBN and CGC's

Memorandum, which is incorporated herein. The SCAC contains no individualized or specific allegations that CFSE or CCI had actual knowledge of the purported deficiency of control or the alleged false statements by any, much less all, of the seven entities and nine individuals defined as the "Fairfield Defendants."

**J.**     **Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law**

Plaintiffs' claim for unjust enrichment (Count 33) against CFSE and CCI fails to state any legal basis to sustain such a claim against CFSE and CCI. The SCAC does not and cannot allege that Plaintiffs paid any fees to CFSE or CCI, or that any so-called "enrichment" came at Plaintiffs' expense. Rather, CFSE and CCI received payments *from the Fairfield Funds for the administrative services they performed for the Fairfield Funds* in accordance with the Administration Agreement between the contracting parties. Thus, the fees that purport to be the target of Plaintiffs' unjust enrichment claim against CFSE and CCI are governed by the Administration Agreements, which are valid and enforceable and "preclude[] recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 388 (1987). Finally, Plaintiffs cannot state a claim for constructive trust for the same reasons set forth in the FG Defendants' Memorandum, which argument is incorporated herein by reference. Count 33 should be dismissed as to CFSE and CCI.

**K.**     **CFSE and CCI Are Not Liable for the
Alleged Acts of Other Companies or Individuals**

Finally, Plaintiffs would have this Court impose liability upon CFSE and CCI based solely on their alleged corporate affiliation with CGL, CBN, CGC, or Citco Fund Services (Bermuda) Limited. However, as demonstrated in section III. of CGL's Memorandum, Plaintiffs' boilerplate allegations clearly fail to establish any of the elements of an alter ego or

agency theory. Thus, any claims based on an agency or piercing the corporate veil theory (including Count 32) should be dismissed.

## CONCLUSION

For all these reasons – and given the ample opportunity Plaintiffs have had to formulate their extensive SCAC – CFSE and CCI respectfully request that the Court dismiss all claims against them with prejudice.

Dated:  December 22, 2009

Respectfully submitted,

**GILBRIDE, HELLER & BROWN, P.A.**

/s/ Lewis N. Brown
Lewis N. Brown
Amanda M. McGovern
One Biscayne Tower, 15th Floor
2 South Biscayne Blvd.
Miami, FL  33131
T:  305.358.3580
F:  305.374.1756
lbrown@ghblaw.com
amcgovern@ghblaw.com

**CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP**
Eliot Lauer (EL 5590)
Michael Moscato (MM 6321)
101 Park Avenue
New York, NY  10178
T:  212.696.6000
F:  212.697.1559
elauer@curtis.com
mmoscato@curtis.com

***Attorneys for Citco Fund Services (Europe) B.V. and Citco (Canada) Inc.***