# Exhibit D

# INVESTMENT MANAGEMENT AGREEMENT

Agreement dated as of October 1, 2004, between Fairfield Sigma Limited, a British Virgin Islands international business company (the "Fund"), having its registered office at Romasco Place, Wickhams Cay 1, P.O. Box 3140, Road Town, Tortola, British Virgin Islands, and Fairfield Greenwich (Bermuda) Ltd., a company organized under the laws of the Bermuda (the "Investment Manager"), having an office at 14 Par La Ville Road, 3rd Floor, Hamilton, Bermuda.

WHEREAS, the Fund wishes to obtain the investment management services of the Investment Manager with respect to the assets underlying the Fund's shares; and

WHEREAS, the Investment Manager is willing to provide such advice and services on the terms and conditions set forth below,

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth, the parties hereby agree as follows:

1. The Fund hereby retains the Investment Manager to manage the investment of its assets as contemplated by and described in the Confidential Private Placement Memorandum of the Fund dated October 1, 2004, as such Confidential Private Placement Memorandum may be amended (the "Memorandum"). All capitalized terms not defined herein shall be defined as set forth in the Memorandum. Such management will include, but shall not be limited to, purchasing shares in Fairfield Sentry Limited, a British Virgin Islands international business company ("FSL"), whose investment manager is the Investment Manager, which invests the

predominant portion of its assets utilizing a nontraditional options trading strategy described as "split strike conversion" (the "SSC Investments"). A portion of FSL's assets may, in the discretion of the Investment Manager, be allocated to alternative investment opportunities other than the SSC Investments under certain conditions and limitations, as described in the Confidential Private Placement Memorandum of FSL, dated October 1, 2004 as such Confidential Private Placement Memorandum may be amended (the FSL Memorandum"). The Fund shall utilize the predominant portion of the assets underlying the shares of the Fund to purchase shares of FSL. The Investment Manager shall also establish an account in the name of the Fund at a nonaffiliated bank to hedge the currency exposure of the Fund's Euro denominated shareholders resulting from the Fund holding assets denominated in U.S. dollars.

2. The activities engaged in by the Investment Manager on behalf of the Fund shall be subject to the policies and control of the Fund's Directors. Subject to such direction and the investment policies set forth in the Memorandum, the Investment Manager shall use its best efforts to (a) oversee and monitor the Fund's investment in FSL; (b) provide information in connection with the preparation of all reports to the Fund's shareholders described in the Memorandum; and (c) arrange for and oversee the services of the Fund's administrator, custodian, auditors and counsel to act on behalf of the Fund; provided, however, that the Investment Manager is not authorized to enter into agreements in the name of the Fund with such providers of services.

3. Within 5 days after the end of each of the first three weeks of each month and within 10 days after the end of each month or fiscal quarter of the Fund, as the case may be, the Investment Manager shall send to the Fund weekly and monthly valuations of the Fund's

investment in FSL and its currency hedging account. The Investment Manager shall cause any and all documentation respecting such investments to be sent to the Fund. The Investment Manager shall be available at all times, upon reasonable notice, for consultation with the Directors of the Fund in connection with the investments of the Fund.

4. The Investment Manager shall for all purposes be an independent contractor and not an agent or employee of the Fund, and the Investment Manager shall have no authority to act for, represent, bind or obligate the Fund except as specifically provided herein.

5. The Investment Manage may delegate its duties hereunder or assign this Agreement in its entirety to a wholly-owned subsidiary or an affiliate without the further consent of the Fund.

6. All investments of the Fund shall at all times conform to and be in accordance with the requirements imposed by:

    (a) any provisions of applicable law; and

    (b) provisions of the Certificate of Incorporation, Memorandum of Association, and Articles of Association of the Fund, as amended from time to time.

The Fund shall furnish the Investment Manager with a copy of the Certificate of Incorporation, Memorandum of Association and Articles of Association, of the Fund as in effect at the commencement of this Agreement and, thereafter, shall promptly furnish the Investment Manager with copies of such documents as they may be amended from time to time.

7. The Fund shall bear, for each year, all expenses in maintaining the Fund's offices and all other expenses incurred in the operation of the Fund, including all continuing offering costs (including legal fees), the ordinary and necessary expenses related to the Fund's investment and trading activities (including transactional costs, escrow and custodial fees), all legal and auditing fees, and fees and expenses relating to any extraordinary circumstances, such as tax examinations and litigation involving the Fund.

