UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ANWAR, et al.,

        Plaintiffs,

           -against-

FAIRFIELD GREENWICH LIMITED, et al.,

        Defendants.

This Document Relates To:   All Actions
------------------------------------------------------------x

MASTER FILE NO.
09-CV-0118 (VM)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITCO BANK NEDERLAND N.V. DUBLIN BRANCH AND CITCO GLOBAL CUSTODY N.V.'S MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT

GILBRIDE, HELLER & BROWN, P.A.
Lewis N. Brown
Amanda M. McGovern
One Biscayne Tower, 15th Floor
2 South Biscayne Boulevard
Miami, FL 33131
T: 305.358.3580
F: 305.374.1756
lbrown@ghblaw.com
amcgovern@ghblaw.com

CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP
Eliot Lauer (EL 5590)
Michael Moscato (MM 6321)
101 Park Avenue
New York, NY 10178
T: 212.696.6000
F: 212.697.1559
elauer@curtis.com
mmoscato@curtis.com

*Attorneys for Citco Bank Nederland N.V. Dublin Branch and Citco Global Custody N.V.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

I.   PLAINTIFFS' CLAIMS AGAINST CBN AND CGC MAY ONLY BE LITIGATED
     IN THE NETHERLANDS ............................................................................................ 5

     A.   The Forum Selection Clauses Are Mandatory ..................................................... 6

     B.   The Forum Selection Clauses Bind the Plaintiffs ............................................... 6

     C.   All Claims Against CBN and CGC in this Action Are Covered by the Forum
          Selection Clauses ................................................................................................ 7

     D.   Enforcement of the Forum Selection Clauses Is Not Unreasonable or Unjust ........ 10

II.  EVEN IF ADJUDICATED IN NEW YORK, PLAINTIFFS' CLAIMS AGAINST
     CBN AND CGC FAIL................................................................................................. 11

     A.   Each of Plaintiffs' Claims Violates Federal Rule of Civil Procedure 8(a)
          by Imporperly Lumping CBN and CGC Together with Separate Corporate
          Entities ............................................................................................................. 11

     B.   Plaintiffs' Third-Party Beneficiary Breach of Contract Claim Fails Because
          the Custody Agreements Reflect the Parties' Intent Not to Permit Enforcement
          by  Third Parties................................................................................................ 13

     C.   Each of Plaintiffs' Tort Claims Other than Aiding and Abetting Fraud Is Barred
          by the Martin Act .............................................................................................. 15

     D.   Each of Plaintiffs' Tort Claims Other than than Aiding and Abetting Fraud Is
          Barred by the Economic Loss Rule .................................................................... 17

     E.   Plaintiffs Lack Standing Because Their Claims Are Derivative ............................ 19

     F.   Plaintiffs Fail to State Claims for Aiding and Abbetting Breach of Fiduciary
          Duty and Fraud ................................................................................................. 19

          1.   The SCAC Contains No Specific Allegations of CBN's or CGC's
               Actual Knowledge of the Fairfield Defendants' Purported Breach of
               Fiduciary Duty .......................................................................................... 21

2. The SCAC Contains No Specific Allegations of CBN's or CGC's Actual Knowledge of the Fairfield Fraud Claim Defendants' Purported Fraud ........................................................................ 22

G. Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law ............................... 22

H. CBN and CGC Are Not Liable for the Alleged Acts of Separate Corporate Entities ..................................................................................................... 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Case(s)**                                                                                          **Page(s)**

*ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*,
    957 F. Supp. 1308 (S.D.N.Y. 1997)........................................................................ 23

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*,
    No. 08 Civ. 7508 (SAS), 2009 WL 2828018 (S.D.N.Y. Sept. 2, 2009) ...................... 15, 16, 20

*Air Atlanta Eng'g Ltd. v. SP Aircraft Owner I, LLC*,
    637 F. Supp. 2d 185 (S.D.N.Y. 2009)................................................................... 13

*Anselmo v. Univision Station Group, Inc.*,
    *No*. 92 Civ. 1471 (RLC), 1993 WL 17173 (S.D.N.Y. Jan. 15, 1993)........................ 9

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ............................................................................. 13

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
    No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ..................... 14, 23

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
    448 F.3d 513 (2d Cir. 2006)................................................................................. 23

*Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*,
    840 F. Supp. 231 (E.D.N.Y 1994) ...................................................................... 19

*Burrows Paper Corp. v. Moore & Assocs.*,
    No. 6:07 Civ. 62, 2007 WL 2089682 (N.D.N.Y. July 20, 2007)........................ 7, 10

*Castellano v. Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001)................................................................................. 15

*Cfirstclass Corp. v. Silverjet PLC*,
    560 F. Supp. 2d 324 (S.D.N.Y. 2008).................................................................. 6

*Curley v. AMR Corp.*,
    153 F.3d 5 (2d Cir. 1998) ................................................................................... 15

*Direct Mail Prod. Servs., Ltd. v. MBNA Corp.*,
    No. 99 Civ. 10550 (SHS), 2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) .................. 9

*Effron v. Sun Line Cruises, Inc.*,
    67 F.3d 7 (2d Cir. 1995)...................................................................................... 11

*Filler v. Hanvit Bank*,
    156 F. App'x 413 (2d Cir. 2005) ........................................................ 20

*Frasier v. Gen. Elec. Co.*,
    930 F.2d 1004 (2d Cir. 1991).............................................................. 3

*Hugel v. Corp. of Lloyd's*,
    999 F.2d 206 (7th Cir. 1993) ........................................................... 7, 9

*Iconix Brand Group, Inc. v. Bongo Apparel, Inc.*,
    No. 06 Civ. 8195 (DLC), 2008 WL 2695090 (S.D.N.Y. July 8, 2008)................... 17

*In re Elan Corp. Sec. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008)...................................................... 4

*In re Global Crossing, Ltd. Sec. Litig.*,
    No. 02 Civ. 910 (GEL), 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)................... 24

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995). ............................................................... 4

*Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*,
    No. 00 Civ. 9214 (RWS), 2003 WL 1751780 (S.D.N.Y. Apr. 1, 2003)................... 19

*Klotz v. Xerox Corp.*,
    519 F. Supp. 2d 430 (S.D.N.Y. 2007)...................................................... 8

*MCC Dev. Corp. v. Perla*,
    No. 101141/06, 2009 WL 1360878 (Sup. Ct. New York County, May 8, 2009)............ 23

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972)........................................................................ 5, 10

*Musalli Factory for Gold & Jewellry v. JP Morgan Chase Bank, N.A.*,
    No. 1:08 Civ. 01720 (LAP), 2009 WL 860635(S.D.N.Y. March 31, 2009) .............. 21

*Novak v. Tucows, Inc.*,
    No. 06 Civ. 1909 (JFB)(ARL), 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007) ............. 7

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007)......................................................... 5, 6, 10, 11

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
    19 F. Supp. 2d 157 (S.D.N.Y. 1998)...................................................... 14

