# Exhibit A



Dated: July 3, 2006

FAIRFIELD SENTRY LIMITED

and

CITCO BANK NEDERLAND N.V.
DUBLIN BRANCH

And

CITCO GLOBAL CUSTODY N.V.

---

CUSTODIAN AGREEMENT

---

CITCO BANK NEDERLAND N.V.
Dublin Branch
Custom House Plaza Block 3
International Financial Services Centre
Dublin 1
Ireland



THIS AGREEMENT is made this 3rd day of July 2006

BETWEEN: **FAIRFIELD SENTRY LIMITED**
Wickhams Cay
PO Box 662
Road Town, Tortola
British Virgin Islands  (the "Fund")

AND: **CITCO BANK NEDERLAND N.V.
DUBLIN BRANCH**
Custom House Plaza Block 3
International Financial Services Centre
Dublin 1
Ireland  (the "Custodian")

AND: **CITCO GLOBAL CUSTODY N.V.**
Telestone 8 – Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands  (the "Depositary")

**WHEREAS:**

(A) The Fund was incorporated under the laws of the British Virgin Islands on October 30, 1990 and is an open-ended investment company, which offers shares to investors on the terms set out in its Private Placement Memorandum (the "PPM").

(B) The Fund wishes to be provided with custody services and the Custodian and the Depositary are willing to provide such custody services to the Fund on the terms and subject to the conditions contained in this Custodian Agreement (the "Agreement").

(C) The Fund has opened and currently maintains a current account number 52.358105 and may open and maintain further accounts in the future (the "Account") with the Custodian.

(D) The Fund has entered into an Administration Agreement with Citco Fund Services (Europe) B.V. (the "Administrator").

(E) The Fund has entered into an investment management agreement with Fairfield Greenwich (Bermuda) Ltd. (the "Investment Manager").





**NOW IT IS HEREBY AGREED** as follows:

1 **Interpretation**

    1.1    Unless the context otherwise requires:

"**Agreement**" means this Custodian Agreement.

"**Instructions**" means instructions provided from time to time to the Custodian and/or to the Depositary by the Fund or the Investment Manager or by such persons as the Fund has authorised to give instructions, as more particularly described in Clause 12 hereof, in respect of the services and duties performed by the Custodian and/or the Depositary pursuant to this Agreement.

"**Readily Marketable Securities**" means open ended collective investment schemes with unrestricted access on clearly defined periodic dealing cycles next to shares, units, bonds, futures contracts, currencies, money instruments, options, commodities, any derivative instruments based on the foregoing and any other financial instruments and other assets or property which are freely and publicly traded on a daily basis on a stock exchange or other exchange or recognised market place, and in respect of which the Custodian and/or the Depositary agree to provide the services pursuant to this Agreement.

"**Non-Readily Marketable Securities**" means shares, units, bonds, futures contracts, currencies, money instruments, options, commodities, any derivative instruments based on the foregoing and any other financial instruments and other assets or property, including shares, units or other financial instruments of any unlisted collective investment schemes, for which there is no publicly available market or which are not freely or publicly traded on a daily basis on a stock exchange or other exchange or recognised market place, and in respect of which the Custodian and/or the Depositary agree to provide the services pursuant to this Agreement.

"**Regularly Settled Securities**" means Securities that normally effect settlement within five business days of the Net Asset Value Date or Trade Date (or equivalent) as defined in its Offering Memorandum (or equivalent).

"**Non-Regularly Settled Securities**" means Securities that normally effect settlement after five business days of the Net Asset Value Date or Trade Date (or equivalent) as defined in its Offering Memorandum (or equivalent).

"**Securities**" means, where the context so admits, both Readily Marketable Securities and Non-Readily Marketable Securities.

    1.2    References herein to Clauses are references to clauses of this Agreement. Headings are inserted for convenience only and shall not be used in construing this Agreement.

2 **Appointment of Custodian**

    2.1    The Fund hereby appoints the Custodian as custodian of the Fund on the terms and subject to the conditions hereof, which appointment is hereby accepted by the Custodian.

    2.2    The Custodian agrees to provide the services herein set out, subject to the provisions of this Agreement.

3 **Depositary**

    3.1    The Custodian and the Depositary, shall cause all Securities that are held for the Fund to be held exclusively by the Depositary and to be exercised by the Depositary for the benefit of the Fund, the foregoing insofar possible in respect of the relevant Securities.

    3.2    The Depositary shall have obligations with respect to the Securities held by it for the Fund only vis-à-vis the Fund. Only the Fund or any other party or person appointed as such by the Fund, is entitled to give instructions to the Depositary with respect to the Securities held for him. The Depositary is not entitled to exercise the Securities other than in accordance with the Instructions of the Fund and with the provisions of this Agreement. The Fund shall give its instructions concerning the Securities to the Custodian, which shall be acting on behalf of the Fund vis-à-vis the Depositary.





