UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ANWAR, et al.,                                          MASTER FILE NO.
                                                        09-CV-0118 (VM)
Plaintiffs,

       -against-

FAIRFIELD GREENWICH LIMITED, et al.,

Defendants.

This Document Relates To:  All Actions
------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE CITCO GROUP LIMITED'S MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT

**GILBRIDE, HELLER & BROWN, P.A.**
Lewis N. Brown
Amanda M. McGovern
One Biscayne Tower, 15th Floor
2 South Biscayne Blvd.
Miami, FL  33131
T:  305.358.3580
F:  305.374.1756
lbrown@ghblaw.com
amcgovern@ghblaw.com

**CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP**
Eliot Lauer (EL 5590)
Michael Moscato (MM 6321)
101 Park Avenue
New York, NY  10178
T:  212.696.6000
F:  212.697.1559
elauer@curtis.com
mmoscato@curtis.com

*Attorneys for The Citco Group Limited*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iiii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ..................................................................................................................... 6

I.  The SCAC Fails to State a Section 20(a) Claim Against CGL............................................ 6

    A.  The SCAC Fails to Plead a Predicate Violation of Section 10(b) or Rule 10b-5 Against CFSE and CCI.................................................................................7

    B.  The SCAC Does Not Adequately Plead the Element of Control...........................7

        1.  CGL Did Not Assert Actual Control Over the Purported Primary Violators........................................................................................ 8

        2.  The SCAC Fails to Allege that CGL Asserted Actual Control Over the Transactions in Question.................................................... 10

    C.  The SCAC Does Not Allege Culpable Participation ............................................11

II.  Plaintiffs' Common Law Claims Fail to Plead a Basis for Primary Liability Against CGL................................................................................................................... 12

III.  CGL Cannot Be Held Secondarily Liable for the Alleged Acts of Separate Corporate Entities ...................................................................................................... 14

    A.  Plaintiffs Fail to Allege an Alter Ego Theory of Liability Against CGL ...............................................................................................14

    B.  Plaintiffs Fail to Allege an Agency Theory of Liability Against CGL ...............................................................................................18

        1.  The Allegations in the SCAC Do Not Support an Actual  Do Not Support an Actual Agency Theory .................................. 18

            (a)  The SCAC Fails to Allege a Manifestation by the Principal or an Acceptance by the Agent ...................................................... 18

            (b)  The SCAC Fails to Allege Control .................................................. 19

2.      The Allegations in the SCAC Do Not Support an Apparent Agency
        Theory ....................................................................................................... 20

IV.  CGL Is Not Liable for the Alleged Acts of Pilgrim and Francoeur .................................. 21

V.   Many of Plaintiffs' Claims Are Time Barred ..................................................... 22

CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

**Case(s)** **Page(s)**

*Ackerman v. Nat'l Prop. Analysts, Inc.*,
  887 F. Supp. 494 (S.D.N.Y. 1997) ........................................................................ 23

*Aimis Art Corp. v. N. Trust Sec., Inc.*,
  641 F. Supp. 2d 314 (S.D.N.Y. 2009) ................................................................... 6, 7

*Allied Programs Corp. v. Puritan Ins. Co.*,
  592 F. Supp. 1274 (S.D.N.Y. 1984) ........................................................................ 16

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
  122 F.3d 130 (2d Cir. 1997) ........................................................................ 15

*Am. Protein Corp. v. AB Volvo*,
  844 F.2d 56 (2d Cir. 1988) ........................................................................ 15

*Appalachian Enters., Inc. v. ePayment Solutions Ltd.*,
  No. 01 Civ. 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ................................ 14

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ........................................................................ 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 3, 14

*Ciccone v. Hersh*,
  530 F. Supp. 2d 574 (S.D.N.Y. 2008), *aff'd*, 320 F. App'x 48, 50 (2d Cir. 2009) ................. 23

*Coppola v. Bear Sterns & Co., Inc.*,
  No. 1:02-CV-1581, 2005 WL 2648033 (N.D.N.Y. Oct. 17, 2005) ........................................ 20

*Diario El Pais, S.L. v. Nielson Co., (US), Inc.*,
  No. 07 Civ. 11295 (HB), 2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) .................................. 17

*Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*,
  2 A.D.3d 150 (1st Dep't 2003) ........................................................................ 15

*Fidenas AG v. Honeywell Inc.*,
  501 F. Supp. 1029 (S.D.N.Y. 1980) ........................................................................ 17

*Fletcher v. Atex, Inc.*,
  68 F. 3d 1451 (2d Cir. 1995) ........................................................................ 15, 17, 21

*Grondahl v. Merritt & Harris, Inc.*,
    964 F.2d 1290 (2d Cir. 1992)........................................................................ 22

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)............................................ 8, 10, 11, 22

*In re Elan Corp. Sec. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008)............................................................. 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    352 F. Supp. 2d 429 (S.D.N.Y. 2005)........................................................... 10

*In re Global Crossing, Ltd. Sec. Litig.*,
    No. 02 Civ. 910 (GEL), 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)................ 8, 9, 10, 11, 13

*In re Livent, Inc. Sec. Litig.*,
    78 F. Supp. 2d 194 (S.D.N.Y. 1999)............................................................... 8

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)........................................................ 7, 11

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89 (2d Cir. 2007)............................................................................ 3

*In re Parmalat Sec. Litig.*,
    501 F. Supp. 2d 560 (S.D.N.Y. 2007)....................................................... 19, 20

*In re Shulman Transp. Enters., Inc.*,
    744 F.2d 293 (2d Cir. 1984)......................................................................... 20

*Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ............................................................................. 5

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006).......................................................................... 13

*Levinson v. Primedia Inc.*,
    No. 02 Civ. 2222 (DAB), 2007 WL 2298406 (S.D.N.Y. Aug. 9, 2007) ................. 17

*MAG Portfolio Consult, GMBH v. Merlin Biomed Group, LLC*,
    268 F.3d 58 (2d Cir. 2001)....................................................................... 16, 17

*Manley v. AmBase Corp.*,
    337 F.3d 237 (2d Cir. 2003).......................................................................... 18

*Maung Ng We & Massive Atl. Ltd. v. Merrill Lynch & Co., Inc.*,
 No. 99 Civ. 9687 (CSH), 2000 WL 1159835, (S.D.N.Y. Aug. 15, 2000) ......................... 19, 20

*Medina v. Bauer*,
 No. 02 Civ. 8837 (DC), 2004 WL 136636, (S.D.N.Y.  Jan. 27, 2004) ..................................... 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
 No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ................................. 9, 14

*MM Ariz. Holdings LLC v. Bonnano*,
 No. 08 Civ. 5353 (CM), 2008 WL 5203691 (S.D.N.Y. Dec 10, 2008) ................................... 15

*Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*,
 476 F. Supp. 2d 414 (S.D.N.Y 2007) ........................................................................... 15, 16, 17

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*,
 No. 03 Civ. 0613 (GBD), 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ............................. 18, 19

