# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ANWAR, et al.,                                        MASTER FILE NO.
                                                      09-CV-0118 (VM)
Plaintiffs,

             -against-

FAIRFIELD GREENWICH LIMITED, et al.,

Defendants.

This Document Relates To:   All Actions
------------------------------------------------------------------------x

# DECLARATION OF ATTORNEY MELANIE CRINIS ON RELEVANT PRINCIPLES OF THE LAW OF THE CAYMAN ISLANDS

I, Melanie Crinis, of Grand Cayman, Cayman Islands, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, declare as follows:

## I.    BACKGROUND

1.    My name is Melanie Crinis. I am an attorney at law admitted to practice in the Cayman Islands. In connection with this case, I have been asked by The Citco Group Limited ("CGL") to opine, whether under the laws of the Cayman Islands, the Plaintiffs may pierce the corporate veil and hold CGL liable for the alleged actions or inactions of Citco Fund Services (Europe) B.V. ("CFSE"), Citco (Canada) Inc. ("CCI"), Citco Global Custody N.V. ("CGC"), Citco Bank Nederland N.V. Dublin Branch ("CBN"), or Citco Fund Services (Bermuda) ("CFSB").

2.    I have been provided the following document in order to assist me in analyzing the above issue:

> A copy of the Second Consolidated Amended Complaint dated September 29, 2009 in the matter of *Anwar v. Fairfield Greenwich Limited*, Case No. 09-cv-118 (VM) ("SCAC"), pending in United States District Court for the Southern District of New York.

3.    This Declaration is submitted to assist the Court in determining whether Plaintiffs may pierce the corporate veil under Cayman Islands law.

4.    All statements of legal opinion herein represent my view of Cayman Islands law as a practicing lawyer. All statements of fact herein are based upon the assumption that the facts alleged in the SCAC are true.

## II. QUALIFICATIONS

5. I am a Senior Associate at Campbells, a Cayman Islands law firm located at the following address: 4th Floor, Scotia Centre, P.O. Box 884, George Town, Grand Cayman, Cayman Islands. I was admitted as a solicitor in the State of Queensland, Australia in 1998, as a solicitor of England and Wales (not practicing) in 2003, and I have been an attorney at law admitted to practice in the Cayman Islands since 2003.

6. I attach a copy of my résumé at Appendix 1 to this Declaration.

## III. THE LAW AND PROCEDURE OF THE CAYMAN ISLANDS

7. By way of background, courts in the Cayman Islands issue their own judicial opinions, thereby creating precedent that is generally binding upon the courts in the Cayman Islands. The courts in the Cayman Islands also rely heavily upon the rules of equity and common law of England and Wales, which, although not binding, are generally followed where they are not inconsistent with the laws of the Cayman Islands. I will therefore be referring to case law from both the Cayman Islands and England.

## IV. UNDER THE LAWS OF THE CAYMAN ISLANDS, PLAINTIFFS MAY NOT PIERCE THE CORPORATE VEIL

8. The House of Lords, in *Salomon v. Salmon & Co.* [1897] A.C. 22 (H.L.), set forth the fundamental principle of company law, which also forms part of the law of the Cayman Islands, explaining:

> *"A company is at law a different person from its shareholders who are not liable for its debts."*

*Id.* This principle still forms the main cornerstone of English corporate law, and is also an important element of Cayman Islands corporate law jurisprudence.

9. Cayman Islands law recognizes that the corporate form may be disregarded in certain limited circumstances. The only circumstances that might relate here are as follows:

    (a) where the device of incorporation is a façade or sham; or

    (b) where a group of companies should be treated as a single entity based on the principles of agency.

### A. The Three Factors Under Cayman Law Showing a Façade or Sham

10. The leading case addressing the issue of disregarding the corporate structure based on a showing that the company is a façade or sham is *Adams v. Cape Indus. PLC*, [1990] Ch. 433. There, the English Court of Appeal held that the court can pierce the corporate veil when it is shown that the corporate structure is *"a mere façade concealing true facts."*

11. Whether a corporate structure is a façade is determined by resolution of the following issues: (1) whether the company is in fact a façade or sham with no unconnected third party involved; (2) whether the company was involved in some impropriety; and (3) whether there is a link between the impropriety and the use of the corporate structure to avoid or conceal a third party's liability. *Trustor AB v. Smallbone*, [2001] 1 WLR 1177 (Ch. D.).

12. The three-pronged standard set forth in *Trustor AB v. Smallbone* was adopted and applied by the Cayman Court in *Benotto v. Boccaletti*, 2001 (CILR) 120 (Grand Ct. 2001). Thus, one of the two ways to pierce the corporate veil of a company under the laws of the Cayman Islands a plaintiff must demonstrate that the company was in fact a façade; that it was involved in some act of impropriety; and that there is a link between the impropriety and the use of the corporate structure to avoid or conceal a third party's liability.

B. **Whether a Group of Comapnies will be Treated as a Single Entity**

13. The leading decision regarding piercing the corporate veil in a parent-subsidiary relationship setting is *Adams v Cape Indus. PLC*, [1990] Ch 433. In *Adams*, the English Court of Appeal decided whether a wholly owned subsidiary of a company known as the Cape Industries was a separate legal entity, or whether the wholly owned subsidiary was an agent or representative of Cape Industries such that it would warrant imposing liability onto Cape Industries based on the conduct of its subsidiary.[1] There, the nature of the relationship between Cape Industries and its wholly owned subsidiary was referred to as a routine parent subsidiary relationship. Plaintiffs argued, however, that all of the major policy decisions of Cape Industries' subsidiaries were dictated by the parent, Cape Industries. The *Adams* court rejected this argument, determining that it was insufficient to warrant treating the companies as a single entity and imposing liability upon the parent.

