(c)     The use of leverage. The Partnership may trade in securities on margin or borrow, pledge, mortgage, lend or hypothecate securities or other assets. (See "TAX ASPECTS".) The Partnership may use leverage by borrowing funds from banks and brokerage firms. The Partnership maintains no policy limiting the amount of borrowing in which it will engage to any fixed percentage of its assets. Under market conditions deemed appropriate by the General Partner, the Partnership may borrow up to the limit of the applicable margin requirements and applicable regulations relating to bank loans.

(d)     The underwriting of securities of other issuers. The Partnership will not underwrite securities of other issuers (except to the extent it may technically be deemed an "Underwriter" in connection with distributions of securities).

(e)     The making of loans to other persons. The Partnership may lend its portfolio securities on terms customary to the securities industry, provided that cash collateral at least equal in value to the market value of the loaned securities is deposited by the borrower with the broker-dealer with which the Partnership maintains its account. The interest received on such loans is typically a percentage of the broker's call rate.

(f)     The purchase and sale of real estate. The Partnership does not intend to purchase or sell interests in real estate or real estate mortgage loans nor does it intend to utilize money managers engaging in such loan transactions.

(g)     The purchase and sale of commodities or commodity contracts. The Partnership Agreement authorizes the Partnership to engage in transactions involving forward and futures contracts (and options thereon) relating to stock indices and other indices, financial instruments and commodities and commodity contracts. However, such transactions would not be effected without compliance with the applicable regulatory requirement.

(h)     Investment in companies for the purpose of exercising control of management. The Partnership will not ordinarily invest in companies for the purpose of exercising control of management but may do so in situations in which it believes it appropriate as an investment.

(i)     Policy with respect to portfolio turnover. The Partnership has no definite policy with respect to portfolio turnover. The Partnership expects that its portfolio turnover will

---

difference between (i) the greater of (a) the market value of the securities sold short at the time of the short sale, or (b) the market value of the securities sold short (marked to market daily) and (ii) the amount of cash or United States Government securities deposited with the broker to collateralize the obligation to replace the borrowed securities. Similar requirements exist with respect to collateralizing uncovered options and the SEC has indicated that such requirements may also apply when a registered investment company engages in repurchase transactions. The Partnership is not required to follow such requirements, and will not collateralize such obligations, except to the extent of applicable margin and bank regulations and creditors' practices. Registered investment companies can borrow only from banks and must maintain 300% asset coverage for such borrowings. However, the Partnership may borrow from brokers, banks and others that have no such asset coverage requirements.

Dockets.Justia.com

exceed the portfolio turnover of other types of investment vehicles, since the Partnership's investment strategies include active trading of the portfolio and short sales.[4]

## TAX ASPECTS

The following is a summary of certain aspects of the income taxation of the Partnership and its partners which should be considered by a prospective Limited Partner. Except as indicated below, it applies only to Limited Partners who are citizens or residents of the United States for Federal income tax purposes, and who are taxed as individuals. The Partnership has not sought a ruling from the Internal Revenue Service (the "IRS") or any other Federal, state or local agency with respect to any of the tax issues. Each prospective Limited Partner is urged to consult his own counsel regarding the acquisition of Interests.

This summary of certain aspects of the Federal income tax treatment of the Partnership is based upon the Internal Revenue Code of 1986, as amended (the "Code") or regulations promulgated thereunder, judicial decisions, Treasury Regulations (the "Regulations") and rulings in existence on the date hereof, all of which are subject to change.

EACH PROSPECTIVE LIMITED PARTNER SHOULD CONSULT WITH ITS OWN TAX ADVISER IN ORDER TO FULLY UNDERSTAND THE FEDERAL, STATE AND LOCAL INCOME TAX CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP.

1.    Tax Treatment of Partnership Operations

Classification of the Partnership. The Partnership will elect to be treated as a partnership for Federal income tax purposes. As a partnership, the Partnership will not itself be subject to Federal income tax. The Partnership files an annual partnership information return with the IRS which reports the results of operations. Each partner is required to report separately on his income tax return his distributive share of the Partnership's net long-term capital gain or loss, net short-term capital gain or loss and all other items of ordinary income or loss. Each partner will be taxed on his distributive share of the Partnership's taxable income and gain regardless of whether he has received or will receive a distribution of assets from the Partnership.

Publicly Traded Partnership. Under Section 7704 of the Internal Revenue Code of 1986, as amended (the "Code"), a partnership that meets the definition of a "publicly traded partnership" may be taxable as a corporation. It is expected that the Partnership will not be treated as a "publicly traded partnership". If the Partnership were taxed as a corporation, the Partnership's taxable income would be subject to corporate income tax, which would significantly reduce the return that an investor would derive from the Partnership.

---

4    Turnover refers to the dollar value of securities purchased or sold, as compared to average assets. For example, a 100% turnover ratio means that the value of securities purchased or sold during the year (whichever is less) equals the average value of the Partnership's securities portfolio (excluding United States Government securities and cash items) for the year.

Allocation of Profits and Losses. Under the Partnership Agreement, the Partnership's net capital appreciation or net capital depreciation for each fiscal year will be allocated among the Partners and to their Capital Accounts without regard to the amount of income or loss actually realized by the Partnership for Federal income tax purposes. For each fiscal year, under the Partnership Agreement, items of income, deduction, gain, loss or credit actually realized by the Partnership are to be allocated for income tax purposes in such a manner so as to reflect the amount so allocated to each partner's Capital Account for the current and prior fiscal years unless an allocation under the Partnership Agreement does not have "substantial economic effect." The General Partner believes that the allocations provided by the Partnership Agreement comply with the regulations under the Code defining substantial economic effect. If the allocations provided by the Partnership Agreement were determined not to have "substantial economic effect", and therefore, were not recognized for federal income tax purposes, the amount of income or loss allocated to Partners under the Partnership Agreement might be increased or reduced. A Limited Partner admitted to the Partnership on a date other than as of January 1 of a fiscal year will be allocated its distributive share of Partnership tax items at the end of its year of admission based in its pro rata share of the Partnership's capital.

Regulations issued with respect to Section 704(b) of the Code provide rules to govern a situation, like the Partnership, where capital accounts of partners are adjusted to reflect changes in the fair market value of a partnership's assets without regard to the actual tax results for the year. Under these Regulations, gain recognized for tax purposes upon the sale of securities held during more than one fiscal year generally would be allocated among those partners who were partners during each of the fiscal years in question, based on the actual allocation to the capital accounts of such partners of the changes in the fair market value of such securities each fiscal year. However, the Regulations also provide for a "ceiling rule" which requires that the partners should not report gains or losses which are not actually realized by the Partnership. Under this rule of the Regulations, it is possible under certain circumstances (e.g., the contribution of new capital after Partnership securities have appreciated in value, and a subsequent decline in the value of such securities) that the allocations of the Partnership's tax result among the partners will not reflect allocations of net capital appreciation and net capital depreciation which have been made to the partner's capital accounts.

Tax Elections; Returns; Tax Audits. The Code provides for optional adjustments to the basis of partnership property upon distributions of partnership property to a partner and transfers of partnership interests (including by reason of death) provided that a partnership election has been made pursuant to Section 754. Under the Partnership Agreement, at the request of a partner, the General Partner, in its sole discretion, may cause the Partnership to make such election. Any such election, once made, cannot be revoked without the IRS's consent.

The General Partner is designated as the "Tax Matters Partner" and it decides how to report the Partnership items on the Partnership's tax returns, and all Partners will be required under the Code to treat the items consistently on their own returns, unless they file a statement with the IRS disclosing the inconsistency. In the event the income tax returns of the Partnership are audited by the IRS, the tax treatment of Partnership income and deductions generally are determined at the Partnership level in a single proceeding rather than by individual audits of the

Partners. The "Tax Matters Partner" will have considerable authority to make decisions affecting the tax treatment and procedural rights of all Partners. In addition, the "Tax Matters Partner" has the right on behalf of all Partners to extend the statute of limitations relating to the Partners' tax liabilities with respect to partnership items.

Under certain circumstances, the Partnership (depending on the nature of the transactions entered into by the Partnership) and certain Limited Partners (depending on the size of such Limited Partner's interest in the Partnership) will be required to disclose to the Internal Revenue IRS (and to its office of Tax Shelter analysis) their participation in certain transactions. To the extent any Limited Partner is required to report information regarding the Partnership's transactions, the Partnership will provide such Limited Partner with the specific information needed to make such filing.

