# **EXHIBIT S**

Dockets.Justia.com

Fraser River Pile & Dredge Ltd. *v*. Can-Dive Services Ltd., [1999] 3 S.C.R. 108

**Fraser River Pile & Dredge Ltd.** *Appellant*

*v.*

**Can-Dive Services Ltd.** *Respondent*

**Indexed as: Fraser River Pile & Dredge Ltd. *v*. Can-Dive Services Ltd.**

File No.: 26415.

1999: February 25; 1999: September 10.

Present: Gonthier, Cory, McLachlin, Iacobucci, Major, Bastarache and Binnie JJ.

on appeal from the court of appeal for british columbia

*Contracts -- Privity of Contract -- Insurance policy -- Doctrine of principled exception to privity of contract -- Insurance policy including waiver of subrogation -- Coverage extending to charterers -- Charterer negligent in sinking of barge -- Barge owner recovering for loss and agreeing to sue charterer -- Whether charterer can rely on waiver of subrogation clause to defend against subrogated action initiated by barge owner's insurers on basis of principled exception to the privity of contract doctrine.*

A barge owned by the appellant sank while chartered to the respondent. The appellant's insurance policy included clauses waiving subrogation and extending coverage to affiliated companies and charterers. The insurers paid the appellant the fixed

1999 CanLII 654 (S.C.C.)

amount stipulated in the policy for the loss of the barge. The appellant made a further agreement with the insurers to pursue a negligence action against the respondent and to waive any right to the waiver of subrogation clause. The negligence action against the respondent was allowed at trial, and dismissed on appeal. At issue here is whether a third-party beneficiary can rely on a waiver of subrogation clause to defend against a subrogated action on the basis of a principled exception to the privity of contract doctrine.

*Held*: The appeal should be dismissed.

As a general rule the doctrine of privity provides that a contract can neither confer rights nor impose obligations on third parties. Consequently, a third-party beneficiary would normally be precluded from relying on the terms of the insurance policy between the barge owner and its insurers. Given the circumstances of this appeal, however, a principled exception to the privity doctrine applies. A new exception is dependent upon the intention of the contracting parties. This intention is determined on the basis of two critical and cumulative factors: (a) the parties to the contract must intend to extend the benefit to the third party seeking to rely on the contractual provision; and (b) the activities performed by the third party seeking to rely on the contractual provision must be the very activities contemplated as coming within the scope of the contract in general, or the provision in particular, as determined by reference to the intentions of the parties.

The first condition for the requisite intention was met, given that the waiver of subrogation clause expressly referred to a class of intended beneficiaries whose membership included the respondent. That clause was not conditional on the appellant's

1999 CanLII 654 (S.C.C.)

initiative in favour of any particular third-party beneficiary and can be enforced by the respondent acting independently. The appellant's agreement with the insurers to pursue legal action against the respondent did not effectively delete the third-party benefit from the contract. The parties' freedom of contract was not restricted because the agreement between the appellant and the insurers was concluded after the respondent's inchoate right crystallized into an actual benefit. At that point, the respondent became a party to the initial contract for the limited purpose of relying on the waiver of subrogation clause, and the appellant and the insurers cannot unilaterally revoke the respondent's crystallized rights. The second requirement for relaxing the doctrine of privity was also met. The relevant activities arose in the context of the very activity anticipated in the policy pursuant to the waiver of subrogation clause. That clause was not contained in an unrelated contract that did not pertain to the charter contract.

Sound policy reasons exist for relaxing the doctrine of privity in these circumstances. Such an exception establishes a default rule that closely corresponds to commercial reality. When sophisticated commercial parties enter into a contract of insurance which expressly extends the benefit of a waiver of subrogation clause to an ascertainable class of third-party beneficiaries, any conditions purporting to limit the extent of the benefit must be clearly expressed. Relaxing the doctrine of privity here would not introduce significant change to the law which would be better left to the legislature. The factors supporting the incremental nature of the exception were present. The appellant's concerns regarding the potential for double recovery were unfounded as the respondent cannot rely on any provision in the policy to establish a separate claim.

**Cases Cited**

**Applied:** *London Drugs Ltd. v. Kuehne & Nagel International Ltd.*, [1992] 3 S.C.R. 299; **disapproved:** *Vandepitte v. Preferred Accident Insurance Corp. of New York*, [1933] A.C. 70; **considered:** *Commonwealth Construction Co. v. Imperial Oil Ltd.*, [1978] 1 S.C.R. 317; **referred to:** *Scott v. Wawanesa Mutual Insurance Co.*, [1989] 1 S.C.R. 1445; *Thomas & Co. v. Brown* (1899), 4 Com. Cas. 186; *Watkins v. Olafson*, [1989] 2 S.C.R. 750; *R. v. Salituro*, [1991] 3 S.C.R. 654.

APPEAL from a judgment of the British Columbia Court of Appeal (1997), 39 B.C.L.R. (3d) 187, 98 B.C.A.C. 138, 161 W.A.C. 138, 47 C.C.L.I. (2d) 111, [1998] 3 W.W.R. 177, [1997] B.C.J. No. 2355 (QL), allowing an appeal from a judgment of Warren J. (1995), 9 B.C.L.R. (3d) 260, 33 C.C.L.I. (2d) 9, [1995] 9 W.W.R. 376, [1995] B.C.J. No. 1611 (QL). Appeal dismissed.

