**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

ANWAR, *et al.*,                              )
                                              )
                        Plaintiffs,           )
                                              )        Master File No. 09-cv-118 (VM) (THK)
vs.                                           )
                                              )        ECF Case
FAIRFIELD GREENWICH LIMITED,                  )
*et al.*                                      )        ORAL ARGUMENT REQUESTED
                                              )
                        Defendants.           )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF PRICEWATERHOUSECOOPERS**
**INTERNATIONAL LIMITED'S MOTION TO DISMISS THE**
**SECOND CONSOLIDATED AMENDED COMPLAINT**

Howard M. Shapiro
Fraser L. Hunter, Jr.
Anne K. Small
Brad E. Konstandt
WILMER CUTLER PICKERING
        HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Defendant*
*PricewaterhouseCoopers International*
*Limited*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

THE ALLEGATIONS .................................................................................................................. 2

ARGUMENT .................................................................................................................................. 4

I.     PLAINTIFFS FAIL TO STATE A CLAIM AGAINST PwCIL UNDER
COMMON LAW AGENCY PRINCIPLES .................................................................... 5

     A.     To State A Claim Of Vicarious Liability, Agency Allegations Must
Be Directed To The Underlying Misconduct ........................................................ 6

     B.     Plaintiffs Fail To Allege A Connection Between PwCIL And The PwC
Member Firms Regarding The Challenged Audits As Required For An
Agency Relationship ............................................................................................ 8

II.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER
SECTION 20(a) OF THE EXCHANGE ACT ............................................................... 15

     A.     Plaintiffs Fail To Plead The Element of Control .................................................. 16

     B.     Plaintiffs Fail To Plead That PwCIL Was A Culpable Participant
In The Alleged Fraud ........................................................................................... 19

CONCLUSION ............................................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*ATSI Communications, Inc. v. Shaar Funds Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ............................................................................................15

*Amron v. Morgan Stanley Investment Advisors Inc.*,
  464 F.3d 338 (2d Cir. 2006) .............................................................................................8

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................................................... *passim*

*Bamberg v. SG Cowen*,
  236 F. Supp. 2d 79 (D. Mass. 2002) ..............................................................................10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................................4

*Cromer Financial Ltd. v. Berger*,
  Nos. 00 Civ. 2284, 00 Civ. 2498, 2002 WL 826847 (S.D.N.Y. May 2, 2002) ......................14

*Dinaco, Inc. v. Time Warner, Inc.*,
  346 F.3d 64 (2d Cir. 2003) ................................................................................................7

*Edison Fund v. Cogent Investment Strategies Fund*,
  551 F. Supp. 2d 210 (S.D.N.Y. 2009) ..................................................................20, 21

*Ellington Management Group, LLC v. Ameriquest Mortgage Co.*,
  No. 09 Civ. 0416, 2009 WL 3170102 (S.D.N.Y. Sept. 29, 2009) ...........................15

*H&H Acquisition Corp. v. Financial Intranet Holdings*,
  No. 98 Civ. 5269, 2009 WL 3496826 (S.D.N.Y. Oct. 19, 2009) ......................16, 17

*In re Alstom SA Securities Litigation*,
  454 F. Supp. 2d 187 (S.D.N.Y. 2006) ..............................................................16, 20

*In re Alstom SA Securities Litigation*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................................................. *passim*

*In re Asia Pulp & Paper Securities Litigation*,
  293 F. Supp. 2d 391 (S.D.N.Y. 2003) ............................................................................18

*In re CBT Group PLC Securities Litigation*,
  No. C-98-21014, 2000 WL 33339615 (N.D. Cal. Dec. 29, 2000) ..........................18

*In re Cromer Finance Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)..................................................................14

*In re Deutsche Telekom AG Securities Litigation*,
    No. 00 Civ. 9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ............................17

*In re Global Crossing, Ltd. Securities Litigation*,
    No. 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) .......................16, 17

*In re Lernout & Hauspie Securities Litigation*,
    230 F. Supp. 2d 152 (D. Mass. 2002) ...................................................................13

*In re Parmalat Securities Litigation*,
    474 F. Supp. 2d 547 (S.D.N.Y. 2007)....................................................................20

*In re Parmalat Securities Litigation*,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005)....................................................................14

*In re Royal Dutch/Shell Transport Securities Litigation*,
    380 F. Supp. 2d 509 (D.N.J. 2005) .................................................................10, 13

*In re Shulman Transportation Enterprises, Inc.*,
    744 F.2d 293 (2d Cir. 1984)............................................................................7, 10

*In re Sotheby's Holdings, Inc.*,
    No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ..........................21

*In re WorldCom, Inc. Securities Litigation*,
    No. 02 Civ. 3288, 2003 WL 21488087 (S.D.N.Y. June 25, 2003).........................10

*Kalin v. Xanboo, Inc.*,
    No. 04 Civ. 5931, 2009 WL 928279 (S.D.N.Y. Mar. 30, 2009) ............................19

*Kalin v. Xanboo, Inc.*,
    526 F. Supp. 2d 392 (S.D.N.Y. 2007)..............................................................16, 20

*Kinsey v. Cendant Corp.*,
    No. 04 Civ. 0582, 2004 WL 2591946 (S.D.N.Y. Nov. 16, 2004) ..........................21

*Lapin v. Goldman Sachs Group, Inc.*,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006)....................................................................19

*LFD Operating, Inc. v. Ames Department Stores, Inc.*,
    No. 02 Civ. 6271, 2004 WL 1948754 (S.D.N.Y. Sept. 1, 2004)..............................7

*Missel v. County of Monroe*,
No. 09-0235, 2009 WL 3617787 (2d Cir. Nov. 4, 2009) .........................................5

*Neubauer v. Eva-Health USA, Inc.*,
158 F.R.D. 281 (S.D.N.Y. 1994) ..........................................................................17

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*,
No. 03 Civ. 0613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004).................................. *passim*

*Owens v. Gaffken & Barringer Fund, LLC*,
No. 08 Civ. 8414, 2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009) ...................................17, 19

*Police & Fire Retirement System of Detroit v. Safenet, Inc.*,
645 F. Supp. 2d 210 (S.D.N.Y. 2009)................................................................19, 20

