UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANWAR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FAIRFIELD GREENWICH LIMITED, et al., <br><br> Defendants. <br><br> This Document Relates to : All Actions | Master File No. 09-cv-0118 (VM) |

### AFFIDAVIT OF ROD S. ATTRIDE-STIRLING

I, ROD S. ATTRIDE-STIRLING of Hamilton, Bermuda, MAKE OATH and SAY as follows:

1. I am the Senior Partner in the Bermuda firm of Barristers and Attorneys, Attride-Stirling & Woloniecki ("ASW"). I have a bachelor's degree in law (LL.B.) from the University of Buckingham in the United Kingdom (1989) and completed the UK Solicitors' Finals at the College of Law in 1991. I was called to the Bar of Bermuda in 1992 and am a former President of the Bermuda Bar Association (retiring in April 2009).

2. ASW specializes in the areas of commercial litigation, arbitration, corporate insolvency and restructuring and corporate law. Since 1992, I have practiced law in Bermuda specializing in the fields of international commercial litigation and arbitration, insolvency, insurance and reinsurance. In the course of my practice, I have frequently advised clients on directors' fiduciary duties under Bermuda law.

3. I attach my curriculum vitae as **[TAB 1]**.

4. I have been provided with the Second Consolidated Amended Complaint in *Anwar, et al. v. Fairfield Greenwich Limited, et al.*, Master File No. 09-CV-118 (VM) (the "Complaint") for the purpose of providing this affidavit regarding Bermuda law. I understand that this affidavit will be submitted in connection with motions to dismiss the Complaint.

5. In the preparation of this affidavit I have reviewed the Complaint, the Private Placement Memoranda ("PPMs") of Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma") (together, the "Funds"), including the Sentry PPM, dated July 1, 2003; the Sentry PPM, dated October 1, 2004; the Sentry PPM, dated August 14, 2006; and the Sigma PPM dated December 1, 2008; the Investment Management Agreements (the "IMAs") between Fairfield Greenwich (Bermuda) Ltd. ("FGBL") and Sigma, dated October 1, 2004 and between FGBL and Sentry, dated October 1, 2004.

6. I have been asked to assume that the allegations of fact made in the Complaint are true. On the basis of that assumption, I have been asked to express an opinion on the following questions of Bermuda law:

**A. General – Bermuda Law**

Describe the Bermuda court system, and the authorities under which Bermuda courts reach their decisions, including consideration of English common law.

**B. Breach of Fiduciary Duty (Count 8)**

Do any of the Fairfield Greenwich Defendants[1] owe fiduciary duties to the shareholders of the Funds under Bermuda law? Does Count 8 of the Complaint sufficiently allege a breach of fiduciary duty under Bermuda law?

---

[1] I use the term "Fairfield Greenwich Defendants" to refer to the defendants listed on pages 20-37 of the Complaint.

## C. Third Party Beneficiary Breach of Contract (Count 9)

Is there a recognized cause of action for third party beneficiary breach of contract under Bermuda law?

## D. Mutual Mistake (Count 11)

Does Count 11 of the Complaint give rise to a cause of action for mutual mistake under Bermuda law?

## E. Bars to the Plaintiffs' Claims

Do the exculpatory provisions of the IMAs bar any or all of Plaintiffs' causes of action against the Fairfield Greenwich Defendants?

7. The matters referred to below are either within my personal knowledge or based on my knowledge, experience and education. Where the information comes from my own knowledge, it is true, and where I have relied on information supplied by others I believe that information to be true. If sworn as a witness I could and would testify competently to the matters referred to below.

