UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

ANWAR, *et al.*                                  )
                                                 )
                                                 )
                        Plaintiffs,              )         Case No:  09-CV-118 (VM)
                                                 )
            v.                                   )         ECF Case
                                                 )
FAIRFIELD GREENWICH LIMITED, *et al.*,           )
                                                 )
                        Defendants.              )
_____)


# MEMORANDUM IN SUPPORT OF
# PRICEWATERHOUSECOOPERS LLP'S
# MOTION TO DISMISS


                                    Andrew M. Genser
                                    KIRKLAND & ELLIS LLP
                                    601 Lexington Avenue
                                    New York, New York 10022
                                    Telephone:  (212) 446-4800

                                    Emily Nicklin, P.C.
                                    Timothy A. Duffy, P.C.
                                    KIRKLAND & ELLIS LLP
                                    300 North LaSalle
                                    Chicago, Illinois 60654
                                    Telephone:  (312) 862-2000
                                    Email: tim.duffy@kirkland.com

                                    *Attorneys for Defendant*
December 22, 2009                   *PricewaterhouseCoopers LLP*

# TABLE OF CONTENTS

I.   PLAINTIFFS' SECURITIES LAW CLAIM FAILS. ....................................................7

     A.    The Complaint Does Not Allege Scienter. ............................................7

     B.    The Complaint Does Not Allege Reliance............................................10

     C.    The Complaint Does Not Allege Loss Causation. ................................11

II.  PLAINTIFFS DO NOT HAVE STANDING TO PURSUE STATE LAW
     CLAIMS AGAINST PWC CANADA.....................................................................12

     A.    The Greenwich Sentry and Greenwich Sentry Partners Plaintiffs Lack
           Standing Under Delaware Law............................................................12

     B.    The Fairfield Sentry and Fairfield Sigma Plaintiffs Lack Standing Under
           BVI Law..............................................................................................14

III. PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED. ...................................15

     A.    SLUSA Preempts Plaintiffs' State-Law Claims. ..................................15

     B.    The Martin Act Preempts Plaintiffs' State Law Tort Claims. ..............17

IV.  EACH OF PLAINTIFFS' STATE LAW CLAIMS FAILS.........................................18

     A.    Plaintiffs' Negligence Claims Fail......................................................19

           1.    There Is No "Gross Negligence" Claim Against Accountants
                 Under New York Law..................................................................19

           2.    Plaintiffs' Negligence Claims Fail for Lack of Privity. ...........19

           3.    Plaintiffs' Negligence Claims Fail To Plead Reliance or Causation ........22

     B.    Plaintiffs' Third-Party Beneficiary Claim Fails...................................22

     C.    Plaintiffs' Aiding And Abetting Claims Fail. .......................................23

           1.    Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claim
                 Fails.............................................................................................23

           2.    Plaintiffs' Aiding And Abetting Fraud Claim Fails..................24

D.      Plaintiffs' Unjust Enrichment Claim Fails..............................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*, _ F. Supp. 2d _,
    2009 WL 2828018 (S.D.N.Y. Sept. 2, 2009) ................................................... 18

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) .......................................................................................... 6

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ........................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 6

*BHC Interim Funding, L.P., v. Finantra Capital, Inc.*
    283 F. Supp. 2d 968 (S.D.N.Y. 2003) .............................................................. 22

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ........................................................................................... 11

*Bullmore v. Ernst & Young Cayman Islands*,
    846 N.Y.S.2d 145 (1st Dep't 2007) .............................................................. 23, 24

*Cashman v. Coopers and Lybrand*,
    623 N.E.2d 907 (Ill. App. Ct. 1993) ................................................................ 14

*Castellano v. Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001) .............................................................................. 17

*Common Fund for Non-Profit Orgs. v. KPMG Peat Marwick L.L.P.*,
    951 F. Supp. 498 (S.D.N.Y. 1997) ............................................................... 21, 22

*Continental Cas. Co. v. PricewaterhouseCoopers LLP*,
    2007 WL 3992606 (N.Y. Sup. Ct. Nov. 7, 2007),
    *aff'd*, 869 N.Y.S.2d 506 (1st Dep't 2008) ..................................................... 13, 14

*Cortec Indus. Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991),
    *cert. denied*, 503 U.S. 960 (1992) ..................................................................... 5

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
    483 N.E.2d 110 (N.Y. 1985) ........................................................................ 19, 20

*Crigger v. Fahnestock & Co.*,
    2003 WL 22170607 (S.D.N.Y. Sept. 18, 2003)................................................................25

*Decker v. Massey-Ferguson, Ltd.*,
    681 F.2d 111 (2d Cir. 1982)...............................................................................................8

*ECA v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) ......................................................7

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003)..............................................................................................11

*Equitable Life Assurance Soc. v. Alexander Grant & Co.*,
    627 F. Supp. 1023 (S.D.N.Y. 1985)..................................................................................19

*Feinman v. Dean Witter Reynolds, Inc.*,
    84 F.3d 539 (2d Cir. 1996)................................................................................................10

*Figueiredo Ferraz Consultoria E Engenharia De Projeto LTDA v. Republic of Peru*,
    _ F. Supp. 2d _, 2009 WL 2981947 (S.D.N.Y. Sept. 8, 2009) ........................................14

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*,
    66 N.Y.2d 38 (N.Y. 1985) ................................................................................................22

*Fraser River Pile & Dredge Ltd. v. Can-Dive Servs. Ltd.*,
    [1999] 3 S.C.R. 108, 1999 CanLII 654 (Can.)..................................................................23

*Goodson v. Red Carpet Inns*,
    1979 U.S. Dist. LEXIS 7731 (S.D.N.Y. Dec. 28, 1979) ..................................................23

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998).................................................................................25

*Grippo v. Perazzo*,
    357 F.3d 1218 (11th Cir. 2004) ........................................................................................16

*Hercules Mgmts. Ltd. v. Ernst & Young*,
    [1997] 2 S.C.R. 165, 1997 CanLII 345 (Can.)..................................................................21

*HSA Residential Mortgage Servs. of Texas v. Casuccio*,
    350 F. Supp. 2d 352 (E.D.N.Y. 2003)..............................................................................19

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
    2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005), *vacated on other grounds*, 2006 WL
    74439 (S.D.N.Y. Jan. 11, 2006).........................................................................................12

*In re Carter-Wallace, Inc. Sec. Litig.*,
    220 F.3d 36 39 (2d Cir. 2000)............................................................................................7

*In re NationsMart Corp. Sec. Litig.*,
  130 F.3d 309 (8th Cir. 1998), *cert. denied*, 524 U.S. 927 (1998)..................................... 11

*In re Santa Fe Pac. Corp. S'holder Litig.*,
  669 A.2d 59 (Del. 1995) ........................................................................................... 24

*In re WorldCom, Inc.*,
  263 F. Supp. 2d 745 (S.D.N.Y. 2003)...................................................................... 17

*Int'l Audiotext Network, Inc., Am. Tel. and Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995) ............................................................................................ 5

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
  741 A.2d 377 (Del. Ch. 1999).................................................................................. 23

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991)................................................................................................... 13

*Kassover v. UBS AG*,
  619 F. Supp. 2d 28 (S.D.N.Y. 2008)........................................................................ 18

*Kaufman v. Cohen*,
  307 A.D.2d 113 (1st Dep't 2003) ............................................................................. 24

