**EXHIBIT A – SUMMARY OF CLAIMS AND BASES FOR DISMISSAL**

| *HEADWAY Investment Corp. v. American Express Bank Ltd.* | | |
|---|---|---|
| **CLAIM** | **CORE ALLEGATIONS** | **BASES FOR DISMISSAL** |
| Count 1: Breach of Fiduciary Duty | • The Bank "failed to act on [its] duties in that [it] failed to discover, or simply disregarded, the countless red flags surrounding Madoff, B[L]MIS, and any of B[L]MIS' feeder funds, including the [Fairfield] Funds . . . ."[1] (*Headway* Compl. ¶ 78; *see also id.* ¶¶ 61-72.)<br><br>• "Given their superior knowledge, judgment, skill, and years of experience, had [the Bank] undertaken the appropriate due diligence, Headway's investment assets never should have been placed, or allowed to remain in, the [Fairfield] Funds." (*Headway* Compl. ¶ 79.) | • Headway's claim is barred by the economic loss doctrine. (Brief at 39-41.)<br><br>• The Bank did not owe Headway the duties Headway alleges. (Brief at 43-47.)<br><br>• Headway's claim, to the extent it is based on conduct amounting to only negligence, is barred by exculpatory provisions in the Rules and Regulations Governing Accounts. (Brief at 45-47.)<br><br>• Headway fails to allege conduct rising to the level of gross negligence, which is what would be required to assert a claim that is not barred by the exculpatory clause. (Brief at 47-50.)<br><br>• Headway's losses were caused by an intervening and unforeseeable event—Madoff's fraud—not the actions of the Bank. (Brief at 51-52.) |
| *Counts 2 & 3* | • *Asserted against Fairfield entities and individuals only.* | • *Not applicable.* |
| Count 4: Negligence | • The Bank breached its duty "to recommend purchasing an investment only after sufficient, careful, and diligent studying of such investment." (*Headway* Compl. ¶¶ 129, 132.) | • Headway's claim is barred by the economic loss doctrine. (Brief at 39-41.)<br><br>• Headway's claim is barred by the exculpatory provisions in the Rules and Regulations Governing |

---

[1] Plaintiffs in the Florida Cases advance similar claims but, at times, assert those claims against different Standard Chartered entities. For purposes of clarity and consistency, combinations of Standard Chartered Bank International (Americas) Ltd ("SCBI"), Standard Chartered International (USA) Ltd. ("SCI"), Standard Chartered Bank ("SCB") and Standard Chartered PLC ("SC PLC") will be referred to herein as the "Bank."

|  | - The Bank breached its duty "to perform due diligence despite the numerous red flags surrounding Madoff, B[L]MIS and the B[L]MIS feeder funds, including the recommended [Fairfield] Funds." (*Headway* Compl. ¶¶ 131, 132.) | Accounts. (Brief at 45-47.)<br><br>- Headway's losses were caused by an intervening and unforeseeable event—Madoff's fraud—not the actions of the Bank. (Brief at 51-52.) |
|---|---|---|
| *Counts 5, 6 & 7* | - *Asserted against Citco FS, PricewaterhouseCoopers and Fairfield defendants only.* | - *Not applicable.* |
| Count 8: Unjust Enrichment | - Headway paid commissions to the Bank that, in light of the Bank's "abject failure to perform their functions in a reasonably diligent fashion—render [the Bank's] retention of [the commissions] inequitable." (*Headway* Compl. ¶¶ 152, 154.) | - The fees Headways seeks to have returned are governed by a valid and enforceable contract, thus barring Headway's unjust enrichment claim. (Brief at 52.) |

