# TABLE OF CONTENTS

| SECTION | | PAGE |
|---|---|---|
| 1 | Definitions | 1 |
| 2 | Representations and Warranties | 2 |
| 3 | Right to Set-Off | 2 |
| 4 | Right To Block | 2 |
| 5 | Overdraft | 3 |
| 6 | Pledge | 3 |
| 7 | Property | 4 |
| 8 | Account Opening | 4 |
| 9 | Statement | 4 |
| 10 | Changes in Property and Transfers of Funds | 5 |
| 11 | Limits on Transaction | 5 |
| 12 | Preauthorized Transfer | 6 |
| 13 | Notice of Withdrawal or Transfer | 6 |
| 14 | Notice of Penalty for Early Withdrawal | 7 |
| 15 | Foreign Currency | 7 |
| 16 | Interest | 7 |
| 17 | Agent for Securities Transaction | 8 |
| 18 | Authorization Regarding Drafts, Endorsements, Etc. | 9 |
| 19 | Provisional Credit to Accounts | 9 |
| 20 | Hold Mail | 10 |
| 21 | Gold, Platinum and Centurion Cards | 11 |
| 22 | Minimum Balances/Charges | 11 |
| 23 | Service Charges | 12 |
| 24 | Automatic Renewal | 12 |
| 25 | Termination of Account | 12 |
| 26 | IBF Notice of Acknowledgement | 12 |
| 27 | Immunity | 13 |
| 28 | Disclaimer | 13 |
| 29 | Repayment at Branch; Applicable Restrictions | 13 |
| 30 | Disclosure | 13 |
| 31 | Credit Inquiry | 13 |
| 32 | Further Actions | 13 |
| 33 | Telephone/Fax Communication | 14 |
| 34 | Recording | 14 |
| 35 | Deposits and Collections | 14 |
| 36 | Payment and Checks | 16 |
| 37 | Checks and Other Forms | 16 |
| 38 | Stop-Payment-Requests; Post Dated Items | 17 |
| 39 | Delivery of Documents | 17 |
| 40 | Dormant Account | 17 |
| 41 | Correspondents and Affiliates | 18 |
| 42 | Force Majeure | 18 |
| 43 | Disputes; Adverse claims; Interpleaders, Etc | 18 |
| 44 | Retention of Funds and Property | 18 |
| 45 | Legal Process and Proceedings | 18 |
| 46 | Indemnification and Exculpation | 19 |
| 47 | Conflict | 20 |
| 48 | Remedies | 20 |
| 49 | Governing Law; Jurisdiction | 20 |
| 50 | Waiver of Jury of Trial | 20 |
| 51 | Joint Accounts | 20 |
| 52 | Assignability | 21 |
| 53 | Severability; Construction | 21 |
| 54 | Amendment | 21 |
| 55 | Waivers of Damages | 21 |

# RULES AND REGULATIONS GOVERNING ACCOUNTS

The following terms and conditions (these "Rules") shall apply to all accounts and all transactions related thereto established and maintained with American Express Bank International, including each and every branch wherever situated, their successors and assigns (collectively "AEBI") by the person(s) (whether individual, corporation, partnership, unincorporated association or otherwise) and their successors and assigns, by whom or on whose behalf of Account Application and Agreement has been signed by (the "Customer"), unless otherwise specifically agreed in writing by AEBI, and the Customer agrees to be bound by these Rules as amended from time to time by AEBI.

1. **Definitions.** In these Rules, the following expressions shall have the respective meanings set opposite them:

   **"Applicable Laws"**
   All applicable laws, decrees, regulations, decisions, treaties, ordinances, rulings, judgments, injunctions, writs and orders of any court, arbitrator or any governmental or administrative authority or agency or taxing, financial or monetary authority or self-regulatory agency, including the Board of Governors of the Federal Reserve System of the United States and the constitution, rules, regulations, customs and usages of the exchanges, markets and clearing systems, in any jurisdiction as in effect from time to time.

   **"Business Day"**
   Any day on which the office of AEBI at which a Customer's account is maintained is open to the public for conduct of business as usual.

   **"Foreign Currency"**
   Any currency other than U.S. Dollars

   **"Indebtedness"**
   All present or future obligations, indebtedness and / or liabilities of the Customer to AEBI or any of the Related Institutions, of any kind, direct or indirect, contractual or tort, liquidated or unliquidated, secured or unsecured, joint, several, joint and several, absolute or contingent due or not due, now existing or hereafter arising, and whether in U.S. Dollars or Foreign Currency, including, without limitation, principal, interest, commissions, fees, charges, costs and expenses (including reasonable legal fees and expenses) incurred by AEBI or any of the Related Institutions in connection with such obligations, indebtedness or liabilities

   **"Losses"**
   Any losses, costs, damages, expenses or other liabilities, including, without limitation, the reasonable fees and expenses of legal counsel, however arising

   **"Property"**
   Any cash, securities and certificates and instruments evidencing the securities, notes, CD's, deposits, checks and other instruments (in U.S. Dollars or Foreign Currency), now or hereafter in the

possession of any of the Related Institutions or their respective nominees or bailees, for any purpose, including safekeeping margin, collection or pledge, held for the account of or as a deposit for the Customer, or as to which the Customer may have any interest, right or power and all substitutions thereto (including, without limitation, all cash, interest, dividends and other distributions from time to time received, receivable or distributed in respect of or exchange for other property, and all rights, privileges and options relating to, declared or granted in connection which such property) and the proceeds thereof

#### "Related Institutions"
Any offices, branches or affiliates of AEBI, American Express Bank Ltd or IDS Financial Corporation.

#### "Statement Cycle"
The time period described in Section 9 hereof

2. **Representations and Warranties.** The Customer represents and warrants, and is deemed to continually represent and warrant, that: (a) if it is a corporation or other entity, it is duly organized and validly existing under the laws of its jurisdiction of incorporation or establishment; (b) it has obtained all necessary governmental, official and other consents, authorizations and approvals and complied with all applicable regulations of any governmental or regulatory authority to open an account with AEBI and perform the terms and conditions contemplated by these Rules; (c) it is the legal and beneficial owner of all property, free of any encumbrance, pledge, lien, charge or security interest except for the liens in favor of any Related Institutions or as provided under Section 52 hereunder; and (d) the transactions contemplated by these Rules constitute a commercial activity of the Customer and the Customer is not entitled to any immunity whatsoever, whether characterized as sovereign immunity or otherwise, from any legal proceedings, whether in the United States or elsewhere.

