

# NONDISCRETIONARY INVESTMENT SERVICES AGREEMENT

(Information Should be Completed on Pages 13 and 14)

1. **Agreement to be Bound by this Agreement, and other Applicable Agreements**

    a. **Generally** Each of the undersigned (hereinafter referred to individually and collectively as "Customer") hereby (i) opens the Investment Account specified below with American Express Bank International ("AEBI"), (iii) requests AEBI to act as Customer's agent and/or as principal in affecting Transactions (as defined below) with Customer pursuent to the provisions of this Nondiscretionary Investment Services Agreement (this "Agreement"), (iiii) adopts and agrees to be bound by this Agreement (which, effective as of the date at the end of this Agreement, shall replace and supersede any Nondiscretionary Investment Management Agreement previously signed by Customer), (iv) adopts and agrees to be bound by any other account agreements, rules and regulations or other agreements entered into by or applicable to Customer in connection with the establishment of the Bank Account (specified below) and/or the Investment Account, and (v) confirms the statements and makes the requests and the agreements set forth in this Agreement.

    b. **Joint Accounts; Multiple Person Customer.** If Customer is more than one person or entity: (i) each Customer will be fully liable jointly and severally for any amounts due or which become due under this Agreement, but AEBI may sue any or all of them for these amount (plus the legal costs associated with any such suit), and (ii) all holdings of the Investment Account shall be held as joint tenants with right of survivorship.

2. **Agency Appointment; Authorization to Act as Principal; Services**

    a. **Agency Appointment; Authorization to Act as Principal.** Customer appoints and authorizes AEBI to be Customer's agent, for Customer's account, in connection with all aspects of any and all transactions with any party, including but not limited to (i) purchasing, investing in, trading, transferring, exchanging, converting, redeeming, lending, holding, and/or selling any and all securities, commodities, derivatives, instruments, deposits, funds, currencies, and any other assets, (ii) borrowing, pledging, and/or granting a security interest in any holdings of the Investment Account, (iii) entering into any repurchase, reverse repurchase, swap, exchange, or other derivative transactions, and/or (iv) issuing (writing) options ("Transactions"). (All holdings of the Investment Account, whether assets, liabilities, or otherwise, are referred to in this Agreement as the "Holdings.") As to any Transaction requested by Client to be effected under this Agreement, Customer also authorizes AEBI in its discretion to enter into any such Transaction as principal rather than as Customer's agent, in which event Customer shall be AEBI's counterparty. AEBI's appointment and authorization as agent and/or the authorization for AEBI to act as principal will not be affected by Customer's disability, incapacity, or incompetency, and shall remain in full force and effect until such time as AEBI receives written notice of its rescission or, if earlier, the termination of this Agreement. Bank may require Customer to execute such written purchase and/or sales orders and/or other documents as AEBI deems appropriate in its sole discretion in connection with Transactions.

    b. **Bank Acting Directly or Indirectly.** AEBI, when acting as agent or principal under this Agreement, whether directly or indirectly through any of its directors, officers, employees, agents, brokers, correspondents, depositories, custodians, delegates, dealers, employees, futures commission merchants, nominees, or representatives ("Agents"), is referred to herein as the "AEBI" Any reference herein to AEBI making any decision, entering into any Transaction, and/or taking or refraining from taking any action shall be understood to refer to AEBI doing so directly and/or through any of its Agents The appointment of AEBI as Customer's agent may be supplemented by any documents regarding the appointment of an agent required by any Agent, and any Transaction entered into on behalf of Customer may be subject to any requirements and conditions imposed by any Agent. AEBI, as Customer's agent, (i) may maintain brokerage or other accounts directly with one or more Agents or other parties, which accounts may, at AEBI's election, be held in AEBI's name, and (ii) may deposit Holdings with depositories and clearing corporations and systems, on a book-entry basis or otherwise. Customer shall have full beneficial ownership of all Holdings held in such accounts or so deposited

    c. **Bank Acting as Agent.** When AEBI acts as Customer's agent, all orders for purchase or sale of any Holdings shall be executed by AEBI at the then current market price as determined by AEBI (plus or minus, as the case may be, any applicable sales load, sales charge, commission, and/or other fees, if any). Minimum purchase orders, limitations, restrictions, charges, sales loads, sales charges, commissions, other fees, and other requirements for Transactions may be as prescribed by any Agent, and Transactions are subject to the provisions of any agreement of AEBI with, and any regulations of, any Agent. All orders will be subject to acceptance or rejection by any Agent in its sole discretion.

    d. **Services.** As Customer's agent, AEBI's services may include opening accounts with one or more Agents for the Transactions of AEBI's customers (including Customer), transmitting Customer's information, documents, and instructions, as appropriate, to any Agent; subject to paragraph 5.b. transmitting to Customer communications sent to AEBI for transmittal to Customer by or on behalf of any Agent; effecting payment for, and receiving the proceeds of, Transactions; receiving income from Customer's Holdings, and providing securityholder and administrative services in connection with Customer's beneficial ownership of Holdings.

