To commence the statutory time
period of appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order,
with notice of entry, upon all
parties.

FILED AND ENTERED
ON NOVEMBER 30 2009
WESTCHESTER
COUNTY CLERK

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF WESTCHESTER
## COMMERCIAL DIVISION

Present: HON. ALAN D. SCHEINKMAN,
                Justice.

FILED

NOV 30 2009

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

————————————————————————————X

ELLEN M. BAKER,

                        Plaintiff,                            Index No. 6179/09

        -against-                                             Seq. Nos. 001, 002, 003
                                                              Motion Date: 9/4/09
ANDOVER ASSOCIATES MANAGEMENT CORP.,
ANDOVER ASSOCIATES (QP),LLC, JOEL DANZIGER,          **DECISION & ORDER**
HARRIS MARKHOFF, IVY ASSET MANAGEMENT, LLC,
THE BANK OF NEW YORK MELLON CORPORATION,
CITRON COOPERMAN & COMPANY, LLP, and JOHN
DOES 1-100

                        Defendants.
————————————————————————————X

Scheinkman, J.:

        Defendants Ivy Asset Management LLC ("Ivy") and the Bank of New York
Mellon Corporation ("BNY") move pursuant to CPLR 3211(a)(1), 3211(a)(3) and
3211(a)(7) for an order dismissing the Verified Complaint (Motion Seq. #1). Defendant
Citrin Cooperman & Co., LLP ("Citrin") also moves pursuant to CPLR 3211(a)(3) and
3211(a)(7) to dismiss the Verified Complaint (Motion Seq. # 2). Finally, Defendants
Andover Associates Management Corp. ("Andover" or "Managing Member"), Joel
Danziger ("Danziger") and Harris Markhoff ("Markhoff") (collectively the "Andover
Defendants") move pursuant to CPLR 3211 (a)(7) to dismiss the Verified Complaint
(Motion Seq. #3). Plaintiff Ellen Baker ("Plaintiff" or "Baker") opposes the motions.

## RELEVANT BACKGROUND

This action seeks to address losses sustained by an investor as a result of the Ponzi scheme run by Bernard L. Madoff. Here, plaintiff-investor seeks to recover her losses from the investment group to whom she entrusted her money and from the group's auditors. The investment group served was one of the funds which fed investors' money to Madoff and the entities he controlled.

The action was initiated by Plaintiff's filing of the Summons and Verified Complaint on March 30, 2009. On this motion to dismiss, the Court draws the facts from the allegations of the Verified Complaint and assumes them to be true.

Plaintiff claims to have suffered losses in connection with her $1,000,000.00 investment in Andover Associates LLC I (the "Andover Fund" or "Fund") in January 2008. Plaintiff alleges that she made this investment as the result of advice she allegedly received from Defendant Ivy (Verified Complaint, Affirmation of Tab K. Rosenfeld, Esq., dated June 30, 2009 ["Rosenfeld Aff."], Ex. A at ¶ 19). She claims that BNY "as the parent company of Ivy, had the power to influence and control and did influence and control the decision-making of Ivy, including its recommendations regarding the [Andover] Fund's Managers and the allocation of the [Andover] Fund's assets" (*id.* at ¶ 20). She alleges that Defendants breached fiduciary duties to her and engaged in gross negligence by permitting the Andover Fund's assets to be invested in entities controlled by Bernie Madoff's investment firm – Bernard L. Madoff Investment Securities, LLC ("BMIS"). Plaintiff further claims that she "was never informed that the [Andover] Fund's assets were actually funneled to Madoff" (*id.* at ¶ 8).

Plaintiff was offered participation in the Andover Fund through a "Confidential Offering Memorandum" which incorporated by reference the Andover Associates (QP) LLC Operating Agreement (Verified Complaint at ¶ 21). It is alleged that the Andover Fund's Managing Member is Defendant Andover (a New York LLC with its principal place of business located at 123 Main Street, White Plains, New York) and that Danziger and Markhoff are co-owners of Andover (*id.* at ¶¶1, 11-14)

.            Defendant Ivy is said to be an LLC with its principal place of business located at One Jericho Plaza, Jericho, New York (*id.* at ¶15). Plaintiff alleges that Andover "engaged Ivy [as an Investment Advisor] to provide it with advice regarding the selection and allocation of the [Andover] Fund's assets among various investment managers and investment pools" (*id.*). .

Defendant Citrin is a New York limited liability partnership with a business address of 709 Westchester Avenue, White Plains, New York (*id.* at ¶ 17). Citrin is

alleged to be the auditor of the Andover Fund (*id.* at ¶ 1[1]).

The unidentified defendants John Does 1-100 are alleged to be persons, the true identities, roles and capacities are yet to be ascertained but who "are the control persons of the [Andover] Fund, brokerage firms and fiduciaries to the [Andover] Fund who participated, exploited and perpetrated the wrongdoing alleged herein, and knowingly violated the policies established, though not enforced because of the breaches of fiduciary duty alleged herein" (*id.* at ¶ 18).

Plaintiff's allegations common to all Defendants are that they breached fiduciary duties by failing to protect the assets of the Andover Fund (*id.* at ¶ 29) and to "conduct even the most rudimentary due diligence prior to entrusting the [Andover] Fund's assets (including Plaintiff's investment) to Madoff and BMIS" (*id.* at ¶ 23). By comparison, she asserts that other investment advisors who "ran even the most simplistic models testing the validity of Madoff's results easily recognized the fraudulent irregularities with Madoff's investments" (*id.* at ¶ 24).[2] She claims that Andover as

---

[1]While this Court was in private practice prior to taking the Bench in January, 2007, this Court represented clients in civil litigation in which Citron (principally by Gary Karlitz, C.P.A.) either served as an expert witness or provided litigation support. The Citron services in those matters involved forensic accounting and/or valuation services related to the particular businesses or assets involved in the litigation, none of which had anything to do with any of the parties herein or anything to with the actual valuation of any Madoff investments, though the Court notes that, in one matter – a matrimonial arbitration – Citron traced the flow of money from the adverse party into and out of Madoff accounts and provided calculations of the amount of money held by the adverse party in Madoff accounts, which calculations were performed on the basis of the Madoff account statements and did not involve any audit or investigation as to the accuracy of the Madoff account statements. The Court does not perceive that anything in its prior association with the Citrin firm disqualifies this Court from presiding over this matter; indeed, this Court, with disclosure, has presided over at least one matter in which Mr. Karlitz gave expert testimony. The Court finds that it can be fair and impartial to all parties and will render the determination that the Court believes the law and the alleged facts require, without fear or favor.

[2]Plaintiff cites the "financial press" as reporting that: (1) Robert Rosenkranz of Acorn Partners concluded that it was very likely that BMIS's accounts statements were generated as part of a fraudulent scheme; and (2) Simon Fludgate of the advisory firm Aksai concluded that "the quarterly statements of BMIS filed with the SEC appeared too small to support the size of the assets Madoff claimed to be managing" (*id.* at ¶¶24-25). However, Plaintiff does not identify these reports or provide their dates so it is not presently known whether these reports were generally available at the time of Plaintiff's investment in January 2008 or whether they were made after the Madoff scandal broke in December 2008.

Managing Member, Defendants Danziger and Markhoff as owners of Managing Member, and Ivy as Investment Consultant to the Fund "knew that the ... assets were entrusted to their care and owed fiduciary duties of good faith, fair dealing and due care to the [Andover] Fund and its members. They knew, or, in the exercise of due care in discharging their fiduciary duties, were reckless in not knowing that Madoff was engaged in a massive Ponzi scheme, or, at a minimum, was reporting results that could neither be verified nor explained. Nonetheless, they knowingly and willfully invested the Fund's assets in BMIS or other Madoff-managed investment vehicles" (*id.* at ¶ 29). The Andover Defendants and Ivy are also alleged to have breached their fiduciary duties by hiring Citrin as the auditor of the Andover Fund, "which reasonably led potential investors to believe that the Fund's operations and financial condition would be reviewed and audited by a reputable accounting firm" (*id.* at ¶ 31).

Citrin is alleged to have either known and/or recklessly disregarded

(a) that the Fund was invested in Madoff-related entities; (b) that there was a materially heightened risk to the Fund's assets from such reliance on Madoff-managed investments; (c) that Madoff's operations lacked any transparency, and, in fact, were entirely opaque; and (d) that BMIS was audited by a small accounting firm, Friehling & Horowitz ... which had no experience auditing large and complicated investments like BMIS (*id.* at ¶ 32).

Plaintiff claims that Citrin breached its fiduciary duty to Plaintiff as a member of the Andover Fund by failing to conduct a proper investigation that "would have raised red flags about whether the [Andover] Fund's assets were being invested in the appropriate investment vehicles and about Madoff's operations" (*id.* at ¶ 33).

Based on the foregoing allegations, Plaintiff asserts seven causes of action or claims (improperly denominated as "Counts").

As her First Count, Plaintiff raises claims of breach of fiduciary duty against the Andover Defendants and Defendant Ivy based on their failure to act with care, loyalty, reasonable inquiry, oversight, good faith, and supervision in the management of the Andover Fund's assets (*id.* at ¶¶ 34-38). Plaintiff seeks as damages the losses she suffered to her investment.

Plaintiff's Second Count is against Ivy and BNY for their aiding and abetting the breaches of fiduciary duties. Plaintiff alleges that Ivy aided and abetted the Andover Defendants because Ivy knew of the investments the Andover Defendants were making on behalf of the Andover Fund, knew the breaches of fiduciary duties they were committing and "substantially assisted" those breaches. Defendant BNY is alleged to have knowledge of Ivy's agreement to provide consulting to the Andover Fund with regard to investments and with that knowledge, BNY knew of the breaches of

fiduciary duty committed by Ivy (Plaintiff further claims that she "was never informed that the [Andover] Fund's assets were actually funneled to Madoff") (*id.* at ¶¶ 39-43).

The Third Count is against Defendant Citrin and alleges a breach of fiduciary duty based on its "bad faith" and failure to use due care in ensuring that "Defendants were investing the Fund's assets in accordance with the Offering Memorandum and were using reasonable and prudent investment standards" (*id.* at ¶¶ 44-48).

The Fourth Count asserts gross negligence and mismanagement against the Andover Defendants, Ivy and BNY. Plaintiff alleges that she relied to her detriment on Defendants to "discharge their duties ... in a careful and prudent manner" and that they failed to so discharge their duties by preventing through the exercise of reasonable diligence "the improper investing of a substantial portion of the [Andover] Fund's assets solely into Madoff-related vehicles" and "authoriz[ing], approv[ing], participat[ing] in, fail[ing] to disclose, and improperly conceal[ing] the improper conduct ...." (*id.* at ¶¶ 49-56).

The Fifth Count asserts a negligence claim against Citrin based on its failure to discharge its professional auditing duties in a reasonable, careful and prudent manner (*id.* at ¶¶ 57-63).

In her Sixth Count, Plaintiff asserts a claim of negligent misrepresentation against all Defendants based on their collective duty:

> (a) to act with reasonable care in preparing and disseminating the Offering Memorandum and other representations relied upon by Plaintiffs [*sic*] in deciding to purchase her Membership interest in the [Andover] Fund; and (b) to use reasonable diligence in determining the accuracy of and preparing the information contained in the Offering Memorandum and subsequent written materials sent to Plaintiff ... The [Andover] Fund's statements and audited report to Plaintiff negligently misrepresented assets and earnings as a result of the fraud involving Madoff"
> (*id.* at ¶¶ 65-66).

With regard to Defendant Citrin, Plaintiff claims that it further "negligently misrepresented that the procedures used by Andover Defendants and Ivy to value the Fund's assets were reasonable, and that the financial statements fairly presented the financial position and results of the assets and operations of the Fund.  In light of the red flags identified ... Citrin also negligently misrepresented that it had conducted its audits in accordance with generally accepted auditing standards" (*id.* at ¶ 67).

Plaintiff alleges that she reasonably relied on Citrin's audit statements and

on the misrepresentations and concealments of the Andover Defendants and Ivy to her detriment (*id.*).

