UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
PASHA ANWAR, et al.,

               Plaintiffs,

      v.

FAIRFIELD GREENWICH LIMITED, et al.,

               Defendants.

This Document Relates To: *Bhatia* v. *Standard Chartered International (USA) Ltd.*, No. 09-cv-2410; and *Tradewaves Ltd.* v. *Standard Chartered International (USA) Ltd.*, No. 09-cv-9423.
------------------------------------------------------------------ x

Master File No. 09-cv-118 (VM)

## DECLARATION OF BHARAT VIJAYAN

Pursuant to 28 U.S.C. § 1746, I, BHARAT VIJAYAN, under penalty of perjury of the laws of the United States of America, declare as follows:

1.     I am a Senior Director at Standard Chartered Private Bank in Singapore. I submit this declaration in connection with litigation commenced by Jitendra Bhatia, Gopal Bhatia, Kishanchand Bhatia, Jayshree Bhatia and Mandakini Gajaria (the "*Bhatia* plaintiffs"); and Tradewaves Ltd., Aarvee Ltd., Parasram Daryani, Neelam P. Daryani, Vikas P. Daryani, Nikesh P. Daryani, Ashokkumar Damodardas Raipancholia, Dilip Damodardas Raipancholia, Rajeshkumar Damodardas Raipancholia, Kishu Nathurmal Uttamchandani, Prerna Vinod Uttamchandani, Rajendrakumar Patel, Vandna Patel, Arjan Mohandas Bhatia, Kishin Mohandas Bhatia, Suresh M. Bhatia and Bharat Mohandas (the "*Tradewaves* plaintiffs," collectively with the *Bhatia* plaintiffs, "plaintiffs") in the United States District Court for the Southern District of New York, *Bhatia* v. *Standard Chartered International (USA), Ltd.*, No. 09-cv-2410 and *Tradewaves Ltd.* v. *Standard*

*Chartered International (USA) Ltd.*, No. 09-cv-9423. Except where otherwise indicated, I make this declaration based on my personal knowledge.

2. I am informed and understand that plaintiffs' allegations relate to their investments in Fairfield Sentry Ltd. ("Fairfield Sentry") and the *Bhatia* plaintiffs allegations also relate to their investments in bonds issued by Lloyds TSB plc ("Lloyds Bonds"). These investments were made by plaintiffs through either their investment accounts at the Singapore Branch of Standard Chartered Bank, or their accounts at the Singapore Branch of American Express Bank Ltd. ("AEBL"), which were ultimately transferred to the Singapore Branch of Standard Chartered Bank.

3. Since plaintiffs first opened their accounts, all of the files relating to the accounts have been maintained in Singapore. Shadow files for all but one of the accounts have been maintained in Dubai. Shadow files for the remaining account – bearing account number ***363 – have been maintained in London.

4. I am informed and understand that some of plaintiffs' allegations involve Surendran Menon, Biswaroop Barua, and Mortezah Farzaneh. Mr. Menon is an employee who worked at all times at the Dubai Branch of AEBL, and after its acquisition, Standard Chartered Bank. Mr. Barua worked at all times at the Singapore Branch of AEBL and then Standard Chartered Bank. Mr. Farzaneh worked at the Dubai Branch of AEBL until mid-2005, and thereafter worked at the Singapore Branch of AEBL and then Standard Chartered Bank.

5. I currently serve as the Global Head of the Client Management Unit ("CMU"). The CMU was created after the arrest of Bernard Madoff, for the purpose of handling issues relating to clients that had exposure to Madoff-related investments such as Fairfield Sentry and Fairfield Sigma Ltd. In my capacity as the Global Head of the CMU, I have knowledge relating to Madoff-affected clients and their accounts at Standard Chartered Bank, including the *Bhatia* plaintiffs and their three accounts numbered *71**, *52**,

\*74\*\*; and the *Tradewaves* plaintiffs and their nine accounts numbered \*\*\*572, \*\*\*065, \*\*\*834, \*\*701, \*\*481, \*\*519, \*\*\*017, \*\*846, \*\*\*363.[1]

6. As part of my duties with the CMU, I have had an opportunity to examine the accounts held by plaintiffs. I describe below plaintiffs' accounts and the agreements governing those accounts, as they relate to plaintiffs' investments in Sentry and the Lloyds Bonds. As described below, the account relationship between Standard Chartered Bank and plaintiffs is governed by the Standard Chartered Private Bank General Terms and Conditions (the "T&Cs") that became effective in the fall of 2008. Attached as Exhibit A to my declaration is a true and correct copy of the T&Cs.

### Standard Chartered Bank Account Opening Agreement

7. Two of the *Tradewaves* plaintiffs, Prerna Vinod Uttamchandani and Kishu Nathurmal Uttamchandani, opened an account at the Singapore Branch of Standard Chartered Bank. These two plaintiffs executed a Standard Chartered Private Bank Account Opening Application for Individuals ("SCB Account Application"). Attached as Exhibit B is a true and correct copy of the SCB Account Application for account number \*\*\*017.

8. The SCB Account Application contains the following language:

> Without prejudice to the above, the Client hereby confirms that he has read and fully understood this Client Agreement and agrees to the General Terms and Conditions, and acknowledges and confirms that the Client will take and/or have taken independent advice in respect hereof.

(Ex. B at 1.8.)

