# FAIRFIELD SENTRY LIMITED SUBSCRIPTION DOCUMENTS

**Instructions**

    A. **All subscribers.** Provide all information requested in the Subscription Agreement and execute in the appropriate place on the signature page.

    B. **Items to be delivered by All Subscribers.**

        (i) Completed and signed Subscription Agreement.

        (ii) U.S. dollar denominated funds in the amount of the full purchase price for Shares. Wire transfer funds for the full amount of the subscription to the Fund's escrow account at:

            *Intermediary Bank - Field 56*
            HSBC Bank, New York
            BIC: MRMDUS33
            Fed Wire: 021001088

            *Account with Institution - Field 57*
            Account Name: Citco Bank Nederland N.V. Dublin Branch
            Account Number: 000306487
            BIC: CITCIE2D

            *Beneficiary Customer - Field 59*
            Beneficiary Account Name: Fairfield Sentry Limited
            Beneficiary International Bank Account Number (IBAN):
                    IE23 CITC 0000 0035 810 501
            Reference – SWIFT Field 70: Name and Full Address of Subscriber:

        (iii) Subscription documents should be delivered or sent by courier to Fairfield Sentry Limited, c/o Citco Fund Services (Europe) B.V., Telestone 8 –Teleport, Naritaweg 165, 1043 BW Amsterdam, The Netherlands; fax no.: (31-20) 572-2610.

303   Name of Subscriber: _____

Amount of Subscription: $_____

## SUBSCRIPTION AGREEMENT

### (NON-UNITED STATES OF AMERICA SUBSCRIBERS ONLY)

### FAIRFIELD SENTRY LIMITED

Fairfield Sentry Limited
c/o Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands
Telephone: (31-20) 572-2100
Facsimile: (31-20) 572-2610

Dear Sirs:

1.   <u>Subscription.</u> The undersigned ("Subscriber") hereby subscribes for voting, participating shares, each with a par value U.S. $0.01 per share (the "Shares") of Fairfield Sentry Limited (the "Fund"), an international business company organized under the laws of the Territory of the British Virgin Islands ("BVI"). The Shares will be offered at the net asset value ("Net Asset Value") per Share as of the opening of business on the effective date of purchase. The Shares have identical rights and privileges in all respects (including the right to one vote per Share). All capitalized terms used in this Subscription Agreement (the "Agreement") that are not defined herein have the meanings set forth in the Fund's Confidential Private Placement Memorandum dated October 1, 2004 (as amended from time to time, the "Memorandum"). Subscriber subscribes for that number of Shares that can be purchased for the subscription amount above. Subscriber subscribes for the Shares pursuant to the terms herein, the Memorandum, and the Fund's Memorandum of Association and Articles of Association (collectively, the "Fund Documents"). All references herein to "dollars" or "$" are to U.S. dollars.

2.   <u>Acceptance or Rejection.</u> If the Fund accepts this subscription, Subscriber shall become a shareholder of the Fund and be bound by the Fund Documents. The minimum initial subscription is $100,000. The Board of Directors, in consultation with Fairfield Greenwich (Bermuda) Ltd. (the "Investment Manager"), may reject a subscription for any reason or no reason. Subscriptions shall become irrevocable to the subscriber on the third to the last business day of the month in which such subscription is received by the Fund. If rejected, the Fund shall promptly return the subscription funds, with any interest actually earned thereon, and this Agreement shall be void.

3.   <u>Payment of Subscription Funds.</u> Subscription funds should be wired to the Fund at the following account, concurrently with the delivery of this Agreement to the Fund. In order to comply with anti-money laundering regulations applicable to the Fund and Citco Fund Services (Europe) B.V. (the "Administrator"), the sample bank letter attached hereto as Schedule A MUST be completed by the financial institution which will be remitting the subscription moneys on behalf of the subscriber.

