BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re Fairfield Greenwich Group
Securities Litigation                                        MDL No. 2088

**MEMORANDUM IN SUPPORT OF
STANDARD CHARTERED BANK INTERNATIONAL
(AMERICAS) LTD.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1407**

Sharon L. Nelles
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
nelless@sullcrom.com

*Attorneys for Defendant
Standard Chartered Bank
International (Americas) Ltd.
and Standard Chartered PLC*

March 14, 2011

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................3

      A.  The Fairfield MDL.............................................................................................................3

      B.  The Standard Chartered Cases ..........................................................................................5

      C.  *Barbachano Herrero* and *Pablo Barbachano*..................................................................8

I.     *BARBACHANO HERRERO*  SHARES COMMON QUESTIONS
OF FACT WITH THE OTHER FAIRFIELD MDL CASES AND
SHOULD THEREFORE BE CENTRALIZED IN NEW YORK ....................................10

II.    CENTRALIZATION IN NEW YORK WILL PROMOTE THE
JUST AND EFFICIENT CONDUCT OF THIS ACTION ..............................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Advanced Inv. Mgmt., L.P., Pension Fund Mgmt. Litig.*,
   254 F. Supp. 2d 1377 (J.P.M.L. 2003)..............................................................................13, 14

*In re Bayou Hedge Funds Inv. Litig.*,
   429 F. Supp. 2d 1374 (J.P.M.L. 2006)......................................................................................11

*In re Capital Underwriters, Inc. Sec. Litig.*,
   464 F. Supp. 955 (J.P.M.L. 1979).......................................................................................11, 12

*In re Deep Vein Thrombosis Litig.*,
   323 F. Supp. 2d 1378 (J.P.M.L. 2004)......................................................................................14

*In re Investors Funding Corp. of N.Y. Sec. Litig.*,
   437 F. Supp. 1199 (J.P.M.L. 1977)...........................................................................................12

*In re Multidistrict Private Civ. Treble Damage Litig. Involving Plumbing Fixtures*,
   311 F. Supp. 349 (J.P.M.L. 1970).............................................................................................13

*In re Tremont Group Holdings, Inc., Sec. Litig.*,
   560 F. Supp. 2d 1388 (J.P.M.L. 2008)......................................................................................11

**STATUTE**

28 U.S.C. § 1407 (2006) ................................................................................................... *passim*

Standard Chartered Bank International (Americas) Ltd. ("SCBI") and Standard Chartered PLC ("SC PLC") (collectively "Standard Chartered" or the "Bank") submit this Memorandum of Law in support of their Motion to Transfer to the Southern District of New York Pursuant to 28 U.S.C. § 1407 and Rules 6.1 and 7.1(b)(i) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation (the "Panel").

## PRELIMINARY STATEMENT

On January 25, 2011, Standard Chartered filed a Notice of Potential "Tag-Along" Action for the case at issue here, *Joaquina Teresa Barbachano Herrero* v. *SCBI, et al.*, No. 10-cv-24387 (S.D. Fla.) ("*Barbachano Herrero*").[1]  (Docket ("Dkt.") # 116.)  In the Notice, Standard Chartered briefly explained that *Barbachano Herrero* should be transferred to the Southern District of New York for centralized proceedings with *In re Fairfield Greenwich Group Securities Litigation*, MDL No. 2008 (the "Fairfield MDL").  (*Id.*)  On March 1, 2011, the Clerk of the Panel (the "Clerk") issued a notice reflecting its determination that *Barbachano Herrero* is not appropriate for inclusion in the Fairfield MDL.  (Dkt. # 121.)  *Barbachano Herrero*, however, falls squarely within this Panel's prior Transfer Orders and should be centralized with the Fairfield MDL.

*Barbachano Herrero* is one of twenty-five federal court lawsuits that have been filed against Standard Chartered or its affiliates relating to the fraud perpetrated by Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities ("BLMIS").  Each of the twenty-five lawsuits arises out of alleged investments that private banking clients of Standard Chartered made in Fairfield Sentry Ltd. ("Fairfield Sentry") and/or Fairfield Sigma Ltd.

