UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANWAR, *et al.*,<br><br>                    Plaintiffs,<br><br>    v.<br><br>FAIRFIELD GREENWICH LIMITED, *et al*.,<br><br>                    Defendants.<br><br>This Document Relates To:  All Actions | Master File No. 09-cv-118 (VM) |

PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO THE PRICEWATERHOUSECOOPERS DEFENDANTS'
<u>MOTION FOR REARGUMENT</u>

 

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
(212) 759-4600

LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
(212) 608-1900

*Co-Lead Counsel for Plaintiffs*

The motion of Defendants PwC Netherlands and PwC Canada (collectively "PwC") for reargument pursuant to Local Civil Rule 6.3 is frivolous.  It is grossly out of time and utterly meritless in its attempt to resuscitate PwC's motions to dismiss Count 13 (negligence) and Count 14 (negligent misrepresentation) of the Second Consolidated Amended Complaint ("SCAC"), which the Court rejected nearly a year ago.  Neither the decisions in *CRT Investments Ltd. v. BDO Seidman,* 2011 WL 2225050 (1st Dep't June 9, 2011), nor *Sykes v. RFD Third Ave. Assoc. LLC*, 15 N.Y.3d 370 (2010), constitute intervening controlling authority that would justify reconsideration.

PwC's motion seeks reconsideration of the Court's *Anwar II* decision of August 18, 2010.  *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) ("*Anwar II*").  The Court has already rejected a timely-filed motion for reconsideration of that decision by the Citco defendants.  *See Anwar v. Fairfield Greenwich Ltd.*, 2010 WL 3834057 (S.D.N.Y. Sept. 13, 2010) ("*Anwar III*").  In reliance on the rulings in *Anwar II* and *Anwar III*, the parties have undertaken extensive litigation activity in this case.  Defendants have filed answers to the SCAC; the parties are actively engaged in extensive merits discovery (including discovery involving PwC); and Plaintiffs have filed a motion for class certification, also the subject of substantial discovery.  Nothing in PwC's motion even approaches the standards for the "extraordinary remedy" of reconsideration under Rule 6.3 – standards which the Court "must narrowly construe and strictly apply." *Anwar III*, 2010 WL 3834057, at *1.  PwC merely rehashes already-rejected arguments by inaccurately labeling as "new authority" decisions which are both not controlling and merely apply existing law to distinguishable facts.

**ARGUMENT**

**I.     The Motion for Reargument Is Untimely**

PwC's motion is brought pursuant to Local Rule 6.3.  Rule 6.3 requires service of reargument motions within 14 days after decision of the original motion.  PwC not only missed that deadline by over ten months, but it has not justified the delay.  Indeed, one of its two purported new and "controlling" cases, *Sykes*, dates from October 2010, some eight months ago.  *See, e.g., Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245 (2d Cir. 1992) (a "resubmitted" motion was in reality a motion for reargument barred as untimely under Local Rule 3(j) [now Local Rule 6.3]).

**II.    PwC Has Failed to Show Any Intervening Change in Controlling Law**

Rule 6.3 is narrowly construed and strictly applied to "ensure the finality of decisions" and "avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment."  *Anwar III*, 2010 WL 3834057, at *1. (citations omitted); *see Silverman v. Wachovia Bank, N.A.*, 2010 WL 5090990, at *3 (E.D.N.Y. Dec. 3, 2010) (citations omitted); *Glatzer v. Barone*, 614 F. Supp. 2d 450, 471 (S.D.N.Y. 2009) (Marrero, J.).

The standard for reconsideration is strict.  *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Reargument is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Anwar III*, 2010 WL 3834057, at *1 (quotation omitted).  Defendants have the burden of showing "an intervening change in controlling law, the availability of new evidence or

2

the need to correct a clear error or prevent manifest injustice." *Id.* (citing *Virgin Atl. Airways*, 956 F.2d at 1255).

Rather than meeting this high standard, PwC is essentially reprising the same arguments that were rejected when they were made in its original motions to dismiss. The two cases cited by PwC do not constitute "controlling" authority, nor did they change the law.

### A. *CRT* and *Sykes* Merely Applied Settled Law to the Facts before Them

*CRT* did not change the law in any way that justifies reconsideration of *Anwar II*. PwC's motion ignores the fact that the Appellate Division decision in *CRT* adds nothing of relevant substance to Justice Lowe's opinion in the Supreme Court, which PwC extensively discussed in its reply briefs on the motions to dismiss. *See* D.E. 454 at 6 (PwC Netherlands Reply Brief); D.E. 463 at 9 (PwC Canada Reply Brief). Thus, this Court was fully apprised of the state courts' reasoning in *CRT* when it decided *Anwar II*. *See City of New York v. Milhelm Attea & Bros., Inc.*, 591 F. Supp. 2d 234, 236-37 (E.D.N.Y. 2008) (denying reconsideration based on new Appellate Division decision where federal court had considered state trial court holding in the same case). Indeed, most of the First Department's brief discussion of linking conduct in *CRT* is borrowed verbatim from a passage in Justice Lowe's opinion (*see CRT,* 2011 WL 2225050, at *2), which PwC Canada included as a block quote in its reply brief (D.E. 463 at 9). Likewise, PwC Netherlands cited *CRT* for the proposition that auditors owed no duty of care where financial statements were "addressed to plaintiffs as investors" or where they knew "that investors would rely upon the information contained in financial statements" (D.E. 454 at 6).

