## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PASHA S. ANWAR, *et al.*,

                    Plaintiffs,

        v.

FAIRFIELD GREENWICH LIMITED, *et al.*,

                  Defendants.

This Document Relates To:  *Maridom, et al.*
v. *Standard Chartered Bank International
(Americas) Limited*, No. 10-CV-920.

Master File No. 09-CV-118 (VM) (THK)

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
## THE MOTION OF MARIDOM LTD., CARIBETRANS, S.A. AND ABBOT
## <u>CAPITAL INC. FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT</u>

Sharon L. Nelles
Bradley P. Smith
Patrick B. Berarducci
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
nelless@sullcrom.com

Diane L. McGimsey
(Admitted *Pro Hac Vice*)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California  90067

*Attorneys for Defendant
Standard Chartered Bank
International (Americas) Ltd.*

March 1, 2012

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ........................................................................................................................2

      A.     In *Anwar I*, the Court Dismissed Claims Asserted in *Maridom* Plaintiffs' Amended Complaint and Set a Firm Deadline To Amend ........................................................................3

      B.     In *Anwar II*, the Court Rejected Additional Fraud-Based Claims, Negligence, and FSIPA Claims ....................................5

      C.     In Their Proposed Second Amended Complaint, *Maridom* Plaintiffs Belatedly Seek To Add New Defendants and Plead  Futile Claims Already Considered and Dismissed by the Court ..........................................................................................7

ARGUMENT ..............................................................................................................................9

I.     The Court Should Deny Leave To File the Second Amended Complaint Because *Maridom* Plaintiffs' Request Is Untimely and Prejudicial ........................................................................................10

II.    The Court Should Deny Leave To File the Second Amended Complaint Because *Maridom* Plaintiffs' Proposed Amendments Cannot Withstand a Motion To Dismiss ..........................................13

      A.     *Maridom* Plaintiffs' Negligence Claim Is Barred by the Economic Loss Rule ..............................................................14

      B.     The Second Amended Complaint Does Not Satisfy Rule 9(b) ............15

      C.     The Alleged Omissions Identified in the Proposed  Second Amended Complaint Are Not Material ...............................................16

      D.     *Maridom* Plaintiffs' Proposed FSIPA Claim Fails As a Matter of Law Because the Sales of Sentry Are Not Alleged To Have Occurred in Florida ........................................................................17

CONCLUSION.........................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*380544 Canada, Inc.* v. *Aspen Tech., Inc.*,
No. 07-CV-1204, 2011 WL 4089876 (S.D.N.Y. Sept. 14, 2011) ....................................11, 13

*Anwar* v. *Fairfield Greenwich Ltd.*,
745 F. Supp. 2d 360 (S.D.N.Y. 2010) ............................................................................. *passim*

*Anwar* v. *Fairfield Greenwich Ltd.*,
No. 09-CV-118, 2011 WL 5282684 (S.D.N.Y Nov. 2, 2011) ........................................ *passim*

*Atl. Nat'l Bank of Fla.* v. *Vest*,
480 So. 2d 1328 (Fla. Court App. 1985) ........................................................................14, 17

*Berman* v. *Morgan Keegan & Co., Inc.*,
No. 10-CV-5866, 2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011) ..........................................10

*Castagna* v. *Luceno*,
No. 09-CV-9332, 2011 WL 1584593 (S.D.N.Y. Apr. 26, 2011) ........................................9, 14

*In re Eaton Vance Mutual Funds Fee Litig.*,
380 F. Supp. 2d 222 (S.D.N.Y. 2005) ...................................................................................10

*Kaufman* v. *Sirius XM Radio, Inc.*,
No. 09-CV-9590, 2010 WL 4968049 (S.D.N.Y. Nov. 22, 2010) ...........................................9

*Leber* v. *Citigroup, Inc.*,
No. 07-CV-9329, 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011) ......................................10, 11

*Payne* v. *Malemathew*,
No. 09-CV-1634, 2011 WL 3043920 (S.D.N.Y. July 22, 2011) ...........................................10

*Sly Magazine, L.L.C.* v. *Weider Publ'ns L.L.C.*,
241 F.R.D. 527 (S.D.N.Y. 2007) .........................................................................................11

*Thayil* v. *Fox Corp.*,
No. 11-CV-4791, 2012 WL 364034 (S.D.N.Y. Feb. 2, 2012) ...............................................13

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

OTHER AUTHORITIES

FED. R. CIV. P. 9 ................................................................................................................. *passim*

FED. R. CIV. P. 15 ..............................................................................................................9

Defendant Standard Chartered Bank International (Americas) Ltd. ("SCBI") respectfully submits this memorandum in opposition to the untimely motion brought by plaintiffs Maridom Limited, Caribetrans, S.A. and Abbot Capital, Inc. ("*Maridom* plaintiffs") for leave to file a Second Amended Complaint.[1]

## PRELIMINARY STATEMENT

More than fifteen months ago, this Court considered and dismissed many of the claims asserted in *Maridom* plaintiffs' first amended complaint (the "Amended Complaint"), and gave *Maridom* plaintiffs a firm deadline to replead their claims. *Anwar* v. *Fairfield Greenwich Ltd. ("Anwar I")*, 745 F. Supp. 2d 360, 379 (S.D.N.Y. 2010)  *Maridom* plaintiffs chose not to replead then, and set forth no compelling reason now why they should be allowed to replead at this late juncture.  In short, the Court should not grant *Maridom* plaintiffs leave to amend for three reasons:

*First*, there is nothing that *Maridom* plaintiffs ask to do now that they could not have done during the Court-ordered allotted time.  Absent good cause, the deadlines set by Judge Marrero should be enforced.  Indeed, relying on *Maridom* plaintiffs' choice not to amend, SCBI answered *Maridom* plaintiffs' Amended Complaint in November 2010, and discovery has proceeded as framed by that complaint.

