# SULLIVAN & CROMWELL LLP



TELEPHONE: 1-310-712-6600
FACSIMILE: 1-310-712-6600
WWW.SULLCROM.COM

*1888 Century Park East*
*Los Angeles, California 90067-1725*

NEW YORK • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

April 16, 2012

<u>By Hand</u>

The Honorable Theodore H. Katz,
    United States Magistrate Judge,
        Daniel Patrick Moynihan United States Courthouse,
            500 Pearl Street,
                New York, New York  10007-1312.

             Re:    *Anwar v. Fairfield Greenwich Limited*,
                     No. 09-CV-118 (VM) – Standard Chartered Cases

Dear Judge Katz:

          We write on behalf of the Standard Chartered Defendants ("Standard Chartered" or the "Bank") in response to plaintiffs' April 12, 2012 letter (i) renewing their already denied request to depose Richard Holmes, a Bank senior executive; and (ii) requesting a discovery conference to discuss plaintiffs' challenges to the sufficiency of Standard Chartered's February 27, 2012 privilege log (the "Log").  Plaintiffs' requests should be denied.

### <u>Plaintiffs' Second Attempt To Depose Richard Holmes</u>

          Richard Holmes is the former President, Chairman and Chief Executive Officer of American Express Bank Limited ("AEBL"), and is currently the Chief Executive Officer, UK and Europe, Standard Chartered Bank.  As Standard Chartered previously has described to Your Honor, Mr. Holmes was not involved in the due diligence that was conducted on Fairfield Sentry Limited ("Fairfield Sentry") or the sales of that fund to plaintiffs.  Rather, Mr. Holmes's only involvement with the Fairfield Sentry product was his attendance at a 2003 Product Approval Committee ("PAC") meeting during which the Bank approved a fund of hedge funds product that included an allocation to Fairfield Sentry, among many other funds.  (*See* Standard Chartered's February 27, 2012 Letter to the Court, Dkt. 830.)  For good reason therefore, this Court has already rejected plaintiffs' request to depose Mr. Holmes.

          Specifically, on March 7, 2012, the Court granted Standard Chartered's motion for a protective order barring plaintiffs from deposing Mr. Holmes.  Standard

The Honorable Theodore H. Katz                                                      -2-

Chartered had pointed out that, apart from Mr. Holmes, plaintiffs were planning to depose *five* other attendees of the 2003 PAC meeting.  The Court granted the Bank's motion, noting that "[t]here is no need to depose every person present at a meeting." (Dkt. 830.)  The Court ruled that plaintiffs could renew their request *if* "the other deponents have insufficient knowledge."  (*Id.*)

Plaintiffs do not assert that the other Standard Chartered witnesses they have deposed have insufficient knowledge of the subjects on which they seek to depose Mr. Holmes.  Instead, plaintiffs describe the testimony provided by one such witness, Robert Friedman, and then contend that they should be permitted to ask Mr. Holmes "to explain his thinking in apparently concurring" with the views and testimony of Mr. Friedman and other Standard Chartered witnesses.  Plaintiffs' desire to solicit "concurring"—in other words, duplicative—testimony is precisely what this Court rejected on March 7.

Mr. Friedman was the head of the group that was responsible for conducting due diligence on Fairfield Sentry.  He answered all deposition questions put to him about the 2003 PAC meeting at which Fairfield Sentry was discussed, and plaintiffs do not contend or suggest that his knowledge is insufficient.

Mr. Friedman also testified at length about the Bank's employment of Sam Perruchoud—the other topic on which plaintiffs seek to depose Mr. Holmes. Mr. Perruchoud reported to Mr. Friedman.  (Friedman Dep. at 20:4.)  Mr. Friedman thus was best positioned to testify regarding Mr. Perruchoud's employment by, and departure from, the Bank.  As Mr. Friedman testified at his deposition, he expressed dissatisfaction with Mr. Perruchoud's performance to Mr. Holmes for reasons unrelated to Fairfield Sentry or Madoff, and Mr. Holmes agreed with Mr. Friedman's assessment.  (Friedman Dep. at 250.)  Again, Mr. Friedman answered all of the questions put to him regarding Mr. Perruchoud, and plaintiffs identify no gap in Mr. Friedman's knowledge that warrants deposing Mr. Holmes.

