UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MASTER NO. 09-cv-118 (VM) (THK)

PASHA ANWAR, et al.,

    Plaintiffs,

v.

FAIRFIELD GREENWICH LIMITED,
et al.,

    Defendants.

This filing relates to *Maridom Ltd., et al.,
v. Standard Chartered Bank International
(Americas), Ltd.*
_____/

# MEMORANDUM OF LAW IN SUPPORT OF *MARIDOM* PLAINTIFFS' NOTICE OF MOTION FOR RECONSIDERATION OF ORDER DENYING LEAVE TO AMEND COMPLAINT

Richard E. Brodsky
The Brodsky Law Firm, PL
Suite 1930
200 South Biscayne Boulevard
Miami, Florida 33131
(786-220-3328)

Counsel for Maridom, Ltd.,
Caribetrans, S.A., and Abbot Capital,
Inc.

The Maridom Plaintiffs request reconsideration of the Court's Decision and Order dated April 13, 2012, DE 853, denying the motions of the *Maridom* Plaintiffs for leave to amend their complaint.

The facts are undisputed: (i) the proposed amendment would engender no new discovery, (ii) no summary judgment motion has been filed, (iii) no trial date has been set, and (iv) discovery is still ongoing at the time of filing of this Motion. The only prejudice to the Defendants that the Court found were leave granted would be some delay *if the Defendants file a motion to dismiss*. On these undisputed facts, there was no basis under Rule 15(a) (or Rule 21(a)) to have denied leave to amend.[1] *E.g.*, *Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 248 F.R.D. 408 (S.D.N.Y. 2008) (Marrero, J.).

The grounds for this Motion for Reconsideration are that this Court's Decision and Order was clear error and, if unchanged, will create manifest injustice for the Plaintiffs.[2] Respectfully, there is no basis under Rule 15(a) or Rule 21(a) for the Court's Decision and Order.

---

[1] The Court recognizes in its Decision and Order that leave to amend is to be freely granted. In effect, "all ties go to the runner," to use a baseball analogy. *See*, *e.g.*, *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 cv 1514 (PAC/HBP), 2010 WL 445192 (S.D.N.Y. Feb. 8, 2010) (court permits amendment after "[d]rawing all inferences in [movants'] favor"). Here, the runner was called out even though it appears he beat the throw to first.

[2] As this Court explained in *RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009), "The major grounds justifying reconsideration are an intervening change in controlling law, the availability

**1.     The Court's October 4, 2010 order on the Defendants' original motion to dismiss should not be read as establishing a deadline to file all amendments by October 25, 2010, and thereafter only by showing "good cause."**

In the Court's October 4, 2010 order, granting in part and denying in part the Defendants' motion to dismiss, the Court gave certain of the Plaintiffs twenty-one days to come back to the Court to seek to justify curing the defects found by the Court in their original complaints (in the case of the *Maridom* Plaintiffs, the failure to identify the specific individuals who made misrepresentations to the Plaintiffs and where these misrepresentations were made). *Anwar v. Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 360, 379 (S.D.N.Y. 2010). The *Maridom* Plaintiffs chose not to do so. (They seek to add this allegation now, but it is one small part of the amendment they seek.)

The Court has now ruled that the deadline in the October 4, 2010 order bars *any* amendment with respect to *any* matter, whether or not the amendment relates to a previously determined pleading defect, without a showing of "good cause" to overlook "undue delay." This cannot logically have been the Court's intention in issuing the October 4, 201 order, but this is surely the effect of the Decision and Order.

As this Court noted in *Bridgeport Music,* 248 F.R.D. at 412, a scheduling order of the type referred to in the "good cause" cases refers to an

---

of new evidence, or the need to correct a clear error or prevent manifest injustice." (citations and quotation marks omitted).

order establishing a date by which parties may amend their pleadings issued pursuant to Fed.R.Civ.P. 16. The Second Amended Scheduling Order, DE 609, issued in this case by Magistrate Judge Katz on February 22, 2011, at the outset of discovery, contains *no* deadline for filing amended pleadings. Treating the October 4, 2010 order as enacting a deadline for all amendments, including those unrelated to the earlier short deadline, months before discovery was permitted to begin, is out of tune with the spirit and letter of Rule 15(a), without having to show "good cause." The "good cause" standard should not be applied because, manifestly, it is inapplicable.

**2.     The Plaintiffs cannot fairly be considered to be guilty of "undue delay," and, even if they need to show good cause to amend, they have plainly done so.**

The Court found that the *Maridom* Plaintiffs engaged in "undue delay." Decision and Order at 6. Respectfully, there was no factual basis for this finding, so that, even if "good cause" rule were required, the *Maridom* Plaintiffs unquestionably can satisfy that standard.

