## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY



May 2, 2012

By Hand

The Honorable Theodore H. Katz,
   United States Magistrate Judge,
      Daniel Patrick Moynihan U.S. Courthouse,
         500 Pearl Street,
           New York, New York 10007.

      Re:  *Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118 --
            *Headway Investment Corp. v. American Express Bank Ltd.*

Dear Judge Katz:

      I write on behalf of the Standard Chartered Defendants ("Standard Chartered"), in response to the April 27, 2012 request from plaintiff Headway Investment Corporation ("Headway") for an order compelling Messrs. Robert Friedman, Rodolfo Pages and Joe Hardiman to appear for a second deposition in this action. Headway's request should be denied.

      Headway seeks to depose these witnesses for a second time in order to ask them about a document that was produced by Standard Chartered on July 1, 2011, and marked as Defendants' Exhibit 94A ("DX 94A") during the April 18, 2012 deposition of Carlos Gadala-Maria, a former Relationship Manager ("RM") team leader at American Express Bank International.[1] This exhibit also was used during the April 19, 2012 deposition of Raul Mas, Headway's former RM. The exhibit and the testimony of Messrs. Gadala-Maria and Mas reveal that Headway's third-party investment advisor, Carlos Gonzalez, initiated Headway's investment in Fairfield Sentry Ltd. ("Fairfield Sentry") as an "unsolicited trade," rather than in response to a recommendation from Standard Chartered. Unhappy with this evidence, Headway wants to re-depose Messrs. Friedman, Pages and Hardiman regarding DX 94A.

      Since the outset of fact discovery, the Court has made clear (and the parties agreed) that "no person shall be deposed more than once absent good cause."

---

[1]    A copy of DX 94A, which bears document production numbers SCB_MDL_00012423-00012424, is attached as Exhibit A.

The Honorable Theodore H. Katz                                                        -2-

(Feb. 3, 2011 Second Am. Scheduling Order Regarding Standard Chartered Cases ¶ 7.)[2] Headway has not established good cause to depose any of these witnesses a second time. Standard Chartered produced DX 94A to Headway months before any depositions took place in these coordinated proceedings. Moreover, the Standard Chartered Plaintiffs' Steering Committee – of which Headway's counsel is a member – represented to the Court during the October 31, 2011 discovery conference before Your Honor that plaintiffs would accept the risk that they would not be permitted to recall Messrs. Friedman, Pages and Hardiman for a second deposition if they elected to focus their depositions of these witnesses on general due diligence questions, rather than on plaintiff-specific matters.

Headway's purported "cause" for seeking these depositions cannot be supported. Headways asserts that Standard Chartered somehow hid DX 94A from it. This is incorrect. Indeed, Headway mischaracterizes the manner in which discovery has progressed in these cases. Headway did not serve its own "specific production requests" on Standard Chartered. (Headway Letter at 5.) Rather, in accordance with the February 4, 2011 Stipulation and Order Appointing Standard Chartered Plaintiffs' Steering Committee (Dkt. No. 602), the Steering Committee served a common set of document requests on behalf of plaintiffs as a group. Standard Chartered thereafter responded to plaintiffs' document requests on a consolidated basis. The Steering Committee was required to establish a document "depository" to which all plaintiffs would have access (Steering Committee Order at 4), and the Steering Committee provided Standard Chartered with instructions so that the documents it produced would be loaded into that electronic depository.

Following the above protocols, Standard Chartered produced documents to Headway in the same manner that it produced documents to every other plaintiff in this litigation – by sending them to the Steering Committee through the electronic discovery vendor designated by the Steering Committee to receive documents. Headway's repeated assertions that DX 94A was "not produced to Headway" and was instead "dumped" elsewhere are simply not true. (Headway Letter at 1; *see also id.* at 2, 4.) Standard Chartered first produced DX 94A to the Steering Committee ten months ago, on July 1, 2011. Pursuant to the parties' agreed-to production protocol, Standard Chartered produced DX 94A with searchable text and associated metadata. In addition, on July 7, 2011, at the request of Headway's counsel, Standard Chartered produced a second copy of DX 94A to the electronic discovery vendor designated by the Steering Committee. Plaintiffs deposed Mr. Hardiman on November 22, 2011, Mr. Pages on January 20, 2012

---

[2]     *See also* Oct. 31, 2011 Hearing Tr. at 22:1-2 ("THE COURT: In any circumstance, there is certainly going to be a presumption against a second deposition.").

