UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MASTER NO. 09-cv-118 (VM) (THK)

PASHA ANWAR, et al.,

    Plaintiffs,

v.

FAIRFIELD GREENWICH LIMITED,
et al.,

    Defendants.

This filing relates to *Maridom Ltd., et al.,
v. Standard Chartered Bank International
(Americas), Ltd.*
_____/

### *MARIDOM* PLAINTIFFS' REQUEST FOR ORAL ARGUMENT
### AND
### REPLY MEMORANDUM
### RE MOTION FOR RECONSIDERATION OF ORDER
### DENYING LEAVE TO AMEND COMPLAINT

### REQUEST FOR ORAL ARGUMENT

In connection with the Court's consideration of their Motion for Reconsideration (DE 860, 861) of the Court's Decision and Order (DE 853) denying their motion for leave to amend, Plaintiffs Maridom Ltd., Caribetrans, S.A., and Abbot Capital Inc. ("*Maridom* Plaintiffs") hereby request that this Court schedule oral argument on the Motion. This is a critical motion and the *Maridom* Plaintiffs respectfully submit that this Court would benefit from a thorough airing of the issues through oral argument.

### REPLY MEMORANDUM

This Memorandum is submitted by the *Maridom* Plaintiffs in reply to Defendants' Consolidated Memorandum of Law in Opposition to their motion for reconsideration and

that of Headway Investment Corporation. This Memorandum shall be limited to points raised or ignored in Defendants' Memorandum ("Def.Mem.") (DE 874).

### 1. The Defendants' Resort to the Red Herring Ploy: Argue Against a Motion On Grounds Not Even Made

We begin by pointing out to the Court that the Standard Chartered Defendants nowhere address or even acknowledge the *Maridom* Plaintiffs' actual argument - that the Court's Decision and Order will cause manifest injustice to the *Maridom* Plaintiffs and was clearly in error under prevailing standards governing motion practice under Rules 15(a) and 21(a). Instead, the Defendants "respond" to arguments that simply were not made, resorting to the ancient rhetorical fallacy identified by Aristotle as *ignoratio elenchi* - "the affirmation and the denial are not concerned with the same point," Aristotle, *On Sophistical Refutations*, Part 1, sec. 5, *available at* http://classics.mit.edu/Aristotle/sophist_refut.1.1.html (last accessed May 15, 2012), known today as strewing red herrings across the trail of the foxes. Lee C. Archie, Philosophy 103: Introduction to Logic, Ignoratio Elenchi, *available at* http://philosophy.lander.edu/logic/ignoratio.html (last accessed May 16, 2012). This device is aimed at distracting the reader (here, the Court) from the proponent's argument.

For their part, the Maridom Plaintiffs could not have been clearer in explaining the *exact* grounds for their motion for reconsideration. In their Memorandum of Law (("Pl.Mem.") (DE 861) at 2 n.2, they acknowledge that while there are three general grounds for granting reconsideration - "(1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice" – "[t]he grounds for this Motion for Reconsideration are that this

Court's Decision and Order was clear error and, if unchanged, will create manifest injustice for the Plaintiffs." *Id.*, at 2. The Defendants pay lip service to the fact that motions for reconsideration can rest on any of the three separate grounds stated above, Def.Mem., at 3 (citing cases), but then proceed to forget all about the third ground – "the need to correct a clear error or prevent a manifest injustice." They base their arguments solely based on whether the Plaintiffs have satisfied grounds for reconsideration that they have not even asserted.[1] Since the Defendants have assiduously avoided attempting to rebut the Plaintiffs' actual arguments, the Court would be justifying in ignoring the Defendants' response.

Nevertheless, we address and easily refute the Defendants' arguments. These arguments are filled with errors and omissions, and fail to rebut the points advanced by the *Maridom* Plaintiffs.

