UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MASTER NO. 09-cv-118 (VM) (THK)

PASHA ANWAR, et al.,

    Plaintiffs,

v.

FAIRFIELD GREENWICH LIMITED,
et al.,

    Defendants.

This filing relates to *Headway Investment Corp.
v. Standard Chartered Bank Int'l (Americas),
Ltd., et al.*
_____/

# HEADWAY INVESTMENT CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

Jorge A. Mestre
Alan H. Rolnick
Erimar von der Osten
Carlos A. Rodriguez
Rivero Mestre LLP
2525 Ponce de Leon Blvd.
Suite 1000
Coral Gables, FL 33134
Phone Number: 305-445-2500
Fax Number: 305-445-2505
Email: jmestre@riveromestre.com
       ahrolnick@riveromestre.com
       evonderosten@riveromestre.com

## **Table of Contents**

                                                                                 **Page(s)**

1. Introduction ..........................................................................................................................1

2. Applicable Standard for Motion for Reconsideration..........................................................3

3. Argument .............................................................................................................................4

    A.   It was Clear Error to hold that the October 2010 Order was the Scheduling Deadline for Certain Plaintiffs to Amend Pleadings...........................................4

    B.   The April 2012 Order Overlooked Controlling Facts and Evidence Demonstrating that Headway Did Not UndulyDelay in Filing its Motion to Amend.................................................................................................................7

    C.   The April 2012 Order Overlooked Controlling Facts and Evidence Demonstrating that the Bank Would Not be Unfairly Prejudiced by the Amendment.............................................................................................................10

    D.   The Non-Bank Defendants' Opposition Travels on Misstatements of Applicable Law and Unsupportable Assertions of Prejudice..............................11

4. Conclusion .........................................................................................................................13

## Table of Authorities

**Cases**                                                                                                         **Page(s)**

*Anwar v. Fairfield Greenwich Ltd.*,
    800 F.Supp.2d 571 (S.D.N.Y. 2011) ................................................................................ 11

*Perez v. Pavex Corp.*,
    2002 WL 31500404 *1 (M.D. Fla. 2002) .......................................................................... 6

*R.F.M.A.S., Inc. v. Mimi So,*
    640 F. Supp. 2d 506 (S.D.N.Y. 2009) .............................................................................. 4

*Virgin Atl. Airways, Ltd. v. Nat'l. Mediation Bd.*,
    956 F. 2d 1245 (2d Cir. 1992) ..................................................................................... 3, 11

**Statutes and Rules**                                                                                            **Page(s)**

FED. R. CIV. P. 15 ............................................................................................................... *passim*

FED. R. CIV. P. 16 ............................................................................................................... *passim*

FED. R. CIV. P. 1 ........................................................................................................................... 5

FED. R. CIV. P. 16 ......................................................................................................................... 9

**Other Sources**                                                                                                 **Page(s)**

18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4478 ................. 3

**1.     Introduction**

In opposition to Headway's Motion for Reconsideration [D.E. 859], the Standard Chartered defendants (collectively, the "Bank") willfully ignore the overarching truth about the Court's April 13, 2012 Decision and Order (the "April 2012 Order") [D.E. 853] denying Headway's Motion for Leave to Amend Complaint ("Motion to Amend") [D.E. 837]. The truth about the April 2012 Order is that it represents clear error and will cause manifest injustice, because it held that the October 4, 2010 Decision and Order on the Bank's motion to dismiss (the "October 2010 Order") [D.E. 543] was a de facto, one-way scheduling order that imposed, apparently only on certain plaintiffs, a deadline for amending pleadings that ended 112 days before discovery began.

