```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
PASHA S. ANWAR, et al.,            :    09 Civ. 0118 (VM)
                Plaintiffs,        :
                                   :    DECISION AND ORDER
    - against -                    :
                                   :
FAIRFIELD GREENWICH LIMITED,       :
et al.,                            :
                Defendants.        :
-----------------------------------X
```
**VICTOR MARRERO, United States District Judge.**

By letters dated May 29, 2012 (Docket No. 886) and July 13, 2012 (Docket No. 901), defendants PwC Canada and PwC Netherlands (together, the "PwC Defendants") have requested a pre-motion conference to discuss the effect on the negligence-based claims in this case of two recent Second Circuit Court of Appeals summary orders, Stephenson v. PricewaterhouseCoopers, LLP, No. 11-1204-cv, 2012 WL 1764191 (2d Cir. June 13, 2012) ("Stephenson"), and Meridian Horizon Fund, LP v. KPMG (Cayman) (In re Tremont Sec. Law), Nos. 11-3311-cv, 11-3275-cv, 2012 WL 2754933 (2d Cir. July 10, 2012) ("Tremont").

The PwC Defendants — who are joined in their request by the Fairfield Defendants,[1] the Citco Defendants,[2] and

---

[1] The Fairfield Defendants are: Fairfield Greenwich Ltd.; Fairfield Greenwich Group; Fairfield Heathcliff Capital, LLC; Fairfield Risk Services Ltd.; Greenwich Sentry L.P.; Fairfield Sentry Ltd.; Fairfield Greenwich (Bermuda) Ltd.; Fairfield Greenwich Advisors, LLC; Fairfield International Managers, Inc.; and Fairfield Greenwich Corp.

-1-

defendant GlobeOp Financial Services LLC (collectively, "Defendants") — argue that, in light of the Second Circuit's holdings in Stephenson and Tremont, the Court should dismiss the negligence-based claims with prejudice, or at least allow the Defendants to bring a renewed motion to dismiss. In letter-briefs dated June 4, 2012 (Docket No. 908) and July 17, 2012, plaintiffs, who are members of a putative class of investors (collectively, "Plaintiffs"), opposed the PwC Defendants' request. The Court hereby deems the PwC Defendants' May 29, 2012 and July 13, 2012 letters a motion for reconsideration. For the reasons discussed below, the PwC Defendants' motion for reconsideration is GRANTED in part and DENIED in part.

## I.  BACKGROUND

As explained in greater detail in previous opinions in this case,[3] this lawsuit is a putative class action on behalf of individuals and entities who invested large sums of money in four feeder-funds (the "Funds"), which in turn invested heavily in the Ponzi scheme operated by Bernard L. Madoff ("Madoff"). The Second Consolidated Amended

---

[2] The Citco Defendants are: Citco Group Ltd.; Citco Fund Services (Europe) B.V.; Citco Fund Services (Bermuda) Ltd.; Citco Bank Nederland N.V. Dublin Branch; and Citco (Canada) Inc.

[3] See Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 354 (S.D.N.Y. 2010); Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372 (S.D.N.Y. 2010) ("Anwar II").

Complaint ("SCAC") alleges that certain defendants who were outsiders to the Funds — i.e., investment managers, administrators, custodians, and auditors — owed duties of care to the Plaintiffs as investors in the Funds. The Plaintiffs claim that, as a result of the Defendants' negligence, they were 1) induced to invest in the Funds ("Inducement Claims"); and 2) induced to retain their investments in the Funds ("Holder Claims").

A.   ANWAR II

The Court has twice addressed the adequacy of Plaintiffs' negligence-based claims, once at the motion to dismiss phase and once upon reconsideration.

In Anwar II, the Court granted in part and denied in part the Defendants' motions to dismiss the Plaintiffs' negligence-based claims. See Anwar II, 728 F. Supp. 2d at 431-357, 448-50, 454-57. In reaching that conclusion, the Court rejected the Defendants' argument that the Plaintiffs lacked standing to bring their common law claims because, according to Defendants, those claims were derivative. Id. at 401 ("[T]o the extent that Plaintiffs properly allege duties owed by each defendant directly to them . . . they have standing to pursue such claims.")

