# Sonn & Erez, PLC

Broward Financial Centre
500 E. Broward Boulevard, Suite 1700
Fort Lauderdale, FL 33394
Telephone: (954) 763 - 4700
Facsimile: (954) 763 - 1866

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/4/12
```

August 3, 2012

Honorable Victor Marrero                             VIA FAX - (212) 805-6382
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: Anwar, et al. v. Fairfield Greenwich Limited, et al. - Standard Chartered Cases
(Victor Jorge Saca, Lancastoer Overseas Ltd. and Deika, SA de CV v. Standard Chartered
Bank International (Americas) Limited – No. 11-cv-3480)  09 CV 118

Dear Judge Marrero:

This firm represents the Plaintiffs in the above-referenced matter. This letter is in response to the August 1, 2012 letter from Sharon Nelles, Esq., requesting a pre-motion conference on Defendant's proposed motion to dismiss the claims of Plaintiffs ("Saca") without further motion practice. Saca opposes the proposed Motion to Dismiss on several grounds.

The Proposed Motion to Dismiss is Untimely – The Saca matter was transferred to this Court on June 6, 2011 (DE 653). Pursuant to this Court's Order of February 3, 2011 [DE 609], as amended by the Order of August 9, 2011 [DE 695]; "[a]ny motion to dismiss...**shall** be filed the later of (i) 45 days after the end of every 6-month period, beginning with the period ending on June 30, 2011, or (ii) if upon the conclusion of a 6-month period (beginning with the period ending on June 30, 2011) the Court has yet to rule on previously-filed motions to dismiss, 45 days from the entry of a final Decision and Order by this Court on the last pending motion to dismiss.

The final Decision and Order on the last motion to dismiss was entered on November 2, 2011 [DE 744]. Thus, the next "end of a six month period" was December 31, 2011, and Standard Chartered was required to file any motions to dismiss within 45 days thereafter - by February 14, 2012. Because it did not timely file a motion to dismiss the Saca Complaint, Standard Chartered was required, pursuant to the Court's February 3, 2011 Order, at ¶17, to file its Answer to the Complaint within 30 days thereafter - March 16, 2012.

If anything, SC is subject to a default by this Court for not timely responding at all to the Saca Complaint per two prior Court Orders. Standard Chartered's reliance on the Court's Order of June 28, 2012 [DE 899] is misplaced. The June 28, 2012 Order simply denied a letter request

by Plaintiff Lou to replead. See DE 758, Nov. 22, 2012]. Indeed, the Order concluded ""for the reasons stated above, the Lous' request for leave to replead is hereby DENIED." [DE 899].

SC Wrongly Opposes Plaintiffs' Right to Amend Under FRCP 15(a)(1)(B) – Plaintiff has not yet filed an Amended Complaint. Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party may amend its pleading once as a matter of course...21 days after service of a motion under Rule 12(b)..." Standard Chartered's request for a pre-motion conference to request a dismissal of Saca's claims is a transparent attempt to improperly deprive Plaintiff of its right to file an Amended Complaint within 21 days, in response to SC's motion to dismiss, that Standard Chartered now proposes to file. Saca in fact proposed to SC counsel that Saca would file an amended complaint and not replead the claims for negligence and gross negligence, by stipulating that the Court shall dismiss them per prior orders (to reserve this issue for appeal) but SC counsel maintained there was no right to amend by any Plaintiff in this consolidated proceeding. This position flies in the face of Rule 15(a)(1)(B). Nothing in any of the Court's Scheduling Orders acts to deprive Plaintiff of the right to file an Amended Complaint under FRCP 15(a)(1)(B) and, as such, Plaintiff reserves the right to file an Amended Complaint as appropriate. SC's desire to circumvent the Federal Rules of Civil Procedure on their face, would be tantamount to fundamental error on appeal.

Based upon the foregoing, the claims in the Saca Complaint are not, other than possibly with respect to the negligence and gross negligence claim, subject to dismissal based upon any of the Court's prior Orders. Moreover, to the extent that there are any deficiencies in the Complaint, such deficiencies can be addressed through an Amended Complaint, which Plaintiffs reserves the right to file. Accordingly, Plaintiff respectfully requests the Court to deny the relief sought by Standard Chartered in its August 1, 2012 letter. Saca's claims are set forth in Exhibit A.

Respectfully submitted,

Sonn & Erez PLC
ss://*Jeffrey Sonn*

Jeffrey R. Sonn, Esq.
Jsonn@sonnerez.com

cc:   Counsel for Defendant (via email)
      Counsel for Plaintiffs and Standard Chartered Plaintiffs' Steering Committee (via email)

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by *Plaintiffs*.
>
> SO ORDERED.
>
> 9-4-12
> DATE        VICTOR MARRERO, U.S.D.J.

EXHIBIT A. Saca vs. Standard Chartered

Saca's Claims are Properly Pled – even if the proposed motion to dismiss was timely, which it is not, the grounds set forth by Standard Chartered for dismissal are without merit.

    a.    Breach of Fiduciary Duty -Count III- In its August 1, 2012 letter, at Attachment A, Standard Chartered states that Plaintiff's claims for breach of fiduciary duty should be dismissed "to the extent it is based on allegations other than Standard Chartered allegedly recommending [Fairfield Sentry and/or Fairfield Sigma] without conducting due diligence."

