DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/12/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
                                    :
PASHA S. ANWAR, et al.,             :        09 Civ. 0118 (VM)
                       Plaintiffs,  :
                                    :        **DECISION AND ORDER**
     - against -                    :
                                    :
FAIRFIELD GREENWICH LIMITED,        :
et al.,                             :
                       Defendants.  :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

This matter arises from eight separately-filed actions (the "Eight Actions")[1] alleging that defendants Standard Chartered Bank International (Americas) Ltd. and Standard Chartered PLC (together, "Standard Chartered") violated Florida state law by recommending that foreign individuals and entities ("Plaintiffs") invest in the Fairfield Sentry Ltd. and/or Fairfield Sigma funds (together, the "Fairfield

---

[1] The Eight Actions, which were filed in or transferred to this Court between January 1, 2011 and December 31, 2011, are: Gerico, Inc. v. Standard Chartered Bank Int'l (Americas) Ltd., No. 11 Civ. 0909 ("Gerico"); Saca v. Standard Chartered Bank Int'l (Americas) Ltd., No. 11 Civ. 3480 ("Saca"); Barbachano Herrero v. Standard Chartered Bank Int'l (Americas) Ltd., No. 11 Civ. 3553 ("Barbachano"); Mailand Invs. Inc. v. Standard Chartered Bank Int'l (Americas) Ltd., No. 11 Civ. 5732 ("Mailand"); Child Escobar v. Standard Chartered Bank Int'l (Americas) Ltd., No. 11 Civ. 6787 ("Child"); Baymall Invs. Ltd. v. Standard Chartered Bank Int'l (Americas) Ltd., No. 11 Civ. 7659 ("Baymall"); Blockbend Ltd. v. Standard Chartered Bank Int'l (Americas) Ltd., No. 11 Civ. 7650 ("Blockbend"); and Eastfork Assets Ltd. v. Standard Chartered Bank Int'l (Americas) Ltd., No. 11 Civ. 7653 ("Eastfork").

Pursuant to the Order of the Judicial Panel on Multidistrict Litigation issued in MDL No. 2088 (the "MDL"), the Eight Actions were consolidated under the above-captioned case.

Funds"), which were in turn invested in Bernard Madoff's Ponzi scheme.

By letter dated August 1, 2012 (the "August 2012 Letter," Docket No. 909), Standard Chartered requested a conference to discuss its filing of a motion to dismiss the Eight Actions without further motion practice, as contemplated by operative scheduling orders and in conformity with the Court's Decision and Order dated November 2, 2011, Anwar v. Fairfield Greenwich Ltd., 826 F. Supp. 2d 578 (S.D.N.Y. 2011) ("Anwar IV"). Plaintiffs, by eight separate letters each dated August 3, 2012, have opposed Standard Chartered's request.

The Court hereby deems Standard Chartered's August 1, 2012 letter to be a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons discussed below, Standard Chartered's motion to dismiss the Eight Actions is GRANTED in part and DENIED in part.

## I.   BACKGROUND

In its August 2012 Letter, Standard Chartered argues that the Eight Actions should be dismissed without further motion practice because they bring claims that are identical or substantially similar to those which the Court dismissed in Anwar IV. The Eight Actions all claim

negligence and breach of fiduciary duty; they also include one or more fraud-based claims, such as fraudulent concealment, fraud in the inducement, and negligent misrepresentation. The Barbachano complaint alone alleges a violation of state securities fraud under Florida Statute §§ 517.301 ("§ 517.301") and 517.211(2).

During the course of managing this complex MDL, the Court has endeavored at every stage to promote efficiency and judicial economy where possible, consistent with fair administration of justice. In that spirit, when the Court consolidated the Baymall, Blockbend, Eastfork, Child, and Mailand actions, it ordered that no motions be filed without first obtaining leave from the Court: "Any such request must point to exceptional factual or legal circumstances compellingly showing cause why the subject of any contemplated motion has not been sufficiently disposed of in prior rulings of this Court in this litigation." (Docket No. 741.) Additionally, the Eight Actions are governed by provisions of two scheduling orders (the "Scheduling Orders")[2] intended to streamline the Standard Chartered litigation by preventing "duplicative motion or

---

[2] The Scheduling Orders are: the Second Amended Scheduling Order Regarding Standard Chartered Cases, dated February 22, 2011 (Docket No. 609); and the Order Amending the Second Amended Scheduling Order Regarding Standard Chartered Cases, dated August 9, 2011 (Docket No. 695).

pleading practice on matters already considered by this Court, including on claims or issues on which this Court has already issued guidance" in prior Decisions and Orders. (Docket No. 609, ¶ 15.)

