# KATZ BARRON
# SQUITERO FAUST

MIAMI
2699 S. BAYSHORE DRIVE
SEVENTH FLOOR
MIAMI, FL 33133-5408

305-856-2444
305-285-9227 FAX

www.katzbarron.com

October 19, 2012

*Via Fedex*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/22/12



Mr. Jonathan Truppman
Judicial Assistant to
Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> **Re:** **_Anwar, et al. v. Fairfield Greenwich Limited, et al._,**
> **Case No. 09-cv-118 (VM)(THK), Standard Chartered Cases**
>
> **This correspondence relates to:** _Barbachano v. Standard Chartered Bank International (Americas) Limited, et al._, 1:11-cv-03553-VM**

Dear Mr. Truppman:

Pursuant to your request, please find enclosed an additional copy of the proposed Amended Complaint of Plaintiff, Joaquina Teresa Barbachano Herrero, with corrected Exhibits F and G.

In addition, **Exhibits B, C, and E** are the exhibits marked as confidential by Standard Chartered Bank International (Americas) Limited, which we have requested filing **under seal.**

> Respectfully submitted,
> KATZ BARRON SQUITERO FAUST
>
> H. Eugene Lindsey, III

HEL:pag
Enc.
cc:   Diane L. McGimsey, Esq. (mcgimseyd@sullcrom.com)
      Patrick B. Berarducci, Esq. (berarduccip@sullcrom.com)

h:\lib\docs\08991001\ltr\lt4033.docx

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, ENGLISH & ALLEN, P.A.
MIAMI • FT. LAUDERDALE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PASHA ANWAR, *et al.*,

      Plaintiffs,

v.

FAIRFIELD GREENWICH LIMITED, *et al.*,

      Defendants.

Master File No. 1:09-cv-00118-VM-THK

This document relates to:
*Joaquina Teresa Barbachano Herrero v. Standard*
*Chartered Bank International (Americas) Limited and*
*Standard Chartered PLC, 1:11-cv-03553-VM*

### AMENDED COMPLAINT

Plaintiff, JOAQUINA TERESA BARBACHANO HERRERO ("Barbachano"), by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure, hereby files this Amended Complaint for Damages against Defendants, STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LIMITED and STANDARD CHARTERED PLC (collectively, the "Defendants"), and alleges as follows:

### NATURE OF THE ACTION, THE PARTIES, JURISDICTION AND VENUE

1.     This is an action for violation of state securities laws, breach of fiduciary duty, fraud, gross negligence, and negligent misrepresentation. It arises from fraudulent and/or negligent investment advice and recommendations rendered, and the material omissions of fact made by the Defendants and/or their predecessors in interest to Barbachano, which caused the unsuitable investment of the assets in Barbachano's portfolio, exposing those assets to substantial risk and, ultimately, multi-million dollar losses, the unsuitable leveraging of Barbachano's portfolio through a multi-million dollar loan, and the further investment (and loss) of some of the assets contained in Barbachano's portfolio in the massive Ponzi scheme perpetrated by Bernard Madoff.

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 3 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

2.      Barbachano is a resident and citizen of Mexico.  In late 1996, she became a client of American Express Bank, Ltd. and its subsidiary, American Express Bank International (collectively "AEBI"), in Miami, Florida, the predecessors of the Defendants.  AEBI provided financial and investment advice to Barbachano, assigning its employee, Jennifer Sierra ("Sierra"), as Barbachano's "Relationship Manager."  As a result, and continuing thereafter, Barbachano reposed her trust and confidence in AEBI and Sierra, which AEBI and Sierra accepted, entering in to a fiduciary relationship with Barbachano. Indeed, AEBI, by and through Sierra, eventually managed all aspects of Barbachano's personal finances and investments.

3.      Defendant Standard Chartered PLC is organized and existing under the laws of the United Kingdom, with a place of business at 1 Aldermanbury Square, London, EC2V 75B, United Kingdom, and is the parent corporation of Defendant Standard Chartered Bank International (Americas) Limited, by and through its wholly owned subsidiaries, Standard Chartered Holdings Ltd. and Standard Chartered Americas.

4.      Defendant Standard Chartered Bank International (Americas) Limited is a corporation organized under the laws of the United States and is authorized to do business in Florida with a place of business at 1111 Brickell Avenue, Miami, Florida 33131.

5.      AEBI was an Edge Act corporation that offered traditional private banking services to individuals outside of the United States and was headquartered in Miami, Florida at all relevant times.

6.      In or about February 2008, Defendant Standard Chartered Bank PLC acquired the American Express Bank, Ltd. and all of its subsidiary companies and affiliated companies, including AEBI, changing its name to Standard Chartered Bank International (Americas) Limited.  For ease of reference, Standard Chartered Bank PLC, AEBI, and Standard Charter Bank International (Americas) Limited shall collectively be referred to as the "Bank."

7.      This Court has jurisdiction pursuant to the Edge Act of 1913 (12 U.S.C. § 632).

2

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 4 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-05533-VM*
Master File No. 1:09-cv-00118-VM-THK

8.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in Miami, Florida.

9.     This action was originally filed in the United States District Court for the Southern District of Florida. By order of the United States Judicial Panel on Multidistrict Litigation entered on May 20, 2011, this action was transferred to the United States District Court for the Southern District of New York for inclusion in the coordinated and consolidated pretrial proceedings in *In re Fairfield Greenwich Group Securities Litigation.*

## FACTUAL ALLEGATIONS

10.     In 1994, Barbachano inherited approximately $6 million following the death of her father, a well-known movie producer in Mexico.

11.     In late 1996, Barbachano became a client of the Bank, and Sierra was assigned as her Relationship Manager. Barbachano advised Sierra that she had no knowledge of finances and investments and that her goal was to preserve her inheritance while making a modest return. In that regard, Barbachano advised Sierra that she (Sierra) should treat Barbachano like an "old widow" when making investment recommendations and not to gamble with her assets. Sierra advised Barbachano that her investment objective was "capital preservation and growth." Sierra further advised Barachano that her investment risk factor was considered "moderate conservative" and that her overall investment position would be conservative, but when the market presented an opportunity, Sierra would take some small risks. *See* Exhibit A, attached hereto and incorporated herein.

12.     In addition, Sierra arranged for Barbachano to place a substantial part of her assets in a trust, which was subsequently created in the Cayman Islands, with AMEX International Trust (Cayman) Ltd., an affiliate of AEBI, acting as "Trustee," and, later, with Standard Chartered Trust (Cayman) Ltd., an affiliate of the Defendants, acting as "Trustee." The trust was initially named "Las Trojes," and was later re-named "Los Camotes," with the assets transferred into the trust by Barbachano and held by the

3

Case 1:09-cv-00118-VM-FM  Document 990  Filed 10/22/12  Page 5 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

Trustee for the benefit of Barbachano through two companies, Fardoll Co. Ltd. and Vegadeo Co. Ltd.
Barbachano was the grantor and beneficiary of the assets held by the trust through the companies.[1]

13.     Throughout their relationship, the Bank, by and through Sierra, made all investment
decisions for Barbachano.     In particular, Sierra, and together at times with John Dutkowski
("Dutkowski"), a Senior Investment Specialist of the Bank, would tout investments to Barbachano, advise
Barbachano that the investments she and Dutkowski recommended were not risky, and assure Barbachano
that the Bank reviewed in detail all the investments that Sierra and Dutkowski recommended and would
continually monitor Barbachano's investments.     Sierra would also show investment documents to
Barbachano but would not necessarily leave them for Barbachano to review because, as Sierra said, she
"would not understand them." For example, in the Bank's "call report," dated July 30, 2004, Sierra writes
that "[Barbachano] is still in the process of learning the investment management of the account." The
July 30, 2004 call report is attached hereto as **Exhibit B.**

14.     The Bank, by and through Sierra, became involved in all aspects of Barbachano's
investments and finances. Sierra met with Barbachano approximately four times each year (if not more)
in both Miami, Florida and Mexico to review her portfolio and make recommendations. Sierra also spoke
by telephone with Barbachano on a monthly or even more frequent basis concerning her investments and
finances, repeatedly assuring Barbachano that she (Sierra) was monitoring her investments. Sierra also
managed withdrawals and deposits for Barbachano, caused the payment of bills for Barbachano's Florida
residence and credit cards, and ensured the payment of taxes. In addition, Sierra befriended Barbachano,
often meeting her for dinner and taking a vacation with her to Key West, Florida. When Barbachano
decided to sell her Florida residence, Sierra caused her (Sierra's) husband to act as Barbachano's broker,
thus obtaining a commission from the sale.

