## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
                                                :: ::
PASHA ANWAR, et al.,                            :: ::
                                                :: ::
                    Plaintiffs,                 :: ::
                                                :: ::
         v.                                     :: ::   MASTER FILE NO. 09-CV-0118 (VM)
                                                :: ::
FAIRFIELD GREENWICH LIMITED, et al.,            :: ::
                                                :: ::
                    Defendants.                 :: ::
                                                :: ::
-----------------------------------------------------------------x
```

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement (the "Stipulation"), dated as of November 6, 2012, which is entered into by and among the Representative Plaintiffs (as defined herein), on their own behalf and on behalf of the Settlement Class (as defined herein), Fairfield Greenwich Limited ("FGL") and Fairfield Greenwich (Bermuda) Limited ("FGBL"), by and through their undersigned attorneys, states all of the terms of the settlement and resolution of this matter by the Settling Parties (as defined herein) and is intended by the Settling Parties to fully and finally release, resolve, remise and discharge the Released Claims (as defined herein) against the Released Parties (as defined herein), subject to the approval of the United States District Court for the Southern District of New York (the "Court"). All undefined terms below with initial capitalization shall have the meanings ascribed to them in Section A.1. below.

WHEREAS:

### The Action

A.       On December 19, 2008, plaintiffs Pasha S. Anwar and Julia Anwar filed a putative class action lawsuit on behalf of themselves and all others similarly situated in the

Supreme Court for the State of New York, entitled *Anwar v. Fairfield Greenwich Group, et al.*, No. 603769/2008 ("*Anwar*").  On January 7, 2009, *Anwar* was removed to the Court.

      B.      On and after January 8, 2009, putative class action lawsuits were filed by plaintiffs on behalf of themselves and all others similarly situated in the Court, entitled *Pacific West Health Medical Center Inc. Employees Retirement Trust v. Fairfield Greenwich Group, et al.*, No. 09 Civ. 00134; *Inter-American Trust v. Fairfield Greenwich Group, et al.*, No. 09 Civ. 00301; *Laor v. Fairfield Greenwich Group et al.*, No. 09 Civ. 2222; *The Knight Services Holdings Limited v. Fairfield Sentry Limited, et al.*, No. 09 Civ. 2269; and *Zohar v. Fairfield Greenwich Group, et al.*, No. 09 Civ. 4031 (collectively, and together with *Anwar*, the "Action").

      C.      By Orders dated on and after January 14, 2009, the Court consolidated the Action under the Docket No. 09-cv-0118 (VM).

      D.      By Orders dated January 30, 2009 and July 7, 2009, the Court appointed Boies, Schiller & Flexner LLP, Wolf Popper LLP, and Lovell Stewart Halebian Jacobson LLP ("Plaintiffs' Lead Counsel") as Interim Co-Lead Counsel to act on behalf of all Plaintiffs and Lead Counsel for PSLRA Plaintiffs in the Action.  In the Action, through the filing of the SCAC on September 29, 2009, the Representative Plaintiffs asserted claims on behalf of a proposed class of similarly situated investors in the Funds against the SCAC Defendants for violations of federal securities law, specifically Sections 10(b) and 20 of the Securities Exchange Act of 1934, and New York law, under various common-law theories.  The SCAC also included over one hundred other Named Plaintiffs.

      E.      By orders of the Court dated July 29, 2010 and August 18, 2010, the Court granted in part and denied in part the FG Defendants' motions to dismiss the SCAC.  Thereafter, extensive discovery ensued.  The Settling Defendants and the Non-Dismissed Defendants

produced, and Plaintiffs' Counsel reviewed, more than six million pages of documents; and Plaintiffs' Lead Counsel reviewed and produced to defense counsel more than 75,000 pages of documents on behalf of the Representative Plaintiffs and certain other Named Plaintiffs. Plaintiffs' Lead Counsel have conducted approximately thirty depositions of the FG Defendants and former and current employees of the Non-Dismissed Defendants in locations including New York, Miami, Toronto, Amsterdam and Bermuda.  Twenty individuals who are associated with or who are the Representative Plaintiffs or other Named Plaintiffs were deposed in Arizona, Cleveland, and New York, some of whom traveled from international residences including Israel, Bahrain, and Belgium for their depositions.  Discovery against the Non-Dismissed Defendants is continuing.

F.      By orders dated on and after December 15, 2010, over forty other Persons joined the Action as Named Plaintiffs and were deemed parties to the same extent as if they had been named as plaintiffs in the SCAC.

G.      On March 1, 2011, the Representative Plaintiffs served a motion for class certification requesting the Court to certify the Action as a class action and to appoint them as class representatives (the "Motion for Class Certification").  Following discovery on class certification issues, all defendants in the Action, including the FG Defendants, opposed the Motion for Class Certification, which is currently pending before the Court.

H.      By Order of the Court filed on November 3, 2011, the claims of ABN AMRO Life S.A. in the Action were dismissed with prejudice.

I.      By Order of the Court filed on February 22, 2012, the claims of Jeffrey S. Lieberman in the Action were dismissed with prejudice.

**Other Actions Against the FG Defendants**

J.        On May 13, 2009, a shareholder derivative suit styled *Morning Mist Holdings Limited v. Fairfield Greenwich Group, et al.*, No. 601511/2009 ("Morning Mist"), was filed in the Supreme Court for the State of New York in the name and on behalf of Fairfield Sentry Limited against, among others, certain FG Defendants, specifically, Fairfield Greenwich Group, FGL, FGBL, Fairfield Greenwich Advisors LLC, Fairfield Risk Services Ltd., Walter M. Noel, Jr., Jeffrey H. Tucker, Andrés Piedrahita, and Amit Vijayvergiya (the "FG Derivative Action Defendants").

K.        On May 18, 2009, an adversary proceeding styled *Picard v. Fairfield Sentry Limited, et al.*, Adv. Pro. No. 09-01239 (the "Trustee Action") was filed by the BLMIS Trustee in the United States Bankruptcy Court for the Southern District of New York against Fairfield Sentry Limited, Greenwich Sentry, L.P., and Greenwich Sentry Partners, L.P.  On July 20, 2010, the BLMIS Trustee amended the complaint in the Trustee Action to assert claims against, among others, certain FG Defendants, specifically, FGL, FGBL, Fairfield Greenwich Advisors LLC, Fairfield Heathcliff Capital LLC, Fairfield Greenwich (UK) Limited, Walter M. Noel, Jr., Jeffrey H. Tucker, Andrés Piedrahita, Mark McKeefry, Daniel E. Lipton, Amit Vijayvergiya, Richard Landsberger, Philip Toub, Charles Murphy, Robert Blum, Andrew Smith, Harold Greisman, Gregory Bowes, Corina Noel Piedrahita, Lourdes Barreneche, Cornelis Boele, Santiago Reyes, and Jacqueline Harary.

L.        On May 29, 2009, an action styled *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, No. 601687/2009 (the "Sentry Action"), was filed in the Supreme Court for the State of New York by Fairfield Sentry Limited against, among others, certain FG Defendants, specifically, Fairfield Greenwich Group, FGBL, Fairfield Greenwich Advisors LLC,

FGL, Walter M. Noel, Jr., Jeffrey H. Tucker, Andrés Piedrahita, Amit Vijayvergiya, Lourdes Barreneche, Cornelis Boele, Philip Toub, Richard Landsberger, Charles Murphy, Andrew Smith, Daniel E. Lipton, Mark McKeefry, Harold Greisman, Santiago Reyes, Jacqueline Harary, Robert Blum, Corina Noel Piedrahita, and Maria Teresa Pulido Mendoza (the "Sentry Action FG Defendants").

      M.      On May 9, 2011, the Trustee entered into a settlement agreement with Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (the "Offshore Funds"), pursuant to which the Liquidators for the Offshore Funds agreed to unconditionally and irrevocably assign to the Trustee any and all claims asserted by, or on behalf of, the Offshore Funds in the Sentry Action against the Sentry Action FG Defendants.

      N.      On May 17, 2011, the Trustee entered into settlement agreements with Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P. (the "Onshore Funds"), pursuant to which the Onshore Funds agreed to unconditionally and irrevocably assign to the BLMIS Trustee any and all claims the Onshore Funds own or hold (whether or not such claims have been asserted by, or on behalf of, the Funds) against FG Derivative Action Defendants and all other officers, directors, employees, shareholders, partners, alleged partners, members, relatives, or affiliates of the FG Derivative Action Defendants.

