CAG7ANWC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  PASHA S. ANWAR, et al.,

4              Plaintiffs,

5          v.                          09 Civ. 118 (VM)(FM)

6  FAIRFIELD GREENWICH LIMITED,
   et al.,
7
               Defendants.
8
   ------------------------------x
9
                                       October 16, 2012
10                                     2:00 p.m.

11 Before:

12                    HON. FRANK MAAS,

13                                     Magistrate Judge

14                         APPEARANCES

15 BOIES SCHILLER & FLEXNER LLP
        Attorneys for Plaintiffs Anwar, et al.
16 BY:  DAVID A. BARRETT
        SACHI BORUCHOW (via telephone)
17
   LOVELL STEWART HALEBIAN JACOBSON LLP
18      Attorneys for Plaintiffs Anwar, et al.
   BY:  VICTOR STEWART
19
   BROWN & HELLER PA
20      Attorneys for Citco Defendants
   BY:  AMANDA McGOVERN
21
   CURTIS MALLET-PREVOST COLT & MOSLE LLP
22      Attorneys for Citco Defendants
   BY:  MICHAEL MOSCATO
23

24

25

CAG7ANWC

1                    APPEARANCES (via telephone)

2   KOBRE & KIM LLP
          Attorneys for Defendant GlobeOp Financial
3   BY:   DAVID MCGILL
          JONATHAN COGAN
4
    SIMPSON THATCHER & BARTLETT
5         Attorneys for Defendants Fairfield, et al.
    BY:   MARK CUNHA
6         JEFFREY ROETHER

7   HUGHES HUBBARD & REED LLP
          Attorneys for Defendant Pricewaterhousecooper
8         Accountants NV and PWC Netherlands
    BY:   GABRIELLE MARSHALL
9
    KIRKLAND & ELLIS
10        Attorneys for Defendant Pricewaterhousecoopers LLP
    BY:   AMY CRAWFORD
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CAG7ANWC

```
 1              (Case called)

 2              (In open court)

 3         MR. BARRETT:  David Barrett from Boies Schiller &

 4    Flexner for the plaintiffs.

 5         THE COURT:  Good afternoon.

 6         MR. BARRETT:  Good afternoon, your Honor.

 7         MR. STEWART:  Victor Stewart from Lovell Stewart

 8    Halebian Jacobson for plaintiffs.

 9         THE COURT:  Good afternoon.

10         MS. MCGOVERN:  Good afternoon, your Honor.  Amanda

11    McGovern from Brown & Heller for the Citco defendants.

12         MR. MOSCATO:  Good afternoon, your Honor.  Michael

13    Moscato from Curtis Mallet on behalf of the Citco defendants.

14         THE COURT:  Good afternoon.  And who is on the phone?

15         MR. MCGILL:  Good afternoon, your Honor.  David McGill

16    and Jonathan Cogan from Kobre & Kim, for one of the defendants

17    GlobeOp Financial Services LLC.

18         MS. BORUCHOW:  And this is Sachi Boruchow from Boies

19    Schiller & Flexner for the plaintiffs.

20         MR. CUNHA:  Good afternoon, your Honor.  This is Mark

21    Cunha and Jeffrey Roether from Simpson Thatcher & Bartlett

22    representing the Fairfield entity defendants and certain

23    individuals.

24         MS. MARSHALL:  Good afternoon, your Honor.  This is

25    Gabrielle Marshall, representing PriceWaterhousecoopers
```

CAG7ANWC

1   Accounts and PWC Netherlands.

2              MS. CRAWFORD:  Good afternoon, your Honor.  This is

3   Amy Crawford from Kirkland & Ellis LLP, representing

4   Pricewaterhousecoopers LLP, also known as PWC Canada.

5              THE COURT:  I gather that's it on the phone.

6              I have read the letters submitted both by both sides,

7   and was pleased to see that the issues have been narrowed and

8   that in terms of the 30(b)(6)s, I guess we are dealing with

9   just three issues.  Why don't we start with those, Mr. Barrett

10  or Mr. Stewart.

11             MR. BARRETT:  Yes.  Thank you, your Honor.  And I

12  guess it makes sense to do them one at a time, although I first

13  want to comment that the description in Citco's letter to your

14  Honor of an agreement on the procedure for the depositions is,

15  in our view, an overstatement.

16             We always reserved the right on certain of these

17  topics to pursue the 30(b)(6) witness notwithstanding.  And, as

18  your Honor knows, there are a number of cases that say it is a

19  party's right under the law to have both the 30(b)(6) witness

20  so that you lock in the testimony of the corporation as well as

21  the individual witness.  Nevertheless, on most of these we were

22  willing to proceed on a more informal basis, to look at the

23  documents, to take the depositions and then to see where we

24  are.  But with respect to these three topics it doesn't appear

25  that that is working.

CAG7ANWC

 1          The first one, as your Honor can see, is Citco's -- by

 2     the way, there are six different Citco entities, and sometimes

 3     they like to lump them together, sometimes they like to treat

 4     them separately, but in any event --

 5          THE COURT:  Just so you are aware, I had some

 6     involvement with Citco in the pension committee case, so the

 7     entity is not completely unknown to me.

 8          MR. BARRETT:  Thank you, your Honor.  And topic three

 9     seeks Citco's knowledge or evaluation of due diligence

10     concerning Madoff conducted by the Fairfield defendants,

11     Pricewaterhouse defendants or, because of the issue I just

12     mentioned, other Citco defendants, since maybe one is going to

13     claim that they didn't have knowledge of something that another

14     one knew.  And clearly these are relevant topics.

15          THE COURT:  Just to interrupt you for a second, does

16     it matter from your perspective if Citco defendant one lays it

17     off on two through six?  I mean it seems to me these are fairly

18     substantial entities.  Maybe some of them are smaller than

19     others.  But why does it matter if it's one Citco entity rather

20     than another that had some knowledge?

21          MR. BARRETT:  Well, your Honor, I mean --

22          THE COURT:  As a practical matter.

23          MR. BARRETT:  I mean I can conceive of situations

24     where if you were trying to prove a fraud or a

25     misrepresentation claim it might make a difference if one

CAG7ANWC

1     entity knew this piece and another entity knew this piece, or

2     some circumstance like that.

3          We actually think that at the end of the day, both for

4     the reason that your Honor is stating, and because some of the

5     most critical documents like the audit materials that we

6     discuss later actually went to Citco's executive committee,

7     which is the most senior management committee, if there is

8     knowledge at that level it doesn't much matter which entity it

9     came up through.

