UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANWAR, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>FAIRFIELD GREENWICH LIMITED, *et al*.,<br><br>　　　　　　Defendants. | Master File No. 09-cv-118 (VM) |

**DERIVATIVE PLAINTIFFS' OBJECTION TO PROPOSED SETTLEMENT
AND NOTICE OF INTENTION TO APPEAR AT SETTLEMENT HEARING**

**MILBERG LLP**
One Pennsylvania Plaza
New York, New York 10119
Tel.: (212) 594-5300

**SEEGER WEISS LLP**
77 Water Street
New York, New York 10004
Tel.: (212) 584-0700

*Attorneys for Objectors*

# TABLE OF CONTENTS

      **Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

THE PROPOSED SETTLEMENT ..................................................................................... 3

ARGUMENT ....................................................................................................................... 5

I.    THE COURT SHOULD REJECT THE PROPOSED SETTLEMENT .............................. 5

      A.    The Gratuitous Release is Overreaching, Unfair and Unreasonable ........................ 5

      B.    The Class's Lead Counsel and Plaintiffs Cannot Adequately Represent the Interests of Sentry.. .................................................................................................. 10

      C.    The Settlement Notice is Inadequate .................................................................... 11

II.   ALTERNATIVELY, ANY APPROVAL SHOULD REQUIRE A CARVE OUT OF THE DERIVATIVE ACTION ........................................................................ 12

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ............................................................................................................. 11

*Anwar v. Fairfield Greenwich Ltd.*,
 676 F. Supp. 2d 285 (S.D.N.Y. 2009) ............................................................................ 1, 4, 7

*Anwar v. Fairfield Greenwich Ltd.*,
 728 F. Supp. 2d 372 (S.D.N.Y. 2010) ................................................................................... 2

*In re Auction Houses Antitrust Litig.*,
 2001 WL 170792 (S.D.N.Y. 2001), *aff'd*, 42 F App'x 511 (2d Cir. 2002) ..................... 5, 6, 12

*Brickman v. Tyco Toys, Inc.*,
 731 F. Supp. 101 (S.D.N.Y. 1990) ...................................................................................... 10

*Browning v. Yahoo! Inc.*,
 2006 U.S. Dist. LEXIS 34770 (N.D. Cal. May 19, 2006) ...................................................... 9

*Consol. Edison, Inc. v. Ne. Utils.*,
 332 F. Supp. 2d 639 (S.D.N.Y. 2004) ................................................................................. 12

*In re Fairfield Sentry Ltd.*,
 440 B.R. 60 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 10-7311, 2011 WL 4357421
 (S.D.N.Y. Sept. 16, 2011), *appeal argued*, No. 11-4376-cv (2d Cir. Nov. 19, 2012) ............ 2

*In re FirstEnergy S'holder Derivative Litig.*,
 219 F.R.D. 584 (N.D. Ohio 2004) ......................................................................................... 7

*Karvaly v. eBay, Inc.*,
 245 F.R.D. 71 (E.D.N.Y. 2007) ............................................................................................. 8

*McReynolds v. Richards-Cantave*,
 588 F.3d 790 (2d Cir. 2009) ................................................................................................ 12

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
 660 F.2d 9 (2d Cir. 1981) .............................................................................................. passim

*National Australian Bank v. Morrison*,
 130 S. Ct. 2869 (2010) .......................................................................................................... 8

*Priestly v. Comrie*,
 2007 U.S. Dist. LEXIS 87386 (S.D.N.Y. Nov. 27, 2007) .................................................... 10

*Romero v. Career Educ. Corp.*,
 2005 Del. Ch. LEXIS 112 (Del. Ch. July 19, 2005) .............................................................. 7

*SIPC v. Bernard L. Madoff Inv. Secs. LLC,*
　No. 12-9408 (VM), 2013 U.S. Dist. LEXIS 17457 (S.D.N.Y. Feb. 6, 2013).......................4, 10

