

# KLS  KACHROO LEGAL SERVICES, P.C.

Dr. Gaytri D. Kachroo
225R Concord Avenue
Cambridge, MA 02138
Telephone: (617) 864-0755
Facsimile (617) 864-1125
gkachroo@kachroolegal.com

May 30, 2013                           By Facsimile

Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/31/13

Re:   *Anwar, et al. v. Fairfield Greenwich, Ltd., et al.*, No. 09-CV-118 (S.D.N.Y.) – *Caso v. Standard Chartered Bank International (Americas) Ltd., et al.*, No. 10-CV-9196 (S.D.N.Y.)

Dear Judge Marrero:

We write on behalf of the putative class and class plaintiff Ricardo Rodriguez Caso in *Caso v. Standard Chartered Bank International (Americas) Ltd., et al.*, No. 10-CV-9196 (S.D.N.Y.), previously ordered to arbitration by this Court in a May 18, 2012 Order (the "Arbitration Order"). Well past the timelines established by the Local Rules, Standard Chartered Bank International (Americas) Ltd. ("Standard Chartered") seeks to reinterpret that Order, arguing that it requires Caso to arbitrate his claims on an individual basis. The Arbitration Order compels arbitration of all of Caso's claims because, as the Court held, the parties agreed to arbitrate "all controversies," including questions relating to the putative class. Thus, Standard Chartered is really seeking reconsideration, but motions for reconsideration must be served within fourteen (14) days after entry of the Court's determination of the original motion. *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 6.3. Furthermore, Standard Chartered's assertion that Caso is refusing to arbitrate under a written agreement for arbitration is a distortion, at best. It is Standard Chartered, not Caso, that is refusing to arbitrate, boycotting an American Arbitration Association ("AAA") administrative conference, and providing the AAA with misleading information about the scope of the arbitration. *See* Letter of Sharon Nelles to Jonathan Weed, attached as Exhibit A, and Caso's response, attached as Exhibit B.[1]

---

[1] Following the issuance of the Arbitration Order, the actions of the parties and the American Arbitration Association demonstrate that all parties understood that the Court had ordered "all controversies" related to this putative class action and all related issues to arbitration. Indeed, the American Arbitration Association upon receipt of the demand for arbitration, which included this Court's Order, assigned this matter to its class action section. The AAA notified the parties that the claim "involves a potential class action," referring them to the "Supplementary Rules for Class Arbitrations, as amended and effective October 8, 2003." The AAA also scheduled an administrative conference on May 22, 2013. Counsel for Caso appeared, but Standard Chartered failed to show, without explanation or notice, tying up Caso's counsel and the AAA case administrator for 45 minutes. *See* May 14, 2013 letter from Jonathan J. Weed, Manager of ADR Services, attached as Exhibit C.

Page | 2

As this Court will recall, the Court issued its Arbitration Order after considering multiple submissions from the parties about whether the two agreements at issue – the Application for Brokerage Account ("Brokerage Agreement") and the Nondiscretionary Investment Services Agreement ("NISA") – compelled or prohibited arbitration of Caso's putative class action. The NISA provided that in the event of any inconsistency between it and any other agreement, the NISA controlled. The Court found that the NISA and the Brokerage Agreement were inconsistent "because unlike the Brokerage Agreement, the NISA does not contain a clause prohibiting enforcement of arbitration against a putative class plaintiff. Rather, the NISA compels arbitration for 'all controversies.'" Arbitration Order at 3.

There is another critical inconsistency where the NISA again controls. Unlike the Brokerage Agreement, the NISA does not contain a clause prohibiting class arbitration and therefore, its referral of "all controversies" to arbitration includes putative class actions, as the Court aptly found. In short, nothing in the Order or the NISA supports Standard Chartered's assertion that Caso is required to arbitrate only his individual claims, thereby effectively leaving Caso without even an opportunity to demonstrate in any forum that the parties agreed to permit class arbitration.[2]

Further, as a matter of common sense, if the Court had ordered Caso to arbitrate his claims solely on an individual basis, the Order would undoubtedly have made that explicit, citing the contractual language and case law that compelled that conclusion. Instead, the Arbitration Order relies on the language in the NISA compelling arbitration of "all controversies" to conclude that there is "no impediment to arbitrability" of Caso's putative class action. Arbitration Order at 3. Standard Chartered's strained and implausible argument cannot overcome the Arbitration Order's reasoned explanation of why Caso's putative class action presents "no impediment to arbitrability," a point the Court would have found superfluous if it were ordering arbitration on only an individual basis, elsewhere prominently recognized by lead counsel for Standard Chartered.[3]

Standard Chartered's reliance on *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1776 n.10 (2010) is unavailing because the Supreme Court explicitly stated that it had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration." That case serves only to underscore that the Order in this case did not address, much less resolve, the myriad issues bearing on whether the parties agreed to permit class arbitration, including whether the parties agreed to submit that issue to the arbitrator. In light of the broad arbitration clause at issue here, this Court's Arbitration Order correctly left the determination of the parties' implicit or explicit agreement to class arbitration to the arbitrator. See Jock v. Sterling Jewelers, 646 F. 3d 113, 123-24 (2d Cir. 2011).

