# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/11/2013

JUN 10 2013

June 10, 2013

By Hand

The Honorable Frank Maas,
  United States Magistrate Judge,
    Daniel Patrick Moynihan United States Courthouse,
    500 Pearl Street,
      New York, New York 10007.

  Re:  *Anwar v. Fairfield Greenwich Ltd.*,
       No. 09-CV-118 (S.D.N.Y.) – Standard Chartered Cases

Dear Judge Maas:

> The Court will hold a telephone conference on 6/14/13 at 3pm. If this date and time are not convenient, counsel should place a conference call to Chambers by noon on 6/13 to reschedule.
>
> /s/ Maas, USMJ, 6/10/13

We write on behalf of the Standard Chartered Defendants ("Standard Chartered") to request a conference with the Court concerning expert discovery. In the wake of the rulings by Your Honor and Judge Marrero regarding rebuttal expert reports, the Standard Chartered Plaintiffs' Steering Committee (the "Steering Committee") served rebuttal reports on March 20, 2013, and Standard Chartered served a sur-rebuttal report on May 17. The last remaining obstacle to expert depositions is the production of documents as part of expert discovery. Unfortunately, plaintiffs have objected to producing *any* documents concerning their designated experts, which prompts this request for relief.

On May 1, Standard Chartered served Rule 34 document requests on plaintiffs, seeking documents concerning the opinions set out in the reports of their designated experts, George Martin and Robert Picard. Plaintiffs have refused to produce anything but simultaneously have sought discovery from Standard Chartered's experts that far exceeds the limitations set out in Rule 26(a)(2)(B). In fairness, document discovery regarding the parties' experts should not be a one-way process where plaintiffs produce nothing while seeking burdensome discovery from Standard Chartered's experts. Standard Chartered thus asks that the Court compel plaintiffs to produce documents responsive to Standard Chartered's expert discovery requests, which seek documents relating to the six categories of expert-related information discoverable under Rule 26(a)(2)(B).

A.  **Standard Chartered's Requests for Production Seek Documents Within Rule 26's Limited Scope of Expert Discovery.**

Although document discovery relating to expert witnesses is more limited than discovery from fact witnesses, Rule 26(a)(2)(B) requires the disclosure of six specific categories of information pertaining to expert witnesses: (i) the expert report itself; (ii) "the facts or data

The Honorable Frank Maas                                                                                            -2-

considered by the" expert; (iii) "any exhibits that will be used" by the expert; (iv) the expert's "qualifications, including a list of . . . publications authored in the previous 10 years"; (v) "a list of . . . other cases in which, during the previous 4 years, the [expert] testified" ; and (vi) a statement regarding the expert's compensation in the case. *See* Rule 26(a)(2)(B)(i)-(vi).

Consistent with the above categories of information, Standard Chartered sought the production of expert-related documents by serving Rule 34 document requests on the Steering Committee, which is expressly authorized to accept service of discovery requests on behalf of all plaintiffs. (Stipulation & Order Appointing Steering Committee (Dkt. No. 602) at 3.) Standard Chartered's document requests seek documents, data, and factual information concerning Messrs. Martin's and Picard's compensation, opinions and analyses, and communications with plaintiffs, witnesses, and one another. (*See* Standard Chartered's Requests for Prod. of Docs. Concerning Pls.' Experts, attached as Exs. A (Martin) and B (Picard).) The requested information falls within the categories of documents required by Rule 26(a)(2)(B) and thus is within the proper scope of expert discovery.

### B. Plaintiffs Have No Legitimate Basis for Their Refusal To Produce Responsive Documents and Should be Compelled To Do So.

On May 16, 2013, plaintiffs served a two-page response to Standard Chartered's requests, a copy of which is attached as Exhibit C. Plaintiffs objected to producing anything on the grounds that the requests (i) "were submitted after the end of the discovery period"; (ii) should have been made in the form of Rule 45 subpoenas, rather than Rule 34 document requests; (iii) "were submitted in bad faith and with the purpose of delay and obfuscation"; and (iv) "impose undue burdens on the Plaintiffs." These four objections can be easily addressed.

