# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PASHA S. ANWAR, *et al.*,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>FAIRFIELD GREENWICH LIMITED, *et al.*,<br><br>　　　　　　　　　　　Defendants.<br><br>This Document Relates To: The Standard Chartered Cases | Master File No. 09-cv-118 (VM) (FM) |

## THE STANDARD CHARTERED DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS CONCERNING GEORGE A MARTIN

　　　　　Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules"), defendants Standard Chartered Bank International (Americas) Limited and Standard Chartered PLC (the "Standard Chartered Defendants") hereby request that within 30 days from the date of service of this First Set of Requests for Production (the "Requests"), plaintiffs in the Standard Chartered Cases in the above-captioned action produce the documents specified in the Requests below at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, in the manner agreed to by the parties, and in accordance with the Definitions and Instructions set forth below.

-1-

## DEFINITIONS

1. The defined terms of this Court as set forth in Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules") are incorporated by reference herein.

2. "Action" means any and all actions pending in the multidistrict litigation consolidated under the caption *Anwar v. Fairfield Greenwich Limited*, No. 09-CV-118 (S.D.N.Y.), including but not limited to the Standard Chartered Cases, as those cases are defined in the Second Amended Scheduling Order Regarding Standard Chartered Cases, entered by the Court on February 4, 2011 (Dkt # 602).

3. "All" means any and all.

4. "BLMIS" refers to Bernard L. Madoff Investment Securities LLC, or any of its employees, agents, owners or affiliates.

5. "Document(s)" is intended to be interpreted in the broadest possible meaning accorded to it under Rules 34 and 45 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 26.3 of the Local Rules.

6. "Sentry" refers to Fairfield Sentry Ltd., or any share or interest thereof.

7. "Martin" refers to George A. Martin, who is providing testimony on behalf of plaintiffs in the Standard Chartered Cases in the above-captioned action.

8. "Martin Report" refers to the Expert Report of George A. Martin on Behalf of Standard Chartered Plaintiffs, including all attachments and appendices, dated August 2, 2012.

9. "Martin Sur-Rebuttal Report" refers to the Expert Sur-Rebuttal Report of George A. Martin on Behalf of Standard Chartered Plaintiffs, including all attachments and appendices, dated March 20, 2013.

10. To the extent not defined above, all terms in these Requests for Production (the "Requests") shall be given their plain and ordinary meaning.

## INSTRUCTIONS

A. The rules of construction of this Court as set forth in Rule 26.3 of the Local Rules are incorporated by reference herein.

B. Each Request shall be construed according to its terms and shall not be limited with reference to any other Request.

C. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request any response or document that might otherwise be construed to be outside its scope.

D. You shall produce all Documents within your possession, custody or control, including but not limited to all Documents reasonably accessible to you via the Internet, electronic mail or by making a written or oral request to a third party.

E. All electronic data or data compilations shall be produced in the same form or format in which it was used for Martin's analyses or calculations, in working form with all links to other spreadsheets and/or underlying active data, and any programs or intermediate analyses that were used as part of Martin's analyses or calculations or reported results.

F. If you object to any Request, state with specificity the grounds for each objection and the Request or Requests to which the objection applies. An objection to part of any Request must specify the part to which the objection applies. Documents shall be produced for any Request to which an objection is made insofar as it is not deemed objectionable.

G.   If you object to any Request on the ground that it is overly broad, state in your response: (i) how you narrowed the Request, and (ii) the reason(s) why you claim the Request is overly broad.

H.   In construing these Requests: (i) masculine, feminine or neuter pronouns shall not exclude other genders; (ii) the present tense includes the past and future tenses; (iii) the term "including" shall not be construed to limit the scope of any of the Requests; (iv) all Requests should be interpreted in a manner that makes them inclusive rather than exclusive; and (v) to the extent multiple Requests seek the same information, and some of those Requests are made with a greater level of specificity than others, the presence of the more specific Requests shall not serve as a basis for interpreting the more general Requests narrowly.

I.   All drafts of responsive Documents, as well as non-identical copies, should be produced.

J.   In answering the Requests, if you claim any form of privilege or protection for another reason, whether based on statute or otherwise, as a ground for not producing any requested document, furnish a list identifying each such document and providing the information required by Rule 45 of the Federal Rules.

K.   If you assert that any requested document has been lost, destroyed, or discarded, that document should be identified in your response by author, addressee, indicated or blind copies, and all others to whom the document was distributed, date, subject matter, number of pages and attachments or appendices, date of loss, destruction or discarding and the circumstances of the loss, destruction or discarding.

