UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANWAR, et al.,

                    Plaintiffs,

            - against -

FAIRFIELD GREENWICH LIMITED, et al.,

                  Defendants.

This Document Relates To:  All Actions

MASTER FILE NO.
09-CV-0118 (VM)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS THE CITCO GROUP LTD., CITCO FUND SERVICES (EUROPE) B.V., CITCO (CANADA) INC., CITCO GLOBAL CUSTODY N.V., CITCO BANK NEDERLAND N.V. DUBLIN BRANCH, AND CITCO FUND SERVICES (BERMUDA) LTD.'S RULE 72(a) OBJECTIONS TO THE JULY 8, 2013 DISCOVERY ORDER OF MAGISTRATE JUDGE FRANK MAAS**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Andrew G. Gordon
1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3543
Fax: (212) 492-0543
agordon@paulweiss.com

*Attorneys for Defendants The Citco Group Ltd., Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch, and Citco Fund Services (Bermuda) Ltd.*

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................... i

Preliminary Statement ................................................................................................ 1

Background .................................................................................................................. 2

Relevant Procedural History ....................................................................................... 5

Argument .................................................................................................................... 5

    I.      Standard of Review ........................................................................................ 6

    II.     The Magistrate Judge Unfairly Denied Citco the Ability to Submit Critical Evidence. ........................................................................................ 7

    III.   The Magistrate Judge's Order is Clearly Erroneous and Contrary to Law ............................................................................................................... 8

          A.     The Magistrate Judge Ignored Principles of Comity and Public Policy. ................................................................................. 8

          B.     Under American Privilege Law, Mr. Boonstra Qualifies as an Attorney. ............................................................................... 12

          C.     The Magistrate Judge Misapplied the "Reasonable Belief" Exception. ................................................................................ 13

    IV.   The Scope of Magistrate Judge Maas' Ruling is Unclear and Requires Modification .......................................................................... 18

Conclusion ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Astra Aktiebolag* v. *Andrx Pharm., Inc.*,
  208 F.R.D. 92 (S.D.N.Y. 2002) ..................................................................................8, 9, 11

*Catskill Dev., L.L.C.* v. *Park Place Entm't Corp.*,
  206 F.R.D. 78 (S.D.N.Y. 2002) ..............................................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
  06 Civ. 1875, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007).......................................................7

*Golden Trade, S.r.L.* v. *Lee Apparel Co.*,
  143 F.R.D. 514 (S.D.N.Y. 1992) ...........................................................................8, 9, 11

*In re Grand Jury Subpoena Duces Tecum*,
  112 F.3d 910 (8th Cir. 1997) ...............................................................................................14

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*,
  731 F.2d 1032 (2d Cir. 1984) .......................................................................................12, 13

*Gucci Am., Inc.* v. *Guess?, Inc.*,
  271 F.R.D. 58 (S.D.N.Y. 2010) ("*Gucci I*").............................................................5, 6, 8, 11

*Gucci Am., Inc.* v. *Guess?, Inc.*,
  No. 09 Civ. 4373, 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011) ("*Gucci II*") ......5, 6, 14, 15, 16, 17

*JSC Foreign Econ. Ass'n Technostroyexport* v. *Int'l Dev. & Trade Servs., Inc.*,
  220 F.R.D. 235 (S.D.N.Y. 2004) ..........................................................................................6

*Renfield Corp.* v. *E. Remy Martin's Co., S.A.*,
  98 F.R.D. 442 (D. Del. 1982) .........................................................................................13, 18

*In re Richard Roe, Inc.*, 68 F.3d 38 (2d Cir. 1995) .............................................................12, 13

*United States* v. *Gillock*, 445 U.S. 360 (1980) ........................................................................14

*United States* v. *Rivera*, 837 F. Supp. 565 (S.D.N.Y. 1993) ......................................................14

*Upjohn Co.* v. *United States*, 449 U.S. 383 (1981) ...................................................................14

STATUTES

28 U.S.C. § 636(b)(1)(A)...........................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72(a) ................................................................................................1, 6

Fed. R. Evid. 501 ...........................................................................................................14

Defendants The Citco Group Ltd., Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch ("Citco Bank"), and Citco Fund Services (Bermuda) Ltd. (collectively, "Citco"), pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, object to Magistrate Judge Maas' July 8, 2013 Discovery Order ("Discovery Order") granting Plaintiffs' request to compel discovery.[1]

### Preliminary Statement

The attorney-client privilege is intended to encourage complete candor between a client and its attorney without fear that the communication will later be discovered.  This privilege protects a client's most critical and sensitive communications from disclosure and allows attorneys to be well-informed to provide careful and sensible legal advice and effective representation.  Without this privilege, there would be a strong chilling effect on the attorney-client relationship.

