

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

OFFICE OF THE
GENERAL COUNSEL

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/28/2013

August 26, 2013

By Facsimile

The Honorable Frank Maas
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *Anwar v. Fairfield Greenwich Limited,*
      Master File No. ~~09-CV-0918 (VM)(FM)~~
      09 Civ. 118 (VM)(FM)

Dear Judge Maas:

*[Handwritten endorsement:]* in Courtroom 20A — The Court will hold a conference to discuss the Defendants' request for September 16 at 3 pm. If that date and time are inconvenient, counsel should place a conference call to Chambers by 9/3/13 to reschedule. /s/ Maas, USMJ, 8/26/13

The Securities and Exchange Commission ("SEC" or "agency") is in receipt of the letter of the Defendants dated August 19, 2013, and is prepared to participate in an informal conference to address the SEC's decision not to authorize its current and former employees to testify under the Rule 45 subpoenas issued in this action.

In anticipation of such a conference we are providing a summary of the Commission's position below. That position is more fully described in the Commission decisions provided by Defendants.

The Purported Relevance of the Testimony is Outweighed by the Burden on the SEC

The *Anwar* plaintiffs were investors in four hedge funds that were established by Fairfield Greenwich Group ("FGG") and that invested many of their assets with Bernard Madoff ("Madoff") or Bernard L. Madoff Investment Securities ("BLMIS"). These plaintiffs have asserted various federal-securities-law and state-law claims against the Defendants stemming from the Ponzi scheme perpetrated by Madoff. Plaintiffs have alleged, among other things, that the Defendants, as auditors, administrators, and custodians of the funds, failed to properly test BLMIS's internal controls and to scrutinize information provided by Madoff, and that they were negligent for failing to uncover Madoff's fraud. The Defendants want testimony from nine current and former SEC staff to show, principally, that because Madoff successfully deceived the

staff of the SEC, he also could have deceived the Defendants even if they had made proper inquiries regarding investments Madoff purportedly made.

The Defendants seek to question current and former staff about examinations and investigations they performed regarding Madoff, but the Defendants have not explained with any specificity why these investigations and examinations have minimal relevance to the issues in the underlying litigation. The Defendants do not contend that the testimony they seek will shed any light on what information the Defendants actually sought, on Madoff or FGG's response to those efforts, or on whether the Defendants had a duty to seek certain information. Instead, they contend that SEC staff testimony *may* show what *may* have happened if the Defendants had made certain inquiries and *may* show obstacles that could have been present. Such speculative testimony is, at best, of extremely limited relevance and appears to be far more confusing than probative.

In their communications with the SEC, Defendants have not pointed to any specific facts that demonstrated staff testimony would provide the information they sought. Defendants have not been able to point to such specific facts even though the SEC has made public a detailed report prepared by its Office of Inspector General ("OIG") regarding the examinations and investigation that failed to uncover that Madoff was conducting a Ponzi scheme. In addition, the SEC produced to the Defendants (1) over 10,000 pages of documents relating to the SEC's examinations and investigations of Madoff that the OIG gathered during its investigation into the Madoff matter, and (2) 136 transcripts of testimony and memoranda of interviews taken during that investigation, including those of the nine witnesses whose testimony is sought in the subpoenas. The witnesses are unlikely to remember anything about their role in the Madoff examinations and investigations that was not discussed in OIG testimony or interviews or was not in the documents from the examinations or investigation.

The SEC staff would not provide probative information on what may have happened because the SEC was in a very different position than any of the Defendants. The SEC's focus was different (looking at Madoff's compliance with the securities laws as opposed to verifying assets were safe), its relationship with Madoff was different (a government regulator conducting occasional examinations or investigations as opposed to providing services to a close business associate of Madoff's), and the consequences it could impose were different (bringing an enforcement action if it had evidence of a violation of the federal securities law as opposed to withdrawing funds if sufficient assurances were not received).

The burden that taking nine depositions would impose on the SEC easily outweighs the very marginal relevance of the testimony sought. With respect to the four witnesses who are current SEC employees, the cumulative impact on the SEC is significant. All four will need to take time away from significant SEC matters to prepare for and attend the depositions. In addition, preparing for nine depositions places a significant burden on the additional SEC staff members who will need to assist in preparation for the depositions, particularly in determining what is privileged. Those staff members include not only attorneys in the SEC's Office of the

General Counsel, but also Division of Enforcement staff responsible for ongoing investigations and litigation regarding Madoff. Because the agency cannot simply determine that all internal communications or deliberations are privileged, staff will need to review the voluminous documents that have been made public before determining what can and should remain privileged and explaining those lines to each witness. Although the Defendants have committed to seeking only "outward facing" aspects of the SEC's examinations and investigations, and to refrain from inquiring into privileged matters, the plaintiffs (who would also have the right to question the witnesses) have provided no such assurances.

