MANDATE

N.Y.S.D. Case #
09-cv-0118(VM)

12-2240-cv
Pujals v. Standard Chartered Bank

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of August, two thousand thirteen.

Present:
> CHESTER J. STRAUB,
> PETER W. HALL,
> CHRISTOPHER F. DRONEY,
>
> *Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 09, 2013

---

Jose Antonio Pujals and Rosa Julieta A. de Pujals, individually and in their representative capacities for all those similarly situated,

*Plaintiffs–Appellants,*

v.                                                    No. 12-2240-cv

Standard Chartered Bank, Standard Chartered Bank International (Americas) Limited,

*Defendants–Appellees.*[*]

---

FOR APPELLANT:        DAVID ROTHSTEIN, Dimond, Kaplan & Rothstein, P.A., Miami, Florida.

---
[*] The Clerk is requested to amend the caption as above.

1

FOR APPELLEE:               DIANE L. MCGIMSEY (Sharon L. Nelles, Bradley P. Smith, Patrick B. Berarducci, *on the brief*), Sullivan & Cromwell LLP, Los Angeles, California.

_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Marrero, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiffs–Appellants Jose Antonio Pujals and Rosa Julieta A. de Pujals ("Plaintiffs") appeal the district court's dismissal of their breach of contract and unjust enrichment claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and its denial of their motion for leave to file a further amendment to their complaint. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

"We review *de novo* the grant of a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "We consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Id.*

Plaintiffs contend that the district court erred in rejecting their argument that Net Asset Value ("NAV") in the Purchase Letter agreement between Plaintiffs and the Defendant only authorized the Defendant to charge a monthly account fee based on the "actual NAV" of Plaintiffs' shares in a hedge fund rather than the NAV calculated and reported by the hedge fund. Because the Purchase Letter does not define NAV, Plaintiffs argue that the term is ambiguous and the district court should not have granted Defendant's motion to dismiss because this ambiguity can only be resolved by considering extrinsic evidence.

Plaintiffs further contend that this Court may not consider the Sentry Fund Subscription

Agreement ("Subscription Agreement") or Fairfield Sentry Limited Confidential Private

Placement Memorandum ("Offering Memorandum") in our review.  We disagree.  The contract

between purported lead plaintiff Jose Pujals and the bank that enabled him to invest in the Sentry

Fund, American Express Bank, reads as follows:

> Please purchase on my behalf $190,000 of Fairfield Sentry Limited ("the Fund"),
> Class B shares ("the Shares").
>
> I have received the Offering Memorandum and Subscription Agreement for the
> Fund.
>
> I understand that in connection with my purchase of Shares, my account will be
> charged a distribution and servicing fee of .50% per annum, calculated monthly
> based on the month end NAV of the Shares and payable on a quarterly basis.
> J.A. 282.

"It is a generally accepted rule of contract law that, where a writing expressly refers to and

sufficiently describes another document, that other document, or so much of it as is referred to, is

to be interpreted as part of the writing."  *OBS Co. v. Pace Const. Corp.*, 558 So. 2d 404, 406

(Fla. 1990).  Given the express incorporation of the Subscription Agreement and Offering

Memorandum into the Purchase Letter, we consult those documents in our interpretation of the

term "NAV" used in the unambiguous Purchase Letter.

Here, the Offering Memorandum expressly states that "[a]ll decisions on the valuation of

assets and liabilities and determination of Net Asset Value shall be made by the Fund's Board of

Directors."  Furthermore, it states that the "Net Asset Value of the Fund will be calculated on a

monthly basis" by the fund administrator with "the results of each such Net Asset Value

calculation" reported on a public exchange.  The Subscription Agreement, too, plainly disclaims

"that any valuation provided in Subscriber's account statement may be an unaudited, estimated

value."  In light of these documents, we find the Purchase Letter plainly authorized Standard

Chartered Bank to charge a service and distribution fee equal to 0.50% per annum on the value of Plaintiffs' Sentry Fund investment as reported by the fund's administrator to the bank.

