# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

September 13, 2013

**VIA ECF FILING**

The Honorable Frank Maas
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

        Re:   ***Anwar v. Fairfield Greenwich Limited***,
                Master File No. 09-CV-00118 (VM)(FM)

Dear Judge Maas:

      We are writing in advance of the pre-motion conference on Monday, September 16, 2013, to apprise the Court that the *Anwar* Plaintiffs' oppose enforcement of Defendants' deposition subpoenas of current and former SEC employees. Defendants have failed to show that such testimony would have any meaningful relevance whatever, while depositions clearly would impose substantial and needless expense and delay in a case where enormous resources have already been expended to complete fact discovery.

      As the Court is aware, the SEC's Office of Inspector General ("OIG") conducted an exhaustive investigation of the reasons why the agency failed to detect the Madoff fraud. That investigation included interviews or depositions of 136 witnesses, among them *all* of the SEC personnel whom Defendants have subpoenaed. The OIG published its findings in a 457-page report (with 536 exhibits), entitled "Investigation of the Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme" (August 31, 2009, available at http://www.sec.gov/news/studies/2009/oig-509.pdf) (the "Report"). As the SEC's counsel states in her August 26, 2013 letter to the Court (the "SEC Letter"), *all* of the notes and transcripts for these witnesses have been provided to Defendants, as well as 10,000 pages of documents.[1]

      The Report details the myriad failings of SEC personnel in the course of examinations and investigations of BLMIS. It finds that "a thorough and competent investigation or examination [of Madoff and BLMIS] was never performed." (Report at 21). The SEC did not seek "to verify Madoff's trading through an independent third party, and, in fact, never actually conducted a Ponzi scheme examination or investigation

---

[1] Plaintiffs did not see the SEC Letter until the Court filed it with an endorsed order on August 28, 2013. We trust that in the future, the SEC will serve Plaintiffs' counsel (and all parties) with any communications it has with the Court.

BOIES, SCHILLER & FLEXNER LLP

The Honorable Frank Maas
September 13, 2013
Page 2

of Madoff" (*id.*).  The Report concludes: "[D]espite numerous credible and detailed complaints, the SEC never properly examined or investigated Madoff's trading and never took the necessary, but basic, steps to determine if Madoff was operating a Ponzi scheme. Had these efforts been made with appropriate follow-up at any time beginning in June of 1992 until December 2008, the SEC could have uncovered the Ponzi scheme well before Madoff confessed." (Report at 41).

Despite the extensive material that the SEC has produced concerning the very witnesses whom Defendants have subpoenaed, Defendants argue that they need depositions to support the defense claims that Defendants would have been unable to detect Madoff's fraud even if they had conducted on-site testing or examination at BLMIS or sought independent confirmation of the existence of the Fairfield Funds' assets from third parties.  But these arguments are pure speculation.  The witnesses' testimony already has led OIG to find, in effect, that the SEC was negligent or worse.  And since the witnesses never sought to "verify Madoff's trading through a third party," their testimony cannot prove what would have happened if they had done something that never occurred (*i.e.*, conducted a proper examination or verified Madoff's purported trades and holdings with third parties – which is what Plaintiffs argue should have been done by Defendants).  Indeed, if the witnesses had any views or evidence that, for example, contacting third parties would have been futile, they undoubtedly would have told the OIG in an effort to exculpate themselves.

In short, there is no reason to think that deposition testimony would add anything relevant to the enormous discovery record in this case.[2]  Balanced against this is the substantial cost and delay that depositions would entail.  In this regard, fact discovery closed on June 30, 2013, and the Scheduling Order (Dkt. 1025) contemplates completion of expert discovery by year-end and dispositive motions shortly thereafter, making a trial in mid-2014 (more than five years after the case was filed) eminently feasible.  The discovery record already is massive; the parties took some 98 depositions of persons with first-hand knowledge of the facts and some ten million pages of documents have been produced.  Expending still more of the parties' resources in these circumstances would be extraordinarily wasteful.

In terms of delay, the Defendants themselves are at fault, yet they are effectively seeking still more delay.  Defendants had the Report with its identification of potential SEC witnesses *three and one-half years* before they served the SEC subpoenas on February 27, 2013 – exactly *one day* before the Scheduling Order's deadline to subpoena third parties.  Although the parties agreed that the SEC subpoenas may be addressed after

---

[2] To the limited extent that the SEC witnesses interacted with FGG, the relevant written records have been produced to Defendants, who deposed the FGG witnesses at length concerning what they told the SEC.

BOIES, SCHILLER & FLEXNER LLP

The Honorable Frank Maas
September 13, 2013
Page 3

the June 30 discovery cut-off, this does not excuse Defendants' multi-year delay in beginning a process that they should have anticipated would take many months to resolve.

Indeed, there is no assurance that SEC depositions would be held anytime soon even if the Court were to grant a motion to compel. Given the SEC's adamant opposition and other circumstances (including the precedential impact of allowing the depositions and the undoubted strain that budget sequestration puts on the SEC's resources), the SEC may well appeal to the District Court and if unsuccessful, to the Court of Appeals.

Whatever the standard of review (*see* SEC Letter at 3-4), the SEC's refusal to allow depositions reflects a formal, reasoned decision and order of the full Commission (*see* Defendants' August 18, 2013 letter, Ex. B). It should not be overturned in the present context absent compelling reasons, which Defendants have utterly failed to demonstrate. The SEC – and Plaintiffs – should not have to waste resources to underwrite Defendants' fishing expedition.

Respectfully yours,

David A. Barrett

cc: All *Anwar* counsel of record (via e-mail)
    Laura Walker, Esq. (via e-mail)