UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANWAR, et al.,<br><br>                              Plaintiffs,<br><br>- against -<br><br>FAIRFIELD GREENWICH LIMITED, et al.,<br><br>                              Defendants.<br><br>This Document Relates To:  All Actions | MASTER FILE NO.<br>09-CV-0118 (VM) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS THE CITCO GROUP LTD., CITCO FUND SERVICES (EUROPE) B.V., CITCO (CANADA) INC., CITCO GLOBAL CUSTODY N.V., CITCO BANK NEDERLAND N.V. DUBLIN BRANCH, AND CITCO FUND SERVICES (BERMUDA) LTD.'S RULE 72(a) OBJECTIONS TO THE JULY 8, 2013 DISCOVERY ORDER OF MAGISTRATE JUDGE FRANK MAAS**

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew G. Gordon
1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3543
Fax: (212) 492-0543
agordon@paulweiss.com

*Attorneys for Defendants The Citco Group Ltd., Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch, and Citco Fund Services (Bermuda) Ltd.*

## TABLE OF CONTENTS

Page

Preliminary Statement ........................................................................................................... 1

Argument ............................................................................................................................... 2

    I.    Principles of Comity and Public Policy Compel Reversal of the Discovery Order ............................................................................................................... 2

        A.    Mr. Boonstra's Documents Would Not be Disclosed in The Netherlands ......................................................................................... 3

        B.    Ordering Discovery of Mr. Boonstra's Documents Violates Comity and Public Policy ..................................................................... 5

    II.    Mr. Boonstra Qualifies as an Attorney Under American Privilege Law ................ 7

    III.    Citco had a "Reasonable Belief" that Mr. Boonstra was an Attorney .................... 9

Conclusion ........................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Astra Aktiebolag* v. *Andrx Pharms., Inc.*,
 208 F.R.D. 92 (S.D.N.Y. 2002) ................................................................................... passim

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*,
 731 F.2d 1032 (2d Cir. 1984) ............................................................................................. 7

*Gucci Am., Inc.* v. *Guess?, Inc.*,
 271 F.R.D. 58 (S.D.N.Y. 2010) ("*Gucci I*") ............................................................... 2, 6, 7

*Gucci Am., Inc.* v. *Guess?, Inc.*,
 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011) ("*Gucci II*") ......................................................7, 9

*Honeywell, Inc.* v. *Minolta Camera Co.*,
 1990 WL 66182 (D.N.J. May 15, 1990) ........................................................................... 9

*Malletier* v. *Dooney & Bourke, Inc.*,
 2006 WL 3476735 (S.D.N.Y. 2006) ................................................................................. 9

*Renfield Corp.* v. *E. Remy Martin & Co., S.A.*,
 98 F.R.D. 442 (D. Del. 1982) ............................................................................................ 9

*In re Rivastigimine Patent Litig.*,
 237 F.R.D. 69 (S.D.N.Y. 2006) ......................................................................................... 7

**Preliminary Statement**

As we demonstrated in our opening memorandum of law, the files of Renger Boonstra (1) are not discoverable under a full application of Dutch law and (2) are protected from disclosure under a full application of American law. *See Astra Aktiebolag* v. *Andrx Pharms., Inc.*, 208 F.R.D. 92, 102 (S.D.N.Y. 2002). In their response, plaintiffs never truly address head-on any of our arguments that application of either Dutch law or American law would operate to preclude disclosure; rather, they resort to selectively picking bits and pieces of both Dutch and American law, depending on which suits them, in their wrong-headed effort to obtain Mr. Boonstra's legal documents.

Such an exercise should not be permitted. Indeed, as the Association of Corporate Counsel ("ACC") explains, in words which fully reflect the caselaw in this court, "[i]n the context of countries with alternative methods of discovery, it is not appropriate to compare the U.S. system to the foreign system in an a la carte manner. Rather, it is crucial to view the foreign discovery system as a whole." (ACC at 5.)[1] And, when the Dutch system is viewed as a whole, a correct application of Dutch law shows that Mr. Boonstra's documents would be protected from disclosure. Thus, applying Dutch privilege law, without considering Dutch discovery practices, to justify disclosure would violate "the very principles of comity" that the law was intended to protect. *Astra*, 208 F.R.D. at 102. And, to do so, would violate the public policy of this forum because Dutch privilege law is contrary to the purpose of attorney-client privilege as it exists here. Under these circumstances, a court provides the full protection of American privilege law to the documents at issue. And, under American law, Mr. Boonstra's

