# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

October 10, 2013

**BY HAND**

Judge Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

Re:  *Anwar, et al. v. Fairfield Greenwich Limited, et al.*
Master File No. 09-CV-00118 (VM) (THK)

Dear Judge Marrero:

Plaintiffs respectfully request that the Court accept this letter in response to the September 18, 2013 amicus letter of the Association of Corporate Counsel ("ACC") [Dkt. no. 1194] and Citco's reply brief [Dkt. no. 1198] objecting to Magistrate Judge Maas' July 8 Order (the "Reply"). The Reply incorporates portions of the ACC's brief and raises new arguments based on a new declaration of Citco's Dutch counsel, Michel Deckers.[1] Plaintiffs believe these new filings warrant this further response.

As shown below, the Netherlands has a fully-developed law of attorney-client privilege, in which it has made the express choice to deny that privilege to unlicensed in-house lawyers in the context of a plenary discovery system. Citco and ACC concede that the "touching base" test would normally require application of Dutch privilege law to Citco's relationship with Mr. Boonstra. Comity requires simple application of that Dutch law, not a hodge-podge that jumps back and forth between Dutch and U.S. law as Citco and ACC urge.

Neither Citco, Mr. Deckers nor ACC disputes the evidence from Professor Jan Eijsbouts [Dkt. no. 1177], who is, among other things, former General Counsel of the Dutch-headquartered multi-national Akzo Nobel. He testifies not only that "no Dutch court . . . ever recognized" a right of unlicensed in-house lawyers to claim privilege, but that in his decades of experience as an in-house lawyer, Prof. Eijsbouts "do[es] not know of any in-house lawyers who believe that [such] communications . . . are generally protected," and any such belief "would not at all be wise, or reasonable." These undisputed facts alone demonstrate that Citco has failed to meet its burdens to show both (i) that Judge Maas' Order was clearly erroneous, and (ii) that the Boonstra Documents are privileged.

---

[1]  Mr. Deckers does not mention, in either of his declarations, that he is not simply a paid expert, but is appearing as Citco's counsel in the Dutch litigation discussed in ¶¶32-37 of his October 3, 2013 declaration ("Reply Decl.").

BOIES, SCHILLER & FLEXNER LLP

Honorable Victor Marrero
October 10, 2013
Page 2

## I. Citco's Choice-of-Law Approach Would Turn the Straightforward "Touching Base" Test into a Potpourri of Different Laws

The "touching base" analysis provides a straightforward test that mandates the application of foreign privilege law when the relationship at issue is centered abroad. *See Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002). It is undisputed that Citco's relationship with Mr. Boonstra is centered in and therefore "touches base" with the Netherlands.[2] A limited exception applies when a foreign country virtually precludes discovery of any kind whatever, and therefore has no reason to develop any protections for privileged information. Only in those circumstances could there be disclosure of attorney-client communications where neither the country involved nor the U.S. had contemplated such disclosure. *Id.*[3]

Instead of this simple and well-established test, Citco and ACC want the Court to *ignore* Dutch *privilege* law and, based on their perception of Dutch *discovery* rules, recognize a privilege under *U.S. law*. *See* Reply 1. Such cherry-picking is not the proper choice-of-law approach. *See Malletier v. Dooney & Bourke, Inc.*, 2006 WL 3476735, at *18 (S.D.N.Y. Nov. 30, 2006) (rejecting "cherry-picking segments of French law in support of a legal protection afforded by neither French nor American law" to unlicensed French in-house counsel). Nor does the cherry-picking end there. Arguing for "full protection of American privilege law" (Reply 1), Citco and ACC are confronted with the fact that U.S. law also denies a privilege to unlicensed lawyers. Accordingly, Citco switches gears again, and proposes to return to *Dutch law* – arguing that under more lenient Dutch legal practice requirements, an unlicensed Dutch lawyer (whose communications are not privileged) is the functional equivalent of a licensed attorney in the United States (whose communications are privileged under U.S. law). Reply 9-10. There is no support for this strained and illogical approach, which would protect documents that are *not privileged* under *either* Dutch or U.S. law.

