USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/8/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
PASHA S. ANWAR, et al.,           :
                                  :
                Plaintiffs,       :     09 Civ. 0118 (VM)
                                  :
        -against-                 :
                                  :
FAIRFIELD GREENWICH LIMITED,      :
et al.,                           :
                                  :
                Defendants.       :     **DECISION AND ORDER**
------------------------------ X


**VICTOR MARRERO, United States District Judge.**

On July 8, 2013, Magistrate Judge Frank Maas, to whom
this case was referred for supervision of pretrial
proceedings, issued a discovery order (the "Order"), a copy
of which is attached and incorporated to this Decision and
Order, granting a request by Plaintiffs to compel testimony
by Renger Boonstra ("Boonstra"), an unlicensed in-house
lawyer at Citco Bank Nederland, and overruling claims of
attorney-client privilege by defendants The Citco Group
Ltd., Citco Fund Services (Europe) B.V., Citco (Canada)
Inc., Citco Global Custody N.V., Citco Bank Nederland N.V.
Dublin Branch, and Citco Fund Services (Bermuda) Ltd.
(collectively, the "Citco Defendants" or "Citco"). See
Anwar v. Fairfield Greenwich Ltd. ("Discovery Order"), No.
09 Civ. 0118, 2013 WL 3369084 (S.D.N.Y. July 8, 2013).

1

Before the Court are the objections of the Citco Defendants, filed pursuant to Federal Rule of Civil Procedure 72(a), to the Order. The relevant facts and prior proceedings are discussed in Magistrate Judge Maas's decision, familiarity with which is assumed. See Discovery Order, 2013 WL 3369084, at *1. For the reasons discussed below, the Citco Defendants' objections are denied and the Order is affirmed.

## I.   **STANDARD OF REVIEW**

A district court evaluating a magistrate judge's order with respect to a matter not dispositive of a claim or defense may adopt the magistrate judge's findings and conclusions as long as the factual and legal bases supporting the ruling are not clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Thomas v. Arn, 474 U.S. 140, 149 (1985). "Pretrial discovery matters, 'including those regarding privilege issues, are nondispositive matters.'" Gruss v. Zwirn, No. 09 Civ. 6441, 2013 WL 3481350, at *5 (S.D.N.Y. July 10, 2013) (quoting Eisai Ltd. v. Dr. Reddy's Labs., Inc., 406 F. Supp. 2d 341, 342 (S.D.N.Y. 2005)). A district judge, after considering any objections by the parties, may accept, set aside, or modify, in whole or in part, the findings and recommendations of the magistrate judge with

2

regard to such matters. <u>See</u> Fed. R. Civ. P. 72(a); <u>see</u> <u>also</u> <u>DeLuca v. Lord</u>, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994).

"Magistrate judges are given broad latitude in resolving discovery disputes, including questions of privilege." <u>Gruss</u>, 2013 WL 3481350, at *5 (<u>quoting</u> <u>Thompson v. Keane</u>, No. 95 Civ. 2442, 1996 WL 229887, at * 1 (S.D.N.Y. May 6, 1996)). "[T]hat reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision." <u>Tiffany & Co. v. Costco Wholesale Corp.</u>, No. 13 Civ. 1041, 2013 WL 5677020, at *1 (S.D.N.Y. Oct. 18, 2013) (second alteration in original) (internal quotation marks omitted). "Thus, [t]he party seeking to overturn a magistrate judge's decision . . . carries a heavy burden." <u>Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP</u>, No. 09 Civ. 08083, 2011 WL 2946380, at *1 (S.D.N.Y. July 14, 2011) (alteration in original) (internal quotation marks omitted) (denying defendants' Rule 72(a) objections and affirming magistrate judge's determination on attorney-client privilege and document production).

