

**KATZ | BARRON**
**SQUITERO | FAUST**

MIAMI
2699 S. BAYSHORE DRIVE
SEVENTH FLOOR
MIAMI, FL 33133-5408

305-856-2444
305-285-9227 FAX

www.katzbarron.com

November 19, 2013

*By fax to (212) 805-6382*

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/20/13
```

Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

>   Re:   *Anwar, et al. v. Fairfield Greenwich Limited, et al.*,
>         Case No. 09-cv-118 (VM)(THK), Standard Chartered Cases
>
>   This correspondence relates to: *Barbachano v. Standard Chartered Bank International (Americas) Limited, et al.*, 1:11-cv-03553-VM

Dear Judge Marrero:

We write on behalf of Plaintiff Teresa Barbachano, one of the Plaintiffs in the Standard Chartered Cases ("SC Cases"). This letter responds to the Standard Chartered Defendants' November 12, 2013 letter seeking a pre-motion conference regarding a possible motion to dismiss the SC Cases under the Securities Litigation Uniform Standards Act ("SLUSA"). For the reasons set forth in the correspondence from Plaintiffs' liaison counsel, which Ms. Barbachano adopts, Defendants' request should be denied. We write separately, however, to set forth the reasons why Defendants' SLUSA arguments are especially misplaced with regard to Ms. Barbachano.

### A.  Ms. Barbachano's Suitability Claims Are Unique

From the beginning, it has been (and continues to be) Ms. Barbachano's position that her case should not have been transferred to this multidistrict litigation because legal and factual questions unique to her case predominate. In particular, Ms. Barbachano's complaint (and her amended complaint) raise issues only pertaining to her – that is, the suitability (or lack thereof) of investment advice that SCBI rendered to Ms. Barbachano regarding her entire portfolio, and not merely the Defendants' advice and the lack of due diligence with regard to Fairfield Sentry. *See, e.g.*, Compl. ¶ 40 ("Defendants breached their fiduciary duties that they owed to Barbachano by causing her to make investments unsuited to her investment objectives and risk allocation, by causing Barbachano to obtain a multi-million dollar loan from the Defendants rather than liquidating part of her investments, and by often making investment decisions without obtaining Barbachano's written authorization. The Defendants knew or should have known the investments were unsuitable for Barbachano . . ."); Amended Compl. ¶ 29 ("by June 2008, the allocation of Barbachano's portfolio to cash and bonds was a mere eleven (11) percent, that allocation of assets was unsuitable to Barbachano's investment objective of capital preservation and growth and her risk tolerance of moderate conservative.").

Honorable Victor Marrero
Page 2

Thus, Ms. Barbachano opposed the Defendants' attempt to have her case transferred from the Southern District of Florida (where it was originally filed) to this forum. Initially, the Clerk of the Multidistrict Panel agreed, denying Defendants' transfer request on March 1, 2011. However, upon Defendants' motion, which Ms. Barbachano opposed, the multidistrict panel ordered the transfer of Ms. Barbachano's case on May 20, 2011. In so doing, the panel expressly set forth that this Court may suggest remand if the circumstances provided, stating: "To the extent plaintiff's claims present some individual questions, the transferee judge is well suited to handle those issues or *to suggest remand whenever he deems appropriate*." (*See* Transfer Order, attached hereto as Exhibit A, emphasis supplied). This is now the occasion for remand if the Court is inclined to grant the Defendants' request.

Indeed, having engineered the transfer of this case, Defendants now seek to profit by it, claiming that Ms. Barbachano's case should be considered part of a "covered class action" because her case is part of this multidistrict litigation. *See* Defendants' November 12, 2013 Letter, at 1 n.1. However, if Defendants had made that claim to the multidistrict panel when it sought transfer, the panel would surely have denied the request, especially given the panel's acknowledgment that this Court could revisit the transfer order whenever it saw fit. The panel, we respectfully submit, did not order the transfer of Ms. Barbachano's action only to see her case dismissed because of that decision. *Cf.* 28 U.S.C. § 1407(a) ("[T]ransfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings *will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions*.") (emphasis supplied).

