# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY



November 12, 2013

By Fax

Honorable Victor Marrero,
   United States District Judge,
      Daniel Patrick Moynihan United States Courthouse,
         500 Pearl Street,
            New York, New York 10007.

      Re:    *Anwar, et al.* v. *Fairfield Greenwich Ltd., et al.*, No. 09-CV-118 (S.D.N.Y.) – Standard Chartered Cases

Dear Judge Marrero:

      We write on behalf of the Standard Chartered Bank Defendants ("SCB") to request a pre-motion conference regarding SCB's contemplated motion to dismiss all claims pending against it in the above-captioned multi-district litigation ("MDL") under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and Rule 12(c) of the Federal Rules of Civil Procedure. On May 10, 2010, the Court determined that it would not consider SLUSA in the context of SCB's then-pending motion to dismiss, but ruled that SLUSA could "be raised later in these proceedings." (Dkt. # 448 at 2.) SCB respectfully submits that in light of the Second Circuit's recent decision in *Trezziova* v. *Kohn (In re Herald, Primeo, & Thema Securities Litigation)*, 730 F.3d 112 (2d Cir. 2013), now is an appropriate time for the Court to consider the application of SLUSA to these proceedings.

      SLUSA precludes state-law claims in a "covered class action" alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A).[1] Separate from the SCB Cases, in the *Anwar*

---

[1] This MDL is a covered class action, and the 57 "SCB Cases" that remain in the MDL also independently qualify as a "group of lawsuits" that are considered a "covered class action" because they seek damages on behalf of more than 50 persons. 5 U.S.C. § 78bb(f)(5)(B)(ii). This Court has issued the following opinions addressing the claims asserted in the SCB Cases: *Anwar* v. *Fairfield Greenwich Ltd.*, 891 F. Supp. 2d 548 (S.D.N.Y. 2012) ("*SCB IV*"); *Anwar* v. *Fairfield Greenwich Ltd.*, 826 F. Supp. 2d 578 (S.D.N.Y. 2011) ("*SCB III*"); *Anwar* v. *Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 360 (S.D.N.Y. 2010) ("*SCB II*"); *Anwar* v. *Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367 (S.D.N.Y. 2010) ("*SCB I*").

Honorable Victor Marrero                                                          -2-

class action that is also part of this MDL, this Court declined to apply SLUSA to claims arising from investments in Fairfield Sentry Ltd. ("Sentry") and related funds (the "Funds"), finding that the alleged wrongdoing was not "in connection with the purchase or sale of a covered security." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 398 (S.D.N.Y. 2010). The Court reached this determination although Sentry and the Funds purportedly had implemented Bernard Madoff's "split-strike conversion strategy," which was based on transactions in covered securities from the S&P 100 Index. The Court reasoned that there were too many "layers of separation" between Madoff's purported transactions and "the financial interests Plaintiffs actually purchased" to meet SLUSA's "in connection with" requirement. *Id.*

Recently, the Second Circuit, in *Trezziova*, adopted an "in connection with" test that applies SLUSA to bar claims brought by investors in Madoff feeder funds where the factual predicate underlying the alleged liability relates in some way to covered securities transactions. In *Trezziova*, feeder fund investors asserted claims against two banks that allegedly failed to disclose Madoff's fraud despite performing banking services for his business. 730 F.3d at 116-19 & n.7. Like plaintiffs in *Anwar*, the plaintiffs in *Trezziova* argued that their claims were not barred by SLUSA because their feeder fund investments were not made "in connection with" Madoff's "'downstream' transactions in covered securities." *Id.* at 118. The Second Circuit disagreed. Rather than assessing the layers of separation between plaintiffs' investments and Madoff's covered transactions, the Second Circuit examined whether the covered transactions had any relation, beyond being an "extraneous detail," to the factual predicate of the banks' alleged liability. *Id.* at 118-19. Because the banks provided banking services to Madoff and allegedly failed to disclose his fraud, which involved purported covered transactions, the Second Circuit held that the alleged wrongdoing was sufficiently "in connection with the purchase or sale of a covered security" to trigger SLUSA. *Id.* at 118-19 & n.5.

