UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PASHA S. ANWAR, et al.,                       :

                Plaintiffs,              :

    -against-                                       :

                                         :

FAIRFIELD GREENWICH LTD, et al.,              :

                Defendants.              :

This document relates to the                  :
Citco and Fairfield Greenwich Cases
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/26/13

**DISCOVERY ORDER**

09 Civ. 118 (VM) (FM)

**FRANK MAAS,** United States Magistrate Judge.

        The PriceWaterhouseCoopers and Citco Defendants ("Defendants") seek to compel the United States Securities and Exchange Commission ("SEC" or "Commission") to produce two of its employees to be deposed in this consolidated action arising out of the Bernard L. Madoff Investment Securities LLC ("BLMIS") debacle. The SEC opposes that application on the ground that the discovery sought would be unduly burdensome. For the reasons set forth below, the Defendants' motion to compel is denied.

I.    Background

        In late February 2013, on the eve of the deadline for doing so, the Defendants served the SEC with subpoenas seeking the testimony of nine present and former SEC employees. The Defendants later reduced the number of witnesses that they sought to depose to four – and eventually only two – witnesses. The Defendants contend

that the testimony of these witnesses will show that the Defendants could not reasonably have been expected to discover the Madoff fraud at an earlier time since the SEC itself was unable to do so despite its employees' frequent visits and interactions with BLMIS and its officers and employees, including Bernard L. Madoff.  Notwithstanding the Defendants' effort to narrow the testimony sought, the SEC continues to object to furnishing any witnesses in this suit.  The Plaintiffs join the SEC in urging the Court to deny the Defendants' motion to compel, arguing that the testimony sought lacks "meaningful relevance" and will further protract the already lengthy pretrial proceedings in this matter.[1]

The two witnesses that the Defendants still wish to depose are Peter Lamore and Simona Suh.  Both witnesses were identified in the Plaintiffs' disclosures pursuant to Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure as persons likely to have discoverable information that the Plaintiffs might use to support their claims.  (See ECF No. 1230 (Tr. of Sept. 16, 2013) ("9/16/13 Tr." at 23)).  The SEC indicates that both witnesses currently are employed in the Division of Enforcement, where each has responsibility for several investigations.[2]

---

[1] Fact discovery in this action closed on June 30, 2013.  (See ECF No. 1025).  Pursuant to the Eighth Order Amending the Amended Case Management Plan and Scheduling Order, the parties nevertheless agreed that the SEC subpoena issue could be addressed after that time.  (See Ltr. from David A. Barrett, Esq., to the Court, dated Sept. 13, 2013 (ECF No. 1190), at 2-3).

[2] During the relevant time period, Lamore was assigned to the SEC Examination Group, where he participated in an examination of BLMIS.  During this examination, Lamore
(continued...)

After the subpoenas were served, Richard M. Humes, Associate General Counsel of the SEC, acting pursuant to the Commission's delegated authority, denied the Defendants' request to depose the nine witnesses on the ground that "authorizing these individuals to testify [] would be contrary to the public interest."  (See Pet. at Ex. 6 (Ltr. from Mr. Humes to Jonathan D. Cogan and Justin Sommers, Esqs., dated June 7, 2013 ("June 7 Letter"), at 1)).  Dissatisfied with that determination, the Defendants sought review by the Commission.  (See Pet.).  By order dated August 5, 2013, the SEC denied the Defendants' Petition, stating that they had failed to show any facts that would justify reversing Mr. Humes' ruling.  (See Aug. 19 Letter, Ex. B).  The Defendants then sought relief from this Court by letter dated August 19, 2013.[3]   Additional submissions addressing the Defendants' request were received between August 26 and October 7, 2013.  (ECF Nos. 1181, 1190, 1196, 1201).

---

[2](...continued)
spent several months at BLMIS' office and interacted on a daily basis with Bernard L. Madoff. (See id. at 9; see also Ltr. from Carl W. Mills, Esq., to the Court, dated Aug. 19, 2013 (ECF No.1229) ("Aug. 19 Letter"), Ex. A (Pet. for Review ("Petition" or "Pet.")), at 4).  Suh was a Division of Enforcement employee who interviewed and participated in the depositions of certain Fairfield Greenwich Group officers.  (Pet. at 4).

