# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 26, 2013

By Hand

Honorable Victor Marrero,
   United States District Judge,
      Daniel Patrick Moynihan United States Courthouse,
         500 Pearl Street,
            New York, New York 10007.

     Re:   *Anwar, et al.* v. *Fairfield Greenwich Ltd., et al.*, No. 09-CV-118
           (S.D.N.Y.) – Standard Chartered Cases

Dear Judge Marrero:

        We write on behalf of the Standard Chartered Bank Defendants ("SCB" or the "Bank") in reply to letters submitted concerning the Bank's contemplated motion to dismiss the 57 cases pending against it in this MDL (the "SCB Cases") pursuant to the Securities Litigation Uniform Standard Act ("SLUSA"). This letter also addresses whether the contemplated motion should be deferred. SCB's contemplated motion would neither ask nor require this Court to reconsider its decision not to apply SLUSA to dismiss the claims asserted in the *Anwar* class action that is also a part of this MDL. Rather, the motion asks the Court to decide for the first time whether SLUSA applies to the claims asserted against SCB in the SCB Cases. The SCB Cases involve different parties, different theories of liability and, most critically, a different factual predicate underlying liability—namely, that the Bank provided misleading investment advice that induced plaintiffs to invest in covered securities. The standard for applying SLUSA to claims based on such allegations is clear and plainly requires dismissal of the SCB Cases. This Court should not defer this ruling because doing so would prejudice SCB by unnecessarily compelling it to incur substantial additional costs litigating claims that are subject to dismissal.

        **SLUSA Requires Dismissal of the SCB Cases.** SLUSA applies to claims based on allegedly misleading investment advice that "induces" a plaintiff to invest in covered securities or that "turn on injuries caused by acting on misleading investment advice—that is, where plaintiffs' claims necessarily allege, necessarily involve, or rest on the purchase or sale of [covered] securities." *Romano* v. *Kazacos*, 609 F.3d 512, 521-23 (2d Cir. 2010). For claims brought by investors in Madoff feeder funds, the "in connection with a purchase or sale of a covered security" element is met so long as defendants' alleged wrongdoing relates to the securities that Madoff purported to purchase on behalf of those investors. *Trezziova* v. *Kohn (In*

*re Herald, Primeo, & Thema Sec. Litig.)*, 730 F.3d 112, 118-19 & n.5 (2d Cir. 2013). Here, plaintiffs allege that SCB provided misleading investment advice about covered securities bought and sold by Fairfield Sentry Ltd. ("Sentry") through Madoff, that this misleading advice induced them to invest in these securities, and that they suffered losses as a result. *Romano* and *Trezziova* thus compel the dismissal of the SCB Cases under SLUSA.

The SCB plaintiffs raise three arguments, none of which has merit. *First*, the SCB plaintiffs contend that "several" SCB Cases "do not allege any misrepresentations or omissions." (Dkt. # 1223 at 11 n.10.) SCB plaintiffs do not actually identify any such case, however, because there is none. The factual predicate for all of the SCB Cases is an alleged misrepresentation or omission that induced plaintiffs to invest in covered securities. (*See* Ex. A.)[1] Indeed, in all but one of the SCB Cases, plaintiffs expressly advance claims based on the theory that SCB failed to disclose Madoff's role in executing Sentry's covered securities transactions. (*See id.*) Plaintiffs try to avoid the import of those allegations—which are indisputably connected to Madoff's purported purchases of covered securities—by characterizing their claims as assertions that SCB "recommended and sold Fairfield investments without a proper basis." (Dkt. # 1223 at 2.) But even under that characterization, SLUSA applies because this "proper basis" theory is predicated on express allegations that SCB made misrepresentations about its due diligence and Sentry. (Ex. A; *see also* Dkt. # 1226 at 3 (summarizing allegations).) Moreover, these claims are based on SCB's "duty to 'recommend [investments] only after studying [them] sufficiently to become informed as to [their] nature, price, and financial prognosis.'" *Anwar v. Fairfield Greenwich, Ltd.*, 745 F. Supp. 2d 360, 376 (S.D.N.Y. 2010) (alterations in original) (quoting *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1147 (Fla. Dist. Ct. App. 2001)). This duty was first recognized under the federal securities laws and inherently involves misrepresentations. *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 953 (E.D. Mich. 1978) (citing *Hanly v. SEC*, 415 F.2d 589, 596-97 (2d Cir. 1969) (broker "by his position . . . *implicitly represents* he has an adequate basis for the opinions he renders," so that, "[b]y his recommendation . . . he implies that a reasonable investigation has been made and that his recommendation rests on the conclusions based on such investigation"

