# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____ 3/4/14
DATE FILED: _____
```

March 3, 2014

By Facsimile

The Honorable Victor Marrero,
    United States District Judge,
        Daniel Patrick Moynihan United States Courthouse.
        500 Pearl Street,
            New York, New York 10007.

> Re:    *Anwar v. Fairfield Greenwich Ltd.,*
>         No. 09-CV-118 (S.D.N.Y.) – Standard Chartered Cases

Dear Judge Marrero:

    We write on behalf of the Standard Chartered Bank Defendants ("SCB" or the "Bank") in response to the letters sent to the Court on February 27 and February 28 concerning the Supreme Court's February 26, 2014 decision in *Chadbourne & Parke LLP* v. *Troice*, No. 12-79 ("*Chadbourne*"). Plaintiffs contend that *Chadbourne* negates the Bank's contemplated motion to dismiss plaintiffs' claims under the Securities Litigation Uniform Standards Act ("SLUSA"). As the Bank noted in its November 26, 2012 letter to this Court seeking a pre-motion conference, however, and as the Supreme Court's decision *in Chadbourne* now confirms, *Chadbourne* has no application to the SCB Cases.

    The Court's decision in *Chadbourne* turns on the fact that no plaintiff had an interest in a covered security; rather, the sole purported investments or interests in covered securities belonged to the fraudster. (Slip Op. at 18.) More specifically, plaintiffs in *Chadbourne* purchased certificates of deposit ("CDs") with fixed rates of return from Stanford International Bank ("SIB"), whose owner, Allen Stanford, was subsequently convicted for operating a Ponzi scheme in the sale of the CDs. (Slip Op. at 5-6.) Those CDs were not "covered securities" under SLUSA and the fixed rates of return were not represented to be tied to any such securities. (Slip Op. at 2, 5; *see also Roland* v. *Green*, 675 F.3d 503, 522 (5th Cir. 2012) ("The CDs were debt assets that promised a fixed rate of return not tied to the success of any of SIB's purported investments . . . .") Thus, no plaintiff had any relevant interest or investment, and the only possible connection to "covered securities" was SIB's representation that it "owned, would own, or would use the victims' money to buy *for itself* shares of covered securities." (Slip Op. at 18 (emphasis in original).) The Supreme Court held that this was not enough: there was no connection with the purchase or sale of a covered security because SIB's fraud and its own fictitious securities positions were "not a 'connection' that matters" (Slip Op. at 9), and any other connection was plainly too "remote" because "no [other] person actually believed he was taking an ownership position" in covered securities (Slip Op. at 16).

The Honorable Victor Marrero                                    -2-

        This Court is confronted with an entirely different set of circumstances. ***First,*** SCB plaintiffs, unlike plaintiffs in *Chadbourne*, either "took" or "tried to take . . . *an ownership interest*" in covered securities when purchasing shares in Sentry. (Slip Op. at 9-10 (emphasis in original); *see, e.g.*, Complaint, 11-cv-3480-VM, Dkt # 1, ¶ 53 (alleging the Bank "misstated to Plaintiffs that Plaintiffs' funds would be invested through a strategy of 'split-strike conversion,' whereby a basket of stocks intended to correlate with the S&P 100 index would b[e] bought").) As SCB plaintiffs themselves acknowledge in their most recent correspondence with the Court, they expected the money they invested "would be used to buy covered securities." (Pls.' Feb. 27, 2014 Letter at 2.) *Chadbourne* expressly recognizes that SLUSA extends to cases where, as here, plaintiffs intended to obtain (and believed they did obtain) an interest in "covered securities" through a third party who purchased such securities on their behalf.[1] (Slip Op. at 9-10 (reaffirming that securities transaction is "in connection with" alleged misrepresentations where "victims were 'duped into believing' that the defendant would 'invest' their assets in the stock market" (quoting *SEC* v. *Zandford*, 535 U.S. 813, 822 (2002)).)

        ***Second***, there is no dispute that the fund in which SCB plaintiffs invested, Sentry, did take an interest in covered securities. This is enough: "Madoff's announced intention to purchase covered securities (*i.e.*, stocks and options) *for the benefit of Funds in which Plaintiffs invested* satisfies the requirement that Plaintiffs' claims against JPM and BNY, Madoff's bankers, were made 'in connection with the purchase or sale of a covered security.'" *In re Herald, Primeo, & Thelma Sec. Litig.*, No. 09-cv-289, 2011 WL 5928952, at *8 (S.D.N.Y. Nov. 29, 2011) (emphasis added), *aff'd sub nom Trezziova* v. *Kohn*, 730 F.3d 112 (2d Cir. 2013). The "connection" between SCB plaintiffs' allegations that the Bank misled them concerning covered securities and Sentry's transactions in those covered securities triggers SLUSA under the Supreme Court's decision in *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71 (2006), where the Supreme Court held that SLUSA bars claims based on alleged misrepresentations that "'coincide' with a securities transaction – whether by the plaintiff or someone else." *Id.* at 85. *Chadbourne* expressly preserves that holding. (Slip Op. at 8-9.)

