# THE BRODSKY LAW FIRM, PL

RICHARD E. BRODSKY, ATTORNEY AT LAW

March 5, 2014

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/6/14
```

*By fax to (212) 805-6382*

Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:  *Anwar, et al. v. Fairfield Greenwich Limited, et al.,*
     *09-cv-118 (VM) (THK)*
     **Standard Chartered Cases**

Dear Judge Marrero:

I write as the Liaison Counsel for, and on behalf of, the Standard Chartered Plaintiffs ("SC Plaintiffs"), in the Standard Chartered Cases (the "SC Cases"). This letter replies to the March 3, 2014 letter to Your Honor from counsel for the Standard Chartered Defendants ("SC Defendants"). We request that this Court consider this letter in conjunction with our prior letters on SLUSA of November 19, 2013 and February 27, 2014.

The SC Defendants' March 3 letter goes to great lengths to avoid discussing the actual opinion in *Chadbourne & Parke LLP v. Troice*, No. 12-79, ___ U.S. ___, 2014 WL 714697 (Feb. 26, 2014), especially the holding: the facts essential to the decision, the decision of law and the reasoning that was essential to its decision. The rest is dictum – interesting, and perhaps even weighty, surplusage, but surplusage nevertheless.[1]

This is the holding in *Chadbourne*:

> The question before us concerns the scope of the Litigation Act's phrase 'misrepresentation or omission of a material fact in connection with the

---

[1] *See* Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1256, 1257 (2006) (discussing the difference between a holding and dictum and explaining the reasons for understanding the difference; dictum is "superfluous" language in an opinion).

200 S. BISCAYNE BOULEVARD, STE. 1930 • MIAMI, FLORIDA 33131
WWW.THEBRODSKYLAWFIRM.COM
786-220-3328 • RBRODSKY@THEBRODSKYLAWFIRM.COM

Hon. Victor Marrero
March 5, 2014
Page 2

> purchase or sale of a covered security.' § 78bb(f)(1)(A). How broad is that scope? Does it extend further than misrepresentations that are material to the purchase or sale of a covered security?
>
> In our view, the scope of this language does not extend further. To put the matter more specifically: A fraudulent misrepresentation or omission is not made "in connection with" such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'

*Id.*, at *7.

Tellingly, and not surprisingly, the SC Defendants neither refer to nor quote from the holding, because to do so would make obvious the validity of the SC Plaintiffs' argument. Nor do they refer to or quote from an earlier phrasing of the issue before the *Chadbourne* Court, which could also be deemed a rephrasing of the holding: "The question before us is whether the Litigation Act encompasses a class action in which the plaintiffs allege (1) that they 'purchase[d]' *uncovered* securities (certificates of deposit that are *not* traded on any national exchange), but (2) that the defendants falsely told the victims that the *uncovered* securities were backed by *covered* securities. We note that the plaintiffs do not allege that the defendants' misrepresentations led anyone to buy or to sell (or to maintain positions in) *covered* securities. Under these circumstances, we conclude the Act does not apply." *Id.*, at *3 (emphasis in original).

The SC Defendants' latest letter studiously avoids the unavoidable: that none of the SC Plaintiffs has alleged that a misrepresentation by anyone caused BLMIS to buy or sell covered securities (or to say that it was going to do so, if, after *Chadbourne*, a non-purchase of covered securities is a purchase of covered securities). But that would be precisely what, after *Chadbourne*, SLUSA would require for that statute to apply. For this reason alone, SLUSA does not apply here.

Rather than deal with the holding, the SC Defendants engage in the side-show of emphasizing such irrelevancies as the SC Plaintiffs' alleged statement in their February 27, 2014 letter to this Court that "they expected the money they invested 'would be used to buy covered securities.' (Pls' Feb. 27, 2014 Letter at 2.)" (Defs' Letter at 2). Not only does this paraphrase take undue liberties with what the SC Plaintiffs *actually* said in their letter ("Bernard L. Madoff Investment Securities, LLC ('BLMIS'), to which the money raised by the sale of Fairfield Sentry stock was entrusted,

Hon. Victor Marrero
March 5, 2014
Page 3

misrepresented that this money would be used to buy covered securities."), but also this is no different from the facts in *Chadbourne*. As the Court stated: "The plaintiffs expected that Stanford International Bank would use the money it received to buy highly lucrative assets," *id.*, at *5, including "highly marketable securities issued by . . . strong multinational companies and major international banks." *Id.*, at 13 (citations and internal quotation marks omitted).

The SC Defendants also ignore this Court's opinion in *Anwar v. Fairfield Greenwich* ("*Anwar II*"), 728 F.Supp.2d 372, 397-99 (S.D.N.Y. 2010) plainly would. There, the Court held that that the "in connection with" test in SLUSA was not satisfied as to the *Anwar II* class action, because "[t]he allegations in this case present *multiple layers of separation between whatever phantom securities Madoff purported to be purchasing and the financial interests Plaintiffs actually purchased.*" *Anwar II*, 728 F.Supp. at 398 (emphasis added). (The SC Plaintiffs' letter to this Court of November 19, 2013 discusses *Anwar II* at 8-11.) If, for argument's sake, *Chadbourne* does not foreclose the SC Defendants' argument, *Anwar II* plainly does.[2] Indeed, *Anwar II* requires denial of the SC Defendants' SLUSA argument since, as we reiterate, the *Standard Chartered Cases* are one entire defendant (Standard Chartered) removed from Madoff's fraud.

