# Netherlands

Frederieke Leeflang

Boekel De Nerée

### Legislation and jurisdiction

**1** How would you summarise the development of private antitrust litigation?

Private antitrust litigation in the Netherlands appears in different forms. In the first place, parties can invoke the nullity of an agreement (or part thereof) by pleading the nullity sanction of article 81(2) EC or article 6(2) of the Dutch Competition Act (Competition Act) as a defence in disputes concerning the execution of agreements. In addition, actions are aimed at obtaining interim relief against competition law violations. These types of private actions have been common in the Netherlands for several years.

Another form of private antitrust litigation is that aggrieved parties commence legal proceedings before the civil court to recover damage sustained as a result of violations of article 81(2) EC or 6(2) Competition Act, or article 24 Competition Act or 82 EC (abuse of a dominant position). For example, if suppliers enter into a prohibited price fixing agreement, the purchasers will sustain damage because they will have to pay higher prices. In this respect, civil actions can be brought after a competition authority has fined a company because of an infringement of competition law (follow-on actions) or without such prior fine (stand-alone actions).

Several actions for damages for infringements of article 81(2) EC or article 6(2) Competition Act have been initiated. Recently, probably partly as a result of the European Commission's policy, which is aimed at stimulating private actions for compensation on the basis of violations of competition law, these actions have increased. Because most claims result in out-of-court settlements or arbitration proceedings, published judgments of these kinds of actions remain rare.

In 2009, elevator manufacturers that participated in the elevator cartel came under attack with respect to private enforcement actions. The Commission fined these elevator manufacturers approximately €992 million for fixing prices and carving up markets. Thereafter, more than 40 housing foundations are seeking private damages from the elevator manufacturers for their participation in the elevator cartel. To combine the individual claims into one single action, a foundation named 'De Glazen Lift' has been incorporated. In addition, Stichting Meldpunt Collectief Onrecht, a foundation that fights against injustice caused by large undertakings, is encouraging victims to join a collective action it intends to initiate against the members of the elevator cartel. Further, the Commission itself has, strikingly, filed cases seeking compensation for damages suffered due to this cartel (although not in the Netherlands but in Belgium).

Members of the Dutch trade association for the hotel and catering industry (Koninklijk Horeca Nederland) continued negotiating in 2009 with Dutch breweries Heineken, Grolsch and Bavaria. The Commission fined these breweries nearly €274 million for participating in an illegal cartel that primarily involved price fixing and customer allocation. The members of the Dutch trade association for the hotel and catering industry suffered massive losses due to this cartel. This association filed for example petitions to hear witnesses under oath.

New developments came up with respect to the collective agreement that was concluded between the coordinating body of the Dutch retail sector (Platform Detailhandel) and eight Dutch banks that had eliminated competition on the market of PIN (national debit card) transactions by setting up Interpay as a central sales office. In addition, Interpay had abused its dominant position by charging excessive rates for the provision of network services for PIN transactions. This settlement contains a discount of 0.01 eurocent per PIN transaction and the establishment of a fund to achieve more effective payment services. In 2009, an additional agreement was concluded to this settlement due to the forthcoming introduction of SEPA (Single European Payments Area).

**2** Are private antitrust actions mandated by statute? If not, on what basis are they possible?

There are no special procedural rules with respect to an action brought for an infringement of national or European competition law.

Agreements that violate the cartel prohibitions of article 6(1) Competition Act or article 81(1) EC are null and void on the basis of article 6(2) Competition Act or article 81(2) EC (see also question 1). In addition, article 3:40(2) of the Dutch Civil Code (DCC) declares void legal acts contrary to mandatory rules.

A claim for damages in the case of infringement of antitrust rules can be based on tort (article 6:162 DCC) or unjust enrichment (article 6:212 DCC). In cartel cases, article 6:166 DCC (group liability) is relevant as well.

