# THE BRODSKY LAW FIRM, PL

RICHARD E. BRODSKY, ATTORNEY AT LAW

June 17, 2014

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/17/14
```

**By fax to (212) 805-6382**

Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re: *Anwar, et al. v. Fairfield Greenwich Limited, et al.,*
           *09-cv-118 (VM) (THK)*
           ***Standard Chartered Cases***

Dear Judge Marrero:

      I write as the Liaison Counsel for, and on behalf of, the Standard Chartered Plaintiffs ("SC Plaintiffs"), in the Standard Chartered Cases (the "SC Cases"). This letter responds to the June 9, 2014 letter to Your Honor from counsel for the Standard Chartered Defendants ("SC Defendants").

      The SC Defendants' latest letter—their fourth since November 12, 2013 (DEs 1226, 1236, 1246, 1276), concerning the Securities Litigation Uniform Standards Act ("SLUSA")—argues that the Second Circuit's denial, in *In re Herald (Trezziova v. Kohn)*, Nos. 12–156 (L) and 12–162, 2014 WL 2199774 (2d Cir. May 28, 2014) ("*Trezziova II*"), of the appellants' motion for reconsideration of *In re Herald (Trezziova v. Kohn)*, 730 F.3d 112 (2d Cir. 2013) ("*Trezziova I*"), mandates dismissal of the SC Cases under SLUSA. *Trezziova I* held that the claims in that case were covered by SLUSA because they alleged "a misrepresentation or omission of a material fact in connection with the purchase and sale of covered securities," 15 U.S.C. § 78bb(f)(1)(A). *Trezziova II* denied reconsideration of the earlier decision and also held that reversal was not mandated by the intervening Supreme Court decision in *Chadbourne & Park LLP v. Troice*, 134 S.Ct. 1058 (2014), which held that the claims in that case did not satisfy SLUSA's "in connection with" requirement. The SC Defendants argue, conclusorily, that *Trezziova II* mandates a dismissal of the SC Case.

      This letter supplements our previous letters to this Court on SLUSA (DEs 1249, 1244, and 1223), in which we showed that SLUSA does not apply to the SC Cases

From: Richard E. Brodsky  Fax: (888) 391-5819    To: Hon. Victor Marrero    Fax: +1 (212) 805-6382    06/17/14    Page 3 of 5  06/17/20 14 2:48

Case 1:09-cv-00118-VM-FM   Document 1280   Filed 06/17/14   Page 2 of 4

Honorable Victor Marrero
June 17, 2014
Page 2

because the SC Cases are not "covered class actions" under SLUSA,[1] and even if they were, they do not allege fraud "in connection with the purchase and sale of a covered security."

It is important to remember what *Troice* actually held: "[a] fraudulent misrepresentation or omission is not made 'in connection with' . . . a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" 134 S.Ct. at 1066. Later in the opinion, in discussing the dissenting opinion's cases, the Court does state that the dissent "cannot escape the fact that every case it cites involved a victim who took, tried to take, or maintained an ownership position in the statutorily relevant securities through 'purchases' or 'sales' induced by the fraud." *Id.* at 1067. Even here, however, the term "ownership position" is not used, as the SC Defendants implicitly argue, June 19, 2014 Ltr., 1, to eliminate the involvement of Fairfield Sentry (as well as Fairfield Greenwich's outside administrator) in depositing Sentry investors' funds with Madoff Securities. *See* In *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 398-99 (S.D.N.Y. 2010) ("*Anwar II*") ("The allegations in this case present multiple layers of separation between whatever phantom securities Madoff purported to be purchasing and the financial interests Plaintiffs actually purchased . . . . Though the Court must broadly construe SLUSA's 'in connection with' phrasing, stretching SLUSA to cover this chain of investment—from Plaintiffs' initial investment in the Funds, the Funds' reinvestment with Madoff, Madoff's supposed purchases of covered securities, to Madoff's sale of those securities and purchases of Treasury bills—snaps even the most flexible rubber band."

In analyzing *Trezziova II*, we are constrained to point out that the court mistakenly states that "the closest that the plaintiffs in *Troice* could get to statutorily defined 'covered securities' was the allegation that Stanford induced purchase of the

---

[1] To summarize, the various SC Cases are not a "group of lawsuits" under 15 U.S.C. § 78uu(f)(5)(B)(iii). None of the SC Cases was filed as a class action. All cases were filed as separate actions by separate lawyers at separate times. They were not filed as a subterfuge to avoid application of the PSLRA, the prevention of which is the purpose of SLUSA. They were transferred to this Court against the SC Plaintiffs' will by the Judicial Panel on Multidistrict Litigation, where they were consolidated for pretrial purposes with *Anwar v. Fairfield Greenwich Ltd.*, 09-cv-118, but have been separately administered pursuant to separate pretrial orders.
To conclude these cases are a "covered" class action would be to pervert the plain legislative intent of the Congress, which was to stop ingenious plaintiffs' lawyers from skirting the intent of the Private Securities Litigation Reform Act by filing state-law-based class actions rather than 10b-5 class actions. Such a decision would bathe a bank that *separately* put hundreds of its private banking clients into Sentry (totaling, at the peak, $600,000,000 in client investments) with immunity from separate state-law-based lawsuits solely because so many of its clients lost money through Sentry's investing in a Ponzi scheme. Under the SC Defendants' theory, had fewer than the requisite number (fifty) of the bank's clients invested in Sentry, SLUSA would have been inapplicable. Applying SLUSA because the bank breached its fiduciary duty to what amounts to *too many* clients would be an absurdity that would collide with common sense and plain legislative intent. The Court should therefore find that the SC Cases are not a "group of lawsuits" within the meaning of SLUSA.

