# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

July 18, 2014



**BY HAND**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Anwar, et al. v. Fairfield Greenwich Limited, et al.*
Master File No. 09-CV-00118 (VM) (FM)

Dear Judge Marrero:

We write on behalf of all parties. The parties have met and discussed the impact on the remaining schedule for this action of the Second Circuit's June 19, 2014 Summary Order ("Order") (copy attached) vacating the Court's class certification order and remanding the case for further proceedings. In light of the Second Circuit's Order, the parties have agreed on the following:

- Plaintiffs will file a new motion for class certification by August 4, 2014. Defendants shall have up to 60 days to file their opposition briefs, and Plaintiffs thereafter will have up to 30 days to file a reply brief.

- Plaintiffs' moving brief may be up to 50 pages, the PwC Defendants and Citco Defendants each will have up to 40 pages for their oppositions, and the Plaintiffs will have up to 40 pages for their reply.

There are, however, two issues on which the parties disagree and seek the Court's guidance to resolve: *first*, whether additional expert reports and potentially related discovery regarding class certification issues should be permitted; and *second*, the timing for the filing of summary judgment motions.

### 1. Whether Additional Expert Reports and Discovery Relating to Class Certification Issues Should Be Permitted

**Plaintiffs' position**: In vacating this Court's original certification order, the Second Circuit rejected Defendants' calls for reversal. The panel did not endorse Defendants' arguments that no class could be certified under the circumstances of this case nor take up their invitation to "engage in free-ranging merits inquiries at the certification stage" which are foreclosed by Rule 23. *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

The Honorable Victor Marrero
July 18, 2014
Page 2

Instead, the concern expressed by the Second Circuit did not go to this Court's underlying reasoning, but was rather that the original certification order "focused primarily on the claims asserted against FGG" and did not provide "sufficient factual findings as to how Rule 23(b)'s requirements are satisfied" with respect to the existing claims against PwC and Citco. *See* Order at 5. The Order then specifically addresses application of those requirements to this case:

> Here, the [class certification] order does not indicate how common evidence can show (1) the existence of a duty of care applicable to the class either under the standard identified in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435 (1985), or otherwise; or (2) reliance by the class on alleged misrepresentations by (a) the Citco Defendants and (b) the PwC Defendants, either under the presumption identified in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972), or otherwise.

(Order at 6) (footnotes quoting *Credit Alliance* and *Stoneridge Inc. Partners v. Scientific Atlanta*, 552 U.S. 148 (2008), omitted). The Second Circuit remanded "for further proceedings in the district court **consistent with this order** and with **the developed record**, including any **facts** revealed by **discovery that has taken place** since the original certification order." (*Id.* at 7) (emphases added).

The Second Circuit thus gave clear instructions for the remand: This Court should explain the facts underlying its decision to certify the class against PwC and Citco; it is not necessary to reconsider that decision. Accordingly, Plaintiffs maintain that any expert witness opinions submitted in connection with class certification should be from experts already identified and within the scope of their reports and depositions. The Citco Defendants have indicated that they intend to submit expert witness opinion(s) beyond the scope of the 29 expert reports previously served by the parties, including potentially from entirely new expert(s). We do not see anything in the Second Circuit opinion that justifies reopening the expert process.[1]

Any relevant issue for expert testimony on class certification is necessarily also an issue on the merits as to which the parties were obligated to have identified, disclosed and completed expert discovery. For example, an admissible expert opinion on class certification is not whether reliance can be established through common evidence, which is a legal issue for the Court, but whether investors customarily or reasonably rely on certain information, which is no different from the merits of the case. Thus, there is no justification for a separate set of expert opinions,

---

[1] Plaintiffs do not object to expert declarations regarding foreign law. Plaintiffs' understanding is that either party may bring to the Court's attention material developments in another country's law that could alter the Court's analysis of whether a class action judgment would be given preclusive effect in that country. Plaintiffs also have agreed to notify Defendants promptly if they decide to make any further submissions on foreign law.

The Honorable Victor Marrero
July 18, 2014
Page 3

let alone a new set of experts, on class certification. This is especially so when the Defendants could have used experts on class certification previously but did not do so.

