

# B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

November 20, 2014

**BY FAX**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re: *Anwar, et al., v. Fairfield Greenwich Limited, et al.*, 09-CV-00118

Dear Judge Marrero:

We write on behalf of the *Anwar* Plaintiffs in response to the Citco Defendants' November 17, 2014 letter regarding the Second Circuit's recent decision in *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 2014 WL 5487666 (2d Cir. Oct. 31, 2014). The *Morgan Stanley* decision lends no support to the Citco Defendants' arguments against class certification.

The focus of Citco's letter is that *Morgan Stanley* rejected the plaintiffs' argument that the commonality element was satisfied by the fraud-created-the-market theory.[1] The *Anwar* Plaintiffs have argued that their claims against Citco, to the extent they include the element of reliance,[2] do not present individualized issues because reliance can be shown on a classwide basis through (i) common circumstantial evidence, Pl. Br. at 14-17; and (ii) the *Affiliated Ute* presumption. Pl. Br. at 18-19.

The *Morgan Stanley* decision broke no new ground, and certainly said nothing that alters well-established Second Circuit and New York law that common circumstantial evidence can be used to show classwide reliance. *See* Pl. Br. at 14-17 (collecting cases). As Judge Forrest recently concluded on the basis of an in-depth analysis of Second Circuit law concerning reliance, "[m]isrepresentation claims do not always require individualized proof of reliance" and any "assertion to the contrary simply ignores Second Circuit case law." *Osberg v. Foot Locker,*

---

[1] It bears noting that the Second Circuit's relatively brief discussion of the fraud-created-the-market theory stops short of outright rejection, as the Court stated that "[w]hatever may be the merits of this putative doctrine in other contexts, we see no reason to give it weight here." *Morgan Stanley*, 2014 WL 5487666, at *6.

[2] As discussed in Plaintiffs' Supplemental Memorandum in Support of Motion for Class Certification, dated August 1, 2014 ("Plaintiffs' Brief" or "Pl. Br."), "[r]eliance is not an element of Plaintiffs' claims [against the Citco Defendants] for breach of fiduciary duty, negligence, breach of contract, and aiding and abetting breach of fiduciary duty." Pl. Br. at 20-22.

B O I E S,   S C H I L L E R   &   F L E X N E R   L L P

The Honorable Victor Marrero
November 20, 2014
Page 2

*Inc.*, 2014 WL 5800501, at *2 (S.D.N.Y. Nov. 7, 2014) (reaffirming certification of a class alleging misrepresentations and omissions in ERISA plan documents).[3]

Likewise, *Morgan Stanley* does not discuss the *Affiliated Ute* presumption of reliance, which both federal and state courts in New York have endorsed. *See, e.g., Osberg*, 2014 WL 5800501, at *6 ("Reliance is presumed in cases where material omissions are asserted."); *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 328 (S.D.N.Y. 2012) (certifying investor class in Madoff feeder fund case based on omissions to disclose); Dkt. No. 776 at 20-23 (collecting cases); Pl. Br. at 18-19; 23 (collecting cases).

The facts of *Morgan Stanley* also make its relevance here negligible. The case involved fraud claims against rating agencies alleging that the defendants knew their ratings "were based on outdated models and data." *Morgan Stanley*, at *1. As a result, the investment vehicle that plaintiffs bought "received a triple-A rating despite being loaded with very risky assets, including a significant profile of subprime residential mortgage-backed securities." *Id.* Defendants' ratings allegedly misled plaintiffs about the resulting risk of the investment vehicle, which initially had substantial value, but went bankrupt several years later when the housing market collapsed in 2007. *Id.* Based on these allegations, the Second Circuit reasoned that "[i]t is quite possible that some buyers of the notes might have known the underlying facts, believed in the models, and held the same rosy view of the residential housing market as did many government and private financial officers." *Id.* at *6.

In stark contrast, the *Anwar* Plaintiffs allege that for more than 10 years, in over 120 monthly account statements and thousands of purchase confirmations, Citco repeatedly and recklessly misrepresented the existence of billions of dollars of fund assets when, in fact, virtually none of those assets existed. It is inconceivable that *any investor* would knowingly invest in a Ponzi scheme. *See Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988) ("'Who would knowingly roll the dice in a crooked crap game?'") (quoting *Schlanger v. Four–Phase Systems Inc.*, 555 F.Supp. 535, 538 (S.D.N.Y. 1982)); *Osberg*, 2014 WL 5800501, at *6 (reliance could be shown on a classwide basis by "circumstantial proof," because "no reasonable juror would assume that a person knowingly receiving a pension benefit lower than that to which they are otherwise entitled would simply ignore that fact"). It is for that reason that the *Anwar* Plaintiffs are able to point to a consistent line of authority that has certified classes in Ponzi scheme cases. *See* Pl. Br. at 24.

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by

*Anwar plaintiffs*

SO ORDERED.

*11-21-14*

DATE

VICTOR MARRERO, U.S.D.J.

Respectfully yours,

David A. Barrett

cc:    All *Anwar* counsel (by e-mail)

---

[3] Although the *Osberg* decision was filed a week after *Morgan Stanley*, it does not discuss the case, no doubt because *Morgan Stanley* was no more probative of the classwide reliance issue in *Osberg* than it is here.