UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PASHA S. ANWAR, et al.,

　　　　　　　　　　　　　Plaintiffs,

v.

FAIRFIELD GREENWICH LIMITED, *et al.*,

　　　　　　　　　　　　　Defendants.

This Document Relates To: 09-cv-118 (VM)

Master File No. 09-cv-0118 (VM) (FM)

**DECLARATION OF ROBERT C. FINKEL IN SUPPORT OF
ENTRY OF AN ORDER FOR DISTRIBUTION OF
THE FAIRFIELD GREENWICH NET SETTLEMENT FUND**

Robert C. Finkel, being duly admitted to the practice of law in the State of New York,

does hereby declare under the penalties of perjury that:

1.　　　　I am a member of the law firm of Wolf Popper LLP, which together with the

law firms of Boies, Schiller & Flexner LLP and Lovell Stewart Halebian Jacobson LLP, are Co-

Lead Counsel for the Fairfield Greenwich ("FG") Settlement Class in this Action.

2.　　　　I make this Declaration in support of entry of an order for Distribution of the FG

Net Settlement Fund.

3.　　　　This Court, on March 25, 2013, entered the Final Judgment and Order of

Dismissal with Prejudice (the "FG Final Judgment") (Dkt. No. 1097), granting final approval to

the $50.25 million settlement between the FG Settlement Class and defendants Fairfield

Greenwich Limited ("FGL") and Fairfield Greenwich (Bermuda) Ltd. ("FGBL").  The FG

Settlement Class was defined as:

> All Persons who were Beneficial Owners of shares or limited partnership
> interests in the Funds as of December 10, 2008 (whether as holders of record or
> traceable to a shareholder or limited partner account of record), and who

suffered a Net Loss of principal invested in the Funds, excluding (i) those Persons who timely and validly requested exclusion from the Settlement Class and who have not validly revoked such request for exclusion; (ii) Fairfield Sigma Limited; (iii) Fairfield Lambda Limited; (iv) any Settlement Class Member who has been dismissed from this Action with prejudice; and (v) the FG Defendants and any entity in which the FG Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, immediate family members, heirs, successors, subsidiaries and/or assigns of any individual or entity in their capacity as such.

4.      On August 8, 2014, the United States Court of Appeals for the Second Circuit issued the last in a series of opinions affirming the FG Final Judgment.  *See* Mandate dated September 3, 2014, Dkt. No. 1315.  Pursuant to the terms of the FG Stipulation of Settlement (Dkt. No. 996, ¶ 44), the Effective Date of the FG Settlement occurred on November 6, 2014, the day after all rights to appeal or petition for certiorari expired. Pursuant to ¶ 31 of the Stipulation, Plaintiffs' Co-Lead Counsel acting on behalf of the Representative Plaintiffs, are now authorized to distribute the Net Settlement Fund to Authorized Claimants pursuant to order of this Court.

## REJECTION OF CLAIMS

5.      I have reviewed the accompanying Declaration of Jason Rabe, Senior Project Administrator at Rust Consulting, Inc. ("Rust") dated December 17, 2014 and the exhibits thereto ("Rabe Decl.").   Rust is the Claims Administrator appointed by the Court for the FG Settlement.

6.      Rust received and processed 3,431 Proof of Claim forms submitted in response to the Court- approved Class Notice and Proof of Claim form mailed to potential members of the FG Settlement Class (Dkt. No. 1038-5).  Rabe Decl., ¶ 5.

7.      The Notices of Rejection mailed by Rust specifically advised claimants regarding the manner in which they could cure claims if the claimant believed their claim was an eligible claim.  *See* Exhibit A to Rabe Decl. (copy of the form of letters used to notify Class

2

Members of rejection of claims).

8.      Rust determined that, after giving claimants an opportunity to cure, claimants filing 467 of the received claim forms were ineligible to participate in the FG Settlement. Rabe Decl., ¶¶ 6-7, Exhibit B.

9.      Plaintiffs' Co-Lead Counsel anticipate that one claimant who sought to participate in the FG Settlement based on investors' assignments of bankruptcy court claims, may contest the rejection of its claims. Plaintiffs' Co-Lead Counsel do not anticipate any other requests for review of rejected claims.

10.     Plaintiffs' Co-Lead Counsel respectfully recommend that the Court approve the rejection of the claims identified in Exhibit B of the Rabe Declaration.

## ACCEPTANCE OF CLAIMS

11.     Rust determined that 2,964 of the Proofs of Claim were appropriate for inclusion in the FG Settlement as Authorized Claimants. *See* Rabe Decl., ¶¶ 8-9. The Authorized Claimants are identified in Exhibit C of the Rabe Declaration. The Recognized Losses of these Authorized Claimants aggregate to $3,265,638,105.

12.     Of the foregoing claims, 324 late claims were postmarked after the April 17, 2013 filing deadline, but are otherwise eligible to receive a distribution of the Net Settlement Fund. *See* Rabe Decl. ¶ 10. Those late claims comprised $106,058,648 of Recognized Losses (less than 3.3% of the aggregate value of all claims), and did not prejudice the administration of the FG Settlement. Plaintiffs' Co-Lead Counsel recommend the acceptance of these late claims.

