UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PASHA S. ANWAR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FAIRFIELD GREENWICH LIMITED, *et al.*, <br><br> Defendants. | Master File No. 09-cv-0118 (VM) (FM) |

**DECLARATION OF JASON RABE IN SUPPORT OF ENTRY OF AN ORDER FOR DISTRIBUTION OF THE FAIRFIELD GREENWICH NET SETTLMENT FUND**

JASON RABE, does hereby declare, under the penalties of perjury, that:

1. I submit this declaration in support of entry of an order for distribution of the Fairfield Greenwich Net Settlement Fund and to provide the Court with information regarding the processing of Fairfield Greenwich ("FG") Proof of Claim and Release forms ("Claims"), the allowance and rejection of Claims, and the calculation of Recognized Losses in connection with the $50.25 million partial settlement between the Representative Plaintiffs[1] and the FG Settling Defendants[2] in this Action. I am over 21 years of age and am not a party to this action.

2. Rust Consulting, Inc. ("Rust") was appointed Claims Administrator pursuant to paragraph 8 of this Court's Order Preliminarily Approving Settlement and Providing for Notice of Proposed Settlement, dated November 30, 2012 (Dkt. No. 1008), in connection with the $50.25 million FG Settlement, to supervise and administer the FG notice and claims procedure. I am a Senior Project Administrator at Rust and responsible for the supervision of Rust's

---

[1] "Representative Plaintiffs" means the representative plaintiffs in the Action, namely Pacific West Health Medical Center Employees Retirement Trust, Harel Insurance Company Ltd., Martin and Shirley Bach Family Trust, Natalia Hatgis, Securities & Investment Company Bahrain, Dawson Bypass Trust, and St. Stephen's School.

[2] The "Settling Defendants" consist of Fairfield Greenwich Limited ("FGL") and Fairfield Greenwich (Bermuda) Ltd. ("FGBL").

administration of the FG Settlement.

3. The following statements are based on my personal knowledge and information provided by other Rust employees working under my supervision, and if called on to do so, I could and would testify competently thereto.

4. Rust's services in connection with the FG Settlement included (i) providing notice to the potential members of the FG Settlement Class, as discussed in the Affidavit of Daniel J. Polizzi, dated January 31, 2013, previously filed with the Court (Dkt. No. 1038-5); (ii) processing FG Proof of Claim and Release forms submitted by potential FG Settlement Class Members; and (iii) calculating Authorized Claimants' Recognized Losses, as defined in the Plan of Allocation contained in the Notice of Partial Settlement mailed to potential class members and approved by the Court (Dkt. No. 1097, ¶ 22).

## **CLAIMS PROCESSING**

5. Rust has received and processed 3,431 Claims from potential members of the FG Settlement Class. The information received from these potential Class Members concerning transactions in the Funds was entered by Rust and retained in a confidential database for this Action.

6. Through November 26, 2014, Rust mailed Notices of Rejection (a sample letter is attached hereto as Exhibit A) to certain claimants who were ineligible to participate in the settlement, *i.e.*, who did not document any holdings of the eligible Funds as of December 10, 2008; filed a duplicate claim; did not document a Net Loss; filed a claim based on an assignment not including claims settled by this action; or were deemed an excluded party. As a result, these claimants, who were given an opportunity to cure, did not meet the FG Settlement Class requirements to receive any share in the FG Settlement under the terms of the FG Final

Judgment.

7. A schedule identifying the 467 ineligible Claims (with names redacted) and the reasons for their ineligibility is attached hereto as Exhibit B.

### CALCULATION OF ACCEPTED CLAIM AMOUNTS

8. Rust determined that 2,964 of the Claims submitted were supported by appropriate documentation evidencing ownership of interests in the Funds as of December 10, 2008 and a Net Loss, thereby demonstrating membership in the FG Settlement Class. The respective Recognized Loss of each of these 2,964 "Authorized Claimants" was calculated in accordance with the Plan of Allocation in the aggregate sum of $3,265,638,105. Rust then compared the respective Recognized Loss of each Authorized Claimant to the total Recognized Losses for all Authorized Claimants.

9. The names of the Authorized Claimants and each claimant's respective *pro-rata* share of the FG Net Settlement Fund is attached hereto as Exhibit C. To protect the privacy of these claimants, their names have been redacted.

