# ASM Capital
## 7600 Jericho Turnpike – Suite 302
## Woodbury, NY 11797

February 6, 2015



Via Fed Ex

Judge Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Anwar, et al. v Fairfield Greenwich Limited, et al.*
              <u>Master File No. 09-CV-00118 (VM) (FM)(the "Case")</u>
              Order Authorizing Distribution of the Fairfield Greenwich Net Settlement Fund –
              Filed 12/19/14 (the "Distribution")

Dear Judge Marrero:

My name is Douglas Wolfe and I am General Counsel of ASM Capital, L.P. and its affiliates ("ASM"). I am writing with respect to your Order filed on 12/19/14 regarding the Distribution to class members in the matter above.

I apologize for the late timing of this letter and our argument below but I had been previously been notified (in writing – letter of August 5, 2013 from Robert Finkel of Wolf Popper LLP the "Wolf Popper Letter" provided) that I would receive proper notice of any claims resolution or distribution in the case, but was only informed after your Distribution Order was already entered that such a Distribution was being made.

ASM has filed multiple proof of claim forms seeking to participate in any Distributions or proceeds from the Case as assignee of Syd Silverman, Mary Kellog-Joslyn IRA RO, Milton Fine Revocable Trust, and Robert Critchell III IRA (the "Assignors"). We have properly filed such claim forms along with the appropriate Claim Purchase Agreements (the "Agreements" provided) showing our right to any such distributions or proceeds. As you can see from the Wolf Popper Letter, counsel has decided ON THEIR OWN, to determine that these contracts did not apply to the Case

> *"We have reviewed the Agreements and have concluded that they assign only claims with respect to the Bankruptcy proceedings and not the litigation claims involved in the FG settlement"*

As can be clearly seen in the Agreements, the Assignors have assigned to ASM their rights to any Distributions due the Assignors in any matters which arise from the same set of facts which led to the Assignors loss of funds.

Please refer to the on-point decision issued by the United States District Court for the Eastern District of Virginia in U.S. v. Okun (the "Okun Decision"), a copy of which is enclosed for your convenience. The Okun Decision stems from the activities of Edward H. Okun, the principal of 1031 Tax Group, LLC and its affiliates. After it was discovered that Mr. Okun was using the 1031 Tax Group entities to run a large Ponzi scheme, 1031 Tax Group became the subject of bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York, and Mr. Okun was convicted of several crimes including wire fraud and money laundering. ASM (among others) purchased the bankruptcy claims of several creditors in the 1031 Tax Group bankruptcy cases (using purchase agreements that were similar to those used in this matter). The government separately seized Okun's personal assets and began to make restitution payments to the victims of the Ponzi scheme. A small number of creditors who had sold their bankruptcy claims asserted that they -- rather than the acquirers of their claims -- should receive the restitution payments. The claim purchasers asserted that the transfer of the bankruptcy claims also effectuated a transfer of the right to receive the restitution payments.

The Court agreed with the arguments of the claims purchasers, and awarded restitution payments to the purchasers. The Court analyzed the text of the Mandatory Victims' Restitution Act, the related legislative history and policies underlying the statute, and the decisions decided thereunder, and concluded that restitution claims are indeed assignable. The Court then turned to the particular transfers at issue, and, citing the language of the purchase agreement, concluded that "ASM was purchasing more than just [the creditor's] claim in the affiliated bankruptcy court, it also purchased any recovery of funds on the debt underlying the bankruptcy claim in other litigation." Further, the Court noted that the creditor's bankruptcy claim against the 1031 Tax Group and its claim for restitution against Okun, are the same. "There can be no reasonable debate that the restitution claim and the bankruptcy claim are, in essence, the same claim. While it is true that, nominally, the bankruptcy claim is directed at 1031 Tax Group while the restitution claim is against Okun personally, both Okun and the Court have recognized that these claims are essentially the same. Furthermore, examination of the supporting documentation submitted by [the creditor] and ASM reveals that the source of the claim against 1031 Tax Group in bankruptcy is the same as the restitution claim against Okun: the claim amounts, account numbers, and involved parties are all identical." See enclosed Okun decision at p. 10 (internal citations omitted).

The analysis employed by the Okun Court applies with equal force here. Moreover, as in Okun, the text of the relevant claim purchase Agreement covers far more than just the Claimant's claim.

Indeed, the Agreements in this Case include the following:

> *"and such transaction includes the purchase of any Proof of Claim (defined below), along with any voting rights and any other rights and benefits which may now exist, or come into existence in regards to the Claim, including all cash, securities, instruments and other property, to be paid or issued by Debtor or any other party, directly or indirectly, in connection with or satisfaction of the Claim, including without limitation "cure" amounts related to the assumption of an executory contract and any rights to receive all payments in respect thereof, and all rights to receive interest, penalties, fees, and any damages from any cause of action, litigation or rights of any nature against Debtor, its affiliates, any guarantor or other third party, in Court or any other court of competent jurisdiction which may exist, be paid or issued with respect to and/or in satisfaction of the Claim (the "Recovery")."*

The right to recover the Distribution at issue here arises from, or is related to, the same rights and claims to payment that the Assignors held in the bankruptcy case. Applying the broad assignment language set forth in the Agreements, and the approach of the Okun Court, Assignor's right to recover the Distribution has been validly assigned to, and is held by, ASM.

In addition, pursuant to Section 5 of the Agreements, the Assignors "directs, or agrees to direct, any party . . . to pay to [ASM] any distributions . . . on account of . . . the Recovery, or any portion thereof. The [Assignors] shall take any and all action required by [ASM] to ensure that any party responsible for making distributions on account of . . . the Recovery directs any such payment to [ASM]."

Please let this letter serve as a request for your honor to decide the issue at hand here. We understand that the amounts involved are not high in monetary value, so protracted and costly litigation could only lead to further complications. We wholly disagree with the conclusions formed by lead counsel in the Case and did not get the proper notice we were promised. We entertain any invitation to further argue our case or provide other supporting documentation as the Court may request.

This letter is without prejudice to all of ASM's rights and remedies, all of which are expressly reserved.

Thank you for your attention to this matter.

Best Regards,

Douglas Wolfe

General Counsel
ASM CAPITAL

TEL 516.422.7102
FAX 516.422.7118
CELL 914.804.7446

DWOLFE@ASMCAPITAL.COM

cc (VIA EMAIL):     Robert Finkel – Wolf Popper LLP

---

The Anwar Plaintiffs are directed to respond by 2-16-15, by letter not to exceed three (3) pages, to the matter set forth above by ASM Capital, L.P., showing cause why the relief requested should not be granted.

SO ORDERED.

2-10-15
DATE             VICTOR MARRERO, U.S.D.J.