8. The Fund shall not pay the Investment Manager either a management fee or performance fee. Any fees incident to the Fund's investment in FSL shall be paid to the Investment Manager by FSL.

9. The Investment Manager will render the services set forth in this Agreement at its own expense, including without limitation, the salaries of employees necessary for such services, the rent and utilities for the facilities provided, and other advisory and operating expenses, except as assumed by the Fund in paragraph 7. The Fund shall pay Fairfield Greenwich Advisors LLC, an affiliate of the Investment Manager, an annual expense reimbursement charge of 0.15% of the Fund's Net Asset Value, payable quarterly in an amount equal to 0.0375% of the Fund's Net Asset Value as of the last day of each calendar quarter, for providing certain administrative services and back office support to the Fund. This charge shall be paid within 10 business days after the end of each calendar quarter.

10. (a) The Investment Manager shall not be liable for any error of judgment or for any loss suffered by the Fund in connection with the subject matter of this Agreement, except loss resulting from willful misfeasance, bad faith or gross negligence in the performance of the

Investment Manager's obligations and duties, or by reason of the Investment Manager's reckless disregard of their obligations and duties hereunder.

(b) The Investment Manager, its directors, officers and employees, agents and counsel (each, an "Investment Manager Indemnitee"), shall not be subject to, and the Fund shall indemnify to the fullest extent permitted by law and hold each Investment Manager Indemnitee free and harmless from and against, any and all claims, demands, liability or expenses for any loss suffered by the Fund arising out or any act or omission of an Investment Manager Indemnitee relating to the Fund, except to the extent such act or omission constitutes willful misconduct, or reckless disregard of the duties of the Investment Manager or on the part of the Investment Manager Indemnitee.

11. The Investment Manager and each of its respective shareholders, directors, employees and officers, may engage simultaneously with their investment management activities on behalf of the Fund in other businesses, and may render services similar to those described in this Agreement for other individuals, companies, trusts or persons, and shall not by reason of engaging in such other businesses or rendering of services for others be deemed to be acting in conflict with the interests of the Fund.

12. This Agreement shall be in full force and effect on the date of this Agreement and shall continue until the termination by either party on written notice ten days prior to the end of any calendar quarter. During the period between the date when notice of termination is deemed given hereunder and the effective date of termination, the rights, powers and duties of the Investment Manager shall remain in full force and effect but shall be subject to the right of the

Fund to direct the liquidation of any investment, which direction shall be given in writing or by telex.

13. Any notice required to be given hereunder shall be in writing and shall be sent by registered or certified air mail, postage prepaid, with return receipt requested, or by means of telecopy or other wire transmission (with request for assurance of receipt in a manner typical with respect to communications of that type), to the Fund and Investment Manager at the respective addresses indicated in the Memorandum, or to such other addresses as the parties may hereafter direct in writing. The effective date of any notice given by mail shall be ten days after the date of mailing thereof; any notice to any party having a telecopy or telex number for the receipt at its address for notice hereunder of messages by transmission by telecopy or telex shall be deemed given when transmitted by telecopy or telex addressed to such party at such telecopy or telex number.

14. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and shall not be modified, except in writing, nor assigned by either party without the consent of the other party.

(Remainder of page intentionally left blank)

15. This Agreement shall be governed by and construed in accordance with the laws of Bermuda without regard to the principles of conflicts of laws thereof.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the day first above written.

FAIRFIELD SIGMA LIMITED

By: *[signature]*
Name: Walter M. Noel, Jr.
Title: Director

FAIRFIELD GREENWICH (BERMUDA) LTD.

By: _____
Name: Andres Pirdrahita
Title: Director

Agreed to an accepted for purposes
of Paragraph 9 only:
FAIRFIELD GREENWICH ADVISORS LLC

By: *[signature]*
Name: Jeffrey H. Tucker
Title: President

15. This Agreement shall be governed by and construed in accordance with the laws of Bermuda without regard to the principles of conflicts of laws thereof.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the day first above written.

FAIRFIELD SIGMA LIMITED

By: _____
    Name: Walter M. Noel, Jr.
    Title: Director

FAIRFIELD GREENWICH (BERMUDA) LTD.

By: _____
    Name: Andres Pirdrahita
    Title: Director

Agreed to an accepted for purposes
of Paragraph 9 only:
FAIRFIELD GREENWICH ADVISORS LLC

By: _____
    Name: Jeffrey H. Tucker
    Title: President

7