*Pro Bono Invs., Inc. v. Gerry*,
No. 03 Civ. 4347 (JGK), 2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005) ................................ 15

*Rand Int'l Leisure Prods., Inc. v. Bruno*,
22 Misc. 3d 1111(A) (Sup. Ct. Nassau County Jan. 14, 2009) ................................ 21

*Rapoport v. Asia Elecs. Holding Co.*,
88 F. Supp. 2d 179 (S.D.N.Y. 2000) ................................ 3

*Regent Ins. Co. v. Storm King Contracting, Inc.*,
No. 06 Civ. 2879 (LBS), 2008 WL 563465 (S.D.N.Y. Feb. 27, 2008) ................................ 18

*Reiter v. Greenberg*,
21 N.Y.2d 388 (N.Y. 1968) ................................ 15

*Republic of Ecuador v. Chevron Texaco Corp.*,
376 F. Supp. 2d 334 (S.D.N.Y. 2005) ................................ 15

*Robehr Films, Inc. v. Am. Airlines, Inc.*,
No. 85 Civ. 1072 (RPP), 1989 WL 111079 (S.D.N.Y. Sept. 19, 1989) ................................ 18

*Roby v. Corp. of Lloyd's*,
996 F.2d 1353 (2d Cir. 1993) ................................ 5, 8

*Rosner v. Bank of China*,
528 F. Supp. 2d 419 (S.D.N.Y. 2007) ................................ 20

*Rosner v. Bank of China*,
No. 09 Civ. 0333, 2009 WL 3377886 (2d Cir. Oct. 21, 2009) ................................ 20

*Sarad, Inc. v. Lawson Software, Inc.*,
No. 04 Civ. 5554 (GEL), 2004 WL 2093512 (S.D.N.Y. Sept. 16, 2004) ................................ 8

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974) ................................ 5

*Weingrad v. Telepathy, Inc.*,
No. 05 Civ. 2024 (MBM), 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ................................ 7

**Statute and Rules**                                                                 **Page(s)**

Fed. R. Civ. P. 12(b)(3) ................................ 1

Fed. R. Civ. P. 12(b)(6) ................................ 1

Fed. R. Civ. P. 8(a) ................................ 2, 11, 13

Local Civil Rule 37.2 ................................................................................................................ 1

Martin Act ......................................................................................................... 2, 15, 16

Defendants, Citco Bank Nederland N.V. Dublin Branch ("CBN") and Citco Global Custody N.V. ("CGC"), move to dismiss with prejudice the claims asserted against them in the Second Consolidated Amended Complaint ("SCAC"), pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) and Local Civil Rule 37.2 of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York.[1]

## PRELIMINARY STATEMENT

In this putative class action lawsuit, Plaintiffs seek to recover their purported investment losses that were incurred as a result of the fraud perpetrated by Bernard Madoff ("Madoff") and his securities firm, Bernard L. Madoff Investment Securities LLC ("BLMIS"). Each of the claims asserted in the SCAC against CBN and CGC are based upon, or arise out of, their respective contractual relationships with Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma").[2] These contracts definitively establish that CBN and CGC's relationship was *exclusively* with the Fairfield Funds and not with Plaintiffs. Under these contracts, neither CBN nor CGC communicated with, rendered any services to, or received any payments from Plaintiffs. The contracts also unambiguously mandate that any action against CBN and CGC be brought only in The Netherlands. Accordingly, Plaintiffs, who claim to be

---

[1]  Plaintiffs also have named as Defendants other companies affiliated with CBN and CGC. Each of the affiliated companies – The Citco Group Limited ("CGL"), Citco Fund Services (Europe) B.V. ("CFSE"), Citco (Canada) Inc. ("CCI"), and Citco Fund Services (Bermuda) Limited ("CFSB") – is a separate legal entity. Also named as Defendants are two of CFSB's former employees, Ian Pilgrim and Brian Francoeur. Pursuant to Federal Rule of Civil Procedure 10(c), CBN and CGC adopt and expressly incorporate by reference, as set forth more particularly herein, certain of the grounds for dismissal set forth by CGL, CFSE, CCI, CFSB, Pilgrim and Francoeur in their respective Memoranda of Law in Support of Their Motions to Dismiss the SCAC, which are filed contemporaneously herewith.

[2]  There are four funds at issue in this case, namely, Fairfield Sentry, Fairfield Sigma, Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P. However, as alleged in the SCAC, CBN and CGC provided services only for the two offshore funds, Fairfield Sentry and Fairfield Sigma. Those two funds will be referred herein as the "Fairfield Funds."

third-party beneficiaries under the contracts, should be barred from pursuing their purported claims against CBN and CGC in this forum.

Even if the claims against CBN and CGC were to be adjudicated in New York, however, they should be dismissed for the following reasons:

*First*, Plaintiffs violate Rule 8(a) of the Federal Rules of Civil Procedure. Plaintiffs have alleged eight common law causes of action against CBN and CGC: (1) Third-Party Beneficiary Breach of Contract Against "Citco" (Count 20); (2) Breach of Fiduciary Duty Against "Citco" (Count 21); (3) Gross Negligence Against "Citco" (Count 22); (4) Negligence Against "Citco" (Count 23); (5) Aiding and Abetting Breach of Fiduciary Duty Against "Citco" (Count 24); (6) Aiding and Abetting Fraud Against "Citco" (Count 25); (7) Breach of Fiduciary Duty Against Francoeur, Pilgrim, and "Citco" (Count 32); and (8) Unjust Enrichment Against "All Defendants" (Count 33). However, in each of these eight claims, and throughout the SCAC, Plaintiffs improperly lump CBN and CGC with several other separate and distinct corporate entities into a single term, defined as "Citco." This violation of Rule 8(a) not only constitutes a transparent attempt to obscure the lack of any factual basis for their claims against CBN and CGC, it also renders the SCAC unintelligible and unanswerable.

*Second*, Plaintiffs' third-party beneficiary breach of contract claim against "Citco" must fail because, under the plain language of the operative custody agreements, CBN and CGC owed contractual duties only to the Fairfield Funds, not to Plaintiffs. Plaintiffs thus cannot, as a matter of law, allege that they were intended third-party beneficiaries under the custody agreements.

*Third*, Plaintiffs' claims for breach of fiduciary duty, gross negligence, negligence, aiding and abetting breach of fiduciary duty, and unjust enrichment are preempted by New York's Martin Act.

*Fourth*, all of Plaintiffs' tort claims against CBN and CGC should be dismissed for the additional reason that they fail to allege any duty that is separate and apart from CBN's and CGC's contractual duties, and therefore are barred by New York's economic loss rule.

*Fifth*, Plaintiffs lack standing to bring any of their claims against CBN and CGC because they are based on allegations of direct injury to the Fairfield Funds, which render the claims derivative.

*Sixth*, Plaintiffs' claims for aiding and abetting breach of fiduciary duty and fraud fail because Plaintiffs do not allege any facts showing that CBN or CGC had actual knowledge of either the purported breaches of fiduciary duty or the purported fraud by the Fairfield Defendants.