- 3.3 The benefits and burdens resulting from or connected with the Securities shall accrue or, as the case may be, be for the account of the Fund, so that the Depositary will not incur any economic or commercial risk in respect of the Securities.

4 **Appointment of further Sub-Custodians**

- 4.1 In the performance of their duties under this Agreement, the Custodian is compelled by the Fund to use the services of Bernard L. Madoff Investment Securities LLC as sub-custodian and may at the direction of the Fund be compelled or directed to act through further agents, sub-custodians or any other third party which the Fund may, in its absolute discretion, deem necessary. The Custodian and/or Depositary are hereby authorised by the Fund to enter into further agreements for the appointment of the aforementioned agents, sub-custodians and/or third parties.

- 4.2 The Depositary shall not be liable for any act or omission or for the solvency of any sub-custodian, agent or any third party appointed pursuant to this Agreement.

- 4.3 The Custodian shall not be responsible for any act or omission or for the solvency of any sub-custodian, agent or third party, provided that the Custodian can demonstrate that due care was taken in the selection and ongoing appropriate level of monitoring of any such sub-custodian, agent or third party. In addition, the Custodian shall be entitled to rely upon the Fund in order to fulfill its obligations to use reasonable skill, care and diligence in the selection and appointment of such sub-custodians; provided that the Fund directed the Custodian to select and appoint such sub-custodians.

5 **Duties of the Fund**

- 5.1 The Fund may deliver or cause to be delivered to the Custodian from time to time the following:

  - 5.1.1 Securities which the Fund now owns or may hereafter acquire, and of which the Custodian agrees to retain custody.

  - 5.1.2 any other property or assets of the Fund of which the Custodian, in its absolute discretion, may agree to accept custody.

- 5.2 The Fund acknowledges that there may be significant delays in the registration or re-registration in the name of the Depositary, or in the name of any sub-custodian or nominee, of Non-Readily Marketable Securities, which have been delivered to the Custodian pursuant to Clause 5.1 hereof. In the absence of any negligence or undue delay on the part of the Custodian, the Custodian shall not be under any obligation to execute any instructions by the Fund in respect of such Non-Readily Marketable Securities until registration or re-registration in the name of the Depositary or in the name of any sub-custodian or nominee is completed.

- 5.3 The Fund shall timely and accurately give Instructions to the Custodian or procure that the Custodian will be given timely and accurate Instructions of all transactions, which involve the Custodian.

- 5.4 The Custodian and/or Depositary will be under no obligation whatsoever vis-à-vis the Fund in connection with Securities not delivered to it pursuant to this clause 5.

- 5.5 The Fund shall be solely responsible for compliance with any investment policies, guidelines, restrictions on ownership or other restrictions whatsoever in relation to Securities, which may from time to time be binding on the Fund and/or the Custodian and/or the Depositary when providing the services under this Agreement. The Custodian and/or Depositary shall at no time be responsible for monitoring the aforementioned investment policies, guidelines or other restrictions.

6 **Powers and Duties of the Custodian**

- 6.1 The Custodian shall be charged with the duties entailed by the administration of the Securities held by the Depositary for the benefit of the Fund and shall have and perform the following powers and duties and such other powers and duties as the parties shall from time to time agree:





6.1.1 to register the Securities, other than physically held bearer shares, in the name of the Depositary or any sub-custodian and to keep the Securities in the custody of the Custodian or procure that they are kept in the custody of any sub-custodian, provided however that, if instructed to do so by the Fund, the Custodian may deposit any of the Securities in a depository or clearing system;

6.1.2 to deposit in the Account all moneys received from or for the account of the Fund;

6.1.3 when instructed to do so by the Fund and subject to the provisions of Clause 5.2, to make settlement of transactions undertaken by or for the account of the Fund, delivering or receiving the Securities or other assets of the Fund and making or receiving payments for the account of the Fund. The Custodian is not obliged to deliver securities or assets which cannot be covered by securities or assets which they hold for the Fund or to make any payments other than from the Account;

6.1.4 to collect and deposit in the Account all income and other payments in connection with the Securities;

6.1.5 unless instructed to do so, and in which manner, by the Fund, the Custodian and/or any sub-custodian shall not vote on or in respect of the Securities or deliver any executed form of proxy to vote thereon or in respect thereof;

6.1.6 to employ any legal, financial or other experts which the Custodian deems necessary to comply with their duties and obligations under this Agreement the reasonable costs of which will be reimbursed to the Custodian by the Fund, if reasonable and duly evidenced by appropriate documents;

6.1.7 when instructed to do so by or on behalf of the Fund, to remit money to banks or others for the account of the Fund and to pay or procure the payment of any invoices or other financial obligations of the Fund;