*P. Stolz Family P'ship v. Daum*,
 355 F.3d 92 (2d Cir. 2004) ....................................................................................................... 22

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
 446 F. Supp. 2d 163 (S.D.N.Y. 2006) ........................................................................................ 7

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004) ...................................................................................................... 7

*S.E.C. v. First Jersey Sec., Inc.*,
 101 F.3d 1450 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997)) ............................................ 6

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
 250 F.3d 87 (2d Cir. 2001) ......................................................................................................... 9

*Truglia v. KFC Corp.*,
 692 F. Supp. 271 (S.D.N.Y. 1988) ........................................................................................... 16

*United States v. Bestfoods*,
 524 U.S. 51 (1998) ................................................................................................................... 21

*Williams v. McAllister Bros. Inc.*,
 534 F.2d 19 (2d Cir. 1976) ....................................................................................................... 14

*Zigabarra v. Falk*,
 143 A.D.2d 901 (2d Dep't 1998) .............................................................................................. 21

**Statutes and Rules** **Page(s)**

Fed R. Civ. P. 8(a) ........................................................................ 2, 14, 15

Fed R. Civ. P. 9(b) ........................................................................ 6, 7, 12

Fed. R. Civ. P. 12(b)(6)..................................................................... 1, 3

Local Rule 37.2 ..................................................................................... 1

15 U.S.C. § 78(u)-4(b)(1) ...................................................................... 6

28 U.S.C. § 1658 ................................................................................. 22

CPLR § 214(4)...................................................................................... 22

CPLR § 202........................................................................................... 23

Private Securities Litigation Reform Act of 1995 ("PSLRA")............... 11, 12

Section 20(a) ...................................................... 2, 4, 6, 7, 8, 9, 10, 11, 12

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78(j) ............... 2, 7, 11, 12, 22

Rule 10b-5, 17 CFR §240.10b-5.......................................... 2, 7, 11, 12, 22

Defendant, The Citco Group Limited ("CGL"), moves to dismiss with prejudice the claims asserted against it in the Second Consolidated Amended Complaint ("SCAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6), and Local Civil Rule 37.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

## PRELIMINARY STATEMENT

This action commenced with the filing of three separate putative class action complaints in December 2008 and January 2009, none of which named CGL as a Defendant.[1] These separate actions, and subsequently filed actions arising out of the same operative facts, were consolidated. On April 24, 2009, Interim Co-Lead Counsel for Plaintiffs filed a single Consolidated Amended Complaint ("CAC"), again without asserting any claims against CGL. It was not until the filing of the SCAC, nearly ten months after the initiation of these proceedings, that Interim Co-Lead Counsel made their first attempt to add CGL as a defendant.

The claims against CGL in the SCAC are an obvious afterthought – part and parcel of a pleading indiscriminately directed at any financial source even remotely associated with the four investment funds in which Plaintiffs allegedly invested (the "Fairfield Funds").[2] The SCAC adds CGL despite the lack of any connection between CGL and the alleged acts that led to Plaintiffs' purported losses. Indeed, there is not a single allegation in the SCAC that, at any time, CGL: (i) had any relationship with the Fairfield Funds or with Plaintiffs; (ii) provided any services to the Fairfield Funds or to Plaintiffs; (iii) owed any duty to the Fairfield Funds or to Plaintiffs; (iv)

---

[1]    *Anwar v. Fairfield Greenwich Group*, No. 09 Civ. 0118, was filed in New York state court on December 19, 2008, and removed to the United States District Court, Southern District of New York, on January 7, 2009. *Pac. W. Health Med. Ctr. Inc. Employees Ret. Trust v. Fairfield Greenwich Group*, No. 09 Civ. 0134, was filed on January 8, 2009. *Inter-American Trust v. Fairfield Greenwich Group*, No. 09 Civ. 0301, was filed on January 12, 2009.

[2]    The four Fairfield Funds are Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma"), Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P.

made any representations to the Fairfield Funds or to Plaintiffs; or (v) entered into any agreements with the Fairfield Funds or with Plaintiffs. Not surprisingly, Plaintiffs' federal securities claim and common state law claims against CGL are unsustainable as a matter of law.

With respect to Plaintiffs' claim under section 20(a) of the Securities Exchange Act of 1934 (Count 27), Plaintiffs solely rely on generic, conclusory recitations regarding CGL's corporate relationship with Citco Fund Services (Europe) B.V. ("CFSE"), the administrator of the Fairfield Funds, and Citco (Canada) Inc. ("CCI"), its sub-administrator, in an effort to allege that CGL should be held liable as the control person of CFSE and CCI. Such allegations fail to meet the Second Circuit's requirement that Plaintiffs allege sufficient facts demonstrating that CGL actually controlled the actions of CFSE and CCI with respect to the transactions at issue and that CGL culpably participated in any alleged wrongdoing. Further, Plaintiffs fail to state a claim for primary liability under section 10(b) or Rule 10b-5 of the Securities Exchange Act of 1934 against CFSE and CCI (Count 26). Accordingly, Plaintiffs cannot as a matter of law state a section 20(a) claim against CGL.

Nor do any of Plaintiffs' common law claims against CGL have merit. (*See* Counts 20-25, 28, and 32-33). Each of Plaintiffs' common law claims against CGL fails to allege that CGL owed Plaintiffs *a single duty* (contractual or otherwise) or performed *a specific act*. There is thus no basis whatsoever to impose primary liability against CGL with respect to those counts. Undeterred, Plaintiffs resort to the improper pleading stratagem of lumping CGL with several other separate and distinct corporate entities that the SCAC defines as "Citco." (SCAC ¶ 162; Counts 20-25, 32.) This violation of Rule 8(a) not only constitutes a transparent attempt to obscure the lack of any factual basis for Plaintiffs' claims against CGL, it also renders the SCAC unintelligible and unanswerable as to CGL. The SCAC should be dismissed on that basis alone.

Plaintiffs also fail to establish any theory of secondary liability against CGL through their conclusory, and wholly unsupported, allegation that each of the Defendants that has a corporate affiliation with CGL – namely CFSE, CCI, Citco Global Custody N.V. ("CGC"), Citco Bank Nederland N.V. Dublin Branch ("CBN") and Citco Fund Services (Bermuda) Limited ("CFSB") – acted "as the agent and alter ego" of CGL. (SCAC ¶ 156.) Because the SCAC does not identify any facts that would satisfy the elements of either a veil piercing theory or an agency theory of liability, Plaintiffs' vicarious liability theories fail as a matter of law.

Finally, Plaintiffs' attempt to hold CGL, as well as the "other Citco defendants," liable for the actions of Defendants Brian Francoeur and Ian Pilgrim, based upon their limited role as independent directors of Defendant Fairfield Greenwich (Bermuda) Limited ("FGBL"), is also baseless. (*Id.* ¶ 564.) There is not a single fact alleged in the SCAC from which this Court could infer the existence of an agency relationship between CGL and either Francoeur or Pilgrim.