14. The Court of Appeal explained that it is the very nature of a parent subsidiary relationship that the parent company be in a position, if it wishes, to exercise overall control over the general policy of the subsidiary, and that the existence of such a relationship is insufficient to call into question the authenticity of an individual corporate act within the group of companies. In reaching this conclusion, the court reviewed all of the relevant cases and concluded that there was no general principle

---

[1] The court had already decided that there was no evidence to suggest that Cape Industries was a sham or façade that would allow its corporate form to be disregarded. *Adams v. Cape Indus.* [1990] Ch. 233.

allowing a corporate group to be treated as one, thereby rejecting the "the single economic unit argument."

15. The Court of Appeal cautioned that, in certain circumstances, a subsidiary may be deemed to be acting as an agent of a parent company such that the parent could be legally responsible for the actions of its subsidiary. However, the Court of Appeal explained that before such an agency relationship could be established, there would need to be a very high degree of control by the parent over the subsidiary.

16. In *Adams*, the group of companies was run as a single integrated mining division with little regard for corporate formalities between members of the group. Further, although the parent exercised a degree of overall supervision over the subsidiary in question, in particular, by setting its maximum level of expenditure, its dividend, its borrowing levels, and its broad business policies, it was found that no agency relationship existed, as the subsidiary retained control of its day-to-day business, and the subsidiary observed the necessary corporate formalities that make it a separate legal entity.

17. I have reviewed the SCAC for the purpose of determining whether Cayman Islands law recognizes Plaintiffs' claimed right to impose secondary liablity on CGL for the alleged acts of its affiliated companies.

18. The allegations in the SCAC, in my opinion, do not allege sufficient facts demonstrating that CFSE, CCI, CGC, CBN or CFSB were formed or operated as sham corporations.

19. Likewise, the allegations in the SCAC on which the Plaintiffs rely upon to establish liability based on a principal-agent theory are insufficient under Cayman law. The generic conclusory allegations regarding CGL's relationship to CFSE, CCI, CGC, CBN or CFSB are insufficient to establish that CGL exercises such a degree of dominion or control over CFSE, CCI, CGC, CBN or CFSB as to conclude that they were acting as a single economic unit such that CGL should be responsible for their actions.

V. **CONCLUSION**

20. In light of the law of the Cayman Islands dscused above and the allegations contained in the SCAC, it is my opinion that:

> a. The Plaintiffs have failed to allege any basis that CFSE, CCI, CGC, CBN or CFSB were shams or façades that would warrant piercing CGL's corporate veil; and
>
> b. The SCAC fails to allege sufficient allegations to prove that the companies were acting as a single economic unit such that there was a general relationship of agency between CGL and CFSE, CCI, CGC, CBN or CFSB. The allegations in the SCAC are nothing short of the normal circumstances

one would expect to see with respect to an international group of companies where no such relationship of agency exists.

I declare under penalty of perjury that the statements contained herein are true and correct to the best of my knowledge and belief.

Executed in New Orleans, USA, on this December 22 2009.

_____
Melanie Crinis

# Appendix 1

-blank-




# Associates

- Home
- News & Info
- Firm Profile
- Lawyer Profiles
- Practice Areas
- Careers
- Scholarships
- Resources
- Contact Us



## Melanie Crinis

**Telephone:** 345 914 5865
**Fax:** 345 949 8613
**E.mail:** mcrinis@campbells.com.ky

- Lawyer Profiles
- Partners
- Associates

Melanie Crinis graduated with a Bachelor of Laws Degree (with Honours) and a Masters Degree with Distinction (specialising in commercial litigation) from QUT University in Australia. She was admitted to the Supreme Court of Queensland in 1998 and subsequently to the High Court of Australia. Melanie was also admitted as a solicitor in England and Wales and as an attorney in the Cayman Islands in 2003.

During her time in Australia, Melanie worked for one of Australia's leading law firms, Freehills where she specialised in commercial and trusts litigation and insolvency. In 2001, Melanie moved to London where she spent approximately 2 years working for Davies Arnold Cooper specialising in large commercial disputes and in particular, was primarily running a US$100 million, multi party piece of commercial litigation.

In 2003 Melanie moved to Campbells where she continues to specialise in commercial litigation with particular emphasis on trust and funds litigation, shareholder disputes and insolvency.

Notably, Melanie has been involved in a number of large, multi-party, international trust disputes which frequently contain difficult and complicated issues at the cutting edge of the law ranging from suits involving the removal of trustees and/or the trust protector, construction of trust deeds, handover issues including former trustees' entitlement to an indemnity and entitlement to withhold assets, Hastings Bass proceedings to claims for breach of trust.

Melanie has also been involved in a number of insolvencies, working closely with major insolvency practitioners. She has particular experience in advising on the recovery of assets and actions against directors for breaches of fiduciary position, insolvent trading and fraud.

Melanie regularly appears as both lead and second counsel in the Grand Court and the Court of Appeal and has been involved in a number of reported decisions in the Cayman Islands. Melanie also regularly publishes articles and speaks at seminars on various topics of interest.

[ top ]

-blank-