2.    <u>Jobs and Growth Tax Relief Reconciliation Act of 2003</u>

On May 28, 2003, the Jobs and Growth Tax Relief Reconciliation Act of 2003 (the "Act") was enacted. The Act reduced the maximum marginal tax rate to 35%, the maximum long-term capital gains tax rate to 15%, and the maximum tax rate on "qualified dividend income" to 15%, for individuals and certain non-corporate taxpayers. "Qualified dividend income" is defined under the Act to mean dividends received from domestic corporations and "qualified foreign corporations" if a taxpayer has held the stock for 60 days during the 120-day holding period beginning 60 days before the ex-dividend date (or, in the case of stock having a preference in dividends, 90 days during the 180-day period beginning 90 days before the ex-dividend date). In general, periods in which the taxpayer has diminished his risk of loss with respect to stock by holding options to sell, short selling and other positions do not count toward meeting the holding period requirement. "Qualified foreign corporations" include foreign corporations that are eligible for benefits under a comprehensive tax treaty and foreign corporations the stock of which is readily tradeable on an established securities market in the United States. However, dividends that are received from a foreign corporation that was a foreign investment company, passive foreign investment company, or a foreign personal holding company in either the taxable year of distribution or the preceding taxable year are not "qualified dividend income."

"Qualified dividend income" also does not include dividends on any share of stock to the extent that the taxpayer is under an obligation to make related payments with respect to positions in substantially similar or related property. In the case of brokers and dealers who engage in securities lending transactions, short sales, or similar transactions on behalf of their customers in the normal course of business, the IRS intends to waive penalties associated with the failure to comply with the reporting requirements due to the time period necessary to conform their information reporting systems to the rate reductions under the Act. It is expected that a taxpayer who receives payments in lieu of dividends from these transactions may treat the payments as dividend income to the extent the payments are reported as dividends on Forms 1099-DIV unless the taxpayer knows or has reason to know that the payments are in lieu of dividends rather than actual dividends.

Special rules apply under the Act (i) to losses associated with stock with respect to which a taxpayer has received an "extraordinary dividend" and (ii) in determining a taxpayer's foreign tax credit limitation in the case of qualified dividend income. The reduced tax rates generally apply to taxable years beginning after December 31, 2002, through December 31, 2008.

### 3. Tax Treatment of Partnership Investments

*In General.* The Partnership expects to act as a trader or investor, and not as a dealer, with respect to its securities transactions. A trader and an investor are persons who buy and sell securities for their own accounts. A dealer, on the other hand, is a person who purchases securities for resale to customers rather than for investment or speculation.

Generally, the gains and losses realized by a trader or investor on the sale of securities are capital gains and losses. Thus, the Partnership expects that its gains and losses from its securities transactions typically will be capital gains and losses. These capital gains and losses may be long-term or short-term depending, in general, upon the length of time the Partnership maintains a particular investment position and, in some cases, upon the nature of the transaction. Property held for more than one year generally will be long-term capital gain or loss. The application of certain rules relating to short sales, to so-called "straddle" and "wash sale" transactions and to "Section 1256 Contracts" may serve to alter the manner in which the Partnership's holding period for a security is determined or may otherwise affect the characterization as long-term or short-term, and also the timing of the realization of certain gains or losses.

Gains on the sale of property held for more than 12 months are considered long-term capital gains. Long-term capital gains are taxed at a 5% rate for taxpayers in the 15% brackets (zero in 2008) and at a 15% rate for taxpayers in the higher brackets. The excess of capital losses over capital gains may be offset against the ordinary income of a noncorporate taxpayer, subject to an annual deduction limitation of $3,000. For corporate taxpayers, capital losses may be offset only against capital gains, but unused capital losses may be carried back three years (subject to certain limitations) and carried forward five years.

*Section 1256 Contracts.* Under the Code, all positions in "Section 1256 contracts" held by the Partnership at the end of its taxable year will be marked to their market value, and any unrealized gain or loss on those positions will be included in the income of the Partners as if each position had been sold for its fair market value on the last day of the Partnership's taxable year. A "Section 1256 contract" includes a "regulated futures contract," a "foreign currency contract," a "nonequity option" and a "dealer equity option". A "regulated futures contract" is a futures contract which is traded on or subject to the rules of a "qualified board or exchange" (that is, a national securities exchange which is registered with the SEC, a domestic board of trade designated as a contract market by the CFTC or any other board of trade, exchange or other market designated by the Secretary of the Treasury) and which is "marked-to-market" to determine the amount which must be deposited as margin or may be withdrawn. A "foreign currency contract" is a contract which requires delivery of, or the settlement of which depends upon the value of, a foreign currency which is a currency in which positions are also traded

through regulated futures contracts, which are traded in the interbank market and which are entered into at arms' length at a price determined by reference to the price in the interbank market. (The Secretary of the Treasury is authorized to issue regulations excluding certain currency forward contracts from marked-to-market treatment). A "nonequity option" means an option which is traded on a qualified board or exchange and the value of which is not determined directly or indirectly by reference to any stock (or group of stocks) or stock index unless there is in effect a designation by the CFTC of a contract market for a contract based on such group of stock or stock index. A "dealer equity option" means, with respect to an options dealer, any listed option which is an equity option, is purchased or granted by such options dealer in the normal course of his activity of dealing in options, and is listed on the qualified board or exchange on which such options dealer is registered.

After positions in Section 1256 contracts held by the Partnership at the end of its taxable year are marked to market, the resulting gain or loss will be combined with any gain or loss realized by the Partnership from positions in Section 1256 contracts closed during that year. Provided such positions were held as capital assets and were not part of a "hedging transaction", nor part of a "straddle" (see below), 60% of the resulting net gain or loss will be treated as a long-term capital gain or loss and 40% of such net gain or loss will be treated as a short-term gain or loss, regardless of the period of time particular positions were actually held by the Partnership. (However, gain or loss from positions treated as Section 1256 contracts under the Code Section 988 election provisions would be treated entirely as a short-term capital gain or loss). In addition, gain or loss in dealer equity options allocable to the Limited Partners are treated as short-term gains or losses and are not subject to the "60-40" rule. Section 1256(a) provides that gains or losses from transactions in nonequity options, dealer equity options, regulated futures and foreign currency contracts shall be treated as short-term capital gain or loss, to the extent of 40 percent of the gain or loss, and 60 percent of the gain or loss shall be treated as long-term capital gain or loss. However, Section 1256(f)(4) provides that gain or loss from transactions in dealer equity options allocable to Limited Partners shall be treated as short-term capital gains or losses. Consequently, Limited Partners will not be subject to the "60-40" rule in dealer equity options.

Straddles. If the Partnership incurs a loss upon the disposition of any position which is part of a "straddle" (i.e., two or more offsetting positions), recognition of that loss for tax purposes will be deferred until the Partnership recognizes the gain in the offsetting position of the straddle. This rule would apply to all of the positions in a straddle which includes one or more Section 1256 contracts but which does not consist entirely of Section 1256 contracts (a "mixed straddle"), but not to a straddle all of the positions of which are Section 1256 contracts. (Depending upon whether the Partnership makes certain elections, the Section 1256 contract components of a mixed straddle may be treated as not subject to the mark-to-market rules). This provision would also apply to the Partnership's positions in futures contracts on most foreign exchanges and in forward contracts on foreign currency (other than interbank contracts), which could result in the deferral of deductions for losses resulting from the disposition of such positions or from the disposition of Section 1256 contracts which offset those positions. The Partnership can specifically identify particular positions as being components of a straddle, in which case a realized loss would be allowable only upon the liquidation of all of the components

of the identified straddle. The Partnership's trading strategies may include the use of spreads or straddles, with or without making such identifications.

Interest and other carrying charges allocable to positions which are part of a straddle must be capitalized, rather than deducted currently.

Wash and Short Sale Rules. The "short-sale" rules may apply to positions held by the Partnership so that what might otherwise be characterized as long-term capital gain would be characterized as short-term capital gain or potential short-term capital loss as long-term capital loss. Furthermore, "wash sale" rules, which prevent the recognition of a loss from the sale of a security where a substantially identical security is (or has been) acquired within a prescribed time period, also apply where certain offsetting positions (other than identified straddle positions) are entered into within the prescribed period.