*David F. McEwen*, for the appellant.

*D. Barry Kirkham*, *Q.C.*, and *Gregory J. Tucker*, for the respondent.

The judgment of the Court was delivered by

*//Iacobucci J.//*

1              IACOBUCCI J.-- This appeal concerns the application of the doctrine of privity of contract to a waiver of subrogation clause in a contract of insurance.

I. Facts

2       This action arose subsequent to the sinking of the derrick barge "Sceptre Squamish", owned by the appellant, Fraser River Pile & Dredge Ltd. ("Fraser River") and, at the time of loss, under charter to the respondent, Can-Dive Services Ltd. ("Can-Dive"). Can-Dive was held liable at trial for damages in the amount of $949,503. In appealing the trial decision, Can-Dive does not dispute that the loss resulted from its negligence, but contends that it cannot be held liable in what is in effect a subrogated action by the underwriters of Fraser River's insurance policy.

3       Fraser River carries on business as a provider of dredging, pile-driving and related services. It owns approximately 50 vessels which it uses for these purposes. Occasionally, Fraser River charters vessels for which it has no immediate use to others. In 1990, Can-Dive undertook work as a sub-contractor on a natural gas pipeline under construction between Vancouver Island and the mainland of British Columbia. In order to carry out the work required, Can-Dive contracted with Fraser River to charter the "Sceptre Squamish", and arranged for Fraser River's personnel to operate the crane and winches on board. The charter contract also included a flat scow. Can-Dive assumed full responsibility for towing the barge to and from the work site, and for maintaining the safety and condition of the barge. The "Sceptre Squamish" was towed to the work site on October 30, 1990, where it remained until sinking in stormy weather on the night of November 16, 1990.

4       At all material times during the charter of the "Sceptre Squamish" and its subsequent loss, Fraser River was insured under a Hull Subscription Policy (the "policy"), dated June 28, 1990. Following the loss of the vessel and its equipment, Fraser River recovered from the insurers the sum of $1,128,365.57, being the fixed amount stipulated in the policy to cover such loss. On June 4, 1991, Fraser River and the insurers entered

into a further agreement, setting out their joint intention to pursue a legal action against Can-Dive in negligence for the sinking of the "Sceptre Squamish". The preamble of the agreement included the following terms:

1999 CanLII 654 (S.C.C.)

> C) The Underwriters have agreed to pay the claims (the claims) of F.R.P.D. for the loss of the barge and crane and the Underwriters wish to proceed with legal action against Can-Dive Services Ltd. and possibly others to recover part or all of their payments;
>
> D) F.R.P.D. has agreed to waive any right it may have pursuant to the waiver of subrogation clause in the aforesaid policy with respect to Can-Dive Services Ltd. . . .

5        Fraser River subsequently commenced this action in June 1991 to recover damages for its losses arising from the sinking of the derrick barge. Can-Dive not only denied that it was negligent, but argued as well that the action was a subrogated action conducted by and for the sole benefit of the insurers, i.e., that as Fraser River had received payment from the insurers in the amount specified in the policy (which exceeded the actual value of the loss by a little over $300,000), the claim was wholly subrogated, notwithstanding that it was initiated by Fraser River. Accordingly, the insurers were precluded from proceeding against Can-Dive on the basis that the company was included within the category of "Additional Insureds" as defined in the terms of the policy as follows:

GENERAL CONDITIONS

1.   <u>ADDITIONAL INSUREDS CLAUSE</u>

> It is agreed that this policy also covers the Insured, associated and affiliated companies of the Insured, be they owners, subsidiaries or interrelated companies and as bareboat charterers and/or charterers and/or sub-charterers and/or operators and/or in whatever capacity and shall so continue to cover notwithstanding any provisions of this Policy with respect to change of ownership or management. Provided, however, that in the event of any claim being made by associated, affiliated, subsidiary or interrelated companies under this clause, it shall not be

entitled to recover in respect of any liability to which it would be subject if it were the owner, nor to a greater extent than an owner would be entitled in such event to recover.

. . .

Notwithstanding anything contained in the Additional Insureds Clause above, it is hereby understood and agreed that permission is hereby granted for these vessels to be chartered and the charterer to be considered an Additional Insured hereunder.

. . .

Trustee Clause

It is understood and agreed that the Named Insured who obtained this Policy did so on his own behalf and as agent for the others insured hereby including those referred to by general description.

6        In the alternative, Can-Dive claimed that, assuming it was not included in the policy under the category of "Additional Insureds", the insurers had nonetheless expressly waived any right of subrogation it may have held against the defendant, pursuant to the waiver of subrogation clause which read as follows:

17. SUBROGATION AND WAIVER OF SUBROGATION CLAUSE

In the event of any payment under this Policy, the Insurers shall be subrogated to all the Insured's rights of recovery therefor, and the Insured shall execute all papers required and shall do everything that may be necessary to secure such rights, but it is agreed that the Insurers waive any right of subrogation against:

. . .