*Primavera Familienstiftung v. Askin*,
No. 95 Civ. 8905, 1996 WL 494904 (S.D.N.Y. Aug. 30, 1996) ...........................................17

*Rich v. Maidstone Finance, Inc.*,
No. 98 Civ. 2569, 2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) ...........................................17

*Rocker Management, LLC v. Lernout & Hauspie Speech Products N.V.,*
No. Civ.A. 00-5965, 2005 WL 1365772 (D.N.J. June 8, 2005) .......................................10, 21

*S & S Textiles International v. Steve Weave, Inc.*,
No. 00 CIV 8391, 2002 WL 1837999 (S.D.N.Y. Aug. 12, 2002) ...........................................7

*Shapiro v. Kronfeld*,
No. 00 Civ. 6286, 2004 WL 2698889 (S.D.N.Y. Nov. 24, 2004) ...........................................5

*Skidmore Energy, Inc. v. KPMG LLP*,
No. CIV.A.3:03CV2138, 2004 WL 3019097 (N.D. Tex. Dec. 28, 2004)..............................10

*Star Energy Corp. v. RSM Top-Audit*,
No. 08 Civ. 00329, 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008) ................................ *passim*

*Steed Finance LDC v. Laser Advisers, Inc.*,
258 F. Supp. 2d 272 (S.D.N.Y. 2003)....................................................................20

*Tabor v. Bodisen Biotech, Inc.*,
579 F. Supp. 2d 438 (S.D.N.Y. 2008).....................................................................16

**STATUTES & RULES**

15 U.S.C. § 78t(a) ................................................................................15

Fed. R. Civ. P. 9(b) .............................................................................21

Fed. R. Civ. P. 12(b)(6)....................................................................1, 4

**OTHER AUTHORITIES**

World Trade Organization, Council for Trade in Services, Accountancy Services:
    Background Note by the Secretariat (December 4, 1998) ........................................................8

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant PricewaterhouseCoopers International Limited respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the claims against it in the Second Consolidated Amended Complaint, dated September 29, 2009 (the "Amended Complaint").

## PRELIMINARY STATEMENT

Plaintiffs invested in four funds[1] operated by the Fairfield Greenwich Group (collectively the "Fairfield Funds"), and now seek to recover for losses stemming from Bernard Madoff's ponzi scheme. Am. Compl. ¶ 1. Asserting 33 counts, plaintiffs claim that more than 40 defendants— including, *inter alia*, entities serving as the Fairfield Funds' investment advisor, investment manager, placement agent, transfer agent, administrator, custodian, and accountant— facilitated Madoff's fraud for their own gain. Included among these counts are claims against the auditors of the Fairfield Funds, PricewaterhouseCoopers LLP ("PwC Canada") and PricewaterhouseCoopers Accountants Netherlands N.V. ("PwC Netherlands").

Plaintiffs seek to hold PricewaterhouseCoopers International Limited ("PwCIL") vicariously liable for the alleged conduct of the auditors. However, the purported claims against PwCIL stem from audits that PwCIL did not perform, did not participate in, and did not oversee, and from audit opinions that it did not draft, review, or sign. There is not a single factual allegation in the Amended Complaint tying PwCIL to the challenged audits, or suggesting any communication or interaction between PwCIL and the Fairfield Funds' auditors or the Fairfield Funds themselves.

In their attempt to hold PwCIL vicariously liable, plaintiffs offer only a handful of allegations about PwCIL's "umbrella" and "member-firm" structure, and conclusory assertions

---

[1]     The funds are Fairfield Sentry Limited, Fairfield Sigma Limited, Greenwich Sentry, L.P., and Greenwich Sentry Partners, L.P.  Am. Compl. ¶ 2.

that PwCIL "controlled" PwC Canada and PwC Netherlands (together, the "PwC Member Firms"). Yet this Court has repeatedly refused to hold a network coordinating entity vicariously liable for the activities of a member firm based upon general allegations regarding the structure of a global network coupled with conclusory assertions of control. Because there is not a single factual allegation from which this Court could plausibly infer that PwCIL had the power to control much less actually exercised control over the audits at issue, the claims against PwCIL fail as a matter of law.

## THE ALLEGATIONS

Plaintiffs allege that PwC Netherlands and PwC Canada audited certain of the Fairfield Funds for the years 2002 through 2007[2] and issued "unqualified (or clean) audit opinions for the financial statements" of the Fairfield Funds, certifying that the financial statements were "presented in conformity" with the relevant reporting standards and that the audits were "conducted in accordance with" the relevant auditing standards. Am. Compl. ¶¶ 261-67. Plaintiffs allege that the audits were actually performed in a "reckless" manner that did not comply with the relevant standards, *id.* p. 99, ¶¶ 280-315, because the PwC Member Firms "blindly accepted Madoff's representations," *id.* ¶ 273; "did not perform any independent confirmation or analysis of [Madoff's] purported trades," *id.* ¶ 272; and did not engage in "the most rudimentary investigation," *id.* Plaintiffs also allege that "various PwC offices" coordinated efforts to audit "at least eight other feeder funds to Madoff," *id.* ¶ 271, which plaintiffs allege "provided the firm with a unique ability and opportunity to verify information about [Madoff]," *id.* ¶ 274.

---

[2] Plaintiffs allege that PwC Netherlands audited the Greenwich Sentry fund for the year 2004, the Fairfield Sentry funds for 2002 through 2005, and the Fairfield Sigma fund for 2003 through 2005, and that PwC Canada audited the Fairfield Funds for 2006 and 2007. Am. Compl. ¶¶ 154-55, 259.

Plaintiffs seek to hold PwCIL vicariously liable for the PwC Member Firms' alleged conduct, asserting common law claims of gross negligence, negligence, negligent misrepresentation, third-party beneficiary breach of contract, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and unjust enrichment, Am. Compl. ¶¶ 426-59, 566-72, as well as a claim under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, based upon alleged violations of Section 10(b) and Rule 10b-5 by PwC Netherlands and PwC Canada, Am. Compl. ¶¶ 469-72.