## A. General: Bermuda Law

8. Bermuda is a self-governing dependent territory of the United Kingdom. The court of first instance in civil matters, where the sum in dispute is in excess of BD$25,000, is the Supreme Court of Bermuda. The Commercial Court (established in January 2005), which is an administrative sub-division of the Supreme Court staffed by specialist judges, hears cases involving commercial matters (as defined by the Order 72 of the Rules of the Supreme Court of Bermuda). The Court of Appeal for Bermuda, comprising three judges who sit in quarterly sessions, hears appeals from the Supreme Court. Appeals lie from the Court of Appeal for Bermuda to the Judicial Committee of the Privy Council. Section 15 of the Supreme Court Act 1905 states that, *"Subject to the provisions of any Acts which*

*have been passed in any way altering, amending or modifying the same, and of this Act, the common law, the doctrines of equity and the Acts of the Parliament of England of general description which were in force in England at the date when these Islands were settled [11th July, 1612] shall be, and are hereby declared to be, in force within Bermuda."*

9. Bermuda Courts are not hierarchically bound by decisions of the English Courts, including the former House of Lords. *"It should be emphasised that although Bermuda is technically not an independent country and retains colonial linkages, the hierarchy of its courts is no more subordinate to courts in England than are the courts of independent countries which maintain the Judicial Committee of the Privy Council as the final appellate tribunal."* Nonetheless, Bermuda Courts recognize, *"the practical experience and legal scholarship of the Appellate Committee of the House of Lords are such as to sustain a generally admirable reputation for soundness. The consequence is that views which they propound are usually reasoned and persuasive and easy to adopt quite apart from any dictate of precedents."*[2]

10. Bermuda Courts will generally regard declarations of the common law by the Supreme Court of the UK (formerly the House of Lords) as binding, although

> *"there remain areas in which there can be room for disagreement – often arising from conflicting views as to the purpose served by a rule – though necessarily formulated in the language of conceptual analysis and of an examination of the practical consequences flowing from the choice of a particular alternative. Not many disputes will fall within this range. Generally then it can be said that the Courts of Bermuda will accept as binding decisions of the House of Lords in common law matters. Where, however, a problem does fall within this range and*

---

[2] See: *Crockwell v. Haley*, per Georges JA, Bda. Civ. App. 23/1992, 29 June 1993; [1993] Bda LR 7 **[TAB 2]**.

> *the Courts are satisfied that the social conditions of Bermuda make inappropriate the particular path of development chosen by the House of Lords against the background of British conditions, then the Courts of Bermuda must be at liberty to map their own particular path making clear their reasons for so doing."*[3]

11. All decisions of the Privy Council in England (including appeals from other commonwealth countries) on points of common law are binding on Bermuda. The decisions of other Courts in the UK are of persuasive value, in the absence of any Bermuda cases on point. The persuasive value increases according to the level of the UK Court (e.g. High Court, Court of Appeal and then the Supreme Court of the United Kingdom, in that order). Decisions of the UK Court of Appeal and Supreme Court (formerly and until 1 October 2009, the 'House of Lords') are very persuasive in the Bermuda Courts: *"whilst recognizing that, apart from the Privy Council, the English courts are normally no part of the judicial hierarchy in an overseas territory, I have little doubt that this and any other court similarly placed would pay great respect to the English Court of Appeal's construction of a statute and seek to benefit from the guidance thus provided. In the absence of cogent reasons to the contrary the tendency would, I think, almost certainly be to follow the English decision, particularly in matters where English law or practice is applicable ..."*[4]

## B. Breach of Fiduciary Duty (Count 8)

> *Do any of the Fairfield Greenwich Defendants owe fiduciary duties to the shareholders of the Funds under Bermuda law? Does Count 8 of the Complaint allege any breaches of fiduciary duties which give rise to a cause of action for breach of fiduciary duty under Bermuda law?*

---

[3] See: *Ibid* **[TAB 2]**.

[4] See: *Remington v. Remington*, per Hogan P, Bda. Civ. App. 1/1977, 30 November 1977 **[TAB 3]**.

12. Count 8 of the Complaint alleges that certain Fairfield Greenwich Defendants had *"substantial discretion and control over the Plaintiffs' assets in the Madoff feeder funds, the marketing of those Funds, and communications with Plaintiffs"*[5] which allegedly gave rise to a fiduciary duty and duty of care on behalf of the Defendants.