*Kramer v. W. Pac. Indus., Inc.*,
  546 A.2d 348 (Del. 1988) ................................................................................... 12, 13

*LaSalle Nat'l Bank v. Ernst & Young LLP*,
  285 A.D.2d 101 (1st Dep't 2001) ............................................................................. 23

*Lentell v. Merrill Lynch & Co. Inc.*,
  396 F.3d 161 (2d Cir. 2005),
  *cert. denied*, 546 U.S. 935 (2005)........................................................................... 11

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006)..................................................................................... 24

*Mazzaro de Abreu v. Bank of Am. Corp.*,
  525 F. Supp. 2d 381 (S.D.N.Y. 2007)...................................................................... 25

*Meranus v. Gangel*,
  1989 WL 240072 (S.D.N.Y Aug. 10, 1989)............................................................ 20

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006).............................................................................................. 15, 17

*Nat'l City Bank v. Coopers & Lybrand,*
    409 N.W.2d 862 (Minn. Ct. App. 1987),
    *review denied,* Oct. 21, 1987 .................................................................................. 14

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) ................................................................................. 8

*Parrott v. Coopers & Lybrand, L.L.P.,*
    702 N.Y.S. 2d 40 (1st Dep't 2000),
    *aff'd,* 741 N.E.2d 506 (2000) ............................................................................ 21

*Prescient Acquisition Group, Inc. v. M.J. Publ'g Trust,*
    2006 WL 2136293 (S.D.N.Y. July 31, 2006) ................................................... 23

*PricewaterhouseCoopers, LLP v. Massey,*
    860 N.E.2d 1252 (Ind. Ct. App. 2007)
    *transfer denied,* 869 N.E.2d 458 (Ind. May 18, 2007) .................................... 14

*Primavera Familienstiftung v. Askin,*
    1996 WL 494904 (S.D.N.Y. Aug. 30, 1996) ................................................... 13

*Pro Bono Invs., Inc. v. Gerry,*
    2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005) ................................................ 18

*Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP,*
    335 F.3d 800 (8th Cir. 2003), *cert. denied,* 540 U.S. 1162 (2004) .................. 17

*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1989) ............................................................................... 12

*Rotterdam Ventures, Inc. v. Ernst & Young LLP,*
    300 A.D.2d 963 (3d Dep't 2002) ...................................................................... 19

*Ryan v. Hunton & Williams,*
    2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ................................................ 25

*Sable v. Southmark/Envicon Capital Corp.,*
    819 F. Supp. 324 (S.D.N.Y. 1993) ................................................................... 10

*Saito v. McCall,*
    2004 WL 3029876 (Del. Ch. Dec. 20, 2004) ................................................... 24

*SEC v. Zandford,*
    535 U.S. 813 (2002) ........................................................................................... 16

*Sec. Investor Prot. Corp. v. BDO Seidman, LLP,*
    222 F.3d 63 (2d Cir. 2000) ........................................................................ 21, 22

*Sec. Investor Prot. Corp. v. BDO Seidman, LLP*,
  49 F. Supp. 2d 644 (S.D.N.Y. 1999)..................................................... 19

*Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*,
  79 N.Y.2d 695 (N.Y. 1992) ................................................................. 21

*Seghers v. Thompson*,
  2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006)...................................... 14

*South Cherry Street v. Hennessee Group LLC*,
  573 F.3d 98 (2d Cir. 2009)............................................................ 7, 8, 9

*Stevelman v. Alias Research Inc.*,
  174 F.3d 79 (2d Cir. 1999)................................................................... 10

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)............................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................... 8

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) .................................................................. 12

*Ultramares Corp. v. Touche, Niven & Co.*,
  255 N.Y. 170 (N.Y. 1931) ............................................................. 19, 21

*VTech Holdings Ltd. v. PricewaterhouseCoopers LLP*,
  348 F. Supp. 2d 255 (S.D.N.Y. 2004).................................................. 24

*West Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
  _ F.3d _, 2009 WL 2779119 (2d Cir. Sept. 3, 2009) ...................... 8, 9

*White v. Guarente*,
  372 N.E.2d 315 (N.Y. 1977)................................................................ 20

**Statutes**

15 U.S.C. § 77r(b)................................................................................. 15

15 U.S.C. § 78bb(f)(1)(A)..................................................................... 15

15 U.S.C. § 78bb(f)(5)(B)..................................................................... 15

15 U.S.C. § 78bb(f)(5)(E)..................................................................... 15

15 U.S.C. § 78u-4(b)(1)-(3) ............................................................... 6, 7

6 Del. C. § 15-405(d) ........................................................................... 13

**Other Authorities**

BVI Business Companies Act, 2004 ¶ 184C(1), (3)....................................................... 15

N.Y. Gen. Bus. Law § 352 *et seq*................................................................................. 17

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................. 7, 32

Fed. R. Civ. P. 44.1 .................................................................................................... 18

<u>**INTRODUCTION**</u>

Plaintiffs are investors in various funds issued by the Fairfield Greenwich Group ("Fairfield Greenwich") that placed assets with Bernard L. Madoff Investment Securities ("BLMIS"). They have sued various Fairfield Greenwich–related individuals and entities, companies hired by Fairfield Greenwich to administer the day-to-day operations (including the internal accounting operations) of these funds, and three accounting firms, including PricewaterhouseCoopers LLP ("PwC Canada"). PwC Canada is alleged to have audited the funds' financial statements for the years ended December 31, 2006 and December 31, 2007.

Plaintiffs' complaint against PwC Canada boils down to the assertion that PwC Canada failed to do what thousands of investors, hundreds of professional money managers, dozens of other auditing firms, and every regulatory and law-enforcement agency in the United States failed to do for at least 18 years: discover that Bernard Madoff, one of the most respected figures on Wall Street, who built and ran an industry-leading and entirely legitimate market-making business, and who managed billions of dollars in assets and returned steady profits for clients the world over without ever failing to meet a request for a redemption, was in fact running the largest Ponzi scheme in history.

To allege, as plaintiffs have, that auditing firms such as PwC Canada failed to uncover this long-standing scheme because they performed their work with fraudulent intent or at least negligence, and failed to comply with applicable auditing standards, borders on the absurd. Madoff did not, as is implied, escape detection for years because every single auditor of every single fund that entrusted assets to him was engaged in fraud or acted with negligence. He did not – as plaintiffs' theories imply – escape detection by such dumb luck. Logic dictates (and the facts still coming to light bear out) that he created and operated a sophisticated scheme designed specifically to evade detection by investment-fund auditors who performed their work in full

accord with all applicable professional standards.  He could not, and did not, design a scheme that depended on dozens of different professional auditing firms making mistakes.  To the contrary, he knew what information auditors would require from him in order to discharge their professional obligations, and he made sure he gave it to them.

It is therefore not surprising that plaintiffs are unable to state viable claims against firms such as PwC Canada that audited the financial statements of entities that entrusted assets to Madoff.  There simply is no factual or legal basis for claims by fund investors against PwC Canada.  Specifically, plaintiffs have failed to state a claim in at least four different ways:

*First*, plaintiffs' federal securities claim fails because they have not pled facts creating a strong inference of scienter on the part of PwC Canada.  Plaintiffs have also failed to allege that they relied on any representation by PwC Canada in determining to invest.  They also do not – and cannot – adequately allege loss causation.  The connection between PwC Canada's allegedly flawed audit reports and the acknowledged cause of plaintiffs' loss – Madoff's Ponzi scheme – is simply too attenuated to state a claim under the federal securities laws.