| *LOPEZ* v. *Standard Chartered Bank International (Americas) Ltd.* | | |
|---|---|---|
| **CLAIMS** | **CORE ALLEGATIONS** | **BASES FOR DISMISSAL** |
| Count 1: Section 10(b) of the Exchange Act and Rule 10b-5 | <ul><li>"In 2006, AEB[I]'s relationship manager and officer, Antonio Garcia-Ardanez [] recommended to LOPEZ that AEB[I] had conducted extensive due diligence on the Fairfield Funds and that such investments were like a 'cash substitute.'" (*Lopez* Am. Compl. ¶ 25; *see also id.* ¶ 40.)</li><li>"AEB[I] also touted to LOPEZ the Fairfield Funds apparent histories of stable and steady returns and Garcia-Ardanez represented to LOPEZ that the FAIRFIELD Entities had achieved 'mythical status' for the ability of the Fairfield Funds to generate steady and consistent returns with low volatility." (*Lopez* Am. Compl. ¶ 26.)</li><li>The Bank "misrepresent[ed] to [Lopez] that the investments in Fairfield Sentry, Ltd. were a 'cash substitute' and that there was little risk in leaving Plaintiff's funds with Fairfield Sentry, Ltd. and Fairfield Sigma, Ltd." (*Lopez* Am. Compl. ¶ 40.)</li></ul> | <ul><li>Lopez fails to satisfy the particularity requirements of Rule 9(b) and the PSLRA by failing to allege any details concerning the alleged misstatements. (Brief at 24-25.)</li><li>The alleged misstatements are not actionable because they are not material, too vague to be reasonably relied upon, or are not false. (Brief at 25-28.)</li><li>Lopez does not allege that any individual employee of the Bank acted with scienter, nor does he allege a misstatement so extraordinary that senior Bank officials must have been aware of the alleged misstatement *and* aware of its falsity. (Brief at 28-34.)</li></ul> |
| Count 2: Section 20(a) of the Exchange Act (against Standard Chartered PLC only) | <ul><li>SC PLC "acted as a controlling person . . . by virtue of its 100% ownership and control of [SCBI]." (*Lopez* Am. Compl. ¶ 63.)</li><li>"By virtue of its 100% control of [SCBI], defendant [SC PLC] had the ability to prevent the actions, misrepresentations and omissions committed herein." (*Lopez* Am. Compl. ¶ 65.)</li></ul> | <ul><li>Lopez fails to allege any facts demonstrating that SC PLC was a "culpable participant" in the fraud. (Brief at 34-35.)</li></ul> |

-3-

| | | |
|---|---|---|
| Count 3: Rescission under Sections 206 and 215 of the Investment Advisers Act (against SCBI only) | • "By executing the Private Banking Services Agreement with AEB[I], and other agreements, [Lopez] and defendant [SCBI] entered into 'investment adviser agreements' under the Investment Advisers Act." (*Lopez* Am. Compl. ¶ 69.)<br>• The Bank breached its duties to Lopez by, among other things, misrepresenting to Lopez that it conducted "extensive due diligence" on Fairfield and that "an investment in the Fairfield Funds would generate consistent returns with low volatility"; "failing to perform adequate due diligence"; "publishing and releasing materials to [Lopez] that contained false and misleading information"; and "failing to monitor [Lopez's] investments in [the Fairfield Funds] on an continuous basis." (*Lopez* Am. Compl. ¶ 72.) | • The Bank is not subject to the IAA. (Brief at 53-55.)<br>• Lopez does not adequately allege an investment advisory relationship under the IAA. (Brief at 55-56.) |
| Count 4: Breach of Fiduciary Duty | • The Bank breached its duties by, among other things, misrepresenting to Lopez that the Bank had conducted "extensive due diligence" into Fairfield and the Fairfield Funds; "failing to take reasonable steps to oversee that the investment of the assets of [Lopez] were made and maintained in a prudent and professional manner"; "failing to investigate or perform due diligence or review as to the actual relationship of Madoff and B[L]MIS with [the Fairfield Funds]; and "failing to monitor or audit [Fairfield], Madoff and B[L]MIS on an ongoing basis to any reasonable degree." (*Lopez* Am. Compl. ¶ 81.) | • Lopez's claim is barred by the economic loss doctrine. (Brief at 39-41.)<br>• The Bank did not owe Lopez the duties Lopez alleges. (Brief at 43-47.)<br>• Lopez's claim, to the extent it is based on conduct amounting to only negligence, is barred by exculpatory provisions in the Rules and Regulations Governing Accounts. (Brief at 45-47.)<br>• Lopez fails to allege conduct rising to the level of gross negligence, which is what would be required to assert a claim that is not barred by the exculpatory clause. (Brief at 47-50.)<br>• Lopez's losses were caused by an intervening and unforeseeable event—Madoff's fraud—not the actions of |