3. **Right to Set-Off.** It is agreed that in addition to any right of set-off or any similar right to which AEBI may be entitled by law or otherwise, AEBI may at any time without notice or demand upon the Customer, combine and consolidate all or any of the accounts of the Customer with AEBI or any of the Related Institutions and / or set of any Property which AEBI or any Related Institutions may at any time hold for the account of the Customer, against the Indebtedness, whether matured or unmatured

4. **Right to Block.** It is further agreed that in addition to any other right to which AEBI may be entitled by law or otherwise, AEBI is irrevocably authorized to block, retain and not repay any amount whatsoever which may be owing by AEBI or any Related Institutions to the Customer or any moneys whatsoever which AEBI or any of the Related Institutions may hold in any account of the Customer, whether is U.S. Dollars or in Foreign Currency, unless and until Indebtedness shall been repaid and / or discharged in full. If any Indebtedness is not repaid and / or discharged in full when due, AEBI shall be entitled, to the extent of such Indebtedness as remains unpaid or undischarged, to appropriate any amount so owing to the Customer and / or any moneys so held for the account of the Customer in or toward repayment and / or discharge of such Indebtedness

5. **Overdraft.**
   A. If the Customer gives any instructions for the payment of any sum in excess of the amount (s) then standing to its credit in any account, AEBI reserves the right to decline to carry out such instructions. in the case of instructions for several payments or other transactions for several payments or other transactions which in the aggregate exceed the amount of the Customer's credit balance(s), AEBI is entitled in its absolute discretion to select which transaction or transactions shall be executed without reference to the date of dispatch or time of arrival of the Customer's instructions.

   B. If AEBI in its absolute discretion permits the Customer to make any drawing, the effect of which is that any of its accounts will become overdrawn, and no specific arrangements have been made regarding the rate of interest to be charged, AEBI reserves the right to charge its standard overdraft rate of interest. the overdraft together with all interest, cost, charges and expenses shall be an Indebtedness, subject to these Rules and repayable on demand.

6. **Pledge.** The Customer hereby pledges, assigns and grants a continuing security interest in, and continuing lien upon, all accounts of Customer with AEBI or any of the Related Institutions and all other Property (all such accounts and other Property being the "Collateral"), as security for payment of any Indebtedness, including, without limitation, any overdraft. Upon any default by Customer in the payment when due of any Indebtedness or in the performance of any related obligation to AEBI, AEBI is hereby authorized to set off and apply any Collateral constituting funds or the equivalent of funds against such Indebtedness, and to sell or otherwise realize upon any other Collateral and apply the proceeds thereof against such Indebtedness pursuant to any applicable codification of Article 9 of the Uniform Commercial Code (or in any manner which would be authorized thereunder if such other Collateral were subject to the Uniform Commercial Code), all at such time or times. to such extent and in such order as AEBI in its discretion may elect. In its discretion, AEBI may at any time or times take or retain possession of any or all instruments or certificates evidencing or representing any Collateral Upon any default by Customer in the payment of any Indebtedness (or in the performance of any related obligation to AEBI), and for so long thereafter as the pledge hereunder remains in effect, any Collateral capable of being renewed or re-deposited shall, unless AEBI otherwise elects, he automatically renewed and redeposited continually. AEBI is hereby authorized to notify any Related Institution of the pledge hereunder, and to direct that such pledge be recorded on the books of such Related Institution and that such Related Institution, in writing, accept and agree to the terms of such pledge Customer hereby authorizes AEBI to file any financing statements continuation statements and other instruments which in AEBI's judgment evidence. perfect or protect AEBI's security interest hereunder in any Collateral, AEBI is hereby authorized to file any such documents without

Customer's signature(s) in any public offices in any jurisdictions which AEBI deems appropriate, and to debit any account of Customer for all costs of such filings. AEBI is also authorized to debit any account of Customer for (and to increase the Indebtedness in the amount of) all costs of any sale, setoff or other disposition of any Collateral made hereunder. AEBI shall not be liable for the dishonor of any item(s) due to insufficient funds in any account of Customer resulting from any application, setoff or blocking of funds pursuant to this pledge.

7. **Property.** AEBI shall not have any duty as to the Property or as to any income or proceeds therefrom in its possession or control in the possession or control of its agents or representatives, other than for losses incurred as a result of AEBI's gross negligence or willful misconduct.

8. **Account Opening.** AEBI is not obliged to open or maintain any account for the Customer unless it has received, in form and substance satisfactory to AEBI, appropriate account opening documentation, duly executed by or on behalf of the Customer, and AEBI shall be entitled to rely on the representations, warranties and covenants contained herein.

9. **Statement.** Any statement, advice or confirmation sent by AEBI to the Customer, to the last address given by the Customer to AEBI (or by complying with any applicable hold mail instructions), shall be deemed to have been examined by the Customer and shall be conclusive and binding on the Customer unless, within 30 days of the date on which such statement or confirmation is sent (or held pursuant to hold mail instructions) by AEBI to the Customer, the Customer notifies AEBI in writing that it disputes any debit item thereon. In the absence of any such notification, AEBI shall not be liable to the Customer for any such debit item, whether or not made in accordance with the mandate from time to time in force, given by the Customer to AEBI, and Customer shall be precluded from asserting against AEBI any unauthorized signatures or alterations by the same wrongdoer on items paid by AEBI after such 30-day time period lapses, but before AEBI receives notice. Any communication by AEBI shall be deemed to have been made as soon as it has been sent. AEBI will furnish a statement regarding the account periodically to the Customer. For the Time Deposit Account, statements will be delivered to the Customer only upon maturity of the deposits. For the Money Market Account and Demand Deposit Account, statements will be delivered to the Customer at the end of each statement cycle ("the Statement Cycle"). The first Statement Cycle will begin on the day the account is opened. Each Statement Cycle will end on the last Business Day of each calendar month, provided that if the account is closed on any day other than the last Business Day of any calendar month, the final Statement Cycle will end on the day the account is closed. If any statement is returned to AEBI because of an incorrect address, AEBI may stop sending statements to Customer until the address is rectified by Customer. Each statement of account regarding a checking account may indicate as to each check paid from the account, the amount of the check, the check number and the date of payment, although the cancelled check itself may not be provided with the statement. Customer may, if special circumstances so require, obtain a copy of the cancelled check itself, within a reasonable period of time, by requesting in writing that AEBI provide Customer such a copy and paying AEBI such fee as AEBI may from time to time establish for such service.

10. **Changes in Property and Transfers of Funds.** With respect to all Property held or maintained in the name(s) of the Customer by or with any Related Institutions, the Customer hereby irrevocably authorizes each of the Related Institutions, at any time and from time to time, at its sole discretion, without the approval or consent of the Customer: (A) to substitute for any of the Property, any other Property; (B) to transfer any funds that constitute or are invested in any one or more of the Property into (or into the form of) one or more of the other Property held or maintained in the same name(s); (C) to use any or all such funds to pay all or any part of any Indebtedness; and (D) to renew any one or more Property constituting time deposits for such period of time as any of the Related Institutions may elect, provided, however, the foregoing powers may only be exercised in order to (i) increase the value of any or all of the Property, (ii) maintain or restore any minimum balance that it is necessary or desirable to maintain in any account of the Customer with any of the Related Institutions, (iii) further the interests of the Customer in any other respect, (iv) protect or enhance the right or ability of any of the Related Institutions to realize on any of the Property (so as to fully or partially satisfy any Indebtedness), or (v) otherwise protect the legitimate interests of any of the Related Institutions.