    e. **Transactions with AEBI or any Affiliate.** Customer authorizes AEBI in its sole discretion on behalf of Customer to enter into any Transactions with any office worldwide of AEBI or of any affiliate or subsidiary of AEBI (any such office being referred to herein as "AEBI or any Affiliate"), including but not limited to the employment of AEBI or any Affiliate as AEBI's Agent. Customer (i) acknowledges that the provisions of this subparagraph may, without Customer's consent, violate AEBI's duty of loyalty to Customer, (ii) consents to and waives any real or apparent conflict of interest that may result from any such Transactions, and (iii) waives any right to receive advice in connection therewith

3.  **Customer's Indemnification of .**

Each Customer hereby expressly releases AEBI and agrees jointly and severally to indemnify, defend upon AEBI's request, reimburse and hold AEBI harmless from, and agrees that AEBI shall not have any loss on account of or liability for, any and all claims against AEBI and any and all costs, expenses, fees, losses, damages (including loss of income and opportunity costs), or liabilities AEBI might incur, including any legal costs and expenses and any costs and expenses of enforcing this indemnity or any other provision of this Agreement (collectively, "Claims") arising by reason of entering into or performing pursuant to this Agreement, including, but not limited to, any loss of income on Holdings, any diminution in value of Holdings, any taxes, any disposition, transfer or withdrawal of Holdings, legal fees, and brokerage fees. Customer's obligations under this paragraph shall survive the termination of this Agreement and Customer's death or incapacity.

4.  **Fees, Charges, Set-Off, and Payments**

    a.  **Fees.** AEBI shall receive for its services the fees set forth in its (Schedule of Fees and Charges) in effect from time to time. In addition, every Transaction and every Holding will be subject to any applicable fees, charges, and expenses of any Agent and/or any applicable broker, custodian, advisor, portfolio manager, correspondent, or other service provider - including, in the case of securities of any mutual fund, the fees and other charges of such mutual fund's investment advisor even if the service provider or mutual fund investment advisor is AEBI or any Affiliate. In addition, in making any purchase or sale or other Transaction, including foreign exchange transactions, AEBI or any Affiliate and any Agent is authorized to act as principal, agent or broker, and to be separately compensated in that capacity. Customer authorizes the receipt of such compensation referred to in the preceding sentence and waives any special computation or accounting, and may revoke this authorization at any time by notifying AEBI in writing. Customer (ii) acknowledges that the provisions of this subparagraph may, without Customer's consent, violate AEBI's duty of loyalty to Customer, (ii) consents to, and waives any real or apparent conflict of interest that may result from incurring and paying any such fees, charges, and expenses, and (iii) waives any right to receive advice thereof.

    b.  **Charges and Set-Off.** Customer shall be, and if there shall be more than one Customer, all Customers shall be jointly and severally, liable for payment of all fees, charges, and Claims (collectively "Charges"). Such payment may be affected by charge to the Bank Account or any other account maintained by any Customer, individually or jointly, with AEBI or any Affiliate or, in AEBI's sole discretion, by charge to the Holdings of the Investment Account. In the event that there are insufficient funds in such accounts or the Investment Account to pay any Charges, Customer will be billed. The Investment Account shall at all times be subject to AEBI's right of set-off.

    c.  **Payments from Other Sources.** Customer (i) authorizes AEBI or any Affiliate to receive payments from any Agent or issuer (including any mutual funds or other investment companies) whose securities are held by the Investment Account, for services in connection with any Transactions or for providing investment advice and/or administrative or other services thereto, and (ii) ratifies any and all prior receipts of such payments. Any such payments received by AEBI or any Affiliate shall inure to its exclusive benefit, and Customer and the Investment Account shall have no interest therein. Customer (i) acknowledges that the provisions of this subparagraph may, without Customer's consent, violate AEBI's duty of loyalty to Customer, (ii) consents to, and waives any real or apparent conflict of interest that may result from, the receipt of any such payments by AEBI or any Affiliate, and (iii) waives any right to receive advice thereof.

5.  **Standard of Care; Limited Liability**

    a.  **Standard of Care.** Subject to the other provisions of this Agreement, AEBI shall exercise the same care and diligence in the safekeeping of the Investment Account's Holdings as AEBI would exercise with respect to AEBI's own holdings. AEBI may exercise any of its powers and perform any duties required of it through any Agent selected by it in its sole discretion based on AEBI's evaluation of, among other factors, the Agent's execution, reporting, and other services and pricing. AEBI and its Agents shall be entitled to the advice of counsel, at Customer's expense, concerning all questions relating to the Investment Account, Transactions, and the Agreement.

    b.  **Minimum Size of Transactions.** Notwithstanding anything in paragraph 2.c to the contrary, AEBI may require that Transactions through it shall be conducted in minimum amounts, which may be larger than minimum amounts required by any Agent. Such minimum amounts may be changed by AEBI from time to time by noting such changes on its books and records. Information about AEBI's applicable minimums shall be available to Customer upon request.

    c.  **Provision of Information and Materials to Customer.** AEBI from time to time may provide Customer with information (such as prices, rates, and yields) and/or materials (such as explanatory memoranda, promotional materials, sales literature, prospectuses, and reports) applicable to any actual or prospective Holdings of the Investment Account provided by sources available to AEBI (including any issuer or Agent). AEBI makes no representations or warranties whatsoever regarding the merits thereof or of any matter contained in any such information or materials and shall not be responsible for the accuracy or completeness thereof and Customer agrees to look solely to such sources for responsibility regarding same.