As her Seventh – and last – Count, Plaintiff asserts a claim of unjust enrichment against all Defendants based on their receipt of fees for the work they performed on the Andover Fund and requests that they be required to disgorge their fees for improperly performing their duties.

## THE MOTION TO DISMISS

A.     *Defendants' Motions*

While the Defendants all assert different grounds for dismissal of the Verified Complaint, there are common bases for dismissal as well. For example, the Andover and Ivy Defendants seek dismissal based on Plaintiff's lack of standing to pursue the claims individually because "[a] shareholder, even one such as the plaintiff who claims to have lost a portion of the value of her investment, simply cannot maintain an action in her own name when the alleged wrongful conduct has allegedly been directed at the corporation itself and not at her individually" (Andover Dfts' Mem. of Law at 1; Ivy Dfts' Mem. of Law at 2). Since Plaintiff does not purport to sue derivatively (and has not plead prior demand on the Andover Fund or that such demand would be futile), Defendants argue that claims must be "dismissed pursuant to CPLR 3211(a)(3) (lack of capacity to sue) and CPLR (a)(7) (failure to state a claim)" (Ivy Dfts' Mem. of Law at 6, 8; Citrin's Mem. of Law at 1).

The Andover and Ivy Defendants argue that Plaintiff's claims of "breach of fiduciary duty, gross negligence and negligent misrepresentation are alleged to arisen out of representations made in offering materials and thus arise in connection with the distribution, exchange, sale and purchase of a security. The New York Martin Act ... pre-empts this action in its entirety as it vests exclusive jurisdiction with the New York Attorney General to pursue the very claims that plaintiff now seeks to advance before this Court" (Andover Dfts' Mem. of Law at 2). The Ivy Defendants assert that the Martin Act "is 'liberally construed' to reach all claims in which a 'significant component' of the allegations involve misrepresentations or omissions 'related to' securities ... The Martin Act is not limited to conduct relating to any particular purchase of securities, nor is it relevant whether the alleged misconduct occurred before or after the securities in question were acquired. Rather, all that is required is that the conduct at issue 'ar[o]se in the securities context' .... [and] [t]he term 'securities' encompasses shares in investment vehicles like the Andover Fund" (Ivy Dfts' Mem. of Law at 10 [citations omitted]).

The Andover Defendants contend that Plaintiff's claims of breach of fiduciary duty, gross negligence, and negligent misrepresentation are barred by the Business Judgment Rule. They assert that, in order to survive a motion to dismiss, the

Verified Complaint must allege that "'the directors acted fraudulently or in bad faith .... allegations of fraud must be supported by particular statements indicating the factual circumstances on which the theory of fraud is based'" and Plaintiff's Verified Complaint is deficient since it does "nothing more than allege that the Andover Defendants essentially exercised bad judgment" (Andover Dfts' Mem. of Law at 16, *quoting Stern v General Elec. Co.*, 924 F2d 472, 474 [2d Cir 1991]).

      The Ivy and Andover Defendants also seek to dismiss some of the claims on the grounds that the contracts at issue exculpated them from liability. Thus, the Andover Defendants seek to dismiss the claims for gross negligence and negligent misrepresentation based on the Offering Memoranda which "explicitly provide that neither Management nor its officers, directors or employees ... may be held liable for any act or omission ... 'except when such action or failure to act is found to be the result of gross negligence, fraud, or willful misconduct'" and while Plaintiff has asserted a gross negligence cause of action, the allegations do not support the elevation of their negligence claim into a claim of gross negligence (Andover Dfts' Mem. of Law at 12).[3] Similarly, the Ivy Defendants argue that there is no basis for liability against Ivy since "Ivy's consulting agreement with Andover Management disclaimed Madoff-related duties[4] and, in any event did not require Ivy or BNY to do any of the things that Plaintiff asserts give rise to her claims" (Ivy Dfts' Mem. of Law at 12). The Ivy Defendants argue that where "the parties' relationship arises (if at all) from contract, the scope of any tort 'duty of care,' assuming there is one, is limited to the subject matter of the contract'" and "'no obligations can be implied ... which would be inconsistent with other terms of the contractual relationship'" (*id.* at 14).

      The Ivy Defendants further argue that even if the consulting agreement did not specifically ask Ivy not to monitor the Madoff investment, in any event, the consulting agreement disclaimed any reliance by third parties and where a provision "expressly negates enforcement by third parties, that provision is controlling" (*id.*). In support, the Ivy Defendants cite to section 6 of the consulting agreement that provides:

----

[3]The Andover Defendants argue that "a claim of gross negligence requires allegations of facts showing a clear pattern of reckless and wanton behavior" and "[a] 'conclusory allegation that Defendants acted recklessly and/or with conscious disregard ... does not meet the standard required to adequately plead a gross negligence claim" (Andover Dfts' Mem. of Law at 13).

[4]The Ivy Defendants point to the Consulting Agreement's sections 3(d), 3(a), 3(e) and 8, which provide, among other things, that "'the General Partner has expressly requested that IVY not monitor or evaluate or meet with any representatives of Madoff including Bernard L. Madoff ...." (Affirmation of Lewis J. Liman, Esq. dated June 30, 2009 ["Liman Aff."], Ex. A, § 3[a]) and that Ivy "shall not be responsible or held accountable for any act or failure to act by investment managers regardless of whether it recommends such manager or by Madoff" (Liman Aff., Ex. at § 8).

> Third-Party Beneficiary. The parties hereto acknowledge
> that by the execution of this Agreement, they do not intend
> to create rights in any person or entity, including, but not
> limited to, the Partnership [Andover Fund], other than
> themselves and no person or entity shall be justified in
> relying upon any provision of this Agreement (Liman Aff., Ex.
> at § 6).

The Ivy Defendants contend that Plaintiff has not alleged a claim of breach of fiduciary duty against them since all of the allegations are that Ivy provided consulting services to the Defendant Andover and that Ivy failed to exercise due care in managing the Andover Fund. Therefore, they argue that to the extent any duty was owed (which they dispute given the consulting agreement's terms) that duty was owed to Defendant Andover and not to Plaintiff individually. And based on a recent New York Court of Appeals' decision, the Ivy Defendants assert that "limited partners in investment funds ... are not owed fiduciary duties by those retained to provide services to the fund" (Ivy Dfts' Mem. of Law at 16, *citing Eurycleia Partners, LP v Seward & Kissel LLP*, 12 NY3d 553 [2009]). According to the Ivy Defendants, because Plaintiff has not and cannot plead a fiduciary duty owed by the Ivy Defendants to Plaintiff, Plaintiff's claim for negligent misrepresentation similarly fails (*id.* at 20).[5]

The Ivy Defendants argue that Plaintiff has failed to allege a claim that the Ivy Defendants aided and abetted a breach of fiduciary duty because, among other things, Plaintiff asserts only wholly conclusory assertions that the Ivy Defendants knew of the breach by the Andover Defendants and substantially assisted them in their breaches (Ivy Dfts' Mem. of Law at 18). Further, the only allegation against BNY is based on its ownership interest in Ivy, which is an insufficient basis for Plaintiff's assertion of aiding and abetting liability and any other basis for liability (*id.* at 20, 24-25).

Like the Andover Defendants, the Ivy Defendants claim Plaintiff's claim of gross negligence is fatally defective as it fails to "plead facts to support the conclusion that Ivy owed Plaintiff a duty of care 'has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and has done so with conscious indifference to the outcome'" (Ivy Dfts' Mem. of Law at 22, *quoting Matter of New York City Asbestos Litig.*, 89 NY2d 955, 957 [1997] [emphasis in original]).

Finally, the Ivy Defendants and the Andover Defendants argue that Plaintiff cannot plead a claim of unjust enrichment since it is a quasi contract claim that

---

[5] The Ivy Defendants further argue that the negligent misrepresentation claim fails because Plaintiff has not met the particularity requirements of CPLR 3016(b) and has not even identified any statement made by the Ivy Defendants that is alleged to have been false (Ivy Dfts' Mem. of Law at 21).

cannot be "'maintained where a contract exists between the parties covering the same subject matter'" (*id.* at 23, *quoting Goldstein v CIBC World Markets Corp.*, 6 AD3d 295, 296 [1st Dept 2004]; *see also* Andover Dfts' Mem. of Law at 17-18).

Defendant Citrin's separate arguments for dismissal are: (1) that Plaintiff's claim of breach of fiduciary duty against Citrin must fail because Plaintiff has not alleged "that she had any sort of direct or contractual relationship with Citrin ... or that Citrin ... had any reason to know that Baker was reposing any particular trust or confidence in Citrin ... Indeed, Baker has not alleged any facts from which the existence of a fiduciary relationship between her and Citrin ... might be inferred" and in any event, the accountant client relationship is generally held not to be fiduciary in nature[6] (Citrin's Mem. of Law at 8); (2) Plaintiff's claims of negligence and negligent misrepresentation fail because there is no privity or relationship nearing privity between Plaintiff and Citrin (*id.* at 10-11) and Plaintiff's allegations that Citrin knew that its audited financial reports would be provided to the Andover Fund's members and would be relied on by them in making their investment decisions and that Plaintiff did so detrimentally rely fall short of the allegations necessary under the New York Court of Appeals' decision in *Credit Alliance Corp. v Arthur Andersen & Co.* (65 NY2d 536, 551 [1985]).  Finally, Citrin moves to dismiss the unjust enrichment claim, for, among other reasons, that in order to allege a claim of unjust enrichment, "plaintiff and defendant must have had some type of direct dealing or actual, substantive relationship" and here, Citrin "did not receive any funds that belonged to Baker individually and so she is not entitled to recovery on her own behalf on an unjust enrichment theory" (Citrin's Mem. of Law at 15).

B.     Plaintiff's Opposition

Plaintiff opposes all branches of Defendants' motions to dismiss.

With regard to Defendants' argument that the Martin Act precludes Plaintiff's common law claims, Plaintiff argues that the relevant precedent from the Appellate Division, Second Department holds that the Martin Act is no bar to Plaintiff's claims (*e.g.*, her claims of negligent misrepresentation, breach of fiduciary duty, gross negligence).  Alternatively, Plaintiff contends that even if the Martin Act "was intended to preempt certain private common law claims .... the Act still would not preempt the

---

[6]Citrin states that the exceptions to this general rule are inapplicable to the present case because they involve cases where the allegations are that the accountants participated in or had knowledge and concealment of the wrongful conduct, the accountant is in possession of property belonging to the client or engages in affirmative fraudulent conduct to the client's detriment, or the accountant fails to withdraw in the face of a conflict of interest.  Citrin argues that Plaintiff's breach of fiduciary duty claim is nothing more than a repetition of her negligence claim (Citrin's Mem. of Law at 8-9).

claims asserted by Plaintiff ... because Plaintiff's claims do not allege fraudulent and intentional deceitful conduct by Defendants" (Pltf's Mem. of Law at 9-10).

Responding to Defendants' contention that Plaintiff lacks standing to pursue these derivative claims belonging to the Andover Fund, Plaintiff argues that she has suffered an "injury in fact" and has an actual stake in the outcome of her claims·(*id.* at 10). Further, that Defendants' rigid application of the rule regarding direct and derivative claims "has little real-world relevance to the unique, indeed unprecedented, circumstances giving rise to this litigation" (*id.*). Finally Plaintiff acknowledges that ordinarily a shareholder lacks standing to pursue a direct cause of action for wrongs suffered by the corporation, there is an exception to allow for direct claims by a shareholder "'where the shareholder alleges breach of a duty owed independent of any duty owed to the corporation'" (*id.* at 11, *quoting Abrams v Donati*, 66 NY2d 951, 953 [1985], *lv denied* 67 NY2d 758 [1986]). Plaintiff claims that the exception is applicable to her claims against the Andover Defendants because the Verified Complaint alleges direct harms suffered by her individually (*id.* at 11-12, *citing* Verified Complaint at ¶¶ 36-38, 55-56, 65). She also asserts standing based on the Offering Memorandum, which provides her with separate individual rights to pursue claims against the Andover Defendants (*id.* at 13, *citing* Offering Memorandum at 23 [Rosenfeld Aff., Ex. B], which exculpates the Managing Member and its shareholders, officers, and directors from any liability to the Andover Fund or any of its Members for any act or omission unless the act or omission was the result of gross negligence, fraud or willful misconduct).