### AEBL Account Opening Agreements

9. Between 2001 and 2003, the *Bhatia* plaintiffs opened three accounts at the Singapore Branch of AEBL. For each account that they opened in Singapore, the *Bhatia* plaintiffs executed an AEBL Private Bank Account Application ("AEBL Account Application"). Attached as Exhibits C, D and E are true and correct copies of the AEBL Account

---

[1] Plaintiffs' account numbers and other personal information have been redacted from this declaration and the accompanying exhibits as required by Rule 5.2 of the Federal Rules of Civil Procedure.

Applications for each of the *Bhatia* plaintiffs' three accounts. For one account – bearing account number *74** – the *Bhatia* plaintiffs executed a second AEBL Account Application in 2007 in order to add a signatory to the account. Attached as Exhibit F is a true and correct copy of the 2007 AEBL Account Application.

10. Between 2001 and 2008, the *Tradewaves* plaintiffs opened eight accounts at the Singapore Branch of AEBL. For seven of the eight accounts opened at the Singapore Branch of AEBL, the *Tradewaves* plaintiffs executed an AEBL Account Application. Attached as Exhibits G, H, I, J, K, L and M are true and correct copies of the AEBL Account Applications for their accounts.

11. Ten of the eleven AEBL Account Applications executed by the plaintiffs contain the following language:

> All transactions to be concluded by you with or through the Bank shall be subject to the terms and conditions of this account application and the Private Banking Services Agreement. By signing this application, I acknowledge that I have received a copy of the Private Banking Services Agreement and that I have read and fully understand the terms.

(Exs. C, D, E. F, G, H, I, J, K, and L at 4.)

12. The AEBL Account Application executed by plaintiff Tradewaves Ltd – bearing account number ***572 – contains the following language:

> It was resolved . . . [t]hat an Account be opened with American Express Bank Ltd., Singapore on the terms and conditions of its Private Banking Services Agreement . . . a copy whereof has been presented to the Board, as the same may be amended or supplemented from time to time.

(Ex. M.)

13. For the remaining account opened by the *Tradewaves* plaintiffs at the Singapore Branch of AEBL – bearing account number ***065 – plaintiff Aarvee Ltd. executed an AEBL Private Bank Account Application (Corporate) ("PBA Corporate Application"). Attached as Exhibit N is a true and correct copy of the PBA Corporate Application for Aarvee Ltd.'s.

14. The PBA Corporate Application contains the following language:

> It was resolved . . . [t]hat an Account be opened with American Express Bank Ltd., Singapore on the terms and conditions of its Private Banking Services Agreement . . . a copy whereof has been presented to the Board, as the same may be amended or supplemented from time to time

(Ex. N.)

### The AEBL Private Banking Services Agreement

15. Attached as Exhibit O is a true and correct copy of the AEBL Private Banking Services Agreement (the "Services Agreement") that originally applied to eleven of the plaintiffs' twelve accounts.

16. The Services Agreement was amended in September 2006. Attached as Exhibit P is a true and correct copy of the Amended Services Agreement.

17. The first page of both versions of the Services Agreement contains the following provision, allowing for the update or change of the terms and conditions:

> The terms set out herein and any additional terms notified in writing by the Bank to the Customer may from time to time be amended, modified or supplemented by the Bank. Such amendments, modifications and supplements shall come into effect on the date specified by the Bank, and copies shall be sent to the Customer.
>
> Failure to receive any notifications of additional terms or copies of any amendments, modifications and supplements, as a result of hold mail instructions or otherwise, shall not invalidate any additional terms or amendments, modifications or supplements.

(Exs. O and P at 1.)

### The Standard Charter Private Bank General Terms and Conditions ("T&Cs")

18. The integration of AEBL into Standard Chartered Bank and its affiliates involved, among other things, modifying the terms and conditions governing Singapore-booked accounts. By letter dated September 3, 2008 ("September 2008 Letter"), Standard Chartered Bank informed all of the clients whose accounts were transferred from AEBL that their accounts would be subject to amended terms and conditions, effective as of the earlier of

October 3, 2008 or the date of the client's first transaction in the newly transferred account. Attached as Exhibit Q is a true and correct copy of the September 2008 Letter.

19. On or about October 3, 2008, the Services Agreement was replaced by the T&Cs, which currently govern plaintiffs' accounts. (Ex. A.)

20. The letter and T&Cs were mailed to plaintiffs using standard mail. I have confirmed with those responsible for the mailing that it was sent to all of the clients of the Singapore Branch of Standard Chartered Bank, according to the branch's standard client mailing list. A true and correct copy of an excerpt from that list is attached to my declaration as Exhibit R, which includes the (redacted) mailing information for the plaintiffs, indicating that the letter and T&Cs were mailed to the plaintiffs in September 2008.

21. No additional agreements have superseded the T&Cs, which remain in effect for Singapore-booked accounts, including the plaintiffs' accounts.

**Fairfield Sentry Agreements and Lloyds Bonds Prospectus**

22. Attached as Exhibits S, T, U, V, W, X, Y, Z, AA, BB, CC, DD are true and correct copies of signed Fairfield Sentry Subscription Agreements for each of plaintiffs' accounts.

23. Attached as Exhibit EE is a true and correct copy of the Fairfield Sentry Private Placement Memorandum dated July 1, 2003.

24. Attached as Exhibit FF is a true and correct copy of the Fairfield Sentry Private Placement Memorandum dated October 1, 2004.

25. Attached as Exhibit GG is a true and correct copy of a Lloyds Bonds Prospectus dated May 9, 2008.

Executed on this 10th day of March 2010 in Singapore.

*[signature]*
Bharat Vijayan
Senior Director & Head-Global Client Management Unit
The Standard Chartered Private Bank
Singapore