1

*Intermediary Bank - Field 56*
HSBC Bank, New York
BIC: MRMDUS33
Fed Wire: 021001088

*Account with Institution - Field 57*
Account Name: Citco Bank Nederland N.V. Dublin Branch
Account Number: 000306487
BIC: CITCIE2D

*Beneficiary Customer - Field 59*
Beneficiary Account Name: Fairfield Sentry Limited
Beneficiary International Account Number (IBAN):
IE23 CITC 0000 0035 810 501

*Reference – SWIFT Field 70:* Name and Full Address of Subscriber

4.  Delivery of Subscription Agreement.  Subscriber should fax and mail an executed, completed copy of this Agreement to the Administrator at the above facsimile number and address, with a copy to the Manager at Fairfield Greenwich (Bermuda) Ltd., 12 Church Street, Suite 606, Hamilton, Bermuda, fax (441) 292-5413.

5.  Status Representations.

a.  SEC Regulation S.  Subscriber is not a "U.S. Person" under Regulation S of the U.S. Securities and Exchange Commission (adopted under the U.S. Securities Act of 1933, as amended (the "1933 Act")) because (a) if an individual, Subscriber is not a resident of the United States of America or its territories or possessions (the "U.S.") or "resident alien" as defined under the U.S. income tax laws, and (b) if an entity, Subscriber is not any of the following: (i) a partnership or corporation organized or incorporated under U.S. law; (ii) an estate of which any executor or administrator is a U.S. Person; (iii) a trust of which a trustee is a U.S. Person; (iv) any agency or branch of a foreign entity located in the U.S.; (v) a partnership or corporation organized under non-U.S. law but formed by a U.S. Person principally for the purpose of investing in securities not registered under the 1933 Act (unless organized and incorporated, and owned, by accredited investors as defined in Rule 501 under the 1933 Act who are not natural persons, estates or trusts); (vi) a non-discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary for a U.S. Person; or (vii) a discretionary or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated or (if an individual) resident in the U.S.

Subscriber acknowledges that, except with the consent of the Fund, the Shares may not be owned by a U.S. Person, that the Shares will not at any time be held for the account or benefit, directly or indirectly, of any U.S. Person, and that, except with the consent of the Fund, the Subscriber will not resell, reoffer or transfer any Shares or any interest therein to any person, including a U.S. Person or any non-U.S. Person subject to the above restrictions.  Subscriber acknowledges that reoffers, resales or any transfer of the Shares is subject to the limitations imposed by the Fund's Articles of Association and may be made only in compliance with applicable securities laws and only with the prior written consent of the Board of Directors which may, in its sole discretion, decline to issue any Shares to, or register Shares in the name of, any person, and the Subscriber will not transfer any of its Shares except on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are eligible to purchase Shares in

2

the Fund as described above and in the Memorandum. Subscriber understands that the Fund may compulsorily repurchase such Shares in accordance with the Fund Documents.

        b.      **CFTC Regulations**. Subscriber is not a "U.S. Person" under Regulation 4.7 of the U.S. Commodity Futures Trading Commission (adopted under the U.S. Commodity and Exchange Act of 1974, as amended) ("Rule 4.7") because (a) if an individual, Subscriber is not a resident of the U.S., and (b) if an entity, Subscriber is not (i) a partnership, corporation or other entity (other than an entity organized principally for passive investment) organized under U.S. law or with its principal place of business in the U.S.; (ii) an entity (whether organized under U.S. or non-U.S. law) that is organized principally for passive investment and that is beneficially owned 10% or more by U.S. Persons or persons who are not otherwise "qualified eligible persons", as defined in Rule 4.7; (iii) an estate or trust the income of which is subject to U.S. income taxation regardless of source; or (iv) a pension plan for the employees, officers or principals of an entity organized or with its principal place of business in the U.S.

        c.      **Professional Investor Status**. Subscriber is a "Professional Investor" within the meaning of the BVI Mutual Funds Act of 1996 of the BVI and the Irish Stock Exchange, because Subscriber's net worth (in the case of a natural person, either individually or jointly with spouse) exceeds US$1,000,000 or, (in the case of an institution) $5,000,000, and Subscriber consents to being treated as a Professional Investor for the purpose of investing in the Fund, and Subscriber warrants that he has such knowledge and expertise in financial matters sufficient to evaluate the risks involved in an investment in the Fund, that he is aware of the risks and can bear the loss of the entire investment in the Fund.

        d.      **Employee Benefit Plans**. Investment in the Fund by "Employee Benefit Plans", as defined under the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), may be limited to less than 25% of the total capital of the Fund (excluding investments by the Investor). To help determine whether investment by Subscriber is included in the 25% limitation, Subscriber has initialed here (_____) if it is an Employee Benefit Plan (such as a retirement account, corporate pension or profit sharing plan, or governmental retirement plan). If the Subscriber at any time becomes an Employee Benefit Plan, the Subscriber shall forthwith inform this to the Fund.