---

[1]   A copy of the complaint is attached as Exhibit A to the Declaration of Yavar Bathaee ("Bathaee Decl.") submitted in support of this motion, and a copy of the Southern District of Florida docket for the case is attached as Exhibit B to the Bathaee Declaration.

("Fairfield Sigma"; collectively, the "Fairfield Funds"), which were "feeder funds" that invested substantially all of their assets with BLMIS.  Twenty-three of these lawsuits are part of the Fairfield MDL and pending before Judge Marrero in the Southern District of New York.[2]  Of the twenty-three Standard Chartered cases pending in the Fairfield MDL, twenty-two of them were transferred by this Panel for centralization pursuant to Section 1407 based on common questions of fact relating to whether Standard Chartered "failed to do adequate due diligence of Fairfield and/or Madoff/B[L]MIS prior to recommending the Fairfield funds as investment vehicles."[3] (Feb. 3, 2010 Transfer Order, Dkt. #73; *see also* Aug. 17, 2010 Transfer Order, Dkt. #87.)

*Barbachano Herrero* falls squarely within this Panel's prior holdings and should be centralized with the Fairfield MDL.  Plaintiff, Joaquina Teresa Barbachano Herrero, asserts state law claims for securities fraud, breach of fiduciary duty, negligence and gross negligence, arising from her investments in Fairfield Sentry.  In particular, *Barbachano Herrero* involves claims based on the same allegation that is found in the Standard Chartered cases in the Fairfield MDL:  that Standard Chartered allegedly "failed to conduct adequate due diligence in connection with their recommendation that Barbachano purchase Fairfield securities [Fairfield Sentry]." (Compl. ¶ 30; *see also id.* ¶¶ 37, 47.)

Excluding *Barbachano Herrero*, of the twenty-three federal court Madoff-related lawsuits pending against Standard Chartered that have been tagged for transfer to the Southern

---

[2]   The anchor case of the Fairfield MDL is *Anwar* v. *Fairfield Greenwich Ltd.*, No. 09-cv-118 (S.D.N.Y.) (*Anwar*), a consolidated putative class action against, among others, entities and individuals associated with the marketing name Fairfield Greenwich Group ("Fairfield"), the investment firm responsible for launching the Fairfield Funds.  Standard Chartered is not a named defendant in the *Anwar* class action.

[3]   The twenty-third case pending before Judge Marrero in the Southern District of New York, *Caso* v. *Standard Chartered Bank Int'l (Americas) Ltd., et al.*, No. 10-cv-9196 (S.D.N.Y.), was filed in the Southern District of New York and consolidated into *Anwar*.

District of New York, the Clerk previously had only declined to issue a Conditional Transfer Order ("CTO") in a single action, *Pablo Barbachano* v. *Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-cv-22961 (S.D. Fla.) ("*Pablo Barbachano*"), which involved allegations of unauthorized trading in the private banking account that plaintiff maintained at SCBI.[4]  (Dkt. #93.)  This action, however, is, unrelated to *Pablo Barbachano*.  Although the plaintiffs in both cases bear similar names, the cases involve different parties asserting different claims relating to different investments.  The investments at issue in this case are unquestionably investments in Fairfield Sentry, and the claims at issue unquestionably relate to Standard Chartered's alleged failure to conduct adequate due diligence on the Fairfield Funds.  This action should be transferred to the MDL under 28 U.S.C. § 1407 in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings and conserve the resources of the parties, their counsel and the courts.