3

The First Department made no new law in *CRT*. Its decision on negligent misrepresentation is a single conclusory sentence: "Where, as here, direct contact between the accountant and the plaintiff is minimal or non-existent, the plaintiff cannot recover for the accountant's alleged negligence." *CRT*, 2011 WL 2225050, at *2. Justice Lowe said the same thing (2010 WL 4340433, at *12), and that conclusion was borrowed from the well-known decision in *Security Pacific Business Credit v. Peat Marwick Main & Co.*, 79 N.Y.2d 695, 706 (1992). There is simply nothing new or different in the First Department's *CRT* decision that was not known at the time this Court decided *Anwar II*. Nor did the Court of Appeals break any new ground in *Sykes*. Rather, the court applied the established three-factor *Credit Alliance* test (as did this Court in *Anwar II*) to find that plaintiffs failed to satisfy the second branch of the test – that they were "known party or parties" to the defendant (a mechanical engineering firm). That defendant had no contact whatever with the plaintiffs and faced liability to an unlimited class of potential purchasers for alleged misrepresentations concerning the capabilities of the climate control systems for a condominium building.

By sharp contrast in the instant case, PwC specifically addressed the audit reports to the "directors and *shareholders*" of the Fairfield Sentry and Fairfield Sigma Funds and to the *partners* of Greenwich Sentry and Greenwich Sentry Partners "whom PwC knew would rely on the audit reports in acquiring and holding shares or partnership interests in the Funds" (SCAC ¶ 275). *See Anwar II*, 728 F. Supp. 2d at 456-57.

Moreover, the SCAC alleges that PwC's Audit Plan expressly recognized that PwC owed duties of care to the Fund investors. (*See* SCAC ¶¶ 276-77; D.E. 421-2, Audit Plan at 8) ("Our audit engagement is directed towards delivering our service at three

levels," which expressly included the "shareholders.")  The Audit Plan further admitted that PwC would be "delivering" to "shareholders and other stakeholders" in the Funds "independent opinions and reports that provide assurance on financial information released by the Funds."  (SCAC ¶ 277; D.E. 421-2, Audit Plan at 8).[1]

Because of these facts, neither of the supposedly "new" cases cited by PwC supports reconsideration.  Those cases simply applied the established *Credit Alliance* factors to the facts before them.

In *Sykes* the plaintiffs were merely potential purchasers at the time they allegedly relied on the defendant's misrepresentations regarding heating and cooling systems.[2] There were no allegations, for example, that the plaintiffs could not test or inspect the systems before the purchase or that they retained apartments based on misrepresentations in the offering plan.  *See Sykes*, 15 N.Y. 3d 370.  In contrast, plaintiffs here had no ability to verify the Funds' audited financial statements, and relied upon them when they invested and re-invested in the Funds.  *See Anwar II*, 728 F. Supp. 2d at 455 (quoting SCAC ¶ 279) (PwC "knew that there was no independent market mechanism or evidence to value the shares and limited partnership interests in the Funds, and that there was no

---

[1]  The claim by PwC Netherlands' counsel (in the conference call with the Court on June 28, 2011) that the SCAC was quoting a PwC Canada audit plan is not properly raised for two reasons:  (i) it is factual matter outside the complaint that is not usable in opposition to a motion to dismiss; and (ii) a party seeking reconsideration cannot interject new facts of which it was aware when the motion to dismiss was originally heard.  *See Silverman*, 2010 WL 5090990, at *3.

[2]  The PwC Defendants emphasize the gloss that the Court of Appeals in *Sykes* placed on *Westpac Banking Corp. v. Deschamps*, 66 N.Y.2d 16 (1985).  *Westpac*, of course, was known to this Court when the motion to dismiss was decided and was cited by PwC Netherlands in its opening brief (D.E. 317 at 21).  In contrast to *Westpac*, here PwC specifically addressed the financial statements to the shareholders and limited partners of the Funds and prepared audit plans which admitted that the audits would be directed to and used by the Funds' investors who would rely on the financial statements for investment purposes.  *See Anwar II*, 728 F. Supp. 2d at 455.

5

other independently-verified third party financial information about the Funds besides [the PwC Member Firms'] audited financial statements."). Further, PwC knew that the PwC imprimatur was essential to give the Funds legitimacy and, therefore to draw investors to the Funds. *Id.* at 456 (citing SCAC ¶ 227, 435).