*Second*, allowing plaintiffs to replead complaints now will significantly disrupt the coordinated case schedule established by this Court.  These amendments will necessitate yet another round of briefing on a motion to dismiss to determine the proper scope of *Maridom* plaintiffs' claims.  Moreover, granting such leave will open the flood gates to similar requests

---

[1]     References to *Maridom* plaintiffs' February 9, 2012 Notice of Motion for Leave to File Second Amended Complaint, and its incorporated Memorandum of Law (Dkt. # 815) are abbreviated herein as "Maridom Mem."

from other plaintiffs in other actions pending against SCBI and its affiliates that arise out of investments made in the Fairfield Sentry Ltd. fund (the "Standard Chartered Cases"). According to *Maridom* plaintiffs, other plaintiffs "will likewise move to amend their complaints." (Maridom Mem. at 7 n.4.)

*Third*, and in any event, most of the claims *Maridom* plaintiffs seek to add already have been considered and rejected by the Court as part of the mandated common issue motion practice, *Anwar* v. *Fairfield Greenwich Ltd. ("Anwar II")*, No. 09-CV-1634, 2011 WL 5282684, at *4-8 (S.D.N.Y. Nov. 2, 2011), and none of those claims would provide a basis for any relief beyond that sought by the Amended Complaint.   Thus, amendment is futile.

## BACKGROUND

On September 24, 2009, *Maridom* plaintiffs filed a complaint against SCBI in the Southern District of Florida seeking to recover $4.8 million that they placed in Fairfield Sentry Ltd. ("Sentry") through their investment accounts at SCBI.  In their original complaint, *Maridom* plaintiffs asserted three claims against SCBI:  (i) breach of a "duty of care" based on an alleged recommendation of Sentry to them without conducting any (or conducting only "grossly inadequate") due diligence (Compl. ¶¶ 43, 53, *Maridom Ltd.* v. *Standard Chartered Bank International (Americas) Ltd.*, 09-CV-22868 (S.D.Fla. Sept. 24, 2009) (Dkt. # 1)); (ii) negligent misrepresentation (Compl. ¶¶ 55-61); and (iii) fraud (Compl. ¶¶ 62-65).  The misrepresentation and fraud claims relied on allegations that SCBI failed to disclose that Sentry was "nothing more than a funnel to" Bernard L. Madoff Investment Securities LLC ("BLMIS") (Compl. ¶ 57.), and that the Sentry private placement memorandum was misleading in stating that an affiliate of Sentry, not BLMIS, was to manage investments that Sentry made (Compl. ¶ 64).  On October 13, 2009, *Maridom* plaintiffs filed the Amended Complaint, asserting the same three claims based on

essentially identical allegations.  On February 3, 2010, the United States Judicial Panel on

Multidistrict Litigation transferred this action to the Southern District of New York, where it was

consolidated with other Standard Chartered Cases, including actions against SCBI's affiliates

Standard Chartered International (USA) Ltd. ("SCI"), and Standard Chartered Bank ("SCB"),

(together with SCBI, "Standard Chartered").  (March 12, 2010 Consolidation Order, Dkt. # 398.)

### A.     In *Anwar I*, the Court Dismissed Claims Asserted in *Maridom* Plaintiffs' Amended Complaint and Set a Firm Deadline To Amend.

On January 29, 2010, this Court issued an Initial Scheduling Order Regarding

Standard Chartered Cases that provided for unified motions to dismiss in the Standard Chartered

Cases to address common legal issues in those actions.  (Jan. 29, 2010 Initial Scheduling Order

Regarding Standard Chartered Cases, Dkt. # 375.)  On March 10, 2010, SCBI moved to dismiss

the fraud and misrepresentation claims asserted in *Maridom* plaintiffs' Amended Complaint (as

well as three other complaints) for, among other grounds, plaintiffs' (i) failure to plead fraud-

based claims with particularity under Rule 9(b) of the Federal Rules of Civil Procedure;

(ii) failure to allege any actionable misstatements or omissions of material fact; and (iii) failure

to adequately plead scienter.  In addition, because *Maridom* plaintiffs' accounts at SCBI were

nondiscretionary, SCBI moved to dismiss *Maridom* plaintiffs' fiduciary duty claims on the

ground that SCBI did not owe a duty to uncover Madoff's Ponzi scheme.  Finally, SCBI sought

dismissal of all of *Maridom* plaintiffs' claims based on Florida's economic loss rule.  (Mar. 10,

2010 Mem. in Supp. of Mot. to Dismiss, Dkt. # 385.)

On October 4, 2010, the Court dismissed all but one of *Maridom* plaintiffs' fraud

and misrepresentation claims.  *Anwar I*, 745 F. Supp. 2d at 372-73.  The Court found that

*Maridom* plaintiffs' allegations that SCBI falsely told them that Sentry, and not another entity

(BLMIS), would manage Sentry's investment did not support a fraud or misrepresentation claim.