In short, plaintiffs' efforts yet again to depose Mr. Holmes are unwarranted, harassing and should be denied.

### Privilege Log Objections

Plaintiffs raise four challenges to the Log, each of which is without merit.

*First*, plaintiffs argue that the Log does not contain the detail required under Local Rule 26.2(a)(2)(A).  In support, plaintiffs assert "there is no indication of who are the lawyers and who are the clients."  This is incorrect.  Lawyers are indicated

The Honorable Theodore H. Katz                                                    -3-

on the Log by the title "Esq.", and the Log identifies external counsel by providing their law firm affiliation.

        *Second*, plaintiffs suggest that the Log too broadly claims work product over the committee minute entries of Standard Chartered PLC.  Any concerns are unfounded.

        As Standard Chartered informed plaintiffs, and as several witnesses have testified, as soon as the news of the Madoff fraud broke, Standard Chartered immediately began to make assessments regarding litigation risks and potential theories of liability. This work was undertaken at the direction of internal and external counsel, including Sullivan & Cromwell LLP, and involved the collection and assessment of information relating to Fairfield Sentry.  In addition to discussions among those directly tasked with conducting such work, various committees of the Bank received updates on the work, either through counsel or a Bank employee working under the direction of counsel.  The purpose of those updates was to provide information relating to the Bank's potential legal liability and to discuss the advice of counsel concerning the Bank's investigation of the Madoff fraud.  The minutes identified on the Log as protected under the work-product doctrine reflect information "prepared or obtained because of the prospect of litigation," and are shielded from discovery.  *Newmarkets Partners, LLC* v. *Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 102 (S.D.N.Y. 2009) (Katz, M.J.).

        *Third*, plaintiffs argue that Standard Chartered has conflated underlying facts, which are discoverable, and privileged communications, which are not.  This is incorrect.  No responsive underlying document has been withheld from plaintiffs on grounds of privilege based on the Bank's review conducted after revelation of Madoff's fraud.   Standard Chartered has produced to plaintiffs the underlying factual information that is relevant to their claims.  What has been withheld—properly—is the Bank's own collection, review and analysis of those documents in anticipation of litigation. The Bank is not required to give plaintiffs compilations of information made by legal counsel in anticipation of litigation or copies of reports made to senior management based on such compilations.  Indeed, plaintiffs acknowledge, but then ignore, that fact work-product is entitled to protection.  (Plaintiffs' April 12 Letter at 2 (citing *In re Grand Jury Subopena Dated July 6, 1995*, 510 F.3d 180, 183-84 (2d Cir. 2007).)

        *Fourth*, and finally, plaintiffs argue that the Log is insufficient because Standard Chartered has not provided an affidavit setting forth the facts required to establish the applicability of attorney-client privilege or work product.  Plaintiffs misstate the law.  Where a privilege log supplies the information required by the rules, a demand for additional supporting information is unjustified.  *See Currency Conversion Antitrust*

The Honorable Theodore H. Katz                                          -4-

*Litig.* V. *Bank of Am., N.A.*, MDL No. 1409 M-21-95,05 Civ. 7116 (WHP) (THK), 2010
U.S. Dist. LEXIS 117008, at *12 (S.D.N.Y. Nov. 3, 2010).

                              *         *         *

   For the foregoing reasons, Standard Chartered respectfully requests that
plaintiffs' renewed request to depose Mr. Holmes and their request for a discovery
conference to challenge the sufficiency of Standard Chartered's privilege log be denied.

          Respectfully submitted,

          Diane L. McGimsey

cc:  Sharon L. Nelles

    Plaintiffs' Steering Committee
    (by e-mail attachment)

*Plaintiffs point to no new information that would cause the Court to reconsider its decision to preclude the deposition of Mr. Holmes. Standard Chartered's privilege log is in compliance with the Federal Rules and the Court sees no basis for overriding its assertion of work product.*

**SO ORDERED**

4/24/12

THEODORE H. KATZ
**UNITED STATES MAGISTRATE JUDGE**