**a.     The discovery deadline was not "extended several times." There was one two-month extension.**

As an initial matter, the Court states that "[t]he discovery deadline has been extended several times" in the *Standard Chartered* cases, Decision and Order at 2, but this is simply not the case. The *Standard Chartered* cases have been operating under Scheduling Orders independent of the *Anwar* case. Here, there was but one short extension, from March 2 to May 4, which

the Standard Chartered Defendants consented to in broad terms, despite disagreeing on certain conditions. The Magistrate Judge ordered the extension over those objections. *That is the only extension of discovery in this case.* A two-month extension supported by both sides hardly evidences undue delay by the *Maridom* Plaintiffs.

### b. No Delay in Conducting Discovery

The Plaintiffs have been exceedingly diligent in conducting discovery in this case. Discovery has lasted from February 2011 to May 2012. After answers were filed, initial time was spent on negotiating scheduling and confidentiality orders and seeking the appointment of a Plaintiffs' Steering Committee. Those orders were entered in February 2011. After which the Magistrate Judge permitted discovery to begin. Initial written discovery was promptly promulgated by the Plaintiffs in February 2011. Standard Chartered dribbled out their documents and did not conclude producing documents until March 2012. Moreover, while this process wended its way to conclusion, Standard Chartered refused to produce many of the critical documents requested, requiring the Plaintiffs, over and over, to seek the assistance of Judge Katz. Standard Chartered objected to producing a vast array of documents, resulting in substantial delays in the Plaintiffs' ability to obtain discovery.[3] Nevertheless, even before receiving plainly important

---

[3]   Perhaps the most significant and outrageous of these delays was caused by the Defendants' long-standing refusal to conduct a diligent search

documents, such as the all-important Swiss-based due diligence documents, see n. 4, the Plaintiffs began depositions – but only after having to wait three weeks after their original proposed start because Judge Katz agreed to the Defendants' illogical, if not plainly cynical, request to delay the depositions of the Defendants' former employees because the Defendants had not yet produced all of their documents.

In sum, the Plaintiffs cannot fairly be accused of *any* delay in discovery proceedings, let alone *undue* delay. And if good cause for any perceived delay needs to be shown, it is clear that the *Maridom* Plaintiffs have done so. Even had the Standard Chartered Defendants not fought hard to prevent fair discovery, there can be no finding that the *Maridom* Plaintiffs, or *any* of the Plaintiffs, dawdled in any manner or form.

> b.   **No "Undue Delay" in Naming Other Defendants**

The *Maridom* Plaintiffs sued American Express Bank International ("AEBI"), the Miami-based Edge Act bank that was their family and business bank since the 1980s, and which recommended that they buy Fairfield

---

of the documents in their office in Switzerland, *where the "due diligence" of Fairfield Sentry was conducted*. (This case is, in substantial part, about whether Standard Chartered did an adequate job of due diligence respecting Fairfield Sentry.) Finally, in January 2012, Magistrate Judge Katz ordered a search to be made, and a raft of responsive documents were finally produced, for the first time, on March 2, 2012, over a year after they were requested.

Sentry.[4] The Court has found that the *Maridom* Plaintiffs engaged in undue delay because they did not earlier name two other corporations owned by American Express Company, and later Standard Chartered PLC, that they now propose to sue: American Express Bank, Ltd., now known as Standard Chartered International (USA) Ltd. ("SCI"), the parent of AEBI, and Standard Chartered Bank. Respectfully, there is no basis in fairness or logic to draw the conclusion that they waited too long.

      Until well into discovery, neither the Plaintiffs nor counsel knew anything about the role played by SCI, other than its status as the owner of the operating subsidiary, AEBI, and by Standard Chartered Bank, other than its role as owner of SCI. There is, of course, a profound difference between knowing the identity of an entity and concluding, through discovery, that there is a factual and legal basis to sue that entity. The Court appears to have overlooked this significant difference. The Court appears to be saying that the *Maridom* Plaintiffs should have sued American Express Bank and Standard Chartered Bank without being satisfied (or even suspecting) that there was a basis in fact and law to name these parties as defendants - or be forever barred from doing so absent a showing of good cause. Requiring an earlier attempt to sue these companies ignores the basic concept underlying the existence of private corporations, limited liability for a subsidiary's debt

---

[4]     The three plaintiffs are corporations under the common control of two families in the Dominican Republic related by marriage.

or other obligation, and further encourages the prudent plaintiff disregard the strictures of Rule 11 in determining whom to sue and when, just to avoid a finding that it waited too long to sue.

Nor does the fact that other Plaintiffs had already sued Standard Chartered Bank or SCI have any real significance. There is no authority of which we are aware that suggests that this is a basis to deny leave to amend. The *Maridom* Plaintiffs were not working with the other Plaintiffs that sued Standard Chartered when these cases were being brought, and vice versa. Whatever those Plaintiffs who did sue SCI or Standard Chartered Bank knew about these parties is in no way imputable to the *Maridom* Plaintiffs or their counsel. If the judgment of the *Maridom* Plaintiffs' counsel that there was not enough basis to sue the parent corporations at the outset, absent discovery, that judgment should not be deemed flawed simply because other Plaintiffs' counsel appear to have reached a different conclusion.