The Honorable Theodore H. Katz                                                               -3-

and Mr. Friedman on March 22, 2012.[3]  In other words, Standard Chartered produced DX 94A to Headway and all other plaintiffs months before these witnesses were deposed.

Headway's assertion that DX 94A was "undiscoverable" by Headway once it was produced to plaintiffs makes no sense. (Headway Letter at 1.) Headway alleged in its complaint that Mr. Raul Mas was Headway's RM at the time Headway invested in Fairfield Sentry. (Headway Complaint ¶ 11.) A simple search of the "SCB_MDL" database for documents mentioning "Raul Mas" would have identified 16 documents of possible relevance to Headway's account, including DX 94A and *7 other documents* in the same chain of email messages as DX 94A. Each of these 8 documents – amounting to 11 pages all together – refers to a $4 million investment in Fairfield Sentry in January 2003, which corresponds exactly to the amount and the timing of Headway's initial investment in Fairfield Sentry.[4] Moreover, as Headway concedes (Headway Letter at 4 n.4), in preparing for the depositions of Messrs. Friedman, Pages and Hardiman, Headway could have searched for documents containing any of their names – or any documents containing all three of their names – and located DX 94A. That Headway's counsel apparently did not perform any of these searches was not of Standard Chartered's doing.

Although Headway's lawyers appeared at the depositions of Messrs. Friedman, Pages and Hardiman, they did not ask any of these witnesses a single question about Headway's investments in Fairfield Sentry or Fairfield Sigma Ltd. There is a reason for that: As the Court may recall, plaintiffs first sought to depose Messrs. Friedman, Pages and Hardiman in October 2011. (*See* Standard Chartered's Oct. 24, 2011 Letter to Your Honor at 2 n.2.) During the discovery conference held on October 31, 2011 – at which Headway's counsel appeared – plaintiffs stated that the reason they wanted to depose these witnesses was that they were "involved in one fashion or another in due diligence." (Oct. 31, 2011 Hearing Tr. at 3:24-25.) Plaintiffs dismissed as "silly" the notion that they might need to depose someone like Mr. Friedman "about the details of [a] client's investment account." (*Id.* at 10:3-4.) Yet, plaintiffs went even further than that, as the following colloquy with the Court makes clear:

> MR. BRODSKY: The fact of the matter is that we are willing to take the risk, however great or small, that your Honor will tell us go take a long walk off a short pier if we come back [and seek to depose] any one of these witnesses.

---

[3]  All three depositions took place at the offices of Headway's counsel in New York or Coral Gables, Florida.

[4]  These eight documents bear production numbers SCB_MDL_00012423-00012424 (DX 94A), SCB_MDL_00090389-00090390, SCB_MDL_00090391, SCB_MDL_00090392, SCB_MDL_00103130-00103131, SCB_MDL_00103132, SCB_MDL_00103133, and SCB_MDL_00114953.

The Honorable Theodore H. Katz                                                                    -4-

> Why am I willing to take a risk? Because I want to take the deposition on November 3, come hell or high water? No. It's because I believe, in fact, these particular witnesses are not going to be around for other purposes because the only question from a liability point of view as a practical matter relates to what these people knew about Madoff and Fairfield and whether they had a basis to recommend it and what they told our clients.
>
> THE COURT: Okay.
>
> MR. BRODSKY: All in the nature of due diligence.
>
> THE COURT: Okay.
>
> MR. BRODSKY: The chances of our needing to bring back a particular witness on a particular subject I can represent to the Court are relatively slim, and, your Honor, if it turns out that I've been mistaken, then we'll take the risk that your Honor will take it out on us.

(*Id.* at 12:8-13:2.)

The Court should hold plaintiffs to their word. They made the conscious strategic decision to depose Messrs. Friedman, Pages and Hardiman before deposing any RMs. Plaintiffs also chose to focus their depositions of Messrs. Friedman, Pages and Hardiman on general questions of due diligence and operations, rather than on whatever knowledge these witnesses might have concerning any specific plaintiff's investments. In these circumstances, neither Headway nor any other plaintiff has good cause to depose these witnesses again.

Sincerely,

Bradley P. Smith

(Attachment)

cc:   Standard Chartered Plaintiffs' Steering Committee
      (via E-mail)

*[Handwritten note:] The request to reopen the depositions of Messrs. Friedman, Haldiman, and Pages is denied. The parties were advised repeatedly that there would be no second deposition sessions and Headway has not shown good cause to deviate from that understanding. So ordered. 5/7/12  Theodore H. Katz, USMJ*