### 2. The Defendants Fail to Rebut the Main Points Made by the *Maridom* Plaintiffs

#### a. Treating the October 4, 2010 Order as Having Established a Deadline for the Plaintiffs' Seeking to Amend their Pleadings is Manifestly Unjust

Respectfully, the Court clearly erred, and has caused manifest injustice to the Plaintiffs, by holding that the Court's October 4, 2010 Order established a deadline for

---

[1] *E.g.*, Def.Mem. at 5 ("the arguments now advanced by plaintiffs do not satisfy the standards on a motion for reconsideration. Plaintiffs do not argue that the Court overlooked any 'controlling decisions' applicable to their motions"); *id.* at 6 ("Again, however, plaintiffs fail to identify any controlling precedent or factual matter overlooked by the Court"; "Plaintiffs identify nothing new in their instant motions that would justify revisiting the Court's conclusions"); *id.* at 7 ("*Bridgeport Music* plainly is not controlling authority overlooked by the Court").

the Plaintiffs' amending pleadings on *any* grounds, whether or not related to the defects found by the Court in that Order. The Defendants fail to deal with any of the reasons that the Court's decision should be reconsidered:

(i) the deadline is unilateral, applying only to the Plaintiffs, and, by its terms, having no effect on the Defendants;[2]

(ii) the deadline requires all amendments to be proposed over three months before discovery began; and

(iii) the deadline applies to all amendments, whether or not related to the narrow defects found by the Court.

The Standard Chartered Defendants try to defend the Court's decision by stating that "[t]he Court's denial of plaintiffs' motions for leave to amend their complaints at this late stage therefore is entirely consistent with the principle that 'amendment of a pleading as a matter of course pursuant to Rule 15(a) is subject to the district court's discretion to limit the time for amendment of the pleadings in a scheduling order issued under Rule 16(b).' *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)." Def.Mem., at 4-5. The Defendants also rely on *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000), to try to assist their cause.

*Kassner* provides no refuge for the Defendants because it speaks to a scheduling order entered under Rule 16(b). As thoroughly explained in the Second Circuit's earlier

---

[2]   It is entirely fair for the *Maridom* Plaintiffs to make this point in this brief, even though they did not do so in their memorandum in support of their motion for reconsideration, because this point was made by Headway in its memorandum in support of its motion for reconsideration, DE 859 at 5 n.5, and the Defendants chose not only to make one response to both parties' motions but also to ignore Headway's argument.

decision in *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000), quoted liberally in *Kassner*, 496 F.3d at 243, a "scheduling order" contemplated by Rule 16(b is wholly different from language the Court relies on in its October 4, 2010 Order:

> According to Rule 16(b), within 90 days after the appearance of the defendant and within 120 days of the service of a complaint on a defendant, the district court shall enter a scheduling order setting deadlines for subsequent proceedings in the case, including joinder of parties and amendments to the pleadings. *See id.* By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that "at some point both the parties and the pleadings will be fixed." *See* Fed.R.Civ.P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)).

Thus, a valid Rule 16(b) order applies to all parties' proposed amendments, not just one side's. By contrast, the portion of the October 4, 2010 Order that has been turned into a deadline for Plaintiffs' amendments was unilaterally (and, *on its face*, properly) addressed solely to the "repleading" of the Plaintiffs' claims dismissed in that Order. The Court undoubtedly never intended that this language be applied to establish a deadline for seeking leave to amend – and, at that, a deadline solely for the Plaintiffs. But that is precisely the effect of the Decision and Order, and the Defendants simply ignore this injustice.

Moreover, the Defendants are silent in dealing with another defect in the Court's Decision and Order – that the Court's October 25, 2010 deadline for amending the Plaintiffs' pleadings was more than three months before discovery began. It requires no citation to demonstrate that that such a deadline is *per se* unreasonable and completely inconsistent with the liberality established under Rules 15(a) and Rule 21(a). Surely the

Court did not intend to announce such a radical departure from the established doctrine that, ordinarily, leave to amend should be freely granted.