In teasing out of the October 2010 Order a one-way deadline for Headway to file any and all amendments, it has been overlooked that this deadline on its face applied only to the repleading of specific claims by specific plaintiffs and did not give anyone reasonable notice that it would (or even could) apply to any and all amendments destined to be supported by discovery that had not even begun. We respectfully submit that it was incorrect to conclude that Headway's motion for leave to amend was untimely and therefore subject to the "good cause" standard of Fed. R. Civ. P. 16(a)(4) instead of the Rule 15 standard that should apply, and which the motion to Amend easily satisfied. As a matter of law and logic, this Court should reconsider the April 2012 Order—which enforced an unstated deadline for amendments that expired before discovery even began—to correct error and prevent manifest injustice.

The Bank's papers happily adopt the erroneous premise that Headway's Motion to Amend was filed 16 months too late. Instead, it makes passing references to Rule 16

1

factors. But there is absolutely no merit to the argument that anyone would be prejudiced by Headway's amended complaint, as the *Maridom* plaintiffs handily demonstrate in their reply [D.E. 878], which we adopt and incorporate by reference.

Nor is there any merit to the Bank's claim that Headway's motion for reconsideration failed to point out controlling facts that the Court overlooked, which might reasonably have been expected to alter its conclusion. The April 2012 Order overlooked recently obtained evidence of the Bank's fraud, direct evidence that the Bank made knowingly false representations about the Fairfield Sentry Fund. That evidence supported Headway's careful and measured decision to move to amend to assert claims for fraud and negligent misrepresentation, and for violation of Florida's Chapter 517.[1] The April 2012 Order also overlooked this case's procedural history and actual scheduling orders, in concluding that the Bank would be unduly prejudiced if it decided to move to dismiss the amended complaint instead of answering it.

Lastly, we reply to an opposition memorandum filed by defendants Fairfield Greenwich Group ("Fairfield"), its affiliates, Walter M. Noel Jr., Jeffrey Tucker, PricewaterhouseCoopers LLP, PricewaterhouseCoopers N.V., and Citco Fund Services (Europe) B.V. (collectively, the "non-Bank defendants"). The non-Bank defendants' opposition to Headway's Motion for Reconsideration flagrantly misstates the applicable

---

[1] Headway and its counsel take seriously their obligations under Rule 11, and alleged a fraud claim only after discovery revealed sufficient evidence to discharge those obligations. We are prepared to demonstrate that there is no scienter requirement under Chapter 517, but reasonably expected the Bank to strenuously dispute that proposition, and made sure we also could satisfy Rule 9 as to both the fraud claims and Chapter 517 claims.

2

law on this motion for reconsideration and makes unsupportable assertions of prejudice that defy logic, not to mention the facts.[2]

If the Court's April 2012 Order is not rectified, Headway will suffer manifest injustice. If it is rectified, neither the Bank nor the non-Bank defendants will be prejudiced in any way. They have utterly failed to demonstrate anything other than the potential inconvenience of filing an answer or motion to dismiss, which every one of them is quite expert at doing. Inconvenience is not prejudice, let alone unfair prejudice.

Thus, for the reasons set forth below, and those stated in Headway's Memorandum of Law in Support of its Motion for Reconsideration, Headway respectfully requests that the Court reconsider its ruling, withdraw the pertinent aspects of the April 2012 Order, and grant Headway's Motion for Leave to Amend the Complaint.

**2.    Applicable Standard for Motion for Reconsideration**

As noted previously, both in Headway's Motion for Reconsideration and the Bank's opposition, "[t]he major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, *or the need to correct a clear error or prevent manifest injustice*.'" *Virgin Atl. Airways, Ltd. v. Nat'l. Mediation Bd.*, 956 F. 2d 1245, 1255 (2d Cir. 1992) (*quoting* 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790) (emphasis added)). This Court has stated that "[a] request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the Court overlooked and that might reasonably be expected to alter the

---

[2] As a threshold matter, we respectfully submit that these parties, who have never yet been required to respond in any way to Headway's original complaint, have no basis for complaining about prejudice from someday having to respond to an amended complaint.

3

conclusion reached by the Court." *R.F.M.A.S., Inc. v. Mimi So,* 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (Marrero, J.). This we have done, and shall do in further measure below.