In order to determine whether the Plaintiffs had adequately pled that the Defendants owed them a duty of

care, the Court applied the test articulated in <u>Credit Alliance Corp. v. Arthur Andersen & Co.</u>, 483 N.E.2d 110, 118 (N.Y. 1985):

> To show that a defendant not in privity with a plaintiff nevertheless owes a duty to give that plaintiff accurate information, the plaintiff must show, according to <u>Credit Alliance Corp.</u>[], '(1) an awareness by the maker of the statement that it is to be used for a particular purpose ; (2) reliance by a known party on the statement in furtherance of that purpose [the "Known Party" requirement]; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance [the "Linking Conduct" requirement].'

<u>Anwar II</u>, 728 F. Supp. 2d at 432 (<u>quoting</u> <u>Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.</u>, 446 F. Supp. 2d 163, 199 (S.D.N.Y. 2006) (citation omitted). The Court found that the SCAC satisfied all the requirements of <u>Credit Alliance</u>, and therefore the Plaintiffs had adequately pled that the Citco Defendants, GlobeOp Financial Services LLC, and the PwC Defendants owed a duty of care to the Plaintiffs, despite the fact that they were not in privity with them. <u>Id.</u> at 432-35, 448-49, 454-57.

A year later, the Court denied the PwC Defendants' motion for reconsideration of <u>Anwar II</u>'s ruling regarding the negligence-based claims. <u>Anwar v. Fairfield Greenwich Ltd.</u>, 800 F. Supp. 2d 571 (2d Cir. 2011).

## II. DISCUSSION

A. LEGAL STANDARD FOR RECONSIDERATION

Reconsideration of a previous order by the Court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal citations and quotation marks omitted).  "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided." Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990).  "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, et al., Federal Practice & Procedure § 4478 at 790).

To these ends, a request for reconsideration under Local Rule 6.3 ("Rule 6.3") must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court.  See Shrader v. CSX

Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Rule 6.3 is intended to "'ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters.'" Sec. and Exch. Comm'n v. Ashbury Capital Partners, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used either to advance different theories not previously argued or as a substitute for appealing a final judgment. See Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

Here, the PwC Defendants move for reconsideration on the basis of a change in law as a result of the Stephenson and Tremont summary orders.

B.   STEPHENSON AND TREMONT

In Stephenson and Tremont, the Second Circuit affirmed judgments dismissing the negligence-based claims of investors in Madoff feeder funds.

Stephenson held that, under Delaware law, the plaintiff lacked standing to make a holder claim because he

had not pled individualized harm. 2012 WL 1764191, at *2 (quoting Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1033 (Del. 2004)) ("Stephenson cannot 'prevail [on his holding claim] without showing injury to the [partnership as a whole].'"). While the Court held that Stephenson did have standing to bring an inducement claim, it found that he had failed to satisfy the "Known Party" prong of the Credit Alliance test:

> Because Stephenson was nothing more than a 'prospective limited partner[], unknown at the time and who might be induced to join [the partnership],' he was not a known party to PWC prior to his investment in Greenwich Sentry and thus cannot maintain a claim for malpractice against PWC under an inducement-to-invest theory.

Id. at *3 (quoting White v. Guarente, 372 N.E.2d 315 (N.Y. 1977)).

In Tremont, the Second Circuit held that the plaintiff-investor had failed to satisfy both the "Known Party" requirement of Credit Alliance, as well as the requirement that the plaintiff show "some conduct on the part of the accountants linking them to [the plaintiffs, which evinces the accountants' understanding of [the plaintiffs'] reliance." Credit Alliance, 483 N.E.2d at 118; see Tremont, 2012 WL 2754933, at *4 (same). Specifically, Tremont held that the allegation that the defendant-auditors addressed their audit reports to "The

Partners" of the fund was not sufficient linking conduct because the fund itself, rather than the auditors, sent the report to the limited partners (including the plaintiffs). Id. at *4 (quoting CRT Invs., Ltd. v. BDO Seidman, LLP, 925 N.Y.S.2d 439, 441 (App. Div. 1st Dep't 2011)).

C.  THE IMPLICATIONS OF STEPHENSON AND TREMONT FOR ANWAR

Although Stephenson and Tremont are summary orders, and thus do not have precedential effect, see Second Circuit Local Rule 32.1.1, they are nevertheless persuasive authority to the extent that their factual patterns align with the instant case and their reasoning is compelling.