Plaintiff's breach of fiduciary duty claims properly extend beyond the failure to conduct due diligence. In addition to the alleging failure to conduct due diligence, Plaintiff alleges that SC breached its fiduciary duty by (2) omitting to disclose to Plaintiffs that Fairfield was little more than a funnel to Madoff; (3) providing Plaintiffs with monthly account statements that vastly overstated the true value of Plaintiffs' Fairfield investments; (4) misleading Plaintiffs to believe that a Fairfield "affiliate" would manage Plaintiffs' investments when, in truth, Madoff was fraudulently misusing Plaintiff's month to fuel Madoff's Ponzi scheme; (5) misstated to Plaintiffs that Plaintiffs' funds would be invested through a strategy of "split -strike conversion," whereby a basket of stocks intended to correlate with the S&P 100 index would be bought, and an equi valent amount of out -of-the money call options would be sold, and an equivalent amount of out-of -the-money put options would be purchased; (6) mischaracterizing an investment in Fairfield as a "risk reducer", "cash substitute" and "low risk"; and (7) failed to monitor or audit Plaintiffs' investments in Fairfield and failed to update Plaintiffs about the true nature of Plaintiffs' Fairfield investments. See Complaint ¶53.

Plaintiffs' accounts were opened in Florida and were solicited from Florida. As such, Florida law applies to the transactions at issue here, not New York law as suggested by SC. It is beyond question that the investment advisors that worked at SC, and SC itself, owed fiduciary duties. The Investment Advisers Act creates a fiduciary duty, including the duty to monitor the customer's account and provide ongoing and continuous advice. See Securities and Exchange Commission v. Capital Gains Research Bureau, Inc., 375 U.S. 180 (1963)("[i]nvestment advisers could not 'completely perform **their basic function**—furnishing to clients on a personal basis competent, unbiased, and **continuous advice** regarding the sound management of their investments—unless all conflicts of interest between the investment counsel and the client were removed");Gochnauer v. A.G. Edwards, 810 F.2d 1042 (11th Cir. 1987)(fiduciary duties are owed by investment advisors).

Furthermore, Plaintiff's breach of fiduciary duty claims are based in part on SC's " fail[ure] to monitor or audit Plaintiffs' investments in Fairfield and failed to update Plaintiffs about the true nature of Plaintiffs' Fairfield investments. See Complaint ¶53 (7). Discovery revealed that SC's broker recommended the investment when he knew that Saca was a conservative investor, and that options were unsuitable for Saca. SC's broker later admitted that he later learned that Fairfield had invested in options, thus admitting that Fairfield was an unsuitable investment for Saca. Thus, the breach of fiduciary duty extends to a claim that SC sold the Sacas an investment that it knew or later learned was unsuitable for them. This customer-specific suitability claim is a breach of fiduciary duty independent of the duty to conduct due diligence on Fairfield. Saca now

wishes to amend their complaint to clarify this independent breach of fiduciary duty. The Nov. 2, 2011 Order does not address claims for breach of fiduciary duty that are based in part on the failure to moniter or audit Plaintiffs' investments to insure it met the customers' own needs and objectives for their investments, independent of SC's failure to properly research the investment before offering it to the public.

Standard Chartered has voluntarily undertook the duty to monitor and, as such, had a duty to disclose facts to Saca, and do so in a manner so as to not cause Plaintiff damage. See Barnett Bank of West Florida v. Hooper, 498 So.2d 923, 925 (Fla.1986) ("The usual relationship between a bank and its depositor is one of debtor to creditor ... not ordinarily imposing a duty of disclosure ... [but where the bank] has established a relationship of trust and confidence ... the bank may be found to have assumed a duty to disclose facts."). See also *Terry v. Barnett Bank of Winter Park*, N. A. 366 So.2d 459 (Fla. 4TH DCA 1978)(The authorities seem to hold that one who, with no obligation to do so, voluntarily assumes a duty must perform that duty with reasonable care and he may cease to perform that duty at any time after giving the recipient thereof reasonable notice of his intention to no longer perform the duty.)

   b. Negligence and Gross Negligence-Counts II and IV– Plaintiff acknowledges that, pursuant to the Nov. 2, 2011 Order, the Court is likely to dismiss Plaintiff's negligence and gross negligence claims based upon the economic loss rule.

   c. Negligent Misrepresentation- Count I – Contrary to Standard Chartered's argument, Plaintiff's negligent misrepresentation claim is a "fraud in the inducement claim" exempted from the economic loss rule. See *Moransais v. Heathman*, 744 So.2d 973, 981, 983 (Fla.1999) (recognizing that claims of fraudulent inducement and negligent misrepresentation were not barred by economic loss rule where they were independent from underlying contract). Further, Saca alleged, "(1) what the omissions were- ¶21, 23,26, 37, 41; (2) the person responsible for the failure to disclose-¶22,23,30; (3) the context of the omissions and the manner in which they misled the plaintiff-¶28, 31, 32, 39, 41 and (4) what defendant obtained through the fraud." ¶49 (AEBI and SCBI were in the business of advising to such investments-reasonably implying it made money by advising clients to invest).