The Scheduling Orders direct the parties to apply the Court's prior rulings to all consolidated cases filed in or transferred to this Court between January 1, 2011 and January 1, 2012 (a group which includes the Eight Actions). Where consolidated cases include issues and claims already addressed by the Court, the parties are to "confer and determine whether they can agree that such claim[s'] . . . shall be dismissed pursuant to the bases set forth" in the rulings. (Docket No. 609.) When the parties cannot agree on a stipulated dismissal, the Scheduling Orders prohibit Standard Chartered from filing any motion to dismiss before the close of fact discovery unless the claims are (1) "the same or substantially similar to" claims dismissed in prior Decisions and Orders of the Court, (2) "raise[] new or unique issues of law that were not directly or indirectly addressed" in prior Decisions and Orders, or (3) involve jurisdictional issues. (See Docket No. 609, at ¶ 16(b).) Any such motions to dismiss must be filed by the later of

> (i) 45 days after the end of every 6-month period, beginning with the period ending on June 30, 2011, or (ii) if upon the conclusion of a 6-month period

-4-

(beginning with the period ending on June 30, 2011) the Court has yet to rule on previously filed motions to dismiss, 45 days from the entry of a final Decision and Order by this Court on the last pending motion to dismiss.

(Docket No. 695).

Forty-three actions against Standard Chartered were filed in or transferred to this Court after January 1, 2011.  Of those, thirty-five have stipulated to dismissal of certain claims addressed in Anwar IV, including negligence, unjust enrichment, and misrepresentations made in breach of fiduciary duty claims, in accordance with the Scheduling Orders. (See Docket No. 946.)  Only the Plaintiffs in the Eight Actions have refused to stipulate dismissal of their claims.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a

-5-

right to relief above the speculative level." Twombly, 550 U.S. at 555. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). A court must accept as true all well-pleaded factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Plaintiffs claiming fraud, including securities fraud and common law fraud, must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). The Rule 9(b) particularity standard requires "that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks omitted). Rule 9(b) also

requires a plaintiff to plead with particularity facts giving rise to a strong inference that each defendant acted with the requisite state of mind, or scienter. See id. at 171. To satisfy this requirement, a plaintiff may allege: (a) facts showing that defendants had "both motive and opportunity to commit fraud," or (b) facts "constituting strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006) (quoting Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

### III. DISCUSSION[3]

#### A. NEGLIGENCE CLAIMS

Standard Chartered argues that Plaintiffs' negligence claims should be dismissed because Anwar IV held that Florida's economic loss rule bars claims that Standard Chartered was negligent in failing to conduct adequate due

---

[3] As a preliminary matter, Plaintiffs argue that a motion to dismiss is untimely under the Court's Scheduling Orders and is, therefore, prohibited. Specifically, Plaintiffs argue that Standard Chartered had until February 14, 2012 — 45 days after the end of the six-month period which began June 30, 2011 — to file a motion to dismiss. However, Plaintiffs' calculation of the deadline is incorrect because it is based on the incorrect start date for the 45-day period. The Court entered a "final Decision and Order . . . on the last pending motion to dismiss" on June 27, 2012. (Docket No. 695.) See Anwar, No. 09 Civ. 0118, 2012 WL 2497262 (S.D.N.Y. June 27, 2012) (denying request by plaintiffs Moises Lou-Martinez and Wong Yuk Hing de Lou (together, the "Lous") to replead breach of fiduciary duty claim against Standard Chartered dismissed in Anwar IV). As a result, under the Scheduling Orders, the deadline for Standard Chartered to file a motion to dismiss is 45 days after the entry of the June 27, 2012 Decision and Order. Standard Chartered's August 1, 2012 letter is therefore timely. (See also Docket No. 914, at 4 (calculating 45 day period from June 27, 2012 Decision and Order).)

diligence of the Fairfield Funds.   See <u>Anwar IV</u>, 826 F. Supp. 2d at 593.