---

[1] Because of the affiliated relationship between the Trustee and the Defendants, it would be futile
to demand that the Trustee bring suit against the Defendants.

4

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 6 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

### Fairfield Investments

15.     In or about January 2004, the Bank, by and through Sierra, began touting to Barbachano an investment in Fairfield Sentry Limited Fund ("Fairfield"), which was eventually exposed as a feeder fund for Madoff's Ponzi scheme. Sierra represented that the investment in Fairfield was a "risk reducer" for Barbachano's investment portfolio. Sierra further represented that the Bank had investigated Fairfield and that Fairfield was not risky, had "no volatility," provided a six (6) to seven (7) percent annual return, and was a safe, conservative investment. Sierra also represented to Barbachano that an investment in Fairfield was an opportunity for only a select number of investors.

16.     Unbeknownst to Barbachano, the Bank, by and through Sierra and Dutkowski, only began touting investment in Fairfield after Fairfield agreed to pay a "trailer fee" to the Bank in the amount of one-half of one percent of each investment per year. The Bank failed to disclose to Barbachano the payment of this "trailer fee" at any time. The Bank also failed to disclose to Barbachano that it only agreed to market Fairfield after Fairfield agreed to pay the Bank the "trailer fee."

17.     On February 2, 2004, on the recommendation of Sierra, upon which Barbachano reasonably relied, Barbachano invested $300,000.00 in Fairfield.

18.     Also, in 2004 and 2005, Barbachano, through an investment account maintained with UBS, invested approximately $100,000.00 in Fairfield.

19.     In or about January 2006, Barbachano transferred the investments she maintained at UBS to AEBI, and as a result, approximately ninety-five (95) percent of Barbachano's funds were managed by the Bank.

20.     On or about February 17, 2006, Sierra and Dutkowski reviewed Barbachano's investments (*see* **Exhibit C**, attached hereto and incorporated herein) and recommended that the investments in Fairfield be kept in Barbachano's portfolio as a "risk reducer," a recommendation upon which Barbachano reasonably relied. *See* "Investment Proposal" dated February 2006, which is attached

5

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 7 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

hereto and incorporated herein as **Exhibit D**. Thereafter, the Bank would continue to recommend that Barbachano maintain and increase her investment in Fairfield.

21.    In 2006, Barbachano decided to sell her residence in Florida. Sierra caused her husband, John Naranjo and his company, Acqua International Reality, to act as Barbachano's broker, thus obtaining a commission from the sale of her residence.

22.    In June 2006, after receiving the net proceeds from the sale of Barbachano's residence, Sierra caused Barbachano to invest an additional $400,000.00 in Fairfield. However, The Bank did not obtain Barbachano's written authorization for this additional investment.

23.    Sierra and Dutkowski always touted the investment in Fairfield as a "risk reducer" for Barbachano's investment portfolio, representations upon which Barbachano reasonably relied. For example, and as stated above, in February 2006, Sierra and Dutkowski presented Barbachano with an "Investment Proposal" that stated Fairfield was a "risk reducer." *See* **Exhibit D**. Moreover, during their conversations, Sierra and Dutkowski repeatedly told Barbachano that the investments in her portfolio were safe, were suitable to her investment objectives and risk tolerance, and that the Bank properly investigated and monitored those investments.

24.    However, during this time, neither Sierra nor Dutkowski advised Barbachano that Fairfield was a feeder fund for Bernard L. Madoff Investments Securities, LLC ("BLMIS"), that the Bank had received and was continuing to receive a "trailer fee" for the investment, and that the sole function of Fairfield, other than raising money from investors and extracting healthy fees for its sponsor, Fairfield Greenwich Group ("FGG"), was to turn over those investments to BLMIS, which was controlled by Bernard L. Madoff.

25.    Furthermore, despite various representations made by Sierra and Dutkowski, as described above, the Bank failed to conduct adequate due diligence concerning the Fairfield investment in violation of both the Bank's internal due diligence standards and those prevalent in its sector of the financial industry. Specifically:

6

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 8 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

a. In violation of its own internal policies, the Bank recommended the Fairfield investment without doing any initial or on-going due diligence on Fairfield's sub-advisor, BLMIS; and ,

b. The Bank ignored obvious red flags, which should have put it on notice – and which made it reasonably foreseeable – that Madoff was engaged in a fraud, including but not limited to:

    i. BLMIS' invariable positive monthly return and low standard deviation;

    ii. The lack of any comparable product with comparative returns;

    iii. The fact that BLMIS performed both execution and custodial functions with the invested funds, which was exclusively controlled by Bernard Madoff;

    iv. The fact that BLMIS failed to file required SEC Form 13-Fs prior to February 2007, and, those that were filed after February 2007, evidenced discrepancies between amounts reported and amounts the company was supposedly managing;

    v. The fact that financial institutions investing with BLMIS, including the Bank, were not generally allowed to go visit BLMIS for due diligence purposes;

    vi. The fact that BLMIS' financial audits were conducted by a two-man firm, Friedhling & Horowitz;

    vii. The fact that BLMIS did not charge an administrative fee for its services or a share of supposed profits;

    viii. The fact that BLMIS did not allow any real-time electronic access to trading; and

7

Case 1:09-cv-00118-VM-FM  Document 990   Filed 10/22/12   Page 9 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

      ix.  The fact that BLMIS utilized outdated technology, including paper trading

           confirmations, which were sent daily via U.S. mail to feeder funds, such as

           Fairfield.

26.     In addition, the Bank failed to disclose that Fairfield's due diligence concerning BLMIS was similarly inadequate. For example, Fairfield failed to prepare any independent accounting report regarding the design or operational effectiveness of the internal controls at BLMIS.

27.     Barbachano reasonably relied on the Bank's representations, by and through Sierra and Dutkowski, regarding Fairfield and had Barbachano been aware that those representations were false, she would not have invested in Fairfield.

28.     Likewise, had Barbachano been aware that the Bank failed to conduct adequate due diligence concerning the Fairfield investment, in violation of both the Bank's internal due diligence standards and those prevalent in its sector of the financial industry, that the Bank was receiving a "trailer fee" from Fairfield and had only agreed to market Fairfield after Fairfield had agreed to pay the "trailer fee," and that Fairfield had failed to conduct adequate due diligence regarding BLMIS, Barbachano would not have invested in Fairfield.

### Lack of Suitability of Barbachano's Portfolio Investments

29.     The Bank's stated risk tolerance for Barbachano was always moderate conservative, with an investment objective of capital preservation and growth. *See* **Exhibit A.** However, by June 2008, the Bank, by and through Sierra and Dutkowski, had made substantial changes to the composition of Barbachano's portfolio, increasing the risk in the portfolio by substantially allocating Barbachano's assets to equities and alternative investments while simultaneously decreasing the amount of assets held in cash and bonds. Thus, by June 2008, the allocation of Barbachano's portfolio to cash and bonds was a mere

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, ENGLISH & ALLEN, P.A.
100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 · 954-522-3636 · 954-522-5119 FAX

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 10 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

eleven (11) percent, that allocation of assets was unsuitable to Barbachano's investment objective of capital preservation and growth and her risk tolerance of moderate conservative.[2]

30.    Specifically, on or about June 6, 20007, Sierra and Dutkowski met with Barbachano and her husband, Hector Velasquez ("Velasquez"), in Mexico City.  During this meeting, Sierra and Dutkowski recommended that Barbachano reallocate her assets based on then-existing market conditions, while maintaining her position in Fairfield.  Dutkowski and Sierra claimed that they would diversify her portfolio to minimize risk, using an investment risk factor of "moderate conservative" for Barbachano's assets, and that Barbachano should expect earnings of five (5) to seven (7) percent for 2008.  When Velasquez asked what Barbachano's losses could be, Dutkowski advised that in the worst of cases, Barbachano could suffer losses of ten (10) to twelve (12) percent.