### The Proposed Settlement of the Action Against the FG Defendants

      O.      Beginning in 2010, and then more intensively between May 21, 2012 and August 3, 2012, while discovery was ongoing, the Settling Parties engaged in extensive, arm's-length negotiations in an attempt to resolve the Action as against the FG Defendants.

      P.      On August 3, 2012, the Settling Parties signed an agreement in principle to fully and finally settle the Action as against the Settling Defendants in return for specified

consideration and to fully release all claims asserted against the FG Defendants and the Released

Parties, which is memorialized in this Stipulation.

   Q.  In return for the consideration described herein, this Stipulation is intended to

fully and finally release, resolve, remise and discharge the Released Claims (as defined herein)

against the Released Parties (as defined herein) with prejudice.

   R.  The Settling Parties' entry into this Stipulation is not, and shall not be construed

as or deemed to be evidence of, an admission as to the merit or lack of merit of any claims or

defenses asserted in the Action.

   S.  In addition to the extensive and ongoing discovery described above, Plaintiffs'

Lead Counsel have conducted a further investigation since August 3, 2012 relating to the claims

and the underlying events alleged in the Action.  Plaintiffs' Lead Counsel have also investigated

the financial status of each of the FG Defendants.  Plaintiffs' Lead Counsel have analyzed the

evidence and information adduced through discovery and investigation, and have researched the

applicable law with respect to the Representative Plaintiffs and the Settlement Class.  In

negotiating and evaluating the terms of this Stipulation, Plaintiffs' Lead Counsel considered the

significant legal and factual defenses to the Representative Plaintiffs' Claims; the lengthy time

that completion of discovery, contested class certification, dispositive motion practice, trial and

likely appeals would entail; and the FG Defendants' available assets and their potential inability

to satisfy a judgment in the Action if the Representative Plaintiffs were to prevail at trial and on

appeal, as well as the potential difficulty in executing on any such judgment.  In addition,

Plaintiffs' Lead Counsel considered the effect that the Settlement would have in simplifying

litigation of the remaining claims against the Non-Dismissed Defendants, who are believed to

have substantial assets that may through settlement or judgment provide significant additional

compensation to the class.  Plaintiffs' Lead Counsel believe they have received sufficient information to evaluate the merits of the proposed Settlement.  Based upon their evaluation, Plaintiffs' Lead Counsel and the Representative Plaintiffs unanimously have determined that the Settlement set forth in this Stipulation is fair, reasonable and adequate and in the best interests of all Settlement Class Members, and that it confers substantial benefits upon the Settlement Class Members.

T.       The Released Parties deny any and all allegations of wrongdoing, fault, liability or damage whatsoever; deny that they engaged in, committed or aided or abetted the commission of any breach of duty, breach of contract, wrongdoing or violation of law; deny that they acted improperly in any way; deny that they caused any damage whatsoever to the Representative Plaintiffs or any of the other Settlement Class Members; believe that they acted properly at all times; maintain that they complied with their fiduciary duties; and maintain that they have complied with all laws at all times.

U.       The Settling Defendants enter into this Stipulation solely to eliminate the uncertainties, burden and expense of further litigation.   Nothing in this Stipulation shall be construed as any admission by any of the Released Parties of wrongdoing, fault, liability, or damages whatsoever.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among the Representative Plaintiffs, for themselves and on behalf of the Settlement Class, and the Settling Defendants, by and through their respective undersigned counsel that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties from the Settlement set forth herein, the Action and the Released Claims as against the Settling Defendants shall be finally and fully

compromised, settled and released, the Action shall be dismissed with prejudice and the Released Claims shall be finally and fully released as against the FG Defendants and the Released Claims shall be finally and fully released as against the Released Parties, upon and subject to the terms and conditions of this Stipulation, as follows.

**A.  Definitions**

1.       In addition to the terms defined above, the following capitalized terms, used in this Stipulation, shall have the meanings specified below:

a.  "Administrative Costs" means all costs and expenses associated with providing notice of the Settlement to the Settlement Class or otherwise administering or carrying out the terms of the Settlement, excluding legal fees.

b.  "Augmented Settlement Amount" means the amount, not to exceed $5,000,000 (five million dollars), equal to fifty percent (50%) of the Qualifying Cash Amount.

c.  "Authorized Claimant" means any Settlement Class Member who is a Claimant and whose claim for recovery has been allowed pursuant to the terms of this Stipulation, the exhibits hereto, and any order of the Court.

d.  "BLMIS" means Bernard L. Madoff Investment Securities LLC.

e.  "BLMIS Trustee" means Irving H. Picard, Trustee for the SIPA Liquidation of BLMIS, his successors and any other individual or entity acting on behalf of the BLMIS estate.

f.  "Beneficial Owner" means any one of, and "Beneficial Owners" means all of, those Persons who were beneficial owners of shares or limited partnership interests in the Funds as of December 10, 2008 (whether as holders of record or traceable to a shareholder or limited partner account of record).  For the avoidance of doubt, only Beneficial Owners may file

a Proof of Claim or request for exclusion with respect to each share or limited partnership interest in the Funds.  Where a fund, trust, or similar investment vehicle is an investor in one or more of the Funds, the fund, trust, or similar investment vehicle is the Beneficial Owner for purposes of this Stipulation, not the underlying investors in the fund or similar investment vehicle.  Where the record owner of shares or limited partnership interests is a nominee, custodian, or other Person acting in a materially similar fashion on behalf of one or more Beneficial Owners, that nominee, custodian or other Person is not a Beneficial Owner and may not file a Proof of Claim or request for exclusion on behalf of any such Beneficial Owners.

       g.   "Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

       h.   "Claims" means any and all manner of claims, demands, rights, actions, potential actions, causes of action, liabilities, duties, damages, losses, diminutions in value, obligations, agreements, suits, fees, attorneys' fees, expert or consulting fees, debts, expenses, costs, sanctions, judgments, decrees, matters, issues and controversies of any kind or nature whatsoever, whether known or unknown, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, apparent or not apparent, foreseen or unforeseen, matured or not matured, which now exist, or heretofore or previously existed, or may hereafter exist, (including, but not limited to, any claims arising under federal, state or foreign law, common law, bankruptcy law, statute, rule, or regulation relating to alleged fraud, breach of any duty, negligence, fraudulent conveyance, avoidance, violations of the federal securities laws, or otherwise), whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, regulatory, governmental or of any other type or in any other capacity.

i.   "Claims Administrator" means Rust Consulting, which shall administer the Settlement.

j.   "Escrow Agent" means Signature Bank, which shall be subject to the joint control of Boies Schiller & Flexner LLP and Simpson Thacher & Bartlett LLP, except after the occurrence of the Effective Date (with respect to the Settlement Fund) and the Other Claims Effective Date (with respect to the Escrow Fund) as provided in ¶¶ 45 and 46, respectively.

k.   "Escrow Amount" means the total sum of $30,000,000 (thirty million dollars), up to fifty percent of which may be in the form of an appropriate security interest in one or more assets, including without limitation real estate assets, subject to the approval of Plaintiffs' Lead Counsel, which shall not be unreasonably withheld.

l.   "Effective Date" means the first date by which all of the events and conditions specified in ¶ 44 of this Stipulation have been met and have occurred.

m.   "FGL/FGBL Counsel" means Simpson Thacher & Bartlett LLP.

n.   "FG Entity Defendants" means FGL, FGBL, Fairfield Greenwich Group, Fairfield Greenwich Advisors LLC, Fairfield Risk Services Ltd., Fairfield Heathcliff Capital LLC, and Fairfield Greenwich (UK) Limited.

o.   "FG Defendants" means the FG Entity Defendants and the FG Individual Defendants.

p.   "FG Individual Defendants" means Walter M. Noel, Jr., Jeffrey H. Tucker, Andrés Piedrahita, Lourdes Barreneche, Robert Blum, Cornelis Boele, Gregory Bowes, Vianney d'Hendecourt, Yanko Della Schiava, Harold Greisman, Jacqueline Harary, David Horn, Richard Landsberger, Daniel E. Lipton, Julia Luongo, Mark McKeefry, Charles Murphy, Corina Noel

Piedrahita, Maria Teresa Pulido Mendoza, Santiago Reyes, Andrew Smith, Philip Toub, and Amit Vijayvergiya.