10         In any event, your Honor, this particular topic is

11    perplexing to me.  Last week two of the Citco entities -- I

12    guess the ones that are involved in custody -- the bank and

13    Citco Bank Netherland and Citco Global Custody -- produced a

14    witness named Scott Case as a corporate representative on among

15    other things topic two, which is defendants' due diligence

16    concerning Madoff, including but not limited to the due

17    diligence efforts referenced in a particular document.  So,

18    they are already preparing a witness on their own due diligence

19    concerning Madoff.  I would actually think that this topic

20    would be encompassed in the preparation on topic two, which

21    they have never objected to.

22         In any event, so, you know, this statement at the top

23    of page 2 of their letter about how this tremendous burden, 15

24    years, hundreds of employees, the fact is if they are able to

25    discuss their own due diligence, they are able to discuss -- I

CAG7ANWC

```
 1    would think without any significantly more burden -- anything
 2    they know about the due diligence or reliance they placed on
 3    the due diligence of these third parties.
 4          So, you know, I think that's what it boils down to.
 5    We are entitled to have a witness.  We are entitled to have a
 6    witness on behalf of the entity, to give the entity's position
 7    on this clearly relevant topic.
 8          THE COURT:  Why is this topic different than the
 9    others in terms of the possibility of first taking folks as
10    fact witnesses and then asking for 30(b)(6) at the end if need
11    be?
12          MR. BARRETT:  I don't know.  Maybe Ms. Boruchow could
13    answer that with more specificity than I could.
14          MS. BORUCHOW:  I would be happy to, your Honor.  What
15    we're doing is actually a little different than that.  We are
16    requesting fact witness depositions, and then Citco is telling
17    us whether those fact witnesses will cover any 30(b)(6) topics.
18          So, for instance, the deposition of Scott Case went
19    forward last week.  That was a fact witness that we were
20    deposing, and Citco also designated him as the witness on
21    multiple 30(b)(6) topics.  So, he ultimately was both a fact
22    and a 30(b)(6) witness on the topics that they agreed to.
23          The problem that we have is they are not agreeing to
24    designate anyone on the topics that we raised in your letter.
25          THE COURT:  OK, fair enough.  So, on that point with
```

CAG7ANWC

1    respect to this first topic let me turn then to Ms. McGovern

2    and say why is this topic different than all other topics.

3           MS. MCGOVERN:   Thank you, your Honor.   The issue for

4    the Citco defendants -- and just to correct the record, we do

5    view each of the corporate defendants separately.   Sometimes I

6    think we probably make that point too much, we have been told

7    in the depositions, but we do.

8           The issue with respect to these three topics is very,

9    very simple:   We view these topics as separate from the other

10   11 topics that we were able to -- with extensive good faith

11   negotiations with primarily Sachi Boruchow in Miami -- agree

12   to.

13          The problem that we have these three is that it

14   doesn't lend itself to the preparation of a single or even more

15   than one witness for purposes of designating the topic.   So, if

16   we direct ourselves -- which is why we propose in the letter

17   the plaintiffs have identified 23 Citco witnesses, and as of

18   October 12 they have indicated that the last ten of them are

19   just the next round of those depos, so --

20          THE COURT:   Say that again.

21          MS. MCGOVERN:   The plaintiffs have thus far identified

22   23 Citco-related witnesses.

23          THE COURT:   Right.

24          MS. MCGOVERN:   Many of whom are management-level

25   employees of the different Citco entities.   The last ten of

CAG7ANWC

1      those witnesses that they have identified on October 12 have

2      been referred to as simply the next round.  And the reason I

3      say that is because it suggests to us we are not nearly done.

4            The way we view these last three topics -- and one of

5      them is a bit different because we don't think that there is a

6      basis for it at all -- not to say they can't ask for question

7      on it, but we don't think it's appropriate -- but as to these

8      other two, we are looking at these two differently because the

9      preparation for them would require so much work on the part of

10     the Citco entities.

11           For example, number 3, number 3 requests defendant's

12     knowledge or evaluation of any due diligence or lack thereof

13     concerning Madoff conducted by the Fairfield and PWC

14     defendants.

15           Putting the Citco defendants aside, we agreed to topic

16     2, so there is really no reason to talk about the Citco

17     defendants in topic 3; it's redundant with topic 2 which we

18     have agreed to.  So, that's really not on the table.

19           THE COURT:  Tell me topic 2 again.

20           MS. MCGOVERN:  Yes.  Topic 2 is defendant's due

21     diligence concerning Madoff, including but not limited to due

22     diligence referenced in this particular document which refers

23     to one of the Citco defendant's due diligence with respect to

24     Madoff.  We have not objected to that topic.  In fact, we were

25     worried about the language in that topic "including not limited

CAG7ANWC

1  to," but we said OK.

2          THE COURT:  And that document, I take it, is the one

3  that is excerpted on page 2 of Mr. Barrett's letter talking in

4  part about Madoff's audit firm being small?

5          MS. MCGOVERN:  No, your Honor.

6          MR. BARRETT:  It's not, your Honor.

7          MS. MCGOVERN:  The document that's being referred to

8  in topic 2 -- and again topic 2 is not limited to that

9  document; it's any due diligence concerning Madoff.  We have

10  agreed to that topic.  And, in fact, you know, as they say last

11  week Scott Case, who was the managing director of Citco Bank

12  Netherland for a period of time, testified to that question and

13  to many other questions in which he wasn't even designated on

14  topics, although he was designated on a number of them.

15          But for us what is the issue is topic 3.  They are

16  going to take at lease 23 witnesses of the Citco entities.  The

17  questions are going to be asked of those witnesses.  Their

18  knowledge -- which is what they're asking for -- will be

19  inquired during those depositions.  And we have never said or

20  could object to those questions.

21          But to invert the process and to say we want you to

22  prepare a witness or two witnesses on very, very lengthy

23  relationship concerning third parties' due diligence, would

24  require essentially an interview of all of the 23 and perhaps

25  even more; it would require a whole bunch of document --

CAG7ANWC

1          THE COURT:  Well, I assume you are not going to waltz

2     them into depositions without having interviewed them and

3     prepared them.

4          MS. MCGOVERN:  No, I am not referring to our

5     preparation of the witness; I'm referring to what that witness

6     would need to do in order to be prepared as a 30(b)(6) witness

7     to testify about a corporation's knowledge, if it's even

8     possible to do that.