*W. End Capital Mgmt., LLC v. Pixelplus Co.,*
　580 F. Supp. 2d 343 (S.D.N.Y. 2008)..................................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
　396 F.3d 96 (2d Cir. 2005).............................................................................................10, 11

*Weinberger v. Kendrick,*
　698 F.2d 61 (2d Cir. 1982)..................................................................................................11

**STATUTES**

11 U.S.C. § 1509(b) ...................................................................................................................2

15 U.S.C. § 78bb(f)(5)(C).........................................................................................................7

15 U.S.C. § 1517(b)(1) .............................................................................................................2

# PRELIMINARY STATEMENT

Morning Mist Holdings Ltd. and Miguel Lomeli ("Derivative Plaintiffs" or "Objectors") respectfully submit this Objection to the Proposed Partial Settlement ("Proposed Settlement"). Objectors also hereby provide notice of their counsel's intention to appear at the settlement hearing on March 22, 2013.

Objectors are shareholders of Fairfield Sentry Ltd. ("Sentry") and plaintiffs in *Morning Mist Holdings Ltd. v. Fairfield Greenwich Group*, a derivative action ("Derivative Action") pending on behalf of Sentry. The Derivative Action was filed in May 2009 in New York Supreme Court. It was then removed to this Court by defendant Fairfield Greenwich Advisors LLC, who claimed that this Court had subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). Objectors moved to remand the action on the grounds that this Court lacked subject matter jurisdiction under CAFA. The Court granted the motion in December 2009. *See Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 295, 301 (S.D.N.Y. 2009) ("Remand Decision") (rejecting defendants' "astoundingly expansive approach" and explaining that their position was "directly contradicted by the plain language of CAFA").

The Derivative Action alleges, *inter alia*, that various persons affiliated with Fairfield Greenwich Group -- many of whom are also named defendants in this action ("FG Defendants") -- are liable to Sentry for fees paid by Sentry (which fees were calculated on the basis of Sentry's improperly calculated net asset values and thus inflated). *See generally* Stipulation of Settlement ("Stipulation"), Doc. 996, at 4, § J (describing Derivative Action). Claims are also asserted against Sentry's service providers, including PricewaterhouseCoopers and Citco (who also are defendants in this action). Unlike this class action -- which was filed on behalf of persons who invested in Sentry and other funds, the Derivative Action was brought to "recover losses on behalf of [Sentry]." Remand Decision, 676 F. Supp. 2d at 294.

In May 2009, the *Anwar* plaintiffs' Lead Counsel caused an application to be filed in the British Virgin Islands ("BVI") to place Sentry into liquidation. *See* Joint Declaration of Lead Counsel ("Joint Decl."), Doc. 1035, ¶ 43. In July 2009, a BVI court issued an order of liquidation. *Id.*, ¶ 44. Lead Counsel have "actively participated" in the liquidation. *See id.*, ¶ 45.

In June 2010, the liquidators filed an application in the United States Bankruptcy Court for the Southern District of New York under Chapter 15 of the U.S. bankruptcy code, seeking, *inter alia*, "recognition" and a stay of the Derivative Litigation. ("Recognition" permits a foreign entity's representative to sue in the United States. *See* 11 U.S.C. § 1509(b)). That application was granted by order ("Recognition Order") of the bankruptcy court (Hon. Burton Lifland) over the objection of the Derivative Plaintiffs. *See In re Fairfield Sentry Ltd.*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 10-7311, 2011 WL 4357421 (S.D.N.Y. Sept. 16, 2011), *appeal argued*, No. 11-4376-cv (2d Cir. Nov. 19, 2012).[1]

Following the issuance of Recognition Order, Sentry's liquidators and Irving Picard, the trustee ("Trustee") of Bernard L. Madoff Investment Securities LLC, entered into a settlement