Standard Chartered's argument also cannot be squared with the law in this Circuit. The Second Circuit Court of Appeals very recently confirmed that an agreement such as the one at issue here clearly and unmistakably delegates such a question of arbitrability to the arbitrator. In *Emilio v. Sprint Spectrum*

---

[2] The Arbitration Order describes the claims brought by Caso as "a putative class action consolidated with a number of other lawsuits into the above captioned multi-district litigation, No. 09 Civ. 0118", distinguishing this case from those brought by other plaintiffs with similar arbitration clauses proceeding individually. In those individual cases, Standard Chartered waived the arbitration clause, but strategically chose not to do so with Caso because he represented a putative class, with all of its ramifications. Note that recently, the Fairfield class action represented by plaintiff Anwar reached a settlement in this court.

[3] Standard Chartered's lead counsel, Sharon Nelles, similarly interpreted the Arbitration Order. In her biography on the Sullivan & Cromwell website, she claims to have "successfully sent [this] class action to arbitration."

*L.P.*, 2013 U.S. App. LEXIS 1256, *2-3 (January 18, 2013, 2nd Cir.), the arbitration clause at issue stated that "the then-applicable rules of JAMS will apply," specifically JAMS's "expedited procedures." Those Rules and Procedures provided that the arbitrator "has authority to determine jurisdiction and arbitrability issues as a preliminary matter," which were defined to include "disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration." *Id.* at *2. Relying on that JAMS rule, the Court concluded that "the parties had clearly committed gateway questions of arbitrability to the arbitrator. *Id.* at *2. Because the enforceability of the class action waiver was such a gateway issue of arbitrability, "the district court was not free to decide that question for itself.").

Here, too, the parties clearly and unmistakably committed gateway questions of arbitrability to the arbitrator, such as whether the applicable arbitration agreement permits class arbitration. As in *Emilio*, the parties agreed in the NISA to arbitrate "all controversies" between them "in accordance with the rules of the American Arbitration Association." (Docket No. 880, Ex. B ¶ 9(a)). The American Arbitration Association's Supplementary Rules for Class Arbitrations ("SRCA"), which apply "to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class" (SCRA, Rule 1), provide in pertinent part:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award").

SCRA, Rule 3. If, as Standard Chartered argues, this Court had ordered Caso to arbitrate on an individual basis, the Court would have been deciding an issue that it "was not free to decide . . . for itself." *Emilio*, 2013 U.S. App. LEXIS 1256, *3. The Arbitration Order appropriately leaves this question of arbitrability to the arbitrator, as the parties clearly and unmistakably intended.

For the foregoing reasons, class plaintiff Caso, on behalf of himself and the putative class, requests that the Court deny Standard Chartered's request for relief and compel Standard Chartered to arbitrate "all controversies," as it agreed to do, including all class issues. Class plaintiff Caso also requests permission to reply to any response by Standard Chartered to this letter, if so permitted by the Court.

Respectfully submitted,

Gaytri D. Kachroo

cc:  Sharon L. Nelles (by email)
     David S. Stone (by email)
     Mark Schirmer (by email)

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Plaintiff Ricardo Rodriguez Caso.
>
> SO ORDERED.
>
> 5-31-13
> DATE
>
> VICTOR MARRERO, U.S.D.J.

**A**

Letter of Sharon Nelles to Jonathan Weed

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 30, 2013

<u>Via E-mail</u>

Jonathan Weed, Manager of ADR Services,
    American Arbitration Association,
        950 Warren Avenue,
            East Providence, Rhode Island 02914-1414.