First, Standard Chartered's expert discovery requests were timely. They were served shortly after the receipt of plaintiffs' rebuttal expert reports and before Standard Chartered served its sur-rebuttal report on May 17. Had Standard Chartered served its expert discovery requests during the fact discovery period—as plaintiffs contend should have been done—plaintiffs undoubtedly, and rightly, would have objected that the requests were premature. Under the scheduling order, the period for conducting expert depositions began on May 17 and runs through August 15. (*See* Second Am. Scheduling Order, Feb. 4, 2011 (Dkt. No. 609) ¶ 12.) Standard Chartered served its discovery requests before that period even began; they are timely.

Second, nothing requires the use of Rule 45 subpoenas to experts rather than document requests pursuant to Rule 34. Rule 34(a)(1) states that "[a] party may serve on any other party a request . . . to produce . . . items in the responding party's possession, custody or control." That is what Standard Chartered did. Plaintiffs cannot seriously dispute their ability to obtain from their experts the documents called for by Standard Chartered's document requests. Rather than serving Rule 34 document requests, plaintiffs elected to serve Rule 45 subpoenas, and Standard Chartered's counsel agreed to accept service of those subpoenas. But that agreement does not mean that Rule 45 is the sole mechanism for obtaining expert discovery.[1] In

---

[1]   In fact, at least one court in this District has held that "routine use of subpoenas directed to a party's expert is inappropriate." *Pope v. City of New York*, No. 10-CV-4118, 2012 WL 555997, at *1 (S.D.N.Y. Feb. 10, 2012).

The Honorable Frank Maas                                                              -3-

any event, plaintiffs' demand that Standard Chartered serve Rule 45 subpoenas is disingenuous. In an effort to avoid involving the Court, Standard Chartered inquired whether plaintiffs would be willing to either deem Standard Chartered's Rule 34 requests to be subpoenas or would respond if Standard Chartered served subpoenas seeking the same information. Plaintiffs did not respond, making clear that they will produce nothing unless this Court compels them to do so.

Third, plaintiffs have no basis to assert that Standard Chartered's expert discovery requests amount to "bad faith" or seek "delay and obfuscation." To the contrary, the requests seek narrow categories of information clearly contemplated under Rule 26.

Finally, the requests impose no "undue burdens" on plaintiffs. Plaintiffs have no legitimate basis for making such a claim because all the requested documents are within the proper scope of expert discovery. Plaintiffs also cannot claim it is burdensome to produce the categories of documents required by Rule 26(a)(2)(B), while at the same time demanding that Standard Chartered's experts produce detailed accounts of their professional histories, their classroom handouts, and all comments or documents tangentially related to Bernard Madoff.

To avoid unnecessary disputes, the parties to the underlying action in *Anwar v. Fairfield Greenwich Ltd.* stipulated, and this Court ordered, that expert document discovery in that litigation shall consist of (i) final expert reports; (ii) facts or data, or documents identified in the report that the expert relied on in forming his opinions; (iii) assumptions that were provided to the expert and relied upon in forming his opinions; (iv) communications between experts "concerning matters addressed in the reports"; and (v) the experts' engagement letters and compensation agreements. (Stipulation Concerning Expert Discovery (Dkt. No. 1115) (the "Expert Discovery Stipulation") ¶ 1.) Standard Chartered's expert discovery requests to plaintiffs are consistent with these categories.[2] Standard Chartered thus respectfully requests that the Court compel plaintiffs to promptly produce all documents called for by Standard Chartered's discovery requests.

Respectfully submitted,

*/s/ Bradley P. Smith*
Bradley P. Smith

(Attachments)

cc:   Standard Chartered Plaintiffs' Steering Committee (via E-mail)

---

[2] The Expert Discovery Stipulation limits discovery to information "relied upon by the expert in forming an opinion." (Expert Discovery Stipulation ¶ 1.) Standard Chartered's requests seek, consistent with Rule 26(a)(2)(B), information "considered by" the expert in forming an opinion. Standard Chartered's requests also do not so narrowly limit discovery of communications to only those between experts. (Expert Discovery Stipulation ¶ 1(e); *see* Ex. A, Request Nos. 20-22, 24-26; Ex. B, Request Nos. 6-8, 10-12.) If plaintiffs would agree, however, Standard Chartered is amenable to limiting all expert discovery from both sides to the categories of documents set forth in paragraph one of the Expert Discovery Stipulation.