L.  The Requests shall be deemed continuing so as to require prompt supplemental or amended responses if you obtain or discover additional Documents between the time of initial production and the final disposition of this action.

## REQUESTS TO GEORGE A. MARTIN

1. All documents Martin considered in forming the opinions set forth in the Martin Report or the Martin Sur-Rebuttal Report.

2. All data used to generate Figure 1 in the Martin Report.

3. All data used to generate Figure 2 in the Martin Report.

4. All data used to calculate "alpha" and "beta" of Sentry, as referenced on page 9 of the Martin Report.

5. All data used to generate Figure 3 in the Martin Report.

6. All data used to generate Figure 4 in the Martin Report.

7. All data used to generate the charts contained in Appendix C to the Martin Report.

8. All documents Martin relied on to support the contention "that the typical Sharpe ratio of a 'good' manager engaged in directional trading of liquid assets would be closer to 1.00 in the long run, with such managers trading a portfolio of potentially uncorrelated assets," as set forth on page 11 of the Martin Report.

9. All data used in the calculations described in footnote 9 on page 7 of the Martin Sur-Rebuttal Report.

10. All documents Martin relied on to support the contention that the "correct currency" denomination for the Cazenove UK Equity Absolute Return Fund, series A, is GBP, as described on page 9 of the Martin Sur-Rebuttal Report.

11. All data used to calculate the Sharpe Ratios of the Cazenove UK Equity Absolute Return Fund, series A, as described on page 9 of the Martin Sur-Rebuttal Report.

12. All documents Martin relied on to support the contention that "GATEX has much *wider flexibility* in the assets that it can hold – not being restricted just to OEX equities," as set forth on page 11 of the Martin Sur-Rebuttal Report.

13. Documents sufficient to identify the "many market practitioners who attempted to implement similar collar based strategies," as referred to in footnote 21 on page 11 of the Martin Sur-Rebuttal Report.

14. All data Martin relied on to support the alpha calculations described on page 14 of the Martin Sur-Rebuttal Report.

15. All data Martin relied on to support the contentions made on page 14 of the Martin Sur-Rebuttal Report concerning the percentage of months that Sentry was profitable and the S&P 100 was up.

16. Documents sufficient to identify all of the investors, asset management firms and investment funds that "invested with Madoff," as described in your article "Who Invested with Madoff? A Flash Analysis of Funds of Funds," Journal of Alternative Investments, Summer 2009, p. 76.

17. All documents concerning the due diligence conducted on Madoff by the investors, asset management firms and investment funds identified in response to Request 17.

18. All documents concerning Martin's characterization, impression or description of the results reported in the article "Who Invested with Madoff? A Flash Analysis of Funds of Funds," Journal of Alternative Investments, Summer 2009, p. 76.

19. Documents sufficient to show Martin's compensation, including total hours billed, as an expert or consultant in the Action.

20. All communications identifying any facts or data that Martin considered in forming the opinions expressed in the Martin Report or the Martin Sur-Rebuttal Report.

21. All communications concerning any assumptions provided to Martin and that Martin considered in forming the opinions expressed in the Martin Report or the Martin Sur-Rebuttal Report.

22. Excluding communications with counsel for plaintiffs in the Action, all communications between Martin and Robert A. Picard concerning the Action, including but not limited to any expert opinions in the Action.

23. All drafts of the reports of Robert A. Picard that Martin reviewed and considered in forming the opinions expressed in the Martin Report or the Martin Sur-Reubttal Report.

24. Excluding communications with counsel for plaintiffs in the Action, all communications between Martin and any testifying witness or expert in the Action concerning the Action.

25. Excluding communications with counsel for plaintiffs in the Action, all communications between Martin and any of the Standard Chartered Plaintiffs or their representatives.

26. Excluding communications with counsel for plaintiffs in the Action, all communications between Martin and any person concerning Bernard Madoff, Fairfield Sentry, or any other investment that had some or all of its assets purportedly managed by BLMIS.

Dated: New York, New York
      May 1, 2013

Respectfully submitted,

*/s/ Sharon L. Nelles*

Sharon L. Nelles
Bradley P. Smith
Patrick B. Berarducci
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (telephone)
(212) 558-3588 (facsimile)

Diane L. McGimsey
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California  90067
(310) 712-6600 (telephone)
(310) 712-8800 (facsimile)

*Attorneys for Standard Chartered Bank International (Americas) Limited and Standard Chartered PLC*