Here, the Magistrate Judge ordered that Citco Bank turn over all of its privileged written communications with Renger Boonstra, the Bank's senior most lawyer, because Mr. Boonstra – a Dutch lawyer for a Dutch corporation who solely gave advice to his client on issues of Dutch law – does not have a law license.  But, in The Netherlands (like many other foreign jurisdictions), Mr. Boonstra does not need a law license to serve as an in-house lawyer for a Dutch corporation.  Thus, if the ruling below is allowed to stand, the Discovery Order will fundamentally alter the attorney-client privilege for in-house attorneys of foreign corporations and cast doubt over communications that clients reasonably believed were protected.

---

[1]     Citations to "Ex. __" are references to the exhibits attached to the Declaration of Patrick J. Somers.  The Discovery Order is attached as Ex. 1 and cited as "Order."

As we discuss in greater detail below, the Magistrate Judge clearly erred in ordering the production of Mr. Boonstra's documents for several reasons:

- The Magistrate Judge's Order was issued without the benefit of considering essential evidence establishing that Mr. Boonstra is an attorney and that his client reasonably believed its communications with him were privileged.

- The Magistrate Judge mistakenly ignored important principles of comity and public policy.

- The Magistrate Judge erroneously concluded that Mr. Boonstra did not qualify as an attorney under American law.

- The Magistrate Judge incorrectly concluded that, even under American law, the "reasonable belief" exception did not apply.

- And, the Magistrate Judge granted a "motion to compel" without even considering the fact that some of the documents at issue are privileged for reasons independent of Mr. Boonstra's status as a lawyer.

Accordingly, for the reasons set forth below, Citco's objections to the Discovery Order should be sustained.

## **Background**

In The Netherlands (like in many foreign countries), individuals holding a law degree do not need a license to be an attorney and practice law as in-house legal counsel for a corporation.  (Declaration of Michel Deckers, dated July 16, 2013 ("Deckers Decl.") ¶ 8.)  Nor does The Netherlands require in-house attorneys to register as a member of any bar (or its equivalent) for written communications between the in-house attorney and its client to be protected from discovery.  (*Id*. ¶ 9 ("Under Dutch law, there is no obligation to disclose any non-oral communication such as e-mails, letters, notes or any other written communication between an unlicensed legal counsel and his or

2

her clients.").)  Thus, as Michel Deckers, a Dutch attorney, explains, there is a legitimate expectation in The Netherlands that written communications, including e-mails, notes, letters, or any other form of written work, between Dutch corporations and their in-house attorneys will not be subject to discovery.  (*Id.* ¶ 12.)

At all relevant times, this expectation applied to Citco Bank's relationship with Renger Boonstra.  Mr. Boonstra is the senior most lawyer at Citco Bank.  (*Id.* ¶ 5; Declaration of Renger Boonstra, dated July 19, 2013 ("Boonstra Decl.") ¶ 4.)  He holds a law degree from Leiden University and works and lives in Amsterdam.  (Deckers Decl. ¶ 5; Boonstra Decl. ¶ 6.)  He has served as senior legal counsel for Citco Bank since 1997.  In that role, he was (and still is) authorized to practice law as an attorney for Citco Bank.  (Boonstra Decl. ¶ 6.)  And, over the last 16 years, Mr. Boonstra has provided a variety of *legal services and advice* to Citco Bank, including, but not limited to, drafting and revising contracts, providing regulatory advice, and providing legal advice. (Boonstra Decl. ¶ 5)  These are services that only a lawyer can provide in The Netherlands, and Citco Bank relied upon Mr. Boonstra to provide them.  (*Id.*)

In providing these services, acting as an attorney, and holding himself out as the senior most lawyer at Citco Bank, Citco Bank also reasonably believed, in accord with Dutch law, that its written communications with Mr. Boonstra were privileged. Citco Bank employees and other Citco employees have repeatedly testified that they believed Mr. Boonstra served as Citco Bank's attorney.  (*See, e.g.*, Declaration of Scott Case, dated July 19, 2013 ("Case Decl.") ¶ 4 ("I have always understood [Mr. Boonstra] to be legal counsel for the Citco Bank."); Braham Tr. Ex. 7 at 42:20-43:5 ("There are several people that act as in-house counsel. . . . For the bank group – the bank division, a