<u>Authorizing the Testimony Is Not Required Under Rule 45 of the Federal Rules of Civil Procedure and Would Not Be Consistent With Sound Public Policy</u>

The Second Circuit, the Court whose precedent applies here, has specifically stated that it has not yet determined the appropriate standard of review where the government has refused to comply with a subpoena. *See U.S. Envtl. Protection Agency v. General Elec. Co.*, 212 F.3d 689, 690 (2d Cir. 2000) (holding that statement in earlier decision that deferential standard applied should not be viewed as a holding); *Wultz v. Bank of China Ltd.*, 2013 WL 1453258, at *3 (April 9, 2013) (noting that Second Circuit has not decided proper standard of review when the government has refused to comply with a subpoena). However, the Court in this jurisdiction has applied a deferential standard of review. See *Moran v. Pfizer*, No. 99 civ. 9969, 2000 WL 1099884, at *3 (S.D.N.Y. Aug. 4, 2000) (noting that the "arbitrary and capricious standard has been routinely applied in other circuits involving an agency's refusal to comply with a subpoena, and upholding the FDA's decision not to authorize FDA witnesses to testify).[1]

The SEC's decision not to authorize the testimony of its employees should be upheld whether it is analyzed with deference under the APA or under the more stringent Rule 45 standard, because, as explained above, the relevance of the information sought is outweighed by the burden on the SEC. *See* Fed. R. Civ. P. 45(c)(3)(A)(4). The D.C. Circuit has explained the relevant considerations in evaluating whether a subpoena imposes an undue burden, particularly with respect to subpoenas to government agencies or employees: namely, whether the discovery is duplicative, obtainable from some other source, and whether the burden or expense of the discovery would outweigh its likely benefit:

> With these tools, district courts in cases involving third-party subpoenas to government agencies or employees can adequately protect both the litigant's right to evidence and the "government's interest in not being

---

[1] Where a requestor has challenged in court a decision not to authorize the testimony of government employees, courts have not agreed on whether in such a case a court should apply a deferential standard of review under the Administrative Procedure Act or *de novo* standard of review. *Compare COMSAT Corp. v. Nat. Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) (applying deferential standard of review from Administrative Procedure Act) *with Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) (holding that "a challenge to an agency's refusal to comply with a Rule 45 subpoena should proceed and be treated not as an APA action but as a Rule 45 motion to compel" and that Rule 45 "supplies the standards under which district courts assess agency objections to a subpoena").

used as a speakers' bureau for private litigants." *Exxon Shipping*, 34 F.3d at 780 (internal quotation marks omitted).

*Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (some citations omitted). Here, the court should consider that SEC staff would be drawn away from important agency work in order to provide testimony of little or no relevance.

There also are sound public policy reasons why agencies need to be shielded from the burden of testifying in cases in which they are not a party so that they can focus limited resources on their statutory duties. *See COMCAST Corp. v. National Science Found.*, 190 F.3d 269, 277-78 (4th Cir. 1999) ("As an agency official must, NSF's counsel also considered whether the public interest and the agency's taxpayer-funded mission would be furthered by compliance."); *Johnson v. Bryco Arms*, 226 FR.D. 441 (E.D.N.Y. 2005) (quashing deposition subpoenas to ATF personnel where ATF was not a party to the case and had provided documents from an investigation conducted by the ATF that were relevant to the case); *Moran v. Pfizer*, No. 99 civ. 9969, 2000 WL 1099884, at *3 (S.D.N.Y. Aug. 4, 2000) ("Courts have regularly held that the public interest in insuring that agency employees spend their time doing the agency's work is a valid reason to decline to comply with a subpoena."); *Moore v. Armour Pharmaceutical Co.*, 129 F.R.D. 551. 556 (N.D. Ga. 1990) (noting that courts routinely consider "the policy of preserving the resources of governmental agencies from the flood of private litigation" in reviewing decisions not to authorize depositions); *Alex. v. Jasper Wyman & Son*, 115 F.R.D. 156, 158-59 (D.Me. 1986) (noting "important public policy favoring the conservation of government resources and the protection of orderly government operations" in explaining why undue burden analysis allowed court to prohibit taking of deposition altogether.) These policy reasons militate against requiring the SEC staff to testify in this action.

Respectfully submitted,

Laura Walker
Senior Counsel
Office of the General Counsel
Phone: 202-551-5031