Even if we were not to consider the Subscription Agreement or Offering Memorandum in our review, moreover, the district court did not err in rejecting Plaintiffs' proffered interpretation of the Purchase Letter. Under Florida law, the interpretation of a contract that is clear and unambiguous is a question of law. *Smith v. Shelton*, 970 So. 2d 450, 451 (Fla. Dist. Ct. App. 2007). Whether a contract is ambiguous is also a question of law to be resolved by the court. *Id.* An agreement is ambiguous when "it is *reasonably* susceptible to more than one interpretation." *Id.* (internal quotation marks omitted and emphasis added). Once a court determines that a contract is ambiguous, it may consider various types of extrinsic evidence, including industry custom, to determine the intention of the parties. *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1247 (11th Cir. 2002). The meaning of an ambiguous contract, however, is a question of fact, which cannot be resolved by the court on a motion to dismiss. *See Smith*, 970 So. 2d at 451.

Plaintiffs' interpretation of NAV in the Purchase Letter is unreasonable and therefore the contract is unambiguous for at least two reasons. First, although courts applying Florida law may not generally consider extrinsic evidence of industry custom at the motion to dismiss stage, courts should give legal and technical terms their legal and technical meaning unless a contrary intention appears on the face of the contract. Carmichael et al., 11 Fla. Jur. 2d Contracts § 158 Definite Legal or Technical Meaning (2012) (citing *Wilcox v. Atkins*, 213 So. 2d 879 (Fla. Dist. Ct. App. 1968)). Where a contract uses a technical term, courts may consider evidence regarding the technical meaning of that term in the industry in question even without a threshold finding that the contract is ambiguous. *See NCP Lake Power v. Fla. Power Corp.*, 781 So. 2d 531, 536–37 (Fla. Dist. Ct. App. 2001) (per curiam). Thus the district court did not err in considering

4

evidence that in the hedge fund industry, the term NAV universally means net asset value as determined by the hedge fund.

Second, the district court did not err in finding the Purchase Letter's use of the term "NAV" unambiguous. As noted, a contract is only ambiguous if it is susceptible to more than one *reasonable* interpretation. *Shaw v. Nat'l Union Fire Ins. Co.*, 605 F.3d 1250, 1252 (11th Cir. 2010). The Purchase Letter contract giving rise to the Plaintiffs' breach of contract claim states that Defendant, an intermediary bank through whom Plaintiffs purchased shares in a hedge fund, would charge the Plaintiffs a monthly fee based on the NAV of these shares. In Plaintiffs' view, this contract only authorized Defendant to charge fees based on the "actual NAV" of these shares, not the NAV reported to Defendant by the hedge fund. This interpretation of the contract is patently unreasonable. First, hedge fund investments are often illiquid, difficult-to-value, and not publicly disclosed. It is implausible that the Purchase Letter required the defendant intermediary bank to come to its own independent valuation of these shares on a monthly basis for the purpose of charging monthly account fees, as this would simply be beyond the power of Defendant to do. Plaintiffs' interpretation would also require Defendant to continuously re-evaluate the monthly fees it had charged Plaintiffs in prior months as subsequent events revealed the NAV used in prior months to be over- or understated. Defendant would then need to charge additional fees to Plaintiffs when the NAV proved understated or return excess fees to Plaintiffs when the NAV it used to calculate these fees proved overstated. Thus the monthly account fee Defendant charged Plaintiffs would never be final. Because Plaintiffs' interpretation of the Purchase Letter would yield these and other absurd results, it is an unreasonable interpretation of the contract. The only reasonable interpretation offered of "NAV" as used in the Purchase Letter is that offered by Defendant, and thus we find no ambiguity in the contract.

Finally, we see no error in the district court's dismissal of Plaintiffs' unjust enrichment claim. Under Florida law, a plaintiff cannot assert an unjust enrichment claim where an express contract governs the substance of the claim. *See, e.g.*, *Webster v. Royal Caribbean Cruises*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000). Here, Plaintiffs repeatedly alleged that the fees charged to them and others by Defendant were governed by a "form contract," and this allegation provided the basis for Plaintiffs to seek certification of a class of similarly situated investors. Given the substance of Plaintiffs' claims and the allegations in their complaint, the district court did not err in concluding that all fees charged Plaintiffs pursuant to their investment in Sentry Fund were governed by the Purchase Letter. Plaintiffs' claims are thus covered by an express contract, and their unjust enrichment claim was properly dismissed.

We find the Appellants' remaining arguments to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

6