---

[1] Citations to ("ACC __") refer to ACC's amicus letter dated September 18, 2013. Citations to ("Br. __") refer to Citco's opening brief and citations to ("Opp'n __") refer to plaintiffs' opposition. Citations to ("Deckers Decl. ___") refer to the October 3, 2013 declaration of Michel Deckers. Defined terms used in Citco's opening brief are also used here.

documents are privileged because he is an attorney and because Citco senior executives had a reasonable belief that he was their lawyer. Accordingly, Citco's objections should be sustained.

## Argument

I.  **Principles of Comity and Public Policy Compel Reversal of the Discovery Order**

Although there is no dispute between the parties that the "comity" or "touching base" approach should apply to this Court's assessment of whether plaintiffs are entitled to Mr. Boonstra's documents, plaintiffs (as did the Magistrate Judge before) nevertheless completely fail to adhere to the very principles underlying that approach. As courts have frequently explained, the "comity" approach provides a framework under which a court may assess what protections, if any, should attach to the production of foreign legal documents when those documents suddenly become the subject of a discovery request in a U.S. proceeding. Because foreign legal documents are created under one set of rules and expectations (here, for example, based on Mr. Boonstra's understanding of the rules governing document discovery in a Dutch civil case), and are now belatedly being subjected to an entirely different set of rules by virtue of a discovery request in a U.S. legal proceeding, the "comity" approach requires courts to examine the entire discovery practices of the foreign country where the documents were created. *Astra.* 208 F.R.D. at 102; *see also Gucci Am., Inc.* v. *Guess?, Inc.*, 271 F.R.D. 58, 68-70 (S.D.N.Y. 2010) ("*Gucci I*"). By doing so, courts avoid making the "erroneous" assumption that an application of foreign privilege would result in disclosure because the foreign jurisdiction may provide other protections to the documents. *Astra,* 208 F.R.D at 101-02; *see also Gucci I,* 271 F.R.D. at 68. The same is true here.

Accordingly, plaintiffs' assertion that, under the "comity" approach, "there is no principle which requires this Court to examine the extent to which document discovery would be permitted if this action were proceeding in the Netherlands" is just wrong. (Opp'n at 12.) To the

2

contrary and as shown in our opening brief, courts consistently examine the entire discovery practices of the foreign country before ordering the production of foreign legal documents. (Br. at 8-9.) And, if this Court does likewise here, the inescapable conclusion, as we discuss below, is that the documents at issue would not be discoverable.

      **A.**      **Mr. Boonstra's Documents Would Not be Disclosed in The Netherlands**

Notwithstanding what plaintiffs say in their opposition brief, the document discovery a party may obtain in the Netherlands is severely restricted. In fact, as explained by Michel Deckers, Article 843a, which plaintiffs erroneously cite for the proposition that there is broad discovery in the Netherlands (Opp'n at 7-8), is an exception to the general rule that there is no document discovery in a civil case. (Deckers Decl. ¶¶ 9-10.) And, to satisfy the requirements of Article 843a, Dutch courts impose an extremely high burden: *first*, the moving party must show that the document request concerns specific, readily-identifiable documents; *second*, the requested documents must relate to an established legal relationship between the requesting party and the party from whom the documents are being requested; and, *third*, the requesting party must present a legitimate interest to review the requested documents. (Deckers Decl. ¶ 10; Koppenol-Laforce Decl. ¶ 25.) Plaintiffs simply cannot meet this burden.

*First*, plaintiffs' document requests, which are not narrowly tailored, do not satisfy the "specific" document requirement. As noted, Article 843a does not provide a general right of inspection. (Deckers Decl. ¶ 11.) "The requested documents have to be specified to such extent: (i) that it is clear what documents the request concerns, and (ii) the Court is able to examine whether the requesting party has a legitimate interest to review the requested documents." (*Id.*) Thus, there can be no doubt that the type of broad requests that plaintiffs have made here—seeking, as they do, "all documents concerning the Funds, the Fairfield Defendants,

3

Madoff or BMIS"—would be insufficient under Dutch law. (*See* Deckers Decl. ¶¶ 12-16 (citing cases).)