## II. Dutch Discovery Rules Are Not an Alternate System for Maintaining Attorney-Client Confidentiality

Citco and ACC argue that Dutch discovery rules are so narrow as to effectively function as an "alternate system for maintain[ing] confidentiality" of attorney-client communications. ACC Br. 6; Reply 1-2, 5. This claim that the Netherlands protects non-privileged communications through its general discovery rules fails for at least four reasons.

---

[2] *See* App. Br. 10 ("There is simply no plausible sense in which these issues can be said to 'touch upon' the United States."); ACC Br. 4.

[3] That is not the factual scenario here. For the reasons explained in Point II below (*see* Opp. Br. 13-15), Dutch discovery rules differ substantially from those in Italy and Korea, where "*none* of the documents at issue . . . would [have been] discoverable." *Astra*, 208 F.R.D. at 102 (emphasis added).

BOIES, SCHILLER & FLEXNER LLP

Honorable Victor Marrero
October 10, 2013
Page 3

*First*, such an argument was rejected in *In re Rivastigmine Patent Litigation*, 239 F.R.D. 351 (S.D.N.Y. 2006) (Baer, J.). There, plaintiffs argued that "because of more limited Swiss discovery procedures, a Swiss court . . . would not order disclosure of the documents at issue" and therefore "comity dictates non-disclosure." *Id.* at 359. The court recognized that foreign jurisdictions have discovery systems that are not comparable to our own but held that it cannot "imply [a] privilege from discovery procedures where none exists." *Id.*[4]

*Second*, the claim that general Dutch discovery rules serve to protect attorney-client privilege makes no sense. If discovery were as narrow as Citco and ACC claim, why would the Netherlands need to develop privilege law at all? On the contrary, the Netherlands *does* have a well-defined attorney-client privilege that applies in clearly-defined circumstances – but has chosen not to extend it to unlicensed in-house lawyers.[5]

*Third*, the implication of Citco's and ACC's theory is that nearly all documents would be protected by the purportedly narrow Dutch discovery rules. Under this reasoning, comity and public policy would require this Court to permit Citco to withhold production of all documents – whether privileged or not – a position that directly conflicts with the Supreme Court's holding in *Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522 (1987) (discovery may proceed under U.S. law, despite foreign restrictions on discovery). And of course, it is inconsistent with Citco's production of literally millions of pages of documents in this case.

*Fourth*, if the fact that a country's discovery rules are narrower than those in the U.S. were sufficient to ignore that country's limitations on the attorney-client privilege, it would be impossible for a U.S. court ever to apply foreign law because the United States discovery rules are the world's most liberal. This would mean that two decades of this Court's cases rejecting privilege protections under various foreign laws were wrongly decided.[6]

---

[4] Citco is wrong in its view that the case is inapposite because the court did not consider comity given the parties' agreement that Swiss law governed (Reply 7). *See In re Rivastigmine*, 239 F.R.D. at 359 (addressing comity).

[5] *See* Koppenol-Laforce Decl. ¶¶ 10-19; Eijsbouts Decl. ¶¶ 4-8. Citco's Dutch counsel does not disagree. *See, e.g.,* Reply Decl. ¶ 6 ("Lawyers that are licensed are entitled to such privilege . . ."); Deckers Decl. ¶ 9 ("The Netherlands does not recognize as privileged communications between a Dutch company and its unlicensed in-house legal counsel.").

[6] *See, e.g., In re Rivastigmine*, 239 F.R.D. at 358-60 (non-lawyer's documents not privileged under Swiss law); *Kiobel v. Royal Dutch Petroleum Co.*, 2005 WL 1925656, at *9 (S.D.N.Y. Aug. 11, 2005) (documents not authored by attorney not privileged under Nigerian law); *Alpex Computer Corp. v. Nintendo Co.*, 1992 WL 51534, at *2-3 (S.D.N.Y. Mar. 10, 1992) (rejecting privilege under Japanese law).