## II.  <u>DISCUSSION</u>

The Court has reviewed the Order, the Citco Defendants' objections (Dkt. Nos. 1160, 1198), and Plaintiffs' response to the objections (Pls.' Mem. of Law

in Opp'n to the Citco Defs.' Rule 72(a) Objections to Magistrate Judge Maas' July 8, 2013 Disc. Order, filed under seal, see Dkt. No. 1182), as well as the documents accompanying the parties' submissions regarding this matter and the amicus letter submitted on behalf of the Association of Corporate Counsel (Dkt. No. 1194).[1]  The Court is not persuaded that the Order is clearly erroneous or contrary to law, and therefore accords it the substantial deference due to a magistrate judge's discovery orders.  See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990).  Accordingly, the Court affirms the Order based on the pertinent findings, reasoning, and controlling authority upon which it is grounded.

---

[1]  The Court received Plaintiffs' letter (Dkt. No. 1202) in response to the September 18, 2013 amicus letter and the Citco Defendants' reply brief, as well as the Citco Defendants' letter dated October 11, 2013 in response to Plaintiffs' letter.  The Court notes that Plaintiffs' letter is a sur-reply filed without permission of the Court and does not identify new controlling law, and therefore will not be considered.  See Indiv. Practices of U.S. Dist. Ct. J. Victor Marrero, S.D.N.Y., at 3 ("Sur-reply memoranda will not be accepted without prior permission of the Court and then only in the rare instances in which new controlling law is promulgated after the filing of the reply papers.").  Additionally, the Court received and considered letters from Plaintiffs and the Citco Defendants, dated October 28, 2013 and November 4, 2013, respectively, concerning Judge Scheindlin's recent opinion in Wultz v. Bank of China Ltd., No. 11 Civ. 1266, 2013 WL 5797114 (S.D.N.Y. Oct. 25, 2013).

A.   CHOICE OF LAW ANALYSIS

In granting Plaintiffs' motion to compel Boonstra's testimony, Magistrate Judge Maas properly rejected Citco's privilege assertions under United States and Dutch law. See Discovery Order, 2013 WL 3369084, at *1 ("There is no need to resolve th[e] question" of whether Mr. Boonstra's communications touch base with the United States or the Netherlands "because the same result obtains whether the communications 'touch base' here or in the Netherlands.").

Judge Maas properly stated the applicable legal standard for determining which country's law to apply to a privilege dispute involving foreign attorney-client communications. See Discovery Order, 2013 WL 3369084, at *1. In making such a choice of law determination, courts in this Circuit consider the country with which the communications "touch base." See Gucci Am., Inc. v. Guess?, Inc. ("Gucci I"), 271 F.R.D. 58, 64-65 (S.D.N.Y. 2010). In this analysis, a court should "apply the law of the country that has the predominant or the most direct and compelling interest in whether [the] communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." Astra Aktiebolag v. Andrx Pharms., Inc., 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (internal quotation marks omitted). "The jurisdiction with

5

the predominant interest is either the place where the allegedly privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent." Id. (internal quotation marks omitted). Communications concerning legal proceedings in the United States or advice regarding United States law are typically governed by United States privilege law, while communications relating to foreign legal proceedings or foreign law are generally governed by foreign privilege law. See Gucci I, 271 F.R.D. at 65.

Judge Maas's ruling was not clearly erroneous in finding that Boonstra's communications could touch base with either the United States or the Netherlands and that the result would be the same in either case.[2] Based on the

---

[2]   Magistrate Judge Maas stated that "Mr. Boonstra's communications likely 'touch base' with the United States because they are related to legal issues arising out of the Citco Defendants' role in the administration of key feeder funds involved in the Madoff scheme." Discovery Order, 2013 WL 3369084, at *1. However, Magistrate Judge Maas also stated his conclusion that "[i]f the Plaintiffs are correct that Dutch law applies, the Boonstra communications plainly are not privileged." Id. at *2. Under the choice of law rules in Gucci I, which Magistrate Judge Maas clearly considered, a statement that Dutch law applies is equivalent to a determination that the communications at issue touch base with the Netherlands. Thus, while the Order does not state explicitly that the communications might touch base with the Netherlands, the decision's alternative grounds based on Dutch law makes clear that Magistrate Judge Maas considered the possibility that the communications touched base with the Netherlands.

record before it, the Court finds that Magistrate Judge
Maas could correctly conclude, under either the "legal
proceedings in the United States" or "advice regarding
American law" prong of the Gucci I test, at least some
portion of the communications touch base with the United
States because some of Boonstra's communications could have
concerned United States-based litigation stemming from the
Madoff scheme. See, e.g., Boonstra Decl. ¶ 5 ("Between
2000 and 2008, I was asked to provide (and, in response,
rendered) legal advice on a variety of issues regarding the
Fairfield funds.").