Moreover, since transfer, Ms. Barbachano has continued to litigate separately the issues unique to her case and she has maintained her own procedural rights. Thus, when the Court dismissed part of her original complaint, Ms. Barbachano moved for leave to amend based on her rights under Rule 15(a), Fed. R. Civ. P. – rights that this Court recognized when it granted her motion. Likewise, Ms. Barbachano (and the Defendants) have conducted discovery unique to Ms. Barbachano's case, including the depositions of former and present bank employees, Ms. Barbachano, and her husband. Also, Ms. Barbachano has served her own expert reports -- specific to Ms. Barbachano's claims -- as well as relying upon the other expert reports submitted on behalf of all Plaintiffs.

For these reasons, therefore, Ms. Barbachano's case should be remanded if the Court is inclined to grant the Defendants' request to dismiss based on SLUSA. In the lesser alternative, the Court should permit Ms. Barbachano leave to amend her complaint to the extent that the Court believes that any of Ms. Barbachano's claims are subject to dismissal under SLUSA.

B.    *Trezziova* is Inapposite

Putting remand aside, SLUSA is not applicable to Ms. Barbachano's case and the Second Circuit's recent decision in *Trezziova v. Kohn* (*In re Herald, Primeo & Thema Sec. Litig.*), 730 F.3d 112 (2d Cir. 2013), is inapposite. Ms. Barbachano claims – even those regarding Standard Chartered's failure to conduct reasonable due diligence of Fairfield – arise from her relationship with the Defendants. *See, e.g.*, Amended Compl. ¶ 66 (Barbachano and the Defendants "shared a relationship whereby Barbachano reposed her trust and confidence in Defendants regarding

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, ENGLISH & ALLEN, P.A.
2699 S. BAYSHORE DRIVE, SEVENTH FLOOR, MIAMI, FLORIDA 33133-5408 • 305-856-2444 • 305-285-9227 FAX

Honorable Victor Marrero
Page 3

their investment recommendations and decisions."); *id.* ¶ 67 ("Defendants owed Barbachano fiduciary duties of loyalty and care, including duties to make suitable investment recommendations and decisions only after conducting reasonable due diligence, researching potential investments, and disclosing all material facts, including the risks involved in any investment."); *id.* ¶ 68 ("Defendants also owed Barbachano fiduciary duties to render investment and financial advice suitable to her investment objectives and risk tolerance, including suitable recommendations regarding the asset allocations contained in Barbachano's portfolio.").

In contrast, in *Trezziova*, the court held that claims against Madoff's bankers, JPMorgan and BNY, arising from their material assistance to, and constructive or actual knowledge of, Madoff's Ponzi scheme fell within the ambit of SLUSA – that is, the claims were founded on those defendants' direct assistance to the Ponzi scheme. As the Second Circuit stated:

> Plaintiffs, however, contend that it is inappropriate under SLUSA to elide their purchase of "uncovered" interests in foreign feeder funds with Madoff's "downstream" transactions in covered securities. This argument, however, ignores the fact that, on the very face of plaintiffs' complaints, the liability of JPMorgan and BNY is *predicated not on these banks' relationships with plaintiffs or their investment in the feeder funds but on the banks' relationship with, and alleged assistance to, Madoff Securities' Ponzi scheme*, which indisputably engaged in purported investments in covered securities on U.S. exchanges.

*Id.* at 118-19 (citation omitted, emphasis added). Thus, liability of BNY and JPMorgan was dependent on their relationship with Madoff, and not on those defendants' relationship with the plaintiffs in that case. The exact opposite is true here.

Likewise, in *Trezziova*, the court held SLUSA applicable because liability was predicated on the complicity of defendants with Madoff. As the Second Circuit explained, "[t]he complaints, fairly read, charge that JPMorgan and BNY knew of the fraud, failed to disclose the fraud, and helped the fraud succeed–in essence, that JPMorgan and BNY were complicity (sic) in Madoff's fraud." *Id.* at 119. However, Ms. Barbachano's case – even that part of it related to due diligence of Fairfield – is not based on the claim that SCBI was complicit in Madoff's fraud. The decision in *Trezziova* is, therefore, inapplicable to Ms. Barbachano's case for this reason as well.