This broad application of SLUSA is consistent with the Second Circuit's decision in *Romano v. Kazacos*, 609 F.3d 512 (2d Cir. 2010), which held that misleading statements are made "in connection with" a securities transaction if they "induce[]" a transaction or if "plaintiffs' claims 'turn on injuries caused by acting on misleading investment advice'—that is, where plaintiff's claims 'necessarily allege,' 'necessarily involve,' or 'rest on' the purchase or sale of securities." *Id.* at 521-23 (internal citations omitted). In *Romano*, plaintiffs alleged that Morgan Stanley & Co. ("MSC") induced them to retire early, receive lump sum benefits and live off of savings that plaintiffs subsequently invested at MSC. *Id.* at 515. When plaintiffs learned that their savings would not sustain their retirement, they brought various claims against MSC for providing allegedly misleading and negligent retirement advice. *Id.* at 515-16. Plaintiffs argued that SLUSA's "in connection with" requirement was not met because they (i) challenged MSC's advice on retirement, not investments; (ii) sought to recover their foregone wages, not investment losses; and (iii) did not transact in covered securities at MSC for up to 18 months following the challenged advice. *Id.* at 522-24. The Second Circuit rejected these arguments and applied SLUSA, finding that the "essence" of plaintiffs' claims necessarily involved and rested on the securities purchases because "this was a string of events that were all intertwined," and plaintiffs, "in essence, assert[ed] that defendants fraudulently induced them to invest in securities with the expectation of achieving future returns that were not realized." *Id.*

*Trezziova* and *Romano* compel the dismissal of plaintiffs' claims against SCB. SCB's alleged wrongdoing and plaintiffs' losses both relate directly to Sentry's covered

Honorable Victor Marrero                                                                       -3-

securities transactions. Particularly, plaintiffs assert various state-law claims based on the following two principal theories of liability arising from SCB allegedly recommending Sentry:

- Plaintiffs' first theory is that SCB "failed to disclose that . . . [Sentry] was nothing more than a funnel to BLMIS." (*E.g.*, Complaint, 12-cv-9423, Dkt # 1 ("*Uziel* Compl."), ¶ 64.) This Court has interpreted claims based on this theory as turning on SCB's alleged failure to disclose "that Madoff was actually executing the split-strike conversion strategy, that he did so from the Fund's inception to its collapse, and that those transactions [*e.g.*, the transactions in 'covered securities'] purportedly were Fairfield Sentry's lifeblood." *SCB II*, 745 F. Supp. 2d at 373 n.7; *see also SCB III*, 826 F. Supp. 2d at 586.

- Plaintiffs' second theory is that SCB was required to conduct—and misled plaintiffs to believe that it had conducted—due diligence to confirm that Sentry actually executed its stated investment strategy and delivered its reported returns; and that by failing to conduct such due diligence, SCB "merely passed on and/or actively recommended . . . the misrepresentations being made by" Fairfield and others about Sentry's returns and covered securities transactions. (*E.g.*, *Uziel* Compl. ¶¶ 6, 9, 40, 43-45, 52(b) & (n), 53-54; *see also* Complaint, 10-cv-6186, Dkt # 1 Ex. A, ¶¶ 1, 4, 36, 41-45, 56(a).)

Under both theories, SCB's liability rests on alleged misstatements about covered securities transactions, *Trezziova*, 730 F.3d at 118-19, and plaintiffs' losses arose because, allegedly contrary to SCB's advice, those transactions were fraudulent, *Romano*, 609 F.3d at 522-24.

Moreover, independent from plaintiffs' express allegations, the "essence" of plaintiffs' claims is that SCB fraudulently induced plaintiffs to invest in Sentry based on the mistaken assurance that Sentry was a safe fund that was executing a strategy involving the purchase and sale of covered securities. Such claims "necessarily involve" and "rest on" covered securities transactions because, by investing in Sentry, plaintiffs were investing in Sentry's strategy involving covered securities transactions, and plaintiffs' losses are due to the fact that those transactions were fraudulent. *Id.* at 522-24; *see also, e.g., Yale M. Fishman 1998 Ins. Trust v. Gen. Am. Life Ins. Co.*, No. 11-cv-1284, 2013 WL 842642, at *6 (S.D.N.Y. Mar. 7, 2013) (collecting cases applying SLUSA to bar claims of Madoff feeder fund investors).

Finally, the procedural history of the SCB Cases "lends credence to the notion that plaintiffs' allegations are the very types of claims Congress intended to preclude in enacting SLUSA," because plaintiffs "originally pleaded federal securities fraud claims based on the same underlying 'realities' of the case." *Trezziova*, 730 F.3d at 119 n.6; *see SCB II*, 745 F. Supp. 2d at 369-71 (dismissing § 10(b) securities fraud claims against SCB).

For the foregoing reasons, SCB respectfully requests a conference to discuss a ~~motion for judgment on the pleadings pursuant to SLUSA~~.

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Standard Chartered defendants.

SO ORDERED.

11-13-13

/s/ Victor Marrero, U.S.D.J.

Respectfully submitted,

/s/ Sharon L. Nelles

Sharon L. Nelles

cc: ~~Standard Chartered Plaintiffs' Steering Committee~~ (by e-mail)