[3]     It is unclear whether defendant GlobeOp Financial Services LLC, one of the defendants that brought the Petition before the Commission, is still seeking the SEC witnesses' testimony.  (Compare Pet. at 1, with Aug. 19 Letter at 1).

II.  Discussion

    A.  Standard of Review

Before turning to the substance of the Defendants' request, the Court must consider the applicable standard of review.  In his initial denial of the Defendants' discovery requests, Mr. Humes took the position that disclosure of any additional information pursuant to the subpoenas would be contrary to the public interest.  (June 7 Letter at 1).  Mr. Humes further concluded that any potential relevance that the requested testimony might have was outweighed by the burden it would place on the SEC.  In doing so, Mr. Humes analyzed the Defendants' request under 17 C.F.R. §§ 200.30-14(f), 200.735-3(b)(2)(ii), and 240.0-4, and Rule 45 of the Federal Rules of Civil Procedure.  (Id. at 1-2).  Pursuant to the last of these C.F.R. provisions, SEC officers and employees may not disclose confidential information or documents unless the Commission or its General Counsel authorizes the disclosure as "not being contrary to the public interest." 17 C.F.R. § 240.0-4.  Rule 45 states more generically that any "party or attorney responsible for issuing . . . a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena;" it further requires the issuing court to "enforce this duty."  Fed. R. Civ. P. 45(c)(1).

As the SEC concedes, the standard that a reviewing court should employ is an issue that remains undecided in the Second Circuit.  Although the Administrative Procedure Act, 5 U.S.C. § 551, et seq., clearly gives courts the power to compel a federal agency to comply with a non-party subpoena, see U.S. Envtl. Prot. Agency v. Gen. Elec.

4

Co., 197 F.3d 597 (2d Cir. 1999) ("GE I"), the Second Circuit has not decided whether the APA also furnishes the appropriate standard of review when compliance is not forthcoming.  See U.S. Envtl. Prot. Agency v. Gen. Elec. Co., 212 F.3d 689, 689-90 (2d Cir. 2000) (withdrawing portion of GE I that indicates that 5 U.S.C. § 706(2)(A), furnishes the appropriate standard); Wultz v. Bank of China Ltd., — F.R.D. — , 2013 WL 1453258, at *3 (S.D.N.Y. Apr. 9, 2013) ("The Second Circuit has expressly declined to decide whether a final agency decision regarding a discovery request must be reviewed using the deferential standard under APA § 706 or under the Federal Rules of Civil Procedure"); Solomon v. Nassau Cnty., 274 F.R.D. 455, 458 (E.D.N.Y. 2011) ("The Second Circuit has not decided which standard of review applies in determining whether a federal agency has properly refused to comply with a subpoena:  the arbitrary and capricious standard of the APA, or the standard set forth in Rule 45 of the Federal Rules of Civil Procedure.") (quoting Abdou v. Gurrieri, No. 05 Civ. 3946 (JG) (KAM), 2006 WL 2729247, at *4 (E.D.N.Y. Sept. 25, 2006) (ellipses omitted)).  Accordingly, it is unclear whether the Defendants must show that the SEC's decision was either "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under Section 706(2)(A), or simply that the Defendants' request would not impose an "undue burden or expense" on the persons subject to their subpoenas, under Rule 45(c)(1) of the Federal Rules of Civil Procedure. [4]

---

[4] Although there are amendments to Rule 45 that will take effect on December 1, 2013, they do not alter this standard.