---

[1] Plaintiff Barbachano contends that certain of her claims are based on allegations that: (1) her portfolio contained an unsuitable mixture of equities and bonds (Dkt. # 1224); and (2) SCB received a "kickback" from Fairfield for placing her in Sentry (Amended Complaint, 11-cv-3553, Dkt. # 83-84, ¶¶ 16, 73, 83, 97, 108). These claims are merely another way of alleging that SCB never should have recommended Sentry. And in any event, SLUSA bars claims based on alleged "kickbacks" for providing misleading investment advice. *See, e.g., Atencio v. Smith Barney, Citigroup, Inc.*, No. 04 Civ. 5653, 2005 WL 267556, at *6 (S.D.N.Y. Feb. 2, 2005) (dismissing claims under SLUSA because "[i]f, as alleged, defendants' receipt of kickbacks caused defendants to steer class members to certain funds, then those class members' claims for damages from 'retention kickbacks' are inextricably related to their purchases of shares of those funds"). If these are "suitability" and "kickback" claims, then they should be dismissed because they fail to state a claim under this Court's prior rulings. *See Anwar v. Fairfield Greenwich Ltd.*, 891 F. Supp. 2d 548, 557 (S.D.N.Y. 2012) (holding that SCB owed no duty to diversify portfolios); *Anwar v. Fairfield Greenwich, Ltd.*, 286 F.R.D. 258, 260 (S.D.N.Y. 2012) (holding that trailer-fee allegations do not allege fraudulent intent).

(emphasis added))). In short, plaintiffs' claims are predicated on alleged misrepresentations and trigger SLUSA.

*Second*, although the SCB plaintiffs do not dispute that the substance of SCB's allegedly misleading investment advice related directly to covered securities and induced them to invest in covered securities, they nevertheless argue that this advice was not "in connection with the purchase or sale of a covered security" because SCB had separate, one-on-one relationships with each plaintiff and no direct relationship with BLMIS. (Dkt. # 1223 at 9-11.) This misses the point. SLUSA's "in connection with" requirement is satisfied when alleged wrongdoing "coincide[s] with a securities transaction." *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71, 85 (2006). It does not depend on the relationships between the defendant and any particular party; "it is enough that the fraud alleged coincide with a securities transaction – whether by the plaintiff or by someone else." *Dabit*, 547 U.S. at 85. And *Romano* establishes that even individualized, one-on-one investment advice comes within SLUSA. 609 F.3d at 515.

*Third*, the SCB plaintiffs rely on legislative history to make the novel argument that the SCB Cases do not qualify as a "group of lawsuits" to which SLUSA applies because the cases were filed at different times, by different counsel and on behalf of different clients. (Dkt. # 1223 at 3, 4-8.) There is no reason to resort to legislative history, however, because the statute is unambiguous. *See In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009). Congress has defined a "group" of lawsuits to include lawsuits that are filed or pending in the same court, involving common questions of law or fact, and proceeding together on a consolidated or coordinated basis. 15 U.S.C. § 78bb(f)(5)(B)(ii). There can be no real dispute that the SCB Cases meet these statutory requirements, and plaintiffs provide no reason to question an unbroken line of authority applying SLUSA in similar circumstances. *E.g., In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 246 (S.D.N.Y. 2004) (consolidation for pretrial purposes sufficient for designation as a "group of lawsuits" under SLUSA); *see also Amorosa* v. *Ernst & Young LLP*, 672 F. Supp. 2d 493, 499, 517-18 (S.D.N.Y. 2009) (SLUSA applied where case not formally consolidated but was coordinated with other cases as part of MDL).