        ***Finally***, SCB plaintiffs allege, as a premise in each of their claims, that the Bank provided misleading investment advice about covered securities bought and sold by Sentry, that this misleading advice induced them to invest in those securities, and that they suffered losses as a result of those covered securities being fraudulent. SLUSA bars covered class actions alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A).[2] An alleged misrepresentation is "in connection

---

[1]    The parties in *Chadbourne* repeatedly acknowledged their view that Madoff-related cases were factually dissimilar. Respondent conceded that SLUSA may apply in Madoff-related cases, but argued that *Chadbourne* was distinguishable for the very reasons discussed herein—namely, that nobody other than the fraudster purported to invest in covered securities. (*See* Brief of Respondents at 16, No. 12-79 (July 18, 2013).) The distinctions were addressed expressly at oral argument. (Transcript at 20-21, 37-38, 42-44 (Oct. 7, 2013).)

[2]    SCB plaintiffs' argument that joint proceedings like the SCB Cases are not "covered class actions" continues to be rejected in this District. *See, e.g., Sec. Inv. Prot. Corp.* v.

The Honorable Victor Marrero                                                    -3-

covered security." 15 U.S.C. § 78bb(f)(1)(A).[2] An alleged misrepresentation is "in connection with" a purchase or sale of a covered security where it "coincides" with the transaction. *Dabit*, 547 U.S. at 85. It is well settled that allegedly misleading investment advice "coincides" with a covered transaction where a plaintiff is induced to take action—by, for example, providing funds to an investment firm—for the purpose of engaging in a covered transaction, or where plaintiffs' claims "turn on injuries caused by acting on misleading investment advice—that is, where plaintiff's claims necessarily allege, necessarily involve, or rest on the purchase or sale of [covered] securities." *See Romano* v. *Kazacos*, 609 F.3d 512, 522 (2d Cir. 2010) (citation and internal quotation marks omitted). *Chadbourne* does not alter this standard, and SCB plaintiffs' claims fall squarely within its scope.

        In short, SCB plaintiffs' claims rest on allegedly misleading investment advice "in connection with the purchase of a covered security" and therefore should be dismissed.[3]

                                    Respectfully submitted,

                                    *Sharon L. Nelles*

                                    Sharon L. Nelles

cc:     Standard Chartered Plaintiffs' Steering Committee (via E-mail)

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Standard Chartered Bank Defendants.
>
> **SO ORDERED.**
>
> 3-4-14
>
> DATE          VICTOR MARRERO, U.S.D.J.

---

[2]     SCB plaintiffs' argument that joint proceedings like the SCB Cases are not "covered class actions" continues to be rejected in this District. *See, e.g., Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115(JSR), 2013 WL 6301415, at *6-7 (S.D.N.Y. Dec. 5, 2013) (Rakoff, J.) (claims brought by the Madoff Trustee as assignee); *see also In re Citigroup Inc. Sec. Litig.*, No. 11 Civ. 3827(SHS), 2013 WL 6569875, at *7-9 (S.D.N.Y. Dec. 13, 2013) (Stein, J.) (multiple actions proceeding jointly in an MDL); *In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*, No. 12 Civ. 5210(PKC), 2013 WL 6504801, at *7 (S.D.N.Y. Dec. 11, 2013) (Castel, J.) (same).

[3]     There are two cases that relate to the application of SLUSA to Madoff-related investments currently before the Second Circuit. *In re Kingate*, No. 11-1397 (2d Cir. 2011), was argued on April 9, 2013. Plaintiffs also filed a petition for rehearing in *Trezziova* on October 1, 2013. The Bank submits, however, that *Chadbourne* does not call into question, much less overrule, either *Trezziova* or *Romano* and, moreover, neither *Trezziova* nor *Kingate* involves the application of SLUSA to allegedly misleading investment advice. Thus, with respect to the SCB Cases, there is no need to await further guidance to consider the dismissal of SCB plaintiffs' claims.