We close with an important point overlooked in all of the SC Defendants' arguments about SLUSA: the drastic effect on the position of the SC Plaintiffs if the Court were to hold that this statute applies to the *Standard Chartered Cases*. Assuming, for argument's sake, the Court chooses to reverse its holding in *Anwar II* and, in our view, ignore or misread *Chadbourne* and hold that the "in connection with" test applies, the Court would still have to find that these separate cases of fifty-nine otherwise unrelated investors – forty-five represented by one attorney, six by another attorney, two by a third lawyer, and all the rest by six different lawyers – who filed separate complaints at separate times, and alleged different causes of action,[3] constituted a "covered class action." The "covered class action" issue is discussed at pp. 4-8 of the SC Plaintiffs' November 19, 2013 letter to

---

[2] In this respect we join in the February 28, 2014 letter to this Court from counsel for the class action plaintiffs, Boies Schiller, in the main *Anwar* case. We must respectfully remind the Court, however, that in the *Standard Chartered Cases*, there is one additional, and highly significant "layer[ ] of separation": each of the Standard Chartered Plaintiffs is suing Standard Chartered, their "private bank," which recommended that each invest in Fairfield Sentry.

[3] *See* SC Plaintiffs' Nov. 19, 2013 letter, at 1-3 (describing Standard Chartered Plaintiffs' actions).

Hon. Victor Marrero
March 5, 2014
Page 4

this Court. The Standard Chartered Defendants have totally ignored the cogent and persuasive analysis that shows that Congress did not intend these cases to be considered a "covered class action."[4]

The extreme nature of such a putative ruling is relevant precisely because it would sound the death knell to the SC Plaintiffs' purely state law claims, including breach of fiduciary duty claims that do not import fraud claims. That was not the purpose of Congress in passing SLUSA. As the Supreme Court stated in explaining the scope of the "in connection with" requirement in another context, "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87 (2006). *Accord, Fisher v. Kanas*, 288 F. App'x 721, 723 (2d Cir. 2008) (citing *Dabit*) ("[Neither] SLUSA nor *Dabit* has deprived [the plaintiff, who brought a state law breach of fiduciary duty class action based on misrepresentations in a proxy solicitation] or others similarly situated of a state law cause of action for securities fraud, or breach of fiduciary duty. . . In this particular case, Fisher was free to bring her state law claim as an individual (or on behalf of fewer than 50 others). Because she did not, however, her state law claim -- as framed -- falls within SLUSA's scope.").

*But this is exactly what each of the SC Plaintiffs already did -- bring state law claims as an individual, stand-alone case.* Is each of the SC Plaintiffs now to be punished because so many other Standard Chartered private banking clients (over fifty of them) also were improperly induced to invest in Fairfield Sentry and brought claims against the Bank -- with different lawyers and separate complaints? This would be an absurd and

---

[4] The new cases on this point cited by the SC Defendants in their March 3, 2014 letter to the Court are distinguishable. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 WL 6301415 (S.D.N.Y. Dec. 5, 2013) involved a "single lawsuit" brought by the Madoff Trustee as assignee of the claims of Madoff investors. *In re Citigroup Inc. Sec. Litig*, No. 11 Civ. 3827(SHS), 2013 WL 6569875 (S.D.N.Y. Dec. 13, 2013), and *In re Bank of Am. Corp. Sec, Derivative, and ERISA Litig.*, No. 12 Civ. 5210(PKC), 2013 WL 6504801 (S.D.N.Y. Dec. 11, 2013), involved suits that was found to be meritless whether or not SLUSA applied. Moreover, both cases involved suits that were transferred by the JPML for coordination with pending class action against the same defendants and involving the same claims. Here, however, not only has this Court upheld almost all of the *Standard Chartered Cases* against motions to dismiss, but the SC Plaintiffs, with the exception of one Plaintiff, sue none of the same defendants sued in the *Anwar* class action and therefore do not bring the same claims that were advanced in *Anwar*.

Hon. Victor Marrero
March 5, 2014
Page 5

unduly harsh result. We question how the Constitution could permit an interpretation of SLUSA that Congress intended to deprive these individual plaintiffs, whose claims stand alone and apart from *Anwar* and even from each other, from suing their banker under state law for recommending they invest in Fairfield Sentry. Only through a severely contorted, and now discredited, reading of SLUSA could this be accomplished. The Court should not and need not perpetrate such an injustice.

In summary, *Chadbourne* and *Anwar II* require this Court to deny the request for a conference and to deny leave to file a motion for judgment on the pleadings. As to the SC Plaintiffs, an additional reason, which the Court need not face if it decides in favor of the SC Plaintiffs on the first point, is that the *Standard Chartered Cases* are not a "covered class action."

Thank you for your attention to this letter.

Sincerely yours,

The Brodsky Law Firm, PL

*/s/ Richard E. Brodsky*

Richard E. Brodsky

cc: Counsel in *Standard Chartered Cases*

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Standard Chartered Plaintiffs.

SO ORDERED.

3-6-14
DATE         VICTOR MARRERO  U.S.D.J.