The basic rules governing tort (unlawful acts) under Dutch law are set out in article 6:162 DCC. The basic conditions for liability are: an unlawful act, attribution of the unlawful act to the wrongdoer, damages and causality between the unlawful act and the damages. A fifth condition is the relativity requirement. The damage suffered by the claimant must be of the type envisaged by the standard or norm the (unwritten) law intended to protect (article 6:163 DCC).

A breach of the EC or Dutch competition rules is considered to be an unlawful act as it constitutes an infringement of a duty imposed by law. The violation of competition rules can in general be contributed to the infringer. It is more difficult to prove the (amount of) damages incurred. A court may judge on the liability and refer the calculation of damages to a separate procedure. However, civil proceedings already have a long duration in the Netherlands and such an additional procedure can delay the outcome of the case extensively.

Article 6:212 DCC states that a person who has been unjustly enriched at the expense of another must, to a reasonable extent, repair the damage up to the amount of such enrichment. The four conditions necessary to establish unjust enrichment are therefore: enrichment, damage, causality between the enrichment and the damage, and the enrichment is not justified by a legal act or statutory provision.

Further, article 6:166(1) DCC states that if one out of a group of persons unlawfully causes damage and the risk of thus causing

damage should have restrained such persons from their collective conduct, all members of the group shall be jointly and severally liable if they can be held accountable for such conduct.

**3  If based on statute, what is the relevant legislation and which are the relevant courts and tribunals?**

Private enforcement of competition law is not based on statute in the Netherlands. All courts of first instance in the Netherlands can hear civil law claims. There is no special court or tribunal designated to hear private antitrust matters.

However, a request for the court approval of a collective settlement agreement as described in articles 7:907-910 and 1013-1018 DCC can only be submitted to the Amsterdam Court of Appeal.

**4  In what types of antitrust matters are private actions available?**

For all types of antitrust matters – cartel cases as well as cases relating to the abuse of a dominant position – private enforcement actions are available. As stated above, private enforcement in cartel cases often relates to the annulment of contractual obligations on competition law grounds. In addition, occasionally interlocutory proceedings related to a refusal to supply (which under certain circumstances can be qualified as an abuse of a dominant position) are initiated. For example, in August 2009 Handelsmaatschappij BV, an undertaking that rents out containers for flowers and plants, initiated interlocutory proceedings against Container Centrale Benelux BV, which exploits a pool to exchange such containers. Handelsmaatschappij BV argued that Container Centrale Benelux BV abused its dominant position by imposing unfair prices to allow access to this pool and that such access is necessary to enter the market. However, the judge considered that the claimant insufficiently substantiated that it was impossible to enter the market by other means.

**5  What nexus with the jurisdiction is required to found a private action?**

District courts have jurisdiction to hear disputes that are of a civil law nature, including cases involving claims based on competition law infringements, for example nullity actions based on article 6 Competition Act or article 81 EC.

With respect to damage claims of more than €5,000, the civil court is competent, in other cases the sub-district court. A legislative proposal is pending in the Dutch parliament to increase this amount to €25,000.

There are 19 civil courts in the Netherlands, each with its own district. The different courts apply the same law. Civil actions have to be filed before the district court that has jurisdiction over actions against the defendant.

In cases with an international dimension, the rules laid down in Regulation 44/2001 (Brussels I) apply if the defendant has its seat or domicile in the EU. If the defendant is not established within the EU, the jurisdiction rules laid down in the Dutch Code of Civil Procedure are applicable. In general, a Dutch court has jurisdiction when (one of) the defendants has its seat or is domiciled in the Netherlands or, in cases based on tort, if the harmful event occurred in the Netherlands. The applicable law to matters based on tort is decided on the basis of Regulation 864/2007 (Rome II), which is, in general, the law of the country where the market is affected by the restriction of competition. In contractual matters, the EC Convention on the law applicable to contractual obligations is relevant.

Please note that, if the Dutch court has jurisdiction according to the above-mentioned rules, a foreign entity could be summoned in the Netherlands.