From: Richard E. Brodsky    Fax: (888) 391-5819    To: Hon. Victor Marrero    Fax: +1 (212) 805-6382    06/17/14    Page 4 of 5    06/17/201 12:48

Case 1:09-cv-00118-VM-FM   Document 1280   Filed 06/17/14   Page 3 of 4

Honorable Victor Marrero
June 17, 2014
Page 3

uncovered securities by, among other misrepresentations, vague promises that the Stanford Investment Bank *had significant holdings* in various covered securities." *Trezziova II*, 2014 WL 2199774 at *1 (emphasis added). But *Troice* is definitely not limited to fraudulent misrepresentations that the crooked bank *already owned covered securities*. The Supreme Court plainly states that the allegations of the plaintiffs included that they purchased Stanford CDs "expect[ing] that Stanford International Bank would use the money it received [from the sale of the CDs to the investors] *to buy* highly lucrative assets," 134 S.Ct. at 1064 (emphasis added), and that "[a]t most, the complaints allege misrepresentations about the *Bank's* ownership of covered securities—fraudulent assurances that the Bank owned, would own, or would use the victims' money to buy *for itself* shares of covered securities." *Id.* at 1071 (emphasis in original). In other words, the fraud alleged in *Troice* was based, at least in part, on misrepresentations to purchasers of uncovered securities by the fraudster financial institution that funds invested in the uncovered securities would be later used to acquire covered securities—which allegation the Supreme Court held to be insufficient to satisfy SLUSA's "in connection with" test. We know of no doctrine that requires a federal district court to accept its circuit court's plainly erroneous description, in another case, of the underlying allegations in a separate Supreme Court decision.[2] The factually correct reading of the plainly expressed allegations in *Troice* make it impossible to distinguish the SC Cases from the decision in *Troice*.

Even if the *Trezziova II* court did not intend to distinguish the case before it from *Troice* based on its recitation of the *Troice* allegations, the only other basis it mentions to support the conclusion that SLUSA applies, despite *Troice*, in fact distinguishes the SC Cases (and *Anwar*) from *Trezziova*. Thus, the *Trezziova II* court states that investors bought uncovered securities issued by "feeder funds (not alleged in the instant complaints as anything other than intermediaries)." *Id.* at 2. But on this very point, as to Sentry and the other Fairfield funds, this Court has previously concluded the opposite. In *Anwar II*, this Court held that Sentry, et al. "were not a cursory, pass-through entity. The Funds also placed up to 5 percent of their assets in non-Madoff investments, a relatively small

---

[2]For example, the Second Circuit's reading of the allegations in *Troice* is not "the law of the case," which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). Nor could the Second Circuit's recitation of the allegations made in a case that ended up being decided in the Supreme Court be deemed to be an interpretation or pronouncement of law. What the plaintiffs in *Troice* alleged is a factual question. Therefore, the doctrine of *stare decisis* does not apply, since "*stare decisis* is concerned with rules of law," *Complaint of Tug Helen B. Moran, Inc.*, 607 F.2d 1029, 1031 (2d Cir. 1979) (quoting 1B Moore's Federal Practice P 0.402(2), at 117). The Second Circuit is no more capable than this Court of reviewing a Supreme Court decision to determine the nature of the factual allegations in the cases decided. Moreover, to the extent that *Trezziova II* announces a rule of law, which is not the case, the doctrine of *stare decisis* does not require the district court's automatic adherence to that legal interpretation. "*Stare decisis* is not an inexorable command; rather, it 'is a principle of policy and not a mechanical formula of adherence to the latest decision.'" *Payne v. Tenn.*, 501 U.S. 808, 828 (1991) (quoting *Helvering v. Hallock*, 309 U.S. 106, 119 (1940)). Where, as here, the superior appellate court has erroneously characterized the factual allegations underlying a Supreme Court decision, the district court is free to disregard that mischaracterization; indeed, fidelity to the law virtually mandates that result.

Honorable Victor Marrero
June 17, 2014
Page 4

portion overall but representing many millions of dollars." *728* F. Supp. 2d at 398. Thus, on this basis as well, *Trezziova II* leaves the result in *Anwar II* undisturbed; SLUSA does not apply.

      In this connection, it should not pass notice that the SC Defendants make no attempt to argue that *Trezziova II* requires this Court to disown its earlier decision in *Anwar II*, where this Court held that state-law claims against the promoters of Fairfield Sentry and related funds were not "in connection with the purchase and sale of covered securities." Because of the many layers of transactions between the plaintiffs and the Madoff fraud, this Court concluded that "stretching SLUSA to cover this [case] . . . snaps even the most flexible rubber band." *Id.* at 399. We have amply demonstrated to the Court, DEs 1249 and 1223, that the SC Plaintiffs were even further removed than the plaintiffs in *Anwar II* from the Madoff fraud. Thus, if, as this Court held, applying SLUSA to *Anwar II* would "snap" SLUSA's "rubber band," then applying SLUSA to the SC Cases "would positively shred it." *See* DE 1223 at 3.

      Thank you for your consideration of this letter.

Respectfully submitted,

The Brodsky Law Firm, PL

*/s/ Richard E. Brodsky*

Richard E. Brodsky

cc:     Counsel in Standard Chartered Cases

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Standard Chartered Plaintiffs.

SO ORDERED.

6-17-14
DATE

VICTOR MARRERO, U.S.D.J.