Defendants' expert reports were due on October 2, 2013, over three months after the Second Circuit had granted Defendants' Rule 23(f) petitions. Moreover, this Court's original class certification order specifically informed Defendants that "[t]his Class is subject to further adjustment or decertification as warranted as facts develop." (Dkt. No. 1052 at 4.) Nor did Defendants seek to carve out from the expert discovery schedule issues that could arise from the class certification appeal (as the parties did agree to do with respect to foreign law issues). Accordingly, there is no merit to Defendants' claim that they believed issues relevant to class certification did not have to be addressed at the time expert discovery occurred.

Nevertheless, the Citco Defendants now contend that "expert evidence on the issue of reliance" is appropriate in light of the Court's May 13, 2014 Order allowing Plaintiffs to reassert negligence-based claims on their initial investments. In that Order, however, this Court specifically addressed the question of additional expert discovery, and gave Defendants permission (at 4) "**to request an extension of the [May 30, 2014] expert discovery deadline** upon a sufficient showing of the nature of such expert discovery necessary by reason of Plaintiffs' amendment of the SCCAC at this time." (emphasis added). But Citco did not attempt to make such a showing or seek an extension.

Moreover, proof of reliance on a class-wide basis in connection with Plaintiffs' initial investments has been at issue continuously in this case, because other claims involving initial investments were sustained, *e.g.*, federal securities claims. *See Anwar II*, 728 F. Supp. 2d 372, 423-428 (S.D.N.Y. 2010). Indeed, Citco addressed this very issue in its briefing on the class certification appeal, *see e.g.*, Second Circuit Case No. 13-2340, Dkt. No. 131 at 35-37, which was submitted after this Court's August 6, 2012 order dismissing common law negligence initial investment claims and before the Court's May 13, 2014 order granting Plaintiffs' motion to amend. Nor does Citco explain how expert testimony would address the legal questions of whether common evidence can show the existence of a duty or reliance for purposes of class certification – as opposed to the merits of these issues, which have always been part of the case.

Contrary to Citco's claims, Plaintiffs would be substantially prejudiced by reopening expert discovery. Citco submitted reports of nine experts who were deposed at length. New reports would entitle Plaintiffs to new depositions and rebuttal reports – adding further expense and delay to the class certification process.

**Defendants' position:** Defendants' position is that there is no good reason, and plaintiffs offer none, why the Court should be deprived of a limited number of expert reports (perhaps only one or two) that may be helpful to the Court in resolving plaintiffs' new motion for class certification.

The Honorable Victor Marrero
July 18, 2014
Page 4

In the Order, the Second Circuit vacated this Court's order granting class certification and remanded for further proceedings "consistent with this order and with the developed record, including any facts revealed by discovery that has taken place since the original certification order." (Order at 7.) Significantly, the Second Circuit did not rule this Court should "simply explain the facts underlying its decision to certify the class against PwC and Citco," as plaintiffs say. Instead, the Court of Appeals made clear that this Court must examine "how common evidence can show (1) the existence of a duty of care applicable to the class either under the standard identified in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435 (1985), or otherwise; or (2) reliance by the class on alleged misrepresentations by (a) the Citco Defendants and (b) the PwC Defendants, either under the presumption identified in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972), or otherwise." (*Id.* at 6.)

The submission of a limited number of expert reports in connection with plaintiffs' renewed motion for class certification will not only be helpful to the Court in examining the core issues identified by the Order in light of the "developed record," but will also undoubtedly assist the Court in conducting the "rigorous analysis" necessary to determine whether the requirements of Rule 23 have been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Contrary to plaintiffs' position, nothing in the Second Circuit's Order in any way removed the necessity for the Court to make those determinations.

Also contrary to plaintiffs' position, nothing in the Order precludes (or, for that matter, even addresses) the introduction of additional expert evidence in connection with plaintiffs' renewed motion for class certification. In fact, we submit that the Order suggests the opposite: namely, so long as the proffered expert evidence – whether the expert has been previously identified or not – helps and assists this Court in understanding the "developed" factual record in connection with the issues related to class certification, it should be permitted. We see no evidence the Second Circuit intended for this Court somehow to limit itself in its consideration of relevant information relating to the issues in dispute in connection with plaintiffs' motion for class certification.