13.     Plaintiffs' Co-Lead Counsel has worked closely with the Claims Administrator

throughout the claims process to directly contact and assist claimants in presenting claims and curing claim deficiencies, where possible.  Much of the documentation of the claims dated back more than a decade and many claimants were missing documents in support of their claims.  Each of Plaintiffs' Co-Lead Counsel spent hundreds of hours working with Rust and settlement claimants to facilitate acceptance of valid claims.

14.     Plaintiffs' Co-Lead Counsel respectfully recommend that the Court approve the acceptance of the claims listed on Exhibit C of the Rabe Declaration.

## PLAINTIFFS' CO-LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF ADDITIONAL EXPENSES

15.     The FG Stipulation of Settlement (Dkt. No. 996) provided for the payment of an additional $30 million (the "Escrow Amount") to be held in escrow pending determination whether an FG Defendant incurs a "Qualified Expense."  *See e.g.,* Stipulation, ¶ 5.  A "Qualified Expense" is defined in the Stipulation generally as the amount paid by an FG Defendant to resolve claims against them arising out of investments in Bernard L. Madoff Investment Securities.  *See* Stipulation, ¶ 1aa.  The FG Defendants receive a credit against the $30 million Escrow Amount for 75% of any Qualified Expense. See, ¶ 5i.  Pursuant to the terms of the Stipulation it is not anticipated that the Escrow Amount will be available for possible distribution to Authorized Claimants until after June 15, 2016.  *See* Stipulation, ¶ 1bb.

16.     The Stipulation provided that up to fifty percent of the Escrow Amount "may be in the form of an appropriate security interest in one or more assets, including without limitation real estate assets, subject to the approval of Plaintiffs' Co-Lead Counsel, which shall not be unreasonably withheld."  *See* ¶ 1k.  In connection with the negotiation and execution of those security interests, Plaintiffs' Co-Lead Counsel incurred actual out of pocket expenses of

4

$170,109, – consisting of fees and expenses of special real estate counsel incurred to assist Co-Lead Counsel in structuring the necessary security interests ($96,050) and fees and expenses of counsel in Switzerland incurred to  advise as to the adequacy of guaranties (functionally the same as letters of credit) from a Swiss financial institution ($2,923), one-half of the costs of mortgage recording taxes (not to exceed $69,360), and formation of Anwar Settlement Class LLC to hold the security interests ($1,776).  *See* Exhibit D attached hereto.  These expenses were primarily incurred after the March 22, 2013 fairness hearing, and thus were not included with the expenses that Co-Lead Counsel requested for reimbursement at the time of that hearing.  The original Class Notice informed Class Members that Plaintiffs' Counsel would request reimbursement of expenses of up to $1,450,000 (Dkt. No. 1038-5, pages 7 and 11); and the actual amount requested and approved at the fairness hearing was $1,279,242 (Dkt. No. 1099, ¶ 3), or $170,758 less than the noticed amount.  Accordingly, the $170,109 in additional expenses requested now is within the terms of the Class Notice.

## DISTRIBUTION OF THE NET SETTLMENT FUND

17.     As described in the Rabe Declaration, Rust is prepared, upon order of the Court, to distribute the Net Settlement Fund to the Authorized Claimants.  We have reviewed the procedures described by Rust for the distribution of the FG Net Settlement Fund (Rabe Decl., ¶ 17) and concur as to their appropriateness and consistency with the prior orders of the Court.

18.     Based on my review of these materials and frequent consultations with Rust in the course of its processing of FG claims, I concur in the determinations and calculations set forth in the Rabe Declaration.  I also have reviewed Rust's prior and current invoices for fees and expenses and attest that they are appropriate and consistent with the prior orders of this Court.

19.     Counsel for the Settling Defendants have advised me that their clients do not

5

object to entry of the Proposed Order.

20.     As stated in the Rabe Declaration at ¶ 14, the Net Settlement Fund currently

consists of approximately $35,231,835.  Pursuant to the Notice and Plan of Allocation mailed

to the Class (Dkt. No. 1038-5, pages 14-15), if the Court accepts the recommendations of Class

Counsel to approve the Authorized Claimants as requested herein having Recognized Losses

totaling $3,265,638,105, each Authorized Claimant will receive a pro rata share of the Net

Settlement Fund equivalent to approximately 1.1% of the Settlement Class Member's

Recognized Loss.

## CONCLUSION

21.     For the foregoing reasons, Plaintiffs' Co-Lead Counsel respectfully request that

this Court enter the Proposed Order:

(a)   directing  distribution of the FG Net Settlement Fund to the Authorized

Claimants as listed on Exhibit C to the Rabe Declaration;

(b)   approving rejection of the 468 ineligible claims listed on Exhibit B to the

Rabe  Declaration and barring acceptance of any additional late claims submitted in the

future;

(c)   authorizing payment from the FG Net Settlement Fund to Plaintiffs' Co-

Lead Counsel of $170,109 in expenses necessarily incurred in connection with obtaining

security interests relating to the Escrow Amount.

(d)   authorizing payment from the FG Net Settlement Fund to Rust of  $299,162

for fees ($264,065) and costs ($35,097) incurred in connection with administering FG

Settlement Fund from August 2013 through October 2014; and

(e)     authorizing a reserve of $79,090 for payment of Rust's anticipated further fees and expenses and for future tax preparation services including the necessary tax returns.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of December, 2014.

s/ Robert C. Finkel
ROBERT C. FINKEL

#180309v6