10. Included in Exhibit C are 324 claimants who filed Claims postmarked after the April 17, 2013 filing deadline but who are otherwise eligible to receive a distribution of the Net Settlement Fund. The respective Recognized Loss of each of these 324 "Authorized Claimants" was calculated in accordance with the Plan of Allocation in the aggregate sum of $106,058,648.

### RUST'S FEES AND EXPENSES

11. Pursuant to the terms of the FG Stipulation of Settlement (Dkt. No. 996, ¶ D.17), on October 1, 2013 and December 30, 2013, Rust was paid a total of $419,686 consisting of fees ($190,268) and expenses ($229,418) for work performed in connection with the FG Settlement from inception (October 2012) through July 2013. Rust respectfully requests payment of

additional fees ($264,065) and expenses ($35,097) billed from August 2013 through October 2014 in the amount of $299,162. Attached as Exhibit D is an invoice summarizing Rust's fees and expenses from August 2013 through October 2014.

12. The fees and expenses requested by Rust are not only for the standard processing of Claims, claimant correspondence and deficiency responses, but also are attributable to additional tasks necessitated by the FG Settlement, such as: (a) the non-standard programming of the Plan of Allocation for calculating losses; (b) review of processed FG Claims or FG deficiency responses; (c) processing of deficiency responses by email, which in many cases required processing multiple piecemeal responses from claimants; (d) multiple attempts to urge claimants to cure deficient Claims; (e) working with Plaintiffs' Co-Lead Counsel to attempt to cure deficient Claims; (f) special reporting on remaining deficiencies; and (g) special handling of certain Rejected Claims. Among other things, because investments in the Funds for many of the FG Class Members dated back to the 1990s, and many Class Members lacked documentation for their original investments, Rust had to work in detail with Class Members and Plaintiffs' Co-Lead Counsel to ensure that Class Members were being compensated based on their Net Loss of principal and not for any "phantom income" or other non-compensable events.

13. Rust further estimates that additional fees of $44,048 and expenses of $35,042, for a total of $79,090 will be incurred to complete the distribution of the FG Net Settlement Fund, responding to claimant inquiries regarding the distribution, and for future tax preparation services and filing the necessary tax returns. Attached hereto as Exhibit E is Rust's estimate of costs for completion of these matters. If less than this amount is incurred, any remaining amount will be returned to the FG Settlement Fund for further distribution.

## SETTLEMENT PRO-RATION

14.     The Net Settlement Fund, as of December 12, 2014, is valued at approximately $35,231,835 in cash, including interest, calculated as follows:

| | |
|---|---:|
| Settlement Fund | $50,250,000 |
| Representative Plaintiffs' Costs and Expenses Awarded by the Court | ($225,000) |
| Attorneys' Fees Awarded by the Court, plus interest earned on the fee award | ($12,571,750) |
| Attorneys' Expenses Awarded by the Court | ($1,279,242) |
| Additional Attorneys' Expenses Incurred In Connection with Obtaining Security Interests for the FG Escrow Fund | ($170,109) |
| Amount Paid to Date to Rust Consulting | ($419,686) |
| Rust's Outstanding Fees and Expenses | ($299,162) |
| Reserve for Rust's Additional Fees and Expenses | ($79,090) |
| Bank Escrow Fees | ($4,000) |
| Gain from Investments | $7,378 |
| Interest through November 30, 2014 | $22,496 |
| Net Settlement Fund | $35,231,835 |

15.     The Settlement Fund has continued to earn interest as a Qualified Settlement Fund under section 1.468(b) of the IRS Regulations. There is no need for a reserve for payment of future taxes.

16.     Inasmuch as the FG Net Settlement Fund contains $35,231,835 and the aggregate value of Authorized Claims is $3,265,638,105, Rust estimates that each Authorized Claimant will receive a pro-rated amount of approximately 1.1% of its Recognized Loss from the FG Settlement.

17.     Upon entry of an Order providing for distribution of the FG Net Settlement Fund by this Court, Rust intends to distribute the Net Settlement Fund by electronic wire transfer to the holders of the largest 10% of claims, when verified with the Authorized Claimant, and to

send checks to the remaining Authorized Claimants, based on each Authorized Claimant's Recognized Loss as set forth in Exhibit C.

18.   In Rust's experience, not all of the checks distributed to Authorized Claimants will be cashed promptly. In order to encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, Rust intends to include a notation with the distributed checks stating "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED WITHIN 90 DAYS AFTER ISSUE DATE."

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 17th day of December, 2014 in Minneapolis, Minnesota.

_____
Jason Rabe