*Finally*, the SCAC fails to allege any basis at all for holding CBN or CGC liable for the alleged acts of various separate and distinct companies, or for the alleged acts of Brian Francoeur and Ian Pilgrim (both employees of another company, CFSB).  Because the SCAC does not identify any facts that would satisfy the elements of either a veil-piercing or agency theory of liability, Plaintiffs' vicarious liability theories fail as a matter of law.

For these reasons, and as demonstrated in more detail below, all of the claims against CBN and CGC fail as a matter of law and should be dismissed.

## STATEMENT OF FACTS[3]

Plaintiffs allege the following facts in the SCAC.  Fairfield Sentry was formed in 1990, and began investing with Madoff shortly thereafter.  (SCAC ¶¶ 169-170.)  Fairfield Sigma, a feeder fund for Fairfield Sentry, was formed in 1997, and sought to "obtain capital appreciation

---

[3]  For purposes of this Memorandum, all of Plaintiffs' well-pleaded allegations are taken as true, except for those contradicted by documents incorporated into the SCAC, in which case the documents control.  *See Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

of its assets by [only] purchasing shares in Fairfield Sentry Limited." (*Id.* ¶ 171.) Fairfield Sentry's investment strategy was implemented by BLMIS, which employed a so-called "split-strike conversion" strategy. (*Id.* ¶ 169.) Plaintiffs are shareholders who allegedly invested in Fairfield Sentry and Fairfield Sigma and claim to have lost their investments as a result of the Ponzi scheme perpetrated by Madoff and BLMIS. (*Id.* ¶¶ 1-2, 166-167.)

In 2003, thirteen years after Fairfield Sentry began investing in Madoff's split-strike conversion strategy and six years after Fairfield Sigma began purchasing shares in Fairfield Sentry, CGC and CBN, both Netherlands companies, became the custodian and bank for Fairfield Sentry, respectively. (*Id.* ¶¶ 159-160.) In 2006, CBN replaced CGC as custodian for both Fairfield Sentry and Fairfield Sigma, and CGC became the depositary. (*Id.*) CBN and CGC performed those services pursuant to custodian agreements with Fairfield Sentry and Fairfield Sigma. (*Id.* ¶¶ 330-331, 480; July 3, 2006 Sentry Custodian Agreement ("Sentry Agreement"), August 12, 2003 Sigma Brokerage and Custody Agreement ("Sigma Agreement") (collectively, the "Custody Agreements").)[4] The Custody Agreements state that CBN and CGC were "compelled" by the Fairfield Funds to accept BLMIS as sub-custodian, a role BLMIS had occupied since the Fairfield Funds' inception. (Decl., Ex. A ¶ 4.1; Ex B ¶¶ 4.1, 5.3.)

---

[4]    The parties entered into a series of Custody Agreements, with each successive agreement superseding and replacing the one before it. The 2006 Sentry and 2003 Sigma Agreements are the operative agreements between the parties, and are incorporated by reference in the SCAC and are central to Plaintiffs' claims. Copies of the Fairfield Sentry and Fairfield Sigma Agreements are attached as Exhibits "A" and "B," respectively, to the Declaration of Amanda M. McGovern in support of this Memorandum. These materials will be cited in this Memorandum as (Decl., Ex. __ ¶ __). Materials incorporated by reference and integral to the SCAC may be, and should be, considered in deciding CBN and CGC's motion to dismiss. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). Moreover, where, as here, integral documents contradict the allegations of the SCAC, the documents control. *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 206 (S.D.N.Y. 2008).

CBN's and CGC's responsibilities to the Fairfield Funds are set forth in the Custody Agreements, which state that they would provide services to the Fairfield Funds "on the terms and subject to the conditions" of the Custody Agreements. (Decl., Ex. A ¶ 2.1; Ex. B ¶ 2.1, 4.1.) Significantly, the Custody Agreements are silent as to any duties or obligations owed by CBN or CGC to the shareholders of the Fairfield Funds. Instead, the Custody Agreements establish that CBN's and CGC's obligations ran exclusively to the Fairfield Funds and not to the Plaintiffs. The Custody Agreements also specified that they are subject to Netherlands law, and that the exclusive forum for all claims against CBN or CGC is Amsterdam, The Netherlands. (Decl., Ex. A ¶ 22; Ex. B ¶ 22.)

## ARGUMENT

## I. PLAINTIFFS' CLAIMS AGAINST CBN AND CGC MAY ONLY BE LITIGATED IN THE NETHERLANDS

Plaintiffs' claims against CBN and CGC should be dismissed in favor of The Netherlands, as required by the Custody Agreements, which provide that any claims against CBN and CGC "***shall be brought exclusively*** in Amsterdam, The Netherlands." (Decl., Ex. A ¶ 22; Ex. B ¶ 22; emphasis added.) Federal policy strongly favors enforcement of forum selection clauses. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993). "[F]orum-selection clauses 'should be given full effect' when 'a freely negotiated private international agreement (is) unaffected by fraud.'" *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12-13 (1972)). If the forum selection clause has mandatory force and covers the claims involved in the dispute, it is "presumptively enforceable." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). Such presumptive enforceability can be overcome only where the party resisting enforcement can clearly show that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons

as fraud or overreaching." *M/S Bremen*, 407 U.S. at 15; *Phillips*, 494 F.3d at 383-84.   Here, the forum selection clauses in the Custody Agreements are mandatory, binding on Plaintiffs, and cover all claims asserted against CBN and CGC in this action.

### A.      The Forum Selection Clauses Are Mandatory

A forum selection clause is mandatory if it confers "exclusive jurisdiction" on the designated forum.  *Phillips*, 494 F.3d at 386.  Here, the forum selection clauses state that any claims against CBN and CGC "***shall be brought exclusively*** in Amsterdam, The Netherlands." (Decl., Ex. A ¶ 22; Ex. B ¶ 22; emphasis added.)  Accordingly, the clauses are mandatory.  *See, e.g., Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) (finding clause with same language mandatory).

### B.      The Forum Selection Clauses Bind the Plaintiffs

Plaintiffs claim to be third-party beneficiaries under the Custody Agreements, and thus should not be heard to argue that they are not bound by the forum selection clauses contained therein.[5]  A third-party beneficiary "is by definition, closely related to the dispute at issue and

---

[5]   The SCAC contains no allegations that either CBN or CGC had any relationship, or ever communicated, with Plaintiffs.  Rather, all of Plaintiffs' claims against CBN and CGC derive solely from CBN's and CGC's duties to the Fairfield Funds under the Custody Agreements.  The forum selection clause requires that any claims against CBN or CGC arising out of or relating to the duties they owe to the Fairfield Funds under the Custody Agreements – which Plaintiffs seek to enforce – must be brought exclusively in The Netherlands:

> All parties agree that the courts of The Netherlands are to have jurisdiction to settle any disputes which may arise out of or in connection with this Agreement and that accordingly any suit, action or proceeding arising out of or in connection with this Agreement may be brought in such courts.  Any proceedings or claims brought by the [Fairfield Funds] against the Custodian and/or Depositary and/or its affiliates, arising out of or related to this Agreement shall be brought exclusively in Amsterdam, The Netherlands.