6.1.8 to deliver and surrender any bonds or other instruments as and when the same fall due for payment or repayment and to pay all calls and debit the accounts of the Fund accordingly and to effect all necessary or appropriate exchanges of bonds or other instruments;

6.1.9 to deliver to the Fund all forms of proxy and all notices of meetings and any other notices or announcements in connection with the Securities;

6.1.10 to execute ownership and other certificates and affidavits for all fiscal, tax and other purposes which may be required in connection with the collection of bond and note coupons and payments of dividends and interest and to pay from the Account(s) all required taxes in connection therewith;

6.1.11 to make applications and reports to the competent authorities under any applicable laws, treaties, agreements or conventions in order to secure any tax or other privileges and benefits to which the Fund is or may be entitled with respect to the payments of dividends and interest provided always that the responsibility of the Custodian and/or Depositary to do so will only be on the basis of advice received from experts in jurisdictions designated by or on behalf of the Fund and approved by the Custodian.

6.2 The Securities held at any one time by the Custodian or any sub-custodian shall be recorded in and ascertainable from the books and/or ledgers of the Custodian and such books and ledgers shall constitute conclusive evidence of the Securities retained on behalf of the Fund.

6.3 The Fund recognises that in certain circumstances in order to preserve or safeguard the Securities or other assets of the Fund, the Custodian may be required to act without first obtaining instructions from the Fund. In such cases, the Custodian may act at their own absolute and unfettered discretion and shall not be liable, in the absence of negligence, wilful misfeasance, reckless disregard or fraud, for any loss to the Fund whatsoever.





6.4 The Custodian does not warrant the contents of the PPM and neither shall be required to participate in the management, administration or Net Asset Value calculation of the Fund.

6.5 Neither the Custodian nor the Depositary shall have any responsibility to initiate, appear in, prosecute or defend any legal or equitable proceedings relating to the securities or other property held by the Custodian on behalf of the Fund.

6.6 Neither the Custodian nor the Depositary shall have any responsibility to initiate any proceeding or engage the services of any third party for the collection of overdue amounts owing to the Fund in connection with any stocks, bonds or other property held by the Custodian under this Agreement.

6.7 If at the request of the Fund the Custodian agrees to appear in, prosecute or defend any such legal or equitable proceedings, either in the Custodian or the Depositary's own name or in the name of a nominee, the Fund agrees to indemnify the Custodian and/ or the Depositary against damages and expenses (including legal costs) which may be sustained or incurred by the Custodian and/or the Depositary in so acting.

6.8 To the extent possible the Depositary shall enable the Custodian to perform these duties on behalf of the Depositary when necessary. Except in the event of willful misfeasance, bad faith, fraud or negligence on the part of the Depositary, the Depositary shall have no liability in connection with these duties.

## 7 Representations and Warranties of the Fund

7.1 The Fund represents and warrants to the Custodian and to the Depositary that it will at all times have full power and authority (corporate and otherwise) to enter into this Agreement and to exercise its rights and perform its obligations under the terms and conditions of this Agreement and any contract in connection therewith or pursuant thereto, and that it has obtained and will maintain all authorisations and consents necessary for it so to enter, exercise rights and perform such obligations, and that such authorisations and consents are and will at all times be in full force and effect. The Fund will forthwith upon demand by the Custodian from time to time deliver such evidence of such authorisations and consents and compliance therewith as the Custodian may reasonably require.

7.2 The Fund furthermore represents and warrants to the Custodian that it has full power and authority (i) to authorise those third parties to give instructions on behalf of the Fund or its nominee/custodian as Fund may from time to time advise to the Custodian, and (ii) to perform all its obligations hereunder.

## 8 Liability and Indemnification of Custodian and Depositary

8.1 The Fund shall bear all risks of investing in Securities or holding cash denominated in a particular currency and the Fund hereby agrees to be solely responsible for any losses resulting from any transactions in Securities or cash in any currency in connection with transactions effected through the Custodian.

8.2 The Custodian and/or Depositary hereby agree to use its best efforts and judgement and due care in performing its obligations and duties pursuant to this Agreement; provided however that the Custodian and/or Depositary, their directors, officers, employees and/or agents shall not be liable for any action taken or failure to act in the course of performing the services hereunder or for any loss suffered by the Fund in connection with the subject matter of this Agreement unless such loss arises from wilful misfeasance, fraud, bad faith or negligence in the performance of the Custodian's and/or Depositary's obligations and duties or by reason of the Custodian's and/or Depositary's reckless disregard of its obligations and duties hereunder.

8.3 In the absence of wilful misfeasance, fraud, bad faith, negligence or reckless disregard of their obligations and duties hereunder, the Custodian and/or Depositary shall not be liable for any shortfall in the number of securities held by the Custodian on behalf of the Fund.