For all the foregoing reasons, and as more fully set forth below, the Court should enter an order dismissing Counts 20-25, 27, 28, 32, and 33 as to CGL.

## **STATEMENT OF FACTS**[3]

Plaintiffs invested in the Fairfield Funds, which in turn invested, either directly or indirectly, almost exclusively with Madoff and his securities firm, Bernard L. Madoff Investment Securities LLC ("BLMIS"). (*Id.* ¶¶ 2, 175.) In this putative class action lawsuit, Plaintiffs seek to recover their purported investment losses from the Fairfield Funds' various service providers,

---

[3]    In deciding this motion to dismiss, the SCAC must provide the grounds on which Plaintiffs' claims rest through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that conclusory allegations are insufficient to satisfy the pleading standards of Rule 8(a)). In other words, to survive a 12(b)(6) motion to dismiss, the allegations in the SCAC must meet the standard of "plausibility." *Id.* In addition, the Court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (alteration in original) (citation omitted).

including the Fairfield Funds' investment managers, investment advisors, auditors, administrators, and custodians. CGL, however, was not one of those service providers. In the SCAC, Plaintiffs allege no facts that suggest that CGL had anything to do with the Fairfield Funds, let alone facts suggesting CGL caused Plaintiffs' damages.

Nevertheless, Plaintiffs have sued CGL for allegedly violating section 20(a) of the Securities Exchange Act of 1934, as well as nine common law causes of action: Third Party Beneficiary Breach of Contract against "Citco" (Count 20); Breach of Fiduciary Duty against "Citco" (Count 21); Gross Negligence against "Citco" (Count 22); Negligence against "Citco" (Count 23); Aiding and Abetting Breach of Fiduciary Duty against "Citco" (Count 24); Aiding and Abetting Fraud against "Citco" (Count 25); Negligent Misrepresentation against CFSE, CCI, and CGL (Count 28); Breach of Fiduciary Duty against Francoeur, Pilgrim, and "Citco" (Count 32); and Unjust Enrichment against "All Defendants" (Count 33).

Plaintiffs base their claims in large part on the legal fiction that CGL and its affiliated companies should be treated as one entity, referred to in the SCAC as "Citco." In reality, CGL, CFSE, CCI, CBN, CGC, and CFSB are separate and distinct legal entities. As acknowledged in the SCAC: CGL is a Cayman Islands corporation; CFSE is incorporated in The Netherlands (SCAC ¶ 157); CCI is a corporation organized under the laws of Canada with its principal place of business in Toronto, Ontario (*Id.* ¶ 158); CBN is incorporated in The Netherlands and is registered as a branch of an external company in the Republic of Ireland (*Id.* ¶ 160); and CGC is incorporated in The Netherlands. (*Id.* ¶ 159.)

The SCAC alleges that, pursuant to various contractual relationships to which CGL was **not** a party, CFSE, CCI, CBN and CGC provided specific services for the Fairfield Funds. *(Id.* ¶¶ 327-331.) For example, CFSE, not CGL, entered into Administration Agreements with the

Fairfield Funds, pursuant to which CFSE served as the administrator, registrar, and transfer agent for Fairfield Sentry and Fairfield Sigma since July 2003, and as the administrator for Greenwich Sentry and Greenwich Sentry Partners since August 2006. (*Id.* ¶¶ 157, 327-329; CFSE Decl., Exs. A-D.)[4] CFSE delegated certain administrative responsibilities to CCI. (SCAC ¶ 158.) The Administration Agreements with the Fairfield Funds make it clear that CGL was not a party to the Administration Agreements and that CGL would not have received fees from the Fairfield Funds based on those agreements. (CFSE Decl., Exs. A-D.) The PPMs, in discussing and disclosing the identity and role of the administrator, do not mention CGL at all. (CFSE Decl., Ex. E.) There are no allegations that CFSE or CCI delegated any responsibilities to CGL, and the SCAC concedes that CFSE and CCI were the "contracting companies." (SCAC ¶ 327.)

Similarly, the SCAC alleges that CGC, not CGL, served as the custodian for Fairfield Sigma since 2003 pursuant to an agreement between CBN, CGC, and the Fairfield Funds (the "Sigma Agreement"). (*Id.* ¶¶ 330-331.) Fairfield Sentry and Fairfield Sigma maintained bank accounts with CBN, not CGL, since 2003. (*Id.* ¶ 160.) In 2006, CBN replaced CGC as custodian for Fairfield Sentry, and CGC became Fairfield Sentry's depositary pursuant to an agreement between CBN, CGC, and Fairfield Sentry (the "Sentry Agreement") (*Id.* ¶¶ 159-160) (the Sigma Agreement and Sentry Agreement are collectively referred to as the "Custody

---

[4]    In support of their Motion to Dismiss, filed contemporaneously herewith, CFSE and CCI have submitted the Declaration of Amanda M. McGovern, which attaches copies of the Administration Agreements between CFSE and the Fairfield Funds (the "Administration Agreements") and relevant portions of the Private or Confidential Placement Memoranda regarding the Fairfield Funds ("PPMs"). Exhibits to that Declaration will be referred to herein as "CFSE Decl., Ex. __." Materials incorporated by reference and integral to the SCAC may be, and should be, considered in deciding a motion to dismiss. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). Moreover, where, as here, integral documents contradict the allegations of the SCAC, the documents control. *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 206 (S.D.N.Y. 2008).

Agreements").[5]  Plaintiffs acknowledge that, with respect to the custodian, banking and depositary services, CGC and CBN were the "contracting parties."  (*Id.* ¶ 330.)  The Custody Agreements themselves make clear that CGL was not a party to the Custody Agreements, would not be performing services under the Custody Agreements, and would not have received fees based on the Custody Agreements.  (CBN Decl., Exs. A-B.)  Likewise, the PPMs make no mention of CGL in connection with these custodial and banking services.  (CFSE Decl., Ex. E.)

Finally, the SCAC seeks to hold CGL secondarily liable for the alleged acts of Citco Fund Services (Bermuda) Limited ("CFSB"), which is a corporation organized under the laws of Bermuda with its principal place of business in Hamilton, Bermuda (SCAC ¶ 161), and two of its former employees, Brian Francoeur and Ian Pilgrim.  The SCAC does not allege any facts to suggest that CFSB or its former employees (Francoeur and Pilgrim) served as agents of CGL.

## ARGUMENT

### I.    The SCAC Fails to State a Section 20(a) Claim Against CGL

To state a cause of action for securities fraud under section 20(a), Plaintiffs must assert facts showing: (1) "a primary violation by the controlled person"; (2) "control of the primary violator by the targeted defendant"; and (3) that "the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated."  *Aimis Art Corp. v. N. Trust Sec., Inc.*, 641 F. Supp. 2d 314, 319 (S.D.N.Y. 2009) (quoting *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997)).  Under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78(u)-4(b)(1) ("PLSRA"), a plaintiff bringing a section 20(a) claim must plead facts supporting that claim with particularity.