Section 988. Currency gain or loss from transactions in (i) bank forward contracts not traded in the interbank market, (ii) currency futures contracts traded on a foreign exchange and (iii) other futures contracts traded on a foreign exchange may be treated as ordinary income or loss under Code Section 988. Partners in the Partnership may elect on an individual basis, in effect, to recognize gain or loss from instruments described in clauses (i) and (ii) of the preceding sentence under the mark-to-market rules of Code Section 1256. Pursuant to that election gain or loss from such positions would be treated entirely as short-term capital gain or loss. Such an election would cause a partner's share of foreign currency gain or loss from the Partnership's Section 1256 contracts to be treated as ordinary income or loss, rather than 60% long-term and 40% short-term Capital gain or loss.

Partner-Partnership Positions. It is unclear to what extent the loss deferred, short sale, capitalization and wash sale rules would apply to straddles consisting of Partnership transactions and transactions by a partner in his individual capacity. Each prospective Limited Partner should review the application of these rules to his own particular tax situation, with special regard to the potential interaction between Partnership operations and commodities transactions entered into by the prospective Limited Partner in his individual capacity.

Short Sales. Gain or loss from a short sale of property is generally considered as capital gain or loss to the extent the property used to close the short sale constitutes a capital asset in the hands of the money manager or joint account trader utilized by the Partnership. Except with respect to certain situations where the property used by the money manager or joint account trader to close a short sale has a long-term holding period on the date of the short sale, special rules would generally treat the gains on short sales as short-term capital gains. These rules may also terminate the running of the holding period of "substantially identical property" held by the money manager or joint account trader. Moreover, a loss on a short sale will be treated as a long-term capital loss if, on the date of the short sale, "substantially identical property" has been held by the money manager or joint account trader for more than one year.

Effect of Straddle Rules on Partners' Securities Positions. The IRS may treat certain positions in securities held (directly or indirectly) by a partner and its indirect interest in similar

securities held by the money manager as "straddles" for Federal income tax purposes. The application of the "straddle" rules in such a case could affect a partner's holding period for the securities involved and may defer the recognition of losses with respect to such securities.

Limitation on Deductibility of Interest. For noncorporate taxpayers, Section 163(d) of the Code limits the deduction for "investment interest" (i.e., interest or shortsale expenses for "indebtedness incurred or continued to purchase or carry property held for investment"). Pursuant to amendments to the Code enacted by the Tax Reform Act of 1986, investment interest is not deductible to the extent that it exceeds the taxpayer's net gain and ordinary income derived from investments.

Conversion Transactions. Pursuant to the Omnibus Budget Reconciliation Act of 1993, Section 1258 was added to the Code, the effect of which is to recharacterize what was capital gain from a "conversion transaction" as ordinary income, with certain limitations. Conversion transactions are defined as transactions in which substantially all of the anticipated return is attributable to the time value of money and where the transaction either (i) consists of the acquisition of property by the taxpayer coupled with a substantially contemporaneous agreement to use the same or substantially identical property in the future; (ii) qualifies as a "straddle" (within the meaning of Section 1092 of the Code); (iii) was marketed or sold to the taxpayer on the basis that it possessed the characteristics of a loan, but that the interest-like return would be taxed as a capital gain; or (iv) is described as a conversion transaction in Treasury regulations. The amount of gain recharacterized as ordinary income will not exceed the amount of interest that would have accrued on the taxpayer's net investment for the relevant period at a yield equal to 12% of the "applicable rate" prescribed by the Code.

For purposes of this provision, the Partnership's activities will be treated as giving rise to investment income for a Limited Partner, and the investment interest limitation would apply to a Limited Partner's share of the interest and short sale expenses attributable to the Partnership's operation. In such case, a Limited Partner would be denied a deduction for all or part of that portion of its distributive share of the Partnership's ordinary losses attributable to interest expense unless it had sufficient investment income from all sources including the Partnership. A Limited Partner who could not deduct losses currently as a result of the application of Section 163(d) would be entitled to carry forward such losses to future years, subject to the same limitation. The investment interest limitation would also apply to interest paid by a partner on money borrowed to finance its investment in the Partnership. Potential investors are advised to consult with their own tax advisers with respect to the application of the investment interest limitation in their particular tax situations.

Deductibility of Partnership Investment Expenditures by Individual Partners. Under the Tax Reform Act of 1986, investment expenses (e.g., investment advisory fees) of an individual are deductible only to the extent they exceed 2% of his adjusted gross income. Pursuant to Temporary Regulations issued by the Treasury Department, this limitation on deductibility may apply to an individual Limited Partner's share of the investment expenses of the Partnership. Although the Partnership intends to treat the Incentive Allocation to the General Partner as not

being subject to the foregoing rule, there can be no assurance that the IRS may not treat such allocations as investment expenses which are subject to this rule.

The consequences of this limitation will vary depending upon the personal tax situation of each taxpayer. Accordingly, individual Limited Partners should consult their tax advisers with respect to the application of this limitation.

Application of Rules for Income and Losses from Passive Activities. The Tax Reform Act of 1986 restricts the deductibility of losses from a "passive activity" against certain income which is not derived from a passive activity. This restriction applies to individuals, personal service corporations and closely held corporations.

Pursuant to Temporary Regulations issued by the Treasury Department, income or loss from the Partnership generally will not constitute income or loss from a passive activity. Therefore, passive losses from other sources generally could not be deducted against a Limited Partner's share of income and gain from the Partnership.

4.    Broker Reporting and Backup Withholding

The subscription documents require each prospective investor in the Partnership to furnish the investor's "taxpayer identification number." If the number furnished is not correct, the investor may be subject to penalties imposed by the IRS and payments to the investor in redemption of Interests (and, possibly, other Partnership distributions) may become subject to 20% backup withholding.

Under currently proposed regulations, the Partnership is not required to treat either its securities transactions or redemptions of Interests as requiring separate reporting to investors under Code section 6045, since the information required to be furnished by that section is identical to that furnished to each investor on Schedule K-1 of Form 1065. The same information will be furnished to the IRS on Form 1065. Accordingly, investors will not receive separate Forms 1099-B with respect to such transactions.

5.    Unrelated Business Taxable Income

Tax-exempt entities should review with their tax advisers the discussion above regarding unrelated business taxable income and debt-financed income and any tax and/or filing obligation they may have with respect to unrelated business taxable income. Tax-exempt entities should also consult their tax advisers with regard to the unrelated business taxable income issues that may arise upon the disposition of their interest in the Partnership. In a private ruling, the IRS has taken the position that a portion of the gain realized from the sale (e.g., withdrawal) of a partnership interest by a tax-exempt entity is debt-financed income when the partnership uses borrowed funds to purchase property even though the tax-exempt entity did not use borrowed funds to purchase its partnership interest.

6.     Certain Issues Pertaining to Specific Exempt Organizations

Private Foundations. Private foundations and their managers are subject to excise taxes if they invest "any amount in such a manner as to jeopardize the carrying out of any of the foundation's exempt purposes." This rule requires a foundation manager, in making an investment, to exercise "ordinary business care and prudence" under the facts and circumstances prevailing at the time of making the investment, in providing for the short-term and long-term needs of the foundation to carry out its exempt purposes. The factors which a foundation manager may take into account in assessing an investment include the expected rate of return (both income and capital appreciation), the risks of rising and falling price levels, and the needs for diversification within the foundation's portfolio.

In order to avoid the imposition of an excise tax, a private foundation may be required to distribute on an annual basis its "distributable amount," which includes, among other things, the private foundation's "minimum investment return," defined as 5% of the excess of the fair market value of its non-functionally related assets (assets not used or held for use in carrying out the foundation's exempt purposes), over certain indebtedness incurred by the foundation in connection with such assets. It appears that a foundation's investment in the Partnership would most probably be classified as a nonfunctionally related asset. A determination that an interest in the Partnership is a nonfunctionally related asset could conceivable cause cash flow problems for a prospective Limited Partner which is a private foundation. Such an organization could be required to make distributions in an amount determined by reference to unrealized appreciation in the value of its interest in the Partnership. Of course, this factor would create less of a problem to the extent that the value of the investment in the Partnership is not significant in relation to the value of other assets held by a foundation.

In some instances, an investment in the Partnership by a private foundation may be prohibited by the "excess business holding" provisions of the Code. For example, if a private foundation (either directly or together with a "disqualified person") acquires more than 20% of the capital interest or profits interest of the Partnership, the private foundation may be considered to have "excess business holdings". If this occurs, such foundation may be required to divest itself of its interest in the Partnership in order to avoid the imposition of an excise tax.