(b)   any charterer(s) and/or operator(s) and/or lessee(s)   and/or mortgagee(s). . . .

II. Judgments Below

A. *Supreme Court of British Columbia* (1995), 9 B.C.L.R. (3d) 260

1999 CanLII 654 (S.C.C.)

<u>Warren J.</u>

7      Having found that Fraser River's loss was owing to Can-Dive's negligence, Warren J. nonetheless agreed with Can-Dive that the action amounted to a subrogated claim, and went on to consider Can-Dive's defences based on the provisions of the policy. Can-Dive raised three defences: (a) that in agreeing to charter the "Sceptre Squamish" to Can-Dive, Fraser River agreed as well to extend its own insurance coverage under the policy to cover Can-Dive for the duration of the charter agreement; (b) that it came within the class of "Additional Insureds" as specified in the terms of the policy, thereby precluding the insurers from proceeding in a subrogated action against their own insured; and (c) that the insurers expressly waived a right of subrogation against Can-Dive as a "charterer" pursuant to a waiver of subrogation clause contained in the policy.

8      As to Can-Dive's claim that insurance coverage under Fraser River's policy was a term of the charter agreement, Warren J. held that there was insufficient clear and cogent evidence to enable him to conclude on a balance of probabilities that Fraser River agreed to extend its own insurance to cover any risk of loss by Can-Dive during the charter period. Warren J. also rejected Can-Dive's claim that the insurers were precluded from bringing a subrogated action against the company on the basis that Can-Dive, as a "charterer", came within the contractual definition of "Additional Insureds". Warren J. noted that, for this argument to succeed, Can-Dive would have to rely on a contractual term in the policy, and therefore must first overcome the doctrine of privity of contract which generally provides that a stranger to a contract may neither enforce nor rely on its terms.

1999 CanLII 654 (S.C.C.)

9          Warren J. next considered Can-Dive's submission that, notwithstanding its status as a third party to the contract, the insurers were bound by the waiver of subrogation clause contained therein as the doctrine of privity of contract does not apply in circumstances where a third-party beneficiary relies on the waiver to defend against an action initiated by the insurers.  Having reviewed the existing jurisprudence purporting to deal with privity of contract in this context, and relying in particular on the decision of the Privy Council in *Vandepitte v. Preferred Accident Insurance Corp. of New York*, [1933] A.C. 70, Warren J. concluded that the doctrine was still applicable except to the extent it was incrementally abrogated through the creation of specific judicial exceptions, or more substantively, through legislative reform, as has generally been the case with automobile insurance legislation.  He held that the Court's decision in *London Drugs Ltd. v. Kuehne & Nagel International Ltd.*, [1992] 3 S.C.R. 299, was controlling on this issue; a waiver of subrogation clause, as with any other contractual provision, is subject to the doctrine of privity unless a traditional exception applies, or sufficient reason exists to relax the doctrine in the given circumstances.  Warren J. held that relaxing the doctrine of privity of contract in the present circumstances would alter the doctrine in excess of the incremental changes contemplated by the reasoning in *London Drugs*.

10          Finally, Warren J. considered whether Can-Dive could avail itself of the principles of either trust or agency established in the case law as potential exceptions to the doctrine of privity of contract.  He quickly dismissed the application of trust principles, concluding that the policy did not reveal any intention that Fraser River was acting as trustee on Can-Dive's behalf in contracting for insurance coverage.  As to the agency exception, Warren J. first noted that Fraser River, as the purported agent for Can-Dive, must have intended to act on behalf of Can-Dive as the principal or as a member of an ascertainable class of principals.  As he was of the opinion that the case could be

decided on other grounds, Warren J. was prepared to assume for the purposes of argument that the requisite intention was present.

11        The more significant obstacle in applying principles of agency, however, was the requirement of ratification. Warren J. held that to gain the benefit of the policy, Can-Dive as principal would have to ratify the actions taken by Fraser River in acting on its behalf to arrange for the policy to cover Can-Dive as within the class of "Additional Insureds". Subsequent ratification involves three initial requirements: (a) the purported agent must have represented to the third party that he or she was acting on behalf of the purported principal; (b) the purported principal must have been competent at the time the act was done; and (c) the purported principal must be legally capable of completing the act at the time of ratification. Warren J. concluded that the three initial requirements were met in these circumstances. The first criterion was satisfied by the inclusion of the "Trustee Clause", indicating to the insurers that Fraser River may be acting as agent on behalf of certain unnamed parties who might later ratify the act and become "Additional Insureds" under the policy. Both the second and third criteria were satisfied by the status of Fraser River and Can-Dive as capable, juridical persons at all material times.

12        Assuming that these initial hurdles were overcome, there still remained, however, as a final requirement an actual act of ratification, whether express or by implication. Warren J. concluded that Can-Dive's only act of ratification was amending its Statement of Defence upon learning of the existence of the policy and its potential scope of coverage. While Warren J. did not find that Can-Dive was precluded from ratifying its inclusion as an "Additional Insureds" under the terms of the policy subsequent to the time at which the loss occurred, he held that the opportunity for ratification was extinguished when Fraser River and the insurers entered into an agreement in June 1991 to pursue a claim against Can-Dive for damages. The effect of

this agreement was to change the terms of the policy, given that an action against Can-Dive would have been fundamentally incompatible with the existing scope of the "Additional Insureds" clause. Accordingly, no effective ratification of the policy could have occurred subsequent to this date.