As a basis for proceeding against PwCIL, plaintiffs claim that all PwC defendants should be grouped together as one entity—and the Amended Complaint treats them all as one, with repeated references to "PwC." *See, e.g.*, Am. Compl. ¶ 270. Plaintiffs allege that PwCIL's "literature and its global website refer to these constituent members, including PwC Netherlands and PwC Canada, as 'PricewaterhouseCoopers' or 'PwC.'" *Id.* ¶ 268. Similarly, plaintiffs allege that certain audit reports prepared by PwC Canada "stated that 'PricewaterhouseCoopers refers to the Canadian firm . . . and other member firms of PricewaterhouseCoopers International Limited.'" *Id.* ¶ 270. But plaintiffs selectively omit the final clause, which states, regarding the member firms, that "each . . . is a separate and independent legal entity." *See* Exhibits E through L of the Declaration of Timothy A. Duffy ("Duffy Decl."), attached to the Memorandum in Support of PricewaterhouseCoopers LLP's Motion to Dismiss.[3] Plaintiffs further maintain that PwCIL "serves as an umbrella organization coordinating the accounting and auditing activities of the various PricewaterhouseCoopers accounting firms," Am. Compl. ¶ 268, which together "comprise a vigorous global network," *id.* ¶ 153. Plaintiffs also allege that PwCIL "provides a

---

[3]     The "global website" that plaintiffs reference, Am. Compl. ¶ 268, likewise indicates that PwCIL and the members firms are "separate and independent legal entit[ies]." *See, e.g.,* http://www.pwc.com/gx/en/corporate-governance/network-structure.jhtml (discussing the structure of PwCIL and the member firms).

global governance structure for all PricewaterhouseCoopers entities," which includes certain network governance bodies composed of representatives from various member firms. *Id.* ¶ 269.

From these basic allegations regarding the structure and organization of the PwC network, plaintiffs leap to the conclusory assertion that "PwC Netherlands and PwC Canada acted as agents of [PwCIL]," and that "[PwCIL] controls the acts of its member firms and is responsible for the acts of its member firms." Am. Compl. ¶ 270. But while alleging that the PwC Member Firms were acting as agents of PwCIL when they performed the audits at issue, the Amended Complaint nowhere asserts (i) that PwCIL ever communicated with or provided any auditing or other services to the Fairfield Funds; (ii) that PwCIL supervised, directed, or reviewed the work of the PwC Member Firms with respect to the challenged audits—or even communicated with them about the audits; or (iii) that PwCIL played any role in the purported "concerted, global effort . . . to conduct and coordinate the audits" of various funds audited by separate members of the PwC network, *id.* ¶ 271. Simply put, plaintiffs insist that PwCIL controlled the audits of the Fairfield Funds, but provide no factual content on which to base this assertion: there is nothing in the Amended Complaint that shows that PwCIL had any authority over the challenged Fairfield Funds audits, much less that PwCIL actually exercised that purported authority.

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint offering only "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* Instead, the complaint must "plead[]

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (noting that *Twombly* retired the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). The "sheer possibility that a defendant has acted unlawfully" is insufficient to survive a motion to dismiss. *Id.* "[L]egal conclusions in the complaint are not factual allegations entitled to a presumption of truth, and a complaint that merely recites the elements of a cause of action without factual support is insufficient." *Missel v. County of Monroe*, No. 09-0235, 2009 WL 3617787, at *1 (2d Cir. Nov. 4, 2009).

## I. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST PwCIL UNDER COMMON LAW AGENCY PRINCIPLES

Plaintiffs do not allege that PwCIL was itself engaged by the Fairfield Funds or in any way audited the Fairfield Funds. *See* Am. Compl. ¶¶ 154-55, 259. Rather, plaintiffs seek to hold PwCIL liable under common law respondeat superior principles for audits conducted by the PwC Member Firms. *See id.* ¶ 270 (alleging that PwC Netherlands and PwC Canada "acted as agents of [PwCIL]" and that "[PwCIL] is responsible for the acts of its member firms").

The various common law claims that plaintiffs bring against PwCIL (*i.e.*, gross negligence, negligence, negligent misrepresentation, third-party beneficiary breach of contract, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and unjust enrichment) fail for two reasons. *First*, plaintiffs have failed to plead the underlying liability of the purported agents.[4] If the complaint fails to state a claim against the purported agent, then it necessarily fails to state a claim against the alleged principal. *See, e.g.*, *Shapiro v. Kronfeld*, No. 00 Civ. 6286, 2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004) (dismissing claims premised upon a

---

[4] *See* Mem. of Law in Supp. of PricewaterhouseCoopers LLP's Mot. to Dismiss, at 12-25; and Mem. of Law of Def. PricewaterhouseCoopers Accountants N.V. in Supp. of Its Mot. to Dismiss, at 17-25. Both motions are incorporated herein.

theory of respondeat superior because "there can be no imposition of vicarious liability in the absence of underlying liability"). *Second*, under settled law, the Amended Complaint does not adequately allege a principal-agent relationship between PwCIL and the PwC Member Firms with respect to the Fairfield Funds audits. Specifically, plaintiffs fail to offer a single factual allegation indicating that PwCIL controlled the PwC Member Firms with respect to the audits of the Fairfield Funds, that PwCIL asked the PwC Member Firms to conduct those audits as its agent, or that the PwC Member Firms ever agreed to do so.

A. **To State A Claim Of Vicarious Liability, Agency Allegations Must Be Directed To The Underlying Misconduct**

To allege a principal-agent relationship under New York law,[5] a plaintiff must allege three elements: (1) a manifestation by the principal that the agent shall act for him; (2) acceptance of the undertaking by the agent; and (3) an understanding between the parties that the principal is to be in control of the undertaking. *See Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329, 2008 WL 5110919, at *2 (S.D.N.Y. Nov. 26, 2008); *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613, 2004 WL 112948, at *4 (S.D.N.Y. Jan. 22, 2004) (same). A complaint "must clearly and specifically articulate allegations of fact which can support the existence of" the alleged relationship. *Nuevo Mundo*, 2004 WL 112948, at *4.