13. It is well established that the directors and/or officers of a Bermuda company owe a fiduciary duty <u>only</u> to the company of which they are directors and/or officers; they do not owe any fiduciary duty to individual shareholders of the company.[6] They most certainly do not owe any fiduciary duty to individual shareholders of a third party company which contracts with their company.

14. In *Arklow Investments Ltd v. Maclean*,[7] the Privy Council, quoting Millet L.J. in *Bristol and West Building Society v. Mothew*[8], explained that: *"A fiduciary is someone who has undertaken to act for or on behalf of another in a particular matter in circumstances which give rise to a relationship of trust and confidence."*

15. The Privy Council is the highest court of appeal in the Bermuda court system, and its decisions are binding on the lower courts of Bermuda (the Supreme Court of Bermuda and the Court of Appeal for Bermuda) as well. *Arklow Investments* thus represents an authoritative statement of Bermuda law[9] with respect to the circumstances in which a

---

[5] See para 403 of the Complaint.

[6] See: *Percival v. Wright* [1902] 2 Ch. 421 **[TAB 4]**.

[7] [2000] 1 W.L.R. 594, 599G **[TAB 5]**.

[8] [1998] Ch. 1, 18 **[TAB 6]**.

[9] This is so even though *Arklow* is a case on appeal from New Zealand. The House of Lords, operating by its judicial committee, is the highest court of appeal in England and Wales on matters of English law. The decisions of the Privy Council are persuasive but not binding authority on matters of the law of England

Bermuda Court will impose fiduciary obligations upon a person, and was recently applied by the Supreme Court of Bermuda (Commercial Court) (approved on appeal) in *Allen Walsh and others v. Horizon Bank International Limited (In Liquidation)*.[10]

16. In *Arklow Investments*, the Privy Council upheld the decision of the New Zealand Court of Appeal and declined, on the facts, to impose a fiduciary duty upon investment bankers advising on the financing of a real estate transaction. As *Arklow Investments* explains, one becomes a fiduciary <u>only</u> when one voluntarily undertakes a duty to put another's interests before one's own. One <u>does not</u> become a fiduciary merely because one is trusted by the other party to a business transaction, or by superior knowledge, or by having the right or ability to control some action or asset.

17. Thus, the allegations at paragraphs 402-409 of the Complaint that certain of the Fairfield Greenwich Defendants owed a fiduciary duty to the shareholders of Sentry and Sigma solely by way of the appointment of FGBL or FRS as the Funds' investment manager and/or risk adviser is unworkable under Bermuda law and bound to fail. The Complaint does not allege that any Fairfield Greenwich Defendant provided a specific undertaking to Plaintiffs to act as a fiduciary and it cannot be said that FGBL or FRS acted in such a way as to assume fiduciary obligations.

18. The obligations undertaken by FGBL and FRS were contractual in nature and are set out in the IMAs – agreements to which the Plaintiffs are not privies. As a matter of Bermuda law, where parties enter into a commercial contractual relationship, the scope of the

---

and Wales and the decisions of the House of Lords are persuasive but not binding authority on matters of the common law of the various countries which retain the right of appeal to the Privy Council (including Bermuda).

[10] See [2008] Bda LR 16 **[TAB 7]** and (2009) CA Bda 6 Civ. **[TAB 8]**.

duties owed to each other will be determined and defined by the terms of the contract and any parallel duty of care which may be said to arise in tort may not be wider than the scope of those contractual duties. *See Tai Hing Ltd. v. Liu Chong Hing Bank* [1986] 1 A.C. 80 **[TAB 9]** where the Privy Council held as follows:

> *Their Lordships do not believe that there is anything to the advantage of the law's development in searching for a liability in tort where the parties are in a contractual relationship. This is particularly so in a commercial relationship...Their Lordships respectfully agree with some wise words of Lord Radcliffe in his dissenting speech in <u>Lister v. Romford Ice and Cold Storage Co. Ltd.</u> [1957] A.C. 555. After indicating that there are cases in which a duty arising out of the relationship between employer and employee could be analysed as contractual or tortious Lord Radcliffe said, at p. 587:*
>
>> "*Since, in any event, the duty in question is one which exists by imputation or implication of law and not by virtue of any express negotiation between the parties, I should be inclined to say that there is no real distinction between the two possible sources of obligation. But it is certainly, I think, as much contractual as tortious. Since in modern times the relationship between master and servant, between employer and employed, is inherently one of contract, it seems to me entirely correct to attribute the duties which arise from that relationship to implied contract.*"
>
> *Their Lordships do not, therefore, embark on an investigation as to whether in the relationship of banker and customer it is possible to identify tort as well as contract as a source of the obligations owed by the one to the other. Their Lordships do not, however, accept that the parties' mutual obligations in tort can be any greater than those to be found expressly or by necessary implication in their contract. If, therefore, as their Lordships have concluded, no duty wider than that recognised in Macmillan [1918] A.C. 777 and Greenwood [1933] A.C. 51 can be implied into the banking contract in the absence of express terms to that effect, the banks cannot rely on the law of tort to provide them with greater protection than that for which they have contracted.*

19. *See also National Bank of Greece v. Pinios No. 1* [1990] 1 A.C. 637 **[TAB 10]** in which the principle laid down by Lord Wilberforce in *Tai Hing Ltd. v. Liu Chong Hing Bank* **[TAB 9]** was applied. *Id.* at 646; *White v. Conyers, Dill & Pearman* 1993 Civil Appeal No. 31 [1994] Bda LR 9 **[TAB 11]** in which the principles laid down in *Tai Hing* were

8

considered to be "settled" law and were held to apply to the relationship as between solicitor and client.

20. In *Henderson v. Merrett Syndicates* [1995] 2 A.C. 147 **[TAB 12]** the House of Lords held that concurrent duties may exist in contract and in tort; however, the tortious duties must be consistent with any contractual duties owed:

> *"My own belief is that, in the present context, the common law is not antipathetic to concurrent liability, and that there is no sound basis for a rule which automatically restricts the claimant to either a tortious or a contractual remedy. The result may be untidy; but given that the tortious duty is imposed by the general law, and the contractual duty is attributable to the will of the parties, I do not find it objectionable that the claimant may be entitled to take advantage of the remedy which is most advantageous to him, subject only to ascertaining whether the tortious duty is so inconsistent with the applicable contract that, in accordance with ordinary principle, the parties must be taken to have agreed that the tortious remedy is to be limited or excluded." Id* at 194.

21. I should add that, even when one is a fiduciary, one does not by virtue of that relationship become a fiduciary of those to whom one's fiduciaries owe a fiduciary duty. Put another way, there is no "transitive property" of fiduciary duties. My fiduciary's fiduciary is not, by virtue of that relationship, *my* fiduciary. Rather, fiduciary duties are owed only to those with respect to which the fiduciary has agreed to act as a fiduciary, and not to others. They do not "flow" through corporate, or any other, structures.

22. In my opinion, if Count 8 of the Complaint were a pleading filed in a Bermuda court, that court would strike out the claim against FGBL, FRS and their respective directors and officers as disclosing no cause of action on the basis that any fiduciary duty owed by an investment manager is, as a matter of Bermuda law, owed only to the company it contracted with, and not to any individual shareholders of a third-party company (in this case, the Funds).

## C. Third Party Beneficiary Breach of Contract (Count 9)

*Is there a recognized cause of action for third party beneficiary breach of contract under Bermuda law?*

23. The doctrine of "third-party beneficiary breach of contract", which gives rise to third-party rights to a contract, is alien to Bermuda law and is not recognised at common law or by statute.[11] Therefore, no contractual duty can arise between the Fairfield Greenwich Defendants and third-party Plaintiffs with whom there is no contract.