*Second*, plaintiffs lack standing to assert common-law claims against PwC Canada.  Plaintiffs did not invest with Madoff; they invested in funds that entrusted assets to Madoff.  PwC Canada did not perform work for any of the plaintiffs; PwC Canada performed work for the funds.  Any injury to the plaintiffs, and any prospective recovery owed to them, by PwC Canada is necessarily wholly derivative of an injury suffered by, and a recovery owed to, the funds in which they invested.  The funds may or may not have claims against PwC Canada for any alleged audit failures, but plaintiffs do not have standing to assert such claims directly against PwC Canada.

***Third***, plaintiffs' common-law claims are preempted by both the Securities Litigation Uniform Standards Act (SLUSA) and New York's Martin Act.

***Fourth***, in addition to the foregoing, plaintiffs have failed to adequately plead each of these claims.

**BACKGROUND**

**The Parties**

The named plaintiffs in this case each allege that they invested in one of four entities affiliated with Fairfield Greenwich: Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma"), Greenwich Sentry, L.P. ("Greenwich Sentry"), and Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners") (collectively, the "Funds") (Second Consolidated Am. Compl. ("SCAC") ¶¶ 1-116), at various times from 1997 (*id.* ¶ 43) until November 14, 2008. (*Id*. ¶¶ 8, 16, 25-26, 38, 45, 55-56, 66) They purport to bring their claims on behalf of a class of all investors in these Funds as of December 10, 2008 "who suffered a net loss of principal." (*Id.* ¶ 351) Plaintiffs allege that Fairfield Sentry and Fairfield Sigma are international business companies organized under the laws of the British Virgin Islands ("BVI"), and that both entities are currently in liquidation pursuant to a July 21, 2009 Order of the BVI High Court of Justice. (*Id*. ¶¶ 170-71) Greenwich Sentry and Greenwich Sentry Partners are alleged to be Delaware limited partnerships. (*Id*. ¶¶ 172-73)

Plaintiffs have sued: (1) Fairfield Greenwich and a number of affiliated entities and individuals (*id.* ¶¶ 117-152), including Fairfield Greenwich (Bermuda) Ltd., an SEC-registered investment advisor that allegedly served as the Investment Manager for Fairfield Sentry and Fairfield Sigma and the General Partner of Greenwich Sentry and Greenwich Sentry Partners (*id.* ¶ 119); (2) various individuals and entities affiliated with Citco Group Limited, which allegedly provided various administrative and custody services to the Funds (*id.* ¶¶ 156-64); (3) GlobeOp

Financial Services, LLC, which allegedly provided administrative services to Greenwich Sentry prior to 2006 (*id.* ¶ 165); and (4) three member firms of the PricewaterhouseCoopers Global Network: (a) PricewaterhouseCoopers International Limited, which is not alleged to have audited any of the Funds (*id.* ¶ 153); (b) PricewaterhouseCoopers Netherlands, which is alleged to have audited certain of the Funds prior to 2006 (*id.* ¶ 155); and (c) PwC Canada, which is alleged to have audited the financial statements of the Funds for the years ended December 31, 2006 and December 31, 2007. (*Id.* ¶ 154)

### **The Funds' Investment In Madoff**

Plaintiffs allege that, from the inception of each of the Funds, substantially all of their assets were placed, directly or indirectly, into the custody of BLMIS, which Madoff used to perpetrate "the largest and longest running 'Ponzi scheme' in history." (*Id.* ¶¶ 1, 166) Plaintiffs' claim that, "From December 1, 1995 through December 2008, the Funds handed over approximately $4.5 billion of their investors' money to Madoff" and "[d]uring the same period . . . were able to obtain redemptions totaling over $3.5 billion." (*Id.* ¶ 175) The complaint also alleges that plaintiffs "could have redeemed their investments in the Funds and recovered their principal at any time during the many years in which redemption requests were being paid." (*Id.*) Of course, given plaintiffs' allegations regarding Madoff's Ponzi scheme, this would work (and in fact, did work) only so long as Madoff's fraud remained undiscovered and he remained able to solicit money from other victims to fund redemptions. (*Id.* ¶¶ 166-67)

### **PwC Canada**

Plaintiffs allege that PwC Canada is an Ontario Limited Liability Partnership with its principal place of business in Ontario. (*Id.* ¶ 154) PwC Canada is a separate and distinct legal entity from defendants PwC Netherlands and PwC International. (*Id.* ¶¶ 153-155) Plaintiffs

acknowledge that the terms of PwC Canada's engagement to audit the Funds' financial statements for 2006 and 2007 were set forth in two sets of letters signed by Daniel Lipton, Partner and Chief Financial Officer of Fairfield Greenwich Group and dated January 11, 2007 and October 17, 2007, respectively.[1]  (Exs. A-D)  The terms of PwC Canada's engagement by the funds was governed by Ontario law.  (*Id*. at 10)

Plaintiffs allege that PwC Canada issued "clean" audit opinions on the financial statements of the Funds.  (SCAC ¶¶ 262, 264, 266-67; Exs. E-L)  But plaintiffs do not allege that they received, read, or relied upon any of PwC Canada's audit reports prior to investing in the Funds.  Indeed, according to the complaint, over half of the named plaintiffs allegedly made *all* of their investments in the Funds prior to April 24, 2007, the date PwC Canada issued its first audit reports on the Funds' financial statements.  (*Id*. ¶¶ 1-116, Exs. E-H)  And there is no allegation in plaintiffs' complaint that alleges that those who invested after April 24, 2007 saw either of PwC Canada's audit reports until after they had already invested in the Funds.  Instead, plaintiffs enigmatically allege that they relied "directly or indirectly" on the audit reports.  (SCAC ¶¶ 429, 435-46)

---

[1] PwC Canada cites to several exhibits that are cited to and/or incorporated by reference in the complaint and that are central to plaintiff's claims:  (1) The January 11, 2007 Engagement Letters, attached as Exhibits A and B of the Declaration of Timothy A. Duffy ("Duffy Decl.") (*see* SCAC ¶¶ 278, 447-49); (2) the October 17, 2007 Engagement Letters (Duffy Decl. Exs. C-D) (*id*); (3) the Funds' 2006 audit reports (Duffy Decl. Ex. E-H) (*see, e.g., id.* ¶¶ 154, 238-39, 243, 246, 262, 264, 266-67, 270 n.4, 275 n.5, 304 n.7-9); (4) the Funds' 2007 audit reports (Duffy Decl. Exs. I-L) (*id.*); (5) the Funds' Confidential Offering Memoranda and/or Private Placement Memoranda (Duffy Decl. Exs. M-P) (*id.* ¶¶ 171, 184 n.1, 187 n.2, 194-95 n.3, 237-40, 245-47, 278, 300 n.6, 406, 478-79).  These documents may, and should, be considered in ruling on PwC Canada's motion to dismiss.  *See Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (court may consider a document not attached to the complaint, but integral to the complaint, without converting the proceeding into a motion for summary judgment) (citing *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992)).