| | | |
|---|---|---|
| | | the Bank. (Brief at 51-52.) |
| Count 5: Gross Negligence | - "Reasonable due diligence, including typical quantitative analysis, would have established that the Fairfield Funds, Madoff and B[L]MIS were involved in a fraudulent scheme and that the investment returns . . . were not possible." (*Lopez* Am. Compl. ¶ 49.)<br>- The Bank breached its duties to Lopez by failing, among other things, to "[t]ake all reasonable steps to preserve the value of [Lopez's] investments"; "[p]erform all necessary and adequate due diligence"; and exercise "prudence, caution and good business practices." (*Lopez* Am. Compl. ¶ 86.) | - Lopez does not allege any factual circumstances that would demonstrate to a reasonable person that there was an "imminent" threat or "clear and present danger" of BLMIS turning out to be part of a massive Ponzi scheme. (Brief at 49-50.)<br>- Lopez does not plead that the Bank "knew or should have known" of the danger *and* exhibited a "conscious disregard of a known likelihood" that BLMIS was a fraud. (Brief at 50.) |
| Count 6: Unjust Enrichment and Constructive Trust | - AEBI charged Lopez investment adviser fees. (*Lopez* Am. Compl. ¶ 33.)<br>- The Bank "financially benefited from [its] unlawful acts. . . ." (*Lopez* Am. Compl. ¶ 90.)<br>- "[I]t would be unjust and unequitable for [the Bank] to have enriched [itself] in this manner and [the Bank] should pay its own unjust enrichment to [Lopez]." (*Lopez* Am. Compl. ¶ 91.) | - The fees Lopez seeks to have returned are governed by a valid and enforceable contract, thus barring Lopez's unjust enrichment claim. (Brief at 52.) |
| Count 7: Fraud | Based on same allegations as Lopez's other claims. (*See Lopez* Am. Compl. ¶ 93 (repeating and realleging prior allegations).) | - Lopez's common-law fraud claim fails for this same reason as his Section 10(b) claim: he fails to allege fraud with particularity, fails to allege any actionable misrepresentations or omissions and fails to allege that the Bank acted with the requisite mental state. (Brief at 35-37.)<br>- The Fairfield Funds' Offering Documents disclosed all of the details concerning the Fairfield Funds that Lopez alleges were misrepresented or omitted. (Brief at 35-36, |

| | |
|---|---|
| | 37-39.)<br>• Lopez's fraud claim is also barred by the economic loss rule. (Brief at 39-41.) |

| *MARIDOM Ltd.* v. *Standard Chartered Bank International (Americas) Ltd.* | | |
|---|---|---|
| **CLAIMS** | **CORE ALLEGATIONS** | **BASES FOR DISMISSAL** |
| Count 1: Breach of Fiduciary Duty | <ul><li>SCBI breached its duty to Maridom by failing to conduct sufficient due diligence to learn that "(a) [Fairfield Sentry] was essentially a funnel into BLMIS, and that (b) there were numerous indications [red flags] that investing with [Fairfield Sentry] was anything but a 'risk reducer' and, in fact, was highly risky, if not a vehicle investing in an outright fraud." (*Maridom* Compl. ¶ 40; *see also id*. ¶ 41 (listing alleged "red flags").)</li><li>"Had there been an investigation and inquiry sufficient to form a proper factual basis for assessing an investment in [Fairfield Sentry], SCBI would have concluded that investing in [Fairfield Sentry] was too risky for [Maridom]." (*Maridom* Compl. ¶ 46.)</li></ul> | <ul><li>Maridom's claim is barred by the economic loss doctrine. (Brief at 39-41.)</li><li>SCBI did not owe Maridom the duties Maridom alleges. (Brief at 43-47.)</li><li>Maridom's claim, to the extent it is based on conduct amounting to only negligence, is barred by exculpatory provisions in the Rules and Regulations Governing Accounts. (Brief at 45-47.)</li><li>Maridom fails to allege conduct rising to the level of gross negligence, which is what would be required to assert a claim that is not barred by the exculpatory clause. (Brief at 47-50.)</li><li>The facts that Maridom alleges the Bank breached its duties in failing to disclose were all disclosed in the Offering Documents, which Maridom acknowledges it received and, by signing the Subscription Agreement, affirmed that it had read and understood. (Brief at 37-39.)</li></ul> |