The Customer hereby irrevocably agrees that none of the Related Institutions shall incur any liability to the Customer as the result of any of its actions or omissions that are consistent with this Section 10 unless such actions or omissions constitute gross negligence or willful misconduct. The Customer agrees to indemnify each of the Related Institutions with respect to any and all Losses which may result from any actions or omissions of such entity, unless such actions or omissions constitute gross negligence or willful conduct.

11. **Limits on Transactions**

    A  Demand Deposit Account. An unlimited number of withdrawals may be made

    B  Money Market Account

    (1) Preauthorized transfers (including, without limitation, telephone-initiated transfers) from the account are limited to six (6) such transactions per month, only three (3) of which may be by check, draft or similar item drawn to one or more third parties. The date of the transaction will be the date the account is debited for any withdrawal or transfer, or the date of payment of an item drawn on the account

    (2) An unlimited number of withdrawals (payments made directly to Customer) from the account may be made in person, by mail or by messenger.

    (3) Withdrawals or other transfers from the account may be made in any amount

(4) Deposits to the account may be made, at any time and from time to time, in any dollar amount.

(5) Any and all withdrawals and other transfers must be made in accordance with all provisions of these Rules.

AEBI reserves the right to impose a penalty for a violation of the foregoing limitations on transfers from a money market account. Moreover, federal regulations may require AEBI to revoke the Customer's check-writing privileges or to terminate the money market account in the event the Customer continues to violate those limitations.

C   Time Deposit Account See Section 14

D   Liquid Investment Account

(1) All transfers or withdrawals from the account (including, without limitation, automatic or preauthorized transfers) are limited to one (1) per calendar month. The date of a transaction will be the date the account is debited for any withdrawal or transfer, or the date of payment of an item drawn on the account. Such transfers or withdrawals may be made at any time of the month.

(2) Only one deposit to the account may be made per calendar month. Such deposit may be made at any time of the month.

(3) Any account that falls below any minimum balance requirements established by AEBI from time to time may be, at AEBI's option, automatically closed or funds in the account may be placed in another type of account that is not subject to the minimum balance requirements of the Liquid Investment Account.

AEBI also reserves the right to impose a penalty for a violation of the foregoing limitations on transfers and withdrawals from a Liquid Investment Account. Moreover, AEBI may be required under applicable law to terminate the account in the event the Customer continues to violate those limitations.

12. **Preauthorized Transfers.** The following will apply to Demand Deposit Account, Money Market Account and Liquid Investment Account.

(A) Any desired automatic or preauthorized transfer from the account to any third party or parties must be duly authorized in advance in a manner satisfactory to AEBI.

(B) AEBI is hereby authorized to honor telephonic withdrawals and transfer requests under the terms and conditions set forth in these Rules.

13. **Notice of Withdrawal or Transfer.** AEBI reserves the right to require at least seven (7) days' notice prior to any withdrawal or transfer of funds from the Demand Deposit Account, Money Market Account or Liquid Investment Account.

14. **Notice of Penalty for Early Withdrawal.** If AEBI, in its sole discretion, permits funds to be withdrawn prior to the maturity date of any deposit in the Time Deposit Account(s), the following minimum early withdrawal penalties shall apply:

(i) for an account with an original maturity or required notice period of less than 32 days, or any portion thereof, Customer shall forfeit an amount equal to the greater of (a) all interest earned on the amount withdrawn from the most recent date of deposit, date of maturity or date on which notice of withdrawal was given, or (b) all interest that could have been earned on the amount withdrawn during a period equal to one-half the maturity period or required notice period;

(ii) for an account with an original maturity or required notice period of 32 days to 1 year, or any portion thereof, the Customer shall forfeit an amount equal to one month's interest earned or that could have been earned, on the amount withdrawn at the simple interest rate being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit;

(iii) for an account with an original maturity or required notice period of more than 1 year, or any portion thereof, the Customer shall forfeit an amount equal to 3 months' interest earned or that could have been earned on the amount withdrawn at the simple interest rate being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit. However, no penalties shall apply where (a) the Customer has died or (b) the Customer is determined to be legally incompetent by an court or other body of competent jurisdiction. In addition to the early withdrawal penalties stated above, AEBI may, in its discretion, assess an additional penalty of up to 2% per annum in excess of the difference between the existing deposit rate per annum and the current prevailing market rate per annum for the remaining period to original maturity.

15. **Foreign Currency**

A   Unless otherwise instructed in writing by the Customer and agreed to by AEBI, if any check or other transfer is made by the Customer or if any currency, check or other instrument is received for credit to an account in the Customer's name, in Foreign Currency, AEBI shall, at the risk of and without notice to the Customer, be entitled to convert such Foreign Currency into U.S. Dollars, and if the Customer then has credit balances in more currency, into such of these currencies as AEBI may in its sole and absolute discretion determine.

B   Such conversions shall be made on the basis of the exchange rate prevailing in the New York foreign exchange market or, if the said market is for any reason closed for business at the time in question or no quote is available on such market for the Foreign Currency involved, in such other recognized foreign exchange market as AEBI may in its absolute discretion select.

16. **Interest**

A   Demand Deposit Account. There will be no interest paid on the account.

B. Money Market Account.

(1) The interest rate on the account will be set and changed from time to time by AEBI in its sole discretion.

(2) Notwithstanding Subsection (1) above, for any Statement Cycle in which the collected balance for the account falls below the minimum balance required, interest will not be paid on the account.

(3) Interest will accrue on a monthly basis on collected balances only, and will be paid monthly.

(4) Interest will be posted to the account on the last Business Day of each month.

(5) Interest will not be paid on the account unless and until all charges imposed by AEBI on the account have been paid.

C. Time Deposit Account. Interest will be paid on the maturity date of the deposit.

D. Liquid Investment Account.

(1) The interest rate paid on the account will be determined on the first day of each calendar month by AEBI in its sole discretion.

(2) Notwithstanding Subsection (1) above, for any Statement Cycle in which the collected balance for the account falls below the minimum balance required, interest will not be paid on the account.

(3) Interest will accrue on a monthly basis on collected balances only, and will be paid monthly.

(4) Interest will be posted to the account on the last Business Day of each month.

(5) Interest will not be paid on the account unless and until all charges imposed by AEBI on the account have been paid.