    d.  **Limited Liability.** AEBI shall not be liable for the exercise of any action, inaction, omission or for any other matter whatsoever in connection with the Investment Account, or for any loss or depreciation in value of the Investment Account's Holdings, unless resulting from AEBI's gross negligence, willful misconduct, or bad faith. To the fullest extent permitted under applicable law, AEBI shall not be responsible for any act or omission of any Agent of AEBI if AEBI used good faith and ordinary care in the selection of such Agent. In any event, AEBI shall not be liable for any special, consequential or punitive damages. AEBI shall have no liability for any failure or delay to fulfill its obligations under the Agreement or to carry out any of Customer's instructions, as a result of war, insurrection, strikes, government regulations, telecommunications facilities' failure, force majeure, or other conditions or causes beyond AEBI's control. AEBI shall not be liable for any errors of fact or judgment so long as it acts in good faith. AEBI does not assume responsibility for losses nor does it guarantee gains for the Investment Account, and AEBI shall not be liable for any tax consequences occasioned by AEBI's taking or refusing to take any action for the Investment Account.

    e.  **United States Taxes.** Customer acknowledges that under certain circumstances, Transactions may be or become subject to taxation in the United States. Customer agrees to supply AEBI, any Agent, or any issuer with all documentation (including certification of nonresident status, if applicable) as may be required under United States law. Customer further agrees that (i) any amounts required by U.S. law to be withheld from Customer's Holdings, payments from Holdings, and income derived from Holdings shall be withheld and paid to the United States Internal Revenue Service or other appropriate authority by AEBI or any Agent or issuer, as required by law, and (ii) AEBI or any Agent or issuer, as appropriate, shall make any returns or reports to or hold them available for the United States Internal Revenue Service or other appropriate authority regarding Customer's Transactions as shall be required by law.

f. **Non-U.S. Transactions.** [text too faded to read reliably] Customer understands that a loss in value of such non-U.S. Holdings could occur. Further, the devaluation of the currency of the applicable country or foreign exchange control regulations are imposed in any such country that make it difficult or impossible to convert the currency of Customer's and/or certain securities by Customer in the United States. AEBI will not be responsible for any such losses or for acting or failing to act with respect to them so long as AEBI acts in good faith.

g. **Errors in Transactions.** Customer shall promptly after delivery to Customer notify AEBI of any errors in any confirmations of Transactions. If AEBI receives no objection within five days after delivery, all such Transactions shall be deemed conclusive and made in conformity with the instructions given and shall be deemed correct.

h. **No Insurance Against Losses.** AEBI does not undertake to insure Customer or the Investment Account against any losses.

i. **No Bond Required.** No bond or other security shall be required of AEBI or any of its Agents.

j. **Legal Proceedings.** AEBI shall have no obligation to institute or defend any legal, administrative, or arbitration proceeding on behalf of the Investment Account, its Holdings, Customer, or Customer's successors and assigns, but AEBI may do so in its discretion, in which event AEBI's legal and other expenses with respect thereto shall be deemed to be additional Charges.

## 6. Transfer and Receipt of Funds

a. **Customer Instructions.** Each instruction by Customer to AEBI to effect any purchase for the Investment Account shall also constitute (whether or not expressly stated) Customer's authorization and direction to the AEBI: (i) at the AEBI's discretion to debit the Bank Account or to restrict it for the amount of the purchase and any sales load or fees at the time AEBI receives Customer's instruction to affect the purchase, (ii) to receive Customer's funds transferred from sources other than the Bank Account, (iii) to hold any amount debited or funds received in a segregated non-interest bearing account for Customer until such time as settlement for the purchase shall be required, and (iv) at the time such settlement is required, to transfer such amount from the Bank Account or such segregated account, as the case may be, by any means reasonably chosen by AEBI to effect any payment in connection with the purchase.

b. **Insufficient Funds.** AEBI shall not be obligated in any manner to affect any purchase at Customer's request beyond the amount of collected funds available in the Bank Account or received from other sources at the time AEBI acts upon the purchase instructions. AEBI may delay acting upon purchase instructions until such time as sufficient collected funds are available for the settlement of any purchase instructions. Nevertheless, AEBI may, in its sole discretion, but shall not be obligated to, create an overdraft in the Bank Account to any extent necessary to carry out Customer's purchase instructions. Any such overdraft shall be subject to Customer's obligations to AEBI regarding overdrafts in the Bank Account in accordance with the General Terms and Conditions, including but not limited to the obligation to pay applicable interest charges. Any debit balances from time to time in the Investment Account shall be treated as overdrafts and charged with interest accordingly, and shall also be subject to such other charges as AEBI may impose in accordance with its Schedule of Fees and Charges.

c. **Receipt of Funds.** Any money received by AEBI for Customer shall be deposited to the Bank Account or transferred in accordance with Customer's instructions, subject to any tax withholding requirements.

d. **Currency of Transactions.** All Transactions shall be conducted in United States dollars, unless otherwise agreed to by AEBI.

e. **Foreign Currency Transactions.** Customer agrees, unless Customer notifies AEBI otherwise in writing, that in effecting any foreign exchange transaction in connection with executing any purchase or sale or otherwise complying with Customer's instructions relating to any Transaction, AEBI (including any Agent) may act as counterparty, principal, underwriter, agent, broker, or in any other capacity, and may be compensated separately in each such capacity.