Plaintiff asserts she has viable independent claims against Citrin because she is a third-party beneficiary of Citrin's contract with the Andover Defendants. She argues that she satisfies all elements required for third party beneficiary status under *Alicea v City of New York* (145 AD2d 315, 317 [1st Dept 1988]) because Citrin and the Andover Defendants had an agreement for Citrin to act as auditor for the Andover Fund, which was unquestionably made for the benefit of Plaintiff and the other members, that Plaintiff's benefit if Citrin had properly performed would have been substantial and immediate (not merely incidental), and that Citrin could reasonably foresee being held responsible to Plaintiff if it recklessly and negligently performed its duties (*id.* at 15).

Responding to the Ivy Defendants' reliance on the provisions in the agreements whereby the parties specifically disclaimed any intent to create any rights in any third parties, Plaintiff argues that "it cannot be denied that the [Consulting Agreement] and [Administrative Services Agreement] were intended to benefit Plaintiff ... because Ivy was engaged to make recommendations regarding the selection and allocation of the Fund's assets ... [and] the potential benefit Plaintiff should have derived from the [agreements] ... was not incidental, but substantial and immediate ... because had Ivy properly performed ... it is reasonable to assume that Plaintiff's investment would not have been lost (*id.* at16).

As to the Andover Defendants' contention that the Business Judgment Rule bars Plaintiff's claims, Plaintiff argues that she has sufficiently rebutted the presumption against judicial inquiry by alleging facts showing that the Andover Defendants' decision to invest in Madoff-related entities reflects misconduct, recklessness, gross negligence and bad faith (*id*. at 16-17 *citing* Verified Complaint at ¶¶ 23, 36).

Plaintiff attempts to counter the argument by the Ivy Defendants and Citrin that Plaintiff cannot maintain her breach of fiduciary duty claims against them based on the lack of privity between Plaintiff and these defendants by arguing (1) she satisfies the requirements to sue Citrin even though she is not in privity with it based on the elements set forth by the New York Court of Appeals in *Credit Alliance Corp., supra*, since "the Offering Memorandum identified Citrin as the Fund's auditor, which reasonably led potential investors to believe that the Fund's operations and financial condition would be reviewed and audited by a reputable accounting firm" (*id*. at 19);[7] (2) Ivy cannot rely on its disclaimer clause in the agreements with the Andover Defendants to absolve itself from its fiduciary obligation because under New York law, an exculpatory clause is unenforceable "on public policy grounds where, as here, the clause would serve to insulate a party from wilfull or grossly negligent actions" (*id*. at 21) and further, there was "'a relationship approaching privity'" between Ivy and the Andover Fund's members to permit Plaintiff to pursue her breach of fiduciary duty claim. Plaintiff further asserts that she has adequately stated a claim of aiding and abetting the Andover Defendants' breach of fiduciary duty as against the Ivy Defendants given, *inter alia*, that "Ivy/BONY influenced and made recommendations to Andover Defendants to invest with BMIS despite not having conducted even the most basic of due diligence regarding BMIS's operations" (*id*. at 24).

Responding to the branches of the motions of the Andover and Ivy Defendants to dismiss the claims of gross negligence and negligent misrepresentation, Plaintiff argues that her claims sufficiently allege these defendants' gross negligence, recklessness and conscious disregard for their legal obligations (*id*. at 25-26, *citing* Verified Complaint at ¶¶ 23, 27-29, 50-53). In support of the viability of her negligent misrepresentation claim, she argues that the Andover Defendants "prepared and disseminated written materials, including the Confidential Offering Memorandum, the Fund's statements and an audited report to induce and thereafter maintain Plaintiff's investment in the Fund" (*id*. at 27).

---

[7]Plaintiff further contends that it is reasonable to assume that Citrin knew that: "(a) Andover Defendants would use the reports to attract investors ... to invest in the Funds, and (2) that the members ... would rely on Citrin's financial reports in making investment decisions with regard to the Fund, and (3) that Citrin's audit and certification of the Fund's financial records would be dispersed to the members ... [who would then] rely thereon with regard to their investment in the Fund moving forward" (Pltf's Mem. of Law at 20).

Plaintiff argues that she also has viable claims of negligence and negligent misrepresentation against Citrin even though there is no technical privity because under *Credit Alliance, supra,* they have a relationship that sufficiently approaches privity (*id.* at 27-28). In further support of these claims against Citrin, Plaintiff relies on two decisions which she asserts are analogous to the present case, *Caprer v Nussbaum* (36 AD3d 176 [2d Dept 2006]) and *White v Guarente* (43 NY2d 356 [1977]).

Plaintiff opposes Defendants' motion to dismiss her unjust enrichment claim by arguing that "the finding of a contract does not preclude a plaintiff from pleading cause of action for quantum meruit and unjust enrichment" especially since "Defendants have not demonstrated that the written contracts at issue cover in their entirety the subject matter of the parties' dispute" (*id.* at 31). And because Plaintiff is not a party to the Andover Defendants' agreements with Ivy, Plaintiff's claim of unjust enrichment against Ivy is proper and BNY has unjustly benefitted from Ivy's improper fees (*id.*).

Finally, Plaintiff contends its claims against BNY are sufficient since they are based on more than BNY's being Ivy's parent company – *i.e.,* they are based on, among other things, BNY's "active participation and assistance in making improper recommendations and decisions regarding the investment of Plaintiff's monies in BMIS" (*id.* at 32), which included BNY's involvement "in the decision-making in connection with Ivy's recommendation to Andover Defendants" and its assistance in the Andover Defendants' breach of fiduciary duty by "failing to conduct any due diligence and investigation into BMIS's operations, trading strategies, and investment returns" (*id.* at 24).

C.       *Defendants' Replies*

      1.      *The Andover Defendants' Reply*

The Andover Defendant first point out the Plaintiff has essentially conceded the black letter law which compels the dismissal of the Verified Complaint based on Plaintiff's lack of standing since all of the claims are derivative – *i.e.,* the injury was sustained was to the Andover Fund and Plaintiff's injury is a loss in the value of her investment which was a loss suffered directly by the Andover Fund and only indirectly by Plaintiff through the *pro rata* loss she suffered in the value of her Andover Fund shares. Further, that Plaintiff has not identified a duty that was owed to her independent of the duties owed by the Andover Defendants to the Andover Fund (Andover Defendants' Reply Mem. at 2-4).

The Andover Defendants dispute Plaintiff's position that the Martin Act presents no issue of preemption (*id.* at 6-9). They argue that Plaintiff's claim of gross negligence based on conclusory assertions of their reckless and wanton conduct do not "meet the obligation of particularized allegations of extreme wrongdoing 'smack[ing]' of

intentional wrongdoing" (*id.* at 11).

Likewise, the Andover Defendants argue that Plaintiff's contention that they may be stripped of the protection afforded by the Business Judgment Rule by her assertions that their conduct was undertaken recklessly and in bad faith does not comport with the law (*id.* at 12).

In further support of the branch of their motion to dismiss the unjust enrichment claim, Defendants point out that "the payment of a 'management fee and profit allocation fee' - - was explicitly provided for in the Andover Offering Memorandum and in Andover's Operating Agreement"; therefore, this claim is not viable because there is an express agreement governing the subject matter (*id.* at 13). Furthermore, pleading alternative theories of contract and quasi contract can only occur "[w]here there is an open question as to the validity of a controlling agreement" (*id.* at 14).

### 2.    The Ivy Defendants' Reply

The Ivy Defendants reiterate the four bases underlying their motion: (1) Ivy's agreement with the Andover Defendants specifically excluded Madoff from the scope of Ivy's consulting duties; (2) Plaintiff lacks standing to sue on these derivative claims; (3) the Martin Act preempts Plaintiff's claims; and (4) Plaintiff's claims are fatally defective since other than her "conclusory mouthing of the elements of the claims" she does not allege facts from which the elements may be established. The Ivy Defendants argue that Plaintiff's only response to their first argument is that the Ivy Defendants breached a duty to Plaintiff by entering into a contract that excluded Madoff or that the exclusion was not permitted as a matter of law. The Ivy Defendants assert this latter point is contrary to New York law, which allows the party to limit the scope of fiduciary duties by contract (Ivy Defendants' Reply at 3, *citing Chase Manhattan Bank, N.A. v Remington Prods., Inc.* 865 F Supp 194, 200 [SD NY 1994], *affd* 71 F3d 407 [2d Cir 1995]).

Further, the Ivy Defendants argue that Plaintiffs' attempt to circumvent the derivative/standing problem by asserting that she was the intended third party beneficiary is without any legal support and, in any event, the agreements expressly disclaimed an intent "to benefit third parties, which is dispositive under New York law" (*id.* at 4). The Ivy Defendants assert the same arguments made in the Andover Defendants' Reply with regard to the claims of unjust enrichment (*i.e.*, the Consulting Agreement determined the fee Ivy received for its services and payments made pursuant to the express terms of a contract may not be recovered via an unjust enrichment theory) and gross negligence (no allegations of intentional misconduct). They argue that the aiding and abetting claims are insufficient since Plaintiff fails to allege their actual knowledge of the Andover Defendants' breach of fiduciary duty and to the extent Plaintiff is relying on numerous red flags – that "would at most amount to constructive knowledge, which is an insufficient basis for aider and abettor liability'" (*id.* at 7, *quoting Kaufman v Cohen*, 307 AD2d 113, 125 [1st Dept 2003]).

Finally, the Ivy Defendants argue that Plaintiff does not allege actions taken or duties assumed by BNY in support of her claims against it and, instead, BNY's liability is predicated solely on BNY's ownership of Ivy.

### 3. Citrin's Reply

Citrin belatedly joins in the arguments made by the other defendants that because Plaintiff's only injury is her diminution in her interest in the Andover Fund, this claim is necessarily derivative. Citrin argues that the only basis for her direct claim is that she was a third party beneficiary of the engagement agreement between Citrin and the Andover Fund, which Citrin refutes by providing in its Reply for the first time the engagement letter dated March 19, 2007 between Citrin and Andover. Based on this engagement letter, Citrin argues that there is nothing that supports Plaintiff's contention that the agreement was made for her benefit or that Citrin agreed to compensate Plaintiff for the possible loss of any benefit (Citrin Reply Mem. at 4; *see* Affirmation of John H. Eickenmeyer, Esq., Ex. A).[8]

Citrin also points out that Plaintiff has completely failed to allege "how or when she supposedly relied on Citrin's work – or if she even reviewed any document containing any Citrin work product. Further, to the extent she is claiming reliance based on her initial decision to invest she has no basis for third party beneficiary status since she was not a member of the Andover Fund at that time (Citrin Reply Mem. at 4). Further, Citrin argues that Plaintiff has not satisfied the elements necessary to plead a near privity relationship between Plaintiff and Citrin by alleging that Citrin acknowledged that Plaintiff was relying on its work either by words or conduct (*id.* at 5).

Citrin argues that Plaintiff's breach of fiduciary duty claim is defective because "not only is an auditor not in a fiduciary relationship with its client, the existence of such a relationship would be incompatible with the auditor's independence requirements" (*id.* at 7) and Plaintiff has not pleaded the limited set of circumstances when accountants serving as something other than auditors have been held to possess fiduciary obligations to their clients (*id.*). And for the same reason, Plaintiff's claims of negligence and negligent misrepresentation against Citrin fail because Plaintiff and Citrin do not have a relationship approaching privity. Moreover, Plaintiff fails to identify any opinion issued by Citrin upon which she detrimentally relied or any communication between Citrin and Plaintiff whereby Citrin acknowledged her supposed reliance (*id.* at

---

[8]The Court has not considered the Affirmation of John H. Eickemeyer, Esq. – the sole purpose of which was to provide a copy of the engagement letter to refute Plaintiff's third party beneficiary argument – because such a submission on reply when Plaintiff will not have an opportunity to respond is improper (*i.e.*, a reply may not be used to present affirmative contentions that should have been addressed in the moving papers) (*Moorman v Meadow Park Rehabilitation & Health Care Ctr. LLC*, 57 AD3d 788 [2d Dept 2008]; *Matter of Allstate Ins. Co. v Dawkins*, 52 AD3d 826 [2d Dept 2008]).