If the Subscriber is an insurance company investing the assets of its general account in the Fund, less than 25% of the Subscriber's general account constitutes assets of an Employee Benefit Plan (as determined under Section 401(c) of ERISA). If the Subscriber is such an entity and at any time 25% or more of its general account constitute assets of an Employee Benefit Plan, the Subscriber shall forthwith disclose to the Fund the amount of Employee Benefit Plan assets held in its general account. By signing this Subscription Agreement, the Subscriber expressly acknowledges that the Fund may require that the Subscriber redeem its Shares and withdraw from the Fund if 25% or more of the Subscriber's general account constitutes assets of an Employee Benefit Plan.

    6.      **Related Professionals**.
           (Subscriptions cannot be accepted if this section is not completed)

Please indicate the name of the person at the Fairfield Greenwich Group with whom this subscription is associated.
Name: _____

Please indicate the name, if applicable, of the person and/or entity who acts as an advisor with respect to this subscription.

Name of Advisor:

_____

Name of Advisor's firm or organization:

_____

Not Applicable: _____

7.    Receipt of Fund Documents and Other Documents. Subscriber has received and read a copy of the Memorandum. Subscriber acknowledges that in making a decision to subscribe for Shares, Subscriber has relied solely upon the Fund Documents and independent investigations made by Subscriber and has not relied on any representation inconsistent with the information in the Fund Documents. Subscriber is not relying on the Fund, the Fund's Board of Directors, administrator, the Investment Manager, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Subscriber's own advisers. The Subscriber's investment in the Shares is consistent with the investment purposes, objectives and cash flow requirements of the Subscriber and will not adversely affect the Subscriber's overall need for diversification and liquidity.

8.    Subscriber Sophistication and Financial Condition. Subscriber has such knowledge and experience in financial and business matters that it is capable of evaluating the risks of this investment. Subscriber has obtained sufficient information from the Fund or its authorized representatives to evaluate such risks and has consulted with the Subscriber's own advisors and is fully informed as to the legal and tax requirements within the Subscriber's own country (countries) regarding a purchase of the Shares. Subscriber is not relying on the Fund or the Board of Directors, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Subscriber's own advisers. Subscriber has not relied on any person as a purchaser representative in connection with that evaluation. Subscriber has evaluated the risks of investing in the Fund, understands there are substantial risks of loss incidental to the purchase of Shares and has determined that the Shares are a suitable investment for the Subscriber. Subscriber's investment is consistent with its investment purposes and objectives and cash flow requirements, and will not adversely affect Subscriber's overall need for diversification and liquidity.

Subscriber understands that (a) the Fund's operating history is not a prediction of its future success; (b) no governmental agency has passed upon the Shares or made any findings or determination as to the fairness of this investment; and (c) the representations, warranties, agreements, undertakings and acknowledgments made by the Subscriber in this Agreement will be relied upon by the Fund, the Board of Directors, the Investment Manager and the Administrator in determining the Subscriber's suitability as a purchaser of Shares and the Fund's compliance with various securities laws, and shall survive the Subscriber's becoming a shareholder of the Fund.

All information which the Subscriber has provided to the Fund or the Administrator concerning the Subscriber, the Subscriber's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of a Subscriber that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

The Subscriber irrevocably authorizes the Fund and/or the Administrator to disclose, at any time, any information held by the Fund or the Administrator in relation to the Subscriber or his investment in the Fund to the Investment Manager or any affiliate of the Investment Manager or the Administrator.