## BACKGROUND

### A.     The Fairfield MDL

The Fairfield Funds were the largest among several "feeder funds" that placed their clients' investments with BLMIS.  Following the revelation that BLMIS was operated as a Ponzi scheme, investors in the Fairfield Funds filed lawsuits in New York state and federal courts against Fairfield and other entities and individuals directly involved in the operation and administration of the Fairfield Funds, such as the funds' auditors and administrators.  (*Anwar*, Second Consolidated Amended Complaint ("SCAC") ¶¶ 156, 165, Bathaee Decl. Ex. O.)  Nearly

---

[4]     Standard Chartered filed the Notice of Potential "Tag-Along" Action for *Pablo Barbachano* pursuant to its obligations under the Panel's Rule of Procedure 7.1(a) because the complaint alleges an unauthorized purchase of shares of Fairfield Sentry.  .

all of these cases were assigned to Judge Marrero in the Southern District of New York, who consolidated them under the *Anwar* consolidated class action.

Investors in the Fairfield Funds also have initiated actions against financial institutions, including Standard Chartered entities, through which they invested in the Fairfield Funds. On October 6, 2009, this Panel created the Fairfield MDL when it transferred one such action, *Headway Investment Corp.* v. *American Express Bank Ltd., et al.* ("*Headway*"), from the Southern District of Florida to the Southern District of New York for centralized proceedings with *Anwar*. The Panel held that the claims in *Headway* against Standard Chartered arising from investments in the Fairfield Funds would involve "common questions of fact" with the *Anwar* actions—even to the extent *Anwar* involved defendants other than Standard Chartered—because common factual questions exist "relating to whether defendants performed adequate due diligence before investing Fairfield Funds with Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC." (*Headway* Transfer Order, Docket #49, at 2.)

Since the *Headway* Transfer Order, this Panel has applied the same reasoning to transfer twenty-three additional cases for centralization with the Fairfield MDL, twenty-two of which assert claims against Standard Chartered defendants. (Feb. 3, 2010 Transfer Order, Dkt. # 73; Apr. 1, 2010 Transfer Order, Dkt. # 77; Aug. 17, 2010 Transfer Order, Dkt. # 87; Nov. 2, 2010 Transfer Order, Dkt. #94; Feb. 7, 2011 Transfer Order, Dkt. # 119; Feb. 9, 2011 Transfer Order, Dkt. #120.) All but one of the transferred cases are based on an alleged failure to conduct adequate due diligence before recommending investments in the Fairfield Funds. (*Id*.) As the Panel has described on multiple occasions, cases against Standard Chartered defendants asserting claims based on an alleged failure to conduct adequate due diligence are appropriate for centralization because they involve common questions of fact relating to whether Standard

Chartered "failed to do adequate due diligence of Fairfield and/or Madoff/B[L]MIS prior to recommending the Fairfield funds as investment vehicles." (Feb. 3, 2010 Transfer Order, Dkt. #73; *see also* Aug. 17, 2010 Transfer Order, Dkt. #87.)[5]

The Panel also has centralized an action asserting claims arising from investments in Fairfield Sentry but not involving any allegations relating to due diligence. In *Pujals* v. *Standard Chartered Bank Int'l (Americas) Ltd.*, 09-cv-21611 (S.D. Fla.) ("*Pujals*"), the plaintiffs asserted breach of contract and unjust enrichment claims arising from investments they made in Fairfield Sentry through Standard Chartered. After the Clerk issued a CTO on December 16, 2009, the plaintiffs filed a motion to vacate the CTO, arguing that their claims "ha[ve] nothing to do with an alleged failure to perform due diligence [of Sentry and BLMIS]." (Jan. 14, 2010 Br. in Supp. of Mot. To Vacate Conditional Transfer Order, at 10, Dkt. # 72.) Nevertheless, the Panel concluded that "the Southern District of New York was a proper Section 1407 forum for actions arising out of investments in Fairfield Greenwich Group funds which invested with Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC." (Apr. 1, 2010 Transfer Order, Dkt. # 77.)