The *CRT* decision likewise turns on the fact pattern alleged in that case, which is far different from the allegations in the SCAC here. Plainitff CRT had invested in Ascot Fund Ltd., a Cayman company that was audited by BDO Tortuga. BDO Tortuga was dismissed from the case for lack of personal jurisdiction. Ascot Fund Ltd. was a feeder fund to Ascot Partners L.P., a Delaware limited partnership. A different accounting firm, BDO Seidman, audited Ascot Partners L.P., to whose partners its audits were directed. There was thus no basis for concluding that BDO Seidman (the only remaining auditor defendant, and whose client was the domestic L.P.) understood or intended that the remote investors in the offshore Tortuga Fund would rely on its audit of a different fund in another jurisdiction.

In short, as the Court recognized in *Anwar II,* the SCAC here alleges facts that differ significantly from the *CRT* and *Sykes* complaints in satisfying the requirements of *Credit Alliance*. Even if those cases were "new" and "controlling" authority – which they are not – reconsideration should be denied because of the obvious factual distinctions.

### B. PwC Has Failed to Show Any Change in Controlling Law

The authority relied upon by this Court in the relevant sections of *Anwar II* remains the controlling law of this Circuit. This Court applied the Second Circuit's holding in *Dorking Genetic v. United States,* 76 F.3d 1261, 1271 (2d Cir. 1996), that the

6

New York Court of Appeals did not intend that *Credit Alliance* "linking conduct" test should be read "so narrowly" that it requires direct contact between an accounting firm and persons relying on financial statements. Based on that principle, this Court correctly found "Plaintiffs' factual allegations sufficient to show linking conduct evincing the PwC Member Firms' understanding of the investors' reliance." *Anwar II*, 728 F. Supp. 2d at 456.

On the other hand, "[i]n the absence of a ruling by the [New York] Court of Appeals, a federal district court is not bound by the opinions issued by New York State's lower courts." *Williams v. J.P. Morgan & Co., Inc.*, 199 F. Supp. 2d 189, 191 (S.D.N.Y. 2002) (Marrero, J). Rather, this Court must use its best judgment to determine how the highest State court would rule if the case were before it. *The Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). In the context of a motion for reargument, an intervening decision by a State intermediate court does not constitute controlling authority that would justify re-opening a prior decision. *JP Morgan Chase Bank v. Cook*, 322 F. Supp. 2d 353, 355 (S.D.N.Y. 2004) ("[C]ases from another judge of this Court or from the Third Department of New York's Appellate Division do not constitute 'controlling authority' for this Court, and, under the standard of review applicable to motions for reconsideration, that fact should end the matter."). Accordingly, even if the First Department's decision in *CRT* represented an intervening change in the law – which it was not – the change is not "controlling authority."

Here, *Dorking Genetic* holds that "the [New York] Court of Appeals [did not] intend the term 'linking conduct' to be read so narrowly" as to require direct contact between auditors and investors. *Dorking*, 76 F.3d at 1270. The Second Circuit

7

recognized that under *Credit Alliance*, "direct dealings" are but one of several factors that might establish a relationship sufficiently close to privity. *Id.* At bottom, "it is enough if the complaint shows 'reliance by the plaintiff that was the end and aim of the transaction'." *Dorking*, 76 F.3d at 1271 (quoting *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417 (1989) and *Glanzer*, 233 N.Y. at 238-29). Nothing in *Sykes* or *CRT* compels any change in *Anwar II's* carefully-reasoned decision upholding Counts 13 and 14 based on the allegations in the SCAC and the authority of *Dorking Genetic*.

## CONCLUSION

Plaintiffs respectfully request that the Court deny the PwC Defendants' motion for reargument.

Dated:  New York, New York
        July 5, 2011

                                        Respectfully submitted,

                                By:     /s/ David A. Barrett

                                        David Boies
                                        BOIES, SCHILLER & FLEXNER LLP
                                        333 Main Street
                                        Armonk, NY 10504
                                        Telephone: (914) 749-8200
                                        Facsimile: (914) 749-8300

                                        David A. Barrett
                                        Howard L. Vickery, II
                                        BOIES, SCHILLER & FLEXNER LLP
                                        575 Lexington Avenue
                                        New York, NY 10022
                                        Telephone: (212) 446-2300
                                        Facsimile: (212) 446-2350

                                        Stuart H. Singer

8

Carlos Sires
Sashi Bach Boruchow
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, #1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Robert C. Finkel
James A. Harrod
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Telephone: 212.759.4600
Facsimile:  212.486.2093

Christopher Lovell
Victor E. Stewart
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: 212.608.1900

*Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANWAR, *et al.*,<br><br>                              Plaintiffs,<br>       v.<br>FAIRFIELD GREENWICH LIMITED, *et al*.,<br><br>                              Defendants.<br>This Document Relates To:  All Actions | Master File No. 09-cv-118 (VM)<br><br>**CERTIFICATE OF SERVICE** |

      I hereby certify that on July 5, 2011, Plaintiffs' Memorandum in Opposition to the PricewaterhouseCoopers Defendants' Motion for Reargument was served by ECF on all parties registered with the Court's ECF system, under docket number 09-CV-118 (VM).


                                                   /s/ David A. Barrett_____
                                                  David A. Barrett