The Court noted that Amended Complaint failed to "specify the speaker of these statements, or where and when these statements were made to each of the three Maridom Plaintiffs"—as required by Rule 9(b).  *Id.* at 372.  The Court allowed a single fraud-based claim to go forward: a claim that SCBI allegedly "fail[ed] to disclose that Fairfield Sentry was a funnel to Madoff's operation."  *Id.* at 372-73.[2]

Also in *Anwar I*, the Court dismissed fraud-based claims asserted by plaintiff Ricardo Lopez (*Lopez* v. *Standard Chartered Bank International (Americas) Ltd.*, No. 10-CV-919), based on allegations that SCBI failed to conduct adequate due diligence of Sentry.  There, the Court noted that a fraud claim brought against an advisor for recommending an investment requires, at a minimum, "allegations that there were obvious signs of fraud, or that the danger of fraud was so obvious that [SCBI] must have been aware of it."  *Id.* at 371 (citation and internal quotation marks omitted).

The Court granted both *Maridom* plaintiffs and Lopez twenty-one days from the date of its Order to request leave to replead, which the Court was clear would be granted only upon a showing that repleading would correct the pleading deficiencies identified by the Court:

> The Court has determined that several of Plaintiffs' allegations failed to state a claim, due chiefly to failures of properly alleging scienter in Lopez's fraud-based claims and specificity in similar claims of the Maridom Plaintiffs.  It is therefore possible that as to some of these matters repleading would be futile if based upon the same or similar allegations.  The Court will grant leave to replead upon a prior request by Plaintiffs plausibly showing how such repleading would correct the deficiencies identified in the Court's findings discussed above, and thus would not be futile.  Plaintiffs may submit any such request within twenty-one days of the date of this Order.

---

[2]    The Court declined to dismiss *Maridom* plaintiffs' breach of fiduciary duty claims based on narrow allegations that SCBI failed to conduct (or conducted only "grossly inadequate") due diligence on Sentry before recommending it.  *Anwar I*, 745 F. Supp. 2d at 376-77.

*Id.* at 379 (emphasis added).  Twenty-one days passed, and *Maridom* plaintiffs did not seek leave to replead their claims.  Therefore, in accordance with the Initial Scheduling Order Regarding Standard Chartered Cases, on November 24, 2010, SCBI filed an answer and affirmative defenses to *Maridom* plaintiffs' Amended Complaint.  (Dkt. # 584.)

**B.     In *Anwar II*, the Court Rejected Additional Fraud-Based Claims, Negligence, and FSIPA Claims.**

On February 3, 2010, in response to the filing of several additional complaints against Standard Chartered that were transferred to this Court, the Court entered a Second Amended Scheduling Order Regarding Standard Chartered Cases (Dkt. # 609).  The Court directed that "[t]he parties shall refrain from engaging in duplicative motion or pleading practice on matters already considered by this Court, including on claims or issues on which this Court has already issued guidance in [*Anwar I*]."  (*Id.* at ¶ 15.)  The Scheduling Order allows for Standard Chartered to move to dismiss claims that are "the same or substantially similar to a claim that was dismiss[ed] in [*Anwar I*]" or claims that "raise[] new or unique issues of law."  (*Id.* at ¶ 16)

On March 21, 2011, SCBI moved to dismiss complaints brought by plaintiffs Ricardo Almiron and Carlos Carrillo.  (Mar. 21, 2011 Mem. in Supp. of Mot. to Dismiss, Dkt. # 622; *Almiron* v. *Standard Chartered Bank International (Americas) Ltd.*, No. 10-CV-6186; *Carillo* v. *Standard Chartered Bank International (Americas) Ltd.*, No. 10-CV-6187.)  The Almiron and Carrillo complaints asserted claims for breach of fiduciary duty, negligence, negligent misrepresentation and violations of the Florida Securities and Investor Protection Act ("FSIPA"), all based on allegations that SCBI made misrepresentations and omissions in recommending Sentry and failed to conduct adequate due diligence of Sentry.

On November 2, 2011, the Court dismissed Almiron and Carrillo's claims for negligence and negligent misrepresentation, as well as the FSIPA claim. *Anwar II*, 2011 WL 5282684, at *4-8. With respect to Almiron and Carrillo's fraud-based claims, the Court ruled that the complaints did not "state with particularity the circumstances constituting fraud," as required by Rule 9(b). *Id*. at *4-8. In so doing, the Court specifically identified as insufficient four alleged misrepresentations and omissions:

- that "SCBI misrepresented that Fairfield Sentry was a safe, low-risk investment with steady returns;"

- that "SCBI misrepresented that it performed extensive due diligence on Fairfield Sentry before SCBI recommended it to Plaintiffs;"

- that "[t]he Private Placement Memorandums issued by Fairfield Sentry and distributed by SCBI were misleading and falsely stated that an 'affiliated investment manager' of Fairfield Sentry was managing the assets, and failed to disclose the identity of BLMIS, a third-party unknown to Plaintiffs;" and

- that "SCBI did not disclose that BLMIS—and, therefore, Madoff—was managing the assets of Fairfield Sentry."