This Court, in *Bridgeport Music*, faced a somewhat similar situation where one defendant sought to convince the Court to deny leave to amend to add a new defendant. The Court found that "the mere knowledge that MusicNet offered white label service would not have established that it was engaged in licensing Bridegport's compositions specifically. Bridgeport reasonably waited until it could inquire further into the extent of MusicNet's activities with respect to Bridgeport's compositions before moving to add

MusicNet as a defendant." 248 F.R.D. at 413-14. By analogy, the same rationale should apply here.

### c.     No Delay in Bring Florida Blue Sky Act Claim.

Similarly, the *Maridom* Plaintiffs should not be penalized for waiting to seek to bring a Florida Blue Sky Act claim does not show delay of any kind, undue or otherwise, on the part of the *Maridom* Plaintiffs. The interests of judicial economy would have been violated had they sought to amend their complaint on a piecemeal basis – *i.e.*, first, to file a Blue Sky Act claim, second, to add additional defendants, etc.

Moreover, the decision whether to bring an available action is not as simple as simply being aware of the possibility of bringing such an action; knowing the results of discovery may very well influence the decision whether it is the clients' best interest to seek to invoke this statute. Ordinarily, under Rule 15, there is no penalty for waiting until discovery is not even over to seek to bring a new claim, when it is undisputed that no additional discovery will be engendered by the new claim. There is no basis to vary from that course.

In sum, the finding of undue delay on the part of the *Maridom* Plaintiffs is plainly in error and is manifestly unjust.

**3.     The Court erred in finding "undue prejudice" to the Defendants.**

Even if the Court were not in error in finding "undue delay" and in invoking the "good cause" standard, the Court concludes without basis that the amendment would cause "significant delay," thereby causing the Defendants "undue prejudice." The sole basis for this conclusion would be the fact that allowing an amendment might require the Defendants to file a motion to dismiss. Decision and Order at 8. The *possible* delay caused by "inevitable" motions to dismiss is simply not the kind of "significant delay" that constitutes "undue prejudice" and therefore justifies denial of leave to amend. Far more serious effects have been deemed not to cause prejudice.

There is no requirement under the Federal Rules of Civil Procedure that a defendant move to dismiss a complaint it finds defective. All defenses that could be asserted in a motion to dismiss are preserved in properly asserted affirmative defenses. Motions for summary judgment, which clearly will be filed whether leave to amend is granted or not, can test the sufficiency of the newly pleading claims. (Surely a defendant without the means of a major international bank might be quite content to do so and avoid the expense of filing a new motion to dismiss and a motion for summary judgment.) Moreover, this process need not be lengthy. The federal rules provide for responding within fourteen days. Fed.R.Civ.P. 15(a)(3). Local Rule 6.1(a) provides for filing of a response within seven days and for the filing of a

reply within another seven days. The month that would be spent on motion practice, if the Defendants in good faith saw a basis to file a motion to dismiss, is not "significant" delay in a case such as this.

In any event, it is the *Plaintiffs* who are primarily hurt by delay, not the *Defendants*. The Defendants can be expected to claim that they want this matter handled expeditiously, but when one takes into account the fact that they have not filed counterclaims, the businesses involved have long since been sold, the corporate witnesses involved are, almost to the last person, no longer employees or officers of the defendants, the Defendants are not significantly harmed by giving the Plaintiffs an opportunity to frame the pleadings the way they wish.

Finally, the Court's finding overlooks the fact that it is impossible to determine at this stage where or when this case will be tried, so it is therefore essentially speculative to determine that *any* delay in proceeding would be "undue." We do not even know where this case will be tried, since the parties, or some of them, may ask the Southern District of Florida to transfer the action back to this Court, even after a remand by the Judicial Panel on Multi-District Litigation, because of this Court's familiarity with this case. *See Manual for Complex Litigation, Fourth*, at § 20.132, at 223-25. Also, the parties may stipulate to this Court's trying the case. *See In Re Carbon Dioxide Indus. Antitrust Litig.*, 229 F.3d 1321, 1325 (11th Cir.2000) (describing ways in which courts have "remained faithful to the *Lexecon*

limitations" while recognizing policy reasons that militate in favor of transferee court's trying the case). Thus, it is not possible even to measure the relative impact on trying this case by granting leave to amend.

## CONCLUSION

For the reasons stated above, the *Maridom* Plaintiffs respectfully request that this Court grant their motion for reconsideration and enter an order permitting the proposed amendment.

Respectfully submitted,

/s/ Richard E. Brodsky

_____
Richard E. Brodsky
Florida Bar No. 322520
The Brodsky Law Firm, PL
200 South Biscayne Blvd., Suite 1930
Miami, FL 33131
rbrodsky@thebrodskylawfirm.com
786-220-3328
Attorney for Maridom Plaintiffs
Admitted pro hac vice

### CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Richard E. Brodsky

_____
Richard E. Brodsky