Finally, the Defendants are silent about the fact that fixing October 25, 2010 as the deadline for the Plaintiffs' proposing all amendments, even those unrelated to the pleading defects found in the October 4, 2010 Order, is inconsistent with both the letter of, and the case law under, Rule 15(a). If nothing else, treating the October 4, 2010 Order in the manner in which the Court has done is manifestly unfair because it failed to provide the Plaintiffs fair warning that if they did not seek all amendments by that date they would be considered tardy. Certainly no one reading the applicable language of that Order – "ORDERED that plaintiffs Headway Investment Corp., Maria Arkiby Valladolid, Ricardo Lopez, Maridom Ltd., Caribetrans, S.A., and Abbot Capital, Inc., herein are granted leave to *replead* upon submitting to the Court, within twenty-one days of this Order, an application therefore plausibly showing how such *repleading would correct the deficiencies identified in the Court's findings discussed above*, and thus would not be futile" (emphasis added) – could have deduced that this language was meant to apply to *all* amendments, whether or not linked to the defective claims found in the Order.

Finally, *Commander*, another case cited by the Defendants holds that the trial court did not abuse its discretion in granting leave to amend an answer, *seven years after the action was commenced*, to assert a limitations defense. True, the cases establish that the Court has discretion to deny or approve amendments, but, with respect, that discretion must be employed within the context that, ordinarily, absent bad faith, undue delay or

serious prejudice to the opposing party, leave to amend to amend is to be "freely granted," Rule 15(a). As Judge Wisdom stated in *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981): "'Discretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires. It evinces a bias in favor of granting leave to amend. The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." A trial court's discretion certainly does not extend to erecting the kind of novel and unfair barriers to amendment of pleadings that the Decision and Order imposes.

### b. The Court Plainly Erred in Finding Dilatoriness on the Part of the Maridom Plaintiffs

The Defendants point out that the Court stated that, even under the ordinary standard governing Rule 15(a) motions, the amendment should be denied. Decision and Order, at 6. This is true, but, respectfully, the remaining portions of the Decision and Order speak almost exclusively to the supposed lack of diligence of the Maridom Plaintiffs. It is submitted that, other than the *Maridom* Plaintiffs' choosing not to amend the fraud allegation by identifying who made the misrepresentation, and where the misrepresentation was made (the only defect in the *Maridom* complaint found by the Court in its October 4, 2010 Order), there is *absolutely no basis in fact* for the proposition that the *Maridom* Plaintiffs have been dilatory in the conduct of this litigation.

Indeed, the Defendants effectively acknowledge as much when they seek to deny the relevance of the discovery efforts made by the Standard Chartered Plaintiffs against

the ceaseless, dogged attempts by the Standard Chartered Defendants to deny the Plaintiffs basic written discovery and depositions. The Defendants cannot slice the bologna so thin. The Court should take into account the entire scope of the pretrial proceedings. It should specifically recognize its plain error in stating that discovery in this case had been extended "several times." This is not a "red herring," as the Defendants charge. Def.Mem., at 7. It illustrates what appears to be a basic misconception of what occurred in the conduct of the discovery phase of the Standard Chartered Cases. That the Plaintiffs' dozen or so letters to the Magistrate Judge complaining of the Defendants' constant efforts to obstruct discovery do not appear of record does not eliminate the fact that those efforts were strenuous, causing substantial delay in the Plaintiffs' attempt to obtain the most basic documents so obviously relevant to their case. *See* Pl.Mem., at 5-6. It is no wonder that the Defendants try to pooh-pooh this important point.

      The Court finds that *Maridom* Plaintiffs dilly-dallied when they did not name other Standard Chartered entities as defendants, Decision and Order, at 7, but the Standard Chartered Defendants say nary a word about the *Maridom* Plaintiffs' explanation: that they and their counsel did not seek to amend their pleading to name these parties until after discovery revealed to them a basis for seeking to do so. Pl.Mem., at 6-9. The negative pregnant of the Court's Decision and Order – that a plaintiff should rush to name additional defendants without conducting discovery to determine the existence of such a claim – is plainly inconsistent with both common sense and careful

adherence to the underlying premise of the Federal Rules, which allows parties, through discovery, *not* to have to shoot first and ask questions later.