3.  **Argument**

    A.  *It was Clear Error to hold that the October 2010 Order was the Scheduling Deadline for Certain Plaintiffs to Amend Pleadings.*

Not surprisingly, the Bank is now in total agreement with the Court's finding that the October 2010 Order was a *de facto* scheduling order that set deadlines for amending pleadings, despite the fact that it said nothing of the sort. That Order applied by its own terms to the Bank's motion to dismiss. At the end of the Order, the Court set a deadline for Headway and other plaintiffs to replead the counts of their original complaints that the Court had dismissed without prejudice.

By its express terms, the October 2010 Order's deadline applied only to some of the claims alleged by specific plaintiffs. It was an Order that addressed the Bank's motion to dismiss. At the very end of the Order, it quite naturally set to a deadline by which specific plaintiffs would be required to "replead" their complaints to "correct the deficiencies" in claims that the Court had dismissed without prejudice. The Order said nothing about any deadline for (1) amending a complaint to add new claims based on discovery that had not yet begun, (2) amending a complaint to refine claims that had been sustained on the motion to dismiss, or (3) amending pleadings (whether answers or complaints) that the Bank, any other defendant, or any plaintiff whose complaint was not subject to the Bank's original motion to dismiss might someday file.[3] To construe the

---

[3] One wonders how this deadline could have applied to the Bank, let alone the non-Bank defendants, because **none of them had filed any pleadings when the Court entered the October 2010 Order, and none of them except the Bank have ever filed any pleadings since.** If it were applicable to all parties, this reading of the Order would require striking the Bank's answer as untimely, together with any answers that the non-Bank defendants might eventually file and any amendments to complaints filed by those plaintiffs

4

October 2010 Order as a scheduling order, and its 21-day deadline for "repleading" specified claims as applying to all pleadings and all parties, it would have to apply to pleadings that had not (and still have not) been filed, and to litigants who were not even before the Court when the deadline expired.

We don't fault the Bank for agreeing with the April 2012 Order and arguing that Headway's Motion to Amend was subject to the "good cause" standard of Rule 16, and making a case to support the conclusion that "good cause" hadn't been shown. One generally does not look a gift horse in the mouth, and the Bank has been gifted a result that cannot be squared with the federal rules' admonition that they be "construed and administered to secure the *just*, speedy and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1 (emphasis added).

And while the Bank incorrectly asserts that Headway has not shown that the April 2012 Order overlooked controlling decisions, evidence, or factual matters, it fails to address the most obvious reason why that Order was clearly erroneous. A deadline for amending pleadings cannot expire 112 days before discovery is allowed to begin.[4]

---

whose cases were not yet before the court when the Court issued its October 2010 Order. If that seems a logical impossibility, then we are left with the fundamental unfairness of applying this newly-discovered deadline only to the plaintiffs whose original complaints were subject to the Bank's motion to dismiss, and implying that the Order said things it didn't say, because the 21-day deadline expressly applied only to repleading claims that had been dismissed without prejudice. Nothing any defendant said or could say addresses the massive prejudice from such a decision, which would create different sets of rules for the defendants than for certain plaintiffs. Such a decision would indeed implicate due process concerns.

[4] Footnote 1 of the Bank's opposition makes no sense. The fact that the October 2012 Order gave some other plaintiff a short time to replead its claims for fraud or negligent misrepresentation cannot be "imputed" to Headway. That Order's *repleading* deadline applied to claims that had been dismissed without prejudice and Headway timely addressed the relevant claims that actually were in its complaint. Headway has no juridical relationship with any other plaintiff that would support such unprecedented "imputation," which comes straight out of the "Say Anything" playbook. The only thing all plaintiffs have in common is that they were sold worthless shares in a Ponzi scheme by the Bank and other defendants. We know the Bank would have made Rule 9 arguments if Headway had originally sued for fraud, despite its cynical, *post hoc* invitation to have done so long before we obtained the evidence in discovery, which required hand-fighting the Bank on all conceivable (and some inconceivable) issues. It would be, and is, fundamentally unfair to penalize Headway for conducting this case in a reasonable manner.