1.  Inducement Claims

As a preliminary matter, in their letter dated June 4, 2012, the Plaintiffs concede that, following Stephenson, "damages are not available from PwC for the class negligent misrepresentation cause of action with respect to new investors making initial investments." (Docket No. 908.) This conclusion is correct because Stephenson held that the "known party" prong of Credit Alliance cannot be satisfied when the claim pertains to inducement of an initial investment.  See Stephenson, 2012 WL 1764191, at *3. Defendants, who were not in privity with Plaintiffs, cannot owe a duty to prospective investors who were unknown to Defendants at the time they made the alleged

-8-

misrepresentations. Therefore, the Plaintiffs' negligence-based initial investment claims are dismissed without prejudice. Such claims may be repled only if Plaintiffs — either as individuals or as members of a certified class — can show that they were, in fact, known to the Defendants prior to their initial investment in the Funds.

Despite this concession, Plaintiffs are correct that Stephenson and Tremont do not directly address claims regarding inducement to make subsequent investments. The plaintiff in Stephenson made an initial investment of $60 million in the Greenwich Sentry fund, but there is no indication or discussion of subsequent investments. See id. at *1. According to Defendants, the plaintiffs in Tremont did make subsequent investments; however, the Second Circuit's decision does not discuss this nuance. Thus, the Court cannot conclude that Plaintiffs' claims regarding inducement to make subsequent investments should necessarily fail the "Known Party" requirement of Credit Alliance.

Nor does the Second Circuit's ruling in Tremont regarding the "Linking Conduct" requirement of Credit Alliance compel dismissal of Plaintiffs' Inducement Claims. In Anwar II, the Court specifically cited the SCAC's allegation that the PwC Defendants had addressed audit

reports to the Plaintiffs as fulfilling the Linking Conduct requirement of Credit Alliance. See Anwar II, 728 F. Supp. 2d at 455. Tremont found similar conduct insufficient because the audit reports were sent to the Plaintiffs by the funds, and not the auditors. 2012 WL 2754933, at *4. However, the pleadings in Anwar do not indicate whether the Funds or the PwC Defendants themselves sent the audit reports to the investors. Indeed, the Plaintiffs allege that PwC's "Audit Plan" contained an acknowledgment that the purpose of their engagement was to deliver information directly to the Funds' investors. It does not appear that Tremont involved similar allegations.

Moreover, in Tremont, the Second Circuit cited CRT Invs. Ltd., 925 N.Y.S.2d 439 ("CRT II"), in reaching its holding on the Linking Conduct requirement. CRT II affirmed the holding and underlying reasoning of CRT Invs. Ltd. v. Merkin, 918 N.Y.S. 2d 397 (N.Y. Sup. 2010) ("CRT I"), a New York Supreme Court case that this Court already distinguished from Anwar when it denied the PwC Defendants' first motion for reconsideration. See Anwar, 800 F. Supp. 2d at 573. In CRT I, the New York Supreme Court held that the pleadings failed to satisfy the "Linking Conduct" requirement of Credit Alliance because "the direct contact between the accountant and the plaintiff is minimal or

-10-

nonexistent[.]"  Id. at *12.  As this Court explained in denying the first Anwar motion for reconsideration,

> [i]n the course of rendering [Anwar II], the Court had the New York Supreme Court decision in CRT Investments before it, took it into account, and found it to be sufficiently distinguishable.  In particular, among other reasons, in Anwar II, the Court found it compelling that the auditors recognized that their reports would be communicated directly to shareholders, who might thus rely on those financial statements to make investment decisions.

Id.  Unlike this case, neither Tremont nor CRT I included allegations that the defendant-auditor agreed to provide audit reports directly to the plaintiffs or that the defendant was aware that providing such information to investors was the primary purpose of its engagement.  Thus, the Court is not persuaded that Tremont, which cites and is factually similar to New York case law which the Court already found distinguishable, compels dismissal of the Plaintiffs' negligence-based Inducement Claims at this stage of the proceedings.

However, the Court recognizes that evidence uncovered during discovery might determine whether the Plaintiffs ultimately have proved all the elements of the Credit Alliance test.  The Defendants are free to raise Stephenson and Tremont at the motion for summary judgment phase, when their argument may benefit from a fuller record.