Plaintiffs in seven of the Eight Actions concede that "the Court is likely to dismiss Plaintiffs' negligence claims based on the economic loss rule." (Docket Nos. 925-926; 928-932).  Only the <u>Barbachano</u> plaintiff argues that negligence is a viable claim because "the Court has not previously addressed whether (or not) the failure to render suitable investment advice is barred by" the economic loss rule.   (Docket No. 927).   However, an inspection of the <u>Barbachano</u> complaint shows that what the plaintiff stylizes as an allegation of "failure to render suitable investment advice" is actually indistinguishable from an allegation of negligent failure to conduct due diligence, which the Court dismissed in <u>Anwar IV</u>.  See <u>Barbachano</u>, No. 11 Civ. 3553, Docket No. 1, ¶ 46 ("Defendants . . . owed [the plaintiff] duties of care to make suitable investment recommendations and decisions only after conducting reasonable due diligence, researching potential investments, and disclosing all material facts, including the risks involved in any investments.").   Therefore, in keeping with the Court's application of the economic loss doctrine, Plaintiffs' negligence claims, including those of the <u>Barbachano</u> plaintiff, are dismissed.

Moreover, to the extent that the <u>Barbachano</u> complaint, or any of the other Eight Actions, contain allegations that Standard Chartered was negligent in making misrepresentations or omissions, such claims are more accurately brought under a theory of negligent misrepresentation, a species of fraud exempt from Florida's economic loss rule but subject to the heightened pleading requirements of Rule 9(b). <u>See</u>, <u>e.g.</u>, <u>Maliner v. Wachovia Bank, N.A.</u>, No. 04-60237CIV, 2005 WL 670293, at *8-9 (S.D. Fla. 2005) (permitting negligence claims if shown to amount to negligent misrepresentation because economic loss rule does not bar such claims). As the Court discusses below, Plaintiffs' fraud-based claims, including negligent misrepresentation, fail to satisfy Rule 9(b).

B.   <u>FRAUD-BASED CLAIMS</u>

Plaintiffs allege several fraud-based claims, including fraudulent concealment, fraud in the inducement, negligent misrepresentation, and Florida securities fraud under § 517.301.[4]   These claims are subject to the

---

[4] The elements of § 517.301 securities fraud are almost identical to common law fraud and federal securities fraud "except that the scienter requirement under Florida law is satisfied by a showing of negligence." <u>Anwar IV</u>, 826 F. Supp. 2d at 585 (<u>citing</u> <u>Grippo v. Perazzo</u>, 357 F.3d 1218, 1222 (11th Cir. 2004)). "To state a claim under § 517.301, a plaintiff must allege: (1) a misrepresentation or omission of material fact; (2) that this misrepresentation or omission was justifiably relied on; and (3) scienter." <u>Id.</u> (<u>citing</u> <u>Durden v. Citicorp Trust Bank, FSB</u>, No. 3:07 Civ. 974-J-34, 2009 WL 6499365, at *5 (M.D. Fla. Aug. 21, 2009)).

heightened pleading requirements of Rule 9(b).   See Anwar
IV, 826 F. Supp. 2d at 585-90 (applying Rule 9(b) to §
517.301 and negligent misrepresentation claims against
Standard Chartered); Anwar, 745 F. Supp. 2d 360, 371-73
(S.D.N.Y. 2010) ("Anwar III") (applying Rule 9(b) to common
law fraud claims advanced against Standard Chartered).

Standard Chartered argues that Plaintiffs' fraud-based
claims should be dismissed for the same reasons that the
Court dismissed the negligent misrepresentation and §
517.301 claims of plaintiffs Ricardo Almiron ("Almiron")
and Carlos Carrillo ("Carrillo") in Anwar IV.   Anwar IV
held that Almiron and Carrillo's fraud claims failed to
satisfy the heightened pleading requirements of Rule 9(b).
See Anwar IV, 826 F. Supp. 2d at 585-90.   The Court ruled
that Almiron and Carrillo's allegations that Standard
Chartered had misrepresented the riskiness of the Fairfield
Funds and the level of due diligence performed were not
sufficiently particular because they did not provide
adequate context regarding where and when the alleged
misrepresentations were made.   Id. at 586 ("[Almiron and
Carrillo] do not allege where the misstatements were made,
and only once do they allege an approximate time frame when
a certain misrepresentation occurred.").   Additionally,
Anwar IV held that Almiron and Carrillo's claims that