31.    During the June 2007 meeting, Barbachano reiterated to Sierra and Dutkowski that she did not understand anything about investments and that she wanted to be clear that she did not want to risk her money.  This message was repeatedly told by Barbachano to Sierra and Dutkowski during subsequent meetings on or about September 26, 2007 and June 2, 2008

32.    Moreover, during a February 28, 2008 meeting between Barbachano, Velasquez, Sierra, Dutkowski, and Carla Borelly (Sierra's assistant) in Mexico City, Dutkowski described current market conditions, and Barbachano and Velasquez "reminded [Dutkowski and Sierra] to be cautious in the event things turned worse instead of better." *See* the Bank's March 5, 2008 call report, authored by Sierra, **Exhibit E**, attached hereto and incorporated herein. Also, a month earlier, on January 18, 2008, Sierra advised Velasquez that Dutkowski had stated that the American market is "extremely undervalued and oversold," thus providing further assurances to Barbachano that her assets were not at risk and that the

---

[2] The respective allocations of and investments contained in Barbachano's portfolio for the months of June 2006, December 2007, June 2008, December 2008, and September 2009 are set forth in **Exhibit F**, attached hereto and incorporated herein.

9

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, ENGLISH & ALLEN, P.A.
100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 11 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

Bank was monitoring her investments. However, by the summer of 2008, Sierra believed that market conditions were highly volatile and that the markets were "going crazy."

33.     Furthermore, during a June 2, 2008 meeting with Barbachano, Sierra, Velasquez, and Dutkowski in Mexico City, Barbachano repeatedly asked Sierra if everything was under control with her accounts, and Sierra continuously assured Barbachano that everything was fine and that Barbachano had nothing to worry about since Sierra was taking care of everything.

34.     By the end of July 2008, over forty-two (42) percent of Barbachano's portfolio was invested in Signature Global Equities – an investment that the Bank rated four out of five on its risk matrix (with five being the most risky and one being the most conservative). Moreover, by the end of July 2008, over sixteen (16) percent of Barbachano's portfolio was invested in Fairfield – an investment that was a fraud and one in which the Bank had failed to conduct adequate due diligence or disclose to Barbachano that it was receiving "trailer fees" for her continued investment in that product.

35.     In or about June 2008, Barbachano also advised Sierra that she wanted to withdraw substantial funds from the portfolio managed by the Bank in order to purchase and renovate property in Mexico. Barbachano's withdrawal of funds from her portfolio would result in both Sierra receiving reduced compensation from the Bank and the Bank collecting reduced fees from Barbachano for her assets under management.

36.     Sierra discouraged Barbachano from withdrawing assets from her portfolio and, instead, persuaded Barbachano to obtain a multi-million dollar loan from the Bank. Further, the Bank caused the loan to be secured by the assets contained in Barbachano's investment portfolio and, thus, increased the volatility of the portfolio.

37.     In so doing, Sierra had Dutkowski prepared an analysis, based on past performance of Barbachano's portfolio, to persuade Barbachano that she should obtain the loan from the Bank rather than liquidate a portion of her portfolio. Sierra also told Barbachano that she did not need to worry about

10

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, ENGLISH & ALLEN, P.A.
100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 · 954-522-3636 · 954-522-5119 FAX

Case 1:09-cv-00118-VM-FM Document 990 Filed 10/22/12 Page 12 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:09-cv-05593-VM*
Master File No. 1:09-cv-00118-VM-THK

risking her money because Barbachano had a very secure portfolio. When Barbachano raised the possibility of only taking a loan for half the amount, Sierra insisted that a full loan was the better course.

38.     It was unsuitable investment advice for Sierra to recommend that Barbachano leverage her portfolio and obtain a multi-million dollar loan from the Bank when Sierra knew that the market was experiencing extreme volatility. In addition, Sierra did not advise Barbachano that it was to her (Sierra's) financial benefit for Barbachano to obtain a loan from the Bank rather than reduce the amount of assets contained in Barbachano's portfolio.

### The Fallout

39.     In 2008-09, Barbachano suffered losses of approximately forty-three (43) percent in her portfolio, including all monies invested in Fairfield when Madoff's Ponzi scheme was revealed on December 11, 2008. Even excluding the investment in Fairfield, Barbachano lost approximately twenty-six (26) percent of the value of her portfolio – losses that Barbachano would not have suffered if the Bank had managed her portfolio consistent with Barbachano's risk level and investment objective.

40.     In late August 2009, Sierra left the employment of the Bank. On August 19, 2009, however, and prior to her departure from the Bank, Sierra advised Barbachano (while at Barbachano's home in Mexico) that she should sue the Bank because her assets had been mismanaged – specifically, that there were suitability issues related to Barbachano's portfolio and that the Bank was a "mess." Sierra also told Barbachano that she (Sierra) did not obtain written authorization from Barbachano for many of the investments made and sold by the Bank on her behalf, as she was required to obtain, and failed to make changes to the trust, as Barbachano had requested. Further, upon Sierra's departure from the Bank, she failed to give Barbachano documents that Barbachano had previously requested.

41.     On or about September 9, 2009, the Bank, by and through its representative and Barbachano's new relationship manager, Jose del Vecchio ("Del Vecchio"), met with Barbachano and Velasquez in Mexico City. Del Vecchio told Barbachano that her portfolio had been mismanaged. Rather than having a moderate conservative portfolio, many of her assets had actually been placed in

11

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 13 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03333-VM*
Master File No. 1:09-cv-00118-VM-THK

high-risk investments and Barbachano's portfolio was actually "aggressive," which was the reason she had lost so much money. Del Vecchio also criticized Sierra's management of Barbachano's account.

42.     In October 2009, Del Vecchio, along with Dutkowski, recommended a new allocation of Barbachano's remaining assets to align her portfolio with her investment objectives. The proposal reduced Barbachano's investment in equities and increased her position in fixed income assets, which would re-allocate the composition of the portfolio to make it more conservative. The Bank, by and through Del Vecchio and Dutkowski, proposed that Barbachano's investment in Signature Global Securities be reduced by $1.2 million (reducing her equity assets from approximately fifty-one (51) percent of her portfolio to approximately twenty-four (24) percent of her portfolio) and that she invest $1.7 million in PIMCO Global Bonds (increasing her fixed income assets from approximately twenty-three (23) percent of her portfolio to approximately sixty-one (61) percent of her portfolio). A copy of the October 2009 "Investment Proposal" is attached hereto and incorporated herein as **Exhibit G.**

43.     Thereafter, Barbachano attempted to end her relationship with the Bank and transfer her assets. However, the Bank, by and through Del Vecchio, attempted to have Barbachano execute documents releasing the Bank from any liability for the losses that she had suffered.     The Bank also failed to provide Barbachano with account documentation that she repeatedly requested. And, to release her assets, the Bank demanded that Barbachano repay her loan full, which Barbachano ultimately did in order to transfer her assets.