q.   "Final" when referring to the Final Judgment means exhaustion of all possible appeals, meaning (i) if no appeal or request for review is filed, the day after the date of expiration of any time for appeal or review of the Final Judgment, and (ii) if an appeal or request for review is filed, the day after the date the appeal or request for review is dismissed, or the Final Judgment is upheld on appeal or review in all material respects, and is not subject to further review on appeal or by certiorari or otherwise; provided, however, that any dispute or appeals relating solely to the amount, payment or allocation of attorneys' fees and expenses, the Plan of Allocation, or the provisions of ¶¶ 26-27 of this Stipulation shall have no effect on finality for purposes of determining the date on which the Final Judgment or Alternative Judgment becomes Final.

r.   "Final Judgment" means the final order and judgment to be entered by the Court approving the Settlement, materially in the form attached hereto as Exhibit B, or an alternative judgment finally approving the Settlement which is materially different from Exhibit B and which does not result in any Settling Party terminating the Settlement and Stipulation pursuant to ¶ 43 of this Stipulation.

s.   "Founding Shareholders" means Walter M. Noel, Jr., Jeffrey H. Tucker and Andrés Piedrahita.

t.   "Fund" means any one of, and "Funds" means all of, Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited, Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P.

u.  "Initial Settlement Amount" means the total cash sum of $50,250,000 (fifty million two hundred fifty thousand dollars).

v.  "Named Plaintiffs" means the Persons identified as plaintiffs in paragraphs 1 through 116 of the SCAC, together with all other Persons who, by order of the Court, were subsequently joined as plaintiffs in the Action and deemed plaintiffs to the SCAC to the same extent as if they had been named as plaintiffs in the SCAC, except any plaintiffs whose claims have been dismissed with prejudice.

w.  "Net Loss" means the total cash investment made by a Beneficial Owner in a Fund, directly or indirectly through one or more intermediaries, less the total amount of any redemptions or withdrawals or recoveries by that Beneficial Owner from or with respect to the same Fund.

x.  "Non-Dismissed Defendants" means any Person who is not a Released Party and is currently named or may be added in the future as a defendant in the Action or any other legal action consolidated into the Action, now or in the future, and any persons acting on their behalf, including, but not limited to, PricewaterhouseCoopers International Ltd., PricewaterhouseCoopers LLP, PricewaterhouseCoopers Accountants Netherlands N.V., Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Bank Nederland N.V. Dublin Branch, Citco Global Custody N.V., Citco Fund Services (Bermuda) Ltd., The Citco Group Limited, and GlobeOp Financial Services LLC.

y.  "Notice" means the "Notice of Proposed Partial Settlement of Class Action and Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Expenses," which is to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit A-1.

z.  "Opt-Out" means any one of, and "Opt-Outs" means all of, any Persons who otherwise would be Settlement Class Members and have timely and validly requested exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice given pursuant thereto.

aa.  "Other Claims" means any and all Claims against any one or more of the Released Parties which are based upon, are by reason of, arise or arose out of, result from, are related to, in connection with, or involve any direct or indirect investment in BLMIS and/or one or more of the Funds or such Funds' investment in BLMIS, whether or not assigned once or more than once  (i) ever asserted in any action, arbitration or other proceeding brought in any federal, state or foreign court, tribunal, forum or proceeding as of the Effective Date by, or that was the subject of a tolling agreement prior to the Effective Date with, any Person, class, trustee, liquidator, governmental or regulatory authority or complainant of any kind other than the Named Plaintiffs, (ii) ever asserted in any action, arbitration or other proceeding that has been, or in the future is brought in any federal, state or foreign court, tribunal, forum or proceeding by the BLMIS Trustee, any one or more of the Funds, or any trustee, liquidator or other individual or entity acting on behalf of one or more of the Funds, and (iii) ever asserted in any action, arbitration or other proceeding that has been, or in the future is brought in any federal, state or foreign court, tribunal, forum or proceeding by any Opt-Out who brought a separate civil action prior to August 3, 2012 in a United States District Court against one or more of the SCAC Defendants and such separate civil action was not consolidated with the Action under Master File No. 09-cv-0118(VM) (S.D.N.Y.) as of August 3, 2012.

bb. "Other Claims Effective Date" means the date of completion of the following in each and every legal action commenced on or before June 15, 2016 and asserting or

involving any of the Other Claims: entry of an order of final judgment and exhaustion of all possible appeals, meaning (i) if no appeal is filed, ten (10) days after the date of expiration of any time for appeal or review of the final judgment; and (ii) if an appeal is filed, ten (10) days after the date the appeal or request for review is dismissed, or the final judgment is upheld on appeal or review in all material respects, and is not subject to further review on appeal or by certiorari or otherwise. In the event that the Other Claims Effective Date has not occurred as of June 15, 2016, counsel for the Settling Parties will negotiate in good faith to determine whether any part of the Escrow Fund may be released to the Settlement Fund, notwithstanding the pendency of Other Claims. The FG Defendants represent and warrant that they will act in good faith in defending or seeking to resolve any Other Claim.

cc. "Person" means individual, corporation, fund, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

dd. "Plaintiffs' Counsel" means Plaintiffs' Lead Counsel and such other plaintiffs' counsel who have filed actions consolidated into the SCAC.

ee. "Plaintiffs' Lead Counsel" means Boies, Schiller & Flexner LLP, Wolf Popper LLP, and Lovell Stewart Halebian Jacobson LLP.

ff. "Plan of Allocation" means a plan or formula for allocating the Settlement Fund and Escrow Fund to Authorized Claimants after payment of Administrative Expenses, Taxes and Tax Expenses, and such attorneys' fees, costs and expenses as may be awarded by the

Court.  Any Plan of Allocation is not a condition to the effectiveness of this Stipulation, and the Released Parties shall have no responsibility or liability with respect thereto.

gg. "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Settlement Class substantially in the form attached hereto as Exhibit A.

hh. "Proof of Claim" means the Proof of Claim to be submitted by Claimants, substantially in the form attached as Exhibit A-3.

ii.  "Qualified Expense" means any amount an FG Defendant is found liable for (or agrees to pay pursuant to a settlement) on, arising out of, resulting from, relating to or in connection with any Other Claim.

jj.  "Qualifying Cash Amount" means the amount by which the cash collectively agreed to be paid by FGL and FGBL pursuant to a Qualifying Settlement exceeds $50,125,000 (fifty million one hundred twenty five thousand dollars).

kk. "Qualifying Settlement" means any settlement between or among FGL and/or FGBL on the one hand, and the BLMIS Trustee on the other hand, pursuant to which FGL and/or FGBL individually or collectively agree to pay the BLMIS Trustee a cash amount greater than $50,125,000 (fifty million one hundred twenty five thousand dollars).

ll.  "Released Claims" means any and all Claims, including Unknown Claims, that have been, could have been, or in the future can or might be asserted in any federal, state or foreign court, tribunal, forum or proceeding by on or behalf of any of the Releasing Parties against any one or more of the Released Parties, whether any such Released Parties were named, served with process, or appeared in the Action, which have arisen, could have arisen, arise now, or hereafter arise out of or relate in any manner to the allegations, facts, events, matters, acts,

occurrences, statements, representations, misrepresentations, omissions, or any other matter,

thing or cause whatsoever, or any series thereof, embraced, involved, or set forth in, or referred

to or otherwise related in any way, directly or indirectly, to: (i) the Action, (ii) marketing and/or

selling of the Funds by one or more of the FG Defendants and/or the Released Parties, (iii)

disclosures or failures to disclose, by one or more of the FG Defendants and/or the Released

Parties, with respect to one or more of the Funds and/or the FG Defendants and/or BLMIS, (iv)

fiduciary obligations of one or more of the FG Defendants and/or the Released Parties related to

the marketing and/or selling of the Funds (v) due diligence of one or more of the FG Defendants

and/or the Released Parties related to the Funds and/or BLMIS, (vi) purchases of, sales of (or

decisions not to sell), or fees paid in relation to, direct or indirect investments in one or more of

the Funds, (vii) any direct or indirect investment in BLMIS, or (viii) any claims in connection

with, based upon, arising out of, or relating to the Settlement (but excluding any claims to

enforce the terms of the Settlement).