9          THE COURT:  But the problem I have in terms of

10    understanding your objections is I assume that there were

11    associated document requests asking for any and all documents

12    that refer to the Citco defendant's knowledge of what the

13    Fairfield defendants may or may not have done.  And if you have

14    the documents, then it doesn't seem like such an enormous step

15    to prepare one or more witnesses, whether it's designating 16

16    of the 23 in part as 30(b)(6) deponents, and perhaps adding

17    something beyond that if need be.

18          I'm not sure why the informal mechanism that you and

19    Mr. Barrett have described shouldn't apply here as well.  It

20    doesn't sound like there is a significantly greater burden in

21    part because of what I said in documents and in part by what

22    Mr. Barrett said about Fairfield's due diligence being

23    incorporated in questions about Citco's due diligence.

24          MS. MCGOVERN:  Well, the issue for us is that if the

25    depositions of the fact witnesses go forward -- and presumably

CAG7ANWC

1    the questions will be asked -- we believe that factual

2    knowledge -- and essentially it's an amalgamation of all of the

3    individual fact witnesses' knowledge regarding particular

4    events.

5            For example, we know with respect to PWC -- and if

6    it's considered to be due diligence, which we believe it would

7    be -- the unqualified audit reports that were issued every

8    single year, that would be certain documentation, but it

9    wouldn't be the extent of it.

10           And if in fact all of the witnesses that have been

11   identified are asked these questions, then that factual

12   predicate will be laid, and at the end of those depositions we

13   believe the issues will be resolved and this probably won't be

14   a dispute.

15           THE COURT:  Will you then be willing to designate some

16   or all of those witnesses as your 30(b)(6) witness for purposes

17   of this topic?

18           MS. MCGOVERN:  Yes, your Honor, absolutely.  That was

19   really the way we viewed the process.  And in fact if I could

20   just explain the process just for a second, because the

21   agreement that we reached was an agreement that was meant to be

22   as efficient with respect to document and deposition discovery

23   as possible.  These witnesses live and reside outside the

24   United States, Amsterdam, Dublin, Curacao, Canada.  They have

25   thus far all come here for depositions.  The reason that we did

CAG7ANWC

 1    that was precisely so that we're not, you know, sort of

 2    bandying about with respect to the depositions.

 3          And in terms of the application of the topics, we

 4    worked through 11 of them.  But at this particular point,

 5    because we have so many witnesses down the road, many of whom

 6    are management, as to this particular question on topic 3, as

 7    to the knowledge with respect to what PWC did -- and we know

 8    they're going to ask all of these witnesses -- at the end of

 9    the day we don't think there is going to be a dispute as to any

10    remaining questions; and, if there are, the Citco defendants

11    would be willing to review their stated need for additional

12    testimony, whether it be in written form, whether it be in a

13    stipulation, however it would be, but we think it would be the

14    most efficient approach.

15          MR. MOSCATO:  Or, if I may, or whether it means

16    identifying certain testimony that's already in the record as

17    being 30(b)(6), which I think your Honor was suggesting.

18          THE COURT:  I mean the usual course or the more

19    typical course is that somebody testifies wearing two hats, it

20    being known at the outset, but I have certainly had cases where

21    after the fact witnesses are taken in their own right when

22    there is a request for a 30(b)(6) witness, retroactively

23    somebody, or a portion of somebody's testimony, is designated

24    as testimony given in the 30(b)(6) capacity so that it binds

25    the defendant.

CAG7ANWC

1          MS. MCGOVERN:  Yes, we agree with that.

2          THE COURT:  Let me just ask Mr. Barrett.  If I deny

3     the request without prejudice to a later application, how are

4     you prejudiced?

5          MR. BARRETT:  Well, your Honor, I suppose it's

6     principally an issue of burden.  If what your Honor is

7     suggesting -- and I think this is a little bit of a twist on

8     what you're saying -- that any testimony that a fact witness

9     gives be designated automatically as testimony on behalf of the

10    corporate entity that that person works for, that I think is a

11    very efficient way to proceed.  And then we don't have to

12    worry, because we know that when the witness speaks, he or she

13    is speaking for the corporation, even though obviously they may

14    say, well, I only know about, you know, subject X from 2002 to

15    2004; but on that piece of it they have spoken for the

16    corporation.  That to me is sufficient.

17          The problem that I see with what defense counsel is

18    proposing is that it's going to be a huge production.  And

19    nothing in this particular relationship has been particularly

20    easy, nor has communication been particularly effective, in my

21    experience here.  We are going to go around and around on,

22    well, is it lines 12 to 24 of so and so's deposition, no, they

23    don't like that testimony because it didn't come out right, so

24    they're not going to agree to that even though it's pretty

25    clear that --

CAG7ANWC

1      THE COURT:  But if that's the case, I'm going to view

2   very charitably a request for additional 30(b)(6) witnesses,

3   and if they are folks who reside in the Netherlands, or

4   someplace equally exotic, I'm likely to direct that they be

5   brought back at Citco's expense in fairly short order to

6   provide testimony, not specified particular individuals, but

7   some corporate representative, on those topics.

8      MR. BARRETT:  Well, I understand --

9      THE COURT:  It potentially puts you to the task of

10  taking a second deposition, but you are worried about the

11  possibility that the defendants will be somewhat surgical in

12  saying page 3 of the deposition but not page 4.  I'm not

13  excluding that as a possibility, but if that happens, as I

14  said, I will probably allow follow-up 30(b)(6) depositions of

15  whoever they designate.  But if I take Ms. McGovern at her

16  word, it may be that at the end of the day the 23 witnesses add

17  up to a full account under 30(b)(6).

18      And I guess if I were sitting in your seat, the

19  concern I would have is that something falls into a gap.  But

20  it may be that that could be dealt with through a stipulation

21  or a short deposition where somebody is saying the Citco

22  defendants or particular Citco defendants are aware of no facts

23  beyond those testified to by witnesses 1, 3, 5 and 7.

24      MR. BARRETT:  Well, again, I understand what your

25  Honor is saying.  I do think, as Ms. McGovern points out, due

CAG7ANWC

1     to the breadth of Citco's operations and the lengthy time

2     period at issue, we are talking about a lot of witnesses here.

3     And the prospect of having to go through and ascertain whether

4     we need even more witnesses, I don't think it's one that is

5     particularly attractive to us or, I would guess, to Citco,

6     which is why I was suggesting that when the witness testify it

7     simply be deemed at that time to be 30(b)(6) testimony as well

8     as the individual's testimony.