---

[1] The Derivative Plaintiffs contend that recognition was improper because, *inter alia*, Sentry has not maintained its "center of main interests" in the BVI. *See* 15 U.S.C. § 1517(b)(1) (permitting "recognition" if the foreign proceeding "is pending in the country where the debtor has the center of its main interests"). Although the *Anwar* plaintiffs filed the liquidation application in the BVI, *see* Joint Decl. ¶ 43, they concede that "[t]he funds were not permitted to sell shares in the BVI. The Funds had no employees in the BVI. The Funds' directors never held any meetings in the BVI, and there were never any shareholder meetings. *Simply put, nothing was done in the BVI.*" Plfs' Consolidated Opposition to the Fairfield Greenwich Defs' Motions to Dismiss (filed Mar. 22, 2010), Doc. 411, at 47 (citations omitted and emphasis supplied); Declaration of Robert C. Finkel in Opposition to Defs' Motions to Dismiss the Complaint, dated Mar. 22, 2010, Doc. 405, ¶ 24 ("The Funds had no operations or employees in the BVI …."). *See also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 400 n.8 (S.D.N.Y. 2010) ("[A]side from the fact of incorporation," Sentry has "no connection to … the British Virgin Islands …. *** The forum with the greatest contact and interest in this action is New York, the jurisdiction where the fraud and other breaches of duty were masterminded.").

agreement providing for, *inter alia*, Sentry's future assignment of claims against its management to the Trustee. Derivative Plaintiffs have challenged the assignment, and have filed an application to withdraw the bankruptcy reference with respect to the assignment. *See In re Fairfield Sentry Ltd.*, No. 11-5905 (BSJ) (S.D.N.Y.). The application is *sub judice*.

Additionally, following issuance of the Recognition Order, the liquidators removed the Derivative Action to the bankruptcy court. The Derivative Plaintiffs then moved to remand the action to state court. That motion has been suspended by stipulation and order. *See* Order dated Oct. 7, 2010, in *Morning Mist Holdings Ltd. v. Fairfield Greenwich Group*, Adv. Pro. No. 10-3765 (BRL) (Bankr. S.D.N.Y.).

Derivative Plaintiffs have appealed the Recognition Order to the United State Court of Appeals for the Second Circuit. *See In re Fairfield Sentry Ltd.*, 11-4376-cv (2d Cir.). The appeal is *sub judice*.

## **THE PROPOSED SETTLEMENT**

The Proposed Settlement provides a recovery for a class of persons who, *inter alia*, owned shares of Sentry and suffered a "net loss" of principal. *See* Stipulation, at 18, § A(ss). Although Sentry itself is not a member of the settlement class, the settlement might be interpreted to preclude the Derivative Plaintiffs from pursuing the Derivative Action as against the FG Defendants. Class action settlements frequently release *class members' claims* with respect to the conduct challenged in the class action complaint. But here, the settlement contains a highly unusual provision that, broadly read, could purport to prevent class members from prosecuting derivative claims on behalf of non-class members (*e.g.,* Sentry). In the context of this case, that provision renders the settlement fundamentally flawed, for several reasons:

**First**, the Proposed Settlement settles and provides consideration only for "direct" claims against the FG Defendants by class members who owned Sentry and other funds, and suffered a

3

net loss of principal. "Direct" claims are those that arise solely in the investors' capacity as purchasers and holders of Sentry shares. *See SIPC v. Bernard L. Madoff Inv. Secs. LLC,* No. 12-9408 (VM), 2013 U.S. Dist. LEXIS 17457, at *10 (S.D.N.Y. Feb. 6, 2013) ("*SIPC v. BLMIS*") ("[T]he Anwar Plaintiffs' surviving claims are direct rather than derivative ....") (citing *Anwar*, 728 F. Supp. 2d at 400-02)); *see also* Remand Decision, 676 F. Supp. 2d at 297-98 (analyzing differences between direct claims and derivative claims); Letter of Robert C. Finkel, Esq. to the Court, dated Apr. 24, 2009 ("Finkel Ltr."), at 1-2 ("we are not asserting derivative claims at this time").