Re:    *Caso v. Standard Chartered Bank,* No. 11 516 Y 653 13

Dear Mr. Weed:

I write on behalf of Standard Chartered Bank International (Americas) Ltd. (the "Bank") in connection with the administrative conferenced scheduled for tomorrow, May 29, 2013, in above-referenced arbitration. As noted in your May 14, 2013 letter, the Claimant's statement of claim and demand for arbitration suggest that this matter "involves a potential class arbitration." (May 14, 2013 Letter at 2.) As you are aware, the Claimant first brought his action in the United States District Court for the Southern District of New York. On May 18, 2012, the Honorable Judge Victor Marrero granted the Bank's motion to compel *individual* arbitration of Claimant's claims. A copy of that order was submitted to the AAA by Claimant together with his demand for arbitration and statement of claim.

Claimant's action in federal court has been stayed in light of that order, and Judge Marrero retains jurisdiction over that action. On May 24, 2013, the Bank sought relief from Judge Marrero, specifically to enforce the Court's May 18, 2012 Order, or otherwise compel Claimant to arbitrate his claims on an individual basis. I am enclosing a copy of the letter the Bank submitted to the Court. Claimant has not opposed the relief the Bank requested (under the Court's rules, Claimant had until Wednesday, May 29, 2013 to do so). In light of the Bank's motion, we asked Claimant's counsel to

Jonathan Weed, Manager of ADR Services                                        -2-

agree to stay this arbitration pending resolution of this issue in court. We have not yet received a response.

Respectfully submitted,

*Sharon L. Nelles*

Sharon L. Nelles

(Enclosure)

cc:    Gaytri Kachroo

       David Stone

       David Boies

Caso Response

B

# STONE 🔲 MAGNANINI
## LLP

COMPLEX COMMERCIAL LITIGATION

**NEW JERSEY OFFICES**    150 JFK Parkway, Short Hills, NJ 07078    P 973.218.1111    F 973.218.1106

May 30, 2013

Via Email: JonathanWeed@adr.org

Mr. Jonathan Weed
Manager of ADR Services
American Arbitration Association
950 Warren Avenue
East Providence, RI  02914-1414

<u>Caso v. Standard Chartered Bank: No 11 516 Y 653 13</u>

Dear Mr. Weed:

We are in receipt of the respondent's letter dated today, May 30, 2013. We write to advise you of several inaccuracies in that letter.

That letter states that Caso has not opposed defendants' application which was filed with Judge Marrero to clarify his arbitration order and that such response was due on May 29, 2013. Both of those statements are false.

Attached as "Exhibit A" hereto is a true and correct copy of the Pacer entry #70 entered by Judge Marrero, provided by the plaintiff, giving until May 30, 2013 to respond to respondent's application. We fully intend to respond today and oppose such application which we believe is completely without merit. The Association is correct that Judge Marrero ordered all issues pertaining to this putative class action to arbitration. We will provide a courtesy copy of our response to the Association since the defendants have chosen to provide you with a copy of their application.

Thank you for your assistance in this matter.

Yours sincerely,

David S. Stone

DSS:ddt
Enclosure
cc:    Gaytri Kachroo, Esq.
       Mark Schirmer, Esq.
       Sharon Nelles, Esq.

{00046272:v1}
**NEW YORK OFFICES**    575 Lexington Avenue, New York NY 10022    P 212.644.5854
www.stonemagnalaw.com    www.false-claims.net

May 14, 2013 Letter from Jonathan Weed                                    C

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*

May 14, 2013

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

**VIA E-MAIL**

David S. Stone, Esq.
David B. Harrison, Esq.
Daniel I. Mee, Esq.
Stone Magnanini, LLP
150 JFK Parkway
4th Floor
Stone Hills, NJ 07078

Dr. Gaytri D. Kachroo
Kachroo Legal Services
219 Concord Avenue
Cambridge, MA 02138

David Boies, Esq.
Timothy D. Battin, Esq.
Mark J. Schirmer, Esq.
Straus & Boies, LLP
4041 University Drive
5th Floor
Fairfax, VA 22030

Sharon Nelles, Esq.
Sullivan & Cromwell, LLP
125 Broad Street
New York, NY 10004-2498

Re: 11 516 Y 00653 13
    Ricardo Rodriguez Caso, On behalf of themselves
    and all other similarly situated
    and
    Standard Chartered Bank PLC

Dear Counsel:

Thank you for choosing the American Arbitration Association (AAA) to assist you in resolving your dispute. The AAA is committed to providing you with the highest level of service in order to facilitate the resolution of your dispute. As Manager of ADR Services for the American Arbitration Association, I will be your primary contact for this matter and am here to serve as your resource during the administration of your case. Please do not hesitate to contact me directly with any questions, issues, or concerns. Please note, my staff will be assisting me throughout the administration of the case to ensure that it is handled efficiently and expeditiously. Accordingly, there may be times when you are contacted, on my behalf, by a member of my staff. My staff is comprised of Hannah Cook, Case Administrator, and Rachanda Miller, Case Administrator.