3

gentleman named Renger Boonstra."); DeRosa Tr. Ex. 8 at 128:9-10 ("[Mr. Boonstra] was in-house counsel to Citco Bank Nederland"); Irausquin Tr. Ex. 9 at 197:15-16 ("Renger Boonstra, legal counsel at Citco Bank Netherlands"); Kavanagh Tr. Ex. 10 at 101:24 ("[Renger Boonstra] is legal counsel at [Citco Bank Nederland]"); Keunen Tr. Ex. 11 at 368:24-25 ("Renger Boonstra . . . is the legal counsel for the bank . . . ."); Murray Tr. Ex. 12 at 226:4-7 ("[Mr. Boonstra] is an employee of Citco Bank . . . He was working there as an attorney"); Rund Tr. Ex. 13 at 99:3-4 ("Renger Boonstra is the in-house counsel for [Citco Bank Nederland.]"); Smith Tr. Ex. 14 at 70:17-18 ("[Mr. Boonstra is] legal counsel based in Amsterdam for the Bank").)

And, key employees of Citco Bank also have attested that they believed that Mr. Boonstra was an attorney who they could seek (and did seek) legal advice from without the fear that their communications would be discovered.  For example, Scott Case, a Managing Director of Citco Bank at the relevant time, stated that, "[b]ecause I believed Mr. Boonstra was an attorney, during the course of my employment at Citco Bank, I have sought legal advice from Mr. Boonstra on a variety of legal issues, including with respect to Fairfield Sentry."  (Case Decl. ¶ 6.)  Further, Mr. Case stated that, "[e]very time I sought legal advice from Mr. Boonstra, I believed my written communications with him were privileged and, as such, fully expected that they would remain protected from disclosure."  (*Id*. ¶ 7.)  Additionally, because the communications "are generally not discoverable under Dutch Law," Mr. Boonstra "never advised anyone at Citco Bank that there was a risk that such communications could have to be produced." (Boonstra Decl. ¶ 8.)

**Relevant Procedural History**

On May 10, 2013, plaintiffs began questioning Mr. Boonstra's status as an attorney and asked "that Citco reconsider its position on withholding documents where Mr. Boonstra's status as Citco's in-house counsel serves as the basis of any claim of work-product or attorney-client privilege." (Ex. 2 at 2.)  Because plaintiffs' request was unreasonable, Citco refused.  (Ex. 3 at 1.)

On May 28, 2013, plaintiffs sent a letter to Magistrate Judge Maas requesting "a conference to address claims of attorney-client privilege made by Citco." (Ex. 4 at 1.)  Three days later, Citco sent Magistrate Judge Maas a response and requested "an opportunity to brief fully the issues – and submit affidavits from Mr. Boonstra and others – raised in Plaintiffs' letter."  (Ex. 5 at 1.)  On June 4, 2013, Plaintiffs submitted an additional letter to the Court and asserted, for the first time, that the issues "may be decided on the basis of the parties' letters."  (Ex. 6 at 3.)

Instead of holding a conference, allowing briefing on the issues about privilege, or reviewing the documents, on July 8, 2013, the Magistrate Judge issued a Discovery Order granting plaintiffs' "motion to compel."  (Order at 6.)  In so doing, the Magistrate Judge made a number of clearly erroneous assumptions that would have been corrected with the benefit of full briefing.  (*See*, *e.g.*, Order at 3 (speculating that the documents "touch base" with the United States and noting that documents were not provided for *in camera* review).)

**Argument**

The attorney-client privilege is one of the oldest and most important privileges for confidential communications recognized in the United States. *Gucci Am., Inc.* v. *Guess?, Inc.*, 271 F.R.D. 58, 70 (S.D.N.Y. 2010) ("*Gucci I*").  "The purpose of the

privilege is to protect the client's communication, and to encourage full and frank disclosure when seeking legal advice, which is why the client holds the privilege and only the client can assert or waive it." *Gucci Am., Inc.* v. *Guess?, Inc.*, No. 09 Civ. 4373, 2011 WL 9375, at *4 (S.D.N.Y. Jan. 3, 2011) ("*Gucci II*"). The purpose of the privilege is so important that courts have routinely recognized that the privilege applies even in situations when a client communicates with a person who is not an attorney, "if the client reasonably believed that the person to whom the communications were made was in fact an attorney." *Id.* at *2. Importantly, "[c]ommunications with in-house counsel in the role of attorney-advisor are afforded the same protection as outside counsel. . . ." *Gucci I*, 271 F.R.D. at 70.