In response, plaintiffs' expert cherry-picks a few cases in the Netherlands and incorrectly suggests that Article 843a provides a "flexible approach" to discovery. (Koppenol-Laforce Decl. ¶¶ 37-44.) All of the cases she cites are distinguishable (Deckers Decl. ¶¶ 17-26) and do not show that plaintiffs' requests here would satisfy the requirements. In fact, many of these cases emphasize that the requesting party must sufficiently specify the requested documents and prove the request's relevance. (*Id.* ¶¶ 17-20.) Plaintiffs fail to do so here.

*Second*, plaintiffs also cannot satisfy the "relation to" prong of Article 843a, since the only way a party could satisfy this requirement before 2002 was by demonstrating to the Court that it was in a direct contractual relationship with the party from whom discovery was being sought. Thus, as Mr. Deckers explains, given that the investors in the Fairfield Funds never had a direct contractual relationship with Citco, they would be unable to obtain any document discovery from Citco.[2] (*Id.* ¶¶ 34-35.) *Finally*, plaintiffs cannot establish a "legitimate interest" in reviewing Mr. Boonstra's files. "In Dutch proceedings, the request for disclosure of Mr. Boonstra's documents is likely to be denied on the very ground that, given the absence of a relevant legal relationship, there is no legitimate interest of the investors to review the requested documents." (*Id.* ¶ 37.)

Perhaps the best evidence of what document discovery would be permitted in the Netherlands is to examine what document discovery has actually taken place there in the parallel proceedings that investors in Fairfield have brought against Citco: None. Nor is there any real

---

[2] Article 843a was subsequently amended so that a legal relationship could be established based on a tort claim. As Mr. Deckers explains, plaintiffs would still be unable to satisfy the legal relationship requirement, even after Article 843a was amended, because, under Dutch law, they have a "remote link, if any at all" to Citco and thus no cause of action based on tort exists. (Deckers Decl. ¶ 36.)

4

likelihood plaintiffs in the Netherlands will obtain Mr. Boonstra's legal documents. (*Id.* ¶¶ 32-33.)

      **B.**    **Ordering Discovery of Mr. Boonstra's Documents Violates Comity and Public Policy**

Because plaintiffs would be unable to obtain Mr. Boonstra's legal documents in the Netherlands, this Court should not apply Dutch privilege law "in a vacuum," i.e., apply Dutch privilege law without applying Dutch discovery rules. *Astra*, 208 F.R.D. at 102; *Gucci I*, 271 F.R.D. at 68-70. Specifically, the need for Dutch privilege law to protect against the disclosure of Mr. Boonstra's legal documents does not exist because those documents could not be discovered in any event under Dutch law. Thus, ordering discovery of Mr. Boonstra's legal documents based on Dutch privilege law and American procedural rules creates an anomalous and unfair result: plaintiffs will obtain legal documents that they would never have been able to obtain access to otherwise given the strict document discovery rules of the Netherlands. It is just this type of result that the "comity" approach is designed to prevent. *See Astra*, 208 F.R.D. at 102 (noting that such an anomalous result "would violate principles of comity").

Plaintiffs do not contest this rule, but assert that this "case differs significantly from the circumstances in *Astra* and *Gucci I*." (Opp'n. at 13.) Plaintiffs are mistaken.

Plaintiffs first argue that the discovery practices at issue in *Astra* were different than those at issue here because "Korean law permits discovery only when the documents 'evidence a legal relationship,'" while Dutch law "merely requires" that the documents "'relate to' the cause of action." (*Id.* at 13-14.) But even plaintiffs' expert disagrees with this proposition. She explains in Paragraph 25 of her Declaration that the documents must "relate to the relationship at issue." This statement is consistent with Mr. Deckers' declaration, which explains that the parties must have a "legal relationship" to which the documents relate.

5

(Deckers Decl. ¶ 10.)  Thus, this case is exactly like the one in *Astra* because discovery in the Netherlands is permitted only when the documents "relate to" a "legal relationship."  And, even if plaintiffs were correct in distinguishing *Astra* based on the differences between Korean and Dutch law, it would still not alter the basic tenant of *Astra* on which we rely in making our objection to the Discovery Order:  namely, that, under the "comity" approach, this Court should not "apply [Dutch] privilege law . . . in a vacuum—without taking account of the very limited discovery provided in [Dutch] civil cases" because, to do so, "would offend the very principles of comity that choice-of-law rules were intended to protect."  *Astra*, 208 F.R.D. at 102.