BOIES, SCHILLER & FLEXNER LLP

Honorable Victor Marrero
October 10, 2013
Page 4

### III. The Netherlands Allows for Substantial Discovery

To the extent it is relevant to the issues at hand, Dutch discovery rules (whether characterized as broad or narrow) are far different from the non-existent or minimal discovery that apparently prevailed in Korea or Italy. *See* Reply 5-6.

Citco's claim that there is no disclosure in the Netherlands "for purposes of what is known in Common Law jurisdictions as *discovery*" (Deckers Decl. ¶ 9) is contradicted on Dutch counsel's own website, which declares that (i) Dutch law "allows pretrial discovery of documents," and (ii) communications between a company's board of directors and in-house counsel "may have to be disclosed in civil proceedings." *See* Koppenol-Laforce Decl. ¶ 5 & Exs. A, B. The website is correct. *See* Koppenol-Laforce Decl. ¶¶ 20-28 (discussing numerous Dutch discovery mechanisms, including preliminary witness examinations[7] and the disclosure methods of Arts. 22, 162 and 843a DCCP, Arts. 2:345(2), 2:351 and 4:78 DCC, and Art. 35 of the Data Protection Act). Indeed, Citco concedes that there is no testimonial privilege for unlicensed legal personnel. Reply Decl. ¶ 6; Deckers Decl. ¶ 9. Thus, viewing the Dutch discovery system "as a whole" (Reply 1), it is clear that Citco always has known that Mr. Boonstra's communications were not immune from disclosure and Citco is not the unexpected victim of any unforeseeable conflict of law.

*(a) Dutch law provides for substantial discovery*

Although the burden of proof is on Citco, Plaintiffs demonstrated in their opposition, with extensive case citations and excerpts from Dutch literature, that document discovery has been an integral part of Dutch civil procedure for over a decade. Koppenol-Laforce Decl. ¶¶ 36-46. Citco's Dutch counsel does not deny that there were *hundreds* of published decisions involving document requests pursuant to Article 843a during 2002-2009, and that "a substantial portion" of those requests were granted in whole or in part. Koppenol-Laforce Decl. ¶ 52; *see* Eijsbouts Decl. ¶ 7 (document disclosure "is quite extensive and often voluminous").

As for the many authorities Prof. Koppenol-Laforce discusses in her Declaration (¶¶ 36-46), Mr. Deckers admits that the *Project X* case and *Jonkman v. Dekker* involved a "broad reading of Article 843a DCCP," thus contradicting his theory that broadly and generally described document requests will never be granted. Reply Decl. ¶¶ 11, 23.

Mr. Deckers also does not deny that the court in *Shetland Pony Park Slagharen* (where the defendant had requested "*all* the manager's emails") rejected Mr. Deckers' specificity requirement and "ruled that it was not necessary for the company to describe each email

---

[7] In the Netherlands, witness testimony represents an alternative method for parties to inquire about documents without (as Citco's Dutch counsel admits) *any* right for unlicensed in-house lawyers like Mr. Boonstra to refuse to disclose the documents' content. *See* Reply Decl. ¶ 6; Deckers Decl. ¶ 9; Koppenol-Laforce Decl. ¶¶ 4, 53.

BOIES, SCHILLER & FLEXNER LLP

Honorable Victor Marrero
October 10, 2013
Page 5

individually." *Id.* Nor does Mr. Deckers deny that in *Trientalis*, the requesting party was able to obtain his entire correspondence with his assistant without identifying specific emails. *Id.* ¶ 25. Nor does Mr. Deckers deny that in *Theodoor Gilissen Bankiers*, the Dutch Supreme Court ordered production, even though the requesting party did not describe the documents with specificity and could not demonstrate they actually existed. *Id.* ¶ 24. He merely argues that all these cases were "unique," "particular," and "unusual" (*id.* ¶¶ 24-26).