At the same time, the Court finds that Magistrate
Judge Maas could correctly conclude, under the
"communications relating to foreign legal proceedings or
foreign law" prong of the Gucci I test, the communications
touched base with the Netherlands. See, e.g., id. (". . .
I was asked to provide (and, in response, rendered) legal
advice . . . with respect to the terms, obligations and
provisions of [several legal agreements] — each of which is
governed by Dutch law."). Furthermore, Magistrate Judge
Maas could corectly conclude that the Netherlands is the
country with the predominant or the most direct and
compelling interest in whether the communications at issue
should remain confidential. The Netherlands is the

jurisdiction where the relationship between Boonstra and his employer was entered into and the place in which that relationship was centered at the time of the communications at issue. See id. ¶ 3 ("For the past sixteen years, I have served as an in-house attorney for Citco Bank, a Dutch banking company, in Amsterdam, The Netherlands."); id. ¶ 4 ("Today, I am the most senior lawyer at Citco Bank. . . . In this capacity, I provide various legal services to Citco Bank, including . . . responding to requests for legal advice on issues involving Dutch banking, contract and commercial law."). Therefore, Magistrate Judge Maas's determination that the communications at issue could be considered to have touched base with either the United States or the Netherlands was not clearly erroneous or contrary to law.

B.   PRIVILEGE ANALYSIS

The Court does not find clearly erroneous or contrary to law the Magistrate Judge's ruling that if indeed the communications at issue touched base with the United States and therefore United States law governs privilege, the communications with Boonstra are not privileged and must be disclosed to Plaintiffs. The general rule under United States law is that only communications between a represented party and that party's licensed attorneys are

subject to attorney-client privilege. See, e.g., Wultz v. Bank of China Ltd., No. 11 Civ. 1266, 2013 WL 5797114, at *3 (S.D.N.Y. Oct. 25, 2013) ("In order to prevail on an assertion of the attorney-client privilege the party invoking the privilege must show that: . . . (2) the person to whom communication was made (a) is a member of the bar of a court, or his subordinate"); see also Malletier v. Dooney & Bourke, Inc., No. 04 Civ. 5316, 2006 WL 3476735, at *17 (S.D.N.Y. Nov. 30, 2006) ("American law . . . gives no protection to the communications of an unlicensed attorney.").

The parties here agree that Boonstra is not a licensed attorney. See Deckers Decl. ¶ 9; Pls.' Mem. at 1. The Citco Defendants, however, contend that the communications between Boonstra and Citco are privileged because, even though Boonstra was unlicensed, Citco had a "reasonable belief" that Boonstra was its attorney. As Magistrate Judge Maas properly stated, "[n]otwithstanding the general rule that the attorney client privilege applies only to licensed attorneys, courts have found communications with non-attorneys to be privileged in limited circumstances in which the client 'reasonab[ly] believe[s] that the person to whom the communications were made was in fact an attorney.'" Discovery Order, 2013 WL 3369084, at *2

(alterations in original) (quoting Gucci Am., Inc. v.
Guess?, Inc. ("Gucci II"), No. 09 Civ. 4373, 2011 WL 9375,
at *2 (S.D.N.Y. Jan. 3, 2011)); see also In re Grand Jury
Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir. 1997)
(collecting cases in which a party's reasonable mistake of
fact provides exception to general rule that only
communications with a licensed attorney representing that
party are covered by attorney-client privilege); United
States v. Rivera, 837 F. Supp. 565, 568 n.1 (S.D.N.Y. 1993)
("It is common ground among the parties that the attorney-
client privilege attaches to confidential communications
made to an individual in the genuine, but mistaken, belief
that he is an attorney.").