### C.  Conclusion

For the forgoing reasons, and the reasons stated by Plaintiffs' Liason Counsel in his letter, the Court should deny Standard Chartered's request for a pre-motion conference regarding SLUSA. If, however, the Court is inclined to grant Defendants' request and dismiss the actions in this multidistrict litigation, then the Court should remand Ms. Barbachano's case to the Southern District of Florida or, in the lesser alternative, grant Ms. Barbachano leave to amend her complaint to withdraw any claim to the extent that the Court believes such claim is subject to SLUSA.

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, ENGLISH & ALLEN, P.A.
2699 S. BAYSHORE DRIVE, SEVENTH FLOOR, MIAMI, FLORIDA 33133-5408 • 305-856-2444 • 305-285-9227 FAX

Honorable Victor Marrero
Page 4


Respectfully submitted,

Katz Barron Squitero Faust

H. Eugene Lindsey
HEL/kem
Enc.

Cc: Counsel in the Standard Chartered Cases


The Clerk of Court is directed to enter into the public record of this action, the letter above submitted to the Court by Plaintiff Teresa Barbachano.

**SO ORDERED.**

9-19-13
DATE    VICTOR MARRERO, U.S.D.J.

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, ENGLISH & ALLEN, P.A.
2699 S. BAYSHORE DRIVE, SEVENTH FLOOR, MIAMI, FLORIDA 33133-5408 • 305-856-2444 • 305-285-9227 FAX

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: FAIRFIELD GREENWICH GROUP
SECURITIES LITIGATION
    Joaquina Teresa Barbachano Herrero v. Standard Chartered Bank    )
        International (Americas) Limited, et al.,                    )
        S.D. Florida, C.A. No. 1:10-24387                            )    MDL No. 2088

### TRANSFER ORDER

**Before the Panel:**[*] Pursuant to 28 U.S.C. § 1407(c)(ii), defendants Standard Chartered Bank International (Americas) Limited and Standard Chartered PLC (collectively Standard Chartered) have moved to transfer the above-captioned action (*Herrero*) to MDL No. 2088. Responding plaintiff opposes the motion.

After considering all arguments of counsel, we find that *Herrero* involves common questions of fact with actions in this litigation previously transferred to MDL No. 2088, and that transfer will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Moreover, transfer is appropriate for reasons set out in our original order directing centralization. In that order, we held that the Southern District of New York was an appropriate Section 1407 forum for actions arising out of investments in Fairfield Greenwich Group (Fairfield) funds which invested with Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC (Madoff/BMIS). *See In re: Fairfield Greenwich Group Sec. Litig.*, 655 F.Supp.2d 1352 (J.P.M.L. 2009).

The opposing *Herrero* plaintiff argues that although *Herrero* shares questions of fact with previously centralized actions relating to allegations that her investment adviser failed to conduct adequate due diligence of Fairfield Sentry fund and Madoff/BMIS before recommending this fund as an investment, questions of fact unique to *Herrero* will predominate over these common factual issues. While there undoubtedly will be some unique factual questions in *Herrero* as to the suitability of the investments recommended for plaintiff's portfolio and to a loan she obtained through Standard Chartered, common factual questions between *Herrero* and the MDL No. 2088 actions are sufficiently numerous and complex to warrant inclusion of *Herrero* in MDL proceedings. The *Herrero* plaintiff's claims will turn, in large part, on factual questions concerning the Fairfield funds. For example, the extent and adequacy of Standard Chartered's due diligence directly implicates Fairfield's due diligence of, and representations regarding, BMIS and Madoff. Discovery in *Herrero* necessarily will

---

[*] Judge Barbara S. Jones did not participate in the decision of this matter.


EXHIBIT A

-2-

implicate Fairfield's knowledge of, communications with, and representations concerning BMIS and Madoff, which will directly overlap with the witnesses and documentary discovery in MDL No. 2088. Transfer under Section 1407 is not dependent upon an identity of parties and legal issues, but rather on the existence of common questions of fact. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp.2d 1380 (J.P.M.L. 2004); *In re Gypsum Wallboard*, 303 F. Supp. 510 (J.P.M.L. 1969). To the extent plaintiff's claims present some individual questions, the transferee judge is well suited to handle those issues or to suggest remand whenever he deems appropriate.

IT IS THEREFORE ORDERED that pursuant to 28 U.S.C. § 1407, this action is transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Victor Marrero for inclusion in the coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
John G. Heyburn II
Chairman

Kathryn H. Vratil           W. Royal Furgeson, Jr.
Frank C. Damrell, Jr.       Paul J. Barbadoro