Courts in this Circuit have approached this problem in different ways. At least one court has applied the APA abuse of discretion standard. See In re Sept. 11 Litig., 621 F. Supp. 2d 131, 144-45 (S.D.N.Y. 2009). Another has concluded that the APA standard of review is inapplicable. See In re Darrow's Ridge, LLC, No. 07-30399 (LMW), 2009 WL 3254479, at *2 (Bankr. D. Conn. Oct. 7, 2009) (citing In re PE Corp. Secs. Litig., No. 3:00 Civ. 705 (CFD) (TPS), 2005 WL 806719, at *3 (D. Conn. Apr. 8, 2005) (Smith, J.)) (because the standard of review "is not the 'arbitrary and capricious' standard of the APA," courts must "analyze the matter under the applicable rules of procedure, statutes, and common law evidentiary rules"). Yet another has analyzed the issue under both Rule 45 and the APA. See Solomon, 274 F.R.D. 458-61 (noting that circuit courts also are divided as to the appropriate standard of review); see also Portaleos v. Shannon, Nos. 12 Civ. 1359 (LEK) (TWD), 12 Civ. 1652 (LEK) (TWD), 2013 WL 4483075, at *4 (N.D.N.Y. Aug. 19, 2013) ("Where, as here, the subpoena was issued during state-court litigation . . . , § 706 is the proper standard."). In this case, as set forth below, I find that the Defendants have not met the more requester-friendly standard set forth in Rule 45. There consequently is no need to consider the result that might obtain if the Defendants' request also were analyzed under the APA, or to decide which standard of review should apply.

  B. <u>Analysis Under Rule 45</u>

Under Rule 45, whether to allow a third-party deposition over the deponent's objection is a matter left to the Court's discretion. Aristocrat Leisure Ltd. v.

6

Deutsche Bank Trust Co. Americas, 262 F.R.D. 293, 299 (S.D.N.Y. 2009). Accordingly, the "Court engages in a balancing test to determine whether undue burden exists" because a subpoena is unreasonable. Id. (citing Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008)). In deciding the reasonableness of the subpoena, the Court must "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." Id. (quoting Wright & Miller § 2463.1). This requires the Court to "consider whether the information is necessary and whether it is available from any other source." Id. Nevertheless, "[i]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." Id. (quoting Kirschner v. Klemons, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005)).

      The Defendants contend that the testimony of Lamore and Suh is "critical" because it will help establish that the Defendants could not

> have reasonably foreseen that the Fairfield defendants would fail to perform the expected due diligence and monitoring of the Fund's investments held by BLMIS, or that the broker-dealer regulatory regime, of which the SEC was a fundamental component, would exhibit the unprecedented breakdown and failure to uncover the Madoff fraud that is recounted in detail in the SEC's Office of Inspector General's Report . . . .

(Aug. 19 Letter at 2). The Defendants further maintain that "Madoff's ability to conceal the fraud from even the most determined investigators and examiners is highly relevant to

whether the Defendants could or should have uncovered Madoff's scheme." (Id.) (quoting Pet. at 10).  Finally, they argue that the witnesses' testimony will help show the extent to which the Fairfield Greenwich Group ("FGG") was involved in the fraud.  (Id. at 2; Pet. at 10-11).

The mere fact that a government agency charged with assessing BLMIS's regulatory compliance failed to discover Madoff's wrongdoing in a timely manner hardly suggests that the Defendants could not have done so had they taken additional steps in the course of auditing FGG.  Indeed, in order to capitalize on the SEC's conceded failure to uncover the fraud at an earlier time, the Defendants would have to establish that they and the SEC were similarly situated, and that the SEC competently discharged its regulatory and investigative functions.  The first of these showings plainly cannot be made since the Defendants, unlike the SEC, were in privity with FGG.  The second showing also appears to be a stretch since the SEC Inspector General found that the Commission and its staff failed to perform a thorough and competent investigation of BLMIS and Madoff.  See SEC, Office of Investigations, Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme - Public Version, (Report No. OIG-509), at 41 (Sept. 4, 2009), available at www.sec.gov/news/studies/2009/oig-509.pdf.  The SEC is therefore correct that, rather than forming the crux of a potential defense, the testimony that the Defendants seek to obtain from Lamore and Suh would, at best, be of marginal relevance.[5]

---

[5] Moreover, to prove their defenses related to the SEC, the Defendants likely would have to conduct a trial within a trial.  Although the decision ultimately would be made by

(continued...)