**Deferring Dismissal Would Unnecessarily Prejudice SCB.** In 2010, the Court declined to consider the application of SLUSA to the SCB Cases (Dkt. # 448 at 2), and also declined to certify for interlocutory review its SLUSA ruling in the *Anwar* class action on the basis that the issue was already before the Second Circuit in the context of another case involving a Madoff feeder fund, *Anwar* v. *Fairfield Greenwich Ltd.*, 2010 WL 3834054, at *2. That case settled before the Second Circuit issued a ruling, and the Second Circuit did not rule on the issue until its opinion in *Trezziova*, three years later. SCB has incurred substantial costs litigating the SCB Cases since then, and further delay in applying SLUSA to the SCB Cases will lead to SCB incurring substantial additional litigation costs associated with, at a minimum, expert depositions and briefing on summary judgment motions involving at least 11 different SCB Cases, and then, in at least 42 separate cases, *beginning* plaintiff-specific discovery that has been deferred or not yet begun. (*See* Dkt. # 826, 1193, 1221.)

The Supreme Court's pending decision in *Chadbourne & Parke LLP* v. *Troice*, Nos. 12-79, 86, 88 ("*Chadbourne*") does not justify deferral. That decision will not require the Second Circuit to narrow its holdings in *Romano* and *Trezziova* because the case on review does not involve allegedly misleading investment advice that induced plaintiffs to invest, directly or

Honorable Victor Marrero                                                                                           -4-

indirectly, in covered securities. *Roland* v. *Green*, 675 F.3d 503, 522 (5th Cir. 2012). Rather, plaintiffs in that case purchased fraudulent certificates of deposit ("CDs") that purported to be "debt assets that promised a fixed rate of return not tied to the success of any" covered securities. *Id.* at 509, 522. The only connection to covered securities was that the entities that perpetrated the fraud and issued the CDs purported to invest in covered securities with *their own* assets and for *their own* benefit, purportedly to keep the assets backing the debt obligations liquid and marketable. *Id.* at 508. Indeed, at the *Chadbourne* oral argument, several Justices and the parties acknowledged that Madoff-related cases are different than *Chadbourne* and present a much stronger case for SLUSA preemption. (Transcript at 20-21, 37-38, 42-44 (Oct. 7, 2013).)

Likewise, nothing about the proceedings in *In re Kingate*, No. 11-1397 or *Trezziova* suggests that the Second Circuit will narrow its holdings in *Romano* and *Trezziova*. The panel in *In re Kingate* is bound by the prior decisions in *Romano* and *Trezziova*. *In re Sokolowski*, 205 F.3d 532, 534-35 (2d Cir. 2000). And had the panel in *Trezziova* expected *Chadbourne* to impact its holding, it presumably would have postponed issuing its opinion, which was handed down less than two weeks before oral argument in *Chadbourne*.

Finally, deferring dismissal of the SCB Cases would frustrate a key Congressional intent in enacting SLUSA and its sister statute, the Private Securities Litigation Reform Act of 1995 ("PSLRA")—namely, to prevent defendants from being subjected to the burden of pre-trial proceedings in cases that are subject to dismissal under SLUSA or the PSLRA.[2] *See Spielman* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 122-23 (2d Cir. 2003) (explaining that SLUSA and the PSLRA include discovery stays to achieve Congress's objectives to shield defendants from unnecessary litigation costs). The *Trezziova* panel has not frustrated this purpose by postponing its decision on the petition for panel rehearing because the cases have been dismissed and the parties are not subject to ongoing pre-trial litigation. But a similar delay in the SCB Cases would achieve the exact opposite of Congress's intended result—plaintiffs will continue to litigate claims that are subject to dismissal under SLUSA at considerable added expense to SCB.

For the foregoing reasons, SCB respectfully requests, without delay, a conference to discuss its motion for judgment on the pleadings pursuant to SLUSA.

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Standard Chartered Bank defendants.

SO ORDERED.

12-2-13
DATE    VICTOR MARRERO U.S.D.J.

Respectfully submitted,

Sharon L. Nelles /PEB

cc:    Standard Chartered Plaintiffs' Steering Committee (by e-mail)

---

[2]    Plaintiffs argue that only one SCB Case asserted federal securities claims against SCB. (Dkt. # 1223 at 2 n.2.) They neglect to mention, however, that the law firm that brought that case filed 43 additional SCB Cases after this Court had dismissed the federal securities claims in the first-filed case, and all 44 cases advance nearly identical factual allegations and theories.