**6  Can private actions be brought against both corporations and individuals, including those from other jurisdictions?**

The competition rules are addressed to undertakings, namely 'any entity engaged in an economic activity, regardless of the legal status of the entity and the way in which it is financed' (Case C-41/90 *Klaus Höfner*). An economic activity is any activity consisting in offering goods or services on a given market. It is irrelevant whether it concerns a private or public entity. The concept of undertaking also encompasses individuals that engage in an economic activity.

Therefore, private actions can be brought against corporations and – under certain circumstances – against individuals. Procedures against foreign corporations or individuals can be initiated in the Netherlands provided the (international) rules on jurisdiction are observed.

**7  If the country is divided into multiple jurisdictions, can private actions be brought simultaneously in respect of the same matter in more than one jurisdiction?**

It is possible to bring simultaneous actions with respect of the same matter before the different district courts that have been mentioned in question 5. However, the case law of the Supreme Court of the Netherlands guarantees a similar application and interpretation of the provisions of the DCC throughout the country. A defendant is entitled to request a transfer of the case to the court where the same matter is already pending. In practice, simultaneous actions will only result in a longer duration of the proceedings (if the defendant requests a referral) or in the possibility of conflicting judgments in first instance.

### Private action procedure

**8  May litigation be funded by third parties? Are contingency fees available?**

Litigation may be funded by third parties. However, third parties that fund group claims in the Netherlands (almost) never occur. Insurance is sometimes available to cover legal costs.

A member of the Dutch Bar is not allowed to agree a 'no-cure, no-pay' arrangement (a contingency fee arrangement) with a client or that his or her fee will be proportionate to the results achieved thanks to his or her assistance, unless such member so does with due observance of the usual and accepted collection rate of Bar members (article 2 By-law on the exercise of a legal practice (contingency fees section)). However, the Dutch Bar allows its members to combine their hourly rate with a success fee, provided it does not amount to a disguised 'no-cure, no-pay' arrangement.

**9  Are jury trials available?**

Jury trials are not available.

**10  What pre-trial discovery procedures are available?**

Before a procedure on the merits is initiated, a party may request a preliminary hearing of witnesses. A (potential) claimant must indicate the nature and amount of its claim, the witnesses it wishes to examine, the subject (facts) on which it intend to hear the witnesses and, if known, the identity of the party to which the claim may be addressed. It is within the court's discretion to allow a preliminary hearing of witnesses. A request is generally allowed. One is not obliged to initiate proceedings on the merits after an examination of witnesses.

Further, article 843a of the Dutch Code of Civil Proceedings (DCCP) allows pre-trial discovery of documents. A claimant that has a legitimate interest can request inspection, copies or extracts of documents related to a legal relationship to which it is a party. The

Cited in Anvar v Fairfield Greenwich 09Civ0118 Decided on 11/18/13
Archived on 11/18/13
This document is protected by copyright.
Further reproduction is prohibited without permission.

claimant has to identify the documents with a reasonable degree of precision. A request under article 843a DCCP can be filed in separate proceedings before a district court or brought as a separate request in any pending proceedings.

### 11 What evidence is admissible?

There are no limitations to the form of evidence (article 152(1) DCCP). However, the valuation of evidence is left to the judge. The value of statements by national competition authorities, other courts or authorities are also left to the discretion of the court. In practice, such statements have certain value, but defendants can rebut facts as set out in a decision of a competition authority. According to article 16 of Regulation 1/2003, Dutch courts are not allowed to take decisions running counter to an adopted decision of the European Commission. Expert evidence and cross-examination of parties, witnesses and experts are admissible.

### 12 What evidence is protected by legal privilege?

Members of the Dutch Bar have legal privilege of non-disclosure in proceedings. In this respect, legal advice given to clients will benefit from legal privilege before courts or the Dutch Competition Authority. In addition, correspondence between a lawyer and a client is covered by the pledge of secrecy. This guarantees the full exercise of the right of defence, and specifically, to safeguard the requirement that any person must be able to consult his or her solicitor without fear that any information given in confidence might subsequently be disclosed.