Although it is premature to identify with certainty all of the issues a potential expert may address given that we have not yet seen plaintiffs' new motion for class certification[2], the Citco Defendants are currently contemplating filing, in addition to any potential foreign law expert declarations they may submit[3], a single expert declaration in opposition to plaintiffs' motion for

---

[2] For example, should plaintiffs argue on class certification that reliance can be shown on a class-wide basis through the "fraud on the market" presumption (which, we note, plaintiffs did not assert in their previous motion), the Citco Defendants would submit an expert declaration demonstrating why the "fraud on the market" presumption does not apply here.

[3] The Citco Defendants agree with plaintiffs that the parties should be allowed to submit expert declarations concerning issues of foreign law.

The Honorable Victor Marrero
July 18, 2014
Page 5


class certification. Consistent with the Order, the Citco Defendants intend to submit this expert testimony to address whether, in light of the facts adduced in discovery, plaintiffs will be able to prove reliance by common evidence and whether common evidence will be able to demonstrate the existence of a duty of care applicable to the class under the standard identified in *Credit Alliance*. Notably, plaintiffs do not seriously dispute that such an expert declaration may well be helpful to this Court's assessment of whether class certification is appropriate here. Nor can they.

On the contrary, plaintiffs simply argue – incorrectly -- that any such expert should have been "already identified" and that any expert opinion must remain "within the scope of their reports and depositions." Again, nothing in the Order requires this. Nor did defendants have a crystal ball enabling them to predict how the Second Circuit would rule, and what additional expert reports might be useful on any class certification issues the Circuit identified. Nor are those issues the same as those "on the merits" of the case. And, we see no "substantial" prejudice to plaintiffs in allowing the submission of this expert evidence, since, at most, it will cause plaintiffs to ask for the deposition of any such expert (or perhaps two), which can easily be accomplished within the schedule for the class certification motion contemplated by the parties.

Significantly, additional expert evidence on the issue of reliance is especially appropriate given the Court's recent ruling (after the close of expert discovery) allowing plaintiffs leave to amend their complaint to reassert their previously dismissed negligence-based initial investment allegations against the Citco Defendants. Because those negligence-based initial investment claims were dismissed at the time of expert discovery, and thus were not addressed at all by any of the Citco Defendants' expert witnesses, it would be unfair to limit expert witness submissions, as plaintiffs propose, to existing experts and expert reports. The Court appears to have recognized this point in its May 13, 2014 order allowing plaintiffs' amendment, when it stated that it would permit additional expert discovery on the reinstated claims. Indeed, the only manner in which the Citco Defendants could introduce expert evidence regarding why these negligence-based initial investment claims are not suitable to class treatment is if the Court permits additional – yet limited – expert discovery. Thus, the Citco Defendants' position is fully consistent with what was contemplated by this Court's order when it permitted plaintiffs to amend the complaint to reinstate a previously-dismissed cause of action after the close of discovery.[4]

---

[4] Plaintiffs argue that the Citco Defendants fail to "explain how expert testimony would address the legal questions of whether common evidence can show the existence of a duty or reliance for purposes of class certification." While we believe this is best answered in the context of full briefing on plaintiffs' motion, to take but one example, an expert will explain that NAV statements are provided to investors by an administrator *after* the investors' subscriptions are accepted by the fund, and thus are not typically relied upon by potential investors in making their initial investment decisions, thereby demonstrating that, at least with respect to plaintiffs' initial investment negligence-based claims, "common evidence" – *i.e.*, Citco's NAV statements –

The Honorable Victor Marrero
July 18, 2014
Page 6

Finally, plaintiffs wrongly suggest that because their federal securities "claims involving initial investments were sustained," any proposed expert declaration involving initial investments should have been offered earlier. We disagree. Plaintiffs' negligence-based initial investment claims were dismissed nearly two years ago and were only reasserted well after the close of expert discovery. As such, the Citco Defendants had no reason to, and did not, submit an expert report addressing whether plaintiffs could show, on a class-wide basis, that the Citco Defendants owed them a duty of care pursuant to the test set forth in *Credit Alliance*. Indeed, as the New York courts have consistently and repeatedly held, plaintiffs' federal securities claims are of a fundamentally different character from their negligence-based initial investment claims and require proof of unrelated elements. *See, e.g., Westpac Banking Corp. v. Deschamps*, 484 N.E.2d 1351, 1353 (N.Y. 1985) (rejecting argument that *Credit Alliance* was satisfied because the defendant would have been subject to a federal securities law claim because that fact "should not affect the scope of [a] duty at common law"). Accordingly, that plaintiffs' federal securities claims survived a motion to dismiss does not change the analysis at all.