(Decl., Ex. A ¶ 22; Ex. B ¶ 22; emphasis added.)

foreseeably bound by the forum-selection clause." *Novak v. Tucows, Inc.*, No. 06 Civ. 1909 (JFB)(ARL), 2007 WL 922306, at *13 n.11 (E.D.N.Y. Mar. 26, 2007). "[I]t would defy logic to allow plaintiff, as a third-party beneficiary, to seek the enforcement of some of the terms of the [agreement], e.g., those related to defendant's obligation[s] . . . while denying its obligations under others, e.g., the forum-selection clause." *Burrows Paper Corp. v. Moore & Assocs.*, No. 6:07 Civ. 62, 2007 WL 2089682, at *3 (N.D.N.Y. July 20, 2007); *see also Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-10 n.7 (7th Cir. 1993) (third-party beneficiary is, by definition, closely related to the dispute and bound by the forum-selection clause).

Even without a determination as to their alleged status as third-party beneficiaries of the Custody Agreements, Plaintiffs should still be bound by the forum selection clauses. *See Novak*, 2007 WL 922306, at *13 n.11 (third-party beneficiary status is not required for a non-signatory to be bound by forum selection clause); *see also Hugel*, 999 F.2d at 209-10 n.7 (same). As discussed in section II.E., below, Plaintiffs' claims are completely derivative of, and predicated upon, CBN's and CGC's obligations under the Custody Agreements, thus Plaintiffs should be bound by the forum selection provisions of those agreements when asserting claims against CBN and CGC. *Weingrad v. Telepathy, Inc.,* No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) (dismissing complaint for improper forum, reasoning that "[a] non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct.").

C.  **All Claims Against CBN and CGC in this
     Action Are Covered by the Forum Selection Clauses**

Plaintiffs purport to assert a third-party beneficiary breach of contract and six tort claims against "Citco," as well an unjust enrichment claim against "all Defendants." To the extent that these claims are in fact brought against CBN and CGC, each of the claims falls within the scope

of the forum selection clauses, because each is based upon the contractual relationship between CBN and CGC and the Fairfield Funds. Nowhere in the SCAC do the Plaintiffs allege that CBN or CGC provided any services to the Plaintiffs (as opposed to the Fairfield Funds), or that CBN or CGC entered into an agreement, or even engaged in any direct communications, with the Plaintiffs. To the contrary, in describing the alleged duties that CBN and CGC allegedly breached, the SCAC only refers to the terms of the Custody Agreements. (*See, e.g.,* SCAC ¶¶ 330-331, 480-483; *cf.* Decl. Ex. A, B.)

The scope of a forum selection clause is not limited to claims for breach of the contract that contains the clause. *See, e.g., Roby*, 996 F.2d at 1361. Plaintiffs' legal characterizations of their claims are not determinative because the courts "refuse to allow a party's solemn promise to be defeated by artful pleading." *Id.* at 1360. Rather, "[w]hether a forum selection clause encompasses other claims depends principally on how broadly the clauses are worded." *Id.* at 1361.

Here, the clauses apply to **"*[a]ny* proceedings or claims brought by the Fairfield Fund against the Custodian and/or Depositary and/or its affiliates arising out of or related to this Agreement."** (Decl., Ex. A ¶ 22.2; Decl., Ex. B ¶ 22.2; emphasis added.) Such broad language is consistently interpreted as encompassing both contract and tort claims, such as those alleged in the SCAC. *See, e.g., Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430, 434 & n.4 (S.D.N.Y. 2007) (state law tort claims were "plainly encompasse[d]" by "expansive language" of the forum selection clause covering any actions "in connection with" the ERISA Plan); *Sarad, Inc. v. Lawson Software, Inc.,* No. 04 Civ. 5554 (GEL), 2004 WL 2093512, at *2-3 (S.D.N.Y. Sept. 16, 2004) (fraud and similar claims were "related to" agreement). As the Seventh Circuit observed when dealing with a similar broadly-worded clause, "[r]egardless of the duty sought to be

enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action." *Hugel,* 999 F.2d at 209; *see also Direct Mail Prod. Servs., Ltd. v. MBNA Corp.,* No. 99 Civ. 10550 (SHS), 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) ("[A] contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract."); *Anselmo v. Univision Station Group, Inc.,* No. 92 Civ. 1471 (RLC), 1993 WL 17173, *2 (S.D.N.Y. Jan. 15, 1993) ("A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship.").

In the SCAC, Plaintiffs do not allege that CBN or CGC provided any services, or assumed any duties, separate from those set forth in the Custody Agreements. In fact, each of the tort claims against CBN and CGC are expressly based on allegations that CBN and CGC did not adequately perform their services under the Custody Agreements. For example:

- With respect to the breach of fiduciary count, Plaintiffs allege that CBN and CGC breached by "failing to discharge properly their responsibilities as Custodian and Bank." (SCAC ¶ 496);

- The gross negligence and negligence counts are based on alleged duties arising from CGC and CBN's roles as "the Funds' financial service provider[s]." (SCAC ¶¶ 502, 506);

- The two "aiding and abetting" counts are based on the roles of CBN and CGC as "custodian, bank and depositary for the Funds" (SCAC ¶¶ 512, 518), and each count merely repeats allegations of purported misconduct from the breach of contract count (*compare* SCAC ¶ 485 *with* SCAC ¶¶ 513, 519);

- The unjust enrichment claim seeks the return of fees paid to CBN and CGC under the Custodian Agreements (*see* SCAC ¶¶ 343 n.10, 569).

Thus, Plaintiffs' claims against CBN and CGC arise directly from and certainly are "in connection with" CBN's and CGC's engagement to provide ministerial custody, depositary, and banking services to the Fairfield Funds. Accordingly, all claims against CBN and CGC in the SCAC are within the scope of the forum selection clauses.

### D. Enforcement of the Forum Selection Clauses Is Not Unreasonable or Unjust

To overcome the presumptive enforceability of the exclusive jurisdiction clauses, Plaintiffs must make a "strong showing" that enforcement would be "unreasonable and unjust" or the clauses are invalid due to "fraud or overreaching." *Bremen*, 407 U.S. at 15; *see also Phillips*, 494 F.3d at 383-84. Plaintiffs can make no such showing here.

There are no allegations in the SCAC that the forum selection clauses here are the result of fraud or overreaching, or that they were negotiated in anything other than arm's-length transactions between the Fairfield Funds and CBN and CGC. The two Fairfield Funds are off-shore funds domiciled in the British Virgin Islands, which contracted with CBN and CGC, both Netherlands companies. Thus, under the circumstances, litigating these claims in The Netherlands would not be unfair or unreasonable.