8.4 In particular, in the absence of wilful misfeasance, fraud, bad faith, negligence or reckless disregard of their obligations and duties hereunder, the Custodian and/or Depositary shall not be liable for any losses which may arise howsoever as a result of any of the prices or values for any of the Securities which are provided to or obtained by the Custodian and/or Depositary being provisional, inaccurate, false or misleading.





8.5 In the event of any loss to the Fund by reason of the failure of the Custodian or the Depositary to utilise reasonable care (including but not limited to, in connection with the Custodian and the Depositary acting in accordance with Instructions received from the Fund) the Custodian and the Depositary shall be liable to the Fund only to the extent of the Fund's direct damages, to be determined based on the market value of the Securities or other property which is the subject of the loss at the date of discovery of such loss and without reference to any special conditions or circumstances. The Custodian and the Depositary shall have no liability whatsoever for any consequential, special, indirect or speculative loss or damages (including, but not limited to, lost profits) suffered by the Fund in connection with the transactions contemplated hereby and the relationship established hereby even if the Custodian or the Depositary has been advised as to the possibility of the same and regardless of the form of the action.

8.6 The Custodian and/or Depositary shall be without liability to, and shall be indemnified by, the Fund for any action taken or omitted by it, whether pursuant to Instructions or otherwise, within the scope hereof if such act or omission was in good faith, without wilful misfeasance, fraud, bad faith, negligence or reckless disregard of their obligations and duties hereunder. In performing its obligations hereunder, the Custodian and/or Depositary may rely on the genuineness of any document, which it believes in good faith to have been validly executed by or on behalf of the Fund.

8.7 The Fund shall pay for and hold the Custodian and the Depositary harmless from any liability or loss resulting from the imposition or assessment of any taxes or other governmental charges, and any related expenses with respect to any transactions in or income from Securities.

8.8 Without limiting the foregoing, the Custodian and/or Depositary shall not be liable for any loss which results from: (i) the general risk of investing, or (ii) investing or holding Securities in a particular country including, but not limited to, losses resulting from malfunction, interruption of or error in the transmission of information caused by any machines or system or interruption of communication facilities, abnormal operating conditions, nationalisation, expropriation or other governmental actions, regulation of the banking or securities industry, currency restrictions, devaluations or fluctuations, and market conditions which prevent the orderly execution of Securities transactions or affect the value of the Securities.

8.9 The Fund shall indemnify and hold harmless the Custodian and the Depositary, their directors, officers, employees, affiliates and agents from and against any losses, expenses, liabilities, obligations, damages, penalties, judgements, actions, suits, taxation or costs howsoever imposed on, asserted against or incurred by them in the performance of the Custodian's and/or Depositary's obligations and duties hereunder; provided, however, that none of them shall be indemnified for their wilful misfeasance, fraud, bad faith, negligence or reckless disregard of their obligations and duties hereunder.

8.10 In the event that any document of title relating to a security is lost, the Custodian or Depositary shall use reasonable endeavours to obtain a duplicate copy if such a duplicate copy is available. When the person or body issuing such a duplicate copy requires an indemnity, the Fund agrees to provide to the Custodian or Depositary such counter-indemnity as the Custodian or Depositary may require, unless the loss is due to the Custodian's or Depositary's wilful misfeasance, fraud, bad faith, negligence or reckless disregard.

## 9 Fees and Expenses

9.1 In consideration of the services of the Custodian and/or Depositary hereunder the Fund shall pay the fees and expenses as set out in Schedule One hereto.

9.2 The Custodian and/or Depositary shall be entitled to charge to the Fund the fees of all agents, sub-custodians or any other third party appointed by the Custodian and/or Depositary pursuant to Clause 4.1 hereof together with all other reasonable costs, expenses and disbursements incurred by the Custodian and/or Depositary under this Agreement.

9.3 The Fund hereby authorises the Custodian to debit from the Account(s) all amounts due to the Custodian and/or Depositary pursuant to this Agreement.

9.4 In the event of any dispute as to any amounts payable to the Custodian and/or Depositary under this clause, an excerpt from the Custodian's records signed by the Custodian shall serve as prima facie evidence of any amounts due subject to rebuttal evidence produced by the Fund.





## 10 Non-Exclusivity

10.1 The provision of services by the Custodian and the Depositary hereunder shall not preclude the Custodian and the Depositary from providing similar services to any other third party and the Fund hereby agrees that the Custodian and/or Depositary will not be liable to account to the Fund for any profit earned from such third party transactions or by such third party.

10.2 Without prejudice to the generality of Clause 10.1 hereof, the Fund agrees that the Custodian may match any transactions made on behalf of the Fund with those made by the Custodian on behalf of itself or on behalf of any third party.

## 11 Confidentiality

Unless under a legal, regulatory or generally accepted obligation to do so, no party shall divulge or communicate to any person not authorised by any other to receive the same, with the exception of its advisers and accountants, any confidential information of any other party of which it is or shall hereafter become possessed, relating to the Securities or to the business of such other party.