---

[5]    In support of CBN and CGC's Motion to Dismiss, filed contemporaneously herewith, they have submitted the Declaration of Amanda M. McGovern, which attaches copies of the Custody Agreements.  Exhibits to that Declaration will be referred to herein as "CBN Decl., Ex. __."

*See In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (holding

that a securities fraud claim must be pled with particularity under Rule 9(b) and the PLSRA).[6]

Because Plaintiffs fail to allege facts demonstrating a predicate violation of section 10(b) or Rule

10b-5 by CFSE or CCI, or control or culpable participation by CGL, the section 20(a) claim

fails.

### A. The SCAC Fails to Plead a Predicate Violation of Section 10(b) or Rule 10b-5 Against CFSE and CCI

Liability for a violation of section 20(a) first requires a primary violation of the securities

laws. In this regard, the SCAC alleges that CFSE and CCI, as the administrator and sub-

administrator of the Fairfield Funds, respectively, issued inflated NAV statements on behalf of

the Fairfield Funds with intent to defraud Plaintiffs. (SCAC ¶¶ 523, 528.) As demonstrated in

section I of CFSE and CCI's Memorandum of Law in Support of Their Motion to Dismiss,

which is incorporated by reference herein, the SCAC fails to state a claim of primary liability

against CFSE and CCI under section 10(b) or Rule 10b-5. As a result, Plaintiffs' claim under

section 20(a) also fails. *See Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004).

### B. The SCAC Does Not Adequately Plead the Element of Control

To impose liability on a control person, a plaintiff "must show both that the defendant

possessed the power to direct or cause the direction of the management and policies of a person,

whether through ownership of voting securities, by contract, or otherwise, and that defendant had

---

[6] `*In re Livent* also recognized the Second Circuit's requirement that a plaintiff must allege culpable participation as part of a prima facie case under section 20(a). *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 416 (citing *S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472 (2d Cir. 1996)); *see also Aimis Art Corp.,* 641 F. Supp. 2d at 319 (culpable participation is a required element of a section 20(a) claim). The minority view in this District does not recognize such a requirement. *See, e.g., Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 446 F. Supp. 2d 163, 190-91 (S.D.N.Y. 2006) (Scheindlin, J.).

actual control over the transaction in question." *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005); *see also In re Alstom SA Sec. Litig.,* 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (recognizing that a plaintiff must plead "actual control over the primary violator" and "actual control over the **transaction** in question") (emphasis in original).

"Actual control is essential to control person liability." *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999). The exercise of influence, without the power to direct or cause the direction of management and policies, is not enough to establish control for purposes of section 20(a). *In re Alstom SA Sec. Litig.,* 406 F. Supp. 2d at 487. As demonstrated below, the SCAC fails to establish that CGL controlled CFSE and CCI.

### 1. CGL Did Not Assert Actual Control Over the Purported Primary Violators

In the SCAC, Plaintiffs' allegations of control over CFSE and CCI are set forth in wholly conclusory fashion. For example, the section 20(a) claim (Count 27) provides at paragraph 528:

> Citco Group acted as a controlling person of Citco Fund Services and Citco Canada (for purposes of this Count, "Citco Defendants") within the meaning of [s]ection 20(a) of the Exchange Act as alleged herein. By virtue of its high level position, control, participation in and/or awareness of the operations of the Citco Defendants, and/or intimate knowledge of the duties, obligations and representations of the Citco Defendants to Plaintiffs, Citco Group had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Citco Defendants, including the content and dissemination of the statements that were false and misleading. Citco Group had the ability to prevent the issuance of the false statements or cause the statements to be corrected or not issued.

(SCAC ¶ 528.) This count goes on to blithely allege that CGL "had direct and supervisory involvement and control in the day-to-day operations of" CFSE and CCI. (*Id.* ¶ 529.)

While lengthy, these paragraphs are devoid of any allegations of fact and thus fall far short of meeting the test for establishing actual control under section 20(a). To establish actual control, a plaintiff must allege specific facts demonstrating how the alleged controlling person controlled the affiliates. *In re Global Crossing Sec. Litig.,* 2005 WL 1907005, at *12 (conclusory allegations of control are insufficient as a matter of law to state a section 20(a) claim). Clearly, the boilerplate allegations of paragraphs 528 and 529 do not meet that standard. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 102 (2d Cir. 2001) (holding that a plaintiff must do more than make conclusory allegations of control status to establish a section 20(a) claim); *In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475 (SHS), 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) (to allege control status, plaintiffs must do more than just "restate" the legal standard for control person liability).

Similarly, the SCAC alleges that CGL controls "Citco's Fund Services division" through "a director appointed by the Citco Group's executive committee" who "acts on behalf of the Citco Group." (SCAC ¶ 321.) This allegation is insufficient as a matter of law to establish actual control over CFSE and CCI.[7] There is not a single allegation of fact in the SCAC demonstrating ***how*** CGL purportedly controlled the so-called "division director," or ***how*** that "division director" supposedly controlled CFSE or CCI, beyond the conclusory allegation that he was appointed to oversee the daily operations of its divisions. *See In re Global Crossing Sec.*

---

[7]    As discussed in greater detail in section II, *infra*, paragraph 321 is an example of the confusion created by Plaintiffs' dependence on group pleading. Paragraph 321 refers to "Citco's Fund Services division," a hybrid of two previously defined terms. (*Id.* ¶ 321.) Specifically, "Citco" is defined as CGL, CFSE, CCI, CGC, CFSB and CBN, and "Citco Fund Services" is defined as CFSE. (*See* SCAC Glossary of Defined Terms, at p. viii.) As a result, paragraph 321 does not indicate which defendant (or defendants) is (or are) implicated. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *15 (S.D.N.Y. Mar. 15, 1994) (recognizing the dangers of group pleading where the plaintiffs' casual reference to an individual defendant was in conflict with a defined term encompassing four defendants).

*Litig.,* 2005 WL 1907005, at *13 (dismissing section 20(a) counts because the plaintiffs failed to allege (i) how the alleged controlling person controlled each appointed director, and (ii) how each appointed director possessed the power to direct or cause the direction of the management of the primary violator); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 488 n.51 (plaintiff must allege more than director status to establish actual control); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458-59 (S.D.N.Y. 2005) (three out of nine directors affect, but do not direct, the alleged controlled person). Accordingly, these allegations fail to satisfy the control element of a section 20(a) claim.

### 2. The SCAC Fails to Allege that CGL Asserted Actual Control Over the Transactions in Question

Plaintiffs also fail to set forth a single fact demonstrating that CGL controlled the transactions that are alleged to constitute CFSE's and CCI's alleged Rule 10b-5 violation; namely, the preparation and dissemination of the allegedly inflated NAV statements for the Fairfield Funds. (SCAC ¶¶ 523, 528.) As this Court explained in *In re Alstom*, a plaintiff must not only plead facts demonstrating that the alleged control person had control over the alleged primary violators, but also concrete facts to establish control over the transaction that constituted the primary violation. *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 487 (a plaintiff must establish that the alleged control person had control over the transaction at issue).