A substantial percentage of investments of certain "private operating foundations" may be restricted to assets directly devoted to their tax-exempt purposes. Otherwise, generally, rules similar to those discussed above govern their operations.

Endowment Funds. Investment managers of endowment funds should consider whether the acquisition of an Interest is legally permissible. This is not a matter of Federal law, but is determined under state statutes. It should be noted, however, that under the Uniform Management of Institutional Funds Act, which has been adopted, in various forms, by a large number of states, participation in investment partnership or similar organizations in which funds are commingled and investment determinations are made by persons other than the governing board of the endowment fund is allowed.

32

7.  Tax Shelters.  In February 2003, the IRS released final Treasury Regulations expanding previously existing information reporting, record maintenance and investor list maintenance requirements with respect to certain "tax shelter" transactions (the "Tax Shelter Regulations"). The Tax Shelter Regulations may potentially apply to a broad range of investments that would not typically be viewed as tax shelter transactions, including investments in investment partnerships and portfolio investments of investment partnerships.  Under the Tax Shelter Regulations, if the Partnership engages in a "reportable transaction," the Partnership and, under certain circumstances, a Limited Partner would be required to (i) retain all records material to such "reportable transaction"; (ii) complete and file IRS Form 8886, "Reportable Transaction Disclosure Statement" as part of its Federal income tax return for each year it participates in the "reportable transaction"; and (iii) send a copy of such form to the IRS Office of Tax Shelter Analysis at the time the first such tax return is filed.  The scope of the Tax Shelter Regulations may be affected by further IRS guidance.  Non-compliance with the Tax Shelter Regulations may involve significant penalties and other consequences.  Each Limited Partner should consult his own tax advisers as to his obligations under the Tax Shelter Regulations.

8.  State and Local Taxation

In addition to the Federal income tax consequences described above, prospective investors should consider potential state and local tax consequences of an investment in the Partnership.  State and local laws often differ from Federal income tax laws with respect to the treatment of specific items of income, gain, loss, deduction and credit. A Partner's distributive share of the taxable income or loss of the Partnership will be required to be included in determining its reportable income for state and local tax purposes in the jurisdiction in which he is a resident.

## OUTLINE OF PARTNERSHIP AGREEMENT

The following outline summarizes the material provisions of the Partnership Agreement which are not discussed elsewhere in this Memorandum.  This outline is not definitive, and each prospective Limited Partner should carefully read the Partnership Agreement in its entirety. References herein to "Partners" unless otherwise indicated refer to General Partner and Limited Partners.

Limited Liability. A Limited Partner will be liable for debts and obligations of the Partnership only to the extent of its interest in the Partnership in the fiscal year (or portion thereof) to which such debts and obligations are attributable. In order to meet a particular debt or obligation, a Limited Partner or former Limited Partner shall, in the discretion of the General Partner, be required to make additional contributions or payments up to, but in no event in excess of, the aggregate amount of returns of capital and other amounts actually received by it from the Partnership during or after the fiscal year to which such debt or obligation is attributable.

Term. The Partnership will terminate on the earlier of a) December 31, 2112; or (b) a determination by the General Partner(s) that the Partnership should be dissolved or (c) upon the withdrawal, death, insolvency, adjudication of incompetency or bankruptcy of any General

Partner, the Partnership shall dissolve unless (i) there are one or more remaining General Partners who agree to continue the Partnership. In the event that the remaining General Partners determine not to continue the Partnership, the remaining General Partners, or if there is no remaining General Partner, one or more persons selected by a majority in interest of the Limited Partners, shall terminate and wind up the affairs of the Partnership.

Capital Accounts. Each Partner will have a Capital Account established on the books of the Partnership which will be credited with its capital contributions. A "Partnership Percentage" will be determined for each Partner for each month, by dividing its Capital Account as of the beginning of such month by the aggregate Capital Accounts of all Partners as of the beginning of such month. The Partnership Percentages will be subject to adjustment by the General Partner to reflect interim monthly additions and withdrawals, if any.

Each Partner's Capital Account will be increased to reflect any additional capital contributions made by it and its share of the Partnership's Net Capital Appreciation, and will be decreased to reflect withdrawals of capital, distributions and such Partner's share of Net Capital Depreciation.

Additional Capital Contributions. Additional contributions may be made by Partners as of the opening of business on the first day of any month, subject to the approval of the General Partner.

Management. The management of the Partnership will be vested exclusively in the General Partner. The Limited Partners will have no part in the management of the Partnership and will have no authority or right to act on behalf of the Partnership in connection with any matter. Nothing will preclude the General Partner from exercising investment responsibility for its own account, or for the accounts of individual members of their family, friends, or other business relationships. Neither the Partnership nor the Partners shall have any first refusal, co-investment or other rights in respect of the investments for such accounts or in any fees, profits or other income earned otherwise derived therefrom.

Salaries or Other Payments or Allocations to the General Partner. The Partnership will make no payments to the General Partner other than the allocation of Net Capital Appreciation (if any) to the General Partner in respect of its Partnership Percentage, the Management Fee, the Incentive Allocation and the reimbursement of certain expenses.

Valuation of Partnership Assets. The Partnership's assets will be valued by the General Partner in accordance with the terms of the Partnership Agreement. All matters concerning valuation of assets, as well as allocation among the Partners and accounting procedures not expressly provided by the Partnership Agreement, may be determined by the General Partner, whose determination will be final and conclusive as to all Partners. The General Partner may, from time to time, also establish or abolish reserves for estimated or accrued expenses and for unknown or contingent liabilities.

<u>Withdrawals in General</u>. No Partner shall be entitled to (i) receive distributions from the Partnership, except as provided in the Partnership Agreement; or (ii) withdraw any amount from his Capital Account other than upon his withdrawal from the Partnership except as provided in the Partnership Agreement.

<u>Required Withdrawals</u>. The General Partner may, at the end of any calendar month and for any reason, terminate the interest of any Limited Partner in the Partnership, upon at least 10 days' prior written notice to the Limited Partner. If the General Partner determines that the continued participation of any Limited Partner would cause the Partnership or any Partner to violate any law, or any litigation is commenced or threatened against the Partnership or any of its Partners arising out of such Limited Partner's participation in the Partnership, such Limited Partner's interest may be discontinued at any time upon five days' prior notice.

<u>Withdrawal, Death, etc. of a Limited Partner</u>. Each Limited Partner has the right to withdraw all or any portion of its Capital Account at the end of a calendar month upon 15 days' prior written notice to the Sub-Administrator.

In the event of the death, disability, incompetency, termination, bankruptcy, insolvency or dissolution of a Limited Partner, the interest of such Limited Partner will continue at the risk of the Partnership business until (i) the last day of the calendar month in which such event takes place (herein called the "month of determination") or (ii) the earlier termination of the Partnership.

A Limited Partner who withdraws from the Partnership will be paid at least 97% of his estimated Capital Account within 20 business days after the last day of the month of determination. The balance of such Limited Partner's Capital Account will be paid (subject to audit adjustments) to such Limited Partner (with interest) within 30 days after completion of the Partnership's annual audit.

<u>Withdrawal of a General Partner</u>. A General Partner may withdraw all or any portion of its Capital Account or from the Partnership at the end of any calendar month upon 15 days' prior written notice to the Sub-Administrator from the end of such calendar month or withdraw from the Partnership with the consent of the other General Partners, if any.

<u>Limitations on Withdrawals</u>. The right of any Partner to receive amounts withdrawn is subject to the provision by the General Partner for all Partnership liabilities in accordance with generally accepted accounting principles and for reserves for contingencies.

<u>Transfers of Interests of Partners</u>. No mortgage, hypothecation, transfer, sale, assignment or other disposition, whether voluntary or otherwise, of all or a part of the Partners Interest in the Partnership may be effected except with the consent of the General Partner.

<u>Admission of New Partners</u>. Partners may, with the consent of the General Partner, be admitted as of the beginning of each calendar month or at such other times as permitted by the

35

General Partner in its sole discretion. Each new Partner will be required to execute an agreement pursuant to which it becomes bound by the terms of the Partnership Agreement.