13      Also fatal to Can-Dive's claim was Warren J.'s finding that, even assuming that the requirements of ratification had been met, no consideration flowed from Can-Dive to the insurers; the mere act of chartering Fraser River's vessel was insufficient to amount to consideration for the purposes of concluding that agency principles applied to deem Can-Dive a legal party to the contract between Fraser River and the insurers. In the result, Fraser River's action in negligence was allowed.

B. *Court of Appeal for British Columbia* (1997), 39 B.C.L.R. (3d) 187

Esson, Huddart and Proudfoot JJ.A.

14      Esson J.A., writing for the court, agreed that the claim was wholly subrogated, noting that Fraser River had already received from the insurers the amount fixed in the policy, a sum which exceeded Fraser River's actual losses by over $300,000. He rejected Can-Dive's submission, however, that the trial judge was in error in finding that Fraser River did not covenant to insure Can-Dive as a term of the charter agreement. Instead, Esson J.A. chose to decide the appeal on the basis of the waiver of subrogation clause contained in the policy and the principles of the doctrine of privity of contract.

15      Esson J.A. first considered whether Can-Dive, as a stranger to the contract of insurance between Fraser River and the insurers, could rely on the waiver of subrogation clause to defend against the subrogated action. He disagreed with the trial judge's

conclusion on this point, holding instead that *Vandepitte*, *supra*, had been impliedly overruled by the Supreme Court of Canada on the basis that the precedent had been ignored in cases where it might well have applied: see, for example, *Scott v. Wawanesa Mutual Insurance Co.*, [1989] 1 S.C.R. 1445, where the Court held, without any reference to the doctrine of privity of contract, that the named insured's son came within the class of "Insured" as defined in the homeowner's policy. Esson J.A. also noted that soon after *Vandepitte* had been decided, its potential impact on contracts for automobile insurance was abrogated in every relevant jurisdiction. In his opinion, the decision was not good law, as it had either been overtaken by legislation, as in the case of automobile insurance, or largely ignored in favour of reasoning which better reflected commercial reality.

16        Apart from referring to the implicit overruling of *Vandepitte*, Esson J.A. also concluded that judicial authority supported Can-Dive's submission that "waiver of subrogation" clauses in contracts of insurance constituted an exception to the doctrine of privity of contract in circumstances where the third-party beneficiary is not a party to the policy, but nonetheless falls within the contractual definition of those to whom coverage is extended. In *Commonwealth Construction Co. v. Imperial Oil Ltd.*, [1978] 1 S.C.R. 317, for example, subcontractors who were not parties to a builder's risk policy, but who met the definition of a "Contractor" for the purposes of coverage, were able to overcome the doctrine of privity of contract. In holding that subrogation was not available against the subcontractor, de Grandpré J. relied upon the nature of the relationship amongst the various contractors on a construction site, i.e., that the parties were involved in a joint effort towards a common goal. To give effect to the doctrine of privity of contract would be commercially unreasonable in these circumstances, in that any loss on the construction site caused by one of the parties would necessarily lead to litigation between the parties, contrary to the interest of the common enterprise. In addition to the builder's risk cases, Esson J.A. also identified an existing exception to the doctrine of privity of contract in

insurance law more generally, originating in a line of authority dating back to a decision of Mathew J. in *Thomas & Co. v. Brown* (1899), 4 Com. Cas. 186.

17      Esson J.A. next considered whether this established exception, available in circumstances where a purported third-party beneficiary comes within the class of those to whom insurance coverage is extended, has nonetheless been overtaken by the Court's decision in *London Drugs*, *supra*. In other words, the exception in favour of waiver of subrogation clauses remains good law only to the extent that it does not contradict the legal principles or analytical framework set out in *London Drugs*. Esson J.A. held that an exception of this nature was entirely consistent on the basis that, if an insurer were to seek to avoid liability on the same grounds as were relied upon in *Vandepitte*, *supra*, under the more recent *London Drugs* analysis, it would fail. Many of the same considerations relevant to the disposition of *London Drugs* were applicable in the instant case, e.g., the third party or stranger to the contract was seeking to rely on a contractual provision to defend against an action, rather than seeking to enforce the terms of the contract on its own initiative against one of the original parties. Furthermore, it was expressly stated in *London Drugs* that nothing in the reasons should be taken as affecting in any way existing exceptions to the doctrine of privity of contract such as principles of trust or agency. Accordingly, as the jurisprudence in support of an exception to privity in favour of third-party beneficiaries falling within the contractual definition of the insured class for the purposes of the insurance policy had not been overtaken by the Court's decision in *London Drugs*, Esson J.A. concluded that Can-Dive could rely on the waiver of subrogation clause in the policy.