Each required element must connect the agency relationship to the challenged conduct, here the PwC Member Firms' audits of the Fairfield Funds. Accordingly, a plaintiff must allege control over the "undertaking" of the supposed agent. *See, e.g.*, *Star Energy*, 2008 WL 5110919,

---

[5]     PwCIL notes that certain PwC defendants, as well as other defendants, argue that foreign law applies and, like New York law, mandates dismissal. *See, e.g.*, Mem. of Law in Supp. of PricewaterhouseCoopers LLP's Mot. to Dismiss, at 12, 21. Because New York law requires dismissal and plaintiffs have not alleged the application of the law of another forum, PwCIL assumes for purposes of this motion that New York law applies and analyzes the claims accordingly. PwCIL will brief the choice of law question at a later date, if necessary.

at *5 ("Control over the [particular] audits performed is required."); *LFD Operating, Inc. v. Ames Dep't Stores, Inc.*, No. 02 Civ. 6271, 2004 WL 1948754, at *4 (S.D.N.Y. Sept. 1, 2004) ("An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control. If an alleged agent's acts concerning a certain subject matter cannot be controlled and directed by the principal, there is no agency relationship with regard to the subject matter."), *aff'd*, 144 F. App'x 900 (2d Cir. 2005); *see also In re Shulman Transp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) (requiring control over the particular acts of the alleged agent).

Likewise, the other elements necessary to establish a principal-agent relationship—manifestation by the principal that the agent shall act for him and acceptance by the agent to do so—must also be tied to the challenged activity. *See, e.g.*, *Star Energy*, 2008 WL 5110919, at *5 (dismissing vicarious liability claim because, *inter alia*, the complaint did not "allege any 'manifestation' on the part of the [alleged principal] that [the alleged agent] was acting on its behalf when the audits were performed"). Thus, where a plaintiff asserts that the agent possessed actual authority, such authority "exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." *Id.* at *3 (internal quotation marks and citations omitted); *see also Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003).[6]

---

[6]     Based on the nature of the allegations, it appears that plaintiffs are asserting the existence of actual authority. *See, e.g.*, Am. Compl. ¶ 270 ("PwC Netherlands and PwC Canada acted as agents of PwC International, pursuant to agreements between them . . . ."). To the extent plaintiffs purport to ground their agency claims on apparent authority, the claims must likewise be dismissed. Plaintiffs would need to allege "*words or conduct of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction on behalf of the principal." *S & S Textiles Int'l v. Steve Weave, Inc.*, No. 00 CIV. 8391, 2002 WL 1837999, at *7 (S.D.N.Y. Aug. 12, 2002) (citation omitted) (emphasis in original). *See also id.* (requiring the plaintiff to allege, *inter alia*, that "the principal was

**B.** **Plaintiffs Fail To Allege A Connection Between PwCIL And The PwC Member Firms Regarding The Challenged Audits As Required For An Agency Relationship**

The Amended Complaint fails to tie PwCIL in any way to the audits of the Fairfield Funds.  The allegations regarding PwCIL's role in the network—and attempts to characterize "PwC" as a single global entity—do nothing more than describe the classic membership structure of a global accounting network.  Accounting networks are not "one firm" or corporate entities; rather, they use a membership structure composed of separate legal entities because "extensive domestic regulation [of accounting firms] makes it impossible to have unified ownership, management and control on an international scale."[7]  As explained below, the case law makes clear that allegations of the structure of the PwC network are plainly insufficient on their own to plead vicarious liability.

The few allegations concerning PwCIL that purport to support the assertions of an agency relationship[8] fall into three categories.  *First*, the Amended Complaint alleges that PwCIL is part of a unified "PwC" entity.  *See, e.g.*, Am. Compl. ¶ 153 (PwCIL "is a United Kingdom

---

responsible for the appearance of authority in the agent to conduct the transaction in question").  Here, plaintiffs make no effort to allege any facts supporting such a claim.

[7]    World Trade Organization, Council for Trade in Services, Accountancy Services: Background Note by the Secretariat (December 4, 1998) at 6, *available at* www.wto.org/english/tratop_e/serv_e/w73.doc.

[8]    Plaintiffs' conclusory assertions that PwCIL "controls" PwC Netherlands and PwC Canada and that these entities acted as "agents of [PwCIL]," Am. Compl. ¶ 270, are insufficient to allege the elements of agency.  "[B]ald assertions and conclusions of law will not suffice" to survive a motion to dismiss.  *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006); *see Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The same is true for unsubstantiated allegations that the PwC Member Firms acted as agents of PwCIL "pursuant to agreements between them, and provided services under the auspices, at the direction, and for the benefit of [PwCIL]," Am. Compl. ¶ 270.  *See Iqbal*, 129 S. Ct. at 1949 ("naked assertions devoid of further factual enhancement" are not sufficient to survive a motion to dismiss (internal quotation marks and citation omitted)).

membership-based company through which constituent PwC offices work together as member firms to 'comprise a vigorous global network'").[9]  In particular, plaintiffs allege that certain audit reports prepared by PwC Canada "stated that 'PricewaterhouseCoopers refers to the Canadian firm . . . and other member firms of PricewaterhouseCoopers International Limited.'"  *Id.* ¶ 270; *see also id.* ¶ 268 (PwCIL's "literature and its global website refer to . . . constituent members, including PwC Netherlands and PwC Canada, as 'PricewaterhouseCoopers' or 'PwC'").  *Second*, plaintiffs allege that PwCIL "provides a global governance structure" for the PwC network.  *Id*. ¶ 269 (referencing the Network Leadership Team, the Global Board, the Strategy Council, and the Network Executive Team).  *Third*, plaintiffs allege that "[a]s member firms of PwC International, PwC Netherlands and PwC Canada were bound by [certain] standards and guidelines."  *Id*. ¶ 296.  Plaintiffs cite a website that references "best practices" and refer to the 2008 Global Annual Review's statement that member firms comply with "accepted or normal auditing, accounting, and professional standards."  *Id.* ¶¶ 293-96.  Plaintiffs, however, never allege that PwCIL had any involvement in the Fairfield Funds audits, such as by participating in decisions affecting how these audits were completed.[10]

Courts have long discredited complaints resting on the generic assertion that member firms in an accounting network constitute "one-firm," rejecting the argument that a coordinating entity like PwCIL necessarily has an agency relationship with and controls its member firms with respect to a particular audit.  *See Nuevo Mundo*, 2004 WL 112948, at *3 (dismissing claims against a coordinating accounting entity; "[m]ember firms in an international accounting

---

[9]      Plaintiffs make numerous allegations regarding the purported acts of "PwC," Am. Compl. ¶¶ 271-79, 283-88, 292-318, but do not suggest that any of these alleged acts were committed by PwCIL or that PwCIL had any knowledge of or involvement in them.