24. Accordingly, if Count 9 was a pleading filed in a Bermuda court, that court would strike out the claim against the Fairfield Greenwich Defendants for third-party beneficiary breach of contract as disclosing no cause of action as a matter of Bermuda law.

## D. Mutual Mistake (Count 11)

*Does Count 11 of the Complaint give rise to a cause of action for mutual mistake under Bermuda law?*

25. Plaintiffs' claim of mutual mistake is not sufficiently pleaded under Bermuda law. It is unclear whether Plaintiffs are alleging a mistake of law, a mistake of fact, or both. What is clear is that (i) there can be no mistake with respect to a contract because there is no contract between Plaintiffs and the Fairfield Greenwich Defendants, and (ii) similarly, there can be no mistake regarding the payment of fees because the Plaintiffs' monies was not paid directly to the Fairfield Greenwich Defendants.

---

[11] In English law, the doctrine of was not recognized at common law; however, a similar concept was recently introduced into English law by the Contracts (Rights of Third Parties) Act 1999. The Contracts (Rights of Third Parties) Act 1999 has not been adopted in Bermuda.

26. Moreover, even if a claim for mutual mistake exists, it would be for the Fund to bring such a claim, not the Plaintiffs.

27. Accordingly, if Count 11 was a pleading filed in a Bermuda court, that court would strike out the claim for mutual mistake as disclosing no cause of action against the Fairfield Greenwich Defendants as a matter of Bermuda law.

**F.     Bars to Plaintiffs' Claims**

*Do the exculpatory provisions of the IMAs bar any or all of Plaintiffs' causes of action against the Fairfield Greenwich Defendants?*

28. In my opinion, the causes of action asserted by the Plaintiffs against the Fairfield Greenwich Defendants are barred completely as a matter of Bermuda law by virtue of the fact that there is no privity of contract between the Plaintiffs and the Fairfield Greenwich Defendants and no duty of care. For these reasons, Plaintiffs' claims must fail.

29. As I have specified above, the Fairfield Greenwich Defendants have no duty of care to third parties, in particular toward the Plaintiffs, who are not parties to the IMAs. Even if I am wrong about this, any liability said to arise is subject to the following exculpatory provisions contained in paragraph 10 of the IMA.

> "10.  (a)  The Investment Manager <u>shall not be liable for any error of judgment or for any loss suffered by the Fund</u> in connection with the subject matter of this Agreement, <u>except loss resulting from willful misfeasance, bad faith or gross negligence in the performance of the Investment Manager's obligations and duties, or by reason of the Investment Manager's reckless disregard of their obligations and duties hereunder.</u>
>
> (b) The Investment Manager, its directors, officers and employees, agents and counsel...shall not be subject to, and <u>the Fund shall indemnify to the fullest extent permitted by law and hold each Investment Manager Indemnitee free and harmless from and against, any and all claims, demands, liability or expenses for any loss suffered by the Fund arising</u>

11

> *out or [sic] any act or omission of an Investment Manager Indemnitee relating to the Fund, <u>except to the extent such act or omission constitutes wilful misconduct, or reckless disregard of the duties of the Investment Manager or on the part of the Investment Manager Indemnitee</u>.*"
> (emphasis added).

30. It follows that while FGBL and FRS could theoretically be liable to the Funds, they could only be liable for claims arising out of wilful misfeasance, wilful misconduct, bad faith, gross negligence or reckless disregard.

31. In my opinion, the Complaint does not contain allegations amounting to wilful misfeasance, wilful misconduct, bad faith, gross negligence or reckless disregard as these concepts are interpreted under Bermuda law.