## Plaintiffs' Claims Against PwC Canada

Plaintiffs claim that PwC Canada failed to audit the Funds' financial statements for 2006 and 2007 in accordance with Generally Accepted Auditing Standards ("GAAS") and misrepresented the financial condition of the Funds due to an alleged failure to obtain sufficient verification of the existence of the Funds' assets purportedly in the custody of BLMIS.  (*See generally id.* ¶¶ 259-318)  Plaintiffs attempt to state legal claims against PwC Canada for:  Gross Negligence (Count 12); Negligence (Count 13); Negligent Misrepresentation (Count 14); Third-Party Breach of Contract (Count 15); Aiding and Abetting Breach of Fiduciary Duty (Count 16); Aiding and Abetting Fraud (Count 17); Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (Count 18); and Unjust Enrichment (Count 33).[2]

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555).  In addition, the circumstances of securities and common law fraud must be asserted with particularity.  Fed. R. Civ. P. 9(b).  Plaintiffs' securities fraud claims must also comply with the rigorous pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(1)-(3).  None of the claims against PwC Canada meet these standards.

---

[2] PwC Canada incorporates by reference the arguments made by PwC Netherlands in response to these same claims.

# I. PLAINTIFFS' SECURITIES LAW CLAIM FAILS.

In a private action under Section 10(b) of the Exchange Act, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). In this case, plaintiffs have failed to allege scienter, reliance, and loss causation.

## A. The Complaint Does Not Allege Scienter.

The complaint does not allege facts to support that PwC Canada had a culpable state of mind. The PSLRA provides that plaintiffs asserting federal securities claims must, with respect to each allegedly unlawful act or omission, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Defendants must possess either an intent to defraud or "'conscious recklessness—*i.e.*, a state of mind *approximating actual intent*, **and** *not merely a heightened form of negligence*.'" *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis in original) (citation omitted); *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (recklessness only reaches "highly unreasonable" conduct that "represents an extreme departure from the standards of ordinary care" such that the danger was actually known to defendant or so obvious that defendant must have known) (quotation omitted). Absent facts supporting that the defendant "had the motive and opportunity to commit fraud," scienter must be established by factual allegations showing "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Not only must the complaint allege facts sufficient to create a strong inference of scienter, but the inference of scienter must be "at least as compelling as any opposing inference of nonfraudulent and

nonreckless intent." *South Cherry Street*, 573 F.3d at 111; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (courts "must take into account plausible opposing inferences," including "plausible nonculpable explanations for the defendant's conduct").

Plaintiffs fall far short of alleging facts that would support a "strong inference" of fraud or conscious recklessness on the part of PwC Canada. Plaintiffs assert that PwC Canada did not conduct its audits in accordance with GAAS and International Accounting Standards (IAS)— alleging, for example, that PwC Canada did not do sufficient testing on Madoff given his multiple roles with respect to the assets. (*Id.* ¶¶ 297, 300-01, 305-10, 316) But these allegations do not establish scienter:

> In the accounting context, failure "to identify problems with the defendant-company's internal controls and accounting practices ***does not*** constitute reckless conduct sufficient for [Section 10(b)] liability." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (emphasis added). Similarly, failure to comply with Generally Accepted Accounting Practices or other such irregularities are insufficient to establish recklessness. *Id.* To rise to the state of mind required, these allegations must be coupled with evidence of "corresponding fraudulent intent." *Id.* (citations omitted).

*West Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, _ F.3d _, 2009 WL 2779119, at *1 (2d Cir. Sept. 3, 2009) (dismissing complaint containing "numerous allegations of carelessness" by auditor, including failure to discover problems with valuation and failure to identify problems with internal controls); *see also Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 120-21 (2d Cir. 1982) (allegation of a non-fiduciary accountant's failure to identify problems in company's internal controls and accounting practices was insufficient to plead scienter).

Moreover, plaintiffs' conclusory allegations that PwC failed to comply with applicable standards are unsupported by any specific factual allegations. For example, the assertion that PwC Canada should have inquired further of Friehling & Horowitz, Madoff's auditor, is ungrounded in any factual allegation explaining why PwC Canada should have been on notice

that Friehling's audit of Madoff was "unsatisfactory." (SCAC ¶¶ 303, 311) Likewise, there is no factual support for the allegation that PwC Canada "must have known" that the Fairfield Defendants did not conduct all the due diligence that they represented. (*Id.* ¶ 317) Other allegations, such as the assertion that Madoff earned "implausibly consistent positive returns" (*id.* ¶¶ 217, 223), do not support any claim that PwC Canada made misrepresentations—and if anything, the "facts" underlying such allegations were equally within plaintiffs' knowledge. (*Id.* ¶¶ 182 (the Fairfield Defendants misrepresented to investors that "the Funds were earning substantial, consistent returns"), 187 (the Fairfield Defendants "uniformly touted—in Placement Memoranda and other uniform sales materials—the Funds' historical track record of profitability").

In any event, whatever inference plaintiffs have created is nowhere nearly as compelling as the opposing inference: that PwC Canada did not act fraudulently or recklessly. In *West Va. Inv. Mgmt. Bd.*, the complaint alleged that improprieties within the audited company were a tightly held secret known only to a few managers. 2009 WL 279119, at *2. The Second Circuit concluded that it was more plausible that the company's managers concealed the fraud from the auditors than that the auditor was reckless in failing to discover them. *Id.* Similarly, in *South Cherry Street*, 573 F.3d at 113, the Second Circuit held that it was implausible "to infer that an industry leader" that "values and advertises its credibility in the industry – and that evaluates 550 funds – would deliberately jeopardize its standing and reliability, and the viability of its business" by recommending a fund on which it had recklessly failed to conduct due diligence. *South Cherry Street*, 573 F.3d at 113; (compare SCAC ¶ 293 (alleging that PwC member firms represent that they have "extensive industry knowledge," take an audit approach "at the leading edge of best practice," and "audit many of the world's best-known companies and thousands of

other organizations both large and small").  This same conclusion is all the more obvious here, where the fraud (a) was at a third-party broker-dealer, not the audited company; (b) was aided and abetted by a third-party auditor who has since pled guilty to multiple counts of fraud;[3] and (c) *managed to go undetected by all regulators, investors, and outside auditors for nearly twenty years*.  (SCAC ¶¶ 1, 166)  BLMIS was examined by the SEC and FINRA at least six times, none of which led to the discovery of the fraud.  It is far more likely that the so-called "red flags" plaintiffs point to appear prominent only with hindsight.  More is required to state a claim for securities fraud.  *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d Cir. 1999) (allegations of "fraud by hindsight" insufficient to state a securities fraud claim).

## B.  The Complaint Does Not Allege Reliance.

Plaintiffs also fail to allege reliance.  Although reliance can be presumed under a "fraud on the market" theory in cases in which plaintiffs purchased shares traded on an open and efficient market, *see Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988), that is not the case here; the complaint acknowledges that the Funds were privately offered investments.  (SCAC ¶ 181; Exs. M-P); *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539 (2d Cir. 1996) (no presumption of reliance where plaintiffs did not face problems of proof faced by purchasers of publicly traded securities); *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 339 (S.D.N.Y. 1993) (no presumption of reliance given to limited partners in partnerships that "were offered privately and were not traded actively in a large public market").