| | | |
|---|---|---|
| Count 2: Negligent Misrepresentation | • "In making its recommendations to [Maridom] that they invest in [Fairfield Sentry], SCBI failed to disclose that [Fairfield Sentry] was nothing more than a funnel to BLMIS. Moreover, SCBI failed to disclose to [Maridom] that the private placement memorandum issued by [Fairfield Sentry] and distributed to [Maridom] was misleading in that it falsely stated the [Fairfield Sentry], through its affiliated investment manager – not some undisclosed third party (BLMIS) – managed the investments made with [Fairfield Sentry] investors' funds." (*Maridom* Compl. ¶ 53.) | • Maridom's negligent misrepresentation claim "sounds in fraud" and thus must meet the pleading requirements of Rule 9(b). (Brief at 37 n.15.)<br>• Maridom fails to plead the alleged misstatements with sufficient particularity to satisfy Rule 9(b). (Brief at 36-37.)<br>• The facts that Maridom alleges the Bank breached its duties in failing to disclose were all disclosed in the Offering Documents, which Maridom acknowledges it received and, by signing the Subscription Agreement, affirmed that it had read and understood. (Brief at 37-39.) |
| Count 3: Fraud | • "SCBI knew at all material times the true modus operandi of [the Fairfield Sentry Fund], including the role of BLMIS . . . [but did not inform Maridom] that [the Fairfield Sentry Fund's] business was simply to turn over money to BLMIS." (*Maridom* Compl. ¶ 31.)<br>• "In making its recommendations to [Maridom] that they invest in [Fairfield Sentry], SCBI failed to disclose that [Fairfield Sentry] was nothing more than a funnel to BLMIS. Moreover, SCBI failed to disclose to [Maridom] that the private placement memorandum issued by [Fairfield Sentry] and distributed to [Maridom] was misleading in that it falsely stated the [Fairfield Sentry], through its affiliated investment manager – not some undisclosed third party (BLMIS) – managed the investments made with [Fairfield Sentry] investors' funds." (*Maridom* Compl. ¶ 53.) | • Maridom fails to plead the alleged misstatements with sufficient particularity to satisfy Rule 9(b). (Brief at 35-37.)<br>• The facts that Maridom alleges the Bank breached its duties in failing to disclose were all disclosed in the Offering Documents, which Maridom acknowledges it received and, by signing the Subscription Agreement, affirmed that it had read and understood. (Brief at 37-39.)<br>• Maridom's fraud claim is also barred by the economic loss rule. (Brief at 39-41.) |

| VALLADOLID v. American Express Bank Ltd. | | |
|---|---|---|
| **CLAIMS** | **CORE ALLEGATIONS** | **BASES FOR DISMISSAL** |
| Count 1: Breach of Fiduciary Duty | • The Bank "did not conduct appropriate due diligence into the Sentry Fund and Madoff's track record before inducing [Valladolid] to invest in the Sentry Fund." (*Valladolid* Am. Compl. ¶ 42.)<br><br>• "Had [the Bank's] due diligence team conducted an appropriate due diligence investigation, they would have discovered several red flags showing the Sentry Fund and Madoff's involvement were not safe and secure companies with whom to entrust [Valladolid's] investment funds." (*Valladolid* Am. Compl. ¶ 44; *see also id*. ¶¶ 62-69 (listing alleged red flags).)<br><br>• "Despite [the] red flags, [the Bank] failed to scrutinize the [Sentry] Fund and did nothing to protect [Valladolid's] investment. The red flag warnings were within [the Bank's] body of knowledge." (*Valladolid* Am. Compl. ¶ 70.)<br><br>• The Bank [should have closely monitored the [Fairfield] Directors which had overall management responsibility for the Funds. . . ." (*Valladolid* Am. Compl. ¶ 81.) | • Valladolid's claim is barred by the economic loss rule. (Brief at 39-41.)<br><br>• SCBI did not owe Valladolid the duties she alleges. (Brief at 43-47.)<br><br>• Valladolid's claim, to the extent it is based on conduct amounting to only negligence, is barred by exculpatory provisions in the Nondiscretionary Investment Services Agreement. (Brief at 45-47.)<br><br>• Valladolid fails to allege conduct rising to the level of gross negligence, which is what would be required to assert a claim that is not barred by the exculpatory clause. (Brief at 47-50.) |

| | | |
|---|---|---|
| Count 2: Negligence | - The Bank "failed to perform due diligence despite the numerous red flags surrounding Madoff, B[L]MIS, and the B[L]MIS feeder funds, including the recommended [Sentry] Funds." (*Valladolid* Am. Compl. ¶ 95.) | - Valladolid's claim is barred by the economic loss rule. (Brief at 39-41.)<br>- SCBI did not owe Valladolid the duties Valladolid alleges. (Brief at 43-47.)<br>- Valladolid's claim, to the extent it is based on conduct amounting to only negligence, is barred by exculpatory provisions in the Nondiscretionary Investment Services Agreement. (Brief at 45-47.)<br>- Valladolid fails to allege conduct rising to the level of gross negligence, which is what would be required to assert a claim that is not barred by the exculpatory clause. (Brief at 47-50.)<br>- Valladolid's losses were caused by an intervening and unforeseeable event—Madoff's fraud—not the actions of the Bank. (Brief at 51-52.) |
| Count 3: Unjust Enrichment | - Valladolid "conferred a benefit on [the Bank] in the form of commissions," but the Bank's "abject failure to perform their functions in a reasonably diligent fashion – render [the Bank's] retention of the benefits inequitable." (*Valladolid* Compl. ¶ 100, 102.) | - The fees Valladolid seeks to have returned are governed by a valid and enforceable contract, thus barring Valladolid's unjust enrichment claim. (Brief at 52.) |