17. **Agent for Securities Transaction.** For each Customer who has authorized AEBI to act as an agent of the Customer to buy, sell or otherwise effect transactions in stock, bonds, other securities and cash or cash equivalents for the Customer's account upon receipt of instructions, the following will apply:

A. Payment in connection with purchases will be charged to the Customer's account(s). Alternatively, arrangements may be made for direct payment; such payment shall be due on the settlement date. The Customer will be charged interest on late payments, (in connection with purchases) or delivery of securities (in connection with sales) has not been received by AEBI by the specified settlement date. AEBI may be obligated to cancel, sell or buy the relevant securities, the Customer agrees that the Customer will be liable for any losses incurred.

B. AEBI will hold the securities in the Customer's account in safe custody. The Customer agrees that AEBI may arrange for securities to be held by subcustodians and vary the arrangements for safekeeping from time to time.

C. The Customer's account will be charged commissions and other fees according to AEBI's schedule currently in force for execution of transactions and safe custody and the Customer agrees to pay such commissions and fees at AEBI's then prevailing rates. The Customer agrees such commission and fee rates may be changed from time to time without notice to the Customer, and the Customer agrees to be bound thereby.

D. It is understood that AEBI may effect purchases and sales through any of the Related Institutions and share in any commissions or other remuneration earned by such Related Institutions in connection therewith. In certain instances, the Customer may maintain a direct account relationship with any of the Related Institutions.

18. **Authorization Regarding Drafts, Endorsements, Etc.** Until the Customer gives AEBI notice in writing to the contrary, AEBI is authorized by the Customer to do the following:

A. To honor and debit to any demand deposit or money market account of the Customer all checks, drafts and orders drawn, bills accepted and notes made by the Customer*, if (in the judgment of AEBI) properly prepared;

B. To accept the Customer's* endorsement on any check, draft, order, bill or note payable to the Customer and to be credited to an account maintained with AEBI in the Customer's name;

C. To act upon the Customer's* signature as regards (1) any request, instruction or agreement to withdraw, transfer, assign, grant a security interest (including an interest securing credit extended to any third party or third parties) in, or otherwise deal with any account which the Customer may at any time maintain with AEBI or any securities or other property which AEBI may at any time hold on behalf of the Customer or (2) any purchase, or acceptance of custody, by AEBI at any time of any securities or other property on behalf of the Customer.

In the event that the Customer is more than one individual, the term "Customer" as used in this section shall mean "all of the account holders" except that if the Customer checked box (2) of the paragraph entitled "Account(s) of More than One Individual" in the Account Application and Agreement, the term "Customer" marked with asterisk (*) above shall mean "any one or more of the account holders." A check, draft, order or credit slip shall be applied only to the account for which it has been prepared.

19. **Provisional Credit to Accounts.** To the extent permitted by law, all deposits into any account of Customer shall be credited

on a merely provisional basis, until AEBI has received payment for such deposit in good funds

20. **Hold Mail.** For each Customer who has authorized AEBI to "hold mail" by checking the box under the paragraph entitled "Hold Mail" in the Account Application and Agreement, the following shall apply:

    The Customer has authorized AEBI to hold all advices, statements, notices, and other documents and items (collectively, "Communications") relating to any account or property maintained by the Customer with AEBI or held by AEBI on the Customer's behalf. The Customer understands and agrees that any Communications held by AEBI on behalf of the Customer shall be deemed to have been delivered to the Customer for all purposes on the date deposited by AEBI in its "hold mail" files. Any Communication held by AEBI may be destroyed if it has not been picked up by the Customer or requested in writing, within eighteen (18) months after the date such Communication is placed in AEBI's "hold mail" files. The Customer acknowledges and agrees that Communications are being held at the Customer's request and for the Customer's convenience, and waives any and all claims and causes of action the Customer may have against AEBI, its officers, directors, shareholders, employees, agents, and affiliates as a result of the Customer's failure to receive any Communications; and the Customer agrees to indemnify AEBI and its officers, directors, shareholders, employees, agents, and affiliates against, and hold each of them harmless from any and all Losses arising from AEBI's handling Communications in accordance with this provision. The Customer agrees that AEBI may debit to any account of the Customer any administrative charges for "hold mail" service as specified in the schedule of charges described in Section 23 hereof, as amended from time to time.

    Furthermore, the Customer acknowledges and accepts the fact that the hold mail arrangement hereunder poses special risks for holders of Gold or Platinum (or Centurion) Cards, since: (a) in order to request a review of any improper charges, the holder of such a Card must act within 60 days from the date of the account statement in question, or within two billing cycles, whichever is less; and (b) AEBI assumes no liability or responsibility whatsoever for any such improper charges as to which, as a result of the hold mail arrangement hereunder, no timely request for review is received from the holder of the Card.

    Notwithstanding any of the foregoing provisions, AEBI shall have the right, at its discretion, should it deem it necessary or advisable in order to create, protect, maintain and/or assert any rights of AEBI with regard to Customer, with regard to any account of Customer or with regard to any transactions that Customer may have with AEBI, or for any other reason, to send and/or deliver any Communications to Customer at Customer's last known address. Except as otherwise required by law, AEBI shall have no obligation whatsoever to notify Customer about the existence of any Communications held by AEBI hereunder or about any Communications sent or delivered by AEBI to Customer. Customer may from time to time (A) notify AEBI in writing of an address to which the Communications should be sent, by registered mail, by AEBI at Customer's expense, or (B) give AEBI written authority to release the Communications to a named person and to accept such person's written receipt for such items in discharge of AEBI's obligation to Customer.

    Either party may discontinue the hold mail arrangement hereunder at any time by giving 30 days written notice to the other of such discontinuance; provided however, that AEBI may continue to rely upon the terms herein until AEBI has had a reasonable opportunity to act on any such notice of discontinuance.

    If an account of Customer is closed, Customer shall have twelve (12) months from the date of closing to instruct AEBI in writing as to how to make available to Customer any Communications then held by AEBI hereunder, and if Customer fails to retrieve such Communications within such twelve-month period, AEBI is hereby authorized, at its discretion, to destroy such Communications without any risk or liability whatsoever on AEBI's part.

21. **Gold, Platinum and Centurion Cards.** For each Customer who has authorized AEBI to debit its demand deposit or money market account to pay the monthly billing of the Customer's Gold Card, Platinum Card or Centurion Card, the following will apply:

    In consideration of AEBI complying with this request, the Customer hereby waives any and all claims and demands, and releases AEBI from any and all responsibility or liability arising from or in connection with AEBI's compliance with such request. The Customer agrees that AEBI shall be entitled to rely upon the billings from American Express Travel Related Services Company, Inc. ("American Express") as indicating the amounts due and payable to American Express with respect to the subject Gold Card, Platinum Card or Centurion Card and shall not be responsible or liable for any excess or deficiency in any transfer to American Express made in reliance on an erroneous billing. The Customer further agrees to indemnify and hold AEBI harmless from and against any and all Losses which AEBI may suffer or incur as a result of its compliance with the foregoing request.