## 7. Transfer, Termination, Withdrawal, Addition

a. **Pledge or Grant of Security Interest.** Customer may, at any time, make a pledge or a grant of a security interest in the Investment Account and its Holdings (a "Pledge") to AEBI or any Affiliate (the "Lender") as collateral for a loan or other credit facility or financial accommodation (a "Credit Facility") granted by the Lender to Customer or to another party or parties. In any such event, Customer agrees, at the request of the Lender or AEBI, to execute and deliver to the Lender or AEBI all documents requested by the Lender or AEBI to accomplish the Pledge. Notwithstanding anything to the contrary in this Agreement, Customer agrees that, until all obligations of Customer are fully discharged, (i) such Pledge shall operate to place the Lender's or AEBI's claims against the Investment Account in a position prior to those of each Customer and of any Executor or Guardian of each Customer, and (ii) AEBI and the Lender may provide each other with information with respect to the Investment Account's Holdings and the status of the Credit Facility. Customer (A) acknowledges that the provisions of this subparagraph may, without Customer's consent, violate AEBI's duty of loyalty to Customer, and (B) consents to, and waives any real or apparent conflict of interest that may result from, the provisions of this subparagraph, and (iii) Customer waives any right to receive advice of any action authorized pursuant to this subparagraph. If there is more than one Customer, any or all of the Customers may agree to such pledge or hypothecation without the consent of any of the other Customers, but AEBI reserves the right in its discretion to require that all Customers agree to such pledge or grant of a security interest and execute documentation that is appropriate in the view of the Lender and AEBI.

b. **Customer's Death (Natural Persons).** Upon the death of Customer, or upon the death of the last surviving Customer if there is more than one, AEBI shall transfer ownership of the Investment Account upon the following terms and conditions:

(i) The Investment Account shall be transferred to the personal representative, executor or administrator of the estate of the last surviving Customer (the "Executor"), as the case may be, provided that AEBI may require the Executor to present such documentation as AEBI may deem appropriate in its sole discretion, including but not limited to documentary proof that the Executor was duly and legally appointed and/or one or more legal opinions regarding the Executor's authority with respect to the Investment Account.

(ii) The ownership of the Investment Account shall be transferred as provided herein within a reasonable period of time after (A) AEBI has received adequate legal notice of the death of the last surviving Customer and any additional documentation AEBI may deem appropriate in its sole discretion, (B) all Charges are paid, (C) all of

3

Customer's obligations to AEBI have been satisfied and (D) AEBI is assured, in its sole judgment, that there is (1) no prior or conflicting claim, including without limitation any claim against the Investment Account, Customer, or Customer's estate, and (2) no legal impediment to, and no risk to AEBI from affecting, such transfer.

(iii)   Customer understands that there could be estate tax liability in the United States if the Investment Account has Holdings subject to such taxes on the date of death of a Customer.

(iv)   If Customer has pledged the Investment Account's Holdings to AEBI as security for one or more loans, then, notwithstanding anything herein to the contrary, any transfer of the Holdings of the Investment Account to any Executor or Guardian of any Customer shall be suspended until payment is made in full to AEBI. If so requested by the Lender upon the death of any Customer, the Holdings of the Investment Account shall be withdrawn to pay the obligations of Customer to the Lender in full and the remainder, if any, of the Investment Account's Holdings shall remain in the Investment Account or, if applicable, transferred under the provisions hereof.

(v)   Each Customer hereby expressly releases AEBI and agrees jointly and severally to indemnify, defend (upon AEBI's request), reimburse, and hold AEBI harmless from, and agrees that AEBI shall not have any loss on account of or liability for (including, but not limited to, reasonable attorneys' fees), any and all Claims arising by reason of AEBI's transfer of the Investment Account as provided herein and/or from any claim to or against the Investment Account or Customer's estate or against Customer.

(vi)   AEBI makes no representation to Customer that the Investment Account is not subject to the laws of jurisdictions other than the jurisdiction where the Investment Account is booked by AEBI.

   c.   **Appointment of Guardian (Natural Persons).** In the event that a personal representative, committee, conservator, guardian, or the like ("Guardian") for a Customer shall be appointed by any court of competent jurisdiction during a Customer's lifetime, then while the appointment of such Guardian shall be in effect, the Guardian may not make a withdrawal from the Investment Account unless (i) said court and all other Customers, if any, consent thereto or (ii) a court of competent personal jurisdiction acting pursuant to legal authority orders AEBI to allow such withdrawal. AEBI may require the Guardian to present such documentation as AEBI may deem appropriate in its sole discretion, including but not limited to documentary proof that the Guardian was duly and legally appointed and/or one or more legal opinions regarding the Guardian's authority with respect to the Investment Account.