8). Since the only investment decision made by Plaintiff "would have been an initial decision to transfer certain of her assets" she was "outside of the limited 'known group' of persons who had already purchased an interest and who might successfully claim standing under" the New York Court of Appeals' holding in *White v Guarente* (43 NY2d 356 [1977]) (*id*. at 10).

        In further support of its application to dismiss the unjust enrichment claim, Citrin argues that Plaintiff cannot claim to have sustained a direct injury based on the Andover Fund's payment of fees to Citrin. Moreover, Citrin's disgorgement of these fees to Plaintiff would not make the Andover Fund whole. Accordingly, the unjust enrichment claim can only be asserted derivatively, if at all (which Citrin further disputes given that the existence of the contract precludes this claim in any event) (*id*. at 12).

## THE LEGAL STANDARDS ON A MOTION TO DISMISS

        The legal standards to be applied in evaluating a motion to dismiss are well-settled. In determining whether a complaint is sufficient to withstand a motion to dismiss pursuant to CPLR 3211(a)(7), the sole criterion is whether the pleading states a cause of action (*Cooper v 620 Prop. Assoc.*, 242 AD2d 359 [2d Dept 1997], *citing Weiss v Cuddy & Feder*, 200 AD2d 665 [2d Dept 1994]). If from the four corners of the complaint factual allegations are discerned which, taken together, manifest any cause of action cognizable at law, a motion to dismiss will fail (*511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 [2002]; *Cooper, supra*, 242 AD2d at 360). The court's function is to "'accept ... each and every allegation forwarded by the plaintiff without expressing any opinion as to the plaintiff's ability ultimately to establish the truth of these averments before the trier of the facts'" (*id., quoting 219 Broadway Corp. v Alexander's, Inc.*, 46 NY2d 506, 509 [1979]). The pleading is to be liberally construed and the pleader afforded the benefit of every possible favorable inference (*511 West 232nd Owners Corp., supra*).

        A plaintiff may rest upon the matter asserted within the four corners of the complaint and need not make an evidentiary showing by submitting affidavits in support of the complaint. A plaintiff is at liberty to stand on the pleading alone and, if the allegations are sufficient to state all of the necessary elements of a cognizable cause of action, will not be penalized for not making an evidentiary showing in support of the complaint (*Kempf v Magida*, 37 AD3d 763 [2d Dept 2007]; *see also Rovello v Orofino Realty Co.*, 40 NY2d 633, 635-636 [1976]). Plaintiff here as elected to stand on the allegations of the Verified Complaint and has not submitted any supplementary evidentiary material.

        However, the Verified Complaint is verified by Plaintiff and, therefore, for purposes of this motion, is the functional equivalent of an affidavit (*see* CPLR 105[u]; *Oversby v Linde Div. of Union Carbide Corp.*, 121 AD2d 373 [2d Dept 1986]). Where the plaintiff submits evidentiary material, the Court is required to determine whether the

proponent of the pleading has a cause of action, not whether he or she has stated one (*Leom v Martinez*, 84 NY2d 83 [1994]; *Simmons v Edelstein*, 32 AD3d 464 [2d Dept 2006]; *Hartman v Morganstern*, 28 AD3d 423 [2d Dept 2006]; *Meyer v Guinta*, 262 AD2d 463 [2d Dept 1999]). Affidavits may be used to preserve inartfully pleaded, but potentially meritorious claims; however, absent conversion of the motion to a motion for summary judgment, affidavits are not to be examined in order to determine whether there is evidentiary support for the pleading (*Rovello, supra; Pace v Perk*, 81 AD2d 444, 449–450 [2d Dept 1981]; *see Kempf, supra; Tsimerman v Janoff*, 40 AD3d 242 [1st Dept 2007]). Affidavits may be properly considered where they conclusively establish that the plaintiff has no cause of action (*Taylor v Pulvers, Pulvers, Thompson & Kuttner, P.C.*, 1 AD3d 128 [1st Dept 2003]; *M & L Provisions, Inc. v Dominick's Italian Delights, Inc.*, 141 AD2d 616 [2d Dept 1988]; *Fields v Leeponis*, 95 AD2d 822 [2d Dept 1983]).

To the extent that Plaintiff's claims turn on a contract, the actual provisions of the contract – rather than Plaintiff's characterization of the terms in her pleading – are controlling (*see 805 Third Ave. Co. v M.W. Realty Assoc.*, 58 NY2d 447, 451 [1983]; *Marosu Realty Corp. v Community Preserv. Corp.*, 26 AD3d 74, 82 [1st Dept 2005]). Therefore, "[w]here a written contract ... unambiguously contradicts the allegations supporting the breach of contract, the contract itself constitutes the documentary evidence warranting the dismissal of the complaint under CPLR 3211(a)(1)" (*159 Broadway N.Y. Assocs. L.P. v Bodner*, 14 AD3d 1 [1st Dept 2004]; *see also Taussig v Clipper Group, L.P.*, 13 AD3d 166, 167 [1st Dept 2004], *lv denied* 4 NY3d 707 [2005] [on a CPLR 3211(a)(1) motion to dismiss, "[t]he interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint"]).

To succeed on a motion to dismiss pursuant to CPLR 3211(a)(1), the documentary evidence that forms the basis of the defense must be such that it resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim (*AG Cap. Funding Partners, L.P. v State Street Bank and Trust Co.*, 5 NY3d 582, 590-591 [2005]; *511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 [2002]; *Held v Kaufman*, 91 NY2d 425, 430-431 [1998]; *Leon v Martinez*, 84 NY2d 83, 88 [1994]; *Cohen v Nassau Educators Fed. Credit Union*, 37 AD3d 751 [2d Dept 2007]; *Sheridan v Town of Orangetown*, 21 AD3d 365 [2d Dept 2005]; *Teitler v Max J. Pollack & Sons*, 288 AD2d 302 [2d Dept 2001]; *Museum Trading Co. v Bantry*, 281 AD2d 524 [2d Dept 2001]; *Jaslow v Pep Boys – Manny, Moe & Jack*, 279 AD2d 611 [2d Dept 2001]; *Brunot v Joe Eisenberger & Co.*, 266 AD2d 421 [2d Dept 1999]).

If the documentary evidence disproves an essential allegation of the complaint, dismissal is warranted even if the allegations, standing alone, could withstand a motion to dismiss for failure to state a cause of action (*Snyder v Voris, Martini & Moore, LLC*, 52 AD3d 811 [2d Dept 2008]; *Peter F. Gaito Architecture, LLC v Simone Dev. Corp.*, 46 AD3d 530 [2d Dept 2007]).

## PLAINTIFF'S STANDING TO MAINTAIN THIS ACTION

"An individual shareholder has no right to bring an action in his own name and in his own behalf for a wrong committed against a corporation'... A claim for diminution of the value of stock holdings is a derivative cause of action belonging to that of the corporation and not to plaintiffs individually" (*O'Neill v Warburg, Pincus & Co.*, 39 AD3d 281, 281-282 [1st Dept 2007], *quoting General Motors Acceptance Corp. v Kalkstein*, 101 AD2d 102, 106 [1st Dept 1984], *lv dismissed* 63 NY2d 676 [1984]). "A complaint the allegations of which confuse a shareholder's derivative and individual rights will ... be dismissed ... though leave to replead may be granted in an appropriate case" (*Abrams v Donati*, 66 NY2d 951, 953 [1985]). "Business Corporation Law § 626(c) provides that in any shareholders' derivative action, 'the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort'" (*Marx v Akers*, 88 NY2d 189, 193-194 [1996];[9] *see also Brewster v Lacy*, 24 AD3d 136 [1st Dept 2005] [complaint failed to allege facts sufficient to show that a pre-suit demand would have been futile]).

Under New York law, members of a limited liability corporation have no greater rights to present claims belonging to the limited liability corporation than do shareholders to present claims belonging to corporations (*Tzolis v Wolff*, 10 NY3d 100 [2008]; *Weber v King*, 110 F Supp 2d 124 [ED NY 2000]). In order decide whether a shareholder/member partner may pursue the managing member of an LLC, the Court must evaluate who suffered the alleged harm – the entity or the suing investor – and who would receive the benefit of any recovery or other remedy (*Elenson v Wax*, 215 AD2d 429 [2d Dept 1995]; *Albany Plattsburg United Corp. v Bell*, 307 AD2d 416, 419 [3d Dept 2003], *lv dismissed in part, denied in part* 1 NY3d 620 [2004]); *Wolf v Rand*, 258 AD2d 401 [1st Dept 1999]; *Bank of America Corp. v Lemgruber*, 385 F Supp 2d 200, 224 [SD NY 2005] [officer and director of corporation "owes fiduciary duty only to the corporation over which he exercises management authority, and any breach of fiduciary duty claims arising out of injuries to the corporation in most cases may only be brought by the corporation itself or derivatively on its behalf"]; *see also Glenn v*

_____

[9]In *Marx*, the New York Court of Appeals explained:
(1) Demand is excused because of futility when a complaint alleges with particularity that a majority of the board of directors is interested in the challenged transaction ... (2) Demand is excused because of futility when a complaint alleges with particularity that the board of directors did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances ... (3) Demand is excused because of futility when a complaint alleges with particularity that the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the director (*Marx*, 88 NY2d at 200-201).

*Hoteltron Sys., Inc.* 74 NY2d 386 [1989]). A direct action may be brought in the name and right of a holder to redress an injury sustained by, or enforce a duty owed to, the holder. However, if the wrong is a wrong to the entity, it must be pursued in a derivative action. The investor's claimed direct injury must be independent of any alleged injury to the entity and the investor must show that that the duty breached was one owed to the investor and that the investor can prevail without having to first show an injury to the entity (*Strougo v Bassini*, 282 F3d 162 [2d Cir 2002]; *New Castle Siding Co. v Wolfson*, 97 AD2d 501 [2d Dept 1983], *affd* 63 NY2d 782 [1984]; *Venizelos v Oceania Maritime Agency, Inc.*, 268 AD2d 291 [1st Dept 2000]).

      In order to distinguish between direct and derivative claims, courts examine the source of the claim of right: "'If the right flows from the breach of a duty owed by the defendants to the corporation, the harm to the investor flows through the corporation, and a suit brought by the shareholder to redress the harm is one "derivative" of the right retained by the corporation. If the right flows from the breach of a duty owed directly to the plaintiff independent of the plaintiff's status as a shareholder, investor, or creditor of the corporation, the suit is direct'" (*Weber, supra*, 110 F Supp 2d at 132, *quoting Branch v Ernst & Young*, 1995 WL 791941 at * 4 [D Mass 1995]). "Courts also look at whether the injury resulting from the alleged wrongdoing is to the business entity or to the party bringing suit. If the injury does not exist independently of the business entity, but rather is more accurately characterized as harm to the entity itself, and is similar to that suffered by other shareholders, then the action is derivative .... In such a situation, a member cannot proceed individually to assert the Company's claim but must proceed by derivative suit" (*id.* ). This analysis applies to limited liability companies as well as to corporations (*id.*)

      Based on the allegations of the Verified Complaint, Counts I through V assert claims arising from the losses Plaintiff allegedly suffered as a member of the Andover Fund based on Defendants' gross negligence/breach of fiduciary duty (and Citrin's negligence) in managing, providing investment advice and auditing the Fund's assets. Likewise, Count VII requests that Defendants be required to disgorge the fees they received in connection with the negligent work they performed for the Andover Fund since they were unjustly enriched at the expense of Plaintiff and the other Fund members. It is obvious that these claims by Plaintiff are not unique to her; they arise solely by virtue of her investment in the Andover fund as a participating member and do not arise by reason of breach of any duty claimed to be owed uniquely to Plaintiff.