4

9. **Redemptions.** Subscriber is aware of the limited provisions for redemptions and has read the section in the Memorandum entitled "Transfers, Redemptions and Termination." Subscriber has no need for liquidity in this investment, can afford a complete loss of the investment in the Shares and can afford to hold the Shares for an indefinite period of time. Subscriber understands that the Fund will generally redeem Shares as of the last day of each month (the "Redemption Date"); provided that the redemption request is received by the Administrator in proper form no later than 5:00 p.m. Amsterdam time on a date that is at least 15 calendar days prior to the Redemption Date.

10. **Valuations.** Subscriber understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and in some cases, estimated, valuations of the Fund's investments and that any valuation provided in Subscriber's account statement may be an unaudited, estimated value.

11. **Beneficial Owner.** Subscriber acknowledges, or if the Subscriber is acting as agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Subscriber has advised the Beneficial Owner that (a) the Investment Manager, on behalf of the Fund, may enter into agreements with placement agents or other sales relationships to market the Fund providing for a payment from the Investment Manager to the particular placement agent for the introduction, out of the fees the Investment Manager receives from the Fund.

12. **Investment Intent.** Subscriber is buying the Shares solely for investment purposes and not with a view to distribute, subdivide or resell the Shares.

13. **Subsequent Subscriptions.** If Subscriber subscribes for additional Shares at a later date, Subscriber shall be deemed to have re-executed this Agreement in subscribing for those Shares.

14. **Registration of Shares; Certificates.** The Shares issued to Subscriber will be registered on the Fund's books in the name of Subscriber and not any nominee. Shares will be issued in registered, book-entry form.

15. **Binding Nature of Agreement.** This Agreement shall be binding upon Subscriber and its heirs, representatives, successors and permitted assigns, and shall inure to the benefit of the Fund's successors and assigns. The Agreement shall survive the acceptance of the subscription. If Subscriber consists of more than one person, the Agreement shall be the joint and several obligation of each person.

16. **Governing Law.** This Agreement shall be governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions.

17. **Legal Representation.** Subscriber understands that the Law Offices of Andrew E. Goldstein acts as U.S. counsel to the Fund, and as counsel to the Investment Manager and its affiliates. Subscriber also understands that, in connection with this offering of Shares and subsequent advice to the Fund, the Law Offices of Andrew E. Goldstein will not be representing the shareholder, and no independent counsel has been engaged by the Fund to represent the shareholders.

18. **Authority.** Subscriber's execution, delivery and performance of this Agreement are within its powers, have been duly authorized and will not constitute or result in a breach or default under or conflict with any order, ruling or regulation of any court or other tribunal or of any governmental commission or agency, or any agreement or other undertaking, to which Subscriber is a party or by which it is bound, and, if Subscriber is not an individual, will not violate any provision of the incorporation papers, by-laws, indenture of trust or partnership agreement, as may be applicable, of the Subscriber. The signature on this Agreement is genuine, and the signatory, if Subscriber is an individual, has legal

competence and capacity to execute the Agreement, or, if Subscriber is not an individual, the signatory has been duly authorized to execute the Agreement, and the Agreement constitutes a legal, valid and binding obligation of Subscriber, enforceable in accordance with its terms.

19.    New York Courts. Subscriber agrees that any suit, action or proceeding ("Proceeding") with respect to this Agreement and the Fund may be brought in New York. Subscriber irrevocably submits to the jurisdiction of the New York courts with respect to any Proceeding and consents that service of process as provided by New York law may be made upon Subscriber in such Proceeding, and may not claim that a Proceeding has been brought in an inconvenient forum. Subscriber consents to the service of process out of any New York court in any such Proceeding by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to Subscriber at the address of Subscriber then appearing on the Fund's records. Nothing herein shall affect the Fund's right to commence any Proceeding or otherwise to proceed against Subscriber in any other jurisdiction or to serve process upon Subscriber in any manner permitted by any applicable law in any relevant jurisdiction.