### B.   The Standard Chartered Cases

As noted above, the Fairfield MDL currently includes twenty-three cases against Standard Chartered entities arising from investments in the Fairfield Funds. Each of these cases

---

[5]   This reasoning is not unique to Standard Chartered. For example, on February 7, 2011, the Panel issued a Transfer Order in a case involving another financial institution through which investors had purchased shares of Fairfield Sentry, EFG Capital International Corp. (Feb. 7, 2011 Transfer Order, Dkt. # 119 (transferring *Lorrene Da Silva Ferreira, et al.* v. *EFG Capital International Corp.*, No. 10-cv-20206 (S.D. Fla.) to the Southern District of New York).) The Panel emphasized that centralization under Section 1407 was appropriate because the case involved question of fact relating to due diligence that were common to the other cases in the Fairfield MDL.

seek to recover Madoff-related losses from Standard Chartered, and most of the claims are based on the same general allegations of wrongdoing, namely, that the Standard Chartered defendants: (i) recommended unsuitable or risky investments in the Fairfield Funds; (ii) failed to conduct adequate due diligence on the Fairfield Funds; and (iii) made misrepresentations or omissions concerning one or more of the Fairfield Funds, BLMIS or the extent of the due diligence that the Standard Chartered defendants had conducted.  Examples of some of the common allegations against Standard Chartered defendants are set forth in the table below:

| Case | Madoff-Related Claims Concerning Fairfield and BLMIS in Standard Chartered Cases |
|---|---|
| *Headway* (transferred to New York to create the Fairfield MDL and consolidated into *Anwar*) | "[Standard Chartered International (USA) Ltd.] failed to act on their duties in that they failed to discover, or simply disregarded, the countless red flags surrounding Madoff, [BLMIS], and any of [BLMIS]'s feeder funds, including the [Fairfield] Funds . . . . Given their superior knowledge, judgment, skill, and years of experience, had [Standard Chartered International (USA) Ltd.] undertaken the appropriate due diligence, Headway's investment assets never should have been placed, or allowed to remain in, the [Fairfield] Funds."  (*Headway* Compl. ¶¶ 78-79, Bathaee Decl. Ex. C.) |
| *Maridom* (consolidated into *Anwar*) | "On information and belief, [SCBI]'s conduct was so severely reckless as to be akin to fraud, in that it never performed any due diligence, and, even if it did perform some due diligence, its effort was grossly inadequate."  (Am. Compl. ¶ 53, *Maridom Ltd*. v. *Standard Chartered Bank Int'l (Americas) Ltd.*, 09-cv-22868 (S.D. Fla. Oct. 13, 2009), Bathaee Decl. Ex. D.) |
| *Lopez* (consolidated into *Anwar*) | "Plaintiff LOPEZ's losses resulted from the breach of fiduciary duty, gross negligence and unjust enrichment of the STANDARD CHARTERED Defendants by failing to exercise proper due diligence in the investment of Plaintiff's funds in the Fairfield Funds."  (Am. Compl. ¶ 5, *Lopez* v. *Standard Chartered Bank Int'l (Americas) Ltd.*, 09-cv-22451 (S.D. Fla. Oct. 12, 2009), Bathaee Decl. Ex. E.) |