*Id*. at *4. The Court found that these allegations failed to meet the heightened pleading standard of Rule 9(b) because (i) plaintiffs did "not adequately allege the context of each alleged misrepresentation with sufficient particularity," including where and when those statements were made, *id.* at *4; (ii) plaintiffs' allegations that SCBI obtained fees from clients invested in Sentry were insufficient to establish "what SCBI obtained through the fraud," *id.* at *5; and (iii) plaintiffs failed to plead "facts giving rise to a strong inference that a defendant acted with the requisite state of mind," since motives "such as collection of fees, which could be imputed to almost any bank, are not sufficiently concrete for purposes of inferring fraudulent intent," *id.* at *5-6 (citation and internal quotation marks omitted).

The Court determined that Almiron's and Carrillo's FSIPA claims failed too because plaintiffs had "not alleged facts sufficient to show that SCBI falls within the class of

entities or individuals" covered by FSIPA, in particular, the requirement of "buyer/seller privity." *Id*. at *7. The Court further noted that these plaintiffs "fail[ed] to allege that the purchase/sale of Fairfield Sentry occurred in Florida," and that "[t]his too is fatal to their claims under" the FSIPA. *Id*. at *7 n.4.

Finally, the Court dismissed Almiron and Carrillo's negligence claims based on Florida's economic loss rule, which bars most tort claims "where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract." *Id*. at *12 (citation omitted).

C.   **In Their Proposed Second Amended Complaint, *Maridom* Plaintiffs Belatedly Seek To Add New Defendants and Plead Futile Claims Already Considered and Dismissed by the Court.**

On February 9, 2012, more than 15 months after the Court-imposed deadline for *Maridom* plaintiffs to correct deficiencies in their Amended Complaint expired, *Maridom* plaintiffs moved for leave to file a Second Amended Complaint. (Dkt. # 815.) In the proposed Second Amended Complaint, *Maridom* plaintiffs do not seek to correct pleading deficiencies. Rather, they seek to add SCI and SCB as defendants in the case and to add three new causes of action: (i) a claim against SCI and SCB for aiding and abetting breach of fiduciary duty; (ii) a claim against SCI, SCB and SCBI for negligence based on the alleged failure to conduct adequate due diligence of Sentry; and (iii) a claim against SCI, SCB and SCBI for violations of the FSIPA. Each of these claims is untimely and futile, and the second and third were already considered and dismissed by the Court in *Anwar II*. In addition, the proposed Second Amended Complaint seeks to convert all of *Maridom* plaintiffs' claims into fraud-based claims by adding

allegations of omissions by Standard Chartered in recommending Sentry to them, thus subjecting each to the heightened pleading standards of Rule 9(b).[3]

Specifically, the proposed Second Amended Complaint adds five alleged omissions,[4] which, in *Maridom* plaintiffs' words, "merely fill out" (Maridom Mem. at 10) the allegations that were made in the Amended Complaint:

- that SCBI and SCI failed to disclose that Sentry's private placement memorandum was materially misleading since "[a]ll Sentry and its affiliates did was receive the money from investors, take money off the top (which it split with SCI), grabbed 20% of supposed annual profits, and send the rest of the money to BLMIS." (Second Am. Compl. ¶ 83.) This omission is equivalent to alleged representations and omissions found to be insufficient under Rule 9(b) in *Anwar I* and *Anwar II*. *Anwar I*, 745 F. Supp. 2d at 372; 2011 WL 5282684, at *4-8;

- that SCBI, SCI and SCB failed to disclose that SCBI received "50% of the 1% per annum fee the Plaintiffs were paying" to Sentry – *i.e.*, that Standard Chartered received a 0.5% per annum trailer fee (Second Am. Compl. ¶ 84(a-b));

- that SCBI, SCI and SCB failed to disclose that "BLMIS's reported results were so extraordinary that there was a material doubt that they were real" (*Id*. ¶ 84(c));

- that SCBI, SCI and SCB failed to disclose that BLMIS's role in Sentry "created a material risk to Sentry" (Second Am. Compl. ¶ 84(d)); and

---

[3]     *Maridom* plaintiffs also allege that Standard Chartered "failed to conduct proper due diligence regarding Sentry" in support of their fiduciary duty and negligence claims. (Second Am. Compl. ¶¶ 92(e), 101(e).)  Although *Maridom* plaintiffs re-word some of their allegations, in substance their "due diligence" claims remains the same.  (*Compare* Am. Compl. ¶ 49 (SCBI "never performed any due diligence, and, even if it did perform some due diligence, its effort was grossly inadequate") *with* Second Am. Compl. ¶ 94 (SCBI and SCI "never performed any real due diligence, and, even if they did perform some due diligence, its effort was grossly inadequate").)