The Defendants try to distinguish this Court's opinion in *Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 248 F.R.D. 408 (S.D.N.Y. 2008), by pointing to the fact that the amendment in that case was filed three weeks after the deposition in which the basis to sue the new defendant was revealed, as well as the fact that the existing defendant had consented to amending certain other allegations. The first argument is baseless because it does not show a contrast with the facts in this case. In fact, the *Maridom* Plaintiffs filed their motion to amend three weeks before discovery was to end and, what is more, well *before* (i) they deposed Robert Friedman, the officer of the proposed defendant formerly known as American Express Bank, Ltd. who was responsible for overseeing the process by which investment products, including Fairfield Sentry Fund, were approved for recommendation to American Express Bank International (Americas) Ltd. customers; (ii) they deposed Bjorn Stauch, the executive of Standard Chartered responsible for overseeing the integration of AEB and AEBI into the Standard Chartered fold after the acquisition of AEB and AEBI in February 2008; and (iii) they received a multitude of documents that the Standard Chartered Defendants had been vigorously withholding from production until, finally, Magistrate Judge Katz ordered them produced.[3]  It simply cannot be denied that the rationale of this Court in *Bridgeport Music* is wholly applicable to this case:

---

[3]  As to the fact that the defendants in *Bridgeport* agreed to some amendments is completely irrelevant, a classic instance of a distinction without a difference. One party's right to amend does not depend on whether the opposing party agrees to some

>the mere knowledge that MusicNet offered white label service would not have established that it was engaged in licensing Bridgeport's compositions specifically. Bridgeport reasonably waited until it could inquire further into the extent of MusicNet's activities with respect to Bridgeport's compositions before moving to add MusicNet as a defendant.

248 F.R.D. at 413-14.

Another example of alleged dilatoriness that the Court points to is the request to amend to add a count under the Florida Securities and Investor Protection Act. That this amendment could have been sought earlier does not mean that it was too late to seek this amendment when the Plaintiffs did. After all, it is *undenied by the Defendants* that this proposed amendment, as well as all of the amendments proposed by the *Maridom* Plaintiffs, would not engender any additional discovery by either party. The observation that an amendment could have been filed earlier than it was has no logical bearing on whether the amendment should be allowed. The touchstone is not the timing of a proposed amendment (absent barriers not legitimately laid in the Plaintiffs' way) but its assertion in good faith and its lack of prejudice to the other side. "Leave to amend shall be freely granted when justice so requires" is an invitation to liberality, not to the creation and operation of an artificial, one-sided and arbitrary playing field.

### c.   Permitting the Amendment Would Not "Unduly Prejudice" the Defendants

The last issue to which the Defendants have no answer is how granting the plaintiffs' motion to amend their complaint could possibly be deemed to create "undue

---

amendments. Otherwise, the opposing party could stonewall all amendments and therefore prevent any.

prejudice" to them, when it is undisputed that (i) the amendments will not require additional discovery, and (ii) the motion was filed (a) before discovery was concluded, (b) before any motion for summary judgment was filed, (c) before a trial setting, and (c) before it is even determined where trial will occur, or in what context (consolidated? separate? bifurcated?).

The factors present in this case that usually result in granting of the amendment. Indeed, the Defendants (and the Court) have not even suggested that if leave to amend were granted and all or some of the proposed amendments survived a motion to dismiss, the result would be a longer trial. In fact, the last factor alone is seen by some courts as eliminating the claim of "undue prejudice". *See, e.g.*, *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 237 F.R.D. 534, 537 (D. Conn. 2006) (amendment permitted where motion filed during discovery period, no summary judgment motion filed, and, while granting amendment would likely postpone trial, trial itself would not take longer). Here, however, these critical factors, all of which militate in favor of granting leave, have been ignored.