5

Headway has canvassed federal law, and found no case where the deadline for amending pleadings expired before discovery began. In current federal practice, deadlines for amending pleadings are not teased out of orders on motions to dismiss, but specified in scheduling orders issued under Rule 16(3)(A). Such orders "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Such orders typically set deadlines for amending pleadings that expire near, at, or soon after the deadline set for completing discovery, not 112 days before discovery even begins.

Of course, not all scheduling orders set deadlines for amending pleadings, and that is what happened here. The Second Amended Scheduling Order Regarding Standard Chartered Cases filed February 4, 2011 (the "Scheduling Order") [D.E. 604] does not contain a deadline for amending pleadings. When that is the case, "the amendment standard articulated in Rule 15(a) governs [a plaintiff's] request for leave to amend." *Perez v. Pavex Corp.*, 2002 WL 31500404 *1 (M.D. Fla. 2002).[5]

Accordingly, to correct clear error and prevent manifest injustice, the Court should reconsider its decision in the April 2012 Order that the October 2010 Order contained a deadline for Headway to amend its complaint as to any claims other than the

---

[5] The Bank cannot argue that Headway did not make a "good cause" showing until its Motion for Reconsideration. The Bank is well aware that Headway had no reason to believe that its Motion for Leave had to demonstrate "good cause." Had Headway known that the Court would treat the October 2010 Order as a scheduling order for amending pleadings, a good cause argument would have been included in the motion to amend. Furthermore, if Headway had known the Court would treat its October 2010 Order as an across-the-board scheduling order to amend pleadings, we would have requested clarification as soon as it was clear the Court viewed the October 2010 Order in such a light. That is the problem here. No party would reasonably assume that the October 2010 Order was a scheduling order for amending pleadings. Indeed, even the Bank didn't believe the October 2010 Order was a scheduling order. While it did rely on the 21-day repleading period in the October 2010 Order in opposing plaintiff *Maridom's* Motion for Leave to Amend, it did not once argue that the Court should determine the question under the Rule 16 "good cause" standard. Despite whatever the Bank might say now, if it had felt it could get the benefit of the more stringent Rule 16 standard, it would have sought it. But the Bank knew the October 2010 Order was not a scheduling order, and as such, only opposed *Maridom's* motion under a Rule 15 standard.

claims the October 2010 Order dismissed without prejudice, and apply the standards of Rule 15 to Headway's Motion to Amend.

### B. The April 2102 Order Overlooked Controlling Facts and Evidence Demonstrating that Headway Did Not Unduly Delay Filing its Motion to Amend

The Bank is mistaken in arguing that Headway has failed to identify evidence of factual matters the Court overlooked on this motion, and it's equally mistaken in trivializing Headway's discussion of its diligent efforts to obtain that evidence. The April 2012 Order held that Headway had unduly delayed in filing its Motion to Amend. Because of that Order's clear error in creating a post-hoc rationale for a pleading deadline that did not exist, the Court held that Rule 16 applied to the Motion to Amend. After correcting that mistake, the Court should decide whether Headway's Motion to Amend satisfies Rule 15. It is ironic that the Court's "undue delay" discussion under Rule 16 overlooks the very facts that reveal it to be ill-founded.

Specifically, the Court found that permitting the proposed amendment now, when fact discovery has just ended, "would inevitably result in significant delay in resolving these *complex, consolidated actions*." (April 2012 Order at 6). With all due respect to the defendants, nobody wants this case resolved more quickly than we do. But it is hardly inevitable that the amendment cause *any* delay, and whether it does is entirely within the control of the defendants. They could answer the amended complaint, put the case at issue and move forward quickly. Even a motion to dismiss need not cause significant delay unless the Court allows it to. The April 2012 Order's forecast of "significant" delay evidently anticipates a dilatory round of motion practice. But we will not be the ones

making it so, and the defendants should not be further rewarded for their efforts to keep this case from ever getting out of creeper gear.