2.  <u>Holder Claims</u>

The PwC Defendants argue that the Plaintiffs have no standing to bring Holder Claims because <u>Stephenson</u> held that such claims are derivative. However, <u>Stephenson</u> based that portion of its holding on Delaware law, while <u>Anwar II</u> found that New York law is applicable to the claims in this case.[4] <u>See</u> <u>Anwar II</u>, 728 F. Supp. 2d at 399-400. Indeed, other courts in this District have recognized that New York law considers shareholders' tort claims based on misrepresentation, rather than mismanagement, to be direct and not derivative. <u>See</u> <u>Pension Comm.</u>, 446 F. Supp. 2d at 192 (applying New York law and declining to dismiss common-law claims based on retention of securities where plaintiff-investors alleged injuries arising out of misrepresentations of fund administrators); <u>In re WorldCom, Inc. Sec. Litig.</u>, 382 F. Supp. 2d 549, 559 (S.D.N.Y. 2005) (citation omitted) ("New York recognizes a claim of fraud where investors were induced to retain securities in

---

[4] The law regarding whether a claim is direct or derivative is similar in New York and Delaware, but not identical; Delaware law is slightly more strict, requiring that courts consider both the harm and the remedy. <u>Compare</u> <u>Stephenson</u>, 2012 WL 1764191, at * 2 ("Under settled Delaware law, to determine whether a claim is direct or derivative courts must consider: '(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders individually)[.]'") (quoting <u>Tooley</u>, A.2d at 1033) <u>with</u> <u>Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC</u>, 376 F. Supp. 2d 385, 409 (S.D.N.Y. 2005) ("a shareholder may sue individually 'when the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged'") (quoting <u>Abrams v. Donati</u>, 489 N.E.2d 751 (N.Y. 1985)).

reliance on a defendant's misrepresentations."). Cf. In re Optimal U.S. Litig., 813 F. Supp. 2d 351, 376-80 (S.D.N.Y. 2011) (distinguishing between mismanagement- and misrepresentation-based shareholder claims). As the Court explained in Anwar II, Plaintiffs' principal claim is not mismanagement, but "nondisclosure of or failure to learn facts which should have been disclosed based on duties that were independently owed to Plaintiffs." 728 F. Supp. 2d at 401 n.9. Thus, the Court's decision in Anwar II, based on New York law, was correct. Since Stephenson is based on Delaware law, rather than New York law, the Court is not persuaded to reconsider its earlier decision.

In fact, in Anwar II, the Court noted that the Plaintiffs would have standing even under Delaware law. 728 F. Supp. 2d at 401 n.9. Stephenson does not change that analysis because its facts are distinguishable. The plaintiff in Stephenson had no standing because his "holding claim involve[d] no 'harm' to an individual partner and s[ought] no 'recovery' for any individual partner, distinct from other partners." 2012 WL 1764191, at *2. In contrast, in Anwar II, the Court explained that the "asymmetrical injury alleged" in the SCAC — the fact that some investors lost money, while others did not — further supported the Court's conclusion that, "[a]t the

pleadings stage, Plaintiffs have alleged sufficient information to show that Plaintiffs suffered individual harm distinct from losses experienced by other investors." 728 F. Supp. 2d at 402.

Indeed, the Court explained in Anwar II that "this facet of Plaintiffs' standing argument [i.e., the differential injury argument] is ripe for further factual development and is more properly decided at the class certification or summary judgment stage of this proceeding." Id. (citation omitted). The Court notes that after many months of litigation, the discovery phase of this case is now nearly complete, and the Plaintiffs' motion for class certification is currently sub judice. Given how far litigation has progressed, the issue of standing at this point would be more appropriately and fairly addressed following the Court's decision regarding class certification and with the benefit of a full record at summary judgment. The Court therefore denies the PwC Defendants' motion for reconsideration with respect to the Plaintiffs' Holder Claims without prejudice to Defendants' raising the issue again on summary judgment.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket Nos. 886 and 901) of defendants PwC Canada and PwC Netherlands for reconsideration is hereby GRANTED in part and DENIED in part in accordance with this Decision and Order.

**SO ORDERED.**

Dated:   New York, New York
         6 August 2012

*[signature]*

Victor Marrero
U.S.D.J.