-10-

Standard Chartered omitted to disclose the structure and management of the Fairfield Funds did not satisfy Rule 9(b) because the complaints failed to allege with particularity what Standard Chartered obtained through the fraud, i.e., management fees. Id. at 587 ("Failure to specifically plead facts regarding fees with the requisite particularity undermines [plaintiffs'] theory of liability . . . .").

The complaints in the Eight Actions likewise fail to plead the context of the alleged misrepresentations with sufficient particularity to satisfy Rule 9(b). Plaintiffs have provided slightly more context regarding the alleged misrepresentations than Almiron and Carrillo did in their complaints. Plaintiffs identify the Standard Chartered employee who made the misrepresentation, provide one or two estimated timeframes (e.g., "[c]ommencing in or about early May 2008," "[i]n or about early 2007"), and name the country or city where the alleged misrepresentations were made. Nevertheless, such approximate and generalized allegations do not meet the level of detail necessary to put Standard Chartered on notice of the claims against it. See Anwar IV, 826 F. Supp. 2d at 486 ("The Court must read the Almiron and Carrillo Complaints in the light most favorable to them; it cannot, however, rewrite them to supply details essential to satisfy Rule 9(b)."); Anwar

-11-

III, 745 F. Supp. 2d at 372 (rejecting fraud and negligent misrepresentation claims premised on overt misstatements because complaint did not identify speaker or "where and when these statements were made"); Endovasc Ltd. v. J.P. Turner & Co., No. 02 Civ. 7313, 2004 WL 634171, at *7 (S.D.N.Y. 2004) (dismissing pursuant to Rule 9(b) complaint alleging that fraudulent misstatements occurred "during negotiations," which spanned from February 2000 to August 2001), aff'd in part, vacated in part on other grounds, 169 F. App'x 655 (2d Cir. 2006); Jeff Isaac Rare Coins, Inc. v. Yaffe, 792 F. Supp. 13, 15 (E.D.N.Y. 1992) (dismissing pursuant to Rule 9(b) complaint alleging misstatement occurred "in early January of 1991").

With regard to alleged omissions, Plaintiffs fare better than Almiron and Carrillo because the complaints in the Eight Actions specify that Standard Chartered stood to gain management fees as a result of its fraud. (See, e.g., No. 11 Civ. 7649, Docket No. 1, ¶ 7 ("Standard made sure that it nonetheless charged Baymall an asset based management fee based upon the stated, yet fictitious, value of its investments."). But Plaintiffs' omission-based fraud claims fail, in any event, because Plaintiffs do not plead scienter with the requisite particularity.

In prior Decision and Orders, the Court has ruled that allegations of scienter based solely on failure to conduct due diligence do not suffice under Rule 9(b).   See Anwar IV, 826 F. Supp. 2d at 588; Anwar III, 745 F. Supp. 2d at 371 ("[A]llegations that an advisor failed to investigate an investment are not sufficient to make out scienter on a § 10(b) claim.").   Rather, plaintiffs must plead with particularity facts that show the basis for the defendant's alleged recklenessness or knowledge of the fraud.

In Anwar III, the Court held that plaintiffs Maridom Ltd., Caribetrans, S.A., and Abbott Capital, Inc. (together, the "Maridom Plaintiffs") had adequately pled scienter because they alleged the basis for Standard Chartered's knowledge or recklessness.   745 F. Supp. at 373.   In support of their allegations, the Maridom Plaintiffs cited sources of public information of which Standard Chartered should have been aware, including articles and newsletters, and which raised concerns and expressed skepticism about Madoff and the Fairfield Funds. See Maridom Ltd. v. Standard Chartered Bank International (Americas) Ltd., No 10 Civ. 0920 (S.D.N.Y.), Docket No. 8, ¶¶ 42, 43, 59 ("[I]t was widely known in investment circles in which [Standard Chartered] operated that" Fairfield Sentry simply handed over its funds to Madoff[.]).