44.     Finally, in or about April 2010, Barbachano closed her accounts with the Bank.

## COUNT I

## INVESTMENT FRAUD – VIOLATION OF FLORIDA STAT. §§ 517.301 & 517.211(2)
## (AGAINST ALL DEFENDANTS)

45.     Barbachano realleges paragraphs 1-44 as if fully set forth herein.

12

46.     This is an action against the Defendants for violations of the anti-fraud provisions of

section 517.301 of the Florida Statutes, part of the Florida Securities and Investors Protection Act (the

"Act"), which seeks recovery pursuant to section 517.211(2) of the Florida Statutes, all part of the Act.

47.     Section 517.301 provides in relevant part that:

It is unlawful and a violation of the provisions of [Chapter 517] for a person:

(a) In connection with the rendering of any investment advice or in connection with the offer,
sale, or purchase of any investment . . ., directly or indirectly:

    1. To employ any device, scheme, or artifice to defraud;

    2. To obtain money or property by means of any untrue statement of a material fact or
    any omission to state a material fact necessary in order to make the statements made, in
    the light of the circumstances under which they were made, not misleading; or

    3. To engage in any transaction, practice, or course of business which operates or would
    operate as a fraud or deceit upon a person.

48.     Section 517.211(2), Fla. Stat., also provides in relevant part:

Any person purchasing or selling a security in violation of s. 517.301, and every director,
officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner,
or agent has personally participated or aided in making the sale or purchase, is jointly and
severally liable to the person selling the security or purchasing the security from such
person in an action for rescission, if the plaintiff still owns the security, or for damages, if
the plaintiff has sold the security.

49.     The shares of Fairfield were a "security" as that term is used in the Act. In addition, the

Defendants rendered investment advice in connection with Fairfield and other securities and investments

in Barbachano's investment portfolio, which also included securities with Global Signature Equities.

50.     Defendants, by and through Bank employees working from the Bank's Miami, Florida

location, rendered unsuitable investment advice to Barbachano in connection with the purchase and sale

of securities in her investment portfolio, causing that portfolio to be allocated among investments

unsuited to her investment objectives and risk tolerance. In so doing, Defendants employed a device,

scheme, or artifice to defraud Barbachano; Defendants obtained money or property by means of untrue

statements of a material fact and/or failure to state material facts necessary in order to make the

13

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 15 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

statements made, in the light of the circumstances under which they were made, not misleading; and/or Defendants engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon Barbachano.

51.    The Defendants knew or should have known that the allocation of investments were unsuitable for Barbachano; the Defendants recommended the investments to Barbachano notwithstanding the unsuitability thereof and her lack of investment sophistication; the Defendants, fraudulently and/or negligently made material misrepresentations of material facts and failed to disclose material information relating to the suitability of the investments that they recommended; and the Defendants often made investment decisions without obtaining Barbachano's written authorization.

52.    In particular, by June 2008, the Bank, by and through Sierra and Dutkowski, had made substantial changes to the composition of Barbachano's portfolio, increasing the risk in the portfolio by allocating the vast majority – eighty-nine (89) percent – of Barbachano's assets to equities and alternative investments while decreasing the amount of assets held in cash and bonds. Thus, by June 2008, the allocation of Barbachano's portfolio to cash and bonds had been reduced. That reallocation of assets was unsuitable to Barbachano's investment objective of capital preservation and growth and her risk tolerance of moderate conservative.

53.    Moreover, by July 2008, over forty-two (42) percent of Barbachano's portfolio was invested in Signature Global Equities – an investment that the Bank rated four out of five on its risk matrix (with five being the most risky and one being the most conservative). Also, by July 2008, over sixteen (16) percent of Barbachano's portfolio was invested in Fairfield – an investment that was a fraud and one in which the Bank had failed to conduct adequate due diligence, monitor, or disclose to Barbachano that it was receiving "trailer fees" for her purchase and continued investment in that security.

54.    Furthermore, in 2008, the Defendants caused Barbachano to obtain a multi-million dollar loan from the Bank rather than liquidate a portion of her portfolio. It was unsuitable investment advice for Sierra to recommend that Barbachano leverage her investment portfolio and obtain a multi-million

14

Case 1:09-cv-00118-VM-FM Document 990 Filed 10/22/12 Page 16 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

dollar loan from the Bank when Sierra knew that the market was experiencing extreme volatility. In addition, Sierra did not advise Barbachano that it was to her (Sierra's) financial benefit for Barbachano to obtain a loan from the Bank rather than reduce the amount of assets under management in Barbachano's portfolio.

55.     The Defendants knew or should have known that the recommendations made to Barbachano were unsuited to her investment objectives and risk tolerance.

56.     The Defendants acted or purported to act as a fiduciary to Barbachano in rendering her investment advice in connection with the purchase and sale of securities in her investment portfolio.

57.     Barbachano justifiably relied upon Defendants' misrepresentations and omissions, following their investment recommendations and decisions in connection with the purchase and sale of securities in her investment portfolio.

58.     In addition, the Defendants acted as an undisclosed agent of Fairfield in connection with Barbachano's purchase of that security and the Bank's recommendation that Barbachano maintain her investment in Fairfield, obtaining hidden "trailer fees" from Fairfield for Barbachano's purchase and continued investment in the Fairfield securities.

59.     The Defendants also failed to conduct adequate due diligence and ignored obvious red flags in connection with their recommendation that Barbachano purchase and maintain her investment in Fairfield securities, while fraudulently and/or negligently representing to Barbachano that they had reviewed in detail all the investments recommended to her, and while fraudulently and/or negligently touting the investment in Fairfield as a "risk reducer" for Barbachano's investment portfolio, and fraudulently and/or negligently representing that Fairfield had "no volatility," would provide a six (6) to seven (7) percent annual return, and was a safe, conservative investment, when the Bank failed to conduct any due diligence to make and/or verify these representations.

60.     Furthermore, the Defendants' failure to disclose to Barbachano the "trailer fees" obtained from Fairfield constitutes an omission of a material fact in connection with the purchase or sale of a

15

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 17 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

security, and the Defendants acted fraudulently and/or negligently in failing to the disclose that fact in order to conceal from Barbachano their material misrepresentations, lack of due diligence, hidden financial incentive, and breach of fiduciary duties in connection with Barbachano's purchase of, and continued investment in the Fairfield securities.

61.     Barbachano justifiably relied upon Defendants' misrepresentations and omissions with regard to the Defendants' recommendation to purchase and to continue to invest in the Fairfield securities.

62.     Barbachano has suffered substantial damages as a result of Defendants' material omissions and false and/or negligent misrepresentations of material facts.

63.     Likewise, Barbachano has suffered substantial damages as a result of Defendants' failure to take reasonable steps to substantiate the investment recommendations made to her by conduting due diligence, which recommendations caused and induced her investment losses.

WHEREFORE, Plaintiff, Joaquina Teresa Barbachano Herrero, demands judgment against Defendants for damages, prejudgment interest, attorneys' fees pursuant to Section 517.211(6) of the Florida Statutes and costs, and for such other relief as the Court deems just and proper.

## COUNT II

### BREACH OF FIDUCIARY DUTY
### (AGAINST ALL DEFENDANTS)

64.     Barbachano realleges paragraphs 1-44 as if fully set forth herein.

65.     This is an action against the Defendants for breach of fiduciary duty.

66.     Defendants entered into and had a fiduciary relationship with Barbachano, and Defendants. Barbachano and the Defendants also shared a relationship whereby Barbachano reposed her trust and confidence in Defendants regarding their investment recommendations and decisions. In particular, Defendants rendered investment advice to Barbachano and directed her investments and finances. Moreover, Sierra became involved in all aspects of Barbachano's investments and finances, and Sierra befriended Barbachano, obtaining Barbachano's trust and confidence in Sierra's recommendations.