       mm.  "Released Parties" means (i) each of the FG Entity Defendants, their

respective past, present and future, direct or indirect, parent entities, associates, affiliates, and

subsidiaries, each and all of their respective past, present, and future directors, officers, partners,

alleged partners, stockholders, predecessors, successors and employees, and in their capacity as

such, each and all of their attorneys, advisors, consultants, trustees, insurers, co-insurers,

reinsurers, representatives, and assigns; (ii) each of the FG Individual Defendants and their

respective present, past and future spouses, parents, siblings, children, grandparents, and

grandchildren, the present, past and future spouses of their respective parents, siblings and

children, and the present, past and future parents and siblings of their respective spouses,

including step and adoptive relationships; (iii) any and all persons, firms, trusts, corporations,

and other entities in which any of the FG Defendants has a financial interest or was a founder, settler or creator of the entity, and, in their capacity as such, any and all officers, directors, employees, trustees, beneficiaries, settlers, creators, attorneys, consultants, agents, or representatives of any such person, firm, trust, corporation or other entity; and (iv) in their capacity as such, the legal representatives, heirs, executors, administrators, predecessors, successors, predecessors-in-interest, successors-in-interest, and assigns of any of the foregoing. For avoidance of doubt, "Released Parties" does not include the Funds, or auditors, custodians or fund administrators, in their capacity as such, including without limitation PricewaterhouseCoopers International Limited, PricewaterhouseCoopers LLP, PricewaterhouseCoopers Accountants Netherlands N.V., Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Bank Nederland N.V. Dublin Branch, Citco Global Custody N.V., Citco Fund Services (Bermuda) Ltd., The Citco Group Limited, and GlobeOp Financial Services LLC (the "Service Provider Defendants"), or any of the Service Provider Defendants' respective directors, officers, agents, employees or partners in their capacity as such.

nn.    "Releasing Parties" means the Representative Plaintiffs, each and every member of the Settlement Class and each of their respective predecessors, successors, assigns, attorneys, heirs, representatives, administrators, executors, devisees, legatees, and estates.

oo. "Representative Plaintiffs" means the representative plaintiffs in the Action, specifically, Pacific West Health Medical Center Employees Retirement Trust, Harel Insurance Company Ltd., Martin and Shirley Bach Family Trust, Natalia Hatgis, Securities & Investment Company Bahrain, Dawson Bypass Trust, and St. Stephen's School.

pp.  "SCAC" means the Second Consolidated Amended Complaint filed by the Representative Plaintiffs in the Action on September 29, 2009.

qq. "SCAC Defendants" means the FG Defendants, Lion Fairfield Capital Management Ltd., PricewaterhouseCoopers International Limited, PricewaterhouseCoopers LLP, PricewaterhouseCoopers Accountants Netherlands N.V., Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Bank Nederland N.V. Dublin Branch, Citco Global Custody N.V., Citco Fund Services (Bermuda) Ltd., The Citco Group Limited, Brian Francoeur, Ian Pilgrim, and GlobeOp Financial Services LLC.

rr. "Settlement" means the settlement contemplated by this Stipulation.

ss. "Settlement Class" means all Persons who were Beneficial Owners of shares or limited partnership interests in the Funds as of December 10, 2008 (whether as holders of record or traceable to a shareholder or limited partner account of record) and who suffered a Net Loss of principal invested in the Funds, excluding (i) Opt-Outs; (ii) any Persons who have been dismissed from this Action with prejudice; (iii) Fairfield Sigma Limited; (iv) Fairfield Lambda Limited; and (v) the FG Defendants and any entity in which the FG Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, immediate family members, heirs, successors, subsidiaries and/or assigns of any such individual or entity in their capacity as such. For the avoidance of doubt, Fairfield Sigma Limited and Fairfield Lambda Limited are excluded from the Settlement Class because shareholders of those funds are included as Settlement Class Members to the extent they have suffered a Net Loss of principal in those funds.

tt. "Settlement Class Member" means any one of, and "Settlement Class Members" means all of, the members of the Settlement Class.

uu. "Settlement Hearing" means the hearing at or after which the Court will make a final decision pursuant to Rule 23 of the Federal Rules of Civil Procedure as to whether

the Settlement contained in the Stipulation is fair, reasonable and adequate, and therefore, should receive final approval from the Court.

vv. "Settling Defendants" means FGL and FGBL.

ww. "Settling Party" means any one of, and "Settling Parties" means all of, the parties to the Stipulation, namely FGL, FGBL and the Representative Plaintiffs on behalf of themselves and the Settlement Class.

xx. "Unknown Claims" shall mean all claims, demands, rights, liabilities, and causes of action of every nature and description which any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision not to opt-out or object to this Settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Representative Plaintiffs shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Final Judgment shall have waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Representative Plaintiffs shall expressly waive and each of the Settlement Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state, territory, foreign country or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.  Settlement Class Members may hereafter discover facts in addition to or

different from those which he, she or it now knows or believes to be true with respect to the

subject matter of the Released Claims, but the Representative Plaintiffs shall expressly fully,

finally and forever settle and release, and each Settlement Class Member, upon the Effective

Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally

and forever settled and released, any and all Released Claims, known or unknown, suspected or

unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist,

or heretofore have existed, upon any theory of law or equity now existing or coming into

existence in the future, including, but not limited to, conduct which is negligent, intentional, with

or without malice, or a breach of fiduciary duty, law or rule, without regard to the subsequent

discovery or existence of such different or additional facts.  The Representative Plaintiffs

acknowledge, and the Settlement Class Members shall be deemed by operation of the Final

Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a

key element of the Settlement of which this release is a part.

### B.  The Settlement Consideration

2.	In consideration for the promises and obligations contained herein and the full

and final release, settlement and discharge of all Released Claims against the Released Parties,

the Settling Parties have agreed to payments, contingent payments and waivers as set forth in ¶¶

3-7 of this Stipulation, subject to the conditions set forth in this Stipulation.

3.	The Settling Defendants shall pay or cause to be paid the Initial Settlement

Amount of $50,250,000 (fifty million two hundred fifty thousand dollars) as follows in this ¶ 3

and ¶ 4 below.  Subject to the terms of the Stipulation, within five (5) business days after the date

on which the Court grants preliminary approval of the Settlement, and provided that Plaintiffs'

Lead Counsel has timely provided complete wire transfer information and instructions, the

Settling Defendants shall cause $500,000 (five hundred thousand dollars) of the Initial Settlement Amount to be deposited into an interest-bearing escrow account mutually agreed upon by the Settling Parties (the "Account"), under the control of the Escrow Agent, which shall be used by Plaintiffs' Lead Counsel or its designees only to pay Administrative Costs.

4.  Subject to the terms of the Stipulation, and no later than thirty (30) business days after the date on which the Court grants preliminary approval of the Settlement (the "Settlement Funding Date"), the Settling Defendants shall cause the remaining $49,750,000 (forty nine million seven hundred fifty thousand dollars) of the Initial Settlement Amount to be deposited into the Account, under the control of the Escrow Agent.  The Initial Settlement Amount, plus any funds transferred to the Account pursuant to ¶ 7 hereto, and interest earned thereon is referred to as the "Settlement Fund."

5.  Subject to the terms of the Stipulation, and no later than fourteen (14) business days prior to the scheduled date of the Settlement Hearing (the "Escrow Fund Funding Date"), the Settling Defendants shall cause the $30,000,000 (thirty million dollar) Escrow Amount, less any Qualified Expense reductions as specified in ¶ 5(i) below, to be transferred into a separate interest-bearing escrow account mutually agreed upon by the Settling Parties, under the control of the Escrow Agent.  The Escrow Amount less any Qualified Expense reductions, plus interest earned thereon, is referred to as the "Escrow Fund".

i.  In the event that any of the FG Defendants incur a Qualified Expense before the Escrow Funding Date, the Escrow Amount shall be reduced by seventy-five percent (75%) of all Qualified Expenses incurred before the Escrow Fund Funding Date, up to the point at which seventy-five (75%) of all such Qualified Expenses equals $30,000,000 (thirty million

dollars), at which point the Settling Defendants shall not be required to cause the transfer of any amount into the Escrow Fund.

6.        Subject to the conditions set forth herein, the Settling Defendants agree to waive, and by operation of the Final Judgment shall have waived, (i) indemnification claims they hold against the Funds for the amounts paid under this Stipulation, and (ii) $20,000,000 (twenty million dollars) of indemnification claims they hold against the Funds for legal fees and expenses incurred by the Settling Defendants in defending the Action.