9          THE COURT:  Well, if I narrow what Mr. Barrett is

10    suggesting slightly and say that at a minimum it would be

11    30(b)(6) testimony for the particular Citco entity that that

12    person was working for in the relevant time period, is that

13    acceptable?

14         MS. MCGOVERN:  Your Honor, unfortunately we are not in

15    a position to put every employee regardless of their position

16    with the company at a binding agent level.  We would not be

17    able to do that.

18         I can say that I disagree with Mr. Barrett with

19    respect to the cooperation in the case.  I'm a bit surprised,

20    actually.  So, he can feel rest assured that the fact that we

21    have brought our witnesses to the United States, the fact that

22    we continuously resend in zip file fashion both documents and

23    privilege logs -- in fact this morning before I got on the

24    plane I sent a chart identifying documents by Bates label and

25    by description to see if we could resolve one of the issues

CAG7ANWC

```
 1   they believe hadn't been produced.  It has been a 24/7

 2   situation, and the cooperation has been exhaustive.

 3           In any event, we will not delay unnecessarily so the

 4   designation of 30(b)(6) testimony.  What we are trying to do

 5   simply have these depositions taken in a timely fashion, not

 6   put too much burden on a particular witness to have to know so

 7   much.  And again we believe that at the end of the day this

 8   will not be a dispute.

 9           THE COURT:  Tell me the schedule currently for the 23

10   witnesses to be deposed, and tell me when deposition discovery

11   is supposed to end on the current schedule.  I think I have

12   said before I feel like I have parachuted into the middle of

13   this litigation.

14           MS. MCGOVERN:  I'm sorry.  Would you like me to?

15           THE COURT:  Whoever has those dates.

16           MS. MCGOVERN:  I have a schedule.

17           MR. BARRETT:  If you have it, please go ahead.

18           MS. MCGOVERN:  Well, Friday there is a deposition in

19   Miami, and there are two depositions of Citco Bank Netherland,

20   and those are the October 19 --

21           THE COURT:  Well, I am just asking the end date.

22           MS. MCGOVERN:  Oh, you want an end date.  Well, the

23   ten depositions that have recently been requested, we are

24   actually working with those individuals to get dates.  And I

25   don't have them right now.
```

CAG7ANWC

```
 1            THE COURT:  OK.  Does the discovery schedule have a

 2    date, I assume, for the end of the depositions?

 3            MS. MCGOVERN:  I believe it's beginning of March form

 4    the end of fact discovery.

 5            THE COURT:  So, there is a fair amount of time.  And

 6    the witnesses that are currently scheduled, what's the outside

 7    date for those folks?

 8            MS. MCGOVERN:  Well, as I said, with respect to the

 9    ten, these individuals we do not actually have dates yet.

10            THE COURT:  I'm asking about the other 13.

11            MS. MCGOVERN:  Oh, January 17th.

12            THE COURT:  OK.  So, there is a fair amount of time in

13    the schedule.

14            I'm going to deny the application without prejudice,

15    and we will see how we proceed.

16            If from the plaintiff's perspective it's not working,

17    you can certainly bring it back to my attention before you get

18    to witness 23, but I think it makes sense to wait.

19            As to topic 13, I guess Ms. McGovern complains that

20    you haven't yet indicated which portions of the manuals you

21    wish to receive.

22            MR. BARRETT:  Your Honor, yes, I think this is really

23    a question of being assured, having a commitment in writing

24    that we have received the tables of contents for all the

25    manuals that are responsive, and then obviously we need to get
```

CAG7ANWC

1   back and obtain the sections promptly.  And all of this

2   obviously needs to go forward promptly because the depositions

3   are ongoing.  So, if in fact we receive the manuals, I think

4   that that goes a long way.

5          Now, there is also a request for instruction which may

6   not include manuals, and, you know, I don't know if the

7   defendants would agree to produce any instructional materials

8   that were used on these topics as well, but I think that would

9   probably largely vitiate this topic at this point.

10          THE COURT:  Well, let me take it in two steps.

11          First, is there another tranche of manuals that is

12   going to be produced, or have you produced the universe?

13          MR. BARRETT:  And let me just mention one area where

14   we haven't seen any manuals is the audit department, which, as

15   your Honor can see, is rather important here.

16          THE COURT:  OK.  Like I said, let me ask three

17   questions.  First:  Is there another tranche of manuals of any

18   sort that is going to be produced I guess in the form of tables

19   of contents, or does Mr. Barrett now have the universe?

20          MS. MCGOVERN:  Your Honor, I believe that Mr. Barrett

21   has the universe.  We did provide the tables of contents on

22   July 16.  We did receive on October 10 a request for certain

23   sections of the tables of contents, but that was just a couple

24   days ago.  I'm sure that we're going to be providing those

25   sections this week.  But we did just get a request for those.

CAG7ANWC

1      In terms of whether we have produced all tables of

2  contents, I believe the answer is yes, but I will tell you that

3  we will advise by the end of this week if I'm mistaken, and we

4  will produce the remaining documents very, very shortly.

5      With respect to the instructions or lists, one of the

6  reasons that we had difficulty with this topic is we believe

7  that's very vague.  I don't know what they're referring to when

8  they refer to table instructions and lists.

9      The way we have been producing documents, just so that

10  you might have a bit of context or color to this, is we have

11  produced the hard copies in this case.  We have completed

12  production of the hard copies in this case some time ago, and

13  in fact, you know, in terms of the numbers, we have produced

14  about 300,000 hard copies.

15      THE COURT:  300,000 documents or pages?

16      MS. MCGOVERN:  300,000 documents and about a million

17  pages.  And we have produced nearly a million pages in

18  electronic -- what we refer to as ESI.  We are now working

19  within the ESI world, and those are -- they were all search

20  term hit-driven productions.  So, we are not not producing

21  anything.

22      So, in terms of when we are completely finished, we

23  are not completely finished with all tranches of production

24  because we get getting new search terms from the plaintiffs,

25  which isn't meant to be -- you know, there is not meant to be

CAG7ANWC

1     anything harsh about that; I'm just stating the reality.

2            So, when you say instructions and lists, or when the

3     plaintiffs request 30(b)(6) document, we just don't know how we

4     would possibly prepare somebody for that.  And, again, they

5     have the documents themselves.

6            THE COURT:  Well, the request to get training manuals,

7     instructions or lists, really what they're asking for is

8     documents setting forth generic warning signs or red flags that

9     defendants' employees should be looking for with respect to

10    their clients.