Nonetheless, the proposed release and injunction contemplated by the Settlement ("Release"), broadly read, might be deemed to prevent the Derivative Plaintiffs from prosecuting derivative claims *on behalf of Sentry* as against the FG Defendants. *See* Stipulation, at 15, § A.11 ("Released Claims" include claims related "directly or indirectly, to … (vii) any direct or indirect investment in BLMIS"); *id*. at 29, ¶ 24 (enjoining prosecution of any "Released Claim, either directly, representatively, *derivatively*, or in any other capacity, against any of the Released Parties") (emphasis supplied).[2] So read, the Release is grossly overreaching and violates the rule against "gratuitous releases" because the settlement provides no relief to Sentry.

**Second**, the Proposed Settlement was negotiated by class counsel and class representatives who cannot adequately represent the interests of Sentry.

**Third**, the settlement notice failed to disclose the Derivative Action, or that the Proposed Settlement, if approved, might prevent the continued prosecution of that action as against the FG Defendants. That omission is particularly glaring because the claims asserted *on behalf of Sentry*

---

[2] Objectors do not concede that approval of the Proposed Settlement would preclude their prosecution of the Derivative Action, but anticipate the FG Defendants would argue otherwise.

4

in the Derivative Action are far more valuable than the direct claims asserted on behalf of class members in this action.

## ARGUMENT

I. **THE COURT SHOULD REJECT THE PROPOSED SETTLEMENT**

   A. **The Gratuitous Release is Overreaching, Unfair and Unreasonable**

Because Sentry is not a class member and obtains no recovery under the Proposed Settlement, and the Release may prevent the Derivative Plaintiffs from prosecuting substantial claims *on behalf of Sentry*, the Proposed Settlement is unfair and unreasonable, warranting its rejection. *See Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 17 (2d Cir. 1981) (disapproving class action settlement that provided recoveries with respect to class members' claims involving liquidated futures contracts, because it also purported to release their claims involving unliquidated contracts); *In re Auction Houses Antitrust Litig.*, 2001 WL 170792, at *11 (S.D.N.Y. 2001), *aff'd*, 42 F. App'x 511 (2d Cir. 2002). The Release here, broadly read, is particularly troubling as it could prevent class members from pursuing claims on behalf of Sentry (a non-class member) -- even though those claims would *not* be extinguished if this case were litigated to trial. *See Nat'l Super Spuds*, 660 F.2d at 18 ("If a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either.").[3]

Disapproval of the Proposed Settlement is required even if its impact on the Derivative Action were slight. This Court's decision in *Auction Houses* is instructive. In that case, the Court disapproved the settlement of an antitrust action on behalf of class members who

---

[3] This case is far more egregious than *National Super Spuds*. In that case, the proposed settlement provided recoveries to class members at least with respect to their claims involving liquidated contracts. Here, Sentry gets no recovery whatsoever.

5

participated in domestic auctions, where the release (in violation of the *Super Spuds* doctrine), although not enjoining class members from suing on claims related to foreign auctions, precluded them doing so in U.S. courts and under U.S. law. *See Auction Houses*, 2001 WL 170792, at *11 (explaining that, under the disapproved settlement, class members "may claim the benefit of this settlement and sue abroad under applicable foreign law to recover injuries allegedly sustained abroad. All that is sought in exchange for the settlement consideration is a release of the right to pursue claims based on foreign auctions in courts in this country and under U.S. law in foreign courts."). Here, the Proposed Settlement is far more pernicious that the *Auction Houses* settlement insofar as it would enjoin class members from prosecuting the Derivative Action (*i.e.*, an action over which this Court has no subject matter jurisdiction), on behalf of a non-class member (Sentry), in *any* court (foreign or domestic), and under *any* law.

The Proposed Settlement is all the more problematical, given the fact that the enormous risks confronting the *Anwar* class claims underscore the strength of the claims asserted on behalf of Sentry in the Derivative Action. Those risks no doubt depressed the amount that the FG Defendants were willing to pay under the Proposed Settlement. *See* Joint Decl. ¶ 117-18 (estimating 4-6 percent class recovery before award of attorneys fees and expenses, although noting that class members' total losses are "currently unknown").