This will acknowledge receipt on May 9, 2013 of a Demand for Arbitration dated May 3, 2013, providing for administration of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by the American Arbitration Association (the

Association). We understand that a copy was sent to Respondent. We note that the claim involves a potential class action. Copies of our Commercial Arbitration Rules and Mediation Procedures, Rules Amended and Effective June 1, 2009, Fee Schedule Amended and Effective June 1, 2010, as well as the Supplementary Rules for Class Arbitrations as amended and effective October 8, 2003, may be obtained from our website at www.adr.org.

I have included the Class Arbitration Information Sheet, which provides you with some basic information about the AAA's arbitration process and sets forth some initial dates by which certain steps should be completed by the parties. We call your attention to Section 9 of the Supplementary Rules for Class Arbitrations, which states in part:

> *All class arbitration hearings and filings may be made public.*

Therefore, the parties are encouraged to review their filings for confidential or sensitive information, including all pleadings, and take whatever steps are necessary, including redacting their pleadings to avoid the disclosure of any privileged or otherwise confidential information. The administration of the case shall be conducted by the AAA with the appropriate party representatives. We shall direct all other inquiries to the AAA Class Action Docket on our website (www.adr.org).

Pursuant to the applicable arbitration agreement, the hearing will be held in Miami-Dade County, FL. Please review the Rules regarding the locale of hearings. Also, in accordance with the Rules, if Respondent does not answer on or before May 29, 2013, we will assume that the claim is denied. If Respondent wishes to counterclaim, file two copies, together with the administrative fee, to my attention. A copy should also be directly sent to Claimant.

This will confirm an Administrative Conference is scheduled on May 22, 2013 at 2:00 PM via conference call. Please dial in to the conference call by using the following telephone number and security code:

> Telephone: (888) 537-7715
> Security Code: 43775158#

Please note that the Case Administrator will not initiate the conference call. All participants are requested to dial in at the above time in order to ensure that the call may begin promptly. For your convenience, the enclosed Class Arbitration Information Sheet covers items to be discussed on the call.

In order to assist the arbitrator(s) with providing full disclosures, I have enclosed a Checklist for Conflicts to list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. The checklist should only be sent to the AAA and should not be exchanged between the parties. The Conflicts Checklist is due on or before May 29, 2013. An online Conflicts Checklist function is available for clients using WebFile, our web-based case management tool. If you do not have a WebFile account, please contact your case manager.

The parties' attention is directed to 1-3.11 and 4-5.5 of the Rules Regulating The Florida Bar ("Rules"). As of January 1, 2006, the Rules permit a lawyer admitted to practice in a jurisdiction other than Florida to represent a party in a Florida arbitration, provided that certain administrative requirements are met. In particular, the Rules require the non-Florida attorney to file a verified statement with The Florida Bar and opposing counsel which provides information regarding that attorney's practice, prior participation in Florida arbitrations, disciplinary record in other states, information regarding the representation at issue in the arbitration and the payment of a $250 filing fee to the Florida Bar.

The Rules provide additional information and impose additional requirements on non-Florida attorneys representing parties in Florida arbitrations. The Rules may be obtained from the Florida bar's website, www.floridabar.org

The AAA brings this matter to your attention so that the parties and their counsel will take the appropriate steps to comply with the Rules.

Please feel free to contact me, should you have any questions or concerns. We look forward to assisting you in this matter.

Sincerely,


Jonathan J. Weed
Manager of ADR Services
401 431 4721
Jonathanweed@adr.org

**Class Arbitration Information Sheet**

This document provides information about your upcoming arbitration and the expectations concerning each party's conduct throughout the process. Please save this information sheet so that you may refer to it throughout the arbitration.

Both the Commercial Arbitration Rules and Mediation Procedures, Rules Amended and Effective June 1, 2009, Fee Schedule Amended and Effective June 1, 2010, and the Supplementary Rules for Class Arbitrations (SRCA), as amended and in effect October 8, 2003, govern this matter; where inconsistencies exist between the Supplementary Rules and the other AAA rules that apply to the dispute, the Supplementary Rules will govern.

Please also note that the SRCA consist of the following phases:

1. Clause Construction Phase: During this phase the arbitrator will decide whether the parties' arbitration agreement allows for class action. If the arbitrator determines the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class, the arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. If the arbitrator determines that the agreement does not allow for class action, this matter will be closed after the stay period. See SRCA Section 3.