The Magistrate Judge's Discovery Order guts the core purpose of this privilege and threatens substantially to alter international corporations' communications with, and their reliance upon, their own in-house counsel about matters of foreign law by ignoring the protections afforded by the relevant jurisdiction. The Magistrate Judge clearly erred by (1) depriving Citco of the right to submit essential evidence of the issues raised by plaintiffs concerning Mr. Boonstra and privilege, (2) ignoring principles of comity and public policy, (3) rejecting Mr. Boonstra's qualifications as an attorney, (4) misapplying the reasonable belief exception, and (5) granting a "motion to compel" without addressing other privilege claims over the documents. Accordingly, the Discovery Order should be overturned.

## I.     Standard of Review

Rule 72(a) of the Federal Rules of Civil Procedure permits parties to "serve and file objections" to a nondispositive order of a magistrate judge. The district judge, to whom such objections are made, "must consider timely objections and modify

or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *JSC Foreign Econ. Ass'n Technostroyexport* v. *Int'l Dev. & Trade Servs., Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004) ("The issue raised by the defendants Objections is whether the Magistrate Judge's orders . . . were clearly erroneous or contrary to law."). An order is clearly erroneous "when the reviewing court is firmly convinced the lower court decided an issue in error." *Catskill Dev., L.L.C.* v. *Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002); *see also In re Comverse Tech., Inc. Sec. Litig.*, 06 Civ. 1875, 2007 WL 680779, at *2 (E.D.N.Y. Mar. 2, 2007) ("A magistrate judge's findings may be considered clearly erroneous where on the entire evidence, the [district court] is left with the definite and firm conviction that a mistake has been committed") (internal quotation marks omitted). "An order may be deemed contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Catskill Dev.*, 206 F.R.D. at 86 (internal quotation marks omitted).

## II.     The Magistrate Judge Unfairly Denied Citco the Ability to Submit Critical Evidence.

The Discovery Order's apparent acceptance of plaintiffs' argument that no protection applies to any of Citco's communications with Mr. Boonstra or to Mr. Boonstra's documents was error. The root of this error likely lies with the Magistrate Judge's refusal to grant Citco's request to brief fully the issues presented and submit essential evidence. Among other things, this evidence shows that Mr. Boonstra's documents touched upon the application of foreign law and that his client reasonably believed that its communications with its Dutch attorney, about Dutch law, were shielded from discovery. (Deckers Decl. ¶ 12 ("Citco Bank would have reasonably expected that any written communications between Mr. Boonstra and his clients relating to the

7

Fairfield funds would have been fully protected from disclosure."); *see also* Boonstra Decl. Ex ¶ 8-9; Case Decl. ¶ 6-7.)   Further, this evidence shows that compelling production of Mr. Boonstra's documents offends principles of comity and public policy. (*See* Deckers Decl. ¶ 12.)   By overlooking the available evidence, the Magistrate Judge unfairly deprived Citco of its ability to defend its assertions of privilege and, more fundamentally, made conclusions unsupported by the record.   As shown below, this evidence – submitted here – fully supports Citco's assertion of privilege.

**III.     The Magistrate Judge's Order is Clearly Erroneous and Contrary to Law.**

      **A.     The Magistrate Judge Ignored Principles of Comity and Public Policy.**

      A fatal mistake in the Discovery Order was the Magistrate Judge's failure to grapple with the importance of principles of comity and public policy in assessing whether plaintiffs are entitled to discovery of Mr. Boonstra's documents.   Indeed, the Discovery Order fails to touch upon these issues at all, which was clear error.

      To start with, all of the documents plaintiffs challenge are foreign documents.   Mr. Boonstra lives and works in The Netherlands.   Citco Bank is located in The Netherlands.   And the employees who communicated with Mr. Boonstra were located abroad.   Because Mr. Boonstra is a foreign attorney, who works for, and provides legal advice to, a foreign client, about issues of foreign law, the applicability of any privilege necessarily implicates issues of foreign law.   *Astra Aktiebolag* v. *Andrx Pharm., Inc.*, 208 F.R.D. 92, 97 (S.D.N.Y. 2002); *Golden Trade, S.r.L.* v. *Lee Apparel Co.*, 143 F.R.D. 514, 520-21 (S.D.N.Y. 1992).