Plaintiffs make a similar mistake in attempting to distinguish *Gucci I*.  There, the court noted that, under Italian law, a party must demonstrate the "existence and relevancy of a specific document prior to obtaining its disclosure."  *Gucci I*, 271 F.R.D. at 69.  While plaintiffs assert that no such requirement "prevail[s] in the Netherlands" (Opp'n at 14), as plaintiffs' own expert acknowledges, this statement is wrong.  (*See* Koppenol-Laforce Decl. ¶ 25.)  And, even if it were true that *Gucci I* can be distinguished on such grounds, that is beside the point, since we cite *Gucci I*  for the general proposition that this Court should not order production of Mr. Boonstra's documents where, as here, it will offend principles of comity and public policy.

To be sure, application of Dutch privilege rules certainly offends the public policy of this forum because Dutch rules are contrary to the purpose of the attorney-client privilege as it exists here.  According to plaintiffs' own expert, the purpose of Dutch attorney-client privilege is to "serve[] the public interest and the interest of the legal profession, *not* primarily the interest of the client." (Koppenol-Laforce Decl ¶ 11.)  This means that the privilege is held by the attorney, not the client.  (*Id.* ¶ 12.)  Such a framework is contrary to American privilege law, which exists "to protect the client's communication, and to encourage full and frank disclosure when seeking

6

legal advice, which is why the client holds the privilege and only the client can assert or waive it." *Gucci Am., Inc.* v. *Guess?, Inc.*, 2011 WL 9375, at *4 (S.D.N.Y. Jan. 3, 2011) ("*Gucci II*"); *see also Gucci I*, 271 F.R.D. at 69; *Astra*, 208 F.R.D. at 102.

Plaintiffs try to sidestep this issue by arguing that public policy is not violated because application of U.S. law "would achieve the exact same result" as application of Dutch law. (Opp'n at 15.) This analysis puts the cart before the horse. Determining whether a substantive rule violates the public policy of a forum does not hinge on the outcome of a particular case, but rather on the rationale for the rule itself. Because applying Dutch privilege law in this forum would mean that a client does not have the ability to assert privilege, there is no plausible sense in which the policy behind Dutch privilege law is consistent with American law. Moreover, as discussed below, under American law, the documents are privileged.

Plaintiffs' reliance on *In re Rivastigimine Patent Litig.*, 237 F.R.D. 69 (S.D.N.Y. 2006), to suggest otherwise is misplaced. In that case, because the parties agreed that Swiss law governed, the court did not perform a comity approach analysis. *Id.* at 74-75. Here, however, the parties do not dispute that a comity approach analysis is required.

Because application of Dutch privilege law in a vacuum violates principles of comity and public policy, this court should apply American privilege law—in its entirety—in resolving the privilege dispute. *Astra*, 208 F.R.D. at 102; *Gucci I*, 271 F.R.D. at 69-70.[3]

## II.  Mr. Boonstra Qualifies as an Attorney Under American Privilege Law

As we demonstrated in our opening brief, under the eight factor test laid out in *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036 (2d Cir.

---

[3]  Plaintiffs wrongly assert that Citco "concedes" Mr. Boonstra would have to testify. While under Dutch procedural rules that might be true, those rules, as plaintiffs argue, do not apply here. (Opp'n at 12.) Under a full application of American privilege law, Citco's communications with Mr. Boonstra are protected.

1984), Mr. Boonstra qualifies as an attorney under American privilege law. Accordingly, the documents at issue are privileged. (*See* Br. at 12-13.)

Plaintiffs make no meaningful attempt to dispute that Mr. Boonstra satisfies this test. Instead, they contend that Mr. Boonstra does not qualify as an attorney because he is not a member of a Bar and because Dutch law does not extend the privilege to him in his role as in-house counsel. (Opp'n at 15-16.) Neither contention has merit.

*First*, applying American Bar membership requirements to a Dutch lawyer, who is authorized to practice law in the Netherlands, makes no sense. In situations where a court has to apply American privilege to a foreign lawyer, it cannot make such an application contingent upon whether the foreign lawyer satisfied American licensing requirements. The entire point of applying American privilege law when foreign privilege law conflicts with the public policy of this forum is to ensure that this forum protects the purpose of the attorney-client relationship. Imposing an American requirement would undermine that purpose because a foreign attorney's ability to practice does not necessarily depend on Bar membership, as this case shows.