Mr. Deckers fails to explain, however, why any of these holdings should be limited to its facts. He provides no quotations, no pin cites, and no translations of the cases he purports to distinguish. *See id.* ¶¶ 19-26. Clearly, there is nothing fact-specific about the general observation in *Allianz Nederland* that "if Article 843a DCCP only related to documents of which the content is in principle already known, the practical application of Art. 843a . . . would run counter to the intent of the Legislature." Koppenol-Laforce Decl. ¶ 37. Similarly, while the court in *Ernst & Young Participaties* held that a document request must be clear enough to know what documents it refers to (Reply Decl. ¶ 18; Koppenol-Laforce Decl. ¶ 36) (which is not inconsistent with broad discovery), Mr. Deckers points to nothing in this decision to suggest its holding that "[t]he case law is settled that the content of the requested documents need not be known beforehand" is limited to the particular circumstances of that case. *See* Koppenol-Laforce Decl. ¶ 37. *Theodoor Gilissen Bankiers*, *Allianz*, and *Ernst & Young* demonstrate that an isolated 1988 remark by a former Minister of Justice (*see* Reply Decl. ¶ 9 (document disclosure should be limited to documents already known to requesting party)) does not reflect the state of Dutch law today or during the 2000-2008 time period, and that there is in fact no rule limiting discovery to documents that the requesting party already knows. In light of the hundreds of Dutch cases contradicting the total absence of disclosure that Citco claims, Citco's theory that discovery limitations under Dutch law would have protected the Boonstra Documents must be rejected.[8]

*(b) The Boonstra Documents satisfy discovery requirements of Dutch law*

Citco's Dutch counsel admits that Dutch law's specificity requirement in actuality requires no more than a description sufficient to (i) clarify "what documents the request concerns" and (ii) determine if the requesting party has an evidentiary interest in the documents requested. Reply Decl. ¶ 11. Neither of these purposes requires the identification of individual documents, thus undercutting Citco's claim that each document requested must be "readily-identifiable." Reply 3.[9]

---

[8] Citco tries to bolster its position by pointing to litigation against it in Amsterdam arising from the Fairfield Sentry Fund's collapse. Mr. Deckers serves as trial counsel in that action, where there apparently has been no discovery to date. There is no record, however, that the Dutch plaintiffs requested the Boonstra Documents; they may well have forsaken discovery for reasons unrelated to the scope of discovery, *e.g.*, because their claims under Dutch law require different proof than the U.S. law claims at issue here, or because Dutch law requires the requesting party to pay the costs of discovery.

[9] In any event, the Boonstra Documents now at issue are specifically identified in Citco's privilege log.

BOIES, SCHILLER & FLEXNER LLP

Honorable Victor Marrero
October 10, 2013
Page 6

For the first time in its Reply, Citco argues that the Boonstra Documents would be shielded from discovery if (hypothetically) Plaintiffs had sued in the Netherlands because the requests supposedly do not meet other requirements of Dutch law. As Citco concedes, however, the requirement that the documents must "relate to" the alleged cause of action requires no more than that "the requesting party . . . prove the request's *relevance*." Reply 4 (emphasis added). Nothing further is required. The purported limitation that the documents must "relate to an *established* legal relationship" between the parties (Reply 3; emphasis added), is an invention of Citco's brief-writer. There is no such language in the parties' declarations. *See* Reply Decl. ¶¶ 28-29, 34 (acknowledging that tort allegations may suffice and that an existing contractual relationship is not required).[10]

Citco further contends that Plaintiffs would not meet the relevance requirement under Dutch law. Reply 4; Reply Decl. ¶ 36. Citco bases this assertion on its Dutch counsel's vague *ipse dixit* that under Dutch tort law "there are good *grounds to argue* . . . that Citco had no duty and could not take into account the interests of investors in the Fairfield Funds." *Id.* (emphasis added). Needless to say, a prediction by Citco's trial lawyer of what he might argue, with or without success, in a hypothetical case that Plaintiffs never filed, is not "evidence" of Dutch law.[11]