Magistrate Judge Maas adequately distinguished the
facts of Gucci II, concerning an attorney who had been
previously admitted to the bar but whose bar membership
status had lapsed, see Gucci II, 2011 WL 9375, at *2, from
the facts in the present case. Boonstra is not, and has
never been, licensed in any jurisdiction and has neither
held himself out to be a licensed attorney nor performed
acts suggesting to his employer that he was admitted to the
Netherlands bar. See Discovery Order, 2013 WL 3369084, at
*2. The Court finds ample evidence to support Magistrate
Judge Maas's conclusion that the Citco Defendants could not

10

credibly claim a reasonable mistake as to Boonstra's status as a licensed attorney. The Order notes the affirmative obligation under Dutch law that the employer of a licensed in-house attorney sign a professional charter committing the employer to honor its attorney's independence. See In re X/Stichting H9 Invest, Hoge Raad der Nederlanded [Supreme Court of the Netherlands], 15 Mar. 2013, LJN BY6101 (Neth.) (citing Art. 3(3) of the Practicing In-House Regulation of Nov. 27, 1996). The Court finds persuasive Magistrate Judge Maas's conclusion that "the Citco Defendants cannot credibly argue that they were reasonably mistaken as to Mr. Boonstra's licensure status." Discover Order, 2013 WL 3369084, at *2.

Nor does the Court find clearly erroneous or contrary to law the Magistrate Judge's ruling that if, in the alternative, the communications at issue touch base with the Netherlands and therefore Dutch law governs privilege, the communications with Boonstra are still not privileged and nonetheless must be disclosed to Plaintiffs. In objecting to the Order, the Citco Defendants acknowledge that "it is true that The Netherlands does not recognize as privileged communications between a Dutch company and its unlicensed in-house legal counsel." Deckers Decl. ¶ 9. Notwithstanding such admission, Citco essentially argues

11

that the documents sought are protected from discovery not as the result of attorney-client privilege, but rather, on the basis that Dutch law provides only for "severely restricted" document discovery. See Dkt. No. 1198 at 3; Deckers Decl. ¶ 9 ("Under Dutch law, . . . there is no general obligation for parties to disclose unspecified documents for purposes of what is known in Common Law jurisdictions as discovery.") (emphasis in original); id. ¶ 10 ("Compulsory document disclosure is available in The Netherlands, but only under very limited circumstances . . . .") (emphasis in original). The Court has considered these arguments and finds them unpersuasive for the same reasons that they failed to convince Magistrate Judge Maas. The Court finds that the Order was not clearly erroneous or contrary to law in determining that the documents should be disclosed.

Plaintiffs argue credibly that the Netherlands does, in fact, have an active document production culture which creates the possibility that documents between a corporation and unlicensed, in-house counsel will have to be disclosed. See Eijsbouts Decl. ¶ 7; Koppenol-Laforce Decl. ¶ 56. Plaintiffs support their assertion with Netherlands statutes and cases that demonstrate a developed procedure for requesting and ordering document production

on vast quantities of documents covering broad time periods
and subjects.   See Koppenol-Laforce Decl. ¶¶ 20-25, 39-44
(citing numerous articles and statutes).   In addition,
Plaintiffs present articles to the Court, including a piece
written by Citco's expert, Michel Deckers, and his law
partner, which confirm that document production is an
accepted part of litigation in the Netherlands.   See, e.g.,
Michel Deckers & Berth Brouwer, Country Q&A: The
Netherlands, in 1 Dispute Resolution Handbook 2008-2009
211, 214 (Practical Law Comp. ed., 2009), available at
http://www.boekel.com/media/92762/plc%20dispute%20
resolution%20handbook%202008-2009.pdf ("It is also possible
for parties involved to order inspection of, or identical
copies of, certain documents concerning a legal
relationship in which the party or his predecessors are
involved."); Frederieke J. Leeflang, Getting the Deal
Through — Private Antitrust Litigation 86, 88 (2010),
available at http://www.boekel.com/media/88792/getting%20
the%20deal%20through%20def.pdf ("Communications between in-
house counsel and, for example, the board of directors of
the company they work for, may have to be disclosed in
civil proceedings.").