The Defendants' contention that the SEC witnesses' testimony will help establish that Madoff and his colleagues would have stonewalled the Defendants in the same manner that they sidestepped the SEC's inquiries rests on even shakier ground. Indeed, it amounts to sheer speculation. The Defendants have not put forth any evidence to suggest that BLMIS would have responded to the Defendants' inquiries in the same way that it responded to the SEC. The SEC had an entirely different relationship with Madoff and his associates, and had the power to impose arguably greater consequences than the Defendants in the event it detected fraudulent activity. For this reason, Madoff had a greater incentive to lie to the SEC. Madoff's responses to the SEC thus shed little, if any, light on what he would have told the Defendants if they had asked similar questions.

The last ostensible justification for compelling the testimony of the two SEC witnesses is to establish that FGG was complicit in the Madoff fraud. (See Pet. at 3). As the Defendants explain, "[n]ot only did the SEC communicate with FGG in its earlier examinations and investigations, but the OIG reached out to FGG in 2009 for an onsite examination and information requests." (Id. at 11). The Defendants reason that, "[h]aving sought information, testimony and documents from FGG, the SEC cannot now protest that its actions have no relevance to this case." (Id.). The issue in this case, however, is what FGG and the Defendants either did or failed to do – not the SEC's

---

[5](...continued)
District Judge Marrero, to whom this case is assigned, there is no reason to believe that he would tolerate such a diversion from the critical issues in this action to which the SEC is not a party.

conduct or inaction. Moreover, the Defendants have previously received extensive disclosures concerning the issues they seek to pursue with the SEC witnesses. For example, they have had the benefit of the detailed report of the SEC's Inspector General. The SEC also has evidently furnished the Defendants with the testimony and notes of all of the individuals that the Inspector General contacted, including, apparently, Lamore and Suh. Nonetheless, the Defendants have failed to show any respect in which the testimony of Lamore or Suh would enable them to prove any fact that they cannot already prove.

Under Rule 45, any limited probative value that the SEC officials' testimony might have also must be balanced against the burden to the SEC. To be sure, the time that the two witnesses might have to divert from other investigative activities in order to appear for a seven-hour deposition is unlikely to pose an overwhelming burden to either them or the SEC. Nevertheless, both witnesses necessarily will have to prepare for their depositions, and it seems likely that both they and other SEC officials will have to devote considerable time to this related task. While this might not be a deciding factor in a case in which the testimony of the SEC officials was of critical importance, it is in this case, in which the relevance of the proposed testimony is, at best, marginal. See Solomon, 274 F.R.D. at 460 ("[C]ourts analyzing an agency's refusal to comply with a third party subpoena under the discovery rules may take into account not only the direct burdens caused by the testimony, but also 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'") (quoting Exxon

Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779 (9th Cir. 1994)).  Indeed, the Defendants evidently recognized how tangential the testimony of the proposed witnesses would be since they waited until the eleventh hour to notice any SEC personnel for depositions.

Finally, although I do not rest my decision on this ground, I also note that the burden on the SEC and its personnel could quickly become overwhelming if parties were able to compel the agency to provide testimony concerning its own failure to uncover securities fraud whenever a defendant is sued in related civil litigation.  Although the duration and scope of the Madoff fraud concededly makes this case one of a kind, if the Defendants' argument were accepted here, it could open the floodgates to discovery of this sort in many fraud cases involving prior SEC investigations.[6]

III.   Conclusion

In sum, because the testimony sought by the Defendants is of limited, if any, relevance to the issues in this case, the two proposed depositions would impose

---

[6] The Defendants have cited only one case in which the SEC was compelled to honor a subpoena issued by a private party.  (See Pet. at 12 n.10 (citing United States v. Peitz, No. 01 CR 852, 2002 WL 453601 (N.D. Ill. Mar. 22, 2002))).  Peitz, however, was a criminal case in which there was no discussion of either Section 706(2)(A) or Rule 45.  Moreover, the issue related to the enforcement of subpoenas duces tecum.  It does not appear that Commission staff were required to testify.  See Peitz, 2002 WL 453601, at *2.

undue burden and expense on the SEC. For this reason, the Defendants' letter-motion to compel is denied.

        SO ORDERED.

Dated:       New York, New York
                November 26, 2013

                                                               FRANK MAAS
                                           United States Magistrate Judge

Copies to:

Hon. Victor Marrero
United States District Judge

All counsel (via ECF)