The European Court of First Instance stated a few years ago in its *Akzo Nobel* decision (Joined Cases T-125/03 and T-253/03) with respect to the issue of legal professional privilege in the context of EU competition law that communications with in-house counsel are excluded from protection under privilege rules.

Communication between in-house counsel and, for example, the board of directors of the company they work for, may have to be disclosed in civil proceedings. However, since 1997 in-house lawyers have been able to be members of the bar. In-house lawyers that are admitted to the bar have the same right of legal privilege as (external) counsel.

### 13 Are private actions available where there has been a criminal conviction in respect of the same matter?

In the Netherlands, the authorities are not allowed to combine criminal and civil persecution in relation to the same matter (the 'una via' rule). The Competition Act is an administrative act. In the event that the Dutch Competition Authority imposes a fine on the basis of the Competition Act, criminal proceedings related to the same matter are not allowed. In addition, actions that will normally lead to criminal convictions but are part of the workings of the cartel (such as fraud) will normally be penalised in the Netherlands by the Dutch Competition Authority.

In this respect, criminal conviction and private actions related to competition law violations in respect of the same matter do not occur since the Dutch Competition authority shall penalise the cartel. After the Dutch Competition Authority imposes the fine, follow-on private action could be initiated (see question 1).

### 14 Can the evidence or findings in criminal proceedings be relied on by plaintiffs in parallel private actions? Are leniency applicants protected from follow-on litigation?

A violation of Dutch competition law is not prosecuted as a criminal offence. A decision of a court in a criminal matter (although not related to the same matter as the relevant competition law violation) can be used as evidence in a private enforcement action. Such judgements have evidential value since they provide compelling evidence that the convicted person has committed the actions in the judgment (article 161 DCCP). However, the convicted person may rebut these facts by providing contradictory evidence.

Leniency applications do not affect civil proceedings. In this respect, successful or unsuccessful leniency applicants are not protected from follow-on litigation.

### 15 What is the applicable standard of proof for claimants and defendants?

In general, the burden of proof rests with the plaintiff, who has to state the facts that constitute the infringement (article 150 DCCP). In this respect, claimants must, to succeed in obtaining damages, provide convincing evidence of an unlawful act (breach of competition law), attributability to the defendant, relativity (the rule breached must serve to protect against damage such as that suffered by claimant) the existence of damage and the causal link between the unlawful act and the damage occurred.

The defendant has the burden of proof of the facts that support the specific defences - such as a passing-on defence.

The court may order a party to disclose information that the other party needs to discharge its burden of proof. The court may reverse the burden of proof if the defendant refuses to produce these documents.

In interlocutory proceedings, the judge has the discretion to shift or reverse the burden of proof in a manner he feels is appropriate for the case.

### 16 What is the typical timetable for collective and single party proceedings? Is it possible to accelerate proceedings?

The usual minimum time limits for summoning the opposing party and for calling any third parties and witnesses is at least one week (articles 114-119 DCCP). Time limits for the performance of procedural acts by parties and for the court's rulings vary in general between two and six weeks. An extension for performing procedural acts may be granted by the court under certain conditions. The general time limit of three months applies to appeals on a point of fact (articles 339 DCCP) and appeals on a point of law (articles 402 DCCP).

The duration of civil proceedings depends on the circumstances of the case and is difficult to predict. Civil proceedings may easily last more than one year. However, interlocutory proceedings generally take no more than a few weeks from the issuing of the writ of summons to the judgment, dependent on the urgency of the matter.

### 17 What are the relevant limitation periods?

A damage claim has to be initiated within five years from the day the claimant becomes aware of the damage and of the identity of the person responsible for the damage. In any event, damage claims become unenforceable 20 years after the event that caused the damage. With respect to an action seeking avoidance of a contract, the statutory period of limitation is three years. A running limitation period can may be suspended or interrupted, after which a new period may begin to run.