In short, we respectfully submit the non-foreign law expert declaration that the Citco Defendants currently envision submitting in opposition to plaintiffs' new motion for class certification (and perhaps an additional one depending on the arguments plaintiffs' raise on their motion for class certification) will undoubtedly help and assist this Court's assessment of whether plaintiffs meet the requirements of Rule 23 in light of the "developed" factual record in this case, and thus should be permitted.

### 2. Impact on the Current Summary Judgment Schedule

**Plaintiffs' position:** Delaying summary judgment is not warranted because the Second Circuit did not say that this Court was wrong to certify a class against the Citco and PwC defendants. The Second Circuit's Order requires only further consideration of the issues of duty and reliance in light of the full record now developed in discovery and for the Court to make specific findings explaining the basis for certifying claims against PwC and Citco. Plaintiffs oppose any effort to delay the schedule for summary judgment briefing that the Court already has ordered – with Defendants' unqualified consent notwithstanding pendency of their class certification appeal. *See* Dkt. No. 1275 (Order of June 9, 2014). Indeed, when the Court asked the parties during our telephone conference what issues they intended to raise on summary judgment, Defendants identified SLUSA, *Morrison*, standing and *Credit Alliance*. Similarly, Plaintiffs identified breach of fiduciary duty and third-party breach of contract-based on duties owed by Citco to all investors collectively to provide accurate NAV values and to oversee the safekeeping of assets supposedly comprising the NAV value. All of these issues will need to be

---

cannot be used, among other things, to show the existence of a duty under the second prong of the *Credit Alliance* inquiry for all putative class members. *See Credit Alliance*, 65 N.Y.2d at 551 (holding plaintiff must show financial report was to be used for a particular purpose "in furtherance of which a known party or parties was intended to rely").

The Honorable Victor Marrero
July 18, 2014
Page 7

addressed **whether or not the case ultimately proceeds as a class action**, or proceeds as what would effectively be several hundred consolidated individual actions brought by named plaintiffs. "There is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper . . . Rule 56 motion for summary judgment simply because such a motion precedes resolution of the issue of class certification." *Schweizier v. Trans. Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998); *Nicholson v. Forster & Garbus LLP*, 2013 WL 2237554, at *1 n.1 (E.D.N.Y. May 17, 2013) (same).

Defendants' request to delay summary judgment briefing until the completion of the class certification process (potentially including another Rule 23(f) petition), would impose **at least a year** of additional delay in this protracted litigation that is already approaching six years' duration. The Plaintiffs have sustained billions of dollars in losses and the vast majority of both individual named plaintiffs and putative class members have not seen any recovery. Defendants contend that they will have difficulty crafting summary judgment motions without a final class certification order. However, in repeated motions to dismiss, motions for reconsideration, and letters to this Court, Defendants have had no problem identifying multiple issues which they continue to contend are dispositive to the claims of **all** putative class members, and Plaintiffs continue to contend that Defendants' arguments lack merit.[5] Resolving these potentially dispositive issues on summary judgment is essential to moving this case towards trial or settlement. If class certification were ultimately denied, it will be far more efficient to have had these fundamental issues decided, so that the parties and the Court can make informed decisions as to the best way to proceed with a massive consolidated action involving hundreds of individual cases. For example, the Court may use test cases or other means to avoid the need for the overwhelming burden of discovery from individual plaintiffs (and apparently hundreds of separate summary judgment motions thereafter) that Defendants presuppose in their doomsday scenario.

Finally, Defendants ignore reality in arguing (at p. 8 below) that "ruling on the motion for summary judgment before class certification here would allow plaintiffs 'secure the benefits of a class action without first satisfying the requirements for it.'" *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974). In fact, a ruling against Defendants on any of the proposed summary judgment legal issues, even on a motion by a single Plaintiff, would enable all other Plaintiffs to obtain the same result, either through collateral estoppel as a matter of law or because the Court would likely follow its own prior rulings on the issue.