Nor can Plaintiffs argue that requiring them to bring suit in The Netherlands would effectively deprive them of their day in court, a standard that may not be met by claims of supposed inconvenience or expense. The Second Circuit has rejected challenges to exclusive jurisdiction clauses on the basis that a party will be inconvenienced by having to litigate in a foreign country. *Phillips*, 494 F.3d at 393. As the *Phillips* court observed, such arguments "suggest that litigation in England may be more costly or difficult, but not that it is impossible."

*Id.*; *see also Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 11 (2d Cir. 1995) (enforcing forum selection clause requiring New York plaintiff to litigate in Greece despite "complaints about the difficulty of transporting witnesses abroad").

The fact that Plaintiffs have chosen to bring suit against multiple defendants in this case also does not render the forum selection clause unenforceable. In *Phillips*, the Second Circuit recognized that enforcement of the forum selection clause could result in proceedings in England as to one defendant while related litigation against other defendants proceeded in the Southern District of New York. *Phillips*, 494 F.3d at 393. Although "the commencement of separate proceedings in two countries is a likely inconvenience to the parties," such inconvenience was not a sufficient reason to ignore a valid forum selection clause. *Id.*

Plaintiffs have alleged no facts that support the "strong showing" required to defeat the presumptively enforceable forum selection clauses at issue here. Accordingly, The Netherlands is the exclusive forum for claims against CBN or CGC.

## II.  EVEN IF ADJUDICATED IN NEW YORK, <u>PLAINTIFFS' CLAIMS AGAINST CBN AND CGC FAIL</u>

As demonstrated in section I above, because The Netherlands is the exclusive forum for Plaintiffs' claims against CBN and CGC, these claims should be dismissed and adjudicated there. However, even if the claims against CBN and CGC were to be adjudicated in New York, they should still be dismissed because they all fail to state a claim upon which relief can be granted.

### A.  Each of Plaintiffs' Claims Violates Federal Rule of Civil Procedure 8(a) by Improperly <u>Lumping CBN and CGC Together with Separate Corporate Entities</u>

Plaintiffs acknowledge that CBN, CGC, and the other purportedly affiliated companies – CGL, CFSE, CCI, and CFSB – are separate legal corporate entities. (SCAC ¶¶ 156-161.)

Nonetheless, Plaintiffs improperly lump CBN, CGC, CGL, CFSE, CCI, and CFSB into a single term they call "Citco." (*Id*. ¶ 162.) Thereafter, Plaintiffs refer to all six separate corporate defendants as "Citco" and do not specify which separate corporate entity took what actions. (*Id*. ¶¶ 319-343, 473-520.) By referring only to "Citco," the SCAC ignores the obvious distinctions, for example, between the role of CFSE and CCI, as the administrator and sub-administrator, respectively, of the Fairfield Funds, and CBN and CGC, as separate entities with different contractual duties to the Fairfield Funds.

Plaintiffs' intentionally vague and repeated use of the term "Citco" results in contradictions that render the SCAC unanswerable. For example, the SCAC alleges that under the Administration Agreements, it was "***Citco's*** obligation to keep Fund shareholders informed of the status and performance of their investments" and that "***Citco*** breached the Administration Agreements with the Funds . . . ." (SCAC ¶¶ 475, 484; emphasis added.) However, neither CBN nor CGC was a party to the Administration Agreements and neither CBN nor CGC undertook any responsibility as administrator for the Fairfield Funds.

Likewise, in their aiding and abetting breach of fiduciary duty claim, Plaintiffs allege that "Citco" had knowledge of and substantially participated in the Fairfield Defendants' breach of fiduciary duties. (*Id*. ¶ 511.) The foundation of Plaintiffs' underlying breach of fiduciary duty claim rests on the allegation that the Fairfield Defendants failed to conduct adequate due diligence and monitoring of the Fairfield Funds' investments and failed to follow-up on purported "red flags." (*Id*. ¶¶ 408, 512.) The SCAC contains no facts identifying which "Citco" entity, let alone CBN or CGC, had actual knowledge of the Fairfield Defendants' alleged failures or misconduct, or how CBN and CGC would have had such knowledge.

Because Plaintiffs fail to articulate what alleged acts or duties are attributable to CBN or CGC, and instead lump them together with CFSE, CCI, CFSB, and CGL, the SCAC fails to state any claim against CBN and CGC and should be dismissed. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (Rule 8(a) requires the plaintiff to plead a factual basis to distinguish the conduct of each defendant).

    **B.    Plaintiffs' Third-Party Beneficiary Breach of Contract Claim Fails Because the Custody Agreements Reflect the Parties' Intent Not to Permit Enforcement by Third Parties**

In Count 20, Plaintiffs allege that they are intended third-party beneficiaries of the Custody Agreements between Fairfield Sentry and Fairfield Sigma and CBN and CGC. (SCAC ¶¶ 480-483.) This allegation is contradicted by the unambiguous language of the contracts.

Under New York law, to be considered a third-party beneficiary under the Custody Agreements, Plaintiffs must point to language within the four corners of the Custody Agreements demonstrating that they are "intended beneficiaries." *Air Atlanta Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 190-91 (S.D.N.Y. 2009). Contrary to Plaintiffs' conclusory allegations, the Custody Agreements provide, in unambiguous terms, that CBN's and CGC's respective duties are owed only to Fairfield Sentry and Fairfield Sigma. For example, the Sentry Agreement in pertinent part states:

> ***The Depositary [CGC] shall have obligations*** with respect to the Securities held by it for the Fund [Fairfield Sentry] ***only vis-à-vis the Fund*** . . . . The Fund shall give its instructions concerning the Securities ***to the Custodian [CBN],*** which shall be acting on behalf of the Fund vis-à-vis the Depositary.
>
> The Custodian shall be charged with the duties entailed by the administration of the Securities held by the Depositary ***for the benefit of the Fund*** . . . .

(Decl., Ex. A ¶¶ 3.2, 6.1; emphasis added.)  Similarly, the Sigma Agreement in pertinent part states:

> **The Bank [CBN] shall**, on Instructions of the Customer [Fairfield Sentry] and on the basis of this Agreement, **provide Brokerage Services to the Customer**.
>
> The Bank and Custodian [CGC] shall have and perform . . . such . . . powers and duties **as the parties** shall from time to time agree . . .

(Decl., Ex. B ¶¶ 2.2, 7.1; emphasis added.)

Thus, under the Custody Agreements, CBN and CGC agreed to render ministerial custodial and banking services to Fairfield Sentry and Fairfield Sigma.  The Custody Agreements contain no language that would indicate an intent by CBN and CGC to provide any services to Plaintiffs.  Indeed, the Custody Agreements make it clear that neither the duties nor rights under the contracts belong to anyone other than the contracting parties.  Both Custody Agreements specifically provide:

> Neither the **benefit nor burden** of this Agreement may be assigned by any party save with the prior written consent of the others.