## 12 Instructions

12.1 Receipt of Instructions by the Custodian and/or Depositary from the Fund may be deemed by the Custodian and/or Depositary to be proper and authorised instructions in respect of any of their obligations and duties hereunder.

12.2 A signed copy of a power of attorney executed by the authorised representative of the Fund authorising a third party to give instructions to the Custodian and/or Depositary may be accepted by the Custodian and/or Depositary as conclusive evidence of the authority of such a person to so act on behalf of the Fund. The Fund shall deliver or cause to be delivered to the Custodian and/or Depositary a certified copy of the signature of any person authorised to act as aforesaid.

12.3 Instructions by or on behalf of the Fund shall be conveyed to the Custodian and/or Depositary by the following methods only:

12.3.1 registered or recorded delivery mail or SWIFT transmission;

12.3.2 telephone or facsimile provided that the Fund has entered into an undertaking in the form as set out in Schedule Two hereof.

12.4 The Custodian and/or Depositary shall not be liable for any loss arising from:

12.4.1 non-delivery or delay of mail;

12.4.2 non-delivery or mistaken or incomplete transmission of facsimile, electronic transmission or authenticated SWIFT transmission;

12.4.3 misunderstanding or misinterpretation of instructions provided by telephone.

unless any such loss shall arise from wilful misfeasance, bad faith or negligence in the performance of the Custodian's and/or Depositary's obligations hereunder.

12.5 The Custodian and/or Depositary is not obliged to enquire into the validity, genuineness or accuracy of any Instruction properly received from the Fund.

12.6 The Fund hereby agrees that the Custodian may record conversations between the Custodian and the Fund or their representatives relating to the matters referred to herein.





**13    Service Level Agreement**

The Custodian and the Fund will enter into a Service Level Agreement, by signing the agreement set out in Schedule Three.

**14    Termination**

14.1    This Agreement shall continue in full force and effect until terminated by any party giving ninety (90) days' prior written notice to the others.

14.2    This Agreement shall terminate with immediate effect in any of the following circumstances:

14.2.1    a material breach by any party of its obligations under this Agreement which, if capable of being remedied, is not remedied within ten (10) days of receipt of notice;

14.2.2    the failure of the Fund to pay its debts to the Custodian and/or Depositary when they become due; or

14.2.3    the Fund or the Custodian and/or Depositary (i) requests to be or is declared bankrupt (*failliet*), (ii) requests to be or is granted a suspension of payments (*surséance van betaling*), (iii) if it is a credit institution, becomes subject to the emergency measures (*bijzondere voorzieningen*) as referred to in Chapter VII of the Credit System Supervision Act 1995 (*Wet Toezicht Effectenverkeer 1995*), (iv) any similar action is taken as referred to in (i) through (iii) under the laws of The Netherlands or the laws of any other jurisdiction, (v) the Fund or the Custodian and/or Depositary (as disappearing entity) will be merged with another entity, or (vi) a resolution is adopted to dissolve or liquidate the Fund or the Custodian and/or the Depositary.

14.3    If the Custodian or the Depositary or Fund is not aware of automatic termination pursuant to Clause 14.1 the automatic termination will be delayed until the day it becomes aware thereof.

14.4    On the termination of this Agreement howsoever occasioned the Custodian and Depositary shall forthwith deliver up to the Fund all Securities and documents of title thereto in their possession or control pursuant to this Agreement save that they shall not be required to make such delivery until full payment has been made by the Fund to the Custodian of all amounts due in respect of transactions which have not been settled at the date of termination and until full payment has been made for all outstanding fees and expenses due to the Custodian and Depositary for services provided under the terms of this Agreement.

**15    Assignment**

Neither the benefit nor burden of this Agreement may be assigned by any party save with the prior written consent of the others.

**16    Notices**

16.1    Any notice given under this Agreement shall be served:

16.1.1    by registered or recorded delivery mail or authenticated SWIFT transmission;

16.1.2    by telex or facsimile transmission;

16.1.3    by any other means which one party specifies by notice to the other.

16.2    Each party's address for the service of notice shall be the above-mentioned address or such other address as one party specifies by notice to the others.

16.3    A notice shall be deemed to have been given:

16.3.1    if it was served by post, upon receipt by the party to whom addressed;





16.3.2 if it was served in person, at the time of service;

16.3.3 if it was served by facsimile transmission or authenticated SWIFT transmission, at the time of receipt by the party to whom addressed.

## 17 Custodian's obligations secured

The Custodian guarantees to the Fund that the obligations of the Depositary vis-à-vis the Fund hereunder will be properly fulfilled.

## 18 Alteration of Provisions

18.1 No variation, amendment, discharge, waiver or discontinuance of any of the provisions of this Agreement shall be valid unless in writing and signed by all parties.