Nowhere do Plaintiffs allege that CGL in any way participated in – much less controlled – the preparation and dissemination of the NAV statements issued by CFSE and CCI. Rather, the SCAC alleges that CFSE and CCI – not CGL – prepared the NAV statements for the Fairfield Funds pursuant to the terms of the Administration Agreements. (SCAC ¶ 523; CFSE Decl., Exs. A-D.) Accordingly, since Plaintiffs have failed to make a single allegation that CGL controlled the transactions at issue, Plaintiffs' section 20(a) claim fails as a matter of law.

## C.     The SCAC Does Not Allege Culpable Participation

In order to state a claim under section 20(a), Plaintiffs must allege facts demonstrating that CGL was in some meaningful sense a culpable participant in the alleged fraud.  *See In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d at 416 (holding that culpable participation is a necessary pleading requirement for a section 20(a) claim).  Because the PSLRA's heightened pleading requirements apply, in order to plead culpable participation Plaintiffs must plead with particularity "facts giving rise to a strong inference that the defendant acted with the requisite state of mind," *i.e.*, scienter.  *In re Alstom SA Sec. Litig.,* 406 F. Supp. 2d at 491 (quoting 15 U.S.C. § 78u-4(b)(2)).  Yet Plaintiffs do not even come close to meeting that requirement.  Indeed, the SCAC does not allege a single fact demonstrating that CGL was a culpable participant in the alleged section 10(b) violations.

A complaint that does not contain "detailed allegations regarding the state of mind of the 'control person' must be dismissed."  *In re Global Crossing Sec. Litig.,* 2005 WL 1907005, at *12.  As this Court explained in *In re Alstom*:

> Plaintiffs also have not alleged culpable participation by Alcatel in the ATI Fraud.  The Section 20(a) Count of the Complaint does not even mention culpable participation, presumably by reason of Plaintiffs' view that such pleading was not required.  In their briefs, Plaintiffs so argue, but allege that if culpable participation were demanded, Plaintiffs sufficiently alleged it by pleading control.  This allegation is not enough to plead culpable participation under the standard articulated above.  Plaintiffs have not alleged any facts supporting a strong inference of any extreme conduct that even approximates recklessness by Alcatel in connection with the ATI Fraud.

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 493 (citations omitted).

Here, as it pertains to the essential element of culpable participation, the SCAC is no different than the complaint found to be deficient in *In re Alstom*.  Specifically, the SCAC "does

not even mention culpable participation" let alone allege any facts indicating that CGL, or any director allegedly "appointed by [CGL's] executive committee" (SCAC ¶ 321), culpably participated in the alleged section 10(b) violations. *Id.*

In sum, there are no allegations that CGL participated, much less culpably participated, in the alleged primary violation of CFSE and CCI. Because Plaintiffs have failed to meet the requirements of a section 20(a) claim under the stringent standards of the PSLRA and Federal Rule of Civil Procedure 9(b), the section 20(a) claim should be dismissed as a matter of law.

## II. Plaintiffs' Common Law Claims Fail to Plead a Basis for Primary Liability Against CGL

To the extent that the common law claims set forth in the SCAC can be construed as attempting to hold CGL primarily liable, such claims should be dismissed because they fail to put CGL on notice as to what it is alleged to have done wrong. In the SCAC, Plaintiffs define the term "Citco" to include CGL, CFSE, CCI, CBN, CGC and CFSB. Despite recognizing that entities such as CFSE, CBN, and CGC entered into separate contracts with the Fairfield Funds, and provided different types of services, and despite the irrefutable fact that CGL was not a party to any of those contracts, Plaintiffs repeatedly refer to all six corporations through the SCAC-defined term "Citco." Thus, Plaintiffs improperly suggest that each separate company had the same duties (contractual or otherwise) and that each engaged in the same alleged conduct.

Here, Plaintiffs' efforts to compensate for the lack of factual allegations against CGL through the repeated use of the term "Citco" result in contradictions that render the SCAC confusing and unanswerable. For example, in their third-party beneficiary breach of contract claim, Plaintiffs refer to and rely upon the Administration Agreements for the Fairfield Funds and the Custodian Agreements for Fairfield Sentry and Fairfield Sigma, alleging that: "***Citco*** breached the Administration Agreements with the [Fairfield] Funds by, among other omissions,

grossly failing to discharge its responsibility to calculate accurately the [Fairfield] Funds' NAVs. *Citco* is liable to Plaintiffs as third party beneficiaries on those contracts." (SCAC ¶ 484; emphasis added.) From the face of the Administration Agreements and Custody Agreements and Plaintiffs' own allegations, however, it is clear that CGL is *not* a party to either the Administration Agreements or the Custody Agreements and therefore cannot be liable for any alleged breaches. (*Id.* ¶¶ 327, 330, 480; *see also* CFSE Decl., Exs. A-D; CBN Decl., Exs. A-B.)

Similarly, in the breach of fiduciary duty count against "Citco," Plaintiffs outline the purported duties of CFSE, CCI, CBN and CGC, but then conclude that *"Citco* is liable to Plaintiffs." (SCAC ¶ 500; emphasis added.) The same problems exist in the negligence, gross negligence, aiding and abetting breach of fiduciary duty, negligent misrepresentation, aiding and abetting fraud, section 20(a), and breach of fiduciary duty claims against Pilgrim, Francoeur and "Citco."[8] The claim for unjust enrichment is similarly deficient because Plaintiffs seek to recover "fees" against "All Defendants," yet allege that "Citco" received fees. (*Id.* ¶¶ 343, 567.) The SCAC contains no allegation that CGL collected any fees for any services whatsoever.

These generic references to "Citco," which are replete throughout the SCAC, constitute nothing more than an attempt to obscure the fact that CGL had nothing to do with the Fairfield Funds or with the Plaintiffs.[9] Courts have consistently held that the practice of "lumping"

---

[8]  The aiding and abetting fraud and, as discussed in section I *supra*, section 20(a) claims are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 292-93 (2d Cir. 2006) (applying Rule 9(b) to a claim for aiding and abetting fraud); *In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *5 (applying Rule 9(b) to a claim for section 20(a) liability).