Amendments to Partnership Agreement. The Partnership Agreement may be modified or amended at any time with the written consent of the Partners having in excess of 50% of the Partnership Percentages of the Partners and the written consent of the General Partner insofar as is consistent with the laws governing the Partnership Agreement, provided, however, that without the specific consent of each Partner affected thereby, no such modification or amendment shall (i) reduce its Capital Account or rights of contribution or withdrawal; or (ii) amend provisions of the Partnership Agreement relating to amendments; or (iii) amend Sec. 3.05 of the Partnership Agreement. However, without the consent of the Partners, the General Partner may (i) amend the Partnership Agreement or Schedule thereto to reflect changes validly made in the membership of the Partnership and the capital contributions and Partnership Percentages of the Partners; (ii) reflect a change in the name of the Partnership or the effective date of the Partnership; (iii) make a change that is necessary or, in the opinion of the General Partners, advisable to qualify the Partnership as a limited partnership or a partnership in which the Limited Partners have limited liability under the laws of any state, or ensure that the Partnership will not be treated as an association taxable as a corporation for Federal income tax purposes; (iv) make a change that does not adversely affect the Partners in any material respect or that is necessary or desirable to cure any ambiguity, to correct or supplement any provision in the Partnership Agreement that would be inconsistent with any other provision in the Partnership Agreement, or to make any other provision with respect to matters or questions arising under the Partnership Agreement that will not be inconsistent with any other provisions of the Partnership Agreement, in each case so long as such change does not adversely affect the Limited Partners, (v) make a change that is necessary or desirable to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order, ruling or regulation of any Federal or state statute, so long as such change is made in a manner which minimizes any adverse effect on the Partners, or that is required or contemplated by this Agreement; (vi) make a change in any provision of the Partnership Agreement that requires any action to be taken by or on behalf of the General Partner or the Partnership pursuant to the requirements of applicable Delaware law if the provisions of applicable Delaware law are amended, modified or revoked so that the taking of such action is no longer required; or (vii) make any other amendments similar to the foregoing.

Reports to Partners. The Partnership's independent certified accountants (selected by the General Partner) will audit the Partnership's books and records as of the end of each fiscal year. Within 90 days after the end of each fiscal year the Partnership will mail to the Limited Partners the Annual Report prepared by its independent certified public accountants setting forth a balance sheet of the Partnership, a profit and loss statement showing the results of operations of the Partnership and its Net Capital Appreciation or Net Capital Depreciation, a statement of such Partner's Capital Account and the manner of its calculation and the Partnership Percentage as of the end of the prior fiscal year. At the end of each fiscal year, each Partner will be furnished the required tax information for preparation of their respective tax returns. Within 30 days following the end of each fiscal quarter in each fiscal year, each Partner will be mailed unaudited financial information setting forth, inter alia, a statement of its Net Capital Appreciation or Net Capital Depreciation; provided, however, that the General Partner may send out reports on a more

36

frequent basis and has elected to provide monthly reports within 30 days following the end of each month.

Exculpation. The Partnership Agreement provides that neither the General Partner or any officer, director, employee or other agent of any of them ("Affiliates of the General Partner") will be liable to any Partner or the Partnership for mistakes of judgment or for action or inaction which said person reasonably believed to be in the best interests of the Partnership, or for losses due to such mistakes, action or inaction or to the negligence, dishonesty or bad faith of any employee, broker, money manager or other agent of the Partnership, provided that such employee, broker, money manager or agent was selected, engaged or retained by the Partnership with reasonable care. The General Partner and the Affiliates of the General Partner may consult with counsel, advisers (investment and otherwise) and accountants in respect of Partnership affairs and shall be fully protected and justified in any action or inaction which is taken in accordance with the advice or opinion of such counsel, advisers or accountants, provided that they were selected with reasonable care. The foregoing provisions (as well as the indemnification provisions described below), however, shall not be construed to relieve the General Partner or any Affiliates of the General Partner of any liability to the extent that such liability may not be waived, modified or limited under applicable law.

Indemnification of General Partner. The Partnership Agreement provides that the Partnership is to indemnify and hold harmless each General Partner, former General Partner, Affiliate of the General Partner and/or the legal representatives of any of them, from and against any loss or expense suffered or sustained by him by reason of the fact that he is or was a General Partner of the Partnership or an Affiliate of the General Partner, including without limitation any judgment, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceeding, provided, such loss or expense resulted from a mistake of judgment on the part of such person, or from action or inaction taken in good faith for a purpose which said person reasonably believed to be in the best interest of the Partnership. The Partnership Agreement also provides that the Partnership will, in the sole discretion of the General Partner, advance to any General Partner and to any Affiliates of the General Partner reasonable attorney's fees and other costs and expenses incurred in connection with the defense of any action or proceeding which arises out of such conduct. In the event that such an advance is made by the Partnership, the General Partner will agree to reimburse the Partnership to the extent that it is determined that it or he was not entitled to indemnification.

## LIMITATIONS ON TRANSFERABILITY; SUITABILITY REQUIREMENTS

Each purchaser of an Interest must bear the economic risk of its investment for an indefinite period of time (subject to its right to withdraw capital from the Partnership) because the Interests have not been registered under the Securities Act of 1933, as amended, and, therefore, cannot be sold unless they are subsequently registered under that Act or an exemption from such registration is available. It is not contemplated that any such registration will ever be effected or that certain exemptions provided by rules promulgated under that Act (such as Rule

144) will be available. The Partnership Agreement provides that a Partner may not assign or pledge its Interest (except by operation of law) nor substitute another person as a Partner, without prior consent of the General Partner, which may be withheld for any reason. Limited Partners may withdraw from the Partnership without the consent of the General Partner upon 15 days prior written notice, at the end of any month. The foregoing restrictions on transferability must be regarded as substantial and will be clearly reflected in the Partnership's record.

Each purchaser of an Interest will be required to represent that the Interest is being acquired for its own account, for investment, and not with a view to resale or distribution. The Interests are suitable investments only for sophisticated investors and financial institutions for which an investment in the Partnership does not constitute a complete investment program and who fully understand, are willing to assume, and who have the financial resources necessary to withstand, the risks involved in the Partnership's specialized investment program and to bear the potential loss of their entire investment in the Interest (See "CERTAIN RISK FACTORS" and "TAX ASPECTS".)

Each prospective purchaser is urged to consult with its own advisers to determine the suitability of an investment in the Partnership and the relationship of such an investment to the purchaser's overall investment program and financial and tax position. Each purchaser of an Interest will be required to further represent that after all necessary advice and analysis, its investment in an Interest is suitable and appropriate, in light of the foregoing considerations.

## PURCHASES BY EMPLOYEE-BENEFIT PLANS - ERISA CONSIDERATIONS

The Partnership may accept capital contributions from individual retirement accounts ("IRAs"), Keogh plans, pension or profit-sharing plans, governmental plans, entities that invest the assets of such accounts or plans and/or other benefit plan investors (all such entities are herein referred to as "Benefit Plan Investors"). The General Partner does not anticipate that the assets of the Partnership will be subject to ERISA, because the General Partner intends to limit the investments in the Partnership by Benefit Plan Investors to less than 25% of the value of any class of equity interests of the Partnership, excluding from this calculation any non-Benefit Plan Investor interest of that class held by the General Partner or persons affiliated with the General Partner or their employees. Generally, no subscriptions for Partnership interests made by Benefit Plan Investors will be accepted and no transfers of Partnership interests will be permitted to the extent that the investment or transfer would result in the Partnership exceeding this 25% limit. In addition, because the 25% limit is to be calculated upon every contribution to or withdrawal (in whole or in part) from the Partnership, the General Partner has the authority to require the retirement or withdrawal (in whole or in part) of any Partnership interest if the continued holding of such interest, in the opinion of the General Partner, could result in the Partnership being subject to ERISA.

The Subscription Agreement requires that in the event that the General Partner determines that the Partnership's assets constitute "plan assets" within the meaning of ERISA or that the transactions contemplated in this Memorandum constitute "prohibited transactions," and

no exemption from the prohibited transactions penalties has been obtained, then each employee-benefit plan must withdraw its Interest upon notice from the General Partner.

Each Limited Partner will be furnished with monthly statements and annual reports which include the Net Asset Value per Interest. The General Partner believes that these statements will be sufficient to permit plan fiduciaries to provide an annual valuation of plan investments as required by ERISA; however, fiduciaries should note that they have the ultimate responsibility for providing such valuation. Accordingly, plan fiduciaries should consult with their attorneys or other advisors regarding their obligations under ERISA with respect to making such valuations.