18      Esson J.A. was also of the view that Can-Dive could succeed on the basis of the agency exception. He found that the trial judge erred in failing to find a clear act of ratification by Can-Dive. Specifically, he did not agree with the trial judge's conclusion

that Can-Dive's amendment to the pleadings in February 1994 could not amount to ratification on the basis that Fraser River and its insurers, by virtue of their agreement in June 1991 to proceed against Can-Dive, had effectively revised the terms of the policy so as to delete the provision granting third-party rights to Can-Dive. Esson J.A. held that while parties to a contract may subsequently delete provisions in favour of third-party beneficiaries, contractual terms providing protection against loss to third parties cannot be varied to the detriment of the third party after the occurrence of the very loss contemplated in the policy.

1999 CanLII 654 (S.C.C.)

19      Accordingly, Esson J.A. allowed the appeal and dismissed the action against Can-Dive.

## III. Issues

20      As noted above, this appeal concerns the question of whether a third-party beneficiary can rely on a waiver of subrogation clause contained in a contract of insurance to defend against a subrogated action initiated by the insurer. In the context of this appeal, this question raises the following issues:

a.      Is Can-Dive, as a third-party beneficiary under the insurance policy pursuant to the waiver of subrogation clause, entitled to rely on that clause to defend against the insurer's subrogated action on the basis of the agency exception to the doctrine of privity of contract?

b.      Is Can-Dive, as a third-party beneficiary under the insurance policy pursuant to the waiver of subrogation clause, entitled to rely on that clause to defend against the insurer's subrogated action on the basis of the principled exception to the privity of contract doctrine established by the Court's decision in *London Drugs*?

## IV. Analysis

1999 CanLII 654 (S.C.C.)

A.  *Is Can-Dive, as a third-party beneficiary under the insurance policy pursuant to the waiver of subrogation clause, entitled to rely on that clause to defend against the insurer's subrogated action on the basis of the agency exception to the doctrine of privity of contract?*

21      The entirety of the dispute between the parties concerns the legal effect to be given to the waiver of subrogation contained in Clause 17 of the appellant Fraser River's contract of insurance, which reads as follows:

> 17.  SUBROGATION AND WAIVER OF SUBROGATION CLAUSE
>
> In the event of any payment under this Policy, the Insurers shall be subrogated to all the Insured's rights of recovery therefor, and the Insured shall execute all papers required and shall do everything that may be necessary to secure such rights, but it is agreed that the Insurers waive any right of subrogation against:
>
> . . .
>
> (b)  any charterer(s) and/or operator(s) and/or lessee(s) and/or mortgagee(s). . . .

22      The respondent Can-Dive is seeking to rely on the waiver of subrogation clause contained in the policy to defend against this subrogated action in negligence. As a general rule, however, the doctrine of privity provides that a contract can neither confer rights nor impose obligations on third parties. This appeal is concerned only with the former situation, namely, circumstances in which a third party is seeking to obtain a benefit or right established in its favour pursuant to the terms of the contract. The Court is not called on to address the situation in which a contract imposes obligations on a third party, and I stress that nothing in these reasons should be taken as applicable to the law in this area.

23      Although the doctrine of privity would normally be fatal to its case, Can-Dive submits that the principle of agency applies to deem Can-Dive a party to the contract in

law, if not in fact, such that privity is no longer a concern. Because of the approach I intend to take to this case, I do not find it necessary to deal with the argument that Can-Dive may rely on the waiver of subrogation clause on this basis. In so stating, I do not wish to be taken as either agreeing or disagreeing with Esson J.A.'s conclusions on this issue. Instead, I prefer to adopt the approach set out in *London Drugs, supra*, and consider whether the doctrine of privity should be relaxed in these circumstances.

B.   *Is Can-Dive, as a third-party beneficiary under the insurance policy pursuant to the waiver of subrogation clause, entitled to rely on that clause to defend against the insurer's subrogated action on the basis of the principled exception to the privity of contract doctrine established by the Court's decision in London Drugs?*

1. <u>*London Drugs* and a Principled Exception to the Doctrine of Privity of Contract</u>

24          As stated above, Can-Dive's position is that of a third-party beneficiary who normally would be precluded from enforcing or relying on the terms of the policy in effect between Fraser River and its insurers. Accordingly, it is necessary to consider the legal status of the waiver of subrogation clause in light of the Court's decision in *London Drugs*. In that case, the Court introduced what was intended as a principled exception to the common law doctrine of privity of contract.

25          At issue was the status of a limitation of liability clause in the standard form contract between the appellant and the respondent for storage of the appellant's transformer. The clause limited a "warehouseman's" liability on any one package to $40. While in storage, a transformer was damaged owing to negligence on the part of the respondent's employees. The appellant sued both the warehouse company and its employees, and the trial judge found the employees personally liable for the full amount of the damages. On appeal, the majority allowed the employees to rely on the limitation

of liability clause in the employer's contract with the appellant, notwithstanding that the employees were not parties to this contract. The majority of the Court upheld the result on appeal, concluding that in circumstances where the traditional exceptions to privity of contract such as agency or trust do not apply, courts may nonetheless undertake the appropriate analysis, bounded by both common sense and commercial reality, in order to determine whether the doctrine of privity with respect to third-party beneficiaries should be relaxed in the given circumstances.