[10]      The Amended Complaint also references the "AICPA *Audit & Accounting Guide, Investment Companies*" as binding on the PwC Member Firms, Am. Compl. ¶ 295, but this guide, of course, is not published by any PwC-related entity.

association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name"); *Star Energy*, 2008 WL 5110919, at *3-*5 (same); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 21488087, at *10-11 (S.D.N.Y. June 25, 2003) (dismissing claims against a coordinating accounting entity because "bare allegations" that it was an "umbrella organization for its member firms worldwide" were insufficient to plead that a member firm was acting as the accounting entity's agent when conducting the audits).[11]

The "paramount" element in an agency relationship is control. *Nuevo Mundo*, 2004 WL 112948, at *5; *see also In re Shulman*, 744 F.2d at 295 ("[a]bsent the critical element of control" there can be no agency). As recent cases demonstrate, plaintiffs' conclusory allegations of control are insufficient to state a claim for vicarious liability. In *Star Energy*, the Court dismissed respondeat superior claims brought against a network coordinating entity for the actions of a member firm where the plaintiff had alleged: (i) that a prominent footer in the business plan forming the basis of the claims referenced the umbrella entity; (ii) that the umbrella entity invited companies to contact its member firms through an online directory on its website; (iii) that the audited company contacted the umbrella entity, which then notified the

---

[11]    *See also In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 570-72 (D.N.J. 2005) (dismissing claims against PwCIL; "It is well recognized that [m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name." (quotation marks and citation omitted)); *cf. Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prods. N.V.*, No. Civ.A. 00-5965, 2005 WL 1365772, at *7 (D.N.J. June 8, 2005) (dismissing claims against KPMG U.S. for acts of affiliated firm based upon a "one firm" theory); *Skidmore Energy, Inc. v. KPMG LLP*, No. CIV.A.3:03CV2138, 2004 WL 3019097, at *4-*5, *12 (N.D. Tex. Dec. 28, 2004) (dismissing claims against KPMG LLP based upon alleged conduct of a Moroccan member firm, and noting that numerous courts have rejected the "one firm, unified-company theory"); *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 89-90 (D. Mass. 2002) (dismissing claims against KPMG Singapore based upon the alleged conduct of KPMG Belgium, and noting that the Court had rejected "the theory that all KPMG entities are one worldwide firm or [are] all agents of one another").

member firm of the inquiry; (iv) that the umbrella entity controlled the auditing actions of its member firms through the use of a common manual of auditing and a "Compliance Committee"; (v) that the umbrella entity performed periodic reviews of its member firms' procedures; and (vi) that the umbrella entity "controlled [the member firm's] eligibility for membership and ability to use . . . the brand name." 2005 WL 5110919, at *1, *3, *5.[12] The *Star Energy* court found these allegations insufficient, explaining that the plaintiff "failed to sufficiently allege that [the umbrella entity] controlled or was able to control the particular audits" and "fail[ed] to allege that [the umbrella entity] had any control over [the member firm auditor] in its dealings with Star Energy. Thus, the essential element of control [was] lacking." *Id.* at *4. The allegations in *Star Energy* include allegations similar to those in this case as well as additional detailed allegations; that the Court deemed the more extensive allegations in *Star Energy* insufficient demonstrates that plaintiffs' spare allegations against PwCIL must also fail.

*Star Energy* also undermines plaintiffs' only attempt, in a single factual allegation, to link PwCIL to the audits at issue and thereby establish control. The Amended Complaint asserts that certain audit reports "prepared by PwC Canada . . . stated that 'PricewaterhouseCoopers refers to the Canadian firm . . . and all other member firms of PricewaterhouseCoopers International Limited.'" Am. Compl. ¶ 270. In *Star Energy*, the Court found insufficient an allegation that "a prominent footer at the bottom center of each page" displayed the name of the coordinating entity above the name of the putative agent in the business plan that formed the basis of the claims. 2008 WL 5110919, at *1. Here, the audit opinion was signed only by PwC Canada and prominently bears the address of only PwC Canada, *see* Duffy Decl. Exs E-L; under *Star Energy*,

---

[12]     The *Star Energy* complaint also alleged that the umbrella entity had the power to force a member firm to change its conduct and that the umbrella entity pooled the earnings of its member firms for purposes of advertising and client solicitation. *Star Energy*, 2008 WL 5110919, at *3.

the existence of a footnote that merely references the coordinating entity and which clearly states that each entity is "separate and independent," does not suffice to plead control.[13]

*Nuevo Mundo* is also instructive.  The plaintiffs in that case brought a variety of common law claims against the U.S. member firm of the PwC network, alleging that an agency relationship existed between it and the firm that conducted the audit at issue (the Peruvian member firm).  *Nuevo Mundo*, 2004 WL 112948, at *2-*4.  The plaintiffs premised their agency theory on the assertion that the "defendants and the overall companies overseeing the activities of local affiliates are implicated because there is overall training and supervision of all affiliates and peer review meetings held to assure compliance with the accepted professional standards and ethical requirements." *Id.* at *3.  Dismissing the complaint, the Court held that the plaintiffs "fail[ed] to support a bald assertion that an agency relationship existed" between the U.S. member firm and the Peruvian firm.  *Id.* at *5.  Specifically, there were no allegations that the U.S. member firm "ever participated in the decision as to how the audit reports . . . were completed" by the Peruvian firm or that the U.S. member firm was aware of the altering of audit reports. *Id.*[14]  The same shortfall dooms plaintiffs' claims here against PwCIL:  Plaintiffs allege the existence of a principal-agent relationship based solely upon generic assertions of affiliation, structure, and standard setting, but never once allege that PwCIL initiated, supervised, controlled or in any way participated in the challenged audits.

---

[13]    Plaintiffs fail to acknowledge that certain of the financial statements containing the audit reports list as auditor of the funds "PricewaterhouseCoopers LLP" along with its Canadian address.  *See* Duffy Decl. Exs. F, I and J (section titled "Directors and Other Information").