*Wilful Misconduct/Misfeasance*[12]

32. The meaning of wilful misconduct was first discussed in Bermuda in *Focus v. Hardy*[13] **[TAB 13]**. Sir James Astwood, citing Romer J (with approval) in *In Re City Equitable Fire Insurance Co*[14] **[TAB 14]**, laid out the test for wilful misconduct as follows:

> "*An act, or an omission to do an act, is wilful where the person of whom we are speaking knows what he is doing and intends what he is doing. But if that act or omission amounts to a breach of his duty, and therefore, to negligence, is the person guilty of wilful negligence? <u>In my opinion that question must be answered in the negative unless he knows that he is committing and intends to commit a breach of his duty or is careless in the sense of not caring whether his act or omission is not a breach of duty.</u>*"
> (emphasis added)

---

[12] In my opinion, the terms "wilful misconduct" and "wilful misfeasance" are virtually indistinguishable as a matter of Bermuda law. For this reason, and for the purposes of this affidavit, I consider and have treated these terms as interchangeable.

[13] [1992] Bda LR 25 **[TAB 13]**.

[14] [1925] 1 Ch. 407 at 434 **[TAB 14]**.

33. He further went on to consider the elements which ought to be pleaded as a matter of Bermuda law:

> *"In my opinion, the plaintiff has given all material facts on which they rely showing the defendant's state of mind. The pleading has set out what the duties of the directors were and has also given the duties which should be carried out and which have been neglected. These particulars to my mind, show a mental element to support the 'wilful' misconduct.*

34. Thus, as a matter of Bermuda law, in order to establish a claim for wilful misconduct, Plaintiffs must plead with sufficient particularity that each of the Fairfield Greenwich Defendants had actual knowledge that they owed a duty to the Plaintiffs in either contract or tort and further that they actually knew that their actions would amount to a breach of those duties. In other words, Plaintiffs would need to establish that each Fairfield Greenwich Defendant either: (i) knew he was committing a wrongful act at the time he was committing it, yet did so notwithstanding, or (ii) acted recklessly with complete disregard as to the effects of his actions on the Funds. In my opinion, the Complaint does not sufficiently plead conduct amounting to wilful misconduct.

35. Further, as I have already explained above, Plaintiffs have failed to identify a recognisable duty of care under Bermuda law. Nor have Plaintiffs identified a contractual duty. Thus, Plaintiffs cannot suggest, as a matter of Bermuda law, that the Fairfield Greenwich Defendants knowingly intended to commit a breach of duty where such a duty does not exist under Bermuda law.

36. Even if I am wrong, and a contractual or tortious duty were found to exist, Plaintiffs' allegations of wilful misconduct are bound to fail for want of particularity. In order to maintain a valid claim for wilful misconduct, as a matter of Bermuda law, Plaintiffs would have to plead and particularise their claims in respect of each of the Fairfield

Greenwich Defendant and assert, at a minimum: (1) the precise identity of the individual who is alleged to have acted with wilful misconduct, (2) primary facts evidencing each of the Fairfield Greenwich Defendants' knowledge of the existence of a duty to the Plaintiffs, and (3) particulars of each individual's extreme degree of carelessness towards their duties to the Plaintiffs. The Complaint merely states that certain of the Fairfield Greenwich Defendants were reckless generally, which is insufficient as a matter of Bermuda law.

*Gross Negligence/Reckless Disregard*

37. The recent case of *China North Industries Investment Management Ltd v. China North Industries Investment*[15] **[TAB 15]** addressed the position of Bermuda law on "gross negligence" and "reckless disregard". In that case, plaintiff investment manager commenced an action against the investment company on the basis that the investment company had wrongly purported to terminate the investment management agreement and had underpaid fees which were properly due to the plaintiff. The investment company replied that the investment manager had breached various duties set out in the IMA. The investment manager counterclaimed, relying upon an indemnity contained in the IMA which provided, inter alia, as follows:

> *"[n]one of the Investment Manager...shall be liable to the Company...for any act or omission in the course of or in connection with the services to be rendered...or for any loss however arising from errors of fact or judgment or any action taken for [various duties performed]...provided however, that no Person shall be relieved of any liability for its gross negligence or wilful misconduct.*

---

[15] [2004] Bda LR 8.