Without a presumption of reliance, plaintiffs must allege actual reliance on PwC Canada's audit reports.  This requires that each plaintiff identify which reports they read and

---

[3] *See* Superseding Information, *United States v. Friehling*, 1:09-cr-700, Docket No. 32 at 15 (reflecting Madoff auditor David Friehling's guilty plea to securities fraud, filing false audit reports with the SEC, and obstructing the Internal Revenue Laws, among other charges).

relied upon. *See In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 322 (8th Cir. 1998), *cert. denied*, 524 U.S. 927 (1998) ("[P]laintiffs did not adequately plead actual reliance, because they did not allege specific facts showing that they relied on the Prospectus or any post-offering statements by the defendants.").

Moreover, as the complaint implicitly acknowledges, those plaintiffs who cannot allege that they actually purchased or redeemed their interests in the Funds in reliance on PwC Canada's 2006 and 2007 audit reports have no standing to bring a 10(b) claim. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-38 (1975) (standing under 10(b) is limited to actual purchasers or sellers of securities, not those who merely retained their interests); (SCAC ¶¶ 462, 468 (alleging that PwC Canada's 10b-5 violations "induced Plaintiffs to make additional investments in the Funds"))

### C.     The Complaint Does Not Allege Loss Causation.

Nor have plaintiffs adequately pled loss causation. The concept of loss causation is essentially the same as proximate cause; "the damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) (citation omitted). Loss causation requires "both that the loss be foreseeable *and* that the loss be caused by the materialization of the concealed risk." *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) (emphasis in original), *cert. denied*, 546 U.S. 935 (2005). The Funds' (and plaintiffs') losses were in no sense "caused" by PwC Canada; they were caused by Madoff. Plaintiffs allege that PwC Canada negligently performed its audits of the Funds, but fail to allege a link between anything PwC Canada did or did not do and the fraud perpetuated by Madoff, a third party that PwC Canada did not audit. Plaintiffs' claim rests on the speculative allegation that, had PwC Canada exposed Madoff's fraud, plaintiffs would not have lost their money. No set of facts

alleged in the complaint support this assertion, and no pled facts, if true, establish that PwC

Canada's alleged failure to expose Madoff was a proximate cause of plaintiffs' losses, even

assuming, contrary to fact, that PwC Canada owed them any duty to discover Madoff's fraud.

## II.    PLAINTIFFS DO NOT HAVE STANDING TO PURSUE STATE LAW CLAIMS AGAINST PWC CANADA.

Under New York choice of law principles, the standing of Greenwich Sentry and

Greenwich Sentry Partners investors to sue is governed by Delaware law, whereas the standing

of investors in Fairfield Sentry and Fairfield Sigma to sue is governed by BVI law. *Rogers v.*

*Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989) (federal court adjudicating pendent state law claims

applies the choice of law principles of forum state) (citation omitted); *In re AllianceBernstein*

*Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) (questions of

shareholder standing are resolved by looking to the law of the fund's state of incorporation),

*vacated on other grounds*, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006); (SCAC ¶¶ 170-173)

### A.    The Greenwich Sentry and Greenwich Sentry Partners Plaintiffs Lack Standing Under Delaware Law.

An individual limited partner of a Delaware limited partnership does not have standing to

sue for investment losses unless he is injured "***directly*** or ***independently*** of the corporation."

*Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988) (emphasis in original); *see also*

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (stockholder

"must demonstrate that the duty breached was owed to the stockholder and that he or she can

prevail without showing an injury to the corporation").  Plaintiffs do not—and cannot—allege

any direct or independent injury—only an injury to the partnerships as a whole.

Likewise, any potential recovery is derivative of the potential recovery by the

partnerships.  Through the Funds, the Fairfield Defendants "handed Plaintiffs' assets over to

Madoff."  (SCAC ¶ 3)  The plaintiffs allegedly "lost all, or substantially all, of their investments

in the Funds[.]"  (*Id.* ¶ 8)  PwC Canada contracted with the Funds, not their investors, to audit the financial statements of the Funds.  (SCAC ¶ 428)  Nothing in the complaint alleges that PwC Canada acted or failed to act with regard to any of the partners or members individually.  All duties owed under PwC Canada's contract, all work performed (or allegedly not performed), all reports issued by PwC Canada, and all of the alleged failures of PwC Canada, were matters between PwC Canada and the Funds as a whole.  Individual limited partners were affected only to the extent of their proportionate interest in the partnerships.  Under well-settled Delaware law, such alleged injuries can only be remedied through an action by the Funds themselves.  *See* 6 Del. C. § 15-405(d); *see also Kramer*, 546 A.2d at 353 (injury falling equally upon all holders can only be recovered through a derivative suit); *Primavera Familienstiftung v. Askin*, 1996 WL 494904, at *15 (S.D.N.Y. Aug. 30, 1996) (dismissing, under Delaware law, shareholders' direct claims against brokers for third-party beneficiary breach of contract and aiding and abetting breach of fiduciary duty).  But plaintiffs did not make a pre-suit demand on the Funds before filing this lawsuit, nor have they alleged demand futility.  *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96 (1991).

Courts have repeatedly held that claims for negligent audits are derivative in nature.  In *Continental Cas. Co. v. PricewaterhouseCoopers LLP*, 2007 WL 3992606 (N.Y. Sup. Ct. Nov. 7, 2007), *aff'd*, 869 N.Y.S.2d 506 (1st Dep't 2008), limited partners claimed that the auditor's reports fraudulently induced them to purchase their limited partnership interests and, later, to maintain their investments.  *Id.*  Under the limited partnership agreement, however, plaintiffs had no divisible right in the funds that would give them a claim that they were injured independently of the partnership.  *Id.*  Therefore, "claims based upon mismanagement of partnership assets that resulted in net losses to the partnership, overpayments to withdrawing limited partners and

overpayment of fees to the general partner all state[d] derivative claims that all limited partners share equally proportionate with their investments in the Funds." *Id.*; *see also PricewaterhouseCoopers, LLP v. Massey*, 860 N.E.2d 1252, 1262 (Ind. Ct. App. 2007), *transfer denied*, 869 N.E.2d 458 (Ind. May 18, 2007); *Cashman v. Coopers and Lybrand*, 623 N.E.2d 907, 910-11 (Ill. App. Ct. 1993); *Nat'l City Bank v. Coopers & Lybrand*, 409 N.W.2d 862, 868-69 (Minn. Ct. App. 1987), *review denied*, Oct. 21, 1987.