    In the event that an overdraft is created by any such charge and transfer, the overdraft shall be a debt due to AEBI to the same extent and effect as though actual cash had been advanced by AEBI to the Customer. For that purpose the Customer agrees to make payment upon demand of the full amount of any and every such overdraft, together with any and all interest to the date of payment and such other charges thereon as may be reasonable and appropriate. Nothing herein shall obligate AEBI to create any overdrafts in order to make payments to American Express. The Customer also hereby instructs and authorizes AEBI to forward, without liability, any renewal Gold Card(s), Platinum Card(s) or Centurion Card(s) to the cardholder(s) at the mailing address on file with AEBI.

22. **Minimum Balance/Charges.** AEBI shall have the right, without prior notice, to impose or alter the minimum balance requirement on, or alter the charges relating to, any type of account and AEBI shall be entitled to close any account in the Customer's name if at any time the balance thereof is less than the minimum balance required from time to time by AEBI for that type of account.

Without limitation of the preceding sentence, the minimum deposit required to open, and the minimum balance required to maintain, a Liquid Investment Account is currently $100,000.00.

23. **Service Charges.** AEBI may impose on the account service and maintenance charges in accordance with its standard schedule of charges in force from time to time (copies of which are available on request). Service and maintenance charges may include but will not be limited to, monthly maintenance charges, transaction charges, insufficient fund charges, stop payment charges, wire transfer fees and excessive withdrawal charges. Any and all service and maintenance charges may, at any time or from time to time be debited by AEBI to any account of Customer, whether or not any such debit creates an overdraft, and AEBI shall not be liable if any item is dishonored, or payment order refused, as a result of any such debit.

24. **Automatic Renewal.** Unless (a) AEBI shall have received notice from the Customer in writing at least four (4) business days in advance of the maturity of any Time Deposit instructing that the deposit not be renewed or (b) AEBI shall have sent (or complied with applicable hold mail instructions) notice to the Customer in writing (at his address on AEBI's records) that the deposit will not be renewed, the deposit shall be renewed automatically, for a term substantially equal to the original tenor at the then applicable interest rate in accordance with AEBI's offered rates for deposits of such tenors and amounts. Each such renewal will be upon terms and conditions determined by AEBI at the time of renewal.

25. **Termination of Account.** AEBI or the Customer may terminate the Account Application and Agreement at any time by giving notice of such termination (to the Customer or to AEBI, respectively) or by closing the account, provided, however, that AEBI reserves the right to require that it receive notice of intention of the Customer to close the account seven (7) days in advance of the closing of the account. Subsequent to the effective date of any account closing, at AEBI's sole discretion, any items presented to AEBI for payment may be paid or returned unpaid, and AEBI may refuse to accept any deposits or other Property to collect any items or to transact any other matters relating to the account, all without risk or liability on AEBI's part to Customer or to any third parties. Customer will remain responsible and liable for any transactions, service charges and expenses initiated or incurred prior to or in connection with such closing. At the time of such closing or within a reasonable period thereafter, AEBI may, at Customer's risk and without any liability on AEBI's part to Customer or to any third parties, mail to Customer (at the address specified in the Account Application and Agreement or the latest replacement address shown on AEBI's records) a check for the balance, if any, of the account.

26. **IBF Notice and Acknowledgement.** The Customer hereby acknowledges that it is the policy of the Board of Governors of the Federal Reserve System with respect to nonbank customers that deposits received by international banking facilities (IBFs) may be used only to support the operations outside the United States of the customer or the customer's foreign affiliates and that extensions of credit by an IBF may be used only to finance the operations outside the United States of the customer or the customer's foreign affiliates. The Customer hereby acknowledges that funds the Customer deposits with AEBI's IBF will be used solely in support of the Customer's operations outside of the United States or those of the Customer's foreign affiliates and that the proceeds of any borrowings from such IBF will be used solely to finance the Customer's operations outside the United States or those of the Customer's foreign affiliates.

27. **Immunity.** To the extent the Customer has or may acquire any immunity from jurisdiction of any court or any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or any of its property, the Customer hereby irrevocably waives such immunity in respect to the Customer's obligations relating to its accounts maintained with AEBI or any transactions related thereto and, without limiting the generality for the foregoing, agrees that such immunity is hereby waived to the fullest extent permitted under the Foreign Sovereign Immunities Act of 1976 of the United States of America, as amended, and agrees that the waivers set forth in this sentence are intended to be irrevocable for purposes of that Act.

28. **Disclaimer.** AEBI does not accept any responsibility if by reason of any Applicable Laws affecting AEBI, AEBI is prevented or hindered from carrying out its obligations to the Customer (whether hereunder or otherwise), and AEBI shall not be liable for any Losses which the Customer may suffer or incur thereby.

29. **Repayment at Branch; Applicable Restrictions.** The Customer shall only be entitled to receive repayment of its deposits from the AEBI branch at which the relevant deposit has been placed. Such repayment shall be subject to applicable restrictions, if any, as may be imposed by governmental authorities from time to time having jurisdiction over such branch. In addition, such branch shall not be liable for the repayment of any deposit held in the name of the Customer in any other jurisdiction. This paragraph shall have no impact on AEBI's right to set-off described above.

30. **Disclosure.** The Customer agrees that AEBI may disclose, without consent of or notice to the Customer, the records of and information regarding account(s), to the extent required under the applicable federal or state laws. The Customer shall indemnify AEBI and hold AEBI harmless from and against any and all Losses AEBI may suffer as a result of such disclosure.

31. **Credit Inquiry.** The Customer hereby authorizes AEBI to answer by replying to another bank, financial institution, credit reference agency, or others any inquiries (including credit checks) regarding the Customer which purport to be bona fide.

32. **Further Actions.** The Customer hereby agrees to take at the Customer's expense any further actions reasonably requested by AEBI in connection with the perfection, protection or enforcement of any of the rights or interests of AEBI or any Related Institution created by these Rules.

33. **Telephone/Fax Communication.** Subject to the Addendum to

Account Application and Agreement Regarding Transfer of Funds, the Customer assumes all risks involved in connection with any communications by telephone or fax whether with the Customer or third parties and in particular (but without prejudice to the generality of the foregoing) risks due to errors in transmission, misunderstandings or errors on the part of AEBI regarding the identity of the Customer, accuracy of any signature on fax or the authority of any person purporting or claiming to be the Customer or any employee, attorney, agent or representative of the Customer, and Customer hereby agrees to indemnify AEBI and keep AEBI indemnified against any Losses arising to AEBI in consequence of acting in reliance on any such communications.