   d.   **Early Termination by AEBI.** At any time AEBI may terminate this Agreement and the Investment Account and affect the transfer (subject to the other provisions of this Agreement) of any or all of the Investment Account's Holdings to Customer or to any Executor or Guardian thereof, for any reason, in AEBI's sole discretion.

   e.   **Withdrawal or Addition by Customer.** Subject to any additional requirements specified in this Agreement, any or all of the Customers (without the consent of any of the other Customers) may withdraw all or any part of, or (subject to AEBI's consent) add to, the Holdings of the Investment Account. Unless agreed otherwise by AEBI in its discretion and the Customer(s) requesting same, AEBI shall effect any such withdrawal or transfer to such Customer(s), subject to any obligations of Customer and claims against the Investment Account, and after (A) any and all Charges are paid and (B) AEBI is assured, in its sole judgment, that there exists (1) no prior or conflicting claim, including without limitation any claim against the Investment Account or Customer's estate or Customer and (2) no legal impediment to, and no risk to AEBI from permitting, such withdrawal. AEBI may, in its sole discretion, permit such withdrawal subject to any such claim if it is assured, in its sole judgment, that such withdrawal would not subject AEBI to any risk.

## 8.   Valuations

Customer understands and agrees that valuations of Holdings held in the Investment Accounts set forth in any account statement or other document furnished to Customer are provided for information purposes only, are confidential, and are intended solely for Customer's use. The valuations may not represent the actual or indicative terms at which new (or economically equivalent) transactions could be entered into or the actual or indicative terms at which existing (or such equivalent) transactions could be liquidated, assigned, or unwound. AEBI may derive valuations for property set forth on any account statement or other document through the use of proprietary pricing models and, or any external pricing service selected by AEBI in AEBI's sole discretion, and estimates and assumptions about relevant future market conditions and other matters, all of which are subject to change without notice. Any such changes may have a material impact on the valuations provided, and valuations based on other models or different assumptions may yield materially different results. No guaranty or warranty is made as to the reasonableness of any assumptions or the accuracy or completeness of the models or market data, whether internally or externally generated. Accordingly, Customer understands that Customer should not regard the valuations as advice by AEBI in respect of Customer's positions or as the sole basis for valuing such positions, and Customer should discuss with Customer's accountants, attorneys, investment advisors, and other representatives whether and to what extent these valuations may be useful in the preparation of federal and state tax returns, financial statements, regulatory reports, or otherwise. Customer acknowledges that the valuations set forth on account statements or other documents furnished by AEBI may vary significantly from the estimates used by AEBI in valuing transactions involving property for purposes of AEBI's internal book and records and other purposes.

The valuations do not reflect (i) any bid/offer spread customary for these instructions, and (ii) other factors and costs which could affect value, including, without limitation, the liquidity of such transaction (or related hedges), AEBI's portfolio configuration, credit policies, and prevailing market factors as well as general business considerations. Accordingly, the valuations of property held in the accounts may not reflect the actual or realizable value of such property and may not reflect the total cost Customer would incur if a termination, transfer, or other action with respect to the property were affected, and no assurance can be given that any such termination, transfer, or other action would be available to Customer at these values or at all. The valuations are not, and Customer shall not construe them as, an offer to enter into or terminate any transaction. AEBI expressly disclaims any responsibility for (i) the accuracy of any proprietary or external models, pricing services, and/or estimates used in deriving the valuations set forth in any account statements, (ii) any errors or omissions in market data or reference sources on which such valuations are based or in computing or disseminating the valuations, and (iii) any uses to which the valuations are put. Neither AEBI nor any of AEBI's affiliates shall be liable for losses, costs, expenses or damages (incidental, special, consequential, compensatory, punitive, or otherwise) arising out of any use of or reliance on any valuation of any property set forth in any account statement.

## 9.   Miscellaneous

   a.   **Arbitration of Controversies.** Customer and AEBI agree that all controversies between Customer and AEBI and/or any Agents arising out of or

[illegible text] Agreement [illegible] Investment Account [illegible] transactions, Holdings or any related matter shall be determined by arbitration in accordance with the rules of the American Arbitration Association. Any arbitration proceeding between AEBI and Customer shall be held in Miami-Dade County, Florida. The award of the arbitrator, or, in a majority of the arbitrators if more than one, shall be final. Judgment on the award rendered may be entered in any state or federal court having jurisdiction. Customer understands and agrees that:

    (i)    **Arbitration is final and binding on the parties.**

    (ii)    **The parties are waiving their rights to seek remedies in court, including the right to a jury trial.**

    (iii)    **Pre-arbitration discovery is generally more limited than and different from discovery in connection with court proceedings.**

    (iv)    **The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.**

    (v)    **The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

    b.    **Applicable Law; Jurisdiction; Waiver of Jury Trial and Other Waivers.** The Investment Account and this Agreement shall be governed by and construed in accordance with the laws of the State of Florida. Any claim or action arising under this Agreement, and not subject to arbitration in accordance with Section 9(a) above may be brought in the state or federal courts located in Miami-Dade County, Florida and Customer hereby irrevocably consents to and accepts the jurisdiction of such courts. CUSTOMER HEREBY WAIVES THE RIGHT TO A JURY TRIAL IN ANY SUCH ACTION AND UNDERSTANDS THAT SUCH WAIVER IS A CONDITION TO AEBI'S ACCEPTANCE OF THIS AGREEMENT.