      The only claim that Plaintiff asserts at least partially as a direct claim – *i.e.*, not as a member of the Fund but in her individual capacity – is found in Count VI where she claims that "[t]he Andover Defendants, Ivy, BONY and Citrin owed to Plaintiff, a duty: (a) to act with reasonable care in preparing and disseminating the Offering Memorandum and other representations relied upon by Plaintiff[] in deciding to purchase her Membership interest in the Fund; and (b) to use reasonable diligence in determining the accuracy of and preparing the information contained in the Offering Memorandum and subsequent written materials ... The Fund's statements and audited

report to Plaintiff negligently misrepresented assets and earnings as a result of the fraud involving Madoff" (Verified Complaint at ¶¶ 65-66). She claims that she relied on these materials to her detriment.

Plaintiff then asserts in Count VI a derivative claim as a member of the Andover Fund against Defendant Citrin by alleging that "Citrin knew that its audited financial reports would be provided to the Fund's Members (including Plaintiff) and potential investors in the Fund and would be relied in by them in making investment decisions concerning the Fund. Nevertheless, Defendant Citrin negligently misrepresented that the procedures used by Andover Defendants and Ivy to value the Fund's assets were reasonable, and that the financial statements fairly presented the financial position and results of the assets and operations of the Fund ... Defendant Citrin also negligently misrepresented that it had conducted is audits in accordance with generally accepted auditing standards" (Verified Complaint at ¶ 67).

It is clear that as to the claim presented in Counts I through V and in Count VII, Plaintiff lacks standing to pursue her claims. And as to the claims presented in Count VI, Plaintiff has either insufficiently asserted these direct claims or lacks the necessary privity to assert such claims.[10]

Because the gist of Plaintiff's allegations is that the Defendants negligently invested Andover Fund's assets and missed various red flags associated with investing such funds in Madoff-related entities, her claims involve an injury sustained by the Andover Fund and, only indirectly by Plaintiff by virtue of her membership in the Fund. As a result, the claims for diminution in the value of Plaintiff's membership interest may only be pursued derivatively (*see, e.g., Zissimatos v U.S. Trust Co. of New York*, 10 AD3d 587 [1st Dept 2004], *lv denied* 4 NY3d 710 [2005]; *Abrams, supra; O'Neill, supra; Kauffman v Dreyfus Fund, Inc.*, 434 F2d 727 [1970], *cert denied* 401 US 974 [1971]). Any devaluation of the investment is shared collectively by all investors, rather than independently by any one investor or subgroup of investors. Thus, the wrong is entirely derivative in nature.

The courts have determined that the BCL's Section 626 pre-suit demand is required in an action involving an LLC (*see Segal v Cooper*, 49 AD3d 467 [1st Dept 2008]; *Evans v Perl*, 2008 NY Slip Op 50775[U], 19 Misc 3d 1119[A] [Sup Ct NY County

_____

[10] As is discussed more fully *infra*, to the extent Plaintiff is asserting direct claims of breach of fiduciary duty, negligent misrepresentation and gross negligence against these Defendants based on their inducing her to invest in the Fund, Plaintiff has not sufficiently asserted such claims since prior to joining the Andover Fund, Plaintiff was not in privity with any of these Defendants and, therefore, none of them had any duty to her to provide her with accurate information. Further, Plaintiff has not alleged sufficient facts to establish a relationship nearing privity with Citrin so as to enable her to hold it liable for such claims.

2008]. Because Plaintiff has not alleged compliance with the requisites for a derivative action or sufficient facts to show that a pre-suit demand would have been futile (*Brewster v Lacy*, 24 AD3d 136 [1st Dept 2005]; NYBCL § 626[b][c]; *see also Marx, supra*), Plaintiff's claims must be dismissed.

Whether this Court should grant leave to Plaintiff to replead this action as a derivative action, if she be so advised, will depend on the viability of these claims as derivative ones, which is discussed below. However, Plaintiff will have to choose whether she wishes to pursue her direct claims or her derivative claims as the courts have held that a plaintiff is an inappropriate representative for a derivative action if that plaintiff is asserting direct claims along with derivative claims *see, e.g., Wall Street Sys., Inc., v Lemence*, 2005 WL 292744 [SD NY 2005]; *Tuscano v Tuscano*, 403 F Supp 2d 214, 223 [ED NY 2005]; *Keyser v Commonwealth Nat. Fin. Corp.*, 120 FRD 489, 490 [MD Pa 1988]; *Pacemaker Plastics Co. v AFM Corp.*, 139 F Supp 2d 851 [ND Ohio 2001]; *Scopas Tech. v Lord*, 1984 WL 8266 [Del Ch Ct 1984]; *St. Clair Shores Gen. Empl. Retirement Sys. v Eibeler*, 2006 WL 2849783 [SDNY 2006]; *Ryan v Aetna Life Ins. Co.*, 765 F Supp 133 [SD NY 1991]); *see also JFK Family Ltd. Partnership v Millbrae Natural Gas Dev. Fund 2005, L.P.*, 21 Misc 3d 1102[A], 2008 WL 4308289 [Sup Ct Westchester County 2008] [Scheinkman, J.]; 2 McLaughlin on Class Actions § 9:14 [5th ed.]).

## THE EFFECT OF THE MARTIN ACT ON PLAINTIFF'S CLAIMS

New York's Martin Act, New York's General Business Law § 352-c(1) covers claims involving (a) "fraud, deception, concealment, suppression, false pretense ..."; (b) promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances"; (c) "representation or statement which is false, where the person who made such representation or statement: (i) knew the truth; or (ii) with reasonable effort could have known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation made ...." "'Claims relating to "investment advice" have been deemed 'activities within the Martin Act's purview'" (*In re Bayou Hedge Fund Litig.*, 534 F Supp 2d 405, 421 [SD NY 2007], *affd sub nom.* 573 F3d 98 [2d Cir 2009], *quoting Sedona Corp. v Ladenburg Thalmann & Co.*, 2005 WL 1902780 at *21 [SD NY 2007]).

"The Martin Act authorizes the Attorney General to investigate and enjoin fraudulent practices in the marketing of stocks, bonds and other securities within or from New York State" (*Kerusa Co., LLC v W10Z/515 Real Estate Ltd. Partnership*, 12 NY3d 236 [2009], *citing* General Business Law §§ 352, 353). The Martin Act authorizes the Attorney General to enforce its provisions and implementing regulations (*see* General Business Law §§ 352, 352-c, 353, 354); he may seek restitution and damages for injured parties (General Business Law § 353; *State of New York v Metz*, 241 AD2d 192, 195 [1st Dept 1998]). Indeed, "[t]he Attorney General bears sole responsibility for implementing and enforcing the Martin Act' (*Kralik v 239 E. 79th St. Owners Corp.*, 5

*Owners Corp.,* 5 NY3d 54, 58 [2005]); there is no private right of action under the statute (*Kerusa Co. LLC,* 12 NY3d at 244).[11] Thus, numerous cases have dismissed private causes of action where the plaintiffs sought damages based on violations of the Martin Act (*see, e.g., CPC Intl. Inc. v McKesson Corp.,* 70 NY2d 268 [1987]; *Breakwaters Townshomes Assoc. of Buffalo, Inc. v Breakwaters of Buffalo, Inc.,* 207 AD2d 963 [4th Dept 1994]; *Rego Park Gardens Owners, Inc. v Rego Park Gardens Assoc.,* 191 AD2d 621 [2d Dept 1993]).

Defendants are arguing the flip side is also true – *i.e.,* that otherwise viable common claims of negligent misrepresentation, breach of fiduciary duty and gross negligence are precluded because the same acts form the basis for Martin Act violations.

It is clear that there is substantial authority in the federal courts for Defendants' proposition – *i.e., "*the vast majority of state and federal courts have found that 'causes of action related to a plaintiff's securities fraud claim that do not include scienter as an essential element are typically preempted by the Martin Act, in contrast to a claim requiring intent, such as a claim for common law fraud'" (*In re Bayou Hedge Fund Litig., supra,* 534 F Supp 2d at 421, *quoting Sedona Corp., supra,* 2005 WL

_____

[11]In *Kerusa,* the New York Court of Appeals held that plaintiff purchaser of a condominium unit could not assert a common law fraud claim and fraudulent concealment against the sponsor for alleged misrepresentations it made in the offering plan amendments because the claims were based on omissions and disclosures plaintiff claimed were required by the Martin Act; therefore those claims were preempted by the Martin Act. Thus, the Court of Appeals has made clear that a condominium purchaser is not precluded by the Martin Act from bringing a private cause of action that is not predicated solely on the failure to comply with the requirements mandated by the Martin Act even though the allegations could also support a Martin Act violation. However, in that case, the alleged omissions in the offering materials concerning various construction and design defects could not be pursued as a common law fraud claim since "[b]ut for the Martin Act and the Attorney General's implementing regulations ... the sponsor defendants did not have to make the disclosures in the amendments. Thus, to accept Kerusa's pleading would invite a backdoor private cause of action to enforce the Martin Act in contradiction to our holding in *CPC Intl.* that no private right to enforce that statute exists" (*Kerusa,* 12 NY3d at 245). The Court further distinguished its holding in *CPC Intl. v McKesson Corp.* (70 NY2d 268 [1987]) by stating that in that case, the action arose from McKesson's sale of stock of its wholly-owned subsidiary and plaintiff's allegations that McKesson, its investment bankers and employees fraudulently prepared statements showing false projections of revenues for the purpose of selling the subsidiary for more than its worth. In that case, the Court held that the common law fraud claim could proceed.

1902780 at * 22).[12]  The federal courts have held that the "Martin Act precludes claims for misrepresentations and breach of fiduciary duty arising out of the sale of ... limited partnership interests" (*Granite Partners, L.P. v Bear, Stearns & Co.*, 17 F Supp 2d 275, 292 [SD NY 1998]).

   This said, this Court does not agree with this line of authority and believes that based on the current state of New York law (and in particular the law in the Appellate Division, Second Department), a court should not dismiss otherwise properly pleaded claims of breach of fiduciary duty, negligent misrepresentation and gross negligence simply because the Attorney General could have prosecuted these Defendants for violations of the Martin Act. This Court agrees with the assessment of one commentator that the federal cases were decided on improper grounds – *i.e.*, that the federal courts rely on the Appellate Division cases involving litigation between sponsors and purchasers, which reliance is misplaced since these Appellate Division decisions "stand on materially different grounds" – *i.e.*, that "the plaintiff was attempting to use the Martin Act to make up for an element that would otherwise be missing under 'traditional rules of pleading and proof" (M. Woodruff, *Does the Martin Act Preempt Common Law Causes of Action?*, NYLJ, Sept. 4, 2008, at 4, col 4).

   There is much support of this viewpoint.  For example, the Second Circuit in *Castellano* relied on two condominium cases - *Eagle Tenants Corp. v Fishbein*, 182 AD2d 610 [2d Dept 1992][13] and *Horn v 440 East 57th Co.*, 151 AD2d 112 [1st Dept 1989][14] – when it dismissed plaintiff's breach of fiduciary duty claim based on "principles

_____

[12]*Castellano v Young & Rubicam, Inc.*, 257 F3d 171, 190 (2d Cir 2001) ("sustaining a cause of action for breach of fiduciary duty in the context of a securities fraud 'would effectively permit a private action under the Martin Act, which would be inconsistent with the Attorney General's exclusive enforcement powers thereunder'"); *Pension Comm. of the Univ. of Montreal Pension Plan v Banc of America Sec. LLC*, 592 F Supp 2d 608 [SD NY 2009]; *Heller v Goldin Restructuring Fund, L.P.*, 590 F Supp 2d 603 [SD NY 2008]; *Berk v Morre, Clayton & Co.*, 2006 WL 3616961 (SD NY 2006]; *Kassover v UBS AG*, 619 F Supp 2d 28 [SD NY 2008]; *In re Worldcom, Inc. Sec. Litig.*, 382 F Supp 2d 549 [SD NY 2005]; *Sedona Corp., supra*; *Nanopierce Tech., Inc. v Southridge Cap. Mgt. LLC*, 2003 WL 22052894 [SD NY 2003]; *Nairobi Holdings, Ltd. v Brown Bros. Harriman & Co.*, 2002 WL 31027550 [SD NY 2002]; *Spirit Partners, L.P. v audiohighway.com*, 2000 WL 685022 [SD NY 2000]).