20.    Office of Foreign Assets Control. (A)    Subscriber understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any applicable laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[1] ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[2], unless the Fund, after being specifically notified by Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank[3] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

(B)    Subscriber represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with Subscriber, a Prohibited Person, and (ii) to the extent Subscriber has any beneficial owners[4] or is acting as agent or nominee in connection with this investment, (a) it has carried out thorough due diligence to establish the identities of such

[1]    The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

[2]    Senior foreign political figure means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure. The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws. A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

[3]    Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate. A post office box or electronic address would not be considered a physical presence. A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

[4]    Beneficial owners will include, but shall not be limited to: (i) shareholders of a corporation; (ii) partners of a partnership; (iii) members of a limited liability company; (iv) investors in a fund of funds; (v) the grantor of a revocable or grantor trust (vi) the beneficiaries of an irrevocable trust; (vii) the individual who established an IRA; (viii) the participant in a self-directed pension plan; (ix) the sponsor of any other pension plan; and (x) any person being represented by the Subscriber in an agent, representative, intermediary, nominee or similar capacity. If the beneficial owner is itself an entity, the information and representations set forth herein must also be given with respect to its individual beneficial owners. If Subscriber is a publicly-traded company, it need not conduct due diligence as to its beneficial owners.

beneficial owners, (b) based on such due diligence, Subscriber reasonably believes that no such beneficial owners are Prohibited Persons, (c) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of Subscriber's complete redemption from the Fund, and (d) it will make available such information and any additional information requested by the Fund that is required under applicable regulations.

(C) If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, freeze Subscriber's investment, either by prohibiting additional investments, declining or suspending any redemption requests and/or segregating the assets constituting the investment, or Subscriber's investment may immediately be redeemed by the Fund, and the Fund may also be required to report such action and to disclose Subscriber's identity to OFAC or other authority. In the event that the Fund is required to take any of the foregoing actions, Subscriber understands and agrees that it shall have no claim against the Fund, the Investment Manager, the Administrator, and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

(D) Subscriber understands and agrees that any redemption proceeds paid to it will be paid to the same account from which Subscriber's investment in the Fund was originally remitted, unless the Fund, in its sole discretion, agrees otherwise.

(E) If any of the foregoing representations cease to be true, Subscriber will promptly notify the Fund of the facts pertaining to such changed circumstances.

21. <u>Anti-Money Laundering.</u> Subscriber represents that the subscription funds are not the direct or indirect proceeds of drug trafficking or other such criminal conduct or activity. Subscriber understands that, as part of the responsibility of the Fund and Administrator for protection against money laundering, the Administrator may require a detailed verification of Subscriber's identity. Depending on the circumstances of each application, a detailed verification might not be required where Subscriber makes the payment from an account held in Subscriber's name at a recognized financial institution; or the application is made through a recognized intermediary. These exceptions will only apply if the financial institution or intermediary referred to above is within a country recognized as having sufficient anti-money laundering regulations. For example, an individual may be required to produce a copy of a passport or identification card duly certified by a notary public, together with evidence of his/her address such as a utility bill or bank statement and date of birth. In the case of entity subscribers, this may require production of a certified copy of the certificate of incorporation (and any change of name), memorandum and articles of association (or the equivalent), and the names, occupations, dates of birth and residential and business addresses of all directors. The Administrator and the Fund reserve the right to request such information as is necessary to verify the identity of Subscriber. In the event of delay or failure by Subscriber to produce any information required for verification purposes, the Administrator may refuse to accept the subscription and the subscription monies relating thereto or in the case where the Shares have already been issued, the Subscriber acknowledges and agrees that it will not be able to redeem any Shares so issued until proper identification information has been provided. Subscriber further agrees that the Fund and any other service provider shall be held harmless and indemnified against any loss arising as a result of a failure to process the subscription or redemption or Subscriber's rejection if such information as has been required by the parties referred to has not been provided by Subscriber.

22. <u>Confidentiality</u>. The Fund may disclose the information about Subscriber that is contained herein as the Fund deems necessary to comply with applicable law or as required in any suit, action, or proceeding.

23. <u>Indemnification</u>. Subscriber agrees to indemnify and hold harmless the Fund and any of its service providers, and any partner, manager, officer, director, shareholder, agent, employee or affiliate thereof, against any loss, liability or expense relating to (a) any misrepresentation or breach of covenant by Subscriber herein or in any other document furnished by Subscriber in connection with its subscription or (b) any action for securities law violations instituted by Subscriber which is finally resolved by judgment against Subscriber.