| Case | Madoff-Related Claims Concerning Fairfield and BLMIS in Standard Chartered Cases |
|---|---|
| *Valladolid* (consolidated into *Anwar*) | "The Standard Chartered PLC defendants failed to conduct adequate and normal due diligence.  Their conduct fell below their legal duty to perform due diligence.  Had they done so, they would have discovered facts showing that Fairfield Sentry and Madoff related securities were not appropriate businesses to entrust Plaintiff's funds.  Had Standard Chartered conducted adequate due diligence in fulfillment of its legal duty, its agents, officers, and employees would have and should have discovered several red flags suggesting Madoff was not and could not be achieving the rates of returns represented for the Fairfield Sentry Fund."  (Second Am. Compl. ¶ 25, *Valladolid* v. *Am. Express Bank Ltd.,* 09-cv-06937 (C.D. Cal. Feb. 4, 2011), Bathaee Decl. Ex. F.) |
| *Pujals* (consolidated into *Anwar*) | "The crux of this case is that the Fairfield Fees charged by Defendants and paid by Plaintiff and the Class members were based upon the fraudulent asset value boasted by the Sentry Fund before the Madoff fraud was uncovered and before it became known that the Sentry Fund was in fact virtually worthless."  (Am. Class Action Compl. ¶ 7, *Pujals* v. *Standard Chartered Bank Int'l (Americas) Ltd.*, 09-cv-21611 (S.D. Fla. Aug. 13, 2009), Bathaee Decl. Ex. G.) |
| *Almiron* (consolidated into *Anwar*) | "This action arises out of the Defendants' negligence, fraud and unjust enrichment as it relates to the massive Ponzi scheme perpetrated by Bernard L. Madoff ('Madoff') and his New York brokerage firm Bernard L. Madoff Investment Securities LLC ('BLMIS').  Despite making assurances to their investors, the Defendants did little, if any, due diligence of the fraudulent investments, ignored many red flags, and failed to meet their fiduciary duty to their investors."  (Compl. ¶ 1, *Almiron* v. *Standard Chartered Bank Int'l (Americas) Ltd*, 10-cv-20763 (S.D. Fla. Feb. 19, 2010), Bathaee Decl. Ex. H.) |
| *Carrillo* (consolidated into *Anwar*) | "This action arises out of the Defendants' negligence, fraud and unjust enrichment as it relates to the massive Ponzi scheme perpetrated by Bernard L. Madoff ('Madoff') and his New York brokerage firm Bernard L. Madoff Investment Securities LLC ('BLMIS').  Despite making assurances to their investors, the Defendants did little, if any, due diligence of the fraudulent investments, ignored many red flags, and failed to meet their fiduciary duty to their investors."  (Compl. ¶ 1, *Carrillo* v. *Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-cv-20762 (S.D. Fla. Feb. 19, 2010), Bathaee Decl. Ex. I.) |

| Case | Madoff-Related Claims Concerning Fairfield and BLMIS in Standard Chartered Cases |
|---|---|
| *Auburn Overseas* (consolidated into *Anwar*) | "[T]he STANDARD CHARTERED Defendants assured Plaintiff that they had conducted extensive due diligence on the Fairfield Sentry Fund, recommending the investment and Plaintiff relied on such assurances, reputation, and due diligence commitment promised by the STANDARD CHARTERED Defendants in making its investment."  (Compl. ¶ 6, *Auburn Overseas Corp.* v. *Standard Chartered Bank Int'l (Americas) Ltd.*, 10-CV-24405 (S.D. Fla. Dec. 10, 2010), Bathaee Decl. Ex. J.) |
| *Triple R Holdings* and *Interland Investments* (consolidated into *Anwar*) | "[T]he STANDARD CHARTERED Defendants and their affiliates did no 'due diligence' on the Fairfield Sentry Fund.  If, in fact, any due diligence was performed, the STANDARD CHARTERED Defendants would have learned that the Fairfield Sentry Fund was not, as represented to Plaintiffs by the STANDARD CHARTERED Defendants, a 'risk reducer.'" (Compl. ¶ 9, *Triple R Holdings LTD.* v. *Standard Chartered Bank Int'l (Americas) Ltd.*, 10-CV-24393 (S.D. Fla. Dec. 10, 2010), Bathaee Decl. Ex. K; Compl. ¶ 9, *Interland Investments Ltd.* v. *Standard Chartered Bank Int'l (Americas) Ltd.*, 10-CV-24406 (S.D. Fla. Dec. 10, 2010), Bathaee Decl. Ex. L.) |
| *Gerico* (consolidated into *Anwar*) | "Defendants misrepresented their due diligence regarding the Fairfield Funds, and further misrepresented the suitability of, and level of risk associated with, the Fairfield Funds in both of the Plaintiff's respective portfolios."  (Comp. ¶ 23, *Gerico, Inc.* v. *Standard Chartered Bank Int'l (Americas) Ltd.*, 10-CV-24414 (S.D. Fla. Dec. 10, 2010), Bathaee Decl. Ex. M.) |