[4]     The proposed Second Amended Complaint's only alleged affirmative representations (as opposed to omissions) mirror those that the Court found insufficient to state a claim in *Anwar II*. 2011 WL 5282684, at *4-5.  Specifically, the proposed Second Amended Complaint alleges that "SCBI told plaintiffs that these would be safe investments with a steady return.  SCBI referred to the purchase of Sentry Shares as a 'risk reducer,' in that Sentry Shares would have lower volatility and risk than common stocks."  (Second Am. Compl. ¶ 81.)  These statements are not alleged to have been false when made, and thus do not appear to be the basis for any of *Maridom* plaintiffs' proposed claims.  Moreover, although the Second Amended Complaint identifies three SCBI employees in a single paragraph, it does not allege who said what to plaintiffs or when and where the alleged statements were made.  (Second Am. Compl. ¶ 81.)

- that SCBI, SCI and SCB failed to disclose that they did not follow their own due diligence guidelines and that due diligence conducted on BLMIS by Sentry's sponsor, Fairfield Greenwich Group ("FGG"), was inadequate (Second Am. Compl. ¶ 84(e-f)).

Further, with respect to the FSIPA claim, *Maridom* plaintiffs allege that "SCBI, SCI and SCB solicited the purchases by Plaintiffs of Sentry shares for their financial gain," and that SCI and SCB were "acting as Sentry's and Fairfield's agent in soliciting these purchases." (Second Am. Compl. ¶¶ 122-23.)  *Maridom* plaintiffs do not allege that any of their multiple purchases of Sentry—or any particular statement or interaction concerning Sentry—occurred in Florida.  Instead, the Second Amended Complaint alleges, without more, that "the sales of the shares of Sentry did not occur entirely outside the State of Florida."  (Second. Am. Compl. ¶ 120.)

## ARGUMENT

The determination of whether to grant leave to amend a complaint is "within the sound discretion of the district court . . . and a court may deny leave for good reason."  *Kaufman* v. *Sirius XM Radio, Inc.*, No. 09-CV-9590, 2010 WL 4968049, at *2 (S.D.N.Y. Nov. 22, 2010) (denying plaintiff's request for leave to amend) (quoting *McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  Leave should be granted only "when justice so requires" FED. R. CIV. P. 15(a), and not when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Castagna* v. *Luceno*, No. 09-CV-9332, 2011 WL 1584593, at *22-23 (S.D.N.Y. Apr. 26, 2011) (quoting *Ruotolo* v. *City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008)).

Here, *Maridom* plaintiffs were provided the opportunity to amend their complaint more than a year ago, but they declined.  *Maridom* plaintiffs should not be permitted to file an

amended pleading at this late stage that would disrupt and delay these coordinated proceedings—especially because allowing amendment in this action will likely lead to dozens of requests by other plaintiffs in the Standard Chartered Cases to do the same.  This is, presumably, precisely why Judge Marrero set firm deadlines for amendment.  In addition, the proposed amendments are futile, providing *Maridom* plaintiffs with no new claims that could survive a motion to dismiss, and thus serve no purpose.

I.      **The Court Should Deny Leave To File the Second Amended Complaint Because *Maridom* Plaintiffs' Request Is Untimely and Prejudicial.**

Where a plaintiff has been afforded an opportunity to amend its complaint with the knowledge of the complaint's perceived deficiencies but chooses not to amend, denial of subsequent leave to amend is warranted.  *In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) ("The motion to amend is therefore denied because of the plaintiffs' failure to cure deficiencies despite the opportunities to do so, and the failure to show how any amended complaint could cure the deficiencies."); *Payne* v. *Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *5-6 (S.D.N.Y. July 22, 2011) (denying leave to file second amended complaint where plaintiff put on notice of deficiencies in amended complaint via letter from defense counsel and court had granted previous leave.); *Berman* v. *Morgan Keegan & Co., Inc.*, No. 10-CV-5866, 2011 WL 1002683, at *14-15 (S.D.N.Y. Mar. 14, 2011) ("Because plaintiffs have already been afforded an opportunity to amend when they had knowledge of Morgan Keegan's perceived deficiencies and because they have failed to set forth any additional facts indicating how the pleading deficiencies would be cured by amending the Complaint, leave to amend . . . is denied.").  Here, *Maridom* plaintiffs simply delayed in asserting new claims or joining new defendants, thus leave to amend should not be granted unless *Maridom* plaintiffs provide substantive justification for the delay.  *Leber* v. *Citigroup, Inc.*, No. 07-CV-9329, 2011

WL 5428784, at *6 (S.D.N.Y. Nov. 8, 2011) (citation omitted) (denying leave to file amended

complaint asserting new claim where no justification provided); *380544 Canada, Inc.* v. *Aspen*

*Tech., Inc.*, No. 07-CV-1204, 2011 WL 4089876, at *2-3, 5-6 (S.D.N.Y. Sept. 14, 2011) (citing

*MacDraw, Inc.* v. *The CIT Group Equipment Financing, Inc.*, 157 F.3d 956, 962 (2d Cir. 1998))

(denying leave to file amended complaint around close of discovery to amplify securities fraud

allegations and add new claim); *Sly Magazine, L.L.C.* v. *Weider Publ'ns L.L.C.*, 241 F.R.D. 527,

533 (S.D.N.Y. 2007) (denying leave to join defendants pursuant to Rule 21 where plaintiff

provided no "substantive justification" for waiting six months after plaintiffs received notice of

the existence and identity of the parties proposed to be joined).