The "prejudice" found by the Court were it to permit an amendment – the delay that would be engendered were the Standard Chartered Defendants to revert to form and automatically move to dismiss – does not come close to the kind of "undue" prejudice that is required by the cases to justify denial of leave to amend. For one thing, the Defendants (and the Court) ignore that the defendants could obviate any alleged prejudice were they simply to answer the amended complaint, preserve their defenses in the answer, and argue the legal issues on summary judgment. For another, the Defendants do not challenge the *Maridom* Plaintiffs' showing that the actual effect of permitting the

Defendants to move to dismiss is speculative, and, as the Plaintiffs carefully pointed out, even if one assumes the Defendants' right to file a motion to dismiss (assuming that there is a valid basis to do so, which they have not even shown), resort to this procedure will not, in the grand scheme of things with this multi-party MDL'd litigation, create *significant* delay. Surely the Court will not be influenced by the Standard Chartered Defendants' reference to the length of time it took to resolve their original motion to dismiss. That, after all, was aimed at several complaints by several parties, raising far more issues than are raised in this instance, and is of no assistance in predicting the time it will take to resolve any motions to dismiss filed by the Defendants against the proposed pleading filed by the *Maridom* Plaintiffs.[4]

      Finally, the Defendants cite to no case or other authority that remotely suggests that the sort of prejudice found by the Court is severe enough to justify tipping the balance against granting leave to amend. It is not surprising that the Defendants have been unable to cite any authority supporting the Court's decision; one can certainly assume that the Defendants' lawyers, to their credit, burned the midnight oil searching for

---

[4] Nor should it escape notice that the *Maridom* Plaintiffs' proposed Florida Securities and Investor Protection Act claim is specifically drafted to cure the defects found by this Court in its decision dismissing two Standard Chartered Plaintiffs' Florida Blue Sky Act Claims. *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118, 2011 WL 5282684, at *7 (S.D.N.Y. Nov. 2, 2011). Thus, it specifically alleges that Standard Chartered was an agent of Fairfield Greenwich and solicited the purchases of Fairfield Sentry and thus qualified as a "seller," and also alleged that significant aspects of the sales occurred in Florida. This satisfies both of the defects found by the Court in its earlier decision.

such authority. Undue prejudice can be properly found in circumstances diametrically opposite to those presented here, and a mere recitation of a passage from *Wright, Miller & Kane* shows how inapposite such cases are:

> For example, if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial. In a similar vein, if the court determines that the proposed amendment would result in defendant being put to added expense and the burden of a more complicated and lengthy trial or that the issues raised by the amendment are remote from the other issues in the case and might confuse or mislead the jury, leave to amend may be denied.

§ 1487 Amendments With Leave of Court—When Leave to Amend May Be Denied, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.). Of course, citation to this passage is not to suggest that this is an exhaustive list of the kinds of effect needed to be shown to establish "undue prejudice," but it is suggestive of the wide gap lying between the facts of this case and the facts in cases properly finding that the effect on the party opposing an amendment is so severe that the court must deny leave ordinarily "freely granted."

The Defendants' last attempt to justify denial of leave to amend is to suggest that if the *Maridom* Plaintiffs' amendment had been permitted, this "would have opened the flood gates to amendments by other plaintiffs in the MDL." Def.Mem., at 6. This argument approaches the fatuous. Surely the Court will be able to distinguish between the the merits of a motion for leave to amend in February 2012 and that of a motion that, were the Court to reverse its decision, would be filed in May 2012 or later. No floodgates would have to be opened.

## CONCLUSION

For the reasons set forth herein and in the Motion for Reconsideration, this Court should grant the motion and permit the amendment sought by the *Maridom* Plaintiffs.

    Respectfully submitted,

    /s/ Richard E. Brodsky

    _____
    Richard E. Brodsky
    Florida Bar No. 322520
    The Brodsky Law Firm, PL
    200 South Biscayne Blvd., Suite 1930
    Miami, FL 33131
    rbrodsky@thebrodskylawfirm.com
    786-220-3328
    Attorney for Maridom Plaintiffs
    Admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

    /s/ Richard E. Brodsky
    _____