Any potential delay from allowing the amendment would not be "undue" in light what really happened here. Of course, discovery in Headway's case has been slowed somewhat by the multi-district vortex into which it was pulled by the process of consolidation (despite resisting vigorously), but any "delay" to which anyone could point is the result of the Bank's two speeds, slow and stop, in responding to discovery requests.

Specifically, while discovery officially began in February 2011 and Headway propounded discovery requests on February 17th, we soon found ourselves bogged down in an interminable meet and confer process, by which the Bank kept us from getting any documents for four months, until June 2011. Then, despite plaintiffs' attempts to begin deposing Bank witnesses in September 2011, we didn't get to take our first deposition until November 21, 2011, three days before Thanksgiving.[6] Not one of these delays was of our making. We filed our Motion to Amend less than four months after we finally were able to take our first deposition and six weeks before the close of discovery.[7]

We are mindful of our obligations under Rule 11. But until we received documents and took depositions, Headway was not in a position to reasonably allege claims against Standard Chartered for fraud and for violations of the Chapter 517 of the Florida Statutes, The Florida Securities and Investor Act. Within four months of the first

---

[6] In a complex case, the passage of less than four months between the first deposition and a motion to file an amended complaint based on newly discovered evidence is not delay, let alone undue delay. Moreover, if the Magistrate Judge had not ordered depositions to begin on November 21, 2011, the Bank may have gotten its wish of delaying depositions until all documents had been produced. After we brought several discovery motions to the Magistrate, the Bank didn't finish producing documents until March 2, 2012, two weeks before Headway moved to amend.

[7] Furthermore, given the Bank's continuing rescheduling of depositions, including Robert Friedman's, one of the most critical witnesses in the case, Headway was forced to move to amend before even getting the benefit of hearing what Mr. Friedman had to say during his March 22, 2012 deposition.

8

deposition, we determined that Headway had a legally sufficient basis for bringing these additional claims. It cannot fairly be said that taking depositions for less than four months before we moved to amend was anything but reasonable. It is not rendered any less reasonable by the fact that some other plaintiff alleged a legally insufficient Chapter 517 claim without taking any discovery. If anything, the dismissal of that plaintiff's claim suggests that Headway acted properly in taking discovery before filing the claim.

As we also noted in Headway's Motion for Reconsideration, it was not until we finally received documents and were able to take depositions that we confirmed the critical role Samuel Perruchoud played in the Bank's decision to sell shares in a Ponzi scheme and to conduct what passed for due diligence into Fairfield Sentry. More recently, we learned that Mr. Perruchoud had serious misgivings about Fairfield Sentry, and we obtained the declaration of a former colleague and Bank relationship manager, Sebastian Gonzalez, who worked in the same Bank office as Mr. Perruchoud in Geneva, Switzerland, during the relevant time period. We have learned that Mr. Perruchoud told Mr. Gonzalez there was something wrong with the Sentry fund, and that he believed Madoff would "explode" one day.[8] Mr. Perruchoud warned Mr. Gonzalez to not "put your clients in" the Sentry fund, said he thought Fairfield would explode because it was "not possible to achieve such high returns with such low volatility," and insisted that something was wrong. This is direct evidence of the Bank's scienter, its actual knowledge of the falsity of its representations to clients about the safety and security of Fairfield Sentry, that fabulous hedge fund with such invariably positive results that the bank marketed it as a "risk reducer."

---

[8] Local Rule 6.3 states that parties should not attach any declaration or affidavits to a motion for reconsideration unless directed to by the Court. Accordingly, we have not attached the February 17, 2012 Declaration of Sebastian Gonzalez. If the Court requests the Declaration, we will provide it forthwith.