-13-

In contrast, in Anwar IV, the Court dismissed the fraud claims of plaintiffs Ricardo Lopez ("Lopez"), Almiron and Carrillo because they did not explain why Standard Chartered should have been aware of fraudulent activity and therefore did not plead with particularity facts giving rise to a strong inference of scienter. 745 F. Supp. 2d at 370 ("[Lopez's] complaint is devoid of any allegations that 'there were obvious signs of fraud, or that the danger of fraud was so obvious that [Standard Chartered] must have been aware of it.'") (quoting South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 108-09 (2d Cir. 2009)).

Plaintiffs' conclusory allegations regarding scienter more closely resemble those of Almiron, Carrillo, and Lopez than those of the Maridom Plaintiffs. Plaintiffs allege that "Standard [Chartered] knew or, in the exercise of even minimal care, should have known that Madoff's practices were suspect and that there were, in the very least, substantial risks involved," Baymall, No. 11 Civ. 7649, Docket No. 1, ¶ 5, but they do not explain the basis for such knowledge. See, e.g., Gerico, No. 11 Civ. 0909, Docket No. 1, ¶¶ 58, 77. Indeed, the fraud claims in the Eight Actions are premised almost entirely on allegations that Standard Chartered recommended investment in the Fairfield Funds without conducting due diligence. See,

e.g., <u>Barbachano</u>, No. 11 Civ. 3553, Docket No. 1, ¶ 30.
While such allegations may support a breach of fiduciary
duty, as the Court has previously recognized, they do not
meet the Rule 9(b) pleading requirements for fraud.   See
<u>Anwar IV</u>, 826 F. Supp. 2d at 588; <u>Anwar III</u>, 745 F. Supp.
2d at 371.

In sum, Plaintiffs' claims of fraudulent concealment,
fraud in the inducement, negligent misrepresentation, and
§ 517.301 securities fraud fail to satisfy Rule 9(b) and
are therefore dismissed.

C.   <u>BREACH OF FIDUCIARY DUTY CLAIMS</u>

Standard Chartered argues that the Court should
dismiss claims of breach of fiduciary duty other than those
premised on a failure to conduct due diligence, including
allegations that Standard Chartered breached duties to
monitor and diversify investments.

1.   <u>Duty to Conduct Due Diligence</u>

The Court has twice declined to dismiss breach of
fiduciary duty claims based on allegations that Standard
Chartered did not conduct adequate due diligence of the
Fairfield Funds.   See <u>Anwar IV</u>, 826 F. Supp. 2d at 590-91;
<u>Anwar III</u>, 725 F. Supp. 2d at 376.   Standard Chartered
concedes that such claims survive the motion to dismiss

-15-

phase.    Therefore,  the  Court  will  allow  such  claims  to

proceed in the Eight Actions.

    2.    Duty to Monitor Investments[5]

    In prior Decisions and Orders, the Court has dismissed

some  claims  and  allowed  others  premised  on  the  duty  to

monitor  investments.    Anwar III  and  Anwar IV  recognized

that brokers like Standard Chartered typically owe only a

limited    set    of    duties    to    investors    who    hold

nondiscretionary  accounts,  i.e.,  accounts  for  which  the

broker  needs  authorization  prior  to  making  investments.

See Anwar IV, 826 F. Supp. 2d at 590-91; Anwar III, 745 F.

Supp. 2d at 375-76 (citing Ward v. Atl. Sec. Bank, 777 So.

2d 1144, 1147 (Fla. Dist. Ct. App. 2001)).    These limited

duties  generally  do  not  include  the  duty  to  monitor

investments.    See Anwar IV, 826 F. Supp. 2d at 592 (citing

de Kwiatkowski v. Bear, Stearns & Co., 306 F.3d 1293, 1302

(2d Cir. 2002)).    "However, in certain circumstances, when

a   broker   undertakes   a   substantial   and   comprehensive

advisory  role  with  respect  to  nondiscretionary  accounts,

ongoing  duties  may  be  triggered,  such  as  a  duty  to

monitor."    Id.

    In the Anwar III, the Court declined to dismiss the

duty  to  monitor  claims  of  plaintiffs  Headway  Investment

---

[5] Among the Eight Actions, only the Barbachano complaint does not allege
a breach of the duty to monitor.