16

Case 1:09-cv-00118-VM-FM  Document 990  Filed 10/22/12  Page 18 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

The Defendants, by and through Sierra and Dutkowski, knew Barbachano's investment objectives and risk tolerance. The Defendants, by and through Sierra and Dutkowski, made continuing representations and recommendations regarding the investments that they touted to Barbachano, the due diligence that the Defendants performed with regard to those investments, the Defendants' continued monitoring of the investments contained in Barbachano's portfolio, and the safety and security of her portfolio investments. The Defendants further undertook to make recommendations regarding whether to liquidate or not assets contained in Barbachano's portfolio.

67.     As such, Defendants owed Barbachano fiduciary duties of loyalty and care, including duties to make suitable investment recommendations and decisions only after conducting reasonable due diligence, researching potential investments, and disclosing all material facts, including the risks involved in any investment.

68.     Defendants also owed Barbachano fiduciary duties to render investment and financial advice suitable to her investment objectives and risk tolerance, including suitable recommendations regarding the asset allocations contained in Barbachano's portfolio. The Defendants further owed Barbachano fiduciary duties to review the investments contained in her investment portfolio, to render suitable recommendations regarding the increase or liquidation of assets in her investment portfolio, including whether to borrow against and leverage those assets, to continuously monitor the investments contained in Barbachano's portfolio, and to cause the purchase or sale of investments on behalf of Barbachano only after obtaining Barbachano's written authorization.

69.     In addition, Defendants owed Barbachano a fiduciary duty not to make material misrepresentations of fact or to omit material facts, including the disclosure of any facts that would give rise to a conflict of interest.

70.     Defendants breached the fiduciary duties that they owed to Barbachano by causing her to make investments unsuited to her investment objectives and risk tolerance, including the failure to allocate investments consistent with those investment objectives and risk tolerance, by causing

17

Barbachano to obtain a multi-million dollar loan from the Defendants rather than liquidating part of her investment portfolio, by failing to disclose in connection with the loan that it was to Sierra's financial benefit that Barbachano obtain the loan rather than liquidate part of her portfolio, and by often making investment decisions without obtaining Barbachano's written authorization, including the purchase of Fairfield securities. The Defendants knew or should have known that the allocation of investments contained in Barbachano's investment portfolio was unsuitable for her investment objectives and risk tolerance; the Defendants recommended investments to Barbachano notwithstanding the unsuitability thereof and her lack of investment sophistication; and the Defendants fraudulently and/or negligently made material misrepresentations and failed to disclose material information relating to the suitability of the investments it recommended and the recommendation that Barbachano leverage her portfolio and obtain a multi-million dollar loan in 2008 rather than liquidate part of her portfolio.

71.     Furthermore, in breach of their fiduciary duties, the Defendants ignored obvious red flags, failed to conduct reasonable due diligence, disclose material facts, and adequately research and/or disclose the risks involved in Fairfield, which investment Defendants fraudulently and/or negligently touted as a "risk reducer" for Barbachano's investment portfolio and fraudulently and/or negligently represented as having "no volatility," as providing a six (6) to seven (7) percent annual return, and as a safe, conservative investment.

72.     The Defendants, in breach of their fiduciary duties, also failed to monitor Barbachano's investments, including her investment in Fairfield.

73.     In addition, the Defendants breached their fiduciary duties of care and loyalty that they owed to Barbachano by accepting "trailer fees" from Fairfield and by failing to disclose the same to Barbachano. In so doing, the Defendants acted as an agent of Fairfield and under a conflict of interest that the Defendants had a duty to disclose to Barbachano.

74.     Barbachano justifiably relied upon Defendants' investment advice, expertise, and skill and she suffered substantial damages as a result.

18

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 20 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al.*, 1:11-cv-03553-VM
Master File No. 1:09-cv-00118-VM-THK

75.    Likewise, Barbachano has suffered substantial damages as a result of Defendants' failure to take reasonable steps to substantiate the investment recommendations made to her, which recommendations caused and induced her investment losses.

76.    Defendants' breach of fiduciary duty constitutes intentional misconduct or gross negligence, as those terms are defined in section 768.72, Fla. Stat. Accordingly, Barbachano reserves the right to amend the Complaint to seek punitive damages.

WHEREFORE, Plaintiff, Joaquina Teresa Barbachano Herrero, demands judgment against Defendants for damages, costs, prejudgment interest, and for such other relief as the Court deems just and proper.

## COUNT III

### FRAUD, INCLUDING FRAUDULENT CONCEALMENT
### (AGAINST ALL DEFENDANTS)

77.    Barbachano realleges paragraphs 1-44 as if fully set forth herein.

78.    This is an action against Defendants for common law fraud, including fraudulent concealment.

79.    Defendants acted as investment advisors for Barbachano. In so doing, Defendants rendered investment advice to Barbachano and directed her investments and finances. Moreover, Sierra became involved in all aspects of Barbachano's investments and finances, and Sierra befriended Barbachano, obtaining Barbachano's trust and confidence in Sierra's recommendations. The Defendants, by and through Sierra and Dutkowski, knew Barbachano's investment objectives and risk tolerance. The Defendants, by and through Sierra and Dutkowski, made continuing representations and recommendations regarding the investments that they touted to Barbachano, the due diligence that the Defendants performed with regard to those investments, the Defendants' continued monitoring of the investments contained in Barbachano's portfolio, and the safety and security of her portfolio investments.

19

Case 1:09-cv-00118-VM-FM    Document 990    Filed 10/22/12    Page 21 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03333-VM*
Master File No. 1:09-cv-00118-VM-THK

The Defendants further undertook to make recommendations regarding whether to liquidate or not assets contained in Barbachano's portfolio.

      80.     Accordingly, Defendants owed Barbachano duties to render investment and financial advice suitable to her investment objectives and risk tolerance, including suitable recommendations regarding the asset allocations contained in Barbachano's portfolio. The Defendants further owed Barbachano duties to review the investments contained in her investment portfolio, to render suitable recommendations regarding the increase or liquidation of assets in her investment portfolio, including whether to borrow against and leverage those assets, to continuously monitor the investments contained in Barbachano's portfolio, and to cause the purchase or sale of investments on behalf of Barbachano only after obtaining Barbachano's written authorization.

      81.     In addition, Defendants owed Barbachano duties not to make fraudulent, material misrepresentations of fact or to omit material facts, including the disclosure of any facts that would give rise to a conflict of interest, with respect to any and all of the duties that Defendants undertook on behalf of Barbachano.

      82.     Defendants fraudulently misrepresented material facts and fraudulently concealed and failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. Specifically, the Defendants, by and through Sierra and Dutkowski, acting with the intent to deceive and defraud, misrepresented to Barbachano that:

        a.   The investment recommendations made to her were consistent with her investment objectives and moderate conservative risk tolerance when, in fact, the investment recommendations resulted in an aggressive investment portfolio, unsuited to Barbachano's investments objective and risk tolerance;

        b.   Obtaining a multi-million dollar loan from the Defendants that leveraged the assets contained in Barbachano's portfolio, rather than liquidating part of that portfolio, was suitable to her investment objective and risk tolerance when, in fact, it was not;

        c.   The Bank performed adequate due diligence with regard to all recommended investments, including Fairfield, when, in fact, the Bank failed to conduct adequate due diligence; and

20

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 22 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03353-VM*
Master File No. 1:09-cv-00118-VM-THK

        d. The Fairfield investment was a "risk reducer" for Barbachano's investment portfolio and that the Fairfield investment had "no volatility," provided a six (6) to seven (7) percent annual return, and was a safe, conservative investment.

83.     The Defendants also fraudulently concealed and failed to disclose material facts to Barbachano and ignored red flags, further demonstrating its fraudulent intent with regard to the misrepresentations set forth above, including the Defendants' failure to disclose that:

        a. The Bank received a "trailer fee" from Fairfield;

        b. The Bank was acting as an agent of Fairfield;

        c. The Bank only agreed to tout Fairfield to its clients, including Barbachano, after Fairfield agreed to pay the "trailer fee" to the Bank; and

        d. Sierra financially benefitted from Barbachano obtaining a multi-million dollar loan from the Bank rather than liquidating a part of her portfolio.