7.        In the event of a Qualifying Settlement, and only in the event of a Qualifying Settlement, no later than thirty (30) business days after the date of the Qualifying Settlement, the Settling Defendants shall cause the Augmented Settlement Amount up to $5,000,000 to be deposited into the Account.

8.        Apart from the payments, contingent payments and waivers identified in ¶¶ 3-7 above and the break-up fee identified in ¶ 47 below, the FG Defendants shall have no further monetary obligation to Plaintiffs' Counsel, the Representative Plaintiffs or the Settlement Class under this Settlement.

**C. Representations and Warranties Regarding the Settlement Consideration**

9.        The Settling Parties understand and acknowledge that payments to the Settlement Fund and Escrow Fund by the Settling Defendants as set forth herein shall be treated as a return of fees previously paid to FGL, FGBL or related entities for services provided.

10.        The Settling Defendants warrant that each of the FG Individual Defendants has agreed to contribute amounts to the Settling Defendants to facilitate the payment of the Initial Settlement Amount by the Settling Defendants and the Founding Shareholders also have agreed to contribute amounts to the Settling Defendants to facilitate payment of the Escrow Amount.  In

22

the event that an FG Individual Defendant does not in fact contribute to either of the Settling

Defendants to facilitate the payment of the Initial Settlement Amount (a "Non-Contributing

Individual Defendant"), the Settling Defendants shall notify Plaintiffs' Lead Counsel and the

Court in advance of the Settlement Hearing and the Non-Contributing Individual Defendant shall

remain a defendant in the Action and shall not obtain the dismissal or release provided for in ¶¶

24 and 26 of this Stipulation.

11.      The Settling Defendants warrant as to themselves that they are not insolvent nor

will the payments contemplated herein render them insolvent within the meaning and/or for the

purposes of the United States Bankruptcy Code, including §101 and §547 thereof.  The Settling

Defendants also warrant that to the best of their knowledge the FG Individual Defendants are not

insolvent nor will the payments contemplated in ¶ 10 hereof render any of them insolvent within

the meaning and/or for the purposes of the United States Bankruptcy Code, including §101 and

§547 thereof.   In the event a third-party successfully claws back monies from the Settlement

Fund or Escrow Fund (the "Clawed Back Amount") on account of the insolvency of any FG

Defendant ("the Insolvent Defendant"), notwithstanding anything to the contrary in the

Stipulation or any other order in connection with the Settlement, the Settlement Class will have a

claim against the Insolvent Defendant in an amount not to exceed the amount of the Insolvent

Defendant's settlement contribution included in the Clawed Back Amount.  The warranties and

representations made in this ¶ 11 are made by the Settling Defendants individually, and not by

FGL/FGBL Counsel.

12.      Plaintiffs' Lead Counsel acknowledge that they received certain confidential

information regarding each of the FG Individual Defendants' finances prior to executing this

Stipulation.  If, prior to the earlier of the Effective Date or July 1, 2013 it is determined that any

FG Individual Defendant's net worth was materially greater than disclosed to Plaintiffs' Lead Counsel as of the applicable date of such representations, then the Representative Plaintiffs may, at their sole and absolute discretion, revoke the releases provided for in ¶¶ 24 and 26 of this Stipulation (the "Net Worth Option") with respect to any such FG Individual Defendant (the "Excluded Defendant").  In the event the Representative Plaintiffs elect to exercise the Net Worth Option, Plaintiffs' Lead Counsel shall notify the Excluded Defendant, FGL/FGBL Counsel and the Court, and the Initial Settlement Amount and Escrow Amount shall be reduced by an amount equal to the settlement contribution made or to be made by the Excluded Defendant pursuant to ¶ 10 of this Stipulation, and if already paid in, such amounts shall be promptly returned by the Escrow Agent (pursuant to written instructions from counsel pursuant to this Stipulation) to FGL and/or FGBL, which shall in turn promptly return such amounts to the Excluded Defendant.

### D.  Handling and Disbursement Of Funds By The Escrow Agent

13.     No monies will be disbursed from the Settlement Fund until after the Effective Date except:

> i.     As provided in ¶ 12 above, if applicable;
>
> ii.    As provided in ¶ 17 below;
>
> iii.   As provided in ¶¶ 41 and 51 below, if applicable; and
>
> iv.    To pay Taxes and Tax Expenses (as defined in ¶ 19 below) on the

income earned by the Settlement Fund.  Taxes and Tax Expenses shall be paid out of the Settlement Fund and shall be considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent (pursuant to written instructions from counsel pursuant to this Stipulation) without prior Order of the Court.

14.     No monies or security interests in assets will be disbursed from the Escrow Fund until after the Other Claims Effective Date except:

          i.     As provided in ¶ 12 above, if applicable;

          ii.     As provided in ¶ 18 below;

          iii.     As provided in ¶¶ 41 and 51 below, if applicable; and

          iv.     To pay Taxes and Tax Expenses (as defined in ¶ 19 below) on the income earned by the Escrow Fund.  Taxes and Tax Expenses shall be paid out of the Escrow Fund and shall be considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent (pursuant to written instructions from counsel pursuant to this Stipulation) without prior Order of the Court.

15.     The Escrow Agent (pursuant to written instructions from counsel pursuant to this Stipulation) shall invest any funds (other than security interests in assets) deposited into the Settlement Fund and Escrow Fund in short term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.

16.     The Escrow Agent shall not disburse the Settlement Fund or Escrow Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of counsel for all of the Settling Parties pursuant to this Stipulation.

17.     At any time after the Court grants preliminary approval of the Settlement, the Escrow Agent may, without further approval from FGL, FGBL or the Court, disburse at the direction of Plaintiffs' Lead Counsel up to $500,000 (five hundred thousand dollars) from the Settlement Fund prior to the Effective Date to pay the Administrative Costs, including, without

limitation:  escrow agent costs, the costs of publishing summary notice, and printing and mailing the full Notice and Proof of Claim, as directed by the Court.

18.      In the event that any of the FG Defendants incur a Qualified Expense, the Escrow Agent shall return from the Escrow Fund an amount equal to seventy-five percent (75%) of such Qualified Expense to FGL or FGBL, and only FGL or FGBL, until the Escrow Fund is exhausted, promptly upon the Escrow Agent's receipt of a certified letter or comparable notice from FGL/FGBL Counsel stating that a Qualified Expense has been incurred and specifying the amount of the Qualified Expense and the entity to be paid, in the same manner that an escrow agent provides payment on a letter of credit once the agent has received the appropriate notice.

**E.  Taxes**

19.      The Settling Parties agree to treat the Settlement Fund and the Escrow Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.  In addition, Plaintiffs' Lead Counsel or its designee shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 19, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Plaintiffs' Lead Counsel or its designee to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

i.      For purposes of § 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation § 1.468B-2(k)(3) promulgated thereunder, the "administrator" shall be the Plaintiffs' Lead Counsel or its designee.  Plaintiffs' Lead Counsel or is designee shall timely and properly file all informational and other tax returns necessary or

advisable with respect to the Settlement Fund and Escrow Fund (including without limitation the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this ¶ 19) shall be consistent with this ¶ 19 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund and Escrow Fund shall be paid out of the Settlement Fund and Escrow Fund as provided in ¶ 19(ii) hereof.

        ii.    All Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund or the Escrow Fund, including any Taxes or tax detriments that may be imposed upon the Settling Defendants or their counsel with respect to any income earned by the Settlement Fund or Escrow Fund for any period during which the Settlement Fund or Escrow Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and expenses and costs incurred in connection with the operation and implementation of this ¶ 19 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in this ¶ 19) ("Tax Expenses"), shall be paid out of the Settlement Fund or Escrow Fund, as appropriate. The Settling Defendants and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid out of the Settlement Fund and Escrow Fund without prior order from the Court. The Escrow Agent (pursuant to written instructions from counsel pursuant to this Stipulation) shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that

may be withheld under Treasury Regulation § 1.468B-2(l)(2)).  Neither the Settling Defendants nor their counsel is responsible therefore nor shall they have any liability with respect thereto. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the provisions of this ¶ 19.