11           MS. MCGOVERN:  Those documents would be produced, your

12    Honor, in terms of our general production of electronic ESI,

13    because it contains search terms which would be a hit on those

14    documents.

15           THE COURT:  OK.  So, I take it your answer is:  To the

16    extent you are able to, you have produced those documents.

17           MS. MCGOVERN:  Yes.  And to the extent that I'm

18    mistaken and there might be another tranche that would

19    incorporated some of that, we will confirm that with the

20    plaintiffs.

21           I'm just nervous about sitting here right now and

22    talking about the mega amounts of ESI that have been produced

23    and what might be remaining on this particular point.  But we

24    will confirm.

25           THE COURT:  Well, I mean ESI is always sort an

CAG7ANWC

1    iterative process, and perfection is difficult to achieve when

2    we are talking about large databases, I recognize that.  But

3    one potential flaw that Mr. Barrett pointed out, and it's the

4    third concern, that apparently nothing emanates from the audit

5    department with respect to topic 13.

6          MS. MCGOVERN:  Well, I'm not completely clear on what

7    he means by that.  In other words, if the complaint is there

8    isn't a separate training manual for the audit department --

9    I'm not sure what the question is, actually.

10         MR. BARRETT:  That would be hard to believe, your

11   Honor, that there weren't one.  In fact I wouldn't expect it to

12   be ESI, I would expect it to be hard copy, a manual or

13   instruction on how to do audits.  And presumably since one of

14   the things that we know the auditors were looking for --

15   because they found it here -- is potential fraud, that it would

16   be covered by this request.

17         MS. MCGOVERN:  Your Honor --

18         MR. BARRETT:  And this goes to one of the later topics

19   that we will discuss.  All you have to do is go to the audit

20   department and ask them do you have manuals, do you have audits

21   that cover Fairfield Century.  If you do, give them to us.

22         This doesn't require a complicated ESI search.  All it

23   requires is going to one department and asking a couple of very

24   simple questions.

25         THE COURT:  Well, it sounds like somebody did that at

CAG7ANWC

1      least in part since you have been given the document that you

2      quote on page 2 of your letter, which you yourself say came

3      from the internal auditors.

4               MR. BARRETT:  Correct, your Honor.  I but I think that

5      was produced through the search term methodology.  And if you

6      want to jump ahead to the --

7               THE COURT:  Well, let me just say this generically,

8      which is my view is always that if there is a request for

9      generic documents such as all audits concerning Madoff, that

10     it's fine to use search terms that the plaintiffs supply, but

11     that's not a substitute for -- to use Mr. Barrett's example --

12     going to the audit department and saying are there any such

13     documents sitting in your desk drawers or that are filed under

14     the name project McGovern that we couldn't predict would be the

15     way of finding it.  And I assume that the Citco defendants are

16     doing that, and if they haven't, they certainly need to, in my

17     judgment.

18              MS. MCGOVERN:  We agree with you 100 percent, your

19     Honor.

20              I know Mr. Barrett is anxious so get to the last topic

21     on this, but in terms -- but we have done that.  We will

22     confirm with respect to any manuals that Mr. Barrett does not

23     believe have been produced.  We will confirm that for him.

24              The search terms -- and we have independently, as

25     well, checked with every single employee, which was an

CAG7ANWC

```
1    incredibly exhaustive possess, with signatures, in terms of

2    hard copies and preservation and all that sort of thing.  So, I

3    say that with confidence, but we will get back to Mr. Barrett

4    with respect to manuals on the audit.  I also want to point out

5    that on November 8 Albert Van Nye will be deposed.  Mr. Barrett

6    will be able to ask all of the questions he wishes to ask of

7    Mr. Van Nye.

8              THE COURT:  Who is he?

9              MS. MCGOVERN:  Mr. Van Nye was in internal audit, and

10   those are the documents that the plaintiffs have been using for

11   purposes of discussing the audit.

12             On December 6 Gerjan Meijer will be deposed, and Mr.

13   Barrett will be able to ask Gerjan all of the questions that he

14   has.  We are getting there; we're just not there yet.  And I

15   think Mr. Barrett will be able to come away with a lot of

16   answers and not sort of feel as though he is not getting them

17   once he takes these depositions.

18             THE COURT:  I was going to say generically it seems to

19   me there will be lets of opportunity to discover if the

20   defendants didn't look in some particular trove that they

21   should have.  And if they haven't, bring it to my attention,

22   and I will certainly deal with it.

23             I guess that brings us to subsequent curative measures

24   under topics 14 B, C and D.

25             MR. BARRETT:  Well, yes, your Honor, except that if
```

CAG7ANWC

1    you look on page 2 of the appendix, the defendants conveniently

2    forgot that the request deals with policies and procedures, not

3    just after December 11, 2008 but for the period prior to that.

4    And that they don't apparently have any objection to at all,

5    unless it's this same sort of burdensomeness that we have been

6    hearing about.  But I mean it's very straightforward.  What are

7    the policies and procedures you had for opening customer

8    accounts, delegation of custodial responsibilities, and dealing

9    with the NAV and portfolio of the funds?

10            THE COURT:  Well, they are not objecting to that,

11   therefore, I assume they are producing it except to the extent

12   that you are asking for changes to those policies or

13   procedures.  Correct?

14            MR. MOSCATO:  Right.

15            MS. MCGOVERN:  Well, I must say that this is the first

16   time we have actually spoken about topic 14 in this way.  This

17   14 has actually has been the subject of many communications,

18   the last of which from our end was July 31, and it is coming

19   back now in October.

20            So, you know, the position we have always taken with

21   respect to 14 is we believe that they were looking at someone

22   to testify for each defendant on subsequent remedial measures

23   without sort of justifying it.  If it now also includes

24   policies and procedures before, this is a new topic because it

25   doesn't say that in the topic.

CAG7ANWC

1              MR. BARRETT:  Sure it does.

2              THE COURT:  Sure it does.

3              MS. MCGOVERN:  But with respect to what?

4              THE COURT:  At the time the litigated funds first

5     became customers, what were the policies and procedures for

6     opening accounts, etc?  Under topic B, just by way of example,

7     and that clearly is asking before everything hit the fan what

8     were the procedures.

9              MR. BARRETT:  And, C, your Honor, says defendant's

10    policies and procedures with respect to delegation, blah, blah,

11    blah, blah, blah, comma, and any changes that were made in

12    response to Madoff.  So, the entire first clause is pre-Madoff.