For example, in describing their "reasons for the settlement," Lead Counsel notes that the FG Defendants have raised, as among the "significant legal issues," "the *conflict* between direct and derivative claims …." Joint Decl. ¶ 128 (emphasis supplied); *see also id*., ¶ 11(g) (disputed issues include "whether Plaintiffs have standing to pursue their state law claims or whether those claims belong to the Funds"); *see generally* FG Defs' Memorandum of Law in Support of Motion to Dismiss the Second Consolidated Amended Complaint, Doc. 364, at 2 (stating that *Anwar* plaintiffs "lack standing" "because their injury -- loss in value of their shares -- is

6

derivative of injury sustained by the Funds."); *id*. at 12 n.16 (stating that dismissal of *Anwar* claims "will not deprive Plaintiffs of a vehicle to seek recovery. Action [sic] have been brought against FG Defendants … derivatively on behalf of … Sentry ….") (citing Derivative Action). The FG Defendants, maintaining that the state law claims of Sentry shareholders really belong to Sentry, have improperly structured a class action settlement -- with the acquiescence of Lead Counsel -- to block those claims.

The potential preemption of the class claims under the Securities Litigation Uniform Standards Act ("SLUSA") -- also regarded by Lead Counsel as a "significant legal issue[]," *see* Joint Decl. ¶ 128 -- further highlights the strength of the Derivative Action relative to this action. Indeed, developing case law under SLUSA could substantially jeopardize (and even require the complete dismissal of) the *Anwar* plaintiffs' state law claims. *See* Plaintiffs' Mem. in Support of Final Approval of the Proposed Settlement and Plan of Allocation, Doc. 1033 ("Approval Mem."), at 8 (SLUSA presents "novel and complex" issue); *id*. at 9 ("[The effect of SLUSA in a case involving a Ponzi scheme is presently before the Supreme Court…. An adverse decision could limit Plaintiffs' state law claims against the FG Defendants") (citation omitted). By its express terms, however, SLUSA is inapplicable to derivative suits. *See* 15 U.S.C. § 78bb(f)(5)(C); Remand Decision, 676 F. Supp. 2d at 299 n.12 (citing *Sung v. Wasserstein*, 415 F. Supp. 2d 393 (S.D.N.Y. 2006) (Marrero, J.)).

The fact that this case is subject to the stringent requirements of the Private Securities Litigation Reform Act ("PSLRA") further compounds the risks faced by the class plaintiffs. *See* Joint Decl. ¶ 128. The Derivative Action, however, asserts no securities claims and thus is not governed by the PSLRA. *See In re FirstEnergy S'holder Derivative Litig.*, 219 F.R.D. 584, 586 (N.D. Ohio 2004) ("The PSLRA, by its terms, is limited to actions filed under the federal securities laws and does not apply outside this context."); *Romero v. Career Educ. Corp.*, 2005

7

Del. Ch. LEXIS 112, at *11 (Del. Ch. July 19, 2005) (PSLRA "does not apply to … derivative suits").

Other critical distinctions between the two cases further demonstrate the strengths of the Derivative Action relative to this class action. For example, the risk that federal securities claims of Sentry shareholders may be "barred" under *National Australian Bank v. Morrison*, 130 S. Ct. 2869 (2010), Joint Decl. ¶ 11(i); *see also* Approval Mem. at 9, has no bearing on the Derivative Action, which asserts no federal securities claims.[4] Likewise, the risk that the *Anwar* plaintiffs would fail to obtain class certification -- although proffered as a factor favoring the settlement, *see* Joint Decl. ¶ 127; *id*. ¶ 12 (noting "complex" class certification issues) -- is irrelevant to the Derivative Action.

Given the significant differences between this case and the Derivative Action, and the fact that Lead Counsel's analysis of this case's potential *weaknesses* highlights the *strengths* of the Derivative Action, the Proposed Settlement should be rejected as Sentry "gain[s] nothing," *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) -- much less adequate consideration -- for the derivative claims, and the settlement might ultimately prevent Sentry from recovering anything on its valuable claims against the FG Defendants. *See Nat'l Super Spuds*, 660 F.2d at 18.