2. The Class Certification Phase: During this phase the arbitrator will determine whether to certify the class or not. If the arbitrator finds certification of the class is not warranted, the matter will be closed. If Claimant wishes to pursue individual claims, he/ she must re-file the individual dispute. However, if the arbitrator certifies the class, the case will move to the Class Determination Phase.. See SRCA Section 4.

3. The Class Determination Phase: During this phase the arbitrator will define the class, identify the class representative(s) and counsel, and shall set forth the class claims, issues, or defenses. The Class Determination Award shall state when and how members of the class may be excluded from the class arbitration. If an arbitrator concludes that some exceptional circumstance, such as the need to resolve claims seeking injunctive relief or claims to a limited fund, makes it inappropriate to allow class members to request exclusion, the Class Determination Award shall explain the reasons for that conclusion. The arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award. See SRCA Section 5.

Once the above phases have been completed, hearings will be scheduled and held for the purpose of determining the merits of the issues.

<u>Administrative Conference</u>

The AAA may conduct an administrative conference with the parties to identify and establish expectations of this process. The conference may be used for parties to agree on ways to tailor the process to meet the needs of the specific case and ask questions. Please be prepared to discuss the following:

- Review of the SRCA provisions
- Applicability of any other Procedures set forth in the rules

- Arbitrator Selection Process
- Due date for Answer/ Counterclaim
- Costs
- Verification of party and representative information
- Guidelines for communication
- Accelerated Exchange Program
- Class Arbitration Docket

## Exchange of Correspondence and Documents

It is also important to note that, unless specifically directed otherwise, the parties must exchange copies of all correspondence during the course of the arbitration. The two exceptions are the Checklist for Conflicts mentioned above and the party's arbitrator ranking list, which you will receive further information on during the course of the arbitrator appointment process.  The parties only need to send copies of documents, such as discovery, to the AAA if the document is to be transmitted to the arbitrator for a determination.

Documents such as the Demand and amended claims may be posted to the AAA Class Action Docket for this matter. Therefore, the parties are encouraged to review their filings for confidential or sensitive information, including all pleadings, and take whatever steps are necessary, including redacting their pleadings to avoid the disclosure of any privileged or otherwise confidential information.

## Timeliness of Filings

Please pay particular attention to response dates included on any correspondence.  If you need an extension to any deadline, please contact the other party to reach an agreement.  In the event you are unable to agree, the AAA or the arbitrator will determine if an extension will be granted. Requests for extensions must be received prior to the expiration of any existing deadline.

## AAA WebFile

We invite the parties to visit our website to learn more about how to file and manage your cases online. As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, including:

- Review, modify, or add new claims
- Complete the Checklist for Conflicts form
- View invoices and submit payment
- Share and manage documents
- Strike and rank list of neutrals
- Review case status or hearing dates and times

AAA WebFile provides flexibility because it allows you to work online as your schedule permits - day or night. Cases originally filed in the traditional offline manner may also be viewed and managed online. If the case does not show up when you log in, you may request access to the case through WebFile. Your request will be processed within one business day after review by your case manager.

# AMERICAN ARBITRATION ASSOCIATION
## CHECKLIST FOR CONFLICTS

In the Matter of the Arbitration between:

Re: 11 516 Y 00653 13
    Ricardo Rodriguez Caso, On behalf of themselves
    and all other similarly situated
    and
    Standard Chartered Bank PLC

CASE MANAGER: Jonathan J. Weed
DATE: May 14, 2013

To avoid the possibility of a last-minute disclosure and/or disqualification of the arbitrator pursuant to the rules, we must advise the arbitrator of the names of all persons, firms, companies or other entities involved in this matter. Please list below all interested parties in this case, including, but not limited to, witnesses, consultants, and attorneys. In order to avoid conflicts of interest, parties are requested to also list subsidiary and other related entities. This form will only be used as a list for conflicts, not a preliminary or final witness list. Please note that the AAA will not divulge this information to the opposing party, and the parties are not required to exchange this list. This form will, however, be submitted to the arbitrator, together with the filing papers. You should be aware that arbitrators will need to divulge any relevant information in order to make appropriate and necessary disclosures in accordance with the applicable arbitration rules.

An online Conflicts Checklist function is available for clients using WebFile, our web-based case management tool. If you do not have a WebFile account, please contact your case manager.

**NAME**　　　　　　　　　**AFFILIATION**　　　　　　　　　**ADDRESS**

DATED: _____　　PARTY: _____

                                          Please Print