      Applying these principles, courts in this Circuit have "adopted the comity or 'touching base' approach and applied a traditional choice-of-law 'contacts' analysis to determine the law that applies to claims of privilege involving foreign documents."

*Astra*, 208 F.R.D. at 98 (citing *Golden Trade*, 143 F.R.D. at 518-19); *see also Gucci I*, 271 F.R.D. at 64-65.  This analysis requires a court to "defer[ ] to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Astra*, 208 F.R.D. at 98 (quoting *Golden Trade*, 143 F.R.D. at 522).  Critically, in performing this analysis, a court must examine the discovery practices of the foreign country to understand the substantive law relating to privilege.  *See id.* at 100-102.  Where the discovery practices of a foreign country differ from the United States, the development of, and need for, privilege law also differs.  Put simply, if virtually no discovery of documents is contemplated in a foreign country, it inescapably follows that the need for a well-developed law of privilege is minimal.  *See id* at 102 (noting that, "where virtually no disclosure is contemplated, it is hardly surprising that Korea has not developed a substantive law relating to attorney-client privilege and work product that is co-extensive with our own law.").

The Discovery Order side-stepped this analysis, assumed that the documents "likely 'touch base' with the United States," and asserted that the results would be the same under either Dutch or American law. (Order at 3.)  This was clear error.

*First*, the assumption that the documents likely touch base with the United States is unfounded.  The documents at issue concern, among other things, issues about Citco Bank – a Dutch company – and the services it provided to Fairfield Sentry and Fairfield Sigma – two foreign funds.  Further, the contracts governing Citco Bank's services with these foreign funds are governed by Dutch law.  There is simply no basis to

have assumed that these documents have anything to do with the United States.  And, a review of those documents shows they do not.  With the exception of some documents about Mr. Madoff's arrest for fraud and possible litigation that might follow, these documents touched upon foreign issues such as legal advice about Fairfield Sentry's listing on the Irish Stock Exchange, foreign tax withholding issues concerning Fairfield Sentry, revisions to, and advice about, the Fairfield Sentry custodian agreement, which is governed by Dutch law, and advice about the Fairfield Sentry private placement memorandum, which was a document prepared for foreign investors.  There is simply no plausible sense in which these issues can be said to "touch upon" the United States.

*Second*, under Dutch law, these documents are not subject to discovery.  As Mr. Deckers explains in his affidavit, "[a]s a Dutch lawyer working as in-house counsel for a Dutch corporation in The Netherlands providing advice on a commercial relationship governed by Dutch law, Mr. Boonstra and his clients would have reasonably expected that any written communication between he and his clients relating to the Fairfield Funds would be protected from discovery."  (Deckers Decl. ¶ 7.)  This is because, "[u]nder Dutch law, there is no obligation to disclose any non-oral communication such as e-mails, letters, notes, or any other written communication between an unlicensed in-house legal counsel and his or her clients."  (*Id*. ¶ 9.)  "As a result, there is an expectation in The Netherlands that Dutch corporations will not be forced to disclose their written communications with their Dutch in-house counsel in which advice is requested or given, irrespective of whether that counsel is licensed or not."  (*Id*. ¶ 12.)

The Discovery Order completely ignores this aspect of Dutch law. Instead, the Magistrate Judge focused only on the fact that attorney-client privilege concerning oral communications applies only to licensed in-house counsel.  (Order at 3.) Since Mr. Boonstra does not have a license (but is authorized to practice law in-house), the Court reasoned that the documents are not privileged.  (*Id.*)  The Court's focus on Mr. Boonstra's lack of a license obscured the fact that the Dutch legal system affords other protections over these documents.  Thus, "to apply [Dutch] privilege law, or the lack thereof, in a vacuum—without taking account of the very limited discovery provided in [Dutch] civil cases—would offend the very principles of comity that choice-of-law rules were intended to protect." *Astra*, 208 F.R.D. at 102; *see also Gucci I*, 271 F.R.D. at 68-70 ("The scope of discovery in the foreign country is . . . a valid consideration in resolving choice of law issues."); *Golden Trade*, 143 F.R.D. at 521 ("sensitivity to the interests of other jurisdictions is perhaps most compelling in the international arena").