*Second*, plaintiffs' argument fundamentally threatens the attorney-client relationship on a global scale. Under plaintiffs' view, any foreign attorney hauled into U.S. litigation would need to have a Bar membership to guarantee that American privilege applies. Such a view "ignores the realities of today's global legal profession" (ACC at 2) and creates uncertainty about the protected nature of a foreign client's communication with foreign counsel.

*Third*, plaintiffs cannot cite Dutch privilege law to show that Mr. Boonstra does not qualify as an attorney under American law. As discussed above, this Court should not apply Dutch privilege law in isolation because to do so violates this forum's public policy. Nor does Dutch privilege law address Mr. Boonstra's qualifications to practice law.

8

*Finally*, contrary to plaintiffs' assertion, the reasoning of *Renfield Corp.* v. *E. Remy Martin & Co., S.A.*, 98 F.R.D. 442 (D. Del. 1980), is sound. Different jurisdictions have different requirements to practice law. Determining whether someone is a lawyer should depend on whether that person is authorized to practice law in his jurisdiction, not on whether he is authorized to practice law in another jurisdiction. Accordingly, a functional analysis makes eminent sense. The cases plaintiffs cite are not to the contrary. *Honeywell, Inc.* v. *Minolta Camera Co.*, 1990 WL 66182 (D.N.J. May 15 1990), involved privilege assertions over communications with an employee who was not an attorney and whose only legal training involved attendance at various courses. *Id.* at *3. In *Malletier* v. *Dooney & Bourke, Inc.*, 2006 WL 3476735 (S.D.N.Y. 2006), there was "little reason" to apply *Renfield* because the communications at issue were not protected in either jurisdiction, nor was there any evidence that anyone believed the communications were protected. *Id.* at *17. As explained in our opening brief, the opposite is true here.

### III. Citco had a "Reasonable Belief" that Mr. Boonstra was an Attorney

Plaintiffs continue to maintain that the "reasonable belief" exception applies only if there is a belief that the attorney had a "license." That is not the law. As the court in *Gucci II* explained, "[e]ven if the communications at issue *were not made to an attorney*, the privilege may be successfully claimed if the client *reasonably believed that the person to whom the communications were made was in fact an attorney*." 2011 WL 9376, at *2 (emphasis added). The entire purpose of the reasonable belief exception is to afford protection to a party who communicates with someone who *is not an attorney*, but is reasonably believed to be one.

Here, there can be no doubt that Citco had a reasonable belief that Mr. Boonstra was an attorney. *First*, as plaintiffs do not dispute (Opp'n at 3-4), Mr. Boonstra is in fact an attorney authorized to practice law. *Second*, multiple employees uniformly testified that they

believed that Mr. Boonstra was, at all times, acting as the senior attorney within Citco Bank. (Br. at 15 (citing testimony).) *Finally*, as he was fully permitted to do, Mr. Boonstra practiced law during the relevant time period.

Overlooking all of this evidence, plaintiffs argue that Citco's belief was unreasonable under Dutch privilege law because Mr. Boonstra did not have a license. But, as explained above, because Dutch privilege law violates public policy, it cannot apply here. Rather, the inquiry is confined to whether Citco had a reasonable belief that it was communicating with an attorney under American privilege law. The unrefuted evidence shows that this is the case.

Further, if credited, plaintiffs' argument about a license swallows the reasonable belief exception rule. Bluntly, plaintiffs' position means that attorney-client privilege may apply only if the person in question is a licensed attorney. But if that were true, then a reasonable belief exception would not exist because a communication with a licensed attorney is already protected. Thus, under American privilege law, application of the reasonable belief exception is not based on whether a person has a law license, but whether the client reasonably believed it was communicating with an attorney. As already shown, Citco had such a belief.

## Conclusion

For all of the foregoing reasons, Citco's objections should be sustained and the Discovery Order should be overruled in all respects.

| | |
|---|---|
| Dated: New York, New York<br>October 3, 2013 | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |

By: s/ Andrew G. Gordon
Brad S. Karp
Allan J. Arffa
Leslie Gordon Fagen
Andrew G. Gordon
Patrick J. Somers
1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990
agordon@paulweiss.com