### IV. Globalization Does Not Require this Court to Impose U.S. Privilege Law on the World

Complaining about a purported "patchwork quilt of regulations," the ACC and Citco argue that "the realities of today's global legal profession" require that foreign in-house counsel should not have to worry about "the whim of a plaintiff's forum selection." ACC Br. 1-2; *see* Reply 8. Consequently, Citco advocates that when a country does not protect communications by in-house lawyers, the courts "should apply American privilege law." Reply at 7. Citco and ACC ignore, however, that unification of the world's privilege laws by imposing U.S. law is not the role of this Court and is flatly inconsistent with realistic notions of comity.

The ACC has been lobbying for years, largely unsuccessfully, for Europe to adopt U.S.-

---

[10] Citco misquotes Plaintiffs' expert as conceding that an existing contractual relationship is required. Plaintiffs' expert did *not* state that "the documents must 'relate to the relationship at issue.'" Reply 5. Rather, she stated that the documents must "relate to the relationship *(i.e., the tort, contract, or other cause of action)* at issue." Koppenol-Laforce Decl. ¶ 25 (emphasis added). In other words, the documents must be relevant to the claim or defense, as they must under Rule 26(b)(1). *See* Reply Decl. ¶ 7 (discovery through testimony must be "relevant to the litigation at hand").

[11] This also disposes of Citco's contention that there is no "legitimate interest," which Citco claims must be based on a legal relationship between the litigants under Dutch tort law. Reply 4; Reply Decl. ¶ 37. As Plaintiffs' expert explains (Koppenol-Laforce Decl. ¶ 25) and Citco's Dutch counsel does not dispute, the "legitimate interest" prong requires no more than an *evidentiary* interest in obtaining the requested documents.

BOIES, SCHILLER & FLEXNER LLP

Honorable Victor Marrero
October 10, 2013
Page 7

style attorney-client privilege. To that end, it intervened in the *Akzo Nobel* litigation in the European Court of Justice, but the court did not adopt its views. ACC Br. 2, 7. Similarly, the Netherlands Supreme Court rejected a privilege for unlicensed in-house lawyers, who are not subject to regulatory oversight, by limiting the privilege only to licensed in-house *advocaten*. Koppenol-Laforce Decl. ¶¶ 18-19; Eijsbouts Decl. ¶ 5.

As for ACC's plea for recognition of its members' globalized law practices, Dutch global giants like Akzo Nobel, Royal DSM, and Royal Philips Electronics – all (like Citco) headquartered in the Netherlands – with, respectively, 60,000, 23,500 and 120,000 employees around the world (Eijsbouts Decl. ¶ 12), are doing just fine. Dutch law readily enables companies to protect their in-house lawyers' legal advice from disclosure, while having "operations that span national boundaries:" The lawyer need only be admitted to the local Dutch bar and satisfy its regulatory requirements, while employers like Citco need only uphold the in-house lawyer's independence by signing a professional charter. *See* Koppenol-Laforce Decl. ¶¶ 16-17. The fact that neither Mr. Boonstra nor Citco is willing to take these steps does not mean that Magistrate Judge Maas' Order is preventing the global expansion of Dutch businesses.

As Plaintiffs' expert declarations prove without dispute, many other Dutch in-house lawyers, with their employers' cooperation, have become *advocaten* precisely to ensure the confidentiality of their communications. *Id.* ¶ 54; Eijsbouts Decl. ¶ 6. Thus, application of Dutch privilege law here is a proper implementation of comity principles and in no way "fundamentally threatens the attorney-client relationship on a global scale." Reply 8. It simply recognizes what both the Netherlands and the United States already require, namely, admission to the bar to claim the protections of attorney-client privilege.

Respectfully yours,

David A. Barrett

cc: All counsel of record (via email)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Plaintiffs.

/SO ORDERED.

10-11-13
DATE          VICTOR MARRERO, U.S.D.J.