A variety of provisions of the Dutch Code of Civil
Proceedings ("DCCP") and Dutch Civil Code ("DCC") require

document disclosure in specific situations.  See Koppenol-
Laforce Decl. ¶¶ 21-24 (listing specific provisions of the
DCC and DCCP compelling document disclosure).  The general
rule stated in the DCCP is that "[a]ny person with a
legitimate interest may demand inspection, copies or
extracts of certain documents concerning a legal
relationship in which he or his predecessors is involved
from any person who has such documents in his control or
possession."  Article 843a(1) DCCP; see Koppenol-Laforce
Decl. ¶ 25.  Furthermore, a party who does not comply with
a court's document production order is subject to monetary
penalties.  See Art. 611a DCCP; Koppenol-Laforce Decl. ¶
27.  In such an instance, the court is entitled to draw
adverse inferences against the non-complying party.  See
Art. 22 DCCP; Koppenol-Laforce Decl. ¶ 26.

    Indeed, Dutch law allows wide-ranging document
disclosure.  The DCCP requires that the party seeking
disclosure describe its request with "sufficient clarity"
but does not necessitate detailed identification of the
name, date, or contents of requested documents.  See Art.
843a; Koppenol-Laforce Decl. ¶ 37.  In keeping with this
requirement, Dutch courts have ordered production of broad
categories, such as "minutes of various board meetings,"
Pryford Inv./Center Parcs N.V., [Dist. Ct. Rotterdam], 3

14

Oct. 1996, JOR 1996, 122 ¶ 5.10-5.11 (Neth.), "all documents regarding plaintiff's contractual relations with the . . . company, suppliers, or the defendant," Jonkman/Dekker, [Dist. Ct. Groningen], 22 Nov. 2002, NJ 2003, 102 ¶ 6 (Neth.), and "all correspondence," Theodoor Gilissen Bankiers, 2012:BW9244, Hoge Raad der Nederlanden [HR] [Supreme Court of the Netherlands], 26 Oct. 2012, NJ 2013, 220 ¶ 3.8.2 (Neth.). Moreover, document production is not strictly limited by quantity or time period. See Koppenol-Laforce Decl. ¶¶ 45-46.

Defendants contend that pre-trial discovery is not allowed in the Netherlands, citing the Netherlands accession to Article 23 of the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters of 1972 ("Article 23") to support its position. Deckers Decl. ¶ 9. However, although Article 23 permits the Netherlands to disregard Hague Requests from foreign countries seeking "pre-trial" discovery from a person in the Netherlands, id., the meaning of the phrase "pre-trial" in that context differs from its use in the American legal system. The Supreme Court of the Netherlands dispelled confusion over the definition of the American phrase "pre-trial" by clarifying that, in the Netherlands, "pre-trial" means the time before a proceeding is commenced. See Kilbarr

15

Corp./Holland, Hoge Raad der Nederladen [HR] [Supreme Court of the Netherlands], 11 March 1994, NJ 1995 (Neth.), 3 ¶ 3.4; Koppenol-Laforce Decl. ¶¶ 32-33.  Thus, the text of Article 23 should not be construed to suggest that the Netherlands forbids document disclosure once a case is filed.

In light of the extensive evidence mentioned above, Magistrate Judge Maas could correctly conclude that Dutch law provides for document disclosure in an active case. Plaintiffs have compellingly demonstrated that an environment of regular and extensive unprivileged document production exists in the Netherlands.  Therefore, the Court is not persuaded that in discrediting Citco's claims that Dutch discovery rules are much more limited than those of the United States, with the result Citco seeks that Boonstra's communications would be protected from disclosure, Magistrate Judge Maas's ruling was clearly erroneous or contrary to law.

For the reasons stated above and on basis of the authority cited by Magistrate Judge Maas, the Court dismisses the Citco Defendants' objections to the Order.

## III.   **ORDER**

For the reasons stated above, it is hereby

ORDERED that the objections of defendants The Citco Group Ltd., Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch, and Citco Fund Services (Bermuda) Ltd. to the Discovery Order of Magistrate Judge Maas dated July 8, 2013 (Dkt. No. 1160) are DENIED and that Order is AFFIRMED.