### 18 What appeals are available? Is appeal available on the facts or on the law?

Appeals are available to the courts of appeal. There are five courts of appeal that have jurisdiction to hear appeals against the judgments of the district courts within its district. On points of law only, a second appeal may be brought before the Supreme Court.

Cited in Arkwal v Fairfield Greenwich 09 Civ 118. Decided 11/8/13
Archived on 11/18/13
This document is protected by copyright.
Further reproduction is prohibited without permission.

## Collective actions

**19  Are collective proceedings available in respect of antitrust claims?**

In the Netherlands, non-profit organisations – associations or foundations – representing the interests of injured parties can bring collective actions in their own names. The articles of association of these associations or foundations must state that they represent the interests of the injured parties. Another requirement is that the interests concerned can be joined. The foundation or association must state and, if necessary, prove that the interests of the group members are sufficiently similar to warrant a collective action. A representing organisation can in principle pursue any causes of action and forms of relief except an action for damages (article 3:305a DCC). For example, an association or foundation can seek a judicial declaration that the defendant is liable for the damage it has caused. The Dutch Consumers Association sharply criticises the exclusion to claim for monetary compensation collectively in article 3:305a DCC and stated that this is the most important block in access to justice for a collective damages claim.

Further, the individuals can assign their claims to an organisation (association or foundation). This association or foundation can claim damages as holder of the individual claims, in its own name on behalf of the victims.

The injured parties may also grant a power of attorney to a party to represent them during legal proceedings. This party would then bring a legal action against the party being sued in the name of those that had issued the power of attorney.

Claimants can also jointly bring a legal action in their own name against the party being sued. This means that all victims are a party in the legal proceedings.

Finally, the Dutch Class Action (Financial Settlement) Act 2005 (WCAM: laid down in articles 7:907-910 and 1013-1018 DCC) enables the possibility for binding collective settlements of mass disputes (see question 20).

**20  Are collective proceedings mandated by legislation?**

The right to institute a collective action is regulated in articles 3:305a to 3:305c DCC. Foundations and associations can initiate collective proceedings (see question 19). Article 3:305b DCC extends this right to public legal entities and article 3:305c DCC to certain foreign legal entities and authorities protecting consumer interests. Civil claims may be brought in relation to all areas of law.

Further, WCAM (see question 19) facilitates the collective settlement of mass damages. This is the first act in Europe that enables a binding collective settlement of mass disputes. If a settlement agreement has been concluded between a foundation or association and one or more other parties that have committed themselves by this agreement to pay compensation for the damage, the Amsterdam Court of Appeal may, at the joint request of the parties, declare this settlement binding on persons to whom the damage was caused. However, a person entitled to compensation can notify in writing, within a certain period, that he or she does not wish to be bound to the agreement. In that case, the declaration that the agreement is binding shall have no consequences for such person (opt-out).

This act has in practice been applied in various fields since its introduction, for example for damages caused by failure to warn about the risks of certain investment products (*Dexia* case concerning a collective settlement of €1 billion), for damages of life insurance policy holders because of the bankruptcy of an insurance company (*Vie d'Or* case concerning a €45 million settlement) or for personal injury caused by a unsafe drug (*DES* case concerning a €35 million settlement). In May 2009, the Amsterdam Court of Appeal rendered an important decision with respect to an international collective settlement that compensates investors who suffered losses because of a sudden decrease in the value of Shell securities following disclosure of allegedly incorrect prior reporting by the company of its proven oil and gas reserves. The court ruled that WCAM concerns civil and commercial matters as referred to in article 1 of the Brussels I Regulation and the Lugano Convention and, on this basis, the court assumed for the first time jurisdiction with respect to the shareholders domiciled outside in the Netherlands. In July 2009, the Court of Appeal declared binding a global collective settlement in the *Vedior* case related to damage suffered by investors who sold their Vedior stock when rumours were spreading that Vedior was about to be acquired.