---

[5] *See, e.g.*, Dkt. No. 317 at 19 ("The State Law Claims Fail **As A Matter Of Law**"); *id.* at 19 n.11 ("PwC Netherlands does not raise any choice of law issue . . . because the claims pleaded here are without merit under New York as well as Dutch law."); Dkt. No. 330 at 1 ("Plaintiffs assert ten claims against CFSE and CCI, the administrator and sub-administrator, respectively, of the Fairfield Funds – a claim for violation of section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, and nine common law claims. **None of those claims is sustainable as a matter of law**."); Dkt. No. 1278 at 2 ("To be sure, the *Anwar* Defendants believe that **SLUSA . . . precludes the claims** asserted against those defendants[.]"). (All emphases added.)

The Honorable Victor Marrero
July 18, 2014
Page 8

**Defendants' position:** Defendants submit it would be illogical, inefficient, and inappropriate for the parties to brief summary judgment prior to determining whether this case will proceed as a class action. "The customary sequence in a class action is certification and notice before dispositive motion." *Brecher v. Republic of Argentina*, 2010 WL 3584001, at *2 (S.D.N.Y. Sept. 14, 2010). A summary judgment ruling "should ordinarily not occur before or simultaneous with a decision on class certification." *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 335 (S.D.N.Y. 2009) (citing *Philip Morris Inc. v. National Asbestos Workers Medical Fund*, 214 F.3d 132, 135 (2d Cir. 2000)); *see also Mendez v. The Radec Corp.*, 260 F.R.D. 38, at *44– 45 (W.D.N.Y. 2009) (collecting cases).

Plaintiffs ignore the fact that, absent a class action, their claims cannot succeed without individualized proofs on their part, regardless of any "common" evidence that may exist. Accordingly, if no class is certified, defendants will be entitled to take discovery of, and move for summary judgment on, each individual plaintiff's claims (as opposed to the discovery to date, which has only involved a handful of plaintiffs). While there may still be issues that apply to many or all plaintiffs, there will, by definition, be individual issues to resolve. To take just one example, defendants will be entitled to show that particular plaintiffs did not in fact rely on defendants' work. This would require additional discovery that defendants have not been allowed to take, and require defendants to present summary judgment arguments that they cannot make on the current record.

Proceeding on the assumption that a class will be certified would not only be contrary to the fact that no class currently exists, it would also be contrary to the Second Circuit's Order finding no basis in this Court's decision (or, apparently, in the record as presented by plaintiffs on appeal) "indicat[ing] how common evidence can show" the defendants owed duties to the plaintiffs or that plaintiffs relied on the defendants' conduct. (Order, at 6.) To say the least, it will be extremely difficult for defendants to craft a motion for summary judgment without understanding how the Court will resolve those issues.

We also again reject plaintiffs stilted reading of the Second Circuit's Order as somehow holding that the class certification result is correct, and merely asking this Court to rewrite its opinion so holding. That is not what the Court held. The Court has clearly remanded the matter for this Court to consider the issues identified in the Order and otherwise determine whether the requirements for class certification are satisfied here.

Finally, plaintiffs suggest that defendants' proposed schedule is only intended to further delay resolution of this matter. On the contrary, defendants' proposal is intended to avoid the serious inefficiencies and likely delays that would otherwise arise from plaintiffs' proposal, which would require this Court to address both class certification and summary judgment simultaneously. In any event, we do not believe that addressing class certification first and then summary judgment will "impose at least a year of additional delay" in this case. The parties have already agreed on a reasonable schedule for obtaining a ruling on class certification, and,

The Honorable Victor Marrero
July 18, 2014
Page 9

once the matter of class certification is resolved, the parties can proceed expeditiously to resolve the remaining issues in this matter.

In sum, defendants should not be forced to move for summary judgment on a class-wide basis in a case where the Second Circuit has vacated class certification. For although Federal Rule of Civil Procedure 23 "does not explicitly preclude a district court from considering a motion for summary judgment prior to class certification," *Brecher*, 2010 WL 3584001, at *2, a ruling on the motion for summary judgment before class certification here would allow plaintiffs "secure the benefits of a class action without first satisfying the requirements for it." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974).

\*  \*  \*

Respectfully, the parties believe that it would be most efficient if the Court would resolve the foregoing disputes at this time, before additional class certification submissions are made. The parties are available to discuss these matters at the Court's convenience or otherwise to provide further information.

Respectfully yours,

David A. Barrett

cc:   All counsel in *Anwar* (by e-mail)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by _the parties_.

SO ORDERED.

7-22-14
DATE    VICTOR MARRERO, U.S.D.J.