(Decl., Ex. A ¶ 15; Ex. B ¶ 17; emphasis added.)  Courts consistently interpret such contractual language as disposing of third-party beneficiary claims.  *See, e.g., Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *10 (S.D.N.Y. Dec. 22, 2003); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 163 (S.D.N.Y. 1998) (prohibition on assignments and language that contract benefits and binds the parties are inconsistent with the existence of an intention to confer a benefit upon a third party).

Accordingly, based on the unambiguous language of the Custody Agreements, Plaintiffs' third-party beneficiary breach of contract claim should be rejected.[6]

## C.    Each of Plaintiffs' Tort Claims Other than Aiding and Abetting Fraud Is Barred by the Martin Act

The Martin Act bars common law tort claims involving securities transactions arising within or from New York.[7]  *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001).   The preemptive scope of the Martin Act includes Plaintiffs' claims for breach of fiduciary duty (Counts 21 and 32), gross negligence (Count 22), negligence (Count 23), aiding and abetting breach of fiduciary duty (Count 24), and unjust enrichment (Count 33).  *See, e.g., Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, No. 08 Civ. 7508 (SAS), 2009 WL 2828018, at *14 (S.D.N.Y. Sept. 2, 2009) (dismissing breach of fiduciary duty, negligence, unjust enrichment, and aiding and abetting claims as preempted by Martin Act); *Pro Bono Invs., Inc. v. Gerry*, No. 03 Civ. 4347 (JGK), 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (claims for gross negligence preempted by the Martin Act).

Not only do these claims against CBN and CGC fall within the scope of the Martin Act, but Plaintiffs have alleged a sufficient nexus with New York to satisfy the Martin Act's geographical prong.  The Martin Act requires that the central events giving rise to the claim occur in New York.  *Abu Dhabi Commercial Bank*, 2009 WL 2828018, at *14 (a transaction is

---

[6]    The law of The Netherlands compels the same result.  To establish Netherlands law, CBN and CGC submit the expert Declaration of Michel Deckers on Relevant Principles of the Law of the Netherlands, which is attached as Exhibit "C" to the Declaration of Amanda M. McGovern, submitted in support of this Memorandum.  Under Federal Rule of Civil Procedure 44.1, this Court can consider the Declaration of Michel Deckers in determining questions of foreign law. N.Y. Civ. Prac. Law & Rules, R. 4511; *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998); *Republic of Ecuador v. Chevron Texaco Corp.*, 376 F. Supp. 2d 334, 378 (S.D.N.Y. 2005).

[7]    The Martin Act is codified at N.Y. Gen. Bus. Law § 351(1) (McKinney 2009).  The sale of limited partnership interests, stocks, bonds and other securities are "securities" within the purview of the Martin Act.  *See, e.g., Reiter v. Greenberg*, 21 N.Y.2d 388, 392 (N.Y. 1968).

"within or from" New York for the purposes of the Martin Act if a plaintiff alleges that a "substantial portion of the events" giving rise to a claim occurred in New York).

Plaintiffs' allegations confirm that the geographical prong of the Martin Act is met in this case. First, Plaintiffs allege that CBN and CGC engaged in business interactions with parties in New York. For example, the SCAC alleges that CGC "engaged with and transferred investor assets to Fairfield Sentry sub-custodian [BLMIS] in New York, and also regularly communicated with the [Fairfield] Funds' managers in New York." (SCAC ¶ 159.) Similarly, Plaintiffs allege that CBN "transferred assets to and received assets from the [Fairfield] Funds' sub-custodian [BLMIS] in New York, and also regularly communicated with the [Fairfield] Funds' managers in New York." (*Id.* ¶ 160.) Second, Plaintiffs allege that the underlying Madoff fraud – without which there would be no claims against CBN and CGC – occurred in New York. Plaintiffs allege that: (i) the Fairfield Funds maintained substantially all of their assets with Madoff in New York (*Id.* ¶¶ 159-160, 170-173); (ii) from December 1, 1995 through December 2008, the Fairfield Funds handed over approximately $4.5 billion of their investors' money to Madoff and his New York securities firm, BLMIS (*Id.* ¶ 175); (iii) Madoff and BLMIS created the false securities transactions from their New York offices (*Id.* ¶ 166); and (iv) since at least 1990, Madoff perpetrated a massive Ponzi scheme through the investment advisor services of his New York firm, BLMIS. (*Id.*) These allegations, along with Plaintiffs' allegations that at least 19 Defendants – including those whom CBN and CGC allegedly aided and abetted – resided, were registered to do business or were based in New York (*see id.* ¶¶ 118, 120, 124-129, 132-134, 136-138, 140), bring Plaintiffs' common law claims squarely within the Martin Act's preemptive scope.

Plaintiffs' claims for breach of fiduciary duty, gross negligence, negligence, aiding and abetting breach of fiduciary duty, and unjust enrichment claims are therefore preempted and should be dismissed.

**D.  Each of Plaintiffs' Tort Claims Other than
Aiding and Abetting Fraud Is Barred by the Economic Loss Rule**

New York's economic loss rule bars the recovery in tort of purely economic damages where, as here, there is a contract between the parties governing the subject matter of the dispute and where Plaintiffs have failed to identify any duty separate from the contractual duties.  *See, e.g., Iconix Brand Group, Inc. v. Bongo Apparel, Inc.*, No. 06 Civ. 8195 (DLC), 2008 WL 2695090, at *4 (S.D.N.Y. July 8, 2008) ("[m]erely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim" unless a legal duty independent of the contract has been violated).

Plaintiffs' tort claims against CBN and CGC are indistinguishable from their purported contractual claims.  In their third-party beneficiary breach of contract claim (Count 20), quoting language from the Custody Agreements, Plaintiffs allege that under the Custody Agreements "Citco" was obligated to:

- "receive and/or hold shareholder assets and ensure that sub-custodians were qualified to hold the assets."  (SCAC ¶ 480.)

- "[ensure] that the sub-custodian properly performed its duties" and "maintain an 'ongoing appropriate level of monitoring.'"  (*Id.* ¶ 481.)

- "use 'its best efforts and judgment and due care in performing its obligations and duties' as Custodian" and "act in good faith and reasonable care in its execution of its duties."  (*Id.* ¶ 482.)

- CGC agreed to "perform its services as Depositary without 'willful malfeasance, bad faith, fraud or negligence.'"  (*Id.* ¶ 483.)

Plaintiffs then allege the following breaches of these same obligations as grounds for their various tort claims:

- CBN and CGC "breached their fiduciary duties by, among other omissions, failing to discharge properly their responsibilities as Custodian and Bank, sub-delegating responsibilities to [BLMIS] without adequate supervision or control, failing to supervise or monitor [BLMIS] as a sub-custodian, and handing over Plaintiffs' investments to [BLMIS]." (Count 21, Breach of Fiduciary Duty, SCAC ¶ 496.)

- "Citco" "grossly failed to exercise due care, and acted in reckless disregard of their duties." (Count 22, Gross Negligence, SCAC ¶ 503.)