18.2 The Custodian may amend or vary any provision of this agreement by giving one week's notice to the Fund prior to the date that the variation or amendment is to take effect, in case such an amendment or variation is required due to changes in the law or regulations applicable to the Custodian and/or Depositary.

## 19 Online Access Agreement

In order to provide the Fund with direct, online, inquiry access to its Account(s) and to receive information on the Securities, the Custodian and the Fund will enter into an Online Access Agreement, by signing the agreement as set out in Schedule Four.

## 20 Severability

Every provision of this Agreement is intended to be severable and accordingly if any term or provision hereof is illegal or invalid for any reason whatsoever, such invalidity or illegality shall not affect the validity of the remainder of this Agreement.

## 21 General Conditions

The General Conditions of the Custodian regulating the relationship between the Fund and the Custodian, as amended from time to time, shall apply correspondingly to the relationship between the Fund and the Custodian and Depositary insofar as they do not differ from the terms of this Agreement. The Fund acknowledges having received a copy of such General Conditions.

## 22 Governing Law and Jurisdiction

22.1 This Agreement shall be governed by and construed in accordance with the laws of The Netherlands.

22.2 All parties agree that the courts of The Netherlands are to have jurisdiction to settle any disputes which may arise out of or in connection with this Agreement and that accordingly any suit, action or proceeding arising out of or in connection with this Agreement may be brought in such courts. Any proceedings or claims brought by the Fund against the Custodian and/or Depositary and/or its affiliates, arising out of or related to this Agreement shall be brought exclusively in Amsterdam, The Netherlands.

This Agreement supersedes and replaces the Brokerage and Custody Agreement dated July 17, 2003 between parties and which shall hereafter be of no force and effect.





IN WITNESS WHEREOF the parties hereto have executed this Agreement the day and year first above written.

..................................................
FAIRFIELD SENTRY LIMITED

..................................................
CITCO BANK NEDERLAND N.V.
DUBLIN BRANCH

..................................................
CITCO GLOBAL CUSTODY N.V.

CBN (DUBLIN) CUSTODIAN AGREEMENT
PAGE 10



# SCHEDULE ONE

## FEES AND EXPENSES

**Custody fee**
Custody fees will be charged quarterly at a rate of 0.01% (1 basis point) per annum of the average holdings over the preceding three months, with a minimum of US$ 1,250.00 per quarter.

**Transaction fee**
A transaction fee of US$ 25.00 for each transaction will be charged.

**Disbursements**
All disbursements and out-of-pocket expenses will be charged separately to the account of the Fund.





# SCHEDULE TWO

**Citco Bank Nederland N.V.**
**Dublin Branch**
Custom House Plaza Block 6
International Financial Services Centre
Dublin 1
Ireland

## INSTRUCTIONS BY TELEPHONE, TELEX OR FACSIMILE

In consideration of your agreeing as per our request to act upon unauthenticated telephone, telex or facsimile instructions purporting to be given by me/us or on my/our behalf in respect of our account(s) and/or other dealings with you, I/We hereby:

a) agree to indemnify you and to keep you indemnified from and against all claims, demands, liabilities, costs, charges, damages, losses, expenses and consequences of whatever nature which may be brought or preferred against you or that you may suffer, incur or sustain by reason or on account of your having so acted whether wrongly or mistakenly or not;

b) agree not to make any claim against you by reason of or on account of your having so acted or of your having acted wrongly or mistakenly;

c) confirm that such instructions, if accepted by you, result in agreements which are binding upon me/us;

d) agree that you may debit any account in my/our name(s) with any sums payable by me/us as a result of such instructions, and

e) agree that I/we will immediately send you written confirmation of any such instructions.

Date: July 3, 2006

FAIRFIELD SENTRY LIMITED
[Signatures]





# SCHEDULE THREE

## SERVICE LEVEL AGREEMENT

**THIS AGREEMENT** is made this 3rd day of July 2006

between

**Citco Bank Nederland N.V. Dublin Branch**      and      **Fairfield Sentry Limited**

address:  Custom House Plaza Block 3             address:  Wickhams Cay,
          International Financial Services Centre          Road Town, Tortola,
          Dublin 1                                         B.V.I.
          Ireland

phone  : 00 353 1 6367100                         phone  :
fax    : 00 353 1 6367102                         fax    :
Swift  : CITC IE 2D                               Swift  :

referred to herein as "Custodian"                 referred to herein as "Fund"

**Operative provision:**

All the terms of the Custodian Agreement shall apply to and form part of this Service Level Agreement as if the same were set out in extenso herein. In the event of a conflict between the conditions contained in the Custodian Agreement and the conditions contained in the Service Level Agreement the conditions contained in this Service Level Agreement shall prevail.