[9]  This pleading defect is not cured by the "Glossary of Defined Terms" contained in the SCAC, wherein Plaintiffs define CGL, CFSE, CCI, CGC, CFSB, and CBN as "Citco." Plaintiffs specifically acknowledge in the SCAC that these six Defendants are separate corporate entities (SCAC ¶¶ 156-161), requiring each to be put on notice as to the claims against it.

defendants together and failing to distinguish their conduct constitutes a failure to comply with Rule 8(a), requiring dismissal. *See, e.g.*, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (Rule 8(a) requires the plaintiff to plead a factual basis to distinguish the conduct of each defendant); *Appalachian Enters., Inc. v. ePayment Solutions Ltd.*, No. 01 Civ. 11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004); *Medina v. Bauer*, No. 02 Civ. 8837 (DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004); *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 1994 WL 88129, at *15. Accordingly, because Plaintiffs fail to articulate what alleged acts or duties are attributable to CGL by improperly lumping CGL with other, separate corporate entities (*i.e.,* CFSE, CCI, CGC, CBN and CFSB), the SCAC fails to state a claim for primary liability against CGL and should be dismissed.

### III.    CGL Cannot Be Held Secondarily Liable for the Alleged Acts of Separate Corporate Entities

Contrary to the well-established "presumption of separateness" afforded to related corporations, *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 22 (2d Cir. 1976), Plaintiffs would have this Court impose liability upon CGL based solely upon its alleged corporate affiliation with CFSE, CCI, CGC, CBN and CFSB. However, as demonstrated below, Plaintiffs' boilerplate, conclusory allegations, which are totally bereft of any meaningful detail, clearly fail to establish any of the elements of an alter ego or agency theory under applicable law. The claims against CGL should therefore be dismissed.

#### A.    Plaintiffs Fail to Allege an Alter Ego Theory of Liability Against CGL

In asserting the various common law claims against CGL (Counts 20-25, 28, 32-33), Plaintiffs try to establish a vicarious liability theory by alleging in conclusory fashion that CFSE, CCI, CGC, CBN, and CFSB acted as the "alter ego" of CGL. (SCAC ¶¶ 156, 323.) This bald assertion is entirely insufficient to establish an alter ego theory of liability under New York law.

*Bell Atl. Corp.*, 550 U.S. at 555 (holding that conclusory allegations are insufficient to satisfy the pleading standards of Rule 8(a)); *MM Ariz. Holdings LLC v. Bonnano*, No. 08 Civ. 5353 (CM), 2008 WL 5203691, at *2 (S.D.N.Y. Dec 10, 2008) (applying *Twombly* Rule 8(a) standards to an alter ego theory).

A party seeking to hold a corporate entity liable for the acts of its alleged affiliated entities using an alter ego theory must plead and prove that the parent exercised "complete domination" over the affiliated entities "with respect to the transaction at issue," such that the affiliated entities had "at the time no separate will of [their] own." *Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.,* 476 F. Supp. 2d 414, 421 (S.D.N.Y 2007) (citing *Am. Fuel Corp. v. Utah Energy Dev. Co*., 122 F.3d 130, 134 (2d Cir. 1997)). In addition, "such domination must have been used to 'commit fraud or wrong' against plaintiff, which proximately caused plaintiff's injury." *Id.* at 422 (citing *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988)). There are no facts in the SCAC that support any of these elements.[10]

Plaintiffs fail to allege any facts demonstrating the "complete domination" element. In considering whether a parent exercised "complete domination" over its affiliated entities, courts consider such facts as: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion

---

[10]  Because CGL is incorporated in the Cayman Islands, the law of the Cayman Islands controls the question of whether Plaintiffs have alleged facts sufficient to pierce the corporate veil. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). To establish the law of the Cayman Islands, CGL submits the Declaration of Attorney Melanie Crinis on Relevant Principles of the Law of the Cayman Islands, which is attached as Exhibit A to the Declaration of Amanda M. McGovern. Because the application of Cayman Islands law or New York law compels the same result – the claims should be dismissed – the Court may apply New York law to Plaintiffs' claims. *See Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*, 2 A.D.3d 150, 151 (1st Dep't 2003) (if no conflict exists between the laws of competing jurisdictions, the court should apply the law of the forum state).

shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between entities. *Mouawad Nat'l Co.*, 476 F. Supp. 2d at 421-22 (citing *MAG Portfolio Consult, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001)).

The SCAC is completely devoid of a single allegation that would satisfy the factors enumerated in *Mouawad.* For example, the SCAC contains no allegations that the corporate formalities between CGL and its alleged affiliates were disregarded, that the alleged affiliates did not have their own management and staff, that the alleged affiliates were undercapitalized, or that there was an overlap of officers, directors and personnel.

Instead, Plaintiffs appear to rely on allegations that CGL controlled its affiliated companies through a "division director[]" hired to "oversee" the operations of "Citco's Fund Services division." (SCAC ¶¶ 320-321.) New York courts consistently have held, however, that alter ego liability cannot be imposed on a corporation merely because of its alleged involvement in the decision-making process or policies of an affiliated company. *See Truglia v. KFC Corp.*, 692 F. Supp. 271, 275 (S.D.N.Y. 1988) ("the mere assertion that a corporate parent is or was involved in the decision-making process of its subsidiary, or that it controlled the legitimate policies of its subsidiary, will not shift liabilities among distinct corporate entities"); *Allied Programs Corp. v. Puritan Ins. Co.,* 592 F. Supp. 1274, 1276-77 (S.D.N.Y. 1984) (plaintiff's allegations that corporation "controlled the policies of its subsidiaries" were insufficient to state a claim to pierce the corporate veil).

Plaintiffs also appear to rely on allegations that "Citco" markets itself on its website as a "global industry leader" in financial services and as a "single administrator," and that it does not

"distinguish between its individual companies." (SCAC ¶¶ 319, 322-323.)  These allegations do nothing more than suggest typical marketing plans of related companies and do not establish an alter ego theory of liability.  *See, e.g., Fletcher*, 68 F.3d at 1461 (parent's reference, in marketing literature, to subsidiary as a "division," and use of a joint logo was insufficient, as a matter of law, to show that the parent and subsidiary operated as a single economic entity); *Diario El Pais, S.L. v. Nielson Co., (US), Inc*., No. 07 Civ. 11295 (HB), 2008 WL 4833012, at *5 (S.D.N.Y. Nov. 6, 2008) (conclusory allegations made about statements on a parent corporation's website are insufficient to overcome "the presumption of separateness afforded to related corporations"); *Fidenas AG v. Honeywell Inc.,* 501 F. Supp. 1029, 1037 (S.D.N.Y. 1980) (holding that plaintiff's assertions that parent and subsidiary had a unified marketing plan, that the parent approved the subsidiaries' long range plan, and that the two companies held themselves out as a "single integrated world-wide operation," represented "common relationships" between a parent and subsidiary rather than an alter ego relationship).

Further, the SCAC does not contain a single factual allegation that CGL's supposed dominion was used to commit a fraud or wrong against Plaintiffs.  *Mouawad Nat'l. Co.*, 476 F. Supp. 2d at 422 (citing *MAG Portfolio Consult, GMBH*, 268 F.3d at 63); s*ee also Levinson v. Primedia Inc.*, No. 02 Civ. 2222 (DAB), 2007 WL 2298406, at *9 (S.D.N.Y. Aug. 9, 2007) (to establish alter ego liability, plaintiffs must allege facts demonstrating that: (i) the entity exercised dominion and control with respect to the transaction attacked, and (ii) such domination and control must be used to commit a fraud or wrong against the plaintiffs).