## ANTI-MONEY LAUNDERING REGULATIONS

As part of the Partnership's or Administrator's responsibility for the prevention of money laundering, the Partnership and/or the Administrator (or Sub-Administrator) may require a detailed verification of a Limited Partner's identity, any beneficial owner underlying the nominal Limited Partner and the source of the payment.

The General Partner and the Administrator (or Sub-Administrator) reserve the right to request such information as is necessary to verify the identity of a subscriber and the underlying beneficial owner of a subscriber's or Limited Partner's interest in the Partnership. In the event of delay or failure by the subscriber or Limited Partner to produce any information required for verification purposes, the General Partner and/or the Administrator (or Sub-Administrator) may refuse to accept a subscription or may cause the redemption of any such Limited Partner from the Partnership. The Partnership, without notice, may suspend the withdrawal rights of such Limited Partner if the General Partner reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Partnership, the General Partner or any of the Partnership's other service providers.

Each subscriber and Limited Partner shall be required to make such representations to the Partnership as the Partnership and the General Partner shall require in connection with such anti-money laundering programs, including without limitation, representations to the Partnership that such subscriber or Limited Partner is not a prohibited country, territory, individual or entity listed on the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") website and that it is not directly or indirectly affiliated with, any country, territory, individual or entity named on an OFAC list or prohibited by any OFAC sanctions programs. Such Limited Partner shall also represent to the Partnership that amounts contributed by it to the Partnership were not directly or indirectly the proceeds of criminal conduct or derived from activities that may contravene U.S. federal, state or international laws and regulations, including anti-money laundering laws and regulations.

## PROXY VOTING POLICY

The Partnership invests a portion of its assets in equity securities offered by publicly traded entities. From time to time, such entities may ask their investors to vote their interests in the entities with regard to corporate governance and other matters. The General

Partner has authority to vote such proxies and other securities on behalf of the Partnership and may delegate such authority to custodians or sub-custodians of the Partnership's assets.

The General Partner has developed a proxy voting policy which it believes ensures that proxy proposals, amendments, consents or resolutions relating to the Partnership's securities (collectively, "proxies") are voted in a manner that best serves the interests of the Partnership. The General Partner has also have reviewed the proxy voting policies of the custodians and sub-custodians of the Partnership's assets. The following factors are elements of the proxy voting policies of each of the foregoing:

- the impact on short-term and long-term value;

- the preservation and increase in capital of the Partnership;

- the costs and benefits associated with the proposal;

- the effect on the liquidity of the Partnership; and

- the customary industry and business practices.

With respect to proxies, the General Partner will:

- maintain accurate records as to voting proxies;

- with the Partnership, periodically review voting procedures employed and actions taken on individual voting situations;

- have procedures in place for reconciling proxies;

- take reasonable steps to ensure that proxies for which it is responsible are received and, where appropriate, voted; and

- comply with all current applicable proxy laws, rules and regulations.

## COUNSEL

The Law Offices of Andrew E. Goldstein, 488 Madison Avenue, 16th Floor, New York, New York 10022, have acted as counsel to the Partnership in connection with this offering of the Interests. Mr. Goldstein is a Limited Partner of the Partnership.

## ADDITIONAL INFORMATION

The Partnership will make available to any proposed Limited Partner any additional information, which the Partnership possesses, or which it can acquire without unreasonable effort or expense, necessary to verify or supplement the information set forth herein.

## SUBSCRIPTION FOR INTERESTS

Persons interested in becoming Limited Partners will be furnished the Partnership Agreement and a Subscription Agreement to be completed by them and returned to the General Partner c/o the Sub- Administrator.

Each subscriber will also be required to acknowledge in the Subscription Agreement that the Partnership, the Administrator and/or the Sub-Administrator may disclose to each other, to any other service provider to the Partnership, to any regulatory body in any applicable jurisdiction to which any of the Partnership, the Administrator and/or the Sub-Administrator is or may be subject, copies of the subscriber's Subscription Agreement and any information concerning the subscriber in their respective possession, whether provided by the subscriber to the Partnership, the Administrator and/or the Sub-Administrator or otherwise, including details of that subscriber's holdings in the Partnership, historical and pending transactions in the Partnership and the values thereof, and any such disclosure shall not be treated as a breach of any restriction upon the disclosure of information imposed on any such person by law or otherwise.

## MISCELLANEOUS

Persons wishing to redeem their investment in the Partnership should send in a request to withdraw their investment to the General Partner c/o the Sub-Administrator.

The Sub-Administrator will process withdrawal requests which are initially received by facsimile, but no part of the withdrawal proceeds will be paid to withdrawing Limited Partners until the Sub-Administrator has acknowledged the withdrawal request signed by the withdrawing Limited Partner or by an authorized signatory of the withdrawing Limited Partner. Neither the Partnership nor the Sub-Administrator shall be responsible for any mis-delivery or non-receipt of any facsimile. Facsimiles sent to the Partnership or the Sub-Administrator shall only be effective when actually acknowledged by the Sub-Administrator. Limited Partners who submit withdrawal requests initially by facsimile to the Sub-Administrator are advised to contact the investor relations group at the Sub-Administrator by telephone at (416) 969-6700 to confirm that the Sub-Administrator has received the facsimile withdrawal request.

Written inquiries related to the Partnership should be addressed to the Investor Relations Group of the Sub-Administrator at:

Citco (Canada) Inc.
Attn: Investor Relations Group
2 Bloor Street East, Suite 2700
Toronto, Ontario M4W 1A8
Canada
Phone (416) 969-6700
Fax (416) 966-0925
E-mail: irtor@citco.com

EXHIBIT 1

FORM OF LIMITED PARTNERSHIP AGREEMENT

GREENWICH SENTRY, L.P.

AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT

Dated as of April 30, 2006

GREENWICH SENTRY, L.P.
AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT
INDEX

| ARTICLE I | GENERAL PROVISIONS | 1 |
|---|---|---|
| Sec. 1.01. | Partnership Name | 1 |
| Sec. 1.02. | Fiscal Year | 1 |
| Sec. 1.03. | Liability of Partners | 1 |
| Sec. 1.04. | Purposes of Partnership | 3 |
| Sec. 1.05. | Assignability of Interest | 4 |

| ARTICLE II | MANAGEMENT OF PARTNERSHIP | 4 |
|---|---|---|
| Sec. 2.01. | Management Generally | 4 |
| Sec. 2.02. | Authority of the General Partner | 4 |
| Sec. 2.03. | Reliance by Third Parties | 6 |
| Sec. 2.04. | Activity of the General Partner | 6 |
| Sec. 2.05. | Exculpation | 6 |
| Sec. 2.06. | Indemnification of General Partner | 7 |
| Sec. 2.07. | Payment of Costs and Expenses | 7 |

| ARTICLE III | CAPITAL ACCOUNTS OF PARTNERS AND OPERATIONS THEREOF | 8 |
|---|---|---|
| Sec. 3.01. | Definitions | 8 |
| Sec. 3.02. | Capital Contributions | 8 |
| Sec. 3.03. | Capital Accounts | 9 |
| Sec. 3.04. | Partnership Percentages | 9 |
| Sec. 3.05. | Allocation of Net Capital Appreciation or Net Capital Depreciation. | 9 |
| Sec. 3.06. | Loss Recovery Account | 10 |
| Sec. 3.07. | Valuation of Assets. | 10 |
| Sec. 3.08. | Liabilities | 11 |
| Sec. 3.09. | Allocation for Tax Purposes | 11 |
| Sec. 3.10. | Determination by General Partner of Certain Matters | 12 |
| Sec. 3.11. | Adjustments to Take Account of Interim Accounting Period Events | 12 |

| ARTICLE IV | WITHDRAWALS AND DISTRIBUTIONS OF CAPITAL | 12 |
|---|---|---|
| Sec. 4.01. | Withdrawals and Distributions in General | 12 |
| Sec. 4.02. | Withdrawals. | 12 |
| Sec. 4.03. | Limitation on Withdrawals | 13 |
| Sec. 4.04. | Salaries or Other Payments or Allocations to the General Partner | 13 |

ARTICLE V     ADMISSION OF NEW PARTNERS ........................................................13
  Sec. 5.01.    New Partners ..................................................................................13

ARTICLE VI    WITHDRAWAL, DEATH OR INSANITY OF PARTNERS ......................14
  Sec. 6.01.    Withdrawal, Death, etc ...................................................................14
  Sec. 6.02.    Withdrawal, Death, etc ...................................................................15
  Sec. 6.03.    Required Withdrawals .....................................................................15
  Sec. 6.04.    Effective Date of Withdrawal ..........................................................16
  Sec. 6.05.    Limitations on Withdrawal of Capital Account ...............................16