26    The Court devoted a great deal of attention to the judicial history and application of the doctrine of privity of contract as it relates to third-party beneficiaries, noting the extent of judicial discontent, legislative override, and a significant body of academic criticism. While acknowledging that privity of contract is an established doctrine of contract law, the Court concluded, at p. 423, that the concerns expressed regarding the application of the doctrine to third-party beneficiaries indicated that the time for judicial consideration in this particular context had arrived:

> These comments and others reveal many concerns about the doctrine of privity as it relates to third party beneficiaries. For our purposes, I think it sufficient to make the following observations. Many have noted that an application of the doctrine so as to prevent a third party from relying on a limitation of liability clause which was intended to benefit him or her frustrates sound commercial practice and justice. It does not respect allocations and assumptions of risk made by the parties to the contract and it ignores the practical realities of insurance coverage. In essence, it permits one party to make a unilateral modification to the contract by circumventing its provisions and the express or implied intention of the parties. In addition, it is inconsistent with the reasonable expectations of all the parties to the transaction, including the third party beneficiary who is made to support the entire burden of liability. The doctrine has also been criticized for creating uncertainty in the law. While most commentators welcome, at least in principle, the various judicial exceptions to privity of contract, concerns about the predictability of their use have been raised. Moreover, it is said, in cases where the recognized exceptions do not appear to apply, the underlying concerns of commercial reality and justice still militate for the recognition of a third party beneficiary right.

27      The respondent employees in *London Drugs* were unable to rely on existing principles of trust or agency. Rather than adapting these established principles to accommodate yet another *ad hoc* exception to the doctrine of privity, it was decided to adopt a more direct approach as a matter of principle. The Court held that, in circumstances where the traditional exceptions do not apply, the relevant functional inquiry is whether the doctrine should be relaxed in the given circumstances.

28      In order to distinguish mere strangers to a contract from those in the position of third-party beneficiaries, the Court first established a threshold requirement whereby the parties to the contract must have intended the relevant provision to confer a benefit on the third party. In other words, an employer and its customer may agree to extend, either expressly or by implication, the benefit of any limitation of liability clause to the employees. In the circumstances of *London Drugs*, the customer had full knowledge that the storage services contemplated by the contract would be provided not only by the employer, but by the employees as well. In the absence of any clear indication to the contrary, the Court held that the necessary intention to include coverage for the employees was implied in the terms of the agreement. The employees, therefore, as third-party beneficiaries, could seek to rely on the limitation clause to avoid liability for the loss to the customer's property.

29      The Court further held, however, that the intention to extend the benefit of a contractual provision to the actions of a third-party beneficiary was irrelevant unless the actions in question came within the scope of agreement between the initial parties. Accordingly, the second aspect of the functional inquiry was whether the employees were acting in the course of their employment when the loss occurred, and whether in so acting they were performing the very services specified in the contract between their employer and its customer. Based on uncontested findings of fact, it was clear that the damage to

the customer's transformer occurred when the employees were acting in the course of their employment to provide the very storage services specified in the contract.

30        Taking all of these circumstances into account, the Court interpreted the term "warehouseman" in the limitation of liability clause to include coverage for the employees, thereby absolving them of any liability in excess of $40 for the loss that occurred. The Court concluded that the departure from the traditional doctrine of privity was well within its jurisdiction representing, as it did, an incremental change to the common law rather than a wholesale abdication of existing principles. Given that the exception was dependent on the intention stipulated in the contract, relaxing the doctrine of privity in the given circumstances did not frustrate the expectations of the parties.

### 2. Application of the Principled Exception to the Circumstances of this Appeal

31        As a preliminary matter, I note that it was not our intention in *London Drugs*, *supra*, to limit application of the principled approach to situations involving only an employer-employee relationship. That the discussion focussed on the nature of this relationship simply reflects the prudent jurisprudential principle that a case should not be decided beyond the scope of its immediate facts.

32        In terms of extending the principled approach to establishing a new exception to the doctrine of privity of contract relevant to the circumstances of the appeal, regard must be had to the emphasis in *London Drugs* that a new exception first and foremost must be dependent upon the intention of the contracting parties. Accordingly, extrapolating from the specific requirements as set out in *London Drugs*, the determination in general terms is made on the basis of two critical and cumulative factors: (a) Did the parties to the contract intend to extend the benefit in question to the third party

1999 CanLII 654 (S.C.C.)

seeking to rely on the contractual provision? and (b) Are the activities performed by the third party seeking to rely on the contractual provision the very activities contemplated as coming within the scope of the contract in general, or the provision in particular, again as determined by reference to the intentions of the parties?

(a) *Intentions of the Parties*

33      As to the first inquiry, Can-Dive has a very compelling case in favour of relaxing the doctrine of privity in these circumstances, given the express reference in the waiver of subrogation clause to "charterer(s)", a class of intended third-party beneficiaries that, on a plain reading of the contract, includes Can-Dive within the scope of the term. Indeed, there is no dispute between the parties as to the meaning of the term within the waiver of subrogation clause; disagreement exists only as to whether the clause has legal effect. Accordingly, there can be no question that the parties intended to extend the benefit in question to a class of third-party beneficiaries whose membership includes Can-Dive. Given the lack of ambiguity on the face of the provision, there is no need to resort to extrinsic evidence for the purposes of determining otherwise. If the parties did not intend the waiver of subrogation clause to be extended to third-party beneficiaries, they need not have included such language in their agreement.