[14]    Notably, the court denied a motion further to amend the complaint to add PwCIL as a defendant, reasoning that the proposed amendment would fail for the same reasons described with respect to the PwC member firm. *Nuevo Mundo*, 2004 WL 112948, at *8.  It reached this conclusion even though the plaintiffs had alleged that PwCIL's "main purpose" was "to assure that the affiliates act properly and in accordance with their worldwide requirements." *Id.* at *3.

*In re Lernout & Hauspie Securities Litigation*, 230 F. Supp. 2d 152, 171-73 (D. Mass. 2002), further demonstrates the inadequacy of the Amended Complaint. There, the plaintiffs alleged, similar to the allegations here, that KPMG International held itself out as a "unitary global entity," and that KPMG's literature and website touted its "global services [and] strategies," "global service teams lead by global lead partner[s] [that] provide a top-level point of contact," "global performance management process," and "proprietary, leading-edge tools" used by all member firms. *Id.* at 171-72. The plaintiffs in *In re Lernout* also alleged, similar to plaintiffs' allegations here, that the various KPMG member firms collaborated on aspects of the audits at issue. *Id.* at 173. The court dismissed the claims against KPMG International, noting, among other things, that there was no allegation that the collaborations by member firms with respect to the audit at issue "occurred at the behest of, on behalf of, under the direction of, or subject to the control of KPMG International." *Id.* The same flaws are present here: While plaintiffs make allegations about the structure of the PwC network and PwCIL, and allege collaboration by certain member firms (based largely upon a single meeting with Madoff), the Amended Complaint fails to allege that PwCIL played any role in the member firms' alleged collaboration or otherwise.

Plaintiffs attempt to mask their pleading failures by conflating each of the legally distinct PwC defendants and referring to them collectively as "PwC." Attempts at group allegations, however, cannot substitute for adequate allegations of control by PwCIL with respect to the Fairfield Funds audits. *See In re Royal Dutch/Shell*, 380 F. Supp. 2d at 571-72 (dismissing vicarious liability claims against PwCIL and KPMG International where the complaint coupled references "to the knowledge and conduct of a collective 'PwC' and 'KPMG'" with allegations that the coordinating firms "tout themselves on their websites as a 'global network' or 'global

firm'"; PwCIL and KPMG International had "done no auditing work and ha[d] not signed any financial assessments"); *see also In re Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 486 (S.D.N.Y. 2001) (dismissing claims against Ernst & Young International where the complaint contained "no specific allegations as to the conduct of EYI—apart from the inadequate, generalized references to the 'Ernst & Young Defendants'").

The few cases where courts have found sufficient indicia of control in the context of an accounting network included allegations that the alleged principal was involved in, or took other affirmative actions with respect to, the audits at issue. For example, in *In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005), the plaintiffs alleged that a partner at the member firm (Deloitte Italy ("DTI")) "sought direction and help" from the network coordinating entity (Deloitte Touche Tohmatsu ("DTT")) while conducting the specific audit. *Id*. at 294. The audit partner communicated with DTT because of concerns about the ability of DTI to issue a clean audit opinion. *Id*. at 293. When that audit partner raised a similar concern a year later, DTT responded by intervening in the management of the ongoing audit. *Id.* at 293-94; *see also id.* at 301 (declining to dismiss claims against Grant Thornton International because, as opposed to mere "allegations that defendants marketed themselves as a unified firm," plaintiffs alleged "specific instances in which GTI acted in a manner consistent with an agency relationship" with respect to the audits at issue). Similarly, in *Cromer Financial Ltd. v. Berger*, Nos. 00 Civ. 2284, 00 Civ. 2498, 2002 WL 826847 (S.D.N.Y. May 2, 2002), the Court allowed the plaintiffs to move forward with claims premised upon the existence of an agency relationship between DTT and an individual partner of Deloitte & Touche Bermuda ("DTB") where (i) the DTB partner, who was in charge of the audits at issue, acted as DTT's "Asset Global Management Contact" when he signed the audit opinions, and (ii) DTT represented that the DTB partner was part of

DTT's own practice. *Id.* at *2. In other words, a DTT partner was involved with the member firm in performing the audits at issue. *See generally Star Energy*, 2008 WL 5110919, at *4-*5 (distinguishing *In re Parmalat* and *Cromer*). Here, there are no substantive allegations that PwCIL ever participated in, much less controlled, the audits of the Fairfield Funds. *See, e.g.*, Am. Compl. ¶¶ 153, 268-70.[15]

Accordingly, for the reasons set forth above, plaintiffs' common law claims against PwCIL must be dismissed.

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER SECTION 20(a) OF THE EXCHANGE ACT

Plaintiffs' Section 20(a) claim[16] against PwCIL must also be dismissed. To establish a *prima facie* case of control person liability, "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Funds Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *Ellington Mgmt. Group,*

---

[15] In addition to failing to allege control, plaintiffs fail to allege any manifestation by PwCIL that the PwC Member Firms conducted the audits of the Fairfield Funds on PwCIL's behalf or acceptance by the PwC Member Firms to act as PwCIL's agent. Indeed, there is no allegation that PwCIL and the PwC Member Firms had *any* communications regarding the audits of the Fairfield Funds. The mere fact that PwCIL and the PwC Member Firms have agreed to be part of a "global network," Am. Compl. ¶ 153, is not sufficient to plead a "manifestation on the part of [PwCIL] that [the PwC Member Firms were] acting as its agent when the audits were performed." *Star Energy*, 2008 WL 5110919, at *5; *see also Nuevo Mundo*, 2004 WL 112948, at *5 ("Plaintiffs make no allegation of a manifestation by either PWC or Anderson that [the Peruvian affiliates] were to act on their behalf.").

[16] Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this title or any rule or regulation thereunder, shall also be liable jointly and severally with and to the same extent as such controlled person . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

*LLC v. Ameriquest Mortgage Co.*, No. 09 Civ. 0416, 2009 WL 3170102, at *4 (S.D.N.Y. Sept. 29, 2009).