14

> *The Company agrees to indemnify the Investment Manager...from and against any and all liabilities...which may be imposed on, incurred by or asserted against such indemnitee...provided, however, the Company shall have no obligation to an Indemnitee hereunder with respect to matters resulting primarily from gross negligence or wilful misconduct of such Indemnitee..."*

38. Storr J, in defining the scope of gross negligence noted that there is an overlap between gross negligence and reckless disregard:

> *In my view, it is clear that in choosing the phrase 'gross negligence or wilful misconduct' the parties intended to identify conduct over and above ordinary negligence. I therefore adopt the definition given by Mance, J. in the "Hellespont Ardent' (supra) namely that the concept of gross negligence embraces serious negligence amounting to reckless disregard, without any necessary implication of consciousness of the high degree of risk or the likely consequences of the conduct on the part of the person acting or omitting to act. It also includes the concept of acting in serious disregard of or indifference to an obvious risk. I therefore, conclude that unless the investment company can show on the balance of probabilities, the Investment Manager acted in such a way, the Investment Manager is entitled to take advantage of the benefit of the indemnity given to it..."*

39. In *Red Sea Tankers Ltd v. Papachristidis et al. (The "Hellespont Ardent")* [1997] 2 Lloyd's Rep. 547 **[TAB 16]**, cited in *China North*, Mance J held that:

> *"The term 'recklessly', I think, does not really give rise to much difficulty. It means something more than mere negligence or inadvertence. I think it means running an unjustifiable risk...Recklessness is gross carelessness – the doing of something which in fact involves a risk, whether the doer realizes it or not; and the risk being such having regard to all the circumstances, that the taking of that risk would be described as "reckless"...Each case has to be viewed on its own particular facts and not by reference to any formula. The only test, in my view, is an objective one. Would a reasonable man, knowing all the facts and circumstances which the doer of the act knew or ought to have known, describe the act as "reckless" in the ordinary meaning of that word in ordinary speech? As I have said, my understanding of the ordinary meaning of the word is a high degree of carelessness. I do not say "negligence", because "negligence" connotes a legal duty."*

40. Thus, "recklessness" and "gross negligence" both refer to carelessness that is so great that, given the surrounding circumstances, such conduct necessarily involves an

unjustifiable risk. In my opinion, the Complaint does not sufficiently allege conduct on the part of the Fairfield Greenwich Defendants amounting to recklessness or gross negligence under Bermuda law.

41. In addition, Plaintiffs' allegations are made in the context of a claim for breach of a contractual duty or tortious duty. As discussed above, such a duty does not exist as a matter of Bermuda law. Consequently, there is nothing for which the Fairfield Greenwich Defendants can be said to have acted in reckless disregard of and the claim is futile.

42. Even if I am wrong, and a contractual or tortious duty were found to exist, Plaintiffs' allegations of reckless disregard are bound to fail for want of particularity. In order to maintain a valid claim for reckless disregard, as a matter of Bermuda law, Plaintiffs would have to plead and particularise their claim in respect of each of the Fairfield Greenwich Defendants and assert, at a minimum: (1) the precise identity of the individual who is alleged to have acted in reckless disregard of his duties, (2) primary facts evidencing each of the Fairfield Greenwich Defendants' knowledge of the existence of a duty to the Plaintiffs, and particulars of each individual's high degree of carelessness towards their duties to the Plaintiffs. Plaintiffs have merely stated that certain of the Fairfield Greenwich Defendants were reckless generally which is insufficient as a matter of Bermuda law.

*Bad Faith*

43. In *Wilson v. First Bermuda Securities Ltd. and others* [2002] Bda LR 67 [**TAB 17**] it was held that *"An allegation that a party has been guilty of bad faith equates to an allegation*

*of <u>dishonesty, though not necessarily for a financial motive, and proper particulars of such an allegation must be pleaded, otherwise the allegation will be struck out</u>".*[16]

44. In my opinion, the Complaint contains no allegations establishing that the Fairfield Greenwich Defendants engaged in conduct that could be described as bad faith under Bermuda law, much less any particularized allegations of bad faith against any Fairfield Greenwich Defendant.