B. **The Fairfield Sentry and Fairfield Sigma Plaintiffs Lack Standing Under BVI Law.**

The same result obtains under BVI law. The BVI follow English law on the question of shareholder standing. (*See* Declaration of Guy Philipps, Q.C. ("Philipps Decl.") ¶¶ 5, 16)[4] Under English law, shareholders do not have standing to sue for a wrong done to the company itself. (*Id.* ¶¶ 11-15); *see also Seghers v. Thompson*, 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006) (applying English law to question of shareholder standing under BVI law). The Funds' shareholders are thus precluded from recovering for their "reflective loss"—the diminution in value of their own shares that flowed from the direct loss suffered by the company. (Philipps Decl. ¶¶ 16-17 (opining that, because the Funds' loss is "a loss that the Funds could themselves recover from PwC Canada," the BVI High Court "would inevitably take the view" that "Plaintiffs are not themselves entitled to seek to recover the loss of value of their shareholdings in the Funds by way of action against PwC Canada")

BVI law provides procedures – which plaintiffs have made no pretense of following – that sometimes allow a shareholder to bring a derivative suit on a corporation's behalf (though

---

[4] Pursuant to Federal Rule of Civil Procedure 44.1, submission of materials regarding a foreign country's law is appropriate on a motion to dismiss. *See, e.g. Figueiredo Ferraz Consultoria E Engenharia De Projeto LTDA v. Republic of Peru*, _ F. Supp. 2d _, 2009 WL 2981947, at *3 (S.D.N.Y. Sept. 8, 2009); Fed. R. Civ. P. 44.1.

such procedures are considerably more restrictive than the ability of a shareholder to file a derivative suit in most U.S. jurisdictions). *See*, *e.g.*, BVI Business Companies Act, 2004 § 184C(1), (3) (attached as Duffy Decl. Ex. Q) ("[T]he Court may, on the application of a member of a company, grant leave to that member to (a) bring proceedings in the name and on behalf of that company[,]" but only if the Court determines that the company does not intend to bring a suit or a derivative suit is in the best interests of the company); *id*. ¶ 2 (defining "Court" as the BVI High Court). But there is simply no basis under BVI law on which a shareholder can sue directly on claims that arise solely on behalf of the corporation.

## III.  PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED.

### A.  SLUSA Preempts Plaintiffs' State-Law Claims.

Plaintiffs' state law claims are also preempted by SLUSA. SLUSA provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1)(A). This case is a "covered class action" under SLUSA, because it is a suit in which damages are sought on behalf of more than 50 people. 15 U.S.C. § 78bb(f)(5)(B). A "covered security" is one traded nationally and listed on a regulated national exchange—and as the complaint admits, the Funds allegedly traded "'in highly liquid, large cap stocks all of which are members of the S&P 100 Index." 15 U.S.C. §§ 78bb(f)(5)(E) , 77r(b) ; (SCAC ¶ 233)

In addition, plaintiffs' claims involve misrepresentations and omissions "in connection with the purchase or sale of a covered security." It is immaterial for purposes of SLUSA preemption that PwC Canada did not buy or sell securities; the Supreme Court has held that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006).

Nor does it matter that investors purchased interests in the Funds rather than purchasing securities directly, because their complaint alleges fraud in connection with the Funds' transactions, which were purportedly purchases and sales of "covered securities." It is also immaterial that Madoff never actually purchased securities; the SEC has adopted a broad interpretation of the phrase "in connection with the purchase or sale of any security" for Rule 10b-5 purposes to include instances in which a broker "accepts payment for securities that he never intends to deliver[.]" *SEC v. Zandford*, 535 U.S. 813, 819 (2002); *Grippo v. Perazzo*, 357 F.3d 1218, 1223-24 (11th Cir. 2004) (investor adequately alleged that fraud was "in connection with the purchase or sale of any security" under Florida securities law even though he could not prove that defendant ever actually used his money to purchase any security). Of course, in asserting their Section 10(b) and Rule 10b-5 claim, plaintiffs have already pled that PwC Canada made misrepresentations "in connection with Plaintiffs' purchase of their interests in the Funds." (SCAC ¶ 353(n))

Plaintiffs' claims are preempted because they rest on the (false) assertion that PwC Canada made material misrepresentations and omissions in connection with the existence of the Funds' assets and the accuracy of the financial statements. The complaint alleges:

> PwC expressly undertook to conduct "tests of physical existence, ownership and recorded value of selected assets," "tests of selected recorded transactions with documentation required by law and good business practice," and "direct confirmation with selected third parties (*e.g,* banks, customers, suppliers) of amounts due to or by them and other relevant information." PwC misrepresented that it performed these tests, when it did not, and fraudulently concealed its misconduct from Plaintiffs, thereby preventing Plaintiffs from discovering that the Funds' financial statements were false and misleading.

(SCAC ¶¶ 260)  Plaintiffs also allege that they relied on the misstated audit reports in deciding to "make or retain investments in the Funds[.]"[5]  (*Id.* ¶ 435)  Each of the state-law claims is based on these misrepresentations.[6]  *See Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 802-03 (8th Cir. 2003), *cert. denied*, 540 U.S. 1162 (2004) (holding that negligence, negligent misrepresentation, and aiding and abetting breach of fiduciary duty claims against auditor were preempted by SLUSA where plaintiff alleged that misstated audit reports caused plaintiff to invest in company); *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 772 (S.D.N.Y. 2003) (negligence claim against auditor was preempted where plaintiffs alleged that audits contained material inaccuracies about the value of company stock).

### B.    The Martin Act Preempts Plaintiffs' State Law Tort Claims.

Plaintiffs' state law tort claims are also preempted by New York's Martin Act, which bars common law claims arising in the securities context.  *See* N.Y. Gen. Bus. Law § 352 *et seq.* The statute vests the New York Attorney General with sole discretion to investigate and prosecute alleged securities violations within or from the State of New York.  *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001) (breach of fiduciary duty claim preempted). The Act "extends only to those common law claims that do not require 'proof of deceitful intent' and are based on conduct that is 'within or from' New York."  *Abu Dhabi Comm. Bank v.*

---

[5] SLUSA precludes not only claims in connection with actual purchases or sales of securities, but also holder claims.  *Dabit*, 547 U.S. at 87.  Thus, all class members' claims are preempted.

[6] *See* SCAC ¶¶ 430 (alleging gross negligence:  "PwC nevertheless recklessly issued clean audit opinions that the Funds' financial statements fairly represented the financial condition of the Funds"); 435 (alleging negligence:  PwC Canada was negligent in issuing "clean" audit reports); 440 (alleging negligent misrepresentation:  PwC Canada "falsely represent[ed]" that the Funds' financial statements were accurate); 448-49 (alleging breach of contract:  PwC Canada provided a professional opinion that was not "based upon a proper audit of the Funds"); 453 (alleging aiding and abetting breach of fiduciary duty:  PwC Canada "fail[ed] to disclose that the representations made by management in the financial statements could not be relied upon"); 568 (alleging unjust enrichment:  PwC Canada benefited from its "unlawful acts and omissions").

*Morgan Stanley & Co. Inc.*, _ F. Supp. 2d _, 2009 WL 2828018, at *7 (S.D.N.Y. Sept. 2, 2009) (quotation omitted) (dismissing claims of negligence, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, and aiding and abetting liability); *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 36-37 (S.D.N.Y. 2008) (dismissing aiding and abetting breach of fiduciary duty, negligence, and negligent misrepresentation); *Pro Bono Invs., Inc. v. Gerry*, 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (dismissing counterclaims for breach of fiduciary duty, conversion, unjust enrichment, negligence, gross negligence and negligent misrepresentation).

Plaintiffs acknowledge that the Madoff firm and most of the Funds' partners and managers operated out of New York, several Fairfield entities were registered there, and several named plaintiffs reside there. (SCAC ¶ 157-59, 24, 112, 116, 118, 120, 122, 124-29, 132-34, 136-38, 140, 142-43, 146) Consequently, plaintiffs' state-law tort claims are preempted.

## IV. EACH OF PLAINTIFFS' STATE LAW CLAIMS FAILS.

Plaintiffs' gross negligence, negligence, and negligent misrepresentation claims fail. There is no such thing as a cause of action for "gross negligence" against accountants under New York law. More fundamentally, plaintiffs have not pled a "relationship approaching privity" that would give them standing to sue for negligence. Nor do plaintiffs allege reliance on any actionable misrepresentations or assert a viable theory of causation.