34. **Recording.** CUSTOMER HEREBY CONSENTS, ON A CONTINUING BASIS, TO ANY TAPING OR OTHER MECHANICAL RECORDING BY OR ON BEHALF OF AEBI (SHOULD AEBI NOW OR HEREAFTER ELECT, IN ITS DISCRETION, TO DO SO), OF ANY OR ALL ORAL OR TELEPHONIC COMMUNICATIONS OF CUSTOMER AND AEBI WHICH RELATE TO ANY ACCOUNT OF CUSTOMER OR PURPORT TO PROVIDE AEBI WITH INSTRUCTIONS RELATING TO AN ACCOUNT FOR WHICH AEBI AT THE TIME THEREOF BELIEVES MAY RELATE TO AN ACCOUNT; CUSTOMER WAIVES ANY NOTICE OTHER THAN THIS PROVISION THAT SUCH COMMUNICATIONS MAY OR SHALL BE RECORDED AT ANY TIME.

35. **Deposits and Collections.** All items deposited in any account of Customer or collected or cashed for Customer are received by AEBI as Customer's agent and are subject to collection; AEBI assumes no responsibility beyond the exercise of ordinary care. Any item so received for deposit or collection or cashed on an account shall be treated as an uncollected item until final payment is received in cash or unconditional credit acceptable to AEBI. Until such time, AEBI may charge back any such item to an account and may, to the extent permitted by law, refuse to effect any transfer, withdrawal or payment against funds held pending final payment. AEBI shall have no obligation to take legal or other action to enforce collection of any item.

When an item deposited in any account of Customer is given provisional credit prior to final payment, such provisional credit may be withdrawn by AEBI at any time before receipt of final payment. If final payment is not received, AEBI shall have the immediate right to charge back the account for the amount of such item or to collect such amount directly from Customer or any other account belonging to Customer, together with interest on such amount and all costs and expenses of collection, including any attorneys' fees.

AEBI reserves the right for any reason to refuse a deposit or to return all or any part thereof. If Customer has more than one account with AEBI and the account to be credited with a deposit is not unambiguously designated, AEBI may credit any account belonging to Customer or, at AEBI's sole discretion, return the items so deposited. Items returned to AEBI unpaid or dishonored or returned by AEBI to Customer for any other reason shall be mailed to Customer's last address on AEBI's books, unless the account in question is subject to hold mail instructions, in which case such item(s) shall be retained by AEBI.

All items and their proceeds may be handled by AEBI through any correspondent or any Federal Reserve Bank, in accordance with common bank usage or applicable Federal Reserve rules. AEBI shall use due diligence in the selection of correspondent banks. AEBI shall not be liable for any items lost, destroyed or delayed in transit unless such loss, destruction or delay results from a failure by AEBI to exercise ordinary care. AEBI is authorized to send any item directly to any bank or non-bank payor. Customer agrees to fully cooperate with AEBI in any effort to collect on any lost or missing check.

Checks in non-U.S. currencies or drawn on banks outside the United States shall be sent for collection as non-cash items. An account shall be credited for such items only after final payment of funds is received by AEBI.

AEBI and its correspondents may, in handling items deposited in an account and other items for collection, accept the draft or credit of any bank, drawee, acceptor or payor in lieu of cash. Items are accepted for deposit or collection, subject to federal law and regulations, the Uniform Commercial Code, clearing house rules and AEBI's policy governing funds availability. AEBI is hereby authorized to accept for deposit into an account, at its sole discretion, all remittances of funds and other properties from third parties. No item shall be treated as received by AEBI until actually received at AEBI's office in Miami, Florida or New York, New York on a regular banking day and prior to such afternoon cut-off hour as AEBI may fix from time to time; any item received after such hour shall be treated as received on the following regular banking day. It is Customer's responsibility that all deposits show the complete account name and number.

If a claim is made to AEBI for recovery of all or any part of any collected item (including any item cashed for Customer) after final payment thereof, on the ground that such item was altered or bore a forged or unauthorized endorsement or was otherwise not properly payable, AEBI may withhold the amount thereof from the account in question (or debit such account in the amount thereof) until final determination of such claim.

Customer hereby guarantees the regularity of all endorsements and authenticity of all signatures on all checks, bills and instruments deposited in an account, presented to AEBI for payment or otherwise presented to AEBI by Customer or on Customer's behalf; this guarantee shall survive the termination of such Account or of all accounts of Customer with AEBI.

At its sole discretion, AEBI may accept any item endorsed for deposit into an account, including without limitation items endorsed manually, by typewriter, stamp or otherwise, and such endorsements shall be treated as genuine in all respects and as warranting and guaranteeing all prior endorsements. The deposit and payment of any item may, at the AEBI's sole discretion, be refused if it is endorsed in pencil, if improperly prepared, if illegible

or if the item contains a double endorsement. Any item payable to Customer may be deposited in and credited to an account without endorsement. AEBI at its sole discretion, is authorized to accept for deposit in an account all remittances of funds and other properties from third parties and to endorse, at its sole discretion, any unendorsed items presented for deposit

AEBI shall have no liability to any Customer, with respect to any claims or damages (including without limitation attorneys' fees and all other expenses) at any time arising out of delays or errors in the return of any items (whether deposited in or drawn on an Account), if such delays or errors are caused by markings which are placed on such items by or on behalf of Customer or a prior endorser and are placed in the space reserved on such items for the depository bank's endorsement or have obscured the depository bank's endorsement.

36. **Payment of Checks.** AEBI is authorized to pay, certify, accept, apply or otherwise honor and charge to an account of Customer any checks, drafts, notes, bills of exchange, acceptances and other instruments, instructions and orders for the payment, transfer or withdrawal of money which in AEBI's sole judgment are in proper form and are signed, accepted or endorsed by Customer in accordance with any signature restrictions stipulated for such account. AEBI is authorized to honor but not obligated to honor any item (drawn on an account) on which any or all signatures do not correspond exactly with the specimen signature(s) Customer has furnished to AEBI. At AEBI's sole discretion, it may pay or not pay items written in pencil, incomplete, stale (presented more than 6 months after date of item), postdated, presented after the date for payment, not properly endorsed, illegible or not negotiable; AEBI shall have no liability for paying any postdated item before the date written on the item

At its sole discretion, AEBI may return as unpaid any or all items drawn on an account that are presented to AEBI on a banking day on which the opening balance of collected funds in the account is insufficient to pay the aggregate amount of such item(s). AEBI shall have no responsibility for the payment of any of the items presented on the same banking day on which one or more deposits are made to an account, unless the balance of collected funds in the account is sufficient, without taking account of such deposit(s), to pay the aggregate amount of such item(s).