    c.    **Entire Agreement; No Oral Changes or Amendments; Amendment by AEBI.** This Agreement represents the entire agreement of the parties with respect to the matters contained herein and may not be amended, changed, or terminated except in writing signed by AEBI. Notwithstanding the foregoing, AEBI reserves the right to amend the terms and conditions set forth in this Agreement at any time. AEBI shall provide notice of any such amendment or change to Customer by mail, and all such amendments and changes shall take effect, with respect to the Investment Account, 30 days after the date on which such notice is mailed or on any later date specified in such notice (unless prohibited by applicable law or regulation, in which case such amendments and changes shall take effect after any length of time required by applicable law or regulation)

    d.    **English Version Controlling.** A Spanish translation of this Agreement may be provided for the convenience of Customer. Nevertheless, Customer understands and agrees that the English language version of this Agreement shall control in the event of any differences in meaning.

    e.    **Conflict with other Account Agreements and Documentation.** This Agreement is intended to be read and applied in conjunction with the other account agreements and other documents entered into by or applicable to Customer; however, in the event and to the extent there is any conflict or inconsistency between the provisions of this Agreement and such other agreements and documentation, the provisions of this Agreement shall control as to the Investment Account.

    f.    **Verbal Instructions.** Although AEBI reserves the right subject to Section 12 hereof to require that any instructions Customer gives AEBI be in writing, from time to time, Customer or another acting on Customer's behalf may, if AEBI consents, give AEBI instructions verbally, whether in person or by telephone. Customer agrees to indemnify AEBI and hold AEBI harmless from any cost or loss which AEBI or Customer or any other party may incur or suffer by reason of AEBI honoring or complying with any and all oral instructions. Under no circumstances shall Customer seek to hold AEBI or any of the Agents liable for any losses suffered by reason of AEBI or any Agent honoring or complying with any verbal instructions believed by AEBI or the Agents to be genuine except in the case of AEBI's gross negligence or willful misconduct. (Customer hereby consents on an ongoing basis to the recording of any telephone conversations Customer may have with AEBI and/or any of the Agents).

## 10. Customer's Representations and Warranties

AEBI may rely on the information set forth below until written notice of any change is received by AEBI. Each Customer represents and warrants to AEBI that:

    a.    Customer is not, and reasonably expects not to be, engaged in a trade or business in the U.S. during any calendar year; and if a natural person Customer is not a citizen or resident of the U.S. and has not been, and reasonably expects not to be, present in the U.S. for a total of 183 or more days during any calendar year (or, in either case, gains from Customer's transactions are exempt from U.S. federal income taxation under a U.S. tax treaty); if a corporation or other entity, Customer is not incorporated or organized under the laws of the U.S. or of any state or possession thereof.

    b.    Customer has full right, power, and authority, and if a natural person, Customer is of legal age and possesses the necessary legal capacity to execute, deliver and perform the Agreement. The Agreement constitutes each Customer's valid and binding contract enforceable against each Customer in accordance with its terms.

    c.    The execution, delivery, or performance by Customer of the Agreement is not and will not be in violation of any provision of any charter, by-law, other agreement, law, regulation, order, or court process or decision to which Customer is a party or by which Customer or Customer's properties are bound or affected.

    d.    There are no outstanding liens against or security interests in the Investment Account or Holdings of the Investment Account. Customer agrees that the Customer will neither create, nor suffer the creation of, any lien or security interest against the Investment Account or its Holdings, with the exception of liens or security interests in favor of AEBI or any Affiliate.

11. INVESTMENT RISKS. CUSTOMER UNDERSTANDS, ACKNOWLEDGES, AND AGREES AS FOLLOWS:

   a. THE INVESTMENT ACCOUNT AND ALL HOLDINGS (i) ARE NOT INSURED BY THE FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC); (ii) ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, AEBI (EXCEPT TO THE EXTENT THAT A SPECIFIC HOLDING REPRESENTS THE EXPLICIT OBLIGATION OR GUARANTY OF AEBI); AND (iii) ARE SUBJECT TO INVESTMENT RISKS INCLUDING POSSIBLE LOSS OF PRINCIPAL AND/OR DEPRECIATION IN VALUE. CUSTOMER ALSO UNDERSTANDS THAT ANY HOLDING MAY NOT BE READILY MARKETABLE.

   b. AEBI IS NOT ACTING AS A FIDUCIARY TO CUSTOMER IN CONNECTION WITH ANY TRANSACTION, THE INVESTMENT ACCOUNT, ANY HOLDINGS AND/OR THE AGREEMENT. AEBI HAS NO RESPONSIBILITY WHATSOEVER FOR THE PERFORMANCE OF ANY TRANSACTION, ANY HOLDINGS AND/OR THE INVESTMENT ACCOUNT.