[13]In *Eagle Tenant's Corp.*, the sponsor was sued based on its failure to disclose in its offering plan the existence of a continuing maintenance program required by special use permit due to the building's status as a landmark.  Because the sponsor had no fiduciary duty or other duty to disclose these facts to prospective purchasers so the only basis for liability was that created by the Martin Act

[14]In *Horn*, purchasers of shares of cooperative brought claims of breach of fiduciary duty and negligent misrepresentation based on sponsor's failure to notify

of federalism and respect for state courts' interpretation of their own laws ..." (*Castellano*, 257 F3d at 190).

Of some moment, just two months before the decision in *Castellano*, an entirely different panel of the Second Circuit declined to rule on a Martin Act preemption issue that had been raised for the first time on appeal (*Suez Equity Inv., L.P. v Toronto-Dominion Bank*, 250 F3d 87 [2d Cir 2001]).[15] In *Suez Equity Inv., L.P.*, the Court stated "[t]he New York Court of Appeals has not addressed this issue, and the lower court cases cited by defendant do not explore the issue with the level of depth that would justify a ruling by us in the first instance ... We are not immediately persuaded that the Court of Appeals would follow their lead, nor have the parties referred us to any apposite federal precedent" (*Suez Equity Investors, L.P.*, 250 F3d at 104).

While it remains true that the overwhelming weight of authority in the federal courts is in favor of Martin Act preclusion for the types of claims asserted here, there are several federal court cases that have held the Martin Act to be no bar. For example, in *Louros v Kreicas* (367 F Supp 2d 572 [SD NY 2005]), the federal district court (Hon. Lewis Kaplan, D.J.) held that plaintiff's investor's suit against his trader for, *inter alia*, breach of fiduciary duty, should not be dismissed stating:

> A claim of breach of duty that involves securities but does not allege any kind of dishonesty or deception implicates neither the plain language of the statute nor its policies. Such a claim therefore is not foreclosed by the absence of a private right of action under the Martin Act ... Count Three simply alleges that [defendant] breached a fiduciary duty owed to [plaintiff] to manage his accounts in a way that comported with his needs and to keep him informed about the market and the trades in his account. This claim does not allege deception, deliberate or otherwise. Accordingly, Count Three does not come within the Martin Act, and it will not be dismissed (*Louros*, 367 F Supp 2d at 596).

Judge Cote in *Cromer Fin. Ltd. v Berger* (2001 WL 1112548 [SD NY 2001]) similarly denied an auditor's motion to dismiss based on Martin Act preclusion claims of negligent misrepresentation and gross negligence arising from on its faulty

---

potential purchasers that the coop was operating at a deficit because both claims omitted the element of deceitful intent and to permit such claims, which were otherwise not viable as common law claims, to proceed would be to recognize a private right of action under the Martin Act.

[15]The *Castellano* panel consisted of Judges Feinberg, Newman and Sack, while the *Suez* panel consisted of Judges Walker, Cardamone, and Miner.

audit reports that the investors claimed caused them to maintain rather than redeem their shares. In denying the motion, the court stated

> When interpreting a state statute, it is a federal court's "'job to predict how the forum state's highest court would decide the issues'" before it ... "[T]o the extent there is any ambiguity in the state statutes under consideration," the federal court must "'carefully predict how the highest court of the state would resolve the uncertainty or ambiguity'" ... While the New York Court of Appeals has held that there is "no implied private right of action for violations of the antifraud provisions of the Martin Act," ... it has not determined whether the Martin Act preempts claims made under common law (*Cromer Fin. Ltd.*, 2001 WL 1112548 at * 5 [citations omitted]).

Finally, in *Xpedior Creditor Trust v Credit Suisse First Boston (USA), Inc.* (341 F Supp 2d 258 [SD NY 2004]), plaintiff (a creditors' trust) sued the successor to the underwriter alleging that the underwriter breached the parties' underwriting agreement, breached its fiduciary duty, was unjustly enriched, and breached the covenant of good faith and fair dealing in the actions it took in connection with an IPO of plaintiff's stock. The Court denied defendant's motion to dismiss the breach of fiduciary duty claim based on Martin Act preemption because "the Complaint does not allege violations of any securities law – state or federal ... '[T]here is nothing in ... the New York Court of Appeals cases ... or the text of the Martin Act itself to indicate an intention to abrogate common law causes of action'" (*Xpedior Creditor Trust*, 341 F Supp 2d at 271, *quoting Cromer Fin. Ltd., supra*, 2001 WL 1112548 at * 4; *see also MDCM Holdings, Inc. v Credit Suisse First Boston, Corp.*, 216 F Supp 2d 251 [SD NY 2002] [same]). The court further noted the conflicting authority from the Appellate Divisions but agreed with the Appellate Division, Fourth Department's decision in *Scalp & Blade, Inc. v Advest, Inc.* (281 AD2d 882 [4th Dept 2001]).[16]

In *Scalp & Blade, Inc.*, the Appellate Division, Fourth Department denied an investment advisor's motion to dismiss the breach of fiduciary duty and negligent misrepresentations claims and held that "[n]othing in the Martin Act, or the Court of Appeals cases construing it, precludes a plaintiff from maintaining common-law causes

---

[16]The facts in *Scalp & Blade* are analogous to the facts in this case as compared to the condominium and cooperative cases since at a minimum, the Andover Defendants had a fiduciary duty to the Fund to manage it in good faith and with due diligence. Therefore, this Court does not find itself constrained to follow the holdings of the condominium/cooperative cases where the Martin Act is held to preempt the claims of breach of fiduciary duty and negligent misrepresentation.

of action based on such facts as might give the Attorney-General a basis for proceeding civilly or criminally against a defendant under the Martin Act" (*Scalp & Blade, Inc.*, 281 AD2d at 640).

Furthermore, a recent decision from the Appellate Division, Second Department[17] has held that causes of action to recover damages for common law fraud and breach of contract were not preempted by the Martin Act simply because the allegations in the complaint would also support a Martin Act violation (*see Carboara v Babylon Cove Dev., LLC*, 54 AD3d 79 [2d Dept 2008]).

In *Carboara*, Justice David Ritter, writing for the Second Department, explained:

> the prohibition against "artful pleading" is completely consistent with this precedent. The purpose of the prohibition is "to prevent an end run" around the exclusive nature of the Martin Act rule by precluding a private plaintiff from bringing a cause of action, for example, that, "although styled as one for common-law fraud, lacks proof of an essential element of common-law fraud"... Here, taking the facts as alleged in the complaint as true, and according the plaintiffs the benefit of every possible favorable inference, the complaint was sufficient to state causes of action to recover damages for common-law fraud and breach of contract ... Thus, the allegations are not mere artful

---

[17]One of the main Appellate Division, Second Department cases upon which Plaintiff relies, *Hamlet on Olde Oyster Bay Home Owners Assoc., Inc v Holiday Org.* (59 AD2d 673 [2d Dept 2009]), was recently recalled and vacated and the Appellate Division affirmed the trial court's decision dismissing the fraudulent inducement and negligent misrepresentations against the sponsor, its members and principals based on Martin Act preemption (65 AD3d 1284 [2d Dept 2009]). The underlying claims arose from unrealistic budget projections set forth in a condominium offering plan. Based on the recent Court of Appeals decision in *Kerusa*, the Appellate Division, Second Department held that because the budget projections in the offering plan were required by the Martin Act, they could "not be the basis for causes of action alleging common-law fraudulent inducement and/or negligent misrepresentation against the sponsor, its members or principals" (*Hamlet on Olde Oyster Bay Home Owners Assoc., Inc.*, 65 AD3d at 1284). The Second Department further held that the motions to dismiss the breach of contract, fraudulent inducement, negligent misrepresentation and negligence/malpractice brought by the broker, engineering firm and architectural firm should likewise have been granted as the certifications filed by these defendants were required pursuant to the Attorney General's implementing regulations and could not be the basis for private causes of action (*id.*)

pleading. Finally, we note that the above determinations are in accord with basic tenets of statutory construction. The Legislature is presumed to be aware of the law in existence at the time of an enactment and to have abrogated the common law only to the extent that the clear import of the language of the statute requires ... Further, "[t]he general rule is and long has been that "when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute'" ... Here, nothing in the clear import of the language of the Martin Act requires a conclusion that the Legislature intended to abrogate any common-law remedy arising from conduct prohibited under the act. Nor are the remedies afforded the Attorney General made exclusive by the Martin Act. Thus, the plaintiffs' common-law fraud and breach of contract causes of action were neither abrogated nor supplanted by the Martin Act ... Consequently, the Supreme Court erred in dismissing same (*Caboara*, 54 AD3d at 82-83 [citations omitted]; *see also Faukner v Beer*, 2007 NY Slip Op 34219[U], 2007 WL 4639458 [Sup Ct NY County 2007]; *Board of Managers of Woodpoint Plaza Condominium v Woodpoint Plaza LLC*, NYLJ, Aug. 21, 2009, at 28 col 1 [Sup Ct Kings County 2009], *but see Jana Master Fund, Ltd. v JPMorgan Chase* (19 Misc 3d 1106[A], 2008 WL 746540 [Sup Ct NY County 2008]).

*Carboara* has been criticized by a federal court as appearing "to overlook a long-standing distinction between courts' treatment of common law fraud claims and that of other state law claims based on deceptive practices" (*Kassover v. UBS AG*, 619 F Supp 2d 28, 39 [SD NY 2008] [McKenna, D.J.]. Whatever the merit may be of the criticism, this Court, sitting in the Second Department, is bound to follow the precedents of the Second Department unless and until it or the Court of Appeals pronounces a contrary rule (*see Mountain View Coach Lines, Inc. v Storms*, 102 AD2d 663 [2d Dept 1984]). In contrast, a New York state court is not bound by a federal court's determination as to a matter of New York law (*see Darling v Darling*, 22 Misc 3d 343 [Sup Ct Kings County 2008]).

This Court notes that most, if not all, of the federal cases cited previously involved the courts' preclusion of claims of negligent misrepresentation, gross negligence, and breach of fiduciary duty and not fraud claims because such claims required proof of deceitful intent (*Nanopierce Tech, Inc., supra*, 2003 WL 22052894 at *4). This Court believes that based on the reasoning of *Carboara*, it makes no difference because again, a court would be denying plaintiff his or her right to assert common law causes of action for negligent misrepresentation, gross negligence and breach of fiduciary duty simply on the basis that the Attorney General could prosecute

defendants under the Martin Act for these same misdeeds, which would be antithetical to the Martin Act's remedial purpose.

Based on the foregoing, the Court denies the branches of Defendants' motions to dismiss Plaintiff's claims of negligent misrepresentation, gross negligence and breach of fiduciary duty based on the preemption of these claims under the Martin Act. The Court now turns to Defendants' remaining grounds for dismissal.

## THE VIABILITY OF PLAINTIFF'S CLAIMS IF ASSERTED DERIVATIVELY

A.      *Plaintiff's Claims of Gross Negligence (Count IV) and Unjust Enrichment (Count VII)*

The Court agrees with Defendants and finds that Plaintiff's allegations supporting her claims of gross negligence and unjust enrichment insufficient as a matter of law.

Plaintiff's gross negligence claim against the Andover Defendants and the Ivy Defendants merely alleges that Defendants missed red flags that other investment advisors foresaw (Verified Complaint at ¶¶ 3, 24-27) and failed to undertake their fiduciary duties to supervise and manage the funds with good faith and due care based on their failure to perform or cause to be performed "appropriate due diligence that would have revealed the illegitimate and fraudulent activities of Madoff and BMIS" (Verified Complaint at ¶¶ 27, 49-56). Plaintiff also makes the conclusory assertions that Defendants were reckless and/or grossly negligent in the performance of their duties (Verified Complaint at ¶ 3).