Subscriber acknowledges that each director and officer of the Fund is entitled to be indemnified out of the assets of the Fund against all costs, losses or expenses arising from mistakes of judgement or any action or inaction that the person reasonably believed to be within the scope of the authority granted to him, provided that such actions or inactions did not constitute gross negligence, willful misconduct or breach of fiduciary duty.

24. <u>Enforceability</u>. If any provision hereof is invalid or unenforceable under any applicable law, it shall be deemed inoperable to that extent (and modified to the extent necessary to comply with that law) and its invalidity or unenforceability shall not affect any other provision hereof.

25. <u>Currencies</u>. If Subscriber subscribes in a currency other than U.S. Dollars, Subscriber agrees that the Fund may sell such subscription funds at the market rate for that currency and that the Shares will be issued to the value of the proceeds, minus the reasonable costs relating to the sale.

26. <u>Appointment of Revocable Proxy</u>. Subscriber hereby designates and appoints the Administrator, with full power of substitution, as its true and lawful proxy and attorney-in-fact for the purpose of voting the Shares subscribed for herein or otherwise acquired as said proxy may determine on any and all matters which may arise at any meeting of shareholders and upon which such Shares could be voted by shareholders present in person at that meeting. This proxy may be revoked by the owner of record of the Shares hereby subscribed for, either personally or by presentation of a subsequently executed proxy at any meeting of Shareholders, or by written notice to the Administrator at the above address (or such other address as the Fund or the Administrator shall furnish in writing to a shareholder) received before the meeting.

27. <u>If Subscriber is acting as a Representative</u>. If Subscriber is subscribing as trustee, agent, representative, or nominee for another person (the "Beneficial Shareholder"), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect to itself and the Beneficial Shareholder. Subscriber has all requisite authority from the Beneficial Shareholder to execute and perform the obligations hereunder. Subscriber also agrees to indemnify the Fund, the Investment Manager and the Administrator and their respective directors, members, partners, officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines and amounts paid in settlement) in connection with any damages resulting from Subscriber's misrepresentation or misstatement contained herein, or the assertion of Subscriber's lack of proper authorization from the Beneficial Shareholder to enter into this Agreement or perform the obligations hereof.

If the Subscriber enters into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Fund (the "Swap") with a third party (a "Third Party"), the Subscriber represents and warrants that with respect to a Third Party entering into a Swap: (a) the Third Party is authorized under its constitutional documents (e.g., certificate of incorporation, by-laws,

partnership agreement or trust agreement) and applicable law to enter into the Swap and would also be so authorized to invest directly into the Fund; (b) the Third Party has received and reviewed a copy of the Memorandum and the Agreement; (c) the Third Party acknowledges that the Fund and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Subscriber is not an agent of the Fund; and (d) the Third Party is an "eligible swap participant" and a "qualified eligible person" under Commodity Futures Trading Commission rules, and an "accredited investor" under Regulation D promulgated under the 1933 Act and a "qualified purchaser" under the Investment Company Act of 1940. Subscriber also agrees to indemnify the Fund, the Investment Manager and their respective officers and agents for any and all costs, fees and expenses (including legal fees and disbursements, fines, and amounts paid in settlement) in connection with any damages resulting from the Subscriber's misrepresentation or misstatement contained herein. Nothing herein constitutes an agreement or statement by the Fund as to the legality of a Swap or the suitability of a Swap for the Third Party.

28.    _Country-Specific Disclosures_.  Subscriber has reviewed the country-specific disclosures in the Memorandum.

29.    _Additional Information_.  The Fund may request from the Subscriber such additional information as it may deem necessary to evaluate the eligibility of the Subscriber to acquire Shares, and may request from time to time such information as it may deem necessary to determine the eligibility of the Subscriber to hold Shares or to enable the Fund to determine its compliance with applicable regulatory requirements or its tax status, and the Subscriber agrees to provide such information as may reasonably be requested.

Subscriber agrees to notify the Fund promptly if there is any change with respect to any of the information or representations made herein and to provide the Fund with such further information as the Fund may reasonably require.