C.   ***Barbachano Herrero*** **and** ***Pablo Barbachano***

On July 26, 2010, Pablo Barbachano initiated the *Pablo Barbachano* action against SCBI in Florida state court.  His principal allegation was that SCBI conducted unauthorized trading in the private banking account that he maintained at SCBI.  (*Pablo Barbachano* Compl. ¶¶ 26-28, Bathaee Decl. Ex. N.)  After the action was removed to federal court on August 19, 2010, SCBI, pursuant to Rule 7.1(a) of the Panel's Rules of Procedure, filed a Notice of Potential "Tag-Along" Action because an investment in Fairfield Sentry was at issue in the case.  (Notice of "Tag-Along," Dkt. #88; *Pablo Barbachano* Compl. ¶ 26.)  On October

-8-

25, 2010, the Clerk of the JPML determined that *Pablo Barbachano* was not appropriate for inclusion in the Fairfield MDL.  SCBI did not separately move the Panel for relief and the parties have proceeded to litigate non-Fairfield issues in the Southern District of Florida.

Separately, on December 9, 2010, Joaquina Teresa Barbachano Herrero initiated the instant action, *Barbachano Herrero*, in the Southern District of Florida.  Her complaint alleges a violation of state securities laws, breach of fiduciary duty, negligence and gross negligence and seeks to recover losses allegedly sustained directly as a result of investments in Fairfield Sentry, (Compl. ¶¶ 1, 15).  Specifically, plaintiff alleges that the Bank "failed to conduct adequate due diligence in connection with [its] recommendation that Barbachano purchase Fairfield securities, while fraudulently and/or negligently representing to Barbachano that [the Bank] had reviewed in detail all the investments recommended to her."  (Compl. ¶ 30; *see also* Compl. ¶¶ 39, 47, 54.)  The complaint also alleges that the Bank misrepresented the level of risk that plaintiff's investment in Sentry entailed (Compl. ¶ 13, 16, 17), and that the Bank's alleged recommendation to purchase Sentry shares was unsuitable for Plaintiff's "investment objectives and risk allocation," (Compl. ¶ 29).

On January 25, 2011, Standard Chartered filed a Notice of Potential "Tag-Along" Action, identifying the case as related to the cases already centralized with the MDL.  (Notice of "Tag-Along," Dkt. #116.)  On March 1, 2011, pursuant to JPML Rule 7.1(b)(i), the Clerk determined that *Barbachano Herrero* was not appropriate for inclusion in the MDL. (Dkt. #121.)  As set forth below, however, *Barbachano Herrero* falls squarely within the ambit of the Panel's previous transfer orders and should be centralized with the Fairfield MDL pursuant to 28 U.S.C. § 1407.

**ARGUMENT**

Centralization is appropriate where multiple actions involve at least "one or more common questions of fact" and centralization "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). As the Panel already held, claims "arising out of investments in Fairfield Greenwich Group funds which invested with Bernard L. Madoff and [BLMIS]," and in particular claims relating to the adequacy of SCBI's due diligence of the Fairfield Funds, share sufficient overlap with the Fairfield MDL to warrant centralization. *First*, it will be more efficient for one court to oversee motion practice with regard to the numerous pleadings in which various Standard Chartered entities are named as defendants. *Second*, to the extent that plaintiffs' claims survive dismissal, they will engender extensive discovery concerning Fairfield and BLMIS that will overlap with discovery in the Fairfield MDL, which is currently underway. Just like every other case that has been centralized with the Fairfield MDL, this case seeks to recover money lost through investments in the Fairfield Funds or BLMIS. In fact, the core allegation in plaintiff's complaint—that Standard Chartered failed to conduct adequate due diligence on Fairfield Sentry—is identical to the core allegation in twenty-one of the Fairfield MDL cases. Thus, if the case is not centralized and the case is not ultimately dismissed on motion, duplicative discovery and inconsistent pretrial rulings will be unavoidable.