      *Maridom* plaintiffs have provided no justification for their delay.  It is not

justification that *Maridom* plaintiffs obtained materials through their discovery efforts that they

would like to append to their pleading.[5]  (Maridom Mem. at 2, 10.)  In fact, the proposed Second

Amended Complaint adds few substantive allegations in support of *Maridom* plaintiffs' claims

that were not available to them in October 2010 when the Court first granted leave to amend.

*Maridom* plaintiffs admit as much in support of their motion:  "The additional factual allegations

stem from the initial allegations" in the Amended Complaint.  (Maridom Mem. at 3.)

      *Maridom* plaintiffs' assertion that the additional allegations in the proposed

Second Amended Complaint are based on information gathered in discovery is, at best,

misleading.  Of the five alleged omissions included in support of the claims asserted in the

proposed Second Amended Complaint, four concern circumstances that were either publicly

---

[5]      The exhibits *Maridom* plaintiffs' seek to append to their Second Amended Complaint were properly designated as "Confidential Material" under the Stipulation and Order Governing Confidentiality of Discovery Material in the Standard Chartered Cases (Dkt. # 603).  If the Court were to grant *Maridom* plaintiffs' amendments—which it should not for all the reasons stated herein—Standard Chartered does not anticipate raising an objection to the unsealing of those particular exhibits.

disclosed or known to *Maridom* plaintiffs without any discovery from Standard Chartered, while

the fifth merely concerns allegations already asserted that SCBI failed to conduct adequate due

diligence of Sentry.  Specifically, the purported omissions in Sentry's private placement

memorandum (Second Am. Compl. ¶ 83), and the supposed risks created by BLMIS's role in

Sentry and BLMIS's "extraordinary" results (Second Am. Compl. ¶ 84 (c-d)), could have been

alleged by *Maridom* plaintiffs well before October 2010—based on public information about the

Madoff fraud, or through *Maridom* plaintiffs' own knowledge of their interactions with SCBI.

The purported omissions concerning fees that Standard Chartered received from FGG likewise

were no secret to *Maridom* plaintiffs by, at latest, 2009.  (Second Am. Compl. ¶ 84(a-b).)

Another Standard Chartered Case plaintiff, Headway Investment Corporation, alleged in a

complaint filed on April 6, 2009 that "American Express Bank purposefully acted as an

intermediary between FGG and Headway to continually justify collecting commissions from

FGG."  (*Headway* Compl. ¶ 40, *Headway Investment Corp.* v. *American Express Bank Ltd.*, No.

09-CV-8500.)  Finally, *Maridom* plaintiffs' allegations that Standard Chartered omitted to

inform them about the level of due diligence it and FGG performed (Second Am. Compl. ¶¶ 24,

84(e-f)), must have been known to *Maridom* plaintiffs well before discovery began in the

Standard Chartered Cases—for it was *Maridom* plaintiffs themselves who allegedly interacted

with representatives of SCBI.

       Moreover, *Maridom* plaintiffs provide no justification for their delay in seeking to

name SCI and SCB as defendants in this action.  (*See* Maridom Mem. at 11.)  SCI and SCB are

named as defendants in complaints filed by other plaintiffs in the Standard Chartered Cases as

far back as 2009. (*Headway*, No. 09-CV-8500 (filed April 6, 2009); *Valladolid* v. *American

Express Bank Ltd., et al.*, No. 10-CV-918 (filed Sept. 4, 2009).)  By the time the Court granted

*Maridom* plaintiffs leave to amend the Amended Complaint in October 2010, they were well aware of the existence of SCI and SCB and their alleged roles in matters concerning Sentry.

Moreover, *Maridom* plaintiffs' delay in seeking to amend their complaint would result in prejudice to Standard Chartered if leave to amend were granted. "Prejudice may result where proposed amendments would . . . significantly delay the resolution of the dispute." *380544 Canada, Inc.*, 2011 WL 4089876, at *2 (quoting *Monahan* v. *N.Y. City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000)). If *Maridom* plaintiffs are allowed to file a Second Amended Complaint, other plaintiffs in the Standard Chartered Cases likely will seek to do the same. Indeed, *Maridom* plaintiffs have stated so explicitly: "other Standard Chartered Plaintiffs will likewise move to amend their complaints, and . . . some if not all will seek to adopt the main substantive allegations against the Defendants . . . ." (Maridom Mem. at 7, n.4.) Reopening of the pleadings to new claims and defendants means more rounds of costly (and unnecessary, *see infra*, pp. 14-18) motion practice on the sufficiency of those claims, (*see* Second Am. Scheduling Order Regarding Standard Chartered Cases ¶ 18 ("Nothing herein is intended to preclude the Standard Chartered Defendants from moving against any amended pleading . . . .")), and undoubtedly delay the completion of discovery until motions to dismiss are resolved and the scope of the claims asserted in the Standard Chartered Cases is established anew by the Court.