9

Headway's diligent efforts to conduct discovery, and the results of those efforts, constitute a significant set of facts that the Court overlooked in deciding that Headway unduly delayed in moving to amend. Those discovery efforts and results confirmed the slapdash quality of what passed for due diligence at the Bank with regard to Fairfield Sentry. They also led us to discover that this due diligence was conducted and overseen by a Bank employee who had doubts and misgivings about the Fund's bonafides, and foresaw that Madoff would someday "blow up," even as he was approving the Sentry Fund for sale to clients such as Headway. The April 2012 Order overlooked these important, recently discovered facts, which compel its reconsideration.

### C. The April 2012 Order Overlooked Controlling Facts and Evidence Demonstrating that the Bank Would Not be Unfairly Prejudiced by the Amendment

The Bank's contention that a defendant would be unfairly prejudiced by the filing of a first amendment to a complaint, prior to the close of discovery, after less than four months of depositions in a complex case -- merely because it might decide that it should move to dismiss -- cannot be justified by reference to the rules or cases. But the Bank also is wrong in asserting that Headway failed to identify facts that the Court overlooked in deciding the Bank would be unfairly prejudiced by Headway's amendment. As noted above, allowing this amendment sought before the close of discovery need not cause "significant delay" or any prejudice to the Bank, especially since the April 2012 Order's basis for this conclusion was the potential for another round of motions to dismiss. Such motions need not be made, and even if they are, need not consume more than thirty days under local rules, as the *Maridom* plaintiffs demonstrated in their reply [D.E. 878].

Moreover, the April 2012 Order's conclusion that the Bank would be unfairly prejudiced by the potential for a new round of motions to dismiss is completely undermined by the Magistrate Judge's Order Amending the August 9, 2011 Second Amended Scheduling Order Regarding Standard Chartered Cases [D.E. 695], which provides for the semiannual filing of motions to dismiss in actions transferred after January 1, 2012. At present, the Bank continues to transfer cases filed against it in other jurisdictions to the Southern District of New York, including those in its most recent Notice of Potential "Tag-Along" Actions filed on May 8, 2012. Unless it has decided to start answering complaints, the Bank would be briefing motions to dismiss even if Headway had never moved to amend. The Bank's claim of prejudice is disingenuous, and the April 2012 Order overlooked procedural facts that completely undermine that claim, which had, and has, no merit whatsoever.

### D.  The Non-Bank Defendants' Opposition Travels on Misstatements of Applicable Law and Unsupportable Assertions of Prejudice

The non-Bank defendants partially quote this Court's July 27, 2011 Order denying PwC's motion for reconsideration, and state that "[t]he Movant 'must demonstrate controlling law or factual matter put before the court in its decision on the underlying matter that [it] believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court.'" non-Bank defendants' Memorandum of Law in Opposition to Headway's Motion for Reconsideration ("Opp. MOL") at 1 (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp.2d 571, 573 (S.D.N.Y. 2011)). It would have been good if these defendants had not omitted the immediately preceding sentences, which state that "[t]he *major grounds* justifying reconsideration are 'an intervening change in controlling law, the availability of new

11

evidence, or the need to correct a clear error or prevent manifest injustice.'" *Anwar,* 800 F. Supp.2d at 573 (emphasis added) (*quoting Virgin Atl. Airways* 956 F.2d at 1255).

      One hopes that these defendants didn't think they would fool the Court (or us) by misstating the hornbook law that governs this motion. In any event, as the quoted Order makes clear, the existence of clear error or the threat of manifest injustice both justify reconsideration, even when there is no new evidence of change in the law. We have demonstrated above that the April 2012 Order suffers from clear error, in teasing out of the October 2010 Order's repleading deadline for claims dismissed without prejudice, a deadline for any amendment based on discovery that would not even begin until 112 days later. We also have demonstrated the manifest injustice of imposing such a deadline on Headway, a deadline that could not logically apply to any party that had not filed pleadings in October 2010, which includes the Bank and non-Bank defendants, as well as any plaintiff whose claims were not subjected to the motions to dismiss addressed by the October 2010 Order. This clear error and manifest injustice requires reconsideration.