-16-

Corporation ("Headway") and Maria Akriby Valladolid ("Valladolid"). 745 F. Supp. 2d at 377. Headway and Valladolid did not allege that they held discretionary accounts requiring ongoing fiduciary duties. They did allege, however, that "relationship managers" from Standard Chartered "aggressively marketed" the Fairfield Funds and made continuous assurances regarding the skill and care that Standard Chartered took in advising and protecting investors. Id. ("[T]hese alleged interactions sufficiently show that Valladolid placed her trust and confidence in Standard Chartered[.]"). The Court found that it was reasonable to infer from these allegations that Standard Chartered was "far more than a passive broker taking orders," and that such interactions plausibly could have given rise to a duty to continue monitoring investments. Id.

Conversely, in Anwar IV, the Court dismissed the duty to monitor claims of Almiron and Carrillo because "there are no facts in Almiron and Carrillo's Complaints to suggest that [Standard Chartered] continuously reached out to them to aggressively market Fairfield Sentry." 826 F. Supp. 2d at 592. The Court explained that "'[g]iving advice on particular occasions does not alter the character of the relationship by triggering an ongoing duty to . . .

-17-

monitor all data potentially relevant to a customer's investment.'" <u>Id.</u> (quoting <u>de Kwiatkowski</u>, 306 F.3d at 1307).

Here, Standard Chartered argues that the Plaintiffs held nondiscretionary accounts; that Standard Chartered therefore had no ongoing duty to monitor Plaintiffs' investments; and that the Court should dismiss Plaintiffs' duty to monitor claims as it did with Almiron and Carrillo in <u>Anwar IV</u>. However, an examination of the complaints shows that the Plaintiffs have plausibly alleged that Standard Chartered took actions which could have triggered an ongoing duty to monitor investments. Plaintiffs allege that:

- they met personally with their account managers from Standard Chartered multiple times each year, <u>see, e.g.</u>, <u>Baymall</u>, No. 11 Civ. 7649, Docket No. 1 ¶ 20 (alleging that Standard Chartered employee visited Baymall Investments Ltd. in Colombia and Miami three to four times a year, respectively);

- they developed friendships with these managers and placed trust and confidence in them, <u>see, e.g.</u>, <u>id.</u> ¶¶ 21, 22, 23 ("The personal visits with [Standard Chartered employee] Morales were intended to instill, and did instill, increasing confidence, faith and trust by Baymall in Morales . . . .");

- the managers knew Plaintiffs' investment objectives and needs, <u>see, e.g.</u>, <u>id.</u> ¶ 22, 23 ("Morales knew Baymall's representative's needs and requirements for safeguarding capital . . . ."); and that

- Standard Chartered managers made "continuing recommendations and representations" regarding the Fairfield Funds, id. ¶¶ 24-31.

The Saca complaint, for example, alleges that since 2004, Standard Chartered's "relationship managers" "solicited and urged" investments in the Fairfield Funds, "aggressively marketed" the Fairfield Funds, and secured the "trust and confidence" of the Plaintiffs. Saca, No.11 Civ. 3480, Docket No. 1, ¶¶ 25, 49. Indeed, the Gerico, Mailand, Child, Baymall, Blockbend, and Eastfork complaints each allege that Standard Chartered overtly represented that its regular practice included the ongoing monitoring of investments. See, e.g., Gerico, No. 11 Civ. 0909, Docket No. 1 ¶ 55(e) (alleging that one of Standard Chartered's five "key investment principals" was to "'[c]ontinually evaluate markets, products and asset managers'").

Because Plaintiffs allege that Standard Chartered was far more than a passive broker who gave advice only on particular occasions, it is plausible that Standard Chartered's interactions with Plaintiffs created a continuing duty to monitor. Ultimately, Plaintiffs' allegations bear greater similarities to those made by Headway and Valladolid than to Almiron and Carrillo's allegations. Therefore, the Court concludes that Plaintiffs have adequately pled that Standard Chartered

owed them a duty to monitor their investments, and denies Standard Chartered's motion to dismiss those claims.