84.     Barbachano justifiably relied upon Defendants' fraudulent misrepresentations, following the investment recommendations made by Sierra and Dutkowski.

85.     As a direct and proximate result of the Defendants' fraudulent misrepresentations, concealment, and omissions, Barbachano has suffered substantial damages.

86.     Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Barbachano. Accordingly, Barbachano reserves the right to amend the Complaint to seek punitive damages.

87.     WHEREFORE, Plaintiff, Joaquina Teresa Barbachano Herrero, demands judgment against Defendants for damages, costs, prejudgment interest, and for such other relief as the Court deems just and proper.

**COUNT IV**

**GROSS NEGLIGENCE**
**(AGAINST ALL DEFENDANTS)**

88.     Barbachano realleges paragraphs 1-44 as if fully set forth herein.

89.     This is an action against the Defendants for gross negligence.

21

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 23 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03533-VM*
Master File No. 1:09-cv-00118-VM-THK

90.     Defendants acted as investment advisors for Barbachano.  In so doing, Defendants rendered investment advice to Barbachano and directed her investments and finances.  Moreover, Sierra became involved in all aspects of Barbachano's investments and finances, and Sierra befriended Barbachano, obtaining Barbachano's trust and confidence in Sierra's recommendations.  The Defendants, by and through Sierra and Dutkowski, knew Barbachano's investment objectives and risk tolerance.  The Defendants, by and through Sierra and Dutkowski, made continuing representations and recommendations regarding the investments that they touted to Barbachano, the due diligence that the Defendants performed with regard to those investments, the Defendants' continued monitoring of the investments contained in Barbachano's portfolio, and the safety and security of her portfolio investments.  The Defendants further undertook to make recommendations regarding whether to liquidate or not assets contained in Barbachano's portfolio.

91.     Accordingly, Defendant owed Barbachano duties of care to make suitable investment recommendations and decisions only after conducting reasonable due diligence, researching potential investments, and disclosing all material facts, including the risks involved in any investment.

92.     Defendants also owed Barbachano duties to render investment and financial advice suitable to her investment objectives and risk tolerance, including suitable recommendations regarding the asset allocations contained in Barbachano's portfolio.  The Defendants further owed Barbachano duties to review the investments contained in her investment portfolio, to render suitable recommendations regarding the increase or liquidation of assets in her investment portfolio, including whether to borrow against and leverage those assets, to continuously monitor the investments contained in Barbachano's portfolio, and to cause the purchase or sale of investments on behalf of Barbachano only after obtaining Barbachano's written authorization.

93.     In addition, Defendants owed Barbachano duties not to make material misrepresentations of fact or to omit material facts, including the disclosure of any facts that would give rise to a conflict of interest.

22

Case 1:09-cv-00118-VM-FM    Document 990    Filed 10/22/12    Page 24 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

94.    Defendants breached the duties that they owed to Barbachano and were grossly negligent by causing her to make investments unsuited to her investment objectives and risk tolerance, including the failure to allocate investments consistent with those investment objectives and risk tolerance, by causing Barbachano to obtain a multi-million dollar loan from the Defendants rather than liquidating part of her investment portfolio, by failing to disclose in connection with the loan that it was to Sierra's financial benefit that Barbachano obtain the loan rather than liquidate part of her portfolio, and by often making investment decisions without obtaining Barbachano's written authorization, including the purchase of Fairfield securities. The Defendants knew or should have known that the allocation of investments contained in Barbachano's investment portfolio was unsuitable for her investment objectives and risk tolerance; the Defendants recommended investments to Barbachano notwithstanding the unsuitability thereof and her lack of investment sophistication; and the Defendants were grossly negligent in making material misrepresentations and failing to disclose material information relating to the suitability of the investments it recommended and the recommendation that Barbachano leverage her portfolio and obtain a multi-million dollar loan in 2008 rather than liquidate part of her portfolio.

95.    Furthermore, in breach of their duties owed to Barbachano, the Defendants were grossly negligent in failing to conduct reasonable due diligence, disclose material facts, and adequately research and/or disclose the risks involved in Fairfield, which investment Defendants negligently touted as a "risk reducer" for Barbachano's investment portfolio and negligently represented as having "no volatility," as providing a six (6) to seven (7) percent annual return, and as a safe, conservative investment.

96.    The Defendants, in breach of their duties owed to Barbachano, were also grossly negligent in failing to monitor Barbachano's investments, including her investment in Fairfield.

97.    In addition, the Defendants breached their duties owed to Barbachano and were grossly negligent by accepting "trailer fees" from Fairfield and by failing to disclose the same to Barbachano. In so doing, the Defendants acted as an agent of Fairfield and under a conflict of interest that the Defendants had a duty to disclose to Barbachano.

23

Case 1:09-cv-00118-VM-FM Document 990 Filed 10/22/12 Page 25 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al.*, 1:09-cv-00118-VM
Master File No. 1:09-cv-00118-VM-THK

98.     Barbachano justifiably relied upon Defendants' investment advice, expertise, and skill and she suffered substantial damages as a result.

99.     Likewise, Barbachano has suffered substantial damages as a result of Defendants' failure to take reasonable steps to substantiate the investment recommendations made to her, which recommendations caused and induced her investment losses.

100.     As a direct and proximate result of Defendants' gross negligence, Barbachano has suffered damages.

101.     Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Barbachano. Defendants' conduct constitutes gross negligence, as defined in section 768.72, Fla. Stat. Accordingly, Barbachano reserves the right to amend the Complaint to seek punitive damages.

WHEREFORE, Plaintiff, Joaquina Teresa Barbachano Herrero, demands judgment against Defendants for damages, costs, prejudgment interest, and for such other relief as the Court deems just and proper.

## COUNT V

## NEGLIGENT MISREPRESENTATION
## (ALL DEFENDANTS)

102.     Barbachano realleges paragraphs 1-44 as if fully set forth herein.

103.     This is an action against the Defendants for negligent misrepresentation.

104.     Defendants acted as investment advisors for Barbachano. In so doing, Defendants rendered investment advice to Barbachano and directed her investments and finances. Moreover, Sierra became involved in all aspects of Barbachano's investments and finances, and Sierra befriended Barbachano, obtaining Barbachano's trust and confidence in Sierra's recommendations. The Defendants, by and through Sierra and Dutkowski, knew Barbachano's investment objectives and risk tolerance. The Defendants, by and through Sierra and Dutkowski, made continuing representations and

24

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 26 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

recommendations regarding the investments that they touted to Barbachano, the due diligence that the Defendants performed with regard to those investments, the Defendants' continued monitoring of the investments contained in Barbachano's portfolio, and the safety and security of her portfolio investments. The Defendants further undertook to make recommendations regarding whether to liquidate or not assets contained in Barbachano's portfolio.

105.    Accordingly, Defendants owed Barbachano duties to render investment and financial advice suitable to her investment objectives and risk tolerance, including suitable recommendations regarding the asset allocations contained in Barbachano's portfolio.  The Defendants further owed Barbachano duties to review the investments contained in her investment portfolio, to render suitable recommendations regarding the increase or liquidation of assets in her investment portfolio, including whether to borrow against and leverage those assets, to continuously monitor the investments contained in Barbachano's portfolio, and to cause the purchase or sale of investments on behalf of Barbachano only after obtaining Barbachano's written authorization.

106.    In addition, Defendants owed Barbachano duties not to make material misrepresentations of fact or to omit material facts, including the disclosure of any facts that would give rise to a conflict of interest, with respect to any and all of the duties that Defendants undertook on behalf of Barbachano.