**F.  Preliminary Approval Order, Notice Order, and Settlement Hearing**

20.     Promptly after the execution of this Stipulation, Plaintiffs' Lead Counsel shall submit this Stipulation and its exhibits to the Court and shall apply for preliminary approval of the Settlement set forth in this Stipulation, entry of a preliminary approval order, and approval for the mailing and dissemination of notice, substantially in the form of Exhibits A, A-1, A-2, and A-3.  The mailed Notice (Exhibit A-1) shall include the general terms of the Settlement and the provisions of the Plan of Allocation, and shall set forth the procedure by which recipients of the Notice may object to the Settlement or the Plan of Allocation or request to be excluded from the Settlement Class.  The date and time of the Settlement Hearing shall be added to the Notice before it is mailed or otherwise provided to Settlement Class Members.

21.     To assist in dissemination of notice, the Settling Defendants, at their own expense, will cooperate in providing names and contact information of the Settlement Class Members and their nominees or custodians in their possession and will use best reasonable efforts to assist Plaintiffs' Lead Counsel in obtaining such information from other sources.

22.     At the time of the submission described in ¶ 20 hereof, the Settling Parties, through their counsel, shall jointly request that, after the Notice is provided, the Court hold the Settlement Hearing and approve the Settlement as set forth herein as promptly after the Settlement Hearing as possible, except to the extent a Settling Party has exercised the right to terminate the Settlement pursuant to ¶ 43 or ¶ 47.

23.     The Court, in its discretion, may order that the notice of the Settlement be combined with the required notice of any class certified by the Court with respect to claims against other SCAC Defendants.

### G. Releases

24.     Upon the Effective Date, as defined in ¶ 1(l) hereof, the Releasing Parties, on behalf of themselves, their successors and assigns, and any other Person claiming (now or in the future) through or on behalf of them, regardless of whether any such Releasing Party ever seeks or obtains by any means, including without limitation by submitting a Proof of Claim, any disbursement from the Settlement Fund or Escrow Fund, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties and shall have covenanted not to sue the Released Parties with respect to all such Released Claims, and shall be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Claim, either directly, representatively, derivatively, or in any other capacity, against any of the Released Parties.  Nothing contained herein shall, however, bar the Releasing Parties from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

25.     Upon the Effective Date, as defined in ¶ 1(l) hereof, the Released Parties, on behalf of themselves, their heirs, executors, predecessors, successors and assigns, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and all of the Representative Plaintiffs, Settlement Class Members and Plaintiffs' Counsel from all Claims which arise out of, concern or relate to

the institution, prosecution, settlement or dismissal of the Action (the "FG Defendant Released Claims"), and shall be permanently enjoined from prosecuting the FG Defendant Released Claims against the Representative Plaintiffs, Settlement Class Members and Plaintiffs' Counsel. The FG Defendants hereby represent and warrant that they are not aware of any claims that they have or may have against the Representative Plaintiffs, the Named Plaintiffs, Plaintiffs' Counsel or a Settlement Class Member (or nominee) that are not released by virtue of this ¶ 25.  Nothing contained herein shall, however, bar the FG Defendants from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

26.     To the fullest extent permitted by law, all Persons, including without limitation the Non-Dismissed Defendants, shall be permanently enjoined, barred and restrained from bringing, commencing, prosecuting or asserting any claims, actions, or causes of action for contribution, indemnity or otherwise against any of the Released Parties seeking as damages or otherwise the recovery of all or any part of any liability, judgment or settlement which they pay or are obligated to pay or agree to pay to the Settlement Class or any Settlement Class Member arising out of, relating to or concerning such Persons' participation in any acts, facts, statements or omissions that were or could have been alleged in the Action, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, third-party claims or otherwise, in the Court or any other federal, state, or foreign court, or in any arbitration proceeding, administrative agency proceeding, tribunal, or any other proceeding or forum.  The proposed Final Judgment will include a reciprocal order equal in scope to that contemplated in this ¶ 26 enjoining the Released Parties from bringing claims against the Non-Dismissed Defendants.

27.     Any final verdict or judgment that may be obtained by one or more of the Representative Plaintiffs or one or more of the other Settlement Class Members, whether

individually or on behalf of a class, against one or more Non-Dismissed Defendants or other Person barred from seeking contribution pursuant to this Stipulation (a "Non-Dismissed Defendant Judgment") shall be reduced, to the extent permitted by applicable law, by the greater of (i) the amount that corresponds to the percentage of responsibility attributed to the Released Parties under the Non-Dismissed Defendant Judgment; and (ii) the gross monetary consideration provided to such Representative Plaintiff or other Settlement Class Member or Members pursuant to this Stipulation.

### H. Administration And Calculation Of Claims, Final Awards And Supervision And Distribution Of the Settlement Fund

28.     Under the supervision of Plaintiffs' Lead Counsel, acting on behalf of the Settlement Class, and subject to such supervision and direction of the Court as may be necessary or as circumstances may require, the Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund (as defined below), and if applicable the Net Escrow Fund (as defined below), to Authorized Claimants.

29.     The Settlement Fund shall be applied as follows:

       i.     To pay the Taxes and Tax Expenses described in ¶ 19 above;

      ii.     To pay Administrative Costs;

     iii.     To pay the Settling Defendants pursuant to ¶¶ 12 and 41 hereof in the event the Representative Plaintiffs exercise either the Net Worth Option or the Discovery Option.

     iv.     To pay Plaintiffs' Counsel's attorneys fees and expenses and the Representative Plaintiffs' actual out of pocket expenses relating to the representation of the putative class (including lost wages) and, if appropriate, an incentive award as provided in ¶ 34 and 35 hereof (the "Fee and Expense Award"), to the extent allowed by the Court; and

v.     To distribute the balance of the Settlement Fund, that is, the Settlement Fund less the items set forth in ¶ 29(i), (ii), (iii) and (iv) hereof (the "Net Settlement Fund"), to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

30.     The Escrow Fund shall be applied as follows:

i.     To pay Taxes and Tax Expenses described in ¶ 19 above;

ii.     To reimburse the Settling Defendants for Qualified Expenses as provided in ¶ 18 above;

iii.     To pay the Settling Defendants pursuant to ¶¶ 12 and 41 hereof in the event the Representative Plaintiffs exercise either the Net Worth Option or the Discovery Option.

iv.     To pay Plaintiffs' Counsel an additional Fee and Expense Award to the extent allowed by the Court; and

v.     To distribute the balance of the Escrow Fund, that is, the Escrow Fund less the items set forth in ¶ 30(i), (ii), (iii) and (iv) hereof (the "Net Escrow Fund"), to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

31.     Upon and after the Effective Date with respect to the Net Settlement Fund, and upon and after the Other Claims Effective Date with respect to the Net Escrow Fund, and in accordance with the terms of the Plan of Allocation or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund and Net Escrow Fund shall be distributed to Authorized Claimants subject to and in accordance with the Plan of Allocation set forth in the Notice.

32.     This is not a claims-made settlement, and if all conditions of the Stipulation are satisfied and the Final Judgment becomes Final, no portion of the Settlement Fund will be returned to the Settling Defendants.  Neither the Settling Defendants nor their counsel shall have

any responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Net Settlement Fund, the Net Escrow Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  No Person shall have any claims against Plaintiffs' Counsel, the Claims Administrator or any other agent designated by Plaintiffs' Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or orders of the Court.

33.    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund and Net Escrow Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a condition of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation.  Any order or proceedings relating to the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Final Judgment, or any other orders entered pursuant to this Stipulation.

**I.  Plaintiffs' Counsel's Attorneys' Fees And Reimbursement of Expenses**

34.    Plaintiffs' Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund to Plaintiffs' Lead Counsel and other firms that have participated in the Action on behalf of the Settlement Class Members for (i) an award of attorneys' fees; (ii) reimbursement of actual costs and expenses, including the fees and expenses of experts and/or consultants, incurred in connection with prosecuting the

Action as against the FG Defendants; and (iii) reimbursement to the Representative Plaintiffs of their actual out of pocket expenses (including lost wages) and, if appropriate, an incentive award.

35.     The attorneys' fees and expenses, including the fees and expenses of experts, consultants and/or the Representative Plaintiffs, as awarded by the Court, shall be paid to Plaintiffs' Lead Counsel (on behalf of all Plaintiffs' Counsel and the Representative Plaintiffs) from the Settlement Fund, as ordered, on or after the Effective Date, together with interest accrued on such amount from the date of such order to the date of payment at the same rate as earned on the Settlement Fund.