13             MS. MCGOVERN:  Well, your Honor, we took the letter

14    from October 9 as actually being directed to remedial measures.

15             In terms of the policies and procedures before, the

16    only thing that comes to mind in that regard is simply this:

17    The policies and procedures, for example, were discussed

18    extensively with Scott Case in his deposition on October 4.  I

19    was actually there with Stewart Singer and Lewis Brown.  And

20    they were discussed extensively with Scott Case.  We did not

21    designate Scott Case as to this particular topic precisely

22    because it sort of frankly wasn't discussed for the last couple

23    months.

24             With respect to that aspect of topic, I think the same

25    protocol should apply as to asking the questions of the 23

CAG7ANWC

1    witnesses, because we think we will be able to have those

2    addressed.

3          THE COURT:   That seems fine, but what Mr. Barrett was

4    saying was the only area -- if I can paraphrase what he said,

5    the only area in which you are declining to designate somebody

6    retrospectively, or to even make somebody available, is

7    subsequent curative measures.

8          MS. MCGOVERN:   Your Honor, here is our position on

9    post-remedial measures.   We think it's very clear that the rule

10   is very clear that subsequent remedial measures are

11   inadmissible to prove negligence, culpable conduct -- well,

12   actually in this case those are the two applicable.

13         But we take the position with respect to subsequent

14   remedial measures under Rule 407.   And the plaintiffs in the

15   several months -- the last conversation that we had about this

16   topic had not shown that this issue is relevant on any issue in

17   this case or would be admissible on this case.   They can't use

18   it to prove the Citco defendants were culpable or negligent.

19         THE COURT:   Well, but how about if you get to the

20   "but" portion of 407?   One of the topics, just by way of

21   example, that it can be admissible for is the feasibility of

22   probationary measures.

23         I mean my usual ruling -- unless you can convince me

24   otherwise -- and this certainly comes up frequently -- is that

25   admissibility and discoverability are two separate issues, and

CAG7ANWC

1   you may be 1000 percent correct on admissibility, but as to

2   discoverability it's not as black and white.

3          So, unless you convince me that there is some reason I

4   should depart from my usual rule, since evidence need not be

5   admissible if it potentially will lead to admissible evidence,

6   I'm likely to say that this is a topic as to which they can

7   inquire.

8          MS. MCGOVERN:  Your Honor, we believe that they will

9   inquire of all of the witnesses, because we have no legitimate

10  basis in a deposition to preclude those questions.  Our

11  understanding is we cannot instruct the witness not to answer

12  the question.  In fact, Scott Case -- because it was the most

13  recent deposition, perhaps I'm using it as an example -- was

14  asked that very question.  He answered it.

15         So, if your Honor is inclined to rule as you've done,

16  we're not there in terms of the admissibility yet, so perhaps

17  we don't cross that bridge, but we would just make two points

18  in this regard:  The protocol should be the same.  They will

19  ask the 23 witnesses.  At the end of the day they may say was

20  there anything else, and we can perhaps address it with a

21  written stipulation.

22         The last thing I would suggest though is, you know --

23  well, that's actually it.

24         THE COURT:  OK.

25         MR. BARRETT:  Your Honor, we certainly appreciate your

CAG7ANWC

 1    Honor's ruling.  This issue -- and this is not a topic that has

 2    been teed up for your decision today -- but in the defendant's

 3    privilege logs, as I understand it -- and this goes to the

 4    depositions that are coming up, because obviously you want to

 5    have documents, not just the witness's recollection -- they

 6    have taken the position that many, many documents are not

 7    producible as work product even if they didn't involve an

 8    attorney, on the theory that I guess as of the day after

 9    Madoff's collapse they were preparing for litigation.

10         And as your Honor knows, that's not necessarily an

11    easy question.  It may depend on whether it's primarily

12    business or primarily legal, but you certainly would think that

13    there was a lot of business incentive here.  So, it may be that

14    we need to tee up that privilege issue for your Honor very

15    quickly so that we can get those documents as soon as possible

16    and not have to think about recalling witnesses and that sort

17    of thing.

18         THE COURT:  All right.  Every time I hear the word

19    privilege, I shutter for obvious reasons, but you may well be

20    right.  And should that become the case, I would encourage you

21    to see whether there is a way on which I can look at the

22    documents if need be on a sampling basis, for example, so that

23    I don't have to look through 12,000 documents but perhaps can

24    look at two and say the same rules apply.  If that's not

25    feasible, so be it, but I understand your desire for

CAG7ANWC

1    expedition, and when you are ready to raise that, let me know.

2              But I think I've made my general views known.

3              MR. BARRETT:  Thank you, your Honor.  I guess I'm

4    still not a hundred percent clear on where we are in terms of

5    requiring Citco to designate witnesses on the 14 topics,

6    certainly pre-dating, and I guess post-dating they have to

7    await further --

8              THE COURT:  Well, I guess what I'm saying is it should

9    be handled the same way as all other topics.  And apparently I

10   thought the concern was that they might direct witnesses not to

11   answer these questions on relevance grounds -- although that's

12   not really a proper objection -- but apparently they're not.

13             And, as I said, at the retrospective designation

14   stage, unless somebody convinces me otherwise, I will require

15   them to designate witnesses or portions of the testimony as

16   testimony that binds the companies.  And then ultimately

17   whether that binding testimony should be heard by the finder of

18   fact is something I guess Judge Marrero will decide.

19             MR. STEWART:  If I may just seek some clarification in

20   what you were saying a few minutes ago.  I end up taking a

21   number of these Citco depositions, so I'm more in the

22   preparation mode of wanting to know the relevant documents that

23   a witness was involved with or may know about so I have a

24   chance to prepare to ask them intelligent questions that will

25   resolve certain issues.

CAG7ANWC

1          So, when I've heard talk about certain of these

2     training manuals and procedures in the audit department can

3     become known when various witnesses appear, and they can be

4     examined by our attorneys, to me that is a bit prejudicial to

5     us in the sense that Judge Marrero created a very hard deadline

6     in March, after extending our discovery for fact discovery

7     deadlines several times, and we're endeavoring to make sure

8     that we have completed all of our discovery by that time.  And

9     if instead of having the benefit of any manuals, or

10     instructions, or lists concerning warning signs that actually

11     are in existence today, if we don't have the benefit of having

12     those before these depositions come up so we can properly

13     prepare and ask all of the questions at the depositions, then

14     we're creating an accumulation of potential issues at the tail

15     end of our fact discovery period.