We anticipate that the settling parties will argue that Sentry's shareholders would be among the ultimate beneficiaries of the Derivative Action, and that the Proposed Settlement adequately compensates them for any release affecting the derivative claims.[5] That argument,

---

[4] *Morrison*'s impact could be significant, given Lead Counsel's analysis of the geographic locations of Sentry shareholders. *See* Corrected Declaration of Sashi Bach Boruchow in Support of Motion for Class Certification, Doc. 772, at ¶ 2, and Exh. 2.

[5] According to Lead Counsel, Sentry's shareholders include persons who are *not* members of the settlement class. *See* Joint Decl. ¶ 43.

8

however, misses the mark as it improperly conflates the derivative claims and the "direct" shareholder claims. Indeed, to the extent that Sentry shareholders would be beneficiaries of the Derivative Action, the Proposed Settlement represents *negative value*, since the derivative claims are enormously more valuable than the "direct" claims for which Sentry shareholders could recover under the Proposed Settlement. Although Lead Counsel state that they are acting to "maximize" investor returns (as well as the returns to "the Sentry estate"), *see* Joint Decl. ¶ 45 & n.10, they have accepted a settlement that that could do just the opposite.

The settling parties also might argue that the Release should be ignored for now, and litigated later in the Derivative Action. However, given the significant claims asserted in the Derivative Action, this Court should fully understand the Release before ruling on the Proposed Settlement, and any final judgment should be crystal clear as to its impact, if any, on the Derivative Action. Any ambiguity or uncertainty concerning the Release or its impact warrants rejection of the settlement. *Nat'l Super Spuds*, 660 F.2d at 16; *see Browning v. Yahoo! Inc.*, 2006 U.S. Dist. LEXIS 34770, at *8 (N.D. Cal. May 19, 2006) ("While the court feels it is important to know exactly who is in the class, it is even more important to know *who* and -- crucially -- *what* is being released. The language of the proposed release appears to be both vague and extremely sweeping[.]") (emphasis in original).[6]

---

[6] *See also W. End Capital Mgmt., LLC v. Pixelplus Co.*, 580 F. Supp. 2d 343, 344-45 (S.D.N.Y. 2008) (addressing objection to proposed bar order in class action settlement *prior to* dissemination of class notice and final settlement hearing: "Although the proposed bar order does not expressly speak of indemnification for [underwriters'] fees and expenses, it is agreed that the bar order is broad enough to cover such indemnification," and further noting that "[i]t was appropriate to deal with those objections *before* proceeding further.") (emphasis supplied).

9

### B. The Class's Lead Counsel and Plaintiffs Cannot Adequately Represent the Interests of Sentry

"The most fundamental principles underlying class actions limit the powers of the representative parties to the claims they possess in common with other members of the class." *See Nat'l Super Spuds*, 660 F.2d at 16. Thus, even assuming that the *Anwar* "direct" claims and the derivative claims in the Derivative Action "arose from the same factual predicate," *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 109 (2d Cir. 2005), a release of derivative claims is impermissible because the *Anwar* plaintiffs never asserted and were "never authorized" to pursue those claims. *See National Super Spuds*, 660 F.2d at 18; *see also SIPC v. BLMIS*, 2013 U.S. Dist. LEXIS, at *10; Finkel Ltr. at 1-2. Accordingly, any class settlement that purports to restrict anyone's ability to pursue derivative claims on behalf of Sentry must be rejected.

Moreover, any attempt by the *Anwar* plaintiffs and their counsel to represent Sentry's interests here would conflict with their representation of the *Anwar* class. *See Priestly v. Comrie*, 2007 U.S. Dist. LEXIS 87386, at *18-19 (S.D.N.Y. Nov. 27, 2007) (courts in the Second Circuit "have long found that plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest"; plaintiff's "attempt to advance derivative and direct claims in the same action is an impermissible conflict of interest that disqualifies her from maintaining this action.") (citations omitted).