Further, ordering discovery of Mr. Boonstra's documents without applying any of the protections under Dutch law offends the public policy of this forum, "which promotes full discovery but, at the same time, prevents disclosure of privileged documents." *Astra*, 208 F.R.D. at 102.  As the *Astra* court explained, "[i]f the court were to rule without taking Korea's discovery practices into account, the court would be required to order complete disclosure of all of the Korean documents, many of which would be protected under either the attorney-client privilege or work product doctrine as applied in this jurisdiction." *Id.*  This would clearly be "[c]ontrary to the policies of upholding or expanding privilege to protect documents whenever they would be protected in other countries." *Id.*  The same is no less true here.

By failing to take into account principles of comity and public policy, the Discovery Order creates an absurdly unfair result.  It applies only select portions of Dutch law to conclude that production is required, where a full application of that law would have shielded the documents from production.  This Court should therefore reverse to avoid such an unfair result and afford comity to Dutch law in this regard.

**B.      Under American Privilege Law, Mr. Boonstra Qualifies as an Attorney.**

Moreover, as discussed below, a correct application of American law also protects the documents from disclosure.

The attorney-client privilege is a sacred aspect of our legal system.  In this Circuit, the privilege applies:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984); *In re Richard Roe, Inc.*, 68 F.3d 38, 39-40 (2d Cir. 1995) (same).

The Magistrate Judge did not apply this test to determine whether Citco's assertion of privilege was proper under American law.  The Court instead concluded that the documents were not privileged because "the attorney-client privilege generally applies only to communications with attorneys who are licensed to practice law."  (Order at 3.)  But this analysis misapprehends the test a court is required to undertake in assessing the application of American privilege law to a Dutch lawyer, who is authorized to practice law in his jurisdiction.  In other words, imposing the American license requirement on a Dutch lawyer defies common sense because the requirements to

12

practice law as a Dutch lawyer are determined by The Netherlands – not the United States.

The better course is for a court to conduct a functional analysis to determine whether the individual – here, Mr. Boonstra – "is competent to render legal advice and is permitted by law to do so." *Renfield Corp.* v. *E. Remy Martin's Co., S.A.*, 98 F.R.D. 442, 444 (D. Del. 1982). Without question, Mr. Boonstra meets such a test. There is no dispute that, under Dutch law, Mr. Boonstra is authorized to practice law as an in-house attorney. (Deckers Decl. ¶ 8; Boonstra Decl. ¶ 6.) Perhaps more to the point, under Dutch law, Citco (1) sought legal advice (2) from a professional legal advisor (Mr. Boonstra) in his capacity as such, (3) the communications at issue related to that purpose, (4) and were made in confidence, (5) by the client. Accordingly, under American law, these documents should be (6) permanently protected (7) from disclosure by Citco or by Mr. Boonstra since (8) no waiver exists. *See In re Grand Jury*, 731 F.2d at 1036; *In re Richard Roe*, 68 F.3d at 39-40. In short, the hallmarks for sustaining attorney-client privilege apply here.

**C.      The Magistrate Judge Misapplied the "Reasonable Belief" Exception.**

Even if Mr. Boonstra does not qualify as an attorney for purposes of applying American privilege law (which he does), Citco's communications with him are still privileged because Citco had a reasonable belief that it was communicating with an attorney. Indeed, Mr. Boonstra is a Dutch attorney. The Magistrate Judge, however, focused on whether Citco reasonably believed Mr. Boonstra had a law license. That was clear error.

As courts have repeatedly made clear, the attorney-client privilege may successfully be invoked with communications involving a non-attorney if the client

reasonably believed that it was communicating *with an attorney. See, e.g.*, *Gucci II*, 2011 WL 9375, at *2 & n.14  ("Even if the communications at issue were not made to an attorney, the privilege may be successfully claimed if the client reasonably believed that the person to whom the communications were made was in fact an attorney.") (citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997)); *United States* v. *Rivera*, 837 F. Supp. 565, 568 n.1 (S.D.N.Y. 1993) ("It is common ground among the parties that the attorney-client privilege attaches to confidential communications made to an individual in the genuine, but mistaken, belief that he is an attorney."); (*see also* Order at 4 (acknowledging same).)  A party's "reasonable belief" is determined by taking into account the unique facts and circumstances of each case on a case-by-case basis.  *See Upjohn Co.* v. *United States*, 449 U.S. 383, 396 (1981); *United States* v. *Gillock*, 445 U.S. 360, 367 (1980) (noting that Congress drafted Federal Rules of Evidence Rule 501 "to provide the courts with greater flexibility in developing rules of privilege on a case-by-case basis").