**SO ORDERED.**


Dated:    New York, New York
          8 November 2013

                                        VICTOR MARRERO
                                          U.S.D.J.

PASHA S. ANWAR, et al.
v.
FAIRFIELD GREENWICH LTD, et al.

09 CIV. 118

Report and Recommendation of
Magistrate Judge Frank Maas
dated July 8, 2013

Attachment to the Court's
Decision and Order
dated November 8, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

PASHA S. ANWAR, et al.,                    :

                        Plaintiffs,     :

        -against-                           :

FAIRFIELD GREENWICH LTD, et al.,     :

                     Defendants.   :

This document relates to the                :
Citco Cases

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/8/2013

**DISCOVERY ORDER**

09 Civ. 118 (VM) (FM)

JUL 2 4 2013

CHAMBERS OF
JUDGE MARRERO

**FRANK MAAS,** United States Magistrate Judge.

      This multi-district litigation consolidates numerous actions brought by investors against various funds, administrators, intermediary banks, and auditors in an attempt to recover losses arising out of the now-infamous Bernard Madoff investment scandal.  On April 25, the Plaintiffs deposed Renger Boonstra, a senior in-house lawyer at Citco Bank Nederland, one of several defendant banks alleged to have provided financial account services for the Fairfield Greenwich "feeder" funds.  During the deposition, counsel for the Citco Defendants instructed Mr. Boonstra not to answer certain questions, apparently on the theory that the Plaintiffs' inquiries related to matters protected by the attorney-client privilege.

      Mr. Boonstra is a lawyer by education, but he is not a licensed attorney.  Although licensure is not a requirement for serving as in-house counsel in the Netherlands, Dutch law does not recognize an attorney-client privilege for communications with unlicensed in-house lawyers.  Accordingly, the Plaintiffs have

requested an order overruling the Citco Defendants' privilege objections.  In addition, the

Plaintiffs seek to compel disclosure of several of Mr. Boonstra's email communications

that the Citco Defendants have withheld on privilege grounds.

The Citco Defendants have a rather different view of the matter.  They

argue that American – not Dutch – law governs the dispute.  As a consequence, the Citco

Defendants contend that their communications with Mr. Boonstra are privileged even if

he was unlicensed because Citco had a "reasonable belief" that Mr. Boonstra was its

attorney.

In determining which country's law applies to a privilege dispute involving

foreign attorney-client communications, courts in this Circuit consider the country with

which the communications "touch base." Gucci America, Inc. v. Guess?, Inc. ("Gucci

I"), 271 F.R.D. 58, 64-65 (S.D.N.Y. 2010).  Under this analysis, the Court applies "the

law of the country that has the 'predominant' or 'the most direct and compelling interest'

in whether [the] communications should remain confidential, unless that foreign law is

contrary to the public policy of this forum." Astra Aktiebolag v. Andrx Pharmaceuticals,

Inc., 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (quoting Golden Trade, S.r.L. v. Lee Apparel

Co., 143 F.R.D. 514, 522 (S.D.N.Y. 1992)).  "The jurisdiction with the 'predominant

interest' is either 'the place where the allegedly privileged relationship was entered into'

or 'the place in which that relationship was centered at the time the communication was

sent.'" Id.  Thus, American law typically applies to communications concerning "legal

proceedings in the United States" or "advice regarding American law," while

2

communications relating to "foreign legal proceeding[s] or foreign law" are generally governed by foreign privilege law. Gucci I, 271 F.R.D. at 65.

Mr. Boonstra's communications likely "touch base" with the United States because they are related to legal issues arising out of the Citco Defendants' role in the administration of key feeder funds involved in the Madoff scheme. I say "likely" because the communications at issue were not provided to me for in camera review, and my understanding of their contents is therefore based solely on the general descriptions set forth in the parties' letters. There is no need to resolve this question, however, because the same result obtains whether the communications "touch base" here or in the Netherlands.