**21  If collective proceedings are allowed, is there a certification process? What is the test?**

Pursuant to article 3:305a DCC, class certification is not part of the proceedings.

**22  Have courts certified collective proceedings in antitrust matters?**

Not applicable (see question 21).

**23  Are 'indirect claims' permissible in collective and single party proceedings?**

The general view is that indirect claims are permissible. However, the claimant must provide evidence of the damage and causal link between the violation and the damage (see also question 15).

**24  Can plaintiffs opt out or opt in?**

The foundation or association that is allowed to initiate collective proceedings according to articles 3:305a to 3:305c DCC defines the group represented. The group members are bound by the rendered judgment. However, pursuant to article 3:305a sub 5 DCC, individual members retain the right to opt out (unless that would not be possible in light of the nature of the judgment).

With respect to settlements that have been declared binding (see question 20) article 7:908(2) DCC provides for an opt-out possibility. This article states that an affected individual can opt out (in writing) within three months after the court has declared the settlement binding. For example, in the above-mentioned *DES* case, the estimation is that only a few claimants opted out and around 6,000 DES users filed requests for a payment.

**25  Do collective settlements require judicial authorisation?**

Under the Dutch Class Action Financial Settlement Act 2005 a request to declare a collective settlement binding must be submitted to the Court of Appeals in Amsterdam (see also question 20). The court declares the settlement binding if certain procedural requirements and criteria with respect to content have been met (article 7:907 DCC and 1013 DCCP). For example, the agreement must include – inter alia – the most accurate possible indication of the number of persons belonging to the group or groups and the conditions that these persons must meet to qualify for the compensation.

**26  If the country is divided into multiple jurisdictions, is a national collective proceeding possible?**

Not applicable.

**27  Has a plaintiffs' collective-proceeding bar developed?**

No.

**Update and trends**

As stated in question 5, a legislative proposal is pending in the Dutch parliament to increase the values of claims that may be heard by the sub-district courts from €5,000 to €25,000 so that more cases can be handled by these courts.

The Dutch government has responded to the Green Paper on Consumer Collective Redress. The response revealed that the Dutch government considers the Dutch Collective Settlement Act a useful instrument and wants to focus on improving this act so that it can be used to settle more mass claims. In this respect, a number of amendments have been proposed. The most important is the introduction of the option for the court to request a preliminary hearing from the Supreme Court. This opens the possibility to gain clarity on key issues faster (legal or otherwise).

Further, the government is planning a study into options for redress in the event of scattered damage (mass damage that is fragmented or relatively low-value damage) because the Dutch government is of the opinion that Dutch mechanisms for collective redress pay little attention to these damages.

### Remedies

**28 What forms of compensation are available and on what basis are they allowed?**

Damages are generally awarded to place the claimant in the position he or she would have been had the infringement not taken place. This actual damage is calculated by the theoretical comparison of the financial situation with and without the infringement. Compensation could consist of loss of profit, incurred losses, or, exceptionally, loss of opportunities.

However, the judge has the discretion to limit the amount of damages. In addition, the judge can decide upon the request of the claimant to assess the damages on the basis of the profit made by the defendant, if this reflects a more just outcome.

**29 What other forms of remedy are available?**

Besides damages, a breach of European or Dutch competition law can lead to demands for restitution, injunctions (prohibiting the continuation of the unlawful conduct) and declaratory judgments (declaring that an unlawful agreement is null and void). Preliminary injunction can be requested in interlocutory proceedings.

**30 Are punitive or exemplary damages available?**

Punitive or exemplary damages are not available.

**31 Is there provision for interest on damages awards?**

In the event of tort, interest is awarded from the date the damages were incurred (article 6:83(b) and 6:119 DCC). Compound interest is included. Each year after the damages occurred interest is added to the amount on which the legal interest calculation is based. In the event of tort, the level of interest is determined by the government by royal decree and regularly adjusted to market circumstances (article 6:120 DCC).