- "Citco" "negligently failed to exercise due care and failed to exercise the degree of prudence, caution, and good business practice that would be expected of any reasonable investment professional." (Count 23, Negligence, SCAC ¶ 507.)

Consistent with the above allegations, the SCAC is devoid of any allegation that CBN and CGC owed any duty to Plaintiffs that was not specified in the Custody Agreements. This is fatal to the tort claims asserted against CBN and CGC because Plaintiffs cannot transform the alleged breach of such contractual duties into tort claims. "[I]f the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort." *Robehr Films, Inc. v. Am. Airlines, Inc.*, No. 85 Civ. 1072 (RPP), 1989 WL 111079, at *2 (S.D.N.Y. Sept. 19, 1989). "New York courts and federal courts applying New York law have uniformly preserved this distinction [between tort and contract damages] 'to prevent contract law from drowning in a sea of tort.'" *Regent Ins. Co. v. Storm King Contracting, Inc.*, No. 06 Civ. 2879 (LBS), 2008 WL 563465, at *6 (S.D.N.Y. Feb. 27, 2008).

As set forth above, CBN and CGC deny that Plaintiffs are intended third-party beneficiaries of the Custody Agreements, and further deny that they owed Plaintiffs any duty at all. Yet Plaintiffs' failure to allege any duty outside the contractual duties to the Fairfield Funds leads to the same result whether or not Plaintiffs are deemed to be in privity with CBN and CGC: Plaintiffs' tort claims should be dismissed. This is because where, as here, plaintiffs fail to articulate a separate duty owed by the defendant that is distinct from any contractual duties, New York's economic loss rule bars tort claims even where the parties are not in privity. *See Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, No. 00 Civ. 9214 (RWS), 2003 WL 1751780, at *11 (S.D.N.Y. Apr. 1, 2003) ("It is well-established under New York law that, where a plaintiff alleges only economic damage resulting from a defendant's alleged negligence, defendants owe no duty to plaintiffs with whom they are not in contractual privity."); *Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*, 840 F. Supp. 231, 234 (E.D.N.Y 1994) (recognizing that "[p]rivity of contract is not an element of the economic loss doctrine").

### E.     Plaintiffs Lack Standing Because Their Claims Are Derivative

All of Plaintiffs' common law claims are premised on allegations of injury suffered ***directly by the Fairfield Funds*** *– i.e.,* the loss of the Fairfield Funds' assets as a direct result of the Madoff Ponzi scheme. (SCAC ¶ 1.) Based on the grounds and legal authorities set forth in the FG Defendants' Memorandum of Law in Support of Their Motion to Dismiss, which argument and authorities are incorporated herein, Plaintiffs' claims are properly derivative. Counts 20-25, and 32-33 should therefore be dismissed.

### F.     Plaintiffs Fail to State Claims for Aiding
### and Abetting Breach of Fiduciary Duty and Fraud

Plaintiffs have attempted to plead claims against "Citco," which the SCAC defines to include CBN and CGC, for aiding and abetting (i) the Fairfield Defendants' alleged breach of

fiduciary duty (Count 24),[8] and (ii) the Fairfield Fraud Claim Defendants' alleged fraud (Count 25).[9]  The gravamen of the underlying breach of fiduciary duty and fraud claims is the allegation that the Fairfield-related defendants falsely represented to Plaintiffs that they were exercising meaningful due diligence and implementing risk controls "in monitoring BLMIS's activities." (SCAC ¶¶ 512, 518.)  In order to state an aiding and abetting claim, a plaintiff must show not only the existence of a breach of fiduciary duty or fraud by a primary tortfeasor, and substantial assistance by the alleged aider and abettor, but also that the alleged aider and abettor had actual knowledge of the wrongful conduct allegedly being committed by the purported primary tortfeasor.  *See, e.g., Rosner v. Bank of China*, No. 09 Civ. 0333, 2009 WL 3377886, at *1 (2d Cir. Oct. 21, 2009).

Further, in order "[f]or claims of aiding and abetting to survive a motion to dismiss, they must be pled with some level of specificity and may not consist solely of a broad, conclusory, repetition of the elements of aiding and abetting."  *Abu Dhabi Commercial Bank,* 2009 WL 2828018, at *8; *see also Filler v. Hanvit Bank*, 156 F. App'x 413, 417 (2d Cir. 2005) (the particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 425-26 (S.D.N.Y. 2007) (dismissing aiding and abetting claim for failing to plead actual knowledge and substantial assistance with particularity as required by Rule 9(b)).  This particularity requirement is imposed because the aider and abettor

---

[8]  The Fairfield Defendants are defined in the SCAC as including defendants Fairfield Greenwich Group ("FGG"), Fairfield Greenwich Limited ("FGL"), Fairfield Greenwich (Bermuda) Ltd. ("FGBL"), Fairfield Greenwich Advisors LLC ("FGA"), Fairfield Risk Services Ltd. ("FRS"), Fairfield Heathcliff Capital LLC ("FHC"), Lion Fairfield Capital Management Ltd. ("LFCM"), Noel, Tucker, Piedrahita, Vijayvergiya, Lipton, McKeefry, Landsberger, Pulido Mendoza, Smith, and Murphy.  (SCAC ¶ 150.)

[9]  The SCAC defines the Fairfield Fraud Claim Defendants as including defendants FGG, FGL, FGBL, FGA, FRS, Noel, Tucker, Piedrahita, Vijayvergiya, Lipton, and McKeefry.  (SCAC ¶ 151.)

"should not be called to account for the intentional tort of another unless the circumstances of his connection therewith can be alleged in detail from the outset." *Rand Int'l Leisure Prods., Inc. v. Bruno*, 22 Misc. 3d 1111(A), at *3 (Sup. Ct. Nassau County Jan. 14, 2009).

As demonstrated below, Plaintiffs' aiding and abetting claims against CBN and CGC fail because, among other reasons, the SCAC contains no individualized or specific allegations that CBN or CGC had actual knowledge of the purported deficiency of risk controls or alleged false statements by either the Fairfield Defendants or the Fairfield Fraud Claim Defendants.

**1.  The SCAC Contains No Specific Allegations of CBN's or CGC's Actual Knowledge of the Fairfield Defendants' Purported Breach of Fiduciary Duty**

The standard for pleading "actual knowledge" is high.  It cannot be met by allegations of collective knowledge.  *Musalli Factory for Gold & Jewellry v. JP Morgan Chase Bank, N.A.,* No. 1:08 Civ. 01720 (LAP), 2009 WL 860635, at *10-11 & n.11 (S.D.N.Y. March 31, 2009) (collective knowledge insufficient to establish actual knowledge, which must be pled with particularity).  Yet the only allegations relating to CBN's or CGC's  knowledge of the Fairfield Defendants' purported breach of fiduciary duty are allegations directed collectively to "Citco":

> As administrator, custodian, bank, and depositary for the Funds, *Citco* gained significant knowledge of the operations of the Funds and their investment managers and other service providers.  As a leading provider of back office services to the hedge fund industry, and by virtue of their long-standing relationship with the Funds, *Citco* knew that the Fairfield Defendants owed a fiduciary duty to the Plaintiffs.  *Citco* also knew that the due diligence and risk controls employed by the Fairfield Defendants were grossly deficient in breach of their fiduciary duties.