**1   Corporate Actions**

1.1  Pre Advice

On a best efforts basis, the Custodian will send to the Fund a pre-advice by fax detailing the event announced, provided the Custodian receives the information in time.

1.2  Dividends/distributions to the Fund's "Cash"-account

The Custodian will distribute the cash proceeds in accordance with the Fund's standing instructions for that security.

If the dividend or distribution is in the form of shares, the Custodian is unable to apply the "Cash" standing instruction and will credit the shares to the Fund's account. Only then is the Fund able to sell these shares by sending an instruction to the Custodian. The Custodian will credit the cash proceeds within three business days after receiving both the corporate action advice and the cash proceeds.

1.3  Dividends/distributions to the Fund's "Reinvest"-account

The Custodian will distribute the shares in accordance with the Fund's standing instructions for that security.

If the dividend or distribution is in the form of cash, the Custodian is unable to apply the "Reinvest" standing instruction and will credit the cash proceeds to the Fund's account. Only then is the Fund able to buy shares by sending an instruction to the Custodian. The Custodian will credit the shares within three business days of receiving the corporate action advice.





1.4 Tax Issues

US Withholding Tax

The Fund will provide to the Custodian the necessary documentation required to open the relevant treaty pool accounts. The Fund shall identify to the Custodian the appropriate treaty pool that the Security should be transacted in.

In the case of US Securities, the income code and exemption code should also be confirmed to the Fund when the corporate action is processed. The date for implementing this and the structure of the SWIFT messages is to be agreed upon between the Fund and the Custodian.

Withholding Tax (Other Jurisdictions)

Corporate event pre-advices and advices will give full details of taxes applicable.

The Custodian will provide assistance in terms of relief at source and reclaim of taxes withheld on income at the request of the Fund. The Custodian will not actively seek tax relief or tax reclaims.

1.5 Disclosure of Beneficial Ownership/Anti-Money Laundering Documentation

In compliance with the US Patriot Act the Custodian will disclose the identity of the Fund on request. Should disclosure of beneficial ownership be required, the Custodian will solicit from the Fund the appropriate information and deliver same to the Security. The Fund will need to provide the Custodian with the completed and authorized documentation prior to the Custodian deadline. In case the Fund cannot or will not disclose the identity of the beneficial owner, the Fund will inform the Custodian accordingly. The Custodian will not be held liable for any penalties imposed by the Security, on securities held by the Custodian, on behalf of our Fund, as a result of non-disclosure.

As regulations change additional requirements may be imposed by regulatory bodies and the Custodian will enforce same.

The Custodian will not be held liable for any loss resulting from lost opportunities if the Custodian does not receive the information on a timely manner from the Security / sub-custodian network.

## 2 Reconciliation

The Custodian will send each month two statements of holdings to the Fund. The first statement will be sent around the 2nd business day of the month, detailing the Fund's position in each security. The second statement will be sent around the 16th of the month, mentioning both the Fund's position and the latest prices available.

## 3 Cash movements

Cash movements will be booked through the appropriate account(s) and advised by fax or MT 950 the following day, with good value.

## 4 Amendments

Any provision of this Agreement may be amended only, if such amendment is in writing and signed by both the Custodian and the Fund.

## 5 Governing Law and Jurisdiction

This Agreement shall be governed by the laws of the Netherlands. The exclusive place of jurisdiction shall be Amsterdam, The Netherlands.





IN WITNESS WHEREOF the parties thereto have executed this Agreement the day and year first above written.

..................................................
**FAIRFIELD SENTRY LIMITED**

..................................................
**CITCO BANK NEDERLAND N.V.**
**DUBLIN BRANCH**



# SCHEDULE FOUR

ONLINE ACCESS AGREEMENT

**THIS AGREEMENT** is made this 3rd day of July 2006

between

| | | |
|---|---|---|
| **Citco Bank Nederland N.V. Dublin Branch** | and | **Fairfield Sentry Limited** |

address: Custom House Plaza Block 3
International Financial Services Centre
Dublin 1
Ireland

address: Wickhams Cay,
Road Town, Tortola,
B.V.I.

phone : 00 353 1 6367100
fax : 00 353 1 6367102
Swift : CITCIE2D

phone :
fax :
Swift :

referred to herein as "Custodian"

referred to herein as "Fund"

**Operative provision:**

All the terms of the Custodian Agreement shall apply to and form part of this Online Access Agreement as if the same were set out in extenso herein. In the event of a conflict between the conditions contained in the Custodian Agreement and the conditions contained in the Online Access Agreement, the conditions contained in this Online Access Agreement shall prevail.

**WHEREAS:**

(A) The Fund desires to access and use the Citco Funds Net on the Internet at www.citcofunds.net ("CFN") to receive information on Securities (the "Online Services"); and

(B) The Custodian is willing to provide such information through CFN on the terms and conditions set forth herein.