For those reasons, the Court should reject any attempt by Plaintiffs to assert a veil-piercing theory of liability against CGL.

**B.      Plaintiffs Fail to Allege an Agency Theory of Liability Against CGL**

Plaintiffs' conclusory assertion that CFSE, CCI, CGC, CBN, and CFSB acted as "agents" of CGL (*see* SCAC ¶¶ 156, 323) is also unsupported by any factual allegations and therefore should be rejected. While it is far from clear what theory of agency Plaintiffs seek to establish, Plaintiffs have failed to plead facts that support the existence of either an "actual" or "apparent" agency relationship between CGL and CFSE, CCI, CGC, CBN, and CFSB.[11]

**1.      The Allegations in the SCAC
Do Not Support an Actual Agency Theory**

To establish an actual agency theory of liability, Plaintiffs must allege: (1) "the manifestation by the principal that the agent shall act for him"; (2) "the agent's acceptance of the undertaking"; and (3) "the parties' understanding that the principal is to be in control of the undertaking." *Manley v. AmBase Corp.,* 337 F.3d 237, 246 (2d Cir. 2003). The SCAC is devoid of any allegations that meet this legal standard.

**(a)      The SCAC Fails to Allege a Manifestation
by the Principal or an Acceptance by the Agent**

With regard to the first two elements of agency liability, the SCAC fails to allege facts demonstrating that CGL manifested a desire that CFSE, CCI, CGC, and CBN act on CGL's behalf in performing their separate contractual services for the Fairfield Funds, or that CFSE, CCI, CGC, and CBN accepted that particular undertaking. *See Nuevo Mundo Holdings v.*

---

[11]   Plaintiffs attempt to impose liability onto CGL based on the alleged acts of CBN and CGC, which performed their services pursuant to the Custody Agreements. As set forth in section II of CBN and CGC's Memorandum of Law, which is incorporated herein by reference, the Custody Agreements mandate that:  "[a]ny proceedings or claims brought by the [Fairfield] Fund against [CBN or CGC] and/or its *affiliates*, arising out of or related to this Agreement shall be brought exclusively in Amsterdam, The Netherlands."  (CBN Decl., Exs. A-B.)  Because Plaintiffs allege that CGL is *affiliated* with CBN and CGC (SCAC ¶ 156), and the claims against CBN and CGC arise out of the Custody Agreements, any agency-based claims that purport to derive from the alleged conduct of CBN and CGC should be brought in Amsterdam, The Netherlands.

*Pricewaterhouse Coopers LLP,* No. 03 Civ. 0613 (GBD), 2004 WL 112948, at *5-6 (S.D.N.Y. Jan. 22, 2004) (the complaint must clearly and specifically articulate allegations of fact which support the existence of a manifestation by the principal and an acceptance by the agent). Instead, in the most conclusory fashion imaginable, Plaintiffs allege that:

> Citco Group directly controls the conduct of each of the Citco companies identified below pursuant to agreements between them, and each Citco company acts as the agent and alter ego of Citco Group and of each other.

(SCAC ¶ 156.) This allegation, which is notable only for its utter lack of specificity or detail, is clearly insufficient as a matter of law to support a claim of agency liability. *See In re Parmalat Sec. Litig.,* 501 F. Supp. 2d 560, 589 (S.D.N.Y. 2007) (rejecting actual agency theory where, "apart from the conclusory and therefore insufficient allegation that Deloitte USA was 'dominant over DTT' . . . plaintiffs do not allege anything about DTT's involvement in the dispute that would support the conclusion that Deloitte USA controlled DTT"), *aff'd, Pappas v. Bank of Am. Corp.*, 309 F. App'x 536 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 95 (2009); *Maung Ng We & Massive Atl. Ltd. v. Merrill Lynch & Co., Inc.*, No. 99 Civ. 9687 (CSH)*,* 2000 WL 1159835, at *6, *11 (S.D.N.Y. Aug. 15, 2000) (conclusory allegations such as the alleged agent was "under the direction and control" of the alleged principal do not support a finding of actual agency, and should result in dismissing the parent corporation with prejudice).

### (b)    The SCAC Fails to Allege Control

Plaintiffs have also failed to plead the essential element of control – that in carrying out their alleged administrative and custodial functions for the Fairfield Funds, CFSE, CCI, CGC, and CBN were required to obtain approval from CGL before they could act. The absence of allegations establishing that CGL exercised control over CFSE's, CCI's, CGC's, and CBN's alleged wrongful conduct (even if that conduct was sufficiently alleged, which it is not) requires

dismissal of Plaintiffs' agency-based claims against CGL. *See Maung Ng We & Massive Atl. Ltd.,* 2000 WL 1159835, at \*7, \*11 (dismissing agency-based claims against parent corporation with prejudice where plaintiff failed to allege facts demonstrating that the alleged subsidiary was required to obtain approval from the parent prior to committing the alleged wrongful conduct) (citing *In re Shulman Transp. Enters., Inc.,* 744 F.2d 293, 295 (2d Cir. 1984)).

While Plaintiffs may assert that agency is established through their conclusory allegations regarding CGL's "hir[ing] division directors to oversee the daily operations of" its affiliated companies (*see* SCAC ¶¶ 320-321), such conclusory allegations fall far short of establishing an actual agency relationship. *See Maung Ng We & Massive Atl. Ltd.*, 2000 WL 1159835, at \*6-7 (allegations that subsidiary was under direction and control of parent because the subsidiary consulted with the parent's "head office" personnel held insufficient to establish actual agency); *Coppola v. Bear Sterns & Co., Inc.,* No. 1:02-CV-1581, 2005 WL 2648033, at \*11 (N.D.N.Y. Oct. 17, 2005) (recognizing the "mere fact that the subsidiary's chain-of-command ultimately results in the top officers of the subsidiary reporting to the parent corporation does not establish the kind of day-to-day control necessary to establish an interrelation of operations"), *aff'd*, 499 F.3d 144 (2d Cir. 2007); *see also United States v. Bestfoods*, 524 U.S. 51, 69-70 (1998) (fact that parent and subsidiary shared officers and directors not enough to hold parent vicariously liable) (citing *Fisser v. Int'l Bank*, 282 F.2d 231, 238 (2d Cir. 1960)); *In re Parmalat Sec. Litig,* 501 F. Supp. 2d at 588 (same). Accordingly, because the SCAC fails to allege the essential element of control, Plaintiffs' claim of actual agency should be dismissed.