ARTICLE VII   DURATION AND TERMINATION OF PARTNERSHIP ..........................16
  Sec. 7.01.    Duration .........................................................................................16
  Sec. 7.02.    Termination ....................................................................................16
  Sec. 7.03.    Method of Distribution ...................................................................17

ARTICLE VIII  REPORTS TO PARTNERS .................................................................17
  Sec. 8.01.    Independent Auditors .....................................................................17
  Sec. 8.02.    Filing of Tax Returns ......................................................................17
  Sec. 8.03.    Reports to Partners .........................................................................17
  Sec. 8.04.    Reports to Partners and Former Partners .......................................18
  Sec. 8.05.    Tax Matters Partner ........................................................................18

ARTICLE IX    MISCELLANEOUS ...........................................................................18
  Sec. 9.01.    General ...........................................................................................18
  Sec. 9.02.    Power of Attorney ..........................................................................19
  Sec. 9.03.    Amendments to Partnership Agreement .........................................19
  Sec. 9.04.    Adjustment of Basis of Partnership Property ..................................20
  Sec. 9.05.    Choice of Law .................................................................................20
  Sec. 9.06.    Inspection of Books and Records ....................................................20
  Sec. 9.07.    Notices ...........................................................................................20
  Sec. 9.08.    Goodwill ........................................................................................20
  Sec. 9.09.    Headings ........................................................................................21

303006.1

GREENWICH SENTRY, L.P.

AMENDED AND RESTATED
LIMITED PARTNERSHIP AGREEMENT

Dated as of April 30, 2006

This AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP dated as of April 30, 2006 (herein called the "Agreement") among the undersigned (herein called the "Partners", which term shall include any persons hereafter admitted to the Partnership pursuant to Article V of this Agreement and shall exclude any persons who cease to be Partners pursuant to Article VI of this Agreement) pursuant to the provisions of the Delaware Revised Uniform Limited Partnership Act (6 Del. C. Sec. 17101, et seq.) (the "Act").

## ARTICLE I

## GENERAL PROVISIONS

Sec. 1.01. <u>Partnership Name</u>. The Partnership shall do business under the name of Greenwich Sentry, L.P. (herein called the "Partnership").

Sec. 1.02. <u>Fiscal Year</u>. The fiscal year of the Partnership (herein called the "fiscal year") shall end on December 31 of each year or on such other date as the General Partner of the Partnership shall from time to time determine.

Sec. 1.03. <u>Liability of Partners</u>. The names and addresses of all of the Partners and the amounts of their respective contributions to the Partnership (herein called "Capital Contributions") are set forth in a schedule entitled "Schedule of Capital Contributions" (herein called the "Schedule") which shall be filed with the books and records of the Partnership and is hereby incorporated by reference and made a part of this Agreement.

Those Partners who are designated in Part I of the Schedule as General Partner (herein called the "General Partner" or "General Partners") and former General Partners shall have unlimited liability for the repayment and discharge of all debts and obligations of the Partnership attributable to any fiscal year during which they are or were General Partners of the Partnership.

Those Partners who are designated in Part II of the Schedule as Limited Partners and, former Limited Partners shall be liable for the repayment and discharge of all debts and obligations of the Partnership attributable to any fiscal year (or relevant portion thereof) during

which they are or were Limited Partners of the Partnership to the extent of their respective interests in the Partnership in the fiscal year (or relevant portion thereof) to which any such debts and obligations are attributable.

The Partners and all former Partners shall share all losses, liabilities or expenses suffered or incurred by virtue of the operation of the preceding paragraphs of this Sec. 1.03 in the proportions of their respective Partnership Percentages (determined as provided in Sec. 3.04 hereof, as adjusted pursuant to Sec. 3.11, if appropriate) for the fiscal year (or relevant portion thereof) to which any debts or obligations of the Partnership are attributable. A Limited Partner's or former Limited Partner's share of all losses, liabilities or expenses shall not be greater than its respective interests in the Partnership for such fiscal year (or relevant portion thereof). The General Partner and all former General Partners shall share all losses, liabilities or expenses suffered or incurred by virtue of the operation of the second paragraph of this Sec. 1.03 in excess of their respective interests in the Partnership in the fiscal year (or relevant portion thereof) to which any debts or obligations are attributable either in the proportions of their respective Partnership Percentages for such fiscal year (or relevant portion thereof) or in such proportions as have been agreed to by such General Partners.

As used in this Sec. 1.03, the terms "interests in the Partnership" and "interest in the Partnership" shall mean with respect to any fiscal year (or relevant portion thereof) and with respect to each Partner (or former Partner) the amount in the Capital Account of such Partner on the last day of such fiscal year (or relevant portion thereof) as determined under Article III hereof; provided, however, that if such Partner (or former Partner) shall have ceased to be a Partner of the Partnership pursuant to Article VI hereof as of the end of or during such fiscal year, the terms "interests in the Partnership" and "interest in the Partnership" shall mean the Capital Account of such Partner (or former Partner), prior to any adjustments to the Capital Account of such Partner for such fiscal year (or relevant portion thereof) pursuant to Article III hereof.

Notwithstanding any other provision in this Agreement, in no event shall any Limited Partner or former Limited Partner be obligated to make any additional contribution or payment, respectively, whatsoever to the Partnership, or have any liability for the repayment and discharge of the debts and obligations of the Partnership (apart from his or its interest in the Partnership), except that a Limited Partner (or former Limited Partner) may be required, for purposes of meeting his obligations under this Sec. 1.03, to make additional contributions or payments, respectively, up to, but in no event in excess of, the aggregate amount of returns of capital and other amounts actually received by him from the Partnership during or after the fiscal year to which any debt or obligation is attributable.

As used in this Agreement, the terms "former General Partners," "former Limited Partners," and "former Partners" refer to such persons or entities as hereafter from time to time cease to be General Partners, Limited Partners and Partners respectively pursuant to the terms and provisions of this Agreement.

303006.1

Sec. 1.04. <u>Purposes of Partnership</u>. The Partnership is organized for the purposes of realizing capital appreciation by allocating its assets to securities trading accounts and engaging in all activities and transactions the General Partner may deem necessary or advisable in connection therewith, including, without limitation:

(a)    to invest and trade in capital stock of U.S. or foreign corporations, preorganization certificates and subscriptions, warrants, bonds, notes, debentures (whether subordinated, convertible or otherwise), rights, options, money market funds, commercial paper, certificates of deposit, bankers' acceptances, trust receipts, obligations of the United States, or any State thereof, and instrumentalities of any of them, and any other obligations and instruments or evidences of indebtedness commonly referred to as securities of whatever kind or nature of any person, corporation, government or entity whatsoever, whether readily marketable or not, in rights and options relating thereto including forward and futures contracts (and options thereon) relating to stock indices or other indices, financial instruments and commodities and commodity contracts, and put and call options written by the Partnership or by others (all such items being called herein a "Security" or "Securities"), to sell Securities short and cover such sales, and to lend funds or properties of the Partnership, either with or without security; and

(b)    to enter into, make and perform, all contracts and other undertakings, and engage in all activities and transactions, as the General Partner may deem necessary or advisable to the carrying out of the foregoing objects and purposes, including without limitation:

(i)    to purchase, hold, sell, exchange, transfer, mortgage, pledge and otherwise acquire and dispose of and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to Securities owned by the Partnership;

(ii)    to borrow or raise moneys, and, from time to time without limit as to amount or manner and time of repayment, to issue, accept, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness, and to secure the payment of any thereof (and of the interest thereon) by mortgage upon, or pledge, conveyance or assignment in trust of, the whole or any part of the property or funds of the Partnership, whether at the time owned or thereafter acquired and to sell, pledge or otherwise dispose of promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other instruments or evidences of indebtedness of the Partnership;

3

(iii)    to lend any of its Securities, provided that collateral at least equal in value to the market value of such Securities is deposited by the borrower thereof with the Partnership or its Agent;

(iv)    to maintain for the conduct of Partnership affairs one or more offices and in connection therewith rent or acquire office space, engage personnel, whether part-time or full-time, and do such other acts as the General Partner may deem necessary or advisable in with the maintenance and administration of such office or offices; and

(v)    to engage attorneys, independent accountants, other investment advisers, management companies or such other persons as the General Partner may deem necessary or advisable.