34      In essence, Fraser River's argument in terms of the intention of the parties is not that the scope of the waiver of subrogation clause does not extend to third parties such as Can-Dive, but that the provision can only be enforced by Fraser River on Can-Dive's behalf, and not by Can-Dive acting independently. A plain reading of the provision, however, does not support this conclusion. There is no language in the clause indicating that the waiver of subrogation is intended to be conditional upon Fraser River's initiative in favour of any particular third-party beneficiary. It appears to me that Fraser River has

1999 CanLII 654 (S.C.C.)

conflated arguments concerning the intentions of the parties in drafting the provision and the legal effect to be given to the provision. In no uncertain terms, the waiver of subrogation clause indicates that the insurers are precluded from proceeding with an action against third-party beneficiaries coming within the class of "charterer(s)", and the relevant inquiry is whether to give effect to these intentions by enforcing the contractual term, notwithstanding the doctrine of privity of contract.

35      In my opinion, the case in favour of relaxing the doctrine of privity is even stronger in the circumstances of this appeal than was the case in *London Drugs, supra,* wherein the parties did not expressly extend the benefit of a limitation of liability clause covering a "warehouseman" to employees. Instead, it was necessary to support an implicit extension of the benefit on the basis of the relationship between the employers and its employees, that is to say, the identity of interest between the employer and its employees in terms of performing the contractual obligations. In contrast, given the express reference to "charterer(s)" in the waiver of subrogation clause in the policy, there is no need to look for any additional factors to justify characterizing Can-Dive as a third-party beneficiary rather than a mere stranger to the contract.

36      Having concluded that the parties intended to extend the benefit of the waiver of subrogation clause to third parties such as Can-Dive, it is necessary to address Fraser River's argument that its agreement with the insurers to pursue legal action against Can-Dive nonetheless effectively deleted the third-party benefit from the contract. A significant concern with relaxing the doctrine of privity is the potential restrictions on freedom of contract which could result if the interests of a third-party beneficiary must be taken into account by the parties to the initial agreement before any adjustment to the contract could occur. It is important to note, however, that the agreement in question was concluded subsequent to the point at which what might be termed Can-Dive's inchoate

right under the contract crystallized into an actual benefit in the form of a defence against an action in negligence by Fraser River's insurers. Having contracted in favour of Can-Dive as within the class of potential third-party beneficiaries, Fraser River and the insurers cannot revoke unilaterally Can-Dive's rights once they have developed into an actual benefit. At the point at which Can-Dive's rights crystallized, it became for all intents and purposes a party to the initial contract for the limited purposes of relying on the waiver of subrogation clause. Any subsequent alteration of the waiver provision is subject to further negotiation and agreement among all of the parties involved, including Can-Dive.

37      I am mindful, however, that the principle of freedom of contract must not be dismissed lightly. Accordingly, nothing in these reasons concerning the ability of the initial parties to amend contractual provisions subsequently should be taken as applying other than to the limited situation of a third-party's seeking to rely on a benefit conferred by the contract to defend against an action initiated by one of the parties, and only then in circumstances where the inchoate contractual right has crystallized prior to any purported amendment. Within this narrow exception, however, the doctrine of privity presents no obstacle to contractual rights conferred on third-party beneficiaries.

(b) *Third-Party Beneficiary is Performing the Activities Contemplated in the Contract*

38      As to the second requirement that the intended third-party beneficiary must rely on a contractual provision in connection with the very activities contemplated by the contract in general, or by the relevant clause in particular, Fraser River has argued that a significant distinction exists between the situation in *London Drugs*, *supra*, and the circumstances of the present appeal. In *London Drugs*, the relationship between the

contracting parties and the third-party beneficiary involved a single contract for the provision of services, whereas in the present circumstances, such a "contractual nexus", to use Fraser River's phrase, does not exist. In other words, the waiver of subrogation clause upon which Can-Dive seeks to rely is contained in an unrelated contract that does not pertain to the charter contract in effect between Fraser River and Can-Dive.

39     With respect, I do not find this argument compelling, given that a similar contractual relationship could be said to exist in *London Drugs*, in terms of the service contract between the parties and a contract of employment which presumably existed between the employer and employees. At issue is whether the purported third-party beneficiary is involved in the very activity contemplated by the contract containing the provision upon which he or she seeks to rely. In this case, the relevant activities arose in the context of the relationship of Can-Dive to Fraser River as a charterer, the very activity anticipated in the policy pursuant to the waiver of subrogation clause. Accordingly, I conclude that the second requirement for relaxing the doctrine of privity has been met.