Here, plaintiffs have failed to satisfy each of these elements. *First*, because no primary violation of Section 10(b) by either PwC Netherlands or PwC Canada has been adequately pled,[17] the control person claim against PwCIL necessarily fails. *See, e.g.*, *Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 453 (S.D.N.Y. 2008). *Second*, plaintiffs have not adequately pled control because there are no factual allegations connecting PwCIL to the audits of the Fairfield Funds. *Third*, plaintiffs offer no allegations from which the Court may plausibly infer that PwCIL was a "culpable participant" in the alleged fraud.

### A.     Plaintiffs Have Not Adequately Alleged The Element Of Control

"Actual control is essential to control person liability." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005) (collecting sources); *see also Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 405 (S.D.N.Y. 2007). To be liable as a control person, the defendant "must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person." *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005); *In re Alstom*, 406 F. Supp. 2d at 487 (same). Moreover, "the Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the *transaction* in question." *In re Alstom*, 406 F. Supp. 2d at 487 (quotation omitted) (emphasis in original); *see H&H Acquisition Corp. v. Financial Intranet Holdings*, No. 98 Civ. 5269, 2009 WL 3496826, at *7 (S.D.N.Y. Oct. 19, 2009); *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 209 (S.D.N.Y. 2006).

---

[17]     *See* Mem. of Law in Supp. of PricewaterhouseCoopers LLP's Mot. to Dismiss, at 7-12; and Mem. of Law of Deft. PricewaterhouseCoopers Accountants N.V. in Supp. of Its Mot. to Dismiss, at 4-16.

"Thus, exercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control for purposes of Section 20(a)." *In re Alstom*, 406 F. Supp. 2d at 487; *see H&H Acquisition Corp.*, 2009 WL 3496826, at *7 (same). And, as with common law agency, "[c]onclusory allegations of control are insufficient as a matter of law." *In re Global Crossing*, 2005 WL 1907005, at *12 (collecting sources).

Just as with the common law claims, plaintiffs fail to offer adequate allegations of control with respect to the Section 20(a) claim. The Amended Complaint offers the conclusory assertions that "PwC International acted as a controlling person of PwC Canada and PwC Netherlands within the meaning of Section 20(a) of the Exchange Act as alleged herein," Am. Compl. ¶ 470, and that "PwC International had direct and supervisory involvement and control in the day-to-day operations of PwC Canada and PwC Netherlands," *id.* ¶ 471. *See also id.* ¶ 270. But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949; *see also Owens v. Gaffken & Barringer Fund, LLC*, No. 08 Civ. 8414, 2009 WL 3073338, at *12 (S.D.N.Y. Sept. 21, 2009) (dismissing Section 20(a) claim where the complaint contained "only a conclusory allegation that [defendants] were 'controlling persons' . . . This is a bare legal conclusion, and pursuant to *Iqbal*, is not entitled to the presumption of truth").[18]

---

[18]     *See also In re Global Crossing*, 2005 WL 1907005, at *12-*13; *In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) (conclusory allegations of control "are insufficient for the assertion of liability pursuant to sections 15 and 20(a)"); *Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569, 2001 WL 286757, at *9 (S.D.N.Y. Mar. 23, 2001); *Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905, 1996 WL 494904, at *11 (S.D.N.Y. Aug. 30, 1996); *Neubauer v. Eva-Health USA, Inc.*, 158 F.R.D. 281, 285 (S.D.N.Y. 1994).

The "one firm, unified-company theory" that plaintiffs pursue with their structural "one-firm" allegations has also been rejected under Section 20(a). *See In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 396 (S.D.N.Y. 2003). In *In re Asia Pulp*, plaintiffs brought a Section 20(a) claim against Anderson Worldwide Société Coopérative ("AWSC")—a coordinating entity analogous to PwCIL—based upon an audit conducted by a member firm. *Id.* at 393. The plaintiffs asserted that AWSC exerted control over the member firm entity through "(1) partner overlap; (2) sharing of costs and profits; (3) global setting of professional standards; and (4) maintenance of a global infrastructure and administration," as well as the marketing of a "one firm" concept through its "news releases, web site and recruiting brochures." *Id.* at 393-94. The Court dismissed the claim, explaining that the "Amended Complaint is bereft of any allegations that AWSC, pursuant to an agreement or otherwise, was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms." *Id.* at 396.[19]

Likewise, plaintiffs here allege that PwCIL presents the PwC Network as "one firm" through references to "PwC," the network governance structure, and PwCIL's alleged involvement in setting certain guidelines for member firms. Am. Compl. ¶¶ 153, 268-70, 293-96. But plaintiffs have failed to allege how these allegations add up to PwCIL having the ability "to control or in any way influence the particular audits conducted or opinions offered by its individual member firms." *In re Asia Pulp*, 293 F. Supp. 2d at 396. Plaintiffs' passing

---

[19]     *See also In re CBT Group PLC Sec. Litig.*, No. C-98-21014, 2000 WL 33339615, at *5 (N.D. Cal. Dec. 29, 2000) (dismissing Section 15 control person claims against Ernst & Young International where plaintiffs alleged that EYI was "responsible for coordinating cross-border work among it[s] members engaged in multinational engagements and developing uniform practice standards"; plaintiffs' allegations "[were] too indefinite to establish a 'controlling person' relationship between EYI and [the member firm]. From the allegations, EYI appears to refer assignments to its member firms but does not have actual control over the member firms. The court cannot reasonably infer from the allegations that EYI exercised the power to direct or cause the direction of EYCA's day-to-day operation or management").

reference to alleged "agreements" between PwCIL and the PwC Member Firms, Am. Compl. ¶ 270, does nothing to cure this critical pleading failure. *See Iqbal*, 129 S. Ct. at 1949; *Owens*, 2009 WL 3073338, at \*12.