45. In the absence of a properly pleaded allegation of wilful misfeasance, wilful misconduct, bad faith, gross negligence or reckless disregard, the protection afforded by the exculpatory provisions of the IMAs, as described above, remains unaffected.

46. Thus, the exculpatory provisions of the IMAs cover FGBL and FRS as contracting parties under the IMAs. The exculpatory provisions also cover Andres Piedrahita and Amit Vijayvergiya as officers or directors of FGBL. Further, and to the extent that certain Fairfield Greenwich Defendants may be found to be performing certain roles on behalf of FGBL or FRS qua principals, partners or agents, those Defendants would also be entitled to protection under the exculpatory provisions of the IMAs.[17]

---

[16] See also Vol. 1, Supreme Court Practice 1997 **[TAB 18]**, page 310, sub-paragraph (11).

[17] It is well established, as a matter of Bermuda law, that every partner "is virtually both a principal and an agent" (see *Cox v. Hickman*, (1860), 8 H.L. Cas. 268 at 312, 313) **[TAB 19]**. As principal, each partner binds himself, and, as agent, binds the partnership, or more properly, the firm.

47. Further, it is my opinion that, in as much as any Fairfield Greenwich Defendants may be liable to the Plaintiffs in their capacity as director, officer, agent, employee or counsel of FGBL or FRS, the exculpatory provisions of the IMAs afford complete protection and act as a bar to Plaintiffs claims against those Fairfield Greenwich Defendants.

SWORN TO by the said )
Rod S. Attride-Stirling )
At Hamilton, Bermuda )
On the 22nd day of December, 2009 )    Rod S. Attride-Stirling
Before me: )
)
)
)
.................................................)
COMMISSIONER OF OATHS / NOTARY PUBLIC

**MARC G. DANIELS**
**Barrister & Attorney**
**Commissioner of Oaths**

# INDEX OF EXHIBITS

1. Curriculum Vitae of Rod S. Attride-Stirling.
2. Crockwell v Haley [1993] Bda LR 7.
3. Remington v. Remington, Bda. Civ. App. 1/1977, 30 November 1977
4. Percival v. Wright [1902] 2 Ch. 421.
5. Arklow Investments Ltd v. Maclean [2000] 1 W.L.R. 594.
6. Bristol and West Building Society v. Mothew [1998] Ch. 1, 18.
7. Allen Walsh and others v. Horizon Bank International Limited [2008] Bda LR 16.
8. Allen Walsh and others v. Horizon Bank International Limited (2009) CA Bda 6 Civ.
9. Tai Hing Ltd. v. Liu Chong Hing Bank [1986] 1 A.C. 80.
10. National Bank of Greece v Pinios No. 1 [1990] 1 A.C. 637.
11. White v Conyers, Dill & Pearman 1993 Civil Appeal No. 31 [1994] Bda LR 9.
12. Henderson v Merrett Syndicates [1995] 2 A.C. 145.
13. Focus Insurance Co. Ltd. v. Hardy, et al. [1992] Bda LR 25.
14. In Re City Equitable Fire Insurance Co [1925] 1 Ch. 407 at 434.
15. China North Industries Investment Management Ltd v China North Industries Investment [2004] Bda LR 8.
16. Red Sea Tankers Ltd v Papachristidis et al. (The "Hellespont Ardent") [1997] 2 Lloyd's Rep. 547
17. Wilson v. First Bermuda Securities Ltd. and others [2002] Bda LR 67.
18. Vol. 1, Supreme Court Practice 1997, page 310, sub-paragraph (11).
19. Cox v. Hickman, (1860), 8 H.L. Cas. 268