Plaintiffs have no viable claim as third-party beneficiaries for breach of contract. Plaintiffs were not parties to the contracts between PwC Canada and the funds, and those contracts explicitly disclaim any intent to benefit third parties.

Plaintiffs' claim of aiding and abetting breach of fiduciary duty and fraud fails because the complaint does not adequately allege that PwC Canada "knowingly participated" in the Fairfield Defendants' alleged breach or fraud.

Plaintiffs' unjust enrichment claim fails because the claim is barred by the express contract between the funds and PwC Canada, and because plaintiffs did not pay PwC Canada's fees and therefore did not confer any benefit upon PwC Canada.

## A. Plaintiffs' Negligence Claims Fail.

### 1. There Is No "Gross Negligence" Claim Against Accountants Under New York Law.

Plaintiffs' gross negligence claim fails because "there is no basis under New York law for an action in gross negligence against [an] accounting firm." *Equitable Life Assurance Soc. v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1031 (S.D.N.Y. 1985) (fraud claim subsumed gross negligence claim against accountants); *HSA Residential Mortgage Servs. of Texas v. Casuccio*, 350 F. Supp. 2d 352, 363 (E.D.N.Y. 2003) (dismissing with prejudice gross negligence claims against accountant). Courts hold that a claim for gross negligence or recklessness sounds in fraud. *Rotterdam Ventures, Inc. v. Ernst & Young LLP*, 300 A.D.2d 963, 964 (3d Dep't 2002). This line of cases is rooted in *Ultramares Corp. v. Touche, Niven & Co.*, in which then-Judge Cardozo held that accountants are not liable for simple negligence, but rather, only for fraud. 255 N.Y. 170, 189 (N.Y. 1931) ("[I]f less than [fraud] is proved, if there has been neither reckless misstatement nor insincere profession of an opinion, but only honest blunder, the ensuing liability for negligence is one that is bounded by the contract, and is to be enforced between the parties by whom the contract has been made.").

### 2. Plaintiffs' Negligence Claims Fail for Lack of Privity.

Plaintiffs' negligence claims fail because auditors are not liable to third parties for negligence in the absence of a "relationship sufficiently approaching privity." *Sec. Investor Prot. Corp. v. BDO Seidman, LLP*, 49 F. Supp. 2d 644, 656-57 (S.D.N.Y. 1999) (citing *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110, 118 (N.Y. 1985)). The complaint

does not even pay lip service to the requirement of a "relationship approaching that of privity"—let alone plead facts supporting such a relationship. In order to do so, a complaint must satisfy a three-pronged standard:

> (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance.

*Credit Alliance*, 483 N.E.2d at 118. The amended complaint meets none of these requirements.

First, the complaint makes the conclusory assertion that PwC Canada knew that investors would rely on its audit reports to make investment decisions. But this assertion is directly contradicted by both the offering memoranda and PwC Canada's contract with the Funds. The offering memoranda do not attach the audit reports, and explicitly warn that each prospective investor should consult his or her own accountant for advice regarding his or her investment. (Exs. M-N at iii, Ex. O-P at ii) And the engagement letters specifically disclaim reliance by any specific third parties. (Exs. A-D at 3) PwC Canada's engagement letters specifically required the Funds to obtain PwC Canada's consent if they intended to use PwC Canada's name to solicit new investors (Exs. A-C at 2, D at 1-2), but the complaint alleges no facts to support that PwC Canada ever gave such consent.

Second, prospective investors were not "known parties" to PwC Canada, and therefore, it could not have intended that they would rely on its audit reports. *See White v. Guarente*, 372 N.E.2d 315, 361 (N.Y. 1977) (noting that an auditor has no duty to "a faceless or unresolved class of persons," such as "prospective limited partners, unknown at the time and who might be induced to join"); *Meranus v. Gangel*, 1989 WL 240072, at *5 n.7 (S.D.N.Y Aug. 10, 1989) (negligent misrepresentation claim failed where misrepresentations occurred prior to investors' decision to invest, and therefore, prior to the existence of any duty to investors).

Third, plaintiffs fail to allege the requisite "linking conduct" between themselves and PwC Canada. "To demonstrate linking conduct, a plaintiff generally must show some form of direct contact between the accountant and the plaintiff, such as a face-to-face conversation, the sharing of documents, or other 'substantive communication' between the parties." *Sec. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 75 (2d Cir. 2000); *Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 79 N.Y.2d 695, 705 (N.Y. 1992) (accountant never provided or agreed to provide audit report directly to plaintiff, plaintiff not referenced in engagement letter); *Parrott v. Coopers & Lybrand, L.L.P.*, 702 N.Y.S.2d 40, 46 (1st Dep't 2000) (plaintiff never "met or even communicated with the accountants, or [alleged] that the accountants were even aware that plaintiff owned company stock"), *aff'd*, 741 N.E.2d 506 (N.Y. 2000); *Common Fund for Non-Profit Orgs. v. KPMG Peat Marwick L.L.P.*, 951 F. Supp. 498, 499 (S.D.N.Y. 1997) (documents not sent to the third party by auditor); *see Ultramares*, 255 N.Y. at 173-74 (no privity where accountant had prepared a report for client to use generally with "banks, creditors, stockholders, purchasers or sellers, according to the needs of the occasion"); *Sec. Pacific*, 79 N.Y.2d at 708 (audit work was "'only incidentally or collaterally for the use of those to whom [the client] might exhibit it thereafter'") (quoting *Ultramares*, 255 N.Y. at 183).[7] Plaintiffs have alleged no conduct different that what has been held insufficient in these cases.

---

[7] As noted above, PwC Canada's contract to audit the Funds' financial statements is governed by Ontario law, and also reflects an express agreement to the jurisdiction of the Ontario courts. Thus, Ontario law, rather than New York law, arguably governs Plaintiffs' claim that PwC Canada was negligent or reckless in the performance of its audits. Ontario law also mandates dismissal of these claims. In *Hercules Mgmts. Ltd. v. Ernst & Young*, the Supreme Court of Canada held that a company's auditor did not owe individual investors a duty of care with respect to investment losses that resulted from the investors' reliance on an allegedly negligent audit. [1997] 2 S.C.R. 165, 1997 CanLII 345 (Can.) (Duffy Decl. Ex. R). Indeed, in *Hercules*, the Canadian court relied upon the same New York law discussed above. The Court found that shareholders were not in privity by virtue of merely receiving audit reports; without evidence that the auditor agreed to perform its audits for the purpose of assisting plaintiffs' personal

### 3. Plaintiffs' Negligence Claims Fail To Plead Reliance or Causation.

Just as with their securities fraud claims, plaintiffs also fail to plead the requisite reliance or causation to proceed with their negligence claims. *Sec. Investor Prot. Corp.*, 222 F.3d at 72 (no presumption of reliance in common law fraud and negligent misrepresentation claims; allegations of actual reliance required).