AEBI, in its sole discretion, may disregard any information on an item presented for payment other than the signature(s) of the drawer(s), the identification of the drawee bank, the payee, the amount, the date, and the information which appears on the MICR line. Without limiting the generality of the foregoing, AEBI is under no obligation to honor any restrictive legend on any item signed, accepted or endorsed by Customer. Customer agrees to be liable for any damages suffered by AEBI as a result of any other information on the face or back of any item

37. **Checks and Other Forms.** AEBI will arrange for the printing of any checks, deposit slips, stop-payment requests and other forms and documents necessary for the handling and operation of any account of Customer ("Account Form(s)"). AEBI shall not be required to accept any document or instrument other than an Account Form with reference to any transaction pertaining to an account, unless AEBI, in its sole discretion, has agreed in writing with Customer to accept such instrument or document. Customer shall maintain custody and control of all Account Forms received from AEBI relating to an account in a safe and sound manner, so as to avoid any possibility of theft, loss, destruction or alteration. Furthermore, Customer shall immediately report to AEBI in writing, by telefax or telephone, the theft, loss or alteration of any Account Forms

38. **Stop-Payment Requests; Post-Dated Items.** Customer may request in writing the stopping of payment of an item, or the conditional hold payment (until its date) of a "post-dated" item, if the item has not already been paid (hereinafter, collectively, a "Stop Payment"). A request for Stop Payment will be effective for a maximum period of six (6) months, but a renewal may be requested in writing prior to the expiration of the six (6) month period. No Stop Payment request, nor the renewal or revocation thereof, shall be valid or effective unless it: (a) is in writing; (b) specifies the account number upon which the check has been drawn; (c) specifies the number, date and amount of the check, (d) is signed by an authorized signer on the particular account; and (e) is delivered to AEBI on a banking day during regular banking hours with sufficient time to provide AEBI with the opportunity to act If AEBI pays an item for which a valid and effective Stop Payment request was received, AEBI will be liable to Customer only for the amount of the item and will not be liable for any special, indirect or consequential damages resulting therefrom (including the non-payment of other items on the account for insufficient funds).

A notice to stop payment will be posted to an account after the close of AEBI's regular banking day, if delivered to AEBI before 2:00 p.m., AEBI's local time, on such banking day or, if received after such hour, will be posted to the account on AEBI's next regular banking day. A fee will be charged to the account for the processing of any Stop Payment request.

AEBI shall have no liability to Customer for paying a post-dated item before the date thereof unless Customer has given proper prior written notice of the post-dating to AEBI.

39. **Delivery of Documents.** AEBI may send banking and other documents, negotiable instruments and any communications via mail or courier at the Customer's risk and cost, and AEBI will not be liable for any Losses arising out of any delay, loss in transit, mutilation or otherwise in connection with the transport of the foregoing items

40. **Dormant Account.** If no deposits shall have been made or items drawn on any account for a period of one (1) year **and we have been unable to contact you**, the account may be classified as a dormant account and as such will be subject to dormant account fees in addition to other normal account fees AEBI reserves the right to withhold any payment, withdrawal or transfer from a dormant account until AEBI, to its complete satisfaction, is able to reestablish contact with Customer. AEBI may be required to turn

over to appropriate state authorities any funds or other Property held in an account if, for such period as is set, from time to time, under state law for such purposes, such account remains inactive or dormant within the meaning of such law, prior to doing so, AEBI will mail written notice regarding same to Customer's last known address.

41. **Correspondents and Affiliates.** AEBI will not be liable to Customer for any act, omission, error, misconduct, negligence, default or insolvency of any of its representative offices, correspondents, intermediaries, affiliates or subsidiaries, and each correspondent, affiliate, intermediary or subsidiary shall be liable for its own acts, omissions, misconduct and/or negligence.

42. **Force Majeure.** Without limiting the generality of other provisions of these Rules, AEBI shall not be liable to Customer or any third party for any failure, omission, delay, interruption or error in the performance of any of the terms, covenants and conditions of these Rules or of the Account Application and Agreement that is due to causes beyond the control of AEBI, including, without limitation, bank moratoriums or holidays, currency restrictions, trading suspensions, payment suspensions by other institutions, labor disputes, acts of God, acts of a public enemy, acts of a governmental, supervisory or monetary authority, war, civil commotion, legal compulsion, or insolvency or negligence of other institutions. Furthermore, AEBI shall have no responsibility or liability to Customer or any third party for any blockage or reduction in the availability of funds in an account due to restrictions imposed or actions taken by any governmental, supervisory or monetary authority or by any other third party.

43. **Disputes; Adverse Claims; Interpleaders, Etc.** In the event of any dispute relating to any account of Customer (whether initiated or threatened by Customer, by AEBI or by any third party), or in the event AEBI receives conflicting instructions, claims or demands relating to such account or receives any notice of any adverse claim with respect to the account, AEBI may take any action which AEBI or its legal counsel considers advisable including without limitation "blocking" or "freezing" any funds or other Property in the account, placing them in a suspense account or interpleading them; and all resulting costs and expenses of AEBI, including without limitation any attorneys' fees (and attorneys' expenses) incurred at trial, on appeal or without litigation, shall be reimbursed by Customer to AEBI upon its demand (and Customer hereby authorizes AEBI to debit an account of Customer in such amount, regardless of whether an overdraft is thereby created).

44. **Retention of Funds and Property.** If Customer is an individual, then upon Customer's death AEBI may retain all or any part of any funds and other Property in any account of Customer (and all or any part of any other assets belonging to Customer but in AEBI's possession or control) unless and until AEBI is fully satisfied, in its sole judgment, that it may do otherwise without incurring any liability or potential liability (including liability or potential liability relating to any estate tax).

45. **Legal Process and Proceedings.** Should AEBI be served or receive any process, subpoena, summons, complaint, order, injunction, execution, distraint, attachment, garnishment, levy, lien, pleading or other legal process (all the foregoing being referred to as "Process") which involves or affects Customer or an account of Customer, or which AEBI believes involves or affects Customer or such an account, then AEBI may, in its sole discretion, and without liability to Customer, withhold any payment, withdrawal or transfer from any account of Customer until such Process is resolved to AEBI's complete satisfaction. AEBI shall be under no obligation to notify Customer of any Process, nor to contest any Process on Customer's behalf.