   c. CUSTOMER IS A SOPHISTICATED INVESTOR WHO WILL MAKE EACH INVESTMENT DECISION AFTER CONSIDERING ALL OF THE RISKS INVOLVED AND WILL NOT RELY ON ANY STATEMENT, REPRESENTATION, WARRANTY, INFORMATION, RECOMMENDATION, SUGGESTION, OPINION, OR ACTION, OR THE ABSENCE THEREOF, BY AEBI OR ITS REPRESENTATIVES. AEBI MAY TAKE POSITIONS FOR ITS OWN PORTFOLIO THAT DIFFER FROM ANY THAT IT MAY RECOMMEND TO, OR THAT MAY BE TAKEN BY, CUSTOMER.

   d. IF CUSTOMER INVESTS IN EMERGING MARKET SECURITIES, THE FOLLOWING PARAGRAPH SHOULD BE REVIEWED CAREFULLY: Investing in emerging markets securities typically involves substantially more investment risk than investing in non-emerging markets securities, and may involve special risks not typically associated with investing in the United States or in other developed countries. These risks include revaluation of currencies, high rates of inflation, repatriation restrictions on income and capital, and future adverse political and economic developments. Securities issued in emerging markets also may be less liquid, subject to government ownership controls, and delayed settlements. The investment performance of emerging markets securities may be extremely volatile, and may be adversely affected by political, economic and/or market events, including but not limited to war, insurrection, strikes, trade disputes, political succession and/or the imposition of foreign currency exchange controls or restrictions.

12. **Communications**

   a. **Communications to AEBI.**

   (i) Notices and communications by Customer to AEBI shall be effective only upon receipt in writing at the address specified in the Bank's records for correspondence and other communications with AEBI (the "Bank Address"). AEBI shall at all times have the right, in its discretion, to refuse to accept any instructions that it deems to be unsuitable or unacceptable for any reason whatsoever.

   (ii) If Customer is more than one person or entity, each Customer understands and agrees that AEBI may follow the instructions of any of them, which instruction shall be binding upon all Customers, without obtaining the consent of the other(s) (including but not limited to instructions relating to the disposition, transfer, or withdrawal of any of the Investment Account's Holdings), and that AEBI has no duty to inquire as to the purpose or propriety of any such instructions. Each Customer hereby expressly releases AEBI, and agrees jointly and severally to indemnify, reimburse, and hold AEBI harmless from, and agrees that AEBI shall not have any loss on account of or liability for, any and all Claims arising by reason of following any such instructions.

   (iii) Customer agrees to comply with any procedures AEBI may establish regarding the giving of instructions, including procedures for all Bank customers. In any event, instructions shall be deemed given to AEBI only when received and accepted by AEBI at the Bank's Address, and only if otherwise satisfying AEBI's requirements. All instructions shall be irrevocable once given unless AEBI shall agree otherwise in each specific instance.

   (iv) Customer may place orders and solicit price quotations only during AEBI's normal business hours on any day on which the office where the Investment Account is booked (the "Booking Office"), the office where the Investment Account relationship is managed (if different from the Booking Office), and the New York Stock Exchange are open for the transaction of normal business (a "Business Day"). AEBI shall treat all instructions as market orders, that is, as orders to be executed under current market conditions, unless Customer specifically directs otherwise. Customer acknowledges and understands that AEBI will not be liable for any damages or lost profits in the event that AEBI is unable or declines to execute any of Customer's orders. Instructions shall be subject to all applicable laws, regulations, rules, policies, procedures, and requirements of any and all governmental authorities, self-regulatory organizations, exchanges, markets, issuers, and Agents. If AEBI receives Customer's instructions on a Business Day before 3:00 p.m. Eastern Standard Time, it ordinarily will act on them within one Business Day thereafter but shall not be liable for any reasonable delay in effecting any instructions.

   (v) Since the time available for AEBI to consider telecommunications requests is relatively short, it is hereby agreed that if, after receiving and considering a request, AEBI determines in its sole judgment that (A) it cannot for any reason comply with or fulfill such a request in whole or in part, AEBI may, in its sole discretion, comply with or fulfill the request in part only or not at all, and (B) if the request is unclear or additional details or information are required in order for AEBI to comply with or fulfill it, in whole or in part, AEBI may, in its sole discretion, comply with or fulfill the request in part only or not at all, delay in complying with or fulfilling it in whole or in part until additional details or information are received, or take any other action in accordance with AEBI's understanding of the request. Notwithstanding any oral acceptance by AEBI or any of its Agents of any telecommunications request, it may, for any reason (including without limitation commercial or policy considerations or changes therein or in any other circumstances), reject such request in whole or in part, whereupon AEBI shall be entitled, in its sole discretion, to comply with or fulfill such request in part only or not at all. Customer's failure to perform any obligation to AEBI under this Agreement shall not be excused by AEBI's not complying with instructions or complying with instructions only in part.

**b. Communications to Customer.** All notices and communications to Customer (other than Information Documents (as defined below)) shall be effective, deemed received, and constitute personal delivery to Customer when sent, whether by mail or by telex, fax, E-mail, or other telecommunications media, to Customer's address specified in the Bank's records, as it may be modified from time to time, or hand sent by messenger when sent to such address, or (in the Customer requested to hold-mail for correspondence in any relevant "hold mail" agreement or other account opening document) when placed in Customer's "hold-mail" file. All such notices and communications (including, but not limited to, Customer account statements) shall be deemed to be correct and conclusive against Customer if not objected to in writing by Customer within five days of the date they are deemed received by Customer pursuant to the preceding sentence.