These claims fail to satisfy the pleading requirement for a claim of gross negligence which requires "factual allegations of conduct evincing a reckless disregard for the rights of others or smacking of intentional wrongdoing ..." (*Mancuso v Rubin*, 52 AD3d 580, 583 [2d Dept 2008]). Accordingly, Plaintiff's conclusory assertions of gross negligence cannot stand and Plaintiff's Count IV shall be dismissed (*see Rotterdam Ventures, Inc. v Ernst & Young LLP*, 300 AD2d 963 [3d Dept 2002]).

The Court also finds Plaintiff's claim of unjust enrichment as against the Andover Defendants, the Ivy Defendants and Citrin legally deficient. "To prevail on a claim of unjust enrichment, a party must show that (1) the defendant was enriched (2) at

the plaintiff's expense,[18] and (3) that it is against equity and good conscience to permit [the defendant] to retain what is sought to be recovered (*Citibank, N.A. v Walker*, 12 AD3d 480, 481 [2d Dept 2004]).  However, it is well settled that a claim of unjust enrichment must be dismissed where there is no dispute that a written contract exists covering the subject matter of the action (*Clark-Fitzpatrick, Inc. v Long Island R.R. Co.*, 70 NY2d 382, 388 [1987]).  Thus, it is only in cases where there is a *bona fide* dispute as to the existence of a contract that a plaintiff may plead alternative theories of recovery (contract and quasi contract) (*see Hochman v LaRea*, 14 AD3d 653 [2d Dept 2005]; *Zuccarini v Ziff-Davis Media, Inc.*, 306 AD2d 404 [2d Dept 2003]).  Because there is no dispute that the Defendants' receipt and retention of fees was made pursuant to the various agreements, there is no dispute that there exists a written contract covering the subject matter of this cause of action and Plaintiff's claim for unjust enrichment (Count VII) shall be dismissed (*Shovak v Long Island Commercial Bank*, 50 AD3d 1118, 1120 [2d Dept 2008], *lv dismissed in part, denied in part* 11 NY3d 762 [2008]).

B.       *Plaintiff's Claims of Breach of Fiduciary Duty, Aiding and Abetting a Breach of Fiduciary Duty, and Negligent Misrepresentation*

          Having found that the Martin Act is no bar to Plaintiff's claims of breach of fiduciary duty and negligent misrepresentation, the Court next addresses whether Plaintiff may bring these claims derivatively as against the Andover and Ivy Defendants.

          With regard to the Andover Defendants, it is the Andover Defendants position that even if Plaintiff were to assert her claims of breach of fiduciary duty and negligent misrepresentation, these claims would fail as a matter of law because of the limitation of liability set forth in the Offering Memorandum and because of the Business Judgment Rule.

          There are two different limitation of liability provisions found in the Offering Memorandum.  The first one on page 23 provides that neither the Managing Member nor its shareholders, officers, directors, etc. will be liable for any act or omission "except when such action or failure to act is found to be the result of gross negligence, fraud, or willful misconduct" (Rosenfeld Aff., Ex. A).  The second one on page 33 provides that "[t]he doing of any act or the failure to do any act by the Managing Member, the effect of which may cause or result in loss, liability, damage or expense to the Company or its Members, shall not subject the Managing Member, or its officers, directors,

------

          [18]As an aside, because Plaintiff is not in privity with Defendants, she cannot allege that they were enriched at her expense.  Again, any claim for unjust enrichment would belong to the Fund, and, as such, Plaintiff would need to pursue this claim derivatively if it were otherwise viable, which it is not (*Wolf v Rand, supra*; *Albany-Plattsburg United Corp. v Bell*, 307 AD2d 416 [3d Dept 2003], *lv dismissed in part, denied in part*; 1 NY3d 620 [2004]; *Paradiso & DiMenna Inc. v DiMenna*, 232 AD2d 257 [1st Dept 1996]; *but see Collins v Telcoa Intl. Corp.*, 283 AD2d 128 [2d Dept 2001])

shareholders, employees or affiliates to any liability to the Company or to the Members so long as such loss, liability, damage or expense arise from acts or omissions made in good faith and not involving fraud, gross negligence, material breach of fiduciary duty or willful misconduct" (Rosenfeld Aff., Ex. A).

While the Andover Defendants have annexed the Offering Memorandum, they have not annexed the Operating Agreement so the Court is unaware whether the same provisions are included in the Operating Agreement. If so, it would appear that the Andover Defendants would have a basis for raising this limitation of liability clause as a bar to any negligence claims Plaintiff may assert on behalf of the LLC against the Andover Defendants (*see* New York Limited Liability Company Law § 417[a][19]). Nevertheless, it would appear that Plaintiff could assert a claim that the Andover Defendants committed a material breach of their fiduciary duties based on the actions in investing in Madoff-related entities, provided that Plaintiff pleads sufficient facts to rebut the Business Judgment Rule.

Accordingly, as the Andover Defendants have not apprised the Court of whether the Operating Agreement contains a limitation of liability clause similar to the clauses provided in the Offering Memorandum, and even if it the Operating Agreement contains a similar clause, Plaintiff's claim of material breach of fiduciary duty is not barred under the terms of these exculpatory clauses, the Court shall dismiss these claims, without prejudice, and with leave to Plaintiff to renew these claims derivatively, if she be so advised.

With regard to the Ivy Defendants, the Court agrees with the branch of the Ivy Defendants' motion to dismiss the claims as asserted against BNY. The crux of Plaintiff's allegations against BNY are based on BNY's status as Ivy's parent. It is well settled that a parent may not be held liable for the transgressions of its subsidiary absent allegations sufficient to pierce the corporate veil (*see, e.g., Baratta v Kozlowski*, 94

---

[19]New York's Limited Liability Company Law § 417(a) permits a managing member to limit its personal liability for breaches of fiduciary duty in the operating agreement except that the limitation of liability may not exclude liability for, *inter alia*, (1) acts or omissions undertaken in bad faith, (2) intentional misconduct, (3) a knowing violation of the law, (4) acts involving the managing member receiving a personal gain or financial profit to which he/she was not legally entitled, or (5) wrongful distributions.

AD2d 454 [2d Dept 1983]).[20] As Plaintiff has alleged no such facts, and as Plaintiff's allegations as to BNY's direct involvement are entirely conclusory (*i.e.*, BNY's aiding and abetting breaches of fiduciary duty, etc.), the Court shall dismiss the Verified Complaint as against BNY.

　　　　With regard to Defendant Ivy, Plaintiff has asserted claims of breach of fiduciary duty (Count I), aiding and abetting a breach of fiduciary duty (Count II), negligent misrepresentation (Count V), gross negligence (Count IV) and unjust enrichment (Count VII) based on the work it performed for the Fund and the Andover Defendants pursuant to the Consulting Agreement and the Administrative Services Agreement.

　　　　It is uncontested that the breach of fiduciary duty, negligent misrepresentation[21] and gross negligence claims are contingent upon there being a relationship of privity (or a near privity relationship). Because the Verified Complaint is bereft of any such allegations, these claims cannot stand (*see, e.g., Eurycleia Partners, LP v Seward & Kissel, LLP*, 46 AD3d 400 [1st Dept 2007], *affd* 12 NY3d 553 [2009]). This does not end the inquiry, however, since the Court is granting Plaintiff leave to

---

[20]To adequately allege a basis for piercing the corporate veil the Complaint must allege that (1) the corporate form was abused to achieve fraud, or that the corporation has been so dominated by an individual or another corporation that the corporation has become the alter ego of the individual or another corporation whose business it primarily transacted, and (2) that such abuse or domination was used to commit fraud or inequity to party which resulted in injury (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141-142 [1993]; *Weinstein v Willow Lake Corp.*, 262 AD2d 634 [2d Dept 1999]; *see generally, East Hampton Union Free School Dist. v Sandpebble Bldr., Inc.*, 66 AD3d 122 [2d Dept 2009]). Allegations such as failure to observe corporate formalities, undercapitalization of the corporation, intermingling of corporate and personal funds, use of corporate funds for personal purposes, overlap in ownership and directorship, and common use of office space and equipment are often used to support such a basis of liability (*East Hampton Union Free School Dist. v Sandpebble Bldg., Inc., supra; Forum Ins. Co. v Texarkoma Transp. Co.*, 229 AD2d 341 [1st Dept 1996]).

[21]"Under New York law, the elements of negligent misrepresentation claim are that: (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment" (*Hydro Inv., Inc. v Trafalgar Power Inc.*, 227 F3d 8 [2d Cir 2000]).

replead her claims against the Andover Defendants as derivative ones.[22] Accordingly it is necessary for the Court to review whether any of these claims could withstand a motion to dismiss if brought derivatively.

It would appear that the language of the Consulting Agreement (Liman, Ex. 2) bars any finding of privity between the Andover Fund and Ivy because it specifically disclaims that Ivy and Andover intended to create a right in any third party (including the Andover Fund) by entering into the Agreement (Consulting Agreement § 6). It is well settled that courts will enforce such agreements because "[w]here a provision in the contract expressly negates enforcement by third-parties, that provision is controlling" (*Edward B. Fitzpatrick, Jr. Constr. Corp. v County of Suffolk*, 138 AD2d 446, 449–450 [2d Dept 1988], *lv denied* 73 NY2d 918 [1989]). Therefore, the presumption that it was an intended third party beneficiary "is rebutted as a matter of law by the Agreement since the dispositive test for third party beneficiary status is the intention of the parties to the contract. The best evidence of whether contracting parties intended their contract to benefit third parties 'remains the language of the contract itself' ... When a contract 'expressly negates enforcement by third parties, that provision is controlling'" (*Treeline Garden City Plaza, LLC v Berkely-Arm, Inc.*, 2006 NY Slip Op 51375[U],12 Misc 3d 1182[A],at *2-3 [Sup Ct Nassau County], *quoting Nepco Forged Prod., Inc. v Consolidated Edison Co. of New York*, 99 AD2d 508 [2d Dept 1984]; *Morse/Diesel v Trinity Indus., Inc.*, 859 F2d 242, 249 [2d Cir 1988]).

Furthermore, even if there was a basis for finding privity between the Andover Fund and Ivy, Ivy was exculpated from liability on the Fund's investments in Madoff-related investment vehicles based on the provisions in the Consulting Agreement that Ivy was not to monitor, evaluate and meet with Madoff representatives or assess the performance of or make recommendations regarding Madoff (*see* Liman Ex. A at § 3[d]&[e]]). It is well settled that agreements limiting fiduciary obligations are enforceable according to their terms (*Chase Manhattan Bank, N.A. v Remington Prod., Inc.*, 865 F Supp 194 [SD NY 1994], *affd* 71 F3d 407 [2d Cir 1995]).

Nevertheless, because there is privity between the Andover Fund and Ivy with respect to the Administrative Services Agreement (Liman Aff., Ex. 3), to the extent Plaintiff's claims arise from that agreement, derivative claims arising from Ivy's services would appear to be viable.

---

[22]The Verified Complaint suggests that there was a relationship between Plaintiff and Ivy prior to her making her $1 million investment since she alleges that her investment was based on Ivy's recommendation (Verified Complaint at ¶ 19). If Ivy was Plaintiff's independent investment advisor, Plaintiff may have a direct claim against Ivy based on its breach of fiduciary duty or negligent misrepresentation of facts upon which Plaintiff detrimentally relied; however, at present, there are no allegations to this effect in the Verified Complaint. However, the Court will permit Plaintiff to attempt to plead such a claim adequately in the next iteration of her pleading.

Accordingly, Plaintiff's claims as against Ivy shall be dismissed, without prejudice, to her amending her Verified Complaint to assert these claims either directly (if she has an independent basis for a relationship nearing privity with Ivy) or derivatively to the extent her claims emanate from Ivy's Administrative Services Agreement with the Andover Fund. Finally, if Plaintiff decides to pursue a claim of negligent misrepresentation in any amended complaint, Plaintiff would be well advised to meet the specificity requirements of CPLR 3016(a) to avoid another motion to dismiss her negligent misrepresentation claim as Plaintiff's current allegations do not satisfy CPLR 3016 (*i.e.*, Plaintiff fails to specify which documents contain which negligent misrepresentations upon which she relied).