This Agreement may be executed through the use of separate signature pages or in any number of counterparts. Each counterpart shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

30.    _Subscriber Information and Execution_.

   a.    _Amount of Subscription_. U.S. $_____.

   b.    _Registration of Shares_.  The Shares issued to Subscriber are to be registered in the Fund's books in the name of (insert name and address):

_____

_____

_____

c.  **Written Communications.** All written communications from the Fund to Subscriber should be sent to Subscriber at the following address (insert address):

_____

_____

d.  **Telephone, Fax and Email.** Telephone: _____

Fax: _____  Email: _____

e.  **Domicile, Etc.** Subscriber, if an individual, is a citizen of _____

_____ and a resident of _____. Subscriber, if an entity, is

organized under the laws of _____ and has its principal place of business in

_____.

f.  **Authorized Persons (for Subscribers that are not corporate entities).** The names of the persons authorized by Subscriber to give and receive instructions between the Fund and Subscriber, together with their signatures, are set forth below. Such persons are the only persons so authorized by Subscriber until further notice to the Fund by any one of such persons:

| Print Name | Signature |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| 9. | |
| 10. | |

The Administrator and the Fund are each hereby authorized and instructed to accept and execute any instructions in respect of the Shares to which this Agreement relates given by Subscriber in written form or by facsimile. If instructions are given by Subscriber by facsimile, Subscriber undertakes to send the original letter of instructions to the Administrator and the Fund, and Subscriber agrees to keep each of them indemnified against any loss of any nature whatsoever arising as to any of them as a result of any of them acting upon facsimile instructions. The Administrator and the Fund may rely conclusively upon and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

For corporate entities, please provide an authorized signatory list which must include the name(s) and specimen signature(s) of the person(s) who are authorized by Subscriber to give and receive instructions between the Fund and Subscriber.

g.　Redemption Payments.  Until further notice from Subscriber to the Fund, signed by any authorized person listed above, redemption or other payments by the Fund to Subscriber should be wired only to Subscriber and only as follows (please print or type):

Bank name: _____

Bank address: _____

ABA/ CHIPS/ BIC Codes: _____

Account name: _____

Account number: _____

For further credit: _____

h.　Financial Institution Wiring/Paying Subscription Monies.

Name: _____

Address: _____

Name of account at financial institution being debited for subscription payment: _____

Number of such account: _____

i.　Execution.  In witness whereof, Subscriber has executed this Agreement on the date set forth below:

Date: _____, 200_

For individuals

Print name: MR. RAJENDRA. M. PATEL

Signature: _____

For entities

Print name: _____

Print name of authorized signatory: _____

Print title of authorized signatory: _____

Signature: _____

11

## SCHEDULE A

PLEASE GIVE THIS LETTER TO YOUR FINANCIAL INSTITUTION AND HAVE THEM RETURN IT TO THE ADMINISTRATOR AT THE SAME TIME THAT THE SUBSCRIPTION MONIES ARE WIRED.

## SAMPLE LETTER

[to be placed on letterhead of the financial institution remitting payment]

Date

**Via mail and facsimile:** (31-20) 572-2610
Fairfield Sentry Limited
Citco Fund Services (Europe) B.V.
Telestone 8 - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands

Dear Sirs

<u>RE:</u>     <u>**FAIRFIELD SENTRY LIMITED (the "Fund")**</u>

1.   Name of Remitting Financial Institution:
2.   Address of Remitting Financial Institution:
3.   Name of Customer:
4.   Address of Customer:
5.   We have credited your account at [Bank], Account Number [number] for [amount] by order of [subscriber] on [date].

The above information is given in strictest confidence for your own use only and without any guarantee, responsibility or liability on the part of this institution or its officials.

Yours faithfully,

Signed: _____

Full Name: _____

Position: _____

**For additional information, please contact the Administrator at Citco Fund Services (Europe) B.V., Telestone 8 – Teleport, Naritaweg 165, 1043 BW Amsterdam, The Netherlands, Telephone: (31-20) 572-2100, Facsimile: (31-20) 572-2610.**

A-1