**I.    *BARBACHANO HERRERO*  SHARES COMMON QUESTIONS OF FACT WITH THE OTHER FAIRFIELD MDL CASES AND SHOULD THEREFORE BE CENTRALIZED IN NEW YORK**

This Panel has found on several occasions that claims against Standard Chartered for losses sustained from investments in Fairfield, and in turn BLMIS, should be transferred to

the Fairfield MDL.  (*See*, *e.g.*, *Valladolid* Transfer Order, Docket #73; *Pujals* Transfer Order, Docket #77; *Almiron* and *Carrillo* Transfer Order, Docket #87.)  This action is no different.

*First*, *Barbachano Herrero* shares the same factual backdrop as the cases previously consolidated in the Fairfield MDL—Bernard Madoff's Ponzi scheme—nor can there be any dispute that, as in the previously consolidated cases, the claims in *Barbachano Herrero* relate to investments in Fairfield Sentry, a "feeder fund" to BLMIS that allegedly was part of "a massive Ponzi Scheme perpetrated by Bernard Madoff."  (Compl. ¶ 1; *accord Valladolid* Am. Compl. ¶ 23; *Headway* Compl. ¶¶ 38-39.)  This shared factual backdrop alone is sufficient to warrant centralization.  (*See* Apr. 1, 2010 Transfer Order, Dkt. # 77 (holding centralization appropriate for claims arising from investments in the Fairfield Funds).)  *See also In re Bayou Hedge Funds Inv. Litig.*, 429 F. Supp. 2d 1374, 1376 (J.P.M.L. 2006) (centralizing cases involving investors in the same Ponzi scheme); *In re Tremont Group Holdings, Inc., Sec. Litig.*, 626 F. Supp. 2d 1338, 1339-40 (J.P.M.L. 2009) (same); *In re Capital Underwriters, Inc. Sec. Litig.*, 464 F. Supp. 955, 959 (J.P.M.L. 1979) ("It is clear that questions relating to the alleged existence of this [Ponzi] scheme will be a focus of discovery and other pretrial proceedings in each of these actions.").

*Second*, this action contains exactly the kind of due-diligence-related allegations that are central to the claims in twenty-two separate cases against the Bank or its affiliates that are now part of the Fairfield MDL.  For example, Barbachano Herrero alleges:

- "Defendants failed to conduct adequate due diligence in connection with their recommendation that Barbachano purchase Fairfield securities, while fraudulently and/or negligently representing to Barbachano that they had reviewed in detail all the investments recommended to her."  (Compl. ¶ 30.)

- "Defendants breached the fiduciary duties that they owed to Barbachano by failing to conduct reasonable due diligence."  (Compl. ¶ 47.)

-11-

- "Defendants breached the duties that they owed Barbachano by negligently failing to conduct reasonable due diligence." (Compl. ¶ 39.)

- "Defendants . . . owed [Barbachano] duties of care to make suitable investment recommendations and decisions only after conducting reasonable due diligence." (Compl. ¶ 54.)

The allegations in many of the transferred actions are virtually identical. For example, plaintiffs in those cases allege:

- "Despite making assurances to their investors, the Defendants did little, if any, due diligence of the fraudulent investments, ignored many red flags, and failed to meet their fiduciary duty to their investors." (*Almiron* Compl. ¶ 1, Bathaee Decl. Ex. H.)

- "Defendants [failed] to exercise proper due diligence in the investment of Plaintiff's funds in the Fairfield Funds." (*Lopez* Am. Compl. ¶ 5, Bathaee Decl. Ex. E.)