## II.   The Court Should Deny Leave To File the Second Amended Complaint Because *Maridom* Plaintiffs' Proposed Amendments Cannot Withstand a Motion To Dismiss.

"[W]here a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile." *Thayil* v. *Fox Corp.*, No. 11-CV-4791, 2012 WL 364034, at *4 (S.D.N.Y. Feb. 2, 2012). Thus, when a proposed amended complaint "cannot withstand a motion to dismiss pursuant to Rule 12(b)(6),"

the amendment is futile and leave to file it should be denied. *Castagna*, 2011 WL 1584593, at *22 (citations omitted).

        *Maridom* plaintiffs' proposed fiduciary duty, negligence, negligent misrepresentation, fraudulent representation and FSIPA claims could not survive a motion to dismiss under the law of the case established in *Anwar I* and Anwar *II*, and under Florida law. The Court already has ruled that negligence claims asserted in the Second Amended Complaint are barred by Florida's economic loss doctrine. *Anwar II*, 2011 WL 5282684, at *11-12. And although the proposed Second Amended Complaint includes fraud-based allegations that were not part of the Amended Complaint, the additional allegations suffer from the precise lack of particularity required by Rule 9(b) that led the Court to dismiss fraud-based claims in *Anwar I* and *Anwar II*. *Anwar I*, 745 F. Supp. 2d at 372; *Anwar II*, 2011 WL 5282684, at *3. Further, the proposed Amended Complaint does not adequately allege that any omissions were material to *Maridom* plaintiffs' decisions to purchase Sentry. *Atl. Nat'l Bank of Fla.* v. *Vest*, 480 So. 2d 1328, 1332 (Fla. Court App. 2d Dist. 1985). Finally, *Maridom* plaintiffs fail to state a claim under the FSIPA because they have not adequately pled that any purchases or sales of Sentry occurred in Florida. *Anwar II*, 2011 WL 5282684, at *7 n.4.

    **A.**     ***Maridom* Plaintiffs' Negligence Claim Is Barred by the Economic Loss Rule.**

        The Second Amended Complaint's proposed negligence claim cannot survive a motion to dismiss under the Court's ruling in *Anwar II*. In *Anwar II*, the Court recognized that Florida's economic loss rule bars negligence claims where the parties' private banking relationship is governed by written account agreements. 2011 WL 5282684, at *11-12. *Maridom* plaintiffs' private banking relationships were governed by written account agreements. *Anwar I*, 745 F. Supp. 2d at 366-67 ("[Alt]hough the Maridom Complaint does not explicitly refer to any agreements between the parties, it relies heavily upon the agreements' terms and

effects because its core allegations—that Standard Chartered abused its relationship with the *Maridom* Plaintiffs—necessarily flow from the contracts creating that relationship."). Thus, their negligence claims are plainly barred.

**B.      The Second Amended Complaint Does Not Satisfy Rule 9(b).**

*Maridom* plaintiffs seek to add alleged omissions in support of their fraud and negligent misrepresentation claims, (Second Am. Compl. ¶¶ 105-106, 110-112) and their new claim under the FSIPA (Second Am. Compl. ¶ 121). *Maridom* plaintiffs further seek to shoehorn these same allegations of omissions into their fiduciary duty and negligence claims (Second Am. Compl. ¶¶ 92, 101), thus converting those claims into fraud-based claims as well. As the Court observed in *Anwar II,* "Rule 9(b) provides that 'in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud.'" 2011 WL 5282684, at *3 (quoting FED. R. CIV. P. 9(b)). Allegations of material omissions made in support of fraud-based claims require particularized facts alleging "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Anwar I*, 745 F. Supp. 2d at 372 (citation omitted). To adequately plead the scienter element of a fraud-based claim, "Rule 9(b) also requires a plaintiff to plead with particularity facts giving rise to a strong inference that a defendant acted with the requisite state of mind." *Anwar II*, 2011 WL 5282684, at *5 (citation omitted).

The proposed Second Amended Complaint comes nowhere close to meeting these requirements. It does not allege with particularity the circumstances surrounding SCBI's alleged recommendations of Sentry to each *Maridom* plaintiff. Instead, the Second Amended Complaint merely lists the dates and amounts of *Maridom* plaintiffs' Sentry purchases, and alleges that three SCBI employees made recommendations. (Second Am. Compl. ¶¶ 78-81.) Nor does the

Second Amended Complaint identify the person(s) responsible for any alleged failures to disclose information about Sentry.  (*Id.*)  In fact, *Maridom* plaintiffs do not allege with particularity any single interaction between them and representatives of SCBI, SCI or SCB, and thus have not even attempted to plead the context in which any alleged omissions occurred or the manner in which they were misled by alleged omissions at the time they decided to purchase Sentry.  (*Id.*)

The proposed Second Amended Complaint also fails to allege what SCBI, SCI or SCB obtained through the alleged fraud, or plead any other facts giving rise to a strong inference that SCBI or any of its affiliates acted with the requisite state of mind.  *Maridom* plaintiffs' allegations that Standard Chartered received fees from FGG (Second Am. Compl. ¶ 44), regardless of whether they were disclosed (Second Am. Compl. ¶ 84(a)), are insufficient.  As the Court held in *Anwar II*, allegations that Standard Chartered received fees for purchases its clients made in Sentry do not "giv[e] rise to a strong inference that a defendant acted with the requisite state of mind" because "generalized motives, such as the collection of fees, 'which could be imputed to almost any bank, are not sufficiently concrete for purposes of inferring fraudulent intent.'"  2011 WL 5282684, at *6 (citation omitted).  Given that *Maridom* plaintiffs now have had the benefit of extensive discovery, their inability to plead any plausible reason why Standard Chartered would defraud them demonstrates that *Maridom* plaintiffs cannot do so.  Thus, their proposed Second Amended Complaint does not, and cannot, meet the heightened pleading standard of Rule 9(b).