      Further, the non-Bank defendants' parroting of the April 2012 Order's erroneous conclusion that allowing Headway to amend its Complaint would "inevitably result in significant delay in resolving these complex, consolidated actions," Opp. Mot. at 2, adds nothing to the analysis. Moreover, this assertion, by these defendants, is particularly ill-founded, since they also claim that they are exempted from responding to any individual plaintiff's complaints by the Court's CMO dated March 11, 2009 [D.E. 69]. If this were true (which we do not concede), then what delay in resolving the claims against them would result from allowing the amendment? The answer is none. Whenever the non-

12

Bank defendants have to respond to individual plaintiffs' complaints, they can just as easily respond to Headway's Amended Complaint as they could to the original.

To let stand an order preventing Headway from exercising its right to an amendment based on evidence obtained during discovery, sought less than four months after taking its first deposition and six weeks before discovery ended, would be clear error causing manifest injustice. The Court can—and should— correct that error and prevent that manifest injustice by allowing Headway to amend its Complaint.

**4.     Conclusion**

For all the foregoing reasons, as well as those stated in Headway's Memorandum in Support of its Motion for Reconsideration [D.E. 859], Headway respectfully requests that this Court reconsider the April 13, 2012 Decision and Order, and amend that Order to allow Headway to amend its Complaint.

Dated: May 21, 2012

                                        Respectfully submitted,

                                      RIVERO MESTRE LLP
                                      Attorneys for Headway Investment Corp.
                                      2525 Ponce de Leon Boulevard
                                      Suite 1000
                                      Miami, Florida 33134
                                      Telephone:  (305) 445-2500
                                      Fax: (305) 445-2505
                                      Email: jmestre@riveromestre.com

                                      By:     /s/ Jorge A. Mestre_____
                                                  JORGE A. MESTRE
                                                 Fla. Bar No. 088145
                                                 ALAN H. ROLNICK
                                                 Fla. Bar No. 715085
                                                 ERIMAR VON DER OSTEN
                                                 Fla. Bar No. 028786
                                                 CARLOS A. RODRIGUEZ
                                                 Fla. Bar No. 091616

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on May 21, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or via U.S. Mail.