### 3.   Other Alleged Breaches of Fiduciary Duties

In addition to the duty to conduct due diligence and the duty to monitor investments, some of the Plaintiffs advance certain breach of fiduciary duty claims which the Court has not addressed in prior Decisions and Orders.

The Saca plaintiffs claim that Standard Chartered breached its fiduciary duties by misrepresenting the riskiness of the Fairfield Funds and failing to disclose the structure and management of those funds. The Court's prior Decisions and Orders did not consider whether Standard Chartered owed such a duty to its clients. But, as the Court recognized in Anwar III and Anwar IV, even nondiscretionary broker-dealers owe their clients general duties of loyalty and care. Anwar IV, 826 F. Supp. 2d at 592; Anwar III, 745 F. Supp. 2d at 376 (quoting Ward, 777 So. 2d at 1147). These include:

> (1) the duty to recommend [an investment] only after studying it sufficiently to become informed as to its nature, price, and financial prognosis; (2) the duty to perform the customer's orders promptly in a manner best suited to serve the customer's interests; (2) the duty to inform the customer of the risks involved in purchasing or selling a security; (4) the duty to refrain from self-dealing . . .; [and] (5) the duty not to misrepresent any material fact to the transaction[.]

Ward, 777 So. 2d at 1147 (internal quotation marks omitted). It follows that Standard Chartered not only owed its clients a duty to perform due diligence on each investment, but also to inform them of the risks of the transaction and to disclose all material facts. Id. Since the Saca plaintiffs made plausible allegations that Standard Chartered owed them such a duty as a result of the broker/client relationship, the Court declines to dismiss their claim of breach of fiduciary duty premised on misrepresentations and omissions.

Additionally, plaintiffs in the Blockbend, Eastfork, and Gerico actions allege that Standard Chartered breached a duty to ensure that their investments were adequately diversified because it concentrated 50% or more of Plaintiffs' investments in the Fairfield Funds. While brokers have a duty to make investments in a manner suited to their customers' interests, the Court is not persuaded that this responsibility extends to a duty to diversify investments. The duty to diversify investments most frequently arises in the context of trustee/trust relationships and the administration of retirement plans — relationships which are different in kind and scope to that of a broker/client. See, e.g., 29 U.S.C. § 1104(a)(1)(C) (requiring duty to diversify under the Employee Retirement

Income Security Act); Fla. Stat. § 518.11 (codifying that fiduciaries acting under wills, agreements, court orders, and other instruments have duty to diversify); Restatement (Second) of Trusts § 228 (1959) (recognizing that trustee has duty to diversify). The existence of a duty to diversify trusts and retirement plans follows from a trustee's duty to the entity and responsibility for the entirety of that entity's assets. In contrast, brokers typically administer only a discrete subset of their clients' funds, and any fiduciary duties they may have are accordingly more limited. The Court is not aware of any case law applying the duty to diversify to brokers, and declines to so broaden the scope of the broker/client relationship. Therefore, Plaintiffs' overconcentration claims are dismissed.

## D.   GROSS NEGLIGENCE CLAIMS

The Court denies Standard Chartered's motion to dismiss the Saca and Barbachano plaintiffs' gross negligence claims. In its Anwar III, the Court held that Lopez had adequately pled gross negligence under Florida law because he alleged that Standard Chartered conducted no due diligence on the Fairfield Funds, but aggressively recommended them anyway. 745 F. Supp. 2d at 378. The Saca and Barbachano complaints contain similar allegations,

which overlap to a great degree with their allegations regarding breach of fiduciary duty, and therefore sufficiently state a cause of action for gross negligence.

### IV. <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 909) of defendants Standard Chartered Bank International (Americas) Ltd. and Standard Chartered PLC to dismiss the claims of plaintiffs Gerico Inc., Alicia Gavira de Rivera, Victor Jorge Saca, Lancaster Overseas Ltd., Deika, S.A. de C.V., Joaquina Teresa Barbachano Herrero, Mailand Investment Inc., Eduardo Child Escobar, Olga Lucia Cortes de Child, Baymall Investments Ltd., Blockbend Ltd., and Eastfork Assets Ltd. is hereby GRANTED in part and DENIED in part in accordance with this Decision and Order.

**SO ORDERED.**

Dated:    New York, New York
          12 September 2012

                                  Victor Marrero
                                  U.S.D.J.