107.    Defendants negligently misrepresented material facts and negligently failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.  Specifically, the Defendants, by and through Sierra and Dutkowski, negligently represented to Barbachano that:

  a.  The investment recommendations made to her were consistent with her investment objectives and moderate-conservative risk tolerance when, in fact, the investment recommendations resulted in an aggressive investment portfolio, unsuited to Barbachano's investments objective and risk tolerance;

  b.  Obtaining a multi-million dollar loan from the Defendants that leveraged the assets contained in Barbachano's portfolio, rather than liquidating part of that portfolio, was suitable to her investment objective and risk tolerance when, in fact, it was not;

25

Case 1:09-cv-00118-VM-FM Document 990 Filed 10/22/12 Page 27 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

    c. The Bank performed adequate due diligence with regard to all recommended investments, including Fairfield, when, in fact, the Bank failed to conduct adequate due diligence; and

    d. The Fairfield investment was a "risk reducer" for Barbachano's investment portfolio and that the Fairfield investment had "no volatility," provided a six (6) to seven (7) percent annual return, and was a safe, conservative investment.

108. The Defendants also failed to disclose material facts to Barbachano and ignored obvious red flags, further demonstrating its negligent scienter with regard to the misrepresentations set forth above, including the Defendants' failure to disclose that:

    a. The Bank received a "trailer fee" from Fairfield;

    b. The Bank was acting as an agent of Fairfield;

    c. The Bank only agreed to tout Fairfield to its clients, including Barbachano, after Fairfield agreed to pay the "trailer fee" to the Bank; and

    d. Sierra financially benefitted from Barbachano obtaining a multi-million dollar loan from the Bank rather than liquidating a part of her portfolio.

109. Barbachano justifiably relied upon Defendants' negligent misrepresentations, following the investment recommendations made by Sierra and Dutkowski.

110. As a direct and proximate result of the Defendants' negligent misrepresentations and omissions, Barbachano has suffered substantial damages.

111. Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Barbachano. Defendants' conduct constitutes gross negligence, as defined in section 768.72, Fla. Stat. Accordingly, Barbachano reserves the right to amend the Complaint to seek punitive damages.

WHEREFORE, Plaintiff, Joaquina Teresa Barbachano Herrero, demands judgment against Defendants for damages, costs, prejudgment interest, and for such other relief as the Court deems just and proper.

26

Case 1:09-cv-00118-VM-FM Document 990 Filed 10/22/12 Page 28 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al.,1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

## PLAINTIFF'S DEMAND FOR JURY TRIAL

112.    Plaintiff demands a trial by jury on all issues so triable of right by a jury.


Respectfully submitted,

By: /s/ H. Eugene Lindsey III, Esq.
H. Eugene Lindsey III
Florida Bar No. 130338
New York Bar No. 2421923
hel@katzbarron.com
KATZ BARRON SQUITERO FAUST
2699 S. Bayshore Drive, 7th Floor
Miami, Florida 33133-5408
Telephone: (305) 856-2444
Facsimile: (305) 285-9227
*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

    WE HEREBY CERTIFY that a true and correct copy of the foregoing has been served this 3rd

day of October, 2012, by PDF/email attachment, on:

SULLIVAN & CROMWELL LLP
New York, New York

Patrick B. Berarducci - berarduccip@sullcrom.com

*Attorneys for Standard Chartered Bank*
*International (Americas) Limited and Standard*
*Chartered PLC*

CURRAN & ASSOCIATES
Miami, Florida

Laurence E. Curran, III lecurran@lecurran.com

*Plaintiffs Steering Committee Member*

AGUIRE, MORRIS & SEVERSON LLP
San Diego, California

Michael J. Aguire maguirre@amslawyers.com

THE BRODSKY LAW FIRM
Miami, Florida

Richard Brodksy
rbrodsky@thebrodskylawfirm.com

*Plaintiffs Steering Committee Liaison*

RIVERO MESTRE LLP
Miami, Florida

Jorge A. Mestre jmestre@rmc-attorneys.com

*Plaintiffs Steering Committee Member*

27

Case 1:09-cv-00118-VM-FM   Document 990   Filed 10/22/12   Page 29 of 49
*Herrero v. Standard Chartered Bank International (Americas) Limited, et al., 1:11-cv-03553-VM*
Master File No. 1:09-cv-00118-VM-THK

Maria C. Severson mseverson@amslawyers.com

*Plaintiffs Steering Committee Member*

KATZ BARRON SQUITERO FAUST
Attorneys for Plaintiff
2699 S. Bayshore Drive, 7th Floor
Miami, FL 33133
Telephone: 305-856-2444
Facsimile: 305-285-9227

By: /s/ H. Eugene Lindsey III, Esq.
     H. Eugene Lindsey III, Esq.

h:\lib\docs\08991001\pldg\17300205.docx

28

AMERICAN EXPRESS PRIVATE BANK



# AMERICAN EXPRESS BANK

## The Private Bank

Proposal Prepared for
Geneva 4652
Prepared by Jennifer Sierra
Tel. (305) 530 - 2558
Presented in July 25, 2002



EXHIBIT
199
4-24-12   TM

TB000645



EXHIBIT
A

**AMERICAN EXPRESS PRIVATE BANK**

# Agenda

| 1. | Investment Objectives |
| 2. | Your Objectives |
| 3. | Current Asset Allocation |
| 4. | Proposed Asset Allocation |
| 5. | Current Currency Exposure |
| 6. | Proposed Currency Exposure |
| 7. | Proposed AEB Portfolio |
| 8. | Proposed AEB Investment and Details |
| 9. | AEB Investment Rationale |

This proposal is a tool to assist you and your Relationship Manager in developing your current and/or long-term investment strategy. In using this proposal, please remember the following important points: The proposed Asset Allocation and proposed AEB Portfolio are based upon (1) your financial goals and investment categories you wish to avoid or limit; (2) the time frames of your financial goals; and (3) historical performance of major categories of investments and AEB's economics experts' forecasts about future long-term performance of financial markets. They show you potential combinations and proportions of various types of investments that seek to move you toward your financial goals at a level of risk acceptable to you. There is no guarantee that the proposed asset allocations and proposed investments will perform as forecasted or as they have in the past. There is no guarantee that your financial goals will be met.

You must consult your attorney for all questions involving legal issues.

TB000646

AMERICAN EXPRESS PRIVATE BANK

# Investment Objectives

*We begin with a thorough assessment of your needs and goals, as determined through American Express Bank's proprietary evaluation process. Investments are selected with the goal of maximizing return and minimizing risk in accordance with each investor's risk profile and time horizon.*



1.  Conservative – More concerned with preserving capital than maximizing capital gains. Can tolerate infrequent, very moderate negative returns.

2.  Moderate – Seeks higher returns and, consequently, is able to tolerate several quarters of negative returns through difficult phases of a market cycle.

3.  Aggressive – Seeks maximum capital gains, and is able to tolerate more than one year of negative returns in exchange for the highest potential returns.

TB000647

AMERICAN EXPRESS PRIVATE BANK

# Your Objectives

*Based on your responses to the Investment and Fiduciary Questionnaires, this is our understanding of your needs.*

| | |
|---|---|
| Investment Objective: | **Capital Preservation and Growth** |
| Risk Tolerance: | **Moderate** |
| Time Horizon: | **5 Years** |
| Investable Assets: | **$4,795,283.33** |
| Future Investable Assets: | **$1,000,000 over 12 months** |
| Reference Currency: | **US Dollars** |
| Booking Location: | **Geneva** |

TB000648

**AMERICAN EXPRESS PRIVATE BANK**

# Current Asset Allocation



Equities
33%

Alternative Inv.
5%

Cash
18%

Bonds
44%

TB000649

AMERICAN EXPRESS PRIVATE BANK

# Proposed Asset Allocation

*We propose to invest your financial assets in a global portfolio that will diversify your investment risk between asset classes and markets. The objective of this proposal is to develop for you a US based portfolio coherent with a moderate tolerance for investment risk. It is designed to be held for the long term and has exposure to equities which, historically, have outperformed cash and bonds. Alternative Investments are recommended to enhance the asset allocation risk/reward ratio and limit the downside volatility of your portfolio.*