36.     The procedure for, and allowance or disallowance by the Court of, any application by Plaintiffs' Lead Counsel or the Representative Plaintiffs for attorneys' fees and expenses, including the fees and expenses of experts and/or consultants, are not a condition of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation.  Any order of or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Final Judgment or any other orders entered pursuant to this Stipulation.

37.     Any award of attorneys' fees and/or expenses shall be paid solely from the Settlement Fund and shall reduce the settlement consideration paid to the Settlement Class accordingly.  The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payments to Plaintiffs' Lead Counsel or any other plaintiffs' counsel or the Representative Plaintiffs and/or any other Person who receives payment from the Settlement Fund.

**J.  Class Certification**

38.     In the Final Judgment, the Settlement Class shall be certified for purposes of this Settlement, but in the event that the Final Judgment does not become Final or the Settlement fails to become effective for any reason, all Settling Parties reserve all their rights on all issues, including whether a class should be certified in the Action.  For settlement purposes only, in connection with the Final Judgment, the Settling Defendants shall consent to (i) the appointment of Representative Plaintiffs as the class representatives, (ii) the appointment of Plaintiffs' Lead Counsel as class counsel, and (iii) the certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

**K.  Continuing Discovery Obligations**

39.     Except as provided in ¶¶ 40 and 41 below, the Settling Parties agree to stay the litigation of claims and related discovery in the Action as against the FG Defendants pending the occurrence of the Effective Date.

40.     Pending the occurrence of the Effective Date, the Settling Parties agree that the FG Defendants shall have a continuing obligation to participate in discovery in the Action (other than the discovery stayed pursuant ¶ 39 above).  In the event the Stipulation is terminated or the Settlement fails to become effective for any reason, the FG Defendants shall not object to the use or introduction of such discovery, or seek to retake such discovery, on the grounds that they did not have the opportunity to participate.  For the avoidance of doubt, Plaintiffs' Lead Counsel shall have the right to question FG Defendants or persons affiliated with FG Defendants whose depositions are noticed in the Action by Non-Dismissed Defendants.

41.     Upon the reasonable request of Plaintiffs' Lead Counsel, the Settling Defendants will exercise reasonable best efforts to bring about the FG Individual Defendants' cooperation in

providing trial testimony (in person or by deposition) in the Action, whether or not the FG

Individual Defendant is within the subpoena power of the Court, provided that any such

deposition shall be taken only where such FG Individual Defendant resides.  If an FG Individual

Defendant refuses to testify at the trial and declines to submit to a deposition despite a reasonable

request of Plaintiffs' Lead Counsel (a "Discovery Refusal"), then the Representative Plaintiffs

may, at their sole and absolute discretion, revoke the releases provided in ¶¶ 24 and 26 of this

Stipulation (the "Discovery Option") with respect to any such FG Individual Defendant (the

"Revoked Defendant") such that he or she shall remain a defendant in the Action, shall no longer

be deemed a third-party beneficiary of the Stipulation and shall not obtain the dismissal or

release provided for herein, or in the alternative, may request the Court to enforce the terms of

this paragraph.  In the event the Representative Plaintiffs exercise the Discovery Option,

Plaintiffs' Lead Counsel shall notify the Revoked Defendant, FGL/FGBL Counsel and the Court,

and the Initial Settlement Amount and Escrow Amount shall be reduced by an amount equal to

the settlement contribution made or to be made by the Revoked Defendant pursuant to ¶ 10 of

this Stipulation, and if already paid in, such amounts shall be promptly returned by the Escrow

Agent (pursuant to written instructions from counsel pursuant to this Stipulation) to FGL and/or

FGBL, which shall in turn promptly return such amounts to the Revoked Defendant.  The Court

shall retain jurisdiction over the Settling Defendants for purposes of enforcing this paragraph.

    42.    Except as provided in ¶ 39, nothing in this Stipulation shall limit Plaintiffs'

rights under law to subpoena or otherwise seek discovery from any Person, including the FG

Individual Defendants.

**L.  Conditions Of Settlement, Effect of Disapproval, Cancellation or Termination**

43.     The Representative Plaintiffs, on behalf of the Settlement Class, or the Settling Defendants shall have the right to terminate the Settlement and Stipulation by providing written notice of their election to do so ("Termination Notice") to all other Settling Parties within thirty (30) days of:  (i) entry of a Court order declining to enter the Preliminary Approval Order in any material respect; (ii) entry of a Court order refusing to approve this Stipulation in any material respect; (iii) entry of a Court order declining to enter the Final Judgment in any material respect; or (iv) entry of an order by which the Final Judgment is modified or reversed in any material respect by the Court, the Court of Appeals or the United States Supreme Court.

44.     The Effective Date of this Stipulation shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

        i.     The Settling Parties have not exercised their respective rights to terminate the Settlement as provided in ¶¶ 43 or 47 hereof, and the time to exercise those rights has expired;

        ii.     The Court has entered the Preliminary Approval Order attached hereto as Exhibit A or an order containing materially the same terms;

        iii.     The Court has approved the Settlement, following notice to the Settlement Class and the Settlement Hearing, and has entered the Final Judgment; and

        iv.     The Final Judgment has become Final as defined in ¶ A.1(q).

45.     Upon the occurrence of the Effective Date, any and all interest or right of the FG Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation.  At the occurrence of the Effective Date, Simpson Thacher

& Bartlett LLP shall no longer have joint control of the Escrow Agent with respect to the Settlement Fund.

46.     Upon the occurrence of the Other Claims Effective Date, any and all interest or right of the FG Defendants in or to the Escrow Fund, if any, shall be absolutely and forever extinguished, provided the Escrow Agent has satisfied all Qualified Expenses submitted prior to the Other Claims Effective Date as provided in ¶ 18 hereof.  At the occurrence of the Other Claims Effective Date, and following the reimbursement of all Qualified Expenses as provided in ¶ 18 hereof, Simpson Thacher & Bartlett LLP shall no longer have joint control of the Escrow Agent with respect to the Escrow Fund.

47.     If the aggregate Net Loss of Opt-Outs exceeds the threshold specified in a separate "Supplemental Agreement" between the Settling Parties, then the Settling Defendants shall have, in their sole and absolute discretion, the option to terminate this Stipulation and to render the Settlement null and void in accordance with the procedures set forth in the Supplemental Agreement.  In the event the Settling Defendants elect to terminate the Stipulation under this ¶ 47 where the Net Loss of Opt-Outs does not exceed a separate threshold specified in the Supplemental Agreement, the Settling Defendants shall incur a break-up fee in the amount of $1,000,000 (one million dollars) which shall not be returned to the Settling Defendants and shall remain in the Settlement Fund (the "Break-Up Fee") subject to order of the Court.  The Supplemental Agreement will not be filed with any court unless and until a dispute among the Settling Parties concerning its interpretation and application arises, or unless the Court requires, and in either event any Settling Party may seek to have the Supplemental Agreement filed under seal, which application shall not be opposed by any other Settling Party.

48.     If some or all of the conditions specified in ¶ 44 above are not met, or in the event that this Stipulation is not approved by the Court, or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, then this Stipulation shall be canceled and terminated, unless all of the Settling Parties agree in writing to proceed with this Stipulation.  None of the Settling Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than those provided for and agreed herein.  If any Settling Party engages in a material breach of the terms hereof, any other Settling Party, provided that it is in substantial compliance with the terms of this Stipulation, may terminate this Stipulation on notice to all the Settling Parties.

49.     In the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, the Settling Parties and the FG Defendants shall be restored to their respective positions in the Action immediately prior to August 3, 2012, and they shall proceed in all respects as if the Stipulation had not been executed and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Action shall be preserved without prejudice.

50.     In the event that the Stipulation is not approved by the Court or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, the terms and provisions of this Stipulation, except as otherwise provided herein, shall have no further force and effect with respect to the Settling Parties or FG Defendants and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

51.    In the event the Stipulation shall be terminated, or be canceled, or shall not become effective for any reason, within seven (7) business days (except as otherwise provided in the Supplemental Agreement) after the occurrence of such event, the Settlement Fund and the Escrow Fund, less taxes, any Administrative Costs which have either been disbursed or are determined to be chargeable, and any applicable Break-Up Fee, shall be refunded by the Escrow Agent to the Settling Defendants (pursuant to written instructions from counsel pursuant to this Stipulation) and any security interest(s) in assets pledged to the Escrow Fund shall be terminated. At the request of counsel for the Settling Defendants, Plaintiffs' Lead Counsel or its designee shall apply for any tax refund owed on the Settlement Fund or the Escrow Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written direction from the Settling Defendants.