16          THE COURT:  Are you talking about those documents that

17     are on the privilege log, or something broader than that?

18          MR. STEWART:  I'm talking about the documents that

19     aren't on the privilege log but are specific types of generic

20     documents that we had requested, such as training manuals and

21     such.

22          THE COURT:  I had heard -- perhaps I misunderstood,

23     and, if so, you should tell me -- but I thought I heard

24     Ms. McGovern say you have those documents or, at least as far

25     as the manuals are concerned, the indices.  I thought what she

CAG7ANWC

1    was saying to the extent that you doubt it is complete -- for

2    example, with respect to documents emanating from the audit

3    department -- you can inquire about that to satisfy yourself

4    that there are no gaps in their production.

5          I didn't hear her say sort of a game where if you get

6    the witness to say a document exists, we'll turn it over and

7    then you can explore it with that or another witness.

8          MR. STEWART:  So long as that's clear, your Honor.

9    Because the other subtext to a lot of our difficulties in this

10   discovery is that it is all search term driven, and the times

11   we have identified certain documents by a name that Citco has

12   given, they are certain documents they regularly produce.

13         So, rather than wait for search terms to produce

14   copies of these documents, we have tried to get all documents

15   with this name.  So, we just don't want to be in a situation

16   where there is any ambiguity left as to whether certain generic

17   or identified-by-title documents we have asked for get

18   produced, and we are not waiting for further search terms to

19   produce them, or to find out that they exist through deposition

20   testimony, when we have clearly asked for them beforehand.  If

21   that's clear, then I have no problem with it at all.

22         THE COURT:  Well, Ms. McGovern was nodding her head up

23   and down as to the first of those, so I think it's clear.  And

24   as to the second, she earlier told me, using the audit

25   department as an example, that they weren't just relying on

CAG7ANWC

1  search terms.

2           So, unless you tell me there is some issue there,

3  Ms. McGovern, I assume there is no issue there.

4           MS. MCGOVERN:  You're absolutely correct, your Honor.

5           THE COURT:  Well, one question I had going to the top

6  of page 3 of your letter, it says, "Plaintiffs will have all

7  responsive audit reports prior to the deposition dates of the

8  internal audit personnel."  And I wrote in the margin, when is

9  that that you will produce the audit reports?

10          MR. BARRETT:  Well, your Honor --

11          MS. MCGOVERN:  That's correct, your Honor.  We did

12 make that commitment.  And I was going to wait for Mr. Barrett

13 to make his, but I can tell you that we have as much desire to

14 produce all audit-related reports as the plaintiffs do.  But as

15 I was speaking with Mr. Barrett's associate last night at about

16 7 o'clock when he called to say, "we can't find the 2007 audit

17 reports; can you tell me where they are; maybe this is a

18 misunderstanding," we both recognized on the phone that these

19 documents have different file names and different titles.

20          We have identified them.  We have produced over 255.

21 There are many, many, many drafts.  And, as I was explaining

22 last night as well to Adam Deckinger, we didn't just produce

23 one.  If that draft went to three different people, they got

24 those because we believed they were entitled to all of them.

25 We are being incredibly detailed and thorough on this.

CAG7ANWC

1          So, what we have, we have been able to identify the

2    documents that are in the pipeline for production, and we have

3    a commitment to produce them before the internal audit

4    depositions.  And I had mentioned that the first one is

5    November 8, which means we're trying to get the rest of those.

6    I believe there is about 60 left.

7          The reason that it takes time is that the audit

8    report, it's not just a Fairfield audit report; this is the

9    company's internal audit on all fronts, on all things.  So, you

10   know, it reflects Fairfield Century was a high risk fund

11   because of the structure of the fund, which was the structure

12   of the fund from the early 1990s.  It was always reflected as a

13   high risk fund; it will always be reflected as a high risk

14   fund.  They want all of those documents, they are entitled to

15   them.  We want to produce them.  There are still some left in

16   the pipeline, and we have committed in our letter to your Honor

17   to produce them before the deposition of Albert Van Nye.

18          THE COURT:  But I take it not the day before.

19          MS. MCGOVERN:  No.  What we do -- what we're hoping to

20   do -- what we have done thus far with all witnesses, by the

21   way, that have been deposed, is all documents related to that

22   deponent have been produced at least a week in advance.  That

23   doesn't mean we wait and we hold on to them and then release

24   them the week before.  I mean that's sort of like the cut-off.

25          THE COURT:  OK.  And that is what I was about to

CAG7ANWC

1    suggest, so it sounds like it's being handled.

2           I had moved on to the audit reports and watch list.

3    Was there something else on topic 14 that you wanted to raise,

4    Mr. Barrett?

5           MR. BARRETT:  No, your Honor, I think that covers it.

6           THE COURT:  And have we covered the audit reports and

7    watch lists.

8           MR. BARRETT:  Well, there are a couple of points on

9    that, your Honor.  First of all, the audit reports and watch

10   lists are not relevant only to the people in the audit

11   department.  Indeed, they may be more relevant to the people

12   outside the audit department who received them and then did or

13   did not take action based on those reports.  So, while it would

14   be nice if in fact we -- and I expect we will -- get what

15   Ms. McGovern is talking about by November 1, frankly we should

16   have had it a long time ago.  You know, it may be necessary --

17   to the extent that relevant information is produced

18   subsequently -- to continue depositions of certain witnesses.

19          Secondly, while there may have been 200 or 300

20   so-called audit reports produced, a large number of those do

21   not deal -- and we appreciate that, and we think they should be

22   produced.  On the other hand, they don't deal with the key

23   subject areas that I'm sure that your Honor understands.

24          For example, Exhibit C in the letter that we sent your

25   Honor, which is quoted at the end of footnote 1, is a document

CAG7ANWC

1    that's entitled "Citco fund services internal audit, executive

2    summary of audit activities and findings quarterly report".

3              Now, we have looked -- and I can't tell you that we

4    haven't missed something -- but we have looked for comparable

5    quarterly reports to this document, you know, from the outset

6    through 2008; and I don't have the exact number, but it's

7    certainly less than half a dozen of those that have been

8    produced.