The conflict is particularly problematical here because, according to Lead Counsel, the Proposed Settlement was driven largely by the FG Defendants' limited assets. *See* Joint Decl. ¶¶ 13, 131 (referencing FG Defendants' "depleted finances" and lack of insurance, and the "substantial potential difficulties in collecting a judgment"); Approval Mem. at 16. If the settlement is approved, those assets would be unavailable to satisfy the far stronger claims asserted in the Derivative Action. *See Brickman v. Tyco Toys, Inc.*, 731 F. Supp. 101, 108-09 (S.D.N.Y. 1990) (denying class certification due to plaintiff's assertion of both class and

derivative claims: "Substantial recovery on the class claim may reduce the potential recovery on behalf of the corporation on the derivative claim."); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626-27 (1997). Although the settlement provides some relief to class members, it gives absolutely nothing to Sentry.

### C. The Settlement Notice is Inadequate

The notice to settlement class members is inadequate because it fails to describe the Derivative Action, or disclose that the Release, broadly read, might bar the prosecution of the Derivative Action as against the FG Defendants. In *Wal-Mart*, the Second Circuit admonished settling parties to advise class members of other pending cases that might be impacted by a proposed class action settlement:

> We note, however, that class notices do sometimes include specific reference to pending actions. *See, e.g.,* [*In re*] *Auction Houses* [*Antitrust Litig.*], 2001 WL 170792, at *3-4 [(S.D.N.Y. Feb. 22, 2001), *aff'd*, 42 F. App'x 511 (2d Cir. 2002)]; *Fradette v. Am. Serv. Corp.*, 1979 WL 1756, *1 (S.D. Fla. Aug. 29, 1979) (finding information concerning "related litigation" in class notice to be material to a reasonable person). *Obviously, this information is helpful to class members. We strongly encourage the inclusion of such information in the future.*

396 F.3d at 116 n.22 (emphasis supplied).

Here, the settlement notice does not suffice, as it nowhere discloses the Derivative Action, or that the Release may bar prosecution of the derivative claims. *Compare with Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (settlement notice was adequate where it provided detailed description of related case and advised class members that participation in the settlement would preclude their participation in the related case).

The defective notice warrant rejection of the Proposed Settlement. *See Wal-Mart*, 396 F.3d at 116; *Nat'l Super Spuds,* 660 F.2d at 17 (reversing approval of class action settlement where class notice "referred only to claims based on liquidated contracts; it gave no indication

11

that the action would concern any other claims."); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 653 (S.D.N.Y. 2004) ("Because of its unreasonableness and lack of adequate notice, the Settlement Agreement could not be valid, and the release could not be enforced in this action, if the release has the meaning that Con Ed now asserts that [it] does.").

**II.    ALTERNATIVELY, ANY APPROVAL SHOULD REQUIRE A CARVE OUT OF THE DERIVATIVE ACTION**

Given the fundamental problems described above, any approval of the Proposed Settlement should be conditioned on a modified release that explicitly carves out the Derivative Action. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (remanding class action settlement to district court "to require the parties to clarify the language of the release provision in order to reflect their stated understanding …."); *Auction Houses*, 2001 WL 170792, at *18 (approval of class settlement conditioned on revised release).

## CONCLUSION

The Court should not approve the Proposed Settlement. Alternatively, the Court should condition any approval on a modified release that carves out the Derivative Action.

Dated: February 15, 2013

Respectfully submitted,

MILBERG LLP

By: /s/ Robert A. Wallner
    Robert A. Wallner
Kent A. Bronson
Kristi Stahnke McGregor
One Pennsylvania Plaza
New York, New York 10119
Tel.: (212) 594-5300
Fax: (212) 868-1229
rwallner@milberg.com
kbronson@milberg.com
kmcgregor@milberg.com

12

Stephen A. Weiss
Parvin Aminolroaya
SEEGER WEISS LLP
77 Water Street
New York, New York 10004
Tel.: (212) 584-0700
Fax: (212) 584-0799
sweiss@seegerweiss.com
paminolroaya@seegerweiss.com

*Attorneys for Objectors*

DOCS\652732v1

13