An analysis of this case points to a finding that Citco reasonably believed that, when it was communicating with Mr. Boonstra – the senior most lawyer at Citco Bank – it was communicating with a lawyer.

*First*, on the facts, the reasonableness of Citco's belief that Mr. Boonstra is an attorney is well-established.  Mr. Boonstra holds a law degree and has *served as a lawyer* for Citco Bank for sixteen years.  (Boonstra Decl. ¶ 5.)  During this time period, Mr. Boonstra has been regularly called upon to provide legal services and responded by displaying the skills of a seasoned lawyer.  Among other tasks, Mr. Boonstra has drafted and revised sophisticated commercial agreements, provided regulatory advice, and

provided legal advice.  (Boonstra Decl. ¶ 4.)  Moreover, during discovery, employee-after-employee testified that he believes that Mr. Boonstra is a lawyer who provides legal services to Citco Bank.  (*E.g.*, Case Decl. ¶ 4; Braham Tr. Ex. 7 at 42:20-43:8; DeRosa Tr. Ex. 8 at 128:6-7; Irausquin Tr. Ex. 9 at 197:14-16; Kavanagh Tr. Ex. 10 101:19-102:3; Keunen Tr. Ex. 11 at 368:6-369:3; Murray Tr. Ex. 12 at 226:3-7; Rund Tr. Ex. 13 at 99:2-4; Smith Tr. Ex. 14 at 70:10-18.)  Employees believed that they were communicating with a lawyer and were unaware of Mr. Boonstra's licensure status.  (*E.g.*, Case Decl. ¶ 5.)  Accordingly, Citco's belief that Mr. Boonstra "was its attorney was more than reasonable," and therefore the documents in question are protected.  *Gucci II*, 2011 WL 9375, at *6.

        The decision in *Gucci II* is particularly instructive here.  At issue in *Gucci II* were communications between Gucci and its director of legal services, whose only state bar membership (California) was inactive during the entire time of his employment.  *Gucci II*, 2011 WL 9375, at *2, *4.  The defendants challenged Gucci's assertion of privilege and argued that the Gucci lawyer's inactive state bar license negated any claim of privilege.  The district court disagreed and held that the documents were privileged because (1) the Gucci lawyer qualified as an attorney because he was an active member of two federal bars and, in the alternative, (2) that Gucci had a reasonable belief that he was an attorney.  *Id.* at *4-5.  With regard to reasonable belief, the court rejected the argument that a heightened due diligence requirement applies to corporations asserting the reasonable belief exception.  The court explained that the test consists only of "whether the client had a reasonable belief *that it was communicating with an attorney*."  *Id.* at *5 (emphasis added).  Gucci's belief was found to be reasonable because, when it

hired the director of legal services, it knew he had a law degree, hired him to perform legal work, which he did over a long period of time, and employees attested that they thought he was a lawyer.  *Id*.  Thus, the court held that all the communications between Gucci and its director of legal services were protected.  *Id*. at *5-6.

So, too, here.  Like the Gucci lawyer, Mr. Boonstra has a law degree and has served as a lawyer for Citco Bank for over fifteen years.  In this role, Mr. Boonstra performed "functions routinely handled by an attorney."  *Id.*  And, as in *Gucci II*, Citco has offered deposition testimony and declarations from employees that clearly establish their belief that Mr. Boonstra was (and is) their lawyer.  For these reasons, *Gucci II* compels sustaining Citco's claims of privilege

The Magistrate Judge, however, disagreed and attempted to distinguish *Gucci II* based on Mr. Boonstra's lack of a law license.  (*See* Order at 5 ("the Citco Defendants cannot credibly argue that they were *reasonably* mistaken as to Mr. Boonstra's licensure status").)[2]  This distinction rests on a faulty understanding of the reasonable belief test and led to error.  As the *Gucci II* court explained, the test for the reasonable belief exception "is whether [Citco] has demonstrated that it had a reasonable belief that [Mr. Boonstra] was its attorney when it communicated with him in the course of his employment as its in-house counsel" – not whether Citco had a reasonable belief that Mr. Boonstra was a licensed member of a bar.  *Id.* at *5.  The entire point of the reasonable belief exception is that it applies to protect communications made to a person