If the Plaintiffs are correct that Dutch law applies, the Boonstra communications plainly are not privileged. Although Dutch law affords a "legal professional privilege" to licensed in-house counsel, there is no recognized Dutch privilege for unlicensed lawyers. In re X v. Stichting H9 Invest, HR Mar. 15, 2013, LJN BY6101. Nor does there appear to be any exception to that rule in circumstances where a client reasonably believes that its conversations are privileged.

If, on the other hand, the Citco Defendants are correct that American law governs, Mr. Boonstra's communications still are not privileged. In the United States, the attorney-client privilege generally applies only to communications with attorneys who are licensed to practice law. In re Grand Jury Subpoenas Dated January 20, 1998, 995 F. Supp. 332, 337 (E.D.N.Y. 1998) (Raggi, J.). Since Mr. Boonstra is unlicensed, no privilege could attach to his communications with the Citco Defendants.

3

Notwithstanding the general rule that the attorney client privilege applies only to licensed attorneys, courts have found communications with non-attorneys to be privileged in limited circumstances in which the client "reasonab[ly] believe[s] that the person to whom the communications were made was in fact an attorney." Gucci America, Inc. v. Guess?, Inc. ("Gucci II"), No. 09 Civ. 4373 (SAS), 2011 WL 9375, at *2 (S.D.N.Y. Jan. 3, 2011). In Gucci II, for example, the court applied this exception to the communications of a Gucci in-house lawyer in California who, despite having been admitted to the bar in California and two other jurisdictions, was unauthorized to practice law in California because his bar membership status there was "inactive." Id. at *4-5. To support its privilege claim, Gucci submitted, among other things, six declarations from its present and former executives stating that they considered the in-house lawyer to be an attorney. In addition, Gucci adduced evidence that the lawyer routinely appeared in court and before administrative agencies, and that it had paid his California bar membership fees throughout his tenure as in-house counsel. Id. at *5. Based upon this evidence, the court concluded that Gucci had demonstrated that it reasonably believed its lawyer was a licensed attorney, thus enabling it to assert privilege with respect to its communications with him. Id.

The facts here are not at all comparable to those in Gucci II. At the outset, it is undisputed that Mr. Boonstra is not – and never has been – licensed in any jurisdiction. Second, there is no evidence that Mr. Boonstra ever held himself out as a licensed attorney or performed tasks (such as appearing in court) that would have suggested that he was admitted to the Netherlands bar. Third, although in-house counsel

4

must be admitted to the bar in order to practice in the United States, in-house lawyers in the Netherlands are permitted to be, and frequently are, unlicensed. Moreover, Dutch law requires that the employer of a licensed in-house attorney sign a professional charter committing the employer to honor its attorney's independence. See In re X v. Stichting H9 Invest, HR Mar. 15, 2013, LJN BY6101 (citing Art. 3(3) of the Practicing In-House Regulation of Nov. 27, 1996). Given that affirmative obligation, the Citco Defendants cannot credibly argue that they were reasonably mistaken as to Mr. Boonstra's licensure status.

Finally, even if the Citco Defendants mistakenly believed that Dutch law protected their communications with an unlicensed in-house attorney, the reasonable belief exception would not apply. Such an argument necessarily is predicated upon a mistake of law, but the reasonable belief exception applies only in situations where the client makes an "excusable mistake of fact." A.I.A. Holdings, S.A. v. Lehman Bros., Inc., No. 97 Civ. 4978 (LMM) (HBP), 2002 WL 31385824, at *4 (S.D.N.Y. Oct. 21, 2002). Indeed, a "client's beliefs, subjective or objective, about the law of privilege [do not] transform an otherwise unprivileged conversation into a privileged one." In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923-24 (8th Cir. 1997). The Citco Defendants' erroneous views on Dutch privilege law therefore cannot form the basis for the relief they presently seek.

5

Accordingly, the Citco Defendants' privilege objections are overruled and the motion to compel is GRANTED.

SO ORDERED.

Dated:        New York, New York
              July 8, 2013

                                        FRANK MAAS
                                        United States Magistrate Judge

Copies to:

Hon. Victor Marrero
United States District Judge

All counsel (via ECF)

6