With respect to the non-fulfilment of commercial contracts, the level of interest is determined by the refinancing interest rate applied by the European Central Bank, plus 7 percentage points. This interest is adjusted each half-year.

**32 Are the fines imposed by competition authorities taken into account when settling damages?**

No, fines imposed by the European Commission or the Dutch Competition Authority are not taken into account when settling damages in a private antitrust case.

**33 Who bears the legal costs? Can legal costs be recovered, and if so, on what basis?**

The court decides who bears the legal costs. In general, these costs have to be paid by the party against which the court ruled. The court determines the amount of the legal costs to be paid.

Costs vary with the size and type of case. In most cases, the fixed costs are substantially lower than the actual legal costs. Therefore, a successful party will normally not be fully remunerated.

**34 Is liability imposed on a joint and several basis?**

Members of a cartel that have acted jointly are jointly and severally liable for the entire damage (article 6:102(1) DCC). Further, article 6:166(1) DCC states that, if one out of a group of persons unlawfully causes damage and the risk of thus causing damage should have restrained such persons from their collective conduct, all members of the group shall be jointly and severally liable if they can be held accountable for such conduct. The claimant has the possibility to invoke this article to sue any of the participants to, for example, a cartel, on the basis of several liability. This means that – if the requirements of group liability have been met – the claimant could also sue an undertaking from which it has not purchased anything, but which might be more solvent than its own supplier.

**35 Is there a possibility for contribution and indemnity among defendants?**

In general, each defendant has to contribute to the damage in proportion that it has contributed to the circumstances that caused the damage, unless equity due to certain circumstances requires different (article 6:101 DCC).

In addition, all members of the group jointly and severally liable according to article 6:166(1) DCC are each liable for an equal part of the damages, unless equity requires different due to certain circumstances (article 6:166(2) DCC).

**36 Is the 'passing-on' defence allowed?**

Dutch law does not provide explicitly for the passing-on defence. However, a judge has the discretion to take this defence into account with respect to the assessment (mitigation) of the level of damages or to order the payment of unlawfully obtained profits instead of compensation of damages actually suffered. At this moment, there is no authoritative case law on the availability of the passing on defence. Presumably, this defence is possible since Dutch tort law is based on the compensatory principle. In view of this principle, it seems that a claimant cannot recover overcharges that have been passed on to its downstream customers. In this respect, the Dutch government stated in its response to the European Commission's 2008 White Paper on Damages Actions that the passing-on defence is available in the Netherlands.

**37 Do any other defences exist that permit companies or individuals to defend themselves against competition law liability?**

In accordance with EC competition law, the public interest defence or the state compulsion doctrine is available in the Netherlands. Undertakings do not infringe Dutch competition law if their conduct is

Cited in Anwar v Fairfield Greenwich 09-Civ-0118 Decided 11/4/13
Archived on 11/8/13
This document is protected by copyright.
Further reproduction is prohibited without permission.

justified on the basis of the public law framework or they are under an obligation to comply with the instructions of the public authority.

**38   Is alternative dispute resolution available?**

Alternative dispute resolutions in the Netherlands are arbitration, binding advice (binding third-party ruling), mediation and settlement. The results of these alternatives remain outside the public domain. Settlements and arbitration are commonly used in competition law cases, so in this respect they are successful.

Arbitration is governed by the sections 1020-1076 DCCP and the international Treaty of New York. Parties are prevented from civil proceedings and obliged to arbitration if they have agreed to arbitration by clause in a contact. In this case, the civil court declares itself incompetent.

A few years ago, referral facilities to mediation were introduced at all courts. Parties can only participate on a voluntary basis. Mediation clauses in contracts do not break the competence of the court to deal with the case.

## BOEKEL DE NERÉE

**Frederieke Leeflang**                          frederieke.leeflang@boekeldeneree.com

PO Box 75510                                     Tel: +31 20 795 39 53
1070 AM Amsterdam                                Fax: +31 20 795 39 00
The Netherlands                                  www.boekeldeneree.com