(SCAC ¶ 512; emphasis added.)

These conclusory allegations are wholly lacking in the specificity required to plead actual knowledge of the Fairfield Defendants' purported breach of fiduciary duty.  They provide no

individualized detail and offer no facts to support a claim that either CBN or CGC had actual knowledge of the alleged underlying breach of fiduciary duty. Under the applicable heightened pleading standards, Plaintiffs' allegations as to actual knowledge are woefully insufficient.

### 2. The SCAC Contains No Specific Allegations of CBN's or CGC's Actual Knowledge of the Fairfield Fraud Claim Defendants' Purported Fraud

The claim of aiding and abetting fraud is equally deficient. The only allegations relating to CBN's and CGC's knowledge of the purported fraud are directed collectively to "Citco":

> As administrator, custodian, bank, and depository for the Funds, *Citco* gained significant knowledge of the operations of the Funds and their investment managers and other service providers. *Citco* knew that the Fairfield Fraud Claim Defendants were falsely representing to Plaintiffs that they had undertaken meaningful due diligence and implemented risk controls, and were failing to disclose clear deficiencies in their internal controls and monitoring of [BLMIS]'s activities.

(SCAC ¶ 518; emphasis added.) This conclusory paragraph alleges no facts to indicate that either CBN or CGC individually had actual knowledge of the representations allegedly made to Plaintiffs or, more importantly, of the alleged falsity of those representations.

Because the SCAC fails to meet the strict standard for pleading actual knowledge, the aiding and abetting claims against CBN and CGC should be dismissed.

### G. Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law

Plaintiffs' unjust enrichment claim against CBN and CGC fails because Plaintiffs have not alleged that they ever paid any fees to CBN and CGC. The unjust enrichment claim is also barred by the existence of the Custody Agreements themselves, which are valid, enforceable, and govern this dispute. Accordingly, the unjust enrichment claim should be dismissed.

First, Plaintiffs have failed to allege facts that would establish the essential elements of their claim for unjust enrichment. To state an unjust enrichment claim, Plaintiffs must allege: (1)

that CBN and CGC benefited; (2) at Plaintiffs' expense; and (3) that equity and good conscience require restitution. *See Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 513, 586 (2d Cir. 2006) (recognizing that New York courts are uniform in recognizing the three elements to state a claim for unjust enrichment). But Plaintiffs' unjust enrichment claim is an attempt to recover fees that Plaintiffs never paid. Indeed, Plaintiffs never allege that they paid CBN and CGC anything. There is no dispute that all fees paid to CBN and CGC were paid by the Fairfield Funds, which are separate legal entities from their respective shareholders. Because Plaintiffs have not alleged that they paid anything to CBN and CGC, they cannot establish the second element of their unjust enrichment claim.

Second, under New York law, a claim for unjust enrichment does not lie where, as here, there is an express contract governing the subject matter of the unjust enrichment claim. *See MCC Dev. Corp. v. Perla*, No. 101141/06, 2009 WL 1360878, at *4 (Sup. Ct. New York County, May 8, 2009) (unjust enrichment claim dismissed where express contract governs subject matter of claim); *see also Beth Isr. Med. Ctr.*, 448 F.3d at 586 (claims for unjust enrichment lie in quasi contract and arise only "*in the absence of an*[] *agreement*" governing the subject matter of the unjust enrichment claim) (emphasis in original).

In the instant case, the existence of an enforceable agreement governing the dispute bars an unjust enrichment claim even where Plaintiffs are not signatories. *Banco Espirito Santo de Investimento*, 2003 WL 23018888, at *17-18 (contracts governing payments preclude unjust enrichment claims against even those with whom plaintiffs did not personally contract); *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1333-34 (S.D.N.Y. 1997) (plaintiffs' own lack of a contract with the defendant does not provide a basis for an unjust enrichment claim, where the funds have an applicable contract).

**CBN and CGC Are Not Liable for
the Alleged Acts of Separate Corporate Entities**

Finally, Plaintiffs apparently seek to hold CBN and CGC liable for all of the common law claims (except negligent misrepresentation, Count 28) asserted against CGL, CFSE, CCI, and CFSB based on the mere conclusory assertion that "each Citco company acts as the agent and alter ego of Citco Group and of each other." (SCAC ¶ 156.) In the same conclusory fashion, Plaintiffs allege that two former employees of CFSB, Francoeur and Pilgrim, "were acting as agents of [CGL] and the other Citco defendants. Therefore, [CGL] and the other Citco defendants are also liable for the conduct of Francoeur and Pilgrim." (*Id.* ¶ 564.) Plaintiffs' conclusory allegations fail to state a claim against CBN and CGC under either an agency or veil-piercing theory.

With regard to Plaintiffs' agency theory, the only relevant question is whether the SCAC adequately alleges that CFSE, CCI, CGL, CFSB, Francoeur, and/or Pilgrim acted as either CBN's or CGC's agents. There are no factual allegations in the SCAC that would support such a claim. Instead, the SCAC contains nothing more than a bald allegation that CBN and CGC, CFSE, CCI, CGL, CFSB, Francoeur, and Pilgrim all acted as each other's agents. (SCAC ¶ 323.) Such an allegation is insufficient to establish agency liability. *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 1907005, at *4 (S.D.N.Y. Aug. 8, 2005) ("[c]oncrete factual allegations are necessary to establish agency and control").

Finally, as demonstrated in CGL's Memorandum of Law in Support of Its Motion to Dismiss at sections II and III, which CBN and CGC incorporate herein, the SCAC alleges no facts that would justify disregarding the corporate separateness of CBN or CGC and imposing liability on them for the alleged conduct of affiliated companies. The allegations of the SCAC

thus fail to state any claim against CBN and CGC under an alter ego theory and provide no basis to pierce the corporate veil.

## CONCLUSION

For these reasons – and given the ample opportunity Plaintiffs have had to formulate their extensive SCAC – CBN and CGC respectfully request that the Court dismiss all of the claims against them with prejudice.


Dated:  December 22, 2009

Respectfully submitted,

**GILBRIDE, HELLER & BROWN, P.A.**

/s/ Lewis N. Brown
Lewis N. Brown
Amanda M. McGovern
One Biscayne Tower, 15th Floor
2 South Biscayne Blvd.
Miami, FL  33131
T:  305.358.3580
F:  305.374.1756
lbrown@ghblaw.com
amcgovern@ghblaw.com

**CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP**
Eliot Lauer (EL 5590)
Michael Moscato (MM 6321)
101 Park Avenue
New York, NY  10178
T:  212.696.6000
F:  212.697.1559
elauer@curtis.com
mmoscato@curtis.com

*Attorneys for Citco Bank Nederland N.V.*
*Dublin Branch and Citco Global Custody N.V.*