**NOW IT IS HEREBY AGREED** as follows:

1. Right to Access. The Custodian hereby grants Fund the right to access and use CFN in accordance with the terms and conditions of this Agreement to perform the Online Services.

2. Authorized Persons. Fund will select persons authorized to use the Online Services on its behalf ("Authorized Persons") and identify such persons to the Custodian. The Custodian will assign an identifier and password to each such Authorized Person. The Custodian will take all reasonable security measures, including means within CFN to limit access to Online Services only to Authorized Persons. Fund and Authorized Persons will maintain such identifiers and passwords in confidence. Fund will familiarize Authorized Persons with all of Fund's obligations under the Custodian Agreement, including this Online Access Agreement If any third party shall access Fund's account through CFN using the identifier and password of an Authorized Person, Fund will indemnify and hold harmless the Custodian against any liability, costs or damages arising out of claims by Fund or such third parties based upon or relating to such access.

3. Confidentiality and Ownership. Fund acknowledges that all information on CFN, including but not limited to the databases thereon, and the selection, co-ordination, and arrangement of the contents thereof (collectively, the "Information"), are trade secrets, proprietary to the Custodian. Fund agrees to keep such Information confidential and to utilize such Information solely for its own activities. Fund further agrees to take or cause to be taken all reasonable precautions to maintain the secrecy and confidentiality of such Information. Fund shall not disclose, and shall use reasonable efforts not to permit the disclosure of, any part of such Information to any other person. Fund will not use or





permit the use of CFN or any of the Information for any illegal purpose. Fund further acknowledges that CFN and all intellectual property rights therein, including the Information, are the property of the Custodian, and that Fund will have no right to reproduce, sell, license, or distribute any Information or any portion of CFN without the prior approval thereof by the Custodian.

4. Website System Changes. Fund acknowledges and agrees that, without prior notice and without the advice to or consent of Fund, the form and content of any display on CFN may be modified at any time and in any way, including terminating any information or service provided thereon.

5. No Online Investment Advice. Fund understands that the information available on CFN is not investment advice of any kind, nor does CFN purport to offer any opinion with respect to the nature, potential value or suitability of any particular Securities transaction or investment strategy.

6. Internet-Related Difficulties. Fund shall indemnify and hold the Custodian harmless from and against all claims, demands, liabilities, costs, charges, damages, losses, expenses and consequences of whatever nature that may be brought or preferred against the Custodian or that may be suffered, incurred or sustained by the Custodian by reason or on account of equipment failure, communication line failure, system failure, security failure on the Internet, unauthorized access, or theft, or any problem, technological or otherwise, that might prevent Fund from accessing CFN.

7. DISCLAIMER. ALL INFORMATION PROVIDED ON CFN IS "AS IS," WITHOUT WARRANTIES, CONDITIONS, OR REPRESENTATIONS OF ANY KIND, INCLUDING WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. FUND ACKNOWLEDGES AND AGREES THAT THERE IS NO ASSURANCE THAT INFORMATION ON CFN IS TIMELY, ACCURATE OR COMPLETE. IN PARTICULAR, BUT WITHOUT LIMITING THE FOREGOING, FUND UNDERSTANDS THAT THE CUSTODIAN AND THE DEPOSITARY DEPEND, AMONGST OTHER THINGS, ON THE SELLERS OF NON-READILY MARKETABLE SECURITIES OR OTHER THIRD PARTY PROVIDERS FOR MOST OR ALL OF THE INFORMATION CONCERNING THOSE SECURITIES AND THAT ERRORS ALSO OCCUR IN INFORMATION COMPILED OR PREPARED BY THE CUSTODIAN OR ITS AFFILIATES. FUND UNDERSTANDS THAT THERE WILL BE A DELAY BETWEEN THE TIME THAT THE CUSTODIAN AND THE DEPOSITARY RECEIVE CHANGES TO THIS INFORMATION AND THE CORRESPONDING CHANGE TO THE INFORMATION ON CFN, AND THAT THE CUSTODIAN DOES NOT VERIFY THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION. IN NO EVENT SHALL THE CUSTODIAN OR THE DEPOSITARY BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST DATA OR LOST PROFITS, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, ARISING OUT OF OR RELATING TO THIS AGREEMENT.

8. Amendments. Any provision of this Agreement may be amended only, if such amendment is in writing and signed by both the Custodian and the Fund.

9. Governing Law and Jurisdiction. This Agreement shall be governed by the laws of the Netherlands. The exclusive place of jurisdiction shall be Amsterdam, The Netherlands.

**IN WITNESS WHEREOF** the parties hereto have executed this Agreement the day and year first above written.

................................................
**FAIRFIELD SENTRY LIMITED**

................................................
**CITCO BANK NEDERLAND N.V.,
DUBLIN BRANCH**