## 2. The Allegations in the SCAC Do Not Support an Apparent Agency Theory

To establish apparent agency a plaintiff must plead facts demonstrating (1) verbal or other acts by a principal which reasonably give the appearance of authority by the purported

agent to conduct the transaction, and (2) that the third person, accepting the appearance of authority as true, relied upon the verbal words or acts by the principal. *Fletcher,* 68 F.3d at 1462. Plaintiffs do not plead facts that support the existence of either of these elements.

First, Plaintiffs have made no allegation in the SCAC that CGL (the purported principal) made any representation whatsoever to the Plaintiffs or to the Fairfield Funds – let alone one that would provide the Fairfield Funds or the Plaintiffs with a reasonable basis to believe that CFSE, CCI, CGC, CBN, and CFSB were acting on CGL's behalf. Accordingly, on that basis alone, the claims against CGL should be dismissed. *See Zigabarra v. Falk,* 143 A.D.2d 901, 902 (2d Dep't 1998) (holding that the absence of factual allegations demonstrating the existence of words or conduct by the principal is fatal to a claim of apparent agency).

Second, Plaintiffs fail to allege any facts demonstrating that they relied upon verbal words or acts of CGL. Indeed, Plaintiffs do not make a single allegation in the SCAC that they reasonably relied upon any verbal or other acts of CGL in making their decision to invest in the Fairfield Funds. Accordingly, to the extent Plaintiffs seek to assert a claim of apparent agency, the SCAC fails to allege facts sufficient to support such a theory. *See Zigabarra*, 143 A.D.2d at 902 (absence of facts supporting element of reliance is fatal to a claim of apparent agency).[12]

## IV.    CGL Is Not Liable for the Alleged Acts of Pilgrim and Francoeur

Plaintiffs also seek to impose liability against CGL under a theory of agency for the alleged conduct of Francoeur and Pilgrim. (SCAC ¶ 564.) ("In addition, Francoeur and Pilgrim were acting as agents of Citco Group and the other Citco defendants."). This single generic allegation purporting to establish some kind of agency between Francoeur, Pilgrim and "Citco,"

---

[12]    To impose secondary liability onto CGL, Plaintiffs must establish primary liability against CFSE, CCI, CBN, CGC, and CFSB. For the reasons set forth in their respective Memorand of Law in Support of Their Motion to Dismiss, which are expressly incorporated by reference herein, Plaintiffs have not established primary liability against these Defendants.

as defined in the SCAC, is insufficient to establish an agency relationship between CGL and either Pilgrim or Francoeur.  Accordingly, Count 32 against CGL should be dismissed.

## V.    Many of Plaintiffs' Claims Are Time Barred

The securities fraud claims of many individual Plaintiffs are time-barred.  The statute of repose for federal securities fraud claims is five years from the date of the alleged fraud.  *See* 28 U.S.C. § 1658.  This period begins on the date a plaintiff committed to invest based on a fraudulent statement.  *P. Stolz Family P'ship v. Daum*, 355 F.3d 92, 102-03 (2d Cir. 2004); *Grondahl v. Merritt & Harris, Inc.*, 964 F.2d 1290, 1294 (2d Cir. 1992).  This five-year statue of repose applies to all section 10(b), Rule 10b-5 and section 20(a) claims.  *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 418-19 (section 20(a) claims "may be brought not later than … 5 years after such violation") (quoting 28 U.S.C. § 1658(b)).

Thus, to the extent any Plaintiffs' federal securities fraud claims are based on investments made prior to April 24, 2004, which is five years prior to the filing date of the first lawsuit to name CFSE and CCI as a defendant, those claims are time-barred and should be dismissed.  Based on allegations in the SCAC, which identifies Plaintiffs and their dates of investment in the Fairfield Funds, there are at least 19 Plaintiffs whose most recent investment in any Fairfield Fund was made prior to April 24, 2004.  The federal securities claims of those Plaintiffs, as listed in the table at Exhibit B of Amanda M. McGovern's Declaration, are time-barred and should be dismissed.  (Decl., Ex. B*; see also* SCAC ¶¶ 8.A.1.1, 8.A.1.7, 8.A.1.10, 8.A.1.14, 8.A.1.32, 8.A.1.35, 8.A.1.36, 8.A.1.41, 8.A.1.43, 8.A.1.44, 8.A.1.48, 8.A.1.49, 8.A.1.52, 8.A.1.54, 8.A.1.74, 8.A.2.81, 8.A.2.90, 8.A.2.95, 8.A.2.106, 8.A.3.112.)

In addition, many other Plaintiffs' negligence-based state law claims are time-barred under New York's three-year statute of limitations.  *See* CPLR § 214(4) (three-year limitations

period for negligence-based claims alleging general monetary loss); *see also Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008), *aff'd*, 320 F. App'x 48, 50 (2d Cir. 2009) (breach of fiduciary duty claims based on negligent conduct subject to three-year limitations period). The statute is triggered at the moment the alleged wrongful act or omission occurs. *Ackerman v. Nat'l Prop. Analysts, Inc.*, 887 F. Supp. 494, 508 (S.D.N.Y. 1997). Indeed, many of these claims may be subject to shorter limitations periods depending on the law of Plaintiffs' individual domiciles. *See* CPLR § 202.

Accordingly, at the very least, any of Plaintiffs' claims against CGL based on theories of breach of fiduciary duty (Count 21), gross negligence (Count 22), negligence (Count 23), and/or aiding and abetting breach of fiduciary duty (Count 24), will ultimately have to be dismissed to the extent they seek relief based on investments made prior to April 24, 2006. According to the investment dates listed in the SCAC, in addition to those Plaintiffs listed in the table at Exhibit B, there are at least 14 additional Plaintiffs whose latest investment in any Fairfield Fund was prior to April 24, 2006, and those negligence-based common-law claims are time-barred. (Decl., Ex. C; *see also* SCAC ¶¶ 8.A.1.5, 8.A.1.6, 8.A.1.9, 8.A.1.17, 8.A.1.20, 8.A.1.34, 8.A.1.50, 8.A.1.60, 8.A.1.68, 8.A.1.78, 8.A.2.102, 8.A.2.105, 8.A.2.107.)

## CONCLUSION

For all these reasons – and given the ample opportunity Plaintiffs have had to formulate their extensive SCAC – CGL respectfully requests that the Court dismiss all claims against it with prejudice.

Dated:  December 22, 2009

Respectfully submitted,

**GILBRIDE, HELLER & BROWN, P.A.**

/s/ Lewis N. Brown
Lewis N. Brown
Amanda M. McGovern
One Biscayne Tower, 15th Floor
2 South Biscayne Blvd.
Miami, FL  33131
T:  305.358.3580
F:  305.374.1756
lbrown@ghblaw.com
amcgovern@ghblaw.com

**CURTIS, MALLET-PREVOST, COLT
& MOSLE, LLP**
Eliot Lauer (EL 5590)
Michael Moscato (MM 6321)
101 Park Avenue
New York, NY  10178
T:  212.696.6000
F:  212.697.1559
elauer@curtis.com
mmoscato@curtis.com

*Attorneys for The Citco Group Limited*