Sec. 1.05. <u>Assignability of Interest</u>.  Without the prior written consent of the General Partner, a Partner may not (i) pledge or assign its interest in whole or in part to any person except by operation of law, or (ii) substitute for itself as a Partner any other person. Any attempted pledge, assignment or substitution not made in accordance with the preceding sentence shall be void.

## ARTICLE II

## MANAGEMENT OF PARTNERSHIP

Sec. 2.01. <u>Management Generally</u>.  The power to make all decisions with regard to the management of the Partnership, unless otherwise specified, shall be vested exclusively in the General Partner.  The Limited Partners shall have no part in the management of the Partnership, and shall have no authority or right to act on behalf of the Partnership in connection with any matter.

Sec. 2.02. <u>Authority of the General Partner</u>. Except as otherwise expressly provided in this Agreement, the General Partner shall have full, exclusive and complete discretion in the management of the Partnership and the power on behalf and in the name of the Partnership to take any action on behalf of the Partnership hereunder, to carry out any and all of the purposes of the Partnership set forth in Sec. 1.04, and to perform all acts and enter into and perform all contracts and other undertakings which it may deem necessary or advisable or incidental thereto, including, without limitation, the power to:

(a)    effect transactions in Securities utilizing such investment strategies and techniques as shall be determined by the General Partner; provided however, that such strategies and techniques shall be consistent with those described in any documents utilized in connection with the offer and sale of interests in the Partnership;

4

(b)    open, conduct and close accounts, including margin accounts, with brokers, members of various options exchanges and money managers for the purpose of investing in Securities; which powers shall include, without limitation, the authority to pay, or authorize the payment of, brokerage commissions, management and incentive and/or performance fees (which may be in excess of the lowest commission rates or fee schedules available) and a portion of the Partnership's trading profits to, respectively (i) brokers which execute transactions for the account of the Partnership are, (ii) money managers receiving allocations of the Partnership's assets;

(c)    open, maintain and close bank accounts and draw checks or other orders for the payment of moneys;

(d)    lend, with or without security, any of the funds or properties of the Partnership and, from time to time without limit as to amount, borrow or raise funds and secure the payment of obligations of the Partnership by mortgage upon, or pledge or hypothecation of, all or any part of the property of the Partnership;

(e)    do any and all acts on behalf of the Partnership, and exercise all rights of the Partnership, with respect to its interest in any person, firm, corporation or other entity, including without limitation the voting of Securities, participation in arrangements with creditors, the institution and settlement or compromise of suits and administrative proceedings and other like or similar matters;

(f)    organize one or more corporations to hold record title, as nominee for the Partnership, to Securities or funds of the Partnership;

(g)    act for and on behalf of the Partnership, and authorize any General Partner, employee or other agent of the Partnership to act in all matters incidental to the foregoing;

(h)    act as investment adviser to the Partnership and provide research and analysis and direct the formulation of investment policies and strategies for the Partnership;

(i)    to represent the Partnership and to make decisions affecting tax treatment of the Partnership, and Fairfield Greenwich (Bermuda) Ltd., the General Partner, is hereby designated as the Tax Matters Partner; and

(j)    to exercise its discretion to waive for any Limited Partner any provision of this Partnership Agreement which imposes a requirement on a Limited Partner, whether it be for making an investment, withdrawing capital or

303006.1

otherwise, if and so long as such waiver does not adversely affect the rights of any other Limited Partner.

Sec. 2.03. <u>Reliance by Third Parties</u>. Persons dealing with the Partnership are entitled to rely conclusively upon the certificate or representation of the General Partner to the effect that they are then acting as General Partner and upon the power and authority of the General Partner as herein set forth.

Sec. 2.04. <u>Activity of the General Partner</u>. The General Partner shall devote so much of its time to the affairs of the Partnership as in the judgment of the General Partner the conduct of the Partnership's business shall reasonably require, and the General Partner shall not be obligated to do or perform any act or thing in connection with the business of the Partnership not expressly set forth herein. Nothing herein contained shall be deemed to preclude the General Partner, or its affiliates, from engaging directly or indirectly, in any other business, irrespective of whether any such business is similar to the business of the Partnership or shall otherwise involve purchasing, selling or holding securities or allocating assets to money managers; and nothing herein contained shall be deemed to preclude the General Partner or its affiliates from directly or indirectly purchasing, selling and holding securities or investing with money managers for the account of any such other business, or for its or their own accounts irrespective of whether any securities or interests in money managers are purchased, sold or held for the account of the Partnership, either directly or through an investment in a money manager. No Limited Partner shall by reason of being a Partner in the Partnership have any right to participate in any manner in any profits or income earned or derived by or accruing to any General Partner from the conduct of any business other than the business of the Partnership, from any transaction in Securities or any interest purchased in a money manager effected by any General Partner or an affiliate thereof for any account other than that of the Partnership.

Sec. 2.05. <u>Exculpation</u>. No General Partner or any officer, director, employee or other agent of any of them ("Affiliates of the General Partner") shall be liable to any Partner or the Partnership for mistakes of judgment or for action or inaction which said person reasonably believed to be in the best interests of the Partnership, or for losses due to such mistakes, action or inaction or to the negligence, dishonesty or bad faith of any employee, broker, money manager or other agent of the Partnership, provided that such employee, broker, money manager or agent was selected, engaged or retained by the Partnership with reasonable care. The General Partner and the Affiliates of the General Partner may consult with counsel, advisers (investment and otherwise), and accountants in respect of Partnership affairs and shall be fully protected and justified in any action or inaction which is taken in accordance with the advice or opinion of such counsel, advisers or accountants, provided that they shall have been selected with reasonable care. Notwithstanding any of the foregoing to the contrary, the provisions of this Sec. 2.05 shall not be construed so as to relieve (or attempt to relieve) any General Partner or any Affiliates of the General Partner of any liability, to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of this Sec. 2.05 to the fullest extent permitted by law.

303006.1

Sec. 2.06. Indemnification of General Partner. To the fullest extent permitted by law, the Partnership shall indemnify and hold harmless each General Partner and former General Partner, Affiliates of the General Partner and/or the legal representatives, of any of them from and against any loss or expense suffered or sustained by him, by reason of the fact that he is or was a General Partner of the Partnership or an Affiliate of the General Partner, including without limitation any judgment, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceeding provided, such loss or expense resulted from a mistake of judgment on the part of such person, or from action or inaction taken in good faith for a purpose which said person reasonably believed to be in the best interests of the Partnership. The Partnership shall, in the sole discretion of the General Partner, advance to any General Partner and to any of the Affiliates of the General Partner, and/or the legal representatives of any of them, reasonable attorney's fees and other costs and expenses incurred in connection with the defense of any action or proceeding which arises out of such conduct. The General Partner and the Affiliates of the General Partner, and the legal representative of any of them, shall agree, that in the event that he or it receives any such advance, such person shall reimburse the Partnership for such fees, costs and expenses to the extent it shall be determined that he or it was not entitled to indemnification under this section.

Sec. 2.07. Payment of Costs and Expenses. The Partnership shall be responsible for all legal, accounting and other organizational fees and expenses incurred in connection with the formation of the Partnership and the offering and sale of the limited partnership interests, such amounts were amortized among the Partners during the period of five years after the Partnership commenced operations; provided that offering expenses in excess of $25,000 were borne by the General Partner.

The General Partner shall bear all continuing offering costs and all expenses in maintaining the Partnership's offices and administration fees (collectively, the "Offering and Office Expenses"). The Partnership shall bear, for each Accounting Period, all other expenses incurred in the operation of the Partnership, if any, including, the Management Fee, taxes, the ordinary and necessary expenses directly related to the Partnership's investment and trading activities, including transactional costs (e.g., brokerage commissions and interest expense), escrow and custodial fees, registrar, transfer agent and administration fees, all legal, accounting and auditing fees, including any legal and auditing fees that relate to extraordinary circumstances, such as tax examinations or litigation involving the Partnership; but excluding any legal fees incurred in the continuation of the offering of interests in the Partnership. The Partnership will pay the General Partner or its designee, an amount equal to one-fortieth of one percent (0.025%) of the Beginning Value allocable to the Capital Accounts of the Limited Partners to reimburse the General Partner for providing administrative services and back-office support to the Partnership (the "Expense Reimbursement"). To the extent a Limited Partner is charged the Management Fee, such Limited Partner will not be charged his pro-rata share of the Expense Reimbursement.

7