(c) *Policy Reasons in Favour of an Exception in These Circumstances*

40     Having found that Can-Dive has satisfied both of the cumulative threshold requirements for the purposes of introducing a new, principled exception to the doctrine of privity of contract as it applies to third-party beneficiaries, I nonetheless wish to add that there are also sound policy reasons for relaxing the doctrine in these circumstances. In this respect, it is time to put to rest the unreasonable application of the doctrine of privity to contracts of insurance established by the Privy Council in *Vandepitte*, *supra*, a decision characterized since its inception by both legislatures and the judiciary as out of touch with commercial reality. As Esson J.A. noted, the decision in *Vandepitte* received little attention outside the field of automobile insurance, where it had been

promptly overruled by legislative amendment in British Columbia and other provinces. In addition, Esson J.A. was correct in holding that *Vandepitte* has been impliedly overruled in the course of decisions by the Court, given that in cases where the rule of privity might have been applied, the decision was ignored: *Scott, supra*. Of particular interest is the Court's decision in *Commonwealth Construction Co., supra*. The case concerned a general contractor's "builder's risk" policy that purported to extend coverage to subcontractors who were not parties to the original contract. In holding that subrogation was not available against the subcontractors, de Grandpré J., writing for the Court, made the following comments regarding the "Additional Insureds" and "Trustee" clauses, at p. 324:

> While these conditions may have been inserted to avoid the pitfalls that were the lot of the unnamed insured in *Vandepitte v. Preferred Accident Insurance Corpn. of New York* [citations omitted], a precaution that in my view was not needed, they without doubt cover additional ground.

41      When considered in light of the Court's discussion of the necessary interdependence of various contractors involved in a common construction enterprise, the comment reflects the Court's acknowledgment that the rule of privity set out in *Vandepitte* was inconsistent with commercial reality. In a similar fashion, Fraser River in the course of this appeal has been unable to provide any commercial reason for failing to enforce a bargain entered into by sophisticated commercial actors. In the absence of any indication to the contrary, I must conclude that relaxing the doctrine of privity in these circumstances establishes a default rule that most closely corresponds to commercial reality as is evidenced by the inclusion of the waiver of subrogation clause within the contract itself.

1999 CanLII 654 (S.C.C.)

42      A plain reading of the waiver of subrogation clause indicates that the benefit accruing in favour of third parties is not subject to any qualifying language or limiting conditions. When sophisticated commercial parties enter into a contract of insurance which expressly extends the benefit of a waiver of subrogation clause to an ascertainable class of third-party beneficiary, any conditions purporting to limit the extent of the benefit or the terms under which the benefit is to be available must be clearly expressed. The rationale for this requirement is that the obligation to contract for exceptional terms most logically rests with those parties whose intentions do not accord with what I assume to be standard commercial practice. Otherwise, notwithstanding the doctrine of privity of contract, courts will enforce the bargain agreed to by the parties and will not undertake to rewrite the terms of the agreement.

43      Fraser River has also argued that to relax the doctrine of privity of contract in the circumstances of this appeal would be to introduce a significant change to the law that is better left to the legislature. As was noted in *London Drugs*, *supra*, privity of contract is an established doctrine of contract law, and should not be lightly discarded through the process of judicial decree. Wholesale abolition of the doctrine would result in complex repercussions that exceed the ability of the courts to anticipate and address. It is by now a well-established principle that courts will not undertake judicial reform of this magnitude, recognizing instead that the legislature is better placed to appreciate and accommodate the economic and policy issues involved in introducing sweeping legal reforms.

44      That being said, the corollary principle is equally compelling, which is that in appropriate circumstances, courts must not abdicate their judicial duty to decide on incremental changes to the common law necessary to address emerging needs and values in society: *Watkins v. Olafson*, [1989] 2 S.C.R. 750, at pp. 760-61, and *R. v. Salituro*,

[1991] 3 S.C.R. 654, at pp. 665-70. In this case, I do not accept Fraser River's submission that permitting third-party beneficiaries to rely on a waiver of subrogation clause represents other than an incremental development. To the contrary, the factors present in *London Drugs*, in support of the incremental nature of the exception, are present as well in the circumstances of this appeal. As in *London Drugs*, a third-party beneficiary is seeking to rely on a contractual provision in order to defend against an action initiated by one of the contracting parties. Fraser River's concerns regarding the potential for double recovery are unfounded, as relaxing the doctrine to the extent contemplated by these reasons does not permit Can-Dive to rely on any provision in the policy to establish a separate claim. In addition, the exception is dependent upon the express intentions of the parties, evident in the language of the waiver of subrogation clause, to extend the benefit of the provision to certain named classes of third-party beneficiaries.

## V. Conclusion and Disposition

45      I conclude that the circumstances of this appeal nonetheless meet the requirements established in *London Drugs* for a third-party beneficiary to rely on the terms of a contract to defend against a claim initiated by one of the parties to the contract. As a third-party beneficiary to the policy, Can-Dive is entitled to rely on the waiver of subrogation clause whereby the insurers expressly waived any right of subrogation against Can-Dive as a "charterer" of a vessel included within the policy's coverage.

46      Accordingly, I would dismiss the appeal with costs.

*Appeal dismissed with costs.*

*Solicitors for the appellant:  McEwen, Schmitt & Co., Vancouver.*

*Solicitors for the respondent:  Owen, Bird, Vancouver.*