**B.** **Plaintiffs Fail To Plead That PwCIL Was A Culpable Participant In The Alleged Fraud**

The Section 20(a) claim must also be dismissed because the Amended Complaint fails to allege that PwCIL was "in some meaningful sense" a culpable participant in the alleged underlying violations. Culpable participation requires a showing of conscious misbehavior or "at least recklessness." *In re Alstom*, 406 F. Supp. 2d at 490; *see Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931, 2009 WL 928279, at \*12 (S.D.N.Y. Mar. 30, 2009) (same); *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006) (same). In addition, "to withstand a motion to dismiss, a section 20(a) claim must allege, at a minimum, *particularized facts* of the controlling person's conscious misbehavior or recklessness." *Lapin*, 506 F. Supp. 2d at 246 (emphasis added); *see Kalin*, 2009 WL 928279, at \*12 ("A plaintiff bears the burden of pleading culpable participation with particularity as part of his prima facie claim"); *Police & Fire Ret. Sys. of Detroit v. Safenet, Inc.*, 645 F. Supp. 2d 210, 226-27 (S.D.N.Y. 2009) (same); *In re Alstom*, 406 F. Supp. 2d at 491 ("culpable participation must be pled with particularity"). Absent allegations of conscious misbehavior, this Court has articulated the relevant standard for recklessness as follows:

> "Plaintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator was engaging in fraudulent conduct, or that the controlling person failed to review or check information that he or she had a duty [to] monitor, or that the controlling person ignored obvious signs of fraud."

*In re Alstom*, 406 F. Supp. 2d at 491-92; *see also In re Alstom*, 454 F. Supp. 2d at 209 (noting that the culpable participation standard "is similar to the scienter requirement of Section 10(b)").[20]

Plaintiffs do not allege a single fact indicating that PwCIL affirmatively participated in the audits, much less in any alleged wrongdoing, or that PwCIL either had any knowledge of the purported malfeasance or "ignored obvious signs of fraud." *See Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 280 (S.D.N.Y. 2003) (dismissing Section 20(a) claims because plaintiff "failed to provide particularized facts regarding what the defendant is alleged to have done and when he did it" (*citing Mishkin v. Ageloff*, No. 97 Civ. 2690, 1998 WL 651065, at *26 (S.D.N.Y. Sept. 23, 1998))); *see also Police & Fire Ret. Sys.*, 645 F. Supp. 2d at 241 (dismissing Section 20(a) claim for failure to plead culpable participation where plaintiff could not show that defendants "had any significant knowledge or role" in the alleged malfeasance).

Plaintiffs make only the unsubstantiated assertions that PwCIL had "intimate knowledge of the audit work and resulting audit opinions PwC Canada and PwC Netherlands issued on the [Fairfield] Funds," Am. Compl. ¶ 470, that PwCIL "had the ability to prevent the issuance of the audit statements or cause the statements to be corrected or not issued," *id.*, and that PwCIL had "direct and supervisory involvement and control in the day-to-day operations of PwC Canada and PwC Netherlands," *id.* ¶ 471. Because plaintiffs offer no facts to support these conclusory

---

[20]     There arguably remains a split of authority within the Second Circuit as to whether a plaintiff bears the burden of pleading culpable participation as part of its *prima facie* case. However, "[t]he weight of well-reasoned authority is that to withstand a motion to dismiss a section 20(a) controlling person liability claim, a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context." *Edison Fund v. Cogent Inv. Strategies Fund*, 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2009) (internal quotation marks and citation omitted); *see In re Alstom*, 406 F. Supp. 2d at 489-90 (reaffirming the Court's prior holding that "the plaintiff bears the burden of pleading culpable participation as part of a prima facie case under § 20(a)"); *see also In re Alstom*, 454 F. Supp. 2d at 209; *Kalin*, 526 F. Supp. 2d at 406. *But see In re Parmalat Sec. Litig.*, 474 F. Supp. 2d 547, 554 (S.D.N.Y. 2007).

assertions, they are not well-pleaded allegations and should be disregarded. *See Edison Fund v. Cogent Inv. Strategies Fund*, 551 F. Supp. 2d 210, 231-32 (S.D.N.Y. 2009) (dismissing Section 20(a) claim where complaint alleged defendant's "culpability in the most general of terms"; the complaint "plead[ed] no facts that would give rise to a showing of recklessness or intention" on behalf of defendant); *In re Alstom*, 406 F. Supp. 2d at 491 (with respect to culpable participation, "recklessness [is] not sufficiently pled through boilerplate allegations that defendant knew or should have known of the fraudulent conduct based solely on position" (*citing In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000))); *see also Iqbal*, 129 S. Ct. at 1949 ("naked assertions devoid of further factual enhancement" not sufficient to survive a motion to dismiss).[21]

Because the few allegations that actually relate to PwCIL itself fail to plead *any participation* by PwCIL in the challenged audits—much less "culpable participation"—the Section 20(a) claim also cannot stand.

---

[21]     Plaintiffs' allegations generically referencing "PwC" fail to satisfy this required element of their controlling person claim.  The requirement that plaintiffs plead culpable participation with the particularity analogous to that demanded under Fed. R. Civ. P. 9(b) "is not satisfied by a complaint in which defendants are clumped together in vague allegations."  *Kinsey v. Cendant Corp.*, No. 04 Civ. 0582, 2004 WL 2591946, at *10 (S.D.N.Y. Nov. 16, 2004) (discussing the particularity requirement of Rule 9(b) (citation omitted)); *see also Rocker Mgmt.*, 2005 WL 1365772, at *8 ("[t]he lumping together of KPMG offices under one 'KPMG' reference offends" the requirement under Rule 9(b) that facts must be pleaded with particularity).

**CONCLUSION**

For the reasons stated above, and based upon the Motions to Dismiss the Amended Complaint filed by PwC Canada and PwC Netherlands, the claims in the Amended Complaint against PwCIL should be dismissed with prejudice.

Dated:  December 22, 2009

                                        Respectfully submitted,


                                         _/s/ Howard M. Shapiro_____
                                        Howard M. Shapiro (HS – 3642)
                                        Fraser L. Hunter, Jr. (FH – 4470)
                                        Anne K. Small (AS - 2421)
                                        Brad E. Konstandt (BK - 2052)
                                        WILMER CUTLER PICKERING
                                             HALE & DORR LLP
                                        399 Park Avenue
                                        New York, NY 10022
                                        howard.shapiro@wilmerhale.com
                                        fraser.hunter@wilmerhale.com
                                        anne.small@wilmerhale.com
                                        brad.konstandt@wilmerhale.com
                                        Telephone: (212) 230-8800
                                        Facsimile: (212) 230-8888

                                        *Attorneys for Defendant*
                                        *PricewaterhouseCoopers International*
                                        *Limited*