### B. Plaintiffs' Third-Party Beneficiary Claim Fails.

Plaintiffs' third-party beneficiary claim fails because they have not alleged any facts demonstrating they were intended beneficiaries. *Common Fund for Non-Profit Orgs.*, 951 F. Supp. at 499 (third party to a contract can only recover for breach if it can establish that it was an intended beneficiary) (*citing Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 44 (N.Y. 1985)). Indeed, their claim is directly contradicted by the engagement letters governing PwC Canada's agreements with the Funds, which expressly disclaim any intent to benefit third parties. *Compare* Exs. A-D at 3 ("The financial statement audit will not be planned or conducted in contemplation of reliance by any specific third party or with respect to any specific transaction.") *with BHC Interim Funding, L.P. v. Finantra Capital, Inc.*, 283 F. Supp. 2d 968, 986-87 (S.D.N.Y. 2003) (third-party beneficiary claim failed where disclaimer stated that "the audit will not be planned or conducted in contemplation of reliance by any third party," and "items of a possible interest to a third party will not be specifically addressed"). Courts have found that third parties are intended beneficiaries of an audit engagement only where the engagement letter envisions reliance by third parties or that the audit was to be used ***primarily*** for the benefit of a third party. *See, e.g., Common Fund for Non-Profit Orgs.*, 951 F.

---

investment decisions, audits were only issued to shareholders in connection with shareholders' universal and generic role of overseeing management. *Id.* ¶¶ 49-50.

Supp. at 500; *LaSalle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 108-09 (1st Dep't 2001). Here, the complaint does not allege any facts supporting the notion that the contracts were to benefit plaintiffs; in fact, the engagement letters evince a clear intent to the contrary.[8]

### C.    Plaintiffs' Aiding And Abetting Claims Fail.

#### 1.    Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claim Fails.

Plaintiffs' claim that PwC Canada aided and abetted the Fairfield Defendants' breach of fiduciary duty falls far short of the standards for pleading such a claim. A plaintiff must allege that: (1) a fiduciary relationship existed, (2) the fiduciary breached its duty, (3) a non-fiduciary defendant "knowingly participated" in a breach, and (4) the plaintiff was damaged by "the concerted action of the fiduciary and the non-fiduciary." *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 386 (Del. Ch. 1999) (internal quotations omitted). A person "knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Bullmore v. Ernst & Young Cayman Islands*, 846 N.Y.S.2d 145, 148 (1st Dep't 2007) (citation omitted).[9]

Plaintiffs have not pled any facts supporting a claim that PwC Canada "knowingly participated" in or "substantially assisted" the Fairfield Defendants' breach. In fact, plaintiffs' merely allege that PwC Canada (1) had "constructive knowledge" that the Fairfield Defendants

---

[8] Ontario law compels the same result. *See Fraser River Pile & Dredge Ltd. v. Can-Dive Servs. Ltd.*, [1999] 3 S.C.R. 108, 1999 CanLII 654 (Can.) ¶¶ 28, 32 (Duffy Decl. Ex. S) (the doctrine of privity can only be relaxed to include third parties to a contract when the parties to the contract explicitly or implicitly intended to extend the benefit in question to the third party); *see also Prescient Acquisition Group, Inc. v. M.J. Publ'g Trust*, 2006 WL 2136293, at *9 (S.D.N.Y. July 31, 2006) (choice of law provision in a contract governs third-party beneficiary claims based on that contract) (citing *Goodson v. Red Carpet Inns*, 1979 U.S. Dist. LEXIS 7731, at *15-16 (S.D.N.Y. Dec. 28, 1979)).

[9] To the extent BVI law governs the Fairfield Sentry and Fairfield Sigma plaintiffs' aiding and abetting breach of fiduciary duty claims against PwC Canada, those claims should be dismissed; no such cause of action exists under English or BVI law. (Philipps Decl. ¶¶ 18-23)

*owed a fiduciary duty to plaintiffs*; (2) "*must have known* or willfully ignored that the Fairfield Defendants did not, in fact, conduct the due diligence they falsely represented that they conducted"; (3) "substantially assisted the Fairfield Defendants by issuing 'clean' audit reports[.]'" (SCAC ¶¶ 317, 452(a)-(d), 453 (emphasis added)); *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003) ("Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability"). These are not adequate allegations of "knowing participation" or "substantial assistance" because there is no suggestion that PwC Canada actually knew of the Fairfield Defendants' failures or intended to further them. *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 72-73 (Del. 1995) (conclusory statement that defendant knew of breaches and knowingly participated in them did not state an aiding and abetting fiduciary duty claim); *Saito v. McCall*, 2004 WL 3029876, at *9 (Del. Ch. Dec. 20, 2004) (same); *Bullmore*, 846 N.Y.S.2d at 148-49 (dismissing claim lacking any allegation that auditor rendered "substantial, as opposed to inadvertent, assistance to the underlying breach").

## 2. Plaintiffs' Aiding And Abetting Fraud Claim Fails.

Similarly, to establish a claim for aiding and abetting common law fraud under New York law, a plaintiff must allege (1) the existence of a fraud, (2) that the defendant knew of the fraud, and (3) that the defendant provided substantial assistance to advance the commission of the fraud. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006). This claim must be pled with the particularity required by Fed. R. Civ. P. 9(b). *Id.* Here again, plaintiffs have alleged only that "PwC acted with willful blindness or recklessness in conducting its audits and is thus charged with constructive knowledge" that the Fairfield Defendants were defrauding investors. (SCAC ¶ 457) But constructive knowledge is simply not enough. *VTech Holdings Ltd. v. PricewaterhouseCoopers LLP*, 348 F. Supp. 2d 255, 269-70 (S.D.N.Y. 2004) (aiding and abetting fraud claim failed where auditor's access to documents could only establish constructive

knowledge, not actual knowledge); *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *8 (E.D.N.Y. Sept. 20, 2000) (allegation that defendant suspected fraudulent activity was insufficient to raise an inference of actual knowledge of fraud).

### D. Plaintiffs' Unjust Enrichment Claim Fails.

Plaintiffs' unjust enrichment claim also fails. Plaintiffs cannot maintain an action for unjust enrichment against PwC Canada because the express contract between the auditor and the Funds bars the claim. "Unjust enrichment is a quasi-contractual remedy, so that such a claim is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists"—even if the plaintiff is not a party to the contract. *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998) (unjust enrichment claim against brokers for recovery of fees failed; all relevant transactions were governed by written agreements). PwC Canada's audits were conducted pursuant to its contracts with the Funds (SCAC ¶ 447; *see also* Exs. A-D); those contracts bar the unjust enrichment claim.[10] In addition, plaintiffs do not—and cannot—allege that the directly conferred a benefit upon PwC Canada, because they did not pay the firm's audit fees. *See, e.g., Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 397 (S.D.N.Y. 2007). Because plaintiffs cannot show that they directly bestowed a benefit on PwC Canada, the claim fails.

### CONCLUSION

For the reasons set forth above, plaintiffs have failed to state any viable claim for relief, and their case should be dismissed with prejudice.

---

[10] Even assuming plaintiffs had standing to assert any such claim against PwC Canada, their negligence claims offer them an adequate remedy at law. *Crigger v. Fahnestock & Co.*, 2003 WL 22170607, at *12 (S.D.N.Y. Sept. 18, 2003) (dismissing unjust enrichment claim against brokers; fraud claim provided an adequate legal remedy).

Dated:  December 22, 2009

/s/ Timothy A. Duffy

Andrew M. Genser
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800

Emily Nicklin, P.C.
Timothy A. Duffy, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Email: tim.duffy@kirkland.com

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*