46. **Indemnification and Exculpation.** In consideration of AEBI's opening and maintaining any account(s) of Customer, as well as any other financial accommodations and services which may be extended from time to time by AEBI to Customer, Customer hereby agrees (for Customer and Customer's heirs, executors, administrators, assigns and successors in interest, including any beneficiaries of any such account), to indemnify and hold AEBI and any offices, branches and affiliates of AEBI (and all directors, officers, employees, attorneys and agents of AEBI and of any offices, branches and affiliates of AEBI) harmless from and against any and all claims, causes of action, liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, fees, taxes and other liabilities, including without limitation reasonable attorneys' fees (whether incurred at trial, on appeal, or without litigation) and any other costs or disbursements of any kind or nature whatsoever, by whomsoever brought or caused, which may be imposed upon, incurred by, or asserted against AEBI, in any way relating to or arising out of: (a) these Rules or the Account Application and Agreement and AEBI's compliance with and/or performance of its duties and obligations hereunder or thereunder, (b) the presentation, payment or dishonor of any item drawn on any account of Customer (including but not limited to wrongful dishonor claims made against AEBI), (c) the deposit of any item in an account (including any endorsement thereof) and any collection of such item, (d) AEBI's execution of any funds transfer payment order in accordance with its terms, (e) any action taken by AEBI or which AEBI refrains from taking with regard to any Collateral, (f) any Process involving or affecting Customer or an account, (g) any transaction effectuated through an Account, (h) any issue as to the ownership of, or authority on, an account; (i) AEBI's compliance with any Stop Payment request; (j) any breach by Customer of the terms and conditions of these Rules or the Account Application and Agreement; (k) any facsimile or electronic instructions received by AEBI pursuant to these Rules, (l) the closing of any account; and/or (m) AEBI's provision of any "hold mail" services to Customer pursuant to these Rules (all of the foregoing being the Indemnified Liabilities"). All of the Indemnified Liabilities are and shall be included in the Indebtedness (as defined above in these Rules) of AEBI to Customer.

Neither AEBI nor any offices, branches or affiliates of AEBI (nor any directors, officers, employees, attorneys or agents of AEBI or of any offices, branches or affiliates of AEBI) shall at any time incur any liability to Customer (and Customer hereby expressly waives and releases any and all claims and causes of action which Customer may at any time or times have against any of such institutions and individuals) in connection with any of the Indemnified Liabilities.

47. **Conflict.** To the extent that any aspect of any transaction between AEBI and the Customer is not regulated hereby and/or by any additional documentation between AEBI and the Customer, customary banking practice in the United States of America shall apply. In the case of any conflict between any provisions of these Rules and any provision of any additional documentation between AEBI and the Customer, such additional documentation shall prevail.

48. **Remedies.** No failure to exercise and no delay in exercising on the part of AEBI any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise of such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

49. **Governing Law, Jurisdiction.** These Rules shall be governed by and construed in accordance with the laws of the State specified in the Customer's Account Application and Agreement and any applicable U.S. federal law. The Customer irrevocably agrees that any actions or proceedings arising out of or in connection with these Rules may be brought in the state or federal courts sitting in such state, irrevocably submits to the jurisdiction of such courts, irrevocably waives the defense of an inconvenient forum with respect to any such action or proceeding, and agrees that service of process in any such action or proceeding may be made by mailing the Customer a copy thereof (as well as by any other lawful method).

50. **Waiver of Jury Trial. AEBI AND THE CUSTOMER HEREBY VOLUNTARILY WAIVE ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION RELATING TO THESE RULES OR RELATING TO ANY ACCOUNT OR OTHER PROPERTY MAINTAINED WITH OR HELD BY OR ON BEHALF OF AEBI IN THE CUSTOMER'S NAME. CUSTOMER HEREBY ACKNOWLEDGES THAT NO REPRESENTATIVE OF AEBI HAS REPRESENTED TO CUSTOMER THAT THIS WAIVER OF JURY TRIAL WOULD NOT OR MIGHT NOT BE ENFORCED IN THE EVENT OF LITIGATION, AND CUSTOMER HEREBY ACKNOWLEDGES THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO AEBI TO ENTER INTO THE ACCOUNT APPLICATION AND AGREEMENT WITH CUSTOMER AND TO ESTABLISH AND/OR MAINTAIN ANY ACCOUNT OR ACCOUNTS OF CUSTOMER.**

51. **Joint Accounts.** Each joint holder of the account(s) is a joint debtor to AEBI for all indebtedness, whether incurred for their common benefit or for the benefit of any of the joint holders or for the benefit of a third party. Performance made by AEBI to any

Each joint holder is a joint owner of the account, with the right of survivorship to the account. However, if any joint holder dies, the surviving joint holder(s) must furnish AEBI all documents which AEBI shall request (including without limitation certified or authenticated death certificates, tax waivers and transfer certificates) before AEBI shall have any obligation to release any funds or transfer any other Property in the account. In no event shall AEBI be obligated to release any such funds or transfer any

such other Property until AEBI is fully satisfied it may do so without incurring any liability or potential liability (including without limitation liability or potential liability for any estate tax).

Although AEBI shall have no obligation to notify any joint holder regarding any change to or other action concerning a joint account made by another joint holder, AEBI may, notwithstanding any other provisions of these Rules and of the Account Application and Agreement, require the signatures of all joint holders in order to pay any item or take any other action, if AEBI has received conflicting demands or instructions from any two or more joint holders, has received an instruction signed by less than all of the joint holders seeking to change the title of (or restrict the payment of funds in or transfer of other Property from) the account, or has concluded for any other reason, in AEBI's discretion, that it is prudent to require the signatures of all the joint holders. In the event of the death of all the joint holders, AEBI is hereby authorized to transfer any Property or pay any funds in the account upon the order of the personal representative or executor of any joint holder.

52. **Assignability.** Any account maintained with AEBI is not assignable by the Customer, although a security interest may be granted in such an account, effective upon written notice by the Customer to AEBI of the grant and AEBI's written consent thereto (and subject to any terms and conditions set forth in AEBI's written consent). Any account maintained with AEBI is assignable by AEBI from one of its branches to another.

53. **Severability; Construction.** If any of the provisions herein contained shall be invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. Captions and headings are used herein for convenience only and shall not affect the meaning or interpretation of these Rules. No ambiguities in any provisions of these Rules, of the Account Application and Agreement or of any related documents shall be construed against AEBI by virtue of the fact that AEBI or its legal counsel drafted such provisions.

54. **Amendment.** AEBI reserves the right to amend its rates of interest, its schedule of charges and these Rules without any prior notice to or consent of the Customer. AEBI will notify the Customer of such amendments at the Customer's last known mailing address on file with AEBI (or by complying with any applicable hold mail instructions). Each such amendment will become effective as to all Customers ten (10) days after such notice is placed in the mails (or held) by AEBI.

55. **Waivers of Damages. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE CUSTOMER HEREBY IRREVOCABLY WAIVES AND SHALL NOT ASSERT ANY CLAIM AGAINST AEBI (A) ON ANY THEORY OF LIABILITY, FOR SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (AS OPPOSED TO DIRECT OR ACTUAL DAMAGES) ARISING OUT OF OR IN CONNECTION WITH ANY ACCOUNT OF CUSTOMER OR ANY AGREEMENT OR ARRANGEMENT RELATING THERETO; AND (B) FOR ANY DAMAGE**

WHATSOEVER CAUSED BY OR ARISING FROM, DIRECTLY
OR INDIRECTLY, THE ERROR, FAILURE, NEGLIGENCE, ACT
OR OMISSION OF ANY OTHER PERSON, SYSTEM,
INSTITUTION OR PAYMENT INFRASTRUCTURE.

DECEMBER 2006

THIS PAGE INTENTIONALLY

LEFT BLANK