For purposes of this Section 12(b), Information Documents shall include any prospectus, notice, circular, memorandum, letter, or communication regarding any security or investment. Under U.S. securities laws and regulations, Customer understands and acknowledges that AEBI may be prohibited from delivering or mailing Information Documents relating to certain unregistered investment products to Customer in the United States. Consequently, Customer agrees that AEBI will not release any such Information Documents to Customer when Customer is in the United States and that AEBI will not mail any such Information Documents to a United States address for "hold" any such Information Documents for pick-up by Customer pursuant to any "hold-mail" arrangement entered into by Customer with AEBI. Customer agrees that in the event AEBI is restricted under the U.S. securities laws and regulations (as determined by AEBI in AEBI's sole discretion) from releasing Information Documents to Customer, AEBI may forward such Information Documents to Customer outside the United States at the address set forth below and, if Customer has declined to provide AEBI with an address outside the United States, Customer represents and warrants to AEBI that Customer has declined to review such Information Documents, including a prospectus, if any, relating to the investment products Customer has instructed AEBI to purchase. Customer also agrees that AEBI shall have the right, but shall not be obligated, to refuse to purchase any investment product on Customer's behalf with respect to which Customer has not received Information Documents, or otherwise in AEBI's discretion.

Information Documents may at AEBI's election, be mailed to Customer at the following address (which Customer certifies is not in the United States) or sent to Customer at the following telefax (which Customer certifies is not in the United States) if AEBI, in AEBI's sole discretion, considers it necessary or appropriate for Customer to receive such Information Documents outside the United States:

Customer understands that any communications held by Bank on Customer's behalf in accordance with any "hold mail" arrangement between AEBI and Customer shall be deemed to have been delivered to Customer for all purposes on the date deposited by AEBI in AEBI's "hold mail" files. Any such communication held by AEBI may be destroyed if it has not been picked up by Customer, or requested by Customer in writing, within one (1) year after the date such communication is placed in AEBI's "hold mail" files. Customer acknowledges that such communications are being held at Customer's request and for Customer's convenience; Customer waives any and all claims and causes of action Customer may have against AEBI, Agents, and/or affiliates as a result of Customer's failure to receive any such communications; and Customer agrees to indemnify AEBI and all Agents against, and hold AEBI and such Agents harmless from, any and all losses, costs, fines, penalties, or liabilities arising from AEBI delivering or holding communications for Customer in accordance with the preceding instructions.

### 13. Disclosure of Beneficial Owner

SEC Rule 14b-2 requires AEBI to provide each beneficial owner's name, address, and securities position to any requesting issuer whose voting securities are owned by such beneficial owner, unless the beneficial owner objects.

**Check the box below to prevent such disclosure.**

☑ AEBI is NOT authorized to release Customer's name, address, and securities positions.

### 14. Title of Investment Account:

_____

### 15. Bank Account Number:

_____


**THIS AGREEMENT CONTAINS, IN SECTION 9(a), A PREDISPUTE ARBITRATION CLAUSE, WHICH REQUIRES THAT ANY DISPUTES ARISING UNDER THIS AGREEMENT THAT MIGHT OTHERWISE BE LITIGATED IN A COURT BE RESOLVED BY BINDING ARBITRATION, AND INCLUDES A WAIVER OF THE PARTIES' RIGHT TO A JURY TRIAL (IN SECTION 9(b)). THIS AGREEMENT ALSO CONTAINS, IN SECTION 9(f), A PROVISION AUTHORIZING THE RECORDING OF ALL TELEPHONE CONVERSATIONS BETWEEN REPRESENTATIVES OF AEBI AND CUSTOMER.**

Each of the undersigned agrees to be bound by terms of this Agreement, and authorizes AEBI or its representative to complete any item in the Agreement which upon completion shall be conclusive, final, and binding in the absence of manifest error.

AGREED TO  Date: June 27, 2006
Customer(s) (natural person(s)):

Customer 1: M. AKRiby Valladolid S.
(Print Name)
Signature: [signed] Kriby Valladolid

Customer 2: _____ (Print Name)
Signature: _____

Customer 3: _____ (Print Name)
Signature: _____

Customer 4: _____ (Print Name)
Signature: _____

Customer 5: _____ (Print Name)
Signature: _____

Customer 6: _____ (Print Name)
Signature: _____

Customer (corporate or other entity):
By: _____ (Signature)
Name: _____ (Print Name)
Title: _____

By: _____ (Signature)
Name: _____ (Print Name)
Title: _____

By: _____ (Signature)
Name: _____ (Print Name)
Title: _____

Accepted and Agreed:
AMERICAN EXPRESS BANK INTERNATIONAL
By: [signed]
Print Name: Luisa Serena
Title: Director
Date: June 29, 2006

By: _____
Print Name: _____
Title: _____
Date: _____, 20___