Finally, with regard to Plaintiff's claim that Ivy aided and abetted the Andover Defendant's breach of fiduciary duty, the Court agrees that the allegations are insufficient to withstand the motion to dismiss. Thus, to sufficiently allege a claim of aiding and abetting a breach of fiduciary duty, Plaintiff must allege "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damage as a result of the breach" (*Kaufman v Cohen*, 307 AD2d 113, 125 [1st Dept 2003]; *Samuel M. Feinberg Testamentary Trust v Carter*, 652 F Supp 1066, 1082 [SD NY 1987]). A plaintiff must not only allege the aider and abetter's actual knowledge, but he/she must also allege substantial assistance in the breach. Here, the Verified Complaint is devoid of allegations supporting either Ivy's actual knowledge of the Andover Defendants' breach and its substantial assistance of that breach, especially in light of the provisions of the Consulting Agreement that extricated Ivy from any involvement in the consultation or management of the Madoff investments. Accordingly, Plaintiff's claim against Ivy for its aiding and abetting the Andover Defendants' breach of fiduciary duty (Count II) shall be dismissed.

C.      *Plaintiff's Claims Against Citrin*

1.      *Count III (Breach of Fiduciary Duty)*

In asserting a direct claim of breach of fiduciary duty against Citrin, Plaintiff alleges that by failing "to reasonably and adequately investigate and audit the Fund and fail[ing] to discover Madoff and BMIS's fraudulent investment practices, Citrin failed to fulfill its fiduciary duty owed to Plaintiff" (Verified Complaint at ¶ 46) and that Citrin failed to use due care in "ensuring that Defendants were investing the Fund's assets in accordance with the Offering Memorandum and were using reasonable and prudent investment standards" (*id*.). The Court finds that Count II fails to state a claim upon which relief may be granted.

Even putting aside the absence of privity between Plaintiff and Citrin and the failure of Plaintiff to set forth allegations sufficient to establish a relationship nearing privity (which is itself a fatal defect), the fact of the matter is that even if Plaintiff were to sue derivatively on behalf of the Andover Fund, there would be no basis for Plaintiff's

claim of breach of fiduciary duty against Citrin.

"In New York, a fiduciary relationship arises, 'where one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relations'" (*Suthers v Amgen*, 441 F Supp 2d 478, 487 [SD NY 2006], quoting *Flickinger v Harlod C. Brown & Co.*, 947 F2d 595, 599 [2d Cir 1991]). "New York courts have not hesitated to find fiduciary duty claims deficient when a plaintiff has not pled or proved facts demonstrating a fiduciary duty or 'any relationship approaching privity'" (*id., quoting Columbia Mem. Hosp. v Barley*, 16 AD3d 748, 749 [3d Dept 2005]).

"As a general rule, accountants are not fiduciaries as to their clients ... except where the accountants are directly involved with managing the client's investments" (*Caprer v Nussbaum*, 36 AD3d 176, 194 [2d Dept 2006]). In *Lavin v Kaufman, Greenhut, Lebowitz & Forman* (226 AD2d 107 [1st Dept 1996]), this exception to a no fiduciary relationship between an accountant and client was recognized since the accountant in that case was alleged to have made all investment decisions for the client during the 16-year relationship and to have engaged in fraud against the client, which included concealing pertinent information about her investments. By contrast, here, the only misdeeds alleged against Citrin is its alleged failure to perform its auditing services in accordance with general accepted accounting principles (*i.e.*, failing to conduct a sufficient investigation into the Fund's investments and ensuring that the Defendants were investing in accordance with the Offering Memorandum and were using reasonable and prudent standards) (Verified Complaint at ¶¶ 44–47; 60). Accordingly, Plaintiff's claim for breach of fiduciary duty (Count III) against Citrin is without legal merit and shall be dismissed with prejudice (*see, e.g., Friedman v Anderson*, 23 AD3d 163 [1st Dept 2005]).

> 2.      *Count V (Negligence) and Count VI (Negligent Misrepresentation)*

With regard to Plaintiff's claims of negligent misrepresentation (Count VI) and negligence (Count V) against Citrin, the Court finds that Plaintiff cannot maintain these claims individually, but may attempt to replead them derivatively if she be so advised.

Plaintiff's right to sue individually against Citrin for its alleged negligence (Count V) and its alleged negligent misrepresentation (Count VI) are dependent upon the sufficiency of Plaintiff's allegations showing a relationship nearing privity between Plaintiff and Citrin since it is undisputed that it was the Fund or the Andover Defendants – not Plaintiff – that contracted with Citrin to perform the accounting services.

"Accountants may ... be held liable in certain circumstances for negligent misrepresentations made to parties with whom they have had no contractual relationship, but who have relied to their detriment on inaccurate financial statements prepared by the accountant ... In order to establish such liability, the relationship between the accountant and the party must be found to approach privity, through a

showing (1) that the accountants were aware that financial reports would be used for a particular purpose, (2) in furtherance of which a known party was intended to rely, and (3) that there was some conduct on the part of the accountants linking them to that party, which evidences the accountants' understanding of that party's reliance (*Caprer*, 36 AD3d at 196, *citing Credit Alliance Corp.*, *supra*). Plaintiffs' "failure to allege a relationship sufficiently approaching privity 'prevents recovery under any negligence theory ....'" *(Thomas H. Lee Equity Fund V, L.P. v Grant Thornton, LLP*, 586 F Supp 2d 119, 130 n.7 [SD NY 2008] [investment funds that invested more than $450 million in Refco in a leveraged buy-out had not alleged a relationship with Refco's auditors that was a near privity relationship sufficient for them to assert claims of negligent misrepresentation and malpractice]).

In *Caprer*, the Appellate Division, Second Department held there were triable issues of fact over whether an individual condominium owner could sue the accountant individually for the accountant's malpractice based on the following facts showing that the unit owners had a relationship sufficiently close to privity: (1) the unit owners were the intended beneficiaries of the accountant's work; (2) the accountants were hired to represent the condominium's records and provide an annual audit; (3) the accountants were paid out of the common charges paid by unit owners; (4) there were several communications between the accountants and several unit owners; and (5) the accountants expressly reassured several unit owners of the accuracy of the accounts and vouched for the financial security of the condominium.

Plaintiff's Verified Complaint is devoid of allegations sufficient to satisfy *Credit Alliance's* three part test. Accordingly, Plaintiff's Count V for negligence and Count VI for negligent misrepresentation are defective and shall be dismissed based on the lack of privity between Plaintiff and Citrin (*see, e.g., Rotterdam Ventures, Inc. v Ernst & Young LLP*, 300 AD2d 963 [3d Dept 2002]). However, this dismissal is without prejudice, and with leave to Plaintiff to replead these claims derivatively, if she be so advised, on behalf of the Andover Fund.

As there remains doubt as the viability of Plaintiff's action, even if she opts to replead, the Court will not conduct a preliminary conference and will not direct discovery to proceed at this time. Instead, the Court will direct that any amended complaint served pursuant to this Decision and Order shall be served and filed by not later than January 5, 2010. The Court hereby schedules a status conference to be held on January 15, 2010 at 9:30 a.m.

## CONCLUSION

The Court has considered the following papers in connection with this motion:

1)      Notice of Motion dated June 30, 2009; Affirmation of Lewis J. Liman, Esq. dated June 30, 2009 and the exhibits annexed thereto;

2)      Memorandum of Law in Support of Ivy Asset Management and the Bank of New York Mellon Corporation's Motion to Dismiss dated June 30, 2009;

3)      Notice of Motion dated June 30, 2009 and the exhibit annexed thereto;

4)      Memorandum of Law in Support of Defendant Citrin Cooperman & Co., LLP's Motion to Dismiss dated June 30, 2009;

5)      Notice of Motion dated June 30, 2009; Affirmation of Tab K. Rosenfeld, Esq. dated June 30, 2009 and the exhibits annexed thereto;

6)      Memorandum of Law in Support of the Motion to Dismiss by Defendants Andover Associates Management Corp., Joel Danziger and Harris Markoff;

7)      Plaintiff's Memorandum of Law in Opposition to Separate Motions to Dismiss Filed by Defendants: (1) Andover Associates Management Corp., Joel Danziger and Harris Markoff, (2) Citrin Cooperman & Co., LLP, and (3) Ivy Asset Management and the Bank of New York Mellon Corporation;

8)      Reply Memorandum of Ivy Asset Management LLC and the Bank of New York Mellon Corporation in Support of their Motion to Dismiss Plaintiff's Complaint dated September 3, 2009;

9)      Reply Memorandum in Further Support of Defendant Citrin Cooperman & Co., LLP's Motion to Dismiss dated September 2, 2009; and

10)      Reply Memorandum of Law in Support of the Motion to Dismiss by Defendants Andover Associates Management Corp., Joel Danziger and Harris Markhoff.

Based upon the foregoing papers, and for the reasons set forth above, it is hereby

ORDERED that the motion by Defendant The Bank of New York Mellon Corporation to dismiss the Verified Complaint is granted; and it is further

ORDERED this action is dismissed as against Defendant Bank of New York Mellon Corporation with prejudice; and it is further

ORDERED that the motions by Defendants to dismiss Plaintiff's claims of gross negligence (Count IV) and unjust enrichment (Count VII) are granted and Count IV and Count VII of the Verified Complaint are hereby dismissed, with prejudice, and it is further

ORDERED the motions by Defendants to dismiss the Verified Complaint on the ground that Plaintiff lacks standing to pursue these claims is granted, without prejudice, and with leave to Plaintiff to amend the Verified Complaint, if she be so advised, to assert:

(a) on a derivative basis: (1) the causes of action for breach of fiduciary duty and negligent misrepresentation as against the Andover Defendants; (2) the causes of action for breach of fiduciary duty and negligent misrepresentation as against Defendant Ivy Asset Management, LLC, arising from Defendant Ivy's services performed pursuant to the Administrative Services Agreement; and (3) the causes of action for negligent misrepresentation and negligence as against Defendant Citron Cooperman & Company LLP, or

(b) if Plaintiff does not pursue derivative claims, a direct claim by Plaintiff against Defendant Ivy Asset Management, LLC, predicated upon allegations that there was, prior to the making of her investment with the Andover Fund, a pre-existing relationship between Plaintiff and Defendant Ivy Asset Management, LLC sufficient to support direct claims of breach of fiduciary duty and/or negligent misrepresentation; and it is further

ORDERED that Plaintiff shall serve and file an amended complaint by not later than January 5, 2010; and it is further

ORDERED that a status conference is hereby scheduled for January 15, 2010 at 9:30 a.m. and may not be adjourned without prior written order of this Court.

The foregoing constitutes the Decision and Order of this Court.

Dated:    White Plains, New York
          November 3 0    , 2009

ENTER:

Alan D. Scheinkman
Justice of the Supreme Court

APPEARANCES:

FRIER & LEVITT, LLC
    By: Jonathan E. Levitt, Esq.
        Todd Mizeski, Esq.
Attorneys for Plaintiff Ellen M. Baker
275 Madison Avenue, Suite 1100
New York, New York 10016

VEDDER PRICE P.C.
    By: John H. Eickemayer, Esq.
        Daniel C. Green, Esq.
Attorneys for Defendant Citrin Cooperman & Company, LLP.
1633 Broadway, 47th Floor
New York, New York 10019

CLEARY GOTTLIEB STEEN & HAMILTON LLP
    By: Lewis J. Liman, Esq.
        Jeffrey A. Rosenthal, Esq.
Attorneys for Defendants
Ivy Asset Management LLC and The Bank of New York Mellon Corp.
One Liberty Plaza
New York, New York 10006

ROSENFELD & KAPLAN, L.L.P.
    By: Tab K. Rosenfeld, Esq.
        Steven M. Kaplan, Esq.
Attorneys for Defendants Andover Associates Management Corp.
Joel Danziger and Harris Markhoff
535 Fifth Avenue, Suite 1006
New York, New York 10017