As the Panel previously recognized, the issue of whether the various Standard Chartered entities that have been named as defendants in the Madoff-related cases conducted adequate due diligence of the Fairfield Funds and BLMIS "will likely focus on a significant number of common events, defendants, and/or witnesses." (Oct. 6, 2009 Transfer Order at 2, Dkt. #49.) Discovery in the MDL has already begun, and any overlapping discovery—such as the discovery likely to take place in this case—should be conducted in a coordinated fashion and overseen by a single court in order to "prevent duplicative discovery and avoid the possibility of conflicting pre-trail rulings." *In re Capital Underwriters, Inc. Sec. Litig.*, 464 F. Supp. at 959 (citing *In re Investors Funding Corp. of N.Y. Sec. Litig.*, 437 F. Supp. 1199, 1200-02 (J.P.M.L. 1977)).

*Third*, Barbachano Herrero cannot prove her allegations without reaching factual questions concerning Fairfield, a named defendant in the *Anwar* consolidated class action in the Fairfield MDL. For example, the extent of SCBI's due diligence of the Fairfield Funds and BLMIS directly implicates both Fairfield's due diligence of BLMIS and Fairfield's

representations regarding the soundness of BLMIS. SCBI's litigation defenses also will include, *inter alia*, that they reasonably relied on Fairfield. Any discovery taken in these related actions will involve Fairfield's communications and representations concerning BLMIS, which will necessarily implicate and overlap with the witnesses and documentary discovery of relevance in *Anwar*, which is already underway.

## II.    CENTRALIZATION IN NEW YORK WILL PROMOTE THE JUST AND EFFICIENT CONDUCT OF THIS ACTION.

Transferring *Barbachano Herrero* to the Southern District of New York would prevent subjecting both SCBI and Fairfield to the prospect of duplicative discovery and inconsistent pretrial obligations—precisely the risk that centralization under Section 1407 is designed to avoid, and a risk that Judge Marrero will no doubt be in the best position to mitigate. *In re Advanced Inv. Mgmt., L.P., Pension Fund Mgmt. Litig.*, 254 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.").

Centralization is particularly appropriate here because it will allow Judge Marrero to coordinate discovery and other pretrial proceedings in litigation concerning the largest and most complex Ponzi scheme in history. *See In re Multidistrict Private Civ. Treble Damage Litig. Involving Plumbing Fixtures*, 311 F. Supp. 349, 351 (J.P.M.L. 1970) ("[I]t seems clear that there are many complex questions of fact which will require substantial supplemental discovery and that the transfer of all related actions to a single court for purposes of such discovery and other pretrial proceedings will clearly promote the just and efficient conduct of these actions."). Centralization of all of these cases, including *Barbachano Herrero*, will have "the streamlining

effect of fostering a pretrial program that: 1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Advanced Inv. Mgmt., L.P.*, 254 F. Supp. 2d at 1379 (internal citations omitted).

Moreover, any potential objections by plaintiff that transfer would cause delay in the case are insufficient to preclude a transfer under Section 1407. The Panel routinely rejects arguments that centralization will cause delay, because a transferee court can, in its discretion, "employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks—to efficiently manage this litigation." *In re Deep Vein Thrombosis Litig.*, 323 F. Supp. 2d 1378, 1380 (J.P.M.L. 2004). In any event, should Judge Marrero ever find that plaintiff is being needlessly delayed, she may remand "any claims or actions appropriate . . . with a minimum of delay." *Purdue Pharma, L.P.*, 542 F. Supp. 2d at 1361.

**CONCLUSION**

For the reasons set forth above, SCBI respectfully requests that the Panel transfer *Barbachano Herrero* to the Southern District of New York for centralization with the Fairfield MDL.

Dated: March 14, 2011
      New York, New York

                                     /s/ Sharon L. Nelles
                                     Sharon L. Nelles
                                     SULLIVAN & CROMWELL LLP
                                     125 Broad Street
                                     New York, New York  10004
                                     Telephone:  (212) 558-4000
                                     Facsimile:  (212) 558-3588
                                     nelless@sullcrom.com

                                     *Attorneys for Defendant*
                                     *Standard Chartered Bank*
                                     *International (Americas) Ltd.*
                                     *and Standard Chartered Bank PLC*