### C.   The Alleged Omissions Identified in the Proposed Second Amended Complaint Are Not Material.

In addition to failing under Rule 9(b), the alleged omissions cannot support any claim because *Maridom* plaintiffs plead no facts demonstrating that such omissions were

material at the time they made their decisions to invest in Sentry.  In fact, the allegations in the proposed Second Amended Complaint demonstrate the opposite to be true.

The proposed Second Amended Complaint alleges multiple omissions concerning BLMIS's role in Sentry, the supposed risks BLMIS posed to Sentry, and that Sentry and BLMIS's returns supposedly were "extraordinary."  (Second Am. Compl. ¶¶ 83, 84.)  But *Maridom* plaintiffs do not allege any facts, such as their own familiarity with Madoff or BLMIS (or risks associated with Madoff or BLMIS) when they made their investments, to support an inference that *Maridom* plaintiffs would have disregarded SCBI's alleged recommendation to invest in Sentry if they had known of Madoff's involvement in the fund.  *See Atl. Nat'l Bank of Fla.*, 480 So. 2d at 1332 (alleged misrepresentation not material where plaintiff would have completed the transaction with or without the alleged misrepresentation).

The same is true of Standard Chartered's alleged receipt of fees from FGG, or Standard Chartered's supposed internal policies and procedures concerning due diligence. *Maridom* plaintiffs do not plead any facts demonstrating that they would have disregarded SCBI's alleged recommendation if they had known that Standard Chartered received trailer fees from FGG, or if they were aware of Standard Chartered's internal policies and procedures. Indeed, they plead just the opposite—that they "justifiably accepted" statements of SCBI and "relied on them because they were made by investment experts in whom they had placed their trust."  (Second Am. Compl. ¶ 81.)

### D.   *Maridom* Plaintiffs' Proposed FSIPA Claim Fails As a Matter of Law Because the Sales of Sentry Are Not Alleged To Have Occurred in Florida.

The proposed FSIPA claim asserted in the Second Amended Complaint, which simply incorporates the same allegations as the other causes of action (Second Am. Compl. ¶ 121), fails for the same reason as *Maridom* plaintiffs' other fraud-based claims, namely, the

failure to plead any alleged misrepresentations or omissions with the particularity required under Rule 9(b). *Anwar II*, 2011 WL 5282684, at *6 (dismissing FSIPA claim under Rule 9(b)).

*Maridom* plaintiffs' proposed FSIPA claim also fails to allege the location of any alleged misrepresentation or omission made by Standard Chartered, including the alleged recommendation to invest in Sentry. FSIPA does not apply to purchases of securities that occur outside of Florida. *Anwar II*, 2011 WL 5282684, at *7 n.4. *Maridom* plaintiffs allege generally that they met with SCBI representatives "from time to time" in Miami, Florida, and that SCBI "formulated" recommendations in Miami, but they do not allege with particularity that the sales of Sentry to *Maridom* plaintiffs (or alleged recommendations, misrepresentations or omissions) occurred in Florida. Instead the Second Amended Complaint asserts only that "the sales of the shares of Sentry did not occur entirely outside the State of Florida."[6] (Second. Am. Compl. ¶ 120.) This is insufficient to plead that the "purchase/sale of Fairfield Sentry occurred in Florida." *Anwar II*, 2011 WL 5282684, at *7 n.4.

---

[6]     Other allegations in the proposed Second Amended Complaint support a conclusion that any alleged sales of Sentry to *Maridom* plaintiffs occurred outside of Florida, including that (a) "SCBI is a corporation organized under the laws of the United States for the purpose of engaging in international or foreign banking and international or foreign financial operations" (Second Am. Compl. ¶ 12); (b) SCI is "engaged in international banking" (*id.* ¶ 14); (c) "SCB is an international bank . . . organized under the laws of the United Kingdom" (*id.* ¶ 16); and (d) plaintiffs "are affiliated, through common control, with persons who reside in the Dominican Republic" (*id.* at 11).

**CONCLUSION**

For all the foregoing reasons, SCBI respectfully requests that the Court deny

*Maridom* plaintiffs' request for leave to file the Second Amended Complaint.

Dated: March 1, 2012
      New York, New York

 

/s/ Sharon L. Nelles

Sharon L. Nelles
Bradley P. Smith
Patrick B. Berarducci
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
nelless@sullcrom.com

Diane L. McGimsey
(Admitted *Pro Hac Vice*)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California  90067

*Attorneys for Defendant*
*Standard Chartered Bank*
*International (Americas) Ltd.*