         By: /s/ Jorge A. Mestre_____
             Jorge A. Mestre

| | |
|---|---|
| Sullivan & Cromwell LLP<br>New York, New York<br>Attorneys for Private Bank Defendants<br><br>Sharon L. Nelles: Nelless@sullcrom.com | Simpson Thacher & Bartlett LLP<br>New York, New York<br>Attorneys for FGG Defendants<br><br>Peter E. Kazanoff: pkazanoff@stblaw.com |
| Greenberg Traurig, P.A.<br>Miami, Florida<br>Attorneys for Individual FGG Defendants, Standard Chartered Bank International (Americas) Limited and Standard Chartered PLC<br><br>Ricardo Alejandro Gonzalez: gonzalezr@gtlaw.com | Brown & Heller<br>Miami, Florida<br>Attorneys for CITCO Fund Services (Europe) B.V.<br><br>Amanda McGovern: amcgovern@ghblaw.com |
| The Brodsky Law Firm<br>Miami, Florida<br>Attorneys for Maridom Ltd., Caribetrans, S.A., And Abbot Capital, Inc.<br><br>Richard E. Brodsky: rbrodsky@thebrodskylawfirm.com | Curran & Associates<br>Miami, Florida<br>Attorneys for Ricardo Lopez, Jorge Asensio, Auburn Overseas Corp., Interland Investments Corp., Iston Holding Limited, Nemagus Ltd., Moises Lou-Martinez, New Horizon Development Inc., Alberto Perez, Ramiro Rendiles, Reinaldo Ruiz , Salcar Limited, Triple R Holdings Ltd., The Five Stars Financial Group Ltd., Vilebens, S.L., Velvor, S.A., 5C Investments Ltd., Archangel Resources Limited, Apple Trading Limited, Bahia Del Rio, S.A., Blount International, S.A. and Esther Diaz de Camara<br><br>Laurence E. Curran III:  lecurran@lecurran.com |
| Dimond Kaplan & Rothstein, P.A.<br>Miami, Florida<br>Attorneys for Pujals<br><br>Robert Linkin: RLinkin@dkrpa.com | Jones & Adams<br>Miami, Florida<br>Attorneys for Almiron and Carrillo<br><br>Matthew Jones: matthew@jones-adams.com |
| Sonn Erez, PLC<br>Fort Lauderdale, Florida<br>Attorneys for Saca, Lancaster Overseas, Ltd., and Dieka, S.A. de C.V.<br><br>Jeffrey Erez: jerez@sonnerez.com | de la O Marko Magolnick & Leyton PA<br>Miami, Florida<br>Attorneys for Gerico, de Rivera<br><br>Joel S. Magolnick: magolnick@dmmllaw.com |
| Kachroo Legal Services, P.C.<br>Cambrudge, Massachusetts<br>Attorneys for Caso<br><br>Gaytri D. Kachroo:  gkachroo@kachroolegal.com | Aguirre Morris and Severson<br>San Diego, California<br>Attorneys for Marka Akriby Valladolid<br><br>Maria Severson: mseverson@amslawyers.com |
| Katz Barron Squitero Faust<br>Miami, Florida<br>Attorneys for Joaquina Teresa Barbachano Herrero<br><br>Marissa C. Corda: MCC@katzbarron.com | Kirkland & Ellis LLP<br>New York, New York<br>Attorneys for Pricewaterhousecoopers L.L.P.<br><br>Andrew M. Genser: agenser@kirkland.com<br>Timothy A. Duffy: tim.duffy@kirkland.com |

| | |
|---|---|
| Wolf Popper LLP<br>New York, NY 10022<br>Attorneys for Pacific West Health Medical Center Inc. Employees Retirement Trust<br><br>James A. Harrod: jharrod@wolfpopper.com | Lovell Stewart Halebian Jacobson, LLP<br>New York, NY 10006<br>Attorneys for Pasha S. Anwar<br><br>Victor E. Stewart: victornj@ix.netcom.com |
| Alan Rolnick<br>Studio City, CA  91604<br><br>Attorneys for Headway Investment Corp.<br><br>Alan Rolnick: ahrolnick@aol.com | White & Case LLP (NY)<br>New York, New York<br>Attorneys for Walter Noel, Jr.<br><br>Glenn Kurtz: gkurtz@whitecase.com |
| Hughes Hubbard & Reed LLP (NY)<br>New York, New York<br><br>Attorneys for PricewaterhouseCoopers Accountants Netherlands N.V.<br><br>Gabriel Sean Marshall:  marshallg@hugheshubbard.com<br>Sarah Loomis Cave:  cave@hugheshubbard.com<br>William R. Maguire:  Maguire@hugheshubbard.com | Dechert, LLP (NYC)<br>New York, New York<br><br>Attorneys for Andres Piedrahita<br><br>Andrew J. Lavender:<br>andrew.levander@dechert.com |
| Kasowitz, Benson, Torres & Friedman, LLP (NYC)<br>New York, New York<br><br>Attorneys for Jeffrey Tucker<br><br>Adam K. Grant: agrant@kasowitz.com | Debevoise & Plimpton, LLP (NYC)<br>New York, New York<br><br>Attorneys for Helen Virginia Cantwell<br><br>Helen Virginia Cantwell:<br>hvcantwell@debevoise.com |

1460.01\PLEAD\REP SUPP MOT RECONS