TB000650

AMERICAN EXPRESS PRIVATE BANK

# Current Geographical Exposure



USA/CAD
74%

Lat. Am.
26%

TB000651

AMERICAN EXPRESS PRIVATE BANK

# Proposed Geographical Exposure



Others
0%

USA/CAD
100%

TB000652

AMERICAN EXPRESS PRIVATE BANK

# Current Distribution of Assets by Region



TB000653

AMERICAN EXPRESS PRIVATE BANK

# Proposed Distribution of Assets by Region



Equities USA/CAD
33%

Cash Others
0%

Bonds USA/CAD
67%

TB000654

AMERICAN EXPRESS PRIVATE BANK

# Current Distribution of Assets by Currency



Equities USD
33%

Alternative Inv. USD
5%

Cash USD
18%

Bonds USD
44%

TB000655

AMERICAN EXPRESS PRIVATE BANK

# Proposed Distribution of Assets by Currency



TB000656

AMERICAN EXPRESS PRIVATE BANK

# Current Investment Portfolio

| Recommended Products | % of Assets | Investable Amount USD |
|---|---|---|
| **Cash** | 44.21% | **2,119,900.96** |
| Latin Money Mkt L | 29.77% | 1,427,550.81 |
| Deposits USD | 0.10% | 4,557.30 |
| WF US Liq. | 14.34% | 687,792.85 |
| **Bonds** | 17.03% | **816,500.63** |
| Sign. US Mod F.I. | 17.03% | 816,500.63 |
| **Risk Reducers** | 5.28% | **253,195.71** |
| Market Neutral A | 5.28% | 253,195.71 |
| **Equities** | 33.48% | **1,605,686.03** |
| Sign. WS&P US | 33.48% | 1,605,686.03 |
| **Total** | 100.00% | **4,795,283.33** |

TB000657

AMERICAN EXPRESS PRIVATE BANK

# Proposed Investment Portfolio

*These are the American Express Bank private banking products that we recommend, as well as the percentage and the amount in your reference currency we recommend allocating to each product and asset class.*

| Recommended Products | % of Assets | Investable Amount USD |
|---|---|---|
| **Cash** | 0.10% | **4,557.30** |
| Deposits USD | 0.10% | 4,557.30 |
| **Bonds** | 66.42% | **3,185,040.00** |
| Sign. US Bonds | 17.03% | 816,500.63 |
| US Agencies/FMS | 28.54% | 1,368,539.37 |
| EM Debt (Mex Corp) | 20.85% | 1,000,000.00 |
| **Equities** | 33.48% | **1,605,686.03** |
| Sign. WS&P US | 33.48% | 1,605,686.03 |
| **Total** | 100.00% | **4,795,283.33** |

TB000658

AMERICAN EXPRESS PRIVATE BANK

# Historical Performance

*This chart illustrates how the recommended portfolio would have performed over the period specified in the graph.*



|  | USD Libor | Current Portfolio | Proposed Portfolio |
|---|---|---|---|
| Return p.a. | 5.05% | 10.79% | 10.92% |
| Risk |  | 5.61% | 5.50% |
| Sharpe Ratio |  | 102.35% | 106.72% |
| Ending Value | 128.35 | 168.08 | 169.03 |
| | | | |
| Portfolio currency | USD | | |
| Starting date | Jul-97 | | |

This Chart represents the actual performance of the American Express Bank Investment Products included in the Proposal, where available. Where unavailable (i.e., prior to the inception date of any of the respective Investment Products) the chart uses, as substitutes for actual performance, Indices that parallel the investment strategy of these Investment Products. For a list of the inception dates for the Investment Products, please refer to the Appendix.

AMERICAN EXPRESS PRIVATE BANK

# Current Portfolio Historical Return Analysis

### Quarterly Returns



### Distribution of Monthly Returns



TB000660

AMERICAN EXPRESS PRIVATE BANK

# Proposed Portfolio Historical Return Analysis

**Quarterly Returns**



**Distribution of Monthly Returns**



TB000661

AMERICAN EXPRESS PRIVATE BANK

# Current Portfolio Correlation Matrix

|   | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| 1 | 1.00 | 0.16 | 0.91 | 0.59 | 0.60 | 0.12 |
| 2 | 0.16 | 1.00 | 0.25 | (0.05) | (0.10) | (0.10) |
| 3 | 0.91 | 0.25 | 1.00 | 0.61 | 0.61 | 0.14 |
| 4 | 0.59 | (0.05) | 0.61 | 1.00 | 0.55 | 0.17 |
| 5 | 0.60 | (0.10) | 0.61 | 0.55 | 1.00 | 0.19 |
| 6 | 0.12 | (0.10) | 0.14 | 0.17 | 0.19 | 1.00 |

List of Products
1 Deposits USD                  6 Sign. WS&P US
2 Sign. US Mod F.I.
3 WF US Liq.
4 Latin Money Mkt L
5 Market Neutral A

TB000662

AMERICAN EXPRESS PRIVATE BANK

# Proposed Portfolio Correlation Matrix

|   | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| 1 | 1.00 | 0.16 | 0.17 | 0.18 | 0.12 |
| 2 | 0.16 | 1.00 | 0.98 | 0.92 | (0.10) |
| 3 | 0.17 | 0.98 | 1.00 | 0.88 | (0.11) |
| 4 | 0.18 | 0.92 | 0.88 | 1.00 | (0.05) |
| 5 | 0.12 | (0.10) | (0.11) | (0.05) | 1.00 |

List of Products
1 Deposits USD
2 Sign. US Mod F.I.
3 EM Debt (Mex Corp)
4 US Agencies/FMS
5 Sign. WS&P US

TB000663

AMERICAN EXPRESS PRIVATE BANK

# Appendix

### American Express Bank Investment Products – Summary of Inception Dates

*Note: For investment products that have been in existence fewer than five years, a relevant benchmark, shown in italics, has been used as a substitute for the performance of the product itself.*

**Signature Portfolios**
U.S. Fixed Income 04/01/95  *Salomon Brothers U.S. Treasury Index (1-10 Years)*
U.S. Conservative 01/01/95
Global Fixed Income 01/01/95
Global Equity 01/01/95  

**Discretionary Mutual Fund Portfolios**
*Benchmark used is a fixed blend of Worldfolio Class mutual funds specific to the portfolio risk profile*
Conservative 10/1/97
Moderate 10/1/97
Moderate European 10/1/97
Moderate Asian 10/1/97
Aggressive 10/1/97

**American Express Funds–Worldfolio Class**
US$ Liquidity 3/31/93
Euro Liquidity 3/31/93
US$ Short-Term Bonds 3/31/93
US$ Long-Term Bonds 4/6/99  *Lehman Corporate/Government Bond Index*
European Bonds – US$ referenced 4/6/99  *Salomon EuroBig Index/ Salomon German 3-7 years Government Bond Index (USD)*
European Bonds – Euro referenced 4/6/99  *Salomon EuroBig Index/ Salomon German 3-7 years Government Bond Index (Euro)*
Global Bonds – US$ 4/30/86
Global Bonds – Euro 4/6/99  *Salomon World Government Bond Index (Euro)*
Emerging Market Debt 9/30/94
Global Balanced 4/30/86
European Balanced – US$ referenced 4/6/99  *60% MSCI Europe & 40% Salomon European World Government Bond Index*
European Balanced – Euro referenced 4/6/99  *60% MSCI Europe & 40% Salomon European World Government Bond Index (Euro)*
World Equities 3/31/93
US Large Company Equities 5/31/93
US Aggressive Equities – US$ referenced 5/31/93
European Equities – Euro referenced 3/31/93
European Equities – US$ referenced 3/31/93
Japanese Equities 4/6/99  *MSCI Japan*
New Asia-Pacific 4/6/99  *MSCI A C Pacific (Free) Ex-Japan*



TB000664