52.    No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation, ¶¶ 26 and 27 hereof, or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Plaintiffs' Counsel shall constitute grounds for cancellation or termination of the Stipulation.

**M.  Miscellaneous Provisions**

53.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

54.    Each of the attorneys executing this Stipulation, any of its exhibits, or any related settlement documents on behalf of any Settling Party hereto hereby warrants and represents that he or she has been duly empowered and authorized to do so by the Settling Parties he or she represents.  In addition, the Settling Defendants warrant and represent that they have

been duly empowered and authorized by each of the FG Defendants to agree to and execute this Stipulation to the extent it applies to them.

55.     This Stipulation, together with the Supplemental Agreement, constitute the entire agreement between the Settling Parties and supersede any prior agreements.  No representations, warranties or inducements have been made to or relied upon by any Settling Party concerning this Stipulation, other than the representations, warranties and covenants expressly set forth herein and in the Supplemental Agreement.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

56.     This Stipulation shall be binding upon, and shall inure to the benefit of, the Settling Parties and their respective agents, successors, executors, heirs, and assigns.

57.     This Stipulation may be executed in any number of counterparts by any of the signatories hereto and the transmission of an original signature page electronically (including by facsimile or portable document format) shall constitute valid execution of the Stipulation as if all signatories hereto had executed the same document.  Copies of this Stipulation executed in counterpart shall constitute one agreement.

58.     This Stipulation, the Settlement, and any all disputes arising out of or relating in any way to this Stipulation, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of New York without regard to conflict of laws principles.

59.     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

60.     This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their counsel or their respective successors in interest.

61.     The Settling Parties and their counsel represent that they will not encourage or otherwise influence any Settlement Class Members to request exclusion from, or object to, the Settlement.

62.     The Settling Parties covenant and agree that neither this Stipulation, nor the fact nor any terms of the Settlement, nor any communication relating thereto, is evidence, or an admission or concession by any Settling Party or their counsel, any Settlement Class Member, or any of the FG Defendants or Released Parties, of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings, or as to the validity or merit of any of the claims or defenses alleged or asserted in any such action or proceeding.  This Stipulation is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action, any wrongdoing by any Settling Party, Settlement Class Member, or any of the FG Defendants or Released Parties, or any damages or injury to any Settling Party, Settlement Class Member, or any of the FG Defendants or Released Parties. Neither this Stipulation nor the Supplemental Agreement, nor any of the terms and provisions of this Stipulation or Supplemental Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statement in connection therewith, (a) shall (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any, liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts

or omissions on the part of any of the FG Defendants or Released Parties, or of any infirmity of any defense, or of any damages to the Representative Plaintiffs or any other Settlement Class Member, or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact or any purported liability, fault, or wrongdoing of the Released Parties or any injury or damages to any person or entity, or (b) shall otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that the Stipulation or the Supplemental Agreement or the Final Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to argue and establish that the Stipulation or Supplemental Agreement or Final Judgment has *res judicata*, collateral estoppel, or other issue or claim preclusion effect or to otherwise consummate or enforce the Settlement or Final Judgment, or as otherwise required by law.

63. The Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties, and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

64. All agreements by, between or among the Settling Parties, their counsel and their other advisors as to the confidentiality of information exchanged between or among them shall remain in full force and effect, and shall survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement.

65. Representative Plaintiffs and Plaintiffs' Lead Counsel represent and warrant that the Representative Plaintiffs are Settlement Class Members and none of the Representative

Plaintiffs' claims or causes of action against one or more FG Defendants in the Action, or referred to in this Stipulation, or that could have been alleged against one or more FG Defendants in the Action, have been assigned, encumbered or in any manner transferred in whole or in part.

66.     The Settling Parties shall not assert or pursue any action, claim or rights that any party violated any provision of Rule 11 of the Federal Rules of Civil Procedure in connection with the Action, the Settlement or the Stipulation.  The Settling Parties agree that the Action was resolved in good faith following arm's-length bargaining.

67.     Any failure by any of the Settling Parties to insist upon the strict performance by any other Settling Party of any of the provisions of the Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Settling Parties to this Stipulation.

68.     The waiver, express or implied, by any Settling Party of any breach or default by any other Settling Party in the performance of such Settling Party of its obligations under the Stipulation shall not be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

**IN WITNESS WHEREOF**, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated:  New York, New York
November 6, 2012

BOIES, SCHILLER & FLEXNER LLP

By: _David A. Barrett_
David A. Barrett
Howard L. Vickery, II
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

-- and --

Stuart H. Singer
Carlos Sires
Sashi Bach Boruchow
401 East Las Olas Blvd., #1200
Ft. Lauderdale, Florida 33301
(954) 356-0011

WOLF POPPER LLP

By: _Robert C. Finkel_
Robert C. Finkel
James A. Harrod
845 Third Avenue
New York, NY 10022
(212) 759-4600

LOVELL STEWART HALEBIAN JACOBSON LLP

By: _____
Christopher Lovell
Victor E. Stewart
61 Broadway, Suite 501
New York, NY 10006
(212) 608-1900

*Interim Co-Lead Counsel for Plaintiffs in the Action and Counsel for PSLRA Plaintiffs in the Action*


SIMPSON THACHER & BARTLETT LLP


By: _____
Mark G. Cunha
Peter E. Kazanoff
425 Lexington Ave.
New York, NY 10017-3954
(212) 455-2000

*Attorneys for Fairfield Greenwich Limited and Fairfield Greenwich (Bermuda) Ltd.*

45

**IN WITNESS WHEREOF**, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated:  New York, New York
       November 6, 2012

BOIES, SCHILLER & FLEXNER LLP

By: _____
    David A. Barrett
    Howard L. Vickery, II
    575 Lexington Avenue
    New York, NY 10022
    (212) 446-2300

    -- and --

    Stuart H. Singer
    Carlos Sires
    Sashi Bach Boruchow
    401 East Las Olas Blvd., #1200
    Ft. Lauderdale, Florida 33301
    (954) 356-0011

WOLF POPPER LLP

By: _____
    Robert C. Finkel
    James A. Harrod
    845 Third Avenue
    New York, NY 10022
    (212) 759-4600

LOVELL STEWART HALEBIAN JACOBSON LLP

By: _____
    Christopher Lovell
    Victor E. Stewart
    61 Broadway, Suite 501
    New York, NY 10006
    (212) 608-1900

*Interim Co-Lead Counsel for Plaintiffs in the Action and Counsel for PSLRA Plaintiffs in the Action*

SIMPSON THACHER & BARTLETT LLP

By: _____
    Mark G. Cunha
    Peter E. Kazanoff
    425 Lexington Ave.
    New York, NY 10017-3954
    (212) 455-2000

*Attorneys for Fairfield Greenwich Limited and Fairfield Greenwich (Bermuda) Ltd.*

**IN WITNESS WHEREOF**, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated:  New York, New York
        November 6, 2012

BOIES, SCHILLER & FLEXNER LLP        WOLF POPPER LLP


By:_____      By:_____
    David A. Barrett                      Robert C. Finkel
    Howard L. Vickery, II              James A. Harrod
    575 Lexington Avenue             845 Third Avenue
    New York, NY 10022              New York, NY 10022
    (212) 446-2300                     (212) 759-4600

    -- and --                           LOVELL STEWART HALEBIAN JACOBSON
                                LLP
    Stuart H. Singer
    Carlos Sires
    Sashi Bach Boruchow             By:_____
    401 East Las Olas Blvd., #1200         Christopher Lovell
    Ft. Lauderdale, Florida 33301          Victor E. Stewart
    (954) 356-0011                     61 Broadway, Suite 501
                                New York, NY 10006
                                (212) 608-1900

*Interim Co-Lead Counsel for Plaintiffs in the Action and Counsel for PSLRA Plaintiffs in the Action*


SIMPSON THACHER & BARTLETT LLP

By: _____
    Mark G. Cunha
    Peter E. Kazanoff
    425 Lexington Ave.
    New York, NY 10017-3954
    (212) 455-2000


*Attorneys for Fairfield Greenwich Limited and Fairfield Greenwich (Bermuda) Ltd.*