9              Now, we accept the fact that Citco may be searching

10   using search terms, and that they're producing whatever audit

11   reports appear by using the search terms, but this is where I

12   get back to what I suggested to your Honor a little bit

13   earlier, which is because it is now clear that these are very

14   important documents -- and I'm referring to the quarterly or

15   annual audit reports and to these so-called watch lists -- that

16   Citco just go to the audit department and ask them to provide

17   all reports of that nature which have some discussion of

18   Fairfield funds or Madoff.  That's all.  It's a very simple

19   request, and it's to go to the audit department.  We don't have

20   to use search terms, as the case we cite suggests.  If there is

21   another way to get at it and it's not particularly burdensome,

22   that's an appropriate way to proceed as well.  And we think

23   that that's something that maybe that can be done within a week

24   or two, but at least we will have these quarterly reports and

25   we will have a complete set of them.

CAG7ANWC

1          So, you know, I would make that request in order.

2     Then if they continue with the key word search process in the

3     production they are engaging in, I think we would be in a much

4     better position to proceed with these depositions.

5          MS. MCGOVERN:  Your Honor, we've done that.  We are

6     not relying merely on whether the plaintiffs have figured out a

7     search term that's going to capture what we believe to be a

8     relevant document.  We have produced over a million pages of

9     ESI.  We have a tremendous amount of resources dedicated to

10     getting the plaintiffs all responsive documents.  The last

11     thing in the world that's going to happen in this case is that

12     a witness is going to say something has not been produced.

13     We're simply advising the plaintiffs that we are working

14     through the ESI as we can.

15          With respect to the audit reports, we have identified

16     the audit reports that we still have in the pipeline.  It is

17     what it is.  The documents are what they are.  When they take

18     the deposition of Albert Van Nye and Gerjan Meijer, who will be

19     coming to Miami for their deposition to facilitate the

20     deposition process, they will have all of the documents we

21     talked about, and they will have the time they need as allowed

22     under the federal rules to ask their questions.  I don't see

23     what else we can do, your Honor.

24          THE COURT:  Is the quarterly report, May 2004 that I

25     have, is that -- well, I guess the answer is it says ESI, so

CAG7ANWC

1    it's ESI.  I just noticed that.

2              MS. MCGOVERN:  Yes.

3              THE COURT:  So, this was produced from an electronic

4    file.  I take it to the extent that there are similar reports

5    for other quarters, those will be produced at least a week

6    before the first witness as to whom they relate testifies?

7              MS. MCGOVERN:  That's correct, your Honor.

8              THE COURT:  I think that pretty much covers that, Mr.

9    Barrett.

10             MR. BARRETT:  Well, we will certainly ask the witness

11   if there were quarterly produced each quarter, and if we don't

12   have them, what happened to them.

13             THE COURT:  OK.  And it may be as to many of these

14   topics that ultimately what is needed is a 30(b)(6) from

15   somebody who is a document custodian or who oversaw the search

16   for documents, so you can satisfy yourself that if there were

17   gaps, they are gaps that exist rather than gaps that were

18   created because somebody didn't ask the right custodian or look

19   in the right file.

20             That brings us to telephone logs, calendars and

21   diaries, where Ms. McGovern represents there are none.  I think

22   that falls in the same category of if you don't believe it, you

23   can ask a document custodian.

24             MR. BARRETT:  And if I could just ask Ms. McGovern to

25   clarify, does the assertion that there are none also apply to

CAG7ANWC

1   notes that somebody might have taken that were not kept in a

2   diary or similar kind of document?

3              MS. MCGOVERN:  Yes.

4              MR. BARRETT:  In other words, you know, you and I sit

5   here with our yellow pads taking notes --

6              MS. MCGOVERN:  Yes, yes.  Because we understood this

7   request to pertain to documents that were maintained in hard

8   copy.  And we are confident that the answer is no.

9              THE COURT:  OK.  And that brings us to the privilege

10  log, where candidly I think Ms. McGovern's point is well taken.

11  If there are particular documents that you think potentially

12  are not privileged -- and there may be a lot of them.  I would

13  imagine the privilege log is long -- and you can convince me

14  that you need more of a description, then I will certainly

15  require that that be provided.

16             But, frequently, given e-mail chains, the re line is

17  wholly inaccurate description.  I recognize that there is sort

18  of a sliding scale in terms of specificity between a

19  description that is so specific that it reveals the privileged

20  information contained in the communication, or at the other

21  extreme so generic as to be useless.  And it may be that for

22  particular documents the re line more so than the file name

23  will be necessary.  But I don't want to create a makework

24  exercise where it wouldn't serve a purpose.

25             MR. BARRETT:  I certainly understand your Honor's

CAG7ANWC

1    point with respect to the re line.  I wonder, however, if it's

2    a little different with respect to attachments, because at

3    least the way that the privilege log is essentially done, you

4    know, it describes a subject matter, e-mail chain and

5    attachment relating to whatever apparently privileged topic,

6    let's say hypothetically.

7              But it would seem to me that the name of the

8    attachment is additional information; it shouldn't reveal

9    anything that's privileged.  I mean the fact that somebody

10   said, you know, chronology of Madoff relationship doesn't make

11   it privileged.  If the title of the document happened to be

12   "We're guilty of fraud in connection with Madoff," I agree that

13   would present a privilege problem.  But virtually no document

14   is going to have that, but we are entitled to know the

15   substance, the attachment by its name.  And this is all

16   presumably electronically available, which is the point I think

17   of these cases.  So, it really is not the kind of burden that

18   you would have had in the old days with having to manually go

19   through everything.

20             THE COURT:  Well, when you are talking about file

21   name, I'm not sure what you are talking about.  If it's c:/

22   whatever -- which is what I read your request to be -- I'm not

23   sure that that adds much of anything, as opposed to the subject

24   line.

25             In terms of attachments, in particular instances again

CAG7ANWC

```
 1    you may be right, but it strikes me that particularly for
 2    attachments it would be an enormous amount of work, potentially
 3    with very little in terms of additional information to be
 4    supplied to you that would enable you better to challenge
 5    privilege assertions.
 6                So, if you can narrow the scope of where you are
 7    asking that that be done, I will certainly consider it, but to
 8    say the entire privilege log should be augmented in that way, I
 9    think that's overkill.
10                MR. BARRETT:  We will do that.  Thank you, your Honor.
11                THE COURT:  Anything else?
12                MS. MCGOVERN:  No, your Honor.
13                THE COURT:  OK, thank you.
14                MR. BARRETT:  Thank you.
15                THE COURT:  Are counsel going to order the transcript
16    of this proceeding?
17                MS. MCGOVERN:  Yes, please.
18                                  - - -
19
20
21
22
23
24
25
```