---

[2]    The Magistrate Judge misapprehended the issue and devoted its decision to discussing whether Mr. Boonstra held himself out as a licensed attorney and whether that belief was reasonable.  (Order at 4-5.)  As discussed below, the reasonableness of Citco's belief must be assessed in the context of Mr. Boonstra's status as a lawyer under Dutch law.  Accordingly, the Magistrate Judge's discussion is irrelevant.

who turns out not to have had the necessary qualifications to serve as an attorney.  Put another way, the purpose of the reasonable belief exception is to protect instances in which a client believes it communicated with an attorney who was later revealed to be missing a qualification to be considered an attorney, such as a law license.  *See Gucci II*, 2011 WL 9375, at *5 ("[T]he reasonable belief exception is well established.  A number of courts have sustained invocation of the privilege even when the communications were not made with a member of the bar, if the client reasonably believed that it was communicating with an attorney.")  Accordingly, the Magistrate Judge's focus on a law license was entirely beside the point.  The point is whether the evidences establishes that people reasonably believed Mr. Boonstra was an attorney.  And, as shown above, they did.

Moreover, unlike in the United States, a license is not required under Dutch law to practice law as in-house counsel.  In The Netherlands, Mr. Boonstra's legal training alone allowed him to do so.  Thus, Citco's belief that it was communicating with an attorney was not only reasonable, it was – in fact – well-established under the law.  And under this same system, clients like Citco Bank would have reasonably believed that its written communications with its in-house lawyer were protected from discovery.

The Magistrate Judge's citation to the Dutch professional charter commitment does not compel a different result.  (*See* Order at 5 ("Dutch law requires that the employer of a licensed in-house attorney sign a professional charter committing the employer to honor its attorney's independence").)  As discussed above, Citco Bank does not contend (and the reasonable belief exception does not require) that it was under the mistaken impression that Mr. Boonstra was licensed; rather, Citco Bank contends that it

had a reasonable belief that, when it was communicating with Mr. Boonstra, it was communicating with an attorney.  Indeed, as the Magistrate Judge himself noted, under Dutch law, Mr. Boonstra is, in fact, an attorney.  (*See* Order at 1 ("licensure is not a requirement for serving as in-house counsel in [T]he Netherlands").)

*Second*, as a matter of policy, the Magistrate Judge's decision carries a grave risk of drastically altering in-house privilege globally and imposing serious injustice.  To maintain attorney-client privilege in the American judicial system, the Discovery Order would require businesses around the globe to have their in-house counsel become members of the bar in their respective countries, even where such membership is not required by law or – in some cases – not even *permitted*.  *See, e.g.*, *Renfield*, 98 F.R.D. at 444.  The Discovery Order thus vitiates protections afforded under foreign law by imposing American licensing requirements and discovery rules on foreign lawyers and their clients that have been hauled into our legal system.  Such rule not only is fundamentally unfair, but also it wreaks havoc on the international in-house legal community by creating uncertainty about foreign corporations' reasonable expectation that their communications with their attorneys are protected.  Such uncertainty directly undermines the purpose of attorney-client privilege.

**IV.    The Scope of Magistrate Judge Maas' Ruling is Unclear and Requires Modification.**

Finally, while the Discovery Order is clearly contrary to law and this Court should sustain Citco's objections, in the event this Court disagrees, the Order nevertheless should be modified.  The Discovery Order purports to overrule Citco's "privilege objections" and to grant "the motion to compel."  (Order at 6.)  As plaintiffs note in their May 28, 2013 letter, "[t]here are 149 emails and email chains which Citco

claims involve purported attorney-client communications with Mr. Boonstra or concern legal analysis or advice given by him." (Ex. 4 at 1.)  Many of those emails are privileged for reasons not addressed by the Magistrate Judge at all, including the fact that they involve communications with other attorneys at Citco and are thus protected by the attorney-client privilege for this independent reason or are protected by the work product doctrine.

## **Conclusion**

For all of the foregoing reasons, Citco's objections should be sustained and the Discovery Order should be overruled in all respects.

Dated: New York, New York
      July 22, 2013

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By:   s/ Andrew G. Gordon
       Brad S. Karp
       Allan J. Arffa
       Leslie Gordon Fagen
       Andrew G. Gordon
       Patrick J. Somers
       1285 Avenue of the Americas
       New York, New York 10019-6064
       Tel: (212) 373-3000
       Fax: (212) 757-3990
       agordon@paulweiss.com